O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|

| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* |
|---|---|

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

## I.      INTRODUCTION

This matter comes before the Court on Plaintiff Perfect 10, Inc.'s ("P10") Federal Rule of Civil Procedure 15(a) motion for leave to file a Second Amended Complaint ("SAC"), which would add certain new claims and new factual allegations. Defendant Google, Inc. ("Google") opposes this motion. For the reasons set forth below, the Court GRANTS Plaintiff's motion.[1]

## II.      PROCEDURAL BACKGROUND

P10 filed its initial complaint in this action on November 19, 2004. It amended its complaint as of right on January 18, 2005. The First Amended Complaint ("FAC") asserted twelve claims: (1) Direct copyright infringement (17 U.S.C. § 101 *et seq.*); (2) contributory copyright infringement (same); (3) vicarious copyright infringement (same); (4) circumvention of copyright protection systems (17 U.S.C. § 1201(a)); (5) direct trademark infringement (15 U.S.C. §§ 1114, 1125 *et seq.*); (6) contributory trademark infringement (same); (7) vicarious trademark infringement (same); (8) unfair competition under 15 U.S.C. § 1125 *et seq.*; (9) trademark dilution (15 U.S.C. §§ 1114, 1125 *et seq.*; (10) wrongful use of a registered mark under Cal. Bus. & Prof. Code § 14335; (11) trademark dilution under Cal. Bus. & Prof. Code § 14330, and (12) violation of rights of publicity under Cal. Civ. Code § 3344 and common law.

---

[1]Docket No. 297.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

On August 24, 2005, P10 moved for a preliminary injunction solely on the basis of its copyright claims.  The Court then consolidated this action with P10's action against Amazon.com, in which P10 alleged similar claims, and continued the preliminary injunction proceedings.  On February 21, 2006, this Court ruled that Google's creation and public display of thumbnail versions of P10's images likely do directly infringe P10's copyrights and that it was not likely that Google would be entitled to a fair use defense for that activity.  *Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828, 851 (C.D. Cal. 2006).  The Court also found that Google's framing and in-line linking to third party websites probably do not directly infringe and that P10 was unlikely to succeed on its contributory and vicarious liability theories.  *Id.* at 844-45.

On May 8, 2006, the Court entered a preliminary injunction order that enjoined Google from creating and displaying thumbnails but not from linking to third-party websites that display infringing full-size versions of Perfect 10's images.  P10 and Google both appealed from that injunction order.

On May 16, 2007, the Ninth Circuit ruled on the cross-appeals.  It subsequently issued an amended opinion on December 3, 2007.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), *superseding* 487 F.3d 701.  The Ninth Circuit held that P10 had established a *prima facie* case of direct infringement based on Google's communication to Internet users of thumbnail versions of P10's photographs through its search engine.  This would constitute direct infringement because the photographs were stored on Google's computers and then displayed to users through Google's search engine.  *Id.* at 1160.  In doing so, the Ninth Circuit affirmed this Court's "server test," whereby Google would be directly liable if Google stored and served the copyrighted electronic information (*e.g.*, thumbnails) to a user, rather than merely in-line linking or framing the information.  *Id.* at 1160-61.  Nevertheless, the Ninth Circuit found that Google's display of thumbnail images was likely fair use.  *Id.* at 1168.  Next, the Ninth Circuit disagreed with this Court's analysis and conclusion that there was little likelihood that Google would be contributorily liable for in-line linking to full-size infringing images.  It remanded the case for consideration of whether Google had "actual knowledge" of the infringing images and "could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps."  *Id.* at 1172-73.  Finally, the Ninth Circuit affirmed this Court's determination that P10's vicarious copyright infringement claim was unlikely to succeed, because P10 had not shown it was

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

likely to prove that Google had the legal right and the practical ability to stop or limit the directly infringing conduct of third party websites.  *Id.* at 1175.

On June 12, 2008, P10 filed this motion for leave to file a SAC.

## III.   LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend a previously amended pleading "only by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a).[2]  The Rule further provides that "leave [to amend] shall be freely given when justice so requires."  *Id.*  "Under Rule 15(a), courts are cautioned to apply the policy of free amendment of pleadings with extreme liberality."  *SAES Getters S.P.A. v. Aeronex, Inc.*, 219 F.Supp.2d 1081, 1086 (S.D. Cal. 2002) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).  "Though the decision to grant or deny a motion for leave to amend is governed by the district court's discretion, the general rule is that amendment of pleadings is to be permitted unless the opposing party makes a showing of undue delay, bad faith, undue prejudice, or futility of amendment on the part of the moving party."  *Id.* at 1086-87(citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Thus, the burden of persuasion is on the party opposing amendment.

