1 | [COUNSEL LISTING ON FOLLOWING PAGE]

2

3

4

5

6

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)] |
| Plaintiff, | **JOINT STIPULATION ON GOOGLE INC.'S MOTION FOR PARTIAL RECONSIDERATION OF PROTECTIVE ORDER TO DESIGNATE ONE CATEGORY OF DOCUMENTS AS OUTSIDE COUNSEL'S EYES ONLY** |
| vs. | |
| GOOGLE INC., a corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | |
| AND COUNTERCLAIM | Hon. Stephen J. Hillman |
| PERFECT 10, INC., a California corporation, | **PUBLIC REDACTED:** PORTIONS FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER |
| Plaintiff, | |
| vs. | |
| AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1    QUINN EMANUEL URQUHART
     OLIVER & HEDGES, LLP
2      Michael T. Zeller (Bar No. 196417)
       michaelzeller@quinnemanuel.com
3    865 South Figueroa Street, 10th Floor
     Los Angeles, California 90017-2543
4    Telephone:  (213) 443-3000
     Facsimile:  (213) 443-3100
5
       Charles K. Verhoeven (Bar No. 170151)
6      charlesverhoeven@quinnemanuel.com
       Rachel M. Herrick (Bar No. 191060)
7      rachelherrick@quinnemanuel.com
     555 Twin Dolphin Drive, Suite 560
8    Redwood Shores, California 94065-213

9    Attorneys for Defendant Google Inc.

10   LAW OFFICES OF JEFFREY N. MAUSNER
     Jeffrey N. Mausner
11   Warner Center Towers
     21800 Oxnard Street, Suite 910
12   Woodland Hills, CA 91367
     Telephone:  818-992-7500
13   Facsimile:   818-716-2773

14   Attorneys for Plaintiff Perfect 10, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

2         PLEASE TAKE NOTICE that Google Inc. ("Google") hereby moves the

3  Court for partial reconsideration of the Protective Order entered in this case, in order

4  to limit access to one category of documents (those regarding image recognition

5  technology) to outside counsel of record only.  Pursuant to the Court's order from the

6  bench on July 14, 2008, Google does not notice a hearing date for this motion, with

7  the understanding that the Court will, at its election, either rule on the motion without

8  hearing or issue an order setting a hearing date.

9         Google's motion is based on this Notice of Motion and Motion; the

10 Memorandum of Points and Authorities submitted herewith; all other pleadings and

11 matters of record in this case; and such other evidence of which this Court may take

12 judicial notice.

13         CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7-3

14         This motion is made following the conference of counsel (pursuant to Local

15 Rule 7-3) on April 29, 2008 and on dates thereafter.

16

17 DATED:  August 4, 2008              QUINN EMANUEL URQUHART OLIVER &
                                        HEDGES, LLP
18

19                                  By  *Rachel M. Herrick /TN*

20                                      Rachel M. Herrick
                                        Attorneys for Defendant Google Inc.
21

22

23

24

25

26

27

28

1                                  **JOINT STIPULATION**

2   **INTRODUCTION**

3         **A.**    **Google's Preliminary Statement**

4            On December 27, 2005, the Court entered a Protective Order which

5 allows Perfect 10, Inc.'s CEO, Norman Zada, to access all information and documents

6 produced by Google in the case, including information designated Confidential

7 and/or Highly Confidential.  However, the Court also stated that it would permit

8       defendants to revisit the issue on a very limited basis, when and if there are
9       business and technological "trade secrets" about to be disclosed, which secrets
       defendants believe are currently so commercially sensitive that partial
10      reconsideration of the Protective Order is justified.

11 Minute Order on Google's Motion for Entry of Protective Order, 12/27/05 ("Minute

12 Order") at 3.[1]  Google does so now regarding one narrowly category of documents

13 containing confidential and proprietary information of the highest order:  Documents

14 regarding Google's efforts to use and develop image recognition technology.[2]

15           Google has already produced documents of this type to Perfect 10 in this

16 case, subject to temporary "Outside Counsel's Eyes Only" ("OCEO") restrictions.

17

18        _____

19   [1]   Perfect 10 has repeatedly threatened to seek sanctions against Google if Google
followed the precise procedure set out by the Court in its December 27, 2005 Order.
20 Perfect 10's threat of sanctions is frivolous.

21   [2]   Google originally sought outside counsel's eyes only status for two categories
of documents—image recognition technology documents, and total query count
22 documents.  Following the July 14 status conference, Google made a further effort to
compromise by agreeing to withdraw its request as to query count documents, if
23 Perfect 10 would agree to an "Outside Counsel's Eyes Only" designation for just one
24 category of documents, those regarding image recognition.  Perfect 10 refused
Google's offer of compromise.  Nevertheless, Google has withdrawn its Motion with
25 respect to search query count documents to demonstrate to this Court (1) Google's
26 good faith in attempting to make every possible concession during the meet and
confer process in hopes of avoiding motion practice, and (2) Google's attempt to seek
27 special protection for the narrowest possible universe of documents.

28

1    Google originally approached Perfect 10 with its request for an OCEO designation of
2    these documents by letter on April 29, 2008. Perfect 10 agreed to a temporary OCEO
3    designation, until such time as the parties could approach the Court on this issue.[3]

4           By this Motion, Google is *not* seeking to re-litigate the Court's prior
5    determination giving Dr. Zada access to broad categories of confidential materials.
6    Rather, Google is following the precise procedure this Court established for
7    "commercially sensitive" documents. Google's request is narrowly drawn, and
8    limited to just a single category of documents, amounting to a mere **78 pages** (out of
9    Google's 45,000+ page production). This motion is also based on representations
10   made by Perfect 10 following entry of the Protective Order to the effect that Perfect
11   10 is a competitor, potential competitor or business associate of a competitor of
12   Google's in the image recognition technology field. In such a situation, special
13   protection is warranted because these documents contain "crown jewel"-type trade
14   secrets of a technology company such as Google. Google guards them fiercely.
15   Public disclosure—even if inadvertent—could be devastating to Google, and could
16   undermine years of work in very short order. These are precisely the types of
17   "business and technological 'trade secrets'" that are "so commercially sensitive" that
18   reconsideration of the Court's Protective Order is justified.

19

20

---

21     [3]   Pursuant to this agreement, Google produced image recognition technology
22   documents on May 20, 2008. In preparation for its June 16, 2008 production, Google
23   sought Perfect 10's confirmation that the temporary agreement would cover more
     documents of the types previously agreed upon, and sought to set a briefing schedule
24   for Google's motion. Perfect 10 refused to so agree, and repeated its baseless threat
25   of sanctions. Google then approached the Court for relief. At a July 14, 2008
     hearing, the Court granted Google's request for temporary maintenance of the OCEO
26   designation of these documents, and ordered the parties to file this Joint Stipulation
27   today, August 4, 2008. Google now seeks to make that provisional agreement and
     Order permanent as to documents reflecting image recognition technology.

