JEFFREY N. MAUSNER (State Bar No. 122385)
DAVID N. SCHULTZ (State Bar No. 123094)
Law Offices of Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773
Attorneys for Plaintiff Perfect 10, Inc.

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Michael T. Zeller (Bar No. 196417)
michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant Google Inc.
(Additional counsel on second page)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PERFECT 10, INC., a California corporation,

Plaintiff,

v.

GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,

Defendants.

AND CONSOLIDATED CASE.

Case No.: 04-9484 AHM (SHx)

**JOINT RULE 16(b) REPORT**

Date: August 18, 2008
Time: 1:30 p.m.
Place: Courtroom of Judge Matz

Discovery Cut-Off Date: None Set
Pretrial Conference Date: None Set
Trial Date: None Set

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Rachel M. Herrick (Bar No. 191060)
rachelherrick@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-213

Attorneys for Defendant Google Inc.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Counsel for Plaintiff Perfect 10, Inc. ("Perfect 10") and Defendant Google Inc. ("Google") conducted a Further Rule 26(f) conference on July 28, 2008. Pursuant to this Court's Order Setting Rule 16(b) Scheduling Conference, filed July 15, 2008, the parties now submit this Joint Rule 16(b) Report.

**BASIS FOR SUBJECT-MATTER JURISDICTION**

This action arises under the Copyright Act, 17 U.S.C. § 101 *et seq*. and the Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has jurisdiction over the subject matter of these actions pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b) and principles of supplemental jurisdiction. Google disputes subject matter jurisdiction with respect to copyrights for which Perfect 10 has not obtained valid, issued registrations. Perfect 10 responds that it has registered or applied for registration on all copyrights involved in this action.

**Perfect 10's Additional Statement Regarding Subject-Matter Jurisdiction:** This Court has ordered the parties to meet and confer and submit a Stipulation and [Proposed] Order addressing the scope of the copyrights to be included in this action.

**A. A SHORT SYNOPSIS OF THE MAIN CLAIMS**

**1. By Perfect 10**

Plaintiff Perfect 10 operates an adult pay website located at the URL www.perfect10.com. Perfect 10 previously published an adult entertainment magazine, which it was forced to shut down because of massive infringements of Perfect 10's copyrights. Perfect 10 owns numerous valuable copyrights, trademarks, and (via assignments) rights of publicity of various models whose photographs have appeared in Perfect 10's magazine or on perfect10.com. Defendant Google has violated and is violating Perfect 10's rights in numerous ways, including the following:

a) Google searches the internet for images, including infringing copies of Perfect 10 copyrighted photographs contained on infringing third-party

websites. Without Perfect 10's authorization, Google creates "thumbnail" versions of Perfect 10 images and then links the Google-created thumbnails to the full-size images, so that Google users can view and download the full-size Perfect 10 images without paying for them. In many cases, Google also surrounds the full-size Perfect 10 images with Google ads, thus monetizing Perfect 10's copyrighted works without permission. Furthermore, thousands of full-size Perfect 10 images from which Google makes thumbnails are actually stored on Google's own servers. Google also profits from the increased traffic created by the draw of the infringing images to Google's website.

b) Google also searches the internet for websites to include in Google's Web Search results. Google often arranges its web search results so that web sites with large numbers of infringing images come first. Google's Web Search results for searches on Perfect 10 model names substantially favor Google advertisers, to the point where, in many cases, Google searches on Perfect 10 model names lead almost exclusively to Google advertising affiliates that infringe Perfect 10 copyrights. Google also hosts many of the websites that appear in its Web Search results, some of which infringe thousands of Perfect 10 copyrighted images.

c) Google encourages and facilitates the downloading of Perfect 10 copyrighted images to Google users' cell phones.

d) Google links to, and takes advertising payments from, websites that engage in massive copyright infringement (the "Stolen Content Paysites"). Approximately 80 of these Stolen Content Paysites each offer users the ability to view and/or illegally download more than 15,000 Perfect 10 copyrighted images. Perfect 10 has submitted DMCA notices to Google identifying in excess of 1,000,000 copies of Perfect 10 copyrighted images on Stolen Content Paysites.

e) Google displays unauthorized combinations of usernames and passwords on its own website, that have allowed users to illegally view and/or

download thousands of the images contained on perfect10.com. Google also links to other websites that offer such unauthorized username/password combinations, and in some cases, hosts and/or has advertising relationships with these other websites.

Perfect 10 has filed a Second Amended Complaint which alleges claims against Google for (1) copyright infringement; (2) trademark infringement (federal); (3) trademark dilution (federal); (4) unfair competition; (5) violation of rights of publicity; (6) unjust enrichment; and (7) misappropriation.

**2. By Google**

Perfect 10 has sued Google over the operation of the world-famous and popular Google search engine. The crux of Perfect 10’s claim is that when third-party web sites allegedly make images available over the Internet that infringe Perfect 10's copyrights, Google's indexing of those web sites and images as part of the operation of its search engine is infringing. The Ninth Circuit has already passed on Perfect 10's copyright claims, ruling that Google does not violate Perfect 10's alleged rights of distribution and public display, and that Google's use of any Perfect 10 images in its thumbnailing process is a fair use. Perfect 10’s complaint also includes trademark, publicity, unfair competition, unjust enrichment and misappropriation claims.

Google denies that it is liable for any of these claims, or that it violates any of Perfect 10’s alleged rights, and additionally asserts numerous affirmative defenses. First, Google is entitled to one or more "safe harbors" against monetary relief for copyright infringement under the Digital Millennium Copyright Act (the "DMCA"). Google is a service provider, has adopted and reasonably implemented a repeat infringer policy (of which it informs subscribers and account holders), and does not interfere with standard technical measures. Google did not have actual or apparent knowledge of the alleged infringement of Perfect 10's copyrighted works

asserted here, because all of Perfect 10's alleged DMCA notices were fatally defective, in whole or in part.

