1            UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3          HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                           - - -

5

6    PERFECT 10, INC., A CALIFORNIA        )
     CORPORATION,                          )
                          PLAINTIFF,       )
7                                          )
                    vs.                    )  No. CV04-09484-AHM(SHx)
8    GOOGLE, INC., ET AL.,                 )
                          DEFENDANTS.      )
9    _____)
     PERFECT 10, INC., A CALIFORNIA        )
10   CORPORATION,                          )
                          PLAINTIFF,       )
11                                         )
                    vs.                    )  No. CV05-4753-AHM(SHx)
12   AMAZON.COM, INC., ET AL.,             )
                          DEFENDANTS.      )
13   _____)
     PERFECT 10, INC., A CALIFORNIA        )
14   CORPORATION,                          )
                          PLAINTIFF,       )
15                                         )
                    vs.                    )  No. CV07-5156-AHM(SHx)
16   MICROSOFT CORPORATION,                )
                          DEFENDANT.       )
17   _____)

18        REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS

19                LOS ANGELES, CALIFORNIA

20               WEDNESDAY, AUGUST 27, 2008

21

22        _____

23               CINDY L. NIRENBERG, CSR 5059
                 U.S. Official Court Reporter
24               312 North Spring Street, #438
                 Los Angeles, California 90012
25                 *www.cindynirenberg.com*

1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:
                         MAUSNER IP LAW
4                        BY: JEFFREY N. MAUSNER, ATTORNEY AT LAW
                         21800 OXNARD STREET
5                        SUITE 910
                         WOODLAND HILLS, CA 91367
6                        310-617-8100

7

8    FOR THE GOOGLE DEFENDANTS:
                         QUINN EMANUEL URQUHART OLIVER & HEDGES
9                        BY:  MICHAEL T. ZELLER, ATTORNEY AT LAW
                              THOMAS NOLAN, ATTORNEY AT LAW
10                       865 S. FIGUEROA STREET
                         10TH FLOOR
11                       LOS ANGELES, CA 90017
                         213-443-3000
12
                         QUINN EMANUEL URQUHART OLIVER & HEDGES
13                       BY:  RACHEL M. HERRICK, ATTORNEY AT LAW
                         555 TWIN DOLPHIN DRIVE
14                       SUITE 560
                         REDWOOD SHORES, CA 94065
15                       650-801-5000

16

17   FOR THE DEFENDANTS AMAZON.COM, A9.COM AND ALEXA INTERNET:
                         TOWNSEND & TOWNSEND & CREW
18                       BY: ANTHONY J. MALUTTA, ATTORNEY AT LAW
                         TWO EMBARCADERO CENTER
19                       8TH FLOOR
                         SAN FRANCISCO, CA 94111
20                       415-576-0200

21

22

23

24

25

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    APPEARANCES OF COUNSEL (CONTINUED):

2

3    FOR THE MICROSOFT DEFENDANTS:
                         WINSTON & STRAWN
4                        BY: ANDREW P. BRIDGES, ATTORNEY AT LAW
                             JENNIFER A. GOLINVEAUX,
5                            ATTORNEY AT LAW
                             MATTHEW A. SCHERB, ATTORNEY AT LAW
6                        101 CALIFORNIA STREET
                         SAN FRANCISCO, CA 94111
7                        415-591-1506

8

9

10   ALSO PRESENT:       STEPHEN J. HILLMAN, U.S. DISTRICT
                         COURT MAGISTRATE JUDGE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; WEDNESDAY, AUGUST 27, 2008

2                           4:06 P.M.

3                           - - - - -

4          THE CLERK:  Calling Item Number 2, CV04-9484, Perfect

5   10, Inc. versus Google, Inc., et al., related to CV05-4753,

6   Perfect 10, Inc., versus Amazon.com, Inc., et al., related to

7   CV-07-5156, Perfect 10, Inc. versus Microsoft Corporation.

8          Counsel, state your appearances, please.

9          MR. MAUSNER:  Good afternoon.  Jeff Mausner for the

10  plaintiff, Perfect 10.

11         MR. BRIDGES:  This is Andrew Bridges with Jennifer

12  Golinveaux and Matthew Scherb for Microsoft Corporation.

13         THE COURT:  Anyone here from Amazon?

14         MR. MALUTTA:  Yes.  This is Anthony Malutta for

15  Amazon.com and related defendants.

16         THE COURT:  And for Google?

17         MR. ZELLER:  Yes.  Good afternoon, Your Honor.  This

18  is Mike Zeller for Google, and with me are Rachel Herrick and

19  Tom Nolan.

20         THE COURT:  Good afternoon to all counsel.

21         Judge Hillman, are you on the line as well?

22         JUDGE HILLMAN:  Yes, I am.

23         THE COURT:  Okay.  This is, of course, Judge Matz,

24  and this matter is being transcribed by our court reporter.

