1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                       - - -

5

6   PERFECT 10, INC., A CALIFORNIA        )
    CORPORATION,                          )
                        PLAINTIFF,        )
7                                         )
                vs.                       )  No. CV04-09484-AHM(SHx)
8   GOOGLE, INC., ET AL.,                 )
                        DEFENDANTS.       )
9   _____)
    PERFECT 10, INC., A CALIFORNIA        )
10  CORPORATION,                          )
                        PLAINTIFF,        )
11                                        )
                vs.                       )  No. CV05-4753-AHM(SHx)
12  AMAZON.COM, INC., ET AL.,             )
                        DEFENDANTS.       )
13  _____)
    PERFECT 10, INC., A CALIFORNIA        )
14  CORPORATION,                          )
                        PLAINTIFF,        )
15                                        )
                vs.                       )  No. CV07-5156-AHM(SHx)
16  MICROSOFT CORPORATION,                )
                        DEFENDANT.        )
17  _____)

18          REPORTER'S TRANSCRIPT OF PROCEEDINGS

19              LOS ANGELES, CALIFORNIA

20              MONDAY, OCTOBER 6, 2008

21

22      _____

23              CINDY L. NIRENBERG, CSR 5059
                U.S. Official Court Reporter
24              312 North Spring Street, #438
                Los Angeles, California 90012
25              *www.cindynirenberg.com*

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

Dockets.Justia.com

1    APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:
                          LAW OFFICES OF JEFFREY N. MAUSNER
4                         BY: JEFFREY N. MAUSNER, ATTORNEY AT LAW
                          21800 OXNARD STREET
5                         SUITE 910
                          WOODLAND HILLS, CA 91356
6                         310-617-8100

7

8    FOR THE GOOGLE DEFENDANTS:
                          QUINN EMANUEL URQUHART OLIVER & HEDGES
9                         BY:  MICHAEL T. ZELLER, ATTORNEY AT LAW
                          865 S. FIGUEROA STREET
10                        10TH FLOOR
                          LOS ANGELES, CA 90017
11                        213-443-3000

12                        QUINN EMANUEL URQUHART OLIVER & HEDGES
                          BY:  RACHEL M. HERRICK, ATTORNEY AT LAW
13                        555 TWIN DOLPHIN DRIVE
                          SUITE 560
14                        REDWOOD SHORES, CA 94065
                          650-801-5000

15

16
     FOR THE DEFENDANTS AMAZON.COM, A9.COM AND ALEXA INTERNET:
17                        TOWNSEND & TOWNSEND & CREW
                          BY: MARK T. JANSEN, ATTORNEY AT LAW
18                        TWO EMBARCADERO CENTER
                          8TH FLOOR
19                        SAN FRANCISCO, CA 94111
                          415-576-0200

20

21

22

23

24

25

```
 1   APPEARANCES OF COUNSEL (CONTINUED):

 2


 3   FOR THE MICROSOFT DEFENDANTS:
                     WINSTON & STRAWN
 4                   BY: ANDREW P. BRIDGES, ATTORNEY AT LAW
                     101 CALIFORNIA STREET
 5                   SAN FRANCISCO, CA 94111
                     415-591-1506
 6
                     MICROSOFT CORPORATION
 7                   BY: ISABELLA FU, ATTORNEY AT LAW
                     ASSOCIATE GENERAL COUNSEL
 8                   LEGAL & CORPORATE AFFAIRS - LITIGATION
                     ONE MICROSOFT WAY
 9                   REDMOND, WA 98052

10


11   ALSO PRESENT (TELEPHONICALLY):
                     STEPHEN J. HILLMAN, U.S. DISTRICT
12                   COURT MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, OCTOBER 6, 2008

 2                             1:43 P.M.

 3                            - - - - -

 4              THE CLERK:  Calling Item Number 6, CV04-9484, Perfect

 5    10, Inc. versus Google, Inc., et al.; related to CV05-4753,

 6    Perfect 10, Inc. versus Amazon.com, Inc., et al.; related to

 7    CV07-5156, Perfect 10, Inc. versus Microsoft Corporation.

 8              Counsel, state your appearances, please.

 9              MR. MAUSNER:  Good afternoon, Your Honor.  Jeff

10    Mausner for Perfect 10.  We filed a --

11              THE COURT:  I got it.  I looked at it.

12              MR. ZELLER:  Good afternoon, Your Honor.  Mike Zeller

13    and Rachel Herrick for Google.

14              THE COURT:  Okay.  Good afternoon.

15              MR. JANSEN:  Good afternoon, Your Honor.  I'm Mark

16    Jansen for the defendants amazon.com, A9.com, and the recently

17    added Alexa Internet defendant.

18              THE COURT:  Okay.  Good afternoon.

19              MR. BRIDGES:  Good afternoon, Your Honor.  Andrew

20    Bridges of the San Francisco office of Winston & Strawn for

21    Microsoft Corporation, and also with me today is Isabella Fu,

22    Associate General Counsel of Microsoft Corporation.

23              THE COURT:  Good afternoon to all of you and to Mr.

24    Mausner.

25              We're having a status conference, obviously, counsel,
```

1  and it relates from the order that I issued on September 25th.

2        Can you hear me, Judge Hillman?

3        JUDGE HILLMAN:  Yes, but I can't hear that well,

4  unfortunately.

5        THE COURT:  And when any lawyer wishes to be heard,

6  in order to enable Judge Hillman to hear fully, please go to

7  the lectern and speak, and please speak directly into the

8  microphone at the lectern and clearly and loudly, and that will

9  help.

10        I asked the clerk to let you know, Judge Hillman,

11  that if the transmission -- if the audio is cutting out or you

12  can't really meaningfully follow what's going on or contribute

13  to it, just let me know, and we'll make do without you.

14        I know you have another matter on your calendar, so I

15  will try to move this along.

16        JUDGE HILLMAN:  I'm sorry I can't be in the courtroom

17  today.  It just didn't work out.

18        THE COURT:  Okay.  So I issued an order on September

19  25th, and I got a statement that Mr. Mausner filed in response

20  to it, identical statements in each of the three cases, and

21  that was filed yesterday or today.

22        I got a statement from Amazon that was also filed

23  today.

24        I haven't received anything from Google or from

25  Microsoft; is that correct?

1          MR. ZELLER:  That's correct, Your Honor.

2          MR. BRIDGES:  Correct, Your Honor.

3          THE COURT:  All right.  Take the microphones that are

4    at your table, if you're just giving these single responses,

5    and put them near you.  Okay?

6          All right.  Now, I'll ask about those statements

7    later, but just let me mention a couple of somewhat related

8    items.

9          I had anticipated and spent a good chunk of the

10   weekend contemplating that we were going to have a hearing

11   today on A9's pending summary judgment motion.  There was a

12   mix-up in chambers, and it turns out that for good and

13   understandable reasons -- and I'm not upset -- there was no

14   hearing, the lawyers didn't come in.

15         We're going to have a hearing on October 27th, and --

16   is that the date we agreed?

17         THE CLERK:  Yes.

18         THE COURT:  And I'm sending out an order -- you will

19   get it all electronically this afternoon -- that sets forth

20   directions for that hearing for some supplemental briefing in

21   light of specified questions that I worked up over the weekend

22   that relate to the contentions and in some respects to the

23   evidence.

24         I'm also sending out today and filing a ruling on the

25   evidentiary objections to Dr. Zeda's declaration and to the

parallel declaration -- I forget the guy's name, but I looked over his declaration; I don't have it here before me -- sustaining a lot of the objections to the second Perfect 10 declarant and many, but by no means all, of the objections to Dr. Zeda.

So one of the instructions I'm giving the lawyers is to file supplemental statements of undisputed fact and genuine issues in light of those evidentiary rulings. And you'll see the rest of what I'm instructing you to do.

So I understand that at least Mr. Mausner and maybe more than one lawyer picked up something that was on Mr. Montes', the courtroom deputy's, desk today when you walked in. If you did, I'm not upset, but it wasn't meant to be handed out at this hearing, so return it. You will get something comparable in the attachment as part of the orders that I am issuing today.

All right. Now, turning to the matters at hand, I said what I believe about the way these cases need to be evaluated and approached and possibly handled in the first two or three pages of the September 25th order.

And I construe what you filed today, Mr. Mausner, to be, although cryptic, in agreement that you and your client are prepared to proceed on some kind of representative basis, sample basis.

