| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>  Michael T. Zeller (Bar No. 196417)<br>  michaelzeller@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017-2543<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br>  Charles K. Verhoeven (Bar No. 170151)<br>  charlesverhoeven@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>  Rachel M. Herrick (Bar No. 191060)<br>  rachelherrick@quinnemanuel.com<br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, California 94065-213 |
| 9 | Attorneys for Defendant Google Inc. |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO. CV 04-9484 AHM (SHx)<br>[Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**GOOGLE INC.'S RESPONSE TO THE COURT'S TENTATIVE ORDER DATED DECEMBER 2, 2008 AND OPPOSITION TO CONTEMPLATED STAY**<br><br>[Declarations of Rachel M. Herrick and Andrea Pallios Roberts filed concurrently]<br><br>Hon. A. Howard Matz<br><br>Date: December 18, 2008<br>Time: 3:00 pm<br>Crtrm.: 14<br><br>Discovery Cutoff: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

Preliminary Statement .................................................................................... 1

I. RESOLUTION OF THE *MICROSOFT* ACTION IS NOT LIKELY TO ADVANCE RESOLUTION OF THIS SUIT AGAINST GOOGLE. ............... 2

    A. The Three Cases Differ In Legal Claims and Defenses ......................... 2

    B. The Three Cases Differ In Facts To Be Established. ............................. 4

    C. Because Google Does Not Agree To Sampling, The Outcome of The *Microsoft* Matter Is Unlikely To Be Dispositive. ........................... 6

II. A STAY WOULD UNFAIRLY PREJUDICE GOOGLE. ............................... 8

III. AT A MINIMUM, GOOGLE SHOULD BE PERMITTED TO SEEK SUMMARY JUDGMENT UNDER THE DMCA. .......................................... 10

    A. A Decision Under the DMCA Would Resolve Significant Aspects Of This Suit. .............................................................................. 11

    B. Not Allowing Google To Obtain Rulings Under the DMCA Would Be Inconsistent With the Purposes Of That Act and Prejudice Google. ................................................................................. 12

Conclusion ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Arizona v. California,
   530 U.S. 392 (2000) ........................................................................................... 8

Charles J. Arndt, Inc. v. City of Birmingham,
   748 F.2d 1486 (11th Cir. 1984) ......................................................................... 8

Corbis Corp. v. Amazon.com, Inc.,
   351 F. Supp. 2d 1090 (W.D. Wash. 2004) ................................................. 11, 12

Dependable Highway Exp., Inc. v. Navigators Ins. Co.,
   498 F.3d 1059 (9th Cir. 2007) ......................................................................... 10

E.B. Harper & Co. v. Nortek, Inc.,
   104 F.3d 913 (7th Cir. 1997) ............................................................................. 8

Ellison v. Robertson,
   357 F.3d 1072 (9th Cir. 2004) .................................................................... 11, 12

Kahn v. General Motors Corp.,
   889 F.2d 1078 (Fed. Cir. 1989) ....................................................................... 10

Landis v. North American Co.,
   299 U.S. 248, 255 (1936) ................................................................................. 10

Lockyer v. Mirant Corp.,
   398 F.3d 1098 (9th Cir. 2005) ......................................................................... 10

National Industries, Inc. v. Republic Nat. Life Ins. Co.,
   677 F.2d 1258 (9th Cir. 1982) ........................................................................... 8

In re Orion Securities Litigation,
   2008 WL 2811358 (S.D.N.Y. 2008) ................................................................. 2

Perfect 10, Inc. v. Amazon.com, Inc.,
   508 F.3d 1146 (9th Cir. 2007) ..................................................................... 5, 11

Perfect 10, Inc. v. CCBill LLC,
   488 F.3d 1102 (9th Cir. 2007) ......................................................................... 11

Sorenson v. Raymond,
   532 F.2d 496 (5th Cir. 1976) ............................................................................. 8

**Statutes**

17 U.S.C. §§ 512(b)-(d) ........................................................................................... 11

17 U.S.C. § 512(a) ..................................................................................................... 3

| | |
|---|---|
| Fed. R. Civ. P. 42 | 2 |
| Fed. R. Civ. P. 42(a) | 2 |
| Local Rule 7-3 | 11 |

**Miscellaneous**

| | |
|---|---|
| Wright, Miller & Cooper, Federal Practice and Procedure § 4465.1 | 8 |

Google respectfully submits this response to the Court's December 2, 2008 Minute Order, which contemplates, among other things, a stay of <u>Perfect 10, Inc. v. Google Inc.</u>, Case No. 04-9484 AHM (SHx).

