1  [COUNSEL LISTING ON FOLLOWING PAGE]

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10  PERFECT 10, INC., a California          CASE NO. CV 04-9484 AHM (SHx)
    corporation,                            [Consolidated with Case No. CV 05-
11                                          4753 AHM (SHx)]
              Plaintiff,
12                                          **DISCOVERY MATTER**
          vs.
13                                          **JOINT STIPULATION ON
    GOOGLE INC., a corporation; and         GOOGLE INC.'S MOTION TO
14  DOES 1 through 100, inclusive,          COMPEL PERFECT 10 (1) TO
                                            PRODUCE DOCUMENTS, (2) TO
15            Defendants.                    COMPLY WITH PROTECTIVE
                                            ORDER, AND (3) TO AFFIX
16  _____    DOCUMENT CONTROL
                                            NUMBERS TO ITS DOCUMENT
    AND COUNTERCLAIM                         PRODUCTION**
17  _____
    PERFECT 10, INC., a California
18  corporation,                            Hon. Stephen J. Hillman

19            Plaintiff,                     Date:    June 1, 2009
                                            Time:    2:00 PM
20        vs.                               Crtrm.:  550

21  AMAZON.COM, INC., a corporation;        Discovery Cutoff: None Set
    A9.COM, INC., a corporation; and        Pretrial Conference Date: None Set
22  DOES 1 through 100, inclusive,          Trial Date: None Set

23            Defendants.                    **PUBLIC REDACTED**

24  _____

25

26

27

28
                                            Case No. CV 04-9484 AHM (SHx) [Consolidated
                                            with Case No. CV 05-4753 AHM (SHx)]

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-213

Attorneys for Defendant Google Inc.


THE LAW OFFICES OF JEFFREY N. MAUSNER
Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
Telephone: 818-992-7500
Facsimile: 818-716-2773

Attorneys for Plaintiff Perfect 10, Inc.

# TABLE OF CONTENTS

**Page**

GOOGLE'S PRELIMINARY STATEMENT ............................................................. 1

PERFECT 10'S PRELIMINARY STATEMENT ....................................................... 3

I.   ISSUE NO. 1: SHOULD PERFECT 10 BE COMPELLED TO
     PRODUCE DOCUMENTS RELATING TO ITS DAMAGES
     CLAIMS AND FINANCIAL CONDITION? .............................................. 7

     A.   Requests At Issue (Document Requests Nos. 81, 87, 94, 95, 104,
          105, 108-112, 162, 165-171, 173-177, 179 and 181-182). ................... 7

     B.   Google's Position ................................................................................ 22

     C.   Perfect 10's Position ........................................................................... 31

II.  ISSUE NO. 2: SHOULD PERFECT 10 BE COMPELLED TO
     PRODUCE DOCUMENTS RELATING TO PERFECT10.COM? ............... 40

     A.   The Requests At Issue (Document Requests Nos. 98-102, 154,
          157, 162, 163, 181-182 and 189). ..................................................... 40

     B.   Google's Position ................................................................................ 46

     C.   Perfect 10's Position ........................................................................... 51

III. ISSUE NO. 3: SHOULD PERFECT 10 BE COMPELLED TO
     PRODUCE DOCUMENTS RELATING TO CELL PHONE
     DOWNLOADS? ...................................................................................... 56

     A.   The Requests At Issue (Document Requests Nos. 183 and 184) ......... 56

     B.   Google's Position ................................................................................ 57

     C.   Perfect 10's Position ........................................................................... 61

IV.  ISSUE NO. 4: SHOULD PERFECT 10 BE COMPELLED TO
     PRODUCE DOCUMENTS RELATING TO PICSCOUT? ........................ 64

     A.   The Requests At Issue (Document Requests Nos. 124-25, 159) .......... 64

     B.   Google's Position ................................................................................ 65

     C.   Perfect 10's Position ........................................................................... 68

V.   ISSUE NO. 5: SHOULD PERFECT 10 BE COMPELLED TO
     ALLOW GOOGLE TO INSPECT ORIGINALS OF PERFECT 10'S
     COPYRIGHT REGISTRATION MATERIALS? ........................................ 68

     A.   The Requests At Issue (Document Request Nos. 1 and 2) .................. 68

| | B. | Google's Position | 69 |
| --- | --- | --- | --- |
| | C. | Perfect 10's Position | 72 |
| VI. | | ISSUE NO. 6: SHOULD PERFECT 10 BE ORDERED TO PRODUCE ITS CHART LINKING ALLEGEDLY INFRINGING IMAGES TO COPYRIGHT REGISTRATIONS AND PUBLICATIONS PRODUCED BY PERFECT 10? | 74 |
| | A. | The Requests At Issue (Document Requests Nos. 190 and 191) | 74 |
| | B. | Google's Position | 76 |
| | C. | Perfect 10's Position | 77 |
| VII. | | ISSUE NO. 7: SHOULD PERFECT 10 BE ORDERED TO COMPLY WITH THE PROTECTIVE ORDER? | 79 |
| | A. | Google's Position | 79 |
| | B. | Perfect 10'S Position | 85 |
| VIII. | | ISSUE NO. 8: SHOULD PERECT 10 BE COMPELLED TO DE-DESIGNATE THE CHARTS ALLEGEDLY RESPONSIVE TO INTERROGATORY NO. 3? | 91 |
| | A. | The Interrogatory At Issue | 91 |
| | B. | Google's Position | 96 |
| | C. | Perfect 10's Position | 98 |
| IX. | | ISSUE NO. 9: SHOULD PERFECT 10 BE COMPELLED TO BATES-NUMBER ITS DOCUMENT PRODUCTIONS? | 101 |
| | A. | Google's Position | 101 |
| | B. | Perfect 10's Position | 106 |
| | | GOOGLE'S CONCLUSION | 110 |
| | | PERFECT 10'S CONCLUSION | 111 |

## Google's Preliminary Statement

Google brings this motion to compel Perfect 10 to produce key documents and correct other, fundamental deficiencies in its production in this case.

**Perfect 10's Failure to Produce Multiple Categories of Documents.** Perfect 10 has failed to produce core categories of relevant -- and even crucial -- documents. Google has sought documents regarding Perfect 10's efforts to identify alleged infringements and regarding its website (www.perfect10.com) as well as Perfect 10's financial records and other documents reflecting the alleged damages Perfect 10 claims to have suffered. These documents concern basic facts that are relevant to Perfect 10's infringement claims, to Google's fair use defense, to damages and indeed to facts that Perfect 10 admits it will need to establish to prove its case at summary judgment or trial. Declaration of Rachel Herrick Kassabian, dated May 6, 2009 ("Kassabian Decl."), Ex. P (October 6, 2008 Transcript, at 27-33). Nevertheless, Perfect 10 has refused to produce them.

For certain of the requested documents, Perfect 10 has even refused to state whether or not the documents are still in its possession, have been lost or destroyed, or ever existed. For these documents, Google requests an affidavit from Perfect 10 describing its efforts to locate these documents and its knowledge as to any loss or destruction of the documents. See Buchanan v. Consolidated Stores Corp., 206 F.R.D. 123, 125 (D. Md. 2002) ("Defendant will be ordered to provide an affidavit describing the efforts made to locate documents responsive to requests" for production of documents).

Furthermore, Perfect 10 refuses to allow Google to inspect the original copyright registration certificates and deposit materials for the copyrights that Perfect 10 asserts in its case against Google, depriving Google of the opportunity to verify that the claimed copyright certificates cover Perfect 10's allegedly copyrighted images. Rule 34 and long-standing precedent entitle Google to inspect

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1   these originals, and Perfect 10 has no basis for refusing to comply with its discovery
2   obligations to produce them for inspection and copying.

3       Perfect 10 should be ordered to produce documents responsive to Google's
4   Requests, submit an affidavit regarding any efforts to preserve and produce
5   documents it clearly once possessed but has not produced, and permit inspection of
6   the original copyright registration materials for the works asserted in this action.

7       **Perfect 10's Improper Confidentiality Designations.** The Protective Order
8   in this case extends only to documents that a party "in good faith believes comprise
9   or reflect proprietary information used by it in, or pertaining to its business." It
10  additionally requires that party wishing to designate a document as "Confidential"
11  do so "by affixing a plainly visible confidentiality designation to (i) the cover page
12  ... and (ii) each page containing any confidential information ... or (iii) physically
13  on the outside of any media for storing electronic documents." Kassabian Decl., at
14  Ex. S (Protective Order ¶¶ 1 & 4(a)).

15      Perfect 10 has produced over 600 gigabytes of electronic information
16  encompassing millions of pages of documents, and has violated both of these terms
17  with respect to the vast majority of its production. Specifically, Perfect 10 admits
18  that it confidentiality designations are overbroad, including by its designation of
19  publicly available materials as confidential. Perfect 10 also has failed to affix
20  confidentiality legends to the specific documents in its production which are in fact
21  confidential. Perfect 10 should be ordered to comply with the terms of the
22  Protective Order by designating as confidential only to the pages of documents in its
23  productions that actually contain confidential material.

24      **Perfect 10's Improper Designation as "Confidential" of Charts re.**
25  **Google's Interrogatory No. 3.** In response to Google's Interrogatory No. 3, Perfect
26  10 created and served on Google six charts containing various combinations of
27  Perfect 10 model names, page numbers of Perfect 10 Magazine and perfect10.com,
28  base host names of third-party websites, and/or dates and numbers of alleged

1  infringements.  Despite the fact that (1) all of this information is public, and (2)
2  Perfect 10 does not use these charts in its regular business activities, Perfect 10
3  designated each page of each of these charts as "Confidential" and refuses to
4  withdraw that designation.  Because there is no legitimate basis for the designation,
5  the Court should order the charts de-designated.

6  **Perfect 10's Failure to Bates-Number its Document Productions.**  As
7  discussed above, Perfect 10's electronic production of documents encompasses over
8  600 gigabytes of information and several million pages of electronic documents.
9  Perfect 10 has not, however, affixed document control numbers to a *single page* of
10 its production.  This is in direct contravention of standard litigation practice, Rule 34
11 and common sense.  Perfect 10's failure already has resulted in, and will inevitably
12 continue to result in, confusion over identification and/or authentication of
13 documents in depositions, in motion practice, in settlement negotiations, and at trial
14 and in disputes as to what was even produced and when.  Courts routinely order
15 parties to "Bates-stamp" their document productions—indeed, Perfect 10 has *itself*
16 Bates-stamped document productions in prior litigations.  This case, which is a
17 complex one by any standard and involves massive claims by Perfect 10 of literally
18 millions of alleged infringements, should be no exception.  Perfect 10 should be
19 ordered to affix unique control numbers to its document productions here.

20      Google respectfully requests that its motion be granted in all respects.

21                    **Perfect 10's Preliminary Statement**

22      Google originally served this Joint Stipulation in November 2008, and
23 concurrently served the Herrick declaration.  Google is now filing the Herrick
24 Kassabian declaration and dating it May 6, 2009, representing that the Herrick
25 Kassabian declaration is the same as the Herrick declaration served in November
26 2008, except for the change of date and name.

27      As set forth in detail below, this Court should not consider Google's motion
28 because it contravenes this Court's specific orders regarding discovery.  Moreover,

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

1  if this Court considers the motion, it should be denied in its entirety for numerous
2  reasons. Perfect 10 has been extremely forthcoming in satisfying its discovery
3  obligations, and Google has not. Google has still failed to respond to this Court's
4  May 22, 2006 order regarding Interrogatory 24 and other orders, as well as Judge
5  Matz's April 14, 2008 order, regarding the production of a DMCA log (Request
6  196) and internal reports (Requests 128-131 and 194-5), neither of which Google
7  has complied with. Perfect 10 has not yet burdened the Court with a sanctions
8  motion regarding these brazen failures by Google because Perfect 10 has simply
9  been overwhelmed with Google's unreasonable discovery demands and its failure to
10  comply with Perfect 10's discovery.

