JEFFREY N. MAUSNER (State Bar No. 122385)
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773

Attorneys for Plaintiff Perfect 10, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive<br><br>            Defendants.<br><br>———————————————<br><br>AND CONSOLIDATED CASE | Case No. CV 04-9484 AHM (SHx)<br>[Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>DISCOVERY MOTION<br><br>DECLARATION OF VALERIE KINCAID IN SUPPORT OF PERFECT 10'S PORTIONS OF THE JOINT STIPULATION RE GOOGLE INC.'S MOTION TO COMPEL PERFECT 10 TO (1) PRODUCE DOCUMENTS, (2) TO COMPLY WITH PROTECTIVE ORDER, AND (3) TO AFFIX DOCUMENT CONTROL NUMBERS TO ITS DOCUMENT PRODUCTION<br><br>Date: June 1, 2009<br>Time: 2:00pm<br>Place: Courtroom of Judge Hillman<br><br>Discovery Cut-Off Date: None set<br>Pretrial Conference Date: None set<br>Trial Date: None set |

## DECLARATION OF VALERIE KINCAID

I, Valerie Kincaid, declare as follows:

1.      I am a member of the State Bar of California and admitted to practice before this Court.  I am an attorney for the Law Offices of Jeffrey Mausner, which is counsel for Plaintiff Perfect 10, Inc. ("Perfect 10") in this action.  All of the matters stated herein are of my own personal knowledge, except where otherwise stated, and if called as a witness, I could and would testify competently thereto.  I make this declaration in support of Perfect 10's portions of the Joint Stipulation re Google Inc.'s Motion to Compel Perfect 10 to (1) Produce Documents, (2) to Comply with Protective Order, and (3) to Affix Document Control Numbers to its Document Production.

2.      Attached hereto as Exhibit 1 is a copy of the Order entered on September 25, 2008.

3.      Attached hereto as Exhibit 2 is a copy of the relevant pages of the transcript of the hearing conducted on October 6, 2008.

4.      Attached hereto as Exhibit 3 is a copy of the email to me from Thomas Nolan, Google's counsel, dated October 17, 2008.

5.      Google sent a meet and confer letter on October 24, 2008 regarding Perfect 10's response to Google's sixth and seventh sets of document requests, and counsel spoke telephonically on November 6, 2008.  During that telephonic conference, Perfect 10's counsel said that it would respond to all of Google's inquiries after December 8, 2008 – the hearing date on Perfect 10's summary judgment motion against various Amazon defendants.  The parties only substantively met and conferred regarding request nos. 190 and 191.  Ms. Herrick misrepresents in her declaration that on "November 6, 2008 (by telephone), counsel for Google and counsel for Perfect 10 met and conferred regarding Perfect 10's deficient responses to Google's 6[th] and 7[th] Sets of Requests for Production. Among other issues, the parties discussed Perfect 10's improper objections to these

responses." (Herrick Decl., ¶ 60.) Ms. Herrick was not present at the telephonic meet and confer and I answered questions regarding Perfect 10's objections, but virtually everything other issue was deferred. In fact, Google sent a letter on April 23, 2009 seeking to meet and confer regarding the sixth and seventh sets of document requests. Attached hereto as Exhibit 4 is a copy of the letter to Jeffrey Mausner from Rachel Herrick Kassabian, dated April 23, 2009.

6. Attached hereto as Exhibit 5 is a copy of the Order Regarding Google Inc.'s Motion to Compel Production of Documents and Responses to Interrogatories, signed May 19, 2006.

7. Attached hereto as Exhibit 6 is a copy of the email to Rachel Herrick from Jeffrey Mausner, dated January 29, 2008.

8. Attached hereto as Exhibit 7 is a copy of emails to Rachel Herrick and Thomas Nolan from Jeffrey Mausner, dated March 3, 2008.

9. Attached hereto as Exhibit 8 is a copy of the email to Jeffrey Mausner from Rachel Herrick, dated March 3, 2008.

10. Attached hereto as Exhibit 9 is a copy of the email to Thomas Nolan from Valerie Kincaid, dated November 5, 2008.

11. Attached hereto as Exhibit 10 is a copy of the email to Thomas Nolan from Valerie Kincaid, dated October 24, 2008.

12. Attached hereto as Exhibit 11 is a copy of the email to Thomas Nolan from Valerie Kincaid, dated October 31, 2008.

13. Attached hereto as Exhibit 12 is a copy of the email to Valerie Kincaid from Thomas Nolan, dated November 5, 2008.

14. Attached hereto as Exhibit 13 is a copy of the e-mail to Valerie Kincaid from Thomas Nolan, dated October 10, 2008.

15. Attached hereto as Exhibit 14 is a copy of the e-mail to Valerie Kincaid from Thomas Nolan, dated November 3, 2008.

16.     Attached hereto as Exhibit 15 are the following: (1) email to Dr. Zada from Google, dated November 5, 2004; (2) an email to Alexander Macgillivray from Dr. Zada, dated January 27, 2006; (3) email to Google from Dr. Zada, dated May 2, 2007, and (4) Chilling Effects publication, dated April 24, 2007.

17.     Attached hereto as Exhibit 16 is a copy of the email to Thomas Nolan from Valerie Kincaid, dated October 17, 2008.

18.     Attached hereto as Exhibit 17 is a copy of the relevant pages of the transcript of the scheduling conference conducted on August 18, 2008.

19.     Attached hereto as Exhibit 18 is a copy of the e-mail to Thomas Nolan from Jeff Mausner, dated August 8, 2008.

20.     Attached hereto as Exhibit 19 is a copy of the e-mail to Thomas Nolan and Rachel Herrick from Valerie Kincaid, dated September 15, 2008.

21.     Attached hereto as Exhibit 20 is a copy of the e-mail to Thomas Nolan from Valerie Kincaid, dated September 16, 2008.

22.     Attached hereto as Exhibit 21 is a copy of the e-mail to Valerie Kincaid from Thomas Nolan, dated September 16, 2008.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 4, 2009, at Los Angeles, California.

_____
Valerie Kincaid

-4-

Exhibit 1

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| | CV 05-4753 AHM (SHx) | | |
| | CV 07-5156 AHM (SHx) | | |

| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* |
|---|---|
| | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* |
| | PERFECT 10, INC. v. MICROSOFT CORPORATION |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:                    Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

The Court has considered the parties' responses to the Court's minute order dated August 20, 2008 concerning discovery disputes and the appointment of a discovery master. The Court has also considered the parties' contentions and concerns regarding a variety of issues arising from the August 18, 2008 scheduling conference and the August 27, 2008 telephonic conference, including the setting of trial dates for the *Google* and *Amazon* cases. The Court does not intend to appoint either a technical advisor or a discovery master at this time.

The parties in all these cases somehow have succumbed to the all-too-frequent tendency of litigants and lawyers to get sidetracked. That is particularly regrettable in lawsuits, such as these, that are complicated, technology-driven and potentially far-reaching.[1] For the Court to manage these cases in a standard fashion, such as to treat the pending discovery motions as if they were commonplace disputes, would not advance the goal of enabling the parties either to ready these cases for Rule 56 determinations or for

---

[1] There are other considerations that compound the difficulties. Plaintiff's counsel, for example, often complains about the supposedly unfair burdens that the Goliath-like defendants subject him to. And perhaps he is right that in certain respects their strategy may be to overwhelm him. Yet Perfect 10 may have invited those problems with its sweeping claims and its own conduct in the course of discovery.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

meaningful settlement talks.[2]

Given the foregoing problems, as well as the enormous, ever-expanding number of the copyrighted images that Perfect 10 claims were infringed, it is necessary and appropriate for the Court to manage these cases differently. Therefore, in the exercise of its inherent and statutory authority to administer the rules of discovery in a manner that will "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court intends to require the parties to negotiate in good faith a method or approach that will enable them to assess the strengths and weaknesses of their respective overall "cases" and contentions based on a sample of the key pertinent facts. In other words, the parties will take an approach comparable to that of a recognized, impartial expert who uses surveys and statistical analyses to project the extent (if any) of customer satisfaction with a product or, in the trademark context, the extent of confusion among consumers as to the source or origin of goods. From the information that the parties obtain, exchange and organize, they should be able to extrapolate reliable conclusions as to where they think they can go, or want to go, from there.

Accordingly, the Court has determined that a further conference with counsel in all three cases is necessary. Accordingly, the Court ORDERS the parties in all these cases to appear for a status conference on October 6, 2008 at 1:30 p.m.. The broad purpose of the conference is to explore ways for the parties to achieve the foregoing objectives -- i.e., summary judgment and settlement readiness -- without "going the distance" via full-fledged, uncircumscribed discovery.

At the conference, the Court will invite counsel to address the following preliminary or tentative findings and proposals, which will probably be incorporated into a special Case Management Order that will issue at the same time as the scheduling

---

[2]It is highly improbable that there will be a trial in any of these cases. That is so obvious that it need not be belabored.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| | CV 05-4753 AHM (SHx) | | |
| | CV 07-5156 AHM (SHx) | | |

| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* |
|---|---|
| | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* |
| | PERFECT 10, INC. v. MICROSOFT CORPORATION |

orders for the *Google* and *Amazon* cases.  The following paragraphs are numbered to facilitate discussion.


1.      Perfect 10 will have to identify each "Perfect 10  Copyrighted Work" it claims was infringed by not later than _____.  Thereafter, Perfect 10 will be precluded from seeking damages for the infringement of any work not so identified.  It would, however, be entitled to injunctive relief for works identified later.


2.      In this discovery phase, the focus should be on developing information that enables the parties to assess their positions as to the secondary copyright liability claims that the Ninth Circuit addressed in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169-76 (9th Cir. 2007).  Among the key major factors that should be the focus of their efforts are the following:

     A.    Contributory Liability (see 508 F.3d at 1171-72).
        (1)    What specific infringing material did defendant learn was on or accessible through its "system"?
          (a) When?
          (b) How?
             (i)  If by way of a DMCA notice, what did the notice contain?
             (ii) Was the notice in compliance with section 512?
        (2) At the time defendant learned of the infringing image, what simple, reasonable and feasible measures, if any, did defendant have to avoid providing Internet users access to infringing images? (See 508 F.3d at 1172.) *E.g.*, what changes to its operations could defendant have made to avoid assisting infringing websites?  (See 508 F.3d at 1174-75.)

     B.    Vicarious Liability (see 508 F.3d at 1173-74).
        (1) At the time defendant learned of the infringing image, did defendant have a legal right to stop or limit the directly infringing conduct?
          (a) Did it have the right to terminate websites?
          (b) Did it have the right to block websites' ability to host and serve

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|----------|------|------|------|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

                infringing images?

(2) Did defendant actually decline to exercise that right?

(3) Does defendant have such a legal right currently?

(4) At the time defendant learned of the infringing image, did defendant have the practical ability to stop or limit infringement?

        (a) The ability to determine whether there is infringement, in the absence of targeted DMCA notices?

        (b) The ability to block access to infringing images?

(5) In what manner did defendant derive a direct financial benefit from the directly infringing conduct?  (This inquiry seeks a description; it does *not* require a calculation of claimed damages.)

3.     In light of the large number of copyright registrations and works that Perfect 10 has placed at issue in all three cases, the Court finds that it would be both fair and feasible for Perfect 10 to create a spreadsheet along the lines contemplated by Google's Interrogatories Nos. 3 and 11, A9.com's Interrogatories Nos. 1 and 6, and Microsoft's Interrogatory No. 1 -- *but only for a selected and relatively small sample of copyrighted works.*  Such a limited spreadsheet would reduce or possibly eliminate any requirement that the parties search through all the hard drives and disorganized physical documents that Perfect 10 has provided in discovery thus far.  It also would do much to avoid or reduce further discovery disputes, promote the efficient and timely administration of these lawsuits and provide a framework for settlement.

(a)     Based on the joint stipulations in the parties' pending motions to compel responses to those interrogatories, the Court compiled a chart, attached hereto, that displays the categories of information sought in those interrogatories, as well as the information that Perfect 10 contends it has already produced or will produce.  The Court realizes that not all those interrogatories seek identical pieces of information.  (*E.g.*, Microsoft did not request a list of infringing URLs.)  However, they all basically seek a way to enable the parties to gather and access vital identifying information about the copyrighted work in question.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) CV 05-4753 AHM (SHx) CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

(b)    The precise information required for the spreadsheet remains to be determined.  The Court doubts that all of the disputed categories reflected in the attachment need be included, but at a minimum, it would be necessary to identify the work, the registration number, chain of title information, the URL(s) of infringing websites, and the DMCA notices.  At trial Perfect 10 itself would have to introduce such information anyway, because the fact-finder would need it to determine whether the parties proved their claims (or defenses, as the case may be).  If at trial Perfect 10 sought to prove these facts through charts and summaries, it would have had to provide the underlying evidence for the charts and summaries sometime before trial.  *See* Fed. R. Evid. 1006.  The Court finds that it is "reasonable" to require it to do so at this stage, in discovery.

4.    After the entries have been made in the spreadsheet, the Court will either limit discovery to the Perfect 10 Copyrighted Works specified in the spreadsheet or require that discovery be primarily focused on those works.  In any event, the Court will order the parties to use the spreadsheet entries to extrapolate facts, based on statistically sound methods, as to the remaining works that Perfect 10 has claimed were infringed.  To implement this approach, two issues must be decided.

(a) First, what categories of information should be placed on the spreadsheet?  There are at least two ways to determine this.  The first way is for the parties to agree on what information is so vital that it should be reflected on the spreadsheet.  The second way is for the Court to make that determination.

(b) Second, which *works* will be selected for the sample that is the basis for the spreadsheet? Again, the first way to determine this is for the parties to agree.  The second is to allow Perfect 10 to select the works that will be entered on the spreadsheet, from the potentially thousands it has pointed to thus far, provided that Dr. Zada file a sworn declaration describing the methodology, including any assumptions, Perfect 10 used to select such works.

5.    What will deter Perfect 10 from skewing the designation of works in an effort to

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| | CV 05-4753 AHM (SHx) | | |
| | CV 07-5156 AHM (SHx) | | |
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* | | |
| | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |
| | PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

enlarge or exaggerate the number of infringements and/or damages?  Simply this:
Defendants will be given the opportunity to establish that the spreadsheet entries Perfect
10 chose are not fairly representative of the entire range of works in question.  If they
succeed, the Court likely would order Perfect 10 to develop a spreadsheet for literally
every work it identified as having been infringed, and would preclude it from pursuing
damages for any work not properly incorporated into such spreadsheet.  In other words,
the Court would return the case to conventional forms of "combat."

        At the conference, the Court will also invite counsel to answer the following
questions:

        (a) For one copyrighted work, how much time would it take to enter all the
allegedly infringing URLs onto a spreadsheet?  How much time would it take to enter *all*
the information tallied in the attached chart?

        (b) Assume that the sample discussed above consists of 100 copyrighted works and
that discovery of the facts relevant to the claims and defenses for those works has been
completed.  Looking at those facts in the light most favorable to Perfect 10, assume that
at most Perfect 10 may succeed in proving liability for 50 works.  Would such a
statistical outcome help the parties resolve their dispute?  What if the number were 33 out
of 100?

_____ : _____

Initials of Preparer

_____

**Information Sought by Defendants in Motions to Compel**

| Category | Google[1] | A9.com[2] | Microsoft[3] | Already in Perfect 10's production? |
|---|---|---|---|---|
| Unique identifier of the work | ✓ | ✓ | ✓ | |
| Copyright Registration # | ✓ | ✓ | ✓ | Y |
| Page number of document(s) containing the work | ✓ | ✓ | ✓ (just "exemplar") | |
| URLs of allegedly infringing webpage | ✓ | ✓ | | Y |
| Date of DMCA notice sent | ✓ | | ✓ | Y |
| Damages claimed | ✓ | ✓ | ✓ | |
| Date of and particular conduct constituting the infringing act | | ✓ | | Y |
| Search term and other instructions or events used to cause the infringing display | | ✓ | | |
| Indicate thumbnail or full-size image | | ✓ | | |
| Copyright registrations of compilations or derivative works incorporating the work | | | ✓ | |
| Documents showing chain of title | | | ✓ | Y |
| Date of first publication of the work | | | ✓ | Y |
| Persons depicted | | | ✓ | |

---

[1]Google's Interrogatory No. 11.  See Joint Stipulation Re. Google Inc.'s Motion to Compel Further Responses to Google's Interrogatories Nos. 3 and 11, p. 52.

[2]A9.com's Interrogatories No. 1 and 6.  See Joint Stipulation Re: Defendant A9.com's Motion to Compel Perect 10's Responses to A9.com's First Set of Interrogatories Nos. 1, 2, 4, 5, 6, pp. 7, 41-42.

[3]Microsoft's Interrogatory No. 1.  See Joint Stipulation Re Microsoft's Motion to Compel A Response to Interrogatory No. 1 and To Determine the Sufficiency of Responses to Requests for Admission, pp. 7-8.

Exhibit 2

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3        HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                      - - -

COPY

5
PERFECT 10, INC., A CALIFORNIA     )
6   CORPORATION,                       )
                      PLAINTIFF,     )
7                                      )
            vs.                        ) No. CV04-09484-AHM(SHx)
8   GOOGLE, INC., ET AL.,              )
                      DEFENDANTS.     )
9   _____)
PERFECT 10, INC., A CALIFORNIA     )
10  CORPORATION,                       )
                      PLAINTIFF,     )
11                                     )
            vs.                        ) No. CV05-4753-AHM(SHx)
12  AMAZON.COM, INC., ET AL.,          )
                      DEFENDANTS.     )
13  _____)
PERFECT 10, INC., A CALIFORNIA     )
14  CORPORATION,                       )
                      PLAINTIFF,     )
15                                     )
            vs.                        ) No. CV07-5156-AHM(SHx)
16  MICROSOFT CORPORATION,             )
                      DEFENDANT.      )
17  _____)

18          REPORTER'S TRANSCRIPT OF PROCEEDINGS

19              LOS ANGELES, CALIFORNIA

20              MONDAY, OCTOBER 6, 2008

21

22      _____

23          CINDY L. NIRENBERG, CSR 5059
            U.S. Official Court Reporter
24          312 North Spring Street, #438
            Los Angeles, California 90012
25              www.cindynirenberg.com

1   need, that we have propounded, we have been at meet and confer

2   sessions with Perfect 10 about that we need to have resolved in

3   order to pin that down.

4            THE COURT:  Okay.  But what I am trying to

5   accomplish, Mr. Zeller, is to get you the discovery that is

6   essential and no more, not different kinds of discovery.  Now

7   not to preclude you from it, not to say that at no time would

8   you have the chance to compel and to get a judge to agree that

9   Perfect 10 should be compelled to provide other discovery, but

10  at the current time and under this very perhaps innovative --

11  I've come up with the idea myself.  I'm not sure that it has

12  ever been done elsewhere, but maybe it has.

13           At this stage, that's all you're going to be confined

14  to.  You are not going to be able to seek other stuff, and

15  Perfect 10 is not going to be compelled to give it, and

16  whatever they think they need from you for the first stage is

17  all -- once I'm satisfied that they have a right to it for the

18  first stage, that's all they can get.

19           What's so bad about that?

20           MR. ZELLER:  Well, what I would say -- if I may make

21  a comment, Your Honor, about what it is that Perfect 10 says in

22  its submission, because I do think that there is potentially

23  ways of carving this out.

24           I mean, without obviously waiving -- what our

25  position is is that, you know, we think we ought to just go

1          THE COURT:  Don't lose sight of the point, Mr.

2     Mausner.  I am trying to get you, without being hostile to you

3     at all, to understand what evidence is and what you're going to

4     have to prove at trial.  And that's my premise here.

5          If you are going to have to prove something at trial,

6     you're going to have to prove it on summary judgment, even as

7     to just liability, okay?  So I want to know what it is that's

8     in this category that you don't have to prove to prove

9     contributory liability.

10          MR. MAUSNER:  Well, going back to -- first of all, we

11    are not at trial yet, and it's our position that we can do

12    motions for summary judgment based on sampling in the

13    categories.

14          For example, the question of whether a search engine

15    is liable for linking to a pay site, and the DMCA notice does

16    not contain a URL of the image because there is no such URL to

17    give, if it's sufficient that the DMCA notice contains the URL

18    of the website and copies of the images -- and, you know, when

19    you get to the point that --

20          THE COURT:  You are going to have to specify the page

21    number in your document production where that image appeared,

22    right?

23          MR. MAUSNER:  Well, the images are contained in a

24    subfile for that website, and those are all of the images, all

25    of the -- there are, you know, 19,000 Perfect 10 images on this

1   website.  They are contained in this subfolder, okay, but at

2   this point what we're doing is we're giving maybe two or three

3   examples of images on that website, and the question is simply

4   is the search engine liable for linking to that website and

5   having advertising relationships with them.

6         THE COURT:  That's the ultimate question.

7         So let's just assume it's two or three out of 19,000.

8   Only as to those two or three, tell me what you don't need,

9   because you keep waffling and evading my question.

10        MR. MAUSNER:  Okay.  For our motion, we are attaching

11   copies of the images to it.  I guess that acts at the unique

12   identifier.  The actual image itself is attached.  We are

13   giving the copyright registration number.

14        There is no page number.  We're attaching a copy of

15   the image.

16        The URL that we give is the URL of the website

17   because there is no infringing -- there is no URL of the web

18   page.

19        THE COURT:  Okay.  And you would have to give the URL

20   with every precise component of it, even if it were a hundred

21   digits long, right?

22        MR. MAUSNER:  Well, for pay sites, the only URL is

23   www.giganews.com.

24        THE COURT:  All right.  Keep going, Mr. Mausner.

25        Any item on a free site, for example, or URL, it

1   would be your legal obligation to provide the precise URL?

