1   Jeffrey N. Mausner (State Bar No. 122385)
2   Law Offices of Jeffrey N. Mausner
    Warner Center Towers, Suite 910
3   21800 Oxnard Street
4   Woodland Hills, California 91367-3640
    Telephone: (310) 617-8100, (818) 992-7500
5   Facsimile: (818) 716-2773

6
7   Attorneys for Plaintiff Perfect 10, Inc.

8                   UNITED STATES DISTRICT COURT
9               CENTRAL DISTRICT OF CALIFORNIA
10

| 11 PERFECT 10, INC., a California corporation, | **Case No. CV 04-9484 AHM (SHx)** Consolidated with Case No. CV 05-4753 AHM (SHx) |
|---|---|
| 12              Plaintiff, | |
| 13       v. | **Before Judge A. Howard Matz** |
| GOOGLE, INC., a corporation, | |
| 14 | **PERFECT 10'S MEMORANDUM OF** |
| 15              Defendant. | **POINTS AND AUTHORITIES IN OPPOSITION TO GOOGLE'S** |
| 16 _____ | **MOTION FOR SCHEDULING ORDER WHICH WOULD DELAY** |
| 17 | **PERFECT 10 FROM FILING ITS** |
| 18 | **MOTION FOR SUMMARY JUDGMENT** |
| 19 | |
| 20 | **[DECLARATIONS OF JEFFREY N. MAUSNER AND DR. NORMAN** |
| 21 | **ZADA IN SUPPORT THEREOF FILED CONCURRENTLY** |
| 22 | **HEREWITH]** |
| 23 | Date:  June 1, 2009 |
| 24 | Time:  10:00 a.m. |
| 25 | Place: Courtroom 14, Courtroom of the Honorable A. Howard Matz |
| 26 | |
| 27 | Discovery Cut-Off Date:  None Set Pretrial Conference Date:  None Set Trial Date:   None Set |
| 28 | |

# **TABLE OF CONTENTS**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT. ........................... 1

II.  GOOGLE'S FAILURE TO COMPLY WITH LOCAL RULE 7-3 PROVIDES SUFFICIENT GROUNDS FOR THIS COURT TO DENY THE MOTION. ................................................................. 3

III.  THIS COURT SHOULD DENY THE MOTION BECAUSE HEARING P10'S SJ MOTION BEFORE GOOGLE'S DMCA MOTIONS WILL PROMOTE JUDICIAL ECONOMY AND CONSERVE RESOURCES. ........................................................... 4

IV.  THIS COURT SHOULD NOT HEAR THREE MOTIONS FIRST THAT HAVE VIRTUALLY NO CHANCE OF SUCCEEDING. ............... 5

    A.  Google's Admitted Delay in Removing Identified Infringing Links Precludes a DMCA Safe Harbor. ............................... 7

    B.  Google's Failure To Act In Response To Nine Perfect 10 Notices Also Precludes A DMCA Safe Harbor. .................... 8

    C.  In Order For Google To Prevail On Its DMCA Motions, This Court Must Decide All Of the Thirteen Legal Issues Identified Below In Google's Favor. ................................................... 9

        1.  Google's Continued Storage Of Full-Size P10 Images On Its Servers, Despite Notice. ........................... 10

        2.  Google's Continued Hosting Of Websites That Infringe P10 Images, Despite Notice. ................................. 10

        3.  Google's Continued Hosting Of Websites That Display Google Ads Next To Thousands Of P10 Images, Despite Notice. ...................................................... 11

        4.  Google's Failure To Remove Identified Infringing Links For Three to Seventeen Months After Notice. ........... 12

        5.  Google's Failure To Remove Identified Infringing Links From Its Image Search Results. ............................. 12

        6.  Google Cannot Assert That Perfect 10's Notices Are Deficient Because Those Notices Were Created Based On Google's Own Instructions. ............................... 13

        7.  Google's Refusal To Provide Perfect 10 With Specific DMCA Instructions When Requested Violates Section 512(c)(3)(B)(ii) Of The Statute. ........................... 15

        8.  Google Has Failed To Maintain A DMCA Log. ............ 15

        9.  Google Has Failed To Keep Track Of The Identities Of Its Hosting Clients. ......................................... 16

i

Opposition To Google's Motion For Scheduling Order Which Would Delay Perfect 10 From Filing Its Motion For Summary Judgment

10.   Google Has Failed To Utilize Image Recognition To Remove Or Disable Access To P10 Images. ............................ 17

11.   Google's Policy Of Publishing DMCA Notices It Receives On Chillingeffects.org Precludes A Safe Harbor. ................................................................... 17

12.   Google's Refusal To Remove Sponsored Links And Regular Links To Massive Infringing Paysites Precludes DMCA Safe Harbor. ....................................... 18

13.   Google's Policy Of Removing One Link Out Of Thousands In Its Search Results Fails To Satisfy The DMCA Requirement Of Removing Or Disabling Access To Infringing Material. .......................................... 19

V.    GOOGLE'S MISLEADING DISCUSSION OF THE DISCOVERY IT ALLEGEDLY NEEDS TO OPPOSE P10'S SJ MOTION PROVIDES NO REASON FOR THIS COURT TO POSTPONE THE FILING OF P10'S SJ MOTION. ........................................ 20

A.    Perfect 10 Has Already Provided Google With The Discovery Google Contends It Needs To Oppose P10's SJ Motion. .................. 20

B.    Google's Assertion That It Will Oppose P10's SJ Motion By Seeking Relief Under Rule 56(f) Provides No Basis To Grant Google's Present Motion. .................................. 22

VI.   GOOGLE'S TRUE PURPOSE IN FILING THE MOTION IS TO DELAY PERFECT 10'S ATTEMPT TO RESOLVE THE CASE AND INSTEAD BURY PERFECT 10 IN UNNECESSARY AND ABUSIVE DISCOVERY ........................................................ 23

VII.  CONCLUSION. ............................................................ 25

# **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.,* 2000 WL 573136, 54 U.S.P.Q.2d
   1746 N.D. Cal., 2000).................................................................5

*Aimster Copyright Litigation,* 252 F.Supp.2d 634 (N.D. Ill. 2002) .......................5

*Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151 (9th Cir. 2001)...........................22

*Fox v. Good Samaritan Hospital,* 2007 WL 2938175 (N.D Cal.) .........................22

*Mattel Inc. v. Walking Mountain Productions* 353 F.3d 792 (9th Cir. 2003) ..........24

*Nidds v. Schindler Elevator Corp.,* 113 F.3d 912 (9th Cir. 1997) .........................22

*Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828 (C.D. Cal. 2006) ...........................6

*State of California v. Campbell*, 138 F.3d 772 (9th Cir. 1998)...............................22

*UMG Recordings, Inc., v. Veoh Networks, Inc.*, 2008 WL 5423841
   (C.D.Cal. 2008)……………………………………………………………..6

**Statutes**

17 U.S.C. §512..................................................................................passim

**Rules**

Fed.R.Civ.P.56(c) ...............................................................................23

# I. INTRODUCTION AND SUMMARY OF ARGUMENT.

Defendant Google, Inc. ("Google") has filed a motion for an Order setting a schedule for the filing of motions in this action (the "Motion") that improperly seeks to prevent Plaintiff Perfect 10, Inc. ("Perfect 10") from filing its motion for summary judgment ("P10's SJ Motion"). Google asks this Court to bar Perfect 10 from filing P10's SJ Motion – which Google has not even seen – until after this Court rules upon three separate summary judgment motions that Google wishes to file, seeking rulings that Google is entitled to a safe harbor under Sections 512(b), (c), and (d) of the Digital Millennium Copyright Act (the "DMCA").

