Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773

Attorneys for Plaintiff Perfect 10, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE, INC., a corporation, <br><br> Defendant. <br> _____ | Case No. CV 04-9484 AHM (SHx) <br><br> **DECLARATION OF JEFFREY N. MAUSNER IN OPPOSITION TO GOOGLE'S MOTION FOR SCHEDULING ORDER WHICH WOULD DELAY PERFECT 10 FROM FILING ITS MOTION FOR SUMMARY JUDGMENT** <br><br> **Before Judge A. Howard Matz** <br><br> Date:  June 1, 2009 <br> Time:  10:00 a.m. <br> Place: Courtroom 14, Courtroom of the Honorable A. Howard Matz <br><br> Discovery Cut-Off Date:  None Set <br> Pretrial Conference Date:  None Set <br> Trial Date:   None Set |

# DECLARATION OF JEFFREY N. MAUSNER

I, Jeffrey N. Mausner, declare as follows:

1. I am a member of the State Bar of California and admitted to practice before this Court. I am counsel of record for Plaintiff Perfect 10, Inc. ("Perfect 10") in this action. All of the matters stated herein are of my own personal knowledge, except where otherwise stated, and if called as a witness, I could and would testify competently thereto.

2. Attached hereto as Exhibit A is a true and correct copy of a portion of the Court's September 25, 2008 Order, in which the Court set "objectives -- i.e., summary judgment and settlement readiness -- [to be achieved] without 'going the distance' via full-fledged, uncircumscribed discovery." Page 2.

3. On October 6, 2008, a status conference took place. The following colloquy took place between the Court and Google's lead counsel Michael Zeller:

> The Court: Okay. **But what I am trying to accomplish, Mr. Zeller, is to get you the discovery that is essential and no more, not different kinds of discovery.** Now not to preclude you from it, not to say that at no time would you have the chance to compel and to get a judge to agree that Perfect 10 should be compelled to provide other discovery, but at the current time and under this very perhaps innovative – I've come up with the idea myself. I'm not sure that it has ever been done elsewhere, but maybe it has.
>
> **At this stage, that's all you're going to be confined to. You are not going to be able to seek other stuff, and Perfect 10 is not going to be compelled to give it, and whatever they think they need from you for the first stage is all – once I'm satisfied that they have a right to it for the first stage, that's all they can get.**
>
> _**What's so bad about that?**_

Transcript of hearing, October 6, 2008, page 18, line 4 – 19, emphasis added. A true and correct copy of this portion of the transcript is attached as Exhibit B.

4. Attached as Exhibit C is a true and correct copy of a letter from Google's attorney Rachel Herrick Kassabian to Jeff Mausner dated May 1, 2009, in which she states: "Please let us know if Perfect 10 will stipulate that

Declaration Of Jeffrey N. Mausner In Opposition To Google's Motion For Scheduling Order

each party may take up to 45 depositions. If Perfect 10 is not willing to agree to additional depositions, please consider this letter pursuant to the pre-filing requirements of the Local Rules in advance of a contemplated Google motion for leave to take depositions in excess of the 10 deposition limit."

5.      Google has served 229 document requests, 18 interrogatories, and 962 requests for admissions.  Google has filed pending discovery motions consisting of more than 550 pages, not even counting declarations and exhibits.

6.      Attached as Exhibit D is a true and correct copy of the Order Denying Ex Parte Application of Mattel, Inc. to Enforce Subpoena and Order Determining Amount of Attorney's Fees in *Mattel, Inc. v. Walking Mountain Productions,* No. C 01-0091 MISC WHA, in which Mr. Zeller also acted as lead counsel, and his firm, Quinn Emanuel was sanctioned for abusive discovery and "unwarranted oppressive tactics."  The Ninth Circuit affirmed the award of sanctions, in *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792, 813-14 (9th Cir. 2003), holding that much of the requested discovery had "no bearing on this litigation" or "no relation to this litigation," and that the subpoena was "abusively drawn."  *Id*. at 813.  The district court, as quoted by the 9th Circuit, had further found that "…[n]o attempt had been made to try to tailor the information request to the immediate needs of the case," that "…the two subpoenas were served for the purpose of getting the museums to exert pressure on the witnesses not to testify" and concluded that "…the Subpoena was 'served for the purpose of annoying and harassment and not really for the purpose of getting information.'"  *Id* at 813-814.

7.      On May 5, 2009, Dr. Zada and I discussed Perfect 10's contemplated motion for summary judgment with Google's attorneys.  We informed them that Perfect 10's motion would be based on a sample of images, that the sample would consist less than 50 images, and that there were currently 13 images in the sample.

Declaration Of Jeffrey N. Mausner In Opposition To Google's Motion For Scheduling Order

8.     At the status conference on October 6, 2008, the following colloquy took place between the Court and me:

THE COURT: Haven't you established your theories of liability?

MR. MAUSNER: Well, the one that he mentioned, I think, is a good one. The pay sites don't have the URLs of the individual images. We think our notice was the best notice you can give in that situation where we give the URL of the website and the actual picture, and we've also given instructions for how you locate that picture in the website.

So the question becomes is that sufficient notice to the defendants to allow them to locate the infringing image and remove access. They have said in that situation they're not going to remove it. We think that they should remove it.

So that's an issue that Your Honor can decide on summary judgment.

THE COURT: Okay. I see what you're talking about.

Transcript of hearing, October 6, 2008, page 37 lines 10 – 24. A true and correct copy of this portion of the transcript is attached as Exhibit B.

9.     Attached as Exhibit E is a true and correct copy of the letter from Jeff Mausner and Michael Zeller to Judge Hillman, dated November 14, 2008.

10.     Attached as Exhibit F is a true and correct copy of a portion of the transcript of the hearing on Perfect 10's Motion for Preliminary Injunction, on November 7, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on May 17, 2009, at Los Angeles County, California.

_____
*Jeffrey N. Mausner*
Jeffrey N. Mausner

# Exhibit A

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| | CV 05-4753 AHM (SHx) | | |
| | CV 07-5156 AHM (SHx) | | |

| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.* |
|---|---|
| | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* |
| | PERFECT 10, INC. v. MICROSOFT CORPORATION |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE |
|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

The Court has considered the parties' responses to the Court's minute order dated August 20, 2008 concerning discovery disputes and the appointment of a discovery master. The Court has also considered the parties' contentions and concerns regarding a variety of issues arising from the August 18, 2008 scheduling conference and the August 27, 2008 telephonic conference, including the setting of trial dates for the *Google* and *Amazon* cases. The Court does not intend to appoint either a technical advisor or a discovery master at this time.

The parties in all these cases somehow have succumbed to the all-too-frequent tendency of litigants and lawyers to get sidetracked. That is particularly regrettable in lawsuits, such as these, that are complicated, technology-driven and potentially far-reaching.[1] For the Court to manage these cases in a standard fashion, such as to treat the pending discovery motions as if they were commonplace disputes, would not advance the goal of enabling the parties either to ready these cases for Rule 56 determinations or for

---

[1] There are other considerations that compound the difficulties. Plaintiff's counsel, for example, often complains about the supposedly unfair burdens that the Goliath-like defendants subject him to. And perhaps he is right that in certain respects their strategy may be to overwhelm him. Yet Perfect 10 may have invited those problems with its sweeping claims and its own conduct in the course of discovery.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx)<br>CV 05-4753 AHM (SHx)<br>CV 07-5156 AHM (SHx) | Date | September 25, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC., *et al.*<br>PERFECT 10, INC. v. AMAZON.COM, INC., *et al.*<br>PERFECT 10, INC. v. MICROSOFT CORPORATION | | |

meaningful settlement talks.[2]

Given the foregoing problems, as well as the enormous, ever-expanding number of the copyrighted images that Perfect 10 claims were infringed, it is necessary and appropriate for the Court to manage these cases differently. Therefore, in the exercise of its inherent and statutory authority to administer the rules of discovery in a manner that will "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, the Court intends to require the parties to negotiate in good faith a method or approach that will enable them to assess the strengths and weaknesses of their respective overall "cases" and contentions based on a sample of the key pertinent facts. In other words, the parties will take an approach comparable to that of a recognized, impartial expert who uses surveys and statistical analyses to project the extent (if any) of customer satisfaction with a product or, in the trademark context, the extent of confusion among consumers as to the source or origin of goods. From the information that the parties obtain, exchange and organize, they should be able to extrapolate reliable conclusions as to where they think they can go, or want to go, from there.

