| | |
|---|---|
| QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>  Michael T. Zeller (Bar No. 196417)<br>  michaelzeller@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017-2543<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br>  Charles K. Verhoeven (Bar No. 170151)<br>  charlesverhoeven@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>  Rachel Herrick Kassabian (Bar No. 191060)<br>  rachelkassabian@quinnemanuel.com<br>555 Twin Dolphin Drive, Suite 560<br>Redwood Shores, California 94065<br><br>Attorneys for Defendant Google Inc. | |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants. | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**DISCOVERY MATTER**<br><br>**GOOGLE INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF GOOGLE'S MOTION TO COMPEL PERFECT 10 TO (1) PRODUCE DOCUMENTS, (2) COMPLY WITH THE PROTECTIVE ORDER, AND (3) AFFIX DOCUMENT CONTROL NUMBERS TO ITS DOCUMENT PRODUCTIONS**<br><br>**[Supplemental Declaration of Rachel Herrick Kassabian filed concurrently herewith]**<br><br>Hon. Stephen J. Hillman<br><br>Courtroom.: 550<br>Hearing Date: June 1, 2009<br>Hearing Time: 2:00 pm<br><br>Discovery Cutoff: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

# I. P10 SHOULD PRODUCE FINANCIAL DOCUMENTS.

P10 makes several excuses for its failure to produce complete financial records. Each fails. <u>First</u>, P10 claims that discovery has been stayed. It is not, nor has the Court otherwise imposed any "limits" excusing P10 from its discovery obligations. Supplemental Declaration of Rachel Kassabian ("Supp. Decl."), Ex. B at p. 26, 57.

<u>Second</u>, P10 claims Google has not completed meet-and-confer regarding all Requests at issue. To the contrary, P10's counsel expressly acknowledged that on November 6, 2008 Google "went through each issue" and "asked questions about the objections and I answered them." Supp. Decl., Ex. A (11/7/08 Kincaid email). P10 continues to refuse to modify its responses and objections to those requests. Supp. Decl., ¶ 5. Nor does P10 now suggest that further meet and confer would be fruitful.

<u>Third</u>, P10 claims that the parties reached an agreement regarding the production of financial documents and that Google has reneged while P10 has complied. In fact, there was no such agreement. Suppl. Decl., ¶ 7. Moreover, on this score, P10 is attempting to have it both ways. P10 represented that:

> Perfect 10 does intend to honor its discovery obligations and produce all relevant, non-privileged documents [regarding actual damages].… Perfect 10 has already withdrawn its objections to the 27 document requests, and all other requests relating to Perfect 10's alleged claim of actual damages.

Suppl. Decl., Ex. E (1/29/08 Mausner email). P10 thus claims to seek actual damages, yet objects to producing damages-related documents—objections it represented had been withdrawn many months ago. P10 cannot have it both ways.

<u>Fourth</u>, P10 claims that "it does not have additional responsive documents" and "they simply don't exist." Jt. Stip. at 34-38. If true, then P10 has failed to preserve critical evidence. For instance, P10 has produced just a handful of royalty statements for its alleged licensing relationships, and has failed to provide any financial documents for at least 51 individual months (Jt. Stip. at 26), or documents supporting the figures in the summary financial statements it has produced—*despite the fact that*

-1- Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

GOOGLE'S SUPPLEMENTAL MEMORANDUM

*most of these documents were created during the four-plus year pendency of this suit*. The gaping holes in P10's financial record production, including records created (and apparently lost or destroyed) during this litigation, arouse reasonable suspicion that P10 has breached its duty to preserve documents. See A. Farber and Partners, Inc. v. Garber, 234 F.R.D. 186, 193-94 (C.D. Cal. 2006). "[A] court may sanction a party who destroys or fails to preserve relevant evidence." Id. at 194. A court also can order a party to submit a detailed declaration explaining what happened to the documents, and where they searched. Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group, 2003 WL 21659662, at *3 (D. Kan. June 4, 2003) (ordering affidavit); Buchanan v. Consolidated Stores Corp., 206 F.R.D. 123, 125 (D. Md. 2002) (same). At a minimum, the Court should order P10 to produce the documents and, if P10 does not, require P10 to serve a declaration explaining what it has done with its financial records created on or after the date P10 was on notice of this action.

Fifth, P10 *admits* it has other financial materials not yet produced, believing that it only must produce the documents upon which it intends to rely at trial. Jt. Stip. at 39. Not so. Google is entitled to all information relevant to its defense of P10's claims, not just what P10 cherry-picks "to establish its damages." Fed. R. Civ. P. 26(b)(1). Moreover, it would be impossible to test and challenge P10's damages claims without *complete* financial records, which likely would show the true reason for P10's alleged losses. See, e.g., Jt. Stip. at 22-23. Sixth, P10's interpretation of the Protective Order is also incorrect. It states that Google should "seek an order to compel discovery" of information that "involves the confidentiality rights of a non-party." Declaration of Rachel Herrick Kassabian, filed 5/7/09, (Dkt. 408-3), Ex. S at ¶ 25. That is precisely what Google is doing by this motion.

## II. P10 SHOULD PRODUCE PERFECT10.COM DOCUMENTS.

P10 offers a mountain of excuses for not producing documents and a program relating to certain server logs, password usage reports, and Perfect10.com subscriber information, including that (1) they were not requested; (2) it does not have them, (3)

-2- Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]
GOOGLE'S SUPPLEMENTAL MEMORANDUM

they are irrelevant, (4) they are available from its vendor Paycom, and (5) they are trade secrets or might disclose private user information. These claims fail.

