QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE**<br><br>[Separate Statement, Declarations of Rachel Herrick Kassabian, Sibrina Kahn, Bill Brougher, Shantal Rands Poovala and Paul Haahr filed concurrently herewith]<br><br>Hon. A. Howard Matz<br><br>Date: August 17, 2009<br>Time: 10:00 a.m.<br>Crtrm.: 14<br><br>Discovery Cut-off: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set<br><br>**PUBLIC REDACTED** |

01980.51320/2993879.1

DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 17, 2009, in the courtroom of the Honorable A. Howard Matz, located at 312 North Spring Street, Los Angeles, California 90012, Courtroom 14, Defendant Google Inc. ("Google") shall and hereby does move this Court for summary judgment pursuant to the safe harbor provisions of the Digital Millennium Copyright Act, 17 U.S.C. § 512 ("DMCA") with respect to plaintiff Perfect 10, Inc.'s ("P10") claims of copyright infringement against Google directed to the caching feature of Google Web Search. This motion for summary judgment is made on the ground that Google satisfies each of the statutory requirements for safe harbor under the governing DMCA provision, 17 U.S.C. § 512(b).[1]

This motion is based on this Notice of Motion and Motion, the concurrently-filed Memorandum of Points and Authorities and Separate Statement, the supporting Declarations of Rachel Herrick Kassabian, Sibrina Khan, Bill Brougher, Shantal Rands Poovala and Paul Haahr, the pleadings and other papers on file in this action, including Google's Motion for Summary Judgment Regarding Google's Entitlement to Safe Harbor under 17 U.S.C. 512(d) for Web and Image Search, and such additional evidence as may be presented at or before the hearing.

---

[1] Under separate covers, Google also is filing motions for partial summary judgment of entitlement to DMCA safe harbor under Sections 512(c) regarding Google's Blogger service ("Blogger Motion") and 512(d) regarding Google's Web and Image Search feature ("Search Motion"). Google respectfully suggests that the Court consider Google's motion under Section 512(d) (the "Search Motion") first, as it includes a full recitation of the facts and arguments common to all three motions. The Search Motion and its supporting brief are incorporated here by reference.

DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE

### Statement of Local Rule 7-3 Compliance

Google's counsel engaged in the Local Rule 7-3 pre-filing conference with P10's counsel on November 7, 2008 as well as times thereafter.

DATED: July 2, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By /s/ Rachel Herrick Kassabian
Michael Zeller
Rachel Herrick Kassabian
Attorneys for Defendant GOOGLE INC.

# TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ...................................................1
**PRELIMINARY STATEMENT** ......................................................................................1
**STATEMENT OF FACTS**...............................................................................................1
    I.    GOOGLE'S CACHING FEATURE.................................................................1
    II.    P10'S CACHING-RELATED ALLEGATIONS............................................2
    III.    GOOGLE'S DMCA POLICY AND PROCEDURE REGARDING ITS CACHE FEATURE.............................................................................................3
    IV.    GOOGLE'S REPEAT INFRINGER POLICY ................................................3
    V.    P10'S DEFECTIVE NOTICES.........................................................................4
    VI.    GOOGLE'S PROCESSING OF P10'S NOTICES............................................5
**SUMMARY JUDGMENT STANDARD** ........................................................................5
**ARGUMENT** ....................................................................................................................6
    I.    GOOGLE MEETS THE DMCA'S THRESHOLD REQUIREMENTS ........6
    II.    GOOGLE IS ENTITLED TO SAFE HARBOR UNDER § 512(B)................7
**CONCLUSION** .................................................................................................................9

01980.51320/2993879.1

-i-

DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE

# TABLE OF AUTHORITIES

Page

### Cases

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................6

*Cusano v. Klein*,
    280 F. Supp. 2d 1035 (C.D. Cal. 2003)....................................................................6

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004)..................................................................................8

*Field v. Google*,
    412 F. Supp. 2d 1105 (D. Nev. 2006).............................................................6, 7, 8

