QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>DECLARATION OF PAUL HAAHR IN SUPPORT OF DEFENDANT GOOGLE'S MOTIONS FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512<br><br>Hon. A. Howard Matz<br><br>Date: August 17, 2009<br>Time: 10:00 a.m.<br>Ctrm: 14<br><br>Discovery Cut-off: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set<br><br>**PUBLIC REDACTED** |

DECLARATION OF PAUL HAAHR IN SUPPORT OF DEFENDANT GOOGLE'S MOTIONS FOR SUMMARY JUDGMENT RE: GOOGLE'S ENTITLEMENT TO SAFE HARBOR UNDER 17 U.S.C. § 512

I, Paul Haahr, declare as follows:

1. I am an engineer at Defendant Google Inc. ("Google"). I have been employed with Google since 2002. I manage various aspects of Google's Web Search service. I have personal knowledge of the matters set forth herein and if called and sworn as a witness, I could and would competently testify thereto.

<u>Google's Procedure for Processing DMCA Notices Regarding Web Search</u>

2. I handle the engineering (or "back-end") side of Google's Web Search DMCA removals process. The "front-end" ▆▆▆▆ team is tasked with doing the initial review and processing of DMCA notices, and interfaces directly with DMCA complainants. It is my understanding that the ▆▆▆▆ team confirms that the necessary information has been received from the complainant (as set forth in Google's published DMCA policy), and then attempts to match the copyrighted work claimed to be infringed with the allegedly infringing material identified by the complainant.

3. The engineering team that handles the "back end" of the Web Search DMCA removals process ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ) I am a part of that team.

4. To process a removal, my team needs the complete URL at which the allegedly infringing material is located. A web page URL is a string of characters that identifies the location of that web page on the World Wide Web. It is what an Internet user sees in its browser bar. If a web page URL contains improper ellipses (that is, ellipses that replace other characters actually in the URL), unnecessary spaces, or misspellings, it cannot be used to block links to that web page from appearing in Google's search results. Stated another way, entering incomplete or incorrect URLs in the file my team uses for processing DMCA notices ▆▆▆▆ ▆▆▆▆▆▆▆ will not prevent links to those web pages from being returned by Google Web Search, and can also result in engineering problems for Google's search engine. Additionally, not all web pages that are indexed by Google will

-2-

appear in Google Web Search results. Google regularly blocks links to web pages from appearing in Web Search results for various policy reasons, including DMCA notices. Google cannot block URLs which are not live on the web, which are not indexed by Google, or are already blocked from appearing in Web Search results, because these URLs *already* do not appear in Web Search results. Stated another way, in those instances, there is nothing to block.

5. Our ▮ team receives from the ▮ team lists of URLs that have been identified by complainants as URLs at which allegedly infringing materials may be located. The ▮ team also sends our team a link to a URL linking to a page on the website "chillingeffects.org" at which the original DMCA notice may be found and viewed.

6. Our team processes the removal by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Attached as Exhibit 1 is a true and correct copy of excerpts of the ▮ file. These excerpts include, among other things, URLs submitted by Perfect 10, Inc. ("P10") and processed by Google.

7. ▮▮▮▮▮▮▮▮▮▮▮ Thus, when a web page is prevented from appearing in Google search results ▮▮▮▮▮ a link to the DMCA notice at that Chilling Effects URL is displayed at the bottom of the user's search results. This serves to explain to the user the reason for the suppression of a portion of the user's search results.

8. If the ▮ team receives a counter-notification under the DMCA, they notify the ▮ team that a suppressed URL should be reinstated. My team

-3-

processes that reinstatement by ███████████████████████████
███████████ so the URL in question may again appear in Web Search
results. The ███ team is notified when this process is complete.

Google's Procedure for Processing DMCA Notices Regarding Image Search

9. In connection with my responsibilities handling the engineering aspects of Web Search removals, I have become familiar with Image Search removals. From time to time, I have personally processed DMCA removal requests regarding Image Search. Google's procedure for processing notifications of copyright infringement related to Image Search is largely the same as the procedure for processing notifications relating to Web Search. Specifically, when a complainant sends a DMCA-compliant notice to Google, Google's ███ team attempts to verify the complaint. Once verified, Google engineers ███████████ ████████████████████████████████████████████████████████ ███████████████████████ prevent those image URLs from appearing in any Image Search results generated in response to user queries. Attached as Exhibit 2 is a true and correct copy of excerpts of the Image Search-specific ███ file. These excerpts include, among other things, URLs identified in communications received from P10.

