Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Email: Jeff@mausnerlaw.com
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773

Attorneys for Plaintiff, Perfect 10, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>        Defendants.<br>_____<br><br>AND CONSOLIDATED CASE. | Case No.: CV 04-9484 AHM (SHx) Consolidated with Case No. CV 05-4753 AHM (SHx)<br><br>**PLAINTIFF PERFECT 10, INC.'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDCATION RE: COPYRIGHT INFRINGMENT AGAINST DEFENDANT GOOGLE, INC.**<br><br>**BEFORE JUDGE A. HOWARD MATZ**<br><br>[Filed Separately: Perfect 10's Statement of Uncontroverted Facts and Conclusions of Law; Declarations of Dr. Norman Zada, Sean Chumura, Sheena Chou, Melanie Poblete, Jeffrey Mausner, Dean Hoffman, C.J. Newton, and David O'Connor in Support of Perfect 10's Motion for Summary Judgment and Summary Adjudication; and [Proposed] Order.]<br><br>Date:   August 17, 2009<br>Time:  10:00 a.m.<br>Place:  Courtroom 14, Courtroom of the Honorable A. Howard Matz<br><br>Discovery Cut-Off Date:  None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

To All Parties and Their Attorneys of Record:

Please take notice that on August 17, 2009 at 10:00 A.M, or as soon thereafter as the motion may be heard, in the Courtroom of the Honorable A. Howard Matz, Courtroom 14, located at 312 North Spring Street, Los Angeles, California, Plaintiff Perfect 10, Inc. shall and hereby does move for summary judgment and summary adjudication that Google, Inc. is contributorily, directly, and vicariously liable for copyright infringement of Perfect 10's images.

The basis for this motion is set forth in the following Memorandum of Points and Authorities.

This motion is based upon the following pleadings, submitted herewith, as well as the pleadings and other documents on file in this action, and such additional pleadings, evidence, and oral argument as may be presented:

1.    Memorandum of Points and Authorities in Support of Plaintiff Perfect 10, Inc.'s Motion for Summary Judgment and Summary Adjudication Re: Copyright Infringement Against Defendant Google, Inc.

2.    Perfect 10's Statement of Uncontroverted Facts and Conclusions of Law, for Motion for Summary Judgment and Summary Adjudication Against Google, Inc.

3.    Declaration of Jeffrey N. Mausner in Support of Perfect 10's Motion for Summary Judgment and Summary Adjudication Against Defendant Google, Inc.

4.    Declaration of Dr. Norman Zada in Support of Perfect 10's Motion for Summary Judgment and Summary Adjudication Against Google.

5.    Declaration of Sean Chumura in Support of Perfect 10's Motion for Summary Judgment Against Google.

6.    Declaration of Sheena Chou in Support of Perfect 10's Motion for

1    Summary Judgment and Summary Adjudication Against Google.

2        7.    Declaration of Melanie Poblete in Support of Perfect 10's Motion

3    for Summary Judgment and Summary Adjudication Against Google.

4        8.    Declaration of Dean Hoffman.

5        9.    Declaration of C.J. Newton.

6        10.   Declaration of David O'Connor in Support of Perfect 10's

7    Motion for Summary Judgment Against Google.

8        11.   [Proposed] Order Granting Perfect 10, Inc.'s Motion for

9    Summary Judgment and Summary Adjudication Against Defendant Google,

10   Inc.

11        It should be noted that Perfect 10 held off filing this motion because

12   Google filed a Motion For An Order Setting A Schedule For The Filing Of

13   Dispositive Motions.  Nevertheless, Google went forward with filing three

14   Motions for Summary Judgment without waiting for the Court to rule on its

15   Motion for an Order Setting a Schedule.  Perfect 10 objects to Google's

16   tactics.

17        **Statement of Local Rule 7-3 Compliance**

18        This motion is made following the conference of counsel pursuant to

19   Local Rule 7-3 which took place on April 23, 2009 and May 5, 2009.

20   Dated: July 5, 2009          Respectfully submitted,
                                  LAW OFFICES OF JEFFREY N. MAUSNER
21

22                               By: _____*Jeffrey N. Mausner*_____

23                                    Jeffrey N. Mausner
                                      Attorney for Plaintiff Perfect 10, Inc.
24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF PERFECT 10, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION RE: COPYRIGHT INFRINGEMENT AGAINST DEFENDANT GOOGLE, INC.

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION AND SUMMARY OF ARGUMENT. ............................1

 A. Direct Copyright Infringement. ..........................................2

 B. Vicarious Copyright Infringement..........................................2

 C. Contributory Copyright Infringement.......................................3

  1. First and Third Prongs: Google Had Knowledge of the Infringements But Failed to Take Action. ..................................3

  2. Second Prong: Google Has Simple Ways To Prevent Further Damage To Perfect 10's Copyrighted Works...............5

 D. Google Is Ineligible For DMCA Safe Harbor, Which Is An Affirmative Defense....................................................5

II. FACTUAL BACKGROUND. ..............................................6

 A. Perfect 10's Business And Intellectual Property. .............................6

 B. Google Provides Users With Unauthorized Access To P10 Images. ....................................................6

III. GOOGLE IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT BECAUSE IT HAS FAILED TO REMOVE 3,737 FULL-SIZE P10 IMAGES FROM ITS SERVERS................................................10

IV. GOOGLE IS LIABLE FOR VICARIOUS COPYRIGHT INFRINGEMENT BECAUSE IT PLACES ADS NEXT TO INFRINGING P10 IMAGES ON WEB PAGES THAT IT HOSTS. ..........11

V. INDISPUTABLE EVIDENCE ESTABLISHES THAT GOOGLE IS LIABLE FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT. .......12

 A. The Ninth Circuit's Standard For Contributory Copyright Infringement By Search Engines Such As Google...........................12

 B. The Evidence Before This Court That Google Substantially Assists Copyright Infringement Is Significantly Greater Than The Evidence Before The Ninth Circuit. ....................................12

 C. Google Had Knowledge That Infringing Images Were Available Using Its Search Engine, But Failed To Act.................................13

  1. Google Did Not Respond At All To 14 DMCA Notices It Received From Perfect 10 In 2001 ....................................13

2.    Google Took Months To Remove Identified Infringing Links From Its Web Search Results in 2004 And Failed To Remove The Same Links From Its Image Search Results. ...... 14

    a.    The URL *web.tiscali.it/raskz/donne/guigno.htm.* .......... 14

    b.    The URL *celebritybattles.com/celeb/Monika+Zsibrita* . 15

3.    Google Has Not Removed Identified Infringing Links Forwarded To It By Amazon For More Than Four Years. ...... 15

4.    Google Has Not Removed Identified Infringing Cache Pages. 15

5.    Google Has Not Removed Identified "See Full-Size Image Links" Despite Receiving Notices Which Followed Its Instructions. .................... 16

6.    Google Has Not Removed Identified Infringing In-Line Links From Its Image Search Results. ........................ 16

7.    Google Has Taken No Action Against Massive Infringing Advertisers, Or Even A Website Convicted Of Criminal Copyright Infringement. ...................... 16

8.    Google Continues To Place Ads On Infringing Web Pages And Next To Identified P10 Images ........................ 17

