Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367
Email: Jeff@mausnerlaw.com
Telephone: (310) 617-8100, (818) 992-7555
Facsimile: (818) 716-2773

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>GOOGLE INC., a corporation,<br><br>        Defendants. | Case No. CV 04-9484 AHM (SHx)<br>Consolidated with Case No. CV 05-4753 AHM (SHx)<br><br>**DECLARATION OF DR. NORMAN ZADA IN SUPPORT OF PERFECT 10'S MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION AGAINST GOOGLE**<br><br>**BEFORE JUDGE A. HOWARD MATZ** |
| AND CONSOLIDATED CASE. | Hearing Date: August 17, 2009<br>Time: 10:00 AM<br>Place: Courtroom 14, Courtroom of the Honorable A. Howard Matz<br><br>Discovery Cut-Off Date: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

## DECLARATION OF DR. NORMAN ZADA

I, Norman Zada, declare as follows:

1.      I make this declaration in support of Perfect 10's motion for summary judgment and summary adjudication against Google.  Except where otherwise stated, I have direct and personal knowledge of the facts set forth herein and, if called as a witness, could and would competently testify thereto.  I have spent at least 2,000 hours using Google's search engine to locate infringements of Perfect 10's copyrighted works.  I have also viewed the html code for a number of web pages of google.com (by using the "view source" feature of my computer), including pages in which Perfect 10 images were displayed via Google Image Search results, and pages of Web Search results.  I have spent thousands of hours viewing the websites and search results of other search engines, including Yahoo! and MSN.  I have also spent hundreds of hours examining the pay sites (also called usenet sites) listed on pages 5 and 6 of Exhibit 22 to this declaration, and have subscribed to, and downloaded, hundreds of thousands of Perfect 10 images from those websites, which have also offered me the opportunity to download  thousands of full-length movies and songs.  I have also spent many hours downloading thousands of Perfect 10 copyrighted images ("P10 Images") from the following free massive infringing websites: forum.phun.org (also called phun.org), pornbb.org, imagerise.com, fritchy.com, glam0ur.com, porno-sex.com.ar, and nudecelebforum.com.  ***Although I will be referring to thousands of P10 Images in my declaration, in order to simplify this motion, Perfect 10 is seeking summary judgment on 12 images ("The Sample")  which are described in the Declaration of Melanie Poblete ("Poblete Decl."), as well as in this declaration.*** A copy of each image in "The Sample" is contained in Exhibit 9 (the disk), along with information for each image, including the copyright registration that covers each of the images.

2.      This declaration will show that Google has been involved in the infringement of each of the P10 Images in "The Sample," and often in multiple ways.  To illustrate, the sample image described as "Vibe Sorenson 1" was infringed in

Google Image Search results and was not removed from such results after Google received notice (see Exhibit 15, page 2, Exhibit 17, page 3, and Exhibit 40 pages 1 and 3). Google also continued to provide direct links to infringing web pages containing this same image after notice (see Exhibit 41), and has also had multiple unauthorized Google ads placed around it, which have not been removed after Google has received notice. (See Exhibit 43). To provide evidentiary support that Perfect 10 has provided Google with repeated notice of infringement of the images in "The Sample," I attached a DVD as Exhibit 9 to this declaration. Exhibit 9 contains the textual portion of more than 68 DMCA notices Perfect 10 sent to Google, as well as selected portions identifying infringements of images in "The Sample." It also includes thousands of examples of full-size P10 Images stored on Google's servers that were included in those notices, and many examples of Google ads next to P10 Images that were included in those notices. Exhibit 9 also contains material to support Perfect 10's claim that it owns valid copyrights to each of the 12 images in "The Sample," if that claim is challenged. Specifically, Exhibit 9 contains the following, in a subfolder labeled "The Sample": a) Perfect 10's deposit materials with the U.S. Copyright Office relating to The Sample; b) the Copyright Certificates covering The Sample; and c) work for hire agreements which cover all of the images in The Sample. The deposit materials for all of Perfect 10's copyrights is voluminous; Perfect 10 will provide that to the Court on a hard drive if the Court so requests. I included Exhibit 9 to provide support for statements I make in my declaration, in the event those statements are challenged. I do not expect the Court to examine Exhibit 9 unless it wishes to do so.

**PROFESSIONAL BACKGROUND AND WORK DONE FOR THIS DECLARATION**

3.     I am President of Plaintiff Perfect 10, Inc. ("Perfect 10"). After receiving a Ph.D. in Operations Research from the University of California at Berkeley, I worked as a research staff member in the main computer science department at IBM, and subsequently taught as a visiting professor in the area of applied mathematics at

Stanford University, UCLA, Columbia University, and UC Irvine. I have programmed computers for at least twenty years. Based on my knowledge of applied mathematics and computers, as well as the countless hours I have spent studying search engines, I am qualified to make statements as to what search engines can do to block search results. This is because search engines are computer programs, which in turn are a set of man-made instructions which tell a computer what to do. Any set of instructions to a computer can be modified to cause the computer to do something other than what it is currently doing, i.e., remove a link that it created. In preparation for this declaration, I have reviewed all of the documents produced by Google, as well as Google's discovery responses and declarations made by Google's declarants in connection with other motions. I have also attended all of the depositions of Google employees conducted by Perfect 10, as well as all depositions conducted by Perfect 10 of Amazon and Microsoft employees. I have been involved in every aspect of this case and, if called as a witness, could and would competently testify thereto.

4.     The Exhibits attached hereto, except where otherwise noted, fall into one of six categories: (a) true and correct copies of documents that I have downloaded as Adobe PDF files from the Internet; (b) true and correct copies of snapshots of my computer screen, which I captured using the program "snagit;" (c) true and correct copies of images that were downloaded from various pay sites, either by myself, or by Sheena Chou under my supervision (see Chou Decl.); (d) true and correct copies of DMCA notices that I sent to Google (excluding attached disks, if any); (e) true and correct copies of spreadsheets that I created; (f) true and correct copies of files that contain deposit materials and copyright certificates for P10 Images, registered with the U.S. Copyright Office; and (g) true and correct copies of Work Made for Hire/Assignment of Rights Agreements between Perfect 10 and the photographers for images in "The Sample." Exhibits reflecting dates contain the correct date the document was downloaded, captured and/or saved, and, when applicable, the URL of the webpage. I have added green check marks or highlighting to some exhibits so that

the Court may more readily locate relevant information contained in those exhibits. I will use the terms "P10" and "Perfect 10" interchangeably to denote Perfect 10 copyrighted images.

5.       Perfect 10 owns the copyrights for all of the P10 Images described in this declaration, including the 12 P10 Images that will be used as a sample for this motion. During the last 10 years, Perfect 10 has created more than 17,000 copyrighted photographs of female models and has purchased additional images, at a cost of millions of dollars. Perfect 10 derives virtually all of its revenue from its images. From 1997 through June 2007, Perfect 10 published the well-known magazine "PERFECT 10." The magazine contains high-quality, nude or partially nude photographs, of beautiful "natural" models such as Sports Illustrated swimsuit cover model/Victoria's Secret model Marisa Miller. After losing more than $50 million because of rampant infringement, Perfect 10 was forced to cease production of its flagship magazine in June, 2007 and lay off most of its employees.[1] Perfect 10 continues to sell back issues of its magazine and run its website, www.perfect10.com. Consumers may view more than 17,000 Perfect 10 Images and videos on the website through an individual, confidential password by paying a monthly fee. Perfect 10 also sold downloads of its images via cell phones, reaching a high of 7,000 downloads per month in 2005. That business effectively ended in 2006.

**GOOGLE'S ANONYMOUS BLOGSPOT HOSTING PROGRAM AND BLOGGER STORAGE PROGRAM**

6.       Google provides users with hosting service through its blogspot.com hosting program, and its related blogger.com image storage program. To find out

_____

[1] Perfect 10 is one of many companies that has been severely damaged by massive infringement on the Internet. Penthouse, for example, which at one time sold 5 million magazines each month, went bankrupt in 2003. Playboy's stock currently trades between $2-$3 per share, after having been as high as $33 per share. The recording and movie industries have also been severely damaged by piracy of their copyrighted works, as entire full-length feature films, television shows, and music albums are now being routinely offered by the same infringers who steal from Perfect 10.

1 more about how Google's blogspot.com hosting operation works, Perfect 10 signed up

2 for the service and created a website.  Google helped us create the website.  It helped

3 us upload a photo onto the site and stored that photo for us.  Google asked us if we

4 wanted to add adult content.  Google did not ask for anything other than an email

5 address and password.

6       7.    Once we created the blogspot.com site hosted by Google, Google offered

7 to place ads on our newly created Google-hosted blogspot.com website, and to split

8 the proceeds from the clicks on such ads with us.

9       8.    I have found over 400 Google hosted blogspot.com websites that have

10 infringed Perfect 10 copyrights, including alltolls.blogspot.com and

11 beautywhores.blogspot.com.  When I have attempted to determine the identity of the

12 webmasters for these websites using a "who is" lookup, as offered by

13 networksolutions.com and other Internet registrars, I was told the registered owner

14 was "Google," and was given Google's contact information, or I got an error message.

15 In other words, Google's blogspot.com hosting program hides the identity of the

16 creator of the website.  The only contact information for Google-hosted blogspot.com

17 websites is Google.  In exploring the many blogspot.com websites, I have noticed that

18 blogspot.com webmasters typically store their images either on blogger.com, which is

19 owned by Google, or on imagevenue.com or imagerise.com, both of which are Google

20 AdSense affiliates.  Attached as Exhibit 1 is a document entitled "Blogger Terms of

21 Service" which I printed from the website blogger.com on April 29, 2008.  On page 3

22 it states: "By submitting, posting or displaying Content on or through Google services

23 which are intended to be available to the members of the public, you grant Google a

24 worldwide, non-exclusive, royalty-free license to reproduce, publish and distribute

25 such Content on Google services for the purpose of displaying and distributing

26 Google services."  On page 4 it states, "Google may, in its sole discretion, at any time

27 and for any reason, terminate the Service, terminate this Agreement, or suspend or

28 terminate your *account*.  In the event of termination, your *account* will be disabled and

you may not be granted access to your *account* or any files or other content contained in your *account*, although residual copies of information may remain in our system for some time for back up purposes." (emphasis added) On page 5 of Exhibit 1, which I printed from google.com on October 22, 2008, it states, "Many Google Services do not have *account holders or subscribers*. For Services that do, *such as Blogger*, Google will, in appropriate circumstances, terminate repeat infringers." (emphasis added).

        9.     Attached as Exhibit 2 are the results from a "who is" search I performed on April 29, 2008 on whois.net for the registration information for the domain names blogger.com and blogspot.com. It shows that both blogspot.com and blogger.com are registered to Google and have as domain servers, google.com. Google is also listed as the administrative and technical contact for both.

**GOOGLE'S ADSENSE AND ADWORDS ACCOUNT HOLDERS**

        10.    Attached as Exhibit 3 is a document which I printed out from google.com on October 30, 2008, entitled "Google AdSense." It states, "Google AdSense matches ads to your site's content, and you earn money whenever your visitors click on them." Lower down on the page, it states, "AdSense for content automatically crawls the content of your pages and delivers ads (you can choose both text or image ads) that are relevant to your audience and your site content – ads so well-matched, in fact, that your readers will actually find them useful."

