1 | Jeffrey N. Mausner (State Bar No. 122385)
2 | Law Offices of Jeffrey N. Mausner
  | Warner Center Towers
3 | 21800 Oxnard Street, Suite 910
4 | Woodland Hills, California 91367-3640
  | Email: Jeff@mausnerlaw.com
5 | Telephone: (310) 617-8100, (818) 992-7500
6 | Facsimile: (818) 716-2773
7 | Attorneys for Plaintiff Perfect 10, Inc.

8

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | Case No. CV 04-9484 AHM (SHx) |
| | Consolidated with Case No. CV 05-4753 AHM (SHx) |
| Plaintiff, | |
| v. | **DECLARATION OF JEFFREY N. MAUSNER IN SUPPORT OF PERFECT 10'S MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION AGAINST DEFENDANT GOOGLE, INC.** |
| GOOGLE, INC., a corporation; and DOES 1 through 100, inclusive, | |
| Defendant. | |
| AND CONSOLIDATED CASE. | Date: August 17, 2009 Time: 10:00 a.m. Place: Courtroom 14, Courtroom of the Honorable A. Howard Matz |
| | Discovery Cut-Off Date: None Set Pretrial Conference Date: None Set Trial Date: None Set |

1    I, Jeffrey N. Mausner, declare as follows:

2        1.    I am a member of the State Bar of California and admitted to practice

3    before this Court.  I am counsel of record for Plaintiff Perfect 10, Inc. ("Perfect

4    10") in this action.  All of the matters stated herein are of my own personal

5    knowledge, except where otherwise stated, and if called as a witness, I could and

6    would testify competently thereto.  I make this declaration in support of Perfect

7    10's Motion for Summary Judgment and Summary Adjudication Against

8    Defendant Google, Inc.

9        2.    Attached as Exhibit A is a true and correct copy of this Court's Order

10   dated May 8, 2006, Docket No. 161, with Paragraph 9, entitled "Notification

11   System," highlighted.

12       3.    Attached as Exhibit B is a true and correct copy of a letter I received

13   from Google's counsel, Rachel Herrick Kassabian, dated May 20, 2009, with

14   portions highlighted.

15       4.    Attached as Exhibit C are true and correct copies of articles and some

16   of the related comments, regarding Google's lack of compliance with DMCA

17   procedures.  These articles  were printed from the websites indicated by the URL

18   in the footer of each page, on the date shown.  Portions of the articles and

19   comments have been highlighted.

20       5.    I took the deposition of Microsoft's DMCA agent, Judy Weston, on

21   May 28, 2008.  Attached hereto as Exhibit D is a true and correct copy of portions

22   from the transcript of that deposition, with portions highlighted.

23       6.    I took the deposition of Google's expert, Dr. John R. Levine, on

24   February 28, 2007.  Attached hereto as Exhibit E is a true and correct copy of

25   portions from the transcript of that deposition, with portions highlighted.

26       7.    Attached as Exhibit F is a true and correct copy of this Court's Order

27   dated May 13, 2008, Docket No. 294, with portions highlighted.

28       8.    I took the Rule 30(b)(6) deposition of Alexa Internet on September

18, 2008. Alexa designated Derrick Pallas as its 30(b)(6) witness. Alexa has designated that transcript highly confidential. Accordingly, portions of that transcript are filed separately under seal, as Exhibit G. Exhibit G is a true and correct copy of portions from the transcript of that deposition, filed separately under seal pursuant to protective order.

9.     Exhibit 9 to the Declaration of Dr. Norman Zada, filed concurrently, is a computer disk which contains, among other data, true and correct copies of Perfect 10's Copyright Registration Certificates, issued by the United States Copyright Office, for the copyrights in "The Sample" of images used in this Motion.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge. Executed this 5th day of July, 2009 in Los Angeles County, California.

*Jeffrey N. Mausner*

Jeffrey N. Mausner

# Exhibit A

FILED
CLERK, U.S. DISTRICT COURT

MAY - 8 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT

MAY  9 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6 ____
JS-2/JS-3 ____
Scan Only ____

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PERFECT 10, Inc.<br><br>          Plaintiff,<br><br>     v.<br><br>GOOGLE, INC., *et al.*<br><br>          Defendants. | CASE NO. CV 04-9484 AHM (SHx)<br>consolidated with<br>CASE NO. CV 05-4753 AHM (SHx)<br><br>PRELIMINARY    INJUNCTION<br>ORDER<br><br>THIS CONSTITUTES NOTICE OF ENTRY<br>AS REQUIRED BY FRCP, RULE 77(d). |

Having considered all of the pleadings and papers filed in support of and in opposition to the motion of Plaintiff Perfect 10, Inc. ("P10") for preliminary injunction against Defendant Google, Inc., and having previously issued an order granting in part that motion and stating its reasoning, *see Perfect 10, Inc. v. Google, Inc.*, 416 F.Supp.2d 828 (C.D. Cal. 2006) (the "Initial Order"), which Initial Order is incorporated herein by reference,

**THE COURT THEREFORE ORDERS AND DECREES AS FOLLOWS:**

1.     Google is preliminarily enjoined from engaging in the infringing conduct described in the Initial Order, pursuant to the procedures set forth below.

161

2.  **Definitions.**

    a.    <u>Thumbnails</u>:  A "thumbnail" is a reduced-sized image stored on and hosted by Google's servers that was derived from another image on a third-party website.

    b.    <u>Thumbnail Source URL</u>: A "Thumbnail Source URL" is the Uniform Resource Locator ("URL") that is displayed in the address bar of a web browser when a user clicks on one of the several thumbnails displayed by Google as the result of an image search.  A Thumbnail Source URL represents the location of the two-frame webpage described in detail in the Initial Order.  *See Perfect 10*, 416 F.Supp.2d at 833-834.  A Thumbnail Source URL will have the following format: "http://images.google.com/imgres?imgurl=...& imgrefurl=...&tbnid=...."

    c.    <u>Infringing Thumbnail</u>:  An "infringing" thumbnail is one designated by P10 under ¶ 4(a).

    d.    <u>Contested Thumbnail</u>:  A "contested" thumbnail is a thumbnail whose designation by P10 as "infringing" Google contests.  Google may contest such a designation under any of the following circumstances:

        i.    if Google cannot verify the allegedly infringing thumbnail due to the fact that the Thumbnail Source URL supplied by P10 under ¶ 4(a)(ii) generates an error message or otherwise does not accurately identify the Thumbnail Source URL described

2

in ¶ 2(b); or

ii.   if Google disputes in good faith the accuracy or veracity of any statement or representation P10 made pursuant to ¶ 4(b), such as, but not necessarily limited to, a dispute based on a counternotification from a third party; or

iii.  if Google in good faith concludes that the image on the third-party website from which Google derived the thumbnail is not the same as the P10 copyrighted image P10 identified under ¶ 4(a)(i).