"The four factors are generally not accorded equal weight; a showing of delay alone, for example, usually will not justify denial of leave to amend."  *Id.* (citing *DCD Programs, Ltd.*, 833 F.2d at 186).  "The factors are fairly self-explanatory, but have evolved in the case law as follows.  To show undue delay, the opposing party must at least show delay past the point of initiation of discovery; even after that time, courts will

---

[2]The Court is mindful that Rule 16 sets a higher standard for granting leave to amend the pleadings.  *See* Fed. R. Civ. P. 16(b) (requiring a party to show "good cause" to warrant the modification of dates in a scheduling order).  However, that Rule applies only if a scheduling order has been entered and a party seeks to modify the schedule.  Given the tangled procedural history of this case, the parties are not currently operating under a scheduling order, so Rule 16 does not apply.  That is undoubtedly why Google has not challenged P10's assertion that Rule 15 applies.   Google, too, has applied Rule 15 jurisprudence in opposing this motion.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

permit amendment provided the moving party has a reasonable explanation for the delay." *Id.* (citations omitted). "[C]ourts have understood ['bad faith'] to mean such tactics as, for example, seeking to add a defendant merely to destroy diversity jurisdiction." *Id.* (citation omitted). "'Undue prejudice' means substantial prejudice or substantial negative effect; the Ninth Circuit has found such substantial prejudice where the claims sought to be added 'would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense.'" *Id.* (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

"Finally, an amendment is 'futile' only if it would clearly be subject to dismissal." *Id.* (citing *DCD Programs, Ltd.*, 833 F.2d at 188; *Moore v. Kayport Package Express*, 885 F.2d 531, 542 (9th Cir. 1989)). "While courts will determine the legal sufficiency of a proposed amendment using the same standard as applied on a Rule 12(b)(6) motion, *see Miller v. Rykoff- Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988), such issues are often more appropriately raised in a motion to dismiss rather than in an opposition to a motion for leave to amend." *Id.* (citing William W. Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before Trial* § 8:422).

## IV.   DISCUSSION

P10's proposed SAC asserts the following claims: (1) Copyright infringement; (2) federal trademark infringement; (3) federal trademark dilution; (4) unfair competition under federal law, Cal. Bus. & Prof. Code § 17200, and the common law; (5) violation of rights of publicity under Cal. Civ. Code § 3344 and the common law ; (6) unjust enrichment; and (7) misappropriation.  Declaration of Jeffrey N. Mausner, Ex. 10 ("Proposed SAC").  The following changes are the subject of this motion:

A.    The SAC contains new factual allegations for direct copyright infringement, based on Google's ownership of a weblog service, referred to by the parties as Blogger. Simply put, P10 wishes to allege that Google is storing full size P10 images on its servers and hosting infringing weblogs and is therefore directly liable for copyright infringement under the "server test."

B.    The SAC asserts new state law claims for California and common law unfair competition, unjust enrichment, and misappropriation.

O

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

C.     The SAC includes additional factual allegations for P10's existing federal unfair competition claim and rights of publicity claim.

D.     The SAC adds new copyrights, including 653 unregistered copyrights whose applications are pending.

As detailed below, Google opposes allowing P10 to allege the new claims and factual allegations. Google also filed evidentiary objections to certain portions of the Declaration of Norman Zada.  Significant portions of the Zada Declaration consist of purported evidence on the merits and are thus irrelevant to this motion; some portions are also argumentative and lacking in foundation.  For those reasons, the Court sustains all of Google's objections except to the following portions: The third sentence of Zada Declaration ¶ 5 (p. 2, ll. 13-15), and the first sentence of Zada Declaration ¶ 16 (p. 8, ll. 12-14).  These portions are admissible.