28

1          In its portions of this Joint Stipulation, instead of addressing Google's
2   arguments, Perfect 10 raises a number of irrelevant issues—including how Perfect 10
3   believes image recognition technology fits into its case, what it believes the contents
4   of Google's image recognition technology documents reflect, and whether Google
5   was candid in its 2005 filings related to Perfect 10's motion for preliminary injunction
6   and in the subsequent appeal.  Perfect 10 also makes accusations regarding the
7   sufficiency of various aspects of Google's document production.[4]  Not only are
8   Perfect 10's accusations clearly and demonstrably false (as reflected by Perfect 10's
9   failure to offer even a scintilla of evidence to support them), it is *completely*
10  *irrelevant* to the *only* issue before the Court at this time:  Namely, whether Google
11  has demonstrated that a limited set of documents containing its technological trade
12  secrets should be given the utmost protection, when Perfect 10 has admitted that it is
13  *actually using* similar technology from Google's *competitor*, and when Dr. Zada
14  *himself* claims *actual expertise* in that technology.  For these reasons alone, Perfect
15  10's red-herring arguments should be rejected out of hand.

16         Perfect 10 has raised no compelling arguments as to why Google's
17  motion should not be granted.  As Perfect 10 does not and cannot dispute, clearly
18  established governing law entitles Google to the utmost of protections for its trade
19  secrets.  *Google has not located a single reported case where a court granted an*
20  *officer or employee of the opposing party access to documents containing its*
21  *opponents trade secrets*—nor does Perfect 10 cite such a case.

22

23
_____

24     [4]   Even assuming these issues are somehow relevant here—which they are not—
25  Perfect 10 is wrong on all counts.  Perfect 10's attempt to mischaracterize a discovery
    ruling by Judge Matz as a ruling on the merits of the issue of contributory
26  infringement pursuant to the standard enunciated by the Ninth Circuit is a non
27  sequitur, and is wholly unsupported by the very Orders Perfect 10 quotes.  Perfect 10
    is getting ahead of itself, delving into issues not currently before this Court.

28

1        Google need only show that (1) Google's image recognition technology

2 documents contain its trade secrets, (2) Perfect 10 uses and claims expertise in similar

3 technology and has an admitted relationship with a Google competitor in this space,

4 and (3) Google would suffer serious harm if its trade secrets were inadvertently

5 disclosed. Having made these showings, Google's motion should be granted.

## B.   Perfect 10's Preliminary Statement

7        Perfect 10 believes that Google misled both the District Court and Court of

8 Appeals into believing that image recognition technology was not available, at the

9 time of the preliminary injunction motion, to locate infringing images in Google's

10 image search index. That was, and is, a critical aspect of this case. The standard

11 imposed by the Ninth Circuit for contributory liability is the following:

> There is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones. Applying our test, Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, ***could take simple measures to prevent further damage to Perfect 10's copyrighted works***, and failed to take such steps.

17 *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (emphasis

18 added). Image recognition is a simple measure that Google could take to prevent

19 further damage to Perfect 10's copyrighted works.

20        The Ninth Circuit also held as follows regarding vicarious liability: "Without

21 image-recognition technology, Google lacks the practical ability to police the

22 infringing activities of third-party websites. This distinguishes Google from the

23 defendants held liable in *Napster* and *Fonovisa*." *Id.* 508 F.3d at 1174.

24        Judge Matz recognized the importance of image recognition in this case. In the

25 hearing on Google's objections to Judge Hillman's Discovery Order, Judge Matz

26 stated:

> Now, when I was dealing with the motion [for preliminary injunction], I made certain findings, or at least observations, that are related to the existence, if any, of Image Recognition Software, and what I supposedly

-4-

1  found -- and my gloss on it -- was quoted in the amended opinion of the
   Ninth Circuit at Page 1174. That's 508 F.3d at Page 1174.  The key
2  language which underlies my ruling on this disputed provision of Judge
   Hillman's order that is the language of the Ninth Circuit said, quote,
3  "Without image recognition technology, Google lacks the practical
   ability to police the infringing activities of third-party websites," end
4  quote.  That language inherently confirms what I think common sense
   would warrant a finding for, and that is that the existence or non-
5  existence, as the case may be, of image recognition technology is highly
   relevant.  I don't understand how you can argue, as I think you have on
6  this motion, Mr. Zeller, that it's not relevant. It either exists or it doesn't.
   It may not have existed when I was grappling with this a few years ago.
7  If it exists now or in what manner it exists or in what capacity it can be
   applied is highly relevant. I think Judge Hillman's order is absolutely
8  appropriate. I see no basis to overrule it.

9  Reporter's Transcript Of Proceedings, April 14, 2008, hearing before Judge Matz on

10 Objections to Discovery Order, page 25 line 3 to page 26 line 1, attached as Exhibit 3

11 to Mausner declaration.

12     Judge Matz therefore ordered Google to produce "documents sufficient to

13 describe Google's attempts to develop or use any image recognition software capable

14 of matching a known still photographic image with another image in Google's search

15 engine index or search engine database.  Google is not ordered to produce documents

16 regarding any other types of image recognition technology." May 13, 2008 Order,

17 page 4, lines 12-16 (Pacer No. 294), attached as Exhibit 4 to Mausner declaration.

18     Google produced 78 pages in response to this Order, documents numbered

19 GGL 033446-033524.  A copy of these pages should be submitted to the Court under

20 seal by Google, so that the Court may examine them. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26 However, it is necessary for Dr. Zada to see this document, determine definitively if

27 that is the case, and to assist in litigating this issue. ▮▮▮▮▮▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1
2
3

4      Perfect 10 has one objective, to protect what is left of its business and its
5  intellectual property from Google. The last thing Perfect 10 would want to do is to
6  give Google an excuse for claiming that Perfect 10 misused trade secrets obtained in
7  this case, which would be disastrous for Perfect 10. So that is simply not going to
8  happen. It has not happened, and it will not happen. The last time the protective
9  order was before the Court, Google made the same inapt argument that Perfect 10 is a
10  competitor. When Google steals everything that Perfect 10 owns and uses it to draw
11  users to Google.com and away from perfect10.com, and to make money by placing
12  AdSense ads around the stolen pictures, Perfect 10 is not a competitor -- it is a victim.
13  Perfect 10 is not in the search engine or image recognition business. It is simply a
14  copyright owner trying to protect its copyrights. While Google competes, unfairly,
15  with Perfect 10 in offering adult content, Perfect 10 does not compete with Google in
16  offering search engine services or image recognition technology. The cases cited by
17  Google involve direct competitors. None of those cases involve a situation like this.[5]

18      Dr. Zada has been participating in lawsuits with protective orders and has had
19  access to the highest level of confidential information for seven years. There has
20  never been a hint that Dr. Zada has breached a protective order. There is simply
21  nothing that would justify a change in the protective order.