For example, the alleged notices routinely failed to properly identify the copyrighted work claimed to be infringed, failed to properly identify the allegedly infringing material, listed allegedly infringing URLs that had not even been located using Google's Search service (and thus there was nothing to remove or take down), listed partial and/or incomplete URLs, listed alleged infringing material that did not appear to be owned by Perfect 10, and contained duplicative references to allegedly infringing URLs identified in previous purported notices. Google corresponded with Perfect 10, explained what was most effective in expediting Google's assistance, explained that the purported notices were defective, processed the purported notices of alleged infringement to the best of its ability, removed links to allegedly infringing content, and entered alleged Perfect 10 marks into its trademark complaint procedures in order to avoid advertising containing Perfect 10 marks.

Perfect 10 accused Google of failing to handle its purported notices expeditiously, but Perfect 10 refused to take steps to assist Google in more expeditious handling of Perfect 10's notices. Instead, Perfect 10 began sending its purported notices in formats that were increasingly difficult, if not impossible, to process, and which lacked the information necessary to constitute valid notices under governing law—despite Google's clear requests and instructions. These deficiencies only worsened in 2007, when Perfect 10 began sending purported "notices" in the form of multiple DVDs and an entire hard drive, many of which contained thousands of pages of allegedly infringing material, but none of which properly identified the copyrighted work claimed to be infringed or the allegedly infringing material. For example, one DVD submitted by Perfect 10 contained 35 folders comprising more than 25,000 pages of printouts of alleged infringing material. The hard drive Perfect 10 sent to Google claimed to have contained over

1 million infringements of alleged Perfect 10 copyrighted images. A single subfolder of that hard drive contained over 16,000 electronic files of allegedly infringing material.

Though the clear deficiencies in Perfect 10’s alleged DMCA notices are largely apparent on their face, Perfect 10’s discovery responses in this case drive the point home. When Google served a set of Requests for Admission upon Perfect 10, asking Perfect 10 to admit basic facts regarding the content of these dozens of alleged notices, Perfect 10 refused to respond, stating instead that the requests were unduly burdensome and “would take an inordinate amount of time to” respond to. That Perfect 10 has (improperly) objected to answering Google’s Requests with claims of undue burden only underscores the fact that Perfect 10’s purported notices are incomprehensible—*even to Perfect 10 itself*—and legally defective.

Further, Google does not receive a financial benefit directly attributable to the alleged infringing activity, nor does it have the right and ability to control such activity.

For these reasons and others, per the DMCA safe harbors, Google therefore cannot be held liable for monetary relief for copyright infringement "by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for" Google, or "by reason of [Google] referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link."

Google also denies any liability for trademark violations under the Lanham Act. Google's alleged use of any of Perfect 10's alleged marks does not constitute "trademark use," "use in commerce," or "commercial use in commerce" of those alleged marks, nor is any of Google's alleged conduct likely to result in consumer confusion. Google is also not liable for federal trademark dilution. "Perfect 10" is

a generic expression of perfection, and is additionally the name of multiple goods, services, and other entities. Furthermore, none of Perfect 10's alleged marks is "famous" within the meaning of the Lanham Act, 15 U.S.C. § 1125(c).

Further, Perfect 10’s state and common law claims are preempted, in whole or in part, by the Copyright Act, 17 U.S.C. § 301, and/or the Communications Decency Act, 47 U.S.C. § 230. Lastly, Google asserts a number of other affirmative defenses, as set forth in its Answer.

Google has brought counterclaims under 28 U.S.C. § 2201 for a declaration of non-violation of each of Perfect 10's causes of action.[1]

**3. Perfect 10’s Response**

Perfect 10 provided its portions of this Joint Report to Google on the morning of Tuesday, August 5, 2008. Google did not provide its portions to Perfect 10 until the morning of Monday, August 11, the day the Joint Report has to be filed. Because of the short time that Perfect 10 has to reply to Google’s portions of the Joint Report, it will only comment briefly regarding some of Google’s

[1] Google objects to Perfect 10's last-minute changes to this Joint Status Report, and to all of Perfect 10's newly-added sections, entitled "Perfect 10's Response," "Perfect 10's Reply," or "Perfect 10's Additional Statement." The parties met and conferred on the Court's Order setting a Rule 16(b) Scheduling Conference on July 28, 2008. Perfect 10 did not circulate its portions of the Joint Status report, however, until August 5. This left Google 's counsel with only 3 1/2 business days to draft its portions, confer with its client, and return the draft Joint Status Report to Perfect 10 for filing (which Google transmitted to Perfect 10 late Sunday evening, August 10). Perfect 10 then proceeded to send Google a substantially revised version at 7 p.m. on Monday, August 11, the same day it must be filed, essentially doubling the length of Perfect 10's portions. Perfect 10 also revised the Joint Status Report in a format that violates the court's standing order (specifically, a format providing Perfect 10's position, then Google's Position, then inserting a Perfect 10 "Reply" to Google's Position). Given the extremely limited time available, Google has not been able to fully respond to all of Perfect 10's newly-added claims and arguments. Google objects to Perfect 10's attempt to argue the merits of multiple discovery matters either currently pending, or about to be pending, before Magistrate Judge Hillman. Google included short descriptions of these discovery proceedings in order to show the significant amount of discovery work that is yet to be completed, rendering Perfect 10's proposed discovery cutoff of January 6, 2009 infeasible. Indeed, Perfect 10's lengthy "Reply" sections only prove Google's point—that there is far more discovery and discovery-related motion practice remaining, and far more work than can be completed in the mere four-plus months Perfect 10 proposes.

statements above. It is Perfect 10's position that:

1. This Court and the Ninth Circuit were misled to believe that Google did not store full-size images on its servers, at the time these Courts made rulings regarding direct infringement, vicarious liability, and fair use. If this Court and the Ninth Circuit had known the true facts, their rulings may have been different. The Ninth Circuit did not rule on Google's potential liability for: (a) its unauthorized monetization of more than 10,000 Perfect 10 copyrighted images via Google's AdSense program; or (b) Google's continued acceptance of payments from websites that have cumulatively infringed over 500,000 copies of Perfect 10 copyrighted images.
2. Google has not adopted or reasonably implemented a repeat infringer policy under the DMCA.
3. Perfect 10's DMCA notices were fully compliant and more than sufficient to advise Google of Perfect 10's copyrighted images and the location of the infringing images. Google, a technological powerhouse, has simply come up with one excuse after another for its failure to remove or disable access to the infringing images. Google even failed to act when Perfect 10 sent it actual print-outs of the infringing images, which contained the URL of the location of the infringing image printed at the bottom of the page.
4. Google complains that Perfect 10 did not answer all its Requests for Admissions. Google propounded 962 Requests for Admissions on Perfect 10. Perfect 10 answered 472 and offered to answer another 100 of these requests, of Google's choice, if Google would agree to so limit its requests. Perfect 10 objected to the remaining requests on the grounds that they were unreasonably burdensome and that it would take an inordinate amount of time for Perfect 10 to answer them all, as

well as on other grounds.