25         I granted the request of counsel for Microsoft that

1    we enable them to weigh in on the matters that were discussed

2    and incorporated into the transcript for the August 18th

3    proceeding, and I'm happy to do so, and that's Microsoft's

4    right, so this is your opportunity to let us know your initial

5    views.

6              MR. BRIDGES:  Thank you, Your Honor.  This is Andrew

7    Bridges speaking.

8              First, I thought I would fill the Court in a little

9    bit on the status of the Perfect 10/Microsoft case, and then I

10   would like to offer Microsoft's observations on three points

11   that I think were raised at the status conference in the Google

12   case -- actually, I guess four points.  And then I'd like to

13   add an observation on the fifth point that relates to one of

14   the other points.

15             THE COURT:  Okay.  Why don't you go first, and tell

16   us all of those -- your positions on all of those matters, and

17   then depending on what you say, I'll invite responses from the

18   other lawyers.

19             MR. BRIDGES:  Thank you, Your Honor.

20             As to status, first, we did receive -- I'm not sure.

21   It was maybe a month or so ago -- a first tranche of document

22   production by Perfect 10.  I think it consisted of two hard

23   drives.  There is a lot of material on the drives.

24             Right now, we don't have any document disputes, but

25   it is taking us a while just to get through it and to

1    understand it before we know whether there are any particular

2    disputes.

3           I would say that we do -- and we've accepted these

4    hard drives as the production for now because we want to get

5    our hands on something. They are in a variety of files. They

6    are really something akin to a mirror image of what the Court

7    might have on its computer hard drive at the office or at home.

8           Our goal has been to try to avoid disputes wherever

9    possible and to live with whatever we can live with, and,

10    frankly, we're still trying to figure out if we can live with

11    it. But it's premature certainly for us to haggle about it.

12           One concern we've always had, which is borne out a

13    little bit in the document production, is that this case

14    involves a lot of documents. It is important to know what

15    documents have and have not been produced. It is important as

16    documents become relevant to know exactly where we can find

17    them.

18           Traditionally, in every piece of litigation I've had

19    in the past, that problem is solved by the use of document

20    numbering, and so -- I'm rather agnostic as to format. We're

21    trying to deal with the format in everything that we've

22    received, but I just want to point out that a major issue is

23    when a deposition exhibit is identified, it's much easier to

24    know that it's document Number 1416 than to know, oh, on hard

25    drive B, if you look in file A, sub-file J, sub-sub-file R,

1 sub-sub-sub-file Y, and going on down, the third picture from

2 the left on the 82nd page is the one we're talking about.

3       So that's the concern I have just in terms of

4 efficient management of the case. The lack of control

5 numbering of what is being produced by Perfect 10 is a problem.

6       THE COURT: Okay. So you are referring to something

7 that would be the electronic equivalent of a Bates stamp?

8       MR. BRIDGES: Exactly, Your Honor.

9       A similar, but related issue -- I'm not as bothered

10 by it -- is the question of how do we know which particular

11 documents are confidential and which ones are not if there is

12 not some individual designation on individual documents.

13       THE COURT: Well, do you have a Confidentiality

14 Agreement or a Protective Order in place with Perfect 10?

15       MR. BRIDGES: There is a Protective Order, but the

16 difficulty is how do things reasonably get identified as

17 confidential and protected by the confidentiality order,

18 because it just cannot be done at the hard drive level. It

19 needs to be really, as in typical litigation, at the document

20 level and possibly the file level.

21       But the problem is anytime you allow confidentiality

22 designations too broadly, there is an enormous cost in

23 resources, time and money to deal with filing things under seal

24 that have been over-designated. And then there is an enormous

25 cost of coming back to negotiate away over-designations of

1    confidentiality.  So that's a concern.

2            One observation I'd like to make is that negotiations

3    with Perfect 10 are not easy.  And that's as far as I'll go on

4    that.

5            So that's the status of the documents that we've

6    received.

7            And another status item is that we do have a fairly

8    narrow motion to compel a substantive response to one

9    interrogatory and to compel revisions to responses to requests

10   for admission.  That part is very straightforward.

11           It's essentially that Perfect 10 adds several

12   sentences of self-serving language to its responses to try to,

13   in our view, inflame the jury if an admission were to be

14   presented to the jury.  We just need to strike that.

15           THE COURT:  Wait a minute.  I missed something.  Did

16   you say you currently have pending -- you already filed some

17   motion that's now pending before Judge Hillman?