Before I ask you specific questions about what you

1  filed, let me confirm that all of the defense lawyers received

2  a copy of Perfect 10's statement.  Did any of you not get it?

3          MR. ZELLER:  Your Honor, Google received a copy of

4  it.

5          THE COURT:  If you didn't get it, just say so,

6  otherwise, I'll assume that you all got it.

7          Did you all get a copy of Mr. Jansen's statement?

8          MR. BRIDGES:  No, Your Honor, Microsoft did not,

9  which raises one administrative point, if I may, which is none

10  of us as a matter of course in the ECF system is receiving

11  filings in the other cases, at least certainly Microsoft is

12  not.  I don't know if there is anything that the Court can do

13  about that to have at least the ECF linkages in place.

14          THE COURT:  These cases were formally consolidated,

15  weren't they?  When something is filed, isn't it supposed to be

16  served in each of the cases?

17          THE CLERK:  When they are consolidated, the parties

18  are then combined, but this was -- early on it was consolidated

19  for discovery, then there was a stay put in place.

20          THE COURT:  All right.  Look, I'm not going to figure

21  out how to handle that.

22          You talk to Mr. Montes, and I'm instructing Mr.

23  Montes to assist the parties in making sure that everything

24  gets served upon everybody else regardless of which case.  The

25  cases are too closely related not to have that happen, and just

1  make sure it gets done and gets done immediately.

2          All right.  Let me hear from you, Mr. Zeller -- and

3  go to the lectern, please -- about the broad, overall concept

4  of trying to avoid otherwise difficult, time consuming and

5  expensive issues of discovery, of special masters, of technical

6  advisors, and of full-fledged wasteful litigation by a

7  different approach.

8          And the one that I described is by no means refined,

9  and I'm not wedded to it, but I wanted to prod the lawyers into

10  giving me their views as to what can be done to take a

11  different tact altogether.

12          Now, please respond on an overall basis, but pithily,

13  if you can, to what I said on September 25th.

14          MR. ZELLER:  Yes.  Thank you, Your Honor.

15          At the outset, we do think that it is problematic to

16  have a sampling approach.  We just don't think that there is

17  going to be enough apples-to-apples type comparisons for it to

18  ultimately be that productive.

19          THE COURT:  Now, what do you mean by apples to

20  apples?  What are the apples that you are referring to?

21          MR. ZELLER:  Well, first of all, we're dealing with

22  different defendants, obviously different systems, different

23  time periods, but also we're dealing with in Google's case

24  somewhere between 65 and 80 separate DMCA notices, depending on

25  whose testimony or positions you credit.

1          So we are talking about a lot of different notices

2    with a lot of different URLs, different sites.  And in many

3    instances, as I think Mr. Mausner's submission of this weekend

4    makes very clear, there were no URLs associated with those DMCA

5    notices.  So that in itself is an entire category that we're

6    dealing with.

7          THE COURT:  Are you stating, Mr. Zeller, that your

8    client received not more than 80 different URL notices?

9          MR. ZELLER:  No.  They are notices themselves, not

10   the URLs, not the sites.

11         THE COURT:  The DMCA notices, you mean?

12         MR. ZELLER:  Yes.

13         THE COURT:  You received only at most 80?

14         MR. ZELLER:  I believe that's correct.  That's my

15   understanding, Your Honor, somewhere between 65 and 80.

16         THE COURT:  What is so cumbersome about litigating

17   this case based on only those notices?

18         MR. ZELLER:  We don't think it's burdensome at all,

19   and, in fact, that's what we really think should be in the

20   first instance what shapes the way the discovery goes.

21         There is kind of a more threshold issue I can address

22   in a moment, but assuming that what we really have here based

23   on the Perfect 10 submission of this weekend is a contributory

24   copyright infringement case?  I mean, it really is framed by

25   the DMCA notices.

1      We think that is the first issue that really ought to

2 be addressed by the Court.  There are many of these, in fact.

3      THE COURT:  And how should it be addressed, and how

4 should the lawyers be required to proceed in order to get to a

5 point where it can be addressed?

6      MR. ZELLER:  On the contributory infringement issue,

7 Your Honor, we think that Perfect 10 ought to be required to

8 prepare the chart in the first instance that the Court has

9 discussed.

10      We think that there are additional categories of

11 information that ought to go into it, but certainly narrowing

12 down the universe and having Perfect 10 disclose which URLs,

13 which infringements it is alleging that were the subject of

14 DMCA notices, were not the subject of counter-notifications and

15 which were not taken down, because those would have to be the

16 criteria that would have to be met before they could even get

17 past the Safe Harbor issue.

18      So once we know what that universe is, then that is

19 when we can potentially bring a motion with some additional

20 discovery I can talk about, but it does at least sort of start

21 to shape the playing field.

22      THE COURT:  Well, look, Mr. Zeller, in order for me

23 to understand what you're saying, look at Page 3 of my order,

24 please.

25      In paragraph that's numbered 2(a), let's just assume

1   that the issues that I flagged, which are those that are

2   mentioned in the Ninth Circuit's decision, are really, if not

3   dispositive of all the possible issues, the crux of the issues.

4   Assume that, okay?

5           When you say that Google should be required to fill

6   in a chart, what information among the categories of

7   information that were attached on the chart that I attached to

8   my order really would be necessary?

9           MR. ZELLER:  In addition?

10          THE COURT:  No.  Which of those.  And then you can

11  tell me which ones in addition.

12          MR. ZELLER:  Okay.  Well, certainly, as I --

13          THE COURT:  Because you only sought the first six or

14  so.

15          MR. ZELLER:  Well, for one thing, Your Honor,

16  certainly, as between all the defendants -- obviously, the

17  chart covers more than that, and --

18          THE COURT:  One thing that we could do, so I don't

19  want you to keep harkening back to the fact that there are

20  differences, as there are not only in time frame and not only

21  in the alleged infringements and the like, but in the

22  technology and other aspects among the different defendants or

23  the Amazon group of defendants here.  If I embark -- if I

24  require something different than what you guys have all been

25  doing so far, it could be done three times.  It could be done

1    separately in each of the three cases.  Maybe it will be done

2    comprehensively, maybe not.  But the idea is to do it more

3    efficiently and more directly.

4            Now just speak, then, in terms of Google.  So answer

5    my question as to Page 3, please.

6            If I went your way and required that Mr. Mausner

7    compile a chart akin to what is currently sought in the

8    interrogatories that are the subject of the motion before Judge

9    Hillman, just what would have to go into it?

10           MR. ZELLER:  Certainly, I agree, that the Court ought

11   to do it as sort of a unified approach because, obviously,

12   there wasn't coordination among the defendants.  Different

13   defendants have different needs for different information.

14           I would say that to achieve the goal of doing this

15   once, at least with respect to the chart as an initial matter,

16   it ought to contain the categories of information that the

17   Court has set forth in Paragraph 3(b) along with two other

18   categories of information.

19           The first additional category would be basically the

20   first publication date of the work involved and when the

21   infringement allegedly began, and then, in addition, who is the

22   person depicted in the image.  Those would be the additional

23   ones in addition to what the Court has in 3(b).

24           We think all the ones the Court has in 3(b) make

25   perfect sense there as well.  And these are important for

1    purposes of being able to proceed with the DMCA motion.

2             Now, one clarification.  When the Court says here in

3    3(b) "the URLs of infringing websites," we would read that as

4    being the URL of the particularly infringing image, if it

5    exists.

6             THE COURT:  Now, let's just assume that in the case

7    of Google, Perfect 10 has sent only not more than 80 DMCA

8    notices, and just assume -- because I don't know what the real

9    facts are -- that those DMCA notices correspond to separate

10   photos, and let's assume they were 80 different websites for

11   that matter, and separate photos of 80 different models for

12   that matter, and separate registrations that were obtained at

13   separate times.  Lots of differences among the 80.  I don't

14   know.  It doesn't matter, but --

15            I'll hear from you later, Mr. Mausner.  Please be

16   seated.

17            MR. MAUSNER:  I just wanted to clarify something,

18   Your Honor, which -- I think there may have been a

19   miscommunication on the URL issue.

20            JUDGE HILLMAN:  Mr. Mausner, speak up.

21            THE COURT:  I'll hear from you later, Mr. Mausner.

22            Suppose I said we don't need to do it for all 80, we

23   should do it for a fewer number, and I'll just say arbitrarily

24   for the sake of understanding your position, 40.