**<u>Preliminary Statement</u>**

Google understands that Perfect 10's massive, blunder-buss claims impose burdens upon this Court and recognizes the importance of the Court's continuing efforts to find an appropriate solution to managing Perfect 10's simultaneous suits against Google, Amazon and Microsoft. However, Google does not believe that a stay of this case pending resolution of the <u>Microsoft</u> action is the solution. A stay risks serious, irreparable prejudice to Google. Furthermore, because of the differences in the legal and factual issues between the actions, resolution of the <u>Microsoft</u> case is unlikely to materially advance the goal of bringing this lawsuit to an orderly and just conclusion.

At a minimum, Google should be permitted to file its contemplated summary judgment motions on Perfect 10's copyright claims pursuant to the safe harbor provisions of the Digital Millennium Copyright Act. Prior to the December 2 Order, Google was meeting and conferring with Perfect 10 about those motions and, specifically, the parties were discussing a schedule in which Google would file its motions in January 2009 with an agreed briefing schedule. Google's DMCA motions, if successful, will resolve Perfect 10's pending copyright infringement claims against Google, thus obviating the need for additional extensive discovery and other litigation involving those claims.

# I. RESOLUTION OF THE *MICROSOFT* ACTION IS NOT LIKELY TO ADVANCE RESOLUTION OF THIS SUIT AGAINST GOOGLE.

While Perfect 10's suits against Google and against the Amazon Defendants share some facial similarities with Perfect 10's case against Microsoft,[1] the overlap of the relevant factual and legal issues is limited, and a stay of this lawsuit is inappropriate.

## A. The Three Cases Differ In Legal Claims and Defenses.

The differences in legal claims and defenses in the three cases are material and significant. In particular, because Perfect 10 sent different purported DMCA notices to Microsoft than it did to Google,[2] the DMCA issues in the Microsoft and Google suits will likely differ. Perfect 10 also has brought multiple claims against Google that Perfect 10 has not brought against Microsoft. These include claims for alleged unfair competition under federal, state and common law, and state law claims of violation of publicity rights, unjust enrichment, and misappropriation that Perfect 10 has asserted against Google, but has not asserted against Microsoft.[3] And

---

[1] The cases against Google and the Amazon Defendants (namely, Amazon.com, Alexa Internet, and A9.com) are consolidated for pretrial and discovery purposes only, and the case against Microsoft is not consolidated with either action—nor has any party ever requested such consolidation. Even if one or more of the parties had requested consolidation, it is not clear that the consolidation standard would even be met in these circumstances. See Fed. R. Civ. P. 42 (permitting consolidation of actions pending before the same court and "involv[ing] a common question of law or fact"); In re Orion Securities Litigation, 2008 WL 2811358, at *3 (S.D.N.Y. 2008) ("Consolidation of these three actions pursuant to Rule 42(a) is appropriate because the factual allegations and legal claims raised in the complaints are largely overlapping and raise common questions of law and fact.").

[2] See Declaration of Andrea Pallios Roberts dated December 12, 2008 ("Roberts Decl."), and Exhibits A and B thereto (filed under seal).

[3] See Declaration of Rachel M. Herrick dated December 11, 2008 ("Herrick Decl.") at Ex. A (Perfect 10's [Proposed] Second Amended Complaint in the Google case) and at Ex. B (Perfect 10's Amended Complaint in the Microsoft case).

while Perfect 10 has alleged trademark claims against Google, it has not alleged such claims against Amazon.[4] As such, Google has pled a number of defenses and counterclaims based on federal preemption and issues of California state and common law that have no apparent relevance to the cases against Microsoft or the Amazon Defendants.[5] Further, Perfect 10 has recently amended its complaint to add claims regarding Google's Blogger content hosting service, which has nothing to do with Amazon or Microsoft.[6] Resolution of the <u>Microsoft</u> case will not have a potential impact on the resolution of *any* of these claims and defenses in this matter against Google.

The differences between the three cases are further illustrated by the motion practice in the <u>Amazon</u> case that raises claims and defenses unique to those parties and has no bearing on Google here. For example, A9.com has sought safe harbor under § 512(a) of the DMCA.[7] At this time, Google does not anticipate seeking safe harbor under that provision. Further, Perfect 10 has argued that Amazon.com and Alexa Internet are ineligible for any safe harbor under the DMCA because they failed to properly designate an agent to receive notices of alleged infringement.[8] This is entirely inapplicable to Google.