11      Google's current motion is just another attempt to bury Perfect 10 and the
12  Courts with busywork. Google acknowledges that Perfect 10 has produced over 600
13  gigabytes of electronic information encompassing millions of pages of documents,
14  organized in folders, and produced largely in Adobe format, which are searchable
15  and have page numbers. In fact, Perfect 10 has produced virtually every document
16  it has, in what appears to be a futile attempt to minimize discovery motions, as
17  Google is determined to proceed with such motions even though it has no legitimate
18  basis to do so. Adobe is vastly superior to the TIFF production that Google has
19  requested, *which would destroy evidence* by destroying a) Adobe's search feature, b)
20  the internal links that Adobe stores, and c) the cohesiveness of the production.
21  Effectively, Google wants Perfect 10 to put bates numbers on the pages of ten
22  thousand books, and then rip them up and produce them in a massive unsearchable
23  mess, consisting of millions of pages.

24      As Perfect 10's production is now, to find any particular document, say an
25  October 16 DMCA notice to Google, one looks in the Google folder, looks in the
26  subfolder marked Google DMCA or DMCA, looks for the October 16, 2007 folder,
27  and then looks in the various subfolders, which contain the Adobe files that were
28  actually contained in that notice. Everything is organized and Adobe has page

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

numbers and is searchable. The bates number by itself *would eliminate information*. Saying that a document is bates 1023457 tells one absolutely nothing about what is in the document, which notice it is from, etc. What Google is proposing is a complete waste of time, and Google should be sanctioned for its complete misrepresentation of the merits of bates-stamping in this particular case; there are none.

With respect to numerous document requests, Google's motion is premature. The parties never substantively met and conferred about any of Perfect 10's responses to the sixth and seventh sets of documents, except request nos. 190 and 191. With regard to all of the other requests in those document sets, Perfect 10's counsel agreed to substantively meet and confer after December 8, 2008 – the hearing date on Perfect 10's summary judgment motion against various Amazon defendants.

The copyright issue is a non-issue. Perfect 10 has already made available to Google at Perfect 10 several years ago, its original copyright certificates to the extent it has any, along with hard copies of virtually everything else. Perfect 10 does not have the original deposit materials; they are at the Copyright Office. Perfect 10 has already supplied Google with an electronic copy of these documents and so there is nothing else for Google to see. Google has not stated why the electronic copies of all of the copyright certificates are not sufficient; they just want to come over to Perfect 10 for some reason.

Financial documents. This was already the subject of a motion to compel, and was denied. However, Perfect 10 entered into a separate agreement with Google to waive its claim that Perfect 10 waived its right to sue for actual damages, if it produced financial documents. Perfect 10 has produced the financial documents it has in its possession. Perfect 10 was required to redact certain portions relating to confidential settlements; Google is now trying to force Perfect 10 to violate its confidential settlement agreements. Pursuant to the terms of the protective order,

-5-

1  and at Google's request, Perfect 10 has already asked the Defendants it settled with
2  if Google could see such documents, and they all said no.

3       Other documents. Google misrepresents that Perfect 10 has failed to say
4  whether or not it has various other documents. Perfect 10 has repeatedly said that it
5  does not have certain requested documents. Without authority, Google asks this
6  Court to compel Perfect 10 to provide an affidavit that contains the type of
7  information required in state court, not federal court. Once again, Google is asking
8  for Perfect 10 to comply with procedures not required, and is unwilling to do the
9  same.

10      Confidentiality designations. Likewise, Google's motion to compel Perfect
11 10 to sort through about 1,000,000 pages of electronic data and stamp the word
12 confidential on confidential pages is a waste of time. At the August 18, 2008
13 Scheduling Conference, Judge Matz indicated that what Google is requesting is
14 unnecessary for the electronic data at issue and delineated a practical alternative;
15 Google refuses to agree to that approach.

16      It is Google's over designation of its deposition transcripts as confidential
17 (and its document productions as well), that has forced Perfect 10 to submit large
18 portions of its motions under seal. It is Google who has been publishing Perfect
19 10's confidential DMCA notices on the Internet via chillingeffects.org, which is
20 essentially a republication of the location of infringements of Perfect 10's
21 copyrights. Because of Google's publication of the location of Perfect 10's
22 copyrighted works, Perfect 10 has been forced to designate its discovery productions
23 as confidential. Perfect 10 cannot allow Google to continue to provide users with
24 the location of massive numbers of Perfect 10's copyrighted works[1].

25

26      [1] The charts that Google is complaining about exemplify this problem. Perfect 10
27 voluntarily prepared charts that were not even ordered by this Court. These charts have a long list
   of infringing websites and describe the number of P10 Images of each Perfect 10 model offered by
28      (footnote continued)

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]
JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

**I.  ISSUE NO. 1:  SHOULD PERFECT 10 BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO ITS DAMAGES CLAIMS AND FINANCIAL CONDITION?**

    **A.  Requests At Issue (Document Requests Nos. 81, 87, 94, 95, 104, 105, 108-112, 162, 165-171, 173-177, 179 and 181-182).**

**REQUEST NO. 81:**

Your complete tax and accounting books and full corporate earnings reports, including revenues, costs, and profits reported to national or state tax authorities.

**RESPONSE TO REQUEST NO. 81:**

Perfect 10 objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine.  Perfect 10 objects to this request on the grounds that it is irrelevant and not limited as to time. Perfect 10 also objects to production of any documents which fall under a privilege for tax returns.  Without waiving the foregoing objections, Perfect 10 will produce summary financial statements.

**REQUEST NO. 87:**

All documents concerning projection of sales, revenue, or profits for each of your contemplated or launched products or services.

**RESPONSE TO REQUEST NO. 87:**

Perfect 10 objects to this request as being vague and ambiguous, incomprehensible, and not likely to yield evidence relevant to the case.  Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine.  Without waiving any of the foregoing objections, Perfect 10 responds that, to the extent it understands this

---

that website. These charts are absolutely confidential and if published on the Internet, would once again direct users to the location of tens of thousands of P10 Images.  Google's characterization of all this information as "public" is completely untrue.

(footnote continued)

1  request, it will provide non-privileged documents that may be found upon a
2  reasonable search, if any.
3  **REQUEST NO. 94:**
4      Documents sufficient to identify your profits from each of your products and
5  services, individually and by category, both by year and by the most disaggregate
6  level available.
7  **RESPONSE TO REQUEST NO. 94:**
8      Perfect 10 objects to this request on the grounds that it does not know what is
9  meant by "the most disaggregate level available." Perfect 10 will provide
10 accounting statements that reflect expenditures, as well as revenue, by category.
11 Perfect 10 objects to this request to the extent that it seeks documents protected by
12 the attorney-client privilege or work product doctrine.
13 **REQUEST FOR PRODUCTION NO. 95:**
14     Documents sufficient to identify your 25 largest customers each month in
15 relation to each of your products or services.
16 **RESPONSE TO REQUEST FOR PRODUCTION NO. 95:**
17     Perfect 10 objects to this request on the basis that it is vague, overbroad, and
18 unduly burdensome, and because it seeks irrelevant information. Perfect 10 also
19 objects to this request to the extent that it seeks documents protected by the
20 attorney-client privilege, work product doctrine, or right of privacy.
21 **REQUEST FOR PRODUCTION NO. 104:**
22     All documents reflecting or evidencing the fact alleged in paragraph 11 of the
23 amended complaint that your Web site receives approximately 100,000 unique
24 visitors per month, including all documents concerning how you determine that a
25 visitor is unique.
26
27
28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

**RESPONSE TO REQUEST FOR PRODUCTION NO. 104:**

Perfect 10 objects to this request as being vague and ambiguous, overbroad, and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine. Subject to, and without waving the foregoing objections and general objections, Perfect 10 will provide log files to perfect10.com that may be located upon a reasonable search.

**REQUEST FOR PRODUCTION NO. 105:**

All documents reflecting or evidencing the fact alleged in paragraph 14 of the amended complaint that you have spent millions of dollars advertising and promoting your marks and your products and services, and all documents showing the amounts you earmarked or spent to advertise and promote marks and the amounts you earmarked or spent to advertise and promote products and services.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 105:**

Perfect 10 objects to this request as being vague, overbroad, and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine. Without waiving the foregoing objections or the general objections, Perfect 10 will provide accounting statements that reflect expenditures, as well as revenue, by category.

**REQUEST FOR PRODUCTION NO. 108:**

All documents reflecting or evidencing the fact alleged in paragraph 17 of the amended complaint that the described infringement is "devastating to" and "threatens the existence of your business, including all documents with financial data demonstrating this effect.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 108:**

Perfect 10 objects to this request as being vague and ambiguous, overbroad, and unduly burdensome, and because Perfect 10 cannot fully respond until it

receives discovery from Google. Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine. Without waiving the foregoing objections and general objections, Perfect 10 will provide accounting statements that reflect expenditures, as well as revenue, by category. Perfect 10 has produced, and will continue to produce, the massive infringements of Perfect 10 images that Google is involved with, the violations of rights of publicity and trademark, and documents showing the unauthorized dissemination of user names and passwords that Google is involved with, as well as detailed spread sheets setting forth many of those infringements. Perfect 10 cannot fully respond to this document request until Google produces documents that Perfect 10 has requested.

**REQUEST FOR PRODUCTION NO. 109:**

All documents reflecting or evidencing the fact alleged in paragraph 47 of your answer to Google's counterclaims that the revenues you received resulting from searches on Google are substantially less than they should be.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 109:**

Perfect 10 objects to this request as being vague and ambiguous, overbroad, and unduly burdensome, and because Perfect 10 cannot fully respond until it receives discovery from Google. Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine. Without waiving the foregoing objections and general objections, Perfect 10 will provide accounting statements that reflect expenditures, as well as revenue, by category. Perfect 10 has produced, and will continue to produce, the massive infringements of Perfect 10 images that Google is involved with, the violations of rights of publicity and trademark, and documents showing the unauthorized dissemination of user names and passwords that Google is involved with, as well as detailed spread sheets setting forth many of those infringements. Perfect 10 cannot

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1  fully respond to this document request until Google produces documents that Perfect

2  10 has requested.

3  **REQUEST FOR PRODUCTION NO. 110:**

4    All documents reflecting or evidencing the fact alleged in paragraph 47 of

5  your answer to Google's counterclaims that the damages caused by activities alleged

6  in the amended complaint far exceed any benefit to you from Google.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 110:**

8    Perfect 10 objects to this request as being vague and ambiguous, overbroad,

9  and unduly burdensome, and because Perfect 10 cannot fully respond until it

10  receives discovery from Google. Perfect 10 also objects to this request to the extent

11  that it seeks documents protected by the attorney-client privilege or work product

12  doctrine. Without waiving the foregoing objections and general objections, Perfect

13  10 will provide accounting statements that reflect expenditures, as well as revenue,

14  by category. Perfect 10 has produced, and will continue to produce, the massive

15  infringements of Perfect 10 images that Google is involved with, the violations of

16  rights of publicity and trademark, and documents showing the unauthorized

17  dissemination of user names and passwords that Google is involved with, as well as

18  detailed spread sheets setting forth many of those infringements. Perfect 10 cannot

19  fully respond to this document request until Google produces documents that Perfect

20  10 has requested.

21  **REQUEST FOR PRODUCTION NO. 111:**

22    All documents reflecting or evidencing the fact alleged in paragraph 11 of the

23  declaration of Norman Zada in support of the motion for preliminary injunction

24  ("Zada Declaration") that you invested over $36 million to develop a respected

25  brand and goodwill and all documents showing what expenditures are included in

26  this figure, including expenditures other than the $12 million related to photographs

27  described in that paragraph.

28  **RESPONSE TO REQUEST FOR PRODUCTION NO. 111:**

1  Perfect 10 objects to this request as being vague and ambiguous, overbroad,
2  and unduly burdensome. Perfect 10 also objects to this request to the extent that it
3  seeks documents protected by the attorney-client privilege or work product doctrine.
4  Without waiving the foregoing objections and general objections, Perfect 10 will
5  provide accounting statements that reflect expenditures, as well as revenue, by
6  category.

7  **REQUEST FOR PRODUCTION NO. 112:**

8  All documents concerning revenues received by you from movies, television,
9  and videos as described in paragraph 12 to 14 of the Zada Declaration.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 112:**

11  Perfect 10 objects to this request as being vague and ambiguous, overbroad,
12  and unduly burdensome. Perfect 10 also objects to this request to the extent that it
13  seeks documents protected by the attorney-client privilege or work product doctrine.
14  Without waiving the foregoing objections and general objections, Perfect 10 will
15  provide accounting statements that reflect expenditures, as well as revenue, by
16  category.