2           MR. MAUSNER:  Yes.

3           THE COURT:  All right.  Keep going.

4           MR. MAUSNER:  Okay.  At this point, we're not doing

5   anything about damages.  Of course, if we went to trial, we

6   would.  But we may seek actual damages.  We will seek actual

7   damages, you know, and it could be based on overall loss of

8   customers that Perfect 10 experienced rather than having to

9   ascribe damage from the showing of one picture.  I don't know

10  that we could ever do that.

11          THE COURT:  Well, that may be a problem you're going

12  to have to deal with.  I grant you that I'm not thinking about

13  damages right now because I think there is a better way, but if

14  you wanted to show damages because of a loss of customers, you

15  would certainly have to show the date the infringed display

16  occurred, the next item on my list, right?

17          MR. MAUSNER:  Right.

18          THE COURT:  Because you've got to know what the

19  customer base was before and after, right?

20          MR. MAUSNER:  Right.

21          THE COURT:  Okay.  What about the other entries on

22  this information?

23          MR. MAUSNER:  The date of the conduct is set forth on

24  the printout because the printout has the date that it was

25  accessed by Dr. Zeda or someone else and downloaded.

1          THE COURT:  Well, just tell me is there any other

2    item on this page on the information sought by the defendants

3    in motions to compel, the attachment to my order, that in order

4    to establish liability, you just don't have to prove it all?

5          MR. MAUSNER:  I don't think you have to prove the

6    search term.  The thumbnail or full-size images, you may have

7    to prove that under fair use, but that's obvious from the

8    printout itself whether it's a thumbnail or a full size.

9          Copyright registration of compilations or derivative

10   works, now, that may relate to statutory damages.

11         Documents showing chain of title --

12         THE COURT:  Don't you have to prove ownership?

13         MR. MAUSNER:  You are talking about documents showing

14   chain of title?

15         THE COURT:  Well, both.  We talked about copyright

16   registration previously.  That's Item 2 -- or the second.

17         MR. MAUSNER:  Right.

18         THE COURT:  The second on this list.  These are

19   related to that.  If it's a compilation or derivative work, you

20   still have to prove ownership, right?

21         MR. MAUSNER:  Right.  And what we are doing is we are

22   providing the copyright registration certificate, and we are

23   going to have a declaration that says which certificate covers

24   which image.

25         THE COURT:  Okay.  Now, here's the point that I think

1    is becoming pretty clear, I hope.  You started out -- you

2    didn't start out, but you said a few minutes ago -- other

3    than -- I think you said 19,000, or something like that, we're

4    going to give three, okay?  And let's suppose you got before

5    the fact finder -- or, on summary judgment, before me -- all

6    that you needed to to establish that the defendant you were

7    dealing with in that moment contributorily was liable or liable

8    for contributory infringement on those three.  You proved your

9    case, Mr. Mausner.  What would be your position as to the other

10   infringements that may have been part of your document

11   production -- but I really should have said alleged

12   infringements -- that proving the three would entitle you to

13   recover for the 19,000?

14           MR. MAUSNER:  It would establish the principle as to

15   whether there is liability for that category of infringement,

16   and then hopefully --

17           THE COURT:  Well, let's just say --

18           MR. MAUSNER:  -- we would settle.

19           THE COURT:  Let's just say it would prove that there

20   was liability for those three infringements.

21           MR. MAUSNER:  Okay.

22           THE COURT:  Don't think too much about category.

23   Where do you go from there?

24           MR. MAUSNER:  Well, those three infringements are

25   representative of a certain number of other infringements.  The

1    facts are basically the same.

2            THE COURT:  How do we know that unless we do a sample

3    and unless the sample is kosher in the sense that it's devised

4    and implemented in a neutral, fair fashion, either by having a

5    technical advisor appointed who will determine exactly what's

6    in the sample and neither side or any side can object or by

7    having the parties negotiate?  It's clear to me except for the

8    search term and other instructions or events -- and I'll give a

9    chance to one or more defendants to hear about that -- it's

10   pretty clear to me that you acknowledged in our last few

11   minutes of colloquy that all the information sought by the

12   defendants, one or more defendants, is necessary to prove

13   liability.

14           I'm giving you the opportunity to pursue what may or

15   may not prove to be a feasible way to determine what your shot

16   is in proving liability.

17           MR. MAUSNER:  Yes, and thank you.  We very much want

18   to do it that way, by a sampling.

19           We definitely support the idea of doing it by

20   sampling because, you know, what happens is when you have so

21   many infringements, the greater the infringer, the more

22   difficult or even impossible it is -- it becomes for the

23   copyright owner to establish each element of the case for each

24   infringement.

25           THE COURT:  Okay.  Now, in order for the sample to

1    have any potential value or validity, the defendants have to

2    have a right to have the sample include the items or a

3    representative number of items that you have designated, in

4    whatever way you have with your Adobe PDF format or your

5    responses to interrogatories or otherwise, of things that you

6    were just plain off base on.

7          You gave a DMCA notice that was flagrantly defective,

8    and you can't cure it now.  All right?  And they get their 20

9    in there, and I look at 40.  You have your 20.  That defendant

10   has its 20.  And on the ones -- on the overall ones, the 40,

11   you just failed to prove 20, okay?  And you may or may not have

12   proved something about the other 20, but you flatly failed to

13   prove the 20, some defect.  One or more of these items that you

14   would have to prove, you didn't.

15         So getting back to your 19,000, that's already

16   reducing it, right, by 9500 at best?  The sample is the

17   predictor of the total universe?

18         MR. MAUSNER:  It is reducing it somewhat, but I don't

19   think the numbers -- if we go with 20 or 40 DMCA notices, we

20   still may be talking about 40- or 60,000 images that are

21   mentioned in those notices.  And what I would suggest is that

22   it be something like a hundred, and there aren't that many

23   different permutations, at least that I've thought of.  And I'm

24   certainly open to any --

25         THE COURT:  You want a hundred notices with --

1
2
3
4                         CERTIFICATE
5
6       I hereby certify that pursuant to Section 753,
7    Title 28, United States Code, the foregoing is a true and
8    correct transcript of the stenographically reported
9    proceedings held in the above-entitled matter and that the
10   transcript page format is in conformance with the
11   regulations of the Judicial Conference of the United States.
12
13   Date: OCTOBER 8, 2008
14
15                    _Cindy L Nirenberg_
16                    Cindy L. Nirenberg, CSR No. 5059
17
18
19
20
21
22
23
24
25

Exhibit 3

**From:** Thomas Nolan ()
**To:** Valerie Kincaid
**Date:** Friday, October 17, 2008 7:01:18 PM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** RE: Perfect 10, Inc. v. Google Inc.

Valerie,

My email below is an accurate summary of our telephonic meet-and-confer, and of course, I did not say or otherwise suggest that Google "does not compromise." To the contrary, as you yourself identify below, at that meet-and-confer I made two specific and good-faith proposals regarding Perfect 10's improper confidentiality suggestions, both of which Perfect 10 has now rejected.

In light of Perfect 10's refusals to withdraw its improper confidentiality designations, the meet-and-confer process regarding those improper designations is now complete, and Google will proceed with motion practice in due course.

Thank you for clarifying that, under Perfect 10's proposed compromise regarding the charts allegedly responsive to Google's Interrogatory No. 3, Perfect 10 would not object to the charts being publicly e-filed by Google. That clarification does not change the fact that these charts were not properly designated under the Protective Order. In light of the parties' failure to reach agreement on this issue, the meet-and-confer process is completed for that issue as well, and Google will proceed with motion practice in due course.

As I stated in my last email to you, there are four remaining topics which Perfect 10 must address:

a.   Perfect 10's deficient production of documents related to actual damages
b.   Perfect 10's deficient production of documents related to PicScout Inc.
c.   Perfect 10's deficient production of documents related to copyright registration and deposit materials.
d.   Perfect 10's failure to Bates-stamp its document productions.

As I have pointed out in prior emails, all of these issues have been outstanding for months (and in some cases years). Perfect 10 has had plenty of time to ascertain and decide upon its positions regarding these issues. Please comply with the Local Rules and be prepared to discuss all four of these issues during our telephonic meet-and-confer on October 20 at 10:00 am.

Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  thomasnolan@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]

**Sent:** Friday, October 17, 2008 3:55 PM
**To:** Thomas Nolan
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick; Andrea P Roberts
**Subject:** Re: Perfect 10, Inc. v. Google Inc.

Tom,

I stated during our one hour meet and confer that I expected that you would prepare a lengthy, inaccurate and one-sided summary of the meet and confer, and you have. It is not possible to have any type of meaningful dialog when the meet and confers are only conducted to try to extract "admissions;" when such "admissions" are not extracted, you simply make them up; and then you create fictionalized summaries of what happened. They are also a meaningless exercise, since you essentially said Google does not compromise. I am not addressing all of the inaccuracies in your e-mail because it is a waste of resources better spent trying to satisfy Google's ever growing list of discovery requests.

Also, as you know, I did not meet and confer regarding bates-stamping because you first asked to meet and confer about that issue in an e-mail you sent a few business hours before the scheduled meet and confer. During the meet and confer, I asked you to send the prior correspondence you had on this issue and you said that you would not because it was handled by counsel other than Quinn Emanuel.

As for the 20th, as I am saying now for the third time, Perfect 10 will meet and confer regarding those issues if they are ready for a telephonic meet and confer. Since October 6, Google has raised many new issues that it apparently has been working up for some time. Therefore, it will take some time for us to get up to speed. As soon as Perfect 10 is knowledgeable on a given topic, Perfect 10 will address it.

**Confidentiality Designations.**

Judge Matz has taken the time to explain how the parties should handle this issue. Judge Matz delineated a very practical approach at pages 37 - 41 of the August 18, 2008 transcript. However, during the meet and confer, you discarded the Judge's approach as well as the folder approach.

Here are responses to your questions..

1. It may be technologically possible to affix the word "Confidential" onto an electronic page.

2. *If* it were technologically possible to affix the word "Confidential" onto an electronic page, it would take hundreds of hours of attorney and client time to sort through approximately one million pages and identify them.

3. Your suggestion about making the specification at the document level is not helpful. This is as time-consuming a task as affixing the word "Confidential" to each page. Your suggestion about two hard drives is also not helpful for the same reason.

**Charts.**

You said Google is disinterested in the compromise proposed by Perfect 10, but wanted to know if Perfect 10 meant electronic filings since that would undermine Perfect 10's claim that the charts are confidential. Perfect 10 does mean electronic filings, and disagrees that its offer of compromise somehow changes the character of the documents.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

----- Original Message ----
From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: Valerie Kincaid <valeriekincaid@yahoo.com>
Cc: Jeff Mausner <jeff@mausnerlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>;
Rachel M Herrick <rachelherrick@quinnemanuel.com>; Andrea P Roberts
<andreaproberts@quinnemanuel.com>
Sent: Wednesday, October 15, 2008 12:29:30 PM
Subject: Perfect 10, Inc. v. Google Inc.

Valerie,

This is to confirm our telephonic meet-and-confer of today, October 15, 2008, at which we addressed the three
issues identified below.

## 1.    Perfect 10's Improper Confidentiality Designations

I explained that Perfect 10's confidentiality designations in its electronic document productions do not comply with
the Protective Order. I explained (and you did not contest) that these productions contain large volumes of clearly
public information, but that Perfect 10's "blanket" designations included this public information as well. When I
reiterated Google's request for compliance with the Protective Order by affixing a confidentiality legend to each
page in its document productions containing confidential material, you stated this would be "logistically
infeasible." I then asked how long Perfect 10 believes it would take to do so, how expensive Perfect 10 believes it
would be, and whether Perfect 10 had explored any technological approaches to affixing such designations. You
stated you did not know, and would follow-up with your client to determine whether those issues had in fact been
investigated.

I explained that Google cannot accept Perfect 10's proposal (providing a list of folders and sub-folders which do
*not* contain confidential information), at least in part because there are folders which contain both confidential and
public documents. I asked, however, whether Perfect 10 would agree to make this specification at the *document*
level (rather than the folder level). I also asked whether Perfect 10 has considered, when making an electronic
document production containing confidential and non-confidential materials, whether it could produce *two* drives --
one containing only public information, and one containing only confidential information. You stated you would
bring those questions to your client.

You also refused to address Perfect 10's failure to Bates-stamp its document productions at this meet-and-confer,
but stated you would address the issue at our next meet-and-confer, scheduled for October 20 at 10 am.

## 2.    Perfect 10's Designation as Confidential of the Charts Allegedly Responsive to Interrogatory No. 3

We were unable to reach agreement on this issue. I explained that these documents were improperly designated
because they were created expressly for litigation, and contained only public information. You confirmed that the
charts were created for litigation, that Internet URLs are public information, and that the charts are not "trade
secrets, financial data, contracts [or] agreements, current [or] future business plans, [or] marketing documents."
Protective Order at Para. 1. You nevertheless maintained that the charts were properly designated because the
"compilation" of the URLs and other information in the charts renders them "proprietary information used by
[Perfect 10] in, or pertaining to, its business." Id. Obviously, we disagree, since it is our understanding that
Perfect 10 does not condone or use allegedly infringing images as part of its business.

I also sought clarification on Perfect 10's proposal of October 11. In that proposal, Perfect 10 stated it "does not
object to the charts being filed as part of a court document." I asked whether Perfect 10 meant electronic filing, or
manual filing under seal. I stated that I assumed Perfect 10 meant electronic filing, because Google already can
file these documents under seal. You stated you would follow up with Jeffrey Mausner to confirm.

Exhibit 4

April 23, 2009

<u>**Via Email and U.S. Mail**</u>

Jeffrey N. Mausner, Esq.
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA
Facsimile: (818) 716-2773

Re:    <u>Perfect 10, Inc. v. Google Inc.: Outstanding Issues</u>

Dear Jeff:

As you know, on April 16, 2009, the parties to <u>Perfect 10, Inc. v. Microsoft Corporation</u>, No. 07-5156 AHM (SHx), filed a stipulation for dismissal, thereby resolving that action. As you also know, pursuant to Judge Matz's December 22, 2008 Order, the stay of <u>Perfect 10, Inc. v. Google Inc.</u>, Case No. 04-9484, was lifted one week thereafter, which is today.

Because the <u>Google</u> case is no longer stayed, we now write to identify the pending issues on which Perfect 10 owes Google a response. We also request, pursuant to <u>Local Rule</u> 37-1, a meet and confer on certain issues related to possible motions to compel.

1.    <u>**Perfect 10's Portions of the Joint Stipulation on Google's Motion to Compel Perfect 10 to (1) Produce Documents (2) Comply with the Protective Order and (3) Bates-stamp its Document Productions**</u>

Google delivered its portions of this Joint Stipulation (and supporting documents) to Perfect 10 on November 19, 2008. Although Perfect 10's portions of the Joint Stipulation were originally due back by November 26, 2008 (pursuant to <u>Local Rule</u> 37-2.2) and then by December 9, 2008 (pursuant to Google's agreement to an extension), Google has not received Perfect 10's portions

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-801-5000 FAX 650-801-5100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81-3-5561-1711 FAX +81-3-5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG, United Kingdom | TEL +44-20-7653-2000 FAX +44-20-7653-2100

51320/2871855.2

of the Joint Stipulation. Perfect 10 claimed (incorrectly) that the stay was in place as of December 10, 2008, but further agreed that after lifting of the later-imposed stay, "if these matters are still in issue, we will get you our portions of the Joint Stipulation." Please do so by no later than <u>April 28, 2009</u>. If Perfect 10 does not so provide them, Google will file its portions together with a Declaration of Non-Cooperation pursuant to <u>Local Rule</u> 37-2.4.

**2.      Perfect 10's Responses to Google's Sixth and Seventh Sets of Requests for the Production of Documents**

On November 6, 2008, Google attempted to meet and confer with Perfect 10 regarding deficiencies in Perfect 10's responses to Google's Sixth and Seventh Sets of Requests for Production of Documents. Perfect 10 refused to address Google's concerns until after December 8, 2008, however. Perfect 10 additionally stated in a November 7 email that Perfect 10 would inform us whether it "was withholding any documents on the basis of certain objections … after December 8, 2008," and that "[w]ith regard to your heading no. 7" -- which addressed Perfect 10's improper and evasive responses to Google's Request for Production Nos. 164-70, 174-77, 179-80, and 192-229 -- "Perfect 10 will review each response to each request and let you know if it will modify its responses after December 8, 2008." Although the Court did not stay the <u>Google</u> case until December 22 (over two weeks after Perfect 10 unilaterally gave itself a one-month extension), and although the stay is now lifted, Perfect 10 has yet to provide this response. Please provide Perfect 10's response as soon as possible and, in any event, by no later than <u>May 1, 2009</u>.

Additionally, in that same November 7 email, with respect to Google's Seventh Set of Requests for Production, counsel for Perfect 10 indicated that "the next production will contain the [requested] documents." We have reviewed the several-hundred-gigabyte hard drive Perfect 10 produced on November 25, 2008, and it does not appear to contain these documents. For example, Google's Request for Production No. 226 seeks documents regarding the allegations that Google acted with "oppression, fraud, [and] malice" and "subjected Perfect 10 to cruel and unjust hardship," but the hard drive does not appear to contain any such documents. With respect to any documents responsive to Google's Seventh Set documents that Perfect 10 did produce on November 25, please provide their location on the hard drive by no later than <u>May 1, 2009</u>. With respect to any Requests for which Perfect 10 did not produce all responsive documents, please confirm that Perfect 10 is available to meet-and-confer on <u>May 4, 2009</u>, or provide an alternative date and time on which to do so.

**3.      Perfect 10's Supplemental Responses to Google's Fourth Set of Interrogatories**

On October 27, 2008, Google sent Perfect 10 a detailed letter summarizing the many deficiencies in Perfect 10's Responses to Google's Fourth Set of Interrogatories. Google requested that Perfect 10 "provide full, complete, amended and/or supplemental responses to Google's Interrogatories Nos. 12-18" and "withdraw the improper objections identified" in the letter. If Perfect 10 was unwilling to correct its improper objections and provide complete responses to Google's Fourth Set of Interrogatories, Google requested a meet and confer pursuant to <u>Local Rule</u> 37-1 and asked Perfect 10 to contact Google within a week of receiving the October 27 letter to schedule the conference.

Perfect 10 nevertheless has yet to inform Google if it intends to amend and/or supplement its Reponses to Google's Fourth Set of Interrogatories. Please confirm by <u>May 1, 2009</u> whether Perfect 10 intends to do so. If Perfect 10 is unwilling to amend and/or supplement its responses, we are available for a meet and confer on <u>May 4, 2009</u>. Please let us know if this date is convenient for Perfect 10.

### 4.    Contact Information for Perfect 10 Models Amy Weber and Amber Smith

Google has asked Perfect 10 to provide contact information, including the last-known address and telephone number, for Perfect 10 models Amy Weber and Amber Smith. As Google has previously explained, Google is entitled to this information under <u>Rule</u> 26(a). <u>Fed. R. Civ. P.</u> 26(a) ("a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses"). Since Amy Weber and Amber Smith are two of the "nine models" for whom Perfect 10 seeks to recover for alleged right of publicity violations, they are clearly within the ambit of <u>Rule</u> 26(a).

Perfect 10's continued failure to provide this basic information is hampering Google's ability to move forward with critical discovery. Please provide it immediately. We are available for a meet and confer regarding Perfect 10's failure to provide the contact information for these two witnesses on <u>April 28</u> or <u>May 1, 2009</u>. Please let us know which of these dates is most convenient for Perfect 10. In the event these issues cannot be resolved, please be advised that Google will be seeking relief from the Court.

### 5.    Google's Pending Motions to Compel Further Responses to Interrogatories 3 and 11 and to Determine the Sufficiency of Perfect 10's Responses to Google's Requests for Admissions, Sets 1 and 2

Google's Motion to Compel Further Responses to Interrogatories 3 and 11 and Google's Motion to Determine the Sufficiency of Perfect 10's Responses to Google's Requests for Admission, Sets 1 and 2 are fully briefed and pending before Magistrate Judge Hillman. Google proposes that the parties submit a joint request to Judge Hillman to set a hearing date for these pending discovery motions. A draft of Google's proposed joint request for oral argument is attached for your review and approval. We would like to propose that Magistrate Judge Hillman schedule a hearing on Google's Motion to Compel Further Responses to Interrogatories 3 and 11 and Google's Motion to Determine the Sufficiency of Perfect 10's Responses to Google's Requests for Admission on <u>May 18, 2009</u>. If that date is convenient for Perfect 10, please sign the enclosed draft stipulation and return it to me by <u>April 27, 2009</u>. If Perfect 10 is unavailable on May 18, please provide an alternate date by <u>April 27</u>, so that we can revise the Joint Request and get it on file that same day. If we do not hear from you or cannot agree on a date, we will ask Judge Hillman to set one.

## 6.    IP Address Anonymization

As you know from Google's meet and confer efforts dating back to May 2008, Google is planning to proceed with its IP address anonymization efforts, and as we explained in our January 22, 2009 letter, the terms of Google's anonymization plans are substantially similar to Microsoft's—which plans Judge Hillman allowed to proceed by granting Microsoft's motion for protective order on December 16, 2008. In that Order, Judge Hillman found that "it is highly unlikely that it would grant Perfect 10 discovery of Microsoft's users' private information … particularly … given the potential for embarrassment of individual users who accessed or downloaded Perfect 10 images," and that "even if the Court were to eventually permit limited discovery of some personal user information under a tight Protective Order, sufficient data could be mined from Microsoft Search Logs … which are less than 18 months old (and thus not subject to Microsoft's published Privacy Policies)."

Because the issues and material facts presented in Microsoft's Motion for Protective Order are substantially the same to those presented by Google's planned motion regarding its proposed anonymization program, we requested that Perfect 10 stipulate that the IP address anonymization ruling in the Microsoft case shall apply with equal force to the Google case. In your email of February 1, 2009, you refused to so stipulate, on the ground that "additional problems" could be presented in the Google case "[d]epending on how long the stay lasts." Now that the stay has been lifted (after just four months), this objection is no longer viable.