Google seeks such extraordinary relief even though: (i) it admittedly violated the 20-day hold requirement of Local Rule 7-3 when filing its present motion; (ii) hearing P10's SJ Motion before Google's three DMCA Motions will conserve judicial resources; (iii) Google does not explain, and cannot explain, how it can prevail on its DMCA motions when it took between *three and seventeen months* to process some of Perfect 10's notices, completely failed to process others, and did not even maintain a DMCA log, and (iv) Google's assertion that it needs discovery to respond to P10's SJ Motion is incorrect and, in any event, can be resolved, if Google chooses, under Rule 56(f) in opposition to P10's SJ Motion.

Moreover, Google fails to explain to this Court the true reason underlying its present motion: Google wishes to delay Perfect 10's right to obtain a judgment as to Google's liability so that Google can seek to bury Perfect 10 with overwhelmingly abusive discovery and discovery motion practice. On May 1, Google demanded the right to take 45 depositions in this case. With the filing of its most recent discovery motion, Google now has pending three separate discovery motions totaling more than 550 pages, not even counting declarations and exhibits [*see* Section VI, below].

Perfect 10 is prepared to file P10's SJ Motion shortly after the scheduled hearing date on June 1. This Court should prevent Google from engaging in its improper tactics and deny its motion, for the following reasons:

First, Google concedes in its moving papers that it failed to comply with the requirements of Local Rule 7-3 when it filed its motion without waiting 20 days after conducting the conference of counsel. For this reason alone, this Court should deny Google's motion [*see* Section II, below].

Second, granting Google's present motion will result in a waste of judicial resources, forcing this Court to consider four motions rather than one. As explained below, P10's SJ Motion covers not only the issue of Google's liability, but Google's eligibility for the safe harbor affirmative defense under the DMCA as well. Accordingly, this Court can address the DMCA issues in this case by ruling upon P10's SJ Motion just as easily as it can by ruling on Google's three contemplated DMCA Motions. P10's SJ Motion currently involves only thirteen images, demonstrates Perfect 10's ownership of the copyrights on those images, and establishes that Google received notice regarding infringement of those images and failed to expeditiously remove or disable access to those infringements.

Third, nowhere in Google's motion does Google establish its likelihood of succeeding on any of its DMCA Motions. In fact, hearing Google's three DMCA motions will be a waste of resources, because Google cannot win its motions for the following reasons: It is undisputed that Google received Perfect 10's notices, belatedly processed certain notices, and completely failed to process others. Moreover, Google has: (i) failed to keep a DMCA log: (ii) failed to remove more than 4,000 identified full-size Perfect 10 copyrighted images ("P10 Images") from its blogger.com servers; and (iii) hosted more than 400 websites via its blogspot.com program that have infringed, in total, more than 10,000 P10 Images. Finally, as explained below, this Court must resolve

at least 13 separate legal issues in Google's favor in order to grant Google's DMCA Motions. Under these circumstances, postponing P10's SJ Motion to first consider Google's unwinnable DMCA Motions would be a waste of this Court's time and resources [*see* Section IV, below].

Lastly, Google's assertion that this Court should prevent the filing of P10's SJ Motion because Google needs certain discovery to respond to that motion is simply incorrect. Perfect 10 has already produced copyright registration certificates, deposit materials, work for hire agreements, model releases, DMCA notices to third parties, detailed financial statements, tax returns, server logs, and tens of thousands of other documents.[1] Moreover, if Google truly believes that it needs additional discovery to oppose P10's SJ Motion, which it has not yet even seen, Google can always seek a continuance under Rule 56(f). Google's mistaken contentions regarding discovery, however, provide no basis for this Court to grant Google's present motion [*see* Section V, below].

## II. GOOGLE'S FAILURE TO COMPLY WITH LOCAL RULE 7-3 PROVIDES SUFFICIENT GROUNDS FOR THIS COURT TO DENY THE MOTION.

Local Rule 7-3 specifically provides that a moving party such as Google must wait 20 days after the conclusion of the conference of counsel before filing its motion. Here, Google concedes that it failed to comply with the 20-day waiting period of Local Rule 7-3 before filing its motion. *See* Motion at 1. For this reason alone, this Court should deny the Motion.

---

[1] In an attempt to minimize discovery motion practice, Perfect 10 has been particularly forthcoming in discovery, producing tax returns, detailed financial reports, server logs, copyright certificates, work for hire agreements, deposit materials, records regarding cell phone downloads, and DMCA notices to third parties. In total, Perfect 10 has produced hundreds of gigabytes of documents to Google, organized by folder and subfolder so that Perfect 10 (and Google) can readily find relevant documents. Declaration of Dr. Norman Zada ("Zada Decl.") ¶16, filed concurrently.

III. **THIS COURT SHOULD DENY THE MOTION BECAUSE HEARING P10'S SJ MOTION BEFORE GOOGLE'S DMCA MOTIONS WILL PROMOTE JUDICIAL ECONOMY AND CONSERVE RESOURCES.**

Google asserts that this Court should prohibit the filing of P10's SJ Motion until after it rules upon Google's three DMCA Motions because "hearing Google's DMCA's motions first serves the interests of judicial economy." Motion at 6. Even though it has not seen P10's SJ Motion, Google contends that "even if Perfect 10 were to succeed on its copyright liability motion, the Court would still need to reach Google's DMCA motion." *Id.*

Google is incorrect. Consideration of P10's SJ Motion first would actually conserve judicial resources, because the Court would only have to consider one motion, rather than the three DMCA Motions Google plans to file. Perfect 10's entire argument in support of its motion is contained in less than 25 pages. Moreover, P10's SJ Motion is simple and straightforward. It involves only thirteen sample images, demonstrates Perfect 10's ownership of the copyrights on those images, and establishes that Google received notice regarding infringement of those images and failed to expeditiously remove or disable access to those infringements.