Accordingly, the Court has determined that a further conference with counsel in all three cases is necessary. Accordingly, the Court ORDERS the parties in all these cases to appear for a status conference on October 6, 2008 at 1:30 p.m.. The broad purpose of the conference is to explore ways for the parties to achieve the foregoing objectives -- i.e., summary judgment and settlement readiness -- without "going the distance" via full-fledged, uncircumscribed discovery.

At the conference, the Court will invite counsel to address the following preliminary or tentative findings and proposals, which will probably be incorporated into a special Case Management Order that will issue at the same time as the scheduling

---

[2]It is highly improbable that there will be a trial in any of these cases. That is so obvious that it need not be belabored.

# Exhibit B

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

- - -

COPY

PERFECT 10, INC., A CALIFORNIA        )
CORPORATION,                          )
                      PLAINTIFF,      )
                                      )
            vs.                       ) No. CV04-09484-AHM(SHx)
GOOGLE, INC., ET AL.,                 )
                      DEFENDANTS.     )
_____)
PERFECT 10, INC., A CALIFORNIA        )
CORPORATION,                          )
                      PLAINTIFF,      )
                                      )
            vs.                       ) No. CV05-4753-AHM(SHx)
AMAZON.COM, INC., ET AL.,             )
                      DEFENDANTS.     )
_____)
PERFECT 10, INC., A CALIFORNIA        )
CORPORATION,                          )
                      PLAINTIFF,      )
                                      )
            vs.                       ) No. CV07-5156-AHM(SHx)
MICROSOFT CORPORATION,                )
                      DEFENDANT.      )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, OCTOBER 6, 2008

_____

CINDY L. NIRENBERG, CSR 5059
U.S. Official Court Reporter
312 North Spring Street, #438
Los Angeles, California 90012
*www.cindynirenberg.com*

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1    need, that we have propounded, we have been at meet and confer

2    sessions with Perfect 10 about that we need to have resolved in

3    order to pin that down.

4           THE COURT: Okay. But what I am trying to

5    accomplish, Mr. Zeller, is to get you the discovery that is

6    essential and no more, not different kinds of discovery. Now

7    not to preclude you from it, not to say that at no time would

8    you have the chance to compel and to get a judge to agree that

9    Perfect 10 should be compelled to provide other discovery, but

10    at the current time and under this very perhaps innovative --

11    I've come up with the idea myself. I'm not sure that it has

12    ever been done elsewhere, but maybe it has.

13           At this stage, that's all you're going to be confined

14    to. You are not going to be able to seek other stuff, and

15    Perfect 10 is not going to be compelled to give it, and

16    whatever they think they need from you for the first stage is

17    all -- once I'm satisfied that they have a right to it for the

18    first stage, that's all they can get.

19           What's so bad about that?

20           MR. ZELLER: Well, what I would say -- if I may make

21    a comment, Your Honor, about what it is that Perfect 10 says in

22    its submission, because I do think that there is potentially

23    ways of carving this out.

24           I mean, without obviously waiving -- what our

25    position is is that, you know, we think we ought to just go

1    Zeller said.  Because he, as I understood it, was telling me he

2    doesn't know what your theories of liability are.  And that

3    came as a little bit of a surprise to me.  You haven't spelled

4    them out yet?

5              MR. MAUSNER:  Well, I think we did.  I think Your

6    Honor did.  I think the Ninth Circuit did.  I mean --

7              THE COURT:  Well, you just said, "Once our theories

8    of liability have been established."

9              MR. MAUSNER:  Right.

10             THE COURT:  Haven't you established your theories of

11   liability?

12             MR. MAUSNER:  Well, the one that he mentioned, I

13   think, is a good one.  The pay sites don't have the URLs of the

14   individual images.  We think our notice was the best notice you

15   can give in that situation where we give the URL of the website

16   and the actual picture, and we've also given instructions for

17   how you locate that picture in the website.

18             So the question becomes is that sufficient notice to

19   the defendants to allow them to locate the infringing image and

20   remove access.  They have said in that situation they're not

21   going to remove it.  We think that they should remove it.

22             So that's an issue that Your Honor can decide on

23   summary judgment.

24             THE COURT:  Okay.  I see what you're talking about.

25             Let me ask you something.  This A9 motion, this

1
2
3
4                           CERTIFICATE
5
6        I hereby certify that pursuant to Section 753,
7    Title 28, United States Code, the foregoing is a true and
8    correct transcript of the stenographically reported
9    proceedings held in the above-entitled matter and that the
10   transcript page format is in conformance with the
11   regulations of the Judicial Conference of the United States.
12
13   Date: OCTOBER 8, 2008
14
15                    _Cindy L Nirenberg_
16                    Cindy L. Nirenberg, CSR No. 5059
17
18
19
20
21
22
23
24
25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

# Exhibit C

May 1, 2009


<u>VIA EMAIL AND U.S. MAIL</u>

Jeffrey N. Mausner, Esq.
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA
Email: jeff@mausnerlaw.com


Re:    <u>Perfect 10, Inc. v. Google Inc.: Conference on Depositions</u>


Dear Jeff:

I write to propose that the parties stipulate to the number of depositions each party may take in excess of the ten provided by <u>Fed. R. Civ. P.</u> 30(a)(1).

Given the broad range of claims that Perfect 10 has asserted against Google in this matter, Google's counterclaims, the number of images at issue, and the complex chain of title associated with the copyrights to those images, rights of publicity, and other intellectual property upon which Perfect 10 is basing those claims, Google currently believes that it will need to take approximately 35 depositions in excess of the 10 provided by <u>Rule 30</u>. For example, Google will need to depose the nine models whose publicity rights are at issue, Perfect 10 and several of its officers and employees, several Perfect 10 vendors, and the many licensors and assignors from whom Perfect 10 allegedly obtained large numbers of images at issue here. Similarly, Perfect 10 has previously indicated that it might need in excess of the standard 10 depositions as well.[1] Of

---

[1]    In "Perfect 10's Response" at page 28, paragraph 8 of the parties' August 11, 2008 Joint Rule 16(b) Report, Docket No. 334, Perfect 10 stated that if the number of depositions is increased, the increase "should apply mutually to the parties."

course, depending on how discovery proceeds, more or fewer depositions might ultimately be necessary, but this is Google's best estimate at this time.

Please let us know if Perfect 10 will stipulate that each party may take up to 45 depositions. If Perfect 10 is not willing to agree to additional depositions, please consider this letter pursuant to the pre-filing requirements of the Local Rules in advance of a contemplated Google motion for leave to take depositions in excess of the 10 deposition limit. In that event, we also will be happy to discuss this issue further, so please let us know when would be a convenient time to talk.

I look forward to hearing from you.

Very truly yours,

Rachel Herrick Kassabian

RHK:brl

51320/2914025.1

# Exhibit D

ANNETTE L. HURST (No. 148738)
DOUGLAS A. WINTHROP (No. 183532)
SIMON J. FRANKEL (No. 171552)
PETER J. DROBAC (No. 191079)
HOWARD, RICE, NEMEROVSKI, CANADY,
    FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California  94111-4065
Telephone:   415/434-1600
Facsimile:   415/217-5910

Attorneys for Non-Party
SAN FRANCISCO MUSEUM OF MODERN ART

RECEIVED

FILED

JUL - 5 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTEL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>WALKING MOUNTAIN PRODUCTIONS, et al.<br><br>Defendants. | No. CO1-0091 Misc. WHA<br><br>[C.D. Cal. No. 99-08543 RSWL (RZx)]<br><br>[Proposed] ORDER DENYING EX PARTE APPLICATION OF MATTEL, INC. TO ENFORCE SUBPOENA TO SAN FRANCISCO MUSEUM OF MODERN ART, QUASHING SUBPOENA, AND GRANTING SANCTIONS AGAINST MATTEL'S COUNSEL |

1    The ex parte Application of Mattel, Inc. to Enforce Subpoena and To Compel The San

2    Francisco Museum of Modern Art to Produce Documents and to Produce Documents and to

3    Produce its Representative for Deposition ("Application") was filed on May 30, 2001. The

4    San Francisco Museum of Modern Art ("SFMOMA") filed an Opposition to the Application

5    on the morning of June 4, 2001. The Court held a telephone hearing on the Application on

6    June 4, 2001, at 12:00 p.m. Michael T. Zeller of Quinn Emanuel Urquhart Oliver & Hedges

7    appeared for Mattel. Simon J. Frankel of Howard, Rice, Nemerovski, Canady, Falk &

8    Rabkin, A Professional Corporation, appeared for SFMOMA.

9        Having considered the Application and SFMOMA's Opposition and the argument of

10   counsel, the Court finds that the subpoena served by Mattel on SFMOMA on May 15, 2001

11   (the "Subpoena") was not served for a legitimate purpose, but for annoyance and

12   harassment; that the Subpoena imposes an undue burden on SFMOMA, a non-party to the

13   underlying action, *Mattel, Inc. v. Walking Mountain Productions, et al.*, C.D. Cal. No. 99-

14   08543 RSWL (RZx) (the "Action"); that Mattel's counsel has engaged in misconduct in

15   serving and seeking to enforce the Subpoena, in failing to meet and confer before filing the

16   Application, and in engaging in a pattern of serving museums whose employee is a witness

17   in the Action with a broad subpoena for no legitimate reason; and that the United States

18   District Court for the Central District of California, where the Action is pending, should be

19   notified of this Court's finding of misconduct.