<u>First</u>, Google's requests plainly call for these materials, <u>see, e.g.</u>, Req. No. 154 ("[a]ll documents concerning … unauthorized use of passwords to gain access to [P10's] websites"), and P10 previously *agreed* to produce much of them, including the program that P10 uses to understand its server logs and monitor password usage. P10 cannot escape its earlier waiver of the objections it now attempts to revive.

<u>Second</u>, P10 does not disclose whether these documents never existed, or were lost or destroyed. Jt. Stip. at 53-56. Google and this Court are entitled to know what happened to these documents, which P10 was under a duty to preserve given this litigation. <u>See</u> <u>supra</u> at 2. Indeed, P10's newest claim, that it is suddenly unable to locate the program it was using to search its server logs for password activity last year, *during this litigation* (and *after* Google requested it) is at best suspect. P10 should be ordered to produce the documents and, if it fails to provide any, provide a declaration, as above. <u>Third</u>, these documents are indeed relevant. P10 may not claim that Google destroyed its website and cell-phone download business, and then refuse to produce documents reflecting the success or failure of that business. P10 must produce all relevant and responsive documents, not just evidence helpful to P10.

<u>Fourth</u>, the availability of these documents from other sources is ***not*** a valid objection—P10 must produce all documents within its control, including documents P10 can obtain from its own vendor. <u>Fed. R. Civ. P.</u> 34(a)(1); <u>In re Bankers Trust Co.</u>, 61 F.3d 465, 469 (6th Cir. 1995) (documents are within possession, custody or control when party "has the legal right to obtain the documents on demand").

<u>Fifth</u>, Google is not requesting any personal information of P10 users, only the aggregate "sign-up information from the third-party processor for perfect10.com" that P10 had previously agreed to provide. <u>See</u> Jt. Stip. at 40-42 (P10's Responses Nos. 98-102). Personal information can be redacted if necessary. And even if the software program were a "trade secret," the Protective Order provides adequate protection.

## III. P10 SHOULD PRODUCE CELL-PHONE DOWNLOAD DOCUMENTS.

P10 argues that it has complied with all of Google's Requests calling for cell-phone licensing documents. Not so—P10's production remains incomplete. Supp. Decl., ¶ 14-16. Request Nos. 183 and 184 call for records related to P10's efforts to license its copyrighted works for cell phones, which would include P10's relationship with FoneStarz, Waat Media, and any others. P10 is claiming harm to the alleged market for its cell-phone downloads, so it must produce documents regarding that alleged market. P10 may not withhold information critical to Google's fair use defense when it is planning to move for summary judgment on copyright liability. See, e.g., Burnside-Ott Aviation Training Center, Inc. v. U.S., 985 F.2d 1574, 1582 (Fed. Cir. 1993) (refusing summary judgment where movant has failed to provide discovery). Moreover, P10's earliest efforts to license its images for cell-phone downloads occurred in 2005—during this litigation. P10 must account, via affidavit, for its apparent failure to preserve these documents during litigation. See supra at 2.

## IV. P10 SHOULD PRODUCE DOCUMENTS RELATED TO PICSCOUT.

P10 claims it has produced all documents related to PicScout. In fact, its production related to PicScout remains deficient, including with respect to documents related to the preparation of the Gutelzon Declaration. Supp. Decl., ¶ 17.[1]

## V. PERFECT 10 SHOULD PRODUCE THE CHART IT PREPARED.

P10's opposition concedes that P10 has not even bothered to look for the chart it prepared for the Net Management case. See Jt. Stip. at 78. If true, P10's burden objections are baseless, since for all P10 knows, it could take them an hour to find it. This chart is relevant because it provides a "sample" of P10's registrations, and

---

[1] Despite its year-long refusal to produce, and its opposition to Google's motion to compel these documents just days ago (see Jt. Stip. at 72-74), P10 has now offered to allow inspection of its "copyright materials." Supp. Decl., Ex. H (5/14/09 Kincaid email). Thus, a ruling on this issue should be deferred until after the inspection.

corresponding images and infringements, which the Court already found P10 should produce, yet P10 has not done so. Kincaid Decl. (Dkt. 409), Ex. 1 (9/25/08 Order).

## VI. P10 MUST COMPLY WITH THE PROTECTIVE ORDER.

P10 does not deny that it has violated the Protective Order by vastly over-designating materials. Instead, P10 claims it should not have to comply because: (1) P10 needs to designate its DMCA notices as confidential because it does not want them on chillingeffects.org; and (2) it would be burdensome. Both arguments fail.

<u>First</u>, P10's DMCA notices comprise just a portion of its production, and Google would not send P10's Interrogatory responses or document productions to chillingeffects.org in any event, as P10 does not contend they are DMCA notices.

<u>Second</u>, P10's burden is no heavier than any other litigant. And because public webpages are within the public domain, P10's hard drive productions likely contain few confidential documents that P10 would need to sort out. Moreover, P10 has affixed many thousands of words and marks onto the pages of its electronic production, so it has the ability to mark them confidential. Also, Google has proposed that P10 simply sort the confidential and non-confidential documents into a separate hard drives and produce that. Supp. Decl., ¶ 19. P10 refuses.

## VII. P10 SHOULD BE ORDERED TO AFFIX CONTROL NUMBERS.

P10 needs to identify each document with a unique number or reference. Authentication, a "condition precedent to admissibility," is impossible if the parties cannot identify specific documents produced. <u>Fed. R. Evid.</u> 901(a). P10 has already tried to use un-produced documents as deposition exhibits. Supp. Decl., ¶ 20. Affixing control numbers to P10's production will prevent such abuses in the future.

DATED: May 18, 2009  QUINN EMANUEL URQUHART OLIVER & HEDGES. LLP

By /s/ Rachel Herrick Kassabian
Rachel Herrick Kassabian