*Rivera v. Anaya*,
    726 F.2d 564 (9th Cir. 1984)....................................................................................6

### Rules/Statutes

17 U.S.C. § 512.................................................................................................passim

*Fed. R. Civ. P.* 56.....................................................................................................6

*Fed. R. Civ. P.* 56(b)............................................................................................5-6

01980.51320/2993879.1

-ii-

DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

Google stores historical, or "cache," copies of the text from third-party websites that it crawls and indexes for its Web Search service. Google makes these cached copies available for a limited time to users of its Web Search service. While the text of the site is made available to users by Google via the cached copy, any images on those cached web pages are delivered directly from the third party-sites, not from Google's cache.

P10 has alleged various direct and secondary copyright infringement claims against Google based upon Google's caching feature. These claims fail, because Google qualifies for safe harbor under Section 512(b) of the Digital Millennium Copyright Act ("DMCA"). Because P10 has not raised a triable issue of fact regarding Google's satisfaction of the statutory safe harbor requirements, Google's motion for summary judgment on this basis should be granted.

## Statement of Facts[2]

### I. GOOGLE'S CACHING FEATURE

Google maintains the world's most popular Internet search engine. Declaration of Bill Brougher ("Brougher Dec.") ¶ 2. Google has indexed billions of web pages available on the Internet. Id. ¶ 3. Google uses an automated software program, known as a web crawler, to obtain copies of publicly available web pages, by sending requests to the server for the originating website and receiving the requested content in response. Id. ¶ 4. Google's proprietary software analyzes a copy of each web page it receives from the originating web servers and compiles an index of the text available on accessible websites. Id.

Google provides Web Search users with the option of selecting a link to a "cached copy" of the web pages that appear in its search results. Brougher Dec. ¶ 5.

---

[2] Google respectfully refers the Court to pages 5-16 of its Search Motion, which recite the facts common to both motions.

01980.51320/2993879.1

-1-

DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE

When a user clicks on the "cached" link, the user sends a request to Google's computers, which respond automatically by transmitting the archival copy of the text of the web page in question. *Id.* ¶ 8. This cached copy of the web page text is made available through an automatic technical process, as opposed to a direct link to the website. *Id.* ¶ 6. However, there are no images stored in this cache. *Id.* ¶ 7. Any images displayed on the cached page are delivered from their original source, if they still exist. *Id.* Google maintains a copy of the text of a web page in the cache available to users only until its web robot next visits that particular web page. *Id.* ¶ 6. In the majority of cases, Google's cache made available to users is refreshed every few weeks. *Id.* Thus, Google's cached copy is a temporary "snapshot" of the text on a web page as it appeared the last time the web page was crawled by Google's web robot. *Id.*

Google's cache available to users provides Internet users with several important benefits. Brougher Dec. ¶¶ 10-12. It allows users to view the text of pages that the users cannot access directly. *Id.* ¶ 10. A web page can become inaccessible because of transmission problems, censorship by governments, or too many users seeking the same page at the same time. *Id.* The archival functionality is also important to users, such as researchers, who wish to determine how a particular web page has changed over time. *Id.* ¶ 11. The cached link further allows users to more readily determine why a particular page was responsive to their query, by highlighting the terms of the query. *Id.* ¶ 12.

## II. P10'S CACHING-RELATED ALLEGATIONS

With respect to caching, P10 alleges that Google is secondarily liable for copyright infringement based upon Google's alleged provision (through its cache feature) of cached links to third-party websites that display infringing copies of its

01980.51320/2993879.1

-2-

DEFENDANT GOOGLE'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512(b) FOR ITS CACHING FEATURE

copyrighted works. Second Amended Complaint ¶ 26(d).³ P10 alleges that in some cases, Google provides cache copies to users when the allegedly infringing images are no longer available on the third-party websites. *Id.*⁴