10. To process a removal for Image Search, Google needs the complete URL at which the allegedly infringing material is located—i.e., the "image URL." An image URL identifies the location where a specific image is hosted on the Web. Images may be displayed on one or more web pages using a hyperlink to the image URL. If an image URL is linked to and displayed at multiple web page URLs, but the complainant provides Google with only one of those web page URLs in its DMCA notice, Google can only prevent that single display (web page URL) of the image from being linked to in Image Search results. In this example, the other web page URLs at which that image is displayed will continue to be linked to in Image Search results. This means that complainants must provide the image URL at which

-4-

the infringing image is hosted in order for Google to ensure that all displays of a specific image located at a particular image URL are prevented from being linked to in Image Search results generated in response to user queries. An image URL will typically end with the suffix ".jpg" or ".gif." However, URLs ending with those suffixes are not always image URLs.

11. As with the Web Search removals process, Google cannot use partial or incomplete image URLs (such as those improperly containing ellipses, unnecessary spaces, or misspellings) to block links to content from appearing in Google Image Search results. Additionally, not all content that is indexed by Google will appear in Image Search results. Google regularly blocks links to content from appearing in Image Search results for various policy reasons, including DMCA notices. Google cannot block URLs which are not live on the web or are already blocked from appearing in Image Search results, because these URLs *already* do not appear in Image Search results. Stated another way, in those instances, there is nothing to block.

12. If the ▮▮▮ team receives a counter-notification regarding an Image Search removal, they again notify the ▮▮▮ team that a suppressed image URL should be reinstated. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so it can again appear in Image Search results. The ▮▮▮ team is notified when this process is complete.

13. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## Google Does Not Crawl All Content for Search

14. Although Google crawls billions of web pages for its Web and Image Search products, it does not crawl all content. Google does not crawl sites that are

-5-

marked by the site owner with code indicating that the site should be excluded from search engine crawl. Site owners can use robot exclusion .txt files, which are instructions that tell Google's web robots not to crawl those pages or sites. Google also generally does not crawl or index websites, or those portions of websites, that are only accessible by entering a password. Nor does it crawl or index Usenet's servers. "Usenet" is a completely separate system of servers and communication protocol than the World Wide Web, which is what Google crawls and indexes for its Web and Image Search products. It is my understanding that what P10 calls "Usenet sites" in its communications refers to both Usenet groups and password-protected sites.

15. Google may crawl and index Usenet "gateway" or "mirror" web pages located on standard web servers accessible to Google's web robots, but it does not crawl, index, or link to the content within Usenet groups for its Web and Image Search products. Accordingly, there are no links in Google's Web or Image Search results to allegedly infringing content in Usenet groups unless it happens to be on gateway pages of Usenet or password protected sites. To the extent web pages on these sites are crawled by Google, to remove links to those web pages from Web Search results, Google needs the complainant to provide the web page URL for the content in question, just as it does for any other web page removal. Likewise, to remove allegedly infringing images displayed on those web pages from Image Search results, Google needs the complainant to provide the image URL, just as it does for any other image removal.

Google's Relationship With Third-Party Websites

16. Google does not charge websites a fee for appearing in its user-generated Web or Image Search results. Nor does it charge a fee for the use of Web or Image Search. Google crawls and indexes third-party websites made available on the Internet by third parties and accessible to users regardless of whether they appear in Google's Web or Image Search results, unless those sites have robot

exclusion files. Google lacks the ability to remove those websites from the Internet, or to control what they choose to display.

17. Google's Web and Image Search services do not have account holders or subscribers. Webmasters do not "sign up" to have their web sites listed in Google's organic search results. Websites appear in search results if they are crawled by Google's web robots and are relevant to users' queries, as determined by Google's automated search algorithm.

18. I am not aware of Google interfering with any standard technical measures employed for the protection of copyrighted content. For example, Google does not interfere with any watermarking or digital rights management typically employed by copyright owners.

19. Google does not interfere with any technology used by a website to collect information directly from users visiting that website.

20. The cache Google makes available to users does not alter the mechanisms for access to copyrighted material established by webmasters, such as charging a payment or password protection.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed June 30, 2009 at Mountain View, California.

Paul Haahr