9.    Google Continues To Make And Display The Same Infringing P10 Thumbnails In Its Image Search Results. ........ 18

10.    Google Continues To Disseminate Perfect10.com Passwords From Its Own Website And Host And Link To Password Hacking Websites. .................... 18

11.    Google Continues To Provide Direct Links To Infringing Web Pages On Massive Infringing Free Websites For Which It Has Received Repeated Notice. ................ 19

D.    Google Could Take Simple Measures To Prevent Further Damage To Perfect 10's Copyrighted Works. ................... 19

VI.    GOOGLE DOES NOT QUALIFY FOR DMCA SAFE HARBOR ............. 20

A.    Perfect 10's Notices Substantially Complied With the Requirements of the DMCA. ................ 20

B.    Google Has Failed to Act Expeditiously To Remove Or Disable Access To The Infringing Material. ................ 23

C.    Google Has Neither Adopted, Nor Reasonably Implemented, A Repeat Infringer Policy. ................ 24

VII.    CONCLUSION. ................ 25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*A & M Records, Inc. v  Napster,* 239 F.3d 1004, 1014 (9th Cir. 2001) .................13

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005) ..........2

*Perfect 10 v. Cybernet Venturers, Inc*., 213 F.Supp. 2d 1146 (C.D.Cal. 2002)......24

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir. 2007)....passim

**Statutes**

17 U.S.C. § 512...................................................................................................passim

# I.     INTRODUCTION AND SUMMARY OF ARGUMENT.

Plaintiff Perfect 10, Inc. ("Perfect 10") seeks summary judgment that Defendant Google Inc. ("Google") is liable for direct, vicarious, and contributory copyright infringement of Perfect 10 copyrighted images ("P10 Images.")

Google is not merely a search engine. It also hosts thousands of infringing websites through its blogspot.com program, stores millions of full-size images for such websites on its blogger.com servers, and acts as a commercial advertising operation, placing unauthorized Google ads next to millions of infringing images through its AdSense and Adwords programs.

Google has delayed *years* to process some Perfect 10 DMCA notices (meaning to "remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity") and has *not processed any portion of at least 23 Perfect 10 notices*.   Declaration of Dr. Norman Zada in Support of Perfect 10's Motion for Summary Judgment ("Zada Decl.") ¶¶15-17, 59- 61, Exhs. 8-10, 44-45, filed concurrently.

Google, a technological powerhouse, has not even taken the simplest step of removing infringing images and URLs which Perfect 10 identified in its notices. Zada Decl. ¶60-61, 67, Exhs. 44-45, 51.  In addition, Google has failed to work with Perfect 10 to implement a "check the infringing image" notification system, as ordered by the Court. *See* Court Order of May 6, 2008, ¶9, attached as Exhibit A to the Declaration of Jeffrey N. Mausner ("Mausner Decl."), filed concurrently. Such a system would have created a simple and effective procedure for removing infringing material, and would have prevented Google from claiming that every Perfect 10 notice is deficient.  When Perfect 10 tried to follow the Court's suggestion on its own, by providing copies of infringing web pages with check marks next to infringing images, Google refused to process such notices.  Zada Decl. ¶53, Exh. 38, pp. 7-8; Mausner Decl. Exh. B.  Perfect 10's experience with Google is not unique; others who have sent DMCA notices to Google have

experienced a similar refusal to act. In fact, one author has described Google's DMCA policy as "*obstructionist,*" "*hopelessly broken,*" "*unnecessarily difficult,*" "*legally dubious,*" and "*likely illegal.*" Dean Hoffman has stated that "*Google was just giving me the runaround,*" "*Google operates punitively towards copyright holders,*" and Google "*has no intent to cooperate with copyright holders.*" C.J. Newton stated that **Google did not respond to one hundred of his notices.** *See* Declarations of Dean Hoffman and C.J. Newton, filed concurrently; Mausner Decl. Exh. C.

### A. Direct Copyright Infringement.

Google is directly liable for infringing thousands of P10 Images for at least four reasons. First, Google has stored at least 3,808 *full-size* P10 Images on its blogger.com servers. Even though Perfect 10 sent to Google notices that included a copy of each such infringement with the full blogger.com URL, Google has not removed any of those images expeditiously and has belatedly removed at most 71 infringements out of 3,808. Second, Google has also stored full-size P10 Images on its Google Groups servers, and has not expeditiously removed any of those images either. Third, Google has hosted at least 400 blogspot.com sites that have infringed, in total, at least 11,000 P10 Images. Fourth, Google does not keep track of the identities of its hosting clients and thus allows them to infringe anonymously. Because Google is listed by Internet Registrars as the registered *owner and contact* for such infringing websites, it must take responsibility when put on notice. Zada Decl. ¶¶8-9, 40-52, Exhs. 1-2, 27-36, 9; Declaration of Sheena Chou ("Chou Decl.") ¶8. [*see* Section III, below].

### B. Vicarious Copyright Infringement.

Google's activities satisfy the requirements for vicarious copyright infringement under the test established by the Supreme Court in *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005), because it profits from direct infringement while declining to exercise a right to stop or limit it. Google

has hosted at least 4,000 P10 Images via its blogspot.com program, around which it has placed Google ads.  Google receives a direct benefit from the infringement, because each time a user clicks on an ad near a P10 Image, Google receives a payment.  Google has the right and ability to control such infringement, because it is occurring on Google's own servers, which Google controls.  Moreover, because Google conceals the identity of its hosting clients, there is no one else other than Google that copyright holders can hold responsible.  Zada Decl. ¶¶6-12, Exhs. 1-5 [*see* Section IV, below].

### C.  Contributory Copyright Infringement.

The Ninth Circuit held in this very case that "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir. 2007).  Google satisfies the Ninth Circuit test for the following reasons [*see* Section V, below].

#### 1.  First and Third Prongs: Google Had Knowledge of the Infringements But Failed to Take Action.

Perfect 10 sent to Google at least 14 notices in 2001 for which Google admittedly took no action and must have liability, based on the Ninth Circuit test. In fact, Google has produced no documents demonstrating that it took any action with respect to *any notice from anyone* prior to March, 2002.  Zada Decl. ¶19.

Since May 31, 2004, Perfect 10 has sent 56 additional separate DMCA notices to Google.  Forty-two of these notices were spreadsheet style notices created by Perfect 10 *which followed the instructions provided by Google*.  The key element in such notices was the URL or link that identified the infringing web page.  Once Google received that URL or link, Google could simply block or remove the identified infringing link from both its Web Search and its Image Search results.   Declaration of David O'Connor  ("O'Connor Decl.") ¶¶4-6; Declaration of Sean Chumura ("Chumura Decl.") ¶¶3-5 .  Nevertheless, in

response to such notices sent by Perfect 10 to Google from May 31, 2004 through June 28, 2004, ***Google waited approximately four months before removing any identified infringing links from its Web Search results.  In some cases, Google waited as long as seventeen months.  Moreover, Google failed to remove the same infringing links from its Image Search results.*** Zada Decl.  ¶¶21-28, Exhs. 11-17, 9.  In other words, even though Google belatedly removed some identified infringing Web Search links, Google continued to provide those same infringing links to Google users via Image Search (by in-line linking and framing).  Google's removal of identified infringing Web Search links demonstrates that it had knowledge, satisfying the first prong of the Ninth Circuit test.  However, Google's long delay (3 to 17 months) in removing such Web Search links, and its complete failure to remove those same links from Image Search results, satisfies the third prong of the Ninth Circuit's test.   Zada Decl. ¶¶62-63, 21-28, Exhs. 46-47, 11-17.