        11.    Attached as Exhibit 4 is a document I printed from google.com on August 5, 2008, entitled "What's the difference between a Google Account and an Adwords account?" It states, "A Google Account is made up of an email and password – similar to your AdWords login. An AdWords account, on the other hand, is your personal dashboard relating to your AdWords advertising. Your AdWords account includes your AdWords campaigns, billing history, and other information. The key difference between a Google Account and an AdWords login is that your Google Account lets you tie multiple Google services under one email address and

password."

**GOOGLE ADS ON GOOGLE-HOSTED INFRINGING WEBSITES**

12.     Attached as Exhibit 5 are examples of Google ads placed next to P10 Images on the following infringing Google-hosted blogspot websites: alltolls.blogspot.com, beautywhores.blogspot.com, gadissexybugil.blogspot.com, bankofspank.blogspot.com, hot-chicks-gallery.blogspot.com, and ninas-de-papa.blogspot.com. I print screened these from google.com on the date shown on the calendar in the lower right of each page.  Each of these websites are subdomains of the domain blogspot.com, and therefore are located on Google's servers.  Pages 1 and 2 of Exhibit 5 show Google ads next to P10 Images on the Google hosted website alltolls.blogspot.com.  This website has infringed at least 2,300 P10 Images.  In Exhibit 9, the disk, I have included examples of more than two thousand P10 Images infringed by this website in a folder labeled "ads on blogspot.com sites," in the subfolder alltolls.blogspot.com, should the Court wish to see further evidence.   Pages 3 and 4 of Exhibit 5 show Google ads next to P10 Images on the Google-hosted website beautiwhores.blogspot.com.  In Exhibit 9, the disk, I have included examples of more than one thousand P10 Images infringed by this website in a folder labeled "ads on blogspot.com sites," in the subfolder, "beautywhores.blogspot.com."  Pages 5-8 of Exhibit 5 provide other examples of google ads placed next to P10 Images on web pages hosted by Google.  On page 9 of Exhibit 5, I have placed a green checkmark by a Perfect 10 copyrighted image of Natalia Sirocka, one of the twelve images in "The Sample."  Page 9 shows that Google was still hosting this infringing P10 Image and still placing Google ads next to it as of April 10, 2008.  I first sent a notice regarding this image being infringed by lingeriedreams.blogspot.com to Google on April 11, 2005, thinking that blogspot.com was just another third party website. Pages 10 and 11 of Exhibit 5 display unauthorized perfect10.com passwords on the Google hosted websites wa-r-ez.blogspot.com and yourlibe92s.blogspot.com, which I print-screened on October 29, 2008.  Page 12 of Exhibit 5 shows Google ads on the

website forum.turkgate.com, near unauthorized passwords to perfect10.com.  I print-screened that document on December 24, 2005.  Google has never asked for permission or offered to pay Perfect 10 anything for the commercial use of Perfect 10's copyrighted works.

13.     Attached as pages 1 and 2 of Exhibit 6 are examples of Google ads next to  P10 Images of Zita Gorocs (Gorog) and Talia Harvalik on the massive infringing website imagerise.com which I printed from the Internet in September of 2008.  Both images are from the twelve images in "The Sample."  I have attached thousands of P10 Images infringed by the web site imagerise.com in Perfect 10's March 17, 2008 and July 9, 2008 DMCA notices to Google.  In Exhibit 9 (the disk), I have placed examples of Google ads next to more than 1,800 P10 Images on the website imagerise.com in a folder labeled "imagerise.com google ads."   Most of those P10 Images display Perfect 10 copyright notices, as on page 1 of Exhibit 6.  I printed page 3 of Exhibit 6 from the Internet on July 6, 2007, and page 4 of Exhibit 6 from the Internet on October 31, 2008.  Both pages show Google ads on the massive infringing website imagevenue.com.  I have sent to Google at least ten thousand images infringed by the website imagevenue.com in my DMCA notices since June 28, 2007.  Most of those images displayed Perfect 10 copyright notices, as on page 3 of Exhibit 6.  I have found hundreds of infringing websites on which Google has placed ads next to infringing P10 Images without asking Perfect 10 for permission or offering to pay Perfect 10 anything.

**MASSIVE INFRINGERS RAPIDSHARE.COM AND THEPIRATEBAY.ORG**

14.     Attached as page 1 of Exhibit 7 is an article I printed from zeropaid.com on November 2, 2008.  Its title includes the phrase, "Rapidshare.de Reborn as Rapidshare.com."  It states,

> "… the bandwidth costs were recovered by showing Google Ads on pages that had links to download content off the Rapidshare servers.  However, very recently, Rapidshare.de domain was banned by Adsense since it was primarily used for sharing bulk of illegal content including warez, pirated movies, MP3 songs, etc. …. *Now that Rapidshare.de has moved to*

*Rapidshare.com, this new domain is already qualified to show Ads by Google.*" (Emphasis added.)

Pages 2 and 3 of Exhibit 7 are an article from whatsrapidshare.com which I printed from that website on November 1, 2008. It says,

> "More simply all this means is that Rapidshare has a bunch of these servers; these servers are loaded with anything and everything you could ever think of. Every game, every program/application, *every movie, every song,* every e-book, literally anything that can be stored on a hard drive, you can find on the Rapidshare servers. … I'm talking *downloading full DVD quality movies in a matter of 10-20 minutes.* … It ranks as one of the most visited websites in the world … *You will never buy another program, game, or music album every again."* (Emphasis added.)

I printed page 4 of Exhibit 7 on January 25, 2008. It shows Google ads next to rapidshare.com links on the website rapidshare1.com. I printed page 5 of Exhibit 7 on November 1, 2008. It states that rapidshare1.com is "powered by Google." I printed page 6 on November 2, 2008. It states that rapidshare-searcher.com is "powered by Google." I printed pages 7 and 8 of Exhibit 7 on November 11, 2007. They show Google ads next to rapidshare.com links on the website rapidlibrary.com. I printed pages 9 and 10 of Exhibit 7 on February 12, 2006 and January 31, 2006 respectively. Page 9 shows Google ads on the website rapidshare.de (which has infringed thousands of P10 Images). One of the Google Ads near the bottom states, "Free – Music Downloads – 19 Billion Songs, Fast Downloads No Download Fees, Find Any Song!" I printed page 10 of Exhibit 7 from google.com. It is entitled "Advertise on rapidshare.de." Below that, it states, "Rapidshare, the world's biggest (over 10 million files uploaded!) and fastest (16 Gigabit/s up/down!) 1-click file-hoster. Burning the net with 200 Terabytes of hard-drive capacity right now and growing! Millions of users can't be wrong." In the middle of the page, it states, "Google AdWords is a robust advertising program that connects your ads with customers *on this site* and across the web. Use AdWords to target your ads to this specific site …" (Emphasis added.) I printed page 11 of Exhibit 7 on October 31, 2008, from the website google.com. It contains a search box labeled www.rapidshare.com and "Google Custom Search." I printed page 12 of Exhibit 7 on October 31, 2008. I have

been able to download hundreds of P10 Images from the google hosted website celebrity-inc.blogspot.com by clicking on various images of Luba Shumeyko shown on that page, which are linked to rapidshare.com. On the right, under "Labels," are listed various celebrities whose images are offered by this site, including Adriana Lima, Alyssa Milano, Angelina Jolie, Anna Kournikova, Ashlee Simpson, and Beyonce, among others. I printed page 13 of Exhibit 7 on October 31, 2008. It shows that rapidshare.com, according to alexa.com, is currently the 12th most visited website on the Internet. Attached as page 14 of Exhibit 7 is an article from the Wall Street Journal on April 18, 2009, entitled "Four Guilty in Web Piracy Case." It states, "Four men behind the site, called the Pirate Bay, were sentenced to a year in jail and ordered to pay 31 million Swedish kronor ($3.7 million) in damages to artists." Attached as page 15 of Exhibit 7 is an article I printed from the Financial Times website on April 20, 2009. It states, 'The defendants claimed they could not be held responsible since no copyrighted material is stored on their servers and no exchange of files takes place there." Perfect 10 has downloaded approximately 4,000 P10 Images offered by thepiratebay.org, as opposed to approximately 26,000 P10 Images which Perfect 10 downloaded from rapidshare.com and sent to Google in its DMCA notices. Based on my experience with giganews.com, rapidshare.com, and thepiratebay.org, I believe that both giganews.com and rapidshare.com are substantially larger infringers than thepiratebay.org. They have certainly infringed substantially more P10 Images that I am aware of. Even after the operators of the website thepiratebay.org were sentenced to one year in jail for copyright infringement, and even after Perfect 10 sent to Google 4,000 P10 Images downloaded from thepiratebay.org in a April 24, 2009 DMCA notice, Google continued to provide more than 8.8 million links to that website. (See page 16 of Exhibit 7, which I printed from google.com on May 4, 2009). Google has also copied P10 Images from thepiratebay.org into its Image Search results.

/////////

/////////

**HISTORY OF PERFECT 10 DMCA NOTICES**

15.     Perfect 10 first began to send to Google notices of infringement in May of 2001. These notices not only identified the infringing URLs where Perfect 10 copyrighted images could be found, they also included, in a number of cases, copies of the actual infringing images on the actual infringing web pages. These notices concerned only infringements found on third party websites located through Google Web Search, as I was not aware of Google Image Search until May of 2004.

16.     Attached as pages 1-4 of Exhibit 8 is a notice that Perfect 10 sent to Google and Yahoo! on May 21, 2001. One of the URLs identified in the notice was *http://www.celebritypictures.com/MayaRubin/maya1.htm.* On page 4 of Exhibit 8, as part of the May 21, 2001 notice, Perfect 10 provided that same URL below Perfect 10 copyrighted images of Maya Rubin. Page 5 of Exhibit 8 shows that Google was still linking to that infringing web page, on September 10, 2004 more than three years later. The P10 Image of Maya Rubin which I have placed green checkmarks by on page 4 of Exhibit 8, is part of the twelve P10 Images making up "The Sample."

17.     On June 27, 2001, after Perfect 10 had sent Google at least 14 notices, Perfect 10 received an email from Google, which is attached hereto as Exhibit 10. This email states,

> "*there is nothing that Google can do to remove the offending content without the cooperation of the site administrator…. Even if we were able to eliminate the offending page from our index, it would still be on the Web. Every few weeks our robots sweep the Web for content. If the site is still available on the web when we crawl, we will likely pick it up and add it to our index again.* Only an administrator can, by including code that blocks our robots or placing a request with us, prevent his/her page from being listed. *Without administrator cooperation we cannot exclude material available on the Internet from our index*" (emphasis added).

18.     Upon receiving this email, and after a few more emails back and forth between Google and Perfect 10, it appeared Google was either incapable or unwilling to do anything.