3.  **Identification by P10 of Its Copyrighted Images.**  P10 shall provide to Google in electronic format the images for which P10 owns the copyrights, arranged in folders labeled with the name of each model.  P10 may supplement those images not more often than once per month.

4.  **Notices of Infringement.**  Not more than once per month, P10 may provide to Google a Notice of Infringement that shall include each of the following:

a.   for each allegedly infringing thumbnail stored on and served by Google's servers,

i.   P10 shall identify by folder and file name each P10 copyrighted image P10 identified pursuant to ¶ 3 that P10 claims is infringed by that particular thumbnail; and

ii.   P10 shall identify the Thumbnail Source URL for that particular thumbnail; and

3

1

2   b.  a sworn certification

3

4      i.  that it (P10) owns the relevant copyright interests—*i.e.*, the

5        rights specified in 17 U.S.C. § 106—for each of the P10

6        copyrighted images identified under ¶ 4(a)(i) that P10 claims

7        Google is infringing, and

8

9      ii.  that it (P10) has not authorized the creation, display, or

10        distribution of the allegedly infringing images by third-party

11        websites from which Google derived the allegedly infringing

12        thumbnails P10 identified under ¶ 4(a); and

13

14   c.  the name of the person authorized to communicate the Notice of

15     Infringement on behalf of P10, as well as a physical or electronic

16     signature of that person.

17

18 5. **Take-down Procedures.** Following its receipt of each monthly Notice of

19  Infringement and within the applicable period identified below, Google

20  shall:

21

22   a.  within ten business days, cease displaying and permanently remove

23     from those of its servers that provide thumbnails to the public all

24     infringing thumbnails identified under ¶ 4(a) that Google has not

25     contested pursuant to ¶¶ 2(d) and 7; and

26

27   b.  within ten business days, and consistent with its stated policy

28     described in the Initial Order at 416 F.Supp.2d at 846 as to

1  webpages, cease serving AdSense advertisements on third-party

2  websites from which Google derived each thumbnail identified under

3  ¶ 4(a) that Google has not contested pursuant to ¶¶ 2(d) and 7.

4

5  6.  **Report of Compliance.**  Within fifteen business days of its receipt of each

6  monthly Notice of Infringement, Google shall provide to P10 and file with

7  the Court a Report of Compliance that sets forth the steps Google has taken

8  to comply with the take-down procedures described in ¶ 5.

9

10  7.  **Report of Contested Thumbnails.**  Within fifteen business days of its

11  receipt of each monthly Notice of Infringement, Google shall notify P10 of

12  those thumbnails it has contested pursuant to ¶ 2(d).  This notification shall

13  be sent separately from the Report of Compliance described in ¶ 6, and it

14  shall identify each contested thumbnail, as well as the grounds upon which

15  Google contests that thumbnail.

16

17  8.  **Challenges by P10 to Thumbnails Contested by Google.**  P10 may

18  challenge Google's contesting of any thumbnail, under the following

19  procedures:

20

21  a.  For each challenge to a contested thumbnail identified in a Report of

22  Contested Thumbnails, P10 must provide Google with evidence

23  sufficient to show that Google lacked a good faith factual basis to

24  contest that thumbnail.  This evidence shall be provided by not later

25  than ten business days after P10's receipt of that Report of Contested

26  Thumbnails.

27

28

5

b.    i.    If within five business days after its receipt of such a challenge Google has not implemented the take-down procedures set forth in ¶ 5, P10 may seek an order compelling compliance.

       ii.    If the Court is thereupon required to determine whether the allegedly infringing thumbnail must be taken down, the prevailing party will be entitled to recover all its reasonable attorneys' fees and costs associated with the proceeding.

9.    **Notification System.** Without limiting the parties' respective obligations set forth elsewhere in this Order, P10 and Google shall cooperate in good faith to implement a notification system, which will make it as expeditious and efficient as is reasonably feasible for P10 to provide Notices of Infringement to Google and for Google to receive those notices. If such a system is consensually implemented, P10 may provide Google with information regarding allegedly infringing thumbnails at any time; however, Google shall not be required to act on those allegedly infringing thumbnails more often than once per month. This paragraph shall be construed consistent with Google's representation that it is willing to "develop[] a special secure interface that would allow P10 to do Google Image Searches, simply check boxes for [the] thumbnail[s for which P10] claims to own [the copyrights], and click on a web page button which would automatically submit them to Google for processing." *See* Google's Response to Plaintiff's Brief Re Form of Preliminary Injunction at 6 n. 4.

10.   **Format of Notifications and Reports.** Notices of Infringement, Reports of Compliance, Reports of Contested Thumbnails, and all other communications made pursuant to this Order shall be provided in a format

1    that will facilitate compliance with this injunction.  The parties shall

2    supplement all court filings resulting from this Order with an electronic

3    copy placed in the Court's courtesy box.

4

5    11.   **Modifications.**  This Order may be modified by subsequent application of

6          the parties, who also may stipulate to alternative means, such as the

7          development of image recognition technology to accomplish the objectives

8          of this injunction.

9

10   12.   **Bond.**  This injunction shall take effect upon P10 filing a cashier's check in

11         the amount of $100,000 and serving Google with notice that it has done so.