### A.     Allegations About Blogger

In the FAC, P10 alleged direct copyright infringement based on the Google's search engine operations, Web and Image Search.  In the Proposed SAC, P10 now also alleges that "Google stores hundreds of thousands of unauthorized copyrighted images on its servers and provides website operators and users with a variety of services that assist them in infringing copyright."  Proposed SAC ¶ 18.  One of those services, P10 alleges, is "Google hosting services, including blogspot and others, which host infringing websites and store infringing images."  *Id.* ¶ 37.  The parties understand these allegations to refer to Google's Blogger services, which operate using the domain names "blogspot.com" and "blogger.com.."[3]

#### 1. Undue delay

Google, which has the burden of establishing that leave to amend should be denied, contends that P10's addition of Blogger to its case at this time is untimely, prejudicial,

_____

[3]Google explains in footnote 1 to its opposition that it operates a weblog hosting service ("Blogger") at www.Blogger.com and Blogspot.com.  Blogger.com is where bloggers create, edit and administer their blogs, while Blogspot.com is where blogs are actually hosted.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

and in bad faith.  Google never directly revealed to P10 that it hosted full-size images on its servers, but it was not obligated to.[4]  Google's position is that P10 nevertheless knew or should have known the material facts about Blogger as early as February 2003, when Google acquired Blogger.

As to P10's awareness of the presence of P10 images on blogspot.com, Google points to three documents that P10 printed out in 2002, 2003, and 2004 that consist of Google search results.  *See* Declaration of Rachel M. Herrick ("Herrick Decl."), Ex. A.  Each page contains one blogspot.com URL linked to a name or image of a P10 model, along with other search results from other websites.  *Id.*  The pages were among thousands of pages of search results that Perfect 10 produced for a different case.  Zada Reply Decl. ¶ 4.  The 2004 document is a thumbnail image of a supposed P10 model linked to a blogspot.com URL.  Herrick Decl., Ex. A at 7.  None of these three documents suggests that any of the blogspot webpages contained full-size images that were stored on *Google's* servers.  As P10 argues, and the Court agrees, a few blogspot URLs among a multitude of search results simply is not significant enough to prompt a reasonably vigilant litigant to investigate who owns or hosts those webpages.  *See* Zada Reply Decl. ¶ 3 ("Although I may have seen the terms "blogger" and "blogspot" here and there on a few documents among tens of thousand prior to June of 2006, I did not understand their significance at that time.")  The same goes for the DMCA notice that Dr. Zada sent to Google in a spreadsheet in February 2005 that contained one blogspot URL,  Herrick Decl., Ex. B, and the one blogspot.com webpage that Dr. Zada print-screened in 2005.

---

[4]P10 argues vociferously that Google concealed its storage of full-size images during discovery and misrepresented this fact to this Court and the Ninth Circuit.  That argument is dubious.  The Requests for Admission that P10 believes Google dishonestly answered referred to Google's search engine.  *See* Herrick Decl, Ex. Q at 62 (P10's definitions for images "Displayed on Google's Servers" and "Archived on Google Servers" referred to images that resulted from Google Web or Image search).  Understood in context, Google's statements to this Court or the Ninth Circuit about the presence of full-size images on its servers could have reasonably been construed to apply to the P10 claims at issue, which were based solely on Google's web and image search engine operations, not Blogger.  Whether this Court and the Ninth Circuit's understanding of Google's servers was, in retrospect, incomplete or incorrect is not relevant to the issue of P10's delay in adding the Blogger's allegations.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

Zada Decl. ¶ 8 & Ex. 4.

P10's President and its counsel have both filed sworn declarations that they did not know about full-size images on blogger.com and blogspot.com until May or June 2006, after P10 had filed its opening brief with the Ninth Circuit. Reply Declaration of Jeffrey N. Mausner ("Mausner Reply Decl.") ¶ 2 (stating he recalls finding out about the full size images around May 2006); Reply Declaration of Dr. Norman Zada ("Zada Reply Decl.") ¶ 3 (discovered a few full-size images on blogger.com in approximately June 2006).