22
23                                                      Those instructions were

24  ─────────────
25      [5] Dr. Zada does not have a close business relationship with PicScout. Perfect 10
26  has simply paid them $5,000 to locate infringing images. An employee of PicScout
    submitted a declaration for Perfect 10 regarding PicScout's search capability.
27      (footnote continued)
28

1 │ that parties avoid unnecessary motion practice by relitigating issues that have already

2 │ been decided.  (*See Perfect 10 v. Microsoft*, transcript of scheduling conference,

3 │ pages 6-8, attached as Exhibit 5 to Mausner declaration.)  This is an egregious

4 │ example of that, since the issue was already decided in this very case.  Google's

5 │ motion should be denied.

6 │ **GOOGLE'S POSITION REGARDING ITS MOTION FOR PARTIAL**

7 │ **RECONSIDERATION OF THE PROTECTIVE ORDER**

8 │ **I.      GOOGLE HAS DEMONSTRATED "GOOD CAUSE" FOR LIMITING**

9 │ **ACCESS TO DOCUMENTS REFLECTING IMAGE RECOGNITION**

10 │ **TECHNOLOGY TO OUTSIDE COUNSEL'S EYES ONLY**

11 │ **A.      This Court Should Reconsider its Protective Order With Respect To**

12 │ **One Narrow Category of Documents, Now That Perfect 10 Contends**

13 │ **That Perfect 10 and Google Are Competitors in Certain Respects.**

14 │ Under the Court's ruling, Google may seek further protections—

15 │ including outside counsel's eyes only protection—for "business and technological

16 │ 'trade secrets' [which are] so commercially sensitive that partial reconsideration of the

17 │ Protective Order is justified."  The Court's analysis will be informed by <u>Fed. R. Civ.</u>

18 │ <u>P.</u> 26(c)(G), providing that the Court may, "for good cause, issue an order …

19 │ requiring that a trade secret or other confidential research, development, or

20 │ commercial information not be revealed or be revealed only in a specified way."  As

21 │ this Court recently found,  "[c]ourts commonly issue protective orders limiting access

22 │ to sensitive information to counsel and their experts."  <u>Nutratech, Inc. v. Syntech</u>

23 │ <u>(SSPF) Intern., Inc.</u>, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citation omitted).

24 │ These concerns are only elevated where, as here, a party seeks discovery

25 │ of confidential and proprietary information when the parties are actual, potential, or

26 │

27 │ PicScout is based in Israel and Dr. Zada rarely communicates with them. (Zada

28 │ (footnote continued)

1 even arguable competitors in a particular field.  <u>See, e.g.</u>, <u>Armour of America v.</u>
2 <u>United States</u>, 73 Fed.Cl. 597, 600 (Fed. Cl. 2006); <u>Pepsi-Cola Bottling Co. of</u>
3 <u>Pittsburg, Inc. v. Bottling Group, L.L.C.</u>, 2008 WL 234326, at *4 (D. Kan. Jan. 28,
4 2008) (ordering financial information to be designated as "Attorneys' Eyes Only" for
5 discovery between competitors); <u>Netquote, Inc. v. Byrd</u>, 2007 WL 2438947, at *4 (D.
6 Colo. Aug. 23, 2007) (limiting discovery of financial information and customer lists
7 between competitors to "attorney-eyes-only"); <u>Avocent Redmond Corp. v. Rose</u>
8 <u>Elecs., Inc.</u>, 242 F.R.D. 574, 576 (W.D. Wash. 2007); <u>Gaymar Indus., Inc. v. Cloud</u>
9 <u>Nine, LLC</u>, 2007 WL 582948, at *3-4 (D. Utah Feb. 20, 2007) (ordering "Attorneys'
10 Eyes Only" designation for technical and financial information discovery between
11 competitors); <u>Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.</u>, 682
12 F.Supp. 20, 22 (D. Del. 1988) (restricting access to research and development,
13 production, and sales of certain proprietary technology to "attorney's eyes only").

14        Here, in persuading the Court to enter the current Protective Order,
15 Perfect 10 previously disclaimed that it was a "competitor" of Google.  <u>See</u> Minute
16 Order at 2; <u>see also</u> Declaration of Rachel M. Herrick, dated July 21, 2008 ("Herrick
17 Decl."), at Ex. A, page 25-26 ("Perfect 10 and Google are not competitors in the
18 search engine business").  In fact, however, as Perfect 10 has since made clear, its
19 core theory of copyright liability is that Google **is** a "competitor," because Google's
20 search engines allegedly compete with Perfect 10's content.  Perfect 10's recently-
21 allowed Second Amended Complaint alleges this competition in no uncertain terms.
22 <u>See</u> Second Amended Complaint ¶ 73 (Google's "conduct enables Google to **compete**
23 **directly** and unfairly with Perfect 10....") (emphasis added); <u>id.</u> ¶ 79 ("Google has in
24 effect become the world's largest adult website ....").[6]

25

26 decl.)
27   [6]  Perfect 10 falsely claims that Google has misled the Court regarding image
   recognition technology.  Unfortunately, Perfect 10's baseless accusations of deception
28   (footnote continued)

1    More specifically, as discussed below, Perfect 10 is currently using
2 image recognition technology in its business—and claims that Dr. Zada has the
3 technical expertise to understand the contents of Google's image recognition
4 technology documents. Perfect 10 also has a close business relationship with a
5 company, PicScout, that also is in the business of image recognition technology.
6 While Perfect 10 may have disclaimed being Google's competitor in the search
7 engine business, that is irrelevant to whether Perfect 10 is an actual or potential
8 competitor in the image recognition space. By Perfect 10's own claims and conduct,
9 Google and Perfect 10 are competitors in this space, and the "competitor" case law
10 regarding protective orders applies here.