## B. KEY LEGAL ISSUES

### 1. By Perfect 10

Perfect 10's claims against Google are identified in Section A.1, above. Google's liability will be based on the application of existing law to what Perfect 10 anticipates will be largely undisputed facts. Accordingly, Perfect 10 believes that the amount of its damages (including Google's profits) will be the primary issue in dispute.

### 2. By Google

This case presents the following key legal issues, among others:

a. Whether Perfect 10 may assert copyright claims for certain works, including but not limited to claims for damages, without holding a valid issued copyright registration for those works;

b. Whether Google is entitled to the protections of one or more safe harbors under the Online Copyright Infringement Liability Limitation Act, 17 U.S.C. § 512;

c. Whether one or more of Perfect 10's claims is time-barred, in whole or in part;

d. Whether Google's sale of advertising space on pages with search results triggered by user-entered searches constitutes "use in commerce" and "commercial use in commerce" of any marks claimed by Perfect 10;

e. Whether any of Perfect 10's alleged marks are "famous" within the meaning of 15 U.S.C. § 1125;

f. Whether one or more of Perfect 10's state and common law claims are preempted by federal law;

g. Whether Perfect 10 holds valid and enforceable assignments of publicity rights from its models;

h. Whether Google's activities are protected by the doctrines of fair use, privilege, implied and express license, and the First Amendment;

i. Whether Perfect 10 has standing to assert the alleged rights of third-parties;

j. Whether Perfect 10 has suffered any damages as a result of any conduct by Google;

k. Whether Perfect 10's damages claims are impermissibly speculative; and

l. Whether Perfect 10 can prove entitlement to damages under 17 U.S.C. § 412.

**C. REALISTIC RANGE OF PROVABLE DAMAGES**

**1. By Perfect 10**

Google’s conduct obviates the need for a consumer to pay for a membership to perfect10.com or to purchase Perfect 10 Magazine. Google’s conduct effectively has made Perfect 10’s otherwise valuable copyrighted images worthless, because thousands of infringing copies may be obtained for free through Google. Google’s conduct has also diminished the value of Perfect 10’s marks and rights of publicity. Perfect 10 may seek actual damages, profits of Google attributable to the infringements, and/or statutory damages on its copyright claim. Perfect 10 will also seek to recover attorneys’ fees and costs. In addition, Perfect 10 will seek damages recoverable under its other claims, including: (i) actual damages; (ii) Google’s profits; (iii) statutory damages; (iv) restitution; (v) treble damages; (vi) punitive damages; and (vii) attorneys’ fees and costs. Because discovery has yet to be completed and experts have not yet been engaged, it is difficult for Perfect 10 to quantify the range of its provable damages at this time.

**2. By Google**

Because Google has caused no harm to Perfect 10 and has violated no legal obligation, there is no realistic prospect of damages. Google believes that Perfect

10 has expressly, knowingly, and voluntarily waived actual damages in this case by its many statements to that effect in its discovery responses. Even if not waived, Google believes P10 has suffered no actual damages and has failed to articulate any plausible, non-speculative theory of actual damages. Perfect 10 has never had a profitable year from its adult entertainment business operations. Google believes statutory damages and attorney's fees will be unavailable under the Copyright Act. Google also believes that one or more "safe harbors" provided by the DMCA will provide a complete defense to monetary recovery for direct and secondary copyright infringement, and that Perfect 10's damages claims will be further limited by 15 U.S.C. § 1114(2), Cal. Bus. Prof. Code § 17200, and the Due Process Clause of the United States Constitution and/or the California Constitution.

**3. Perfect 10's Response**

Perfect 10 has not waived its claim to actual damages. Moreover, Google has waived any right to assert that Perfect 10 has waived actual damages by failing to act on that assertion. Perfect 10 has repeatedly advised Google that it may seek to recover actual damages, pursuant to Section 504 of the Copyright Act.

As well as disseminating Perfect 10's copyrighted images for free to anyone who wants them, Google has also destroyed the value of Perfect 10 copyrighted images for advertising purposes by partnering with hundreds of infringing websites to place Google ads around more than 10,000 Perfect 10 copyrighted images without permission.

## D. INSURANCE COVERAGE

Google does not believe that it has insurance coverage for this matter that is applicable at this time.

## E. LIKELIHOOD OF APPEARANCE OF ADDITIONAL PARTIES, CLAIMS, AMENDED PLEADINGS.

The parties do not anticipate further amendment of the pleadings or the appearance of additional parties.

**Perfect 10's Additional Statement:** Perfect 10 intends to update Exhibit 7 to the Second Amended Complaint, its chart setting forth the copyrights at issue in this action. The Court has ordered the parties to meet and confer and submit a Stipulation and [Proposed] Order addressing the scope of the copyrights to be included in this action. Perfect 10 has submitted a proposed Stipulation and [Proposed] Order to Google and Google has submitted its proposed changes to that document to Perfect 10.

## F. DISCOVERY AND EXPERTS

### 1. By Perfect 10

No changes are necessary regarding how Rule 26(a) disclosures should be made.

Perfect 10 is taking and will take discovery regarding: (i) Google's infringing actions; (ii) whether Google has suitably implemented a policy against repeat infringers; (iii) Google's affirmative defenses; (iv) Google's knowledge that infringing Perfect 10 images were available using its search engine; (v) simple measures that Google could take to prevent further damage to Perfect 10's copyrighted works; (vi) Google's failure to take such steps; (vii) infringing images on Google's servers; (viii) Perfect 10's damages and Google's benefit and profit from the infringements; and (xi) other matters related to its claims.