18           MR. BRIDGES:  That's right.  It's been set for the

19   same date as the other motion to compel interrogatories.

20           JUDGE HILLMAN:  I have that motion.  I'm looking at

21   it.

22           MR. BRIDGES:  And it's very targeted.  We are trying

23   to keep disputes to a minimum.

24           THE COURT:  So that's set for September 8th?

25           MR. BRIDGES:  Yeah, that's correct, Your Honor.

1          THE COURT:  And exactly what does it seek?

2          MR. BRIDGES:  It seeks a substantive answer to one

3    interrogatory, and it seeks essentially to strike a lot of

4    surplus verbiage and admissions responses where -- one of the

5    responses is, for example, "Denied because Microsoft is the

6    biggest infringer in the world."

7          THE COURT:  Okay.  I get the point.

8          MR. BRIDGES:  We don't need the extra setups.  You

9    either admit or deny, but we don't need all sorts of

10    editorializing, and it's a motion to trim out that

11    editorializing from the responses.

12          THE COURT:  Okay.

13          JUDGE HILLMAN:  If I may say so, Judge Matz -- and I

14    have not studied this motion nor have I received supplemental

15    memoranda -- but the one interrogatory is what I have termed a

16    mega request.  But I think Mr. Bridge's characterization of the

17    balance of the motion is accurate, and it doesn't need a lot of

18    work on my part.

19          MR. BRIDGES:  I will say this about the

20    interrogatory.  We are trying to bring order out of chaos as we

21    get this ready -- get this case ready for trial.  And the chaos

22    I perceive is this, that there is a lot of information that

23    Perfect 10 is very, very willing to give.

24          It frequently furnishes masses of information, but

25    what we have not received is useful information that allows us

1  to tie related pieces of information together.

2          And our interrogatory asks for every work for which

3  Perfect 10 seeks remedies -- and it's seeking remedies of

4  $150,000 in statutory damages per work.  For each work, we

5  simply want the registration number and information about the

6  chain of title, who the persons are depicted in the work

7  claimed, and stuff like that.

8          It's stuff that could be on a spreadsheet.  And it

9  becomes a mega request only to the extent it is a mega case

10  because it essentially --

11          THE COURT:  Okay.  Well, you know --

12          MR. BRIDGES:  -- information per claim for $150,000.

13          THE COURT:  Okay.  Now, Mr. Bridges, you may not have

14  understood what my intention was on this call.

15          What you're telling me is informative, but it's going

16  beyond what I need to know because --

17          MR. BRIDGES:  Okay.

18          THE COURT:  -- it's beginning to sound too much like

19  an argument on the merits of your motions before Judge Hillman.

20          I just want to know what the status of things are.  I

21  don't need to know precisely why you are going to be seeking

22  the relief or what you've been incorporating into your papers.

23  So please proceed on that basis.

24          MR. BRIDGES:  I appreciate that, Your Honor.  So let

25  me then share observations on five points.

1    First is on the question of coordination.  I think

2  there are certainly areas in which it is in everybody's

3  interest to coordinate activities.  And that, I think, would be

4  especially true on the timing of things.

5    I do believe that the more the various defendants in

6  the three cases can coordinate, the better, but we do need to

7  recognize that there are some significant differences between

8  the cases.

9    And one fear I have is that sometimes coordinating

10  cases that already have some degree of complexity which have

11  some similarities but are nevertheless different, that a little

12  too much coordination adds to the complexity and that itself

13  creates problems that less coordination might not cause.

14    THE COURT:  Okay.  Let's be a little bit more

15  concrete.  At the hearing --

16    MR. BRIDGES:  I'll --

17    THE COURT:  Listen to me, please.  Don't interrupt

18  me.  At the hearing on the 18th, I said that I wanted the

19  deposition of Zada to be coordinated, that each defendant that

20  Perfect 10 is suing would have up to two days, up to seven

21  hours each of those days, to ask the questions of Zada, that it

22  was appropriate that the defense lawyers were to coordinate the

23  questions, that he wasn't going to be subject to questions that

24  had already been asked that had a generic application, stuff

25  like that.  You saw that, right?

1                MR. BRIDGES:  Yes, Your Honor.

2                THE COURT:  Do you have a problem with that?

3                MR. BRIDGES:  Yes, Your Honor, I do.

4                THE COURT:  What's your problem?

5                MR. BRIDGES:  The coordinating of questions, for

6     example.  I've defended one deposition in the Microsoft case

7     where from my perspective the plaintiff's counsel asked the

8     same question ten times.  I made asked and answered objections.