25            Isn't it possible to get to where you want to go to

1    have fewer than all of the universe serve as the sample on

2    which we can get a glimpse as to what the universe consists of

3    and what the legal and probable trial outcomes would be if it

4    went the full distance?

5            You don't have a problem with that, do you?

6            MR. ZELLER:  Well, actually, in many respects I do,

7    Your Honor.

8            THE COURT:  What is the problem?

9            MR. ZELLER:  Well, the problem is this, is that the

10   winnowing down process can take place because of the fact of

11   the limited universe that we are talking about here is defined

12   by the DMCA notices, and it's just not all, of course, the

13   URLs.  I would assume, and maybe Perfect 10 can confirm, that

14   they are not suing on every single one that was ever asserted

15   in the DMCA notices.  Some of those were unquestionably taken

16   down.  Some of them certainly there will be categories in our

17   view that Google could not even potentially be liable for

18   because they don't give URLs in those notices.  But it seems to

19   me that there are categories that we can certainly deal with,

20   but there are different categories within the notices.

21           THE COURT:  Suppose I -- you know, I think the main

22   problem that I tried to flag and didn't come up with it perfect

23   and maybe not even a neat solution for, is how the sample would

24   be determined.

25           Now, suppose I said not more than 40 DMCA notices,

1　each side to specify 20 out of the 80?  Google goes first,

2　Perfect 10 goes second.  Google goes third, Perfect 10 goes

3　fourth.

4　　　　Once the sampled contents are determined -- and I

5　don't know what they should be, but maybe it will be me who has

6　to determine that -- what's unfair about that?

7　　　　MR. ZELLER:  Well, I think fundamentally -- it's not

8　a matter of what I would consider to be fair, Your Honor.

9　　　　I think what it really has to do with is where does

10　that ultimately leave us, because, if, say, for example, we

11　deal with 40 of the notices in this first phase, we'll call it,

12　I think, ultimately, the Court's goal here, as stated in the

13　order, is to either have dispositive motions that can narrow

14　down the case or potentially settlement.  And without knowing

15　whether those 40 are, in fact, representative of the entire set

16　of infringement claims, I'm not sure what information that

17　gives us.  That's the question mark that we have.

18　　　　THE COURT:  Oh, well, I don't know what you mean by

19　knowing, but I would have a pretty high confidence level that

20　if each side had the same number of picks, it's pretty close to

21　representative.

22　　　　MR. ZELLER:  Well, but that would assume that, for

23　example, if Perfect 10 lost on all 40 notices, whether it would

24　say, well, we now admit we have no claim.

25　　　　I mean, it just seems to me that unless a party is

1  going to --

2         THE COURT:  Well, I can't be sure what Mr. Mausner

3  and Dr. Zeda will do, but if they lost on all 40, I think you'd

4  be in a very happy position.

5         I don't think that's a particularly troublesome

6  outcome.  And if they won on ten, and they otherwise had claims

7  of thousands -- if you saw what Mr. Mausner told me in the

8  document that was filed today, I don't know how -- other than,

9  of course, by probably statutory damage contentions -- he would

10  deal with the immense number of potential entrants in the

11  universe.

12         I don't think it would be anything close to what is

13  specified in the Perfect 10 statement that was filed today

14  beginning at Page 3 and especially set forth in Page 4.

15         But, you know, you could pick and choose free

16  websites, paid websites, others.  You just have to tell me what

17  the universe is, and then I have to figure out a way to get it

18  done.

19         What is the downside?  Other than what you're telling

20  me so far, which is you can't guarantee it will change things,

21  Judge, and I agree that I can't, what's the downside?

22         MR. ZELLER:  Well, I would put -- the downside is

23  this, is that Google does want to bring dispositive motions,

24  particularly on the DMCA matter.

25         And to do that, there is certain discovery that we

1   need, that we have propounded, we have been at meet and confer

2   sessions with Perfect 10 about that we need to have resolved in

3   order to pin that down.

4          THE COURT:  Okay.  But what I am trying to

5   accomplish, Mr. Zeller, is to get you the discovery that is

6   essential and no more, not different kinds of discovery.  Now

7   not to preclude you from it, not to say that at no time would

8   you have the chance to compel and to get a judge to agree that

9   Perfect 10 should be compelled to provide other discovery, but

10  at the current time and under this very perhaps innovative --

11  I've come up with the idea myself.  I'm not sure that it has

12  ever been done elsewhere, but maybe it has.

13         At this stage, that's all you're going to be confined

14  to.  You are not going to be able to seek other stuff, and

15  Perfect 10 is not going to be compelled to give it, and

16  whatever they think they need from you for the first stage is

17  all -- once I'm satisfied that they have a right to it for the

18  first stage, that's all they can get.

19         What's so bad about that?

20         MR. ZELLER:  Well, what I would say -- if I may make

21  a comment, Your Honor, about what it is that Perfect 10 says in

22  its submission, because I do think that there is potentially

23  ways of carving this out.

24         I mean, without obviously waiving -- what our

25  position is is that, you know, we think we ought to just go

1    forward with discovery and get this over with.

2              But at that point, what Perfect 10 says is that

3    approximately 1.4 million of these infringements are due to a

4    hundred-and-twenty sites.

5              Seventy-five of these, they say, makes up the

6    majority of this infringement.  Those are pay sites.

7              If we get the identification of the

8    hundred-and-twenty sites that they are talking about which ones

9    are pay, which ones are supposedly free, what the URLs that

10   they assert are the infringements on those, we can move forward

11   on those with potentially some other discovery to pin down the

12   adequacy and other issues associated with the DMCA notices.

13             So I don't disagree with the Court that there is a

14   potential way of organizing this, but what causes me some

15   concern is that I just don't see how the sampling is going to

16   close those issues off.

17             If we deal with things by category, I think that is

18   more likely to be something that would finish that area off.

19             THE COURT:  What do you mean by category?

20             MR. ZELLER:  Well, one category, for example, would

21   be the pay sites.  They say that this is a majority of the

22   images that are infringing.

23             It is certainly no surprise -- and I don't think

24   Perfect 10 is going to be disputing here today -- that Google

25   does not index those pages.  Their theory of infringement has

1   nothing to do with Google supposedly providing search results

2   that have links to those individual URLs that have the images

3   on them, the infringing images.

4          They're basically saying, as far as I understand

5   it -- and this would have to be pinned down -- is that Google

6   does business with Giganews, for example, and, therefore, is

7   liable.

8          So if we can get those theories of infringement

9   flushed out, if those can be pinned down, then we are in a

10  position for moving for summary judgment.

11         THE COURT:  Well, when you talk to me about theories

12  of infringement, that doesn't sound to me like facts.  It

13  sounds to me more like contentions.  So help me out.  I don't

14  know what you're talking about.

15         MR. ZELLER:  Well, I think that there is a threshold

16  issue that we have here, Your Honor, which is, of course,

17  Perfect 10 not too long ago amended its complaint, and there

18  are all manner of other theories that are asserted in this

19  case.  There's direct infringement.  There's vicarious

20  liability.  There's --

21         THE COURT:  Without making a final ruling on any

22  motion that's pending, I will tell you all that this is almost

23  entirely a contributory infringement case.

24         MR. ZELLER:  And that's certainly the way we view it

25  as well.  And so what we are looking for, Your Honor, is, I

1  think, from Perfect 10 confirmation as to what theories is it

2  really pursuing, and that is part of the more global question

3  from our perspective.

4        And then once we have the idea that, yes, that we're

5  suing contributory infringement, is there a contributory

6  infringement theory?  On the pay sites, for example, simply

7  that Google has a business relationship with that particular

8  website as opposed to any linking by Google in its search

9  results or search index -- because as we read it and as we

10  understand it, we think that is what Perfect 10 is saying, but,

11  unfortunately, because we have not been getting the discovery

12  that we need, we don't know that for a fact.

13        And I'm sure the Court can appreciate that that makes

14  it very difficult for us to move for summary judgment on these

15  issues without knowing because we are going to be finding out

16  what their theory is for the first time in an opposition.

17        THE COURT:  All right.  Let me hear from Mr. Mausner

18  for a moment, please.

19        Thank you, Mr. Zeller.

20        All right.  Now, what did you want to tell me before

21  that I may have been --

22        MR. MAUSNER:  Yeah, I just wanted to clarify, Your

23  Honor.  Each of the 65 to 80 notices contained hundreds or

24  thousands of URLs in each notice.  It wasn't just, you know, 65

25  to 80 URLs.