The following charts summarize the divergent claims brought by Perfect 10 in the three cases:

---

[4] See <u>id.</u> at Ex. A (Perfect 10's [Proposed] Second Amended Complaint in the <u>Google</u> case) and at Ex. C (Perfect 10's Amended Complaint in the <u>Amazon</u> case).
[5] See <u>id.</u> at Ex. D (Google's Answer and Counterclaims to Perfect 10's [Proposed] Second Amended Complaint).
[6] See <u>id.</u> at Ex. A (Perfect 10's [Proposed] Second Amended Complaint in the <u>Google</u> case, at ¶ 37).
[7] See <u>id.</u> at Ex. E (Motion of A9.com for Summary Judgment).
[8] See <u>id.</u> at Ex. F ([Redacted] Reply Memorandum in Support of Perfect 10's Motion for Partial Summary Judgment Against Alexa Internet, Inc.).

-3-
GOOGLE INC.'S RESPONSE TO THE COURT'S TENTATIVE ORDER

| Legal Claims | Google | Microsoft | Amazon |
|---|---|---|---|
| Copyright Infringement Claims Based Upon Search Engine Functionality | Yes | Yes | Yes |
| Copyright Infringement Claims Based Upon Content Hosting | Yes | No | No |
| Lanham Act – Trademark Infringement | Yes | Yes | No |
| Lanham Act – Trademark Dilution | Yes | No | No |
| Right of Publicity (state law) | Yes | No | No |
| Unfair Competition (federal, state, and common law) | Yes | No | No |
| Unjust Enrichment (state law) | Yes | No | No |
| Misappropriation (state law) | Yes | No | No |

| Legal Defenses | Google | Microsoft | Amazon |
|---|---|---|---|
| DMCA Safe Harbors | Yes | Yes | Yes |
| Trademark Defenses | Yes | Yes | No |
| Preemption by the Copyright Act | Yes | No | No |
| Preemption by the Communications Decency Act | Yes | No | No |

### B. The Three Cases Differ In Facts To Be Established.

Key facts underlying the legal claims and defenses in the three cases are dissimilar as well. Most importantly, each defendant either has raised or plans to raise defenses based on the safe harbor provisions of the DMCA. Principal issues with those defenses include the (1) deficiencies in the various purported notices of infringement that Perfect 10 sent to the various defendants, and (2) actions taken by the defendants in response. Perfect 10 sent different notices to each of the different parties in substantially divergent numbers, over different time periods.[9] Furthermore, proof of what Microsoft did or did not do in response to a purported

---

[9] See Roberts Decl. and Exhibits A and B thereto.

DMCA notice is not the same as what Google did or did not do in response to a different purported DMCA notice.

Proof of any alleged infringements by Microsoft (by operation of Microsoft's search engine) also will have little or no bearing on proof of any alleged infringements by Google (by operation of Google's search engine). The search engines are distinct operations, with different algorithms, different indexes, different content and different results.[10] Even if Perfect 10 can establish infringement of one or more copyrights by Microsoft, in each and every case, Perfect 10 would still have the burden of proving an entirely separate and distinct infringement by Google. Nor is any knowledge by Microsoft of any infringement on Microsoft's system probative of any knowledge by Google of any infringement of Google's system.

The following chart illustrates just some of the divergences in underlying facts between the Google and Microsoft cases:

| Factual and/or Legal Issue | Identical Between Cases? |
|---|---|
| Are Google's and Microsoft's search engines identical? | No. |
| Do Google and Microsoft have identical search indexes? | No. |
| Did P10 send identical purported DMCA notices to Google and Microsoft? | No. |
| Did Google and Microsoft respond in identical fashion to Perfect 10's purported DMCA notices? | No. |
| Does an infringement on one defendant's system prove an infringement on another defendant's system? | No. |

---

[10] Even a ruling that a particular action is or is not a "simple measure" that Microsoft could take to reduce infringement would not necessarily apply to Google. For technological, logistical or other reasons, what may be "simple" for Microsoft may not be "simple" for Google, and vice versa. See Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1172 (9th Cir. 2007).

| Is one defendant's knowledge of any infringement its system probative of another defendant's knowledge of any infringement on its system? | No. |
|---|---|
| Is a "simple measure" for one defendant necessarily a "simple measure" for another defendant? | No. |

### C. Because Google Does Not Agree To Sampling, The Outcome of The *Microsoft* Matter Is Unlikely To Be Dispositive.

The Court's Tentative accepts a proposal advanced by Microsoft for "structuring" the case against it. Specifically, Microsoft apparently proposed (among other things) that Perfect 10 be required to select a limited number of factual and legal "scenarios" (or "combinations") that it will pursue to establish liability for infringement in the Microsoft case; that each party will select a certain number of representative works to serve as examples for each scenario; and that Perfect 10 will be compelled to produce certain information regarding each selected work.