17  **REQUEST FOR PRODUCTION NO. 162:**

18  All DOCUMENTS CONCERNING any benefit to PERFECT 10 resulting
19  from any conduct or action by GOOGLE.

20  **RESPONSE TO REQUEST 162:**

21  Perfect 10 objects to this request as being overly broad and unnecessarily
22  burdensome, and seeking information which is not relevant to the claims or defenses
23  in this action. Perfect 10 also objects to this request as being duplicative of previous
24  requests by Google. Perfect 10 objects to this request to the extent that it seeks
25  documents subject to the attorney-client privilege or work product doctrine. Subject
26  to, and without waiving the foregoing objections and general objections, Perfect 10
27  has been providing Google with copies of its server logs and documents showing
28  listings of perfect10.com and other affiliates in Google search results. These are the

1 only non-privileged or non-work product documents that Perfect 10 is aware of that
2 could be responsive to this request, but should Perfect 10 come across others, it will
3 produce them. By producing these documents, Perfect 10 does not concede that it
4 has received any benefit at all from the conduct or action by GOOGLE. In fact,
5 GOOGLE's infringement of Perfect 10's property is a major cause of Perfect 10's
6 losses.

7 **REQUEST FOR PRODUCTION NO. 165:**

8      All DOCUMENTS CONCERNING the market share of PERFECT 10 in any
9 market in which it claims to compete, including but not limited to the markets for
10 print magazines generally, for adult-oriented magazines, for websites generally, for
11 adult-oriented websites, for licensing of downloads of IMAGES for cell phones
12 generally, and for licensing of downloads of adult-oriented IMAGES for cell
13 phones.

14 **RESPONSE TO REQUEST 165:**

15      Perfect 10 objects to this request on the basis that Google has substantial data
16 relating to this request that it has refused to produce to Perfect 10, such as the
17 number of searches on Perfect 10 models, and the number of clicks on Perfect 10
18 copyrighted images. Perfect 10 cannot fully respond to this request without that
19 data. Perfect 10 also objects to this request as being overly broad and unnecessarily
20 burdensome, and being duplicative of previous requests by Google. Perfect 10
21 objects to this request to the extent that it seeks documents subject to the attorney-
22 client privilege or work product doctrine. Subject to, and without waiving the
23 foregoing objections and general objections, Perfect 10 has produced and/or will
24 produce all non-privileged and non-work product responsive documents that can be
25 found upon a reasonable search.

26 **REQUEST FOR PRODUCTION NO. 166:**

27      All DOCUMENTS CONCERNING the effect or impact, if any, of any
28 conduct or action by GOOGLE on the market share of PERFECT 10 in any of the

1 markets in which it claims to compete, including but not limited to the market for
2 print magazines generally, for adult-oriented magazines, for websites generally, for
3 adult-oriented websites, for licensing of downloads of IMAGES for cell phones
4 generally, and for licensing of downloads of adult-oriented IMAGES for cell
5 phones.

6 **RESPONSE TO REQUEST 166:**

7     Perfect 10 objects to this request on the basis that Google has substantial data
8 relating to this request that it has refused to produce to Perfect 10, including but not
9 limited to the number of searches on Perfect 10 models, the number of clicks on
10 Perfect 10 copyrighted images, and the number of downloads of Perfect 10 images
11 on sites using Google Analytics software, and on cell phones. Perfect 10 cannot
12 fully respond to this request without that data. Perfect 10 also objects to this request
13 as being overly broad and unnecessarily burdensome, and being duplicative of
14 previous requests by Google. Perfect 10 objects to this request to the extent that it
15 seeks documents subject to the attorney-client privilege or work product doctrine.
16 Subject to, and without waiving the foregoing objections and general objections,
17 Perfect 10 has produced and/or will produce all non-privileged and non-work
18 product responsive documents that can be found upon a reasonable search.

19 **REQUEST FOR PRODUCTION NO. 167:**

20     All DOCUMENTS CONCERNING the effect or impact, if any, of
21 GOOGLE'S Web Search on the market share of PERFECT 10 in any of the markets
22 in which it claims to compete, including but not limited to the market for print
23 magazines generally, for adult-oriented magazines, for websites generally, for adult-
24 oriented websites, for licensing of downloads of IMAGES for cell phones generally,
25 and for licensing of downloads of adult-oriented IMAGES for cell phones.

26 **RESPONSE TO REQUEST 167:**

27     Perfect 10 objects to this request on the basis that Google has substantial data
28 relating to this request that it has refused to produce to Perfect 10, including but not

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

1 | limited to the number of searches on Perfect 10 models, the number of clicks on
2 | Perfect 10 copyrighted images, and the number of downloads of Perfect 10 images
3 | on sites using Google Analytics software, and on cell phones. Perfect 10 cannot
4 | fully respond to this request without that data. Perfect 10 also objects to this request
5 | as being overly broad and unnecessarily burdensome, and being duplicative of
6 | previous requests by Google. Perfect 10 objects to this request to the extent that it
7 | seeks documents subject to the attorney-client privilege or work product doctrine.
8 | Subject to, and without waiving the foregoing objections and general objections,
9 | Perfect 10 has produced and/or will produce all non-privileged and non-work
10 | product responsive documents that can be found upon a reasonable search.
11 | **REQUEST FOR PRODUCTION NO. 168:**
12 | All DOCUMENTS CONCERNING the effect or impact, if any, of
13 | GOOGLE'S Image Search on the market share of PERFECT 10 in any of the
14 | markets in which it claims to compete, including but not limited to the market for
15 | print magazines generally, for adult-oriented magazines, for websites generally, for
16 | adult-oriented websites, for licensing of downloads of IMAGES for cell phones
17 | generally, and for licensing of downloads of adult-oriented IMAGES for cell
18 | phones.
19 | **RESPONSE TO REQUEST 168:**
20 | Perfect 10 objects to this request on the basis that Google has substantial data
21 | relating to this request that it has refused to produce to Perfect 10, including but not
22 | limited to the number of searches on Perfect 10 models, the number of clicks on
23 | Perfect 10 copyrighted images, and the number of downloads of Perfect 10 images
24 | on sites using Google Analytics software, and on cell phones. Perfect 10 cannot
25 | fully respond to this request without that data. Perfect 10 also objects to this request
26 | as being overly broad and unnecessarily burdensome, and being duplicative of
27 | previous requests by Google. Perfect 10 objects to this request to the extent that it
28 | seeks documents subject to the attorney-client privilege or work product doctrine.

1  Subject to, and without waiving the foregoing objections and general objections,
2  Perfect 10 has produced and/or will produce all non-privileged and non-work
3  product responsive documents that can be found upon a reasonable search.

4  **REQUEST FOR PRODUCTION NO. 169:**

5      All DOCUMENTS CONCERNING the effect or impact, if any, of
6  GOOGLE'S AdWords program on the market share of PERFECT 10 in any of the
7  markets in which it claims to compete, including but not limited to the market for
8  print magazines generally, for adult-oriented magazines, for websites generally, for
9  adult-oriented websites, for licensing of downloads of IMAGES for cell phones
10 generally, and for licensing of downloads of adult-oriented IMAGES for cell
11 phones.

12 **RESPONSE TO REQUEST 169:**

13     Perfect 10 objects to this request on the basis that Google has substantial data
14 relating to this request that it has refused to produce to Perfect 10, including but not
15 limited to the number of searches on Perfect 10 models, the number of clicks on
16 Perfect 10 copyrighted images, and the number of downloads of Perfect 10 images
17 on sites using Google Analytics software, and on cell phones. Perfect 10 cannot
18 fully respond to this request without that data. Perfect 10 also objects to this request
19 as being overly broad and unnecessarily burdensome, and being duplicative of
20 previous requests by Google. Perfect 10 objects to this request to the extent that it
21 seeks documents subject to the attorney-client privilege or work product doctrine.
22 Subject to, and without waiving the foregoing objections and general objections,
23 Perfect 10 has produced and/or will produce all non-privileged and non-work
24 product responsive documents that can be found upon a reasonable search.

25 **REQUEST FOR PRODUCTION NO. 170:**

26     All DOCUMENTS CONCERNING the effect or impact, if any, of
27 GOOGLE'S AdSense program on the market share of PERFECT 10 in any of the
28 markets in which it claims to compete, including but not limited to the market for

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1 print magazines generally, for adult-oriented magazines, for websites generally, for
2 adult-oriented websites, for licensing of downloads of IMAGES for cell phones
3 generally, and for licensing of downloads of adult-oriented IMAGES for cell
4 phones.

5 **RESPONSE TO REQUEST 170:**

6       Perfect 10 objects to this request on the basis that Google has substantial data
7 relating to this request that it has refused to produce to Perfect 10, including but not
8 limited to the number of searches on Perfect 10 models, the number of clicks on
9 Perfect 10 copyrighted images, and the number of downloads of Perfect 10 images
10 on sites using Google Analytics software, and on cell phones. Perfect 10 cannot
11 fully respond to this request without that data. Perfect 10 also objects to this request
12 as being overly broad and unnecessarily burdensome, and being duplicative of
13 previous requests by Google. Perfect 10 objects to this request to the extent that it
14 seeks documents subject to the attorney-client privilege or work product doctrine.
15 Subject to, and without waiving the foregoing objections and general objections,
16 Perfect 10 has produced and/or will produce all non-privileged and non-work
17 product responsive documents that can be found upon a reasonable search.

18 **REQUEST FOR PRODUCTION NO. 171:**

19       All DOCUMENTS CONCERNING PERFECT 10's strategic marketing and
20 advertising plans for the actual or potential sale, delivery, distribution or licensing
21 for sale, of any and all of PERFECT 10's products or services.

22 **RESPONSE TO REQUEST 171:**

23       Perfect 10 objects to this request as being vague, ambiguous, and unclear;
24 overly broad; and seeking information which is not relevant to the claims or
25 defenses in this action. Perfect 10 objects to this request to the extent that it seeks
26 documents subject to the attorney-client privilege or work product doctrine. Subject
27 to, and without waiving the foregoing objections and general objections, Perfect 10
28 is not aware of any written documents in its possession or control which are

1  "strategic marketing and advertising plans for the actual or potential sale, delivery,
2  distribution or licensing for sale, of any and all of PERFECT 10's products or
3  services."

4  **REQUEST FOR PRODUCTION NO. 173:**

5      All DOCUMENTS CONCERNING any contemplated or proposed
6  transaction in which PERFECT 10 would invest in, give money to, buy, make a loan
7  to, fund or take any financial ownership interest in any PERSON.

8  **RESPONSE TO REQUEST 173:**

9      Perfect 10 objects to this request as being vague, ambiguous, and unclear.
10  Perfect 10 objects to this request as being overly broad and unnecessarily
11  burdensome, and seeking information which is not relevant to the claims or defenses
12  in this action. Perfect 10 objects to this request to the extent that it seeks documents
13  subject to the attorney-client privilege or work product doctrine. Subject to, and
14  without waiving the foregoing objections and general objections, Perfect 10 has
15  produced and/or will produce all non-privileged and non-work product responsive
16  documents that can be found upon a reasonable search.

17  **REQUEST FOR PRODUCTION NO. 174:**

18      All DOCUMENTS CONCERNING any transaction in which PERFECT 10
19  did invest in, give money to, buy, make a loan to, fund or take any financial
20  ownership interest in any PERSON.