Judge Hillman has already made clear that he will not permit this type of discovery —and rightly so, as the burdens it imposes far outweigh the relevance or utility of the information Perfect 10 seeks. Now that the stay has been lifted, please let us know by April 27, 2009 if Perfect 10 will reconsider its prior position and stipulate that the Court's IP Address Anonymization ruling in Microsoft will apply with equal force in the Google case. If Perfect 10 is unwilling to so stipulate, please be advised that Google will proceed with motion practice.

## 7.    Depositions of Perfect 10 Employees or Associates

Google would like to depose the following two Perfect 10 employees or associates over the course of the next few weeks: Melanie Poblete and Sheena Chou. Please confirm whether you will be representing these witnesses for purposes of their deposition, and if so, please provide several convenient deposition dates in May for each witness.

## 8.    Modifications to the Protective Order

On May 14, 2008, we requested that Perfect 10 agree to certain "housekeeping" changes to the Protective Order, as well as to the addition of a "clawback" term governing inadvertent production of privileged materials. By email dated May 16, 2008, you agreed to the "clawback" term, and in light of your email of May 20, 2008 and Perfect 10's subsequent document production, it appears that you also agreed to the "housekeeping" changes. If this understanding is incorrect, please advise us as soon as possible.

Additionally, Google repeatedly sought Perfect 10's agreement to modify the Protective Order to allow for designation of certain limited categories of documents as "Outside Counsel's Eyes Only." Perfect 10 refused, requiring Google to seek (and obtain) relief from the Court regarding one such category of documents—those regarding image recognition technology. Google would now like to modify the Protective Order to afford the Court-ordered "Outside Counsel's Eyes Only" protections to these particular documents, as well as any other later-produced documents for which the parties might seek a designation of "Outside Counsel's Eyes Only." Specifically, we propose modifying the Protective Order to permit that either party may temporarily designate a limited category of documents as "Outside Counsel's Eyes Only," and may seek relief from the Court to make such a designation permanent. And finally, despite numerous requests from Google to return copies of documents after Google changed their confidentiality designations, Perfect 10 refused to return them based on its belief that the Protective Order does not require this. In order to clarify this purported ambiguity, Google proposes that the parties modify the Protective Order to provide that, if a party wishes to change its initial designation of a document it has produced, and produces a new copy with the updated designation, the receiving party should return the originally produced document to the producing party.

Please let us know by <u>May 4, 2009</u> whether Perfect 10 is amenable to these modifications. If Perfect 10 intends to oppose these modifications, please be advised that Google will proceed with motion practice to modify the Protective Order.

## 9. Google's Motion for Summary Judgment on DMCA Safe Harbors

We would also like to schedule a time during which the parties can resume their pre-filing conference of counsel discussions on Google's motions for partial summary judgment regarding entitlement to safe harbor under the DMCA, and Perfect 10's anticipated cross-motion. Google expects to file its motion in the coming weeks. As you will recall, on November 7, 2008, Google sent Perfect 10 a letter pursuant to <u>Local Rule</u> 7-3 setting forth the bases for its motion for partial summary judgment. The parties further conferred telephonically in early December 2008 regarding Google's intent to file three motions for partial summary judgment regarding Google's entitlement to safe harbor under Sections 512(b), 512(c), and 512(d) of the DMCA, respectively, and Perfect 10's intent to file a cross-motion for partial summary judgment on DMCA issues. The parties agreed to discuss a schedule for filing the moving, opposition, and reply papers, and for the hearing on the motions, but did not reach agreement before the stay was imposed.

Now that the stay is lifted, we would like to propose a schedule under which Perfect 10's oppositions to Google's three motions are due four weeks after Google files its moving papers, Google's reply briefs are due four weeks after Perfect 10 files its opposition papers, and the hearing is calendared for four weeks after Google files its reply briefs. Please advise whether this proposed schedule is agreeable to Perfect 10 and, if not, what alternative schedule Perfect 10 would propose.

I look forward to hearing from you.

Very truly yours,

Rachel Herrick Kassabian    (BRL)

RHK:tdn

Enclosures

51320/2871858.2

Exhibit 5

ORIGINAL

WINSTON & STRAWN LLP
Andrew P. Bridges (SBN: 122761)
Jennifer A. Golinveaux (SBN: 203056)
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
E-mail: abridges@winston.com,
        jgolinveaux@winston.com

Attorneys For Defendant and Counterclaimant
GOOGLE INC.

Priority Send ✓
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

SCANNED

LODGED
CLERK, U.S. DISTRICT COURT
MAY 16 2006
m m 1:07
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
MAY 19 2006
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>　　　　Defendant.<br><br>―――――――――――――<br><br>AND COUNTERCLAIM<br><br>―――――――――――――<br><br>PERFECT 10, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AMAZON.COM, INC., a corporation; and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No. CV 04-9484 AHM (SHx)<br><br>**[PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES** |

DOCKETED ON CM
MAY 22 2006
BY _____ 046

164

[PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1                           **INTRODUCTORY STATEMENT**

2         Google Inc. and Perfect 10, Inc. submit this proposed order regarding Google

3 Inc.'s Motion to Compel Production of Documents and Responses to Interrogatories.

4 Although the parties have attempted to agree on all provisions of this order, they have

5 been unable to agree as to what the Court ordered with respect to four requests:

6 Interrogatories Nos. 3 and 5 and Document Request Nos. 42 and 44. Accordingly, for

7 these four requests, the parties have set forth below their respective understanding of

8 what the Court ordered and respectfully request that the Court clarify its ruling as to

9 these requests.

10                              **PROPOSED ORDER**

11         Having considered the parties' Joint Stipulation regarding Google Inc.'s Motion

12 to Compel Production of Documents and Responses to Interrogatories ("Joint

13 Stipulation") and argument of counsel on February 22, 2006, IT IS HEREBY

14 ORDERED AS FOLLOWS:

15 **I.    MANNER OF PRODUCTION**

16         The Court orders the parties to continue meeting and conferring so that

17 production of documents can be in the most useful and accessible manner. The Court

18 otherwise defers ruling on Google's motion to compel Plaintiff to indicate which

19 documents respond to each request at this time.

20 **II.   SPECIFIC DOCUMENT REQUESTS AND INTERROGATORIES IN**
       **DISPUTE**

21

22       **A.   Information Regarding Alleged Copyrights and Trademarks**
          **(Interrogatory No. 2; Document Request Nos. 2, 34-35, 37)**

23

24       <u>Interrogatory No. 2</u>: In addition to its current response to this interrogatory,

25 Plaintiff shall produce a complete electronic version of its Web site on disk and a copy

26 of all volumes of its magazines such that it has provided Google all images in which it

27                                2

28   [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
             OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  claims to own copyrights. These documents shall be produced by April 15, 2006.

2  Plaintiff shall also assist Google in identifying which images in the magazines do not

3  appear on the Web site. The Court otherwise defers ruling on the remainder of the

4  request at this time.

5      <u>Document Request No. 2</u>: Google is to determine what documents are publicly

6  available. The Court otherwise defers ruling on the request at this time.

7      <u>Document Request No. 34</u>: The motion to compel is granted. The Court orders

8  Plaintiff to produce the following: All non-privileged and non-work product

9  documents concerning trademark research, investigations, and searches relating to the

10  marks PERFECT 10 and PERFECT 10.COM. Plaintiff's production shall include all

11  responsive documents from the time of the formation of Perfect 10. These documents

12  shall be produced by April 15, 2006.

13      <u>Document Request No. 35</u>: The motion to compel is granted. The Court orders

14  Plaintiff to produce the following: All documents concerning Plaintiff's applications

15  to register the marks PERFECT 10 and PERFECT10.COM with any government

16  agency; any certificates of registration issued as a result thereof; and any efforts to

17  secure registration without time limitation. Plaintiff's production shall include all non-

18  privileged and non-work product responsive documents, including communications

19  concerning applications. These documents shall be produced by April 15, 2006.

20      <u>Document Request No. 37</u>: The motion to compel is granted and Plaintiff's

21  objections are overruled. The Court orders Plaintiff to produce the following: All

22  surveys, studies, or other documents relating to market (or prospective market)

23  reaction to or attitude towards the marks PERFECT 10 and PERFECT10.COM,

24  including without limitation, any customer identification with, or reference to Plaintiff

25  or Plaintiff's services. These documents shall be produced by April 15, 2006.

26

27                  3

28    [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
            OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

**B.    Information Regarding Alleged Copyright and Trademark Infringements by Google in this Action (Interrogatory Nos. 3, 5; Document Request Nos. 10-19, 26, 55-56)**

Having been unable to agree as to precisely what the Court ordered regarding Interrogatory Nos. 3 and 5, the parties set forth below their respective interpretations of the Court's order.  These interrogatories request that Perfect 10 identify all copyright and trademark infringements for which it claims Google is liable.  For the Court's convenience, the full transcript of the February 21-22 discovery hearings is attached hereto as Exhibit A.

Google's Proposed Order re Interrogatory No. 3:  Plaintiff shall continue producing completed versions of the five spreadsheets attached as Exhibits 1 through 5 of the Joint Stipulation regarding Google's Motion to Compel Production of Documents and Responses to Interrogatories and Web page printouts associated with the spreadsheets.    The presumptive deadline for these documents is April 15, 2006.  The Court otherwise defers ruling on Google's motion concerning the interrogatory at this time.

Google's Proposed Order re Interrogatory No. 5:  Plaintiff shall continue producing completed versions of the five spreadsheets attached as Exhibits 1 through 5 of the Joint Stipulation regarding Google's Motion to Compel Production of Documents and Responses to Interrogatories and Web page printouts associated with the spreadsheets.  The presumptive deadline for these documents is April 15, 2006.  The Court otherwise defers ruling on Google's motion concerning this interrogatory at this time.

**Google's Explanation of its Version:**  Although the Court deferred ruling regarding these requests to identify infringements, the Court specifically ordered Perfect 10 to continue producing spreadsheets and associated Web printouts that it had *already agreed to produce*.  Google's proposed language regarding

4

1  Interrogatory Nos. 3 and 5 set forth above is based on its understanding that the

2  Court ordered Plaintiff to proceed with producing both the spreadsheets and

3  Web page printouts associated with the spreadsheets as Perfect 10 described in

4  its portion of the Joint Stipulation.  Perfect 10 stated, for example, that "a

5  reasonable approach is to provide finished versions of spreadsheets illustrated by

6  Exhibits 2, 4, and 5. . . . Along with each Exhibit will be the infringements

7  detailed in each spreadsheet, organized by model or by infringing website.

8  Trademark infringements will be listed to the fullest extent possible. . . . "  Joint

9  Stipulation re: Google's Motion to Compel, p. 36-37.  Google understands that

10  the Court ordered Perfect 10 to continue producing the spreadsheets/charts as

11  described in the Joint Stipulation.  *See* 2/22/06 Hearing Transcript, pp. 62-63

12  (MS. LEE:  They have started these charts, charts 1 through 5, and they have

13  already agreed to produce printouts associated with those charts.  THE COURT:

14  *Yes, they should proceed with that. . . . Continue producing the logs that are being*

15  *produced.*)  Perfect 10 now asserts, however that the Court only meant to order it

16  to produce printouts associated with the charts/spreadsheets and not the

17  spreadsheets.  This interpretation, however, is belied by Perfect 10's counsel's

18  own statements at the hearing.  *Id.* at p. 63 (MR. MAUSNER:  And as far as the

19  logs, I don't think we can have an April 15 cutoff date on the logs.  I mean, we

20  have produced some, and we'll continue to produce it, but that's going to be an

21  ongoing process that's going to last for a while.  THE COURT:  Well, we'll set an

22  artificial deadline of April 15th and see where we are then.)

23

24      Plaintiff's Proposed Order regarding Interrogatories Nos. 3 and 5:  Plaintiff shall

25  continue producing printouts of infringements by Google of which it becomes aware

26  in the future.  The Court otherwise defers ruling on Google's motion concerning the

27                                                5

1  interrogatories at this time.

2

3      **Perfect 10's Explanation of its Version:**

SCANNED

4      Perfect 10 did voluntarily create and produce charts (aka logs/aka

5  spreadsheets, hereafter referred to as "Charts") of infringements by Google,

6  which Perfect 10 attached as exhibits to the parties' Joint Stipulation re Motion

7  to Compel. Perfect 10 also produced printouts of the actual infringements it had

8  earlier located associated with these Charts. However, the way Google's

9  proposed order on interrogatories 3 and 5 reads, Perfect 10 would be under an

10  order compelling it to continue creating and completing such Charts. It is not

11  believed the Court would order a party to perform work for the opposing side,

12  especially of this magnitude. To the extent that Perfect 10 does voluntarily

13  continue to create and complete similar Charts, it will voluntarily produce the

14  same to Google, but Perfect 10 should not be under an order to do so. This is

15  clearly a mega mega undertaking, and Perfect 10 should not be required to

16  perform this work, which Google can do as easily as Perfect 10. Perfect 10

17  continues to provide Google with print-outs of the infringements, from which

18  Google can construct exactly the same charts that it wants the Court to order

19  Perfect 10 to do. The order should simply be to continue to produce infringing

20  print-outs which Perfect 10 discovers, and if Perfect 10 voluntarily decides to

21  continue to make the Charts, it will also voluntarily provide copies to Google.

22  Google's proposed order is simply an attempt to overburden Perfect 10 with this

23  work, while Perfect 10 is involved in the appeal of the preliminary injunction

24  order and other matters. Furthermore, the presumptive deadline of April 15

25  that Google wants is totally unrealistic.

26

27                                      6

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
    OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1    <u>Document Request No. 10</u>: The motion to compel is granted.  The Court orders

2    Plaintiff to produce the following: All non-privileged and non-work product

3    documents concerning violations of 17 U.S.C. § 106(1) that Plaintiff claims or

4    believes Google has committed directly.  These documents shall be produced by April

5    15, 2006.  Documents that Perfect 10 becomes aware of in the future shall be

6    produced when Perfect 10 becomes aware of them.

7    <u>Document Request No. 11</u>: The motion to compel is granted.  Plaintiff shall

8    produce the following: All non-privileged and non-work product documents

9    concerning violations of 17 U.S.C. § 106(2) that Plaintiff claims or believes Google

10   has committed directly, which Perfect 10 currently is aware of.  These documents

11   shall be produced by April 15, 2006.  Documents that Perfect 10 becomes aware of in

12   the future shall be produced when Perfect 10 becomes aware of them.

13   <u>Document Request No. 12</u>: The motion to compel is granted.  Plaintiff shall

14   produce the following: All non-privileged and non-work product documents

15   concerning violations of 17 U.S.C. § 106(3) that Plaintiff claims or believes Google

16   has committed directly, which Perfect 10 currently is aware of.  These documents

17   shall be produced by April 15, 2006.  Documents that Perfect 10 becomes aware of in

18   the future shall be produced when Perfect 10 becomes aware of them.

19   <u>Document Request No. 13</u>: The motion to compel is granted.  Plaintiff shall

20   produce the following: All non-privileged and non-work product documents

21   concerning violations of 17 U.S.C. § 106(4) that Plaintiff claims or believes Google

22   has committed directly, which Perfect 10 currently is aware of.  These documents

23   shall be produced by April 15, 2006.  Documents that Perfect 10 becomes aware of in

24   the future shall be produced when Perfect 10 becomes aware of them.

25   <u>Document Request No. 14</u>: The motion to compel is granted.  Plaintiff shall

26   produce the following: All non-privileged and non-work product documents

27                                           7

28   [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
     OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  concerning violations of 17 U.S.C. § 106(5) that Plaintiff claims or believes Google

2  has committed directly, which Perfect 10 currently is aware of. These documents

3  shall be produced by April 15, 2006. Documents that Perfect 10 becomes aware of in

4  the future shall be produced when Perfect 10 becomes aware of them.

5      <u>Document Request No. 15</u>: The motion to compel is granted. Plaintiff shall

6  produce the following: All non-privileged and non-work product documents

7  concerning violations of 17 U.S.C. § 106(1) that Plaintiff claims or believes Google is

8  vicariously liable for or constitute contributory infringement by Google, which Perfect

9  10 currently is aware of. These documents shall be produced by April 15, 2006.

10 Documents that Perfect 10 becomes aware of in the future shall be produced when

11 Perfect 10 becomes aware of them.

12     <u>Document Request No. 16</u>: The motion to compel is granted. Plaintiff shall

13 produce the following: All non-privileged and non-work product documents

14 concerning violations of 17 U.S.C. § 106(2) that Plaintiff claims or believes Google is

15 vicariously liable for or constitute contributory infringement by Google, which Perfect

16 10 currently is aware of. These documents shall be produced by April 15, 2006.

17 Documents that Perfect 10 becomes aware of in the future shall be produced when

18 Perfect 10 becomes aware of them.

19     <u>Document Request No. 17</u>: The motion to compel is granted. Plaintiff shall

20 produce the following: All non-privileged and non-work product documents

21 concerning violations of 17 U.S.C. § 106(3) that Plaintiff claims or believes Google is

22 vicariously liable for or constitute contributory infringement by Google, which Perfect

23 10 currently is aware of. These documents shall be produced by April 15, 2006.

24 Documents that Perfect 10 becomes aware of in the future shall be produced when

25 Perfect 10 becomes aware of them.

26     <u>Document Request No. 18</u>: The motion to compel is granted. Plaintiff shall

27                                        8

28 [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
   OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1   produce the following: All non-privileged and non-work product documents

2   concerning violations of 17 U.S.C. § 106(4) that Plaintiff claims or believes Google is

3   vicariously liable for or constitute contributory infringement by Google, which Perfect

4   10 currently is aware of. These documents shall be produced by April 15, 2006.

5   Documents that Perfect 10 becomes aware of in the future shall be produced when

6   Perfect 10 becomes aware of them.

7       Document Request No. 19:   The motion to compel is granted. Plaintiff shall

8   produce the following: All non-privileged and non-work product documents

9   concerning violations of 17 U.S.C. § 106(5) that Plaintiff claims or believes Google is

10   vicariously liable for or constitute contributory infringement by Google, which Perfect

11   10 currently is aware of. These documents shall be produced by April 15, 2006.

12   Documents that Perfect 10 becomes aware of in the future shall be produced when

13   Perfect 10 becomes aware of them.

14       Document Request No. 26: The motion to compel is granted.   Plaintiff shall

15   produce the following: All non-privileged and non-work product documents

16   concerning each of the underlying trademark infringements that Plaintiff claims or

17   believes Google is vicariously liable for or constitute contributory infringement by

18   Google, which Perfect 10 currently is aware of. These documents shall be produced

19   by April 15, 2006. Documents that Perfect 10 becomes aware of in the future shall be

20   produced when Perfect 10 becomes aware of them.

21       Document Request No. 55:  The motion to compel is granted. Plaintiff shall

22   produce the following: Documents sufficient to identify each person or entity Plaintiff

23   claims or believes to infringe its copyrights claimed in this action, which Perfect 10

24   currently is aware of. These documents shall be produced by April 15, 2006.

25   Documents that Perfect 10 becomes aware of in the future shall be produced when

26   Perfect 10 becomes aware of them.

27                                       9

28   [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
              OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1        Document Request No. 56: The motion to compel is granted.  Plaintiff shall

2    produce the following: Documents sufficient to identify each person or entity Plaintiff

3    claims or believes to infringe its trademarks claimed in this action, which Perfect 10

4    currently is aware of.  These documents shall be produced by April 15, 2006.

5    Documents that Perfect 10 becomes aware of in the future shall be produced when

6    Perfect 10 becomes aware of them.

7        **C. Plaintiff's Alleged Publicity Rights (Document Request Nos. 42-46, 50-**

8           **53, 57)**

9        **The parties have set forth their respective understandings of the Court's**

10    **rulings on Document Request No. 42 below.  Document Request No. 42 seeks "all**

11    **documents concerning the publicity rights claimed by [Perfect 10] in this action,**

12    **including, but not limited to, all licenses, releases, or assignments and all**

13    **communications relating to such licenses, releases, or assignments."**

14        Google's Proposed Order re Document Request No. 42: Plaintiff shall provide

15    contact information for fifteen persons of Google's choice whose publicity rights

16    Plaintiff asserts in this action as of March 15, 2006.  Any personal information of

17    models is subject to a highly confidential designation. The motion to compel on the

18    remainder of the request is granted with respect to these persons as follows: All non-

19    privileged and non-work product documents concerning the publicity rights claimed

20    by Plaintiff in this action, including, but not limited to, all licenses, releases, or

21    assignments and all communications relating to such licenses, releases or assignments.

22    These documents shall be produced by April 15, 2006.

23

24        **Google's Explanation of its Version:  At the motion to compel hearing,**

25    **Perfect 10 proposed cutting down the number of models for which it is asserting**

26    **rights of publicity in this case in order to limit discovery.  Google's proposed**

27                          10

28      [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
           OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  language simply states the Court's order that Perfect 10 provide information

2  regarding fifteen persons of Google's choice whose publicity rights Perfect 10

3  continues to assert in this action as of March 15, 2006. *See* 2/22/06 Hearing

4  Transcript, pp. 86-87 (MR. BRIDGES: And, Your Honor, could Perfect 10 have

5  a deadline for expressly dropping the claims of, let's say, March 15th that they

6  will expressly drop whatever claims of models and that any other models that are

7  in, we get to pick 15? THE COURT: I don't know if I have the authority to

8  make that order. What I can order is that if they have not dropped certain

9  models by March 15th, that Google can come back and press for the remaining

10  contact information. MR. BRIDGES: If we could put it on this basis, I'd

11  appreciate it, that whatever models remain in the case by March 15th, we will

12  identify 15 that are still in the case, and those 15 we will go with... THE

13  COURT: That's fair enough. That's fair enough.)

14
15      To date, Perfect 10 has refused to formally dismiss any claims regarding

16  rights of publicity in this case. Perfect 10's counsel merely sent a letter to

17  Google's counsel identifying nine persons for which it would continue to assert

18  rights of publicity (*see* 3/15/06 letter attached hereto as Exhibit B), but has

19  refused to sign a stipulation of dismissal. Perfect 10 believes the Court's order

20  should now be modified to provide that Perfect 10 should only be required to

21  provide information on the nine specified persons identified in this letter. Google

22  believes the order should simply reflect the Court's ruling at the hearing,

23  especially in light of Plaintiff's attempt to improperly limit discovery regarding

24  rights of publicity without dismissing any right of publicity claims.