Furthermore, P10's SJ Motion covers both Google's liability for copyright infringement *and* Google's ineligibility for the safe harbor affirmative defenses found in the DMCA. If this Court grants P10's SJ Motion, it necessarily will have addressed the affirmative defenses Google wishes to raise in the DMCA Motions. Accordingly, if Perfect 10 prevails on its motion, this Court will not need to reach Google's three DMCA Motions. Google concedes as much elsewhere in its moving papers, when it asserts, without support or authority, that "[l]imiting Google to just a single opposition brief/cross-motion on this critical defense would deny Google the opportunity

to fully and fairly defend itself against Perfect 10's copyright claims." Motion at 7. In short, Google does not truly dispute that it is possible for this Court to address the issues relating to its affirmative defense under the DMCA in the context of P10's SJ Motion.

Finally, Google's assertion that this Court should hear Google's DMCA motions first because granting these motions will moot P10's SJ Motion [Motion at 6] is fatally flawed, because, as explained in Section IV below, Google's three to seventeen month delay in processing certain Perfect 10 notices and its complete failure to process thousands of other URLs similar to those that Yahoo! has processed, precludes a safe harbor.

In sum, it makes more sense for this Court to first consider P10's SJ Motion – a single motion that addresses all of the relevant issues, including the safe harbor affirmative defense, and that has a possibility of being granted – rather than the three DMCA motions that Google wishes to bring, which, because of Google's admitted inaction and its failure to even maintain a DMCA log, have virtually no chance of success.

## IV. THIS COURT SHOULD NOT HEAR THREE MOTIONS FIRST THAT HAVE VIRTUALLY NO CHANCE OF SUCCEEDING.

Google's right to rely upon the safe harbor provisions of the DMCA is an affirmative defense.[2] In order to prevail on any of its three DMCA Motions, Google must establish, among other things, that upon receiving knowledge of infringing material, Google acted expeditiously to remove or disable access to the material. This requirement is present in each of Sections 512(b), (c), and (d) of the DMCA.

---

[2] *UMG Recordings, Inc., v. Veoh Networks, Inc.*, 2008 WL 5423841 at *1 (C.D.Cal. 2008); *In re Aimster Copyright Litigation,* 252 F.Supp.2d 634, 657 (N.D. Ill. 2002) ("Liability protection under the DMCA is an affirmative defense and, as such, Defendants bear the burden of establishing its applicability."); *A&M Records, Inc. v. Napster, Inc.,* 2000 WL 573136 at *6, 54 U.S.P.Q.2d 1746 (N.D. Cal., 2000).

1  As explained below, Google's delay of between three and seventeen

2  months to process certain Perfect 10 DMCA notices and its complete failure to

3  remove or disable access to thousands of identified infringing images and web

4  pages in other notices, precludes Google from being able to rely on the safe

5  harbor affirmative defense [*see* Section IV.A and B, below]. In fact, in order

6  for Google to prevail on its DMCA Motions, this Court must decide at least 13

7  separate key legal issues in Google's favor. [*see* Section IV.C, below]. If

8  Perfect 10 prevails on any one of these 13 issues, Google's DMCA Motions

9  must be denied.

10  The issue of whether Perfect 10's notices complied with the DMCA was

11  before this Court in 2005-2006 in connection with Perfect 10's preliminary

12  injunction motion. *Perfect 10 v. Google, Inc.*, 416 F.Supp.2d 828, 838 (C.D. Cal.

13  2006). During the oral argument, which occurred on November 7, 2005, Andrew

14  Bridges, then Google's attorney, admitted that "…their [Perfect 10's] notices

15  improved; and with the improvement of their notices, Google has been able to do a

16  better job." Transcript of Hearing at page 46, attached as Exhibit F to the

17  Declaration of Jeffrey Mausner ("Mausner Decl."). In its ruling on the preliminary

18  injunction, this Court noted that "Google acknowledges that it received P10's

19  notices," and the Court assumed that these notices were sufficient to provide

20  Google with knowledge of the alleged infringements. 416 F.Supp.2d at 854. ***It***

21  ***would be incredibly prejudicial for this Court to rule, more than three years***

22  ***later, that over sixty Perfect 10 DMCA notices, which Perfect 10 took months to***

23  ***create, and which others have been able to process, were so deficient as a matter***

24  ***of law that Google is entitled to summary judgment in its favor.*** The Ninth

25  Circuit also did not rule, in any way, that Perfect 10's notices were deficient. For

26  all of these reasons, this Court should not delay the filing of P10's SJ Motion.

27

28

## A. **Google's Admitted Delay in Removing Identified Infringing Links Precludes a DMCA Safe Harbor.**

Perfect 10 created spreadsheet-style DMCA notices *following Google's own instructions*, which were sent to Google in 2004. In the leftmost column of each spreadsheet, Perfect 10 included the URL that Google requested. This URL appeared in green at the end of Google's Web Search result. In the center column of each spreadsheet, Perfect 10 included the search term Perfect 10 used, also as Google requested. This term typically was the name of the Perfect 10 model whose image was infringed. In other words, the notices prepared by Perfect 10 contained both the URL and the search term requested by Google. Declaration of Dr. Norman Zada, submitted herewith ("Zada Decl.), ¶8, Exh. 6.

In response to Perfect 10's 2004 spreadsheet-style notices, Google admittedly waited between *three and seventeen months* to remove the identified infringing links from Google's Web Search results. Zada Decl. ¶6, Exh. 4. That Google was able to belatedly remove these links means that Perfect 10's notices were substantially compliant, because they provided Google with sufficient information to locate and remove the infringing links. Because Google did not act expeditiously to remove these links, however, as required by the DMCA, Google is not entitled to a safe harbor defense and cannot win any of its contemplated DMCA motions.

Furthermore, while Google belatedly removed identified infringing links from its Web Search results, *it did not remove those same links from its Image Search results*.[3] Zada Decl. ¶7, Exh. 5. Because Google did not remove the identified infringing links from its Image Search results at all, there can be no

---

[3] Google links each thumbnail in its Image Search results back to the web page containing the original image from which Google created the thumbnail. Google cannot satisfy the statutory requirement of disabling access to an infringing web page if it continues to copy infringing images from that web page for its Image Search results and then link those images back to that infringing web page.

1   dispute that it did not remove such links expeditiously.  For this reason alone,

2   Google has virtually no chance of prevailing on its DMCA Motions.

3        **B.    Google's Failure To Act In Response To Nine Perfect 10 Notices**

4               **Also Precludes A DMCA Safe Harbor.**

5        After Perfect 10 sent to Google 34 notices of the spreadsheet style

6   described above, which were created following Google's instructions, Google

7   claimed that all of those notices were deficient.[4] Google's instructions to

8   Perfect 10 kept changing, and even contradicted themselves, to the point where

9   it became clear that whatever Perfect 10 did, Google would claim it was

10  deficient.  To deal with such contradictory instructions, Perfect 10 decided in

11  June 2007 to anticipate and address all conceivable objections, by sending

12  actual copies of infringing web pages, which contained both the URL that

13  Google requested as well as a copy of the infringed and infringing image.  The

14  notices that Perfect 10 sent to Google using Adobe, had several advantages.