20       Accordingly , the Court hereby ORDERS that:

21       1.    The Application is denied;

22       2.    The Subpoena is quashed in its entirety;

23       3.    Mattel's counsel is hereby sanctioned for serving and seeking to enforce an

24   improper subpoena and for failing to meet and confer and is therefore ordered to pay

25   SFMOMA's counsel, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, a total of

26   $9,616.93 for the fees and costs incurred in opposing the Application, to be paid within ten

27   days of the date of this Order;

28       4.    Counsel for SFMOMA is directed to inform the United States District Court for

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

the Central District of California, where the Action is pending, of this Court's finding of misconduct by Mattel's counsel in serving and seeking to enforce an improper subpoena and in failing to meet and confer. Counsel for SFMOMA shall provide that Court with a copy of this Order and the portions of the transcript of the June 4, 2001 hearing constituting the Court's ruling.

IT IS SO ORDERED.

Dated this _____ day of June, 2001.

July 5, 2001

_____
HONORABLE WILLIAM ALSUP
UNITED STATES DISTRICT COURT JUDGE

HOWARD
RICE
NEMEROVSKI
CANADY
FALK
& RABKIN
A Professional Corporation

United States District Court
for the
Northern District of California
July 6, 2001

\* \* CERTIFICATE OF SERVICE \* \*

Case Number:3:01-mc-00091

Mattel, Inc.

vs

Walking Mountain

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Northern District of California.

That on  July 6, 2001, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.

Albert P. Bedecarre, Esq.                DT/WHA
Quinn Emanuel Urquhart Oliver & Hedges LLP
201 Sansome Street
Sixth Floor
San Francisco, CA  94104

Michael Zeller, Esq.
Quinn Emanuel Urquhart Oliver & Hedges LLP
865 S Figueroa St
10th Flr
Los Angeles, CA  90017-3211

Annette L. Hurst, Esq.
Howard Rice Nemerovski Canady Falk & Rabin
Three Embarcadero Center
7th Flr
San Francisco, CA  94111

Richard W. Wieking, Clerk

BY:
A Bowder, Deputy Clerk

FILED

JUL - 6 2001

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MATTEL, INC., a Delaware corporation,

        Plaintiff,

   v.

WALKING MOUNTAIN PRODUCTIONS, et al.,

        Defendants.

No. C 01-0091 MISC WHA

**ORDER DETERMINING AMOUNT OF ATTORNEY'S FEES**

By previous ruling, the Court quashed entirely the subpoena duces tecum served on non-party San Francisco Museum of Modern Art and held that Mattel had sought the discovery for the improper purpose of annoyance and harassment and had failed to take reasonable steps to avoid imposing undue burden and expense on SFMOMA — all for reasons stated on the record that need not now be repeated. Accordingly, Mattel was ordered to pay attorney's fees. SFMOMA submitted the declaration of Douglas Winthrop in support of the fees. No response was received, but the Court then invited Mattel to submit "any objections to the amounts" by July 2.

Mattel then submitted three inches of material with 44 exhibits, virtually all of which is irrelevant and merely an attempt to re-argue the issue of entitlement to fees. Mattel now argues that it should have been given a separate hearing to contest the imposition of sanctions. Mattel should have raised its procedural argument at the hearing. Mattel did not. Mattel waived any

procedural infirmity. *See, e.g., Beverly v. Network Solutions, Inc.*, No. C 98-0337 VRW, 1998 WL 917526, at *4 (N.D. Cal. Dec. 30, 1998); *Novato Fire Protection Dist. v. U.S.*, No. C 96-3893 FMS, 1998 WL 46923, at *1 (N.D. Cal. Jan. 26, 1998).

Moreover, FRCP 45(c)(1) provides that a subpoenaing party and its attorney "shall take reasonable steps to avoid imposing undue burden or expense an a person subject to [a] subpoena." One issue on the table at the June 4 hearing was precisely that — the extent of undue burden. That issue was fully and fairly litigated. It was clear that Mattel and its counsel — the law firm of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP — had not taken the reasonable steps required by FRCP 45(c)(1). The Court so found.

FRCP 45(c)(1) should not be construed to require a succession of hearings (and certainly it does not so state) when the same facts fairly litigated on the merits of the burden show clearly that the duty imposed by FRCP 45 was violated. *See Toombs v. Leone*, 777 F.2d 465, 471–72 (9th Cir. 1985); *see also Chrysler Corp. v. Carey*, 186 F.3d 1016, 1023 (8th Cir. 1999) ("Due process is satisfied if the sanctioned party has a real and full opportunity to explain its questionable conduct before sanctions are imposed"). To hold otherwise would pile cost on expense and reward the very hardball tactics FRCP 45 meant to end. The decisions cited by Mattel do not construe FRCP 45(c)(1) as it now exists or involve scenarios where the merits of the activity giving rise to the sanctions was fully litigated. Decisions involving sanctions for improper subpoenas under FRCP 45 have not required a hearing beyond the one on the merits of the subpoena. *See Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 269 (10th Cir. 1995).

Moreover, FRCP 26(g)(2) provides that every discovery request constitutes a certification by the attorney that the request is not interposed for any improper purpose, such as to harass or to cause unnecessary cost. In conjunction with FRCP 37(a)(4), FRCP 26 also provides that when a party seeks to compel discovery without substantial justification, sanctions including attorney's fees, are *required.* Again, there is no requirement for a succession of hearings when the merits of the burden, justification, and purpose issues are intertwined with the merits, as here. *Kraszewski v. State Farm General Ins. Co.*, 130 F.R.D. 111, 114 (N.D. Cal. 1984).

1       The Court is clear that Mattel's misconduct cried out for a sanction and was a clear

2  violation of its duty under FRCP 45(c)(1) to avoid "undue burden" and was served for an

3  improper purpose within the meaning of FRCP 26(g). The award of attorney's fees was fully

4  warranted. Mattel was in no way prejudiced by not holding a supplemental hearing. The abuse

5  of discovery by Mattel was manifest.

6       Mattel's new three-inch stack of paperwork is more of the same. Mattel and its law firm

7  of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP are engaging in unwarranted oppressive

8  tactics. To bring this matter to a close or at least an appeal, the Court will rather simply order

9  Mattel and its counsel to pay SFMOMA the $9,616.93 documented fully in the Winthrop

10  declaration. All objections to the amount are overruled.

11

12    **IT IS SO ORDERED.**

13

14  Dated: July 6, 2001.

                                            _____

15                              WILLIAM ALSUP
                              UNITED STATES DISTRICT JUDGE

awb

United States District Court
for the
Northern District of California
July 6, 2001


* * CERTIFICATE OF SERVICE * *



Case Number:3:01-mc-00091


Mattel, Inc.

    vs

Walking Mountain

---

I, the undersigned, hereby certify that I am an employee in the Office of
the Clerk, U.S. District Court, Northern District of California.

That on  July 6, 2001, I SERVED a true and correct copy(ies) of
the attached, by placing said copy(ies) in a postage paid envelope
addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office
delivery receptacle located in the Clerk's office.


        Albert P. Bedecarre, Esq.           DT/WHA
        Quinn Emanuel Urquhart Oliver & Hedges LLP
        201 Sansome Street
        Sixth Floor
        San Francisco, CA  94104

        Michael Zeller, Esq.
        Quinn Emanuel Urquhart Oliver & Hedges LLP
        865 S Figueroa St
        10th Flr
        Los Angeles, CA  90017-3211

        Annette L. Hurst, Esq.
        Howard Rice Nemerovski Canady Falk & Rabin
        Three Embarcadero Center
        7th Flr
        San Francisco, CA  94111


                    Richard W. Wieking, Clerk

                    BY
                    A Bowser, Deputy Clerk

# Exhibit E

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone (818) 992-7500
Facsimile (818) 716-2773
E-mail: jeff@mausnerlaw.com

# FACSIMILE

| | |
|---|---|
| TO: Hon. Stephen J. Hillman | FROM: Jeffrey Mausner |
| COMPANY: U.S. District Court | DATE: 11/14/2008 |
| FAX NUMBER: (213) 894-4381 | TOTAL NO. OF PAGES INCLUDING COVER: 19 |

RE:
*Perfect 10 v. Google*, CV 04-9484 AHM (SHx);
*Perfect 10 v. Microsoft*, CV 07-5156 AHM (SHx)

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached letter.