## III. GOOGLE'S DMCA POLICY AND PROCEDURE REGARDING ITS CACHE FEATURE

Google's policy is to respond expeditiously to notices of copyright infringement in accordance with the DMCA. Declaration of Shantal Rands Poovala ("Poovala Dec.") ¶ 5. Google publishes the information it needs to process DMCA complaints relating to Web Search at https://www.google.com/dmca.html. *Id.* Google's Web Search DMCA policy covers its caching feature as well. *Id.* ¶ 10. Cached pages displaying allegedly infringing material are prevented from appearing in Google's search results in the same manner as are Web Search links. *Id.* Thus, when Google suppresses a web page from appearing in Web Search results, it automatically prevents all cached links to that page from appearing in the results as well. *Id.*; *see* Search Motion at 5-6. Accordingly, Google's procedure for processing DMCA notices regarding cached content is the same as Google's procedure for processing DMCA notices regarding Web Search. Poovala Dec. ¶ 10.

## IV. GOOGLE'S REPEAT INFRINGER POLICY

Google has and enforces repeat infringer policies for all products or services with "subscribers or account holders," as required by the DMCA. Poovala Dec. ¶ 36. Google's Web Search service has no subscribers or account holders. Haahr Dec. ¶ 17. Webmasters do not "sign up" to have their web sites listed in Google's

---

³ As noted above, there are no images in Google's cache. To extent P10's caching claims are construed as allegations based on linking to third party content, Google is entitled to safe harbor under Section 512(d), and requests summary judgment for its caching feature on that basis. *See* Search Motion at 19-25.

⁴ As a technical matter, this is impossible because the only images displayed on the cached page are those which are accessible from the website hosting those images at the time the user accesses the cached link. Brougher Dec. ¶ 7.

01980.51320/2993879.1

-3-

organic search results or the cache. *Id.* Thus, there are no subscriptions or accounts to terminate with respect to Web Search or its cache feature. Of course, Google has repeat infringer policies for the products and services with account holders, such as AdSense or Blogger.[5] Pursuant to those policies, Google will terminate account holders following receipt of ███ verified DMCA notices.[6] Even though not required by the DMCA, Google also makes a good faith attempt to enforce its repeat infringer policies even where the notice in question is defective or not otherwise directed to those products or services. ████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████

## V. **P10'S DEFECTIVE NOTICES**

A full discussion of P10's DMCA notices[9], and their numerous defects, is set forth in Google's Search Motion at pages 7-11 (incorporated herein by reference).

Pursuant to 17 U.S.C. § 512(c)(3)(B)(ii), Google repeatedly advised P10 of the various defects that hindered or precluded Google from completely processing

---

[5] Beyond the fact that Google has such policies, Google does not concede that the enforcement of these policies is relevant to the Section 512(b) analysis, where the product or service itself does not have account holders or subscribers.

████████████████████████████████████████████████████████████

[7] An AdSense account holder, or "publisher," places certain code on its web pages in order to signal to Google's servers that Google-provided ads should be delivered to that page. *See* https://www.google.com/adsense/login/en_US/?sourceid=aso&subid=na-en-ha-bk&utm_medium=ha&utm_term=adsense.

[8] ████████████████████████████████████████████████████

[9] For ease of reference, Google refers to P10's DMCA communications as "notices." However, Google does not concede that these communications constituted valid notices of copyright infringement pursuant to the DMCA. Nor does Google concede that the URLs identified by P10 as "infringing URLs" in its claimed notices were actually infringing.

01980.51320/2993879.1

-4-

its notices. *See* Search Motion at 11-12; Poovala Dec., ¶¶ 57-74 & Exs. S-EE. At no time did P10 respond to Google's letters by resubmitting its notices in an intelligible and DMCA-compliant format. Poovala Dec. ¶ 74. In short, P10's notices consistently failed to identify the work at issue and the location of the infringing content (among other defects). *See* Search Motion at 7-11. Worse, P10's obfuscatory and burdensome notices, coupled with its refusals to correct the noted defects, suggested that P10 had little interest in actually removing links to content from Google's search results. *See id.* at 11-12.