Second, the DMCA notices sent by Perfect 10 to Google from June 28, 2007 onwards, included both the URL required by Google and a copy of the infringing web page.   Those notices identified thousands of infringing URLs and images which Google refused to remove or block, claiming that all such notices were deficient.  However, in June 2009, Google finally processed three similar notices, showing that they were, in fact, not deficient.  Zada Decl. ¶¶38-61, 26-28, Exhs. 26-45, 14-17.  *See also*, Pallas Depo., 145:6-146.10; 148:23-149:7; 66:1-10; 67:12-21, attached as Exh. G (filed under seal) to Mausner Decl.  In some cases, Perfect 10 went so far as to provide Google with a copy of the Google P10 thumbnail as well as three associated links – the "See full-size image" link, Web Page link, and thumbnail link, using a "check the infringing image" program similar to that suggested by the Court in its May 8, 2006 Preliminary Injunction order.  Nevertheless, Google claimed those notices were "deficient" as well.  Microsoft, however, processed such notices.  Zada Decl. ¶53, Exh. 38, pages 7-8.

Third, Google has taken no action against its advertising affiliates such as

giganews.com, despite receiving thousands of images from Perfect 10 allegedly infringed by that web site. The operators of a website similar to giganews.com, thepiratebay.org, were recently convicted of criminal copyright infringement in Sweden and sentenced to a year in jail. Nevertheless, Google continued to provide as many as 8.8 million links to thepiratebay.org after that conviction, and continued to copy P10 Images made available on thepiratebay.org into Google's Image Search results. Zada Decl. ¶14, Exh. 7.

Fourth, many of the images that Google uses in its Image Search results display Perfect 10 copyright notices and have been the subject of multiple notices. Nevertheless, Google continues to make copies of the same images, display them in its Image Search results, and in-line link them to larger infringing P10 Images. Google also continues to place Google ads next to such images. Zada Decl. ¶¶58-60, Exhs. 43-44, 9.

Fifth, Google could remove virtually all P10 Images from its Image Search and Web Search results using Image Recognition technology but has refused to do so. Zada Decl. ¶67, Exh. 51.

### 2. Second Prong: Google Has Simple Ways To Prevent Further Damage To Perfect 10's Copyrighted Works.

There is no genuine issue of material fact that Google "could take simple measures to prevent further damage to Perfect 10's copyrighted works." *See Perfect 10 v. Amazon.com,* 508 F.3d at 1172. Google could remove identified infringing links upon notice. Google could maintain a DMCA log and act against repeat infringers. Google could treat massive infringers of intellectual property in the same way it allegedly treats child porn sites – it cuts all links to them. Instead, Google has done next to nothing. [*see* Section V.D, below].

### D. Google Is Ineligible For DMCA Safe Harbor, Which Is An Affirmative Defense.

Google cannot rely upon any of the safe harbor defenses for service providers set forth in Section 512 of the DMCA, for at least five reasons. First,

Google has not acted expeditiously in response to Perfect 10's notices. Second, Google has admitted that the websites it hosts are account holders for the purposes of the DMCA. However, Google has not terminated its hosting of these websites, even after repeated notices of infringement, nor does Google even know, in many cases, who is operating these infringing websites. Third, Google has not acted at all with respect to its massive infringing paysite advertisers, or its massive infringing AdSense affiliates, which it also describes as account holders. Fourth, Google has not maintained a DMCA log in a manner that allows it to prove either that it expeditiously disabled access to infringing material or that it suitably terminated repeat infringers. Zada Decl. ¶¶8-60, Exhs. 1-44. Finally, Google has not responded expeditiously to a number of other copyright holders' notices as well. *See,* Mausner Decl. Exh. C; Declarations of Dean Hoffman and C.J. Newton.

## II.     FACTUAL BACKGROUND.

### A.     Perfect 10's Business And Intellectual Property.

Perfect 10 owns the copyrights for all of the P10 Images described in this Motion, including the 12 images Perfect 10 selected as a sample (the "Sample"). Zada Decl. ¶¶1-2, Exh. 9; Declaration of Melanie Poblete ("Poblete Decl.").

After losing more than $50 million because of rampant infringement, Perfect 10 was forced to close its magazine in June, 2007, lay off most of its employees, and end most of its operations. It still operates *perfect10.com* and sells back issues of its magazine. Zada Decl. ¶5.

### B.     Google Provides Users With Unauthorized Access To P10 Images.

Google owns and operates the website *google.com*. It also operates the websites *blogspot.com* and *blogger.com*, which it uses to host third-party websites and store their images. Google has provided visitors to its websites with unauthorized access to P10 Images in at least thirteen different ways, each of which siphons customers away from P10 to Google and its infringing affiliates:

1)  Google has stored at least 3,808 full-size P10 Images on its blogger.com

servers, along with 3,808 medium-sized versions of the same images.  Google's blogger.com servers also store tens of thousands of full-size celebrity images, worth tens of millions of dollars.  Chou Decl. ¶8, Exh. 9; Zada Decl. ¶49.

2)  Google has hosted more than *four hundred* websites in its blogspot.com program that have infringed, in total, more than 11,000 P10 Images. Google's blogspot.com hosting program ***completely conceals the identity of the webmaster***. A "who is" search on a blogspot.com hosted website shows the name of the owner of the website as "Google," not the webmaster.  Google has complete control over blogspot.com hosted sites and can and has removed such websites from its servers. Zada Decl. ¶¶8-9, 40-51, Exhs. 1-2, 27-35, 9.

3)  Through its AdSense advertising program, Google has placed unauthorized ads next to at least *18,000* infringing P10 Images, as well as hundreds of thousands of other celebrity images.  Google has also placed ads on blogspot.com websites that it hosts that have infringed at least 4,000 P10 Images. Effectively, Google has monetized billions of dollars of intellectual property without permission.  Zada Decl. ¶58, Exh. 43.

4)  Google has hosted websites which offer links to the website *rapidshare.com*.  Google has also powered rapidshare.com search engines. Rapidshare.com is the twelfth most visited website on the Internet and one of the world's greatest thieves of intellectual property.  It allows users to find and download billions of dollars of full-length movies and songs, as well as thousands of P10 Images.  As an article from the website *whatisrapidshare.com* states, "Every game, every program/application, *every movie, every song*, every e-book, literally anything that can be stored on a hard drive, you can find on Rapidshare servers."   (emphasis added).  In fact, *rapidshare.com*'s predecessor, *rapidshare.de*, "was banned by Adsense since it was primarily used for sharing bulk of illegal content, including warez, pirated movies, MP3 songs, etc… Now that Rapidshare.de has moved to Rapidshare.com, this new domain is already

qualified to show Ads by Google."  Zada Decl. ¶14, Exh. 7.