19.     In response to an order by the Court to produce all of the notices of infringement it received from 2001, Google produced only one document from 2001,

one of Perfect 10's notices. It did not produce any of Perfect 10's other fifteen notices or any notices it received from third parties. Google has not produced to Perfect 10 a DMCA log in *spreadsheet form*, as ordered by Judge Matz on May 13, 2008. (Order on Google's Objections to Magistrate Judge's Order Of February 22, 2008, page 5 lines 1-9 (Docket No. 294).) Google has not even produced to Perfect 10 a complete list of the URLs that Perfect 10 identified to it, and what it did in response, and when. What Google has produced to Perfect 10 is a disorganized collection of notices, which do not appear to be in any order. In some cases, Google produced six copies of the same notice, spread among thousands of pages of documents. I could not tell, by looking at the notices produced by Google, whether Google removed links in response to those notices, or when. I also could not tell, in most cases, who the alleged infringer was. As far as I could determine, Google did not even keep any records of notices prior to March 13, 2002.

20. In May of 2004, I discovered for the first time that Google was displaying thousands of Perfect 10 copyrighted images via Google's Image Search. In response, I resumed sending notices of infringement to Google on May 31, 2004.

21. In my notices to Google which I sent starting on May 31, 2004, I used the contact information that Google provided to the Copyright Office. Attached hereto as page 1 of Exhibit 11 is the document I printed from the U.S. Copyright Office website (copyright.gov) showing the email address for copyright notifications to Google as legal@google.com and the fax number for such notifications as 650-618-1499. In May 2005, I noticed that Google changed its listing with the Copyright Office. Page 2 of Exhibit 11 contains a copy of that document, which I printed in May 2005 from the Copyright Office website. I have checked the government Copyright Office website that contains the directory of designated agents, http://www.copyright.gov/onlinesp/list/index.html, in 2009 for separate listings for Blogger, AdSense, and some of Google's other programs. I have only seen one agent listed for Google, to whom I have sent all of my notices. As of July 5, 2009, there is no separate listing for blogger

or blogger.com, or for Google AdSense.

22.     I have included in Exhibit 9, a disk, in a folder entitled "DMCA notices," most of the DMCA notices that I sent to Google (excluding any attached disks) from May of 2004 onward. I have also included most of the notices Perfect 10 sent to Google in 2001. Also contained in Exhibit 9 are some of the notices that Perfect 10 sent to Amazon and AOL, which were forwarded to Google. In total, Perfect 10 has sent to Google directly, more than 68 DMCA notices. Each such notice was sent by fax, email, and/or Federal Express, using the contact information which Google listed at the Copyright Office. Perfect 10 has also sent to AOL, Comcast, Earthlink.net, and Amazon.com, at least twenty additional notices in total. Each of these search engines has stated that they use Google for some or most of their search results.

**PERFECT 10'S SPREADSHEET STYLE NOTICES WERE CREATED BY FOLLOWING GOOGLE'S INSTRUCTIONS**

23.     After I sent Perfect 10's May 31, 2004 notice to Google, I received instructions from Google which are attached as Exhibit 12. In these instructions, Google states:

> "FOR WEB SEARCH, YOU MUST IDENTIFY EACH SEARCH RESULT THAT DIRECTLY LINKS TO A WEBPAGE THAT ALLEGEDLY CONTAINS INFRINGING MATERIAL. This requires you to provide a) the search query that you used, and b) the URL for each allegedly infringing search result. Note that the *URL for each search result appears in green at the end of the description for that search result*." (Emphasis added.)

Google's instructions do not mention Image Search. This made sense to me because it should only be necessary to identify the URL of the infringing web page, for both Web Search and Image Search. Once that URL is identified, Google can search its Web Search results and Image Search results, and remove any links to that infringing web page. In the case of Image Search, this would mean that Google would remove any thumbnails that were created from images on that web page, which would necessarily be in-line linked back to that infringing web page. Another way of saying this, is that once that URL is added to Google's "blocked URL" list, Google would stop linking to

that web page via either its Image Search or its Web Search results.

24.    Attached hereto as Exhibit 13 is the copyright portion of a notice which I emailed to legal@google.com on January 3, 2005.  I followed Google's instructions in creating this notice.  In the spreadsheet section (pages 5-10), for the URL in the left column, I cut and pasted the URL at the end of the Google search result as Google indicated.  I excluded the starting www. or http:// so that the URLs could be automatically sorted by the Excel spreadsheet program.  For the middle column, I included the search term, which usually (but not always) matched the name of the model depicted in the infringed image.  For the right column, I put the volume, issue, and the page numbers of Perfect 10 Magazine containing the images being infringed.[2] Subsequent notices, attached in Exhibit 9 (the disk) in the "DMCA notices" folder, with the exception of my December 8, 2005 notice, and my notices from June 28, 2007 onward, were organized in a similar fashion.   In total, I have sent at least 56 DMCA notices directly to Google since May 31, 2004, most of which were spreadsheet style notices.

**GOOGLE DID NOT SUGGEST THAT THERE WERE ANY DEFICIENCIES IN PERFECT 10'S URLS**

25.    In response to Perfect 10's initial notices, Google did not suggest that there were any deficiencies in the URLs in those notices.  Google did not ask Perfect 10 to send image URLs, rather than web page URLs.   In fact, Google has admittedly processed some of Perfect 10's notices which are similar to ones which Google has refused to process.  See Exhibit 45.

**GOOGLE ADMITTEDLY DID NOT PROCESS HUNDREDS OF URL'S IN PERFECT 10'S NOTICES FOR BETWEEN FOUR AND SEVENTEEN MONTHS**

26.    Between May 31, 2004 and June 19, 2005, I sent Google 34 notices of

---

[2]  For infringements of Amy Weber images which Perfect 10 had purchased from her, I listed her website, amyweber.net.

infringement, which identified to Google over 6,500 URLs of infringing web pages containing P10 Images linked to by Google.  As far as I can tell (and Google never informed me otherwise), Google did absolutely nothing in response to Perfect 10's May 2004 – July 19, 2004 notices until approximately October 10, 2004, after Perfect 10 sent to Google a draft complaint in an attempt to settle the matter prior to litigation. Attached as Exhibit 14 are twenty-seven pages from the Sur-Reply Declaration of Alexander Macgillivray in Support of Google's Opposition to Plaintiff's Motion for Preliminary Injunction (Placed in File – Not Used on 11/07/2005, following Docket No. 74).  I have provided the entire list of URLs from that declaration in Exhibit 9 (the disk), in a folder entitled "Macgillivray surreply."  On page 3 of Mr. Macgillivray's declaration, he states,

> 6.  The first column titled "Notice Date" indicates the date on which Perfect 10 claims to have notified Google of the allegedly infringing URL in question.

> 7.  The second column titled "URL" shows the allegedly infringing URL in the form that Perfect 10 provided in its notices to Google.  …

> 9.  Beginning with Perfect 10's notice dated October 11, 2004, Google typically fully processed Perfect 10's notices to suppress appropriate URLs within two weeks of receipt, often within one week.

Mr. Macgillivray, Google's Senior Product and Intellectual Property Counsel, makes a number of excuses for why Google took so long, in some cases, to process Perfect 10's notices.  One of them, which is demonstrably incorrect, is that Google had to hand type in the URLs.  (Page 3, line 11.)  I sent Google all of the URLs they asked for *in electronic format*, including my July 19, 2004 notice, which contained *all* the URLs in the prior notices Perfect 10 sent to Google from May 31, 2004 through July 11, 2004. Furthermore, there are fax machines available which convert faxes into electronic documents.  If Google was concerned about hand typing URLs from faxes, it should not have *insisted that copyright holders fax or mail, rather than email, their notices.* See Exhibit 12.  Furthermore, Mr. Macgillivray claims in his declaration that I should have identified specific infringing .jpg files, but nowhere in Google's instructions

(attached as Exhibit 12) did it state that. I did, however, include in Perfect 10's July 19, 2004 DMCA notice hundreds of images ending in jpg., which Google did not remove for months also, and which Mr. Macgillivray did not even list in his sur-reply declaration. Attached as page 28 of Exhibit 14 are examples of such image URLs from Perfect 10's July 19, 2004 notice which I have highlighted in yellow. The entire July 19, 2004 notice is contained in Exhibit 9 (the disk) in the folder labeled "DMCA notices." Google's instructions asked for the URL that Google placed at the end of each of its web search results, which typically end in .htm or .html, rather than .jpg. I followed Google's instructions and that is exactly what I provided to Google in the notices. For example, all of the URLs in Exhibit 20 end in .htm. Pages 7 through 11 of Exhibit 14 show that Google did not remove any of the URLs listed on those pages prior to October 11, 2004. I have placed 182 pages of URLs from Mr. Macgillivray's surreply declaration in Exhibit 9, the disk, in a folder entitled "Macgillivray surreply." I have placed green check marks next to URLs on page 7 of Exhibit 14 which Google admittedly did not remove until November 3, 2005, ***over seventeen months after receiving notice***. (Compare the first column of Mr. Macgillivray's chart which shows the date that Google admittedly received notice from Perfect 10, with the last column which is the date that Google claims it removed the link.) The last two checked entries on page 7 of Exhibit 14 involve URLs ending in .jpg. Pages 15 through 27 of Exhibit 14 contain additional examples of URLs that Google admittedly took from *six to ten months* to remove. I have highlighted on page 9 of Exhibit 14 URLs ending in .jpg which Google admittedly did not remove at all. Mr. Macgillivray's surreply declaration also fails to list several hundred URLs ending in .jpg that I included in my July 19, 2004 DMCA notice to Google. I cut and pasted those URLs directly from Google's Image Search results. Also, in a number of cases, Google's claim that it removed a URL is contradicted by click data provided by Google indicating that Google users were still clicking on P10 Images months after Google claimed they had been removed. In Exhibit 9 (the disk), in a folder labeled "clicks on images claimed

removed," I have placed an example of this. The file shows the image URL vamp.dk/Vibe_Sorenson/VibeSorenson007.jpg from Perfect 10's March 6, 2005 notice, which Google claims it removed on November 5, 2004, before even receiving the notice. The second file, produced by Google, shows that Google users were clicking on this same image in Google's Image Search results as late as December 2005, more than a year after Google claims it removed the image. Attached as page 29 of Exhibit 14 is a page from Alexander MacGillivray's Declaration in support of Google's opposition to Perfect 10's motion for preliminary injunction, dated September 26, 2005. It states, "Google receives thousands of inquiries daily concerning search results, including notices about search results that link to allegedly improper content." It further states, "If a notice does not contain enough information for Google to process, or if it otherwise fails the requirements of 17 U.S.C. § 512(c)(3), but contains contact information for the sender, Google's staff will typically email the sender requesting additional information." I have reviewed the notices produced by Google to Perfect 10 in discovery. I have been able to find less than 1,000 such notices dated prior to September 26, 2005.