12

13

14

15   IT IS SO ORDERED.

16

17   DATE: May ___8___, 2006

18                                          A. Howard Matz

19                                          United States District Judge

20

21

22

23

24

25

26

27

28

# Exhibit B

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL: (650) 801-5000 FAX: (650) 801-5100

May 20, 2009

<u>VIA EMAIL AND U.S. MAIL</u>

Jeffrey N. Mausner, Esq.
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA
Facsimile: (818) 716-2773

Re:     *Perfect 10, Inc. v. Google Inc.*

Dear Jeff:

I write in response to the purported DMCA notice Perfect 10 sent to Google dated May 7, 2009. Perfect 10 continues to send ostensible notices in a manner not compliant with the DMCA, as Google has explained in prior correspondence (including Google's August 31, 2007, October 31, 2008, and May 5, 2009 letters).

Perfect 10's May 7, 2009 purported notice is in substantially the same format as Perfect 10's purported notices sent on October 16 and December 13, 2007, January 24, March 17, and July 9, 2008, and April 24, 2009. Google has explained on multiple occasions that it is unable to process Perfect 10's purported DMCA notices in this format, which do not intelligibly identify the copyrighted work claimed to be infringed or the location of the allegedly infringing content. Instead, Perfect 10's May 7, 2009 purported notice provides Google with thousands of images Perfect 10 supposedly downloaded from various websites, and thousands of other "screenshots" of Google search results and images. Dumping thousands of downloaded image files and "screen shots" on a DVD with a general description of how Perfect 10 found the images does not sufficiently identify the copyrighted works allegedly infringed or the locations of the allegedly infringing material. As Google's published DMCA policy states, Google requires identification

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 06606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

51320/2934080.1

of the copyrighted work claimed to be infringed and the exact web page URL or image URL of the allegedly infringing material in order to process a DMCA notice.

Additionally, as Google has previously explained, it does not crawl or index Usenet servers or those portions of websites only accessible by password. If content is not indexed by Google such that there is no link to that content in Google Web or Image Search results, it is not the proper subject of a purported DMCA notice to Google, because there is no link or thumbnail to disable or remove. The inclusion in Perfect 10's purported May 7, 2009 notice of printouts of Google Web Search results for giganews.com and newsdemon.com does not change this fact. Indeed, the cover letter accompanying the May 7 purported notice acknowledges that Google's Web Search results for these sites link to login or sign-up pages, not to allegedly infringing content.

Unless and until Perfect 10 cures these many deficiencies, which Google has identified on many occasions, Google is unable to take any further action in response to this defective notice.

Very truly yours,

Rachel Herrick Kassabian

# Exhibit C

search 

| Home | About ↓ | Consulting | DMCA Contacts | Stock Letters | Stop Internet Plagiarism ↓ | Press | Contact |

# Google's Shell Games

By Jonathan Bailey • Nov 16th, 2007 • Category: Articles, DMCA, Legal Issues, Punditry



Anyone who is a regular reader to this site knows that, in order to get Adsense removed from a scraper or plagiarist's page, you are required to file a DMCA notice.

Adsense has its own DMCA policy and follows it very strictly. Though results can be obtained through that means, few bloggers actually use it.

Not only is the process unnecessarily complicated and time consuming, but a great deal of confusion is being spread about the nature of their policy.

However, the cause of the misunderstandings are very easy spot. If you follow Google's abuse process, the confusion is very apparent as Google itself says never mentions its DMCA process when filing a complaint. Instead, it intentionally allows visitors to finish the entire process, certain the matter is in good hands, before letting them know the truth hours or days later.

It isn't that these bloggers didn't do their research, just that they were misled by a company who's motto is supposed to be "Don't Be Evil".

**Adsense Abuse 101**

In theory, reporting Adsense violations is as simple as a few clicks of the mouse.

When you see a site breaking any of Adsene's rules, you are supposed to first click their "Ads By Google" link at the top or bottom of one of the ad blocks. You are then taken to a page that tries and sells you space on the site or get you to sign your own site up.

However, at the bottom there is a link reads "Send Google your thoughts on the site or the ads you just saw". If you click that link, a form appears below asking you what you thought of the ads. Below that is a link to report a violation. Click that link and a subform appears asking you to choice between a violation with the ads or the site itself.

If you choose the Web site, you get a question with the options below:

Did the **site** you just came from violate any of the following policies? (Select all that apply)

☐ The site encouraged me to click on the ads
☐ The site has pornographic content
☑ The site is hosting/distributing *my* copyrighted content
☐ The site tried to install something on my computer
☐ The site violates AdSense policies in other ways

The third option reads "The site is hosting/distributing *my* copyrighted content" (emphasis in original) and seems to be perfect for reporting scrapers and spammers. If you hit submit from there, you get a thank you page and a promise to look into the matter.

## DISCLAIMER

I am not a lawyer. I am just a legally-minded Webmaster/Writer frustrated with the plague of plagiarism online and doing something about it.

## SUBSCRIBE



**Subscribe Via Email:**

## FREE PLAGIARISM HELP

Peformancing Legal Issues Forum

## OTHER WRITINGS

Blog Herald
BloggingTips
European Journalism Centre

## RECENT POSTS

Why To NOT Write Your Own License
3 Count: Zero the Hero
The Copyright Reforms You Want
3 Count: Sony's Song
The Future of the Copyright Office

## POPULAR TAGS

apple bittorrent Blogger Blogspot
Content-Theft Copyright
Copyright-
Infringement Copyright-
Law Copyright-Office Creative-Commons
DMCA DRM facebook fair-use Flickr Google
Hosting images licensing MPAA obama Orphan
Works Photography piracy plagiarism

plagiarism-detection

==Then nothing happens.==

If you provided your email address, which is entirely optional in the form, you get an email some time later telling you that Google can not process your complaint without a DMCA notice. It then links to the Adsense DMCA policy (found above) and offers little else.

In the meantime you've lost hours, possibly days worth of time waiting for a response from Google and now have to start all over again.

Frustrating, yes, but entirely avoidable.

### A Double Standard

Even if we discard the facts that Adsense is not protected under the DMCA and that ==Google's DMCA policy is likely illegal in and of itself==, there are several problems with this method of handling things.

The biggest is that Google knows that they can not and will not act on such complaints without a proper DMCA notice. They wrote the policy and they stand by it, for better or worse. Yet they keep that option available, even though it only leads to confusion.

Of course, the presence of that option would not be so bad if Google would actually notify submitters of the requirement to file the DMCA before they left the page.

Strangely, Google actually does exactly this one of their other sites, YouTube. If you use the "Flag" feature at YouTube to report a video for copyright infringement.