At the hearing on this motion, Google's counsel cited other evidence that, in her view, indicates that P10 knew or should have known about full-size images on blogspot.com earlier than May or June 2006. Google cited Dr. Zada's own declaration that "in its 2005 exhibits in support of its motion for preliminary injunction, P10 submitted twenty images that were part of the infringing websites hosted by Google, specifically [listing 7 blogspot URLs]." Zada Decl. ¶ 8. As seen in Exhibit 9 to Zada's Declaration, those images consist of Google Image Search thumbnails linked to blogspot URLs. That P10 submitted blogspot thumbnails among many other Image Search results as part of its preliminary injunction evidence does not refute Dr. Zada's testimony that he was only aware of full-size images on blogger.com in approximately June 2006. Given the number of images and URLs that P10's allegations encompassed, it would be unreasonable to conclude that a mere twenty infringing thumbnails should have alerted P10 to the significance of blogspot.com and its web host. *See* FAC ¶ 26(a) (alleging that Google had been provided at least thirty-eight DMCA notices informing it of infringement of P10's images and trademarks on at least 5,700 URLs in Google's system, including approximately 1000 URLs for infringing images on Google's own servers).

At the hearing, Google's counsel also gave the Court nine pages of printouts that it had not included in its opposition papers. Although Google did not provide an authenticating declaration for the nine pages, Google's counsel did explain (and P10 does not dispute) the origin of the first three pages, which are print-screens of folders in a hard drive that P10 produced to Google in 2006. The first page captures a folder labeled "for google misc." Within that folder is five subfolders, including one labeled "blogspot images aug 1." That blogspot subfolder was last modified on April 16, 2006. The second page among the printouts Google brought to the hearing is a folder labeled "key sites google." It contains 22 subfolders, with one labeled "blogspot.com." That, too, has

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

a "Date Modified" of April 16, 2006.  The third page shows that the "blogspot.com" subfolder contained eight PDF and Word documents of (presumably) infringing blogspot pages.  Those documents had dates from January to March 2006.  In the Court's view, assuming the "Dates Modified" reflect P10's use of these folders, these three printouts do suggest that by April 16, 2006 Dr. Zada or some other P10 employee had found blogspot to be significant enough to collect blogspot webpages in a subfolder labeled "blogspot." Given the number of images and URLs at issue and the volume of document production in this case, however, these three pages do not refute P10's Reply Declarations to the extent that not until May or June 2006 did P10 become aware of full-size images on Blogger.

Google also cites the extensive press coverage about Google's acquisition of Blogger and documents that both sides produced in discovery that indicate Google's ownership of Blogger as early as 2003.  *See* Herrick Decl., Exs. C-J, M.  For example, Exhibit M is a printout of the Google Help Center webpage, which lists Blogger as one of many Google services and tools.  *Id.*, Ex. M.  Google produced Exhibit M to P10 on April 19, 2005.  *Id.* ¶ 15.  Another exhibit consists of a P10 printout of the Blogger.com home page that shows at the bottom "Copyright © 1999-2006 Google."  Herrick Decl., Ex. C.  That printout is dated March 4, 2006.  Neither Dr. Zada nor Mr. Mausner has stated explicitly when he discovered that Google owned Blogger.[5]  Although all of these exhibits could have placed P10 on notice that it was Google that controlled Blogger, again they are only material to the extent they should have triggered a reasonably vigilant litigant to "put two and two together" and realize that *Google was storing full-size P10 images* on its servers.

The Court finds that these disparate documents, taken singly or together, do not clearly establish that P10 should have "put two and two together" prior to 2006.  In that context, Google's reputation as primarily a search engine operator likely made it more difficult for P10 or any reasonably vigilant plaintiff to connect the dots between blogspot pages and Google's servers, a connection that now appears obvious only in hindsight.  It

---

[5]Dr. Zada stated that when P10 filed its motion for a preliminary injunction in late August 2005 he was not aware that Google owned blogspot.com and blogger.com.  Zada Decl. ¶ 6.  Mr. Mausner stated that he was not aware that Google was storing full-size P10 images on its servers until late 2007.  Mausner Reply Decl. ¶ 2.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

strikes the Court as significant that even today, in connection with its Communications Decency Act defense, Google emphasizes its status as a search engine operator. Based on P10's testimony and the evidence linking Blogger to Google, the earliest that Perfect 10 could be charged with actual or constructive knowledge of both material facts - - the presence of full-size images on Blogger websites *and* Google's ownership of Blogger - - is May 2006.