11    Perfect 10's demand to see a competitor's documents regarding
12 technology research and development is simply unprecedented. This is the sort of
13 confidential and proprietary information that courts routinely protect by limiting
14 access to attorney's eyes only. *Google has not located a single reported case where*
15 *a court found "good cause" for an attorney's eyes only limitation, but nevertheless*
16 *permitted an officer or employee of the opposing party to access the information*.
17 In contrast, many cases have limited access to such information to outside counsel
18 only, explicitly rejecting requests from employees and officers of parties to have such
19 access. See, e.g., Nutratech, 242 F.R.D. at 556 (rejecting claim by a party's president
20 that he needed access to confidential information in order to "assist, advise and direct
21 Nutratech's counsel," noting that attorneys "commonly manage to conduct discovery

22

---

23 are a constant refrain in this case. Indeed, Judge Matz recently rejected another series
24 of similar accusations as "dubious." Order Granting Perfect 10's Mot. for Leave to
   File a Sec. Am. Compl., dated July 16, 2008, at 6 n.4. Here, other than a bare
25 allegation from Perfect 10's attorney—who claims he has no expertise in this field—
26 Perfect 10 provides no evidence that Google misled this Court on this or any other
   matter—because Google has never done so. Plainly, Perfect 10 is seeking to force
27    (footnote continued)

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
                                                          with Case No. CV 05-4753 AHM (SHx)]
GOOGLE'S MOTION FOR PARTIAL RECONSIDERATION OF PROTECTIVE ORDER

1   and litigation strategy without revealing such [confidential] information to their

2   clients."); <u>Vesta Corset Co. v. Carmen Foundations</u>, 1999 WL 13257 (S.D.N.Y.

3   1999) (denying request of the presidents of both parties to have access to confidential

4   business information, even when discovery of that information was necessary for

5   prosecution of the case).[7]

6   **B.      Documents Regarding Google's Image Recognition Technology**

7           **Research and Development are So Commercially Sensitive That**

8           **They Warrant the Highest Level of Protection Available.**

9           Because Google's efforts to develop and use image recognition

10  technology are extremely sensitive and proprietary and reflect some of Google's most

11  cutting-edge research and development, Google requests that access to these

12  documents be strictly limited to outside counsel of record's eyes only.  Google is a

13  technology company, and this information goes to the heart of Google's proprietary

14  and confidential research and development efforts.  <u>See</u> Declaration of Chuck

15  Rosenberg, dated July 21, 2008 ("Rosenberg Decl."), at ¶ 3.  Image recognition

16  technology remains in its infancy, but it is a rapidly developing space with significant

17  competition in the market.  <u>Id.</u>  Google closely guards this proprietary information by

18  storing it in secure locations and keeping it under strict terms of non-disclosure—

19  indeed, although it is a matter of public record that Google employees have published

20  papers on certain aspects of image recognition technology, Google *never* discloses

21  _____

22  Google to disclose its proprietary technology secrets in public filings in order to rebut
    Perfect 10's baseless accusations. which should be rejected out of hand.
23  [7]   Indeed, courts have generally found it unacceptable for in-house counsel—
24  much less actual parties—to have access to AEO materials.  <u>See</u> Brown Bag Software
    <u>v. Symantec Corp.</u>, 960 F.2d 1465 (9th Cir. 1992) (restricting access to proprietary
25  source code and developmental plans to "attorney's eyes only," and precluding
26  defendant's in-house counsel from viewing such materials); <u>Intel Corp. v. Via</u>
    <u>Technologies</u>, 198 F.R.D. 525 (N.D. Cal. 2000) (refusing to modify a protective order
27  to give access to confidential materials to an in-house lawyer).

28

1  the engineering details of the operation of the technology outside the company.[8]  Id.
2  at ¶ 4. Because such technology in this highly competitive space would be extremely
3  valuable if developed, disclosure of proprietary information could be devastating to
4  Google's efforts to innovate in this field. Id. at ¶ 5. Even the fact that Google is
5  developing technology in a particular area can put Google at a competitive
6  disadvantage if disclosed. Id.

7        In the face of such a heightened risk of financial and competitive harm,
8  Courts have repeatedly found that such technological information is deserving of
9  special protections. See, e.g., Davis v. AT&T Corp., 1998 WL 912012, at *2
10 (W.D.N.Y. 1998) ("Courts often afford fuller protection to technical, proprietary
11 information than that extended to ordinary business information.") (citing Safe Flight
12 Instrument Corp., 682 F.Supp.2d at 22).

13       The primary risk to Google if this information were disclosed
14 (intentionally or inadvertently) is that Google's actual or potential competitors could
15 simply appropriate Google's research and development efforts for their own
16 commercial purposes. Rosenberg Decl. ¶ 5. Another risk, however, is that this
17 information could allow Google users to actually circumvent Google's services that
18 employ image recognition. For example, one potential use of image recognition is to
19 detect and filter out pornography (typically images with a large proportion of flesh

20

21        [8]  Perfect 10 submits a declaration from Dr. Zada, attaching two exhibits, in what
22 appears to be an attempt to argue that Google's image recognition technology is
23 public information. Not only is Dr. Zada's declaration incompetent to rebut the sworn
   declaration of Google employee Chuck Rosenberg, neither of the exhibits actually
24 supports this point. Regarding Exhibit 1, Google is *not* seeking OCEO protection for
25 published articles; it is seeking such protection for the actual proprietary technology
   reflected in the 78 pages of documents at issue. Regarding Exhibit 2, the highlighted
26 portion is merely a statement that Google is capable of matching two identical
27 electronic files. That has nothing to do with image recognition technology, or with
   this motion—as Dr. Zada would well know if he were indeed an expert in this field.
28

1  tones) in its search results.  Rosenberg Decl. ¶ 6.  Were information about Google's
2  technology to fall into the wrong hands, content providers displaying inappropriate or
3  illicit information could use their knowledge of Google's system to circumvent it in
4  hopes that their content will be displayed in Google search results.  Id. at ¶ 6.  Indeed,
5  third parties already have tried to work around the filters Google is currently using,
6  including filters for Image Search.  Id.