Discovery should not be conducted in phases or otherwise limited.

Perfect 10 has served interrogatories, document requests, and requests for admission on Google. Perfect 10 has responded to written discovery from Google. Perfect 10 and Google have engaged in discovery hearings before Magistrate Judge Hillman and this Court which have resolved some of the parties' disputes regarding discovery. Perfect 10 cannot determine at this time whether it will be necessary to vary the limitations on discovery. Perfect 10 will be able to make that determination after receiving Google's further responses to previously served discovery.

**2. By Google**

**a. Changes in the Rule 26(a) disclosures**

Google believes that Perfect 10 must amend its Rule 26 disclosures to provided a last known address and telephone number for several Perfect 10 models for whom Perfect 10 claims enforceable publicity rights. Perfect 10 previously represented that its models should be contacted through its counsel, but Perfect 10's counsel has now disclaimed that with respect to Amber Smith, Amy Weber, Aria Giovanni, Monika Zsibrita, Sasha Brinkova, Shannon Hobbs, and Talia Harvalik.

Google has provided initial disclosures pursuant to Rule 26(a), and is in the process of amending those disclosures.

**b. Subjects on which discovery may be needed**

Google is in the process of taking discovery on a number of subjects, including, but not limited to, Perfect 10's business and operations (including the magazine, website, and any other business(es)); Perfect 10's past and present financial condition (including its history of a lack of profitability); Perfect 10's alleged thumbnail licensing activities; Perfect 10's claimed copyright and trademark registrations; the alleged assignments of publicity rights at issue in the case; any alleged infringements of Perfect 10's alleged copyrights and/or trademarks; any damages Perfect 10 claims to have suffered (and on what theories).

**Depositions of Perfect 10 Personnel**. Google plans to take the following depositions of Perfect 10 personnel (among others):

- Perfect 10, Inc., via Rule 30(b)(6)
- Norman Zada
- The nine Perfect 10 models for whom P10 claims publicity rights, namely Amber Smith, Amy Weber, Aria Giovanni, Irina Voronina, Monika Zsibrita, Nataskia Maren, Sasha Brinkova, Shannon Hobbs, and Talia Harvalik. Despite prior representations, counsel for Perfect

10 has agreed to accept service for only two of these models, and has failed to update its 26(a) disclosures to include a last-known address and phone number for several of them.

- John Ancell—Perfect 10's art director
- Jennifer Snow—Assistant to the Publisher
- Rebecca Chaney—Assistant to the Publisher
- Sheena Snow—Assistant
- Wendy Augustine—Assistant to the Publisher
- Naureen Zaim—Assistant to the Publisher

**Third Party Discovery**. Google will serve subpoenas for documents and testimony on various Perfect 10 vendors and professional service providers (including PicScout, Perfect 10's provider of image recognition services, and Bruce Hersh, Perfect 10's Accountant), various Perfect 10 business partners (including Fonestarz Media Limited), various assignors of the copyright registrations Perfect 10 is asserting in this action, and others.

**Expert Discovery**. Perfect 10 has yet to designate any experts, but when it does, Google will take discovery regarding same.

**Discovery Motion Practice.** In addition, counsel for Google and Perfect 10 are currently meeting and conferring on a number of deficiencies in Perfect 10's discovery responses, as detailed in section (e), below.

**c. <u>Whether discovery should be in phases</u>**

Google does not believe discovery should be conducted in phases.

**d. <u>What issues exist or are likely to arise, and what agreements have been reached, re. identification maintenance and production of electronically stored information</u>**

No agreements have been reached on the form of production. Google has produced all of its documents in fully-searchable .tif format, with full OCR capabilities, and with sequential control numbers and individual confidentiality

designations. In contrast, Perfect 10 has produced over 600 gigabytes of electronic information in native file format (which is frequently not text searchable), with no control numbers or other identifying information, no individual confidentiality designations, and (apparently) in folders created for this litigation rather than as the documents are kept in the ordinary course of business.

Significant issues have arisen and likely will continue to arise from this disparity. Perfect 10's current method of production without affixing any control numbers is likely to result in time-consuming authentication problems for dispositive motions and for trial. P10 has also failed to make adequate confidentiality designations by refusing—as Google has done, and as the Protective Order requires—to affix a confidentiality legend to each page of a document containing confidential materials. Instead, Perfect 10 has designated two entire hard drives as "Confidential," despite the fact that the majority of data on both drives is public information. Because many of Perfect 10's native files are not text-searchable, its production is incomprehensible for practical purposes. Even for those portions that are text-searchable, running a simple full-text search on those files can take hours because of the manner in which they were produced. Counsel are currently meeting and conferring on these issues, and will bring these and other discovery issues before Magistrate Judge Hillman in due course.

**e. <u>What discovery has been conducted thus far</u>**

Perfect 10 has served Google with 341 requests for production of documents, 715 requests for admission, and 39 interrogatories. Google has responded to all of these Requests (to the extent a response was required under the Federal Rules). Google will continue to supplement and update its responses to Perfect 10's propounded discovery pursuant to the Federal Rules.

Google has served Perfect 10 with 189 requests for production of documents, 962 requests for admission, and 18 interrogatories. The parties are

meeting and conferring on the insufficiency of Perfect 10's responses, as set forth in more detail in Section K.2.

Perfect 10 has taken four depositions to date, including Google's Rule 30(b)(6) deposition. Google has not yet taken any depositions, but has met and conferred with Perfect 10 regarding taking Perfect 10's Rule 30(b)(6) deposition this fall, and has filed a motion for issuance of a Letter of Request to take the deposition of FoneStarz.

**f. Whether applicable limitations should be changed or other limitations imposed**

Given the number of models whose publicity rights are being asserted here, the number of Perfect 10's vendors, professional service providers and business partners with relevant documents and testimony, and the number of assignors of various copyright registrations Perfect 10 is asserting here, Google requests leave to take twenty depositions, in addition to the ten depositions permitted under the Federal Rules, for a total of thirty depositions.[2] Based on its current understanding of information to date, Google does not believe at this time that any other limitations should be changed or other limitations imposed.