9     That's par for the course.

10               There may be times where Microsoft wants to ask

11    things in a very similar way to the way Google's lawyer asks

12    it, but we have a different point to make, and we'd like to be

13    able to ask it as we'd like to ask it without having to

14    negotiate with Google over who gets to ask it.

15               And then if we ask it and Mr. Mausner thinks it's

16    duplicative, I'm concerned about his having a court order to

17    waive in my face and say, "Back off, Mr. Bridges.  You've got a

18    court order saying you can't do this."

19               It seems to me we -- if there is a concern -- there

20    is a natural limit to the burden caused by the questioning that

21    the time limits themselves impose.  And if a deposing party

22    wants to waste precious time with duplicative questions, it may

23    be because -- not that -- I don't have any motivation to keep

24    Dr. Zada in the witness chair longer.  I have a desire to get

25    through a mass of material the way I'd like to get through it.

1          THE COURT:  Okay.  But don't --

2          MR. BRIDGES:  Requiring us to go and sit down with

3     counsel days before to allocate questions actually just

4     increases burdens substantially and sows seeds of discord, and

5     we're trying to litigate this in a way that avoids sowing seeds

6     of discord.

7          THE COURT:  I don't necessarily see it that way, but

8     I'm not going to be making final rulings on this phone call.

9          But off the top of my head, if there was an infringed

10    picture, a photograph, and Google's lawyer went first and asked

11    Dr. Zada a question about the particular injury or damage

12    sustained as a result of the publication of that photograph on

13    a Google server, and he put it in particular, precise language,

14    there would be no barrier to you asking in the very same words

15    but substituting the word Microsoft the same question to Mr.

16    Zada.

17         That should have been implicit and clear in what I

18    was off the top of my head looking for.

19         If it was a question of damages and it wasn't just

20    some kind of routine maximum statutory damage theory that Mr.

21    Mausner was pursuing and the damages might differ from

22    Google -- between Google -- or from Google to Amazon and

23    Microsoft, each would have the right to have a particular

24    question and a direct answer applicable to that particular

25    alleged infringer.

1          Just keep that in mind.  I don't want to have a

2    colloquy about it right now.  I'm just giving you an

3    opportunity to be heard so I and Judge Hillman can determine

4    just what is the most efficient and most appropriate way to

5    proceed.

6          MR. BRIDGES:  I appreciate that, Your Honor.

7          THE COURT:  I got your point.

8          Okay.  Now, what's your next point?

9          MR. BRIDGES:  The second point is with respect to a

10   discovery master, we are not, apparently, at this point

11   charting out the same number of depositions and the like as

12   Google.  We have not at this point had major discovery

13   disputes.

14          Microsoft believes that in its case, frankly, it

15   would prefer not to have a discovery master.  There's no

16   apparent need for it in the Microsoft case.

17          We do fear that it then creates essentially a

18   three-level discovery review process.  And that may be

19   appropriate management of it in the Google/Amazon cases, I

20   can't speak to that.  But the Microsoft case to us does not

21   feel as though it has sufficiently vexing discovery problems

22   that would cause it to need a master.

23          It certainly would not want to be paying for any

24   share of a discovery master that relates to disputes involving

25   Google or Amazon, but I don't even -- I'm sort of reluctant to

1    even mention the payment part because we just don't believe

2    that there is a need in the Microsoft case for a discovery

3    master.  That's the second point.

4             THE COURT:  When you used the words three levels of

5    review, what did you mean?

6             MR. BRIDGES:  Well, presumably the discovery master

7    would report -- well, I guess the discovery master would report

8    to you, Judge Matz, not to Judge Hillman.  So it would still be

9    two levels of review, then.

10            I was thinking the discovery master might report to

11   Judge Hillman, and there would be three levels with the

12   district judge, the magistrate judge and the master.  That

13   would be a concern.  But we just don't believe that we have

14   significant enough of discovery disputes at this point to need

15   a master.

16            The third point is on the Court's question of a

17   mediator.  Subject to the conflicts checking, Microsoft would

18   welcome it.

19            I have to say we are very pessimistic that the

20   Microsoft case will settle, but we certainly agree that every

21   effort should be made.  Subject to a conflicts checks, Judge

22   Lynch would be acceptable.

23            Microsoft has a couple particular comments here,

24   though.  If the case is to be mediated, it is better to make

25   the effort very promptly rather than late in the game because

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    everybody is going to be spending a lot of money.

2          Second, in our view, to reach a principled result or

3    for the parties to negotiate from principled positions in any

4    mediation, Microsoft really needs information about -- not

5    about statutory damages claims, because I think, frankly, we

6    all know that statutory damages numbers sort of get pulled out

7    of the air, but Microsoft would really want to know going into

8    a mediation what actual damages Perfect 10 calculates and how

9    it calculates them, and it would ask that Perfect 10 furnish

10   that information to the mediator and to Microsoft in advance of

11   a mediation.