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1          THE COURT:  Okay.  So if -- let's keep using the

2     Number 80.  If I had taken an arbitrary approach and said only

3     40, and among the 20 you could designate, there was some with

4     300 URLs in a given DMCA notice, you would be prepared to do

5     that, right?

6          MR. MAUSNER:  Well, that's a lot more URLs than the

7     sample of 100.

8          THE COURT:  But if I require you to do it, you'd have

9     to do it, right?

10          MR. MAUSNER:  If you required us to do it, we would

11     have to try to do it, of course.

12          THE COURT:  You would have to try to do it because

13     what's the alternative?  You are going to have to prove these

14     anyway, aren't you?

15          MR. MAUSNER:  Well, I --

16          THE COURT:  How could you possibly not contemplate

17     that if the case went the full distance and there were a trial,

18     you'd have to have all of this information readily available,

19     packaged in a comprehensible way, disclosed and passing the

20     threshold test of admissibility before you can get any jury to

21     go your way?

22          MR. MAUSNER:  Well, we don't think we have to prove

23     every element that's in the chart there.

24          Certainly, we don't have to prove that for

25     contributory infringement.  We have to prove that we own a

1  copyright, that someone infringed it, and that the defendant

2  knew about it.

3         THE COURT:  Let me ask you to help me out.  Please

4  look at the chart that I attached to my September 25th order,

5  and please tell me -- because this was not necessarily a

6  complete universe, and Mr. Zeller said there is some more stuff

7  that he would want to get -- but I think this is an accurate

8  account of who was seeking what at this stage and what your

9  client's contention is as to whether it's already been

10 produced.

11        Here's a different question to you, Mr. Mausner.

12 Looking at that chart, tell me -- and be careful in what you

13 say -- which of the items that are listed in that chart would

14 not be necessary in order for Perfect 10 to prove contributory

15 infringement?

16        MR. MAUSNER:  I don't think unique identifier would

17 be.  Copyright registration numbers would be.

18        THE COURT:  Well, you have said in the status report

19 statement you filed today -- and I appreciate your filing it,

20 and I thought it was helpful -- you said that you are prepared

21 to use the URL as the unique identifier, right?

22        MR. MAUSNER:  Right, for the sample, because it's

23 doable for the sample.  If we have to do it for hundreds of

24 thousands of images, it becomes undoable.

25        THE COURT:  But I'm not asking for the moment about

1   what is doable or not.  You are waging a titanic battle here,

2   and I'm not blind to how tough it is, but my job is to make

3   sure that everything is done as the law requires.

4           Why would a unique identifier of the work not be

5   necessary for you to prove contributory infringement?

6           MR. MAUSNER:  Well, we haven't really thought --

7   well, we've thought about it, but we haven't come to

8   conclusions about how we're going to prove, ultimately,

9   damages.

10          To establish liability, what we would do is move for

11  summary judgment -- as we're going to do against Alexa within

12  the next ten days -- with some examples showing the elements

13  that the Ninth Circuit set forth for contributory liability.

14          THE COURT:  Let's suppose that I grant your motion --

15  and I don't know.  How many examples are you going to have in

16  there against Alexa?

17          MR. MAUSNER:  It's over a hundred.  Maybe 200 or so.

18          THE COURT:  Okay.  200 infringements.  That's 200

19  different infringing sites or displays, right?

20          MR. MAUSNER:  Right.

21          THE COURT:  Maybe fewer than 200 different models,

22  maybe fewer than 200 different websites, but altogether the

23  universe of what you're going to claim, there can be no factual

24  dispute about, and summary judgment in your favor has to be

25  granted against Alexa, has to do with 200 infringements, right?

1          MR. MAUSNER:  It could be a little bit more, a little

2     bit less than that.  Several hundred, I'd say.

3          THE COURT:  I'm not going to hold you to the precise

4     number.  Let's just say 200.

5          JUDGE HILLMAN:  Excuse me.  Would that be 200 or so

6     URLs?

7          MR. MAUSNER:  Well, it would be -- for free sites,

8     there would be URLs for it.  And this is something that is very

9     important.  For the pay sites, there are no URLs for the

10    infringing images.

11         It's like a big box, and the images are all there.

12    So the way we identified the infringing images in our DMCA

13    notices was to send them the URL for the website and a copy of

14    the image.

15         THE COURT:  I understood that, and not until today

16    did I understand that.

17         MR. MAUSNER:  And their position is if there is no

18    URL for the image, we are not going to remove it.

19         THE COURT:  Okay.  I'm not going to comment --

20    certainly not rule upon -- that contention, but as to the free

21    sites, you would have a URL?

22         MR. MAUSNER:  Yes, of the web page.

23         THE COURT:  Okay.  And that would be your unique

24    identifier?

25         MR. MAUSNER:  Yes.

1          THE COURT:  So, again, I harken back to the question

2     I asked you a few minutes ago, Mr. Mausner.  Which of the other

3     categories on what I attached to the September 25th order would

4     you not have to prove to prove liability?

5          If it was a paying site, and there was no URL for the

6     particular display of the infringing display of the photo, then

7     it would have been a page number, right?

8          You would have had to identify it to me or to the

9     jury what it was that was infringed, right?

10         MR. MAUSNER:  Well, we may submit a large number of

11    images, and Dr. Zeda could testify that there were 300,000

12    images that he downloaded, and they all are infringing Perfect

13    10 images on this website, and then --

14         THE COURT:  That's not going to cut it.

15         MR. MAUSNER:  Well --

16         THE COURT:  There's no way that that characterization

17    and conclusion could be properly challenged if there wasn't a

18    foundation for it.

19         Suppose it was 290,000 and that made a difference?

20    You expect the defendants to simply proceed on the basis that

21    because he claimed it was 300,000, they have to deal with

22    300,000?

23         MR. MAUSNER:  Well, it might not -- you know, a

24    difference of 10,000 might not make a difference on the same

25    website.

1          THE COURT:  Don't lose sight of the point, Mr.

2   Mausner.  I am trying to get you, without being hostile to you

3   at all, to understand what evidence is and what you're going to

4   have to prove at trial.  And that's my premise here.

5          If you are going to have to prove something at trial,

6   you're going to have to prove it on summary judgment, even as

7   to just liability, okay?  So I want to know what it is that's

8   in this category that you don't have to prove to prove

9   contributory liability.

10          MR. MAUSNER:  Well, going back to -- first of all, we

11   are not at trial yet, and it's our position that we can do

12   motions for summary judgment based on sampling in the

13   categories.

14          For example, the question of whether a search engine

15   is liable for linking to a pay site, and the DMCA notice does

16   not contain a URL of the image because there is no such URL to

17   give, if it's sufficient that the DMCA notice contains the URL

18   of the website and copies of the images -- and, you know, when

19   you get to the point that --

20          THE COURT:  You are going to have to specify the page

21   number in your document production where that image appeared,

22   right?

23          MR. MAUSNER:  Well, the images are contained in a

24   subfile for that website, and those are all of the images, all

25   of the -- there are, you know, 19,000 Perfect 10 images on this

1  website.  They are contained in this subfolder, okay, but at

2  this point what we're doing is we're giving maybe two or three

3  examples of images on that website, and the question is simply

4  is the search engine liable for linking to that website and

5  having advertising relationships with them.

6          THE COURT:  That's the ultimate question.

7          So let's just assume it's two or three out of 19,000.

8  Only as to those two or three, tell me what you don't need,

9  because you keep waffling and evading my question.

10         MR. MAUSNER:  Okay.  For our motion, we are attaching

11 copies of the images to it.  I guess that acts at the unique

12 identifier.  The actual image itself is attached.  We are

13 giving the copyright registration number.

14         There is no page number.  We're attaching a copy of

15 the image.

16         The URL that we give is the URL of the website

17 because there is no infringing -- there is no URL of the web

18 page.

19         THE COURT:  Okay.  And you would have to give the URL

20 with every precise component of it, even if it were a hundred

21 digits long, right?

22         MR. MAUSNER:  Well, for pay sites, the only URL is

23 www.giganews.com.