Assuming that this process proves to be workable in the suit between Microsoft and Perfect 10, there is little reason to believe that it will persuade Perfect 10 to narrow or focus its claims against Google. Indeed, even in the face of the Court's plainly stated view that Perfect 10's claims are fundamentally for contributory copyright infringement,[11] and contrary to the Court's grant of summary judgment to A9.com on Perfect 10's direct and vicarious infringement claims,[12] Perfect 10 still refuses to narrow its claims against any of the parties. For example, in the Microsoft case, Microsoft served Requests for Admission that Perfect 10

---

[11] See Herrick Decl. at Ex. G (October 6, 2008 Transcript at 20:21-23 ("Without making a final ruling on any motion that's pending, I will tell you all that this is almost entirely a contributory infringement case.").

-6-

would not pursue its federal trademark claims, and Perfect 10 so admitted.[13] But when Microsoft requested that Perfect 10 voluntarily dismiss its trademark claims following that sworn admission, not only did Perfect 10 refuse to dismiss them, it purported to amend its Responses to "reinstate" the claim.[14]

Furthermore, because there is little overlap between the claims in the Microsoft and Google matters, it is unlikely that any narrowing (or resolution) accomplished by sampling in the Microsoft case will advance the resolution of Perfect 10's case against Google. Microsoft's proposal is limited to the claims and defenses of that case, namely, federal copyright and trademark infringement claims regarding Microsoft's web search and image search functions. There also is little reason to think that the "factual scenarios" of Microsoft's operations are identical to those of Google's operations. Each entity operates its own search engine based on its own proprietary technology. Although Google's and Microsoft's web search, "thumbnailing" and "inline linking" processes may have similarities as they appear to users, the resolution of claims of direct and/or secondary infringement will likely depend on the technical details underlying those processes. To the extent relationships with advertisers are relevant, Google and Microsoft do not have identical contractual or other relationships with advertisers. Nor does Microsoft's proposal include any factual or legal scenarios regarding web *hosting* services (such as Blogger)—services implicating different legal theories and different legal defenses, including a separate safe harbor under the DMCA.

---

[12] See id. at Ex. H (November 4, 2008 Order Granting in Part and Denying in Part A9.com's Summary Judgment Motion).
[13] See id. at Ex. I (Perfect 10's Objections and Responses to Microsoft's Second Set of Requests for Admissions, at 3-5).
[14] See id. at Ex. J (Perfect 10's Amended Responses to Microsoft's Second Set of Requests for Admissions, at 3-6).

Finally, Google has not stipulated to or otherwise agreed to the "sampling" proposal, and any rulings regarding that proposal (including any appellate rulings) would not bind Google in this case or otherwise directly moot issues in this case. Even in the unlikely event that Perfect 10 obtains a judgment of liability against Microsoft, under traditional and well-established principles of claim and issue preclusion, such a judgment would not be binding on Google. See, e.g., National Industries, Inc. v. Republic Nat. Life Ins. Co., 677 F.2d 1258, 1260 (9th Cir. 1982) ("Neither was a party nor privy to the other's suit and thus neither is bound by the other's judgment."); cf. Charles J. Arndt, Inc. v. City of Birmingham, 748 F.2d 1486, 1494 (11th Cir. 1984) (refusing to permit plaintiff to invoke judgment against defendant from different case that plaintiff deliberately chose not to join, finding that "[t]o countenance such practice so that [plaintiff] could now use the decision in [the other] case against the defendants would serve only to promote the 'wait and see' attitude disapproved by the [Supreme] Court in Parklane."). In the event that the sampling method were to yield a settlement of the Microsoft case, that settlement will not bind Google. See, e.g., Arizona v. California, 530 U.S. 392, 414 (2000) ("settlements ordinarily occasion no issue preclusion"); Sorenson v. Raymond, 532 F.2d 496, 499 (5th Cir. 1976) (nonmutual preclusion could not rest on a permanent injunction entered by consent after a preliminary injunction had issued); E.B. Harper & Co. v. Nortek, Inc., 104 F.3d 913, 921-24 (7th Cir. 1997); Wright, Miller & Cooper, Federal Practice and Procedure § 4465.1, at 753 ("Whenever settlement seems to have sacrificed meaningful opportunities to test the judgment further, a later court should be free to deny nonmutual preclusion").