21  **RESPONSE TO REQUEST 174:**

22      Perfect 10 objects to this request as being vague, ambiguous, and unclear.
23  Perfect 10 objects to this request as being overly broad and unnecessarily
24  burdensome, and seeking information which is not relevant to the claims or defenses
25  in this action. Perfect 10 objects to this request to the extent that it seeks documents
26  subject to the attorney-client privilege or work product doctrine. Subject to, and
27  without waiving the foregoing objections and general objections, Perfect 10 has

28

1 produced and/or will produce all non-privileged and non-work product responsive
2 documents that can be found upon a reasonable search.
3 **REQUEST FOR PRODUCTION NO. 175:**
4     All DOCUMENTS CONCERNING the sale, delivery, distribution, licensing,
5 or other transfer of ownership of PERFECT 10's ALLEGED COPYRIGHTED
6 MATERIALS.
7 **RESPONSE TO REQUEST 175:**
8     Perfect 10 objects to this request as being overly broad and unnecessarily
9 burdensome, vague and ambiguous, and being duplicative of previous requests by
10 Google. Perfect 10 objects to this request to the extent that it seeks documents
11 subject to the attorney-client privilege or work product doctrine. Subject to, and
12 without waiving the foregoing objections and general objections, Perfect 10 has
13 produced and/or will produce all non-privileged and non-work product responsive
14 documents that can be found upon a reasonable search.
15 **REQUEST FOR PRODUCTION NO. 176:**
16     All DOCUMENTS CONCERNING any studies or analyses of PERFECT
17 10's actual, estimated or projected profits and losses from the sale, delivery,
18 distribution or licensing for sale, delivery or distribution of its ALLEGED
19 COPYRIGHTED MATERIALS.
20 **RESPONSE TO REQUEST 176:**
21     Perfect 10 objects to this request as being overly broad and unnecessarily
22 burdensome, vague and ambiguous, and seeking information which is not relevant
23 to the claims or defenses in this action. Perfect 10 also objects to this request as
24 being duplicative of previous requests by Google. Perfect 10 objects to this request
25 to the extent that it seeks documents subject to the attorney-client privilege or work
26 product doctrine. Subject to, and without waiving the foregoing objections and
27 general objections, Perfect 10 has produced and/or will produce all non-privileged
28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]
JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1 and non-work product responsive documents that can be found upon a reasonable
2 search.

3 **REQUEST FOR PRODUCTION NO. 177:**

4     All DOCUMENTS CONCERNING the value of YOUR ALLEGED
5 COPYRIGHTED MATERIALS, including, without limitation, any financial
6 statements (detailed, consolidated or otherwise).

7 **RESPONSE TO REQUEST 177:**

8     Perfect 10 objects to this request on the basis that Google has substantial data
9 relating to this request that it has refused to produce to Perfect 10, including but not
10 limited to the number of searches on Perfect 10 models, the number of clicks on
11 Perfect 10 copyrighted images, and the number of downloads of Perfect 10 images
12 on sites using Google Analytics software, and on cell phones. Perfect 10 cannot
13 fully respond to this request without that data. Perfect 10 also objects to this request
14 as being overly broad and unnecessarily burdensome, and being duplicative of
15 previous requests by Google. Perfect 10 objects to this request to the extent that it
16 seeks documents subject to the attorney-client privilege or work product doctrine.
17 Subject to, and without waiving the foregoing objections and general objections,
18 Perfect 10 has produced and/or will produce all non-privileged and non-work
19 product responsive documents that can be found upon a reasonable search.

20 **REQUEST FOR PRODUCTION NO. 179:**

21     All DOCUMENTS (including but not limited to royalty statements) that
22 reflect revenue earned by YOU as a result of the use, display, transfer, license or
23 sale (on the Internet or through any media) of YOUR ALLEGED COPYRIGHTED
24 MATERIALS.

25 **RESPONSE TO REQUEST 179:**

26     Perfect 10 objects to this request as being overly broad and unnecessarily
27 burdensome, and seeking information which is not relevant to the claims or defenses
28 in this action. Perfect 10 also objects to this request as being duplicative of previous

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

1 requests by Google. Perfect 10 objects to this request to the extent that it seeks
2 documents subject to the attorney-client privilege or work product doctrine. Subject
3 to, and without waiving the foregoing objections and general objections, Perfect 10
4 has produced and/or will produce all non-privileged and non-work product
5 responsive documents that can be found upon a reasonable search.

6 **REQUEST FOR PRODUCTION NO. 181:**

7       All DOCUMENTS CONCERNING YOUR efforts to promote or increase
8 revenues generated by perfect10.com.

9 **RESPONSE TO REQUEST 181:**

10       Perfect 10 objects to this request as being incredibly broad and unnecessarily
11 burdensome, and seeking information which is not relevant to the claims or defenses
12 in this action. Perfect 10 also objects to this request as being partially duplicative of
13 previous requests by Google. Perfect 10 has already produced a large number of
14 documents responsive to this request. Perfect 10 objects to this request to the extent
15 that it seeks documents subject to the attorney-client privilege or work product
16 doctrine. Perfect 10 will produce documents that it intends to rely on at trial to show
17 its efforts to promote or increase revenues generated by perfect10.com.

18 **REQUEST FOR PRODUCTION NO. 182:**

19       All DOCUMENTS CONCERNING YOUR efforts to increase paid
20 memberships in perfect10.com.

21 **RESPONSE TO REQUEST 182:**

22       Perfect 10 objects to this request as being incredibly broad and unnecessarily
23 burdensome, and seeking information which is not relevant to the claims or defenses
24 in this action. Perfect 10 also objects to this request as being partially duplicative of
25 previous requests by Google. Perfect 10 objects to this request to the extent that it
26 seeks documents subject to the attorney-client privilege or work product doctrine.
27 Perfect 10 will produce documents that it intends to rely on at trial to show its
28 efforts to increase paid memberships in perfect10.com.

**B.** **Google's Position**

**1.** **Google Is Entitled To Unredacted Financial Records**

Perfect 10 has professed that it is seeking actual damages (including lost profits) from Google's alleged conduct as well as statutory damages. It also purports to dispute that Google's alleged uses are fair use under the Copyright Act and, in particular, claims that Google's reproduction of thumbnail images in its search engine has harmed Perfect 10's market for its alleged images. Perfect 10 nevertheless has refused to produce complete, unredacted financial records that are directly relevant to these issues. The Google requests at issue seek, for example, documents sufficient to identify Perfect 10's profits from each of its products and services, by year and by the most disaggregate level available, Perfect 10's financial records and Perfect 10's documents concerning the purported value of the copyrighted materials Google is accused of infringing. Indeed, the requests seek documents squarely relating to the allegations in Perfect 10's own Amended Complaint. Thus, Request No. 108 asks for documents "reflecting or evidencing the fact alleged in paragraph 17 of the amended complaint that the described infringement is 'devastating to' and 'threatens' the existence of your business, including all documents with financial data demonstrating this effect."

Without this information, Google cannot obtain the complete and accurate picture of Perfect 10's financial situation it needs in order to assess Perfect 10's claims of actual damages, to establish its fair use defense or even to defend against the allegations in Perfect 10's own complaint.[2] Perfect 10 should be ordered to

---

[2] When Google initially sought Perfect 10's financial records, Perfect 10 refused to produce any such documents, and withdrew its claims for actual damages in an attempt to avoid any argument that its financial situation was relevant to this case. Kassabian Decl., at Ex. B (Perfect 10's Responses to Google's First Set of Requests for Production, stating that "Perfect 10 is not seeking to recover its actual damages" in response to 27 separate Requests). When Google informed Perfect 10 (footnote continued)

produce complete documents responsive to Google's requests. See, e.g., Fryer v. Brown, 2005 WL 1677940, at *6 (W.D. Wash. 2005) (when "[p]laintiff seeks monetary damages ... all information related to the financial and sales data of plaintiff's company is relevant"); South Suburban Housing Center v. Berry, 186 F.3d 851, 855 (7th Cir. 1999) (holding that district court abused its discretion in relying on incomplete financial statements and partial tax returns to ascertain party's financial condition); Los Angeles News Service v. Reuters Television Int'l., Ltd., 942 F. Supp. 1275, 1282 (C.D. Cal. 1996) ("the determination of statutory damages within the applicable limits may turn upon such factors as ... the revenues lost by the plaintiff[] as a result of the defendant's conduct"), *rev'd in part on other grounds*, 149 F.3d 987 (9th Cir. 1998).

Moreover, even when Perfect 10 has produced financial documents, it has heavily redacted them in most instances on varying and unspecified grounds of "irrelevance," "privacy," and/or "confidentiality." These redactions are improper. It is well-established that tax returns are not privileged under federal law. See St. Regis Paper Co. v. United States, 368 U.S. 208, 218-219 (1961) ("[A]lthough tax returns ... are made confidential within the government bureau, copies in the hands of the taxpayer are held subject to discovery.") (citations omitted). Further, the Protective Order allows Perfect 10 to designate such records as confidential, thus obviating any plausible privacy or confidentiality concern. In re Heritage Bond Litigation, 2004 WL 1970058 at *5, n.12 (C.D. Cal. 2004); A. Farber and Partners,

---

that its financial records were still relevant to its claims for trademark infringement, rights of publicity violations, and statutory damages under the Copyright Act, Perfect 10 then purported to withdraw its waiver of actual damages. Kassabian Decl., at Ex. C (Perfect 10's Amended Responses to Google's First Set of Requests for Production, excluding this statement). Because Google would be entitled to discovery regarding Perfect 10's financial condition regardless of whether it has
        (footnote continued)

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

Inc. v. Garber, 234 F.R.D. 186, 191-92 (C.D. Cal. 2006). Indeed, Perfect 10 has *already designated* its financial documents as "Confidential" and/or "Highly Confidential" under the Protective Order in this case. If Perfect 10 intends to maintain its claims of infringement and for damages, it should be compelled to produce documents regarding its financial condition, in complete and unredacted form.

Rule 34 requires production of all relevant and responsive documents in the party's possession, custody, or control. Fed. R. Civ. P. 34(a). Moreover, Perfect 10 was obligated to preserve documents in anticipation of litigation.[3] Despite these rules, Perfect 10 has impermissibly withheld important and responsive financial documents related to the evidence of damages, if any, Perfect 10 has suffered as a result of Google's alleged conduct.

As Google identified during the meet and confers,[4] the deficiencies in Perfect 10's production of financial documents are readily apparent from the face of the smattering of documents it did selectively produce. First, while the only financial

waived its claims for actual damages under the Copyright Act, Google does not address Perfect 10's potential waiver of those claims here.

[3] See, e.g., A. Farber and Partners, Inc., 234 F.R.D. at 193-94 ("There is no doubt that a litigant has a duty to preserve evidence it knows or should know is relevant to imminent litigation [and] and a court may sanction a party who destroys or fails to preserve relevant evidence.") (citing Creative Computing v. Getloaded.com LLC, 386 F.3d 930, 936-37 (9th Cir. 2004) and Medical Lab. Mgmt. Consultants v. American Broad. Cos., Inc., 306 F.3d 806, 824 (9th Cir. 2002)). See also Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo. 2007) ("The court has inherent power to impose sanctions for the destruction or loss of evidence."); Sampson v. City of Cambridge, Md., 251 F.R.D. 172, 179 (D. Md. 2008) ("The duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation.").

[4] See Kassabian Decl. ¶ 51, and at Exs. GG, HH, and II (Letters to J. Mausner dated January 29, 2008, March 18, 2008, and August 28, 2008).

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]
JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

reports Perfect 10 has produced to Google are certain monthly financial statements, Perfect 10 has refused to produce -- or explain its reasons for not producing -- over four years' worth of these monthly financial reports. Second, many of the reports (and tax returns) that Perfect 10 has produced are substantially redacted based on improper claims of irrelevance and confidentiality -- claims that are directly contradicted by its claim for monetary damages and the terms of the Protective Order in this case. Third, the financial statements that Perfect 10 has produced are summaries of Perfect 10's financial condition, necessarily based on other financial documents that Google must have to assess Perfect 10's claimed damages. Perfect 10 has no basis for withholding these source documents. Perfect 10 should be compelled to produce complete and unredacted copies of its tax returns, monthly financial statements and other supporting documents related to the information summarized in those monthly financial statements.

### 2. Perfect 10 Has Failed To Produce Financial Reports Covering Many Months

Perfect 10's production of financial documents consists of select monthly financial statements dating back to 1997. However, there are at least 51 such monthly financial statements that are still missing from Perfect 10's production. See Kassabian Decl. ¶ 51, and at Exs. HH & II. Specifically, Perfect 10 has produced no monthly financial statements for the following months:

| 1997 | January, February, March, April, May, June, July, September and October |
|------|------|
| 1998 | November |
| 1999 | April, May, June, July, August, September, October and November |
| 2000 | January, February, April, May, June, July, August, September, October, November and December |
| 2001 | January, February, March, April and May |

| 2002 | February, June, July, August and October |
|------|------------------------------------------|
| 2003 | June and August |
| 2004 | March and April |
| 2005 | February |
| 2006 | January and February |
| 2007 | February, May, June, August, October and November |
| 2008 | January, February, March, April, May, June, July, September, October |

During the meet and confer process, Perfect 10 refused to confirm whether it has these missing financial statements in its possession, and if not, what happened to them. These are obviously critical issues. For example, if Perfect 10 destroyed the financial records just prior to or during this litigation, then Google is entitled to pursue spoliation sanctions against Perfect 10, and to ask the Court to strike Perfect 10's claims of infringement and/or for damages (to the extent Perfect 10 has not waived them already). Perfect 10 should be ordered to produce these documents without further delay, or to submit a sworn affidavit explaining what happened to these documents, and why it was not able to locate and produce these documents that clearly existed at one point in time. See Buchanan, 206 F.R.D. 123, 125 (D. Md. 2002); Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co., 576 F.Supp. 511, 512 (W.D. Pa. 1983); Fed. R. Civ. P. 34(a).