25      ~~Plaintiff's Proposed~~ Order re Document Request No. 42: Perfect 10 shall

26
27            11

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
    OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  produce all non-privileged and non-work product documents concerning the publicity

2  rights claimed by Plaintiff in this action as of ~~March 15,~~ *June 8,* 2006, including, but not

3  limited to, all licenses, releases, or assignments and all communications relating to

4  such licenses, releases or assignments. Any personal information of models in those

5  documents is subject to a highly confidential designation. These documents shall be

6  produced by ~~April 15,~~ *June 1?* 2006. *This will afford Plaintiff an additional opportunity to consider whether it will dismiss certain*

7  *model's publicity rights with or without prejudice.* **Plaintiff's Explanation of its Version:**

8       At the hearing on February 22, 2006, the parties and the Court

9  contemplated cutting down and limiting Perfect 10's claims for right of publicity

10 violations to far fewer models than originally claimed, in order to decrease and

11 streamline discovery. See pages 86-87, February 22, 2006 Transcript where it

12 was contemplated that Perfect 10 would cut the number of models down by

13 March 15, 2006 to an unnamed number slightly in excess of 15, and that Google

14 would pick 15 it would like to take discovery on. However, on March 15, 2006,

15 Perfect 10 wrote to Google voluntarily cutting down the number of models whose

16 rights of publicity Perfect 10 was asserting in this case to 9. (See letter of March

17 15, 2006 attached hereto) Therefore, it simply doesn't make sense for the

18 number of 15 models to appear in the ultimate order. Perfect 10's language

19 regarding an order that Perfect 10 produce documents for the models actually

20 remaining in the case (who's number happens to be nine) makes sense.

21      The letter that Perfect 10's attorney wrote to Google is completely clear

22 that Perfect 10 will not assert rights of publicity in this lawsuit for any models

23 other than the nine named models. The letter states: "In order to reduce the

24 amount of discovery in this case, Perfect 10 will not assert publicity rights for any

25 other models in this lawsuit." Google disingenuously asked Perfect 10 to sign a

26 stipulation and order dismissing rights of publicity claims regarding the other

27                                         12

28 [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
   OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  models with prejudice.  Perfect 10 would, of course, not do so.  The purpose of

2  cutting the number of models down to nine is to allow this case to be litigated

3  with a minimum of discovery, and allow the issues regarding Google's liability

4  for misappropriation of rights of publicity to be decided by the District Court

5  and the Ninth Circuit.  Those issues can easily be litigated and determined

6  regarding the nine models who remain in the case.  If it is determined that

7  Google is liable for misappropriation of rights of publicity, then another lawsuit

8  may be brought (possibly in state court) for the other models.  That is the main

9  reason why Perfect 10 will not enter into a stipulation dismissing those claims

10  with prejudice.  But there is no reason for Google to take discovery on the other

11  models at this time.  Discovery should be limited to the nine models who remain

12  in the case at this time.  If Perfect 10 prevails on its right of publicity claims and

13  then decides to bring a later lawsuit regarding the other models, Google can take

14  discovery regarding the other models at that time.

15    The first part of Google's proposed order, where it states "Plaintiff shall

16  provide contact information for fifteen persons of Google's choice whose

17  publicity rights Plaintiff asserts in this action as of March 15, 2006," is

18  completely incorrect.  The Court did not make such an order at the hearing, and

19  this isn't even a part of Google's Document Request No. 42, which reads:  "All

20  documents concerning the publicity rights claimed by you in this action,

21  including, but not limited to, all licenses, releases, or assignments and all

22  communications relating to such licenses, releases or assignments."  In fact, at

23  the hearing, the Court specifically ordered that "I'm going to require that you

24  contact them through Mr. Mausner's office."  (February 22, 2006 transcript,

25  page 70 lines 18-21.)

26

27             13

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
   OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1       <u>Document Request No. 43</u>: Plaintiff shall identify all lawsuits involving rights

2   of publicity in which it has been a plaintiff or defendant. Plaintiff shall comply with

3   this order by April 15, 2006. The Court otherwise defers ruling on Google's motion

4   concerning this request at this time.

5       **The parties have set forth their respective understandings of the Court's**

6   **rulings on Document Request No. 44 below. Document Request No. 44 seeks "all**

7   **documents concerning the fame or market awareness of each model name or**

8   **likeness in which [Plaintiff] claim[s] rights."**

9       <u>Google's Proposed Order re Document Request No. 44</u>: The motion to compel

10  is granted. Plaintiff shall produce the following: All non-privileged and non-work

11  product documents concerning the fame or market awareness of each model name or

12  likeness in which Plaintiff claims rights. These documents shall be produced by April

13  15, 2006.

14      <u>**Google's Explanation of its Version**</u>:  **Google's proposed language is based**

15  **on its understanding that the Court granted Document Request No. 44 without**

16  **limitation.** *See* **2/22/06 Hearing Transcript, p. 78 ("The Court:  All right.  I'll**

17  **grant 44.")  Plaintiff, however, claims that the Court implied a limitation on the**

18  **documents Plaintiff is required to produce to those relating to models remaining**

19  **in the case as of March 15, 2006, even though no such limitation was made.**

20  **Google believes the order should reflect the Court's ruling granting the motion to**

21  **compel on the request without limitation, particularly since the documents**

22  **sought are relevant to issues other than rights of publicity, such as Perfect 10's**

23  **claims that the fame of its models drives users to search on model names in**

24  **pursuit of images that infringe its copyrights.**

25

26      ~~Plaintiff's Proposed~~ Order re Document Request No. 44:  The motion to compel

27                 14

1  is granted, as follows:  Plaintiff shall produce all non-privileged and non-work product

2  documents concerning the fame or market awareness of each model name or likeness

3  in which Plaintiff claims rights of publicity in this lawsuit as of ~~March 15, 2006.~~ *June 8, 2006*:

4  These documents shall be produced by ~~April 15,~~ *June 2* 2006.

5  <u>**Plaintiff's Explanation of its Version:**</u>

6      **The Court's order should make sense in light of the issues remaining in the**

7  **case. It is understood that Perfect 10 is now (as of March 15, 2006) only asserting**

8  **violation of publicity rights in connection with 9 models. During the discussion at**

9  **the hearing, it was apparent that it is the publicity rights that these remaining**

10  **models assigned to Perfect 10 which are relevant to Document Request No. 44.**

11  **"Ms. Lee: [Google's attorney]:  Your Honor, they have alleged that these models**

12  **have widespread recognition and that Google has willfully violated the rights of**

13  **these models."  February 22, 2006 Transcript, page 77, lns. 3-7.  Therefore, it**

14  **makes logical sense to have this order limited to the models remaining in the**

15  **lawsuit for whom Perfect 10 is pursing right of publicity violations.  That is the**

16  **entire reason that Perfect 10 agreed to cut down the scope of this case to publicity**

17  **rights of just these nine models.  If Google is allowed to take discovery regarding**

18  **other models, there is no reason to do so.  The Court regularly limited its orders**

19  **regarding right of publicity claims to only models who remained in the case after**

20  **March 15, 2006.**

21

22

23  <u>Document Request No. 45</u>: Plaintiff shall make available all photographs in its

24  custody or control of models that have appeared in Perfect 10 that also appear in other

25  publications.  Plaintiff shall produce documents sufficient to make clear the context in

26  which the photographs were published.  These documents shall be produced by April

27  15

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION<br>OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

15, 2006. The Court defers ruling on the remainder of Google's motion concerning this request at this time.

Document Request No. 46: The motion to compel is granted. Plaintiff shall produce the following: All non-privileged and non-work product documents concerning authorization or permission by Plaintiff for other publications or media, not owned or controlled by Plaintiff, to display names or photographs of persons whose names or photographs have appeared in Plaintiff's magazine or Web sites. These documents shall be produced by April 15, 2006.

Document Request No. 50: Plaintiff shall produce all communications with persons whose publicity rights Plaintiff is asserting in this lawsuit as of March 15, 2006 that concern or reflect publicity rights. These documents shall be produced by April 15, 2006. The Court defers ruling on the remainder of Google's motion concerning this request at this time.

Document Request No. 51: By April 15, 2006, Plaintiff shall identify all lawsuits involving claims of misappropriation of rights of publicity in which it has been a plaintiff or defendant. The Court defers ruling on the remainder of the request at this time.

Document Request No. 52: By April 15, 2006, Plaintiff shall identify all lawsuits involving claims of misappropriation of rights of publicity in which it has been a plaintiff or defendant without prejudice to Google's right to return to Court concerning this request. The Court defers ruling on the remainder of the request at this time.

Document Request No. 53: Plaintiff shall produce all correspondence with persons or entities claiming ownership of publicity rights of persons whose publicity rights Plaintiff asserts in this lawsuit as of March 15, 2006. These documents shall be produced by April 15, 2006. The Court defers ruling on the remainder of Google's

16

[PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  motion concerning this request at this time.

2      Document Request No. 57: The motion to compel is granted. Plaintiff shall

3  produce the following: Documents sufficient to identify each person or entity Plaintiff

4  claims or believes to violate publicity rights claimed by Plaintiff in this action.

5  Documents which Perfect 10 currently has in its possession shall be produced by April

6  15, 2006. As Perfect 10 obtains additional documents (including based upon

7  Google's production of documents and the discovery of additional violations), those

8  documents shall be produced .

9      **D.  Information Regarding Persons Whose Publicity Rights Plaintiff

10  Claims (Interrogatory No. 1; Document Request No. 54)**

11      Interrogatory No. 1: The motion to compel is granted with respect to all

12  persons whose publicity rights Plaintiff asserts in this lawsuit as of March 15, 2006.

13  This information shall be provided by April 15, 2006. The Court defers ruling on the

14  remainder of Google's motion concerning this request at this time.

15      Document Request No. 54: Plaintiff shall produce all non-privileged and non-

16  work product documents concerning its compliance with 18 U.S.C. § 2257 with

17  respect to all persons whose publicity rights Plaintiff asserts in this lawsuit as of

18  March 15, 2006. These documents shall be designated highly confidential. These

19  documents shall be produced by April 15, 2006. The Court defers ruling on the

20  remainder of Google's motion concerning this request at this time.

21      **E.  Information Regarding Persons Who May Have Knowledge

22  Regarding the Alleged Facts (Interrogatory Nos. 6-7; Document Request No. 63)**

23      Interrogatory No. 6:    The Court defers ruling on the interrogatory at this time.

24      Interrogatory No. 7: The Court defers ruling on the interrogatory at this time.

25      Document Request No. 63: Plaintiff shall produce documents sufficient to

26  identify all of its directors, officers, staff, employees, and full-time personnel from

27  17

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1    2000 to present.  These documents shall be produced by April 15, 2006.    The Court

2    defers ruling on the remainder of Google's motion concerning this request at this time.

**F.    Information Regarding Plaintiff's Web Sites (Document Request No. 60)**

3

4    Document Request No. 60: Plaintiff shall produce documents constituting the

5    current (or, if no longer active, the most recent) version of all Web sites owned or

6    controlled by Plaintiff.  These documents shall be produced by April 15, 2006.    The

7    Court defers ruling on the remainder of Google's motion concerning this request at

8    this time.

9    **G.    Information Regarding Claims Asserted Against Plaintiff of**

10   **Infringement or Allegations of False Infringement (Document Request Nos. 64,**

11   **65)**

12   Document Request No. 64: Plaintiff shall produce the settlement agreement in

13   the case that it stated is relevant to Request No. 64.  This document shall be produced

14   by April 15, 2006.  The Court defers ruling on the remainder of Google's motion

15   concerning this request at this time.

16   Document Request No. 65: Plaintiff shall produce the settlement agreement in

17   the case that it stated is relevant to Request No. 65.  This document shall be produced

18   by April 15, 2006.  The Court defers ruling on the remainder of Google's motion

19   concerning this request at this time.

20   **H.    Earlier Litigation Involving Plaintiff for Similar Claims (Document Request No. 66)**

21

22   Document Request No. 66: Plaintiff shall produce all complaints for lawsuits in

23   which it has been a plaintiff or defendant involving claims of copyright, trademark,

24   publicity rights, or unfair competition and transcripts of depositions of Dr. Zada in

25   those litigations in its possession, custody, or control. These documents shall be

26   produced by April 15, 2006.    The Court defers ruling on the remainder of Google's

27                                                 18

28   [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
     OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1   motion concerning this request at this time.

2   **I.    Documents Regarding Google and Communications with Google**
    **(Document Request Nos. 7, 58-59)**

3

4   .   Document Request No. 7: The motion to compel is granted.  Plaintiff shall

5   produce the following: All non-privileged and non-work product documents

6   concerning communications between Plaintiff and Google.  These documents shall be

7   produced by April 15, 2006.

8        Document Request No. 58: Plaintiff shall produce all non-privileged and non-

9   work product documents in its possession, custody, or control that mention or refer to

10  the claims in this lawsuit against Google or this lawsuit.  These documents shall be

11  produced by April 15, 2006.  The Court defers ruling on the remainder of Google's

12  motion concerning this request at this time.

13       Document Request No. 59: The Court defers ruling on Google's motion

14  concerning this request at this time.

15  **J.           Plaintiff's Damages (Document Request Nos. 33, 38, 71)**

16       Document Request No. 33: Plaintiff shall produce summary financial

17  documents showing its annual expenditures on advertising and marketing activities in

18  the United States concerning the marks PERFECT 10 and PERFECT 1O.COM.

19  These documents shall be produced by April 15, 2006.  The Court defers ruling on the

20  remainder of Google's motion concerning this request at this time.

21       Document Request No. 38: Plaintiff shall produce summary financial

22  documents showing annual revenues and expenses relating to its use of the marks

23  PERFECT 10 and PERFECT10.COM.  These documents shall be produced by April

24  15, 2006.  The Court defers ruling on the remainder of Google's motion concerning

25  this request at this time.

26       Document Request No. 71: With respect to financial documents, Plaintiff shall

27                                      19

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
    OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  produce annual summary financial documents reflecting any damages or harm it

2  claims to have suffered, or to be likely to suffer, as a result of Google's alleged

3  infringements and violations set forth in its amended complaint in this action. In

4  addition, Perfect 10 shall produce any other non-privileged and non-work product

5  documents that evidence, refer to, or discuss any such damages or harm. Documents

6  which Perfect 10 currently has in its possession shall be produced by April 15, 2006;

7  as Perfect 10 obtains additional documents, those documents shall be produced.

8  **K.    Issues Relating to Plaintiff's Efforts to Avoid Harm (Interrogatory**
     **No. 4; Document Request Nos. 4, 8-9, 32, 39, 41, 70)**

9

10  Interrogatory No. 4: The Court defers ruling on Google's motion concerning

11  this request at this time.

12  Document Request No. 4: Plaintiff shall produce all complaints in its

13  possession, custody or control in which it has been a plaintiff or defendant involving

14  claims of copyright infringement and transcripts of depositions of Dr. Zada in those

15  litigations in its possession, custody or control. These documents shall be produced

16  by April 15, 2006. The Court defers ruling on the remainder of Google's motion

17  concerning this request at this time.

18  Document Request No. 8: The Court defers ruling on Google's motion

19  concerning this request at this time.

20  Document Request No. 9: The motion to compel is granted. Plaintiff shall

21  produce the following: All DMCA Notifications or claims of infringement that

22  Plaintiff has sent to persons or entities other than Google. Plaintiff's production shall

23  include, without limitation, documents located at its attorneys' offices and any storage

24  facilities for its attorneys. These documents shall be produced by April 15, 2006.

25  Document Request No. 32: The motion to compel is granted. Plaintiff shall

26  produce the following: All non-privileged and non-work product documents

27                                        20

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
   OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1   concerning efforts by Plaintiff to halt or reduce infringements of its trademarks.

2   These documents shall be produced by April 15, 2006.

3       Document Request No. 39: The Court defers ruling on Google's motion

4   concerning this request at this time.

5       Document Request No. 41:   The ruling on this request is the same as on

6   Document Request No. 32.

7       Document Request No. 70: The motion to compel is granted.  Plaintiff shall

8   produce the following: All non-privileged and non-work product documents

9   concerning Plaintiff's practices, policies, procedures, intentions, plans, or actions

10  regarding investigation and identification of, or prosecution of, claims against Stolen

11  Content Websites for infringement of Plaintiff's alleged intellectual property.  These

12  documents shall be produced by April 15, 2006.

13      **L.     Information Regarding Use of Google and Other Search Engines
            (Document Request Nos. 61-62, 67-69)**

14

15      Document Request No. 61: Plaintiff shall produce all documents concerning use

16  of Google's search engine regarding this lawsuit that are not work product or

17  privileged.  These documents shall be produced by April 15, 2006.  The Court defers

18  ruling on the remainder of Google's motion concerning this request at this time.

19      Document Request No. 62: The Court defers ruling on Google's motion

20  concerning this request at this time.

21      Document Request No. 67:   The Court defers ruling on  Google's motion

22  concerning this request at this time.

23      Document Request No. 68: The Court defers ruling on the request at this time.

24      Document Request No. 69: The motion to compel is granted.  Plaintiff shall

25  produce the following: All non-privileged and non-work product documents referring

26  to or discussing benefits to Plaintiff of being listed in, or being prominently listed in,

27                                  21

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
    OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1  search results by Google or any other Internet search engine.  These documents shall

2  be produced by April 15, 2006.

3  **M.  Document Retention and Maintenance (Document Request Nos. 72-73)**

4

5  <u>Document Request No. 72</u>: The motion to compel is granted.  Plaintiff shall

6  produce the following: All non-privileged and non-work product documents

7  concerning its policies regarding retention, storage, filing and destruction of

8  documents and things.  These documents shall be produced by April 15, 2006.

9  <u>Document Request No. 73</u>: The motion to compel is granted.  Plaintiff shall

10  produce the following: All non-privileged and non-work product documents

11  concerning indexes, lists or inventories of documents and things maintained by or for

12  Plaintiff.  These documents shall be produced by April 15, 2006.

13  **N.  Perfect 10's Documents Evidencing Certain Allegations it Made**

14  **Against Google (Document Request Nos. 20-25, 27-31, 40, 47-49)**

15  <u>Document Request Nos. 20-25, 27-31, 40, 47-49</u>: The Court defers ruling on

16  the organization of these document requests.   The Court further orders the parties to

17  continue meeting and conferring so that production of documents can be in the most

18  useful and accessible manner.

19

20

21  Dated:  _5-19-06_

22  Stephen J. Hillman
   United States Magistrate Judge

23

24

25

26

27  22

28  [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
   OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1    Respectfully submitted,

2    Dated: May _16_, 2006

3    Andrew P. Bridges
     Jennifer A. Golinveaux
4    WINSTON & STRAWN LLP
     Attorneys for Defendant and Counterclaimant
5    Google Inc.

6    Approved as to form only:

7    Jeffrey N. Mausner
     BERMAN, MAUSNER & RESSER
8    Dated: May_____, 2006    Attorneys for Plaintiff and Counter-
     defendant Perfect 10, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                           23

28   [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
     OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

1    Respectfully submitted,

2

3    Dated: May _____, 2006            Andrew P. Bridges
                                   Jennifer A. Golinveaux

4                                    WINSTON & STRAWN LLP
                                   Attorneys for Defendant and Counterclaimant
                                   Google Inc.

5

6    Approved as to form only:

7                                    Jeffrey N. Mausner
                                   BERMAN, MAUSNER & RESSER

8    Dated: May 15, 2006               Attorneys for Plaintiff and Counter-
                                   defendant Perfect 10, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                 23

28    [PROPOSED] ORDER REGARDING GOOGLE INC.'s MOTION TO COMPEL PRODUCTION
                     OF DOCUMENTS AND RESPONSES TO INTERROGATORIES

Exhibit 6

**From:** Jeff Mausner [mailto:jeffmausner@bmrlaw.com]
**Sent:** Tuesday, January 29, 2008 11:15 PM
**To:** Rachel M Herrick
**Subject:** E-mails and letter you sent today

Hi Rachel. I got your e-mails and letter today. I have been working on the Cert Petition in the Perfect 10 v. Visa case, which is due on February 6, but wanted to respond.

Regarding the bond: I'm glad to hear that you will stipulate to return of the bond. Thank you.

Regarding your request for extension of time to respond to Perfect 10's 9th Set of Requests for Production and 4th Set of Requests for Admission: We have always accorded Google's previous counsel such courtesy. Unfortunately, after doing so, we have always simply received many objections in response to our discovery. The case has been going on for years, and we have gotten very little of the discovery we have requested. We have not even gotten some of the items which have been ordered produced. I would like to agree to an extension, but before doing so, I would like some assurance that we are not going to get the same degree of objections and non-production we have gotten in the past. Can you provide such an assurance? Does Google intend to produce a significant number of documents and actually admit or deny the requests for admissions without a large number of objections?

Regarding your letter concerning actual damages, I want to make clear that Perfect 10 does intend to honor its discovery obligations and produce all relevant, non-privileged documents in the categories set forth in your letter. Your letter states that Perfect 10 "must agree to withdraw its objections to these 27 document requests, and all other requests relating to Perfect 10's alleged claim of actual damages, and comply with them in full (to the extent Perfect 10 has not done so already) by immediately producing all responsive documents." First, I believe that Perfect 10 has already withdrawn its objections to the 27 document requests, and all other requests relating to Perfect 10's alleged claim of actual damages. If you are not aware of the Amended/ Supplemental/ Updated Responses to Google's Requests for Production that Perfect 10 served in April 2006, please let me know and I will send you a copy. In these Amended/ Supplemental/ Updated Responses, Perfect 10 withdrew all objections that it had asserted earlier based on not seeking actual damages. In response to Request 71, Perfect 10 specifically stated that Perfect 10 may elect actual damages. If you believe that Perfect 10 has not withdrawn any of its objections based on not seeking actual damages, please let me know, and we will do so immediately.