15  The files were searchable and the URLs were extractable.  By providing actual

16  copies of infringing web pages along with the infringing URLs, it was much

17  less likely that Perfect 10 would make a mistake and submit the wrong URL.

18  Zada Decl. ¶9.  Finally, because the link structure was preserved, Google could

19  see what search term was used and exactly how Perfect 10 got to a particular

20  infringing web page.  Zada Decl. ¶9.

21       Using this new format, Perfect 10 submitted DMCA notices to Google

22  dated June 28, 2007, July 2, 2007, July 12, 2007, October 16, 2007, December

23  14, 2007, January 24, 2008, March 17, 2008, July 9, 2008, and April 24, 2009.

24

25       [4] Google's primary contentions, which were not raised at the time of the
    notices but were raised much later, were that: (i) Perfect 10 should not have
26  removed the starting "www." from the URLs identified in its notices; and (ii)
    Google could not tell which image on the identified infringing webpage belonged
27  to Perfect 10, even though in many cases, there was only one such image.  As
    explained in the Zada Declaration, neither of these assertions has any merit.  Zada
28  Decl. ¶9.

Zada Decl. ¶¶9, 15. These notices identified *tens of thousands of infringements* available via Google's search engine, on Google's servers, hosted by Google, and/or surrounded by Google ads on Google AdSense affiliated websites. The notices were painstakingly edited so that each webpage contained only P10 Images, or all large or checked images were P10 Images. Zada Decl. ¶¶3-10, 15, Exhs. 1-7.

Google has not processed the nine notices identified above. Instead, Google has claimed that these notices are deficient as well, because they include images.[5]

Google cannot establish that it acted expeditiously to remove infringing material identified by Perfect 10 in these nine notices, *because it did nothing or next to nothing in response to the notices.* Zada Decl. ¶15. Moreover, in order to demonstrate that these notices were deficient, Google will have to establish the absurd proposition that a notice that provides the URL of an infringing web page, standing alone, complies with the DMCA, but a notice that adds a copy of the image to the URL does not.

C. **In Order For Google To Prevail On Its DMCA Motions, This Court Must Decide All Of the Thirteen Legal Issues Identified Below In Google's Favor.**

Because the safe harbor provisions of the DMCA are affirmative defenses, Google must prove that it satisfied all of the statutory requirements in order to qualify. In particular, Google must prove that: (i) upon receiving notification of claimed infringement, it responded expeditiously to remove or disable access to the material that is claimed to be infringing or to be the subject of infringing activity (17 U.S.C. §512(b)-(d)); (ii) it adopted and

---

[5] It is ironic that Google would claim that the inclusion of images in DMCA notices is a hindrance, when its fair use argument depends on its contention that there is no textual substitute for an image.

1  reasonably implemented a policy for the termination of repeat infringers; and

2  (iii) it did not receive a direct financial benefit from infringing activity that it

3  had the right and ability to control.  As explained below, in order for Google to

4  prevail on its DMCA Motions, this Court must decide that there is no triable

5  issue of fact regarding any of the 13 issues discussed below, and that Google is

6  entitled to a ruling in its favor on each of these issues.  If Perfect 10 prevails on

7  any of these issues, this Court will be forced to deny Google's DMCA Motions.

8  For this reason as well, Google is unlikely to prevail on its Motions, and P10's

9  SJ Motion should not be delayed.

### 1. Google's Continued Storage Of Full-Size P10 Images On Its Servers, Despite Notice.

12  Perfect 10 has evidence that Google has continued to store more than

13  4,000 full-size P10 Images on its blogger.com servers, despite receiving notice

14  of all of these infringing images in Perfect 10's DMCA notices.  For example,

15  Perfect 10's July 2, 2007 notice to Google included the full-size P10 Image

16  found at page 1 of Exhibit 1 to the Zada Decl.  As may be seen by the URL at

17  the bottom of this page, this P10 Image is stored on Google's blogger.com

18  servers.  As of May 10, 2009, however, almost two years later, that image was

19  still on Google's servers, as shown on page 2 of Exhibit 1 to the Zada Decl.

20  *See* Zada Decl. ¶3, Exh. 1.

21  Legal Issue 1: Given Google's failure to remove or disable access to

22  4,000 full-size P10 Images on its own servers, is Google nevertheless entitled

23  to summary judgment on the affirmative defense of DMCA safe harbor?  Or

24  does this conduct by Google constitute direct or contributory infringement?

### 2. Google's Continued Hosting Of Websites That Infringe P10 Images, Despite Notice.

27  In addition to storing over 4,000 infringing full-size P10 Images directly

28  on its blogger.com servers, Google has also hosted over 400 websites via its

blogspot.com hosting program that have infringed, in total, more than 10,000 P10 Images. Zada Decl. ¶4, Exh. 2. Page 1 of Exhibit 2 to the Zada Decl. shows a page that was sent to Google as part of Perfect 10's October 16, 2007 DMCA notice. The lone image on that page was identified as copyrighted by Perfect 10, and the highlighted cache link at the top of the page shows the exact URL for that cache link in Google's Web Search results. Furthermore, the blogspot.com in the cache link URL shows that this page was hosted by Google. Thus Google knew that it was directly linking to this infringing web page via its Web Search results, and that the page was hosted on Google servers. Perfect 10 also provided to Google as part of that October 16, 2007 notice, the full-size image shown on page 2 of Exhibit 2 to the Zada Decl., which was stored on Google's blogger.com servers. Nevertheless, pages 3 and 4 of Exhibit 2 show that Google did not remove either of those images from its servers as of May 9, 2009, more than *eighteen months* later. Zada Decl. ¶4, Exh. 2. Google also did not stop directly linking to the identified infringing web page. This is just one example of Google's inaction, among thousands.

Legal Issue 2: Is Google entitled to summary judgment on the affirmative defense of the DMCA safe harbor even though, upon receiving notice, it has failed to remove or disable access to thousands of P10 Images on websites it hosts? Or does this conduct constitute contributory or direct infringement?