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone (818) 992-7500
Facsimile (818) 716-2773
E-mail: jeff@mausnerlaw.com

November 14, 2008

The Honorable Stephen J. Hillman
Chief United States Magistrate Judge

Re: *Perfect 10 v. Google,* CV 04-9484 AHM (SHx); *Perfect 10 v. Microsoft,*
*CV07-5156 AHM (SHx)*

*By Fax to (213) 894-4381*

Dear Judge Hillman:

   Per the instructions provided by your clerk, this is a Joint Letter regarding
Perfect 10's request that this Court:

   (1) Order Google not to file any additional motions to compel until after
   December 8, 2008 (the hearing date for the motion for summary
   judgment in the Amazon/Alexa case), and that Google defer the meet and
   confer process regarding discovery issues until after December 8.

   (2) Order that Google limit its discovery after December 8, 2008 to those
   issues pertaining to the summary judgment motion Google has said it is
   filing shortly, and that any future discovery be done at a reasonable pace.

## PERFECT 10'S POSITION

   Perfect 10 and Amazon subsidiary A9.com just completed A9's motion for
summary judgment. The hearing on Perfect 10's summary judgment motion
against Amazon and its subsidiary Alexa is December 8, 2008. On November 7,
Google advised Perfect 10 that it is going to be filing a motion for summary
judgment in the near future. Since the October 6 status conference, the
Defendants, particularly Google, have been subjecting Perfect 10 to a ceaseless
barrage of e-mails and letters regarding discovery, most of it having nothing to do
with issues that Judge Matz was concerned with at the October 6 hearing. It is
obvious that Google is doing this to crush Perfect 10 and make it impossible for

1

Perfect 10 to deal with the substantive issues that are being litigated in the motions for summary judgment.

Perfect 10 requests that this Court limit discovery as set forth above. Perfect 10's request is necessary because Google has refused to follow the limits on discovery delineated by Judge Matz at the October 6, 2008 hearing. Instead of respecting and adhering to those limits, Google has taken an opposite tact. Google's position is that because Judge Matz did not completely stay discovery, it is free to tie-up every lose end it has neglected for the past three years, and make myriad new demands.

Google is abusing the discovery process. Since the October 6, 2008 hearing, Google has inundated Perfect 10 with discovery requests, both formal and informal. In addition, Google filed an almost 500-page Joint Stipulation (Perfect 10 contributed about 10 pages), and has threatened to imminently file numerous other motions to compel.

## I.     Google's Barrage Of Discovery Requests Is Antithetical To This Court's Recent Orders And Directives And The Goals And Methodology In Them.

Instead of engaging in necessary, circumscribed discovery, Google is manufacturing new disputes and dusting-off old discovery disputes.

This Court specifically directed the parties to engage in "circumscribed" discovery and to use a sampling approach. The Court set "objectives -- i.e., summary judgment and settlement readiness -- [to be achieved] without 'going the distance' via full-fledged, uncircumscribed discovery." (Exh. A to the Kincaid Decl. filed in support of Perfect 10's portions of the Joint Stipulation, and filed by Perfect 10 on 10/21/08; September 25, 2008 Order, p. 2.)

At the hearing on October 6, 2008, Google's lead counsel, Michael Zeller, argued that the Court should not use this approach, and the Court disagreed.

> The Court: "Okay. **But what I am trying to accomplish, Mr. Zeller, is to get you the discovery that is essential and no more, not different kinds of discovery.** Now not to preclude you from it, not to say that at no time would you have the chance to compel and to get a judge to agree that Perfect 10 should be compelled to provide other discovery, but at the current time

and under this very perhaps innovative – I've come up with the idea myself. I'm not sure that it has ever been done elsewhere, but maybe it has. **At this stage, that's all you're going to be confined to. You are not going to be able to seek other stuff, and Perfect 10 is not going to be compelled to give it, and whatever they think they need from you for the first stage is all – once I'm satisfied that they have a right to it for the first stage, that's all they can get.** ***What's so bad about that?***

(See, e.g., Exhibit B to the Kincaid Decl. filed in support of Perfect 10's portions of the Joint Stipulation, and filed by Perfect 10 on 10/21/08; Transcript of 10/06/08 hearing, p. 18, ll. 4 – 20; emphasis added.)

In fact, the Court indicated a willingness to put a complete stay on discovery. (Exh. B to the Kincaid Decl.; Id., p. 38, ll. 7 - 19.)

The Court's September 25, 2008 Order requires focused discovery with "the goal" of preparing the cases for summary judgment/settlement talks. The Order contemplates that the parties will undertake discovery work in an orderly procession -- (1) identification of the copyrighted works; (2) figuring out what goes in the spreadsheet; (3) figuring out a proper sample; and (4) preparing a spreadsheet -- to achieve "the goal." Discovery will be limited/primarily focused on the copyrighted works specified in the spreadsheet. Discovery will be based on a sampling method. ("The parties in all these cases somehow succumbed to the all-too-frequent tendency of litigants and lawyers to get side tracked." (Exh. A to the Kincaid Decl.; September 25, 2008 Order, p. 1.)) The Court's goal is "to ready these cases for Rule 56 determinations or for meaningful settlement talks." (Id., pp. 1 -2.) Discovery and case assessment will be "based on a sample of the key pertinent facts." The purpose of the conference is to achieve the objectives of summary judgment/settlement readiness "without 'going the distance' via full-fledged, uncircumscribed discovery." (Id., p. 2.) The Court Order contemplates charts "*but only for a selected and relatively small sample of copyrighted works.*" (Id., p. 4; emphasis in the original.) The Court Order states that "After the entries have been made in the spreadsheet, the Court will either limit the discovery to the Perfect 10 Copyrighted Works specified in the spreadsheet or require that discovery be primarily focused on those works." (Id., p. 5.)

## II.    Perfect 10 Is Inundated With Work.

At the October 6, 2008 hearing, the Court indicated a willingness to limit discovery or even stay it. In response, Google has dug up every conceivable issue and is filing and threatening motions to compel. Since the October 6, 2008 hearing, Google has sent Perfect 10 numerous correspondence about discovery matters and has demanded to meet and confer about issues it never raised prior to October 6, 2008 or had long forgotten. Beginning October 6, 2008, Google has sent counsel for Perfect 10 approximately 75 letters and e-mails regarding discovery issues.

In addition, since the October 6, 2008 hearing, Perfect 10's counsel has been inundated with work. *Inter alia*, Perfect 10 (1) filed a summary judgment motion against Alexa.com; (2) is working on the reply to Alexa.com's opposition and objections to the four declarations in support of Alexa.com's opposition; this is a massive undertaking; (3) filed the supplemental papers, revised statement of genuine issues, declarations, and exhibits regarding the A9.com summary judgment motion, as ordered by the Court; (4) prepared for and attended the hearing on the A9.com summary judgment motion; (5) filed supplemental briefing in the Amazon action regarding the protective order sought by Amazon; (6) personally met with Andrew Bridges for a full day regarding the Court's discovery plan, as ordered by the Court; (7) has been ordered by the court to file a status report regarding that meet and confer – the status report is due November 10, 2008; (8) served responses to Alexa's first set of interrogatories; (9) served responses to Alexa's first set of document requests and produced documents pursuant to it, including a hard drive containing thousands of documents; (10) prepared Perfect 10's portions for the joint stipulation served by Google regarding Perfect 10's responses to Google's first and second sets of requests for admissions; (11) prepared Perfect 10's portions for the joint stipulation served by Microsoft regarding Microsoft's IP anonymization program; and (12) spent hundreds of hours of attorney, staff and client time responding to Google's ever growing list of discovery demands.

In addition, from October 6, 2008 until now, counsel in both the Google case and the Microsoft have made a number of informal discovery requests and cannot understand why Perfect 10 has not immediately responded to those requests.

That is the workload just in these Perfect 10 cases; there are other matters, including personal matters that Perfect 10's counsel has to attend to.

Perfect 10's counsel has informed Google's counsel repeatedly that they were extremely busy and could not immediately respond to its ever growing list of discovery immediately. That just brought on an even greater onslaught of e-mails and letters demanding discovery, most of which has nothing to do with the important issues in the case.

### III.    Google Is Raising Numerous Inconsequential Issues.

Below is a *__small__* sampling of the numerous discovery issues raised by Google over the past month.