## VI. GOOGLE'S PROCESSING OF P10'S NOTICES

Although P10's notices failed to comply with the DMCA, Google went beyond what the law requires to expeditiously process them, by (1) notifying P10 of the defects and how to correct them; ████████████████ ████████████████████████████████ (3) preventing all discernable URLs from appearing in search results even though P10 had failed to identify the work allegedly infringed at those URLs; and (4) enforcing Google's repeat infringer policies for services with subscribers or account holders implicated by the notices, despite the defects in the notices. *See* Poovala Dec. ¶¶ 56-94; Search Motion at 12-16.

As discussed above, when Google suppresses a live web page URL from appearing in Web Search results in response to user queries, it automatically prevents all cached links to that page from appearing in Web Search results as well. *See* Part III, *supra*. Thus, Google's processing of P10's notices directed to Web Search automatically prevented all cached links to those pages from appearing in Web Search results as well. Poovala Dec. ¶ 10; *see* Search Motion at 12-16 (discussing Google's processing of P10's notices for Web Search).

### Summary Judgment Standard

"A party against whom relief is sought may move at any time . . . for summary judgment on all or part of a claim," or on an affirmative defense. Fed. R.

Civ. P. 56(b); *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir. 1984). The moving party must demonstrate the absence of a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The opposing party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial". *Cusano v. Klein*, 280 F. Supp. 2d 1035, 1038 (C.D. Cal. 2003).

## Argument

P10's allegations of copyright infringement directed to Google's caching feature of its Web Search service falls within the DMCA's subsection (b), which provides safe harbor against claims of infringement "by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider." 17 U.S.C. § 512(b). P10's defect-laden notices failed to confer knowledge of infringement upon Google, but even if they had, Google responded to the fullest extent required, entitling Google to safe harbor.

### I. GOOGLE MEETS THE DMCA'S THRESHOLD REQUIREMENTS

Google incorporates by reference the arguments in its Search Motion at pages 17-18, establishing that Google meets the DMCA's threshold requirements, and will only summarize them here.

It is beyond dispute that Google is a "service provider" as defined by the DMCA. 17 U.S.C. § 512(k)(1)(B); *Field v. Google*, 412 F. Supp. 2d 1106, 1125 (D. Nev. 2006). The undisputed evidence further establishes that Google has a working DMCA notification system for Web Search.[10] Google also has a designated agent for receiving notifications of claimed infringement. Poovala Dec.,

---

[10] Again, there is no Image Search user cache. If the Court considers P10's caching allegations to be directed to Image Search, Google incorporates by reference the relevant portions of its Search Motion, and requests summary judgment on P10's caching allegations on that additional basis.

Ex. 1; Kassabian Dec., Ex. G (P10 admitting same). Google publishes detailed instructions explaining what information Google needs to process a DMCA notice directed to Web Search, and how and where the notice should be submitted. Poovala Dec. ¶ 5. If a DMCA notice is deficient, Google requests the additional information needed to process the notice. *Id.* ¶ 13. Google has a procedure for processing DMCA notices, including verifying the complaints, ensuring that offending URLs do not appear in search results, and tracking its processing efforts. *Id.* ¶¶ 11-14. Further, Google has implemented a repeat infringer policy for services with account holders or subscribers, and terminates those account holders or subscribers where appropriate. *Id.* ¶¶ 36-38. Finally, Google does not actively prevent copyright owners from collecting information needed to issue a DMCA notice, and does not interfere with any known "standard technical measures." Haahr Dec. ¶ 18; *see also* Search Motion at 18.

Having satisfied the threshold conditions of eligibility, Google is entitled to seek safe harbor under the DMCA.

## II. GOOGLE IS ENTITLED TO SAFE HARBOR UNDER § 512(B)

Google is entitled to safe harbor under Section 512(b) with respect to P10's cache-related infringement claims. Section 512(b) provides safe harbor for service providers "by reason of the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider." Section 512(b) imposes eight conditions for safe harbor, and Google meets them all. *See* 17 U.S.C. § 512(b)(1)(A)-(C); 17 U.S.C. § 512(b)(2)(A)-(E) (summarized below).