Perfect 10 has sent DMCA notices to Google that have identified at least 26,000 distinct P10 Images infringed by rapidshare.com.  Nevertheless, Google continues to: (i) power rapidshare.com search engines; (ii) host websites that offer links to rapidshare.com and that permit the illegal downloading of thousands of P10 Images; and (iii) place ads on websites that promote rapidshare.com.  Zada Decl. ¶14, Exh. 7.

5)  Google also promotes other massive infringers.  After the operators of the website thepiratebay.org were sentenced to one year in jail for copyright infringement, Google continued to provide as many as 8.8 million links to thepiratebay.org.  Zada Decl. ¶14, Exh. 7.  Despite repeated notice, Google continues to: (i) distribute ads for; (ii) provide premium search result placement (Sponsored Links) to; and (iii) provide thousands of regular search result links to, at least 20 pay websites, each of which has offered, on average, more than 15,000 pirated P10 Images on its site.  Google has also distributed ads on behalf of these infringing websites to other websites.  These infringing websites typically charge users a monthly fee of between $10 and $20, and then allow users to illegally download massive quantities of infringing material, including thousands of full-length movies, songs, and images.  Perfect 10 cannot possibly compete with these thieves, who offer billions of dollars of stolen content (including most of P10's library of images) for fractions of a penny on the dollar.  Zada Decl. ¶¶34-37, Exhs. 22-25.

6)  Google has displayed at least 20,000 P10 Images in its Image Search results.  Google has also in-line linked those images to infringing third party websites, thereby using P10 Images to promote the websites of the very competitors of Perfect 10 who stole those P10 Images.  Zada Decl. ¶53.

7)  Google has offered to its users thousands of full-size P10 Images via its "See full-size image" links, and via its in-line links.  Zada Decl. ¶55.

8)  Google has itself displayed passwords for perfect10.com and has hosted websites which display perfect10.com passwords.  Such passwords have allowed the unauthorized downloading of at least 3,000,000 P10 Images from perfect10.com.  Google has also linked to password hacking websites which offer such passwords.  Perfect 10's evidence shows that users have gone to google.com, searched on google.com for perfect10.com passwords, and then entered perfect10.com using such passwords.  Zada Decl. ¶65, Exh. 49.

9)  Google has partnered with hundreds of infringing websites, including imagevenue.com and imagerise.com, to share revenues from clicks on Google ads placed next to P10 Images, without asking Perfect 10 for permission to use such images or offering to pay Perfect 10 anything.  Zada Decl. ¶13.

10)  Google has provided thousands of links to massive infringers of P10 Images via its Google Web Search results.  Zada Decl. ¶57, Exh. 42.

11)  Google has allowed users to retrieve P10 Images from infringing websites, even when those websites are no longer functioning, via Google's cache link.  Zada Decl. ¶39, Exh. 16.

12)  Google has specially formatted P10 images so they could be downloaded on cell phones.  *Id.* ¶53.

13)  Finally, Google has "arranged" its Web Search results on the names of Perfect 10 models so that the search results favor infringing websites that are Google advertising affiliates.  For example, on October 31, 2008, Perfect 10 conducted a Google Web Search on "Jamike Hansen," a model exclusive to Perfect 10.  Of the 113 Google results, *all* linked to infringing websites.  Fifty-five results linked to *gadissexybugil.blogspot.com*, a Google-hosted website that infringes P10 Images and displays Google ads.  Seven results linked to the website *dignow.com*, which also displays Google ads and which promotes *gadissexybugil.blogspot.com*.  Thirty-four results linked to *rapidlibrary.com*, a former Google AdSense website which provides rapidshare.com links for downloading thousands of P10 Images.

All of the other search results either displayed P10 Images by in-line linking to imagerise.com or imagevenue.com, both massive infringers and Google AdSense affiliates, or offered rapidshare.com links for downloading P10 Images. None of the results linked to a website owned or controlled by Perfect 10. Zada Decl. ¶69, Exh. 9.

**III.** **GOOGLE IS LIABLE FOR DIRECT COPYRIGHT INFRINGEMENT BECAUSE IT HAS FAILED TO REMOVE 3,737 FULL-SIZE P10 IMAGES FROM ITS SERVERS.**

Google is liable for direct copyright infringement for several reasons. First, Google has continued to store more than 3,737 full-size P10 Images on its blogger.com servers, despite repeated notice. Since approximately July 2, 2007, Perfect 10 has sent DMCA notices to Google that identified approximately 3,808 copies of medium-size P10 Images found on blogspot.com web pages hosted by Google, as well as the corresponding full-size P10 Images stored by Google on its blogger.com servers. Chou Decl. ¶8; Zada Decl. ¶50. Perfect 10's DMCA notices provided Google with the full URL of the infringing web pages on which the P10 Images resided, as well as copies of those web pages. Perfect 10 also provided Google with copies of 50 full-size P10 Images stored on Google's blogger.com servers (that had been identified in prior DMCA notices) as part of Perfect 10's June 12, 2008 Motion to Amend its Complaint. Zada Decl.¶¶40-51, Exhs. 27-35, 9.

Despite such notice, Google continues to store on its blogger.com servers, and display to its users, all but approximately 71 of the 3808 full-size P10 Images identified by Perfect 10. Images that were removed were only removed after many months. Chou Decl. ¶8, Exh. 9. Even when Google removed all infringing medium-size P10 Images from a blogspot.com hosted site, it usually left all the related full-size P10 Images on its blogger.com servers. Also, because Google in many cases provides an *infinite number* of URLs for each blogger.com image it stores, Google's removal of an image from one URL accomplishes nothing,

1    because Google continues to make the same infringing image available at many

2    other blogger.com URLs.   Zada Decl. ¶51, Exh. 35.

3         Google has also stored full-size P10 Images on its Google Groups servers,

4    which it has not removed expeditiously upon notice.  Zada Decl. ¶52, Exh. 36.

5         Finally, Google is also liable for direct infringement with respect to the

6    medium-size P10 Images hosted by Google on its blogspot.com program.  As

7    explained in greater detail in the Zada Declaration, Google does not require

8    websites that are hosted by Google to separately register with an Internet registrar

9    such as Network Solutions or to even identify themselves to Google.  As a result of

10   Google's anonymous hosting policy, Google is the only entity to hold liable for the

11   infringement that is taking place on its servers.  Zada Decl. ¶¶6-9, Exhs. 1-2.

12   **IV.  GOOGLE IS LIABLE FOR VICARIOUS COPYRIGHT**

13       **INFRINGEMENT BECAUSE IT PLACES ADS NEXT TO**

14       **INFRINGING P10 IMAGES ON WEB PAGES THAT IT HOSTS.**

15        The Supreme Court held in *Grokster* that one "infringes vicariously by

16   profiting from direct infringement while declining to exercise a right to stop or

17   limit it." *Grokster, Ltd.,* 545 U.S. at  930.  Google satisfies the *Grokster* test.

18        First, Google profits from direct infringement because it has placed "ads by

19   Google" next to more than 4,000 P10 Images on Google-hosted blogspot.com

20   websites.  Google makes money each time a user clicks on one of those ads.  Zada

21   Decl. ¶¶8-9, 12, 40-51, 59-60, Exhs. 1-2, 27-35, 44, 9.  Second, because the

22   infringement is occurring on Google's own servers, it has the right and ability to

23   stop such infringement, as well as the contractual right.   Zada Decl. ¶¶8, 9, Exhs.