**EVEN THOUGH GOOGLE REMOVED SOME INFRINGING WEB SEARCH LINKS, IT DID NOT REMOVE CORRESPONDING INFRINGING IMAGE SEARCH LINKS**

27. Even though on or about October 11, 2004, Google began to belatedly remove some links to infringing web pages in its Web Search results (in response to Perfect 10's notices), Google continued to link to those same infringing web pages via its Image Search results. Attached as Exhibit 15 are three pages of the output of a computer program which Perfect 10 commissioned Sean Chumura to write, to organize the thumbnails of its models which Google displayed in Google Image Search results. I generated the pages shown in Exhibit 15 by using the program to do Google Image Searches on "Monika Zsibrita" and "Vibe Sorenson" on December 12, 2005. The program was written to show the thumbnail Google displayed along with the URLs for

the links that Google included with that thumbnail. The links the program displays are a) Google's "see full-size image" link (in green after "Image"), Google's in-line link (in blue after "Site"), and Google's link to its thumbnail (in green at the bottom after "Thumbnail"). The first highlighted link on page 1 of Exhibit 15, namely, *http://pix.alronix.net/Photo_Scans/Tits/Monika_Zsibrita/pic00076.htm*, matches the first highlighted link on page 7 of Exhibit 14, which Google claimed it removed on October 11, 2004. That web page contains "The Sample" image Monika Zsibrita 2. Google may have removed that link from Google's Web Search results on October 11, 2004 as it claims. But page 1 of Exhibit 15 shows that Google was continuing to link to that infringing web page via Google's Image Search results, as late as December 15, 2005. As further examples of Google's failure to stop linking to infringing web pages identified in Perfect 10's notices, the highlighted link on page 8 of Exhibit 14, namely, *http://beautifulwallpaper.com/monika_zsibrita.shtml*, matches the second highlighted link on page 1 of Exhibit 15. This means that Google was continuing to link to that infringing web page via its Image Search results, as late as December 15, 2005. That infringing web page contains "The Sample" image "Monika Zsibrita 1." The highlighted link on page 10 of Exhibit 14, namely, *http://web.tiscali.it/raskz/donne/ giugno.htm*, matches the highlighted link on page 2 of Exhibit 15. That infringing web page contains "The Sample" image "Vibe Sorenson 1." The highlighted link on page 13 of Exhibit 14, namely, *http://www.3thehardway.nl /images/spec_galleryvibe_ sorenson/pages/ vibe_sorenson006.html* similarly matches the highlighted link on page 3 of Exhibit 15. In a folder labeled "image search still up 121215," in Exhibit 9 (the disk), I have placed hundreds of additional examples of Google linking P10 thumbnails to infringing web pages anywhere from six months to as many as seventeen months after Google received notice from Perfect 10. I have also summarized those examples in the spreadsheet I created shown in Exhibit 16, which shows that at least 558 P10 thumbnails were linked to identified infringing web pages by Google, after Google allegedly removed its Web Search links to those web pages. This spreadsheet was

based on Exhibit 81 to my declaration in support of motion for Preliminary Injunction in this matter, and shows the URL which Perfect 10 identified to Google in the left column. The second column gives the search term which was also the name of the model in the infringed image. The third column from the right gives the date of the Perfect 10 notice. The right-most column gives the date Google was still linking to the identified infringing web page via its Image Search results. For example, the checked row on page 1 of Exhibit 16 indicates that Perfect 10 gave notice to Google regarding the URL *celebstation.org/ models/monika_zsibrita.php* on June 28, 2004, and that Google was still linking to the infringing web page determined by that URL as of December 12, 2005, more than seventeen months later. That infringing webpage contained "The Sample" image "Monika Zsibrita 1."

28.     In many cases, web pages identified in Perfect 10 notices were also included as exhibits in Perfect 10's motion for preliminary injunction, so that if Google had some problem with the original notice at the time it was sent (which Google never told me it had), it had an opportunity to see the actual infringing web page as well. Nevertheless, Google still did not remove the infringing material. Attached as page 1 of Exhibit 17 is a copy of an Exhibit from Perfect 10's motion for preliminary injunction. I placed my cursor over the link in blue to show the full URL, which matches the URL *3thehardway.nl/images/spec_gallery/vibe_sorenson/pages/ vibe_sorenson006.html* in Perfect 10's January 3, 2005 notice, Exhibit 13. Attached as page 2 of Exhibit 17 is the same page which Google was still in-line linking to as of January 17, 2006, despite Perfect 10's DMCA notice of January 3, 2005, and Perfect 10's inclusion of that page as an exhibit in its motion. In fact, this page was attached as Exhibit A to the District Court's ruling on the motion for preliminary injunction. *Perfect 10 v. Google,* 416 F.Supp.2d at 860.   Page 3 of Exhibit 17, shows that Google was still linking to the web page *web.tiscali.it/raskz/donne/giugno.htm* on July 9, 2006. (Page 3 of Exhibit 17 contains "The Sample" image "Vibe Sorenson 1.")  Page 4 of Exhibit 17 shows that Google was displaying the same image with the same pixel

dimensions (633 x 884 pixels) on June 28, 2009, just from a slightly different URL (tiscalinet.it instead of tiscali.it). Google has displayed this same infringing P10 Image, over and over, in its Image Search results, from different URLs. Page 5 of Exhibit 17 shows that Google was still linking to the web page *celebritybattles.com/celeb/Monika+Zsibrita* on July 9, 2006. (This page contains "The Sample" image "Monika Zsibrita 1.") Page 6 of Exhibit 17 show that Google was still linking to the infringing URL *akty.cz/kategorie.asp?id=4* on November 10, 2006, almost two and a half years after receiving notice on June 28, 2004 (see page 11 of Exhibit 14).

**URLS IN NOTICES SENT TO AMAZON WHICH GOOGLE DID NOT PROCESS**

29.     In addition to sending notices directly to Google, I also sent seven notices to Amazon, between November 15, 2004 and April 3, 2005. Amazon has claimed that its A9.com search engine results were provided by Google at that time. Attached hereto as Exhibit 18 is a letter which Perfect 10 received from Amazon dated April 8th, 2005, which states "we have discussed the matter with Google and forwarded your correspondence to them for appropriate handling."

30.     Attached as Exhibit 19 is a notice I sent to Amazon on January 21, 2005 which Amazon claims it forwarded to Google.

31.     Attached as Exhibit 20 are Google search results which I printed out on May 20, 2009 from google.com. I have highlighted the links in those search results which correspond to the infringing web pages which Perfect 10 identified in its January 21, 2005 notice to Amazon, Exhibit 19. Exhibit 20 shows that Google has not removed those infringing links after more than three years. To demonstrate the sufficiency of the URLs contained in Perfect 10's notices, I inputted the URLs in Perfect 10's notice to Amazon into the Google search box. Pages 1 through 4 of Exhibit 20 were obtained in this fashion. This procedure turned up exactly one result in each case, which matched the infringing web page for which Perfect 10 gave notice.

I have attached as pages 5-7 of Exhibit 20 the results from clicking on three of the four links. The images in pages 5-7 of Exhibit 20 are both in "The Sample."

32.     On December 9, 2005, I sent to Google thousands of actual copies of full-size P10 Images offered by some of Google's Adwords affiliates, which I refer to as "paysites," "usenet sites" or "download sites." I included in this notice examples of full-size P10 Images infringed by, among others, the Google Adwords affiliates, giganews.com, newsdemon.com, and thundernews.com. Each of these sites has stolen in excess of 15,000 P10 Images, worth millions of dollars to Perfect 10, along with billions of dollars in stolen full length movies and songs. Attached as page 1 of Exhibit 21 is the written portion of my notice. Attached as page 2 of Exhibit 21 is a print-screen showing the folders on the disk attached to that notice. Attached as pages 3 and 4 of Exhibit 21 are samples of P10 Images included in that notice from the website rapidshare.de.

**PERFECT 10 BEGAN SENDING ACTUAL INFRINGING IMAGES WITH URLS IN JUNE OF 2007 FOR INFRINGING FREE WEBSITES**

33.     On June 28, 2007, even though it was not necessary to do so, Perfect 10 decided to improve on its notification procedure for infringing free websites, by *sending copies of the actual infringing web pages*. This provided Google with not only the infringing URLs (which were at the bottom of each web page), but copies of the infringed/infringing images as well. For pay sites, Perfect 10 provided copies of the infringed images, as well as the homepage URL of the infringing website, as images are typically downloaded from such sites and there are no web pages, per se, on which the infringed images reside. Perfect 10 began including actual copies of infringing web pages in its notices for several reasons. First, even though I followed Google's instructions in creating Perfect 10's spreadsheet type notices, which I sent to Google from May 31, 2004 to April 24, 2007, and even though Google was able to remove links from its search results based on those notices, Google still claimed the notices were deficient because images were not attached. Secondly, Google claimed that the

starting http:// was needed in the URL, which I have already shown is not correct. See Exhibit 20. Sending copies of the actual infringing webpage should have addressed both complaints, since Google received a complete URL starting with an http:// at the bottom of each page, along with a copy of the infringed and infringing image. Finally, because Google continued to publish Perfect 10's spreadsheet type notices on chillingeffects.org for the world to see, despite our repeated objections, Perfect 10 could not continue to send spreadsheet type notices. See Paragraph 64, Exh. 48 below.

**PERFECT 10'S JUNE 28, 2007 NOTICE – PAY SITES**

34.     The written portion of Perfect 10's June 28, 2007 notice to Google, which had one minor correction on it and was resent to Google on June 28, 2007, is attached as Exhibit 22. I will refer to this notice as Perfect 10's June 28, 2007 notice. On page 1 of Exhibit 22, I state, "Accompanying this notice is a hard drive which contains approximately 1,100,000 infringements of Perfect 10 copyrighted images that are offered by *infringing websites from which Google accepts advertising and/or to which Google links.*" (Emphasis added). The notice was divided into two sections, one for infringing pay sites and one for infringing free sites. The sites listed on page 5, which I also call "Usenet sites," or "download sites," are pay sites which offer billions of dollars of stolen movies, songs, and images, including more than 15,000 full-size Perfect 10 copyrighted images on average. The user pays a monthly fee of between $10 and $20 a month, does a search on a movie, song title, or model name, and can download the movie, song, or images onto his computer. There are no web pages containing the infringing material in most of these websites. I have personally downloaded P10 Images from each and every one of these websites and have examined these websites in detail. These websites also offer the opportunity to download full length movies and songs. The various infringing Usenet sites appear to offer the exact same P10 images with the same group descriptions, such as "Your P10 Gallery." I have found that groups of P10 Images are offered for a few months, removed for a few months, and then offered again. *See Chou Decl.* Most of the P10

Images offered by these websites contain Perfect 10 copyright notices. In the middle column of page 5 of Exhibit 22 (the first page of the spreadsheet) is the approximate number of infringing Perfect 10 copyrighted images that I included in the hard drive from each infringing paysite. For example, the highlighted entry on page 5 indicates that Perfect 10 included approximately 15,869 full-size P10 images from the infringing website giganews.com in disks attached to its DMCA notice. Pages 10 to 16 of Exhibit 22 contain a list of approximately 300 pirated full-length films and TV shows offered by such sites, which I sent to Google along with the June 28, 2007 notice. Those films and TV shows include "Spiderman 3," "King Kong," and the "Sopranos."

35. Exhibit 23 provides 3 images from "The Sample" that were included in Perfect 10's June 28, 2007 notice to Google in the folder for its infringing advertising affiliate, giganews.com. The images shown in Exhibit 23 are not on a web page. The user downloads such images into their computer. I explained to Google in my notices how Google could find the infringing P10 Images by searching on "P10," the model name, or some combination involving P10, such as "P10 2007." However, Google did not need to find the images, as I included them with my notice. Google also did not need to look through all 1.1 million images to realize that such sites were massive infringers that Google should stop doing business with or promoting in any way. As can be seen, the infringing images in Exhibit 23 all display Perfect 10 copyright notices.