You are then given an error message directly you to their help center, which provides instructions for properly reporting the clip.



It is not a perfect system, but it prevents Webmasters from wasting days waiting for a response when one simply isn't coming.



## Plagiarism

Podcast RIAA RSS RSS scraping Scraping search Search-Engines Spam Spam-Blogs Splogging Splogs sweden takedown The-Pirate-Bay USCO viacom Wordpress YouTube

### CREATIVE COMMONS



Blog Network:
Name:
Plagiarism Today
Topics:
plagiarism, content theft, copyright

Join my network

Blog Networks

## Bad Behavior

Questions about why Google does this is entirely up for debate. The most obvious reason, however, is that Google has much less motivation to be cooperative with Adsense than YouTube. Adsense is Google's main money maker, is not technically protected under the DMCA and is not the subject of a billion dollar lawsuit.

==But no matter what the reason is, this is just another artificial hurdle to Google's already obstructionist DMCA policy. Google already mandates you send a physical signature, though the law clearly states that it is not necessary, refuses to accept email notices and often takes weeks to respond to a perfectly legitimate notice filed using their own policy.==

Google could probably fix this problem within the space of a few hours but, for whatever reason, it has not been a priority for them. Instead, there are countless confused bloggers who believe that Google simply doesn't respond to complaints about scraping doesn't care.

The result is not only a damaged reputation for Google, but that thousands of spam blogs continue to thrive because content owners were thwarted in reporting the problem. They either never got the email requesting the DMCA notice, likely because they didn't fill out their email as it was optional, or had simply moved on in the days that had passed.

The side effect of that is, of course, that Google gets to keep making money on the spam blogs. Considering they provide the hosting, promotion and revenue stream with their Blogspot, search and Adsense products respectively, Google seems to be a spammer's best friend. Sadly, this "do the absolute minimum" policy when dealing with scraping seems to be a mere extension of that.

Even worse, it doesn't seem to be getting any better in the near future.

## Conclusions

Google is a company like any other, with responsibilities to share holders and employees. The bottom line for a corporation is, quite simply, the bottom line. Money doesn't have an ethical or political stance and companies know that.

We should not expect companies like Google go act quickly on something that is not in their best interest. Instead, we should make it in their best interest to act by voting with our dollars. Doing anything else will have no effect.

The quicker we realize that, the quicker we can start to see some real change from Google in these and other areas.

Even though no company is perfect, a company should at least attempt to live up to is motto. Otherwise, it should expect its customers to demand better and then seek it out elsewhere.

 ShareThis

 **Protect Your Work. Subscribe to Plagiarism Today via Email or RSS.** 

**Tags:** Adsense, Content-Theft, Copyright-Infringement, DMCA, Google, Plagiarism, Scraping, Spam-Blogs, Splogging, Splogs, viacom, YouTube

 **Jonathan Bailey** is The Webmaster and author of Plagiarism Today, which he founded in 2005 as a way to help Webmasters going through content theft problems get accurate information and stay up to date on the rapidly-changing field. He is also a consultant to Webmasters and companies to help them devise practical content protection strategies and develop good copyright policies.

Email this author | All posts by Jonathan Bailey

## ADD NEW COMMENT



You are commenting as a Guest. You may select one to log into:

 

Guest   Register with DISQUS   Why?

**Name**

**Email**

**Website** (optional)

Use Media ▼

## 9 COMMENTS

Sort by   Popular now     Community Page   Comments feed

 **Maria** 1 year ago

I agree entirely with your assessment of the situation at Google regarding sploggers. As you know, it bothers me to no end that ==I have to spend many frustrating hours to get Google to act on any of the copyright infringement caused by someone splogging my content.== I'm almost ashamed to say that ==Google and it's partners,== the sploggers, have won this round. ==I simply don't have the time or the energy to stay on top of this.==

==90% of the slog-built sites out there are clearly recognizable as splogs due to their automated gathering of content.== Google should simply put a "three strikes and you're out" policy in place -- three complaints about a site in a rolling 30-day period should be enough to get the AdSense accounts revoked. This should be simple enough to automate, with a human doing the final check before clicking the revoke button.

==Google is doing the Internet community a disservice by taking this stance. It's enabling -- no, encouraging -- splogging activities.== And there's no value to a splog site.

Reply • More ▼      Like • Report

**PT** Plagiarism**Today**
(Content**Theft** | Copyright**Infringement** | **Plagiarism**)



| Home | About ↓ | Consulting | DMCA Contacts | Stock Letters | Stop Internet Plagiarism ↓ | Press | Contact |

# Google's DMCA Problem

By Jonathan Bailey • Mar 10th, 2009 • Category: Articles, DMCA, Legal Issues



When it comes to the DMCA, it seems that Google has been nothing but a headache. In the past four years of this site, I have lamented Google's lack of email contact information, developed a hack to get around that, I have faxed a 17-page DMCA notice to their Adsense department (which is separate from Blogger), accused Google of intentionally misleading content creators on how to file a notice with Adsense and consistently given Google low scores for its handling of the DMCA.

However, it appears that Google's poor handling of the DMCA does not stop with the frustrations of rights holders. A series of articles, first in the LA Weekly last month and last week on Ars Technica, have looked at Google's handling of DMCA takedowns from the perspective of those that are the subject of them, in these cases, music bloggers that use their Blogspot service.

The criticism is that, once a notice has been filed, Google does not always seem to notify the blogger it has pulled the content from and, when the blogger becomes aware, doesn't provide a copy of the takedown notice. This, in turn, makes filing a counter-notice (to have the material put back) almost impossible.

It seems that, when it comes to the DMCA, Google has a resoundingly negative review from both sides. This is something that Google needs to address as it strives to become not only the largest search engine, but one of the largest hosts. With so many new services expanding Google's function as a host of content, not merely an index, these issues can not be ignored.

But fixing these issues is not going to be easy for Google and it is going to require that they completely rethink their DMCA strategy, something they have been unwilling to do up until now.

## Bad All Around

The problem with Google's DMCA regime starts when one seeks to file a notice. If you visit their Blogger DMCA page, you see quickly that Google does not provide an email address for submitting a DMCA notice. The reason is that they require, at least from most notices, that the filer provide a handwritten signature, thus causing them to limit their contact methods to fax and snail mail.