Assuming P10 should have known these material facts about Blogger in May 2006, the period between May 2006 and the issuance of the first Ninth Circuit opinion on May 16, 2007 should not be attributed to undue delay. Even Google does not argue that P10 could have brought a motion to add the Blogger allegations while the appeal was pending. "The filing of a notice of appeal. . . confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Thus, district courts may not rule on motions to amend a complaint after a court of appeals accepts jurisdiction over an interlocutory appeal, if the proposed amendment implicates factual or legal issues on appeal. *See, e.g.*, *May v. Sheahan*, 226 F.3d 876, 878 (7th Cir. 2000); *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990). P10's proposed amendments seek to revise the factual allegations underlying its claim of direct copyright infringement to include Blogger. The Ninth Circuit appeal addressed precisely that claim. The printouts from blogspot.com and blogger.com that Plaintiff filed as part of this motion would have been relevant to the determination of the likelihood that P10 would succeed in its direct copyright infringement claim. *See* Zada Decl. ¶ 8 & Ex. 4 (showing blogspot webpage dated December 3, 2004 containing P10 image).

### 2. Bad faith

Even assuming that P10 could have moved for leave to amend during the pendency of the appeal, Google's argument that P10 made a bad faith tactical decision to wait until the Ninth Circuit ruled on the appeal lacks merit. Google points to Dr. Zada's Internet search for the Terms of Service for Blogger.com the day after the Ninth Circuit issued its second opinion and contends that P10 is resorting to a "Plan B" or shifting to an entirely new theory of liability. Not so; it is merely adding to its existing allegations about the presence of infringing images on Google's servers. *See* FAC ¶¶ 18-19. Indeed, given

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

that the Blogger allegations strengthen P10's case - - particularly in light of the Ninth Circuit's endorsement of the server test - - it seems unlikely that P10 would withhold those allegations simply to sandbag Google.  This is not like the case of a litigant waiting until the close of discovery, just prior to summary judgment, to decide whether to assert an entirely new theory in order to avoid an adverse summary judgment ruling.  *See, e.g.*, *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986) (not abuse of discretion to deny leave to amend where plaintiffs' attorney admitted that delay in bringing a cause of action was a tactical choice and district court found that plaintiffs' motion to amend was brought to avoid losing on summary judgment).  The Court is not convinced that there has been any bad faith gamesmanship on P10's part; even with a "true believer's zeal," such as that fairly attributable to Dr. Zada, sometimes a plaintiff does not come up with his best game plan at the beginning of the case.

### 3. Undue prejudice

Google's argument that there has been significant litigation already and these Blogger allegations will require significant new discovery is also insufficient to deny leave to amend.  No discovery cut-off or trial date has been set.  Google does not argue that its ability to defend itself is prejudiced due to the passage of time, beyond vague assertions about turnover in employees and having to go back and respond to categories of document requests and other discovery to which it previously responded.  But such new discovery would not be for the same information sought in the prior requests, so in that respect it would not be duplicative.  Moreover, this is the first time P10 has sought leave to amend.  (The FAC was filed as a matter of right.)  For all these reasons, Court finds that justice requires that P10 be allowed to amend its allegations to include Blogger.

//
//
//

### 4. Futility

Google does not argue that the additional Blogger allegations would be a futile amendment.

### B.    California's Unfair Competition Law ("UCL") and Common Law Unfair Competition, Unjust Enrichment, and Misappropriation

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

### 1. Undue delay

Google objects to the addition of the state and common law unfair competition claims, the claim of unjust enrichment, and the misappropriation claim on the grounds that P10 could have brought those claims in the original complaint.  As early as January 2007, P10's counsel sent to defense counsel a draft of a contemplated SAC that included the state and common law unfair competition claims, but P10 did not move to amend at that time.  Herrick Decl. ¶ 20 & Ex. R.  At oral argument, P10's counsel explained that in January 2007 he and Google's former counsel at Winston & Strawn LLP had conferred regarding amendments to P10's state law claims.  P10's counsel represented that Google's counsel had been agreeable to those amendments at that time, but that they mutually agreed to await the Ninth Circuit ruling because they were uncertain whether the amended complaint would affect the appeal.

Google's argument that it is prejudiced by the timing of this amendment is unconvincing.  *See DCD Programs, Ltd.*, 833 F.2d at 186 (delay alone usually will not justify denial of leave to amend).  The UCL and common law unfair competition claims are very similar in their factual basis to the federal unfair competition claim that P10 already pled; presumably that is why P10 grouped all the unfair competition claims under one heading in the SAC.  *Compare* FAC ¶¶ 91-95 *and* Proposed SAC ¶¶ 72-83.  The only difference in the allegations is that the proposed unfair competition claim contains more details concerning Google's use of celebrity names and likenesses than does the current complaint.  Google claims that it is now exposed to punitive damages, but the FAC also contained a prayer for punitive damages and tort claims that could be a basis for punitive damages.