7          An OCEO limitation is the highest level of protection this Court can
8  confer, and is fully consistent with the Court's prior ruling that Dr. Zada should be
9  permitted to see the majority of documents produced in this case.  Although Google
10  has previously sought to create a "tier" of confidentiality to which Dr. Zada would not
11  have access, Perfect 10 objected to that proposed "tier" primarily on the ground that
12  Google allegedly intended to preclude Dr. Zada from accessing virtually every
13  document in the case by "designat[ing] all non-public information as Confidential."
14  Herrick Decl., at Ex. A (Joint Stipulation re. Google's Motion for Entry of Its
15  Protective Order, filed November 22, 2005, at 6).  Setting aside the relative merit of
16  Perfect 10's accusation back in 2005, nothing could be further from the truth here and
17  now.  Google is *not* seeking to preclude Dr. Zada from accessing large quantities of
18  documents, or to create a mechanism whereby Google could freely designate some
19  undefined set of documents as OCEO.  Instead, Google has narrowly tailored its
20  request to limit access *only* to one clearly-defined category of documents, currently
21  comprised of just 78 pages of documents out of Google's 45,000+ page document
22  production.  Those 78 pages contain some of Google's most prized, most confidential,
23  and most protected technological research and development in image recognition
24  technology, and deserve the highest level of protection permitted by this Court.[9]

25

26  [9]  Perfect 10 blithely objects that Google's motion is somehow untimely.  This is
27  absurd.  Google was actively meeting and conferring with Perfect 10 during the last 2
    1/2 months in the hopes that it could *avoid* bringing this to the Court.  Google's
28  (footnote continued)

1    In addition to being consistent with the Court's prior rulings, Google's
2 request is necessary and appropriate. Perfect 10 has and surely will argue that Dr.
3 Zada can be "trusted" with this information, because he has not violated the terms of
4 this (or other) protective orders. That is beside the point. Google's request has
5 nothing to do with Dr. Zada's integrity. Instead, Google's request is based on the
6 *extreme* sensitivity of this information, as is Google's right. The governing legal test
7 has nothing to do with the trustworthiness of the party to whom the documents are to
8 be disclosed. See, e.g., Brown Bag Software, 960 F.2d at 1470-72 (affirming
9 protective order limiting in-house counsel from access to trade secrets, *despite*
10 *assurances of protection and good faith and absent any reason to doubt those*
11 *assurances*, because of the risk of inadvertent disclosure). Rather, the test focuses on
12 the sensitivity of the information itself. See, e.g., Nutratech, 242 F.R.D. at 554-55.

13    While Google has no reason to suspect *intentional* disclosure of its
14 proprietary information by Dr. Zada, Google is rightfully concerned with the
15 possibility of *inadvertent* disclosure of the information—via a mis-addressed email, a
16 document left on a desk and discovered in the course of a social event at the Perfect
17 10 Mansion, a presentation accidentally left behind in an L.A. coffee shop, or a slip
18 of the tongue during a conversation Dr. Zada might have. This information is so
19 sensitive, so proprietary, and so closely-guarded that Google would be remiss to not
20 make every effort possible to prevent its disclosure. As the 9th Circuit has found,
21 inadvertent disclosure is ***always*** a possibility, and assurances of good faith are ***not***
22 enough, because an inadvertent disclosure is by its very nature unintended. Brown
23 Bag Software, 960 F.2d at 1470-72.

24

25 document production was also ongoing during this time, and it would have been
26 premature to present this issue for disposition before now. Finally, because Perfect
27 10 ***agreed*** to temporarily limit access to the documents in question to OCEO, there
was no "emergency" requiring the Court's immediate attention.

28

1    Moreover, the risk of inadvertent disclosure is particularly high in this
2  case because Perfect 10 is an active user of image recognition technology, and has a
3  business relationship with PicScout Ltd. ("PicScout"), an image recognition
4  company. Specifically, PicScout claims to "use a proprietary high-end image
5  recognition technology that easily detects the image," and further claims to be
6  "responsible for detecting over 90% of all online image infringements." Herrick
7  Decl., Ex. B (picscout.com printout). Perfect 10's document production includes
8  email correspondence between PicScout (including CEO Eyal Gura), Dr. Zada, and
9  Jeffrey Mausner discussing PicScout's services and Google's claims in this case.
10  Herrick Decl., Ex. C (emails). Perfect 10's document production further demonstrates
11  that Perfect 10 has *actually used* PicScout's image recognition services as recently as
12  March 2008 to locate alleged infringements of Perfect 10's copyrighted works.
13  Herrick Decl., Ex. D (dozens of screenshots of "PicScout Report Manager" results).
14  Further, a recent Declaration submitted by Dr. Zada confirms Perfect 10's continued
15  business relationship with PicScout. Herrick Decl. ¶ 9.[10]

16    In these circumstances, *where Perfect 10 employs image recognition*
17  *technology in its own business,[11] and where Perfect 10's CEO Dr. Zada is in*
18  *regular contact with a competing company offering image recognition services for*
19  *profit (and is even on a first name basis with the company's CEO)*, the risk of
20  inadvertent disclosure of Google's proprietary information cannot be understated.
21  See Intel Corp. v. VIA Technologies, Inc., 198 F.R.D. 525, 530 (N.D. Cal. 2000) ("It
22

23    [10]  PicScout has also been involved in the present litigation. In the preliminary
24  injunction proceedings, Perfect 10 submitted a declaration from Offir Gutelzon,
      PicScout co-founder and Chief Technology Officer. Herrick Decl., Ex. E; see also id.
25  Ex. F (Reply Decl. of Norman Zada dated March 27, 2006 at ¶ 3).
26    [11]  Again, Perfect 10's prior arguments that it does not compete with Google in the
      search engine business are irrelevant to whether Perfect 10 competes with Google
27  and/or partners with Google's competitors in the image recognition technology space.
28

1 is humanly impossible to control the inadvertent disclosure of some of this
2 information in any prolonged working relationship.") (citation omitted).  Google's
3 proprietary image recognition technology documents deserve OCEO protection.

4       **C.    Perfect 10 Will Not Be Unduly Prejudiced By An Outside**
5             **Counsel's Eyes Only Restriction on Google's 78 Pages of Image**
6             **Recognition Documents.**

7             As balanced against the risk of inadvertent disclosure (high) and the
8 potential harm to Google should such disclosure occur (great), Perfect 10 has shown
9 no compelling need for Dr. Zada to have access to this information.  Perfect 10
10 claims that it needs Dr. Zada's "expertise" to understand image recognition software
11 documents, but there is no evidence to support that stand.  Perfect 10 is ably
12 represented by counsel, "[r]equiring a party to rely on its competent outside counsel
13 does not create an undue and unnecessary burden," Intel Corp., 198 F.R.D. at 529
14 (citation omitted), and to the extent Perfect 10's counsel needs expert advice, it is free
15 to retain an expert to give it.  Protective Order ¶¶ 2, 5(d), 6, 14.  Parties are routinely
16 required to rely on experts to analyze technical information, and Perfect 10 will suffer
17 no undue prejudice if it has to play by those same rules.  Tellingly, nowhere in its
18 portions of the Joint Stipulation does Perfect 10 state that it will not hire experts.  The
19 reason is obvious: of course, Perfect 10 will hire experts, as is routinely done in cases
20 like these.  Perfect 10 is no *pro se* plaintiff in need of special privileges from this
21 Court.  To the contrary, Perfect 10 is currently employing multiple attorneys to bring
22 simultaneous lawsuits involving multiple federal and state law claims against no less
23 than Google, Amazon.com, and Microsoft Corporation, among others.  Because
24 Perfect 10, like any sophisticated litigant with a large litigation team, will most
25 certainly hire experts in connection with the technical aspects of this case, there is
26 absolutely no reason why Perfect 10's CEO should be granted access to these
27
28

1  proprietary documents.[12]  As such, Perfect would not be prejudiced in any way if
2  these documents were restricted to outside counsel's eyes only.