**g. Whether the court should enter other orders related to discovery**

At present, Google does not believe that the court should enter other orders related to discovery.

**h. How many depositions each side will conduct**

As set forth in Section F.2.f, above, Google intends to take the ten depositions allowed by Rule 30, and seeks leave to take twenty additional depositions, for a total of thirty depositions. Google will also seek to depose each expert designated by Perfect 10.

[2] In its new newly-added Section F.3.8, entitled "Perfect 10's Response," at page 20, paragraph 8, below, Perfect 10 requests that any increase in the number of depositions should be mutual. Google has no objection in principle to Perfect 10 taking more than ten depositions, provided that Perfect 10 articulates a specific need to do so. Google has demonstrated its need for more depositions in its portions of the Joint Status Report. Perfect 10 has not.

**i. Time of expert witness disclosures under Rule 26(a)(2)**

Rule 26(a)(2)(C) provides that expert disclosures must be made at a minimum of 90 days before trial. Given the complexity and novelty of the issues presented in this case, and the potential for dispositive motions on several aspects of that case, Google proposes to extend this period by approximately 45 days, as set forth in Section J, below.[3]

**3. Perfect 10's Response**

Perfect 10 provided its portions of this Joint Report to Google on the morning of Tuesday, August 5. Google did not provide its portions to Perfect 10 until the morning of Monday, August 11, the day the Joint Report has to be filed. Because of the short time that Perfect 10 has to reply to Google's portions, it will only comment briefly regarding some of Google's statements set forth above:

1. Perfect 10 has provided the contact information that it has for the models noted above, in correspondence with Google.
2. Perfect 10 has provided initial disclosures to Google, and will update its disclosures.
3. Perfect 10 is only claiming rights of publicity for nine models in this lawsuit, in order to reduce discovery and streamline the case. If Perfect 10 is successful in those claims, it may assert rights of publicity claims for the other models in a new lawsuit. Perfect 10 does not waive any such claims.
4. Google is simply mischaracterizing Perfect 10's production. It is Google, not Perfect 10, that has been making disorganized productions, consisting in many cases of six copies of the same Perfect 10 DMCA notices, and

[3] Perfect 10 makes certain allegations about Google's document production in its newly-added Section F.3.4, entitled "Perfect 10's Response," at page 18, paragraph 4. Contrary to Perfect 10's claims, Google has indeed produced documents responsive to RFP 196 (calling for a "DMCA log" as defined in the court's April 14, 2008 order). Google has even identified for Perfect 10 the specific Bates numbers where those documents may be found. Perfect 10 has apparently not taken the time to review Google's production—or even the specific Bates range Google has provided.

completely disorganized documents that do not even have dates on them. Google has not even produced reports or a DMCA log, despite being ordered to do so by this Court. Perfect 10's production is searchable and is far more organized and user friendly than the form of Google's (very limited) production to Perfect 10. Perfect 10's documents are arranged by subject matter, in folders and sub-folders with explanatory names. For the most part, the documents have been produced on portable hard drives that duplicate how Perfect 10 keeps the documents on its own server. The Adobe files produced by Perfect 10 are searchable and maintain the link structure of the website, so that Perfect 10 can demonstrate where links take the user. Basically, Google has received a duplicate, on computer hard drives, of the documents as they are kept at Perfect 10. Google's proposal -- the production of pages of the same website in disjointed documents -- would result in a gigantic, disorganized, unsearchable mess.

5. Google unreasonably wants Perfect 10 to put a confidentiality designation on each page of each individual document which has been produced on the hard drives, rather than identifying files as confidential. Instead, Perfect 10 can identify the Confidential documents (or non-Confidential documents) by file folder. Perfect 10 has no objection to anyone at the law firms or at Google itself from seeing documents that have been designated Confidential; Perfect 10 simply does not want Google to publish information regarding Perfect 10 on the Internet, as it has done in the past on a website called chillingeffects.org.

6. Perfect 10 has been extremely forthcoming in its discovery responses. Google's complaints about Perfect 10's responses appear to be merely a response to Perfect 10's complaints about Google's lack of discovery – the best defense is sometimes a good offense.

7. Perfect 10 will not object to the taking of the deposition of FoneStarz in Great Britain, so long as Perfect 10 receives copies of the documents produced and can participate in the deposition by videoconference. The Letter of Request to the British Court that Google asked this Court to sign did not so provide. Furthermore, Perfect 10 objects to incorrect and unnecessary statements that Google has asked the Court to make in its Letter of Request. For example, Google included the following statement in the Letter of Request that it asks the Court to sign: "As the Ninth Circuit also found, Perfect 10 is unlikely to succeed on its claim of vicarious copyright infringement, nor does Google's alleged conduct meet the legal standard for contributory copyright infringement."
8. Perfect 10 adamantly opposes Google's request to vary the Rules to allow it to take 30 depositions. There is no justification for Google to take that many depositions. There is no reason for Google to depose more than two or three representative models, more than two or three representative vendors, or more than two or three of any other category of witnesses. Google's request is merely part of its strategy -- a multi-billion dollar corporation with a large law firm trying to overwhelm a company that is losing millions of dollars (because of rampant infringement) and a sole practitioner (with two part time contract attorneys). It is Perfect 10's position that there should be no changes to the rule setting the number of depositions at 10. (However, if that number is slightly increased, it should apply mutually to the parties.) Furthermore, Perfect 10 should be able to participate in depositions outside Los Angeles by video conference or telephone (at Perfect 10's expense and choice).

## G. SUMMARY JUDGMENT

### 1. By Perfect 10

Perfect 10 believes that some issues in the case, including Google's liability for copyright infringement, may be determined by motion for partial summary judgment.