12          And, frankly, we also believe that in order to engage

13   in principles in negotiation, our response to Interrogatory

14   Number 1 is important.

15          THE COURT:  Okay.  What's your next point?

16          MR. BRIDGES:  The next point is that you had

17   mentioned in the transcript that Dr. Zada's deposition, the six

18   days would take place in one fell swoop.

19          We had earlier gotten an order from the Court in the

20   Microsoft case that we would have two days of Dr. Zada.  That's

21   unchanged, but we had gotten one day early and one day late,

22   and we do believe that two phases would be important, at least

23   from Microsoft's perspective.

24          THE COURT:  Okay.  I don't remember saying that it

25   had to be six days in a row.  If I said it, it was improvident

1  to say it because I was not out to micromanage something.  And

2  there could be all kinds of reasons, not just the need to

3  prepare in light of what is disclosed on one day for the next

4  time, but counsel's schedule and the like.  So if I said it had

5  to be six consecutive days, don't take that literally.  And

6  that's true for all the lawyers, including Mr. Mausner, of

7  course.

8          What's the next point?

9          MR. BRIDGES:  The next point is the -- I think right

10  now we have -- one thing that inhibits coordination of the

11  three defendants in the three cases is that we have a separate

12  Protective Order in each case pertaining to each case.  I guess

13  maybe the Google/Amazon had one Protective Order together.

14          We would like some provision that it would not be a

15  violation of a Protective Order in any of the three cases for

16  the defendants to share with each other materials from or

17  pertaining to Perfect 10.  I would expect that to be

18  uncontroversial.

19          But essentially we would like to have materials

20  designated as confidential by Perfect 10 in one case able to be

21  shared by counsel in the three different cases.

22          I anticipate we are probably all getting the same

23  things, but to the extent we're not, we may need to identify it

24  as part of our coordination.

25          That's really my final point.

```
 1            THE COURT:  All right.  Now, as I recall -- I don't
 2   have a lot of materials here before me -- I granted an
 3   extension of the time to respond to my orders relating to
 4   proposing individuals who might be qualified to serve as
 5   special masters, and that now is due on September 4th, right?
 6            MR. BRIDGES:  I think that's the correct date, Your
 7   Honor, yes.
 8            THE COURT:  Well, you've already let us all know your
 9   position, but you're not exempt from responding to that, so --
10            MR. BRIDGES:  I'm sorry.  I think somebody called.
11   There was a noise.  I didn't hear the Court's last sentence.
12            THE COURT:  I said you are not exempt from responding
13   on a timely basis, meaning September 4th, to that portion of
14   what I mentioned at the Court hearing.
15            MR. BRIDGES:  I understand that, Your Honor.
16            THE COURT:  This is not in lieu of that.
17            MR. BRIDGES:  I understand that, yes.
18            THE COURT:  Mr. Mausner, I'll give you a chance to
19   respond, but keep in mind the guidance I tried to give Mr.
20   Bridges.  I don't want this to be oral argument on the merits
21   of pending motions.
22            MR. MAUSNER:  Okay.  One thing I'd like to say about
23   actual damages, Perfect 10's actual damage, at least the main
24   claim or one of its claims depends on information from the
25   defendants.
```

1          It's based on the number of lost potential customers,

2    and the only way we can get that is from knowing the number of

3    searches on Perfect 10 models, and clicks that are done on

4    those images.  So it's not information that we have at this

5    time.  It's information that we have to get from the

6    defendants.

7          You know, just very quickly on these responses to

8    requests for admission, you know, we modified --

9          THE COURT:  Okay.  No.  I'm going to cut you off, Mr.

10   Mausner, because -- I'm not trying to be unfair to you and keep

11   this in one direction only.  Just the opposite.  I didn't

12   really benefit from Mr. Bridge's preview on the merits of that,

13   and I won't benefit from yours.  Maybe at the appropriate time

14   Judge Hillman will.

15         MR. MAUSNER:  Okay.

16         THE COURT:  So you don't have to go into that.

17         Now, I will say a couple of things to all -- well,

18   before I do -- because I think we are approaching the end of

19   this conference call -- do you wish to be heard about anything,

20   Mr. Malutta?

21         MR. MALUTTA:  Not at this time, Your Honor.

22         THE COURT:  How about you, Mr. Zeller?

23         MR. ZELLER:  No, Your Honor.

24         MR. MAUSNER:  Your Honor, there is one other matter

25   that came up involving A9's motion for summary judgment.