24         THE COURT:  All right.  Keep going, Mr. Mausner.

25         Any item on a free site, for example, or URL, it

```
 1    would be your legal obligation to provide the precise URL?

 2              MR. MAUSNER:  Yes.

 3              THE COURT:  All right.  Keep going.

 4              MR. MAUSNER:  Okay.  At this point, we're not doing

 5    anything about damages.  Of course, if we went to trial, we

 6    would.  But we may seek actual damages.  We will seek actual

 7    damages, you know, and it could be based on overall loss of

 8    customers that Perfect 10 experienced rather than having to

 9    ascribe damage from the showing of one picture.  I don't know

10    that we could ever do that.

11              THE COURT:  Well, that may be a problem you're going

12    to have to deal with.  I grant you that I'm not thinking about

13    damages right now because I think there is a better way, but if

14    you wanted to show damages because of a loss of customers, you

15    would certainly have to show the date the infringed display

16    occurred, the next item on my list, right?

17              MR. MAUSNER:  Right.

18              THE COURT:  Because you've got to know what the

19    customer base was before and after, right?

20              MR. MAUSNER:  Right.

21              THE COURT:  Okay.  What about the other entries on

22    this information?

23              MR. MAUSNER:  The date of the conduct is set forth on

24    the printout because the printout has the date that it was

25    accessed by Dr. Zeda or someone else and downloaded.
```

1         THE COURT:  Well, just tell me is there any other

2 item on this page on the information sought by the defendants

3 in motions to compel, the attachment to my order, that in order

4 to establish liability, you just don't have to prove it all?

5         MR. MAUSNER:  I don't think you have to prove the

6 search term.  The thumbnail or full-size images, you may have

7 to prove that under fair use, but that's obvious from the

8 printout itself whether it's a thumbnail or a full size.

9         Copyright registration of compilations or derivative

10 works, now, that may relate to statutory damages.

11         Documents showing chain of title --

12         THE COURT:  Don't you have to prove ownership?

13         MR. MAUSNER:  You are talking about documents showing

14 chain of title?

15         THE COURT:  Well, both.  We talked about copyright

16 registration previously.  That's Item 2 -- or the second.

17         MR. MAUSNER:  Right.

18         THE COURT:  The second on this list.  These are

19 related to that.  If it's a compilation or derivative work, you

20 still have to prove ownership, right?

21         MR. MAUSNER:  Right.  And what we are doing is we are

22 providing the copyright registration certificate, and we are

23 going to have a declaration that says which certificate covers

24 which image.

25         THE COURT:  Okay.  Now, here's the point that I think

1    is becoming pretty clear, I hope.  You started out -- you

2    didn't start out, but you said a few minutes ago -- other

3    than -- I think you said 19,000, or something like that, we're

4    going to give three, okay?  And let's suppose you got before

5    the fact finder -- or, on summary judgment, before me -- all

6    that you needed to to establish that the defendant you were

7    dealing with in that moment contributorily was liable or liable

8    for contributory infringement on those three.  You proved your

9    case, Mr. Mausner.  What would be your position as to the other

10   infringements that may have been part of your document

11   production -- but I really should have said alleged

12   infringements -- that proving the three would entitle you to

13   recover for the 19,000?

14          MR. MAUSNER:  It would establish the principle as to

15   whether there is liability for that category of infringement,

16   and then hopefully --

17          THE COURT:  Well, let's just say --

18          MR. MAUSNER:  -- we would settle.

19          THE COURT:  Let's just say it would prove that there

20   was liability for those three infringements.

21          MR. MAUSNER:  Okay.

22          THE COURT:  Don't think too much about category.

23   Where do you go from there?

24          MR. MAUSNER:  Well, those three infringements are

25   representative of a certain number of other infringements.  The

1   facts are basically the same.

2           THE COURT:  How do we know that unless we do a sample

3   and unless the sample is kosher in the sense that it's devised

4   and implemented in a neutral, fair fashion, either by having a

5   technical advisor appointed who will determine exactly what's

6   in the sample and neither side or any side can object or by

7   having the parties negotiate?  It's clear to me except for the

8   search term and other instructions or events -- and I'll give a

9   chance to one or more defendants to hear about that -- it's

10  pretty clear to me that you acknowledged in our last few

11  minutes of colloquy that all the information sought by the

12  defendants, one or more defendants, is necessary to prove

13  liability.

14          I'm giving you the opportunity to pursue what may or

15  may not prove to be a feasible way to determine what your shot

16  is in proving liability.

17          MR. MAUSNER:  Yes, and thank you.  We very much want

18  to do it that way, by a sampling.

19          We definitely support the idea of doing it by

20  sampling because, you know, what happens is when you have so

21  many infringements, the greater the infringer, the more

22  difficult or even impossible it is -- it becomes for the

23  copyright owner to establish each element of the case for each

24  infringement.

25          THE COURT:  Okay.  Now, in order for the sample to

1   have any potential value or validity, the defendants have to

2   have a right to have the sample include the items or a

3   representative number of items that you have designated, in

4   whatever way you have with your Adobe PDF format or your

5   responses to interrogatories or otherwise, of things that you

6   were just plain off base on.

7           You gave a DMCA notice that was flagrantly defective,

8   and you can't cure it now.  All right?  And they get their 20

9   in there, and I look at 40.  You have your 20.  That defendant

10  has its 20.  And on the ones -- on the overall ones, the 40,

11  you just failed to prove 20, okay?  And you may or may not have

12  proved something about the other 20, but you flatly failed to

13  prove the 20, some defect.  One or more of these items that you

14  would have to prove, you didn't.

15          So getting back to your 19,000, that's already

16  reducing it, right, by 9500 at best?  The sample is the

17  predictor of the total universe?

18          MR. MAUSNER:  It is reducing it somewhat, but I don't

19  think the numbers -- if we go with 20 or 40 DMCA notices, we

20  still may be talking about 40- or 60,000 images that are

21  mentioned in those notices.  And what I would suggest is that

22  it be something like a hundred, and there aren't that many

23  different permutations, at least that I've thought of.  And I'm

24  certainly open to any --

25          THE COURT:  You want a hundred notices with --

1          MR. MAUSNER:  Not notices, Your Honor.  URLs or

2     images, a hundred images.

3          THE COURT:  How many DMCA notices?

4          MR. MAUSNER:  Well, it could cover whatever notices

5     those images are in.  That's what it would cover.  Or the first

6     one that it's in.  There is no reason we would have to -- if a

7     certain URL is mentioned in five notices, we would give the

8     first notices that it's mentioned in.  Or if it's not

9     burdensome, we could give --

10          THE COURT:  But multiply that by five if you prevail

11     on that one?

12          MR. MAUSNER:  I'm not sure what you mean.

13          THE COURT:  If you have one notice for one

14     infringement, but the infringement was engaged in multiple

15     times under my sampling approach.

16          MR. MAUSNER:  Well, the infringement is ongoing.  The

17     infringing website has an image at a certain URL.  Perfect 10

18     sends a notice to one of the defendants saying, "You're linking

19     to this URL.  Stop linking," and the defendant doesn't stop the

20     link or doesn't stop the advertising relationship that they

21     have.

22          THE COURT:  Suppose there was a defect in the notice

23     or some other failure of proof as to that example, okay?  Now,

24     that notice was defective for everything it put the recipient

25     on notice of, right?  You can't possibly recover for anything

1  else that was incorporated in that notice, could you?

2          MR. MAUSNER:  You're saying if there is only one URL

3  that we choose in the notice that we are going to be bound by

4  that?

5          THE COURT:  No.  If there were a hundred -- because

6  you just told me, Judge, keep in mind that any given DMCA

7  notice could involve hundreds of URL notices.

8          If the DMCA notice is defective for any reason, you

9  can't prove that there was liability as a contributory

10  infringer within the meaning of the DMCA.  Then you can't prove

11  it as to anything that was covered by that notice.  And your

12  other examples -- your other -- what you put the recipient on

13  notice of in addition to that one active infringement or that

14  one particular photograph is out the window.  What's wrong with

15  that conclusion?

16          MR. MAUSNER:  Well, that's not necessarily true.

17          There could be -- if there's a DMCA that has a

18  thousand URLs in it, some of those URLs may not have been

19  sufficient to locate the infringing material because there was

20  something wrong with the way it was copied or something.  And

21  the other ones could be -- you know, could be sufficient.