## II. A STAY WOULD UNFAIRLY PREJUDICE GOOGLE.

Under basic standards of due process, justice and fair play, Google is entitled to fully defend itself against Perfect 10's sweeping claims. Perfect 10's suit against Google has been pending for over four years, has been to the Ninth Circuit and back, and is proceeding toward the filing of dispositive motions. A stay would stop

this progress in its tracks, and do so for a period of time that is both lengthy and undetermined. The Microsoft case is not set for trial until the summer of 2009. It is a virtual certainty that any final ruling in that case will be appealed, and such appeals could remain pending for years.

During any stay, Perfect 10 no doubt will use the time to continue pressing and expanding its claims against Google by barraging Google with the same type of wholly defective DMCA notices that it has sent in the past and on which its present claims rely. Indeed, Perfect 10 has sent three such purported notices in the past two weeks alone.[15] Perfect 10 also will presumably seek additional damages spanning the entire period of any stay that is ordered. It would be fundamentally unfair to permit Perfect 10 to continue to expand its claims and increase its alleged damages claims while simultaneously tying Google's hands with a stay order that precludes the defense of those claims and precludes Google from obtaining clarity about its legal obligations.[16]

Not only will Google suffer substantial prejudice from such a stay, there is little benefit to be gained since any resolution of the Microsoft case is unlikely to obviate the need for Google to obtain a ruling on its own motions—including, at the very least, motions under the DMCA's safe harbors and for summary judgment on claims present in the Google case that are not at issue in the Microsoft case. Courts have found that circumstances of the type presented here—such as the material differences between litigants and actions—militate against the imposition of a stay.

---

[15] See Herrick Decl. ¶ 15.
[16] In fact, more than once, Perfect 10 has already attempted to use the *mere possibility* of a stay to Google's disadvantage. To cite just one example, even though Google extended the professional courtesy of a two-week extension for Perfect 10 to draft and deliver its portions of the Joint Stipulation on a motion to compel long-outstanding and necessary discovery, Perfect 10 broke its word and
(footnote continued)

See, e.g., Lockyer v. Mirant Corp., 398 F.3d 1098, 1113 (9th Cir. 2005) (stay was abuse of discretion when it was entered based on pending litigation that "is unlikely to decide, or to contribute to the decision of, the factual and legal issues before the district court") (referencing Landis v. North American Co., 299 U.S. 248, 255 (1936) ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.")); Kahn v. General Motors Corp., 889 F.2d 1078, 1080 (Fed. Cir. 1989) ("The potential lengthy and indefinite stay of these claims pending resolution of an entirely different issue involving different parties will deprive these claims of practical remedy. It is the duty of courts to avoid unnecessary delay in resolving the rights of litigants."). See also Dependable Highway Exp., Inc. v. Navigators Ins. Co., 498 F.3d 1059, 1067 (9th Cir. 2007) ("[I]n light of the general policy favoring stays of short, or at least reasonable, duration, the district court erred by issuing a stay without any indication that it would last only for a reasonable time").

For all these reasons, the proposed stay should not issue.[17]

### III. AT A MINIMUM, GOOGLE SHOULD BE PERMITTED TO SEEK SUMMARY JUDGMENT UNDER THE DMCA.

For the reasons stated above, Google respectfully submits that a stay is not appropriate. In the event the Court does impose a stay, however, Google

---

refused to abide by its agreement with an untenable excuse that the Court's explicitly tentative December 2 Order *actually imposed* a stay of the Google case.

[17] If the Court ultimately decides to issue a stay, Google requests that any stay be conditioned on Perfect 10's agreement to a binding stipulation that precludes it from pursuing any claims arising from any conduct or events during any stay period and that waives any ability to seek or recover any damages under any of its claims during any stay period. Perfect 10 also should be required to waive any contention that Google's actions or inactions during any stay period evidences willfulness or intent for any purpose.

alternatively requests that the Court at a minimum allow Google to move for summary judgment under the DMCA.