### 3. Perfect 10's Production Contains Improper Redactions

Many of the financial statements and tax returns that Perfect 10 did produce are heavily redacted, rendering them useless in assessing Perfect 10's financial condition. For instance, Perfect 10 has redacted categories of information highly relevant to Perfect 10's claims of damages, ██████████████████

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1 ████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████

3 ███████████████████████ Kassabian Decl., Ex. JJ (Examples of Perfect

4 10's redacted financial statements and tax returns).

5      Perfect 10 has also redacted various line items and portions of its financial

6 statements in a way that makes it impossible to tell what type of information was

7 redacted. For example████████████████████████████████████████

8 ████████████████████████████████████████████████████

9 ████████████████████████████

10

11

12

13

14

15 Id. Perfect 10's further redaction of the ███████████████ renders this particular

16 statement essentially useless.

17      Perfect 10 claims that the redacted financial information is somehow

18 "irrelevant" to this case. Even when Perfect 10 was disclaiming its intention to seek

19 any actual damages, this was a dubious objection. See, e.g., Los Angeles News

20 Service, 942 F. Supp. at 1282. That information was still relevant to fair use and

21 statutory damages, among other issues. Now that Perfect 10 has purported to

22 withdraw that waiver and reinstate its purported claim for actual damages, this

23 objection borders on the frivolous. See, e.g., Fryer, 2005 WL 1677940, at *6.

24 Perfect 10 cannot seek actual damages yet simultaneously refuse to provide Google

25 with basic financial records that will either support or refute those claims. Google

26 cannot possibly evaluate the alleged impact Google's alleged conduct had on Perfect

27 10's financial condition if Perfect 10 won't even disclose such basic financial

28

1  information as its income, liabilities and assets. <u>See</u> <u>South Suburban Housing</u>
2  <u>Center</u>, 186 F.3d at 855. Perfect 10's relevance objection should be overruled.

3      During the meet and confer process, Perfect 10 asserted for the first time a
4  privacy objection to producing the redacted financial information. Perfect 10 failed
5  to timely assert this objection in its written responses, and expressly agreed to
6  produce responsive documents. (Perfect 10's Responses to Google's Requests for
7  Production Nos. 81, 87, 94, 95, 104, 105, 108-112, 162, 165-171, 173-177, 179 and
8  181-182). Thus, Perfect 10 has waived its purported objection. <u>See</u> <u>Richmark Corp.</u>
9  <u>v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well
10  established that a failure to object to discovery requests within the time required
11  constitutes a waiver of any objection.").

12      Even were the court to consider this untimely objection, however, it lacks
13  merit. First, in general, federal law does not recognize a right to privacy that entitles
14  a party to withhold documents. <u>See</u> <u>Humphreys v. Regents of Univ. of Cal.</u>, 2006
15  WL 335275, at *1 (N.D. Cal. 2006) (under <u>Federal Rule of Evidence</u> 501, "federal
16  law determines the evidentiary privileges that apply," and "there is no federal analog
17  to the California privacy rights that [defendant] seeks to invoke"); <u>see</u> <u>Hahn v. Star</u>
18  <u>Bank</u>, 190 F.3d 708, 714-15 (6th Cir. 1999) ("the Constitution does not encompass a
19  general right to nondisclosure of private information").[5]     Under federal law,
20  moreover, "[t]he party asserting an evidentiary privilege has the burden to
21  demonstrate that the privilege applies to the information in question." <u>Tornay v.</u>
22

23      [5] California state privilege law does not apply here and thus any attempt by
24  Perfect 10 to rely upon it would be unavailing. "[T]he law of California, the forum
25  state, does not inform federal privilege law." <u>Jackson v. County of Sacramento</u>, 175
   F.R.D. 653, 654 (E.D. Cal. 1997); <u>see</u> <u>In re Yassai</u>, 225 B.R. 478, 483 (C.D. Cal.
26  1998) ("assuming that a state constitution creates a right to privacy in financial
27  records, such state privilege does not preclude discovery of bank records in a federal
   suit.") (citation omitted).
28

United States, 840 F.2d 1424, 1426 (9th Cir. 1988). Perfect 10 cannot meet that burden here. Corporations do not have the type of privacy rights Perfect 10 purports to assert. Such rights belong to individuals, not business entities. See United States v. Morton Salt Co., 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy ...."). As discussed above, tax returns in particular are not privileged under federal law, St. Regis Paper Co., 368 U.S. at 218-219, and even when federal courts consider privacy concerns, such concerns do not preclude production unless they outweigh the "relevance of the discovery." Humphreys, 2006 WL 335275, at *1. They do not do so here, especially given Perfect 10's alleged claim for lost profits.

Second, the Protective Order provides more than adequate protection to satisfy any privacy or confidentiality concerns Perfect 10 may have regarding its financial documents. In re Heritage Bond Litigation, 2004 WL 1970058, at *5, n.12 (granting motion to compel production of defendant's financial records because "[a]ny privacy concerns . . . defendants have in their bank records and related financial statements are adequately protected by the protective order, and are not sufficient to prevent production in this matter"); A. Farber and Partners, Inc., 234 F.R.D. at 191-92 ("plaintiff's need for defendant Garber's financial documents outweighs defendant Garber's claim of privacy, especially when the 'impact' of the disclosure of the information can be protected by a 'carefully drafted' protective order"); Gohler v. Wood, 162 F.R.D. 691, 697 (D. Utah 1995) ("Because the protective order limits disclosure of confidential material to those who are necessarily involved in the case, and these parties may use this information only for purposes of litigating this case, excluding any business purpose, the court concludes Deloitte's confidentiality concerns have been addressed adequately."). Because a Protective Order is already in place, Perfect 10 should be ordered to produce the redacted information in its financial documents. See Kansas Food Packers v. Corpak, 2000 WL 33170870, at *1 n.4 (D. Kan. Oct, 12, 2000) (ordering production

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1  of redacted material in financial statements when there was a "protective order ... in
2  place which protect confidential client information in th[e] case").

3      Likewise, Perfect 10 has belatedly objected that some unspecified redactions
4  relate to litigation settlements it has entered into in other cases and that it is thus
5  prohibited from producing financial records which might reflect the amount of the
6  settlements. Again, this objection was not timely made and is thus waived. (Perfect
7  10's Responses to Google's Requests for Production Nos. 81, 87, 94, 95, 104, 105,
8  108-112, 162, 165-171, 173-177, 179 and 181-182). Regardless, the Protective
9  Order adequately protects whatever confidentiality interest exists in this material.
10  See Kansas Food Packers, 2000 WL 33170870, n. 4; In re Heritage Bond Litigation,
11  2004 WL 1970058, at *5, n.12; A. Farber and Partners, Inc., 234 F.R.D. at 191-92.
12  The Court should compel Perfect 10 to produce complete and unredacted financial
13  statements, subject to the protective order in the case.

14              **4.    Perfect 10 Has Not Produced Other Categories Of Basic**
15                      **Financial Information**

16      Perfect 10 should be ordered to produce all of its responsive financial records,
17  not just the highly selective and incomplete monthly summaries it has produced to
18  date. Summary financial documents fail to give a complete picture of Perfect 10's
19  financial condition at the relevant times. See Fryer, 2005 WL 1677940, at *6. That
20  is especially true where, as here, Perfect 10's monthly financial reports were not
21  prepared subject to generally accepted accounting principles and thus appear to omit
22  critical financial information necessary for an objective evaluation of Perfect 10's
23  financial condition. See Kassabian Decl., at Ex. JJ ████████████████

24  ████████████████████████████████████████████████
25  ████████████████████████████████████████████████
26  ████████████████████████████████████████████████
27  ████████████████████████████████████████████████
28  ████████████████████████████████████

Case No. CV 04-9484 AHM (SHx) [Consolidated
                                           with Case No. CV 05-4753 AHM (SHx)]
                     JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1  Also improper is Perfect 10's suggestions that it may produce only documents
2  "that it intends to rely on at trial to show its efforts to promote or increase revenues
3  generated by perfect10.com." (Perfect 10's Response to Google's Requests for
4  Production Nos. 181 and 182). If Perfect 10 indeed intends to withdraw its waiver
5  of claims for actual damages and press such claims against Google, Perfect 10 must
6  provide to Google in discovery the type of detailed financial records relevant to such
7  claims. It should be ordered to do so now.

8  **C.  Perfect 10's Position**

9  The entire motion is improper because Google has refused to follow the limits
10 on discovery delineated by Judge Matz at the October 6, 2008 hearing. Instead of
11 respecting and adhering to those limits, Google has taken an opposite tact. Even
12 before the stay on discovery lifted, Google immediately continued its barrage of
13 discovery. Google is attempting to tie-up every lose end it has neglected for the past
14 three years, and make myriad new demands.

15 Google is abusing the discovery process. Since the October 6, 2008 hearing,
16 Google has inundated Perfect 10 with discovery requests, both formal and informal.
17 In addition, Google filed an almost 500-page Joint Stipulation (Perfect 10
18 contributed about 10 pages), served this 100-plus page Joint Stipulation, and has
19 threatened to imminently file numerous other motions to compel. Google's litany of
20 discovery requests is antithetical to this Court's recent orders and directives and the
21 goals and methodology in them. Instead of engaging in necessary, circumscribed
22 discovery, Google is manufacturing new disputes and dusting-off old discovery
23 disputes.

24 Judge Matz specifically directed the parties to engage in "circumscribed"
25 discovery and to use a sampling approach. The Court set "objectives -- i.e.,
26 summary judgment and settlement readiness -- [to be achieved] without 'going the
27
28

1 distance' via full-fledged, uncircumscribed discovery." (Kincaid Decl., ¶2, Exh. 1,
2 September 25, 2008 Order, p. 2.)

3 At the hearing on October 6, 2008, Google's lead counsel, Michael Zeller,
4 argued that the Court should not use this approach, and the Court disagreed.

5 The Court: "Okay. **But what I am trying to accomplish, Mr. Zeller, is to**
6 **get you the discovery that is essential and no more, not different kinds of**
7 **discovery.** Now not to preclude you from it, not to say that at no time would
8 you have the chance to compel and to get a judge to agree that Perfect 10
9 should be compelled to provide other discovery, but at the current time and
10 under this very perhaps innovative – I've come up with the idea myself. I'm
11 not sure that it has ever been done elsewhere, but maybe it has.

12 **At this stage, that's all you're going to be confined to. You are not going**
13 **to be able to seek other stuff, and Perfect 10 is not going to be compelled**
14 **to give it, and whatever they think they need from you for the first stage**
15 **is all – once I'm satisfied that they have a right to it for the first stage,**
16 **that's all they can get.**

17 _**What's so bad about that?**_
18 (See, e.g., Kincaid Decl., ¶3, Exh. 2; Transcript of 10/06/08 hearing, p. 18, ll. 4 –
19 20; emphasis added.)

20 In fact, the Court indicated a willingness to put a complete stay on
21 discovery. (Kincaid Decl., ¶3, Exh. 2; Transcript of 10/06/08 hearing, p. 38, ll. 7 -
22 19.)