Second, regarding production of the documents, we have attempted to produce all relevant non-privileged documents relating to actual damages, but I will certainly meet and confer with you and make sure that we produce any such documents that you can point out to me are lacking. We have not tried to "have it both ways," and I think your letter recognizes that we have produced significant documents relevant to actual damages.

In summary, Perfect 10 accepts the second alternative offered in your letter, to withdraw its objections to these 27 document requests to the extent it has not already done so (other than privilege and work product) and produce documents which have not already been produced, in return for Google dropping its claim that Perfect 10 has waived actual damages. Perfect 10 will also advise you of documents subject to protective orders in other cases, so that we may produce such documents or information pursuant to an agreement between you and the other party, or you may seek a court order allowing us to produce the information. This involves the amounts of confidential settlements which were redacted on the financial statements.

Given our agreement above to produce additional documents, I don't believe that a telephone conference will be necessary. Please let me know if you feel otherwise. Regards, Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

Exhibit 7

**Jeffrey Mausner**

---

**From:** Jeffrey Mausner [jeffmausner@bmrlaw.com]
**Sent:** Monday, March 03, 2008 3:45 PM
**To:** Rachel M Herrick; Thomas Nolan
**Subject:** Production of Documents per letter of January 29
**Attachments:** 107.pdf; 102.pdf; 103.pdf; 104.pdf; 105.pdf

ATTACHMENTS ARE HIGHLY CONFIDENTIAL

E-mail No. 1

Hi Rachel and Tom.  Pursuant to Rachel Herrick's letter of January 29 and our agreement that Google will not claim that Perfect 10 waived actual damages upon production of the documents, attached are Perfect 10 financial statements. These will be sent in several e-mails.  All of these documents are designated Highly Confidential under the Protective Order.  Many of the documents have stamps on them of "Confidential" and/or "Attorneys Eyes Only," as well as "Highly Confidential."  Nevertheless, all of the documents are designated Highly Confidential in this case.  Portions of these documents have been redacted.  The redacted portions related to either 1) confidential settlements in other lawsuits, or 2) items that do not have anything to do with the actual damages claim.

Because of the large number of documents involved, I will send them to you in e-mails containing 5 documents each.  I will number the e-mails.  Please let me know if you do not receive any of the e-mails.  Regards, Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Jeffrey Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Monday, March 03, 2008 3:46 PM |
| **To:** | Rachel M Herrick; Thomas Nolan |
| **Subject:** | Production of Documents per letter of January 29 |
| **Attachments:** | 298.pdf; 198.pdf; 199.pdf; 203.pdf; 204.pdf |

ATTACHMENTS ARE HIGHLY CONFIDENTIAL

E-mail No. 2

Hi Rachel and Tom.  Pursuant to Rachel Herrick's letter of January 29 and our agreement that Google will not claim that Perfect 10 waived actual damages upon production of the documents, attached are Perfect 10 financial statements. These will be sent in several e-mails.  All of these documents are designated Highly Confidential under the Protective Order.  Many of the documents have stamps on them of "Confidential" and/or "Attorneys Eyes Only," as well as "Highly Confidential."  Nevertheless, all of the documents are designated Highly Confidential in this case.  Portions of these documents have been redacted.  The redacted portions related to either 1) confidential settlements in other lawsuits, or 2) items that do not have anything to do with the actual damages claim.

Because of the large number of documents involved, I will send them to you in e-mails containing 5 documents each.  I will number the e-mails.  Please let me know if you do not receive any of the e-mails.  Regards, Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Jeffrey Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Monday, March 03, 2008 3:48 PM |
| **To:** | Rachel M Herrick; Thomas Nolan |
| **Subject:** | Production of Documents per letter of January 29 |
| **Attachments:** | 306.pdf; 299.pdf; 302.pdf; 303.pdf; 305.pdf |

ATTACHMENTS ARE HIGHLY CONFIDENTIAL

E-mail No. 3

Hi Rachel and Tom.  Pursuant to Rachel Herrick's letter of January 29 and our agreement that Google will not claim that Perfect 10 waived actual damages upon production of the documents, attached are Perfect 10 financial statements. These will be sent in several e-mails.  All of these documents are designated Highly Confidential under the Protective Order.  Many of the documents have stamps on them of "Confidential" and/or "Attorneys Eyes Only," as well as "Highly Confidential."  Nevertheless, all of the documents are designated Highly Confidential in this case.  Portions of these documents have been redacted.  The redacted portions related to either 1) confidential settlements in other lawsuits, or 2) items that do not have anything to do with the actual damages claim.

Because of the large number of documents involved, I will send them to you in e-mails containing 5 documents each.  I will number the e-mails.  Please let me know if you do not receive any of the e-mails.  Regards, Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Jeffrey Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Monday, March 03, 2008 3:51 PM |
| **To:** | Rachel M Herrick; Thomas Nolan |
| **Subject:** | Production of Documents per letter of January 29 |
| **Attachments:** | 403.pdf; 307.pdf; 398.pdf; 399.pdf; 402.pdf |

HIGHLY CONFIDENTIAL

E-mail No. 4

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

Exhibit 8

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Rachel M Herrick [rachelherrick@quinnemanuel.com] |
| **Sent:** | Monday, March 03, 2008 3:43 PM |
| **To:** | 'Jeffrey Mausner'; Thomas Nolan |
| **Subject:** | RE: Production of Documents per letter of January 29 |

Hi Jeff,

Regarding your statement below:

."...our agreement that Google will not claim that Perfect 10 waived actual damages upon production of the documents..."

What are you referring to? We have never made such an agreement. My January 29 letter stated Google's position, and that remains Google's position.

Thanks,

Rachel M. Herrick
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5005
Main Phone: (650) 801-5000
Main Fax: (650) 801-5100
E-mail: rachelherrick@quinnemanuel.com
Web: www.quinnemanuel.com

**From:** Jeffrey Mausner [mailto:jeffmausner@bmrlaw.com]
**Sent:** Monday, March 03, 2008 3:45 PM
**To:** Rachel M Herrick; Thomas Nolan
**Subject:** Production of Documents per letter of January 29

ATTACHMENTS ARE HIGHLY CONFIDENTIAL

E-mail No. 1

Hi Rachel and Tom. Pursuant to Rachel Herrick's letter of January 29 and our agreement that Google will not claim that Perfect 10 waived actual damages upon production of the documents, attached are Perfect 10 financial statements. These will be sent in several e-mails. All of these documents are designated Highly Confidential under the Protective Order. Many of the documents have stamps on them of "Confidential" and/or "Attorneys Eyes Only," as well as "Highly Confidential." Nevertheless, all of the documents are designated Highly Confidential in this case. Portions of these documents have been redacted. The redacted portions related to either 1) confidential settlements in other lawsuits, or 2) items that do not have anything to do with the actual damages claim.

Because of the large number of documents involved, I will send them to you in e-mails containing 5 documents each. I will number the e-mails. Please let me know if you do not receive any of the e-mails. Regards, Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

Exhibit 9

**From:** Valerie Kincaid ()
**To:** Thomas Nolan
**Date:** Wednesday, November 5, 2008 8:31:11 AM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** Re: Perfect 10, Inc. v. Google Inc.

Tom,

Your recap of the meet and confer is inaccurate in parts, and I do not address each inaccuracy here.

1a.   Google seeks information beyond what is required by the FRCP, and has no persuasive authority for its request.  Perfect 10 has produced the documents it has.  If Google has follow-up questions, it needs to ask them properly.  Document discovery has limitations.  Google has lots of questions it wants to ask about the documents; Google needs to figure out some type of appropriate discovery method for doing so. Perfect 10 has tried repeatedly to go beyond the call of duty and that has resulted in no return favors and repeated accusations of waiver and the like.  I asked you if Google would submit to a follow-up call and answer questions regarding what it has and has not produced -- you said no.

1b.  Google has not been able to articulate what documents it wants.  You said that Google wants documents that show cash flows -- and then Google wants to leave it to Perfect 10 to guess what Google wants.  You are certain documents exist, but you don't know what they are called.  You confirmed that you have not talked to an accountant for Google or a corporate attorney at Quinn Emanuel about this issue.  (You said there are no corporate attorneys at Quinn Emanuel.)  I also suggested you might try to talk to an accountant for Quinn Emanuel.  Any accountant or corporate attorney can explain to you that Google seeks documents that don't exist.  Google seeks the type of financial documents prepared for public companies, and Perfect 10 is not one.

1d.  You already received the letter regarding this topic.

1e.  I believe we did not discuss this on Friday.  At any rate, Perfect 10 will produce whatever server logs it has periodically.  See also the prior correspondence on this issue.

Your recap of the meet and confer process regarding the 1(f) documents is incorrect as shown by the correspondence back and forth on these issues.

1f(1).  This is not called for by any request; it is work product created for this litigation; it is trade secret and irrelevant.

1f(2).  Perfect 10 will be providing new password reports as they become available.  Perfect 10 has provided whatever password reports from several years back that it could find upon a reasonable search.

1f(3).  Again, Google has follow-up questions, and it needs to ask them properly especially here where it not at all clear what Google is asking.

1f(4).  I said that Perfect 10 would provide what it could locate upon a reasonable search and Perfect 10 has done so already.

1(g).  There are some additional FoneStarz documents for production, and they'll be produced in Perfect 10's next production and that will be within the next 2 1/2 weeks.  At the same time, Perfect 10 will produce the contract with the Israeli company referenced in Dr. Zada's declaration.

2. In its next production, Perfect 10 will produce additional documents relating to PicScout. It is not producing the documents relating to expert/consultant declarations, but will do so if Google produces similar documents in its possession. Recall that Perfect 10 has offered to produce such documents "if Google will likewise produce documents regarding its experts/consultants John Levine, Heraldo Botelho, Radhika Malpani, Jessie Jiang, Lawrence You, Diane Tang, and Alexander Macgillivray." Please let us know if Google's position on this has changed.

3. When Perfect 10 receives documents from the Copyright Office, it will produce copies to Google. At the same time, Perfect 10 will provide Google with any additional documents Perfect 10 has agreed to produce. If Perfect 10 does not receive the documents within a month from the Copyright Office, it will go ahead and produce documents before then that it has.

Please let me know if you have any questions.

Very truly yours, Valerie Kincaid

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** Thomas Nolan <thomasnolan@quinnemanuel.com>
**To:** Valerie Kincaid <valeriekincaid@yahoo.com>
**Cc:** Jeff Mausner <jeff@mausnerlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>; Rachel M Herrick <rachelherrick@quinnemanuel.com>
**Sent:** Monday, November 3, 2008 10:59:39 AM
**Subject:** RE: Perfect 10, Inc. v. Google Inc.

Valerie,

This is to confirm our telephonic meet-and-confers of October 31, and to respond to your emails also sent on October 31.

## 1. Documents Related to Financial Information and Actual Damages

### (a) Missing Financial Reports.

You confirmed that these documents "do not exist," but you refused to state whether they were never created, or whether they were lost or destroyed (as Google's Requests for Production require). As you know, Rule 34 requires production of *all* documents in a party's possession, custody or control. See, e.g., Fed. R. Civ. P. 34(a); Buchanan v. Consolidated Stores Corp., 206 F.R.D. 123, 125 (D. Md. 2002) ("Defendant will be ordered to provide an affidavit describing the efforts made to locate documents responsive to requests" for production of documents). Further, Perfect 10 is under an obligation to preserve documents in anticipation of and during pending litigation. See, e.g., Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo. 2007) ("The court has inherent power to impose sanctions for the destruction or loss of evidence."); Sampson v. City of Cambridge, Md., 251 F.R.D. 172, 179 (D. Md. 2008) ("The duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation."). Despite these obligations, you maintain that Perfect 10 has done all it is required to do under the Rules. It appears that the parties' positions on this issue are final, so Google will seek relief from the court, as appropriate, in due course.

### (b) Documents Subject to Disclaimer.

Exhibit 10

**From:** Valerie Kincaid ()
**To:** Thomas Nolan
**Date:** Friday, October 24, 2008 9:28:13 PM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** Re: Perfect 10, Inc. v. Google Inc.

Tom,

You have once again prepared an inaccurate and one-sided summary of a meet and confer. I am not addressing all of the inaccuracies in your e-mail because it is a waste of resources better spent trying to satisfy Google's ever growing list of discovery requests. In this meet and confer you raised yet more new issues not raised before.

1a. The 2007 tax return was produced, in complete and unredacted form. There are no additional documents for production.

1b. You could not identify any documents that Google wants produced. I did not agree to "confirm whether Perfect 10 has additional documents that would reveal the full picture of that condition by this Friday;" those are words neither of us used. At any rate, financial statements with the information Google wants don't exist. Perfect 10 is not a publicly traded company and is not required to prepare the type of financial statements Google seeks. An accountant for Google or a corporate attorney in your office can verify this for you.

1c. Your summary is inaccurate. You said that you looked for and could not find any authority about whether or not a party can redact irrelevant information from a document. You asked me if I researched the issue and I said that I had not. I said that it is clear that irrelevant information may be redacted and that is a practice done all the time. This is particularly true, here, where the redacted information is both private and highly confidential. Perfect 10 is not redacting random, irrelevant information – the information is indisputably private and highly confidential. There are surely numerous cases discussing this issue. I asked you to identify any of the redacted information that is relevant and you could not say anything more than that it is. I asked you to identify a theory of actual damages that would call for the redacted information and you could not. I did not say I would look for authority.

1d. Sean Macias is no longer counsel for Perfect 10. Your second sentence is inaccurate. I will be following up with David Title to get you any information Google is entitled to. As I said on the call, Perfect 10 counsel is not under an obligation to disclose work product, but will provide whatever Google is entitled to.

1e. Perfect 10 provided what it could find upon a reasonable search.

1f. (1-4) You raised these issues, except the first one, for the first time in the October 21 meet and confer. Now that you have identified the issues in writing, if you want to meet and confer telephonically, please let me know.

1f(1). The programs used to create password charts for 2003 and 2004 are work product and will not be produced.

1g. Additional FoneStarz documents will be produced. The second issue is another new one. Now that you have identified it in writing, if you want to meet and confer telephonically, please let me know.

2. Perfect 10 is producing additional documents responsive to 159. I never said I was not "aware of any

authority permitting a party to withhold responsive documents until and unless the opposing party produces unrelated documents." You asked if I looked for such authority and I said that I had not and why would I? This is a non-existent issue; having nothing to do with Perfect 10's objections. Google is not willing to produce similar documents in its possession but believes that Perfect 10 should. Perfect 10 offered a reasonable compromise; and Google said no. Why won't Google produce similar documents?

3. Next week I can let you know if Perfect 10 can predict a date by which it can obtain documents. You asked if Google could inspect originals, and I said I would check with Jeff. Jeff wants to know why Google wants to inspect originals so please let me know as soon as possible. The documents are at Perfect 10 and there should be a good reason for Google's counsel to go there. The documents are for issued registrations.

4. It's a minor point, but you did not volunteer authority – I asked if you had any and you said you did and I asked you to forward it to me rather than read it over the phone since you had it typed up already. Thanks for doing so. The only logistical issue raised by you was whether Google's bates-stamped production would govern the case. Is there another logistical issue you have in mind? I told you that we could work out logistical issues if Google wanted to bates-stamp the documents. You said that you would check and see if Google wanted to bates-stamp the documents, and apparently Google does not want to do so. Why is that? How can Google expect Perfect 10 to do so when Google, which has much greater resources, won't. Also, please forward the prior correspondence you reference on this issue in an e-mail dated October 12.

Very truly yours, Valerie Kincaid

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** Thomas Nolan <thomasnolan@quinnemanuel.com>
**To:** Valerie Kincaid <valeriekincaid@yahoo.com>
**Cc:** Jeff Mausner <jeff@mausnerlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>; Rachel M Herrick <rachelherrick@quinnemanuel.com>
**Sent:** Tuesday, October 21, 2008 7:46:44 PM
**Subject:** Perfect 10, Inc. v. Google Inc.

Valerie,

I write to confirm and follow-up on our telephonic meet-and-confer of today, October 21.

## 1.  Documents Related to Actual Damages

### a.  Missing Financial Reports

Thank you for your confirmation that Perfect 10 will produce its 2007 tax return this week. Please produce it in complete and unredacted form. With respect to the other Financial Statements Google has identified as missing, you stated that Perfect 10 would inform Google by this Friday, October 24, whether Perfect 10 has located and will produce those documents.

### b.  Documents Subject to Disclaimer

Exhibit 11

**From:** Valerie Kincaid ()
**To:** Thomas Nolan
**Date:** Friday, October 31, 2008 1:54:08 PM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** Re: Perfect 10, Inc. v. Google Inc.

Tom,

I've sent you e-mails earlier this week about your e-mail below. Earlier today we discussed the 1(f) issues only since I told you I was addressing your e-mail issue below the writing, and would send you the correspondence by 2 pm. I also thought that was to be the subject of the meet and confer. We spoke about talking at 2 pm today after you received my e-mail. That's ok, but I suggest you put in writing whatever remaining questions Google has, and we talk Monday at 11 am so that we can make this process more productive. Please let me know what you prefer to do.

We, of course, disagree with your first paragraph.

1(a). Perfect 10 is not "refusing" to produce documents. The documents don't exist.

1(b). The documents don't exist. Again, a Google accountant or a Quinn Emanuel corporate attorney can confirm this.

1(c). We disagree with all of Google's arguments.

1(d). We will provide the information regarding confidentiality waivers on Monday or Tuesday because that is when Jeff is back in the office.

1(e). There is nothing unclear. Perfect 10 is not "refusing" to produce documents. Perfect 10 produced what it could locate upon a reasonable search.

1(f). We talked about this earlier today. No. 1. Perfect 10 will provide whatever additional information, if any, it is _**required**_ to provide on the work product issue; not the questions Google deems appropriate. No. 2. As I said, the request is not clear, but Perfect 10 will look for the requested information to the extent we understand your request, and let you know by Tuesday if it can find upon a reasonable search what we understand you asked for. No. 3. You said that Google is actually asking about the questions in its March letter, not what you set out in your October 21 e-mail. I told you that we will respond to those questions by Tuesday to the extent, if any, Perfect 10 is _**required**_ to. I assume you are referring to the questions in the third full paragraph, page 3. No. 4. You said that Google cannot find the documents. Perfect 10 will let you know if it can locate the documents upon a reasonable search by Tuesday.

2. Perfect 10 will produce additional documents in its next production and that will be within the next three weeks.

3. I never indicated that Perfect 10 was "refusing" to produce anything. Perfect 10 is obtaining documents from the Copyright Office. We will let you know as soon as we receive the documents, and you may obtain copies. With regard to the request in your October 6 letter to inspect "originals" of the deposit materials, you still have not said why Google wants to do an inspection. I asked you this question in my prior e-mail but you did not respond to the inquiry. Also, as you know, the original deposit materials are at the Copyright Office; so what is accomplished by Google inspecting the copies of what Perfect 10 sent to that office? Google can go to the Copyright Office and perform an inspection or it can obtain certified copies. Please let us know if Google will stipulate that at trial it is not necessary for

Perfect 10 to obtain certified copies of the deposit materials. If Google is willing to so stipulate, this will impact whether or not Perfect 10 allows an inspection. With regard to pending registrations, nothing is being ordered from the Copyright Office. That is all you asked about. Perfect 10 will produce copies of copyright materials pertaining to pending registrations.

4. What do you mean by acceptable format? The only issues Google has raised are bates-stamping documents and stamping documents confidential. Do you have another issue in mind?

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** Thomas Nolan <thomasnolan@quinnemanuel.com>
**To:** Valerie Kincaid <valeriekincaid@yahoo.com>
**Cc:** Jeff Mausner <jeff@mausnerlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>; Rachel M Herrick <rachelherrick@quinnemanuel.com>
**Sent:** Monday, October 27, 2008 11:52:40 PM
**Subject:** RE: Perfect 10, Inc. v. Google Inc.

Valerie,

My summary was accurate. The only "new" issue I raised on our last call was to ask for the identity of the cell-phone download company to which Dr. Zada referred (but did not name) for the first time in his October 13, 2008 Declaration filed in connection with Perfect 10's recent Motion for Summary Judgment against Alexa Internet and Amazon.com. All of the other issues I have raised over the last few weeks have been pending for many weeks, months or years.

I will respond to your numbered comments in turn below.

### 1(a). Missing Financial Reports.

Thank you for producing the 2007 tax return. Regarding the remainder of the missing financial documents, such as:

- Prior to 1997: All months
- For 1997: January through and including July, September, and October
- For 1998: November
- For 1999: April through and including November
- For 2000: All months except March
- For 2001: January through and including May
- For 2002: February, June, July, August, and October
- For 2003: June and August
- For 2004: March and April
- For 2005: February
- For 2006: January and February
- For 2007: February, May, June, August, October, and November

Is Perfect 10 refusing to produce these documents? If so, please be advised that Google's RFPs require production of all documents in Perfect 10's custody, including documents in the custody of Perfect 10's

Exhibit 12

**From:** Thomas Nolan ()
**To:** Valerie Kincaid
**Date:** Wednesday, November 5, 2008 8:40:56 PM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** RE: Perfect 10, Inc. v. Google Inc.

Valerie,

As always, I have drafted an accurate summary of our meet-and-confer efforts. I will respond to your numbered comments below.