**3.** **Google's Continued Hosting Of Websites That Display Google Ads Next To Thousands Of P10 Images, Despite Notice.**

Google has hosted websites in its blogspot.com hosting program that have displayed Google ads next to at least 4,000 P10 Images. Zada Decl. ¶5, Exh. 3. Page 1 of Exhibit 3 to the Zada Decl. shows a webpage hosted on Google's blogspot.com servers, which was sent to Google as part of Perfect 10's July 9, 2008 DMCA notice. Page 2 of Exhibit 3 shows that Google

displayed on May 9, 2009, ten months later, "Ads by Google" on that same web page with the same infringing images. Because Google was receiving a financial benefit from clicks on ads next to infringing P10 Images, over which it had complete control since everything was on Google's servers, these facts would preclude summary judgment for Google under §512(c)(1)(B).

Legal Issue 3: Is Google precluded from summary judgment on the DMCA when it places thousands of Google ads next to P10 Images on websites which it hosts, particularly if it does not remove such infringements upon notice?

### 4. Google's Failure To Remove Identified Infringing Links For Three to Seventeen Months After Notice.

Google admittedly has removed hundreds of links to infringing web pages identified in Perfect 10's notices, but only after waiting more than three months. In some cases, Google admittedly waited *seventeen months* before removing the links to the infringing material. For example, Google received the URL http://www.britney-spears-nude-pics.com/vsorensen /vsorensen_010.jpg from Perfect 10 in its May 31, 2004 notice, but did not remove that URL from its search results until November 3, 2005, seventeen months later. (*See* portion of the Sur-Reply Declaration of Mr. Macgillivray, Google's Intellectual Property Counsel, attached as Exh. 4 to the Zada Decl.)

Legal Issue 4: Can Google delay between three months and seventeen months before removing infringing links and nevertheless be ruled to have "acted expeditiously" under the DMCA as a matter of law? Or does this conduct by Google constitute contributory infringement?

### 5. Google's Failure To Remove Identified Infringing Links From Its Image Search Results.

Although Google eventually removed certain links to infringing web pages identified in Perfect 10's notices from its Web Search results, it failed to

1    remove the same links from its Image Search results.  For example, as may be

2    seen from page 1 of Exhibit 5 to the Zada Decl., which is a page from Mr.

3    Magillivray's Sur-Reply declaration, on June 28, 2004, Perfect 10 provided

4    Google with notice of the allegedly infringing webpage at web.tiscali.it/raskz/

5    donne/giugno.htm.  Although Google removed the link to this web page from

6    its Web Search results on October 11, 2004, more than three months later,

7    Google still had not removed the same link to that infringing web page from its

8    Image Search results as of July 9, 2006, more than two years later, as shown by

9    Zada Decl. ¶7, Exhibit 5, page 2.

10         Moreover, as may be seen from page 3 of Exhibit 5 to the Zada Decl.,

11    Perfect 10 identified the infringing URL bukuroshe.parajsa.com/

12    sashabrinkova1.htm to Google in its July 19, 2004 notice.  As may be seen

13    from page 4 of Exhibit 5 to the Zada Decl., Google was continuing to link to

14    that same infringing web page via its Image Search results on May 31, 2008,

15    and had even placed "Ads by Google" below the infringing P10 Image on that

16    page.  Moreover, page 5 of Exhibit 5 shows that Google was continuing to link

17    to that same infringing web page as of May 9, 2009, almost five years after

18    receiving notice.  Zada Decl. ¶7, Exh. 5.

19         Legal Issue 5: Is Google entitled to a DMCA safe harbor as a matter of

20    law, even though it did not remove infringing links that it was aware of, from

21    its Image Search results?  Or is Google contributorily liable for such conduct?

22         **6.**    **Google Cannot Assert That Perfect 10's Notices Are**

23             **Deficient Because Those Notices Were Created Based On**

24             **Google's Own Instructions.**

25         Because of Google's failure to expeditiously remove virtually any of the

26    tens of thousands of infringing URLs and images identified in Perfect 10's

27    sixty plus DMCA notices, Google will undoubtedly claim that all of Perfect

28    10's notices were substantially deficient.  Even if they were somewhat

1    deficient, Google was required, under §512(c)(3)(B)(ii), to contact Perfect 10

2    and explain how to correct any such deficiencies, which it did not do.  *See*

3    Section IV.C.7 below.  Furthermore, most of the URLs included in Perfect 10's

4    notices were determined based on instructions provided by Google, and

5    therefore could not have been substantially deficient.

6        Google cannot demonstrate that the approximately forty-three

7    spreadsheet style notices that Perfect 10 sent to it from June 4, 2004 through

8    April 24, 2007 are deficient because a) they were created following Google's

9    instructions, b) other search engines, such as Yahoo! have been able to process

10    them in three days, and c) Google was able process them, albeit belatedly.

11    Zada Decl. ¶¶6-9, Exhs. 4-6.  Furthermore, when Google changed some of its

12    instructions in 2006, Perfect 10 followed those instructions as well.  *Id.* ¶10,

13    Exh. 7.  For example, sometime in 2006 or 2007, Google began to claim that

14    copyright holders had to provide image URLs to remove images from its Image

15    Search results.  That is not actually correct.[6]

16        Nevertheless, despite the fact that Google's special instructions for

17    removing images from its Image Search results were not necessary, Perfect 10

18    followed those instructions in its notices.  For example, page 1 of Exhibit 7 to

19    the Zada Decl. is a page that was included in Perfect 10's March 17, 2008

20    notice to Google, using the instructions given by Google.  Page 2 of Exhibit 7

21    shows that Google did not remove that image from its Image Search results as

22    of May 17, 2009, fourteen months after notice.  Zada Decl. ¶10, Exh. 7.

23        Legal Issue 6: If a copyright holder follows an ISP's instructions in

24    creating DMCA notices, can that ISP nevertheless claim that such notices are

25

26      [6] It is sufficient to send a copy of the infringing web page and checkmark the infringing image on the page.  That allows Google to block the web page from its

27    Web Search and Image Search results, and block the specified image from its Image Search results.  In Perfect 10's spreadsheet style notices, Perfect 10 gave the web page URL and the model name, as well as the page range of the Perfect 10

28    Magazine containing the image, which was sufficient as well.  Zada Decl. ¶¶8-11.

1  substantially deficient?

2    **7.    Google's Refusal To Provide Perfect 10 With Specific**
3    **DMCA Instructions When Requested Violates Section**
4    **512(c)(3)(B)(ii) Of The Statute.**

5       The initial instructions for creating DMCA notices that Google provided
6  to Perfect 10 on June 1, 2004, were vague.  Specifically, Google asked Perfect
7  10 to "Identify in sufficient detail the copyrighted work that you believe has
8  been infringed upon."  Zada Decl. ¶8, Exh 6.  In Perfect 10's initial notices, it
9  provided a page range of where the infringing image was located in Perfect 10
10 Magazine and the name of the model whose image was infringed.  When
11 Google claimed that all of Perfect 10's notices were deficient, Perfect 10 began
12 to identify the infringed work by sending to Google a copy of the infringing
13 web page with the infringed image on it.  Google claimed those notices were
14 deficient as well.  Because Google claimed that every notice sent by Perfect 10
15 was deficient, on November 27, 2008, Perfect 10 sent Google five specific
16 examples involving Google search results for passwords, image search, web
17 search, and sponsored advertising links, and asked Google what information it
18 required for each such example.  Google refused to provide Perfect 10 with the
19 information it requested, ostensibly so it could continue to claim that
20 everything Perfect 10 did was deficient.  Zada Decl. ¶11, Exh. 8.