Google's Joint Stipulation, filed on October 20, 2008, exemplifies Google's abuse of the discovery process in the hope of winning the case by dumping a non-ending mountain of busywork on Perfect 10. Google put into dispute 786 responses to requests for admissions, and it even filed the Joint Stipulation before the meet and confer process was complete.

Google has dusted off the issue of making Perfect 10 bates-stamp the electronic files Perfect 10 has produced, an issue Google first raised in 2005. Perfect 10 acceded to Google's demand that Perfect 10 immediately meet and confer about this issue, and Google repeatedly has threatened to file a motion to compel Perfect 10 to bates-stamp its electronic files. Why is it suddenly imperative to litigate an issue first raised years ago, which has nothing to do with the summary judgment motions? Furthermore, the summary judgment motions and the sampling discussions will make clear that the Adobe production, with all of its functionality, is much superior to Bates numbered TIF files.

Google has dug up the issue of making Perfect 10 stamp the word confidential on each electronic page that is confidential – a task that involves sorting through well over 1,000,000 pages. Perfect 10 acceded to Google's request that counsel immediately meet and confer about this non-pressing issue. Google had earlier raised this issue and abandoned it. In fact, when Google raised this issue at a recent hearing, the court effectively said it was trivial and that confidentiality stamping was unnecessary. Why is it of paramount importance to litigate this issue now?

Perfect 10 acquiesced to Google's demand that Perfect 10 immediately meet and confer regarding Google's perceived complaints regarding the Perfect 10 "financial documents," which have been produced. Quinn Emanuel first raised this issue in January 2008 when it first appeared as counsel for Google – prior counsel

had abandoned the issue. Beginning in January 2008, over a period of several months, Perfect 10 catered to the demands Quinn Emanuel made in a nine page January 2008 letter – and Google made numerous demands – including producing additional documents like tax returns. Perfect 10 also responded to Google's numerous other follow-up requests.

Google then sent another four page letter on March 18, 2008 with new tasks for Perfect 10. On August 28, 2008, Google decided to follow-up about a number of issues. Again, after these issues had laid dormant for months, Google decided the issues must be resolved immediately. In addition, the issues identified in the three page August letter kept multiplying. Since October 6, 2008, Google's counsel has continually added to the list of issues. Google has increased the number of issues in dispute exponentially by including: issues from Google's prior letters; variations of issues from Google's prior letters; compiling numerous follow-up questions pertaining to issues; adding new issues; and adding "informal" discovery requests. Google has used this same tactic with regard to virtually every other issue.

There are no legitimate issues in dispute regarding "financial documents," yet Google pursues non-existent issues such as insisting that Perfect 10 produce non-existent financial documents. Google's counsel has repeatedly threatened to file a motion to compel regarding the issue of financial documents, such as information Perfect 10 has redacted relating to confidential settlements and irrelevant financial information which is both highly confidential and private. Perfect 10's counsel spent numerous hours over the past few weeks attempting to obtain confidentiality waivers regarding settlements in other cases because Google's counsel decided that this long forgotten issue needed to be addressed immediately.

On the day of the October 6, 2008 hearing, Google sent a nine page, single-spaced letter detailing copyright registration documents it is missing, and demanded that Perfect 10 immediately meet and confer about the issue and immediately produce the documents. Perfect 10 met and conferred regarding this issue and spent numerous hours reviewing the letter against its documents, and has ordered documents from the Copyright Office. This was another enormous undertaking.

Google insisted that Perfect 10 meet and confer about Perfect 10's designation of six charts as confidential. This is another trivial issue that Google

6

claimed it needed to meet and confer about, and which is the subject of numerous threats to file yet another motion to compel.

Google and its counsel, Quinn Emanuel, are out of control and Perfect 10 asks this Court to reign in their attempts to crush a smaller litigant.

## GOOGLE'S POSITION

### 1. Perfect 10's Informal Request for a Discovery Stay Is Procedurally Improper.

In its portions of this "Joint Letter," Perfect 10 asks the Magistrate Judge to stay Google's discovery so that Perfect 10 purportedly can devote itself to preparing a single reply brief in support of its own motion for summary judgment against Alexa and Amazon in the Amazon case.

Even apart from its lack of merit (as discussed below), Perfect 10's request is procedurally improper. The power to manage the case schedule rests with the District Judge. It is not one of the powers delegated to Magistrate Judges under Rule 72(a), and the reference to the Magistrate Judge in this case was for discovery matters *only*. See Docket No. 20. If Perfect 10 believes a stay of the case is warranted, Perfect 10 is required to satisfy the pre-filing requirements of Local Rule 7-3 and then file a noticed motion with Judge Matz to modify the case schedule. Having failed to satisfy the pre-filing requirements or to bring such a properly noticed motion (or even an application for *ex parte* relief), Perfect 10's request should be rejected. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."); Zivkovic v. Southern Calif. Edison Co., 302 F.3d 1080, 1087-88 (9th Cir. 2002).

Because a stay request can only be made to the District Judge and because Perfect 10 has failed to properly meet and confer or otherwise meet the requirements for motion practice under Local Rule 7-3, its request should be rejected on those grounds alone.

### 2. Judge Matz Has Already Rejected Perfect 10's Stay Request

Even if Perfect 10 had followed the Rules, its request lacks merit because Judge Matz has *already declined* to stay discovery in this case. Contrary to Perfect 10's suggestions, Judge Matz made clear at the October 6, 2008 Status Conference that

discovery is *not* stayed. October 6, 2008 Transcript, at 57:1-4. Specifically, Judge Matz confirmed that:

> Discovery is not stayed, but the matters that resulted in discovery motions are not going to be addressed by Judge Hillman or anyone else until we determine whether or not that really has to be decided.

Perfect 10 quotes the October 6 Transcript at length, but its characterization of Judge Matz's directives is incorrect. Judge Matz did not "delineate[]" any "limits on discovery" at that hearing. To the contrary, the Court's discussion on any "limits" was confined solely to the issue of Perfect 10's failure to identify alleged infringements. Judge Matz expressed no "willingness" to stay discovery – rather, he heard Perfect 10's request for a stay and expressly rejected it. Id. at 38:8-19, 57:1.

Nor does the earlier September 25 Order hold otherwise, as Perfect 10 suggests in its portions of this Joint Letter. Obviously, that Order came before the hearing where the Court made clear that "[d]iscovery is not stayed," so any effort to suggest that a stay was imposed prior to that hearing is unavailing. Moreover, that Order merely instructed the parties to appear at a Status Conference to *discuss the possibility* of limiting the adjudication of Perfect 10's massive claims in some meaningful way. It made no rulings, tentative or otherwise, and Perfect 10's suggestions to the contrary are without basis. Under the Federal Rules, Google is therefore entitled to proceed with discovery. See, e.g., Fed. R. Civ. P. 26(d)(2)(A) ("Unless, on motion, the court orders otherwise ... methods of discovery may be used in any sequence.").

Indeed, far from staying discovery, Judge Matz has *encouraged* the parties to continue with discovery, stating that Perfect 10 must answer (at least in substantial part) Defendants' interrogatories seeking identification of claimed works and infringements, and suggesting that the parties propound additional discovery (including contention interrogatories and/or requests for admission) in order to narrow and define the issues in the case. See October 6, 2008 Transcript, at 47:23-48:7 ("There are ways using standard discovery techniques, such as, interrogatories or requests for admissions, to narrow the issues. ... So go ahead and do it. I encourage that.").

Thus, having lost in its efforts to obtain a stay from Judge Matz, Perfect 10 now seeks a different audience, and does so via an improper impromptu "Joint Letter." Perfect 10's effort to circumvent Judge Matz's directives -- and to do so through a

request that fails to satisfy any of the requirements for a motion for reconsideration[1] -- should be rejected without more.

### 3. Perfect 10's Request Is Meritless.

Even if the Magistrate Judge were to consider the substance of Perfect 10's "request," it lacks merit.

#### a. Perfect 10 has failed to articulate a workable form of relief.

Perfect 10's proposal is hopelessly vague and unworkable. In the first instance, Perfect 10's request does not properly identify what relief Perfect 10 seeks, such as a modification of the case schedule, a protective order, or something else. Further, Perfect 10 has asked that Google be ordered to pursue discovery only on "issues pertaining to the summary judgment Google has said it is filing shortly" -- without giving any indication of what it believes those "issues" are, or any basis for limiting discovery thereto. And worse, Perfect 10 asks for an order that "any future discovery be done at a reasonable pace." What constitutes a "reasonable pace" in Perfect 10's eyes is anyone's guess. Any such Order will inevitably result in unfounded disputes over whether any "pace" is "reasonable" – disputes that will embroil this Court whenever Perfect 10 believes it should be given a unilateral respite from its obligations or whenever it wishes to dispute whether particular discovery is, in Perfect 10's self-serving opinion, not necessary for Google's motion. Perfect 10 cites no authority supporting such an extraordinary request.