As a preliminary matter, Google's cache falls within Section 512(b) because it constitutes "intermediate and temporary storage of material." 17 U.S.C. § 512(b); *see also Field*, 412 F. Supp. 2d at 1125 (granting Google's motion for summary judgment of eligibility for safe harbor under Section 512(b)). Google stores the text associated with the web pages it has indexed in its cache made available to users. Brougher Dec. ¶ 6. Google maintains a copy of a given web page in its cache made

available to users only until its web robot next visits that particular web page. *Id.* In the majority of cases, Google's cache made available to users is refreshed every few weeks. *Id.* This is "intermediate and temporary" within the meaning of the DMCA. *Field*, 412 F. Supp. 2d at 1124 (finding that Google's cache storing archival copies of web pages for approximately 14 to 20 days is "temporary" under § 512(b)) (citing *Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)).

Further, Google satisfies all eight conditions for Section 512(b) safe harbor.

First, the allegedly infringing P10 images are made available online by a person other than Google—specifically, the webmasters of the third-party websites displaying the allegedly infringing material. 17 U.S.C. § 512(b)(1)(A); Brougher Dec. ¶ 4.

Second, the allegedly infringing P10 images are transmitted by third-party websites to users at Google's request. 17 U.S.C. § 512(b)(1)(B); Brougher Dec. ¶ 4.

Third, Google's storage of the web page HTML text in its cache made available to users is carried out through an automated technical process, for the purpose of making the material available to users who wish to access it after it was initially made available by the third-party websites. Brougher Dec. ¶ 6; 17 U.S.C. § 512(b)(1)(C); *Field*, 412 F. Supp. 2d at 1124 (no dispute that Google met this requirement).

Fourth, Google's robot obtains copies of the web pages from originating websites without modification to their content. 17 U.S.C. § 512(b)(2)(A); Brougher Dec. ¶ 6.

Fifth, if webmasters hosting the content in question specify rules concerning refreshing, reloading, or other updating of the material, Google complies with those rules. 17 U.S.C. § 512(b)(2)(B); Brougher Dec. ¶ 12.

Sixth, Google does not interfere with any technology used by a website to collect information directly from users who may access allegedly infringing materials on their site. 17 U.S.C. § 512(b)(2)(C); Haahr Dec. ¶ 19.

Seventh, Google's cache does not alter the prerequisites established by webmasters for access to copyrighted material, such as payment or password protection. 17 U.S.C. § 512(b)(2)(D); Haahr Dec. ¶ 20.

Eighth, if a valid notice of infringement under Section 512(c)(3) is received, it is Google's policy to respond expeditiously to remove or disable access to the infringing material. 17 U.S.C. § 512(b)(2)(E); Poovala Dec. ¶ 5. Here, although none of P10's notices directed to Web Search were valid, Google nevertheless went beyond what the DMCA requires and processed them expeditiously. *See* Search Motion at 12-16.

Having satisfied all eight conditions, Google is entitled to safe harbor under Section 512(b) with respect to all of P10's copyright infringement claims arising from Google's caching feature.[11]

### Conclusion

There is no material fact left for trial regarding whether Google is entitled to safe harbor under Section 512(b). Google respectfully requests that the Court grant it summary judgment on this basis.

DATED: July 2, 2009

QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By *Rachel Herrick Kassabian*
Michael Zeller
Rachel Herrick Kassabian
Attorneys for Defendant GOOGLE INC.

---

[11] Google is entitled to safe harbor under Section 512(d) with respect to P10's caching allegations for the same reasons Google is entitled to safe harbor with respect to the Web Search allegations. *See* Search Motion at 19-25. As discussed above, third-party websites display the images that appear in the cached copy, and Google merely links to them. Brougher Dec. ¶ 7. Thus, in addition to Section 512(b) safe harbor, Google is entitled to safe harbor under Section 512(d) as well, based upon the cache feature's linking to third party content.