24   1-2.  Because Google earns a financial benefit from infringing activity on its own

25   servers, over which Google has complete control, Google's conduct constitutes

26   vicarious infringement under the *Grokster* standard.

27   /////////

28   /////////

# V. INDISPUTABLE EVIDENCE ESTABLISHES THAT GOOGLE IS LIABLE FOR CONTRIBUTORY COPYRIGHT INFRINGEMENT.

## A. The Ninth Circuit's Standard For Contributory Copyright Infringement By Search Engines Such As Google.

In its opinion on Perfect 10's motion for preliminary injunction in this very case, the Ninth Circuit held as follows:

> There is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones. Applying our test, ***Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps.***

*Perfect 10 v. Amazon.com, Inc.*, 508 F.3d at 1172 (emphasis added).  The evidence submitted by Perfect 10, discussed below, satisfies the Ninth Circuit's test.

## B. The Evidence Before This Court That Google Substantially Assists Copyright Infringement Is Significantly Greater Than The Evidence Before The Ninth Circuit.

In its ruling on Perfect 10's motion for preliminary injunction, the Ninth Circuit held that there is no dispute "that Google substantially assists" websites to distribute infringing materials and users to access these materials.  The evidence before this Court that Google substantially assists infringement, discussed in greater detail in the Zada Declaration, is now much stronger.

When the Ninth Circuit issued its ruling in 2007, it did not have before it the following additional evidence of Google's "substantial assistance:"  (i) Google stores thousands of full-size P10 Images on its blogger.com servers; (ii) Google hosts websites that infringe thousands of P10 Images and places ads around many of those images; (iii) Google powers search engines, like Rapidshare searcher, that search specifically for rapidshare.com links. Such links allow users to download at least 26,000 P10 Images, along with thousands of pirated movies and songs;

(iv) millions of P10 Images are being viewed and downloaded on infringing websites to which Google links; and (v) confidential usernames and passwords disseminated by Google have been used to illegally download over 3 million P10 Images over a fifteen-month period. Zada Decl. ¶¶65-66, 40-51, 14, Exhs. 49-50, 27-35, 7, 9.[1]  In sum, the evidence before this Court that Google substantially contributes to the infringement of P10 Images is much stronger than it was when the Ninth Circuit made that same ruling.

C.    **Google Had Knowledge That Infringing Images Were Available Using Its Search Engine, But Failed To Act.**

The Ninth Circuit has held that Google may be held contributorily liable if it: (i) had knowledge that infringing Perfect 10 images were available using its search engine; (ii) could take simple measures to prevent further damage to Perfect 10's copyrighted works; and (iii) failed to take such steps.  The following are examples of Google's knowledge and failure to act (each using one or more images from Perfect 10's sample of twelve images), which satisfy the first and third prongs of the Ninth Circuit's test.

1.    **Google Did Not Respond At All To 14 DMCA Notices It Received From Perfect 10 In 2001**

Google concedes that it did nothing in response to Perfect 10's 2001 notices. Furthermore, Google did not suggest that any of those 14 notices were deficient. Because the URL *celebritypictures.com/MayaRubin/maya1.htm*, identified in one

---

[1] Such illegal downloading violates Perfect 10's exclusive rights to reproduce and distribute its copyrighted photographs, pursuant to Sections 106(1) and (3) of the Copyright Act. *See, e.g., A & M Records, Inc. v Napster,* 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").  Indeed, the Copyright Office has unequivocally stated that downloading infringing content violates a copyright owner's exclusive rights to reproduce and distribute the works.  See "Copyright and Digital Files," available at http://www.copyright.gov/help/faq/faq-digital.html#p2p ("Uploading or downloading works protected by copyright without the authority of the copyright owner is an infringement of the copyright owner's exclusive rights of reproduction and/or distribution.").  People who use unauthorized passwords to enter perfect10.com to download images know or should know that they are infringing copyright, just as users of Napster did.

Perfect 10's Motion for Summary Judgment and
Summary Adjudication Re: Copyright Infringement Against Google

of Perfect 10's 2001 notices, was still available in Google's search results in 2004, Google is liable for its inaction under the 9th Circuit test. Zada Decl. ¶16, Exh. 8.

### 2. Google Took Months To Remove Identified Infringing Links From Its Web Search Results in 2004 And Failed To Remove The Same Links From Its Image Search Results.

#### a. The URL *web.tiscali.it/raskz/donne/guigno.htm.*

Google concedes that Perfect 10 provided it with notice of the infringing URL web.tiscali.it/raskz/donne/guigno.htm. in a DMCA notice received by Google on June 28, 2004. Google further concedes that it removed this URL from its Google Web Search results on October 11, 2004, about 100 days later.[2] Zada Decl. ¶26, Exh. 14 (Macgillivray Sur-Reply Declaration). That Google was able to belatedly remove this URL from its Web Search results establishes that: (i) Perfect 10's DMCA notice was substantially compliant; and (ii) Google had knowledge that the identified web page infringed Perfect 10's copyright. Despite this knowledge, however, Google continued to display P10 Images from that same infringing web page and link directly to that infringing web page via its *Image Search results*. Because Google removed direct links to the infringing web page identified by Perfect 10 from its Web Search results but not from its Image Search results, Google both had knowledge of infringement and failed to remove or disable access to that infringement. In fact, Google continued to crawl that same infringing web page, make an infringing thumbnail from the full-size P10 Image of Vibe Sorenson on that page, and then provide an in-line link from that infringing thumbnail to that same infringing web page, as late as July 9, 2006, *more than two*

---

[2] That Google took more than three months to remove the infringing URL also is a violation of the DMCA, which requires that the service provider "responds *expeditiously* to remove, or disable access to, the material that is claimed to be infringing." 17 U.S.C. §512(d)(1) and (3)(emphasis added). Yahoo! was able to remove links and images from its search results within three days after receiving similar notices from Perfect 10. Zada Decl. ¶¶62-63, Exhs. 46-47. Moreover, Microsoft's customer satisfaction policy requires removal of infringements within three days. Deposition of Judy Weston in the *Microsoft* case ("Weston Depo.") 33:24-34:8, attached as Exhibit D to the Mausner Decl. Taking more than thirty times that long to act cannot be deemed "expeditious."

1    *years after receiving notice.* Zada Decl. ¶¶26-28, Exhs. 14-17.

2    **b. The URL** *celebritybattles.com/celeb/Monika+Zsibrita*

3    Google received notice of this infringing URL from Perfect 10 on February

4    17, 2005, and removed the URL from Google Web Search results on April 29,

5    2005, more than 70 days later. Zada Decl. ¶26, Exh. 14. Once again, Google's

6    conduct establishes that Perfect 10's notice was substantially compliant and that

7    Google had knowledge that the identified web page infringed Perfect 10's

8    copyrights. Despite this knowledge, however, Google continued to display a P10

9    Image from that same infringing web page and link directly to that infringing web

10    page via its Image Search results, as late as July 9, 2006, *more than five hundred*

11    *days after receiving notice.* Zada Decl. ¶¶26-28, Exhs. 14-17. Because Google

12    belatedly removed direct links to the identified infringing web page from its Web

13    Search results but not from its Image Search results, Google both had knowledge

14    of infringement and failed to remove or disable access to that infringement.