36. Usenet sites steal billions of dollars of full-length movies and most popular songs, as well as tens of thousands of Perfect 10 images. I have attached as pages 1-2 of Exhibit 24 a list of some of the songs that are available for downloading from Giganews.com. These were included in Perfect 10's June 28, 2007 notice. Among the listed songs are songs sung by Christina Aguilera, The Beatles, Jennifer Lopez, Frank Sinatra, Bob Dylan, Van Morrison, Kelly Clarkson, Sublime, Beyonce, Gwen Stefani, Andrea Bocelli, Black Eyed Peas, and Red Hot Chili Peppers. Page 3 of Exhibit 24 contains an example of what appeared on my screen when I downloaded

P10 Images from giganews.com. The infringing P10 Images are offered in groups. Page 3 shows that the following groups of infringing P10 Images were made available for download, from the website Giganews.com (see the upper left of the exhibit): "Some of your P10Gallery cd01 fills (part1);" "Your P10 related ROM fills;" "Some of your P10Gallery cd01 fills (part2);" "Your P10_2002 fills;" "Your P10_2006 Fills." I was able to download hundreds of P10 Images from each such group of P10 images. Pages 4 through 15 of Exhibit 24 show some examples of what appeared on my screen when I did searches for songs and movies to download. Pages 4 through 11 of Exhibit 24 show songs offered for download by Van Morrison, Bacharach and David, The Eagles, Fleetwood Mac, Mariah Carey, The Rolling Stones, Sarah Brightman, and Christina Aguilera. I tried to highlight the groups as best as I could. Pages 12 through 15 show that the following movies were offered for download: X-Men, Crash, Pirates of the Caribbean 2, and The Da Vinci Code.

37.      Pages 1 through 4 of Exhibit 25 show that as of November 28, 2008, Google was continuing to both link to and display ads for the following usenet sites (pay sites) listed on pages 5 and 6 of Exhibit 22: Giganews.com, UsenetBinaries.com, maximumusenet.com, NewsReader.com, NewsDemon.com, Thundernews.com, powerusenet.com, NewsRazor.net, megabitz.net, alibis.com, Ngroups.Net, diiva.com, rhinonewsgroups.com, Easynews.com, news.astraweb.com, TigerUsenet.com, supernews.com, usenet-access.com, newsgroups-download.com, newsgroup-binaries.com, and NewsHosting.com. Perfect 10 sent to Google over 300,000 copies of full-size P10 Images infringed by those websites in its June 28, 2007 notice (Exhibit 22). Nevertheless, Google continued to link to and display ads (sponsored links) for such massive thieves of Perfect 10's property. Pages 5 and 6 of Exhibit 25 show that as of October 30, 2008, Google was also providing as many as 56,000 regular search result links to easynews.com, and as many as 12,200 regular search result links to giganews.com. Page 7 of Exhibit 25 shows that Google was providing as many as 204,000 regular links to rapidshare.com, another massive infringing website which was

listed on page 5 of Perfect 10's June 28, 2007 notice to Google.

**PERFECT 10'S JUNE 28, 2007 NOTICE – FREE SITES**

38.     The lower portion of page 6 and pages 7-9 of Exhibit 22,  provides a list of infringing websites that offer full-size P10 images for free.  For those websites, in its notice, Perfect 10 provided not only the URL of the infringing web page, but also copies of the infringing Perfect 10 copyrighted image(s) on that webpage.  Essentially, instead of sending an excel spreadsheet consisting of URLs identifying infringing web pages, Perfect 10 started sending copies of the actual infringing web pages, which contained both the infringing URL as well as the infringing images.  These web pages were arranged either by infringing website or by model.  Images were put in folders labeled primarily "ALL ARE P10," or "CHECKED OR LARGE ARE P10."  For the "ALL ARE P10" folders, I spent a substantial amount of time and effort to make sure that all images in those folders that did not have red X's over them, were part of advertising banners, or otherwise were obviously not P10 images, were copyrighted by Perfect 10.  For the "CHECKED OR LARGE ARE P10" folder, I placed green check marks next to smaller images to identify them as P10 copyrighted images, or expanded them to full-size.  I put red X's over large images that were not copyrighted by Perfect 10.  All of this was explained in the notice.  See pages 2-3 of Exhibit 22.

39.     Attached as Exhibit 26 are five examples of infringing Google cached web pages that I sent to Google in Perfect 10's June 28, 2007 notice.  Those examples appear at pages 1, 3, 5, 7, and 9 of Exhibit 26.  Each example shows the Google cache link, which I have highlighted for the purpose of this exhibit.  The Google cache link matches the full URL of the infringing web page, and shows that Google was directly linking to that infringing web page in its web search results on that date.  For pages 2, 4, 6, 8, and 10, I have attached similar pages which I printed on October 28, 2008 showing the same Google cache links and showing that Google had still not removed those infringing links more than a year after receiving notice.  All of the images in Exhibit 26 were identified as being copyrighted by Perfect 10, because they were

contained in a folder labeled "ALL LARGE ARE P10," in a subfolder labeled "monitor.hr". Pages 3 and 7 of Exhibit 26 are "The Sample" images "Zoya Konyieva 1" and "Talia Harvalik 1," respectively. I have observed situations where the underlying web site is down but I was still able to view and download infringing P10 Images via the Google cache link for that website.

**GOOGLE CONTINUES TO STORE THOUSANDS OF FULL-SIZE P10 IMAGES ON ITS BLOGGER.COM SERVERS DESPITE REPEATED NOTICE**

40.     As part of Perfect 10's July 2, 2007 DMCA notice, I included a number of examples of Google's hosting of blogspot sites that infringed P10 Images, as well as examples of Google's storage of full-size P10 Images on its blogger.com servers. Attached as Exhibit 27 is a copy of Perfect 10's July 2, 2007 notice, excluding the attached disks.

41.     Attached as Exhibit 28 are Perfect 10 copyrighted images of Zita Gorocs (Gorog), a famous Hungarian actress, that I included in a folder for that model in my July 2, 2007 notice to Google. I indicated that all large images in the folder were copyrighted by Perfect 10. The first six images in Exhibit 28 are from the Google hosted website, *machpex-photo.blogspot.com*. The highlighted URL at the bottom of each of those pages is what Google calls a "Post URL." I obtained the last five images in Exhibit 28 by clicking on those images. The URLs on the last five images in Exhibit 28 contain the URL blogger.com. Page 5 of Exhibit 28 contains "The Sample" image "Zita Gorocs 1."

42.     I also included the five full-size P10 Images of Zita Gorocs shown on pages 7-11 of Exhibit 28 as Exhibits to my declaration in support of Perfect 10's June 12, 2008 motion to amend its Google complaint. See Docket No. 300, Pages 9-14 of 22. Those images are attached as pages 1-5 of Exhibit 29.

43.     Despite receiving Perfect 10's July 2, 2007 notice, as well as Perfect 10's motion to amend, which was filed on June 12, 2008, Google still did not remove the identified full-size P10 Images from its servers. Attached as Exhibit 30 are the same

images of Zita Gorocs, which I printed from blogger.com on April 3, 2009, showing that Google still had not removed those images from its servers, more than 500 days after receiving the first notice.

44.     Attached as Exhibit 31 are P10 Images of Monika Zsibrita that I included in a folder for that model in my July 2, 2007 notice to Google. I indicated that all large images in that folder were copyrighted by Perfect 10. Page 1 of Exhibit 31 contains a copy of a webpage from the *website tabloidrabies.blogspot.*com which contains seven infringing P10 Images of Monika Zsibrita. Pages 2 through 8 of Exhibit 31 contain full-size P10 Images of Monika Zsibrita from blogger.com. Page 2 of Exhibit 31 contains "The Sample" image "Monika Zsibrita 2."

45.     Attached as Exhibit 32 are copies of the same infringing images of Monika Zsibrita, which I printed from *blogger.com* and *tabloidrabies.blogspot.com* on May 4, 2009, showing that Google still had not removed those images from its servers. I have also attached, as page 9 of Exhibit 32, Google Web Search results I printed on May 4, 2009, showing that Google was continuing to directly link to that same infringing webpage as well.

46.     Attached as Exhibit 33 are copies of P10 Images of Marisa Miller that I included in a folder for that model in my July 2, 2007 notice to Google. I indicated that all large images in that folder were copyrighted by Perfect 10. Page 3 of Exhibit 33 contains "The Sample" image "Marisa Miller 1."

47.     Attached as Exhibit 34 are copies of the same infringing images of Marisa Miller, which I printed from blogger.com on April 3, 2009, showing that Google still had not removed those images from its servers.

48.     A number of the P10 Images which Perfect 10 gave Google notice of in its July 2, 2007 notice, were also attached as exhibits to Perfect 10's motion to amend its complaint, dated June 12, 2008. I have included those images in Exhibit 9, the disk, in a folder labeled "50 blogger images from motion to amend." In particular, all of the images of Zita Gorocs, Monika Zsibrita, and Marisa Miller contained in Exhibits 29,

31, and 33 were also attached to the Zada Declaration in support of Perfect 10's motion to amend. See Docket No. 300. Nevertheless, as shown by Exhibits 30, 32, and 34, Google still did not remove them.

49. I have included in Exhibit 9 (the disk), in a folder labeled "blogger up 51809," more than 3,680 additional examples of Google's storage of full-size P10 Images on its servers, which it has not removed after receiving a copy of the actual infringing web page in a Perfect 10 DMCA notice, showing the full URL as well as the infringing/infringed P10 Image. In the process of my searching for full-size P10 Images stored on Google blogger.com servers, I have found more than 1,000 copies of full-size images of Angelina Jolie, as well as Adriana Lima, that Google stores on its blogger.com servers, along with thousands of additional full-size images of other celebrities. I have also observed that Google ads appear next to thousands of images of major celebrities on websites that infringe Perfect 10 copyrights.

50. Since July 2, 2007, I have sent DMCA notices to Google which identified more than 3800 full-size P10 Images on Google's blogger.com servers. I have verified myself, separate from Sheena Chou (see Chou declaration), that less than 2% of these images were removed. In fact, as of November of 2008, I and other Perfect 10 employees had only found approximately 40 such images that had been removed. As I explained above, I provided Google notice by sending to Google copies of web pages containing the medium to large P10 Images from the blogspot site that Google was hosting, as well as copies of the full-size P10 Images that Google was storing on its blogger.com servers. In most cases, because Perfect 10 provided Google with a copy of the actual infringing web pages on each Google hosted blogspot.com website, Perfect 10 necessarily provided Google with what Google calls the top level domain of the site, the date of the blog, as well as what Google calls the "Post URL." Examples of such "Post URLs" are highlighted on pages 1-6 of Exhibit 28. Perfect 10 also provided Google with the complete URL for the full-size image stored on Google's blogger.com servers. Even in the few cases when the full-size P10 Image disappeared

from a particular blogger.com URL, more often than not, Google still stored an identical image at a slightly different URL.