However, this handwritten signature requirement is something of a perversion of the law. When asked in the past, Google has said that it is because the DMCA, in Section 512(c), requires "A physical or electronic signature of a person authorized to act on behalf of the owner of an

## DISCLAIMER

I am not a lawyer. I am just a legally-minded Webmaster/Writer frustrated with the plague of plagiarism online and doing something about it.

## SUBSCRIBE

 **Subscribe Via Email:**

## FREE PLAGIARISM HELP

Peformancing Legal Issues Forum

## OTHER WRITINGS

Blog Herald
BloggingTips
European Journalism Centre

## RECENT POSTS

Why To NOT Write Your Own License
3 Count: Zero the Hero
The Copyright Reforms You Want
3 Count: Sony's Song
The Future of the Copyright Office

## POPULAR TAGS

apple bittorrent Blogger Blogspot
Content-Theft Copyright
Copyright-
Infringement Copyright-
Law Copyright-Office Creative-Commons
DMCA DRM facebook fair-use Flickr Google
Hosting images licensing MPAA obama Orphan
Works Photography piracy plagiarism
plagiarism-detection

exclusive right that is allegedly infringed."

The problem is that the law clearly states that an "electronic signature" is adequate for a complete notice and the ESIGN act of 2000 defines an electronic signature as "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." This means that something as simple as typing your name at the end of an email or indicating a signature with a "/s/" should be adequate for a DMCA notice, meaning that emailing a notice is not just possible, but easiest on everyone.

The vast majority of Web hosts and search engines agree with this interpretation as do the attorneys I've spoken with, including many who dislike the notice and takedown system.

However, once these hurdles have been overcome and a successful notice has been filed, it seems that Google has changed its policy of notifying bloggers and letting them remove their own content in a less-destructive way. Now, Google deletes the posts themselves, making them more like other hosts, and, in some cases, doesn't seem to be notifying the bloggers they are pulling from.

But then comes the real problem for bloggers. Once the content has been removed, getting a copy of the notice is almost impossible. Google, reportedly, has been stonewalling bloggers that ask for copies of their notices. Google does have a long-standing relationship with Chilling Effects, a joint venture of several non profits and universities that is working to build a database of searchable database of cease and desist letters as well as DMCA notices, which it has promised to forward all of the DMCA notices it receives to for inclusion.

But despite this promise, it is clear that the volunteer-staffed service has fallen well behind. Only five notices have been posted since the beginning of the year and none were posted in January or so far in March.

The problem with this is that, without a copy of the notice, it is impossible for a person who has had works removed to file a counter-notice. Filing a counter-notice without being 100% certain that the original notice was filed in mistake opens one up to a wide range of legal problems that didn't exist with just a takedown.

Thus, without a copy of the DMCA notice, there is no viable way to correct a false or erroneous takedown. It isn't possible to know who demanded the takedown and what the specific work involved was (could be the post, an image in it or a link).

In short, Google has built a DMCA system that equally screws content creators and legitimate users. Likely, the only people benefiting from this system are spam bloggers, who have extra protection from having a DMCA notice filed against them and those that with to abuse the takedown process, as they can do so with little worry about being discovered.

## Fixing the Beast

It is clear that Google's DMCA system is hopelessly broken. Not only is the process for filing a notice unnecessarily difficult and legally dubious, but the way Google handles its own customers is worrisome and makes the system prone to abuse.

The two problems, however, are almost certainly related. Google's demand of a handwritten signature makes it difficult for rights holders to file a notice and virtually ensures that such notices will be in a non-text-friendly version. This increases the time it takes Google to process notices and makes it harder for Google to forward on the information that they get.



# Plagiarism

Podcast RIAA RSS RSS scraping Scraping search Search-Engines Spam Spam-Blogs Splogging Splogs sweden takedown The-Pirate-Bay USCO viacom Wordpress YouTube

---

## CREATIVE COMMONS



Blog Network:
Name:
Plagiarism Today
Topics:
plagiarism, content theft, copyright
Join my network
Blog Networks

The problem is that DMCA handling, like all abuse resolution, is overhead and smart companies are going to look for ways to trim such expenses, especially during down economic times. The fact that Google is cutting corners with its DMCA resolution process shouldn't be a shock to anyone. They are stripping down their process to the bare minimums of their interpretation of the law, but, if they changed their interpretation of the law to fit with other hosts, they might save money with their DMCA process.

Though allowing plain text DMCA notices would likely lead to a rise in the number filed, it would also make it easier to handle the notices on Google's end. They could more freely copy, paste and use the information in the notice. This would be helpful both in locating the links that need to be pulled down and in forwarding the relevant information to those who have had their posts removed. That would mean faster resolution for copyright holders and better service for Blogspot users.

With text-based notices, especially if Google provided a form-based system, much of the process could be automated, including the notification of the user. Privacy could be respected (when necessary), users would have the information they need to file counter-notices when appropriate and Google would spend less time, and thus less money, on each notice. It seems like an easy win-win-win.

However, Google has always refused to do this, at least for the general public. Either Google stands by its rather unusual interpretation of the DMCA or it is afraid of a perceived onslaught of notices that would result from easy filing and wants to fight email/form DMCA notices the best it can.

Either way, it is creating a situation where everyone suffers. As long as Google continues the status quo, there will be no winners.

## Conclusions

Google is and always has been something of a strange beast when it comes to copyright issues. Both the largest search engine and one of the largest blog hosts, they've always had an approach to the DMCA that is all their own. No one, quite literally, handles these disputes the same way.

The sad truth is that, as large as Google is and as great as they are at many of the things they do, this is one area that they have consistently gotten things wrong. Companies only a tiny fraction of Google's size, such as Automattic with WordPress.com, have gotten these issues just about perfect without breaking the bank.

The question isn't whether Google can fix these problems, but if it is willing to do so. Perhaps now with their flawed DMCA system impacting their own users as negatively as other copyright holders, change may finally be possible.

Of course, especially with Blogger, Google has promised that it's going to improve its system before, especially as it pertains to spam blogs. Sadly, none of that change has materialized as of yet.

Hopefully 2009 can be the year it happens.