Given the liberality of amendment, it is Google's burden to come forth with reasons why the Court should not allow these amendments.  It has not done so.

### 2. Futility based on preemption

Google contends that P10's proposed state law claims are preempted by the Copyright Act, 17 U.S.C. § 301(a), and the Communications Decency Act ("CDA"), 47 U.S.C. § 230(c).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

a. Communications Decency Act preemption

Google's reliance on the CDA to oppose this motion is misplaced. As P10 correctly argues, preemption under the CDA is an affirmative defense that is not proper to raise in a Rule 12(b)(6) motion. *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) (immunity under 47 U.S.C. § 230(c) is an affirmative defense that plaintiff is not required to plead around). Although P10 reserves this procedural objection, it also claims that it has pleaded around CDA preemption by alleging that Google is an "information content provider." *See Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (explaining that section 230(c) immunity is not available if the online service provider is also an information content provider); Proposed SAC ¶¶ 22, 73, 79, 87 (allegations regarding information content provider). This conclusory allegations is, at best, dubious.

But Google's arguments are geared toward the "merits question" of whether Google is merely a search engine or an information content provider, ignoring altogether the sufficiency of P10's allegations. A proposed claim may be futile if it cannot withstand summary judgment, *i.e.*, if there is no triable issue of material fact. *Calif. ex rel. Calif. Dept. of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673-74 (9th Cir. 2004). But Google merely asserts that it is common knowledge that Google is not a content provider. The cases that it cites that appear to describe Google as a mere passive search engine are cited out of context. *See, e.g.*, *Maughan v. Google Technology, Inc.*, 143 Cal.App.4th 1242, 1258 (2006) (dissenting judge citing to a Google software engineer's statement regarding Google's automated search process, in determining the reasonableness of Google's fee request). Here, the very fact that Google owns Blogger indicates that Google is not just in the search engine business.

The question whether any of Google's conduct disqualifies it for immunity under the CDA will undoubtedly be fact-intensive. Neither party has proffered evidence sufficient for the Court to determine at this stage whether Google is entitled to CDA immunity. Although it is highly likely that P10 will encounter difficulty in establishing that Google engaged in the "creation or development in whole or in part" of unlawful content, *see Fair Housing Council*, 521 F.3d at 1168-69, it would be improper for the Court to resolve this issue on the pleadings and the limited evidentiary record before it.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

b. Copyright Act preemption

Google's argument about Copyright Act preemption is also unpersuasive.  The Copyright Act preempts a state law claim if two conditions are met: the content of the copyrighted works must fall within the "subject matter" of copyright and the right asserted under state law must be "equivalent" to those protected exclusively by section 106 of the Act.  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137-38 (9th Cir. 2006).  To survive preemption under the "equivalent rights" part of the test, the state law claim must contain an element that is "qualitatively different from the copyright rights." *Laws*, 448 F.3d at 1143 (quoting *Del Madera Props. v. Rhodes & Gardner*, 820 F.2d 973, 977 (9th Cir. 1987)).  *See also Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327, 1342 (Cal. Ct. App.  1990) (courts must examine the underlying theory of unfair competition to determine whether it contains the necessary qualitatively different extra element distinguishing it from copyright).

Google argues that P10's proposed state law-based claims are preempted because the essence and underlying nature of all of those claims is the protection of its copyrights. It does not argue that all such claims are preempted generally by section 301; instead, it argues that they are preempted as applied to the factual allegations in the proposed complaint.  Google has a high bar to establish futility: "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense."  *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

The Copyright Act does not preempt P10's state law unfair competition claims. P10 invokes trademark rights and right of publicity as the underlying violations for its unfair competition claim.  Google challenges only the right of publicity basis for the unfair competition claim.  Its argument fails for the purposes of this motion because it has not established that P10's publicity claim involves rights that fall within the subject matter of copyright.  As P10's allegations make clear, the publicity claim seeks to protect the names and likenesses of P10 models, the rights to which P10 claims to own as exclusive assignee.  Proposed SAC ¶¶ 85-88.  The Ninth Circuit has made clear that although a photograph is a work of authorship protected by the Copyright Act, the names and likenesses in the photograph are not.  *Downing v. Abercrombie & Fitch,* 265 F.3d 994, 1003-04 (9th Cir. 2001).   As in *Downing,* P10's publicity claim is not preempted

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

because it is based on the use of the models' names and likenesses, notwithstanding the fact that the names and likenesses are embodied in a copyrightable photograph.  *Id.* at 1004.