3            Further, to the extent Dr. Zada *is* an expert in image recognition
4  technology, that is *all the more reason* to preclude him from having access to the
5  information, because such knowledge would dramatically increase the potential for
6  competitive harm.  See, e.g., Nutratech, 242 F.R.D. at 555; Vesta Corset Co., 1999
7  WL 13257, at *3; Safe Flight Instrument Corp., 682 F.Supp. at 22.  Perfect 10 is
8  currently using image recognition technology to identify alleged infringements of its
9  works, and claims that Zada "has the technical background to determine whether
10 image recognition technology is available to locate infringing images in Google's
11 image search index."  Herrick Decl. ¶ 10.  Dr. Zada has also claimed to have spent
12 part of a year, more than 35 years ago, doing "research on search algorithms and [to]
13 have studied various aspects of computer science," and to "have written thousands of
14 lines of computer code to solve a variety of applied mathematical problems."  Decl.
15 of Dr. Norman Zada, dated July __, 2008, at ¶ 6.  Dr. Zada therefore claims to have
16 the expertise to make use of that technology himself, which would permit him to
17 *compete against* Google in this market.  See, e.g., Armour of America, 73 Fed.Cl. at
18 600; Avocent Redmond Corp., 242 F.R.D. at 576.  ***In such circumstances, Google***
19 ***has an absolute right to preclude an officer and employee of its claimed competitor,***
20

21      [12]  Dr. Zada's claim, in paragraph 6 of his Declaration, that he is the only person
22  at Perfect 10 who can "analyze complex technical matters," is not only incorrect, it
23  also demonstrates the fundamental injustice in Perfect 10's position.  Contrary to Dr.
    Zada's suggestion, Google does not have "thousands of employees it can rely on" for
24  this purpose, *because the Protective Order in this case affirmatively prevents them*
    *from accessing Perfect 10's highly confidential information.*  Indeed, not even
25  Google's in-house attorneys can access Perfect 10's highly confidential documents,
26  yet Dr. Zada *is* permitted access to Google's highly confidential documents.  And
    worse, Perfect 10 now seeks to tip the scales even further in its favor by permitting
27  Dr. Zada to access Google's actual trade secrets.  This injustice simply cannot stand.
28

1  *who professes expertise in this very field, from having access to Google's*

2  *proprietary research and development in the field of image recognition technology.*

3        In sum, Perfect 10 may not claim that (1) it needs Dr. Zada's assistance

4  to review and understand these highly proprietary technical documents regarding

5  image recognition technology, while also maintaining that (2) Perfect 10 somehow

6  does *not* use Dr. Zada's proclaimed expertise in image recognition technology in

7  Perfect 10's own business activities. If Dr. Zada has such expertise, then Perfect 10's

8  competitive business activities in employing image recognition technology (both

9  alone and in partnership with PicScout) must preclude Dr. Zada from gaining access

10  to Google's proprietary research and development in this field.[13]

11  **PERFECT 10'S POSITION REGARDING GOOGLE'S MOTION FOR**

12  **PARTIAL RECONSIDERATION OF THE PROTECTIVE ORDER**

13        The Court should not modify the protective order, for the following reasons:

14        1. Dr. Zada is essential to the litigation of the case. Google's suggestion that

15  Dr. Zada should not have access to the documents regarding image recognition would

16  make production of those documents meaningless, since Perfect 10's attorney cannot

17  fully understand or use those documents without Dr. Zada's assistance.

18        2. Dr. Zada has been participating in lawsuits with protective orders and has

19

---

20  [13] Perfect 10 claims that Google is obstructing discovery. Not surprisingly, this

21  charge is irrelevant to the present motion. Worse, Perfect 10 is flat wrong. Google has met all of its discovery obligations here—unlike Perfect 10, who is obstructing

22  discovery at every opportunity. For example, a full three and a half years into this

23  case, Perfect 10 has refused to answer basic interrogatories (seeking identification of infringements of specific copyrighted works—that is, the basic facts in any copyright

24  case), refused to answer properly propounded requests for admission, failed to

25  produce critical documents (including the hundreds of new and pending copyright registrations Perfect 10 has added to the case), and refused for three months to inform

26  Google whether it will accept service of subpoenas on behalf of its models. If anyone

27  is stonewalling here, it is Perfect 10. Google is presently meeting and conferring with Perfect 10 on these issues and will bring them before the Court in due course.

28

1  had access to the highest level of confidential information for seven years. There has
2  never been a hint that Dr. Zada has breached a protective order.

3       3. Google's claim that Google is a competitor of Perfect 10 in a way that
4  would allow Perfect 10 to use Google's trade secrets is frivolous. Google made this
5  exact same argument before, and it was rejected by the Court. (See this Court's
6  previous Order regarding the protective order, attached as Exhibit __ to Herrick
7  declaration.) While Google unfairly competes with Perfect 10 in offering adult
8  content, Perfect 10 does not compete with Google in offering search engine services
9  or image recognition technology.

10       4. Google first raised trying to amend the protective order to prevent Dr. Zada
11  from seeing documents in April. (Letter dated April 29, 2008, attached as Exhibit __
12  to Herrick declaration.) It was not until 2 ½ months after that that Google first raised
13  this issue with the Court. If this was so important, Google should have raised it
14  months ago, rather than having to do it on an emergency basis now.

15       There has been no breach of confidentiality by Dr. Zada, or anything else that
16  would justify a change in the protective order.[14] Google's attempt to relitigate this
17  issue with no new evidence goes against the specific instructions of Judge Matz.
18  Those instructions were that parties avoid unnecessary motion practice by relitigating
19  issues that have already been decided.