### 2. By Google

Google anticipates filing motions for summary judgment or partial summary judgment on multiple issues, including but not limited to:

- Whether Google is entitled to one or more DMCA safe harbors against monetary relief for copyright infringement;
- Whether Google is entitled to immunity under the Communications Decency Act, 47 U.S.C. § 230(c), against one or more of Perfect 10's state law claims;
- Whether one or more of Perfect 10's state law claims is preempted by the Copyright Act, 17 U.S.C. §301;
- Whether Google's actions alleged in this case constitute fair use of any copyright works being asserted under the Copyright Act;
- Whether the applicable statutes of limitations bar one or more of Perfect 10's claims, in whole or in part;
- Whether Perfect 10 is entitled, in whole or in part, to statutory damages and/or attorney's fees under the Copyright Act;
- Whether Perfect 10's claims to actual damages—assuming that claim has not been waived—are impermissibly speculative; and
- Whether Google is entitled to summary adjudication regarding Perfect 10's claims of secondary infringement.

Because of the many issues presented in the case, Google requests that it be allowed either to file several motions in stages, addressing one portion of the case at a time, or, alternatively, that it be allowed to exceed the normal page limits for

motion briefing.[4] Additionally, at the close of discovery, Google intends to review the propriety of summary judgment as to any remaining claims.

**3. Perfect 10's Reply**

Perfect 10 requests that any variance to the Rules regarding briefing of summary judgment motions apply to motions it brings, as well as Google's.

## H. SETTLEMENT

**1. By Perfect 10**

Perfect 10 and Google met to attempt to settle this action before Perfect 10 filed its Complaint. Perfect 10 and Google also participated in almost a full day's settlement conference before United States District Judge (Retired) Eugene F. Lynch of the Northern District of California. Since then, the parties have not seriously discussed settlement. Perfect 10 again suggests having one last settlement conference before a retired District Judge, possibly Judge Lynch again.

**2. By Google**

At this time, Google does not believe that further settlement discussions will be fruitful.

## I. ESTIMATED LENGTH OF TRIAL

**1. By Perfect 10**

Perfect 10 requests that the cases against Google and Amazon be tried together. Perfect 10 requests a jury trial. Perfect 10 estimates a 16-day jury trial if the cases are tried together. Perfect 10 estimates a 12-day jury trial if the case against Google is tried separately and a 10-day jury trial if the case against Amazon is tried separately.

**2. By Google**

---

[4] Perfect 10 claims in its newly-added Section G.3, entitled "Perfect 10's Reply," at page 22, below, that any variances in the Rules governing motions for summary judgment apply mutually to Google and Perfect 10. Google has no objection in principle to Perfect 10 obtaining a variance on practices and procedures governing motions for summary judgment, provided that Perfect 10 demonstrates a need for the variance. Google has done so in its portions of the Joint Status Report. Perfect 10 has not.

Google also requests a jury trial.  Given that Perfect 10 has recently been granted leave to add 951 new alleged copyright registrations to the case, and may add still more registrations, Google believes that trial will take a minimum of thirty (30) days.  Google may have to revise this estimate substantially based on the outcome of pending discovery.

Google objects to Perfect 10’s request for a joint trial of its cases against Google and Amazon.com, Alexa Internet, and/or A9.com.  Perfect 10's claims against these entities involve different search engines using different technologies, different DMCA notices, different DMCA procedures, and different sets of purported infringements.  Because so little of the evidence is overlapping, Perfect 10 would have to present this evidence to the jury in a seriatim fashion.  For example, Perfect 10 has alleged that Google is responsible for 2 million (as-yet-unspecified) copyright infringements allegedly located using Google’s proprietary search engine, and has separately alleged that Alexa is responsible for 350,000 (different) infringements purportedly located using Alexa’s proprietary search engine.  At trial, Perfect 10 will not be able to present its evidence of alleged infringements by Google together with evidence of alleged infringements by Alexa, because alleged infringements by one search engine have nothing to do with (and cannot be attributed to) the other search engine.  Perfect 10 will have to present each case one at a time, nullifying any efficiencies that are ordinarily gained in trying cases together.

Further, defendant A9.com obtained its search results from Microsoft’s MSN.com search engine for a period of time, so the A9.com trial will require introduction of evidence regarding MSN.com’s search engine, technologies and DMCA processing procedures—not to mention evidence regarding the (different) alleged infringements located using MSN.com.  This evidence would further complicate any proposed joint trial.

Additionally, Perfect 10's legal claims against the parties are different as

well. As reflected in its Amended Complaint against Amazon.com, Alexa Internet, and A9.com, Perfect 10 has only brought federal copyright claims against those defendants, and those defendants in turn have only raised defenses focused on copyright law. Against Google, however, Perfect 10 has also brought claims based on federal trademark law, the state and common law of unfair competition, the right of publicity, unjust enrichment, and misappropriation. In addition to the copyright-related defenses, then, Google has brought defenses and counterclaims based on federal preemption and several issues of California state and common law—none of which have any relevance to the case against Amazon.com or its related entities. Perfect 10 has also recently amended its complaint to add claims regarding Google's Blogger service, which has nothing to do with the Amazon defendants.

The risk of juror confusion and mistake is already high in a case involving complex technologies and millions of alleged infringements. This confusion would only be magnified were Perfect 10 to present different evidence, involving three different search engines, against different defendants, regarding different alleged infringements, at various points in the trial. The jury would then be faced with the burdensome and likely impossible task of keeping everything segregated in their minds. There are no advantages to be gained from a joint trial in these circumstances, but many disadvantages, risks and likely harms. The cases should be tried separately.