1          They filed their motion for summary judgment.  They

2   said they were going to file it on the 22nd.  They filed it on

3   the 25th after close of business, and it contains three

4   separate issues in there, which we think is directly contrary

5   to the Court's order that separate issues are to be made in

6   separate motions.  And it is going to be very difficult to

7   respond to that in exactly or a little bit less than two weeks

8   that they provided.

9          We've had correspondence on this, and they will not

10  agree to separate the motions.  And I think we will probably

11  need an order either that they separate out the motions so that

12  we have more time to file our opposition to it --

13          THE COURT:  All right.  Well, make that application,

14  and obviously it will have to be on an ex parte basis if you

15  can't work it out.  Make it to me.

16          MR. MAUSNER:  Okay.  Well, I was hoping we could do

17  it just over the phone now.

18          THE COURT:  Well, I don't want to waste the time of

19  Judge Hillman and the other two lawyers.  I will be willing to

20  hear at least a little bit from you and from Mr. Malutta after

21  I excuse the others.  They don't have to waste time and incur

22  fees about that.

23          Anything else, Mr. Mausner?

24          MR. MAUSNER:  No.

25          THE COURT:  All right.  Well, here's a couple of

1   items that I want to mention that are really critical on all

2   the cases and as to all the lawyers.

3           First of all, it is not feasible, and I don't think

4   it's even advisable, to subject Judge Hillman to proceeding on

5   the scheduled basis with respect to the pending discovery

6   motions, some of which may qualify as so-called mega motions --

7   and I believe that those are currently scheduled for argument

8   on September 8th -- so I'm authorizing Judge Hillman to take

9   those off calendar, and he will communicate with the moving

10  parties and all the parties as to whatever is pending before

11  him about a different hearing date and maybe a different

12  schedule, depending upon what I do with respect to the possible

13  appointment of a discovery master, and that won't be something

14  that I turn to until after I have had a chance to read whatever

15  you file on September 4th.

16          And that September 4th filing date will also require

17  information about just what is pending in terms of discovery

18  motions and what's planned and anticipated.

19          So September 8th is out, and it's being taken off

20  calendar.

21          That's acceptable to you, Judge Hillman?

22          JUDGE HILLMAN:  Yeah.  I will still have under

23  submission the motion regarding attorneys' eyes only in the

24  Google case.  And I also think there is another one floating

25  around that hasn't reached me regarding that London account,

1    but that hasn't been refiled as a joint stipulation, so I don't

2    know what will happen with that.

3             THE COURT:  You mean the letter of request to the

4    British court?

5             JUDGE HILLMAN:  Right.  Right.  That is not before me

6    yet.  It was before you, and then it has not found its way to

7    me.  But the three that you mentioned on the 8th, I will take

8    off calendar for that day.

9             THE COURT:  Okay.  The second point I want to make,

10   counsel, is that I haven't seen some of these motions.  There

11   are special requirements obviously, and nobody is more familiar

12   with those than Judge Hillman, but I assume all these

13   lawyers -- they're very good, they're very experienced, they're

14   aware of local rules and court requirements under Rule 37, but

15   make sure that the fairly recent provisions relating to

16   discovery and motion practice involving electronically stored

17   information are scrupulously complied with.

18            And if they haven't been, and if that were a barrier

19   to whoever decides those motions making an informed and

20   rule-compliant decision, then don't be surprised if the motions

21   are rejected on that basis.

22            I don't know for sure exactly who's filed what and to

23   what extent there is or is not compliance, but there needs to

24   be very exacting and scrupulous compliance on a case like this

25   where so much information is stored electronically.

1          And I won't say more than that.  I'm not pointing the

2     finger at any one firm.  Maybe no firm has a basis to have a

3     finger pointed at all, but I'm just pointing that out.

4          Now, in order to address this possible question of

5     the three motions packed into one, I propose to excuse counsel

6     for Google, counsel for Amazon and Judge Hillman, and I may, at

7     least briefly, hear from -- no, not counsel for Amazon because

8     that would be you, Mr. Malutta.

9          I would excuse counsel for Microsoft and Google and

10    listen to Mr. Malutta on this issue of the summary judgment

11    motions.

12         Anybody have a problem with that?

13         MR. MAUSNER:  Your Honor, may I just clarify two

14    points?  Our supplemental briefs regarding the discovery

15    motions are not going to be due until it is rescheduled?

16         Is that your contemplation, Judge Hillman?

17         JUDGE HILLMAN:  Just the last part of that sentence

18    was what?

19         MR. MAUSNER:  Whether our supplemental briefs or --

20         JUDGE HILLMAN:  I see no reason for those being filed

21    right now.