22          THE COURT:  So if I appointed someone to determine

23  how the sample was going to be determined, only three DMCA

24  notices with a hundred or more claimed infringements, every

25  other aspect -- because I can see that there's just too much

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1   potential for game playing here, and not only would the

2   determination of what could be part of the sample and the

3   methodology be done, but maybe both sides in any given case

4   would have an equal number of designations once that's been

5   determined within the framework -- then we are not going to be

6   talking about skewing your effort to have incorporated the

7   sample, only the things that you feel strongest about.

8         And you're going to be bound by the outcome because

9   if there is a defect in the DMCA notice as to one URL,

10   everything in that notice either could be deemed to be a

11   failure of proof -- or certainly that URL.  But you can't

12   require a thousand of these to be multiplied by 40 DMCAs.  Then

13   you're back in the stew that you claimed you didn't want to be

14   in, right, because you have to prove it just to me?  You have

15   to prove all these things.

16         I'm not going to let you get to summary judgment and

17   prevail on anything unless the evidence of all of the elements

18   that you have to prove for contributory liability -- and I'm

19   not even for the moment focusing on damages -- has been

20   established.

21         MR. MAUSNER:  We think that this motion that we're

22   going to be filing will establish each element.  And then once

23   we have the theories of liability nailed down, then we can go

24   on to issues of damages.

25         THE COURT:  Well, that harkens back to what Mr.

1  Zeller said.  Because he, as I understood it, was telling me he

2  doesn't know what your theories of liability are.  And that

3  came as a little bit of a surprise to me.  You haven't spelled

4  them out yet?

5          MR. MAUSNER:  Well, I think we did.  I think Your

6  Honor did.  I think the Ninth Circuit did.  I mean --

7          THE COURT:  Well, you just said, "Once our theories

8  of liability have been established."

9          MR. MAUSNER:  Right.

10         THE COURT:  Haven't you established your theories of

11 liability?

12         MR. MAUSNER:  Well, the one that he mentioned, I

13 think, is a good one.  The pay sites don't have the URLs of the

14 individual images.  We think our notice was the best notice you

15 can give in that situation where we give the URL of the website

16 and the actual picture, and we've also given instructions for

17 how you locate that picture in the website.

18         So the question becomes is that sufficient notice to

19 the defendants to allow them to locate the infringing image and

20 remove access.  They have said in that situation they're not

21 going to remove it.  We think that they should remove it.

22         So that's an issue that Your Honor can decide on

23 summary judgment.

24         THE COURT:  Okay.  I see what you're talking about.

25         Let me ask you something.  This A9 motion, this

1  motion against Amazon and Alexa that you are going to be

2  filing, is there something about that motion that is sui

3  generis that would not be a good example of comparable motions

4  you might file later on against Google or Microsoft or even A9?

5       MR. MAUSNER:  Some is and some is, you know, peculiar

6  to Alexa.

7       THE COURT:  Like what?

8       What I'm driving at, in case it isn't clear -- and

9  this is true for the benefit of everybody.  I'll hear from some

10 of the defense attorneys in just a second -- is, okay, you want

11 me to hold off everything, hold off further discovery, hold off

12 any determination about a sample, see how far you get and how

13 far I get on your impending, as you put it, summary judgment

14 motion or partial summary judgment motion against Amazon and

15 Alexa, and I want to know, before I embark on that and whether

16 I go along with your request, how much of a predictor for

17 future work, future summary adjudication motions, other cases,

18 that motion is going to be, what kind of a predictor will it

19 be.

20      MR. MAUSNER:  Okay.  For that example of pay sites,

21 that's the same issue that is in all three cases.

22      There are some issues regarding Alexa that are unique

23 to Alexa.

24      THE COURT:  Like what?

25      MR. MAUSNER:  Alexa did not have a designated

```
1    copyright agent registered at the copyright office, so Perfect

2    10 sent the notices to Amazon, and Alexa takes the position

3    that sending it to Amazon wasn't sufficient, even though it

4    didn't have an agent registered, and the only registered agent

5    was Amazon.

6              THE COURT:  Okay.  I've given you a lot of time.  I

7    have to give some time to the defendants.  I am going to hear

8    from Mr. Bridge (sic) next.  But you tell me what you meant at

9    the bottom of Page 2 of what you filed today when you said

10   "Perfect 10 respectfully suggests that large-scale discovery

11   relating to requests made by various defendants be postponed

12   until the Court rules," on your summary adjudication motion.

13             What do you mean by "large-scale discovery" and what

14   kind of discovery that the defendants are seeking would still

15   be permissible?

16             MR. MAUSNER:  Discovery that relates to the motion,

17   if there is any.

18             THE COURT:  You mean a 56(f) request?

19             MR. MAUSNER:  Yes.

20             THE COURT:  So you're talking just, then, about

21   Amazon and Alexa?  You're not asking me to hold off on the

22   discovery efforts that Google and Microsoft are making, are

23   you?

24             MR. MAUSNER:  Well, the large-scale discovery that

25   they're asking about, there is some very -- you know, first of
```

1     all, these charts are -- if we were doing the charts, we would

2     not be able to do the summary judgment motion.

3          Another example is Google has propounded I think it's

4     962 requests for admissions on us.  We answered about half of

5     them, but they're now --

6          THE COURT:  Well, that gets back to this question how

7     much a single lawyer and hard-working, skillful lawyer can do,

8     and, you know, I don't know that there is that much I can do

9     about that.  I am not going to knowingly permit someone to

10    bludgeon you, but you've embarked on these claims against all

11    of these defendants.  And that argument that "I'm overworked

12    and excessively burdened" can only take you so far, Mr.

13    Mausner.  Don't think I'm going to excuse everything that has

14    to be done.  Not even close.

15         Let me hear from you, Mr. Bridge.

16         MR. MAUSNER:  Your Honor, I understand that.  I'm

17    just saying let's get these issues decided for the summary

18    judgment and a lot of this may go away.

19         THE COURT:  Well, that's what I am trying to figure

20    out.

21         Please give me your overview to start with as to

22    whether you think this concept that I came up with, however

23    unformed or incomplete it is -- and I recognize it is and I

24    knew it was when I sent it out -- makes any sense at all.

25         MR. BRIDGES:  Your Honor, Microsoft believes it makes

1    an enormous amount of sense.  And, frankly, I feel that with

2    the statement we received from Perfect 10 over the weekend, we

3    may have had a breakthrough in the case that reflects that the

4    fact that this chart is starting to give this case some

5    structure.  And having a structure like this helps us focus on

6    what's really here and what really isn't here so that we can

7    focus all of our energies on what really is in the case.

8         I just have a few comments to make largely on details

9    just to make sure we don't lose track of what's needed to make

10   this chart successful.

11        I think Mr. Mausner said something today that was

12   different from what he said in his papers, but a "unique

13   identifier of the work"?  This arises in part because we're

14   getting lots and lots of pictures with no Bates numbers or

15   anything, and we just need to know by some identification what

16   the image is that Perfect 10 is claiming.

17        In the papers, Mr. Mausner said they could be

18   uniquely identified by reference to the URL for the image on

19   the Perfect 10 website.  Today I thought he said that URLs of

20   alleged infringements might work.

21        We really think it needs to be tied to something that

22   Perfect 10 controls, and so I think that's what it should be.

23        THE COURT:  Well, I saw that, too.  And you are

24   talking about at the top of Page 4?  Perfect 10's filing today?

25        MR. BRIDGES:  That's right.  Top of Page 4 under the

1    URL of the image on perfect10.com.  That works for us.

2            THE COURT:  If you got that, Mr. Bridge, is what

3    you're telling me is that you could then see what the photo

4    consists of and then you could find it?

5            MR. BRIDGES:  That's right.

6            And then also the reason I asked for this -- and,

7    frankly, I drafted the Google interrogatory when I was still

8    representing Google, and so it's parallel.

9            THE COURT:  You're doubly billing this.

10    *(Laughter.)*

11            MR. BRIDGES:  No, I'm not, Your Honor.

12            But the point is we've got to have a handle by which

13    we analyze the common thread of the various facts about various

14    works claimed by Perfect 10, so we have to find a way of

15    uniquely identifying that work.  It could be a Bates number in

16    a traditional document production.  It could be some sort of

17    abstract image number.  Here, if it's a URL, fine.  But that

18    gives us the framework so that we can attribute all the other

19    information to that work.

20            THE COURT:  Do you think, Mr. Bridge -- is it Bridge

21    or Bridges?