### A. A Decision Under the DMCA Would Resolve Significant Aspects Of This Suit.

Prior to the time of the December 2 Order, and pursuant to Local Rule 7-3, Google was discussing with Perfect 10 Google's contemplated motions for summary judgment on safe harbors provided by the DMCA, 17 U.S.C. § 512(b)-(d).[18] Google had been making progress toward an agreement that would set the filing of those motions for January 2009 and establish a briefing schedule. As the Court is aware, the DMCA establishes four "safe harbors" for Internet service providers, and "[a] service provider that qualifies for such [safe harbor(s)] is not liable for monetary relief and may be subject only to the narrow injunctive relief set forth in section 512(j)." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1158 (9th Cir. 2007). See also Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004); Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1109 (9th Cir. 2007); Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004). Accordingly, if successful, not only will Google's motions be final and dispositive of the vast bulk of Perfect 10's case—namely, its copyright infringement claims against Google— but it also will reduce and likely eliminate the need to pursue large swaths of discovery and other motion practice.[19]

---

[18] See Herrick Decl. at Ex. K (Letter from R. Herrick to J. Mausner dated November 7, 2008).

[19] For example, Google has sought to compel Perfect 10 to identify the copyrighted works and infringements it asserts against Google. The Court has largely granted that motion in principle, noting that "it would be both fair and feasible for Perfect 10 to create a spreadsheet along the lines contemplated by Google's Interrogatories Nos. 3 and 11 … but only for a selected and relatively small sample of copyrighted works." Herrick Decl. at Ex. L (Civil Minutes dated September 25, 2007, at 4). Although the dispute over such identification has not
(footnote continued)

### B. Not Allowing Google To Obtain Rulings Under the DMCA Would Be Inconsistent With the Purposes Of That Act and Prejudice Google.

Congress enacted the DMCA to bring clarity to the obligations of Internet service providers with respect to alleged copyright infringement on the Internet. Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090, 1098 (W.D. Wash. 2004). The DMCA was meant to balance the interests of copyright holders and Internet service providers by "creating a mechanism for rights holders to inform ISPs of potentially infringing conduct while, at the same time, ***providing 'greater certainty to service providers concerning their legal exposure*** for infringements that may occur in the course of their activities.'" Id. (quoting Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004) (emphasis added)).

Precluding Google from going forward with its motions for summary judgment would be inconsistent with this purpose—and prejudicial to Google—since it would deny Google clarity on any legal obligations it had or will have to respond to the purported DMCA notices of Perfect 10. Perfect 10's case against Google has been pending for over four years, and Perfect 10 continues to send Google ostensible DMCA notices, including on November 27, 2008—Thanksgiving Day.[20] Google believes that it is and has at all times been fully in compliance with all applicable laws, including the DMCA, but until Google receives a ruling on that issue, Perfect 10's pending and ever-expanding claims create uncertainty for Google's present and future business operations. Google's eligibility for safe harbors is ripe for review, and nothing that occurs in the Microsoft case is likely to

---

been fully resolved and although Perfect 10 certainly has made no effort to provide the information despite the Court's statements, Google's dispositive motion may render it (and possibly other discovery disputes as well) largely moot.

[20] See Herrick Decl. ¶ 15.

obviate the need for the Court to rule on that question. Google respectfully requests the opportunity to settle these concerns with its dispositive motions for safe harbors.[21]

### Conclusion

Google shares the Court's concerns with the progress of this litigation and is striving to bring it to a fair and orderly conclusion. Google respectfully believes, however, that the solution is not to stay this case in deference to a later-filed case involving disparate factual and legal issues. Google accordingly requests that the Court not stay this case and, in the alternative, that the Court at a minimum allow Google to move for summary judgment under the DMCA and obtain a ruling from the Court prior to any decision regarding a stay of this lawsuit.

DATED: December 12, 2008  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Michael T. Zeller
Michael T. Zeller
Attorneys for Defendant Google Inc.

---

[21] Perfect 10 has previously claimed that a stay would result in prejudice to it. In opposing the stay requested by Amazon on August 25, 2005, Perfect 10 argued that "a stay would severely harm Perfect 10 by effectively granting Amazon a 'free pass' to continue massively infringing Perfect 10's copyrights until at least December, 2006, when the Google action is set for trial." Herrick Decl. at Ex. M (Memorandum of Points and Authorities of Plaintiff Perfect 10 in Opposition to Motion to Stay, at 1).