23 The Court's September 25, 2008 Order requires focused discovery with "the
24 goal" of preparing the cases for summary judgment/settlement talks. The Order
25 contemplates that the parties will undertake discovery work in an orderly procession
26 -- (1) identification of the copyrighted works; (2) figuring out what goes in the
27 spreadsheet; (3) figuring out a proper sample; and (4) preparing a spreadsheet -- to
28

1 achieve "the goal." Discovery will be limited/primarily focused on the copyrighted
2 works specified in the spreadsheet. Discovery will be based on a sampling method.
3 ("The parties in all these cases somehow succumbed to the all-too-frequent tendency
4 of litigants and lawyers to get side tracked." (Kincaid Decl., ¶2, Exh. 1;
5 September 25, 2008 Order, p. 1.)) The Court's goal is "to ready these cases for Rule
6 56 determinations or for meaningful settlement talks." (Id., pp. 1 -2.) Discovery
7 and case assessment will be "based on a sample of the key pertinent facts." The
8 purpose of the conference is to achieve the objectives of summary
9 judgment/settlement readiness "without 'going the distance' via full-fledged,
10 uncircumscribed discovery." (Id., p. 2.) The Court Order contemplates charts "*but
11 only for a selected and relatively small sample of copyrighted works*." (Id., p. 4;
12 emphasis in the original.) The Court Order states that "After the entries have been
13 made in the spreadsheet, the Court will either limit the discovery to the Perfect 10
14 Copyrighted Works specified in the spreadsheet or require that discovery be
15 primarily focused on those works." (Id., p. 5.)

16 Perfect 10 will now address Google's motion, if this Court should decide to
17 consider it.

18 *The only "financial documents" issue remaining is redaction*, even though
19 Google tries to make a mountain out of nothing. Perfect 10 redacted limited,
20 irrelevant, private, and/or highly confidential information from certain financial
21 documents.

22 Google does not inform this Court that it previously brought a motion to
23 compel financial documents, and this Court ruled that Perfect 10 was only required
24 to produce summary financial documents. Thereafter, Perfect 10 produced far more
25 than summary financial documents in reliance on an agreement it entered into with
26 Google. Thus, Perfect 10 is more than in full compliance with this Court's ruling on
27 this already litigated issue.

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]
JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1    After this Court ruled that Perfect 10 was only required to produce summary
2    financial documents, Perfect 10 and Google entered into an agreement that Perfect
3    10 would provide various financial documents and Google would agree that Perfect
4    10 had not waived its right to sue for actual damages. In reliance on that agreement,
5    Perfect 10 produced highly confidential financial documents. Now, Google is
6    seeking to have it both ways – Google gets financial documents that are only
7    relevant to the issue of actual damages, and Google still will not unequivocally
8    admit that there was no waiver.

9    At a barebones minimum, Google should not be allowed to proceed with this
10   completely unnecessary motion unless it at least agrees to live up to its part of the
11   bargain.

12   Google also misrepresents the scope of the dispute over "financial
13   documents." This issue solely relates to the issue of actual damages – the position
14   *Google* took during the meet and confer process. In fact, Google describes the
15   dispute as "Perfect 10's deficient production of documents related to actual
16   damages." (Kincaid Decl., ¶4, Exh. 3; email to Valerie Kincaid from Thomas
17   Nolan, dated October 17, 2008.)

18   Next, Google misrepresents that Perfect 10 has failed to produce financial
19   documents covering "many months." During the meet and confer process, Perfect
20   10 repeatedly told Google that records don't exist for certain months, and Google
21   has misrepresented that Perfect 10 instead has the records, but refuses to produce
22   them.

23   Finally, Google argues that Perfect 10 should be required to produce various
24   unidentified documents that will provide Google with a complete picture of Perfect
25   10's financial condition. Google refuses to accept that Perfect 10 is not a publicly
26   traded company and thus cannot provide it with the type of financial documents it
27   wants – they simply don't exist.

28

1.  **Google's Motion Is Premature With Respect To Certain**
    **Requests.**

The parties never completed the meet and confer process regarding the document request nos. 162, 165, 166, 167, 168, 169, 170 – 177, 179, 181 and 182, and thus Google's motion to compel with respect to those requests should be denied on that ground alone. Google sent a meet and confer letter on October 24, 2008, and counsel spoke telephonically on November 6, 2008. During that telephonic conference, Perfect 10's counsel said that it would respond to all of Google's inquiries after December 8, 2008 – the hearing date on Perfect 10's summary judgment motion against various Amazon defendants. The parties only substantively met and conferred regarding request nos. 190 and 191. Ms. Herrick Kassabian misrepresents in her declaration that on "November 6, 2008 (by telephone), counsel for Google and counsel for Perfect 10 met and conferred regarding Perfect 10's deficient responses to Google's 6th and 7th Sets of Requests for Production. Among other issues, the parties discussed Perfect 10's improper objections to these responses." (Herrick Kassabian Decl., ¶60.) Ms. Herrick Kassabian was not present at the telephonic meet and confer and the parties did not discuss Perfect 10's responses except as noted above. In fact, Google sent a letter on April 23, 2009 seeking to meet and confer regarding the sixth and seventh sets of document requests. (Kincaid Decl., ¶5.)

2.  **Google Has Omitted From Its Papers The Entire Prior**
    **Dispute Over Financial Documents; This Court's Ruling On**
    **That Dispute; And The Parties' Subsequent Agreement**
    **Regarding Actual Damages And Financial Documents.**

Google does not inform this Court that it previously brought a motion to compel financial documents, and this Court ruled on that motion. (Kincaid Decl., ¶6, Exh.5; Order Regarding Google Inc.'s Motion to Compel Production of Documents and Responses to Interrogatories, signed May 19, 2006.) Google

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1  brought a motion to compel Perfect 10 to produce the documents responsive to
2  document requests 33, 38, and 71, and this Court ordered Perfect 10 to "produce
3  summary financial documents" showing "annual expenditures on advertising and
4  marketing activities ... concerning the marks PERFECT 10 and
5  PERFECT10.COM" (request no. 33), "annual revenues and expenses relating to its
6  use of the marks PERFECT10 and PERFECT10.COM" (no. 38), and "damages or
7  harm [Perfect 10] claims to have suffered, or to be likely to suffer, as a result of
8  Google's alleged infringements and violations ...." (No. 71.)

9      In order to relitigate the issue of financial documents, Google asserts it is
10 moving to compel Perfect 10 to produce documents responsive to requests that have
11 nothing to do with financial documents (for example, no. 104, "[a]ll documents
12 reflecting or evidencing the fact alleged in paragraph 11 of the amended complaint
13 that your Web site receives approximately 100,000 unique visitors per month,
14 including all documents concerning how you determine that a visitor is unique"),
15 documents that duplicate requests already ruled upon (for example, no. 105, "All
16 documents reflecting or evidencing the fact alleged in paragraph 14 of the amended
17 complaint that you have spent millions of dollars advertising and promoting your
18 marks and your products and services, and all documents showing the amounts you
19 earmarked or spent to advertise and promote marks and the amounts you earmarked
20 or spent to advertise and promote products and services"), and Google's recently
21 served requests for financial documents so it can disingenuously claim it is not
22 relitigating the issue of financial documents. As set forth above, Google has not
23 even met and conferred regarding the recent requests. (Document request nos. 162,
24 165, 166, 167, 168, 169, 170 – 177, 179, 181 and 182.)

25     After this Court's ruling on the issue of financial documents, Perfect 10 and
26 Google entered into an agreement that Google would waive its claim that Perfect 10
27 had waived actual damages if Perfect 10 would agree to withdraw objections to
28 various document requests (to the extent it had not done so already), and produce

-36-   Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

various documents. Perfect 10 accepted this agreement. ("In summary, Perfect 10 accepts the second alternative offered in your letter, to withdraw its objections to these 27 document requests to the extent it has not already done so (other than privilege and work product) and produce documents which have not already been produced, in return for Google dropping its claim that Perfect 10 waived actual damages." Kincaid Decl., ¶7, Exh. 6; email to Rachel Herrick from Jeff Mausner, dated January 29, 2008.)

Perfect 10 then produced documents pursuant to the agreement. "Hi Rachel and Tom. Pursuant to Rachel Herrick's letter of January 29 and our agreement that Google will not claim that Perfect 10 waived actual damages upon production of documents, attached are Perfect 10 financial statements." (Kincaid Decl., ¶8, Exh. 7; emails to Rachel Herrick and Thomas Nolan from Jeff Mausner, dated March 3, 2008.)

Then immediately after Perfect 10 produced financial documents, Google reneged on the agreement. ("What are you referring to? We have never made such an agreement." Kincaid Decl., ¶9, Exh.8; email to Jeff Mausner from Rachel Herrick, dated March 3, 2008.)

Despite Google's attempt to renege on the agreement, Perfect 10 has acted in accordance with it. The request to compel financial documents is entirely premature until Google agrees to comply with the agreement.

### 3. Perfect 10 Has Not Failed To Produce Financial Reports Covering Any Months.

Perfect 10 cannot produce what it does not have. Perfect 10 repeatedly told Google that it does not have the reports at issue, but that was not sufficient for Google.

An excerpt from correspondence to Google's counsel, addressing this issue, sums up this dispute:

1                 Google seeks information beyond what is required by the FRCP, and

2                 has no persuasive authority for its request. ***Perfect 10 has produced***

3                 ***the documents it has.*** If Google has follow-up questions, it needs to

4                 ask them properly. Document discovery has limitations. Google has

5                 lots of questions it wants to ask about the documents; Google needs to

6                 figure out some type of appropriate discovery method for doing so.

7                 Perfect 10 has tried repeatedly to go beyond the call of duty and that

8                 has resulted in no return favors and repeated accusations of waiver and

9                 the like. I asked you if Google would submit to a follow-up call and

10               answer questions regarding what it has and has not produced -- you

11               said no.

12 (Kincaid Decl., ¶10, Exh.9; email to Thomas Nolan from Valerie Kincaid, dated

13 November 5, 2008; emphasis added.)

14      Thus, Google is incorrect when it states that "[d]uring the meet and confer

15 process, Perfect 10 refused to confirm whether it has these missing financial

16 statements in its possession...." (Joint Stipulation, supra.) Perfect 10 has

17 unequivocally stated that it does not have additional responsive documents, and

18 under the federal rules, Perfect 10 is not required to do more. Perfect 10 is not

19 required to provide a declaration stating "what happened to them." State court, not

20 federal court, requires that a party state in its response what has happened to

21 documents that don't exist. If Google wants both sides to comply with the state

22 court requirements, then Perfect 10 will do so.

23      In Ms. Herrick Kassabian's declaration she repeatedly refers to these financial

24 documents as "summary financial reports." (Herrick Kassabian Decl., ¶ 51.) These

25 are not summary financial statements. Google has continuously insisted that Perfect

26 10 should produce the type of financial statements a publicly traded company is

27 required to generate. Perfect 10 is not a publicly traded company and does not have

28 such documents.

### 4. Perfect 10's Redactions Are Not Improper.

Perfect 10 has produced the documents that it has, and *has even gone so far as to produce tax returns.* The documents that Perfect 10 has produced provide all the detail needed for Perfect 10 to establish its damages, which are currently in the $55 million range.

Perfect 10 does not intend to seek damages relating to certain expenses and so entries related to those expenses are redacted. The expenses that have not been redacted are those that Perfect 10 may seek damages for. So there is no reason for Perfect 10 to unredact items that it will not be seeking damages for, none of which was even ordered by the Court.

Certain redactions relate to multiple confidential settlement agreements entered into between Perfect 10 and third parties. Thus, it is necessary to redact various entries such as "Net Ordinary Income," "Net Income," "Total Income," "other Revenues," "fixed assets," from some of the financial statements or Perfect 10 would reveal the amount of the confidential settlements.

Google claims that Perfect 10 somehow belatedly raised the confidentiality objection without explaining how it was belated. Perfect 10 cannot disclose confidential settlements in other litigations, and Google is fully aware of this. Paragraph 25 of the Protective Order in this action provides that: "In the event that information in the possession or control of a person or entity involves the confidentiality rights of a non-party or its disclosure would violate a protective order issued in another action, the party with possession or control of the information will promptly attempt to obtain the consent of the non-party to disclose the information under the Order. If the consent of the non-party is refused ... the party will promptly thereafter notify the party seeking discovery... of: (a) the existence and description (to the extent disclosable) of the information without producing such information and; (b) the identity of the nonparty .... The party seeking discovery may then make further application to the non-party or seek an order to compel

discovery." (Protective Order, docketed December 29, 2005, ¶25.) *At Google's behest*, Perfect 10 spent numerous hours obtaining all of the information specified in Paragraph 25, and sent it two detailed letters (dated November 4 & 7, 2008) with all of the requested information. After insisting that Perfect 10 immediately devote numerous hours to attempt to obtain confidentiality waivers, Google conveniently ignores that none of the defendants in those unrelated actions is willing to waive confidentiality. Thus, the redactions are proper.