## 1. Documents Related to Financial Information and Actual Damages

### (a) Missing Financial Reports.

As you have made clear, the parties have been unable to agree on the extent of Perfect 10's obligations under the <u>Rules</u> and under Google's requests with respect to these documents. Since Perfect 10 is refusing to provide this basic information to us, we will consider the meet-and-confer process on this issue completed, and Google will proceed with motion practice in due course. Lastly, your suggestion regarding a proposed "follow-up" call to Google is irrelevant, since the parties are not meeting and conferring about any of Google's responses to document requests. As you know, the subject of these meet and confer discussions is Perfect 10's discovery responses, not Google's discovery responses.

### (b) Documents Subject to Disclaimer.

You are still not understanding Google's question, and the remainder of your commentary is irrelevant. Perfect 10 is clearly not modifying its position here, so the meet-and-confer process with respect to this issue is complete. Google will proceed with motion practice in due course.

### (c) Financial Documents Redacted for "Irrelevance."

You have refused to provide any further information regarding this issue, despite our requests. Accordingly, it is confirmed that the meet-and-confer process is completed, and Google will proceed with motion practice in due course.

### (d) Documents Redacted re. Confidential Settlements.

I received Jeffrey Mausner's letter sent yesterday, November 4, via email on which you were cc'd. Thank you for the information contained therein. Please confirm that the letter includes *all* settlements reached by Perfect 10, as Jeff's letter is not clear on this point. Please also let me know as soon as possible when Perfect 10 hears back from counsel for Belmont Studios.

### (e) Server Logs.

We did discuss this issue on Friday, and you confirmed that Perfect 10 believes it has complied with its obligations under the <u>Rules</u> and under Google's requests with respect to these documents, and that Perfect 10 would not modify its position. Your email below again confirms this position. Accordingly, Google will proceed with motion practice on this issue in due course.

### (f) Documents re. Improper Access to Perfect10.com.

#### No. (1). Program Re. Password Access

Your email below confirms that the meet-and-confer process on this issue is complete. Perfect 10 still has provided no basis whatsoever for its claim of Work Product protection. Its newly-added claim that the program is a "trade secret" is baseless, untimely, and does not excuse Perfect 10 from its obligation to produce the program, since the Protective Order in this case provides ample protection for the production of relevant confidential information. Google will proceed with motion practice in due course.

### No. (2)-4. "Passwords Reports," Image and and Text Files in the "passwords reports" Folder, and Sign-up Information for the Third-Party Processor for perfect10.com

You previously stated that you would provide responses to Google on these issues by yesterday, November 4, but did not do so. As discussed above, the parties have been unable to agree on the extent of Perfect 10's obligations under the Rules and under Google's requests with respect to certain document requests, and per your email below, these requests are among those on which the parties disagree. Accordingly, given Perfect 10's refusal to provide any further information, the meet-and-confer process on these issues is completed, and Google will proceed with motion practice in due course.

### (g). Documents re. Cell Phone Downloads and FoneStarz Media Limited.

In your October 28 email, you stated that "there are no additional FoneStarz documents; Perfect 10 provided what it could locate upon a reasonable search." In your email today, however, you state that there *are* additional FoneStarz documents. Thank you for agreeing to produce them. Thank you for also agreeing to produce the contract with the still-unnamed Israeli company referenced in the Zada Declaration. Please confirm that Perfect 10 will be producing *all* documents in its possession, custody, or control related to FoneStarz and related to the Israeli company, as requested by Google's RFP Nos. 46, 113, 133, 134, and 136-48. We look forward to receiving these materials on or around the week of November 17.

### 2. Documents Related to PicScout Inc. and Image Recognition Technology

Thank you for confirming that Perfect 10 will produce additional PicScout documents. However, in your email you make clear that Perfect 10 has additional PicScout documents relating to "expert/consultant declarations" that Perfect 10 is refusing to produce. What are you referring to? We are aware of no colorable basis for Perfect 10's refusal. To the extent Perfect 10 considers PicScout its expert in this case, all materials related to that engagement are discoverable under the Federal Rules. Please specifically identify the documents Perfect 10 is withholding, and identify the privilege or other legal basis upon which Perfect 10 is relying in refusing to produce them.

### 3. Copyright Registration Materials

Thank you for confirming that Perfect 10 will produce copies of all responsive documents it receives from the Copyright Office, on a rolling basis. Further, your email below also appears to confirm that Perfect 10 has copyright registration materials in its possession that it has not yet produced. As you reference, Perfect 10 has agreed to produce these documents, and there is no reason to withhold them for an additional month. Please produce those documents immediately.

You do not address Google's request to inspect originals of the registration and deposit materials. Accordingly, we will presume that Perfect 10's position on this issue is final, and that the meet-and-confer process is complete. Google will proceed with motion practice in due course.

### 4. Perfect 10's Failure to Bates-Stamp its Document Productions

You do not address this issue. Accordingly, we will presume that Perfect 10's position on this issue is final, and that the meet-and-confer process is complete. Google will proceed with motion practice in due

course.

Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the
recipient(s) named above. This message may be an attorney-client communication and/or work product and as
such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible
for delivering it to the intended recipient, you are hereby notified that you have received this document in error and
that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received
this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Wednesday, November 05, 2008 8:31 AM
**To:** Thomas Nolan
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** Re: Perfect 10, Inc. v. Google Inc.

Tom,

Your recap of the meet and confer is inaccurate in parts, and I do not address each inaccuracy here.

1a.   Google seeks information beyond what is required by the FRCP, and has no persuasive authority for
its request. Perfect 10 has produced the documents it has. If Google has follow-up questions, it needs to
ask them properly. Document discovery has limitations. Google has lots of questions it wants to ask
about the documents; Google needs to figure out some type of appropriate discovery method for doing so.
Perfect 10 has tried repeatedly to go beyond the call of duty and that has resulted in no return favors and
repeated accusations of waiver and the like. I asked you if Google would submit to a follow-up call and
answer questions regarding what it has and has not produced -- you said no.

1b. Google has not been able to articulate what documents it wants. You said that Google wants
documents that show cash flows -- and then Google wants to leave it to Perfect 10 to guess what Google
wants. You are certain documents exist, but you don't know what they are called. You confirmed that
you have not talked to an accountant for Google or a corporate attorney at Quinn Emanuel about this
issue. (You said there are no corporate attorneys at Quinn Emanuel.) I also suggested you might try to
talk to an accountant for Quinn Emanuel. Any accountant or corporate attorney can explain to you that
Google seeks documents that don't exist. Google seeks the type of financial documents prepared for
public companies, and Perfect 10 is not one.

1d. You already received the letter regarding this topic.

1e. I believe we did not discuss this on Friday. At any rate, Perfect 10 will produce whatever server logs

Exhibit 13

**From:** Thomas Nolan ()
**To:** Valerie Kincaid
**Date:** Friday, October 10, 2008 6:44:55 PM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick; Andrea P Roberts
**Subject:** RE: Perfect 10 v. Google

Valerie,

I will respond to the issues you have raised below in turn.

## Google's Letter Regarding Financial Documents.

### 1. Missing Financial Documents.

Thank you for agreeing to produce the 2007 tax return. Please provide a date certain by which Perfect 10 will produce it. Please also confirm whether Perfect 10 will produce the other documents identified as missing in our prior correspondence.

### 2. Documents Subject to Disclaimer.

To clarify, Google is seeking the financial documents that provide "all of the disclosures and the statement of cash flows as required by generally accepted accounting principles," as opposed to the financial documents Perfect 10 has produced (which omit that information). Please provide a date certain by which you will produce such documents.

### 3. Improper Redactions.

All financial information (including the redacted information on Perfect 10's previously produced financial documents) is relevant if Perfect 10 intends to assert an actual damages claim. In spite of this, you persist with the same unsupported position Perfect 10 has taken for months. Unless we hear otherwise by close of business on Monday, October 13, 2008, we will assume this is Perfect 10's final position and proceed accordingly.

Similarly, Perfect 10 states it has redacted certain portions of the documents containing "confidential" settlement accounts, and you stated that Perfect 10 has failed to obtain waivers of confidentiality from certain unnamed "opposing parties." As Rachel identified in her August 28 letter, paragraph 25 of the Protective Order requires Perfect 10 to attempt to obtain such waivers, and if consent is refused, to identify (1) the existence and description of the settlements, and (2) the identity of the non-party. Your email does not identify any of the "opposing parties" who you claim Perfect 10 has contacted, nor does it identify the existence and description of the settlements. In prior correspondence, your associate David Title identified two attorneys from whom he claims to have sought a waiver of confidentiality -- Sean Macias and Long Bui -- and mentioned "other settlements" that Perfect 10 was "looking into." Given that Mr. Macias has formally associated in with Mr. Mausner as counsel for Perfect 10, please attempt to obtain his consent immediately. Please also attempt to obtain consent from all opposing parties in all settlements, and if such consent is refused, please comply with the Protective Order by identifying (1) the existence and description of each settlement, and (2) the identity of each non-party, by close of business on Monday, October 13, 2008,

## Google's Letter Regarding PicScout Documents.

Thank you for confirming that Perfect 10 will produce all documents responsive to Google's RFP No. 159. Please provide a date certain for this production.

As for Perfect 10's position on Google's RFP Nos. 124 and 125, this is not a valid basis for withholding documents under Rule 26, Rule 34, or any case law applying those rules. And further, even if it were a proper objection (which it is not), Perfect 10 has waived it by producing selected PicScout documents in this case already. Unless we hear otherwise during our telephonic meet-and-confer on Monday, we will assume this is Perfect 10's final position and proceed accordingly.

Additionally, your email fails to address several issues relevant to Perfect 10's claim (if any) of actual damages that were specifically identified in Rachel's letter of March 18, 2008 (which is specifically-referenced in Rachel's August 28 letter). These issues include the following:

1. **Server Logs.**

   Perfect 10 has failed to produce "server log" files for Perfect 10's website(s) for any years prior to 2003 and for 2004, and has failed to confirm that its production of server logs for 2003 and 2005-2008 is complete. Please provide date(s) certain for this production, and the necessary confirmations, by the close of business on October 13.

2. **Documents Related to Unauthorized Access.**

   Perfect 10 has failed to produce a software program used by Perfect 10 to analyze log data for certain password-related activities by perfect10.com users, as Dr. Zada stated he would in our teleconference of February 22, 2008. Perfect 10 has also failed to confirm that its production of documents relevant to any alleged unauthorized access to its websites (including copying or downloading of images therefrom) is complete. Please provide date(s) certain for this production, and the necessary confirmations, by the close of business on October 13.

3. **FoneStarz Documents.**

   On February 29, 2008, we submitted a request to David Title to confirm that Perfect 10's production of documents related to FoneStarz is complete. Perfect 10 produced some additional FoneStarz documents on May 20, 2008, but Google has not received any such confirmation. Please provide date(s) certain for any further productions, and the necessary confirmations, by the close of business on October 13.

Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Friday, October 10, 2008 7:41 AM
**To:** Rachel M Herrick; Thomas Nolan
**Cc:** Jeff Mausner
**Subject:** Perfect 10 v. Google

Counsel,

We received the letter from Rachel Herrick, dated August 28, 2008, regarding financial documents, and the letter from Tom Nolan, dated August 28, 2008, regarding PicScout documents.

With regard to Ms. Herrick's letter, Perfect 10 will not address the misstatements regarding prior correspondence and the meet and confer history since it is all documented.

With regard to Ms. Herrick's letter, on page 2, under the first heading "Missing Financial Reports and Tax Returns," Ms. Herrick lists documents Google believes are missing from production. Perfect 10 will produce the 2007 tax return.. We are checking to see if we can obtain copies of the other documents.

On page 2, under the second heading, "Improper Production Subject to Disclaimer," we do not understand what additional documents Google is seeking. Please clarify.

On page 3, under the third heading, "Improper Redactions of Financial Information," Google requests that Perfect 10 produce already produced documents with fewer redactions. Perfect 10 does not believe the redacted information is relevant to the issue of actual damages.

Under the same heading, Ms. Herrick inquires about confidential settlement agreements. Perfect 10 was not able to obtain waivers from the opposing parties it already has contacted through their respective counsel.. I suggest that you contact counsel for those parties and see if you can work out a waiver agreement with them.

With regard to Mr. Nolan's letter, to the extent there are additional documents for production that fall within request no. 159, which Perfect 10 agreed to produce, Perfect 10 will produce them in its next production. Perfect 10 did not agree to produce documents in response to requests nos. 124 and 125 unless Google agreed to produce certain documents. In response to each, Perfect responded, *inter alia*, "Subject to, and without waving the foregoing objections and general objections, Perfect 10 will produce non-privileged and non-work product documents which are responsive to this request, which can be located upon a reasonable and diligent search, if Google will likewise produce documents regarding its experts/consultants John Levine, Heraldo Botelho, Radhika Malpani, Jessie Jiang, Lawrence You, Diane Tang, and Alexander Macgillivray." Please let us know Google's position on this.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

Exhibit 14

**From:** Thomas Nolan ()
**To:** Valerie Kincaid
**Date:** Monday, November 3, 2008 10:59:39 AM
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** RE: Perfect 10, Inc. v. Google Inc.

Valerie,

This is to confirm our telephonic meet-and-confers of October 31, and to respond to your emails also sent on October 31.

## 1. Documents Related to Financial Information and Actual Damages

### (a) Missing Financial Reports.

You confirmed that these documents "do not exist," but you refused to state whether they were never created, or whether they were lost or destroyed (as Google's Requests for Production require). As you know, Rule 34 requires production of *all* documents in a party's possession, custody or control. See, e.g., Fed. R. Civ. P. 34(a); Buchanan v. Consolidated Stores Corp., 206 F.R.D. 123, 125 (D. Md. 2002) ("Defendant will be ordered to provide an affidavit describing the efforts made to locate documents responsive to requests" for production of documents). Further, Perfect 10 is under an obligation to preserve documents in anticipation of and during pending litigation. See, e.g., Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc., 244 F.R.D. 614, 620 (D. Colo. 2007) ("The court has inherent power to impose sanctions for the destruction or loss of evidence."); Sampson v. City of Cambridge, Md., 251 F.R.D. 172, 179 (D. Md. 2008) ("The duty to preserve relevant evidence is an independent duty that exists even if the party seeking the evidence did not request a court order for its preservation."). Despite these obligations, you maintain that Perfect 10 has done all it is required to do under the Rules. It appears that the parties' positions on this issue are final, so Google will seek relief from the court, as appropriate, in due course.

### (b) Documents Subject to Disclaimer.

I explained that the Financial Statements Perfect 10 has produced clearly do not reflect all cash flows in and out of Perfect 10, Inc. -- indeed, they state on their face that they are not even intended to do so. You again stated that the documents Google requests "do not exist" but would not explain what you meant by that, or whether the documents existed at one time but were subsequently lost or destroyed. It appears that the parties' positions on this issue are final as well, so Google will move forward with motion practice in due course.

### (c) Financial Documents Redacted for "Irrelevance."

You have confirmed that Perfect 10 is unwilling to modify its position on this issue. Accordingly, the meet-and-confer process on this issue is completed, and Google will move forward with motion practice in due course.

### (d) Documents Redacted re. Confidential Settlements.

While you previously agreed to provide Google with the information regarding Perfect 10's confidential settlements, as required by the Protective Order, by October 31, you stated on October 31 that you would not provide it until Tuesday November 4. I agreed to the extension, and we look forward to your prompt response. If we do not hear from you on this issue by then, we will proceed with motion practice as necessary.

**(e) Server Logs.**

Again, you stated that Perfect 10 would not produce further documents, and that you believe Perfect 10 has satisfied its obligations under the Rules with respect to these documents. For the same reasons discussed above and previously, Google disagrees. The meet-and-confer process is completed with respect to these documents, and Google will seek relief from the court as appropriate.

**(f) Documents re. Improper Access to Perfect10.com.**

You refused to discuss or respond to Issues 2-4, below, until I put Google's requests in writing. I explained that Google first raised them, in writing, by letter dated March 18, 2008. Google raised them again in prior correspondence, and I explained them again over the phone. I will now address them in turn.

### No. (1). Program Re. Password Access

I explained that Perfect 10's newly-raised Work Product objection is untimely and waived. I also asked you to identify Perfect 10's basis of withholding the program based on the Work Product Doctrine, and you stated you did not know the specifics of Perfect 10's basis. You stated in your email that "Perfect 10 will provide whatever information, if any, it is required to provide" on this issue. It appears that Perfect 10 does not have any basis for its purported Work Product objection. Accordingly, the meet-and-confer process with regard to the program is completed, and Google will proceed with motion practice in due course.

### No. (2). "Passwords Reports"

Google believes that its request was clearly made in the March 18 letter and clearly re-iterated today, but in case any ambiguity remains, Google again states that Perfect 10 has produced "password report" documents covering the time periods January 16, 2002 through December 16, 2002, January 8, 2003 through August 5, 2003, all of 2004, and all of 2005. Google has asked, and asks again, that Perfect 10 produce such documents covering all *other* time periods, from the launch of perfect10.com to the present. You stated that you would provide this information (if it can be located by "reasonable search") by Tuesday, November 4. I look forward to your prompt response.

### No. (3). Image and and Text Files in the "passwords reports" Folder.

As Google explained in the March 18 letter, as I referenced in prior correspondence, and as I again explained over the phone, this folder contains two text files titled "f83.txt" and f83_all.txt, both of which appear to be massive listings of various Internet user names in no particular order, and a large number of .gif and .html files that appear to reflect various web server statistics in various tables, graphs, pie charts, and the like. All of these documents are not organized in any logical way and are otherwise not useful in their current form. Google has asked Perfect 10 to state whether it believes they are responsive to Google's Requests Nos. 98-102, and if so, to explain how they are relevant to those Requests. Google has also asked Perfect 10 to explain how those documents are organized, if at all.

You have stated that Perfect 10 will respond to these questions, to the extent Perfect 10 believes it is required to do so, by Tuesday, November 4. In formulating your response, please bear in mind the clear dictates of Rule 34, that a "party must produce documents as they are kept in the usual course of business" and "in a form ... in which it is ordinarily maintained or in a reasonably useable form." Fed. R. Civ. P. 34(b)(2)(E)(i) & (ii). We look forward to receiving your prompt response.

### No. (4). Sign-up Information for the Third-Party Processor for perfect10.com

Google has been unable to locate these documents in the document production. You stated that you would provide this information by Tuesday, November 4. I look forward to your prompt response.

**(g). Documents re. Cell Phone Downloads and FoneStarz Media Limited.**

You stated via email that Perfect 10 will look for the documents we have identified as missing and will inform Google of the results by Tuesday, November 4. We look forward to your prompt response. In preparing that response, please keep in mind the obligations of production and preservation discussed above, and please be advised that if Perfect 10 does not produce the missing documents in short order, Google will proceed with motion practice on this issue as well.

## 2. Documents Related to PicScout Inc. and Image Recognition Technology

You stated that Perfect 10 will produce additional documents responsive to these requests "within the next three weeks." You refused, however, to confirm whether the additional documents Perfect 10 will produce relate to PicScout, as we have specifically asked. As you know, the deposition of PicScout is set for December 4, so it is critical that we immediately receive all documents in Perfect 10's possession, custody or control that relate to PicScout. Please confirm by the close of business on Tuesday, November 4 whether Perfect 10 will do so. Otherwise, we will assume that Perfect 10 is refusing to produce its documents related to PicScout, and that this is Perfect 10's final position. Google will proceed with motion practice on this issue in due course. Also, if Perfect 10 produces its PicScout documents after the December 4 PicScout deposition, forcing Google to have to take a second day of deposition of PicScout, Google also reserves the right to seek fees, costs and sanctions against Perfect 10 related thereto.

## 3. Copyright Registration Materials

Regarding the missing alleged issued copyright registrations and deposit materials, you stated that you believed Perfect 10 had some in its possession, and is obtaining copies of others from the Copyright Office. You stated that Perfect 10 would produce the documents when obtained from the Copyright Office, but that you could not predict when that would be (because you did not know how long the Copyright Office would take to process Perfect 10's requests). You also stated that Perfect 10 would produce copies of the alleged missing pending registrations, and any missing correspondence with the Copyright Office, at this same time. I explained that Perfect 10 is obliged to produce the materials it has in its possession, and that these documents are the foundational documents of Perfect 10's case. By the close of business on November 4, please provide a date certain for production of all remaining copyright registration and deposit materials currently in Perfect 10's position. Please also confirm that Perfect 10 will immediately produce any further copyright registration materials it receives from the Copyright Office, on a rolling basis, as the materials are received.

With regard to inspection of originals, Google has already stated that Rule 34 permits inspections, and that Google needs to inspect originals because, at the very least, Perfect 10 has not produced the alleged registrations and deposit materials in the form in which it submitted them to the Copyright Office. It is clear that Perfect 10 will not permit inspection without a court order, and Google will accordingly proceed with motion practice.

Lastly, you asked whether Google will stipulate that it is unnecessary for Perfect 10 to obtain certified copies of deposit materials for use at trial. Google will not so stipulate. Perfect 10 must prove its own case.

## 4. Perfect 10's Failure to Bates-Stamp its Document Productions

You confirmed that the parties' positions on this issue are final, and that the meet-and-confer process is completed. Google will proceed with motion practice in due course.

Best Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Friday, October 31, 2008 1:54 PM
**To:** Thomas Nolan
**Cc:** Jeff Mausner; Michael T Zeller; Rachel M Herrick
**Subject:** Re: Perfect 10, Inc. v. Google Inc.

Tom,

I've sent you e-mails earlier this week about your e-mail below. Earlier today we discussed the 1(f) issues only since I told you I was addressing your e-mail below in writing, and would send you the correspondence by 2 pm. I also thought that was to be the subject of the meet and confer. We spoke about talking at 2 pm today after you received my e-mail. That's ok, but I suggest you put in writing whatever remaining questions Google has, and we talk Monday at 11 am so that we can make this process more productive. Please let me know what you prefer to do.

We, of course, disagree with your first paragraph.