21      Legal Issue 7: If an ISP refuses to answer a copyright holder's questions
22 as to exactly what to include in a DMCA notice, is that ISP in violation of
23 §512(c)(3)(B)(ii) of the DMCA and therefore ineligible for safe harbor?

24    **8.    Google Has Failed To Maintain A DMCA Log.**

25      Google admittedly receives thousands of DMCA notifications for a
26 variety of its programs which involve infringing material.  In particular, Google
27 hosts and/or stores infringing material through its blogger.com and
28 blogspot.com programs and through google groups.  It links to infringing

websites through its Web Search, Web Search cache, and Image Search results, and places ads on infringing websites through its AdSense program. *See* Zada Decl. ¶¶3-7, 15, Exhs. 1-5. Nevertheless it is undisputed that Google has failed to keep a DMCA log. Indeed, when ordered to produce such a log, Google failed to do so. Zada Decl. ¶15.[7]

Legal Issue 8: Can an ISP like Google, that hosts, copies, links to, and places ads next to, massive amounts of unauthorized copyrighted material, satisfy the requirements of the DMCA if it fails to keep a DMCA log which would allow copyright holders to readily determine what actions Google has taken in response to notices and when, and whether Google has suitably terminated repeat infringers?

**9.** **Google Has Failed To Keep Track Of The Identities Of Its Hosting Clients.**

Section 512(i) of the DMCA, which deals with a service provider's repeat infringer policy, states, in relevant part, as follows:

(i) Conditions for eligibility.--

(1) Accommodation of technology.--The limitations on liability established by this section shall apply to a service provider only if the service provider--

(A) has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

17 U.S.C. §512(i). Google admits that its hosting clients are subscribers and account holders. Nevertheless, Google has failed to keep track of the identities of its hosting clients or maintain a DMCA log listing the complaints against

---

[7] In affirming and modifying Judge Hillman's Order compelling Google to produce documents, Judge Matz ordered Google to produce a "DMCA log," meaning "a spreadsheet-type document summarizing DMCA notices received, the identity of the notifying party and the accused infringer, and the actions (if any) taken in response." Order of Judge Matz dated May 13, 2008, Docket No. 294, page 5, lines 1-9. Google has not produced such a DMCA log. Zada Decl. ¶15.

Opposition To Google's Motion For Scheduling Order Which Would Delay Perfect 10
From Filing Its Motion For Summary Judgment

them.  Zada Decl. ¶4, Exh. 2.  Google has also not removed 4,000 full-size infringing P10 Images which Google helped to create on its blogger.com servers.

Legal Issue 9: Under the circumstances, can the Court still rule, as a matter of law, that Google has suitably implemented a policy against repeat infringers?

### 10. Google Has Failed To Utilize Image Recognition To Remove Or Disable Access To P10 Images.

Google has a "similar images" feature that allows its users to find images that are identical or nearly identical in appearance.  Nevertheless, Google continues to display multiple copies of the same P10 images for which it has received notice.  Zada Decl. ¶12, Exh. 9.  Legal Issue 10: Can Google, a technological powerhouse armed with image recognition, possibly satisfy the statutory requirement that it expeditiously remove or disable access to infringing material, if its Image Search results continue to display multiple copies of the same P10 Images for which it has received notice?

### 11. Google's Policy Of Publishing DMCA Notices It Receives On Chillingeffects.org Precludes A Safe Harbor.

Despite repeated objections by Perfect 10, Google has continued to send Perfect 10's confidential DMCA notices to chillingeffects.org for publication on the Internet.  Google then links to those confidential notices in its search results.  The net effect is to provide Google users with a listing of where infringing P10 Images are located on the Internet.  Perfect 10 has been able to cut and paste URLs from such notices posted on chillingeffects.org into its browser and readily locate such infringing P10 Images. Zada Decl.¶13, Exh.10.

Legal Issue 11: Has Google violated the DMCA requirement of expeditiously removing or disabling access to infringing material when it republishes on the Internet the same URLs it was asked to remove, and links to

Opposition To Google's Motion For Scheduling Order Which Would Delay Perfect 10
From Filing Its Motion For Summary Judgment

the notice containing those URLs in its search results?

**12.** **Google's Refusal To Remove Sponsored Links And Regular Links To Massive Infringing Paysites Precludes DMCA Safe Harbor.**

Perfect 10 has given repeated notice to Google of tens of thousands of infringing P10 Images available through paysites like giganews.com, which pays Google money for special sponsored link search result placement. Google also provides Giganews.com with more than 12,000 regular search links. Perfect 10 has advised Google that giganews.com and other Google advertising affiliates have stolen and sell virtually every major movie, song, and image. Nevertheless, Google has refused to remove or disable any sponsored links or regular links to these websites and instead helps these thieves sell their stolen wares for a fee. Zada Decl. ¶15. The operators of a similar site, thepiratebay.org, were recently sentenced to a year in jail in Sweden.

Legal Issue 12: Does Google's refusal to remove links to these massive infringing paysites preclude a DMCA safe harbor? This issue is extremely important, since these massive infringing sites are destroying the entertainment industry and other copyright holders, which are unable to compete with such sites that steal billions of dollars of major movies, songs, images, and other copyrighted works, and then sell them for pennies on the dollar.[8]

---

[8] This issue has been previously discussed with the Court:

THE COURT: Haven't you established your theories of liability?

MR. MAUSNER: Well, the one that he mentioned, I think, is a good one. The pay sites don't have the URLs of the individual images. We think our notice was the best notice you can give in that situation where we give the URL of the website and the actual picture, and we've also given instructions for how you locate that picture in the website. So the question becomes is that sufficient notice to the defendants to allow them to locate the infringing image and remove access. They have said in that situation they're not going to remove it. We think that they should remove it. So that's an issue that Your Honor can decide on summary judgment.

THE COURT: Okay. I see what you're talking about.

Transcript of hearing, October 6, 2008, Pg. 37 Lns. 10 -24, Mausner Decl., Exh. B.