#### b. Perfect 10 has failed to demonstrate good cause for a stay.

Courts will issue a stay of discovery only where the moving party has demonstrated good cause. <u>See, e.g.</u>, <u>Lofton v. Bank of America Corp.</u>, 2008 WL

---

[1] Perfect 10's request does not even arguably comply with this Court's standards for reconsideration of Judge Matz's declination to issue a discovery stay. <u>See</u> Local Rule 7-18 ("A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence would not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision."); <u>School Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.</u>, 5 F.3d 1255, 1263 (9th Cir. 1993) ("Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.").

2037606, at *1 (N.D. Cal. 2008) (moving party must make "showing of good cause" on motion to stay discovery); Clark v. Time Warner Cable, 2007 WL 1334965, at *1 (C.D. Cal. 2007) ("Defendant has not ... demonstrated good cause, irreparable injury, or urgency warranting ex parte relief for a stay of discovery."); GTE Wireless, Inc. v. Qualcomm, Inc., 192 F.R.D. 284, 285 (S.D. Cal. 2000); Fed. R. Civ. P. 26(c)(1)(B) & (D); Fed. R. Civ. P. 16(b)(4). Perfect 10 has not done so here.

Specifically, without evidentiary support, Perfect 10 seeks to put this entire case on hold, so that Perfect 10 supposedly may devote its full energies to preparing a **single reply brief** on its *own* motion for summary judgment against *Amazon and Alexa* (not Google). Having to prepare a single reply brief scarcely warrants a stay—particularly when the motion at issue will not be dispositive of *anything* in the Google case.

Perfect 10 further claims that a stay should issue because, as a general matter, it feels overwhelmed with work. However, as Judge Matz has observed, Perfect 10 was the one that chose to bring these cases against Google and other defendants such as Amazon and Microsoft simultaneously. See October 6, 2008 Transcript at 40:10-11 ("[Perfect 10 has] embarked on these claims against all of these defendants."). Indeed, Judge Matz made clear that Perfect 10 may not ignore its obligations by claiming it is overwhelmed:

> [The] argument that "I'm overworked and excessively burdened" can only take you so far, Mr. Mausner. ***Don't think I'm going to excuse everything that has to be done. Not even close.***"

Id. at 40:11-14 (emphasis added). The Court has repeatedly advised Perfect 10 to "get help" if it believes it cannot meet the demands of the litigation Perfect 10 brought, yet it has not done so. Nor has Perfect 10 worked to meaningfully narrow its case, as the Court has also advised.

Even assuming a party's cry that it is "too busy" is a proper basis to stay discovery (which it is not), Perfect 10 claims are belied its own statements and actions. First, of the 10-item laundry list of work set forth in its portions of this Joint Letter, each and every one of those items is already completed, with just one exception— Perfect 10's reply brief regarding the motion for summary judgment it elected to bring against Alexa and Amazon. As for that reply brief (due November 24), not only did Perfect 10 orchestrate the timing of that motion for summary judgment (filing it only five months after adding Alexa to the case), but Perfect 10 rebuffed

Amazon's request to extend the briefing schedule thereon. In particular, lead counsel for Amazon and Alexa sought to continue the hearing on the motion to January 2009 because Mr. Jansen is currently in trial in another matter. Despite the fact that this postponement would have given Perfect 10 several more weeks to prepare its reply brief, *Perfect 10* refused Amazon's request for a courtesy extension.[2]

Moreover, on November 7, 2008, Perfect 10 informed Google that Perfect 10 intends to file yet another motion for partial summary judgment in the near future—this time against Google. Thus, while Perfect 10 proclaims, on the one hand, that it has time to prepare and file a full motion for summary judgment against Google (not to mention the time to draft a seven-page, single-spaced letter seeking a stay here), Perfect 10 simultaneously claims it does not have time to respond to Google's discovery issues. Plainly, Perfect 10 is selectively making itself available for work that suits its own agenda, but resorting to claims of burden when defendants wish to move their own defenses forward against the sweeping claims that Perfect 10 elected to bring.

###   c.    Google is entitled to pursue discovery issues important to its defense.

Granting a stay also will needlessly delay this case further on crucial issues. While Perfect 10 may consider Google's discovery issues to be inconsequential to Perfect 10, they are of importance to Google in defending itself against Perfect 10's claims and in proceeding with motions to narrow Perfect 10's vast claims pending before the Court. For example, Google is pursuing the following discovery matters, among others: (1) Perfect 10's failure to produce documents related to Perfect 10's

---

[2]   In stark contrast to its claims of burden when Google seeks to compel discovery that Perfect 10 has failed to provide, Perfect 10 has freely availed itself of the right to pursue discovery issues it felt were important to this case. Perfect 10 previously brought multiple, voluminous motions to compel against Google, which the Court ruled on, and with which Google has complied. See Docket No. 97 (Joint Stipulation re. Plaintiff Perfect 10, Inc.'s Motion to Compel Defendant Google, Inc. [sic] to Produce Documents, filed December 28, 2005); Docket No. 103 (Joint Stipulation re. Plaintiff Perfect 10, Inc.'s Motion to Compel Defendant Google, Inc. [sic] to Answers Interrogatories, filed January 3, 2006); Docket No. 106 (Revised Joint Stipulation re. Plaintiff Perfect 10, Inc.'s Motion to Compel Defendant Google, Inc. [sic] to Answer Interrogatories, filed February 9, 2006); Docket No. 230 (Joint Stipulation re. Plaintiff Perfect 10, Inc.'s Motion to Compel Defendant Google Inc. to Produce Documents, filed October 9, 2007). Now that Google is pursuing discovery from Perfect 10, however, Perfect 10 asks this Court for an order precluding Google from doing so. In short, Perfect 10 effectively asks this Court to order Google not to defend itself. Perfect 10 cannot have it both ways.

financial condition (i.e., documents containing information absolutely necessary to make settlement talks meaningful), (2) Perfect 10's failure to produce copyright registration and deposit materials for alleged works it is asserting in this case, (3) Perfect 10's violation of the Protective Order with respect to its production of documents, and (4) Perfect 10's refusal to answer numerous of Google's Requests for Admission. Perfect 10 has ignored these (and other) discovery disputes for months. Of course, Perfect 10 could have avoided each and every one of these issues by complying with its discovery obligations in the first place but opted not to and thereby has forced motion practice.

To be clear, Perfect 10 is not asking for a mere extension on a discovery deadline. Instead, Perfect 10 seeks to put an entire case on hold so that Perfect 10 can pursue its own dispositive motion in a different case and then one against Google with impunity. Perfect 10 has filed suit against Google (among other parties) seeking untold millions of dollars in recovery, and Google is entitled to defend itself. To do so, Google must pursue discovery, and if Perfect 10 refuses to provide it – as is the case here – Google's only resort is to proceed with motion practice. Perfect 10's characterization of the issue as a "courtesy" is a false one; Perfect 10 in reality seeks to hamstring Google's ability to defend itself, so that Perfect 10 can pursue offensive dispositive motions while obstructing Google's ability to pursue its own motions or to defend itself.[3]

In sum, Perfect 10 seeks to circumvent its obligations by asking the Magistrate Judge for a near-total stay in a case brought by Perfect 10, even though the District Judge has already declined to do so. Worse, the stay it seeks is a unilateral one, in that Perfect 10 wants the freedom to file dispositive motions against Google (and the other defendants) while simultaneously enjoying immunity from defendants'

---

[3] Not only is Perfect 10 incorrect in suggesting that the issue here is one of courtesy, but Perfect 10 ignores that it has routinely refused to extend even ordinary courtesies to Google. To the contrary, it is Google (and not Perfect 10) that freely grants professional courtesies when appropriate. Indeed, Google has agreed time and time again to extend deadlines, and to defer and reschedule in its efforts to meet-and-confer with Perfect 10 under the Local Rules. By contrast, Perfect 10 has refused such courtesies. For example, this summer, Google sought to merely continue the hearing on Perfect 10's motion for leave to file a Second Amended Complaint because Google's lead counsel was in trial before Judge Larson in Mattel v. MGA Entertainment (the "Bratz/Barbie" litigation), one of the largest and highest-profile intellectual property disputes in recent memory. Not only did Perfect 10 flatly refuse that request, it even refused Google's subsequent request for a brief extension to file the answer to that Second Amended Complaint as well.

discovery requests that are necessary for Google's own dispositive motions. Perfect 10's request should be denied.