15    **3. Google Has Not Removed Identified Infringing Links Forwarded To It By Amazon For More Than Four Years.**

16    In April 2005, Amazon forwarded to Google the infringing URL

17    *monitor.hr/belle/0112/011206.htm.* This URL was among hundreds of URLs

18    included by Perfect 10 in its DMCA notices to Amazon. As of May 20, 2009,

19    *more than four years later*, Google still had not removed that URL from its Web

20    Search results. As explained in the Zada Declaration, Google could have found the

21    infringing search results associated with that URL simply by inputting the URL

22    into the Google Search box. Zada Decl. ¶¶29-31, Exhs. 18-20.

23    **4. Google Has Not Removed Identified Infringing Cache Pages.**

24    Perfect 10 included hundreds of copies of Google's infringing cache pages

25    in DMCA notices it sent to Google. These pages identified *both the infringing*

26    *Google cache link and the infringed P10 Image.* Nevertheless, Google still has not

27    removed most identified infringing cache links from its search results, after more

28    than 500 days. (Google finally removed a few identified cache links in June of

1     2009.)  Zada Decl. ¶¶39, 59-61, Exhs. 26, 44-45, 9.

2              **5.      Google Has Not Removed Identified "See Full-Size Image**
3                       **Links" Despite Receiving Notices Which Followed Its**
                       **Instructions.**

4              Perfect 10 also sent DMCA notices to Google in which Perfect 10 provided

5     copies of the infringing web page obtained by a user who clicked on Google's "See

6     Full-Size Image" link, as instructed by Google.  Perfect 10 provided a copy of the

7     URL requested by Google, as well as the infringing/infringed image.

8     Nevertheless, Google has failed to remove or disable access to those links.  Zada

9     Decl., ¶¶54-55, 59-60, Exhs. 39-40, 44, 9.

10             **6.      Google Has Not Removed Identified Infringing In-Line**
                       **Links From Its Image Search Results.**

11             In its Motion for Preliminary Injunction, Perfect 10 submitted numerous

12    exhibits showing an infringing P10 thumbnail above a framed infringing full-size

13    P10 Image displayed in Google Image Search.  These exhibits were based on prior

14    Perfect 10 DMCA notices.  Nevertheless, Google failed to remove such twice-

15    identified infringing thumbnails and links, even though Perfect 10 used those very

16    examples in its preliminary injunction motion.  Perfect 10 provided similar print

17    screens of infringing Google Image Search displays to Google in its 2007 and 2008

18    DMCA notices.  Google did not respond to those notices either.  Zada Decl. ¶¶28,

19    53, Exhs. 17, 37-38.

20             **7.      Google Has Taken No Action Against Massive Infringing**
                       **Advertisers, Or Even A Website Convicted Of Criminal**
21                      **Copyright Infringement.**

22             In its June 28, 2007 DMCA notice to Google, Perfect 10 included over 1.1

23    million P10 Images from 59 massive infringing paysites that Google linked to,

24    and/or received advertising payments from for special search result placement

25    (Sponsored Links).[3]  Perfect 10 sent additional notices to Google regarding these

26
_____
27         [3] Google refers to sponsored link advertisers as "account holders."  *See* 17
      U.S.C. §512(i)(1)(A).  In addition to making money from these sites by providing
28    Sponsored Links, Google also provides thousands of free links to such infringing
      paysites.  For example, as of October 30, 2008, Google was providing 12,200 web

massive infringers, including a notice dated December 8, 2005.  Google has recently made clear that it will not act against such massive infringers, even if they pay Google for special search result placement.  Mausner Decl., Exh. B;  Zada Decl. ¶¶32-37,  Exhs. 21-25.

Some of Google's paysite advertisers, such as giganews.com, are involved in arguably the greatest theft of all time.  They have stolen most major full length movies, songs, images, and even computer software, worth tens of billions of dollars.  They are doing tremendous damage to the entertainment community, whose livelihood depends on a vibrant market for its movies and songs.  Google's willingness to partner with such criminals to help them profit from massive theft is unjustifiable, morally repugnant, and should not be sanctioned by this Court.[4] Google has even refused to remove links to the website piratebay.org, whose owners were convicted of criminal copyright infringement in Sweden. *Id.*¶14,Ex.7.

### 8. Google Continues To Place Ads On Infringing Web Pages And Next To Identified P10 Images

Google has placed its advertising ("ads by google") *next to* at least *18,000* P10 Images on free websites, including blogspot.com websites that it hosts.  In most cases, Google has not removed such ads even after receiving notice from Perfect 10 that the web pages where Google placed these ads infringed upon Perfect 10's copyrights.  Furthermore, even when Google has removed ads that it placed next to P10 Images on certain infringing websites, Google has simply placed its ads next to those same P10 Images on other infringing websites.  Zada

search links to its advertising affiliate, giganews.com.  *Id.* ¶¶11, 37, Exhs. 4, 25.

[4] The fact that these paysites do not have web pages that contain the infringing material should not make any difference.  Google provides links to the home pages of these websites, including Sponsored Links and regular links, which allow Google users to locate infringing materials.  Perfect 10 has provided notices to Google that identify "the material that is claimed to be infringing or to be the subject of infringing activity," as required by 17 U.S.C. §512(c)(3)(A)(ii). Google's insistence that Perfect 10 provide a web page URL for the infringing material, when none exists, is simply an excuse not to act when Perfect 10 provides the home page URL and simple instructions on how to locate the infringing material.  Zada Decl. ¶¶34-37, Exhs. 22-25.

Decl. ¶¶12-13, 58, Exhs. 5-6, 43.

**9.  Google Continues To Make And Display The Same Infringing P10 Thumbnails In Its Image Search Results.**

In the 68+ DMCA notices it has sent to Google, Perfect 10 has repeatedly identified the same infringing P10 Images over and over.  Many of these images display Perfect 10 copyright notices.  Nevertheless, Google continues to make thumbnail copies of the same infringing P10 Images for its Image Search results, and continues to link those infringing P10 thumbnails to the same full-size infringing P10 Images.  Although the URLs of these images may change, the damage to Perfect 10 does not.  Zada Decl. ¶28, Exh. 17.  By continuing to provide the same identified infringing P10 thumbnails to its users, and by continuing to link such thumbnails to the same full-size infringing P10 Images, Google has not disabled access to the identified infringing material.

Google has recently demonstrated that it has the ability to search for and recognize similar images, through its "similar images" feature on its website.  Google's failure to use such capability, as well as its failure to assign any employees to locate and remove infringing images identified in Perfect 10's DMCA notices, demonstrates that Google has failed to act to prevent further damage to Perfect 10's copyrighted works, the third prong of the Ninth Circuit's test for contributory infringement.  Zada Decl. ¶¶53-54, 67, Exhs. 37-38, 51.