51. Attached as Exhibit 35 is an example of Google storing multiple copies of the same P10 Image for which it received notice on its blogger.com servers. I sent pages 1 and 2 of Exhibit 35 to Google in my July 2, 2007 notice, in a folder labeled "Alexandra Berejnova." Sometime more than one year after that notice, Google finally removed pages 1 and 2 of Exhibit 35 from its servers. However, pages 3 and 4 of Exhibit 35 show that as of October 27, 2008, Google was still storing two identical full-size P10 images on its servers, at very slightly different URLs, ending in 12.5.jpg and 9.8.jpg, rather than 12.6.jpg and 9.9.jpg. In a number of cases, I have observed that Google is storing the same full-size P10 Image at what are potentially an infinite number of URLs. I obtained page 5 of Exhibit 35, by taking the original blogger URL from page 1 of Exhibit 33, which ended in marisa_miller_21.jpg, and replacing the last portion with GoneWithTheWind.jpg. I obtained page 6 of Exhibit 35, by taking the original blogger URL from page 2 of Exhibit 33, which ended in marisa_miller_23.jpg, and replacing the last portion of it with EyesWideShut.jpg. ***Exhibit 35 indicates that simply supplying the URL of the blogger web page that the copyright holder finds will not be enough to remove all instances of the infringing image from Google's servers, as the same image may be identified by essentially an infinite number of URLs***. I have also noticed that websites that do not appear to be hosted by Google are also displaying P10 Images via in-line linking to P10 Images hosted on Google's blogger.com servers. Attached as page 7 is one such example, which I printed from the website celebtease.com on May 4, 2009.

## GOOGLE CONTINUES TO STORE FULL-SIZE P10 IMAGES ON ITS GOOGLE GROUPS SERVERS DESPITE NOTICE

52. In my July 31, 2007 DMCA notice to Google, I included, in a folder labeled "CHECKED ARE P10," P10 Images that were stored on Google servers via the "Google Groups" program. Attached as page 1 of Exhibit 36 are examples of some

of the checked P10 Images I included in my notice. The notice contained the green check marks. Attached as pages 2-5 of Exhibit 36 are the same images which I printed from Google Groups on October 26, 2008. I have expanded some of them to show that they can be expanded to full-size. Page 3 of Exhibit 36 contains "The Sample" image "Ashley Degenford 1." I have placed in a folder labeled "inaction on Google groups" in the disk, Exhibit 9, thirty-six other examples of Google's failure to respond to notices which contained copies of web pages hosted by Google in Google Groups. That folder contains two subfolders, one marked "notice" showing copies of the infringing web pages sent by Perfect 10 to Google as part of its July 31, 2007 DMCA notice, and the other labeled "still up" showing that Google had not removed those images as of May 4, 2009. As far as I can determine, Google has not removed any of the infringing P10 Images identified to Google on Google Groups servers in less than three months.

**GOOGLE CONTINUES TO DISPLAY IMAGES FOR WHICH IT HAS RECEIVED NOTICE IN ITS IMAGE SEARCH RESULTS**

53.     Attached as Exhibit 37 is the textual portion of my January 24, 2008 DMCA notice to Google. Attached as Exhibit 38 are some examples of P10 thumbnails and infringing P10 Images framed by Google, that I identified to Google in that notice, that Google did not remove as of October 2008. I have arranged the pages of Exhibit 38 so that the first, third, and fifth pages are copies of various portions of my January 24, 2008 notice to Google, and the following pages are printouts showing that Google was still displaying those same images in October 2008, roughly nine months later. Pages 1, 3, and 5 of Exhibit 38 were from "ALL ARE P10" folders, meaning that all the images, unless they are obviously not P10 Images such as images in advertising banners, are copyrighted by Perfect 10. The image URL for the thumbnail on page 1 of Exhibit 38, namely, *af.2i.cz/fotky/597/597_1124101851.jpg*, and the web page URL to which that thumbnail links, namely, *galerie.albumfotek.cz/597/?page=view&foto=26745*, match the image URL and web

page URL shown on page 2 of Exhibit 38, which I printed on October 22, 2008. This means that Google did not remove either the alleged infringing P10 thumbnail or the link to the alleged infringing web page, as of October 22, 2008, even though Google received the notice of infringement with the full URL for both, along with the actual infringing images, almost nine months earlier. The same is true for alleged infringing images on pages 3 and 5 of Exhibit 38. I have also attached as page 7 of Exhibit 38 a portion of Perfect 10's July 9, 2008 notice that I sent to Google which utilized this Court's "check the box" proposal, a proposal which if implemented by Google, would have been enormously helpful and would have made Google's removal of infringing thumbnails straightforward as well. All of the images on page 7 were identified in my January 24, 2008 notice as P10 Images. Each image had next to it, three URLs contained in Google's Image Search results. The first URL listed, which appears after "Image" is the "See full-size image" URL that Google has requested that Perfect 10 provide in Google's recent Image Search instructions. The next URL listed (after "Site"), is the complete web page URL of the infringing web page from which Google obtained the image, and to which Google links the image. The last URL listed (after "Thumbnail"), is the full URL that Google assigned to the thumbnail image. Page 8 of Exhibit 38 shows that as of May 23, 2009, Google had not removed the first two images identified to Google in page 7 of Exhibit 38. When I sent to Microsoft notices similar to those appearing on pages 1, 3, 5, and 7 of Exhibit 38, Microsoft processed them. Google has recently implemented a feature which allows its users to report offensive images but not infringing images. I have catalogued more than *20,000* P10 thumbnails that Google has provided to its users in its Image Search results. Google has stated in its literature on Google Mobile that it has formatted Images so that they could be downloaded onto cell phones.

**GOOGLE CONTINUES TO DISPLAY FULL-SIZE IMAGES FOR WHICH IT HAS RECEIVED NOTICE**

54.    To the best of my recollection, sometime in 2007, Google began

providing instructions for notifying Google of infringing images in its Image Search results. Attached as Exhibit 39 is the relevant portion of Google's instructions. I don't believe they are necessary because providing the webpage URL of the webpage containing the infringing image should suffice, but I followed these instructions anyway, except that in addition to providing the URL which Google requested, I also provided a copy of the infringing image.

55. Attached as page 1 of Exhibit 40 is an image from "The Sample," Vibe Sorenson 1, that I sent to Google as part of Perfect 10's July 9, 2008 DMCA notice. Attached as page 2 of Exhibit 40 is another image from "The Sample," Monika Zsibrita 2, that I sent to Google as part of Perfect 10's December 14, 2007 DMCA notice. I obtained both images by following the instructions provided by Google in Exhibit 39. Following those instructions, I would have obtained the highlighted URLs shown at the top and bottom of pages 1 and 2, without the images. To avoid any possibility that Google would consider the URL by itself to be deficient (as Google did in the past), I sent the image as well. Pages 3 and 4 of Exhibit 40 show that Google did not remove those identified images from its Image Search results as of May 19, 2009. I obtained the URL at the bottom of page 3, which I have checkmarked, by placing my cursor over Google's "See full-size image" link. That URL matches the image URL which I highlighted on page 1 of Exhibit 3. The URL that I have check-marked on page 4, matches the image URL that I have highlighted on page 2 of Exhibit 40. So Google did not remove the identified images even though I followed Google's instructions. I have been able to view thousands of full-size P10 images via Google "See full-size and in-line links."

**GOOGLE CONTINUES TO PROVIDE IDENTIFIED LINKS TO MASSIVE INFRINGING WEBSITES**

56. Attached as Exhibit 41 is the textual portion of Perfect 10's July 9, 2008 DMCA notice to Google. On page 4, there is a listing for nudecelebforum.com, which I have highlighted. The "ALL ARE P10" on the right side means that P10 Images

infringed by that website were contained in a folder labeled "nudecelebforum.com" on DVD 3 and that all the images in that folder were copyrighted by Perfect 10, other than images that obviously did not belong to Perfect 10 such as images in advertising banners. Attached as pages 8 and 9 of Exhibit 41, are two of the pages of P10 Images that I included in the nudecelebforum.com folder. I have highlighted the URL of those infringing web pages, which are *http://www.nudecelebforum.com/t1101-perfect-ten-magazine.html* and *http://www.nudecelebforum.com/t1101-p17-perfect-ten-magazine.html*. The checked image on page 9 of Exhibit 41 contains "The Sample" image "Vibe Sorenson 1." In my notice, I had crossed out non-P10 images of Vibe Sorenson as shown on that page.

57. Attached as pages 1-4 of Exhibit 42, are four pages of Google web search results for the search <site:nudecelebforum.com perfect-ten> which I printed from google.com on March 31, 2009. I refer to such a search, involving the homepage URL of the website, which in this case is nudecelebforum.com, and another term, such as the model name or a term involving Perfect 10, as a combination search. Such a search will restrict the search results to web pages from the specified website that contain the second term. So in this case I was searching for web pages of nudecelebforum.com that contained the term perfect-ten. I have highlighted in yellow infringing links that I identified to Google in Perfect 10's July 9, 2008 notice that Google did not remove from its Web Search results as of March 31, 2009. I have placed large checkmarks on pages 1 and 3 next to the links that Google did not remove which were identified by pages 8 and 9 of Exhibit 41. Although Google did not remove these nudecelebforum.com links, Google did remove other nudecelebforum.com links in June of 2009, in response to a similar notice. See Exh. 45, page 3. On page 2 of Exhibit 42, there are some unusual URLs that start with ww. or w. instead of www., or URLs that start with forum or forums instead of www. I have placed small green checkmarks next to some of those unusual URLs. I have verified that even though they do not start with a normal www., they all link to the

exact same infringing web page, and have included several examples in Exhibit 9 (the disk) in a folder labeled "different URLs same web page." Attached as pages 5 and 6 of Exhibit 42, are two Google Image search results which I print-screened from Google.com on March 31, 2009 and May 19, 2009, respectively. I placed my cursor over the in-line link on page 6 to show the full URL, which appears at the bottom of the page. Pages 5 and 6 of Exhibit 42 show that Google is also making copies of identified P10 Images from the same infringing web pages Perfect 10 complained about and is linking them back to the identified infringing web pages *http://www.nudecelebforum.com/t1101-perfect-ten-magazine.html* and *http://www.nudecelebforum.com/t1101-p17-perfect-ten-magazine.html*. In total, in my July 9, 2008 notice to Google, I sent Google approximately 10,000 P10 Images infringed by the website nudecelebforum.com, which offers over 17,000 P10 Images. Nudecelebforum.com also provides rapidshare.com links for downloading P10 Images. I have downloaded approximately 26,000 distinct P10 Images using such links provided by nudecelebforum.com. Google has provided tens of thousands of links via its Web Search results to massive infringers of P10 Images such as nudecelebforum.com.

**GOOGLE ADS CONTINUE TO APPEAR ON WEB PAGES FOR WHICH GOOGLE HAS RECEIVED NOTICE**

58. Despite the fact that Perfect 10 has given Google repeated notice of infringement regarding almost all of Perfect 10's copyrighted images, Google continues to place multiple sets of Google ads around some of Perfect 10's most valuable images. Attached as pages 1 and 2 of Exhibit 43 are each a copy of a P10 Image of Vibe Sorenson that Perfect 10 sent to Google in its March 17, 2008 notice. Attached as pages 3-9 of Exhibit 43 are seven copies of the same P10 Image of Vibe Sorenson with Google ads placed next to them which I printed from the Internet on the dates shown in the lower right calendar (in October and November of 2008). The web page URLs of pages 1 and 2 of Exhibit 43 match the web page URLs of pages 8 and 4

of Exhibit 43.  In other words, despite receiving the infringing web pages in Perfect 10's March 17, 2008 notice, Google continued to place ads on those same web pages next to the same infringing P10 Images.  In total, Google has allowed its ads to appear on websites that have infringed substantially more than 18,000 P10 Images.