 ShareThis

 **Protect Your Work. Subscribe to Plagiarism Today via Email or RSS.** 

**Tags:** Blogger, Blogspot, Content-Theft, copyright infirngement, DMCA, Google, Plagiarism

 **Jonathan Bailey** is The Webmaster and author of Plagiarism Today, which he founded in 2005 as a way to help Webmasters going through content theft problems get accurate information and stay up to date on the rapidly-changing field. He is also a consultant to Webmasters and companies to help them devise practical content protection strategies and develop good copyright policies.

Email this author | All posts by Jonathan Bailey

## ADD NEW COMMENT



You are commenting as a Guest. You may select one to log into:

 

Guest   Register with DISQUS   Why?

**Name**

**Email**

**Website** (optional)

Use Media ▼

## 5 COMMENTS

Sort by  Popular now        Community Page    Comments feed

**Childlife**  2 months ago

Jonathan -- I just wanted to stop by and thank you for all of the effort and hard work you have put into building such a helpful and reliable resource for bloggers. I just had my first unfortunate run-in with a splog that had stolen ten of my posts in entirety. I was able to successfully resolve the situation using the resources, tools and forms you have here at your site. I'm a subscriber now, and in my humble opinion, Google would do well to hire you as a consultant and give you free rein. Thanks again for your most excellent advice here!

~Michelle

Reply  •  More ▼                                        Like  •  Report

 **Jonathan Bailey** ⭐ · 2 months ago

You are very welcome, thank you for the compliments. I'm glad it worked out for you and definitely, if you get a chance, drop me an email to let me know the details. I'm always looking for experiences with hosts and sites so I can be aware of what people are experiencing.

Thank you again for the comment!

Reply · More ▾                                                    Like · Report

 **David Kool** 2 months ago

I run the website constant-content.com, and I couldn't agree more! We consistently are on the look out for thieves who steal content from our writers. We do everything possible to prevent such activities, ie: anti-scraping technology, embedded messages in our html married to google alerts and truncated visible summaries, but it is still difficult to stop all thievery. In the few instances that content has been stolen, ==we have identified where it was posted and immediately filed DMCA violation paperwork. We have followed up with email and phone calls and have heard nothing back.== All of our paperwork is filled out correctly, but ==we have been left staring at a website that, with impunity, continues to use content by our writers. It is frustrating all around and undermines the rules and authority that google has mandated itself to enforce.== It makes it seem as though their interest in taking on the responsibility for policing the search engine that they profit so handsomely from, is simply cosmetic.

David Kool
Product & Content Manager, Web Properties
www.Constant-Content.com
david.kool@constant-content.com

Reply · More ▾                                                    Like · Report

 **jm** 1 month ago

Google is a nightmare to deal with regarding stolen photos of children on orkut.com as well.

Reply · More ▾                                                    Like · Report

 **Jonathan Bailey** ⭐ · 1 month ago

Can you please email me some of the details? I haven't dealt with Google over Orkut but would like to hear about your experiences.

Reply · More ▾                                                    Like · Report

**TRACKBACKS**

(Trackback URL)

- **CopyrightLaw (CopyrightLaw)**
  03/10/2009 06:23 PM

  "Google's DMCA Problem" http://tinyurl.com/ajhebb

Exhibit D

0001

UNITED STATES DISTRICT COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3    _____

 4    PERFECT 10, INC.,                )
                                       )
 5                   Plaintiff,        )
                                       )
 6              v.                     ) No. CV07-5156 AHM (SHX)
                                       )
 7    MICROSOFT CORPORATION,           )
                                       )
 8                   Defendant.        )
      _____

 9

10              Videotape Deposition Upon Oral Examination

11                              of

12                          JUDY WESTON

13    _____

14          Taken at 14855 Northeast 36th Street, Building 115

15                        Redmond, Washington

16

17

18

19    DATE:  Wednesday, May 28, 2008

20

21    REPORTED BY:  Ronald L. Cook

22                  CCR, RMR, CRR

23

24

25

1   that a removal or disabling of access to infringing material

2   is not expeditious?

3                   MR. BRIDGES:  Objection.  Calls for a legal

4   opinion, vague and ambiguous, argumentative, lacks

5   foundation.

6                   THE WITNESS:  What do you mean by

7   "expeditious"?

8       Q.      BY MR. MAUSNER:  Do you understand what

9   "expeditious" means?

10                  MR. BRIDGES:  Objection.  Calls for a legal

11  conclusion.

12      Q.      BY MR. MAUSNER:  Go ahead.

13      A.      I don't understand what you mean by

14  "expeditious."

15      Q.      The removal or blocking of access is supposed

16  to be expeditious, and I'd like to know what your

17  understanding is of what is -- what is the time period for

18  the removal or blocking to be expeditious?

19                  MR. BRIDGES:  Objection.  Calls for a legal

20  conclusion, vague and -- vague and ambiguous, lacks

21  foundation, competence.

22                  THE WITNESS:  Yeah, I don't know the legal

23  answer to that question.

24      Q.      BY MR. MAUSNER:  Do you have a time frame in

25  which you believe that notices of infringement should be

1    processed and URLs removed or disabled?

2                        MR. BRIDGES:  Objection.  Calls for opinion

3    testimony, competence, lacks foundation, vague and

4    ambiguous.

5                        THE WITNESS:  We -- we do have a customer

6    satisfaction expectation.

7         Q.    BY MR. MAUSNER:  What is that?

8         A.    Approximately 72 hours.

9         Q.    And that's for removal or dis -- disabling of

10   infringing URLs; is that correct?

11                       MR. BRIDGES:  Objection.  Vague and

12   ambiguous, lacks foundation.

13                       THE WITNESS:  It's for disabling access to

14   URLs that are allegedly hosting infringing material.

15        Q.    BY MR. MAUSNER:  Going back to Exhibit 32,

16   what does the entry on the first page "11/27/2007, Edited by

17   gveith" mean?

18        A.    I don't know.

19        Q.    Who or what is gveith?

20        A.    I don't know.

21        Q.    Near the bottom of the first page there's an

22   entry "Exclusion=Result."  What does that mean?