P10's unjust enrichment and misappropriation claims also are not necessarily preempted by the Copyright Act.  Google argues that those claims are preempted because they are based on the taking of copyrighted works.  In alleging the basis for its unjust enrichment claim, P10 specifically avoided relying on its copyright claims.  Proposed SAC ¶ 93.  To the extent its unjust enrichment theory of relief is based on nonpreempted claims - - *i.e.*, right of publicity, trademark - - the unjust enrichment claim is not preempted by the Copyright Act.  Similarly, P10's common law misappropriation claim[6] is not preempted, to the extent it seeks to protect content that its not the subject matter of copyright.  True, P10 alleges that Google "appropriated and used P10's property."  Proposed SAC ¶¶ 98-99.  For that claim to be preempted, however, the "property" would have to refer to the copyrighted images, as opposed to the names and likenesses of the model.  P10 has alleged that it is the exclusive assignee of publicity rights in the names and likenesses of the models.  *Id.* ¶ 85.  Hence, its reference to property could include those non-copyrightable rights.

Google has not shown that there is no set of facts that P10 can prove under its allegations that would constitute valid claims for unfair competition, unjust enrichment, and misappropriation.

### 3. P10's standing to assert a UCL claim regarding celebrities

P10's proposed amendments also include allegations that Google's display and distribution of the names and images of celebrities (who are not P10 models) constitute unfair competition.  Proposed SAC ¶¶ 75-76.  The gist of those allegations is that Google earns revenue by juxtaposing advertisements from Google's AdSense partners next to unauthorized images of celebrities and by permitting AdWords partners to use as

---

[6]The Court assumes P10's misappropriation claim is under the common law, not California Civil Code § 3344, which P10 invokes for its publicity claim.  *See Laws*, 448 F.3d at 1138 (noting that § 3344 provides a cause of action for statutory misappropriation or violation of right of publicity).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|----------|----------------------|------|---------------|

| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* |
|-------|---------------------------------------------|

keywords for their websites the names of celebrities in order to attract user clicks.  *Id.*

Google argues that P10 lacks standing to assert claims regarding celebrities because it "must have suffered injury as a result of Google's alleged conduct" and because it has not alleged that it owns rights to those celebrities' names and images. California Business & Professions Code § 17204 does require that a litigant seeking relief under the UCL "suffered injury in fact and has lost money or property as a result of the unfair competition."  Obviously intending to satisfy this requirement, P10 has alleged that as a competitor it has been directly injured by Google's allowing free access to not just P10 images but also celebrity images.  Proposed SAC ¶ 73.  As P10 puts it, "How can Perfect 10 possibly compete, when it charges a fee for only a tiny fraction of the content that Google gives away?"  Reply at 23; *see also* Proposed SAC ¶¶ 26(a).  To survive a motion to dismiss a UCL claim, a plaintiff must only plead the facts underlying its claim of injury in fact with reasonable particularity.  *See Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1217 (S.D. Cal. 2007) (noting that state courts require that section 17200 allegations be pleaded with "reasonable particularity") (quoting *Khoury v. Maly's of Calif., Inc.*, 14 Cal.App.4th 612, 619 (Cal. Ct. App. 1993)).  For the purposes of Rule 15, therefore, Google has not demonstrated that P10's allegation of injury is so weak that it renders the UCL claim futile.

## C.   Additional Factual Allegations Regarding Unfair Competition and Right of Publicity

P10's proposed SAC would add several factual allegations to its existing unfair competition claim under the Lanham Act and its existing right of publicity claim.  Google argues that P10 has unduly delayed, but does not specifically target any of the proposed allegations.  P10 does not address this objection in its reply.