20       Throughout this case, Google has vehemently opposed producing documents
21  relating to image recognition, claiming that they are irrelevant, despite their clear

22

23

24  [14] Google claims that "Perfect 10 also has a close business relationship with a company, PicScout, that also is in the business of image recognition technology."
25  That statement is false. Perfect 10 is merely one of PicScout's customers in its business of finding infringing material on the internet. Perfect 10 paid Picscout $5,000 to locate infringing Perfect 10 images on the internet, and PicScout was able
26  to locate approximately 2,000 infringements using their technology, which obviously works. An employee of PicScout submitted a declaration in connection with the
27  preliminary injunction motion. That company is based in Israel. Perfect 10 rarely communicates with them. (Zada declaration ¶3.)
28

1  relevance. Now that it has been ordered to produce those documents by both Judge
2  Hillman and Judge Matz, Google has resorted to trying to keep them from Dr. Zada,
3  who is clearly the person most qualified to determine what they show about Google's
4  capabilities. The fact that Google may have misled both Judge Matz and the Court of
5  Appeals regarding the availability of image recognition to locate infringing images
6  may have something to do with Google's position of not wanting Dr. Zada to see
7  these documents.

8      In opposition to Perfect 10's preliminary injunction motion, Google submitted a
9  declaration from a third party, John Levine, who admitted that he was not privy to
10 Google's internal technology, but who nevertheless stated that "[t]here is no image
11 recognition technology that would allow Google to create an index or search
12 effectively using characteristics of the images themselves." *See Levine Decl.*, ¶ 22
13 (PACER No. 44). Google did not submit declarations on image recognition from any
14 *Google* employees, who would have known if image recognition technology was
15 available that could find duplicates of Perfect 10's images and Perfect 10 copyright
16 notices in Google's image search index. Judge Matz relied upon the Declaration of
17 John Levine, holding: "Google's software lacks the ability to analyze every image on
18 the internet, compare each image to all the other copyrighted images that exist in the
19 world (or even to that much smaller subset of images that have been submitted to
20 Google by copyright owners such as P10), and determine whether a certain image on
21 the web infringes someone's copyright. Def.'s Levine Decl. ¶ 22." *See Perfect 10 v.*
22 *Google,* 416 F. Supp. 2d 828, 858 (C.D. Cal. 2006) (footnote omitted).

23     The Levine Declaration then became the basis for the Ninth Circuit's
24 conclusion that Google could not use image recognition technology to control
25 infringement:

26         Without image-recognition technology, Google lacks the practical
27     ability to police the infringing activities of third-party websites. This
       distinguishes Google from the defendants held liable in *Napster* and
28     *Fonovisa. See Napster,* 239 F.3d at 1023-24 (Napster had the ability to
       identify and police infringing conduct *by searching its index for song*

1    *titles*); *Fonovisa,* 76 F.3d at 262 (swap meet operator had the ability to
     identify and police infringing activity *by patrolling its premises*).

2

3    *Perfect 10 v. Amazon.com,* 508 F.3d at 1174 (emphasis added).  The Ninth Circuit

4    thereby recognized the relevance of image recognition technology, but erroneously

5    concluded, based on the Levine Declaration, that it could not be used.  Had Google

6    informed the Court that it could recognize duplicates of Perfect 10's images using

7    image recognition, the Ninth Circuit might have been willing to impose a requirement

8    that Google search out and remove Perfect 10's images from Google's image search

9    index.  Armed with the truth, the Ninth Circuit could have concluded that image

10   recognition is a simple method to reduce the damage to the copyright holder, under

11   the test for contributory infringement it established in this case: "Applying our test,

12   Google could be held contributorily liable if it had knowledge that infringing Perfect

13   10 images were available using its search engine, **could take simple measures to**

14   **prevent further damage to Perfect 10's copyrighted works**, and failed to take such

15   steps." *Perfect 10, Inc. v. Amazon.com,* 508 F.3d at 1172 (emphasis added).  It is

16   Perfect 10's contention that once it provided Google with its copyrighted images (which it

17   did years ago), Google could use image recognition technology to find duplicates of those

18   pictures *in Google's image search index*.  Google could also find images in its image

19   search index that have Perfect 10 copyright notices on them.  Links from those images in

20   Google's index to the infringing third-party websites could then be blocked or disabled.

21   These are simple measures to reduce infringement.

22        Nevertheless, Google continued to disingenuously assert that image

23   recognition technology is irrelevant to Perfect 10's claims and refused to produce

24   documents on that subject.  Google's arguments were rejected by both Judge Hillman

25   and Judge Matz, and it was ordered to produce documents related to image

26   recognition.  Judge Matz stated:

27        [T]he Ninth Circuit said, quote, "Without image recognition technology,
          Google lacks the practical ability to police the infringing activities of
28        third-party websites," end quote.  That language inherently confirms
          what I think common sense would warrant a finding for, and that is that

1    the existence or non-existence, as the case may be, of image recognition
     technology is highly relevant. I don't understand how you can argue, as I
2    think you have on this motion, Mr. Zeller, that it's not relevant. It either
     exists or it doesn't.
3
     Reporter's Transcript Of Proceedings, April 14, 2008, hearing before Judge Matz on
4
     Objections to Discovery Order, page 25 line 3 to page 26 line 1, attached as Exhibit 3
5
     to Mausner declaration.
6

7

8

9

10

11

12

13

14

15

16
                                            Dr. Zada needs to look at these documents
17
     to make that determination.
18

19
                                                    In 2007, three Google
20
     employees published a paper entitled "Clustering Billions of Images with Large Scale
21
     Nearest Neighbor Search." This paper showed that Google was able to compare 1.5
22
     billion images with one another and organize them into clusters of similar appearing
23
     images. See Exhibit 1 to the Zada declaration, ¶5. Google has also allowed a Google
24
     employee to publicly answer questions regarding Google's image recognition
25
     capability. In May of 2007, this Google employee publicly admitted that "[w]e have the
26
     capability to detect exact duplicates (e.g. resolution, same size, same bits)." See Exhibit 2
27
     and ¶5 of the Zada Declaration. Google wrongly claims that this document has nothing to
28
                                    -21-        Case No. CV 04-9484 AHM (SHx) [Consolidated
                                                with Case No. CV 05-4753 AHM (SHx)]
                   GOOGLE'S MOTION FOR PARTIAL RECONSIDERATION OF PROTECTIVE ORDER

1  do with Google's image recognition capabilites.; in fact, the question the employee was
2  asked was "Do you detect duplicate images."  Google has no problem publicly disclosing
3  this recent research involving image recognition.  It seems that Google may be more
4  concerned with covering up its misleading statements regarding availability of image
5  recognition at the time of the preliminary injunction motion than it is with protecting
6  actual current trade secrets.