Google disagrees with Perfect 10's suggestion in its newly-added section I.3.1, below, entitled "Perfect 10's Reply," that the number of copyrights at issue should not "appreciably increase the length of trial." Perfect 10 apparently believes that its trial will be manageable because it supposedly will not bear the burden (as all other copyright plaintiffs in this country do) of proving its case with respect to each infringement alleged, because, according to Perfect 10, "[e]ither Google is liable for copyright infringement or it isn't." Google is aware of no

exception that relieves Perfect 10 of its burdens of proof merely because it has alleged many infringements. Perfect 10 is claiming ownership of more than a thousand registered copyrights, and presumably will claim entitlement to more than a thousand statutory damages awards. To prevail at trial, Perfect 10 will have to demonstrate, among other things: (1) ownership of and a valid registration for each and every copyright registration asserted, (2) that Google infringed each any every such registration, directly or indirectly (including meeting all burdens of proof thereunder), (3) that Perfect 10 served Google with a valid DMCA notice with respect to each such infringement (in rebuttal to Google's assertion of the DMCA safe harbor for that infringement), (4) that Google did not respond expeditiously to Perfect 10's alleged notice pertaining to that specific infringement (in rebuttal to Google's evidence to the contrary), and (6) that it registered each and every copyright asserted prior to the alleged infringement thereof, or within three months of publication thereof (in order to qualify for statutory damages). Of course, if Google and Amazon.com are tried jointly, these evidentiary burdens will only compound. Connecting Google to any alleged infringement does not necessarily connect Amazon.com to that alleged infringement, and vice versa, so these trial will necessarily involve entirely different sets of evidence.

**3. Perfect 10's Reply**

1. The number of copyrights involved should not appreciably increase the length of trial. Either Google is liable for copyright infringement or it isn't; there aren't going to be many differences between copyrights.

2. Perfect 10 has specified the copyright infringements it claims Google is liable for, by producing the actual print-out (or downloads) of the infringing image that Google links to. The print-out has the exact URL where the image is located at the bottom or top of the page. As discussed below, Google wants Perfect 10 to make a chart setting forth information which is contained in the documents produced. It would take over a hundred years to make such a chart, and

Judge Hillman has already found that such a chart constitutes a Mega Request. Google's implication that Perfect 10 has not identified the copyright infringements for which it seeks to hold Google liable simply is false. *See* further discussion below.

3. A joint trial of the Google and Amazon cases will save time for the Court and the parties. Both cases involve potential liability of search engines for copyright infringement, and the same issues with respect to direct, contributory, and vicarious liability; fair use; DMCA safe harbors; the adequacy of Perfect 10's DMCA notices; and a host of other issues. Furthermore, Amazon claims that its search results were provided by Google for a period of time. Even since that time, the infringements have been of the same images from the same websites and the DMCA notices have been largely the same. Common issues will predominate over the few non-common ones. While Google has allegedly infringed much more than any other search engine, the same images (only less of them) are involved with the other search engines. There will be a great deal of duplication if the cases are tried separately. The jury will be able to separate out the claims that are only alleged against Google, such as trademark and right of publicity.

## J. PRESUMPTIVE SCHEDULE OF PRETRIAL DATES

**Proposed Schedule**

| Event | Google's Proposed Date | Perfect 10's Proposed Date |
|---|---|---|
| **Trial date and length** | November 3, 2009 (20 days) | April 14, 2009 (12 days) |
| File findings of fact and conclusions of law and summaries of direct testimony | October 26, 2009 | N/A |
| Final Pretrial Conference | October 19, 2009 | March 31, 2009 |
| Lodge Pretrial Conf. Order | October 5, 2009 | March 17, 2009 |
| Last day for hand-serving motions in limine | September 21, 2009 | March 3, 2009 |
| Last day to meet before pretrial conference | September 7, 2009 | February 17, 2009 |
| Last day for hearing motions | September 7, 2009 | February 17, 2009 |
| Last day for hand-serving and filing motions | August 10, 2009 | January 20, 2009 |
| **Non-expert discovery cutoff** | June 15, 2009 | January 6, 2009 |

**Additional Matters to be Determined at Scheduling Conference**

| Event | Google's Proposed Date | Perfect 10's Proposed Date |
|---|---|---|
| **Expert discovery cutoff** | August 10, 2009 | March 3, 2009 |
| Rebuttal Expert Witness Disclosure | July 20, 2009 | February 10, 2009 |
| Opening Expert Witness Disclosure | June 22, 2009 | January 13, 2009 |

**K. OTHER ISSUES AFFECTING THE STATUS OR MANAGEMENT OF THE CASE**

**1. By Perfect 10**

None at this time.

**2. By Google**

**Perfect 10's Proposed Trial Date is Unworkable**. Perfect 10 proposes a trial date of April 14, 2009. It will be impossible to complete discovery in Perfect 10's proposed time frame, and to try this case on Perfect 10's proposed trial date. Below is a list of just some of the issues that the parties are now addressing, and that will likely require discovery to extend well into 2009:

**Perfect 10's Second Amended Complaint**. On July 17, 2008, the Court granted Perfect 10 leave to file a Second Amended Complaint that includes several new causes of action, 951 new copyright registrations, and an entirely new set of claims regarding Google's Blogger service. Additionally, the Court granted Perfect 10 leave to add still more copyright registrations to its Complaint without seeking further leave. Google is starting to take discovery on those new claims, new facts, and new registrations, but that discovery will take significant time. If Perfect 10 resists that discovery, further motion practice will be necessary.

**Perfect 10's Document Production**. As explained above, Perfect 10's document production is massive (600+ Gigabytes), contains no control numbers, is frequently not text searchable (and always unsearchable as a practical matter), has been designated "Confidential" in wholesale fashion (in violation of the Protective Order), and is completely disorganized and filled with irrelevant materials. The parties are currently meeting and conferring regarding this issue, and Google anticipates that motion practice will be necessary to resolve it.

**Perfect 10's Discovery Responses**. Perfect 10's discovery responses are deficient, and Google anticipates that motion practice will be necessary to resolve these deficiencies.

First and most importantly, Google has yet to receive proper responses to its Interrogatories, particularly Interrogatory Nos. 3 and 11, seeking identification of the infringements of Perfect 10's copyrighted works that Perfect 10 is asserting against Google in this case. Based on Perfect 10's representations in the meet-and-confer process, if Google's motion is granted, Perfect 10 will need significant time to prepare and serve its responses. And in addition, because P10 has been granted leave to amend its Complaint to add nearly 1,000 new copyright registrations, Perfect 10 will have to supplement its interrogatory responses to identify infringements of those additional registrations as well (and any other registrations Perfect 10 may add to this case). Google's motion to compel a response to Interrogatory Nos. 3 and 11 will be heard by Judge Hillman on September 8, 2008.