22         MR. MAUSNER:  Okay.  And then are the lists of

23    pending and contemplated discovery, are those also extended to

24    September 4th, Judge Matz?

25         THE COURT:  What was that?

1          MR. MAUSNER:  We had discovery lists that were due on

2    this Friday.  Are those also extended to September 4th?

3          THE COURT:  I didn't contemplate extending them, no.

4          MR. MAUSNER:  Okay.  We'll file those.

5          THE COURT:  The earlier I have a chance to see and

6    Judge Hillman has a chance to see what we're looking at, the

7    better.

8          MR. MAUSNER:  Okay.

9          THE COURT:  So that date is due.

10         That's a date you can comply with, counsel for

11   Microsoft, right?

12         MR. BRIDGES:  Yes, Your Honor.

13         THE COURT:  Okay.  All of you are still required to

14   file that by Friday -- or on Friday.

15         MR. MAUSNER:  Thank you, Your Honor.

16         THE COURT:  Okay.  So why don't you stay on the

17   phone, please, Mr. Mausner, and you stay on the phone, Mr.

18   Malutta, and the others are excused, and thank you for your

19   participation.

20         MR. BRIDGES:  Thank you, Your Honor.

21         THE COURT:  Judge Hillman, I will call you later

22   today probably.

23         JUDGE HILLMAN:  Thank you.

24         MR. SCHERB:  This is Matthew Scherb from Microsoft,

25   Winston & Strawn.  I was the one who's arranged the conference

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   call, so I'm going to need to stay on the line so everyone else

2   can as well.  I won't participate, but I will be here

3   listening, if that's all right with you.

4           THE COURT:  I don't have a problem with that.

5           MR. SCHERB:  Thank you, Your Honor.

6           MR. MAUSNER:  Your Honor, it's Jeff Mausner.  I sent

7   an email to Mr. Montes that has the information regarding this

8   dispute.

9           THE COURT:  Well, I haven't seen the email.

10          Have you seen it, Mr. Montes?

11          THE CLERK:  No, I haven't.

12          THE COURT:  He hasn't seen it.

13          I'm looking at the table of contents -- my law clerk

14  brought it in -- and it's a 15-page Summary Judgment Motion

15  Memorandum as far as I can see.

16          MR. MAUSNER:  Right.

17          THE COURT:  That's the one you're talking about?

18          MR. MAUSNER:  Yes, Your Honor.

19          There are three separate issues in there.  One is

20  whether A9 is eligible for the Section 512(a) Safe Harbor.  The

21  second one is whether A9 is liable for direct infringement, and

22  the third one is whether A9 can be liable for vicarious

23  infringement.

24          THE COURT:  Well, I don't see that that is

25  particularly burdensome.  I don't know how many cases or how

1 many principles or how many statutes or how many precedents or

2 what level of facts -- there is a declaration of somebody named

3 Amacker in support of that?

4      MR. MAUSNER:  Yes, Your Honor.

5      THE COURT:  Is that the only factual material that

6 you submitted along with an SUF, Mr. Malutta?

7      MR. MALUTTA:  This is Mr. Malutta.  Yes.  That's what

8 we submitted.

9      MR. MAUSNER:  Well, that's actually not correct.

10 They also submitted the declaration of Mark Jansen which

11 attaches exhibits.

12      MR. MALUTTA:  Correct.  Well, I'll point out that --

13 this is Mr. Malutta -- that the motion is simply focused on

14 copyright.  The direct and vicarious sections are a

15 page-and-a-half each, and Mr. Mausner has been on notice that

16 we are moving on these copyright claims for over two-and-a-half

17 years.

18      THE COURT:  Yeah, that's what I have been sitting

19 here assuming.  None of this --

20      MR. MALUTTA:  It's all related.  The direct and

21 vicarious, I think it's unfairly part of the claim, which is a

22 single claim in the amended complaint for direct vicarious

23 liability.

24      THE COURT:  Well, let me ask you something, Mr.

25 Malutta.  I'm just trying to think of a practical way to handle

1    this because I don't -- if yours were the only case and if this

2    was the only motion and there weren't discovery motions and a

3    lot of flurry about technical advisors and special masters, I

4    would reject out of hand Mr. Mausner's attempt to break it up.

5            This doesn't seem like it's inherently that

6    burdensome.  In context, it could be.  So the claims of direct

7    infringement and vicarious infringement are not going to be

8    divided from each other.  I want those to be responded to.

9            The DMCA claims, which I can see being of greater

10   concern to Mr. Mausner -- maybe I'm misunderstanding his case,

11   but it could be very significant with respect to these other

12   defendants who have been sued by Perfect 10.  That might be a

13   little bit different.