22            MR. BRIDGES:  Bridges.

23            THE COURT:  Sorry.

24            MR. BRIDGES:  That's all right.

25            THE COURT:  Do you think if I ordered that the world

1  stop and Mr. Mausner do nothing more than negotiate with you

2  for not more than a full day and I locked you both in some

3  room, you could stipulate to a methodology?

4          MR. BRIDGES:  I think it's possible, Your Honor.  I

5  would have to confer, obviously, with allied counsel, but I

6  think -- I don't see a reason why both sides can't come to a

7  reasonable accommodation here.

8          THE COURT:  Well, no.  I think I know what you mean

9  by allied counsel, but I am just saying suppose it was just for

10 Microsoft.

11         MR. BRIDGES:  Oh, absolutely.  Now, it requires two

12 willing parties.

13         THE COURT:  Well, of course.  Microsoft and Perfect

14 10.  Just your case, okay?  Then you see what you and Mr.

15 Mausner come up with.  And I see it and the other parties,

16 including especially Google, could get the benefit of whether

17 or not it is likely to be helpful.

18         MR. BRIDGES:  I think that would work, Your Honor.

19         THE COURT:  Do you think that you could figure out a

20 way to define what goes into the sample that would be neutral

21 and fair?

22         MR. BRIDGES:  I would like to make a point.  I think

23 there has been discussion of samples and there's been

24 discussion of categories.  I think both sides can identify

25 categories.  They wouldn't be a random sample, but we can look

1   at the many different permutations of combinations of URLs,

2   notices, claimed works and the like.  Whether it's 20 or 60 or

3   320, I don't know.  It's sort of a kaleidoscope, but I think we

4   could at least sit down and say here are categories that can be

5   looked at in the abstract.

6            THE COURT:  Okay.  But I knew about the distinction.

7   I wasn't, I hope, inadvertently confusing the sample with the

8   classification, because the sample could skew the validity of

9   doing this on a truncated basis.

10           Okay.  Which ones of all of the information has to be

11  provided for and how many?  So I thought just sitting here off

12  the top of my head, give each side the same number of

13  designations.

14           MR. BRIDGES:  I think that works, Your Honor.

15           We just want to make sure that the designations give

16  us -- that we have a large enough number of designations that

17  each category gets represented because what we need is a sample

18  within each category.

19           THE COURT:  Oh, more than one sample in each

20  category.

21           MR. BRIDGES:  Absolutely.

22           THE COURT:  I would just offhand contemplate at the

23  very least -- and I don't think it would be this few -- for

24  every given classification -- every different category, I

25  should say, that we have to get a microcosm of the full

1    universe for, each side is going to have at least one sample

2    favorable to it, if I give to each side the right to designate

3    an equal number of samples but probably more than one.

4           All right.  What else did you want to tell me?

5           MR. BRIDGES:  I think all the others are fairly

6    self-evident.

7           One thing has occurred to me that could be important,

8    and that is that if Mr. Mausner -- and this is in addition to

9    materials on the chart.  If Mr. Mausner or Perfect 10 could

10   identify to the best of its knowledge when the first

11   infringement of each work occurred, and that relates

12   substantially to the availability of statutory damages.

13          And I raise that not because we're ready to litigate

14   the damages phase of this case, but I interpret the Court's

15   efforts here to be directed at two things:  To help bring

16   structure to the case, and also to give both sides a realistic

17   appraisal of the likely outcome of the case.

18          THE COURT:  Yeah, that's exactly what I'm driving at.

19          Now, if you look at the chart that I attached, you

20   see where it says just above the middle of the page "Date of

21   and particular conduct constituting the infringing act"?  Would

22   it accommodate your concern if it said "constituting the first

23   infringing act"?

24          MR. BRIDGES:  Yes, Your Honor.

25          THE COURT:  Okay.  Anything else you want to tell me?

1              MR. BRIDGES:  That's it on the chart.  But if I could

2    go to a broader view of the case for a minute and try to

3    crystalize some things that were said earlier.

4              THE COURT:  Go ahead.

5              MR. BRIDGES:  The Court said, as I believe, that this

6    case is really boiling down to a contributory copyright

7    infringement case.

8              THE COURT:  Yes.  That's my decided, but not final,

9    view.

10             MR. BRIDGES:  Understood.  And, also, I would like to

11   identify five categories of theories that have been out there,

12   and it would be useful to know formally from Perfect 10,

13   perhaps in 30 days with time to think it through, whether it

14   really still asserts these other theories.

15             And if I can just tick them off, it would be useful,

16   I think.

17             The first is trademark infringement.  The Google and

18   Microsoft cases both include allegations of direct and indirect

19   trademark infringement, but it's never been a topic of

20   discovery in this case.  At least discovery has never happened

21   on it.

22             Second, after the Court's enunciation of the server

23   test and the affirmance by the Ninth Circuit, is Perfect 10

24   still claiming direct infringement of the display and

25   distribution rights arising from framed pages and the links to

1 them?

2 THE COURT: When you get a copy of the order that's

3 going out this afternoon that I prepared for the hearing that

4 didn't take place this morning, you will see that I asked that

5 question.

6 MR. BRIDGES: Great.

7 Third, does Perfect 10 pursue a direct infringement

8 claim relating to the existence of passwords in search results?

9 Fourth, does Perfect 10 continue still to argue that

10 the copying and display of thumbnail images is not fair use?

11 Fifth, is it still pursuing a vicarious liability

12 claim under copyright law?

13 And the sixth one is pretty minor because it's never

14 really been addressed, but does Perfect 10 allege any violation

15 of public performance rights under Section 1064?

16 In the pleadings I saw earlier, everything was in

17 there, and we just need to trim it down.

18 If we get clarity here, this could dispense with a

19 number of 12(c) or Rule 56(f) -- Rule 56 motions that may be

20 required.

21 So those are my comments, Your Honor.

22 THE COURT: Okay. Well, I'm not going to have time

23 to follow up on that. There are ways using standard discovery

24 techniques, such as, interrogatories or requests for

25 admissions, to narrow the issues.

1          If I were counsel for Perfect 10, given especially

2     the magnitude of the claims and the difficulties of proving

3     them, I'd want to pick my best shots.  And I think I know what

4     the answers would be to most, if not all, of these questions.

5     So we may have a very direct, informal and cheap way of

6     narrowing the issues.  So go ahead and do it.  I encourage

7     that.

8          Let me hear from you because you haven't had a

9     chance.  And your name is Mr. Jansen, right?

10         MR. JANSEN:  Yes, Your Honor.  Mark Jansen for

11    amazon.com, A9.com and Alexa Internet.

12         I think I want to, first of all, say I agree that

13    sampling is appropriate, you know, at least to kind of get a

14    sense of what are the categories of alleged infringements that

15    the plaintiff is going after here.

16         I think there is other issues that also have to be,

17    you know, taken discovery of, but I believe the sampling

18    concept is a good one.

19         I do want to address right now the issue that Mr.

20    Mausner has raised about bringing a motion for summary judgment

21    against Alexa and the alexa.com site.

22         Alexa.com just got added to this case three months

23    ago.  We haven't taken any discovery.  And I think the notion

24    that instead of providing the basic information about what this

25    case is about in discovery so we can take discovery and get

1    ready to oppose a summary judgment motion, instead, Mr. Mausner

2    wants to present his sample in the form of a summary judgment

3    motion against a defendant that's been in the case for less

4    than four months is to me -- it just isn't workable.  It just

5    doesn't make sense.

6              The motions that have been filed by the defendants

7    that have been in it for years have been to try to get basic

8    information.  I think the Court is correct to try to get a

9    sense of what this case is about, but we still do not know the

10   basic theories under which Mr. Mausner, the plaintiff, is

11   bringing this case.

12             The Ninth Circuit decision and Your Honor's review of

13   the preliminary injunction motion dealt with one issue only,

14   one kind of conic, which was so-called thumbnail image

15   searches.  And that's what the Ninth Circuit looked at in its

16   decision.

17             Now, since that decision came down, the plaintiff has

18   completely, as far as I can tell, changed its theory but has

19   never told us what those theories are, which is why one of the

20   categories that we asked for -- that A9 asked for in the chart

21   that is part of the Court's order was the search terms and

22   other instructions or events used to cause the infringing

23   display, because we believe -- and this probably is a matter of

24   law that will be resolved by the Court on summary judgment

25   motion eventually -- is the fact that a search engine, whether

1    it's Google or Yahoo or Microsoft, can provide an ability to

2    link to some pay site is totally different than automatically

3    retrieving a thumbnail image that can be clicked on to then

4    view a full-size image.