## II. ISSUE NO. 2: SHOULD PERFECT 10 BE COMPELLED TO PRODUCE DOCUMENTS RELATING TO PERFECT10.COM?

### A. The Requests At Issue (Document Requests Nos. 98-102, 154, 157, 162, 163, 181-182 and 189).

**REQUEST NO. 98:**

All documents concerning the total number of visits to each of your Web pages each year.

**RESPONSE TO REQUEST NO. 98:**

Perfect 10 objects to this request as being vague and ambiguous, overbroad, and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine. Subject to, and without waving the foregoing objections and general objections, Perfect 10 will provide log files to perfect10.com that may be located upon a reasonable search, as well as sign-up information from the third-party processor for perfect10.com.

**REQUEST NO. 99:**

All documents concerning the number or frequency of visits to each of your Web pages by customers who have paid a fee to enter the site.

**RESPONSE TO REQUEST NO. 99:**

Perfect 10 objects to this request as being vague and ambiguous, overbroad, and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also

1 objects to this request to the extent that it seeks documents protected by the
2 attorney-client privilege or work product doctrine. Subject to, and without waving
3 the foregoing objections and general objections, Perfect 10 will provide log files to
4 perfect10.com that may be located upon a reasonable search, as well as sign-up
5 information from the third-party processor for perfect10.com.

6 **REQUEST NO. 100:**

7 All documents concerning the number or frequency of visits to each of your
8 Web pages by customers who have not paid a fee to enter the site.

9 **RESPONSE TO REQUEST NO. 100:**

10 Perfect 10 objects to this request as being vague and ambiguous, overbroad,
11 and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also
12 objects to this request to the extent that it seeks documents protected by the
13 attorney-client privilege or work product doctrine. Subject to, and without waving
14 the foregoing objections and general objections, Perfect 10 will provide log files to
15 perfect10.com that may be located upon a reasonable search, as well as sign-up
16 information from the third-party processor for perfect10.com.

17 **REQUEST NO. 101:**

18 All documents concerning the rate at which visitors to each of your Web
19 pages eventually become paying customers.

20 **RESPONSE TO REQUEST NO. 101:**

21 Perfect 10 objects to this request as being vague and ambiguous, overbroad,
22 and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also
23 objects to this request to the extent that it seeks documents protected by the
24 attorney-client privilege or work product doctrine. Subject to, and without waving
25 the foregoing objections and general objections, Perfect 10 will provide log files to
26 perfect10.com that may be located upon a reasonable search, as well as sign-up
27 information from the third-party processor for perfect10.com.

28

**REQUEST NO. 102:**

All documents concerning how consumers reached each of your Web pages or how consumers became aware of your Web pages and all documents identifying such sources for consumers to reach your Web pages.

**RESPONSE TO REQUEST NO. 102:**

Perfect 10 objects to this request as being vague and ambiguous, overbroad, and unduly burdensome, and because it seeks irrelevant information. Perfect 10 also objects to this request to the extent that it seeks documents protected by the attorney-client privilege or work product doctrine. Subject to, and without waving the foregoing objections and general objections, Perfect 10 will provide log files to perfect10.com that may be located upon a reasonable search, as well as sign-up information from the third-party processor for perfect10.com.

**REQUEST NO. 154:**

All documents concerning your detection of, or countermeasures relating to, unauthorized use of passwords to gain access to your websites or computer networks.

**RESPONSE TO REQUEST NO. 154:**

Perfect 10 objects to this request as being overly broad and unnecessarily burdensome, and seeking information which is not relevant to the claims or defenses in this action. Perfect 10 further objects to this Request to the extent it calls for matters protected under the attorney-client privilege and/or work product doctrine. Subject to, and without waiving the foregoing objections and general objections, Perfect 10 has produced server logs and other evidence of unauthorized downloads and will continue to provide such information. Most of this material was included in Perfect 10's April 18, 2006 production, in the folders, "passwords Google," "passwords reports," and "server logs." Perfect 10 will produce additional non-privileged documents it is able to locate upon a reasonable search.

1 **REQUEST NO. 157:**

2     All documents concerning the unauthorized use of passwords to gain access

3 to your websites or computer networks.

4 **RESPONSE TO REQUEST NO. 157:**

5     Perfect 10 objects to this request as being overly broad and unnecessarily

6 burdensome, and seeking information which is not relevant to the claims or defenses

7 in this action. Perfect 10 further objects to this Request to the extent it calls for

8 material protected by attorney-client privilege or work product doctrine. Subject to,

9 and without waiving the foregoing objections and general objections, Perfect 10 has

10 produced server logs and other evidence of unauthorized downloads and will

11 continue to provide such information. Most of this material was included in

12 Perfect 10's April 18, 2006 production, in the folders, "passwords Google,"

13 "passwords reports," and "server logs." Perfect 10 will produce additional non-

14 privileged documents it is able to locate upon a reasonable search.

15 **REQUEST FOR PRODUCTION NO. 162:**

16     All DOCUMENTS CONCERNING any benefit to PERFECT 10 resulting

17 from any conduct or action by GOOGLE.

18 **RESPONSE TO REQUEST 162:**

19     Perfect 10 objects to this request as being overly broad and unnecessarily

20 burdensome, and seeking information which is not relevant to the claims or defenses

21 in this action. Perfect 10 also objects to this request as being duplicative of previous

22 requests by Google. Perfect 10 objects to this request to the extent that it seeks

23 documents subject to the attorney-client privilege or work product doctrine. Subject

24 to, and without waiving the foregoing objections and general objections, Perfect 10

25 has been providing Google with copies of its server logs and documents showing

26 listings of perfect10.com and other affiliates in Google search results. These are the

27 only non-privileged or non-work product documents that Perfect 10 is aware of that

28 could be responsive to this request, but should Perfect 10 come across others, it will

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

1  produce them. By producing these documents, Perfect 10 does not concede that it
2  has received any benefit at all from the conduct or action by GOOGLE. In fact,
3  GOOGLE's infringement of Perfect 10's property is a major cause of Perfect 10's
4  losses.

5  **REQUEST FOR PRODUCTION NO. 163:**

6        All DOCUMENTS CONCERNING web traffic from google.com to
7  perfect10.com.

8  **RESPONSE TO REQUEST 163:**

9        Perfect 10 objects to this request as being overly broad and unnecessarily
10  burdensome, and seeking information which is not relevant to the claims or defenses
11  in this action. Perfect 10 also objects to this request as being duplicative of previous
12  requests by Google. Perfect 10 objects to this request to the extent that it seeks
13  documents subject to the attorney-client privilege or work product doctrine. Subject
14  to, and without waiving the foregoing objections and general objections, Perfect 10
15  has been providing Google with copies of its server logs and documents showing
16  listings of perfect10.com and other affiliates in Google search results. These are the
17  only non-privileged or non-work product documents that Perfect 10 is aware of that
18  are responsive to this request, but should Perfect 10 come across others, it will
19  produce them.

20  **REQUEST FOR PRODUCTION NO. 181:**

21        All DOCUMENTS CONCERNING YOUR efforts to promote or increase
22  revenues generated by perfect10.com.

23  **RESPONSE TO REQUEST 181:**

24        Perfect 10 objects to this request as being incredibly broad and unnecessarily
25  burdensome, and seeking information which is not relevant to the claims or defenses
26  in this action. Perfect 10 also objects to this request as being partially duplicative of
27  previous requests by Google. Perfect 10 has already produced a large number of
28  documents responsive to this request. Perfect 10 objects to this request to the extent

1 that it seeks documents subject to the attorney-client privilege or work product

2 doctrine. Perfect 10 will produce documents that it intends to rely on at trial to show

3 its efforts to promote or increase revenues generated by perfect10.com.

4 **REQUEST FOR PRODUCTION NO. 182:**

5      All DOCUMENTS CONCERNING YOUR efforts to increase paid

6 memberships in perfect10.com.

7 **RESPONSE TO REQUEST 182:**

8      Perfect 10 objects to this request as being incredibly broad and unnecessarily

9 burdensome, and seeking information which is not relevant to the claims or defenses

10 in this action. Perfect 10 also objects to this request as being partially duplicative of

11 previous requests by Google. Perfect 10 objects to this request to the extent that it

12 seeks documents subject to the attorney-client privilege or work product doctrine.

13 Perfect 10 will produce documents that it intends to rely on at trial to show its

14 efforts to increase paid memberships in perfect10.com.

15 **REQUEST FOR PRODUCTION NO. 189:**

16      All DOCUMENTS CONCERNING YOUR efforts to mitigate YOUR alleged

17 damages (if any) in this action.

18 **RESPONSE TO REQUEST 189:**

19      Perfect 10 objects to this request as being incredibly broad and unnecessarily

20 burdensome, involving privileged documents, and seeking information which is not

21 relevant to the claims or defenses in this action. Perfect 10 also objects to this

22 request as being duplicative of previous requests by Google. Perfect 10 objects to

23 this request to the extent that it seeks documents subject to the attorney-client

24 privilege or work product doctrine. Subject to, and without waiving the foregoing

25 objections and general objections, Perfect 10 has produced and/or will produce all

26 non-privileged and non-work product responsive documents that can be found upon

27 a reasonable search.

28

1   **B.   Google's Position**

2           **1.   Perfect 10 Should Be Required To Produce Documents**

3                   **Relating To Third-Party Access To Perfect 10's Websites.**

4           Documents regarding third parties' access to Perfect 10's websites are

5   relevant to numerous issues in this case. For example, Perfect 10 claims that Google

6   is secondarily liable for the alleged copyright infringement by third parties who

7   accessed Perfect 10's website using usernames and passwords allegedly located

8   using Google Web Search.   See Kassabian Decl., at Ex. MM (Perfect 10's

9   [Proposed] Second Amended Complaint, at 12 (Docket No. 303-2)).[6] Google has

10  also alleged in its counterclaims that Perfect 10 has derived substantial benefits from

11  the traffic to its website by virtue of its inclusion in Google's search index. See

12  Kassabian Decl., at Ex. PP (Google's Answer to Second Amended Complaint and

13  Counterclaims, at 27-28 (Docket No. 324)). Finally, traffic and access to Perfect

14  10's websites (whether authorized or unauthorized) are relevant to Perfect 10's

15  claims for actual and statutory damages.   Google has a right to discover all

16  documents relevant to these issues and claims. See Fed. R. Civ. P. 34(a).

17          Google is aware of at least four additional categories of relevant documents

18  relating to its Internet operations that Perfect 10 has failed to produce, in part or in

19  full, as set forth below.   Additionally, in response to Google's Requests for

20

21  _____

22      [6]   As the Ninth Circuit made clear in the appeal of Perfect 10's motion for a

23  preliminary injunction, before a court can "examine Perfect 10's claims that Google
    is secondarily liable, Perfect 10 must establish that there has been direct

24  infringement by third parties." Perfect 10, Inc. v. Amazon.com, Inc. 508 F.3d 1146,

25  1169 (9th Cir. 2007). Thus, to prevail on its claim, Perfect 10 must present evidence
    that third parties have used usernames and passwords located through Google Web

26  Search to download Perfect 10 copyrighted images from perfect10.com. See id. at

27  1173 n.13 (refusing to address Perfect 10's claims of secondary liability based on
    Google's linking to web pages with passwords in the absence that "users logging

28      (footnote continued)

Production Nos. 181 and 182—seeking documents relating to Perfect 10's "efforts to promote or increase revenues generated by perfect10.com"—Perfect 10 has taken the position that need only produce the "documents that it intends to rely on at trial to show its efforts to promote or increase revenues generated by perfect10.com." (Perfect 10's Responses to Google's Requests for Production Nos. 181 and 182). Perfect 10's position is inconsistent with the <u>Federal Rules,</u> which require the production of relevant, responsive documents, *regardless* of whether Perfect 10 is going to rely on them at trial. <u>See</u> <u>Fed. R. Civ. P.</u> 26 and 34. Clearly, Perfect 10 cannot limit its production of documents responsive to Google's requests to those which it believes support its case while simultaneously refusing to produce documents that refute its claims. Perfect 10 should be ordered to produce documents regarding traffic to perfect10.com that Google has requested.