1(a). Perfect 10 is not "refusing" to produce documents. The documents don't exist.

1(b). The documents don't exist. Again, a Google accountant or a Quinn Emanuel corporate attorney can confirm this.

1(c). We disagree with all of Google's arguments.

1(d). We will provide the information regarding confidentiality waivers on Monday or Tuesday because that is when Jeff is back in the office.

1(e). There is nothing unclear. Perfect 10 is not "refusing" to produce documents. Perfect 10 produced what it could locate upon a reasonable search.

Exhibit 15

**Subject:** [#16531076] Google DMCA Complaint
**From:** removals@google.com
**Date:** Fri, 05 Nov 2004 14:31:51 -0800
**To:** normanz@earthlink.net

Hi Norm,

We have received your DMCA complaint dated 11/2/04. We are currently
reviewing the complaint and will contact you when we have completed
processing the request. We appreciate your patience during this process.

Please note that a copy of each legal notice we receive is sent to a
third-party partner for publication and annotation. As such, your letter
(with your personal information removed) will be forwarded to Chilling
Effects (http://www.chillingeffects.org) for publication. You can see an
example of such a publication at
http://www.chillingeffects.org/dmca512/notice.cgi?NoticeID=861. A link to
your published letter will be displayed in Google's search results in
place of the removed content.

Regards,
The Google Team

**Subject:** (no subject)
**From:** Norman Z <normanz@earthlink.net>
**Date:** Fri, 27 Jan 2006 17:59:38 -0800
**To:** Alexander Macgillivray <amac@google.com>


Dear Mr. Macgillivray,

Despite Perfect 10's repeated objections, Google is continuing to publish Perfect 10's
confidential DMCA notices.  As we have explained on several occasions, Perfect 10's DMCA
notices provide a roadmap to those who wish to see Perfect 10 images without charge.
Perfect 10 has produced its DMCA notices to Google stamped "confidential."  Perfect 10's
notices are confidential and I demand that you immediately cause Chilling Effects and
whoever else you provided those notices to, to stop publishing them immediately.


Sincerely,


Norm Zada, Ph.D.

**Subject:** Re: [#142594319] Google DMCA Complaint
**From:** Norman Z <normanz@earthlink.net>
**Date:** Wed, 02 May 2007 11:30:29 -0700
**To:** help@google.com

Please be advised that our notices are confidential and you are not authorized to forward them to anyone.

Thank you,

Norm Zada, Ph.D.

PERFECT 10

help@google.com wrote:

> Hi Norm,
>
> We have received your DMCA complaint dated April 24 2007. We are currently reviewing the complaint and will contact you when we have completed processing the request. We appreciate your patience during this process.
>
> Please note that a copy of each legal notice we receive is sent to a third-party partner for publication and annotation. As such, your letter (with your personal information removed) will be forwarded to Chilling Effects (http://www.chillingeffects.org ) for publication. You can see an example of such a publication at http://www.chillingeffects.org/dmca512/notice.cgi?NoticeID=861. A link to your published letter will be displayed in Google's search results in place of the removed content.
>
> Regards,
> The Google Team

Chilling Effects Clearinghouse > DMCA Safe Harbor Provisions > Notices > Perfect 10 Complains Again

 Print-friendly

# Perfect 10 Complains Again

April 24, 2007

**Sender Information:**
Perfect 10, Inc
Sent by: [Private]
[Private]
Beverly Hills, CA, 90212, USA

**Recipient Information:**
[Private]
Google, Inc.
1600 Amphitheatre
Mountain View, CA, 94043, USA

Sent via: fax
**Re:**

The following is a DMCA notice.

Google is actively linking to, and displaying, stolen content belonging to Perfect 10 and thousands of other copyright holders, as well as violating the rights of thousands of celebrities.

The attached excel spreadsheet contains a list of websites that have misappropriated Perfect 10 copyrighted works. The column in the middle provides either a) the name of the model in the infringing image, or the search term, or both. In almost all cases, when a model name appears in the middle column, it is both the name of the model in the infringing image and the search term. The column on the left contains a URL which is returned by Google when a search is done on the search term in the middle column. That URL identifies either a) a webpage that contains infringing images of the model whose name appears in the second column, b) a webpages that contains a list with that model name and one must click on the link for that model to see the infringing images, c) a web page which contains a search box and one must put the model name or Perfect 10 in the search box to find the images of that model, or d) in the case of the last 168 URLs listed, which are paysites that advertise with your company or to which Google links (such as lusenet.com, 100proofnews.com, alibis.com, astraweb.com, athenanews.com, binaries. com, cheapnewsgroups.com, diiva.com, easynews.com, eurousenet.com, newsdemon.com, newsfeeds.com, newsgroup-binaries.com, newsgroupdirect.com, newsguy.com, newsgroups.com, newshosting.com, nntpjunkie. com, nothinbutnews.com, planetnewsgroups.com, powerusenet.com, rhinonewsgroups.com, thevalkyrie.com, thundernews.com, titannews.com, usenet.com, usenet-access.com, usenetbinaries.com, usenetgiant.com, usenetmonster.com, usenet-unlimited.com, usenext.com, xusenet.com, yottanews.com, and the other websites listed), I have listed the URL of the infringing website, as there are typically no "webpage URLs." For those websites, to find the infringing images, you must subscribe to the website and then do a search on the model name, i.e. alena drazna. Typically, twenty or so images will appear of that model, all with Perfect 10 copyright notices. Images with Perfect 10 copyright notices are copyrighted by Perfect 10. It is also possible to locate thousands of Perfect 10 images on such websites by doing a search on "P10." I have attached examples of some of the Perfect 10 images on these infringing websites. The entires on the spreadsheet corresponding to these images are in bold.

GOOGLE is also listing password hacking websites in its search results which contain username/password combinations which allow unauthorized access to all the copyrighted works in perfect10.com. Because the passwords on these sites change frequently, any password hacking website could be dispensing perfect10.com passwords at any time. Sites that have distributed perfect10.com passwords in the past include abu-passwords.com, accessions.org, adult-hacks.com, adult-password.com, adultpasswordcracks.com, adultunderground.com, allpasswords.com, altpassword.com, backdoors.org, banditpasswords.com, bat-yarn1.dyndns.biz, bestxxxpasswords.com, carandmodel.com, cleanpasses.org, custom-hacks.com, darkflast.com, dirty-passwords. com, cleanpasses.org, custom-hacks.com, darkflash.com, dirty-passwords.com, doctoramor.com, dutchpasswords.

More Like This Notice
● Google and the D: Notices sent to Google
● Perfect 10: Perfect 10

Other Recent C&Ds
● HBO After "True Blood", SafeNet DMCA, October 27, 2008
● Individual complains of photo use in video , [Individual], October 1, 2008
● Photographer complains of link, thumbnail, [photographer], September 1, 2008
● New York Times Wrestles Down Copy, The New York Times Company, August 25, 2008
● Don't Pimp My Infrastructure Link, Opus Solutions, August 22, 2008
more

Related News
● Scientology Fights Critics with 4000 DMCA Takedown Notices, Nate Anderson, Ars Technica, September 8, 2008
● DMCA "Repeat Infringers": Scientology Critic's Account Reinstated after Counter-Notification, Wendy Seltzer, June 6, 2008
● Air Force DMCA-Bombs YouTube, Wendy Seltzer, from a report at Wired's Threat Level, March 7, 2008
● Better Know a Lawsuit, Andy Gass, Samuelson Clinic, Boalt Hall, March 27, 2007
● RIAA Refuses to Share Even After Verdict in Defendant's Favor, Niki R. Woods, Samuelson Law, Technology, and Public Policy Clinic - Boalt Hall, February 23, 2007
more

Related Resources
● Fair Use Network, (Online information resource)
● Build Your Own DMCA Counter-Notice, (form)
● Service Provider Designation of Agent for Notification of Claims of Infringement, Library of Congress

com, eastpasswords.com, extremepasses.com, exxxpasswords.com, ezypass.com, fantasypass.com, forbiddenpasswords.com, forbiddenxxx.net, forbiddenxxx.org, forodivx.com, forum.unigames.com, fredspasses. com, freepasses.net, freesexwebsites.com, freeweb.hu, freshhacks.com, fuckyouanddie.com, fxpmatrix.net, grudgefuck.com, hackedlogins.com, hackedpass.com, hackedpaysites.com, hackxxxpasses.com, ip-forever.by.ru, irc.forumtr.com, iseekpasswords.com, killysex.com, loginaccepted.com, lonieserver.de, lostcoders.net, luckysxxxpasswords.com, mad-passes.com, magiakalifa.com, members.home.nl, mostpasswords.com, mperfect. com, necrohiphop.com, nejcpass.com, password-express.com, pass4u.net, passcracker.com, passdb.com, passes4all.com, passwordcorp.com, passwordhq.com, passwordshell.com, peterspasses.dk, pornosaur.com, project12.org, sexo.todoslosforos.com, sweetpasswords.com, xxxpassmasters.com, xxxpasswordrus.com, yourxxxpasses.com, zimapass.com, gold-members.com, crazypasses.com, passwordoutlet.com, happy-hacker.com, rawpasswords.com, tanyamegasite.com, nudepass.com, passwordforum.com rs-pix.com, ultrapasswords.com, onlinexpasswords.com, uhfpasswords.com, web888.net, and most other password hacking websites.

Perfect 10's copyrighted works which have been infringed can be found at perfect10.com. If you wish to examine such copyrighted words, we can provide you with a temporary username/password, free of charge, with which you may do so. Please contact me if you would like such a free temporary username/password. Once you enter the perfect10.com website, simply click on the first letter of the first name of the model. For example, if you want to find the Perfect 10 copyrighted images of Alena Drazna, you would click on "A," and then look for her name. Perfect 10's copyrighted works which it has purchased from Amy Weber may be found on the website amyweber. net.

I swear under penalty of perjury that a) I have a good faith belief that use of the Perfect 10 copyrighted material in the manner complained of in this email is not authorized by the copyright owner Perfect 10, its agent, or the law; b) that the information in the notification is accurate, to the best of my knowledge; and c) that I am authorized to act on behalf of Perfect 10, Inc. the owner of the exclusive rights in the material which is being infringed.

Please contact me if you have any questions about this notice.

/[private]/

[private]
Perfect 10, Inc.
[private]
[private]
Beverly Hills, CA 90212
Fax: [private]
[private]@earthlink.net

infringing URL
http://babemania.com/links/W_/Amy_Weber/
http://celebrityworld.tv/index.php?section=show&babes=amy_weber&photo=3738
http://funmunch.com/directory/celebrities/actresses/a/amy_weber/index.shtml
http://medyafaresi.com/?hid=3415&cid=4
http://sanalmanken.com/Amy_Weber.asp?resim=12
http://starz.ru/celebrities/Amy_Weber.htm
http://toocharger.com/images/fonds_d_ecran/celebrites_femmes/amy_weber/
http://wallpaper.it/Categorie/default.asp?cid=705
http://celebsgallery.org/pictures/SedefAvici/Sedef_Avici-1.html
http://infostore.org/info/2259905?pid=1959788
http://wallpapery.janu.biz/displayimage.php?album=53&pos=26
http://jazzdump.juicypornhost.com/gallery.php?gid=29350
http://women.ucgalleries.com/gallery.php?id=151100
http://znanekobiety.pl/viewtopic.php?t=323341
http://averlo.com.ar/lucas/Alla_Tichomirova/image2.html
http://greh.ru/foto/trysi/_04.htm
http://www.soloevas.com/local-cgi/search/search.cgi?Realm=&Match=0&Terms=Contactos&Rank=171
http://tgpfriendly2.com/members/ruswife/AllaTichomirova
http://aeonsuper.250x.com/Pictures/ZZ--List.htm
http://stars-zone.com/galery2.php3?pg=0&gal=17
http://adult.backwash.com/contentboard.php?con_id=19559
http://kep.tar.hu/pten/27661780
http://eroticas.urbenalia.com/index.php?pg=10
http://forumfor.biz/archive/index.php/t-13378.html
http://kep.tar.hu/pten/27661778
http://4thclick.com/iceposter/demos/buzzedition.com/store.php?fc_page=2

**Other Topics**

- ACPA
- Anticircumvention (DMCA)
- Chilling Effects Clearinghouse
- Copyright
- Copyright and Fair Use
- Defamation
- Derivative Works
- DMCA Subpoenas
- Documenting Your Domain Defense
- Domain Names and Trademarks
- E-Commerce Patents
- Fan Fiction
- International
- John Doe Anonymity
- Linking
- Patent
- Piracy or Copyright Infringement
- Protest, Parody and Criticism Sites
- Responses
- Reverse Engineering
- Trade Secret
- Trademark
- UDRP
- Uncategorized

This Topic: DMCA Safe Harbor Provisions

Topic Frequently Asked Questions (and Answers)

http://forums.lazygirls.info/9196.html
http://hotwallposters.com/store.php?fc_term=Celine+Vignard
http://iceposter.com/posters/Celine_Vignard/G15333_Celine_Vignard_Photo.html
http://imagefap.com/usergallery.php?userid=4058&page=10
http://lazygirls.info/Celine_Vignard
http://posterpal.webhero.com/store.php?fc_term=Celine+Vignard
http://www.sexympegs.net/models/
http://imagefap.com/gallery.php?gid=400820
http://imagemetasearch.com/images/angelina+jolie.html
http://alvier.ru/cat/models/page1630.html
http://www.desktopgirls.ru/scripts/starslist.asp?do=foto&show=pagenum&letter=J&lang=eng&page=50
http://look.restart.ro/?/jpg.pl?tip=101&sts=0&std=10
http://soleilcouchant.net/photo-301132-1135_jpg.html
http://topstars.fr/recherche-stars/marie_kete.html
http://wallpapers.hutor.ru/cat.php3?cat=4&p=60&sort=0
http://angelblazes.com/jr/kristel.html
http://boards.ign.com/The_Vestibule/b5296/53441069/?14
http://humano.ya.com/modelazos/series/suprub/pages/Kristel%20Kama_jpg.htm
http://panstudio.com/celebritystop/wallpaperslist.php?type=celebs&title=Kristel_spKama
http://persona.rin.ru/view/f/0/29883/farmer-milen-mylene-farmer
illegible
http://www.wallpaper.web-z.net/wallpaper-kategorie,babes,3.htm
http://zdclan.nl/wallpapers.htm
http://www.ismaster.net/risultati.php?celeb=Lena%20Panova
http://209.172.55.126/board/archive/index.php/f-7.html
http://213.193.245.202/showthread.php?t=86066
http://www.hatunum.net/showthread.php/perfect-10-2097/index.html?p=2353
http://onlyformen.be/forum/t797-quoteperfect-10quot-the-pleasure-principle-another-perfect-10-magazine-thread.
html
illegible
http://scangarden.allbreast.com/scangardenswd.html
illegible
http://www.fritchy.com/showpost.php?p=119767&postcount=141
tornado.zrs.hr/~ivucica/thumber/iskon/iskon.php?datum=20060114&djevojka
user.7host.com/gti70/babes2/babe_week.asp?week=24
lazygirls.info/Marisa_Miller/Marisa_Miller_5__TNBbc5t
82.208.64.6/dm/eroart/
members.fortunecity.com/igorsuper/ZZ--List_EN.htm
mysweetharem.com/folder.asp?path=509&name=Nataskia%20Maren
wallpapers-zone.com/stars_et_top_models_femmes/nataskia_maren.html
100000-images.com/fond-d-ecran-Oksana%20Konakova.htm
alibabaweb.com/index.php
allwallpapers.net/fr/wallpapers-18-o-1-Celebrites-Femmes.html
animations-cartes.com/out.php?id=19
coolwallpapers.org/sitemap/8
desktop.mycom.ru/gallery.php?tid=701803150
desktopgirls.com/search_display.asp?photo_id=1708&page=1&query=Oksana+Konakova
desktopia.it/foto/page_O-0.html
desktopmodel.nl/deutsch/index.php
eroticaland.net/Women.php
fond-ecran.com/femmes/oksana_konakova/fonds.html
funonline.ro/wallpapers-subcategorie-c_id-3761.html
gallery.alexus.org/main.php?g2_page=14
girlfinder.dk/names/index.asp?actionvar=o
girls.mk-edition.com/index.php?direc=celebs
hebus.com/cat-1-27-Fonds%20d'ecran%20Celebrites%20Femme.html
home.adelphia.net/~ltowns/wp.html
knigki.ru/wallpapers/category/32/36.html
les-stars-sexy.com/wallpaper.php
maxxiweb.com/wallpapers/top-download/page7.html
meteor.free.fr/Fergie.php
neboo.com/wallpaper/celebrites-feminines.html
netglimse.com/celebs/dirs/o.shtml
net-okaz.com/wallpaper21.php
oldsocks.co.uk/Dir/o.htm
russiancelebrities.net/set.php?gal=4&prf=77

russiancelebrities.org/rclSet.asp?GID=4&PID=489&SID=1
serialgamer.com/fichewallpapers-711-3.html
serial-gamer.com/wallpapers-galeries-6-stars_at_top_models_femmes.html
tonguide.com/fondecran/fonds-ecran,2.html
toocharger.com/images/fonds_d_ecran/celebrites_femmes/
wallpapers.protonet.ru/section/foto/O/Oksana%20Konakova.html
webdrole.com/wallpapers/index.php?rep=celebrites-feminines%20(charme)%2FO
fritchy.com/printthread.php?t=9075&page=7&pp=25
paparazzigr.tv/afieromata/perfect10_3.htm
celebnipshots.com/modules/myalbum/photo.php?lid=429&cid=164
celebswap.com/pics/lofiversion/index.php/f46-4350.html
porn613.net/forum/read.php?15,16515,16552,quote=1
psicofxp.com/forums/sitemap/f-51-p-86.html
vitakappa.net/phpwebgallery/picture.php?cat=most_visited&show_metadata=1&image_id=1912
flickr.com/photo_zoom.gne?id=51674222&size=m
kisino.com/buy/?location=&cat=WALL&Type=CELEB&PID=951143
lazygirls.info/Olga_Yatsenko
orsmforums.net/lofiversion/index.php/f3-3750.html
shockmodels.info/forum/topic2430.html
abshell.net/phpBB2/viewtopic.php?
t=63520&postdays=0&postorder=asc&start=30&sid=fa3aa7e61488e8d7f984f012cbd6e997
aeonsuper.250x.com/Pictures/Pictures/21/Heap.htm
angelblazes.com/jr.html
angelfire.com/celeb2/superaeon/Pictures/ZZ--List_EN.htm
extremefitness.com/showflat.php?Cat=0&Number=114847&page=74&fpart=1&vc=1
forum.dvdtalk.com/showthread.php?t=491094&page=3
forum2.mokkels.nl/cgi-bin/user-gallery.pl?
hold=1&action=&action2=user&idtje=2626&star12=5&star11=&sort=datum%20deso
freeforumzone.leonardo.it/viewmessaggi.aspx?f=12877&idd=1537
fritchy.com/showpost.php?p=119802&postcount=172
home.scarlet.be/carpenochem/Frames/Vrouwenalfabet/P.htm
hongkongstars.fan-site.net/waw-english/Al17.htm
hotscans.org/csv/XMas-SWA-2001_37_Final.html
masex.hu/kepek/models/index_p.html#
p2pforum.it/forum/printthread.php?t=28324&page=196&pp=40
speforo.com.ar/forums1/archive/index.php?f-87-p-75.html
spookyentertainment.com.ar/foro/archive/index.php?f-87-p-75.html
szeghykriszlina.modellvilag.hu/index.php?page=%2Findex.nml&subpage=%2Fgaleria%2Fgaleria_listak%
2Fmodellak.nml&oldalstart=240
szeghykriszlina.modellvilag.hu/index.php?page=/index.nml&subpage=/galeria/lista.nml&betu=P
vipbeauties.net/Pornstars/Pamela-Celini/
worldactress.sakura.ne.jp/A9_5.htm
zufzuluf.weblog.ro/2007-02-05/124302/Medita%C5%A3ie.html
feedfinder.net/you_sexy_thing/index.php?cat=117
grandlsenl.com/opg132/thumbnails.php?album=topn&cat=12&page=16&lang=greek
diskusjon.no/lofiversion/index.php/t259248-5700.html
ecardbox.net/cpg145/index.php?cat=56&page=2
famosas-guapas.com/Vibe_Sorenson
go4wallpapers.com/vibe_sorenson_479.html
maximumwall.com/.../index_vibe_sorenson.php
sabina.blogonline.ru/467319.html
sexydesktop.co.uk/ashanti.htm
tonez.com.au/pictures.php/Wallpapers/n/6.html
vsenaplochu.cz/thumbnails.php?album=842
xclan.org/gallery/
exeline.info/index.php?showtopic=3163
forum.phun.org/showthread.php?t=86066&page=2
forums.bnslive.com/archive/index.php/t=9237.html
guide.dada.net/gossip/intervent/2004/09/174874.shtml
forum.sg.hu/listazas.php3?id=1121289310&order=timeline&index=3&azonosito=scratch
idreamofporn.com/ForumXXXv3/archive/index.php/t-3079.html
100proofnews.com
100proofnews.com
100proofnews.com
1usenet.com
1usenet.com

Exhibit 16

Tom,

I stated during our one hour meet and confer that I expected that you would prepare a lengthy, inaccurate and one-sided summary of the meet and confer, and you have. It is not possible to have any type of meaningful dialog when the meet and confers are only conducted to try to extract "admissions;" when such "admissions" are not extracted, you simply make them up; and then you create fictionalized summaries of what happened. They are also a meaningless exercise, since you essentially said Google does not compromise. I am not addressing all of the inaccuracies in your e-mail because it is a waste of resources better spent trying to satisfy Google's ever growing list of discovery requests.

Also, as you know, I did not meet and confer regarding bates-stamping because you first asked to meet and confer about that issue in an e-mail you sent a few business hours before the scheduled meet and confer. During the meet and confer, I asked you to send the prior correspondence you had on this issue and you said that you would not because it was handled by counsel other than Quinn Emanuel.