13. **Google's Policy Of Removing One Link Out Of Thousands In Its Search Results Fails To Satisfy The DMCA Requirement Of Removing Or Disabling Access To Infringing Material.**

Google has a policy of removing links only if they directly link to an infringing web page. Because of Google's policy, even if it were to remove a specific infringing link from its Image Search results (which it has rarely done), it would still, through in-line linking, allow its users to readily view and download the same infringing images from google.com. Furthermore, Google has enough power on the Internet to force the infringing website to actually remove identified infringing images or risk being cut off from Google search results. Instead of contacting the infringing webmaster and demanding that the identified infringing material be removed, Google has simply removed at most one link, out of potentially thousands, to that infringing website from its Web Search results. As a result, its users can still access the same infringing material for which Google received notice. Zada Decl. ¶14, Exh. 11.

Legal Issue 13: Does Google's policy of removing links only if they directly link to infringing web pages, and its refusal to cut all links to infringing websites if they do not remove the identified infringing material, preclude a DMCA safe harbor?

In sum, for Google to prevail on its three DMCA Motions, it must establish that there is no triable issue of material fact as to any of the above 13 issues and that Google is entitled to a ruling in its favor as a matter of law on each of these issues. As explained above, such a result seems extremely unlikely. Accordingly, there is no basis for this Court to hear Google's three DMCA Motions before it hears P10's SJ Motion.

**V.** **GOOGLE'S MISLEADING DISCUSSION OF THE DISCOVERY IT ALLEGEDLY NEEDS TO OPPOSE P10'S SJ MOTION PROVIDES NO REASON FOR THIS COURT TO POSTPONE THE FILING OF P10'S SJ MOTION.**

After five years of litigation, Google makes the incredible assertion that P10's SJ Motion is "premature because relevant discovery is outstanding." Motion at 1. Moreover, Google asserts that this Court should grant the Motion because it intends to delay any hearing on P10's SJ Motion by opposing the motion under Rule 56(f). As explained below, Google is wrong. Its mistaken claims about discovery provide no basis for this Court to prevent the filing of P10's SJ Motion.

**A.** **Perfect 10 Has Already Provided Google With The Discovery Google Contends It Needs To Oppose P10's SJ Motion.**

This action has been pending since 2004. Google thus has had five years to conduct discovery and has conducted massive amounts. Under these circumstances, it is difficult to conceive that Google, with its massive resources, was unable to prepare its defense during that time. Nevertheless, even though it has never seen P10's SJ Motion, Google asserts that it has not received three items of discovery it needs to oppose P10's SJ Motion. *See* Motion at 9. As explained below, Perfect 10 already has provided Google with this discovery.

First, Google contends that it needs "[e]vidence of copyright ownership and registration of the images at issue—a necessary predicate for maintaining Perfect 10's copyright infringement claims." Motion at 9. Perfect 10 has produced these documents for virtually all of its copyrights. Moreover, it has produced these documents for each of the thirteen images that are currently being used as a sample in P10's SJ Motion. (If any additional images are used in the sample, they will only be images for which Perfect 10 has produced documents.) Finally, Perfect 10

1  will include additional copies of those documents as exhibits to the motion.

2  Google's mistaken contention thus provides no basis for this Court to grant the

3  Motion and prevent the filing of P10's SJ Motion.[9]

4      Second, Google asserts that it needs "an identification of the alleged

5  infringements Perfect 10 is asserting here, including evidence of the date and

6  location of infringement, publication date of the infringed image and registration

7  date." Motion at 9. As counsel for Perfect 10 explained to counsel for Google

8  during the conference of counsel with respect to P10's SJ Motion, the Motion is

9  currently based on a sample of 13 images. The information sought by Google with

10  respect to those 13 images has already been provided to Google, and will be

11  included in the documents filed in support of P10's SJ Motion. See Mausner

12  Decl., ¶7.

13      Third, Google claims that it needs "[e]vidence regarding the alleged market

14  (if any) for Perfect 10's cell phone download images—relevant to Google's fair

15  use defense." Motion at 9. Perfect 10 has produced whatever evidence it has with

16  respect to this issue. Zada Decl. ¶16. Moreover, Google fails to explain, and

17  indeed cannot explain, why it needs such evidence to oppose P10's SJ Motion,

18  when the motion does not deal with fair use.

19      In sum, Google's contention that it needs allegedly outstanding discovery to

20

21  _____

[9] Perfect 10 produced existing copyright registrations at the beginning of the
22  case and has periodically produced new registrations as they are received from the
Copyright Office. On October 6, 2008, Google sent Perfect 10 a letter identifying
23  a limited number of copyright materials it claimed were missing and demanded
that Perfect 10 immediately provide those documents. Perfect 10 ordered the
24  limited number of documents that Google specified, which were in fact missing,
from the Copyright Office. Perfect 10 has received most of the missing documents
25  from the Copyright Office, and offered to make them available to Google on May
20. It is important to note that none of the documents Google claimed were
26  missing related to the sample that Perfect 10 is using for its summary judgment
motion. Furthermore, Google can obtain all documents itself from the Copyright
27  Office, just as Perfect 10 did. Nevertheless, Google went ahead and filed a motion
to compel the production of the documents that had not yet been obtained from the
28  Copyright Office, even though Perfect 10 represented that it would obtain and
produce any missing documents it could obtain.

oppose P10's SJ Motion lacks any basis in fact.  This contention certainly provides no grounds for this Court to bar the filing of P10's SJ Motion until after this Court rules on Google's DMCA Motions.

## B. <u>Google's Assertion That It Will Oppose P10's SJ Motion By Seeking Relief Under Rule 56(f) Provides No Basis To Grant Google's Present Motion.</u>

In ruling on a Rule 56(f) motion, "the burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists"… "and that it would prevent summary judgment." *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 921 (9th Cir. 1997).  The evidence a party moving under Rule 56(f) expects to obtain must be "essential" or "material" to opposing a summary judgment or summary adjudication motion.  "The party seeking the continuance must show that it lacks the 'facts essential' to resist the summary judgment motion."  *State of California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998) (citations omitted).  "By its very terms, this standard [Fed.R.Civ.P.56(c)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact."  *Id.* (emphasis added).

Furthermore, in ruling on a Rule 56(f) motion, "…the district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past." *Chance v. Pac-Tel Teletrac Inc.,* 242 F.3d 1151, 1161 (9th Cir. 2001).  Additionally, the fact that a case has been pending for a long time militates against the granting of a Rule 56(f) motion. *See Fox v. Good Samaritan Hospital,* 2007 WL 2938175, *16 (N.D Cal. 2007)(Rule 56(f) motion denied where case pending for a long time (three years) and discovery not diligently pursued).  If Google actually lacks the discovery it needs to oppose P10's SJ Motion (which it does not), it would be because Google has wasted

Opposition To Google's Motion For Scheduling Order Which Would Delay Perfect 10
From Filing Its Motion For Summary Judgment

1    everyone's time and effort pursuing irrelevant issues involving Perfect 10's models

2    and financial matters that have nothing to do with the upcoming motions.