## 4. **Perfect 10 Should Be Sanctioned.**

Rather than comply with its discovery obligations under the Rules, Perfect 10 regrettably chose to spend its time drafting a multi-page "Joint Letter" and forced defense counsel to do the same. Not only should Perfect 10's request be denied, but Perfect 10 should be sanctioned. In addition to bringing a flagrantly frivolous request, Perfect 10 proceeded in a manner designed to harass Google's counsel, including by waiting until a Sunday to provide its portions of the "Joint Letter" and then demanding Google's portions the very next day. This was even though Perfect 10 delayed several days before sending its portions and even though Perfect 10 knew full well that Google's lead counsel would be in a lengthy hearing for much of Monday before Judge Larson in Riverside. Perfect 10 should be sanctioned $1,000 in order to reimburse Google for its attorney's fees in having to respond to this vexatious, groundless filing. Indeed, absent the deterrent of sanctions, Perfect 10 will be encouraged to multiply its repeated stay requests further.

## PERFECT 10'S REPLY

Perfect 10 is only responding to a few points made by Google for the sake of brevity and to expedite delivery of this joint letter to the court.

Google takes the incorrect position that Perfect 10's request for a slight modification to discovery procedures is not a discovery matter -- Google states that the reference to the "Magistrate Judge in this case was for discovery matters *only*." Google believes that Perfect 10 should have followed all of the "pre-filing requirements of Local Rule 7-3 and then file a noticed motion with Judge Matz to modify the case schedule." Google overlooks the fact that there is no case schedule. There is no discovery cut-off. There is no trial date. So Google is simply incorrect in stating that Perfect 10 wants to modify the case schedule.

Perfect 10 is not asking for a discovery stay, just relief from Google's unreasonable pace and demands in an attempt to crush Perfect 10.

Furthermore, Perfect 10 did not request a discovery stay from Judge Matz. Perfect 10 did not file a motion for a stay of discovery, and did not even make an oral request for such a stay.

It is doubtful that the Court intended one passing comment about discovery to be misused by Google as an invitation to launch a harassment blitz that would prevent Perfect 10 from litigating the merits of the consolidated cases in compliance with the Court's recent orders and directives.

Moreover, Google incorrectly claims that Perfect 10's sole piece of work for the next month is to prepare a single reply brief. First, there are additional matters other than Perfect 10's summary judgment motion. Moreover, Perfect 10 is not charged with filing a miniscule reply brief. In opposition to Perfect 10's summary judgment motion, Amazon and Alexa filed over a hundred pages, including two opposition briefs and seven declarations. As well as filing its Reply or Replies, Perfect 10 will move to strike at least some of the declarations.

Perfect 10 has reasonably staffed the consolidated cases, considering its size and resources against Google, Microsoft, and Amazon. The judicial system is not designed solely as a playground for Fortune 100 companies, like Google, and big firms, like Quinn Emanuel, that charge rates that only a Fortune 100 company can afford. In fact, in Google's footnote 3, Google chastises Perfect 10 for not granting it various requests for extensions while Google's lead counsel, Michael Zeller, was busy with another mega client. ("'Bratz/Barbie' litigation), one of the largest and highest-profile intellectual property disputes in recent memory.") There are at least six Quinn Emanuel attorneys working on the Google case, and Mr. Zeller's request for a month extension was unreasonable. Google neglects to mention that after Perfect 10 declined Google's request for such a long extension of time so that Mr. Zeller could attend to Mattel, Google sought relief from this Court and the Court declined the request as well.

Almost no person or company can afford to litigate against companies like Google and firms like Quinn Emanuel -- there is something wrong about that. This is why big companies like Google, Amazon and Microsoft brazenly infringe copyrights.

Google incorrectly claims that Perfect 10 declined Amazon and Alexa's request for an extension to file their opposition brief. Perfect 10 agreed to an additional week extension for Amazon and Alexa (so that they had three weeks to file their Oppositions), even though those defendants made Perfect 10 seek Court relief to receive an extension of time under the same circumstances.

Perfect 10's anticipated motion against Google is only a cross-motion on the summary judgment motion that *Google* is bringing. Google called Perfect 10 and said that it was moving for summary judgment. Perfect 10 advised Google that at the same time, it would cross-move on the same issues that Google is bringing. Once again, Google has distorted the facts; it is hardly Perfect 10's timing on this motion for summary judgment.

Google has all of Perfect 10's financial statements but wants more. Google has never indicated the slightest willingness to enter into settlement discussions, but certainly has enough financial information if it wants to do so.

Perfect 10's counsel informed Google's counsel on Friday November 7, 2008 that it would seek the instant relief from this court so that Google could begin to prepare its portion. At the same time, Perfect 10's counsel informed Google's counsel that it wanted to receive Google's portions of the joint letter by Monday November 10, 2008 so that the letter could be submitted the next day. Perfect 10 served its portion of this joint letter on the morning of Sunday November 9, 2008. Perfect 10's counsel again informed Google's counsel that it wanted to receive Google's portion by Monday November 10, 2008. Minutes later, Mr. Zeller wrote to Mr. Mausner and told him that because of the Bratz/Barbie litigation, Google most likely would not be able to serve its portion of the joint letter until after Monday November 12, 2008. Mr. Zelller said that Google would seek sanctions against Mr. Mausner if Perfect 10 filed its portion of the joint letter prior to Google's delivery of its portion of the joint letter. Google served its portion of this joint letter on Wednesday November 12, 2008.

Perfect 10 waited for days for Google's legal team of six attorneys to deliver its portion of the joint letter, but Google still requests sanctions. The sanctions request is frivolous and improperly raised. Google and its counsel want to be treated like royalty while pillaging Google's opponent and its counsel.

## GOOGLE'S REPLY

In its portions of the Joint Letter send via email on Sunday, November 9, Perfect 10 stated it "will not respond to Google's ... statements below." After seeing Google's portions, however, Perfect 10 changed its mind and drafted a multi-page "Reply." Perfect 10's new arguments are unpersuasive.

Perfect 10 first claims that, because Judge Matz has not issued a formal Scheduling Order, its request for a stay of discovery somehow does not implicate

the case schedule. This is incorrect. Any stay of discovery is a case scheduling issue and within the sole authority and discretion of the District Judge under <u>Rule</u> 16 (unless specifically delegated to the Magistrate Judge). <u>See, e.g.</u>, <u>PMC, Inc. v. Ferro Corp.</u>, 131 F.R.D. 184 (C.D. Cal. 1990) (denying motion to stay discovery brought to the District Judge under <u>Rule</u> 16 (<i>inter alia</i>)). Indeed, when the parties sought to stay discovery in the consolidated cases against Amazon and A9 (pending appeal to the Ninth Circuit), those requests were brought to and ruled on by Judge Matz. <u>See</u> Docket No. 152.

Perfect 10 also claims on reply that it "is not asking for a discovery stay, just relief from Google's unreasonable pace and demands." Not so. Perfect 10 can label it whatever it wants, but that does not alter the inescapable fact that Perfect 10 is asking this Court to order Google not to pursue the discovery that <u>Rules</u> 16 and 26 expressly allow Google to seek. <u>See</u> <u>Fed. R. Civ. P.</u> 26(d)(2)(A) ("Unless, on motion, the court orders otherwise ... methods of discovery may be used in any sequence."); <u>Fed. R. Civ. P.</u> 16(b)(3)(B)(ii) (providing authority to "modify the extent of discovery"). Worse, the stay Perfect 10 seeks is effectively a unilateral one, leaving Perfect 10 free to pursue whatever discovery it wants, but constraining Google to pursue only what Perfect 10 deems to be "reasonable." Not only would such a lopsided, vaguely defined stay be unfair and unprecedented, but these are matters solely within the province of the District Judge. <u>See</u> <u>supra</u>.

Perfect 10 further argues that it did not previously request a discovery stay from Judge Matz. This, too, is incorrect. In a Statement Perfect 10 filed the day before the October 6, 2008 Status Conference before Judge Matz, Perfect 10 requested as follows:

> Perfect 10 respectfully suggests that large scale discovery relating to requests made by various Defendants be postponed until the Court rules on whether the evidence presented by Perfect 10 in its motion [for partial summary judgment] is sufficient for summary adjudication.