**10.  Google Continues To Disseminate Perfect10.com Passwords From Its Own Website And Host And Link To Password Hacking Websites.**

Google continues to display passwords to perfect10.com on its own website.  Moreover, Google continue to host websites on its blogspot.com servers that also display P10 passwords.  Such passwords have been used to illegally download millions of images from perfect10.com.  Furthermore, as explained in the Zada Declaration, users have gone to google.com, searched for perfect10.com passwords on google.com, and then made unauthorized downloads of P10 Images from perfect10.com using those passwords.  Zada Decl. ¶65, Exh. 49.

Google's dissemination of these passwords to its users materially assists those users in gaining unauthorized access to the pay-only members' area of Perfect 10's website, from which the users make unauthorized copies of P10 Images by downloading them. Google could easily limit its display of passwords to perfect10.com because Perfect 10 has given notice of exactly where those passwords are located in Google's search results. Furthermore, Google could simply search for and delete strings of the form "username:password@www.perfect10.com." Nevertheless, Google has chosen not to take any of these simple measures. Zada Decl. ¶¶65, 70, Exhs. 49, 53.

**11. Google Continues To Provide Direct Links To Infringing Web Pages On Massive Infringing Free Websites For Which It Has Received Repeated Notice.**

Google continues to provide direct links to web pages on massive infringing websites that offer, in some cases, as many as 17,000 free full-size P10 Images. For example, even though Perfect 10 has sent DMCA notices to Google that include copies of infringing web pages from the massive infringing websites nudecelebforum.com, phun.org, and imagerise.com, Google continues to directly link to those infringing web pages, both via its Web Search results and its Image Search results**.** Zada Decl. ¶¶57-60, Exhs. 42-44, 9.

**D. <u>Google Could Take Simple Measures To Prevent Further Damage To Perfect 10's Copyrighted Works.</u>**

Google could take simple measures to prevent further damage to Perfect 10's copyrighted works, but has failed to do so. As set forth in greater detail in the Zada Declaration, Google could: (1) remove or disable access to P10 Images identified in Perfect 10's DMCA notices, which are on Google's blogspot.com and blogger.com servers; (2) stop providing Sponsored Links to Google advertisers that infringe thousands of P10 Images; (3) stop distributing Sponsored Links for such infringers on third-party websites; (4) stop placing ads on identified websites that infringe P10 Images; (5) stop hosting websites that offer rapidshare.com links that

allow users to illegally download P10 Images; (6) stop powering search engines specifically designed to search for infringing rapidshare.com links; (7) remove P10 thumbnails from Google's Image Search results that have been repeatedly identified in Perfect 10's DMCA notices; (8) remove links in Google's Web Search results that lead directly to the infringing web pages identified in Perfect 10's notices;[5] (9) delete all links to websites that infringe over 1,000 P10 Images; (10) send infringing images to advertisers and other massive infringers and require them to remove such images or be delisted from Google search results; (11) adopt and reasonably implement a policy against repeat infringers, as required under the DMCA §512(i); (12) stop publishing confidential username and password combinations that have facilitated widespread, unauthorized access to Perfect 10's website; (13) stop hosting websites that illegally disseminate passwords to perfect10.com; and (14) remove from Google search results websites that publish confidential username/password combinations, as identified in Perfect 10's notices.

## VI. **GOOGLE DOES NOT QUALIFY FOR DMCA SAFE HARBOR.**

In order to qualify for the safe harbor provisions of the DMCA, Google must satisfy all of the relevant statutory requirements. Google's admitted many-month delay in processing certain Perfect 10 notices, its complete failure to process other notices, its failure to maintain a DMCA log, and its failure to keep track of its hosting clients, along with other reasons discussed below, all preclude Google from qualifying for the safe harbor affirmative defense.

### A. **Perfect 10's Notices Substantially Complied With the Requirements of the DMCA.**

The relevant statutory requirements for DMCA notices are set forth in 17 U.S.C. § 512(c)(3). The notices sent by Perfect 10 to Google substantially complied with these requirements, for at least five separate reasons.

---

[5] Google has belatedly removed some URLs identified in Perfect 10's notices, but has failed to remove thousands of other infringing URLs identified by Perfect 10. Zada Decl. ¶¶40-61, Exhs. 27-45.

First, there is no dispute that Perfect 10's notices satisfied subsections (i), (iv), (v), and (vi) of Section 512(c)(3) because they contained: (i) a physical or electronic signature of Dr. Zada; (iv) information reasonably sufficient to permit Google to contact Dr. Zada; (v) a statement that Dr. Zada, on behalf of Perfect 10, had a good faith belief that use of the material in the manner complained of was not authorized; and (vi) a statement that the information in each notice was accurate, and under penalty of perjury, that Dr. Zada is authorized to act on behalf of Perfect 10. *See* Zada Decl., ¶¶24, 34, 40, 53, 56, Exhs. 13, 22, 27, 37, 41, 9.

To satisfy the remaining two subsections, (ii) and (iii), Perfect 10 sent notices to Google in 2004 *based on Google's own instructions*. Perfect 10 complied with subsection (ii) by providing: (a) the name of the model in the infringed image(s) and (b) either the volume, issue, and page numbers of the Perfect 10 Magazine containing those infringed images, or a reference to perfect10.com sufficient to allow Google to locate those images on perfect10.com. Perfect 10 offered to provide Google with a free password to perfect10.com. Later, beginning in June 2007, Perfect 10 satisfied subsection (ii) by sending *actual copies of the infringed/infringing images*, meticulously edited to exclude non-P10 Images. Zada Decl. ¶¶22-24, 33-39, Exhs. 9, 12-13, 22-26.

To satisfy subsection (iii), Perfect 10 initially provided the infringing URLs from Google's Web Search results, as instructed by Google. These URLs appeared in green at the end of each search result. Later, starting in June 2007, Perfect 10 sent Google copies, using Adobe, of the infringing web pages which contained *the full URL of the infringing web page, as well as a copy of the infringed/infringing image*. *Id.* ¶¶22-24, 33-39, Exhs. 9, 12-13, 22-26.

It cannot be disputed that Perfect 10's notices provided Google with sufficient information to locate and remove infringing links, because Google belatedly removed at least 1,000 such links from its Web Search results in response to Perfect 10's spreadsheet style notices. *Id.* ¶¶26-28, 40-51, Exhs. 14-16, 27-35.

Furthermore, Google also belatedly processed Perfect 10's Adobe style notices containing the URL and infringed/infringing images, demonstrating that those notices were substantially compliant as well. Zada Decl. ¶¶59-61, Exhs. 44-45.

Third, Google's letters to Perfect 10 in 2004 never suggested that there were any deficiencies in Perfect 10's notices. Google did in fact process a number of Perfect 10's notices in June 2009.[6] *Id.* ¶¶61, 26-28, Exhs. 45, 14-16.

Fourth, that Perfect 10's notices provided sufficient information for Google to locate and disable access to infringing material is evidenced by the fact that Yahoo! was able to remove links and images from its search results within three days after receiving similar notices from Perfect 10. Yahoo! did not request additional information from Perfect 10 or suggest that Perfect 10's notices were deficient in any way. Zada Decl. ¶¶62-63, 46-47. Microsoft was also able to process certain Perfect 10 notices that Google has refused to process. *Id.* ¶53. *See also*, O'Connor Decl. ¶¶3-6, Exh. 1; Chumura Decl. ¶¶3-5, Exh. 1; Pallas Depo., 145:6-146.10; 148:23-149:7, attached as Exh. G to Mausner Decl., filed under seal.