59.     Attached as Exhibit 44 is a spreadsheet which lists some of the notices which I sent to Google identifying direct infringing links in Google search results to the infringing website monitor.hr.  The right column gives the last date that Perfect 10 has evidence that Google was directly linking to those infringing web pages, which is in almost all cases, March 30, 2009.  The first column in Exhibit 44 gives the URL provided in Perfect 10's notice which was accompanied by an actual copy of the infringing web page.  In almost all cases, I sent Google a copy of both the infringing web page as well as a copy of the infringing cache page.  In these notices, there was only one image on the page, and it was a full-size P10 image.  I have removed the starting http:// and www. in the spreadsheet for the sake of sorting and space, but the actual notice had those as well, except for the four Amazon notices which were forwarded to Google from Amazon on April 8, 2005 (see second column from the right).  For all notices except the 2005 Amazon forwarded notices, Google received a copy of the infringing web page, which included both the infringing image and a complete URL of that web page.  The second column gives the name of the model whose image was infringed.  The next three columns give the date of the notice, which was sent on either June 28, 2007, January 24, 2008, or March 17, 2008.  The first row of Exhibit 44 means that the infringing webpage determined by the URL on the left side of the chart, containing an infringing P10 Image of Diane Richey, was sent to Google in Perfect 10's June 28, 2007 notice as well as Perfect 10's January 24, 2008 notice.  The last entry of 33009 means that as of March 30, 2009, the directly infringing link had not been removed from Google's web search results.  In the column under "Amazon Notice," I included URLs that were sent to Amazon on or before April 8, 2005, which Amazon claims to have forwarded to Google.  However, the last

column in Exhibit 44 shows that Google did not remove those URLs from its search results. The evidence showing that Google did not remove the direct links shown in the left column of Exhibit 44 is contained in Exhibit 9 (the disk) in a folder "Still up after notice," in a subfolder labeled "monitor.hr."

60. I have placed in Exhibit 9 (the disk), in a folder labeled "blogger up 51809," a spreadsheet containing approximately 3,800 URLs from Perfect 10's DMCA notices to Google that identified full-size P10 Images stored on Google's blogger.com servers. Sheena Chou created the final version of the spreadsheet, which was obtained by extracting the URLs from Perfect 10's DMCA notices. Evidence supporting that spreadsheet is contained in the "blogger up 51809" folder. I have also included substantial evidence of Google's failure to respond to Perfect 10's notices in a folder in Exhibit 9 (the disk) labeled "still up after notice." Based on recent letters Perfect 10 has received from Google attorneys, Google's document production, as well as internal documents which Google has produced in which Google employees were complaining about the amount of work they had to do to process Perfect 10's notices, I believe that Google removed some identified infringing images and links from its search results in response to Perfect 10's June 28, 2007 and July 2, 2007 notices, and then stopped processing the remainder of those notices as well as all notices received after July 2, 2007, until June of 2009 (see paragraph 61 below). In particular, I do not believe that Google processed any portion of the following Perfect 10 notices: July 12, 2007, July 31, 2007, October 16, 2007, December 14, 2007, January 24, 2008, March 17, 2008, July 9, 2008, April 24, 2009 and May 7, 2009 notices. However, the notices that Google did not process are similar to the ones that Google finally did process in June of 2009. See paragraph 61 and exhibit 45.

61. Other than the June 1, 2004 email from Google which provided me with instructions as to how Google wanted Perfect 10 to submit DMCA notices (Exhibit 12), I have never received any other explicit instructions from Google. In particular, I have never received explicit instructions from Google as to how to identify the

infringed image, or any instructions that I should not remove the starting www. or http:// from the URL. In fact, Google has sent me emails indicating that it was able to process Perfect 10's notices. Attached as pages 1 and 2 of Exhibit 45 are two emails that I received, dated May 13, 2005 and August 9, 2005. Page 1 of Exhibit 45 is an email that I received from Google. It states, "In accordance with the Digital Millennium Copyright Act, we have completed processing your infringement complaints." The email on page 2 states, "In accordance with the Digital Millennium Copyright Act, we have completed processing your infringement complaint dated 7/26/05." Although Google has recently claimed that it could not process my Adobe style notices, without explaining why, it did in fact process URLs identified in three of my notices, after waiting in some cases close to two years to do so. Attached as pages 3-5 are three emails that I received from Google in June of 2009. Page 3 of Exhibit 45 states, "Notwithstanding the defects in your DMCA notice directed to Earthlink, we have processed it to the greatest extent possible, and have removed the following webpages from Google and Earthlink search results: …" Most of the URLs which Google removed in June of 2009 had been identified to Google in the same manner in prior notices. For example, I identified the URL *http://www.humoronline.com/natalia-sirocka-1.html* in both my December 14, 2007 notice as well as my July 9, 2008 notice to Google. The same is true for URLs listed on pages 4 and 5 of Exhibit 45. Page 6 of Exhibit 45 contains a spreadsheet I created which shows the date when Perfect 10 first notified Google of the infringing URL that Google finally admittedly removed in June of 2009. The spreadsheet should be read as follows: The left column lists the URL that was identified to Google. I have removed the starting http:// and/or www. in the spreadsheet. However, the actual URL identified to Google was the URL on the actual infringing webpage, and contained a starting http:// as well as, in some cases, a www. The second column gives the date of a Perfect 10 notice identifying the infringing web page listed on the left side. In some cases, Perfect 10 has repeatedly identified the same infringing web page. I have only listed one such notice. The third column gives

the type of notification. "All are P10" means that all of the images in the associated adobe file, other than images in advertising banners, and images that were crossed out, were copyrighted by Perfect 10. "Chk or Large" means that images that had check marks by them or were large, were copyrighted by Perfect 10. Entries in the "FOLDER" column gave the location of the adobe files in the attached disk. The entry of "soloevas.com" in the "FOLDER" column, means that the infringing URL listed on the left side, was contained in an Adobe folder labeled soloevas.com. The right column gives the approximate number of days that Google waited before removing the identified infringing webpage, based on pages 3-5 of Exhibit 45. So the first row of page 6 of Exhibit 45 states that the URL *soloevas.com/bu/fotografias/playboy/ Caneel_Carswell* was identified to Google as an infringing webpage in a July 31, 2007 Perfect 10 DMCA notice. The adobe file identifying that infringing web page was contained in a folder labeled, "soloevas.com." Google waited approximately 700 days before removing that infringing web page from its search results, according to its letter to Perfect 10 attached as page 5 of Exhibit 45. I have included the Adobe web pages from Perfect 10's July 31, 2007 notice which correspond to the URLs shown on page 6 of Exhibit 45, in Exhibit 9, the disk, in a folder labeled. "Exhibit 45."

**YAHOO! WAS ABLE TO PROCESS PERFECT 10'S NOTICES IN 3 DAYS**

62.     Yahoo!'s initial reaction to Perfect 10's DMCA notices was similar to other search engines – it did nothing. However, after Perfect 10 sent to Yahoo! a draft complaint, Yahoo! began to take some action with regard to Perfect 10's notices. Attached as page 1 of Exhibit 46 is a portion of a DMCA notice that I sent to Yahoo! on April 3, 2007. (The complete notice is contained in Exhibit 9 (the disk) in a folder labeled "Yahoo! notice"). I have placed green check marks next to four URLs on page 1 of Exhibit 46. Pages 2-7 of Exhibit 46 show that Yahoo! removed images corresponding to those URLs from its image search results within three days. Pages 2 and 3 of Exhibit 46 show Yahoo! image search results on Perfect 10 model Heather Fussner one day before I sent the DMCA notice to Yahoo! and three days after Yahoo!

received the notice. Two images have been removed from the infringing web page determined by the first URL in Perfect 10's notice, namely, *bootsranch.com/ memberswextmodels.htm*. Pages 4 and 5 of Exhibit 46 show the results of a Yahoo! Image Search on "Isabelle Funaro" on April 2, 2007, one day before I sent the DMCA notice, and three days after Yahoo! received my notice. Three images from the infringing web page determined by the second checked URL on page 1 of Exhibit 46, namely, *akiwiwi.free.fr*, have been removed. Pages 6 and 7 of Exhibit 46 show the results of a Yahoo! image search on "Nataskia Maren" one day before Yahoo! received Perfect 10's notice and three days after. Images from the web pages identified by Perfect 10's notices, namely, *ipgeneral.com/~renegade/newsart/bikini.central* and *scancoo.com/.../image5.htm*, as well as other images of Nataskia Maren from scancoo.com were removed.

63.    Yahoo! was also able to process in three days another notice that I sent them which contained copies of the actual infringing web pages. Attached as Exhibit 47 is a portion of a notice that I sent to Yahoo! on August 11, 2008, relating to infringements on the website codogno.com. (The letter accompanying the notice and the attached excel spreadsheet are included in Exhibit 9 (a disk) in a folder labeled "Yahoo notice.") Page 1 of Exhibit 47 shows the results of a combination Yahoo search which I performed on August 10, 2008 with the safe search filter off. The search was site:codogno.com amy weber. I sent pages 2 and 3 of Exhibit 47 to Yahoo! as part of Perfect 10's August 11, 2008 notice (which included the green check marks). I stated in the notice that any images with green check marks next to them were copyrighted by Perfect 10. I obtained page 2 of Exhibit 47 by clicking on the first search result shown on page 1 of Exhibit 47. I obtained page 3 of Exhibit 47 by clicking on the second search result shown in Exhibit 47. Page 4 of Exhibit 47 shows the results of the same Yahoo! search which I performed on August 15, 2008, three days after Yahoo! received Perfect 10's notice. Page 4 of Exhibit 47 shows that Yahoo! removed the two results that linked to the web pages shown on pages 2 and 3

of Exhibit 47 in three days.  Attached as page 5 of Exhibit 47 is the email that I
received from Yahoo! after they received my notice.  There is no suggestion in that
email that any portion of the notice was deficient.

**DESPITE REPEATED OBJECTIONS, GOOGLE CONTINUES TO
PUBLISH PERFECT 10'S CONFIDENTIAL NOTICES ON
CHILLINGEFFECTS.ORG**

64.    Attached as page 1 of Exhibit 48 is an email that I received from Google
on November 5, 2004.  It states, "Please note that a copy of each legal notice we
receive is sent to a third-party partner for publication and annotation. …  A link to
your published letter will be displayed in Google's search results in place of the
removed content."  Perfect 10 has produced its DMCA notices to Google stamped
"confidential."  By allowing our DMCA notices to be published and providing a link to
the notice in its search results, Google provides a roadmap to those who wish to view
and download P10 Images without charge.  Page 2 of Exhibit 48 is an email I sent to
Alexander Macgillivray of Google on January 27, 2006 in an attempt to stop Google
from continuing to publish Perfect 10's confidential notices on the Internet.  It states:

> Despite Perfect 10's repeated objections, Google is continuing to publish
> Perfect 10's confidential DMCA notices.  As we have explained on several
> occasions, Perfect 10's DMCA notices provide a roadmap to those who wish to
> see Perfect 10 images without charge.  Perfect 10 has produced its DMCA
> notices to Google stamped "confidential."  Perfect 10's notices are confidential
> and I demand that you immediately cause Chilling Effects and whoever else you
> provided those notices to, to stop publishing them immediately.