23        A.    I don't know.

24        Q.    What do the asterisks at the end of the three

25   URLs at the bottom of Page 1 mean?

                    C E R T I F I C A T E

1

2

STATE OF WASHINGTON    )
                       ) ss.
3
COUNTY OF KING

4

5
            I, the undersigned officer of the Court, under,
6  my commission as a Notary Public in and for the State of
   Washington, hereby certify that the foregoing deposition
7  upon oral examination of the witness named herein was taken
   stenographically before me and thereafter transcribed under
8  my direction;

9            That the witness before the examination was
   first duly sworn by me to testify truthfully; that the
10 transcript of the deposition is a full, true and correct
   transcript of the testimony, including questions and answers
11 and all objections, motions, and exceptions of counsel made
   and taken at the time of the foregoing examination;

12

13           That I am neither attorney for nor a relative
   or employee of any of the parties to the action; further,
14 that I am not a relative or employee of any attorney or
   counsel employed by the parties hereto, nor financially
   interested in its outcome.

15

16

17           IN WITNESS WHEREOF, I have hereunto set my hand
   and seal this  // day of June 2008.

18

19

20

21                                 NOTARY PUBLIC in and for
22                                 the State of Washington,
                                   residing at Redmmond.  My
23                                 commission expires 04-6-10.

24

25

# Exhibit E

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

PERFECT 10, INC., a )
California corporation, )
)
        Plaintiff, )
) Case No.
    vs. ) CV04-9484AHM(SHx)
)[Consolidated with
) Case No.
GOOGLE, INC., a corporation; and) CV05-4753AHM(SHx)]
DOES 1 through 100, inclusive, )
)
        Defendant. )
_____)
PERFECT 10, INC., a California )
corporation, )
)
        Plaintiff, )
    vs. )
)
AMAZON.COM, INC., a corporation;)
A9.COM, INC., a corporation; and)
DOES 1 through 10, inclusive, )
)
        Defendants. )
_____)


VIDEOTAPED DEPOSITION OF

JOHN R. LEVINE, Ph.D.

_____

February 28, 2007

TRANSCRIPT CONTAINS CONFIDENTIAL INFORMATION


REPORTED BY:  CYNTHIA A. PACINI, CSR #6117, RMR, CRR

1577eb28-8602-4767-86c4-8996ba3e96c6

15:35:30   1   URLs in the box are images that would be indexed in

15:35:34   2   Google's Image Search and the webpage is a webpage

15:35:36   3   that would be indexed in Google's Web Search.

15:35:40   4           As I said before, if you want all three

15:35:42   5   removed, you clearly have the information to send

15:35:44   6   them a take-down notice.

15:35:49   7           MR. BRIDGES:  Again, counsel has gone into

15:35:50   8   colloquy on mute.

15:36:25   9           MR. MAUSNER:  Q.  Who would you say is

15:36:27  10   more responsible for the display of the images

15:36:29  11   appearing in Exhibit 25, the webmaster of

15:36:34  12   dimworld.free.fr or the webmaster for poufs.free.fr?

15:36:43  13           MR. BRIDGES:  Objection.  Vague and

15:36:45  14   ambiguous, argumentative, calls for a legal

15:36:47  15   conclusion and nonexpert opinion testimony, assumes

15:36:52  16   facts not in evidence.

15:36:58  17           THE WITNESS:  In this particular case, to

15:36:59  18   view this page, you need both the webpage and the

15:37:01  19   images.  So they all have -- they -- they all have

15:37:06  20   to be there to display this page, so I'm not sure

15:37:10  21   how you could say that one or the other was more

15:37:13  22   responsible.  They both have to provide the

15:37:15  23   material.

15:37:17  24           MR. MAUSNER:  Q.  Would you say they're

15:37:18  25   equally responsible?

| | | |
|---|---|---|
| 16:33:04 | 1 | tags and robots.txt, and other technical means to |
| 16:33:08 | 2 | encourage the Google bot to skip all or part of |
| 16:33:13 | 3 | various websites. |
| 16:33:18 | 4 | Q.   In your opinion, who had more control over |
| 16:33:22 | 5 | its index, Napster over its song index or Google |
| 16:33:27 | 6 | over its Image Search index? |
| 16:33:31 | 7 | MR. BRIDGES:  Objection.  Vague and |
| 16:33:32 | 8 | ambiguous. |
| 16:33:35 | 9 | THE WITNESS:  I mean, to the extent that |
| 16:33:39 | 10 | Napster controlled their index and Google controls |
| 16:33:42 | 11 | their index, it's the same.  You know, they were |
| 16:33:44 | 12 | each -- Napster was in control of its index and |
| 16:33:47 | 13 | Google is in control of its index. |
| 16:33:55 | 14 | MR. MAUSNER:  Q.  Has Google provided |
| 16:33:57 | 15 | image search results for any other search engines? |
| 16:34:03 | 16 | A.   I believe the answer is yes. |
| 16:34:06 | 17 | Q.   And do you know what search engines? |
| 16:34:09 | 18 | A.   I believe they used to provide results for |
| 16:34:11 | 19 | Amazon A9 service. |
| 16:34:15 | 20 | Q.   Any others that you're aware of? |
| 16:34:17 | 21 | A.   I believe they've also at times provided |
| 16:34:20 | 22 | search for AOL. |
| 16:34:25 | 23 | Q.   Any others? |
| 16:34:26 | 24 | A.   Not that I'm -- not that I can think of |
| 16:34:28 | 25 | offhand. |

1577eb28-8602-4767-86c4-8996ba3e96c6

Exhibit F

1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10  PERFECT 10, INC., a California          Case No. CV04-9484 AHM (SHx) √
    corporation,                            [Consolidated with Case No. CV 05-
11                                          4753 AHM (SHx)]
            Plaintiff,
12                                          ORDER ON GOOGLE INC.'S
            vs.                             OBJECTIONS TO, AND PERFECT
13                                          10, INC.'S MOTION FOR REVIEW
    GOOGLE INC., a corporation; and         OF, PORTIONS OF THE
14  DOES 1 through 100, inclusive,          MAGISTRATE JUDGE'S ORDER OF
                                            FEBRUARY 22, 2008 GRANTING IN
15          Defendants.                     PART AND DENYING IN PART
                                            PERFECT 10'S MOTION TO
16  _____     COMPEL