A comparison of the unfair competition allegations in the FAC (¶¶ 91-95) and the Proposed SAC (¶¶ 72-83) reveals the following essential differences.  First, P10 added allegations about Blogger (Proposed SAC ¶ 73) and about Google's profiting from celebrity names and likenesses (*id.* ¶¶ 76).  It also elaborated on its previous allegations of Google's unauthorized use of P10 passwords (*id.* ¶ 77; FAC ¶ 25(d).  Finally, P10 makes a new allegation that Google searches of P10 models' names lead to search results consisting of actual images of P10 models placed next to sexually explicit images that

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | | Date | July 16, 2008 |
|---|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | | |

wrongly portray them to be involved in sexually explicit acts (Proposed SAC ¶ 80). According to Dr. Zada, these Google search results first surfaced in March 2007.[7]  Zada Decl. ¶ 16.

Of the additional allegations, the only one that is entirely new is the allegation about Google's use of celebrities.  Neither side has addressed when P10 became aware of the facts regarding the celebrities.  Meanwhile, Google has not offered any specific reasons to reject these proposed amendments.  In the Court's view, these changes simply clarify the factual basis for the unfair competition claim.  Given the liberality of amendment and the absence of specific objections from Google, the Court will permit these changes to the unfair competition claim.

Similarly, Google opposes P10's additional factual allegations for its right of publicity claim without providing any specific reasons.  To the factual allegations supporting the publicity claim P10 seeks to add the previously described allegation about the wrongful depiction of P10 models adjacent to sexually explicit pornography in Google's image search results (SAC ¶ 87) and to add details about Google's advertising revenues (SAC ¶¶ 88-89).  *Compare* FAC ¶¶ 108-112 *and* Proposed SAC ¶¶ 84-89. These allegations are not unduly delayed and primarily seek to clarify the factual basis for the publicity claim.  Thus, the Court will allow these amendments.

### E.      653 Pending Copyrights

Attached as Exhibit 7 to the Proposed SAC is a list of 951 copyrights that P10 seeks to add to the case, 653 of which were still pending at the time P10 submitted the list to Google.  Since then, P10 reports, the U.S. Copyright Office has issued 64 of those pending registrations.  P10 also represents that it will only seek damages for those copyrights that are actually registered at the time of trial.  Basically, P10 wants to be able to seek damages for all of its registered copyrights by simply updating the list of its copyrights at suit, up to the time of trial.  (Reply at 24.)

Google argues that the Court should not permit the pending copyrights to be a part

---

[7]According to Proposed SAC ¶ 20, however, the Google search results that contained P10 images mixed in with sexually explicit images began in September 2007.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

of the SAC because it lacks subject matter jurisdiction over claims of infringement of pending copyrights.  The very case Google cites, *Loree Rodkin Management Corp. v. Ross-Simons*, Inc., 315 F.Supp.2d 1053, 1054 (C.D. Cal. 2004) observes that there is a clear split in authority on the issue.  On that basis alone it would seem that P10's inclusion of pending copyrights is not futile.

        Perhaps more to the point is that the Ninth Circuit already held in this case that the district court had jurisdiction to grant injunctive relief to restrain infringement of unregistered copyrights.  *Amazon.com*, 487 F.3d at 710 n. 1. In doing so, the Ninth Circuit cited *Olan Mills, Inc. v. Linn Photo Co.*, 23 F.3d 1345, 1349 (8th Cir. 1994), which held that the district court had jurisdiction to entertain a request for a permanent injunction against future infringement of plaintiff's unregistered copyrighted photographs.  The *Olan Mills* court also noted that although registration is a prerequisite to bringing suit, it is not a condition of copyright protection, and "[t]he timing of registration only determines whether the copyright holder can recover statutory as opposed to actual damages." *Id.* (citations omitted).  This case law, although far from definitive, suggests that the district court's jurisdiction extends to unregistered copyrights, at least to the extent injunctive relief is sought.  On that basis, the Court finds that the inclusion of unregistered copyrights in the SAC is not futile.  The Court need not address the ultimate question that this situation raises: Whether P10 would be entitled to recover damages for copyrights that were infringed but which were not registered at the time P10 filed the copyright claim.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 16, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

**IV.   CONCLUSION**

For the foregoing reasons, the Court GRANTS P10's motion.[8]

_____ :  _____

Initials of Preparer                         SMO

_____

[8]At the hearing the Court ordered counsel to meet and confer and propose a method, including time deadlines, for newly-registered copyrights to be specific as within the scope of the SAC, to avoid *seriatim* amendments.