7      Perfect 10's motion for preliminary injunction was extremely important to its
8  continued existence.  As a result of its failure to obtain an injunction, Perfect 10 has been
9  forced to terminate most of its business, including its print magazine.  Zada Decl., ¶ 3.  If it
10  turns out that the denial of the injunction was based upon misleading information provided
11  by Google, the consequences would be extremely serious.  ██████████████████
12  ████████████████████████████████████████ 15

14
15  [15]  Google argues that Perfect 10 can hire experts to take Dr. Zada's place, and that
16  Perfect 10 has "multiple attorneys" working on these cases.  Perfect 10 has no
    intention at this time of hiring experts regarding image recognition, but intends to rely
    on Dr. Zada's expertise.  Perfect 10 is financially burdened because of this lawsuit
17  and the fact that Perfect 10 is losing millions of dollars because virtually all of its
18  content is available for free on Google.  In contrast, Google is making billions of
19  dollars per year from other people's content, including Perfect 10's.  In all of the
    lawsuits, Perfect 10 is represented only by Mr. Mausner, who is assisted by two part-
20  time contract attorneys.  In contrast, Quinn Emanuel, Winston & Strawn, and
21  Townsend Townsend & Crew have virtually unlimited attorneys, support, and
    resources to try to bury Perfect 10 in discovery disputes such as this.  It is essential
22  that Dr. Zada have access to all aspects of this case.

23
24  Google tries to deflect attention from its continual obstruction of discovery by
    falsely claiming that Perfect 10, rather than Google, is doing so.  Google claims that
25  "Perfect 10 has refused to answer basic interrogatories (seeking identification of
    infringements of specific copyrighted works—that is, the basic facts in any copyright
26  case)."  The interrogatories which Google refers to, which have been answered to the
27  best of Perfect 10's ability, are very similar to the impossible-to-answer Super-Mega
    interrogatories that Amazon has propounded which are currently before the Court.
28      (footnote continued)

1  Google most likely misled the Court several years ago regarding the
2  availability of image recognition technology, to Perfect 10's detriment. It would be
3  exceedingly unfair now to prohibit Dr. Zada, the only person on Perfect 10's team
4  likely capable of understanding such materials, from viewing them, particularly after
5  winning a motion to compel on the matter and having that affirmed on appeal to
6  Judge Matz. If this Court denies Dr. Zada the right to view these documents, Perfect
7  10's efforts will have been in vain.[16]  Google claims that it did not mislead the courts,

8  ─────────────

9  They are vastly more burdensome than interrogatories that this Court has already
10  determined to be Mega requests in this very case. Perfect 10 has already provided the
   information Google seeks in the documents Perfect 10 has produced, and it would
11  take **hundreds of years** of busy work to provide the charts that Google requests.
12  Google claims that Perfect 10 has "refused to answer properly propounded requests
   for admission." What Google fails to reveal is that it propounded 962 RFAs, that
13  Perfect 10 answered approximately 472 of them, that Perfect 10 objected to
14  approximately 490 on the basis that Google's requests were completely
   overburdensome, but offered to respond to 100 additional RFAs of Google's choice.
15  This is another example of Google's attempts to bury Perfect 10 in unnecessary
16  discovery. Perfect 10 has not failed to produce copyright registrations. Regarding
   the model witnesses that Google complains about, Perfect 10 informed Google that it
17  would accept service on behalf of 2 of the 9 models Google seeks to depose. Perfect
18  10 is under no obligation to do even that. For the others, Google will have to
19  subpoena them.

20  [16] Google has very substantially obstructed discovery in this case, to the point
   where it has made a series of false statements to the court, and has repeatedly ignored
21  court orders. Google tries to claim that it is showing "good faith" by allowing Perfect
22  10 to see search query results *that were ordered produced over two years ago*
23  (Document Requests Nos. 47 and 48 dealing with search frequencies for such terms
   as sex, nude, Perfect 10, etc.). When Perfect 10 had to relitigate that same issue here
24  and then prevailed on Google's appeal to Judge Matz, Google made the phony claim
25  that it would be overwhelmingly burdensome for Google to produce such numerical
   data, even though Google was graphing it for its Google Trends program. So that
26  statement turned out to be false as well. Additionally, Google was ordered to produce
27  its DMCA log, appealed that ruling, lost, and has still not produced its DMCA log.
   Zada Decl. ¶6.
28  (footnote continued)

1  to believe that image recognition technology was not available to locate infringing
2  images at the time of the preliminary injunction.  Google states that "Google
3  respectfully requests the opportunity to submit further briefing on this issue under
4  seal and to have the matter heard at an in-person hearing in a sealed courtroom."
5  Perfect 10 concurs in this request.  Perfect 10 would like to have a full evidentiary
6  hearing on the availability of image recognition at the time of the preliminary
7  injunction, with the ability to cross-examine Google's witnesses.  It will be necessary
8  for Dr. Zada to have access to the image recognition documents for that hearing and
9  to attend the hearing.  Perfect 10 also requests that Google submit the documents in
10  question regarding image recognition to Judge Hillman, under seal, on August 4, for
11  the Court's consideration.

12
13
14
15
16
17
18
19

20  Google claims that it is only asking for OCEO designation for about 78 pages out
21  of over 45,000 pages of documents it produced.  However, what Google fails to
explain is that a significant portion of Google's production consists of multiple copies
22  of the same DMCA notices, produced over and over again, many of which were
23  Perfect 10's own notices to Google.  Google has not produced anywhere close to
45,000 unique pages.  Many other documents Google produced were completely
24  unreadable. Zada Decl. ¶6.  The 78 pages of documents relating to image recognition
25  are documents that Perfect 10 fought hard to get produced.  It is simply not true that
Perfect 10 is in the image recognition business or competes with Google in that field.
26  Google has no new evidence to justify its attempt to relitigate an issue that was
27  already decided.  It would be terribly unfair to deny Dr. Zada the ability to see such
essential documents that Perfect 10 has fought so hard to get.
28

1 **CONCLUSION**

2 **A.     Google's Conclusion**

3        For the foregoing reasons, Google respectfully requests that this Court modify

4 the Protective Order entered in this case to create an "Outside Counsel's Eyes Only"

5 designation, and to permit Google to apply that designation to documents regarding

6 Google's image recognition technology research and development efforts.

7 **B.     Perfect 10's Conclusion**

8        Because Google has provided no new evidence or reason to justify the

9 relitigation of an issue that was already decided two years ago, Perfect 10 respectfully

10 requests that the Court deny Google's motion.

11 DATED:  August 4, 2008            QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES, LLP
12

13                                  By *Rachel M. Herrick /TN*

14                                     Rachel M. Herrick
                                    Attorneys for Defendant Google Inc.
15 DATED:  August 1, 2008            LAW OFFICES OF JEFFREY N. MAUSNER

16

17                                  By *Jeffry N. Mausner /TN*

18                                     Jeffrey N. Mausner
                                    Attorneys for Plaintiff Perfect 10, Inc.
19

20

21

22

23

24

25

26

27

28