Further, Perfect 10's responses to Google's requests for production of documents are incomplete and/or inadequate regarding, *inter alia*: (a) documents regarding the ownership and validity of Perfect 10's alleged copyrights and trademarks (registrations and deposit materials, particularly for newly-added and/or pending registrations, and Copyright Office correspondence), (b) financial statements, tax returns, and other financial documents (Perfect 10's production is incomplete and/or heavily redacted on the improper ground of "relevance" despite the fact that Perfect 10 claims to be seeking actual damages); (c) documents related to FoneStarz and its alleged business of cell phone downloads; (d) documents related to Perfect 10's practices regarding its alleged DMCA notices; and (e) documents related to Perfect 10's use of image recognition technology services of PicScout (and potentially others). Google anticipates that motions to compel likely will be necessary to resolve these deficiencies

Additionally, Perfect 10 has failed to properly answer virtually all of Google's requests for admission, and has refused to give any response whatsoever to the majority of those requests for admission. A motion to determine sufficiency of the responses will likely be necessary.

**Foreign Discovery**. Google has filed a motion seeking foreign discovery by Letter of Request of FoneStarz Media Limited, which may take months to complete. In addition, Perfect 10 has just informed Google (despite Google's request many months ago) that Perfect 10 will **not** accept service of subpoenas directed to seven of the nine models whose publicity rights are being asserted in this case, and that two of those models reside in foreign countries (Canada and the Czech Republic, specifically). Google will pursue this international discovery immediately, but obtaining and completing it will take many months (especially if Perfect 10 does not assist in obtaining the cooperation of these models to provide this discovery).

**Dispositive Motions**. Both of the parties anticipate bringing several dispositive motions during or following the completion of discovery, and will need sufficient time to prepare them. The Court too will need sufficient time to resolve them.

**3. Perfect 10's Reply**

1. **Perfect 10's Proposed Trial Date** . This case has been pending since 2004. Perfect 10 is losing millions of dollars as a result of rampant infringement, while Google is making billions of dollars from other people's content. Perfect 10 has already been forced to discontinue publication of new issues of its print magazine, in order to limit its losses. It cannot continue to lose money and litigate this case for much longer. The case should go to trial in April 2009.

2. **Perfect 10's Second Amended Complaint**. Google has known for some time about the allegations added to in the Second Amended Complaint, and has plenty of time to take additional discovery regarding those matters under Perfect 10's proposed schedule. As noted above, the additional copyrights do not change the basic claims and defenses in the case and will result in little, if any, additional discovery.

3. **Perfect 10's Document Production**. The form of Perfect 10's production to Google is organized and vastly more searchable and user friendly than Google's disorganized, repetitive, and limited production to Perfect 10. Perfect 10's documents are arranged by subject matter, in folders and sub-folders with explanatory names. For the most part, the documents have been produced on portable hard drives, that duplicate how Perfect 10 keeps the documents on its own server. The Adobe files produced by Perfect 10 are searchable and maintain the link structure of the website, so that Perfect 10 can demonstrate where links take the user. Google's proposal, the production of pages of the same website in disjointed documents, would result in a gigantic, disorganized, unsearchable mess. Basically, Google has received a duplicate, on computer hard drives, of the documents as they are kept at Perfect 10, which are very well organized.

Google unreasonably wants Perfect 10 to put a confidentiality designation on each page of each individual document which has been produced on the hard drives, rather than identifying files as confidential. Instead, Perfect 10 can identify the Confidential documents (or non-Confidential documents) by file folder. Perfect 10 has no objection to anyone at the law firms or at Google itself from seeing documents that have been designated Confidential; Perfect 10 simply does not want Google to publish information regarding Perfect 10 on the Internet, as it has done in the past on a website called chillingeffects.org.

5. **Perfect 10's Discovery Responses**. Google complains about Perfect 10's response to Interrogatories 3 and 11. However, Perfect 10 has produced to Google documents which contain all of the information that Google seeks in those interrogatories. Google wants Perfect 10 to compile that information into a chart which will have 7,200,000 entries and will take well over 100 years to compile. Judge Hillman has already found that a less burdensome request by Google was a Mega Request, and this request is simply not possible for Perfect 10. If Google really wants the information that Perfect 10 has provided put into chart format, it

might be able to do so using its vastly superior computing power and thousands of employees. Perfect 10 simply does not have the resources to do so.

Google is incorrect about Perfect 10's document production, which is very complete. Perfect 10 will provide new copyright registrations to Google as they are issued by the Copyright Office.

As discussed above, Google served 962 Requests for Admissions on Perfect 10. Perfect 10 answered 472 and offered to answer another 100 of these requests, of Google's choice, if Google will agree to so limit its requests. This is reasonable, and Google's request were overly burdensome.

6. **Foreign Discovery**. Perfect 10 has and will cooperate in foreign discovery. For example, Perfect 10 will not object to the taking of the deposition of FoneStarz in Britain, so long as Perfect 10 receives copies of the documents produced and can participate in the deposition by videoconference. The Letter of Request to the British Court that Google asked this Court to sign did not so provide. Furthermore, Google should not include unnecessary and incorrect statements in the Letter that it asks the Court to sign, such as: "As the Ninth Circuit also found, Perfect 10 is unlikely to succeed on its claim of vicarious copyright infringement, nor does Google's alleged conduct meet the legal standard for contributory copyright infringement." That will expedite matters.

7. It appears as though Google has decided to make this case much more burdensome and time consuming than necessary, in order to wear down and overwhelm Perfect 10. A trial date in April 2009 will at least limit the time period that Google can subject Perfect 10 to this.

**L. SUBSIDIARIES, PARENTS, AFFILIATES**

Perfect 10 – None

Google – None

**N. MAGISTRATE JUDGE**

The parties do not consent to the designation of a Magistrate Judge to

conduct all proceedings.

Dated: August 11, 2008

LAW OFFICES OF JEFFREY N. MAUSNER

Jeffrey N. Mausner

By: ________________________________
Jeffrey N. Mausner
Attorneys for Plaintiff Perfect 10, Inc.

Dated: August 11, 2008

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By: ________________________________
Rachel M. Herrick
Attorneys for Defendant Google Inc.