14           But in any event, what's the big problem, Mr.

15   Mausner?

16           MR. MAUSNER:  Well, I have two depositions coming up.

17   We've taken off the discovery motion.  That helps.

18           We've had -- you know, there are other things that

19   are coming up.  I'm working until past midnight every night.

20   Here's -- a possible solution is if we got a week extension so

21   that we had three weeks to do this.

22           THE COURT:  Well, I'm already going to be creating

23   precedence.

24           See, the problem is, Mr. Mausner, that you are David

25   and you're up against Goliath.  Not only are the entities that

1    your client has sued deep pocketed and large, but they have big

2    firms representing them.

3            I was in your position many times as a lawyer.

4    You've had the assistance of Mitchell Silberberg before.  I

5    don't know if that's something that Perfect 10 wants to

6    consider, but you have sued all these defendants, and

7    something's got to give.  I don't want your health to be

8    jeopardized and your peace of mind to be shattered, but part of

9    the problem results from the course of action that Perfect 10

10   has taken.

11           Do you have any basis to assure me that this won't be

12   a continuing issue on case management until the end of dooms

13   day?

14           MR. MAUSNER:  Well, I mean, I think if defendants

15   file motions for summary judgment, I may -- you know, I can't

16   say that I won't need additional time on those as well.

17           These are -- you know, they're not uncomplicated

18   motions.  In this case, there are at least three depositions

19   that are implicated and exhibits and so on, so, I mean, I can't

20   say that this is the only time that I would ever need more

21   time.

22           THE COURT:  No, but is there a way that you can get

23   more help?

24           MR. MAUSNER:  Oh, yeah.  I'm trying.  We just

25   associated in another attorney, but he obviously isn't up to

1    speed, and, you know, we have to see how that goes.

2           It's -- we don't have the resources that they have,

3    and we can't just go off and hire a big firm.  But, you know,

4    I've been trying different things to get help, and, you know,

5    different lawyers.

6           THE COURT:  Here's what I'm going to do.

7           You don't have a problem with giving this lawyer an

8    additional week, do you, Mr. Malutta?

9           MR. MALUTTA:  No.  I mean, I'll point out they

10   already have an additional week because this was a two-week

11   schedule already.

12          THE COURT:  I know.  Well, I do that routinely in

13   summary judgment motions even for big firms.

14          MR. MALUTTA:  Okay.

15          THE COURT:  We're going to have a transcript of this

16   proceeding, so I want to make it very clear to you, Mr.

17   Mausner, that I will grant your request.  You have three weeks

18   to oppose this motion.

19          And I will not give three weeks for the reply to A9

20   because I don't think it needs it.  It's an entirely different

21   set of circumstances when you're talking about a large and

22   established firm and a team that Mr. Malutta is a part of.

23          So it will be three weeks to oppose, two weeks to

24   reply, and then I'll determine when the hearing date is.

25          But the more important point for your planning

1　purposes, Mr. Mausner, is that you should not assume that this

2　is going to be the routine way that I handle these things.

3　Don't assume that at all.

4　　　　Go back to Dr. Zada and tell him that he's in for

5　something because I'm not going to automatically and in every

6　instance be able to accommodate your human concerns.  I'm just

7　not going to be able to.

8　　　　MR. MAUSNER:  Well, I'd just ask that, you know, in

9　each case, you look at it and --

10　　　　THE COURT:  Yeah, but I'm telling you that I don't

11　want it in each case.

12　　　　MR. MAUSNER:  Okay.

13　　　　THE COURT:  I want you and your client to do

14　something to bulk up because if I look at it in each case, it's

15　going to be the same sad story in each case, and you'll know

16　what the result is, and it's not the way that I think I can

17　manage these cases.

18　　　　I am not going to rule out a considered decision on

19　any given occasion, but you should not assume that because I'm

20　doing it today, even if the facts are just as compelling the

21　next time, I'll do it.

22　　　　MR. MAUSNER:  I understand, Your Honor.  Thank you.

23　　　　THE COURT:  All right.  Anything further?

24　　　　MR. MAUSNER:  Thank you, Your Honor.  Bye.

25　　　　THE COURT:  Are you still there, counsel?

1          MR. MAUSNER:  Yes.

2          MR. BRIDGES:  Yes.

3          THE COURT:  I'm going to require that the cost of

4    this transcript for this proceeding be split four ways and that

5    an order be placed with the court reporter.

6          MR. MALUTTA:  Yes, Your Honor.

7          MR. MAUSNER:  Okay.  Thank you, Your Honor.

8          THE COURT:  We're adjourned.

9       (Proceedings concluded.)

10                        --oOo--

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25