5            So it's really important for the plaintiff to tell us

6    what and how in his view the evidence will show users use the

7    particular sites to, quote, get access to allegedly infringing

8    materials.

9            THE COURT:  Well, my initial view about what you're

10   saying is that there's potential merit to it, and I understand

11   your position.

12           It may be that the fastest, most concrete way to

13   determine whether -- first of all, to require Perfect 10 to

14   specify what his theory is, at least against Amazon and Alexa,

15   is to have Mr. Mausner go through what he said he's about ten

16   days away from filing.  So he must have begun it already.  Have

17   him file the motion, have him file his Memorandum of Points and

18   Authorities, have him attach the evidence that he thinks

19   warrants summary judgment.  And maybe he's right.  And then you

20   see what you have to deal with.

21           And if at that point, what you have to deal with is

22   something that requires discovery that you haven't been

23   provided, haven't even had a chance to pursue, especially in

24   the case of Alexa, you would take the appropriate position,

25   probably demand more time under 56(f), maybe then send out

1  contention interrogatories that are specifically addressed to

2  the contentions and the evidence in Mr. Mausner's opening

3  papers.

4          What is the theory of liability precisely and what is

5  the support for it that warrants Statement of Undisputed Fact

6  17?  Rather than wallow around in the ether world or the

7  netherworld of abstractions, why don't we reduce it to

8  something concrete?

9          MR. JANSEN:  Well, I believe fundamentally, Your

10  Honor, it's completely inappropriate to have a summary judgment

11  motion brought against a defendant before they have had a

12  chance to take discovery.  I have propounded discovery for

13  Alexa.  Alexa.com just got added as a defendant.

14          THE COURT:  Yeah, I know.

15          MR. JANSEN:  I don't even know -- as I mentioned in

16  our papers, we don't know, because plaintiffs never told us,

17  whether they contend any infringement by the amazon.com website

18  at all.

19          So we still haven't gotten any information from

20  plaintiff about what they contend amazon.com, that website, did

21  to infringe.

22          My understanding all along has been simply that it

23  provided the so-called A9.com functionality for a brief period.

24          THE COURT:  You know, Mr. Jansen, I'm not going to

25  close the courthouse doors to Mr. Mausner.

If he wants to file this motion, he has probably thought it through.  And he probably thinks it's not only a meritorious motion -- I assume he's cognizant of Rule 11 -- but a timely motion.  And we'll see.

I mean, I'm not going to rule on a motion that is premature.  And if the opposing party establishes that something else has to be done or discovery, et cetera, has to be completed or contentions have to be established, then I'll proceed accordingly, but I'm not going to issue a ruling now, if that's what you're asking me to do, that he better not file a motion.

So tell me what else you think about what --

MR. JANSEN:  Yeah, as counsel for Google mentioned, I think one of the big issues here, and I think a fundamental threshold issue, is the adequacy of the DMCA notices.

And it's my impression -- I think it's been pretty much confirmed here today that the only basis of knowledge by any particular defendant, including my clients, has been the so-called DMCA notices.  But I think that needs to be clarified and, hopefully, that will be as part of the responses to, you know, the structured interrogatories you've got -- you have planned here.

But it is critical that any part of a defense of a contributory infringement case goes to the adequacy of those notices, and we need to get the discovery regarding what

1  infringing specific URLs were identified in those notices that

2  the plaintiff contends he put us on notice on actual knowledge

3  that we could do something, so we can't address that. And

4  that's why I think it needs to be part of --

5       THE COURT: Seems to me Mr. Mausner is going to give

6  you that when he moves for summary adjudication as to at least

7  the subject of his motion. If he doesn't, he loses. So let's

8  see what he comes up with.

9       MR. JANSEN: Okay.

10      THE COURT: Okay. Here's -- it's almost 3 o'clock.

11      Are you still with us, Judge Hillman?

12      JUDGE HILLMAN: Yes.

13      THE COURT: Do you have any questions you want to ask

14  any specific lawyer?

15      JUDGE HILLMAN: I have a thought, but I can share it

16  with you after the hearing.

17      THE COURT: No, I definitely need to speak to you,

18  but I have a courtroom full of other lawyers and litigants, and

19  I'm going to have to turn to that very soon.

20      JUDGE HILLMAN: Well, let me just say I have been

21  wondering the last hour if -- what you just said would be the

22  potential way of handling the Alexa motion in the near future

23  whether there might be some usefulness to approaching motions

24  in the other cases by having the parties agree as to what is

25  the essential elements in the chart, but only require it as to,

1   let's say, one or two DMCA motions -- notices, and a single

2   infringement, a single URL, and then invite cross-motions as to

3   contributory liability only at that point, my point being that

4   maybe the Court would wish to forestall the actual sampling but

5   just invite a test cross-motion on contributory.

6          THE COURT:  Well, let's talk about that afterward,

7   but I'm glad you proposed that approach and that idea.

8          Right now I have under submission the motion that A9

9   filed, and I do want to have that hearing on the 27th, and

10  we'll see what happens and how I rule.

11         I have certainly spent a considerable amount of time

12  trying to understand the parties' positions, and I have more

13  guidance that they will have to provide.

14         Here's what I'm going to do.  Mr. Bridges, I have so

15  much respect for the professional manner in which you handle

16  cases that I'm going to put an excessive or unique burden on

17  you, but only in your capacity as counsel for Microsoft.  I

18  know that you had to step down as counsel for Google, and I

19  don't want to in any way require something that would raise

20  some kind of professional issue, but I want you to meet with

21  Mr. Mausner.

22         MR. BRIDGES:  Yes, Your Honor.

23         THE COURT:  And I would like you at the conclusion of

24  this hearing, which is going to end in just a couple of

25  minutes, to check your calendars and figure out the earliest

1  possible date where you could try to negotiate a truncated

2  approach somewhere along the lines of what I contemplated on

3  September 25th in the order I sent out and what has been the

4  subject of discussion today.

5          Do it only with respect to your case, not with

6  respect to any other and not worrying about the ramifications

7  in any other case.

8          It may be something that we could do to take care of

9  the Microsoft action and none of the other two.  I don't

10  necessarily think that everything is going to be handled the

11  same way, although I think in general and in principle, they

12  can be.

13          And then file a status report with me.  And if you

14  agreed on the crux of what needs to be done but not on

15  everything, and if there were two deal points or two issues

16  that one on each side thought was critical and couldn't get the

17  other side to agree to, or whatever the differences are,

18  specify that, and set up a time to have a telephonic status

19  report.  Set up a hearing with Mr. Montes where I'll talk to

20  just you and to Mr. Mausner to see whether there is any point

21  in furthering that effort.

22          Do that as quickly as you can.

23          And that means making your schedule available, Mr.

24  Mausner, because I want to get a sense, as I think through this

25  further, as to where we can go.  And I think the largest amount

1    of sunshine that was dispensed at this hearing suggests to me

2    that it's on the Microsoft case that we should start.

3            I wish I had more time to review these issues with

4    you.  They are very difficult for me.  The management issues

5    are formidable, and the technological issues are very

6    difficult, but I appreciate your input, counsel.

7            I'm not going to issue any particular ruling, any

8    special Case Management Order right now.

9            The matters that are pending before Judge Hillman

10   will remain under submission, or whatever status they're

11   currently in.

12           I think it might be actually salutary for you to file

13   that motion, Mr. Mausner, so I'm not -- I hope that you don't

14   misconstrue anything I've said in the motion against Alexa and

15   Amazon or one or the other or both.

16           I want the parties to order a transcript and split

17   the cost four ways.  So get a transcript promptly, please, and

18   we'll take it from there.

19           We stand adjourned.  I'll call the various matters

20   for the 3 o'clock calendar a little bit later.

21           Mr. Zeller?

22           MR. ZELLER:  If I may, Your Honor, a quick

23   clarification.  Since Perfect 10 has taken the position that

24   the Court has stayed discovery, I assume that is not the case,

25   the discovery is not stayed?

```
1              THE COURT:  Discovery is not stayed, but the matters

2      that resulted in discovery motions are not going to be

3      addressed by Judge Hillman or anyone else until we determine

4      whether or not that really has to be decided.

5              MR. ZELLER:  Thank you.

6              MR. MAUSNER:  Thank you, Your Honor.

7          (Proceedings concluded.)

8                              --oOo--

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```