## 2. Perfect 10 Has Produced Incomplete Server Logs

Perfect 10 has produced what appear to be partial logs of the activity on the web server(s) for the perfect10.com site during the years 2003, 2005, 2006, 2007 and part of 2008. Kassabian Decl. ¶ 52. Perfect 10 has refused to provide the remaining server logs in its possession, for the pre-2003 time period and for the years 2004 and 2008 (from at least May onward). <u>Id.</u> Perfect 10 should be ordered to produce all server logs in the possession, custody, or control of Perfect 10, its employees, and its agents. Alternatively, if Perfect 10 instead claims that it cannot locate these missing server log documents, it should be ordered to submit an affidavit describing its document preservation efforts and searches for responsive documents. <u>See</u> <u>Buchanan</u>, 206 F.R.D. at 125.

onto the Perfect 10 site with unauthorized passwords infringed Perfect 10's exclusive rights under section 106").

1
2

### 3. Perfect 10 Has Produced Incomplete Password Usage Reports

3    Password usage reports reflect the number of times various passwords were
4   used to access Perfect 10's website(s). These reports are relevant to, among other
5   things, Perfect 10's purported claim for damages, and its claim that Google is
6   responsible for third parties' alleged unauthorized access of Perfect 10's website(s)
7   using passwords allegedly located using Google Web Search. Perfect 10 has
8   produced select "password reports" covering the periods January 16, 2002 through
9   December 16, 2002, January 8, 2003 through August 5, 2003, all of 2004, and all of
10  2005. Kassabian Decl. ¶ 53. However, Perfect 10 has failed to provide Google the
11  password usage reports from any other periods. Id.

12    Perfect 10 has claimed in meet and confer discussions that it could not locate
13  these missing password usage reports despite a reasonable search, but Perfect 10
14  clearly has other password usage reports that it has refused to produce. Specifically,
15  Perfect 10's president Norman Zada submitted samples of reports from other time
16  periods with his declaration in support of Perfect 10's motion for summary
17  judgment against Amazon and Alexa. See Kassabian Decl., at Ex. LL (Declaration
18  of Norman Zada at Exs. 15-16, Case No. 05-cv-4753 AHM (SHx), Docket No. 177).
19  Perfect 10 cannot legitimately ignore Google's requests and then provide these
20  documents only when it serves Perfect 10's own interests in moving for summary
21  judgment. The Federal Rules are designed to avoid this type of sandbagging.
22  Perfect 10 should be ordered to produce its responsive password usage reports
23  without further delay.

24    Additionally, some of the documents labeled as "password reports" in Perfect
25  10's production are undecipherable. For instance, Perfect 10 has produced two text
26  files titled "f83.txt" and "f83_all.txt" in the "password reports" folder on Perfect
27  10's hard drive produced April 2006. These documents appear to be massive
28  listings of various perfect10.com usernames with no discernable order or context.

1  Kassabian Decl., ¶ 53. Perfect 10 has also produced a number of .gif and .html files
2  that appear to contain tables, graphs, and charts of perfect10.com web server
3  statistics, but these documents have no legends, keys, or explanation of the images,
4  rendering them incomprehensible. Id. During meet and confer efforts, Google
5  asked Perfect 10 whether these documents were responsive to Google's Requests for
6  Production Nos. 98-102 since they were included in the "password reports" folder.
7  Id. Google also asked Perfect 10 to explain how these documents are organized, if
8  at all. Id. Perfect 10 has refused to answer either question.

9      Perfect 10's production of these indecipherable documents is unacceptable. A
10  "part must produce documents as they are kept in the usual course of business" and
11  "in a reasonably usable form." Fed. R. Civ. P. 34(b)(2)(E)(i) & (ii). Perfect 10
12  should be ordered to produce whatever keys, legends or software that might
13  accompany these reports, to confirm whether Perfect 10 has produced these
14  documents in the manner in which they are kept in its usual course of business, and
15  to re-produce them in proper format as necessary.

16           **4.    Perfect 10 Has Refused to Produce the Software Program**
17                  **Used to Analyze Server Log Data for Certain Password-**
18                  **Related Activities by perfect10.com Users**

19      During a February 22, 2008 telephonic meet and confer conference regarding
20  Perfect 10's deficient production with respect to the above-referenced Requests for
21  Production, Perfect 10 agreed to produce the software program that Perfect 10 uses
22  to understand its server logs for certain password-related activities by perfect10.com
23  users. Kassabian Decl. ¶ 54. Perfect 10 later reneged on its agreement to produce
24  the program, on the grounds that the program is supposedly irrelevant, a trade secret
25  and privileged attorney work product. Id. Because these objections were not made
26  in Perfect 10's written responses, they are waived. See Perfect 10's Responses to
27  Google's Requests for Production Nos. 98-102, 154, 157, 162, 163, 181-182 and
28  189; Richmark Corp., 959 F.2d at 1473.

1    The objections are not only waived, but baseless for several reasons. First,
2  Perfect 10 has articulated no basis for its belated work product objection. More
3  specifically, Perfect 10 has not confirmed that the program was prepared at the
4  direction of counsel in anticipation of litigation. Nor can it. A software program
5  routinely used by Perfect 10 employees to monitor the use of perfect10.com
6  usernames and passwords by perfect10.com users is not attorney work product or
7  otherwise privileged. The qualified privilege extends only to documents which
8  reveal an attorney's thoughts, strategies, or evaluations of claims and defenses. It
9  does not apply to documents (or in this case software) prepared and used in the
10  ordinary course of business, no matter how useful they might be in litigation.
11  United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998). Moreover, Perfect 10
12  has waived any claim of work product or other privilege with respect to this
13  program by producing the password reports that the program helped Perfect 10 to
14  generate, and relying on those reports in court filings. See Kassabian Decl., at Ex.
15  LL (Declaration of Norman Zada at Exs. 15-16, Case No. 05-cv-4753 AHM (SHx)
16  (Docket No. 177)); United States v. Nobles, 422 U.S. 225, 239-240 n.14 (1975)
17  (holding that party had waived work-product privilege with respect to documents by
18  making a "testimonial use of those materials").

19    Second, Perfect 10's belated objection that the program is a trade secret fails,
20  too. Even assuming the program is a trade secret (which it is not), the Protective
21  Order expressly covers trade secrets and will protect this program from public
22  disclosure. See Kassabian Decl., at Ex. S (Protective Order, at 3-4 (Docket No.
23  94)); Kansas Food Packers, 2000 WL 33170870, n. 4; In re Heritage Bond
24  Litigation, 2004 WL 1970058, at *5, n.12; A. Farber and Partners, Inc., 234 F.R.D.
25  at 191-92. This is not a proper basis for refusing to produce the program.

26    Third, there can be no serious dispute that the program Perfect 10 employees
27  use to search for and detect the alleged unauthorized use of perfect10.com
28  usernames and passwords is relevant to this case, including, for example, Perfect

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

10's secondary infringement claims.  As long as Perfect 10 continues to assert claims that Google is secondarily liable for unauthorized access to Perfect 10's websites using passwords found in Web Search and continues to seek damages, Perfect 10 is required to produce documents relevant to those claims.  See Fed. R. Civ. P. 34(a).  Perfect 10 should be compelled to produce this software program.

### 5. Perfect 10 Should Be Compelled To Produce Documents Regarding The Third-Party Processor For Perfect10.com

In response to Google's Requests for Production Nos. 98-102, Perfect 10 stated that it would "provide … sign-up information from the third-party processor for perfect10.com."  These documents are relevant to, among other things, Perfect 10's purported claim for damages, and more specifically, its claim that its subscriber base has been eroded due to Google's alleged conduct.  Google has been unable to locate this "sign-up information" or any documents regarding "the third-party processor for perfect10.com" in Perfect 10's production.  Kassabian Decl. ¶ 55. Despite Google's requests during meet and confer, Perfect 10 has refused to confirm whether or not it produced these documents, much less inform Google where these documents might be located in Perfect 10's 600GB production.  Id.  Perfect 10's apparent failure to produce even the responsive documents it specifically identified in its written responses suggests that there might be additional responsive documents that Perfect 10 has failed to produce.

Perfect 10 should be ordered to produce all documents responsive to Google's Requests for Production Nos. 98, 99, 100, 101, 102, 154, and 157, including but not limited to the third-party processor documents.

### C. Perfect 10's Position

Once again, Google's motion is completely unreasonable and premature. ***Perfect 10 has produced every document it could find upon a reasonable search, including server logs and password reports.***  If there are any gaps in server logs, it is because Perfect 10 does not have them.  The same is true for password reports.

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

Perfect has produced much more detailed password reports covering unauthorized password usage from October 27, 2007 in its most recent production. That production took place less than a week after Google served its portion of the joint stipulation. Perfect 10 will continue to produce such reports periodically as they become available. Google was fully aware that Perfect 10 was making another document production. Moreover, during the meet and confer process Google never complained about "missing" password reports. The f83 report that Google is referring to is a report generated by Paycom, Perfect 10's credit card processor.

### 1. Google's Motion To Compel Regarding Certain Requests Is Premature.

The parties never completed the meet and confer process regarding document request nos. 162, 163, 181, 182, and 189, and thus Google's motion to compel with respect to these requests should be denied on that ground alone. Google sent a meet and confer letter on October 24, 2008, and counsel spoke telephonically on November 6, 2008. During that telephonic conference, Perfect 10's counsel said that it would respond to all of Google's inquiries after December 8, 2008 – the hearing date on Perfect 10's summary judgment motion against various Amazon defendants. The parties only substantively met and conferred regarding request nos. 190 and 191. Ms. Herrick Kassabian misrepresents in her declaration that on "November 6, 2008 (by telephone), counsel for Google and counsel for Perfect 10 met and conferred regarding Perfect 10's deficient responses to Google's 6th and 7th Sets of Requests for Production. Among other issues, the parties discussed Perfect 10's improper objections to these responses." (Herrick Kassabian Decl., ¶ 60.) Ms. Herrick Kassabian was not present at the telephonic meet and confer and the parties did not discuss Perfect 10's responses to the requests at issue. In fact, Google sent a letter on April 23, 2009 seeking to meet and confer regarding the sixth and seventh sets of document requests. (Kincaid Decl., ¶5.)

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

JOINT STIPULATION ON GOOGLE'S MOTION TO COMPEL

## 2. Perfect 10 Has Produced Server Logs And Has Repeatedly Informed Google Of The Same.

Perfect 10 has produced all server logs it could find upon a reasonable search and has repeatedly informed Google of the same. (Kincaid Decl., ¶11, Exh.10; email to Thomas Nolan from Valerie Kincaid, dated October 24, 2008; "Perfect 10 provided what it could find upon a reasonable search." Kincaid Decl., ¶12, Exh.11; email to Thomas Nolan from Valerie Kincaid, dated October 31, 2008; "There is nothing unclear. Perfect 10 is not 'refusing' to produce documents. Perfect 10 produced what it could locate upon a reasonable search.") Google fails to apprise this Court of the same instead leading it to believe that "Perfect 10 has refused to provide the remaining server logs in its possession, for the pre-2003 time period and for the years 2004 and 2008 (from at least May onward)." (Joint Stipulation, supra.) In its April 2006 production, Perfect 10 produced what it could find upon a reasonable search in the way of server logs for the years 2003, 2005, and the first three months of 2006. In its June 2008, production, in a folder labeled "0 0 0 for new production," in a subfolder labeled "server logs 2007 and part of 2008," Perfect 10 produced what it could find upon a reasonable search for its server logs for 2007 and 2008. Perfect 10 has produced what it has been able to locate. Perfect 10 will produce more of its server logs for the later part of 2008 in its next production.

Google requests that this Court order Perfect 10 "to submit an affidavit describing its document preservation efforts and searches for responsive documents." (Joint Stipulation, supra.) This request is baseless. Perfect 10 has fulfilled its obligations under the federal rules; Perfect 10 said that it would produce server logs and it has produced those it could locate upon a reasonable search. Nothing more is required. It should also be noted that Google is going to depose Dr. Zada and it can ask about server logs during the deposition.

## 3. Perfect 10 Has Produced Password Usage Reports.