As for the 20th, as I am saying now for the third time, Perfect 10 will meet and confer regarding those issues if they are ready for a telephonic meet and confer. Since October 6, Google has raised many new issues that it apparently has been working up for some time. Therefore, it will take some time for us to get up to speed. As soon as Perfect 10 is knowledgeable on a given topic, Perfect 10 will address it.

**Confidentiality Designations.**

Judge Matz has taken the time to explain how the parties should handle this issue. Judge Matz delineated a very practical approach at pages 37 - 41 of the August 18, 2008 transcript. However, during the meet and confer, you discarded the Judge's approach as well as the folder approach.

Here are responses to your questions.

1. It may be technologically possible to affix the word "Confidential" onto an electronic page.

2. *If* it were technologically possible to affix the word "Confidential" onto an electronic page, it would take hundreds of hours of attorney and client time to sort through approximately one million pages and identify them.

3. Your suggestion about making the specification at the document level is not helpful. This is as time-consuming a task as affixing the word "Confidential" to each page. Your suggestion about two hard drives is also not helpful for the same reason.

**Charts.**

You said Google is disinterested in the compromise proposed by Perfect 10, but wanted to know if Perfect 10 meant electronic filings since that would undermine Perfect 10's claim that the charts are confidential. Perfect 10 does mean electronic filings, and disagrees that its offer of compromise somehow changes the character of the documents.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

----- Original Message ----
From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: Valerie Kincaid <valeriekincaid@yahoo.com>
Cc: Jeff Mausner <jeff@mausnerlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>;
Rachel M Herrick <rachelherrick@quinnemanuel.com>; Andrea P Roberts
<andreaproberts@quinnemanuel.com>
Sent: Wednesday, October 15, 2008 12:29:30 PM
Subject: Perfect 10, Inc. v. Google Inc.

Valerie,

This is to confirm our telephonic meet-and-confer of today, October 15, 2008, at which we addressed the three
issues identified below.

## 1. Perfect 10's Improper Confidentiality Designations

I explained that Perfect 10's confidentiality designations in its electronic document productions do not comply with
the Protective Order. I explained (and you did not contest) that these productions contain large volumes of clearly
public information, but that Perfect 10's "blanket" designations included this public information as well. When I
reiterated Google's request for compliance with the Protective Order by affixing a confidentiality legend to each
page in its document productions containing confidential material, you stated this would be "logistically
infeasible." I then asked how long Perfect 10 believes it would take to do so, how expensive Perfect 10 believes it
would be, and whether Perfect 10 had explored any technological approaches to affixing such designations. You
stated you did not know, and would follow-up with your client to determine whether those issues had in fact been
investigated.

I explained that Google cannot accept Perfect 10's proposal (providing a list of folders and sub-folders which do
*not* contain confidential information), at least in part because there are folders which contain both confidential and
public documents. I asked, however, whether Perfect 10 would agree to make this specification at the *document*
level (rather than the folder level). I also asked whether Perfect 10 has considered, when making an electronic
document production containing confidential and non-confidential materials, whether it could produce *two* drives --
one containing only public information, and one containing only confidential information. You stated you would
bring those questions to your client.

You also refused to address Perfect 10's failure to Bates-stamp its document productions at this meet-and-confer,
but stated you would address the issue at our next meet-and-confer, scheduled for October 20 at 10 am.

## 2. Perfect 10's Designation as Confidential of the Charts Allegedly Responsive to Interrogatory No. 3

We were unable to reach agreement on this issue. I explained that these documents were improperly designated
because they were created expressly for litigation, and contained only public information. You confirmed that the
charts were created for litigation, that Internet URLs are public information, and that the charts are not "trade
secrets, financial data, contracts [or] agreements, current [or] future business plans, [or] marketing documents."
Protective Order at Para. 1. You nevertheless maintained that the charts were properly designated because the
"compilation" of the URLs and other information in the charts renders them "proprietary information used by
[Perfect 10] in, or pertaining to, its business." Id. Obviously, we disagree, since it is our understanding that
Perfect 10 does not condone or use allegedly infringing images as part of its business.

I also sought clarification on Perfect 10's proposal of October 11. In that proposal, Perfect 10 stated it "does not
object to the charts being filed as part of a court document." I asked whether Perfect 10 meant electronic filing, or

Exhibit 17

1  UNITED STATES DISTRICT COURT

2  CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3  HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4  - - - -

**COPY**

5

6  PERFECT 10, INC., A CALIFORNIA     )
   CORPORATION,                        )
7                         PLAINTIFF,   )
                                       )
8          vs.                         ) No. CV04-09484-AHM(SHx)
                                       )
9  GOOGLE, INC., ET AL.,               )
                        DEFENDANTS.    )
10 _____ )
                                       )
11 PERFECT 10, INC., A CALIFORNIA      )
   CORPORATION,                        )
12                        PLAINTIFF,   )
                                       )
13         vs.                         ) No. CV05-04753-AHM(SHx)
                                       )
14 AMAZON, ET AL.,                     )
                        DEFENDANTS.    )
15 _____ )

16

17  REPORTER'S TRANSCRIPT OF PROCEEDINGS

18  LOS ANGELES, CALIFORNIA

19  MONDAY, AUGUST 18, 2008

20

21

22  _____

23  CINDY L. NIRENBERG, CSR #5059
    U.S. Official Court Reporter
24  312 North Spring Street, #438
    Los Angeles, California 90012
25  www.cindynirenberg.com

1    What relevance is that --

2         MR. MAUSNER:  I think they have had more recent

3    contact than we have.  That's all I'm saying.  You asked me

4    if we had any contact or not.

5         THE COURT:  Well, you must have found out about it

6    from FoneStarz, right?

7         MR. MAUSNER:  I actually don't know.  I mean, I just

8    heard that, and I don't know --

9         THE COURT:  Okay.  It doesn't matter to me, but the

10   point that I'm jumping on you for is to keep the clutter out of

11   this.  I don't want gamesmanship and gotcha thinking to

12   permeate this lawsuit or these lawsuits.  Cut it out.  No more.

13   Both sides.  All sides.

14        Now, the next question again arising out of the

15   Google 16(b) report is triggered by something on Page 19.

16        I'm told -- and, of course, this is Perfect 10's

17   lawyer speaking -- that Google, quote, "unreasonably wants

18   Perfect 10 to put a confidentiality designation on each page."

19        Okay.  With respect to this discovery dispute about

20   confidentiality on various pages, where do things stand?  Is

21   there a motion pending before anybody?

22        MR. MAUSNER:  There's not currently a motion pending,

23   no.

24        THE COURT:  Are you planning to seek a Protective

25   Order or is Google planning to seek an order compelling this

1    designation?  Where do things stand?  Ms. Herrick?

2             MS. HERRICK:  Absolutely, Your Honor.  If necessary,

3    we do intend to pursue motion practice because obviously

4    something that's very important in this case, as in all cases,

5    is that the parties strictly abide by the Protective Order.

6             And the large hard drives that Mr. Zeller was

7    referring to earlier have been produced with a sticker on them

8    that just says "Confidential," and inside, there is a mix of

9    confidential and clearly public information.  And we don't want

10   to run afoul of the Protective Order by accidentally producing

11   or maybe filing something that Perfect 10 meant to designate as

12   confidential but didn't specifically identify or label.

13            THE COURT:  But if you're correct that some stuff is

14   obviously public, then you are not at risk if whatever is

15   obviously public is something that makes its way into some

16   filing of yours, right?

17            MS. HERRICK:  I'm sorry?  Say that one more time.

18            THE COURT:  You're not at risk of violating a

19   Protective Order if something that's obviously public is

20   something that you incorporate into something that you filed,

21   right?

22            MS. HERRICK:  Technically, if we were to file

23   something not under seal that Mr. Mausner has designated as

24   confidential, we would be violating the Protective Order, and

25   we certainly don't want to in any way, shape or form risk that.

1          THE COURT:  Okay.  But let's see if we can have a

2     deal here.

3          So if something is obviously public, it's been given

4     this blanket, random, sweeping, as Google would have it,

5     designation of confidentiality because you put some little

6     sticker on a hard drive, and they incorporate it into something

7     they say or do or file, even though it was part of this hard

8     drive with the confidential blanket stamp, are you going to

9     fuss?

10          MR. MAUSNER:  No.  And we would also, you know, be

11     happy to tell them if they want to ask about something.

12          It's just going to be very difficult to take all of

13     these millions of documents and, you know, put actual

14     confidential designations on each one.

15          THE COURT:  Okay.  Well, I'm not making a ruling

16     about this dispute and neither is Judge Hillman, who has been

17     patient enough to -- are you still there, Judge Hillman?

18          JUDGE HILLMAN:  I am.

19          THE COURT:  Okay.  Neither of us has to issue some

20     kind of advisory ruling because maybe it won't come to light.

21          But it seems to me, Ms. Herrick, that when push comes

22     to shove, and you are really in the process of needing to make

23     use of whatever is on these documents, if there is a genuine

24     ambiguity or doubt, then you run it by the people at Perfect 10

25     or Mr. Mausner.

1          And I'm going to hold Mr. Mausner to his word because

2     I am going to hold you to your word.

3          If something is obviously public, use it.  Don't

4     waste your client's money or your time getting permission.  And

5     he is not going to be given any credence if he claims that you

6     made a violation of the Protective Order by using it, because

7     if it was obviously public, you had a right to do it.

8          MS. HERRICK:  Your Honor, just one further thing.

9          Some things might appear to be obviously public to

10    us, but Perfect 10 has nevertheless insisted that it's

11    confidential.

12         For instance, screenshots of alleged infringements,

13    Perfect 10 has taken the position that the screenshots that

14    identify where an infringing image can be found is

15    confidential.  So that is something that I might want to file

16    because it appears to be just a screenshot, but Perfect 10, I

17    think, would be upset by that and would argue that that would

18    be a violation of a Protective Order because they have

19    designated those sorts of material as confidential.

20         We believe improperly so, but that is just one

21    example of how I think there will be --

22         THE COURT:  But my point is if there is something

23    that's really making you think that you are at risk of

24    inadvertently, unintentionally violating a Protective Order,

25    bring it up.

1          You got a problem with screenshots?

2          MR. MAUSNER:  Not with the shot itself, but the

3    location of the infringing website allows anybody to find the

4    infringements, basically.

5          And we don't have a problem with those being filed in

6    court.  What we do have a problem with is Google publishing the

7    location of the infringing websites on the internet, which is

8    something that it's done in the past.

9          It's actually published Perfect 10's DMCA notices

10   that have the URL where the infringing images are located.

11         THE COURT:  So why don't you modify the Protective

12   Order.  Make it clear what you do think they shouldn't do.

13         MR. MAUSNER:  But --

14         THE COURT:  Look, I'm not going to spend more time on

15   this one because I've got too many other things to do, but it

16   seems to me that this is an example of what I'm afraid has been

17   going on here which is that both sides are just pointing the

18   finger and failing to talk to each other.

19         If there is some clarity that can be agreed to that

20   will limit the need to fuss and make motions about the

21   Protective Order and the snapping of confidentiality, then

22   change your God damn Protective Order, file it, and proceed on

23   that basis.

24         Now, let's move on.

25         MR. MAUSNER:  Your Honor, I think they do, too, but

1                          CERTIFICATE

2

3        I hereby certify that pursuant to Section 753,

4    Title 28, United States Code, the foregoing is a true and

5    correct transcript of the stenographically reported

6    proceedings held in the above-entitled matter and that the

7    transcript page format is in conformance with the

8    regulations of the Judicial Conference of the United States.

9

10   Date: AUGUST 29, 2008

11

12                    _____ *Cindy L. Nirenberg*

13                    Cindy L. Nirenberg, CSR No. 5059

14

15

16

17

18

19

20

21

22

23

24

25

Exhibit 18

Tom: I thought the proposal that I made earlier was very reasonable. My earlier e-mail to you was as follows, and the proposal still stands:

> I am responding to your e-mail and letter regarding confidentiality designations. As an initial matter, Perfect 10 disagrees with Google's interpretation of the protective order. Perfect 10 is not required to place a confidentiality stamp on pages of documents which are stored in electronic media. This method of designation, which Google requests, is not logistically workable for Perfect 10, and is not required by the protective order. However, Perfect 10 has a proposal which addresses your concerns, is a feasible method of making confidentiality designations, and goes beyond what is required by the protective order. Perfect 10 proposes that it provide to you a listing of the first level folders on the hard drive which do not contain any confidential materials. It will take us some time to do this, so let me know if that is agreeable to you.

You have never told me why this is unacceptable to you, so my only conclusion is that you want to put Perfect 10 to a lot of busy work. It seems that your only defense to this lawsuit is to create more and more unnecessary work for us. Jeff.

**From:** Thomas Nolan [mailto:thomasnolan@quinnemanuel.com]
**Sent:** Tuesday, August 05, 2008 8:12 PM
**To:** jeffmausner@bmrlaw.com
**Cc:** Rachel M Herrick; Jansen, Mark T.
**Subject:** Perfect 10, Inc. v. Google Inc.

Please see attached.

Best regards,

Tom Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible

for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exhibit 19

**From:** Valerie Kincaid ()
**To:** Thomas Nolan; Rachel Herrick
**Date:** Monday, September 15, 2008 4:02:48 PM
**Cc:** michael zeller
**Subject:** Re: Perfect 10/Google

Tom,

The charts are properly designated confidential. Moreover, the court specifically invited the parties to rework the protective order to address the situation of Google publicizing the URLs of infringing images, as Google does on chillingeffects.org, and Perfect 10 is willing to do this. Please let me know if Google is agreeable. Perfect 10 is also willing to consider any proposal Google has that addresses Perfect 10's concern that Google will publicize the information.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com


----- Original Message ----
From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: Valerie Kincaid <valeriekincaid@yahoo.com>
Cc: Jeffrey Mausner <jeffmausner@bmrlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>; Rachel M Herrick <rachelherrick@quinnemanuel.com>
Sent: Tuesday, September 9, 2008 5:47:00 PM
Subject: RE: Perfect 10/Google

Valerie,

I write in furtherance of Google's meet-and-confer efforts regarding Perfect 10's designation as "Confidential" under the Protective Order of the six Charts appended to Perfect 10's Amended/Supplemental/Updated Responses to First Set of Interrogatories from Defendant Google Inc. to Plaintiff Perfect 10, Inc. As Google has previously identified, these Charts were improperly designated as Confidential because they contain only public information, and should therefore be de-designated and re-served on Google.

At the hearing before Judge Matz on August 18, 2008, Judge Matz instructed the parties to not treat materials that are "obviously public" as Confidential under the Protective Order. Transcript at 39 (attached hereto). And further, regarding screenshots containing locations of websites Perfect 10 claims are infringing, Jeffrey Mausner, counsel of record for Perfect 10, indicated that Perfect 10 doesn't "have a problem with those being filed in court." Transcript at 41.

You stated that you would provide a further response to Google after reviewing the August 18, 2008 Transcript. Mr. Mausner received the Transcript from the court reporter by email on August 24, 2008, and it is also attached to this message for your convenience. If you have not done so already, please review the Transcript and please inform Google whether Perfect 10 will agree to de-designate and re-serve the six Charts created in connection with Google's Interrogatory No. 3. Please also be advised that if Perfect 10 so refuses, Google will seek relief from the Court.

Best Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor

Exhibit 20

**From:** Valerie Kincaid ()
**To:** Thomas Nolan
**Date:** Tuesday, September 16, 2008 5:22:57 PM
**Cc:** Michael T Zeller; Rachel M Herrick; Jeff Mausner
**Subject:** Re: Perfect 10/Google

Tom,

The charts were prepared by Perfect 10 *voluntarily* to try to satisfy Google's request for compilations even though there was no requirement that Perfect 10 provide anything. The charts easily fall within the definition of confidential information. They contain information that pertains to Perfect 10's business, namely they compile a lengthy list of URLs that provide unauthorized access to Perfect 10's copyrighted works. The charts contain information that is not generally known -- a detailed compilation of numerous URLs that provide access to Perfect 10's copyrighted works. One of the only reasons a compilation of these URLs is known by some is because Google has intentionally publicized prior compilations; Google never addresses this fact. The charts contain compilations Perfect 10 would normally not reveal to third parties or would cause third parties to maintain in confidence.

Google's position that a document cannot be designated confidential if it contains public information is incorrect. For example, if Prada compiled the locations of numerous businesses selling counterfeit Prada, this information would be Prada's proprietary information regardless of whether or not the locations were a matter of public record.

Jeff's comment is irrelevant to the issue here. The risk of Google publicizing screen shots is not analogous to the risk of Google publicizing a road map of how to gain free access to Perfect's 10 library of copyrighted works. The former is illegal whereas Google would take the position that the latter is not. In fact, it appears that part of Google's eagerness to de-designate these charts is so that it can claim that its prior conduct was legal.

Perfect 10 tried to resolve this issue by suggesting a revision to the protective order or a proposal from Google addressing the publicizing concern, but Google did not respond. Perfect 10 remains open to either option.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com


----- Original Message ----
From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: Valerie Kincaid <valeriekincaid@yahoo.com>
Cc: Michael T Zeller <michaelzeller@quinnemanuel.com>; Rachel M Herrick
<rachelherrick@quinnemanuel.com>
Sent: Tuesday, September 16, 2008 12:00:42 PM
Subject: RE: Perfect 10/Google

Valerie,

As I previously identified, the Protective Order applies to documents only if they "comprise or reflect proprietary information used by [a party] in, or pertaining to, its business, which is not generally known

Exhibit 21

**From:** Thomas Nolan ()
**To:** Valerie Kincaid
**Date:** Tuesday, September 16, 2008 7:34:06 PM
**Cc:** Michael T Zeller; Rachel M Herrick; Jeff Mausner
**Subject:** RE: Perfect 10/Google

Valerie,

Contrary to Perfect 10's unsupported allegations, Google has not "publicized" any information by forwarding alleged DMCA notices to Chilling Effects. Those alleged notices contain URLs of websites Perfect 10 claims infringe its alleged copyrights, but there is nothing "non-public" or otherwise "confidential" about URLs of publicly-available websites. If Chilling Effects posts a URL on its website, it does not "publicize" that information, because the URL is already available on the Internet. Indeed, Google's published DMCA Policy makes clear that Google may forward alleged DMCA notices to Chilling Effects. See https://www.google.com/dmca.html. ("Please note that [an alleged DMCA notice] (with your personal information removed) may be forwarded to Chilling Effects (http://www.chillingeffects.org) for publication."). Perfect 10 cannot claim to be surprised when its alleged notices are in fact so forwarded.

Second, Perfect 10 speculates that that third-parties will somehow use the alleged notices as a means to engage in infringement, but Perfect 10 has never offered any evidence to support that speculation.

Third, and most importantly, Perfect 10 has not provided any *legal* basis for its demands regarding Chilling Effects. In your email below, you state that "[t]he risk of Google publicizing screen shots is not analogous to the risk of Google publicizing a road map of how to gain free access to Perfect's 10 [sic] library of copyrighted works," and that "[t]he former is illegal whereas Google would take the position that the latter is not." If you believe that "publicizing screen shots" is "illegal," I would urge you to reconsider that position in light of the fact that Jeffrey Mausner does not object to filing screenshots in court. And further, if Perfect 10 believes that any part of the Chilling Effects project is "illegal," please identify the *legal* basis for that claim. Chilling Effects is a joint project of the Electronic Frontier Foundation and clinical programs at several universities, including Harvard, Stanford, and U.C. Berkeley, whose purpose is to educate and inform Internet users of the protections afforded for their online activities (including commentary and criticism) by the First Amendment and intellectual property laws. Its own activities, and the activities of participants in the project, are protected by the free speech guarantees of the First Amendment, the right to lobby the government for changes in law (protected by the First Amendment and the Noerr-Pennington Doctrine), the fair use doctrine, and other provisions of Constitutional, federal, and/or state law. If Perfect 10 has any legal basis for seeking to interfere with those rights, please provide it.

In sum, Google continues to attempt to reach agreement on de-designation of these charts because they were improperly designated under the Protective Order. Please be advised that if we are unable to reach agreement, Google will move the court to de-designate these documents.

Best Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Tuesday, September 16, 2008 5:23 PM
**To:** Thomas Nolan
**Cc:** Michael T Zeller; Rachel M Herrick; Jeff Mausner
**Subject:** Re: Perfect 10/Google

Tom,

The charts were prepared by Perfect 10 *voluntarily* to try to satisfy Google's request for compilations even though there was no requirement that Perfect 10 provide anything. The charts easily fall within the definition of confidential information. They contain information that pertains to Perfect 10's business, namely they compile a lengthy list of URLs that provide unauthorized access to Perfect 10's copyrighted works. The charts contain information that is not generally known -- a detailed compilation of numerous URLs that provide access to Perfect 10's copyrighted works. One of the only reasons a compilation of these URLs is known by some is because Google has intentionally publicized prior compilations; Google never addresses this fact. The charts contain compilations Perfect 10 would normally not reveal to third parties or would cause third parties to maintain in confidence.

Google's position that a document cannot be designated confidential if it contains public information is incorrect. For example, if Prada compiled the locations of numerous businesses selling counterfeit Prada, this information would be Prada's proprietary information regardless of whether or not the locations were a matter of public record.

Jeff's comment is irrelevant to the issue here. The risk of Google publicizing screen shots is not analogous to the risk of Google publicizing a road map of how to gain free access to Perfect's 10 library of copyrighted works. The former is illegal whereas Google would take the position that the latter is not. In fact, it appears that part of Google's eagerness to de-designate these charts is so that it can claim that its prior conduct was legal.

Perfect 10 tried to resolve this issue by suggesting a revision to the protective order or a proposal from Google addressing the publicizing concern, but Google did not respond. Perfect 10 remains open to either option.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com


----- Original Message ----