3           Here, as explained above, Google's contentions regarding the purported

4    evidence it believes it would need to oppose P10's SJ Motion it has yet to see fail

5    to satisfy Google's burden under Rule 56(f).  In any event, if there is a basis for

6    Google to file a Rule 56(f) motion, it can do so after it receives P10's SJ Motion.

7    Google's threat to file a Rule 56(f) motion, however, provides no grounds for this

8    Court to grant this motion or delay the filing of P10's SJ Motion.

9    **VI.    GOOGLE'S TRUE PURPOSE IN FILING THE MOTION IS TO**

10          **DELAY PERFECT 10'S ATTEMPT TO RESOLVE THE CASE**

11          **AND INSTEAD BURY PERFECT 10 IN UNNECESSARY AND**

12          **ABUSIVE DISCOVERY.**

13          Perfect 10 has attempted to minimize discovery disputes in this case by

14   being extraordinarily forthcoming in its document productions.  It has produced

15   hundreds of gigabytes of material, including copyright registration certificates,

16   deposit materials, work for hire/assignment of rights agreements, tax returns,

17   detailed financial statements, server logs, DMCA notices to third parties.  Zada

18   Decl. ¶16.

19          Moreover, this Court has specifically directed the parties to engage in

20   "circumscribed" discovery and to use a sampling approach.  The Court set

21   "objectives -- i.e., summary judgment and settlement readiness -- [to be achieved]

22   without 'going the distance' via full-fledged, uncircumscribed discovery."

23    (Mausner Decl., ¶2, Exh. 1, September 25, 2008 Order, p. 2.)[10]

24

25          [10] At the hearing on October 6, 2008, Google's lead counsel, Michael Zeller,
     argued that the Court should not use this approach, and the Court disagreed.

26
           The Court:  Okay.  **But what I am trying to accomplish, Mr. Zeller, is to**

27   **get you the discovery that is essential and no more, not different kinds**
     **of discovery.**  Now not to preclude you from it, not to say that at no time

28   would you have the chance to compel and to get a judge to agree that Perfect
     10 should be compelled to provide other discovery, but at the current time

Prior to the stay, Mr. Mausner and Mr. Zeller submitted a joint letter to Judge Hillman, which detailed Google's abuses up to that time. (See letter from Mausner and Zeller to Judge Hillman, dated November 14, 2008, attached as Exhibit E to Mausner Declaration). Google resumed its abusive conduct as soon as the stay lifted. Google has already served 229 document requests, 18 interrogatories, and 962 requests for admissions. On May 1, Google stated that it will seek relief from this Court to take **45 depositions**, even though such depositions are unnecessary to defend against P10's SJ Motion. (Letter from Rachel Herrick to Mausner, May 1, 2009, attached as Exh. C to Mausner Decl.)[11]

Finally, Google is intentionally burying this Court and Perfect 10 under a

---

and under this very perhaps innovative – I've come up with the idea myself. I'm not sure that it has ever been done elsewhere, but maybe it has. **At this stage, that's all you're going to be confined to. You are not going to be able to seek other stuff, and Perfect 10 is not going to be compelled to give it, and whatever they think they need from you for the first stage is all – once I'm satisfied that they have a right to it for the first stage, that's all they can get.** _What's so bad about that?_

(Transcript of 10/06/08 hearing, p. 18, lines 4 – 20, emphasis added, Exh. B to Mausner Declaration.)

[11] Similar tactics by Google's lead counsel, Michael Zeller of Quinn Emanuel, have been sanctioned by the District Court for the Northern District of California and the Ninth Circuit. In _Mattel, Inc. v. Walking Mountain Productions,_ No. C 01-0091 MISC WHA, the District Court held that "Mattel had sought the discovery for the improper purpose of annoyance and harassment and had failed to take reasonable steps to avoid imposing undue burden … ." The court found that "Mattel and its law firm of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP are engaging in unwarranted oppressive tactics." Order Determining Amount of Attorney's Fees, attached as Exh. D to Mausner Decl. The Ninth Circuit affirmed the award of sanctions, in _Mattel Inc. v. Walking Mountain Productions_ 353 F.3d 792, 813-14 (9th Cir. 2003), holding that much of the requested discovery had "no bearing on this litigation" or "no relation to this litigation," and that the subpoena was "abusively drawn." _Id._ at 813. The district court, as quoted by the 9th Circuit, had further found that "…no attempt had been made to try to tailor the information request to the immediate needs of the case," that "…the two subpoenas were served for the purpose of getting the museums to exert pressure on the witnesses not to testify" and concluded that "…the Subpoena was 'served for the purpose of annoying and harassment and not really for the purpose of getting information.'" _Id at 813-814._ The Court of Appeals concluded that the district court's finding that the subpoena was overly burdensome and served for an improper purpose was justified. _Id._ at 814.

Opposition To Google's Motion For Scheduling Order Which Would Delay Perfect 10
From Filing Its Motion For Summary Judgment

1    mountain of discovery motions. Indeed, the joint stipulations accompanying

2    Google's three pending motions to compel total over 550 pages. Mausner Decl.

3    ¶5. One of those joint stipulations, relating to Google's 962 requests for

4    admission, is more than 450 pages and was served by Google before the meet and

5    confer process was even concluded.

6          When Google's Motion is viewed in light of Google's conduct described

7    above, Google's true intention becomes clear. Google wishes to delay Perfect 10's

8    ability to file its motion and obtain a judgment as to Google's liability so that, in

9    the meantime, Google can seek to bury Perfect 10 with overbroad discovery and

10    abusive and unnecessary discovery motions. The only effective way to stop this

11    abuse is to expeditiously determine P10's SJ Motion. Accordingly, for this reason

12    as well, this Court should deny the Motion and allow the filing of P10's SJ Motion

13    to go forward.

14   **VII. CONCLUSION.**

15          Google has failed to present any justifiable reason for its attempt to

16    prohibit Perfect 10 from filing its motion until after Google's three DMCA

17    Motions have been decided. Google has failed to establish, and cannot

18    establish, either that it has any likelihood of prevailing on its DMCA Motions

19    or that it needs allegedly outstanding discovery to oppose P10's SJ Motion.

20    Accordingly, for all of the foregoing reasons, Perfect 10 respectfully requests

21    that this Court deny Google's Motion and allow Perfect 10 to file its motion.

22    Dated: May 17, 2009       Respectfully submitted,

23                      Law Offices of Jeffrey N. Mausner

24                      By: _____*Jeffrey N. Mausner*_____

25                          Jeffrey N. Mausner

26                          Attorney for Plaintiff Perfect 10, Inc.

27

28