Docket No. 364. As discussed above, Judge Matz considered, and rejected, Perfect 10's request. <u>See</u> October 6, 2008 Transcript at 38:8-19, 57:1 ("Discovery is not stayed."). Judge Matz clearly instructed the parties to move this case forward, including in the discovery arena. <u>See</u> <u>id.</u> at 47:23-48:7.[4]

---

[4] Perfect 10's portions of the Joint Letter are also replete with overwrought rhetoric attacking Google and its counsel as well as relying on the supposedly

In sum, Perfect 10's request for a discovery stay has already been rejected by Judge Matz and is procedurally defective and must be filed with Judge Matz following Perfect 10's compliance with the reconsideration and pre-filing requirements of the <u>Local Rules</u>. Nor, in any event, has Perfect 10 offered any legitimate grounds for reconsideration of Judge Matz's rejection of a stay, or even demonstrated "good cause" for a unilateral stay, as it must. To the contrary, this case has lingered long enough. Next Wednesday marks the four-year anniversary of Perfect 10's filing of this lawsuit. Perfect 10's suggestion that, four years into this suit, Google is proceeding "too fast" and should be precluded from diligently pursuing discovery in order to defend itself is frivolous. Perfect 10's request should be denied and Perfect 10 should be sanctioned.

---

"David vs. Goliath" nature of litigation that Perfect 10 itself chose to bring. Google will not burden the Court by responding to Perfect 10's irrelevant and false claims. Suffice it to say that Judge Matz has rejected Perfect 10's claims that it can avoid its obligations based on cries of being overworked or based on Perfect 10's choice to sue Google, Amazon and Microsoft all at once. <u>See, e.g.</u>, October 6, 2008 Transcript at 40:10-14, quoted <u>supra</u>. Indeed, consistent with that, courts have long rejected appeals of the type made by Perfect 10 and stated in no uncertain terms that all parties before them—regardless of their relative size—are entitled to equal justice under the law. <u>E.g.</u>, <u>Citizens for a Better Environment v. Steel Co.</u>, 230 F.3d 923, 932 (7th Cir. 2000) ("[L]itigants should give the judges some credit for ability to resolve legal issues in compliance with the oaths all of us have taken to 'administer justice without respect to persons, and do equal right to the poor and to the rich.'" (quoting 28 U.S.C. § 453)); <u>see also</u> <u>Draper v. Airco, Inc.</u>, 580 F.2d 91, 95, 96-97 (3d Cir. 1978) (deeming appeals to "sympathy" based on "references to financial disparity" to be "improper").

Sincerely,

LAW OFFICES OF JEFFREY N. MAUSNER

Jeffrey N. Mausner

By: _____
    Jeffrey N. Mausner, attorneys for Perfect 10


QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP
    Michael T. Zeller, with permission
By: _____
    Michael T. Zeller, attorneys for Google

TRANSMISSION VERIFICATION REPORT

TIME  : 11/14/2008 15:47
NAME  : NORMAN ZADA
FAX   : 3102059644
TEL   : 3102059988
SER.# : BROF8J820157

DATE,TIME            11/14  15:44
FAX NO./NAME         12138944381
DURATION             00:03:05
PAGE(S)              19
RESULT               OK
MODE                 STANDARD
                     ECM

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone (818) 992-7500
Facsimile (818) 716-2773
E-mail: jeff@mausnerlaw.com

# FACSIMILE

| TO: Hon. Stephen J. Hillman | FROM: Jeffrey Mausner |
|---|---|
| COMPANY: U.S. District Court | DATE: 11/14/2008 |
| FAX NUMBER: (213) 894-4381 | TOTAL NO. OF PAGES INCLUDING COVER: 19 |

RE:
Perfect 10 v. Google, CV 04-9484 AHM (SHx);
Perfect 10 v. Microsoft, CV 07-5156 AHM (SHx)

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

Please see attached letter.

# Exhibit F

1           UNITED STATES DISTRICT COURT

2           CENTRAL DISTRICT OF CALIFORNIA

3                      ---

4     HONORABLE A HOWARD MATZ, JUDGE PRESIDING

5                      ---

6

7

8     PERFECT 10, INC                        )
                                             )
9                                            )
                                             )
10                         PLAINTIFFS        )NO. CV04-9484-AHM
                                             )C/W
11            VS                             )NO. CV05-4753-AHM
                                             )
12    GOOGLE, INC., ET AL                    )
                                             )
13                                           )
                           DEFENDANTS.       )
14    _____)

15

16           REPORTER'S TRANSCRIPT OF PROCEEDINGS
                   LOS ANGELES, CALIFORNIA
17                 MONDAY, NOVEMBER 7, 2005

18

19

20

21

22
                 LESLIE A. KING, CSR NO. 11608
23             FEDERAL OFFICIAL COURT REPORTER
               312 NORTH SPRING STREET, ROOM 438
24              LOS ANGELES, CALIFORNIA 90012
                     PH:  (213) 894-2449
25                  LESLIEAKING@GMAIL.COM


                 UNITED STATES DISTRICT COURT

```
1    APPEARANCES

2    IN BEHALF OF THE PLAINTIFFS:

3            BERMAN, MAUSNER & RESSER
             BY:  JEFFREY N MAUSNER
4            WORLD SAVINGS CENTER
             11601 WILSHIRE BOULEVARD, SUITE 600
5            LOS ANGELES, CA 90025-1742
             323.965.1200
6            323.965.1919
             JEFFMAUSNER@BMRLAW.COM
7
             PERFECT 10
8            BY:  DANIEL J COOPER, GENERAL COUNSEL
             POBOX 3398
9            BEVERLY HILLS, CA 90212
             800.606.6639
10           310.205.9638
             DAN@PERFECT10.COM
11

12           MITCHELL SILBERBERG AND KNUPP
             BY:  RUSSELL J FRACKMAN
13           11377 W OLYMPIC BLVD
             LOS ANGELES, CA 90064-1683
14           310-312-2000
             RJF@MSK.COM
15

16   IN BEHALF OF THE DEFENDANTS AMAZON.COM AND A9.COM:

17           TOWNSEND AND TOWNSEND AND CREW
             BY:  ANTHONY MALUTTA
18           BY:  JAMES GILLILAND
             TWO EMBARCADERO CENTER
19           EIGHTH FLOOR
             SAN FRANCISCO, CA 94111-3834
20           415.576.0200
             415.273.7507
21           AJMALUTTA@TOWNSEND.COM
             JTJANSEN@TOWNSEND.COM
22

23

24

25
```

```
1    APPEARANCES (CONTINUED)

2

3    IN BEHALF OF GOOGLE:

4            WINSTON & STRAWN
             BY:  ANDREW BRIDGES
5            BY:  JENNIFER GOLINVEAUX
             101 CALIFORNIA STREET
6            SAN FRANCISCO, CALIFORNIA 94111-5802
             MAIN PHONE: (415) 591-1000
7            FAX NUMBER: (415) 591-1400

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    FIRST NAME.

2          MR. BRIDGES:  I'M SORRY.  THAT WAS A BRAIN GAP.

3    JUDGE -- JUDGE BAIRD.

4          WHEN JUDGE BAIRD RULED AGAINST PERFECT 10 IN THE *CC*

5    *BILL* CASE SAYING THAT THEIR NOTICES WERE DEFECTIVE, FROM THAT

6    POINT, WHICH WAS IN THE SUMMER OF 2004, THEIR NOTICES

7    IMPROVED; AND WITH THE IMPROVEMENT OF THEIR NOTICES, GOOGLE

8    HAS BEEN ABLE TO DO A BETTER JOB.

9          BUT THE COMPLAINT FROM THE OTHER SIDE IS NOT

10    NECESSARILY THAT GOOGLE HAS FAILED TO TAKE URL'S DOWN.  THERE

11    MAY HAVE BEEN A COUPLE MISSED HERE AND THERE.  THERE ARE TWO

12    NOTICES THAT SEEMED TO HAVE DISAPPEARED INTO THE THIN AIR.

13          THE POINT IS THEY WERE SAYING, SEE, WE GAVE YOU

14    NOTICES OF THESE PICTURES AND THE PICTURES ARE STILL

15    AVAILABLE.  IT'S BECAUSE THE PICTURES ARE POPPING UP IN NEW

16    PLACES AND GOOGLE HAS NO EFFECTIVE METHOD TO ENSURE THAT IN

17    THE VAST EXPANSE OF THE WEB THESE IMAGES AREN'T GOING TO POP

18    UP IN DIFFERENT PLACES, THAT'S WHAT MAKES --

19          THE COURT:  THE DIFFERENT PLACES MEANING INFRINGING

20    WEBSITES.

21          MR. BRIDGES:  DIFFERENT INFRINGING WEBSITES.

22          THE COURT:  NEW ONES THAT AREN'T THERE AT THE TIME

23    GOOGLE FIRST REMOVED IT --

24          MR. BRIDGES:  EXACTLY.

25          THE COURT:  -- FROM A KNOWN INFRINGING WEBSITE.