Fifth, as demonstrated in the Zada Declaration, Google could have simply inputted the URLs provided by Perfect 10 into its search box to find the corresponding infringing search results. Zada Decl. ¶31, Exh. 20. Google has already demonstrated that it can remove URLs identified by Perfect 10. Google simply failed to remove such URLs from its Image Search results, and delayed or took no action whatsoever to remove such URLs from most of Google's Web Search results. Zada Decl. ¶¶16-18, 26-28, 59-60, Exhs. 14-16, 44, 9.

Sixth, Google has stated that if a notice were deficient, Google would contact the copyright holder. And, to the extent that there were any deficiencies in

---

[6] As noted above, Google waited four months before removing any results at all, but then was able to remove at least one thousand infringing links in its Web Search results, but did not remove such infringing links from its Image Search results. Zada Decl. ¶¶26-28, Exhs. 14-17. Furthermore, even when Google removed links from its Web Search results, it still published those same URLs on Chillingeffects.org, despite Perfect 10's objections. *Id.* ¶64, Exh. 48; Declaration of Dean Hoffman ¶¶4-9; Declaration of C.J. Newton ¶5.

1    Perfect 10's notices, Google was required, under §512(c)(3)(B)(ii), to contact

2    Perfect 10 to cure any such deficiencies.  Google not only failed to work with

3    Perfect 10 in any meaningful way, it refused repeated requests by Perfect 10 to

4    provide Perfect 10 with concrete examples of compliant notices, which Perfect 10

5    could then use as a template.  Zada Decl. ¶¶26, 70, Exhs. 14, 53.

6        **B.      Google Has Failed to Act Expeditiously To Remove Or Disable**

7              **Access To The Infringing Material.**

8         In order to qualify for the safe harbor provisions of the DMCA, which is an

9    affirmative defense, a service provider must "act[] expeditiously to remove, or

10   disable access to, the material" that is claimed to be infringing or to be the subject

11   of infringing activity.  17 U.S.C. § 512(c) and (d).  Google cannot meet this

12   requirement for multiple reasons.

13        First, as of May 18, 2009, Google has removed no more than approximately

14   71 full-size P10 Images from its blogger.com servers, even though Perfect 10

15   identified more than 3,800 infringing images in its notices.  Second, Google took

16   between three and seventeen months to remove many Web Search links.  Third,

17   Google completely failed to remove those same links from its Image Search

18   results.  Fourth, Google has not removed or disabled access to tens of thousands of

19   infringements identified by Perfect 10's notices, including infringing Web Search

20   links, infringing cache links, infringing "See full-size image" links, infringing P10

21   thumbnails, and infringing in-line links.  Fifth, Google continues to place Google

22   ads next to P10 Images for which it has received notice.  Sixth, Google continues

23   to host and link to password hacking websites and continues to display

24   perfect10.com passwords itself.  Finally, Google has not even maintained a DMCA

25   log to prove that it has complied with the expeditious removal and repeat infringer

26   requirements.  Such conduct establishes that Google cannot meet the requirement

27   of expeditiously removing or disabling access to infringing material.  Zada Decl.

28   ¶¶8-60, Exhs. 1-44.  Chou Decl.

C. **Google Has Neither Adopted, Nor Reasonably Implemented, A Repeat Infringer Policy.**

Yet another reason that Google does not qualify for any DMCA safe harbor is Google's failure to adopt and reasonably implement a repeat infringer policy, as required by 17 U.S.C. §512(i))(1)(A). A repeat infringer policy is not the same as a copyright policy relating to notice and take-down of infringing materials, because it must deal with the infringer rather than the infringing material itself. *See Perfect 10 v. Cybernet Ventures, Inc*., 213 F.Supp. 2d 1146 (C.D.Cal. 2002) 1177:

> [S]ection 512(i) is focused on infringing users, whereas 512(c) is focused primarily on the infringing material itself. … The Court does not read section 512 to endorse business practices that would encourage content providers to turn a blind eye to the source of massive copyright infringement while continuing to knowingly profit, indirectly or not, from every single one of these same sources until a court orders the provider to terminate each individual account. … [O]nline service providers are meant to have strong incentives to work with copyright holders. The possible loss of the safe harbor provides that incentive and furthers a regulatory scheme in which courts are meant to play a secondary role to self-regulation.

Google has not reasonably implemented a repeat infringer policy, as shown in these five ways: (1) Google admits that its blogspot.com and blogger.com clients are account holders or subscribers for purposes of the DMCA. Zada Decl. ¶8, Exh. 1. However, Google does not keep track of the identities of many such account holders. Because Google only requires an email address and password, it cannot prevent an infringer from continuing to use Google's hosting services with a different email address and password. *Id.* ¶6. (2) Google has failed to keep a spreadsheet-type DMCA log to track repeated complaints regarding the same infringer. It has also not kept track of the identities of such infringers. Zada Decl. ¶19. As a result, Google does not have a mechanism for terminating repeat infringers or preventing such repeat infringers from becoming account holders or subscribers for its other programs. (3) Google has not prevented its blogspot.com account holders from continuing to infringe P10 Images and has not removed such images from its own blogger.com servers, despite repeated notice. Zada Decl.

Perfect 10's Motion for Summary Judgment and
Summary Adjudication Re: Copyright Infringement Against Google

¶¶40-51, Exhs. 27-35.  (4) Google has not stopped doing business with AdWords and AdSense account holders who infringe P10 Images.   Zada Decl. ¶¶12-14, 34-37, Exhs. 5-7, 22-25.  (5)  Google itself is a repeat infringer, as it has continued to infringe full-size P10 Images via its blogger.com program, even when it has removed the corresponding blogspot.com hosted website.  Zada Decl. ¶¶40-51, Exhs. 27-35.  Accordingly, because Google has failed to comply with the requirements of the DMCA, the safe harbor protections of the statute provide no basis for this Court to deny the Motion.

## VII.   **CONCLUSION.**

The stakes in this case are high, for both Perfect 10 and for all copyright holders.  Google has continued to misuse massive quantities of Perfect 10's intellectual property for its own commercial gain, despite receiving more than 67 Perfect 10 DMCA notices, beginning in 2001. Google has allowed its hosting clients to remain anonymous, leaving copyright holders with no one other than Google to hold responsible.  Google has failed to expeditiously remove or disable most of the infringing links and images identified by Perfect 10 in its notices.  Google has refused to process notices that can be processed, and which Yahoo!  and/or Microsoft have processed.  Google has even refused to process notices identical to others it has processed!  Finally, Google has not prevented further damage to thousands of Perfect 10's copyrighted works, and thus is liable for contributory infringement under the test established by the Ninth Circuit in this case.  For all of the reasons set forth herein, Perfect 10 respectfully requests that this Court grant its motion for summary judgment.

Dated: July 5, 2009          Respectfully submitted,
                             Law Offices of Jeffrey N. Mausner

                          By: _____
                             *Jeffrey N. Mausner*
                             Jeffrey N. Mausner,
                             Attorney for Perfect 10, Inc.