Also attached as page 3 of Exhibit 48 is another communication in which I stated,
"Please be advised that our notices are confidential and you are not authorized to
forward them to anyone."  Nevertheless, Google forwarded that very same notice to
chillingeffects.org for publication, as shown by pages 4-7 of Exhibit 48.  I have been
able to copy URLs directly from that notice into my browser and locate infringing P10
Images in that fashion.   Google has also provided links in its search results to that
notice.

65.    Attached as page 1 of Exhibit 49 is the first page of output of a password

hacking program which Perfect 10 commissioned Sean Chumura to write to monitor unauthorized access to our website, perfect10.com.  The program began to monitor unauthorized downloads from perfect10.com on October 27, 2007.  I printed page 1 of Exhibit 49 on January 24, 2009.  It shows that between October 27, 2007, and January 24, 2009, the username sbalsdorf and password williprep had been used to make 803,580 downloads from perfect10.com, and that the username charrons and password 071727 had been used to make 766,655 downloads over that same period.  In total, more than 3,000,000 P10 images have been downloaded without authorization between October 27, 2007 and January 24, 2009, using the first eight username/password combinations shown on page 1 of Exhibit 49.  Attached as page 2 of Exhibit 49 is a page from a report that our program generates which shows from left to right: The date and time of the download (the times of download are listed in descending order), the image downloaded, the username, the browser used, the IP address of the computer, the ISP, the country and city, and for a very limited number of users, what the user did just before making the download.  Page 2 shows that downloads were made by two different users using the same password and username, one from Minneapolis, Minnesota, who did a google search on perfect 10 just before accessing perfect10.com, and the other located in Moscow City.  Obviously, either one or both of these users were unauthorized.  Page 3 gives a similar report for the use of the username charrons.  Again, there were two users using the same password and username at essentially the same time.  One did a google search and started doing downloads from Ontario, Canada.  The other was downloading P10 Images from perfect10.com from Antwerpen.  Attached as page 4 of Exhibit 49 is the results of a Google search I did on March 30, 2009, showing that Google was displaying both username/password combinations from Google.com on that date.  Only the first eight letters are relevant for the password.  I have included more examples of users doing google searches and then making unauthorized downloads from perfect10.com in a folder labeled "passwords from google" in Exhibit 9, a disk.  The next to the bottom

image on page 2 of Exhibit 49 is "The Sample" image "Anna Tarson 1."

66.     Attached as page 1 of Exhibit 50 is a page I print-screened from google.com on March 30, 2009. The top left image is a P10 thumbnail. I have placed a green check mark where it says "'Perfect 10' – The Pleasure Principle – Another Perfect 10 Magazine Thread." At the right of this, under a column labeled "Views," it says, "1,423,312." I have verified that particular "thread" has over 3,000 P10 Images. Just below that, there is another Perfect 10 thread, and it indicates there were 277,675 views of that thread. I have verified that there are more than 1,000 P10 Images in that thread. Attached as page 2 of Exhibit 50 is a page I print-screened from google.com on March 30, 2009. At the top left is a P10 thumbnail. I have placed a green check mark where it says "PERFECT10.com – The World's Most Beautiful Natural Women." To the right, under a column labeled "Views," it says "710196." I have verified that Perfect 10 thread contains more than 2,500 P10 Images. Attached as page 3 of Exhibit 50 is a document I print-screened from google.com on March 30, 2009. The top left image is a P10 thumbnail. Under "Most Popular Gallery" there is a P10 Image of Adele Stephens. Under that image, it states, "Images:21 Views:570100." Attached as pages 4 and 5 of Exhibit 50 are P10 Images of Maya Rubin and Marisa Miller, with "Ads by Google" at the top of each image. I have placed a green check mark by the stated number of views of each image. In Exhibit 9 (the disk), in a folder labeled "Downloads," I have placed additional evidence of millions of views and/or downloads on web sites to which Google links in its search results.

67.     Attached as Exhibit 51 is an illustration of Microsoft's "show similar images" feature. I obtained page 1 of Exhibit 51 by doing a Microsoft Image Search, on March 17, 2009, on Zita Gorog. The images of Zita Gorog wearing red are P10 images. I obtained page 2 of Exhibit 51 by clicking on the "show similar images" option that I checked on page 1. As can be seen, Microsoft's search engine was able to locate similar images on different websites using image recognition. I have employed two image recognition companies, Attributor and Picscout, who have both been able to

locate thousands of infringing P10 Images offered by Google in its Image Search results. Attached as pages 3 and 4 of Exhibit 51 are pages I printed on May 4, 2009, which illustrate the function of Google's new "similar images" search function. I obtained page 4 by clicking on the "similar images" link below the checked image on page 3.

68. Attached as pages 1 and 2 of Exhibit 52 are documents I printed from chillingeffects.org on the dates shown at the bottom of the documents. Page 1 of Exhibit 52 states, "Google received notice of sites in Google's search index that contained child pornography. Accordingly, Google reported the sites to NCMEC and removed them from its search index." Page 2 of Exhibit 52 states, "Google has received notice of a list of web sites from the Internet Watch Foundation (web site URL) that contain child pornography. Google has removed the related web sites from its search results." Attached as page 3 of Exhibit 52 is a document I printed from Google.com on February 20, 2007. It is entitled, "What is Google's policy for online pharmacy ads?" It states, "Google AdWords requires all online pharmacy advertisers and affiliates to be a member of the PharmacyChecker Licensed Pharmacy Program. Google only accepts online pharmacies that are based in the U.S. or Canada." It goes on to say, "If you are not granted a PharmacyChecker ID, we won't be able to run your ads."

69. In many cases, I have observed that Google Web Search results on the names of Perfect 10 models lead exclusively, or virtually exclusively, to websites that infringe Perfect 10 copyrights, and in many cases, are Google AdSense affiliates. For example, when I did a Google Web Search on "Jamike Hansen," a model exclusive to Perfect 10, on October 31, 2008, there were 113 results. All linked to infringing websites, and none linked to perfect10.com. Of the 113 results, 55 linked to *gadissexybugil.blogspot.com*, a Google hosted website that infringes P10 Images and displays Google ads. Seven results linked to the website dignow.com, which also displays Google ads and promotes gadissexybugil.blogspot.com. Thirty-four results

linked to rapidlibrary.com, which at one time displayed "ads by Google," and provided rapidshare.com links for downloading P10 Images. All of the other results either displayed P10 Image by in-line linking to imagerise.com or imagevenue.com, which have displayed "ads by Google," or offered rapidshare.com links for downloading P10 Images. I have placed evidence supporting these statements in Exhibit 9, the disk, in a folder entitled "Jamike Hansen search results."

70. Since June of 2004, Google has provided me with contradictory instructions as to how to create DMCA notices. For example, in her deposition, Shantal Rands testified that the URL which Google's June 1, 2004 instructions asked me to cut and paste into my spreadsheet was not the correct URL, and that I should have clicked on the search link instead, to get the full URL including the starting http://. In fact, both URLs are adequate. See ¶31, Exh. 20. *See also,* O'Connor Decl. ¶¶4-6, Exh. 1; Chumura Decl. ¶¶3-5, Exh. 1. Mr. Macgillivray claimed in his deposition that Perfect 10 should have provided image URLs instead of the URLs that Google's June 1, 2004 instructions asked me to provide, which were Web Page URLs. No matter what I do to try to follow Google's instructions, Google ultimately claims that my notices are deficient. When I have asked Google to explain exactly what Google needs in a notice, Google has refused to do so, or has told me to do the impossible, for example, to identify infringing web pages in usenet sites which have none. To ascertain, once and for all, exactly what URLs or what information Google felt it needed, on November 27, 2008, I sent Google several examples of different ways in which Google was assisting in the infringement of P10 Images, and asked Google to give me the exact URL they needed, so that I could use that as a template for further notices. Google refused to answer my specific questions and simply referred me back to their general DMCA instructions, which did not answer my questions. Attached as pages 1 and 2 of Exhibit 53 is a copy of my November 27, 2008 email/DMCA notice to Google, asking for specific instructions regarding specific instances of infringement. Attached as page 3 of Exhibit 53 is the first attachment in

my November 27, 2008 email.  I identified two infringing search results in that email by placing green check marks next to them.  Attached as page 4 of Exhibit 53 is a Google search result I printed out on May 8, 2009.  I have highlighted the link which I identified in my November 27, 2008 notice which Google has still not removed.  Each of the listings in page 4 of Exhibit 53 display the same confidential perfect10.com username/password combinations (username:chewey, password:stoney) and are almost identical.  Attached as page 5 of Exhibit 53 is Google's response, which Google sent to me twenty days after receiving my notice.  Google did not answer my questions.  I have also attempted to speak directly with someone at Google's help desk.  Google has not allowed me to do that.  Despite the fact that Google claimed that my November 27, 2008 notice was "deficient," it did finally remove some of the identified URLs from that notice in June of 2009.  See page 5 of Exhibit 45.

71.     I have converted the electronic documents produced by Google in discovery (other than the "Attorney's Eyes Only" documents which I was not allowed to see) so that they could be searched for those documents that contain particular character strings.  The documents that I was able to search included all the documents that Google claimed constituted its "DMCA log."  I did a search for the words "deficient," and "DMCA log," neither of which appeared in any documents.  I also did a search on "Image URL."  I found no documents in which Google asked a copyright holder to specify an Image URL or URLs.  A search on "DMCA cover sheet" only returned documents dated between February and April of 2005.  Google produced some spreadsheets that were broken up into separate pages so as to make them virtually impossible to search or work with, relating to blogspot.com sites, that were outside of the bates stamp range where Google claimed its DMCA log was located.  There were numerous documents in which Google demanded that its AdSense webmasters change the content in their sites.   I found one internal document where it was recommended that Google employees remove the starting www. from any URL in the bad URLs list.  There were a substantial number of documents produced by Google

dealing with the processing of Perfect 10's DMCA notices that had sections redacted.

72.     Google has many different programs.  I have found infringing P10 Images on websites in the following Google programs: Adwords, Adsense, Blogger, Blogspot, Chrome, Groups, Image Search, Mobile, Page Creator, Picasa, Google Video, and Web Search.  I have also seen situations where there are four different programs simultaneously involved in the infringement.  For example, Google links via its Web Search results to an infringing blogspot.com site that has Google ads around P10 Images which are also being used in Google Image Search results.  It is simply not reasonable nor necessary to require the copyright holder to send the same notice to the attention of four different Google departments, especially since those departments are not separately listed at the Copyright Office.  Once Google knows of the infringement, it should block that infringing activity at that identified web page from being incorporated into any Google product.  Furthermore, it is generally not possible for me to determine if a Google webmaster is in any particular Google program.  For example, by simply examining a portion of a website, I cannot tell with certainty whether that website is in Google's AdSense program, or whether P10 Images from that website are currently available through Google Image Search, or being in-line linked to by some Google hosted website.  But Google could prevent those things from ever happening if it wanted to, once it becomes aware of the infringement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed this 5th day of July 2009 in Los Angeles County, California.

_____
NORMAN ZADA