17  AND COUNTERCLAIM
                                            Hon. A. Howard Matz
18  _____
    PERFECT 10, INC., a California
    corporation,                            Courtroom:        14
19                                          Hearing Date:     April 14, 2008
            Plaintiff,                      Hearing Time:     10:00 am
20
            vs.                             Discovery Cutoff:  None Set
21                                          Pretrial Conference Date:  None Set
    AMAZON.COM, INC., a corporation;        Trial Date:   None Set
22  A9.COM, INC., a corporation; and
    DOES 1 through 100, inclusive,
23
            Defendants.
24  _____

25

26

27

28

1    **ORDER**

2          Google Inc.'s Objections To, and Perfect 10, Inc.'s Motion for Review

3    of, the Magistrate Judge's Order of February 22, 2008, Granting in Part and Denying

4    In Part Perfect 10, Inc.'s Motion to Compel, came on for hearing on April 14, 2008,

5    the Honorable A. Howard Matz presiding.  Jeffrey N. Mausner appeared on behalf

6    of Plaintiff Perfect 10, Inc. ("Perfect 10").  Michael T. Zeller and Rachel M. Herrick

7    appeared on behalf of Defendant and Counterclaimant Google Inc. ("Google").

8          Upon consideration of all papers and records on file and the parties'

9    oral argument, the Court orders as follows:

10

11    **<u>ORDERS ON PERFECT 10'S OBJECTIONS</u>**

12    **PERFECT 10'S OBJECTIONS REGARDING REQUEST NOS. 135, 136, AND**

13    **137**

14          Perfect 10's objections to the Magistrate Judge's Order regarding

15    Request Nos. 135, 136, and 137 are overruled, and the Magistrate Judge's Order

16    regarding those Requests is affirmed.

17    **PERFECT 10'S OBJECTIONS REGARDING (PROPOSED) FURTHER**

18    **ORDER NO. 2**

19          Perfect 10 objected to the Magistrate Judge's decision to not enter

20    (Proposed) Further Order No. 2.  Pursuant to the discussion at the hearing, the

21    (Proposed) Further Order is imposed mutually on both parties as to all past, present

22    and future requests for production.  Accordingly, on or before June 16, 2008,

23    Google shall provide Perfect 10 with a written response stating whether Google has

24    produced documents in response to each of Perfect 10's requests for documents,

25    listed by set number and request number.  If no documents responsive to a request

26    are located after a good-faith reasonable search and, therefore, none ultimately

27    produced, Google shall so state with respect to each such request.  On or before this

28

1   same date, Perfect 10 shall provide Google with a written response stating whether

2   Perfect 10 has produced documents in response to each of Google's requests for

3   documents, listed by set number and request number.  If no documents responsive to

4   a request are located after a good-faith reasonable search and, therefore, none

5   ultimately produced, Perfect 10 shall so state with respect to each such request.  The

6   obligations of Google and Perfect 10 herein to state whether they have produced

7   documents in response to each other party's requests for documents, listed by set

8   number and request number, shall apply to all future requests for documents as well,

9   and shall be subject to the parties' duties to seasonably supplement their discovery

10  responses pursuant to Fed. R. Civ. P. 26(e).

11  **PERFECT 10'S OBJECTIONS REGARDING REQUEST NO. 197**

12          Perfect 10's objections to the Magistrate Judge's denial of this Request

13  are sustained.  Google shall produce transcripts in its possession, custody or control

14  of depositions of any Google employees, officers and directors taken in connection

15  with the lawsuit *Columbia Pictures Industries, et. al. v. Drury, et. al.*, filed in the

16  United States District Court for the Southern District of New York.

17

18              **ORDERS ON GOOGLE'S OBJECTIONS**

19  **GOOGLE'S OBJECTIONS REGARDING REQUEST NOS. 128-131 and 194-**

20  **195**

21          Google's objections to Request Nos. 128-131 and 194-195 are

22  overruled, but the Requests are limited to reports, studies, or internal memoranda.

23  On or before June 16, 2008, Google shall produce the following:

24          All reports, studies, or internal memoranda ordered, requested, or

25  circulated by Bill Brougher, Susan Wojcicki, Walt Drummond, and Eric Schmidt

26  relating to the following topics:  search query frequencies, search query frequencies

27  for adult-related terms, number of clicks on adult images and images in general,

28

-3-     Case No. CV 04-9484 AHM (SHx) [Consolidated
        with Case No. CV 05-4753 AHM (SHx)]

1  traffic to infringing websites, the draw of adult content, and percentage of searches

2  conducted with the safe search filter off.  (Request Nos. 128-131).

3         All reports, studies, or internal memoranda circulated by or to John

4  Levine, Heraldo Botelho, Radhika Malpani, Jessie Jiang, Lawrence You, Diane

5  Tang, and Alexander MacGillivray relating to the following topics:  search query

6  frequencies, search query frequencies for adult-related terms, number of clicks on

7  adult images and images in general, traffic to infringing websites, the draw of adult

8  content, and percentage of searches conducted with the safe search filter off.

9  (Request Nos. 194-95).

10 **GOOGLE'S OBJECTIONS REGARDING REQUEST NO. 174**

11        Google's objections are sustained in part and overruled in part.  On or

12 before May 15, 2008, Google shall produce documents sufficient to describe

13 Google's attempts to develop or use any image recognition software capable of

14 matching a known still photographic image with another image in Google's search

15 engine index or search engine database.  Google is not ordered to produce

16 documents regarding any other types of image recognition technology.

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

1   **GOOGLE'S OBJECTIONS REGARDING REQUEST NO. 196**

2       Google's objections are overruled, subject to the following clarification

3   regarding the scope of Request No. 196.  Perfect 10 sought, and the Magistrate

4   Judge ordered, production of "Google's DMCA log."  As Perfect 10 clarified at the

5   hearing, "DMCA log" as used in Request No. 196 refers to a spreadsheet-type

6   document summarizing DMCA notices received, the identity of the notifying party

7   and the accused infringer, and the actions (if any) taken in response.  Google's

8   obligation to produce documents in response to Request No. 196 shall be subject to

9   the foregoing definition.

10       **IT IS SO ORDERED.**

11

12   DATED:  May 13, 2008

13

14   By

15       A. Howard Matz

16       United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

-5-

# Exhibit G

**FILED UNDER SEAL
PURSUANT TO PROTECTIVE ORDER**