Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Email: Jeff@mausnerlaw.com
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773

Attorneys for Plaintiff Perfect 10, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>GOOGLE, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendant.<br>_____<br>AND CONSOLIDATED CASE. | Case No. CV 04-9484 AHM (SHx)<br><br>Consolidated with Case No. CV 05-4753 AHM (SHx)<br><br>**DECLARATION OF JEFFREY N. MAUSNER SUBMITTED IN OPPOSITION TO GOOGLE'S THREE MOTIONS FOR SUMMARY JUDGMENT RE DMCA SAFE HARBOR FOR ITS WEB AND IMAGE SEARCH, BLOGGER SERVICE, AND CACHING FEATURE (DOCKET NOS. 428, 427, AND 426)**<br><br>**BEFORE JUDGE A. HOWARD MATZ**<br><br>Date:   October 5, 2009<br>Time:  10:00 a.m.<br>Place:  Courtroom 14, Courtroom of the Honorable A. Howard Matz<br><br>Discovery Cut-Off Date:  None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

I, Jeffrey N. Mausner, declare as follows:

1.      I am a member of the State Bar of California and admitted to practice before this Court.  I am counsel of record for Plaintiff Perfect 10, Inc. ("Perfect 10") in this action.  All of the matters stated herein are of my own personal knowledge, except where otherwise stated, and if called as a witness, I could and would testify competently thereto.  I make this declaration in Opposition to Google's Three Motions for Summary Judgment Re DMCA Safe Harbor For Its Web And Image Search, Blogger Service, and Caching Feature (Docket Nos. 428, 427, and 426).

**THE COURT-ORDERED NOTIFICATION PROCEDURE WAS NEVER IMPLEMENTED DUE TO GOOGLE'S DELAYS AND NON-COOPERATION**

2.      Attached as Exhibit A is a true and correct copy of portions of this Court's Order dated May 8, 2006, Docket No. 161, with Paragraph 9, entitled "Notification System," highlighted.

3.      On May 8, 2006, this Court ordered that Perfect 10 and Google "shall cooperate in good faith to implement a notification system, which will make it as expeditious and efficient as is reasonably feasible for P10 to provide Notices of Infringement to Google and for Google to receive those notices."  Preliminary Injunction Order, Docket No. 161, page 6 lines 10-14, attached as Exhibit A.  The Court cited Google's "willing[ness] to 'develop[] a special secure  interface that would allow P10 to'… simply check boxes" for the thumbnails to which Perfect 10 claims copyrights.  *Id*. lines 19-24.  The system would have allowed Perfect 10 to "check-the-box" next to Perfect 10's claimed infringements and submit it to Google for processing.

4.      Google's willingness to cooperate to develop such a system extended no further than its Preliminary Injunction brief.  I emailed counsel for Google on

May 11, 2006, as follows:

> As you know, Judge Matz ordered us to cooperate in good faith to implement a Notification System. Could you please let us know what Google's proposal is in this regard, and how long it will take for Google to create the system you proposed in your papers? Thanks, Jeff.

A true and correct copy of this email is attached as Exh. AA, page 1.

5.    Two weeks later, on May 25, 2006, having received no response from Google's counsel, I sent another email requesting a response. A true and correct copy of this email is attached as Exh. AA, page 2. On June 1, 2006, Google's counsel informed me that "I haven't had a chance to close the loop with my client about your earlier question regarding the notification tool but haven't forgotten about it." A true and correct copy of this email is attached as Exh. AA, page 3.

6.    At that point, Google decided to seek a stay of the preliminary injunction order, and did not do anything regarding the notification system. On July 26, 2006, I emailed Google's counsel as follows:

> In footnote 5 on page 6 of the Reply [in Support of Motion for Partial Stay of the District Court's Preliminary Injunction Order Pending Appeal], you state that Google is not doing anything to implement the notification system because "the injunction has been stayed pending a ruling on this motion. The parties must first resolve the fundamental issue concerning removal before they implement the details of the injunction." First, only the removal part of the injunction has been stayed, not the entire injunction. Second, I don't see why Google cannot implement the notification system while this part of the injunction is stayed. Google could still be notified to cease displaying the images.
>
> Please contact me to discuss how we should proceed with the check the box notification system. Thank you, Jeff Mausner.

A true and correct copy of this email is attached as Exh. AA, page 5.

7.    On July 27, 2006, almost 3 months after the Court's Order, Google's counsel informed me that "I am checking with my client on how to proceed regarding a notification system and hope to follow up with you soon." A true and correct copy of this email is attached as Exh. AA, page 6.

8.      Not hearing back from Google's counsel, on August 25, 2006, I again emailed to inquire about the notification system:

> What is the status of the check-the-box notification system?  Google is continuing to display thousands of my client's images despite an injunction which is in place.  Please advise.  Sincerely, Jeff Mausner

A true and correct copy of this email is attached as Exh. AA, page 7.

9.      On August 28, Google's counsel responded:

> I am not sure where this stands at the moment.  As you may recall … my principal contact at Google is away and unavailable until after Labor Day.  I will check in with him on his return.

A true and correct copy of this email is attached as Exh. AA, page 9.

10.      On September 13, 2006, I exchanged emails with Google's counsel about the notification system.  True and correct copies of these emails are attached as Exh. AA, page11.

11.      On September 29, I wrote to Google's counsel:  "When are you going to get back to me with Google's proposal regarding a 'check the box" notification system discussed in the Court's preliminary injunction order?"  A true and correct copy of this email is attached as Exh. AA, page 12.

12.      Again, on November 3, I emailed Google's counsel, asking "When does Google plan to provide a proposal to us regarding implementing the check the box notification system, as ordered by Judge Matz six months ago?"  A true and correct copy of this email is attached as Exh. AA, page 13.

13.      It was not until November 6, 2006, six months after the Court's Order, that Google proposed anything to Perfect 10 with regards to implementation of the notification system.   A true and correct copy of this email (without attachments) is attached as Exh. AA, page 16.  There were several problems with the notification system that Google proposed, and I wrote back to Google's counsel two days later, on November 8, setting forth these problems and proposing a system that would eliminate the problems and be much easier to implement.  A true and correct copy

1  of this letter is attached as Exh. AA, pages 17-18.  Oral argument at the Ninth
2  Circuit regarding the preliminary injunction took place on November 15, 2006, and
3  after that, Google would not even make the pretense of cooperating on a
4  notification system.  To my knowledge, Google did not do anything to implement a
5  notification system.

**PERFECT 10 HAS NEVER CONCEDED THAT ITS SUIT IS NOT BASED**

**ON THE 2001 NOTICES (GROUP A NOTICES)**

14.     On page 8 lines 12-14 of its Search Motion, Google states: "During
discovery, P10 produced seventeen notices from 2001 (collectively, the 'Group A
Notices'). [citation omitted.]  P10 has conceded that its suit is not based on these
alleged notices, so they are irrelevant here. Kassabian, Ex B."

15.     Perfect 10 never conceded that its suit is not based on these notices.
The only thing Google cites for this proposition, Exhibit B to the Kassabian
declaration, is a page from a joint discovery stipulation, which says: "Google for
some reason claims that these notices are somehow relevant [sic] to the case."
This is an obvious typographical error that can be seen from the context – it should
say that "Google for some reason claims that these notices are somehow irrelevant
to the case."  Google obviously does not claim that the notices are relevant; Google
takes the position that the notices are *irrelevant*.  Furthermore, the very next two
sentences after this statement make clear why Perfect 10 believes these notices are
*relevant* to the case:

> In fact, in 2001, a) Google waited until Perfect 10 sent it 16 notices in
> 2001 before claiming that Google could not do anything, b) Google
> never suggested that there were any deficiencies in Perfect 10 notices,
> c) despite being ordered to do so, Google has still not identified the
> person who sent Perfect 10 the email in July of 2001 claiming that
> Google could not do anything with respect to taking down infringing
> material, and d) despite being ordered to do so, Google has still not
> produced the notices it received from copyright holders in 2001 or any
> DMCA log relating to those notices. That Perfect 10's notices were
> sufficient is evidenced by the fact that a) Perfect 10 attached actual
> copies of the infringed images to many of the notices, and b) Google
> never stated that the notices were deficient or provided any

instructions as to how to correct them if they were deficient. So the statement that was meant to be made is that Google claims that the notices are *irrelevant*. Furthermore, even if this was not a typographical error, it would still not be a waiver of the 2001 notices by Perfect 10. It would merely be stating that *Google* claims the notices are relevant, not a concession by Perfect 10 that the notices are irrelevant.

16. Attached hereto as Exhibit M is a true and correct copy of an email I received from Google Tech on June 27, 2001, in response to a DMCA notice that I sent to Google on June 22, 2001. Google incorrectly stated:

> [T]here is nothing that Google can do to remove the offending content without the cooperation of the site administrator. … Only an administrator can, by including code that blocks our robots or placing a request with us, prevent his/her page from being listed. Without administrator cooperation we cannot exclude material available on the Internet from our index.

## AUTHENTICATION OF EXHIBITS

17. Attached as Exhibit B is a true and correct copy of a letter I received from Google's counsel, Rachel Herrick Kassabian, dated May 20, 2009, with portions highlighted. This letter makes clear that Google takes the position that it does not have to remove or disable access to usenet sites, no matter what notice Perfect 10 gives:

> Additionally, as Google has previously explained, it does not crawl or index Usenet servers or those portions of websites only accessible by password. If content is not indexed by Google such that there is no link to that content in Google Web or Image Search results, it is not the proper subject of a purported DMCA notice to Google, because there is no link or thumbnail to disable or remove. The inclusion in Perfect 10's purported May 7, 2009 notice of printouts of Google Web Search results for giganews.com and newsdemon.com does not change this fact. Indeed, the cover letter accompanying the May 7 purported notice acknowledges that Google's Web Search results for these sites link to login or sign-up pages, not to allegedly infringing content.

1    18.    Attached as Exhibit C are true and correct copies of articles and some
2  of the related comments, regarding Google's lack of compliance with DMCA
3  procedures.  These articles were printed from the websites indicated by the URL in
4  the footer of each page, on the date shown.  Portions of the articles and comments
5  have been highlighted.
6    19.    I took the deposition of Microsoft's DMCA agent, Judy Weston, on
7  May 28, 2008.  Attached hereto as Exhibit D is a true and correct copy of portions
8  from the transcript of that deposition, with portions highlighted.
9    20.    I took the deposition of Google's expert, Dr. John R. Levine, on
10 February 28, 2007.  Attached hereto as Exhibit E is a true and correct copy of
11 portions from the transcript of that deposition, with portions highlighted.
12    21.    Attached as Exhibit F is a true and correct copy of this Court's Order
13 dated May 13, 2008, Docket No. 294, with portions highlighted.
14    22.    I took the Rule 30(b)(6) deposition of Alexa Internet, Inc. on
15 September 18, 2008.  Alexa designated Derrick Pallas as its 30(b)(6) witness.
16 Alexa has designated that transcript highly confidential.  Accordingly, portions of
17 that transcript are filed separately under seal, as Exhibit G.  Exhibit G is a true and
18 correct copy of portions from the transcript of that deposition, filed separately
19 under seal pursuant to protective order.
20    23.    Exhibit 9 to the Declaration of Dr. Norman Zada, filed concurrently,
21 is a computer disk which contains, among other data, true and correct copies of
22 Perfect 10's Copyright Registration Certificates, issued by the United States
23 Copyright Office, for the copyrights in "the Sample" of images used in this
24 Opposition.
25    24.    I took the Rule 30(b)(6) deposition of Google on December 19, 2006.
26 Google designated Alexander Macgillivray, its in-house counsel, as its 30(b)(6)
27 witness.  Google has designated portions of that transcript confidential.
28

Accordingly, portions of that transcript are filed separately under seal, as Exhibit H. Exhibit H is a true and correct copy of portions from the transcript of that deposition, filed separately under seal pursuant to protective order.

25. Attached hereto as Exhibit I is a true and correct copy of portions of the Declaration of Alexander Macgillivray in Support of Google's Opposition to Plaintiff's Motion for Preliminary Injunction, filed on September 26, 2005.

26. Attached hereto as Exhibit J is a true and correct copy of portions of Google's Objections to the Magistrate Judge's Order of February 22 2008 Granting In Part Plaintiff Perfect 10, Inc.'s Motion To Compel, filed on March 14, 2008 (Docket No. 258).

27. Filed separately under seal as Exhibit K is a true and correct copy of the Declaration of Heraldo Botelho in Support of Google's Memorandum in Support of Google's Proposed Form of Preliminary Injunction Pursuant to February 21, 2006 Order, without exhibits.

**GOOGLE'S PUBLICATION OF PERFECT 10 DMCA NOTICES ON CHILLINGEFFECTS.ORG**

28. Perfect 10 has repeatedly complained to Google about Google sending Perfect 10's DMCA notices to Chillingeffects.org, to be published on the Internet. *See, e.g.,* Zada Decl. ¶64, Exh. 48. I also had telephone conversations with Google's attorneys regarding this. Attached hereto as Exhibit L are true and correct copies of emails between Valerie Kincaid, an attorney for Perfect 10, and Tom Nolan, an attorney for Google, in which Google takes the position that it can and will continue to publicize Perfect 10's DMCA notices on Chillingeffects.org. *See also* Declaration of Dean Hoffman ¶¶4, 7, 9.

29. Filed separately under seal as Exhibit N are true and correct copies of DMCA notices that Les Schwartz sent to Google. These notices were produced by Google in discovery, and designated Confidential by Google.

1

30.    Google redacted material from many of the documents it produced which relate to DMCA notices and Google's response to such notices.  Perfect 10 has been attempting to obtain information from Google regarding what was redacted from those documents since June 3, 2009.  True and correct copies of correspondence regarding Perfect 10's attempts to obtain this information is attached as Exhibit O.

31.    I took the Rule 30(b)(6) deposition of Google on November 19, 2008.  Google designated Shantal Rands (Poovala) as its 30(b)(6) witness regarding certain topics.  Google has designated that transcript highly confidential.  Accordingly, portions of that transcript are filed separately under seal, as Exhibit P.  Exhibit P is a true and correct copy of portions from the transcript of that deposition, filed separately under seal pursuant to protective order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.  Executed this 9th day of August, 2009 in Los Angeles County, California.

*Jeffrey N. Mausner*

Jeffrey N. Mausner

Declaration of Jeffrey N. Mausner in Opposition to Google's
Three Motions for Summary Judgment re DMCA Safe Harbor

# Exhibit A

ENTERED
CLERK, U.S. DISTRICT COURT

MAY 9 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

MAY - 8 2006

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

PERFECT 10, Inc.

    Plaintiff,

v.

GOOGLE, INC., *et al.*

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. CV 04-9484 AHM (SHx)
consolidated with
CASE NO. CV 05-4753 AHM (SHx)

PRELIMINARY   INJUNCTION
ORDER

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

Having considered all of the pleadings and papers filed in support of and in opposition to the motion of Plaintiff Perfect 10, Inc. ("P10") for preliminary injunction against Defendant Google, Inc., and having previously issued an order granting in part that motion and stating its reasoning, *see Perfect 10, Inc. v. Google, Inc.*, 416 F.Supp.2d 828 (C.D. Cal. 2006) (the "Initial Order"), which Initial Order is incorporated herein by reference,

**THE COURT THEREFORE ORDERS AND DECREES AS FOLLOWS:**

1.    Google is preliminarily enjoined from engaging in the infringing conduct described in the Initial Order, pursuant to the procedures set forth below.

b.    i.    If within five business days after its receipt of such a challenge Google has not implemented the take-down procedures set forth in ¶ 5, P10 may seek an order compelling compliance.

     ii.    If the Court is thereupon required to determine whether the allegedly infringing thumbnail must be taken down, the prevailing party will be entitled to recover all its reasonable attorneys' fees and costs associated with the proceeding.

9.    **Notification System.** Without limiting the parties' respective obligations set forth elsewhere in this Order, P10 and Google shall cooperate in good faith to implement a notification system, which will make it as expeditious and efficient as is reasonably feasible for P10 to provide Notices of Infringement to Google and for Google to receive those notices. If such a system is consensually implemented, P10 may provide Google with information regarding allegedly infringing thumbnails at any time; however, Google shall not be required to act on those allegedly infringing thumbnails more often than once per month. This paragraph shall be construed consistent with Google's representation that it is willing to "develop[] a special secure interface that would allow P10 to do Google Image Searches, simply check boxes for [the] thumbnail[s for which P10] claims to own [the copyrights], and click on a web page button which would automatically submit them to Google for processing." *See* Google's Response to Plaintiff's Brief Re Form of Preliminary Injunction at 6 n. 4.

10.    **Format of Notifications and Reports.** Notices of Infringement, Reports of Compliance, Reports of Contested Thumbnails, and all other communications made pursuant to this Order shall be provided in a format

1   that will facilitate compliance with this injunction.  The parties shall
2   supplement all court filings resulting from this Order with an electronic
3   copy placed in the Court's courtesy box.
4
5   11.   **Modifications.**  This Order may be modified by subsequent application of
6         the parties, who also may stipulate to alternative means, such as the
7         development of image recognition technology to accomplish the objectives
8         of this injunction.
9
10  12.   **Bond.**  This injunction shall take effect upon P10 filing a cashier's check in
11        the amount of $100,000 and serving Google with notice that it has done so.
12
13
14
15  IT IS SO ORDERED.
16
17  DATE: May ___8___, 2006                   _____
18                                            A. Howard Matz
19                                            United States District Judge
20
21
22
23
24
25
26
27
28

# Exhibit AA

## Jeffrey Mausner

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Thursday, May 11, 2006 6:21 PM |
| **To:** | Bridges, Andrew |
| **Cc:** | Norm Zada; Dan Cooper; Russell Frackman (Russell Frackman) |
| **Subject:** | Notification System |

Hi Andrew. As you know, Judge Matz ordered us to cooperate in good faith to implement a Notification System. Could you please let us know what Google's proposal is in this regard, and how long it will take for Google to create the system you proposed in your papers? Thanks, Jeff.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025-1742
Telephone: (310)473-3333 - (323)965-1200
Facsimile: (310)473-8303 - (323)965-1919
e-mail: jeffmausner@bmrlaw.com

## Jeffrey Mausner

**From:** Jeff Mausner [jeffmausner@bmrlaw.com]
**Sent:** Thursday, May 25, 2006 3:10 PM
**To:** 'Bridges, Andrew'
**Cc:** 'Norm Zada'; 'Dan Cooper'; 'Russell Frackman (Russell Frackman)'; JGolinveaux@winston.com
**Subject:** RE: Notification System

Hi Andrew. I never heard back from you on this. Could you please respond. Thanks, Jeff.

---

**From:** Jeff Mausner [mailto: effmausner@bmrla .com]
**Sent:** Thursday, May 11, 2006 6:21 PM
**To:** ridges, Andre
**Cc:** Norm Zada; an ooper; Russell rackman Russell rackman
**Subject:** Notification System

Hi Andrew. As you know, Judge Matz ordered us to cooperate in good faith to implement a Notification System. Could you please let us know what Google's proposal is in this regard, and how long it will take for Google to create the system you proposed in your papers? Thanks, Jeff.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025-1742
Telephone: (310)473-3333 - (323)965-1200
Facsimile: (310)473-8303 - (323)965-1919
e-mail: jeffmausner@bmrlaw.com

## Jeffrey Mausner

| | |
|---|---|
| **From:** | Bridges, Andrew [ABridges@winston.com] |
| **Sent:** | Thursday, June 01, 2006 10:56 AM |
| **To:** | Jeff Mausner; Golinveaux, Jennifer |
| **Cc:** | Bridges, Andrew |
| **Subject:** | RE: Google Appeal Brief; Motion to Stay |

Jeff, I received it yesterday. Thanks for checking. I haven't had a chance to close the loop with my client about your earlier question regarding the notification tool but haven't forgotten about it.

Andrew

> riginal Message
> **From:** Jeff Mausner [mailto: effmausner@bmrla .com]
> **Sent:** Thursday, June 01, 2006 10:44 AM
> **To:** ridges, Andre ; Golinveau , Jennifer
> **Subject:** Google Appeal rief; Motion to Stay
>
> Andrew and Jennifer: Did you receive our Google Appeal Brief? Jennifer, when you hear back from Google, please call me regarding your proposed Motion to Stay; I have the information from my client. I'll be on my cell phone today. Thanks, Jeff.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025-1742
Telephone: (310)473-3333 - (323)965-1200
Facsimile: (310)473-8303 - (323)965-1919
e-mail: jeffmausner@bmrlaw.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*********************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

Exh. AA, Page 3

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Friday, June 02, 2006 10:41 PM |
| **To:** | Bridges, Andrew |
| **Cc:** | (JGolinveaux@winston.com); Norm Zada (normanz@earthlink.net); Dan Cooper (Dan@perfect10.com) |
| **Subject:** | Preliminary Injunction Order |

Hi Andrew. If Perfect 10 agreed that the language "and permanently remove" could be taken out of the PI, would Google agree that it would make its best efforts to cease displaying from its servers not only the infringing thumbnails that reside at the specific location on the servers that Perfect 10 gives the URL for, but also any other copies of that thumbnail that reside on Google's servers? Jeff.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, CA 90025-1742
Telephone: (310)473-3333 - (323)965-1200
Facsimile: (310)473-8303 - (323)965-1919
e-mail: jeffmausner@bmrlaw.com

# Jeff Mausner

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Wednesday, July 26, 2006 2:17 PM |
| **To:** | Andrew Bridges (ABridges@winston.com) |
| **Cc:** | (JGolinveaux@winston.com); Norm Zada (normanz@earthlink.net); Dan Cooper (Dan@perfect10.com); Russell Frackman (Russell Frackman) |
| **Subject:** | Notification system |

Hi Andrew. I did not receive Google Inc.'s Reply in Support of Motion for Partial Stay of the District Court's Preliminary Injunction Order Pending Appeal in the mail, until today. That is surprising, since the proof of service says it was mailed to me on July 18, more than a week ago. Could you please check to see how it could take more than a week for that to get to me in the mail?

In footnote 5 on page 6 of the Reply, you state that Google is not doing anything to implement the notification system because "the injunction has been stayed pending a ruling on this motion. The parties must first resolve the fundamental issue concerning removal before they implement the details of the injunction." First, only the removal part of the injunction has been stayed, not the entire injunction. Second, I don't see why Google cannot implement the notification system while this part of the injunction is stayed. Google could still be notified to cease displaying the images.

Please contact me to discuss how we should proceed with the check the box notification system. Thank you, Jeff Mausner.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1742
Telephone: (310)473-3333 - (323)965-1200
Facsimile: (310)473-8303 - (323)965-1919
e-mail: jeffmausner@bmrlaw.com

Exh. AA, Page 5

# Jeff Mausner

Jeff,

I'm not sure how to check with the Postal Service about first-class mail. We have on occasion experienced similar delays receiving materials from you and from others.

I am checking with my client on how to proceed regarding a notification system and hope to follow up with you soon.

Best wishes,

Andrew

-----Original Message-----
From: Jeff Mausner [mailto:jeffmausner@bmrlaw.com]
Sent: Wednesday, July 26, 2006 2:17 PM
To: Bridges, Andrew
Cc: Golinveaux, Jennifer; Norm Zada; Dan Cooper; Russell Frackman (Russell Frackman)
Subject: Notification system

Hi Andrew. I did not receive Google Inc.'s Reply in Support of Motion for Partial Stay of the District Court's Preliminary Injunction Order Pending Appeal in the mail, until today. That is surprising, since the proof of

service says it was mailed to me on July 18, more than a week ago. Could you please check to see how it could take more than a week for that to get to me in the mail?

In footnote 5 on page 6 of the Reply, you state that Google is not doing anything to implement the notification system because "the injunction has been stayed pending a ruling on this motion. The parties must first resolve the fundamental issue concerning removal before they implement the details of the injunction." First, only the removal part of the injunction has been stayed, not the entire injunction. Second, I don't see why Google cannot implement the notification system while this part of the injunction is stayed. Google could still be notified to cease displaying the images.

Please contact me to discuss how we should proceed with the check the box notification system. Thank you, Jeff Mausner.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner

Exh. AA, Page 6

# Jeff Mausner

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Friday, August 25, 2006 4:46 PM |
| **To:** | 'Bridges, Andrew' |
| **Cc:** | 'Golinveaux, Jennifer'; 'Dan Cooper'; 'Russell Frackman (Russell Frackman)'; Norm Zada (normanz@earthlink.net) |
| **Subject:** | RE: Google/Perfect 10 (RE: Notification system) |

Andrew,

What is the status of the check-the-box notification system?  Google is continuing to display thousands of my client's images despite an injunction which is in place.

Please advise.

Sincerely,

Jeff Mausner


-----Original Message-----
From: Bridges, Andrew [mailto:ABridges@winston.com]
Sent: Thursday, July 27, 2006 5:48 PM
To: Jeff Mausner
Cc: Golinveaux, Jennifer; Dan Cooper; Russell Frackman (Russell Frackman); Bridges, Andrew
Subject: Google/Perfect 10 (RE: Notification system)


Jeff,

I'm not sure how to check with the Postal Service about first-class mail.  We have on occasion experienced similar delays receiving materials from you and from others.

I am checking with my client on how to proceed regarding a notification system and hope to follow up with you soon.

Best wishes,

Andrew

-----Original Message-----
From: Jeff Mausner [mailto:jeffmausner@bmrlaw.com]
Sent: Wednesday, July 26, 2006 2:17 PM
To: Bridges, Andrew
Cc: Golinveaux, Jennifer; Norm Zada; Dan Cooper; Russell Frackman (Russell Frackman)
Subject: Notification system


Hi Andrew.  I did not receive Google Inc.'s Reply in Support of Motion for Partial Stay of the District Court's Preliminary Injunction Order Pending Appeal in the mail, until today. That is surprising, since the proof of
service says it was mailed to me on July 18, more than a week ago.  Could you please check to see how it could take more than a week for that to get to me in the mail?

In footnote 5 on page 6 of the Reply, you state that Google is not doing anything to implement the notification system because "the injunction has been stayed pending a ruling on this motion.  The parties must first resolve the fundamental issue concerning removal before they implement the details of the injunction."  First, only the removal part of the

1

injunction has been stayed, not the entire injunction. Second, I don't see why Google cannot implement the notification system while this part of the injunction is stayed. Google could still be notified to cease displaying the images.

Please contact me to discuss how we should proceed with the check the box notification system. Thank you, Jeff Mausner.

This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1742
Telephone: (310)473-3333 - (323)965-1200
Facsimile: (310)473-8303 - (323)965-1919

e-mail: jeffmausner@bmrlaw.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
*************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

Exh. AA, Page 8

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Bridges, Andrew [ABridges@winston.com] |
| **Sent:** | Monday, August 28, 2006 4:23 PM |
| **To:** | Jeff Mausner |
| **Cc:** | Golinveaux, Jennifer; Dan Cooper; Russell Frackman (Russell Frackman); Bridges, Andrew |
| **Subject:** | Google/Perfect 10 (RE: Notification system) |

Jeff,

I am not sure where this stands at the moment.  As you may recall from when we discussed the timing of the appellate briefs, my principal contact at Google is away and unavailable until after Labor Day.  I will check in with him on his return.

By the way, today we sought and obtained a 14-day extension for our brief, which will now be due on September 19.  I indicated that you had consented pursuant to our discussion when you obtained your extension.  I expect an order from the Ninth Circuit shortly.

Best wishes,

Andrew

-----Original Message-----
From: Jeff Mausner [mailto:jeffmausner@bmrlaw.com]
Sent: Friday, August 25, 2006 4:46 PM
To: Bridges, Andrew
Cc: Golinveaux, Jennifer; 'Dan Cooper'; 'Russell Frackman (Russell Frackman)'; Norm Zada
Subject: RE: Google/Perfect 10 (RE: Notification system)


Andrew,

What is the status of the check-the-box notification system?  Google is continuing to display thousands of my client's images despite an injunction which is in place.


Please advise.


Sincerely,


Jeff Mausner


-----Original Message-----
From: Bridges, Andrew [mailto:ABridges@winston.com]

Sent: Thursday, July 27, 2006 5:48 PM
To: Jeff Mausner
Cc: Golinveaux, Jennifer; Dan Cooper; Russell Frackman (Russell Frackman); Bridges, Andrew
Subject: Google/Perfect 10 (RE: Notification system)


Jeff,

I'm not sure how to check with the Postal Service about first-class mail.
We have on occasion experienced similar delays receiving materials from you and from

1

others.

I am checking with my client on how to proceed regarding a notification system and hope to follow up with you soon.

Best wishes,

Andrew

-----Original Message-----
From: Jeff Mausner [mailto:jeffmausner@bmrlaw.com]
Sent: Wednesday, July 26, 2006 2:17 PM
To: Bridges, Andrew
Cc: Golinveaux, Jennifer; Norm Zada; Dan Cooper; Russell Frackman (Russell Frackman)
Subject: Notification system

Hi Andrew.  I did not receive Google Inc.'s Reply in Support of Motion for Partial Stay of the District Court's Preliminary Injunction Order Pending Appeal in the mail, until today. That is surprising, since the proof of service says it was mailed to me on July 18, more than a week ago.  Could you please check to see how it could take more than a week for that to get to me in the mail?

In footnote 5 on page 6 of the Reply, you state that Google is not doing anything to implement the notification system because "the injunction has been stayed pending a ruling on this motion.  The parties must first resolve the fundamental issue concerning removal before they implement the details of the injunction."  First, only the removal part of the injunction has been stayed, not the entire injunction.  Second, I don't see why Google cannot implement the notification system while this part of the injunction is stayed. Google could still be notified to cease displaying the images.

Please contact me to discuss how we should proceed with the check the box notification system.  Thank you, Jeff Mausner.

 This e-mail may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges, or which is confidential.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited.  Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Berman, Mausner & Resser
11601 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1742
Telephone: (310)473-3333 – (323)965-1200
Facsimile: (310)473-8303 – (323)965-1919

e-mail: jeffmausner@bmrlaw.com

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate

Exh. AA, Page 10

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Wednesday, September 13, 2006 11:41 PM |
| **To:** | 'Bridges, Andrew' |
| **Cc:** | Norm Zada (normanz@earthlink.net); Russell Frackman (Russell Frackman); Dan Cooper (Dan@perfect10.com) |
| **Subject:** | RE: P10 v. Google: notification tool |

Hi Andrew. We do not reject the possibility of this, but we cannot agree until we see a proposal which explains how the tool would work. Jeff.

-----Original Message-----
From: Bridges, Andrew [mailto:ABridges@winston.com]
Sent: Wednesday, September 13, 2006 4:01 PM
To: Jeffrey N. Mausner (E-mail)
Cc: Bridges, Andrew
Subject: P10 v. Google: notification tool

Jeff,

As you know we're in the middle of preparing our fourth brief on the appeal and I'm pretty focused on that at the moment but I want to follow up with you on one point about the notification tool. It is Google's understanding that, once the tool is in place, that would be the exclusive method for notifications to Google by P10, whether under the injunction or for DMCA purposes. Is that agreed? Please let me know. Thanks.

Andrew

_____

Andrew P. Bridges  abridges@winston.com
Winston & Strawn LLP
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone (415) 591-1482      Facsimile (415) 591-1400
Mobile (415) 420-1482

_____

The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
******************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

Exh. AA, Page 11

## Jeffrey Mausner

**From:**     Jeff Mausner [jeffmausner@bmrlaw.com]
**Sent:**      Friday, September 29, 2006 6:37 PM
**To:**        'Bridges, Andrew'
**Cc:**        'Golinveaux, Jennifer'; 'Lee, Susan'; 'Dan Cooper'; 'Norm Zada'
**Subject:**   RE: Depositions of Google employees, Notification System

Andrew: Two issues: 1) When are you going to get back to me with Google's proposal regarding a "check the box" notification system discussed in the Court's preliminary injunction order? 2) When are you going to get back to me regarding my February 20 email? We need to get the information I requested regarding Google employees so we can take meaningful depositions, and if you will not provide Perfect 10 with the information we requested, we will have no choice but to contact Magistrate Judge Hillman next week.  Sincerely, Jeff Mausner.

---

**From:** Jeff Mausner [mailto: effmausner@bmrla .com]
**Sent:** Monday, September 25, 2006 4:49 PM
**To:** Jeff Mausner ;  ridges, Andre
**Cc:** Golinveau , Jennifer ;  ee, Susan ;  an  ooper ; Norm Zada
**Subject:** RE:  epositions of Google employees

Hi Andrew.  I left a message on your voice mail.  Please give me a call to discuss this.  Thanks, Jeff.

---

**From:** Jeff Mausner [mailto: effmausner@bmrla .com]
**Sent:** Saturday, September 23, 2006 2:04 PM
**To:**  ridges, Andre
**Cc:** Golinveau , Jennifer ;  ee, Susan ;  an  ooper ; Norm Zada
**Subject:** RE:  epositions of Google employees

```
Andrew, your understanding expressed below is simply incorrect. I made it clear
throughout the telephonic conference with Judge Hillman that Perfect 10 also wanted
to take depositions other than just regarding the "MEGA requests," and I
specifically mentioned depositions of Google employees that have handled the
processing of Perfect 10 DMCA notices.
Judge Hillman agreed that the meet and confer procedure should extend to all of
these depositions, and you agreed to act in good faith to identify the appropriate
people who are most knowledgeable.

I will call you on Monday to meet and confer regarding the names of the employees
requested in my e-mail below, as well as the names of employees requested in our
Document Requests 31-34.  Jeff.
```

---

**From:**  ridges, Andre   [mailto:A ridges@ inston.com]

7/22/2009

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Friday, November 03, 2006 5:14 PM |
| **To:** | Andrew Bridges; JGolinveaux@winston.com |
| **Cc:** | selee@winston.com; Norm Zada; Dan Cooper; Russell Frackman (Russell Frackman) |
| **Subject:** | FW: Perfect 10 v. Google |


etter to
ner.pdf  106 I

      Andrew, are you available on Monday to meet and confer regarding the Rule 30b6 deposition and your attached letter?  At that time, we would like the names and background information for the employees who sent the various emails mentioned in the 30b6 notice.

When does Google plan to provide a proposal to us regarding implementing the check the box notification system, as ordered by Judge Matz six months ago?
Jeff.

-----Original Message-----
From: Bridges, Andrew [mailto:ABridges@winston.com]
Sent: Wednesday, November 01, 2006 4:48 PM
To: Jeffrey N. Mausner (E-mail)
Cc: Golinveaux, Jennifer; Bridges, Andrew
Subject: Perfect 10 v. Google


Jeff,

Please see the attached letter.

_____

Andrew P. Bridges abridges@winston.com
Winston & Strawn LLP
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone (415) 591-1482     Facsimile (415) 591-1400
_____

 <<Letter to Mausner.pdf>>


The contents of this message may be privileged and confidential. Therefore, if this message has been received in error, please delete it without reading it. Your receipt of this message is not intended to waive any applicable privilege. Please do not disseminate this message without the permission of the author.
************************************************************************
**
Any tax advice contained in this email was not intended to be used, and cannot be used, by you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as amended.

Exh. AA, Page 13

**Jeffrey Mausner**

| | |
|---|---|
| **From:** | JeffMausner@bmrlaw.com |
| **Sent:** | Monday, November 06, 2006 1:10 PM |
| **To:** | Golinveaux, Jennifer; Jeff Mausner |
| **Cc:** | Normanz@earthlink.net |
| **Subject:** | RE: Perfect 10 v. Google |

Hi Jennifer. Let's do it at 3. Jeff.


-----Original Message-----

From: "Golinveaux, Jennifer" <JGolinveaux@winston.com>
Subj: RE: Perfect 10 v. Google
Date: Mon Nov 6, 2006 10:12 am
Size: 2K
To: "Jeff Mausner" <jeffmausner@bmrlaw.com>
cc: "Bridges, Andrew" <ABridges@winston.com>


Hi Jeff. I am available today to further discuss P10's 30(b)(6) notice. Between 2 and 4 is best.


Jennifer

-----Original Message-----
From: Jeff Mausner [mailto:jeffmausner@bmrlaw.com]
Sent: Friday, November 03, 2006 4:14 PM
To: Bridges, Andrew; Golinveaux, Jennifer
Cc: Lee, Susan; Norm Zada; Dan Cooper; Russell Frackman (Russell Frackman)
Subject: FW: Perfect 10 v. Google


Andrew, are you available on Monday to meet and confer regarding the Rule 30b6 deposition and your attached letter? At that time, we would like the names and background information for the employees who sent the various emails mentioned in the 30b6 notice.

When does Google plan to provide a proposal to us regarding implementing the check the box notification system, as ordered by Judge Matz six months ago? Jeff.




-----Original Message-----
From: Bridges, Andrew [mailto:ABridges@winston.com]

Sent: Wednesday, November 01, 2006 4:48 PM
To: Jeffrey N. Mausner (E-mail)
Cc: Golinveaux, Jennifer; Bridges, Andrew
Subject: Perfect 10 v. Google


Jeff,

Please see the attached letter.

Andrew P. Bridges abridges@winston.com
Winston & Strawn LLP
101 California Street, Suite 3900
San Francisco, CA 94111
Telephone (415) 591-1482    Facsimile (415) 591-1400

<<Letter to Mausner.pdf>>

The contents of this message may be privileged and confidential. Therefore, if this
message has been received in error, please delete it without reading it. Your receipt of
this message is not intended to waive any applicable privilege. Please do not disseminate
this message without the permission of the author.
**************************************************************************
**
Any tax advice contained in this email was not intended to be used, and cannot be used, by
you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as
amended.


The contents of this message may be privileged and confidential. Therefore, if this
message has been received in error, please delete it without reading it. Your receipt of
this message is not intended to waive any applicable privilege. Please do not disseminate
this message without the permission of the author.
***************************************************************************
Any tax advice contained in this email was not intended to be used, and cannot be used, by
you (or any other taxpayer) to avoid penalties under the Internal Revenue Code of 1986, as
amended.

Exh. AA, Page 15

| From: | Jeff Mausner [jeffmausner@bmrlaw.com] |
|---|---|
| Sent: | Wednesday, November 08, 2006 5:53 PM |
| To: | 'Bridges, Andrew' |
| Cc: | 'Golinveaux, Jennifer'; 'Lee, Susan'; 'Scherb, Matthew'; Norm Zada (normanz@earthlink.net); Dan Cooper (Dan@perfect10.com) |
| Subject: | RE: P10 v. Google - notification tool |



letter to bridges
11-08-06.pdf...

Andrew, please see the attached letter.  Jeff.


-----Original Message-----
From: Bridges, Andrew [mailto:ABridges@winston.com]
Sent: Monday, November 06, 2006 9:40 PM
To: Jeffrey N. Mausner (E-mail)
Cc: Golinveaux, Jennifer; Lee, Susan; Scherb, Matthew; Bridges, Andrew
Subject: P10 v. Google - notification tool


Jeff,

Google proposes a tool that involves a Web-based user interface that would look something
like the rough mockup attached to this email. The user interface would be available via a
secure login, and upon submission of the form on the interface, an email will go to a
Perfect 10 representative, identifying the thumbnails that had been selected via the Web-
based submission. That part of the process would suffice to satisfy Perfect 10's
obligation to provide the information set forth in paragraphs 4(a)(ii), 4(b)(i) and
4(b)(ii). By reply email, the Perfect 10 representative would supply the information
required in paragraphs 4(a)(i) and 4(c).

The information required in paragraph 3 would not be furnished online but would be
contained on a DVD to be furnished by Perfect 10 to Google, updated no more than monthly.
Rather than adding new images in separate disks, there should be cumulative updates at
monthly or longer intervals, so that the latest disk should always contain all images
being referenced. For the sake of good order, the information provided pursuant to
paragraph 4(a)(i) would identify the date of the most recent disk and use folder/file
information for the most recent disk.

Upon the submitter's reply email with the required information, the notification would be
considered complete for timing purposes under the injunction.

For this approach to make sense Perfect 10 would need to agree that this notification
method would be the only method Perfect 10 uses, for either notifications under the
injunction or DMCA notification, so long as the injunction is in force.

Please let me know your thoughts about this approach.

Andrew P. Bridges
Winston & Strawn LLP
101 California Street, 39th Floor
San Francisco, California 94111
tel +1 415 591 1482
fax +1 415 591 1400
abridges@winston.com
www.winston.com/abridges

The contents of this message may be privileged and confidential. Therefore, if this

1

# BERMAN, MAUSNER & RESSER
A LAW CORPORATION

WORLD SAVINGS CENTER
11601 WILSHIRE BOULEVARD, SUITE 600
LOS ANGELES, CALIFORNIA 90025-1742
TELEPHONE (310) 473-3333 • (323) 965-1200
FACSIMILE (310) 473-8303 • (323) 965-1919
WWW.BMRLAW.COM

JEFFREY N. MAUSNER
EXTENSION 316
E-MAIL: JEFFMAUSNER@BMRLAW.COM

November 8, 2006

Via E-Mail and Fax to (415) 591-1400

Andrew Bridges
Winston & Strawn LLP
101 California Street, Suite 3900
San Francisco, CA. 94111-5894

**Re:**     *Perfect 10, Inc. v. Google, Inc.*

Dear Andrew:

As you know, on May 8, Judge Matz ordered that Google cooperate in good faith to "implement a notification system, which will make it as expeditious and efficient as is reasonably feasible for P10 to provide Notices of Infringement to Google and for Google to receive those notices." Despite repeated requests from me, Google did not provide a proposal for such a system for six months. In the meantime, Perfect 10's business has continued to be destroyed by rampant infringements. Then, after all this time, the proposal you provided on November 6 is completely unworkable for Perfect 10 for two reasons.

First, your proposal precludes Perfect 10 from making any notices that would eliminate infringing links in Google Web Search Results. That is completely unacceptable and there is nothing in Judge Matz's order that would support such a proposal, which essentially makes it impossible for Perfect 10 to stop any web search infringement of its images. Your proposal also makes it appear that you would not allow any notices for trademark or right of publicity violations, and that you would not accept disks of infringements similar to those we sent in December of 2005.

Second, your proposal does not follow the essence of Judge Matz's order, which was to "make it as expeditious and efficient as is reasonably feasible for P10 to provide Notices of Infringement to Google." The two step process you propose is extremely burdensome and time consuming, and completely unnecessary. First of all, Perfect 10 owns hundreds of thousands of images, of which potentially 30,000 are currently capable of being infringed. Even if we currently restrict our efforts to images that are or have been publicly available, you are requiring someone from Perfect 10 to go through every one of approximately 30,000 P10 images, and type into a computer a file name for it. So for each of 30,000 images, a Perfect 10 employee would have to type in a file name like MonikaZsibrita1, MonikaZsibrita2, etc. This could easily take two weeks, if not longer. Then, for each of

approximately 13,000 P10 images that Google is displaying without authorization, a Perfect 10 employee would have to go through the 30,000 P10 images that have been labeled, and determine which of the 30,000 file names corresponds to the image, and type that file name into your "tool." This second step is completely unnecessary, and would likely take months. There are some models for which Perfect 10 owns 2,000 images that could be infringed, many of which look very similar. It could take tens of minutes to find the correct file name for each infringed image. Perfect 10 owns the complete sets, and therefore knows that it owns the image, but locating the exact matching image and labeling that image for each infringement could take a long time, and is totally unnecessary. Finally, as you also require, it would be impossible for Perfect 10 to perform this second step under penalty of perjury, as mistakes would likely be made. Such an oath is not even required under Section 512.

And after Perfect 10 did all this unnecessary work, what would prevent Google from simply displaying the same images from different URLs?

Once Perfect 10 has "checked the box" and stated under penalty of perjury that it owns the copyrights for all images checked, that should be sufficient, and requiring anything more than that is contrary to the language and intent of Judge Matz's Order relating to the check the box tool. Our counter proposal, therefore, is very simple. Withdraw your requirement that all notifications be made via the check the box tool (that should only relate to P10 images displayed by Google via Image Search), and provide us with a check the box tool so we just have to check the box to identify the image. That is what Judge Matz's Order contemplated. Perfect 10 will state under penalty of perjury that it owns the copyrights for the images checked.

Sincerely,

BERMAN, MAUSNER & RESSER
A Law Corporation

*Jeffrey N. Mausner*

JEFFREY N. MAUSNER

cc: Jennifer Golinveaux
Susan Lee

# Exhibit B

May 20, 2009


<u>VIA EMAIL AND U.S. MAIL</u>

Jeffrey N. Mausner, Esq.
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA
Facsimile: (818) 716-2773


Re:     <u>*Perfect 10, Inc. v. Google Inc.*</u>


Dear Jeff:

I write in response to the purported DMCA notice Perfect 10 sent to Google dated May 7, 2009.
Perfect 10 continues to send ostensible notices in a manner not compliant with the DMCA, as
Google has explained in prior correspondence (including Google's August 31, 2007, October 31,
2008, and May 5, 2009 letters).

Perfect 10's May 7, 2009 purported notice is in substantially the same format as Perfect 10's
purported notices sent on October 16 and December 13, 2007, January 24, March 17, and July 9,
2008, and April 24, 2009. Google has explained on multiple occasions that it is unable to
process Perfect 10's purported DMCA notices in this format, which do not intelligibly identify
the copyrighted work claimed to be infringed or the location of the allegedly infringing content.
Instead, Perfect 10's May 7, 2009 purported notice provides Google with thousands of images
Perfect 10 supposedly downloaded from various websites, and thousands of other "screenshots"
of Google search results and images. Dumping thousands of downloaded image files and
"screen shots" on a DVD with a general description of how Perfect 10 found the images does not
sufficiently identify the copyrighted works allegedly infringed or the locations of the allegedly
infringing material. As Google's published DMCA policy states, Google requires identification

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, CA 90017 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, NY 10010 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, CA 94111 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, IL 60606 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

51320/2934080.1

of the copyrighted work claimed to be infringed and the exact web page URL or image URL of the allegedly infringing material in order to process a DMCA notice.

Additionally, as Google has previously explained, it does not crawl or index Usenet servers or those portions of websites only accessible by password. If content is not indexed by Google such that there is no link to that content in Google Web or Image Search results, it is not the proper subject of a purported DMCA notice to Google, because there is no link or thumbnail to disable or remove. The inclusion in Perfect 10's purported May 7, 2009 notice of printouts of Google Web Search results for giganews.com and newsdemon.com does not change this fact. Indeed, the cover letter accompanying the May 7 purported notice acknowledges that Google's Web Search results for these sites link to login or sign-up pages, not to allegedly infringing content.

Unless and until Perfect 10 cures these many deficiencies, which Google has identified on many occasions, Google is unable to take any further action in response to this defective notice.

Very truly yours,

Rachel Herrick Kassabian

# Exhibit C



# PlagiarismTetoday
**PT** (Content Theft | Copyright Infringement | Plagiarism)

| Home | About ↓ | Consulting | DMCA Contacts | Stock Letters | Stop Internet Plagiarism ↓ | Press | Contact |

## Google's Shell Games

By Jonathan Bailey • Nov 16th, 2007 • Category: Articles, DMCA, Legal Issues, Punditry

 Anyone who is a regular reader to this site knows that, in order to get Adsense removed from a scraper or plagiarist's page, you are required to file a DMCA notice.

Adsense has its own DMCA policy and follows it very strictly. Though results can be obtained through that means, few bloggers actually use it.

Not only is the process unnecessarily complicated and time consuming, but a great deal of confusion is being spread about the nature of their policy.

However, the cause of the misunderstandings are very easy spot. If you follow Google's abuse process, the confusion is very apparent as Google itself says never mentions its DMCA process when filing a complaint. Instead, it intentionally allows visitors to finish the entire process, certain the matter is in good hands, before letting them know the truth hours or days later.

It isn't that these bloggers didn't do their research, just that they were misled by a company who's motto is supposed to be "Don't Be Evil."

**Adsense Abuse 101**

In theory, reporting Adsense violations is as simple as a few clicks of the mouse.

When you see a site breaking any of Adsene's rules, you are supposed to first click their "Ads By Google" link at the top or bottom of one of the ad blocks. You are then taken to a page that tries and sells you space on the site or get you to sign your own site up.

However, at the bottom there is a link reads "Send Google your thoughts on the site or the ads you just saw". If you click that link, a form appears below asking you what you thought of the ads. Below that is a link to report a violation. Click that link and a subform appears asking you to choice between a violation with the ads or the site itself.

If you choose the Web site, you get a question with the options below:

> Did the **site** you just came from violate any of the following policies? (Select all that apply)
> ☐ The site encouraged me to click on the ads
> ☐ The site has pornographic content
> ☑ The site is hosting/distributing *my* copyrighted content
> ☐ The site tried to install something on my computer
> ☐ The site violates AdSense policies in other ways

The third option reads "The site is hosting/distributing *my* copyrighted content" (emphasis in original) and seems to be perfect for reporting scrapers and spammers. If you hit submit from there, you get a thank you page and a promise to look into the matter.

## DISCLAIMER

I am not a lawyer. I am just a legally-minded Webmaster/Writer frustrated with the plague of plagiarism online and doing something about it.

## SUBSCRIBE

 **Subscribe Via Email:**

[            ]  Submit

## FREE PLAGIARISM HELP

Peformancing Legal Issues Forum

## OTHER WRITINGS

Blog Herald
BloggingTips
European Journalism Centre

## RECENT POSTS

Why To NOT Write Your Own License
3 Count: Zero the Hero
The Copyright Reforms You Want
3 Count: Sony's Song
The Future of the Copyright Office

## POPULAR TAGS

apple bittorrent Blogger Blogspot **Content-Theft** Copyright **Copyright-Infringement** Copyright-Law Copyright-Office Creative-Commons DMCA DRM facebook fair-use Flickr Google Hosting images licensing MPAA obama Orphan Works Photography piracy plagiarism plagiarism-detection

Exh. C, Page 1

# Plagiarism

Podcast RIAA RSS RSS scraping Scraping search Search-Engines Spam Spam-Blogs Splogging Splogs sweden takedown The-Pirate-Bay USCO viacom Wordpress YouTube



**CREATIVE COMMONS**



log Net ork:

Name:
Plagiarism Today

Topics:
plagiarism, content theft, copyright

Join my net ork

log Net orks

==Then nothing happens.==

If you provided your email address, which is entirely optional in the form, you get an email some time later telling you that Google can not process your complaint without a DMCA notice. It then links to the Adsense DMCA policy (found above) and offers little else.

In the meantime you've lost hours, possibly days worth of time waiting for a response from Google and now have to start all over again.

Frustrating, yes, but entirely avoidable.

**A Double Standard**

Even if we discard the facts that Adsense is not protected under the DMCA and that ==Google's DMCA policy is likely illegal in and of itself,== there are several problems with this method of handling things.

The biggest is that Google knows that they can not and will not act on such complaints without a proper DMCA notice. They wrote the policy and they stand by it, for better or worse. Yet they keep that option available, even though it only leads to confusion.

Of course, the presence of that option would not be so bad if Google would actually notify submitters of the requirement to file the DMCA before they left the page.

Strangely, Google actually does exactly this one of their other sites, YouTube. If you use the "Flag" feature at YouTube to report a video for copyright infringement.



You are then given an error message directly you to their help center, which provides instructions for properly reporting the clip.



It is not a perfect system, but it prevents Webmasters from wasting days waiting for a response when one simply isn't coming.

Exh. C, Page 2

**Bad Behavior**

Questions about why Google does this is entirely up for debate. The most obvious reason, however, is that Google has much less motivation to be cooperative with Adsense than YouTube. Adsense is Google's main money maker, is not technically protected under the DMCA and is not the subject of a billion dollar lawsuit.

But no matter what the reason is, this is just another artificial hurdle to Google's already obstructionist DMCA policy. Google already mandates you send a physical signature, though the law clearly states that it is not necessary, refuses to accept email notices and often takes weeks to respond to a perfectly legitimate notice filed using their own policy.

Google could probably fix this problem within the space of a few hours but, for whatever reason, it has not been a priority for them. Instead, there are countless confused bloggers who believe that Google simply doesn't respond to complaints about scraping doesn't care.

The result is not only a damaged reputation for Google, but that thousands of spam blogs continue to thrive because content owners were thwarted in reporting the problem. They either never got the email requesting the DMCA notice, likely because they didn't fill out their email as it was optional, or had simply moved on in the days that had passed.

The side effect of that is, of course, that Google gets to keep making money on the spam blogs. Considering they provide the hosting, promotion and revenue stream with their Blogspot, search and Adsense products respectively, Google seems to be a spammer's best friend. Sadly, this "do the absolute minimum" policy when dealing with scraping seems to be a mere extension of that.

Even worse, it doesn't seem to be getting any better in the near future.

**Conclusions**

Google is a company like any other, with responsibilities to share holders and employees. The bottom line for a corporation is, quite simply, the bottom line. Money doesn't have an ethical or political stance and companies know that.

We should not expect companies like Google go act quickly on something that is not in their best interest. Instead, we should make it in their best interest to act by voting with our dollars. Doing anything else will have no effect.

The quicker we realize that, the quicker we can start to see some real change from Google in these and other areas.

Even though no company is perfect, a company should at least attempt to live up to is motto. Otherwise, it should expect its customers to demand better and then seek it out elsewhere.

 ShareThis

 **Protect Your Work. Subscribe to Plagiarism Today via Email or RSS.**   

**Tags:** Adsense, Content-Theft, Copyright-Infringement, DMCA, Google, Plagiarism, Scraping, Spam-Blogs, Splogging, Splogs, viacom, YouTube

Exh. C, Page 3



**Jonathan Bailey** is The Webmaster and author of Plagiarism Today, which he founded in 2005 as a way to help Webmasters going through content theft problems get accurate information and stay up to date on the rapidly-changing field. He is also a consultant to Webmasters and companies to help them devise practical content protection strategies and develop good copyright policies.

Email this author | All posts by Jonathan Bailey

## ADD NEW COMMENT

DISQUS COMMENTS

You are commenting as a Guest. You may select one to log into:

D Profile    f Connect

Type your comment here.

⊙ Guest   ○ D Register with DISQUS   Why?

**Name**

**Email**

**Website** (optional)

   Post Comment

Use Media ▼

## 9 COMMENTS

Sort by  Popular now        Community Page    🔊 Comments feed

**Maria**  1 year ago

I agree entirely with your assessment of the situation at Google regarding sploggers. As you know, it bothers me to no end that ==I have to spend many frustrating hours to get Google to act on any of the copyright infringement caused by someone splogging my content.== I'm almost ashamed to say that ==Google and it's partners,== the sploggers, have won this round. ==I simply don't have the time or the energy to stay on top of this.==

==90% of the slog-built sites out there are clearly recognizable as splogs due to their automated gathering of content.== Google should simply put a "three strikes and you're out" policy in place -- three complaints about a site in a rolling 30-day period should be enough to get the AdSense accounts revoked. This should be simple enough to automate, with a human doing the final check before clicking the revoke button.

==Google is doing the Internet community a disservice by taking this stance. It's enabling -- no, encouraging -- splogging activities.== And there's no value to a splog site.

Reply • More ▼                                    Like • Report

Exh. C, Page 4



| PT | **PlagiarismToday** |
|----|---------------------|
|    | (ContentTheft \| CopyrightInfringement \| Plagiarism) |

search

| Home | About ↓ | Consulting | DMCA Contacts | Stock Letters | Stop Internet Plagiarism ↓ | Press | Contact |

# Google's DMCA Problem

By Jonathan Bailey • Mar 10th, 2009 • Category: Articles, DMCA, Legal Issues



When it comes to the DMCA, it seems that Google has been nothing but a headache. In the past four years of this site, I have lamented Google's lack of email contact information, developed a hack to get around that, I have faxed a 17-page DMCA notice to their Adsense department (which is separate from Blogger), accused Google of intentionally misleading content creators on how to file a notice with Adsense and consistently given Google low scores for its handling of the DMCA.

However, it appears that Google's poor handling of the DMCA does not stop with the frustrations of rights holders. A series of articles, first in the LA Weekly last month and last week on Ars Technica, have looked at Google's handling of DMCA takedowns from the perspective of those that are the subject of them, in these cases, music bloggers that use their Blogspot service.

The criticism is that, once a notice has been filed, Google does not always seem to notify the blogger it has pulled the content from and, when the blogger becomes aware, doesn't provide a copy of the takedown notice. This, in turn, makes filing a counter-notice (to have the material put back) almost impossible.

It seems that, when it comes to the DMCA, Google has a resoundingly negative review from both sides. This is something that Google needs to address as it strives to become not only the largest search engine, but one of the largest hosts. With so many new services expanding Google's function as a host of content, not merely an index, these issues can not be ignored.

But fixing these issues is not going to be easy for Google and it is going to require that they completely rethink their DMCA strategy, something they have been unwilling to do up until now.

## Bad All Around

The problem with Google's DMCA regime starts when one seeks to file a notice. If you visit their Blogger DMCA page, you see quickly that Google does not provide an email address for submitting a DMCA notice. The reason is that they require, at least from most notices, that the filer provide a handwritten signature, thus causing them to limit their contact methods to fax and snail mail.



However, this handwritten signature requirement is something of a perversion of the law. When asked in the past, Google has said that it is because the DMCA, in Section 512(c), requires "A physical or electronic signature of a person authorized to act on behalf of the owner of an

## DISCLAIMER

I am not a lawyer. I am just a legally-minded Webmaster/Writer frustrated with the plague of plagiarism online and doing something about it.

## SUBSCRIBE

### Subscribe Via Email:

Submit

## FREE PLAGIARISM HELP

Peformancing Legal Issues Forum

## OTHER WRITINGS

Blog Herald

BloggingTips

European Journalism Centre

## RECENT POSTS

Why To NOT Write Your Own License

3 Count: Zero the Hero

The Copyright Reforms You Want

3 Count: Sony's Song

The Future of the Copyright Office

## POPULAR TAGS

apple bittorrent Blogger Blogspot

Content-Theft Copyright

Copyright-Infringement Copyright-Law Copyright-Office Creative-Commons

DMCA DRM facebook fair-use Flickr Google Hosting images licensing MPAA obama Orphan Works Photography piracy plagiarism

plagiarism-detection

exclusive right that is allegedly infringed."

The problem is that the law clearly states that an "electronic signature" is adequate for a complete notice and the ESIGN act of 2000 defines an electronic signature as "an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." This means that something as simple as typing your name at the end of an email or indicating a signature with a "/s/" should be adequate for a DMCA notice, meaning that emailing a notice is not just possible, but easiest on everyone.

The vast majority of Web hosts and search engines agree with this interpretation as do the attorneys I've spoken with, including many who dislike the notice and takedown system.

However, once these hurdles have been overcome and a successful notice has been filed, it seems that Google has changed its policy of notifying bloggers and letting them remove their own content in a less-destructive way. Now, Google deletes the posts themselves, making them more like other hosts, and, in some cases, doesn't seem to be notifying the bloggers they are pulling from.

But then comes the real problem for bloggers. Once the content has been removed, getting a copy of the notice is almost impossible. Google, reportedly, has been stonewalling bloggers that ask for copies of their notices. Google does have a long-standing relationship with Chilling Effects, a joint venture of several non profits and universities that is working to build a database of searchable database of cease and desist letters as well as DMCA notices, which it has promised to forward all of the DMCA notices it receives to for inclusion.

But despite this promise, it is clear that the volunteer-staffed service has fallen well behind. Only five notices have been posted since the beginning of the year and none were posted in January or so far in March.

The problem with this is that, without a copy of the notice, it is impossible for a person who has had works removed to file a counter-notice. Filing a counter-notice without being 100% certain that the original notice was filed in mistake opens one up to a wide range of legal problems that didn't exist with just a takedown.

Thus, without a copy of the DMCA notice, there is no viable way to correct a false or erroneous takedown. It isn't possible to know who demanded the takedown and what the specific work involved was (could be the post, an image in it or a link).

In short, Google has built a DMCA system that equally screws content creators and legitimate users. Likely, the only people benefiting from this system are spam bloggers, who have extra protection from having a DMCA notice filed against them and those that with to abuse the takedown process, as they can do so with little worry about being discovered.

## Fixing the Beast

It is clear that Google's DMCA system is hopelessly broken. Not only is the process for filing a notice unnecessarily difficult and legally dubious, but the way Google handles its own customers is worrisome and makes the system prone to abuse.

The two problems, however, are almost certainly related. Google's demand of a handwritten signature makes it difficult for rights holders to file a notice and virtually ensures that such notices will be in a non-text-friendly version. This increases the time it takes Google to process notices and makes it harder for Google to forward on the information that they get.


Plagiarism

Podcast RIAA RSS RSS RSS scraping Scraping search Search-Engines Spam Spam-Blogs Splogging Splogs sweden takedown The-Pirate-Bay USCO viacom Wordpress YouTube

**CREATIVE COMMONS**



log Net ork:

Name:
Plagiarism Today
Topics:
plagiarism, content theft, copyright

Join my net ork

log Net orks

Exh. C, Page 6

The problem is that DMCA handling, like all abuse resolution, is overhead and smart companies are going to look for ways to trim such expenses, especially during down economic times. The fact that Google is cutting corners with its DMCA resolution process shouldn't be a shock to anyone. They are stripping down their process to the bare minimums of their interpretation of the law, but, if they changed their interpretation of the law to fit with other hosts, they might save money with their DMCA process.

Though allowing plain text DMCA notices would likely lead to a rise in the number filed, it would also make it easier to handle the notices on Google's end. They could more freely copy, paste and use the information in the notice. This would be helpful both in locating the links that need to be pulled down and in forwarding the relevant information to those who have had their posts removed. That would mean faster resolution for copyright holders and better service for Blogspot users.

With text-based notices, especially if Google provided a form-based system, much of the process could be automated, including the notification of the user. Privacy could be respected (when necessary), users would have the information they need to file counter-notices when appropriate and Google would spend less time, and thus less money, on each notice. It seems like an easy win-win-win.

However, Google has always refused to do this, at least for the general public. Either Google stands by its rather unusual interpretation of the DMCA or it is afraid of a perceived onslaught of notices that would result from easy filing and wants to fight email/form DMCA notices the best it can.

Either way, it is creating a situation where everyone suffers. As long as Google continues the status quo, there will be no winners.

## Conclusions

Google is and always has been something of a strange beast when it comes to copyright issues. Both the largest search engine and one of the largest blog hosts, they've always had an approach to the DMCA that is all their own. No one, quite literally, handles these disputes the same way.

The sad truth is that, as large as Google is and as great as they are at many of the things they do, this is one area that they have consistently gotten things wrong. Companies only a tiny fraction of Google's size, such as Automattic with WordPress.com, have gotten these issues just about perfect without breaking the bank.

The question isn't whether Google can fix these problems, but if it is willing to do so. Perhaps now with their flawed DMCA system impacting their own users as negatively as other copyright holders, change may finally be possible.

Of course, especially with Blogger, Google has promised that it's going to improve its system before, especially as it pertains to spam blogs. Sadly, none of that change has materialized as of yet.

Hopefully 2009 can be the year it happens.

 ShareThis

 **Protect Your Work. Subscribe to Plagiarism Today via Email or RSS.** 

**Tags:** Blogger, Blogspot, Content-Theft, copyright infirngement, DMCA, Google, Plagiarism

 **Jonathan Bailey** is The Webmaster and author of Plagiarism Today, which he founded in 2005 as a way to help Webmasters going through content theft problems get accurate information and stay up to date on the rapidly-changing field. He is also a consultant to Webmasters and companies to help them devise practical content protection strategies and develop good copyright policies.

Email this author | All posts by Jonathan Bailey

## ADD NEW COMMENT

You are commenting as a Guest. You may select one to log into:



○ Guest   ○ Register with DISQUS   Why?

**Name**

**Email**

**Website** (optional)

Post Comment

Use Media ▾

## 5 COMMENTS

Sort by  Popular now      Community Page    Comments feed

 **Childlife**  2 months ago

Jonathan -- I just wanted to stop by and thank you for all of the effort and hard work you have put into building such a helpful and reliable resource for bloggers. I just had my first unfortunate run-in with a splog that had stolen ten of my posts in entirety. I was able to successfully resolve the situation using the resources, tools and forms you have here at your site. I'm a subscriber now, and in my humble opinion, Google would do well to hire you as a consultant and give you free rein. Thanks again for your most excellent advice here!

~Michelle

Reply • More ▾                                             Like • Report



**PT**  **Jonathan Bailey** ★  2 months ago

You are very welcome, thank you for the compliments. I'm glad it worked out for you and definitely, if you get a chance, drop me an email to let me know the details. I'm always looking for experiences with hosts and sites so I can be aware of what people are experiencing.

Thank you again for the comment!

Reply • More ▾                                                    Like • Report

 **David Kool** 2 months ago

I run the website constant-content.com, and I couldn't agree more! We consistently are on the look out for thieves who steal content from our writers. We do everything possible to prevent such activities, ie: anti-scraping technology, embedded messages in our html married to google alerts and truncated visible summaries, but it is still difficult to stop all thievery. In the few instances that content has been stolen, ==we have identified where it was posted and immediately filed DMCA violation paperwork. We have followed up with email and phone calls and have heard nothing back.== All of our paperwork was filled out correctly, but ==we have been left staring at a website that, with impunity, continues to use content by our writers. It is frustrating all around and undermines the rules and authority that google has mandated itself to enforce.== It makes it seem as though their interest in taking on the responsibility for policing the search engine that they profit so handsomely from, is simply cosmetic.

David Kool
Product & Content Manager, Web Properties
www.Constant-Content.com
david.kool@constant-content.com

Reply • More ▾                                                    Like • Report

 **jm** 1 month ago

Google is a nightmare to deal with regarding stolen photos of children on orkut.com as well.

Reply • More ▾                                                    Like • Report

**PT**  **Jonathan Bailey** ★  1 month ago

Can you please email me some of the details? I haven't dealt with Google over Orkut but would like to hear about your experiences.

Reply • More ▾                                                    Like • Report

## TRACKBACKS

(Trackback URL)

- **CopyrightLaw (CopyrightLaw)**
  03/10/2009 06:23 PM

  "Google's DMCA Problem" http://tinyurl.com/ajhebb

Exh. C, Page 9

# Exhibit D

0001

UNITED STATES DISTRICT COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3     _____

4     PERFECT 10, INC.,                )
                                       )
5                    Plaintiff,        )
                                       )
6               v.                     ) No. CV07-5156 AHM (SHX)
                                       )
7     MICROSOFT CORPORATION,           )
                                       )
8                    Defendant.        )
      _____

9

10              Videotape Deposition Upon Oral Examination

11                               of

12                          JUDY WESTON

13    _____

14          Taken at 14855 Northeast 36th Street, Building 115

15                       Redmond, Washington

16

17

18

19    DATE:  Wednesday, May 28, 2008

20

21    REPORTED BY:  Ronald L. Cook

22                  CCR, RMR, CRR

23

24

25

1  that a removal or disabling of access to infringing material

2  is not expeditious?

3              MR. BRIDGES:  Objection.  Calls for a legal

4  opinion, vague and ambiguous, argumentative, lacks

5  foundation.

6              THE WITNESS:  What do you mean by

7  "expeditious"?

8       Q.    BY MR. MAUSNER:  Do you understand what

9  "expeditious" means?

10             MR. BRIDGES:  Objection.  Calls for a legal

11  conclusion.

12      Q.    BY MR. MAUSNER:  Go ahead.

13      A.    I don't understand what you mean by

14  "expeditious."

15      Q.    The removal or blocking of access is supposed

16  to be expeditious, and I'd like to know what your

17  understanding is of what is -- what is the time period for

18  the removal or blocking to be expeditious?

19             MR. BRIDGES:  Objection.  Calls for a legal

20  conclusion, vague and -- vague and ambiguous, lacks

21  foundation, competence.

22             THE WITNESS:  Yeah, I don't know the legal

23  answer to that question.

24      Q.    BY MR. MAUSNER:  Do you have a time frame in

25  which you believe that notices of infringement should be

1   processed and URLs removed or disabled?

2              MR. BRIDGES:  Objection.  Calls for opinion

3   testimony, competence, lacks foundation, vague and

4   ambiguous.

5              THE WITNESS:  We -- we do have a customer

6   satisfaction expectation.

7       Q.    BY MR. MAUSNER:  What is that?

8       A.    Approximately 72 hours.

9       Q.    And that's for removal or dis -- disabling of

10  infringing URLs; is that correct?

11             MR. BRIDGES:  Objection.  Vague and

12  ambiguous, lacks foundation.

13             THE WITNESS:  It's for disabling access to

14  URLs that are allegedly hosting infringing material.

15      Q.    BY MR. MAUSNER:  Going back to Exhibit 32,

16  what does the entry on the first page "11/27/2007, Edited by

17  gveith" mean?

18      A.    I don't know.

19      Q.    Who or what is gveith?

20      A.    I don't know.

21      Q.    Near the bottom of the first page there's an

22  entry "Exclusion=Result."  What does that mean?

23      A.    I don't know.

24      Q.    What do the asterisks at the end of the three

25  URLs at the bottom of Page 1 mean?

```
                        C E R T I F I C A T E
1

2

3   STATE OF WASHINGTON  )
                         ) ss.
4   COUNTY OF KING

5
            I, the undersigned officer of the Court, under,
6   my commission as a Notary Public in and for the State of
    Washington, hereby certify that the foregoing deposition
7   upon oral examination of the witness named herein was taken
    stenographically before me and thereafter transcribed under
8   my direction;

9            That the witness before the examination was
    first duly sworn by me to testify truthfully; that the
10  transcript of the deposition is a full, true and correct
    transcript of the testimony, including questions and answers
11  and all objections, motions, and exceptions of counsel made
    and taken at the time of the foregoing examination;
12
             That I am neither attorney for nor a relative
13  or employee of any of the parties to the action; further,
    that I am not a relative or employee of any attorney or
14  counsel employed by the parties hereto, nor financially
    interested in its outcome.
15

16
             IN WITNESS WHEREOF, I have hereunto set my hand
17  and seal this  //  day of June 2008.

18

19

20

21                                  _____
                                    NOTARY PUBLIC in and for
22                                  the State of Washington,
                                    residing at Redmmond.  My
23                                  commission expires 04-6-10.

24

25
```

# Exhibit E

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

--oOo--

PERFECT 10, INC., a           )
California corporation,       )
                              )
            Plaintiff,        )
                              ) Case No.
      vs.                     ) CV04-9484AHM(SHx)
                              )[Consolidated with
                              ) Case No.
GOOGLE, INC., a corporation; and) CV05-4753AHM(SHx)]
DOES 1 through 100, inclusive, )
                              )
            Defendant.        )
_____)
PERFECT 10, INC., a California )
corporation,                  )
                              )
            Plaintiff,        )
      vs.                     )
                              )
AMAZON.COM, INC., a corporation;)
A9.COM, INC., a corporation; and)
DOES 1 through 10, inclusive,  )
                              )
            Defendants.       )
_____)


VIDEOTAPED DEPOSITION OF

JOHN R. LEVINE, Ph.D.

_____

February 28, 2007

TRANSCRIPT CONTAINS CONFIDENTIAL INFORMATION


REPORTED BY:  CYNTHIA A. PACINI, CSR #6117, RMR, CRR

15:35:30    1      URLs in the box are images that would be indexed in

15:35:34    2      Google's Image Search and the webpage is a webpage

15:35:36    3      that would be indexed in Google's Web Search.

15:35:40    4          As I said before, if you want all three

15:35:42    5      removed, you clearly have the information to send

15:35:44    6      them a take-down notice.

15:35:49    7          MR. BRIDGES:  Again, counsel has gone into

15:35:50    8      colloquy on mute.

15:36:25    9          MR. MAUSNER:  Q.  Who would you say is

15:36:27   10      more responsible for the display of the images

15:36:29   11      appearing in Exhibit 25, the webmaster of

15:36:34   12      dimworld.free.fr or the webmaster for poufs.free.fr?

15:36:43   13          MR. BRIDGES:  Objection.  Vague and

15:36:45   14      ambiguous, argumentative, calls for a legal

15:36:47   15      conclusion and nonexpert opinion testimony, assumes

15:36:52   16      facts not in evidence.

15:36:58   17          THE WITNESS:  In this particular case, to

15:36:59   18      view this page, you need both the webpage and the

15:37:01   19      images.  So they all have -- they -- they all have

15:37:06   20      to be there to display this page, so I'm not sure

15:37:10   21      how you could say that one or the other was more

15:37:13   22      responsible.  They both have to provide the

15:37:15   23      material.

15:37:17   24          MR. MAUSNER:  Q.  Would you say they're

15:37:18   25      equally responsible?

16:33:04  1    tags and robots.txt, and other technical means to

16:33:08  2    encourage the Google bot to skip all or part of

16:33:13  3    various websites.

16:33:18  4         Q.   In your opinion, who had more control over

16:33:22  5    its index, Napster over its song index or Google

16:33:27  6    over its Image Search index?

16:33:31  7              MR. BRIDGES:   Objection.  Vague and

16:33:32  8    ambiguous.

16:33:35  9              THE WITNESS:   I mean, to the extent that

16:33:39  10   Napster controlled their index and Google controls

16:33:42  11   their index, it's the same.  You know, they were

16:33:44  12   each -- Napster was in control of its index and

16:33:47  13   Google is in control of its index.

16:33:55  14             MR. MAUSNER:   Q.   Has Google provided

16:33:57  15   image search results for any other search engines?

16:34:03  16        A.   I believe the answer is yes.

16:34:06  17        Q.   And do you know what search engines?

16:34:09  18        A.   I believe they used to provide results for

16:34:11  19   Amazon A9 service.

16:34:15  20        Q.   Any others that you're aware of?

16:34:17  21        A.   I believe they've also at times provided

16:34:20  22   search for AOL.

16:34:25  23        Q.   Any others?

16:34:26  24        A.   Not that I'm -- not that I can think of

16:34:28  25   offhand.

# Exhibit F

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   PERFECT 10, INC., a California                Case No. CV04-9484 AHM (SHx) √
     corporation,                                  [Consolidated with Case No. CV 05-
11                                                 4753 AHM (SHx)]
                    Plaintiff,
12                                                 ORDER ON GOOGLE INC.'S
            vs.                                    OBJECTIONS TO, AND PERFECT
13                                                 10, INC.'S MOTION FOR REVIEW
     GOOGLE INC., a corporation; and               OF, PORTIONS OF THE
14   DOES 1 through 100, inclusive,                MAGISTRATE JUDGE'S ORDER OF
                                                   FEBRUARY 22, 2008 GRANTING IN
15                  Defendants.                    PART AND DENYING IN PART
                                                   PERFECT 10'S MOTION TO
16   _____                COMPEL

17   AND COUNTERCLAIM                              Hon. A. Howard Matz

18   _____               Courtroom:        14
     PERFECT 10, INC., a California                Hearing Date:     April 14, 2008
19   corporation,                                  Hearing Time:     10:00 am

                    Plaintiff,                     Discovery Cutoff:  None Set
20                                                 Pretrial Conference Date:  None Set
            vs.                                    Trial Date:   None Set
21
     AMAZON.COM, INC., a corporation;
22   A9.COM, INC., a corporation; and
     DOES 1 through 100, inclusive,
23
                    Defendants.
24   _____

25

26

27

28

1                                **ORDER**

2            Google Inc.'s Objections To, and Perfect 10, Inc.'s Motion for Review

3 of, the Magistrate Judge's Order of February 22, 2008, Granting in Part and Denying

4 In Part Perfect 10, Inc.'s Motion to Compel, came on for hearing on April 14, 2008,

5 the Honorable A. Howard Matz presiding.  Jeffrey N. Mausner appeared on behalf

6 of Plaintiff Perfect 10, Inc. ("Perfect 10").  Michael T. Zeller and Rachel M. Herrick

7 appeared on behalf of Defendant and Counterclaimant Google Inc. ("Google").

8            Upon consideration of all papers and records on file and the parties'

9 oral argument, the Court orders as follows:

10

11                 **<u>ORDERS ON PERFECT 10'S OBJECTIONS</u>**

12 **PERFECT 10'S OBJECTIONS REGARDING REQUEST NOS. 135, 136, AND**

13 **137**

14            Perfect 10's objections to the Magistrate Judge's Order regarding

15 Request Nos. 135, 136, and 137 are overruled, and the Magistrate Judge's Order

16 regarding those Requests is affirmed.

17 **PERFECT 10'S OBJECTIONS REGARDING (PROPOSED) FURTHER**

18 **ORDER NO. 2**

19           Perfect 10 objected to the Magistrate Judge's decision to not enter

20 (Proposed) Further Order No. 2.  Pursuant to the discussion at the hearing, the

21 (Proposed) Further Order is imposed mutually on both parties as to all past, present

22 and future requests for production.  Accordingly, on or before June 16, 2008,

23 Google shall provide Perfect 10 with a written response stating whether Google has

24 produced documents in response to each of Perfect 10's requests for documents,

25 listed by set number and request number.  If no documents responsive to a request

26 are located after a good-faith reasonable search and, therefore, none ultimately

27 produced, Google shall so state with respect to each such request.  On or before this

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

1  same date, Perfect 10 shall provide Google with a written response stating whether

2  Perfect 10 has produced documents in response to each of Google's requests for

3  documents, listed by set number and request number.  If no documents responsive to

4  a request are located after a good-faith reasonable search and, therefore, none

5  ultimately produced, Perfect 10 shall so state with respect to each such request.  The

6  obligations of Google and Perfect 10 herein to state whether they have produced

7  documents in response to each other party's requests for documents, listed by set

8  number and request number, shall apply to all future requests for documents as well,

9  and shall be subject to the parties' duties to seasonably supplement their discovery

10  responses pursuant to Fed. R. Civ. P. 26(e).

11  **PERFECT 10'S OBJECTIONS REGARDING REQUEST NO. 197**

12         Perfect 10's objections to the Magistrate Judge's denial of this Request

13  are sustained.  Google shall produce transcripts in its possession, custody or control

14  of depositions of any Google employees, officers and directors taken in connection

15  with the lawsuit *Columbia Pictures Industries, et. al. v. Drury, et. al.*, filed in the

16  United States District Court for the Southern District of New York.

17

18  **ORDERS ON GOOGLE'S OBJECTIONS**

19  **GOOGLE'S OBJECTIONS REGARDING REQUEST NOS. 128-131 and 194-**

20  **195**

21         Google's objections to Request Nos. 128-131 and 194-195 are

22  overruled, but the Requests are limited to reports, studies, or internal memoranda.

23  On or before June 16, 2008, Google shall produce the following:

24         All reports, studies, or internal memoranda ordered, requested, or

25  circulated by Bill Brougher, Susan Wojcicki, Walt Drummond, and Eric Schmidt

26  relating to the following topics:  search query frequencies, search query frequencies

27  for adult-related terms, number of clicks on adult images and images in general,

28

1  traffic to infringing websites, the draw of adult content, and percentage of searches

2  conducted with the safe search filter off.  (Request Nos. 128-131).

3         All reports, studies, or internal memoranda circulated by or to John

4  Levine, Heraldo Botelho, Radhika Malpani, Jessie Jiang, Lawrence You, Diane

5  Tang, and Alexander MacGillivray relating to the following topics:  search query

6  frequencies, search query frequencies for adult-related terms, number of clicks on

7  adult images and images in general, traffic to infringing websites, the draw of adult

8  content, and percentage of searches conducted with the safe search filter off.

9  (Request Nos. 194-95).

10 **GOOGLE'S OBJECTIONS REGARDING REQUEST NO. 174**

11        Google's objections are sustained in part and overruled in part.  On or

12 before May 15, 2008, Google shall produce documents sufficient to describe

13 Google's attempts to develop or use any image recognition software capable of

14 matching a known still photographic image with another image in Google's search

15 engine index or search engine database.  Google is not ordered to produce

16 documents regarding any other types of image recognition technology.

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28

1    **GOOGLE'S OBJECTIONS REGARDING REQUEST NO. 196**

2          Google's objections are overruled, subject to the following clarification

3    regarding the scope of Request No. 196.  Perfect 10 sought, and the Magistrate

4    Judge ordered, production of "Google's DMCA log."  As Perfect 10 clarified at the

5    hearing, "DMCA log" as used in Request No. 196 refers to a spreadsheet-type

6    document summarizing DMCA notices received, the identity of the notifying party

7    and the accused infringer, and the actions (if any) taken in response.  Google's

8    obligation to produce documents in response to Request No. 196 shall be subject to

9    the foregoing definition.

10          **IT IS SO ORDERED.**

11

12    DATED:  May 13, 2008

13

14    By

15    _____

16    A. Howard Matz
       United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]
[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

# Exhibit G

FILED SEPARATELY UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

# Exhibit H

FILED SEPARATELY UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

# Exhibit I

WINSTON & STRAWN LLP
Andrew P. Bridges (SBN: 122761)
Jennifer A. Golinveaux (SBN: 203056)
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
E-mail: abridges@winston.com,
       jgolinveaux@winston.com

Attorneys For Defendant and Counterclaimant
GOOGLE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, <br><br> Plaintiff, <br><br> vs. <br><br> GOOGLE INC., a corporation; and DOES 1 through 100, inclusive, <br><br> Defendant. <br><br> GOOGLE INC., a corporation, <br><br> Counterclaimant, <br><br> vs. <br><br> PERFECT 10, INC., a California corporation, <br><br> Counter-defendant. | Case No. CV04-9484 AHM (SHx) <br><br> **DECLARATION OF ALEXANDER MACGILLIVRAY IN SUPPORT OF GOOGLE'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date:     November 7, 2005 <br> Time:     10:00 a.m. <br> Location: Courtroom 14 |

SERG0001

1  Exhibit C is a true and correct copy of the current Google AdSense Online Standard

2  Terms and Conditions.

3       13.    Google reserves the right to terminate third parties from AdSense

4  when it becomes aware that they are violating the AdSense Policies or Terms and

5  Conditions, and is in the process of reviewing Perfect 10 notices and will terminate

6  sites from participation in AdSense that are in violation.

7  ## GOOGLE'S INTELLECTUAL PROPERTY POLICY AND RESPONSE TO

8  ## NOTICES OF ALLEGED INFRINGEMENT

9       14.    It is Google's policy diligently to respond to notices of alleged

10 copyright infringement that comply with the Digital Millennium Copyright Act.

11 Google provides a detailed explanation of its policy in response to notices of alleged

12 infringement at its google.com Web site. Attached hereto as Exhibit D is a true and

13 correct copy of Google's Terms of Service and Google's Digital Millennium Copyright

14 Act policy.

15       15.    Google receives thousands of inquiries daily concerning search

16 results, including notices about search results that link to allegedly improper content.

17 Those notices concern various issues, including claims that third-party Web sites have

18 infringed the senders' copyright, trademark or other rights. Google has several

19 departments involved in handling notices of alleged infringement. Trained individuals

20 process notices of alleged infringement that refer to copyright. If a notice does not

21 contain enough information for Google to process, or if it otherwise fails the

22 requirements of 17 U.S.C. § 512(c)(3), but contains contact information for the

23 sender, Google's staff will typically email the sender requesting additional

24 information.

25       16.    Upon receiving a notice of alleged infringement that substantially

26 conforms with the requirements of Section 512(c)(3), Google expeditiously removes

27 or disables access to the material. Google does this by flagging the URL or URL

28 pattern for which Google has received notice so that page or file will no longer appear

**DECLARATION OF ALEXANDER MACGILLIVRAY IN SUPPORT OF GOOGLE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PREL. INJ.**

SERG0005

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    I declare under penalty of perjury under the laws of the United States of
2    America that the foregoing is true and correct.
3    Executed in Mountain View, California, this 26th day of September 2005.

                                        _____
                                        Alexander Macgillivray

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SP:1152473
**DECLARATION OF ALEXANDER MACGILLIVRAY IN SUPPORT OF GOOGLE'S
OPPOSITION TO PLAINTIFF'S MOTION FOR PREL. INJ.**

SERG0010

# Exhibit J

1 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  |   Michael T. Zeller (Bar No. 196417)
2 |   michaelzeller@quinnemanuel.com
  | 865 South Figueroa Street, 10th Floor
3 | Los Angeles, California 90017-2543
  | Telephone: (213) 443-3000
4 | Facsimile: (213) 443-3100
  |   Charles K. Verhoeven (Bar No. 170151)
5 |   charlesverhoeven@quinnemanuel.com
  | 50 California Street, 22nd Floor
6 | San Francisco, California 94111
  |   Rachel M. Herrick (Bar No. 191060)
7 |   rachelherrick@quinnemanuel.com
  | 555 Twin Dolphin Drive, Suite 560
8 | Redwood Shores, California 94065-213

9 | Attorneys for Defendant GOOGLE INC.

10 |

11 |               UNITED STATES DISTRICT COURT

12 |              CENTRAL DISTRICT OF CALIFORNIA

13 | PERFECT 10, INC., a California          CASE NO. CV 04-9484 AHM (SHx)
   | corporation,                           [Consolidated with Case No. CV 05-
14 |                                         4753 AHM (SHx)]
   |            Plaintiff,
15 |                                         GOOGLE INC.'S OBJECTIONS TO
   |      vs.                               THE MAGISTRATE JUDGE'S
16 |                                         ORDER OF FEBRUARY 22, 2008,
   | GOOGLE INC., a corporation; and         GRANTING IN PART PLAINTIFF
17 | DOES 1 through 100, inclusive,          PERFECT 10, INC.'S MOTION TO
   |                                         COMPEL; AND MEMORANDUM OF
18 |            Defendants.                   POINTS AND AUTHORITIES IN
   |                                         SUPPORT
19 |
   | AND COUNTERCLAIM                        [DECLARATION OF RACHEL M.
20 |                                         HERRICK AND [PROPOSED]
   | PERFECT 10, INC., a California          ORDER FILED CONCURRENTLY
21 | corporation,                            HEREWITH]

22 |            Plaintiff,                    Hon. A. Howard Matz

23 |      vs.                               Courtroom:      14
   |                                         Hearing Date:   April 14, 2008
24 | AMAZON.COM, INC., a corporation;        Hearing Time:   10:00 am
   | A9.COM, INC., a corporation; and        Discovery Cutoff: None Set
25 | DOES 1 through 100, inclusive,          Pretrial Conference Date: None Set
   |                                         Trial Date: None Set
26 |            Defendants.

27 |

28 |

51320/2419959.15

OBJECTIONS TO ORDER ON PERFECT 10'S MOTION TO COMPEL

1          To rule that all DMCA notices must be produced in this case would set a

2    dangerous precedent, by suggesting that all parties seeking protection under the

3    DMCA's safe harbor provisions must turn over to the plaintiff their entire DMCA log,

4    in every litigation, no matter what the circumstances. Absent some special showing

5    as to why a party's entire DMCA log is relevant in a particular case (which Perfect 10

6    did not do here), this requirement would impose too great a burden upon parties like

7    Google, who receive many thousands of DMCA notices from many thousands of

8    alleged copyright owners. This cannot be the law, and with the passage of time such

9    a rule would become difficult if not impossible to implement, as large companies like

10   Google continue to receive and respond to more DMCA notices every single day,

11   every single month, year after year.

12         And even were the Court to find that Google should produce some discovery

13   beyond Perfect 10's alleged DMCA notices, production of the full DMCA log is

14   unwarranted. Since the applicable standard is "reasonable implement[ation]" of a

15   repeat infringer policy, *see CCBill*, 488 F.3d at 1109 (citing 17 U.S.C.

16   § 512(i)(1)(A)), a representative sample of documents regarding Google's DMCA log

17   would be more than sufficient to fairly evaluate Google's reasonable implementation.

18   The Order of Google's entire DMCA Log was clearly erroneous and should be

19   reversed.

20         In the alternative, should the Court decline to reverse the Order in this regard,

21   Google respectfully requests a stay of this portion of the Order. Google is preparing

22   and will soon file a dispositive motion regarding the inadequacy of Perfect 10's

23   alleged "notices" to Google under the DMCA, 17 U.S.C. § 512(c)(3). If Google's

24   motion is successful, this portion of the Order will be rendered moot, because this

25   discovery would be irrelevant. *See, e.g., Hendrickson v. eBay, Inc.*, 165 F .Supp. 2d

26   1082, 1092 (C.D. Cal. 2001) (when plaintiff did not give notices that complied with

27   § 512(c)(3), defendant eBay "did not have a duty to act under the third prong of the

28   safe harbor test," § 512(c)(1)(C), to remove or disable access to the material.). *See*

1

## CONCLUSION

2      For the foregoing reasons, Google respectfully requests that the Court sustain

3  its objections to the Magistrate Judge's Order of February 22, 2008 granting in part

4  Perfect 10 Inc.'s Motion to Compel and reverse the portions of that Order compelling

5  Google to produce documents in response to Perfect 10's Requests for Production

6  Nos. 128-31, 174, and 194-96.

7  DATED: March 14, 2008          QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES, LLP

8

9                                By  /s/ Michael T. Zeller

10                                    Michael T. Zeller
                                      Rachel M. Herrick
11                                    Attorneys for Defendant GOOGLE INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit K

FILED SEPARATELY UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

# Exhibit L

**Jeffrey Mausner**

Valerie,

Contrary to Perfect 10's unsupported allegations, Google has not "publicized" any information by forwarding alleged DMCA notices to Chilling Effects. Those alleged notices contain URLs of websites Perfect 10 claims infringe its alleged copyrights, but there is nothing "non-public" or otherwise "confidential" about URLs of publicly-available websites. If Chilling Effects posts a URL on its website, it does not "publicize" that information, because the URL is already available on the Internet. Indeed, Google's published DMCA Policy makes clear that Google may forward alleged DMCA notices to Chilling Effects. See https://www.google.com/dmca.html. ("Please note that [an alleged DMCA notice] (with your personal information removed) may be forwarded to Chilling Effects (http://www.chillingeffects.org) for publication."). Perfect 10 cannot claim to be surprised when its alleged notices are in fact so forwarded.

Second, Perfect 10 speculates that that third-parties will somehow use the alleged notices as a means to engage in infringement, but Perfect 10 has never offered any evidence to support that speculation.

Third, and most importantly, Perfect 10 has not provided any *legal* basis for its demands regarding Chilling Effects. In your email below, you state that "[t]he risk of Google publicizing screen shots is not analogous to the risk of Google publicizing a road map of how to gain free access to Perfect's 10 [sic] library of copyrighted works," and that "[t]he former is illegal whereas Google would take the position that the latter is not." If you believe that "publicizing screen shots" is "illegal," I would urge you to reconsider that position in light of the fact that Jeffrey Mausner does not object to filing screenshots in court. And further, if Perfect 10 believes that any part of the Chilling Effects project is "illegal," please identify the *legal* basis for that claim. Chilling Effects is a joint project of the Electronic Frontier Foundation and clinical programs at several universities, including Harvard, Stanford, and U.C. Berkeley, whose purpose is to educate and inform Internet users of the protections afforded for their online activities (including commentary and criticism) by the First Amendment and intellectual property laws. Its own activities, and the activities of participants in the project, are protected by the free speech guarantees of the First Amendment, the right to lobby the government for changes in law (protected by the First Amendment and the Noerr-Pennington Doctrine), the fair use doctrine, and other provisions of Constitutional, federal, and/or state law. If Perfect 10 has any legal basis for seeking to interfere with those rights, please provide it.

In sum, Google continues to attempt to reach agreement on de-designation of these charts because they were improperly designated under the Protective Order. Please be advised that if we are unable to reach agreement, Google will move the court to de-designate these documents.

Best Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Tuesday, September 16, 2008 5:23 PM
**To:** Thomas Nolan
**Cc:** Michael T Zeller; Rachel M Herrick; Jeff Mausner
**Subject:** Re: Perfect 10/Google

Tom,

The charts were prepared by Perfect 10 *voluntarily* to try to satisfy Google's request for compilations even though there was no requirement that Perfect 10 provide anything. The charts easily fall within the definition of confidential information. They contain information that pertains to Perfect 10's business, namely they compile a lengthy list of URLs that provide unauthorized access to Perfect 10's copyrighted works. The charts contain information that is not generally known -- a detailed compilation of numerous URLs that provide access to Perfect 10's copyrighted works. One of the only reasons a compilation of these URLs is known by some is because Google has intentionally publicized prior compilations; Google never addresses this fact. The charts contain compilations Perfect 10 would normally not reveal to third parties or would cause third parties to maintain in confidence.

Google's position that a document cannot be designated confidential if it contains public information is incorrect. For example, if Prada compiled the locations of numerous businesses selling counterfeit Prada, this information would be Prada's proprietary information regardless of whether or not the locations were a matter of public record.

Jeff's comment is irrelevant to the issue here. The risk of Google publicizing screen shots is not analogous to the risk of Google publicizing a road map of how to gain free access to Perfect's 10 library of copyrighted works. The former is illegal whereas Google would take the position that the latter is not. In fact, it appears that part of Google's eagerness to de-designate these charts is so that it can claim that its prior conduct was legal.

Perfect 10 tried to resolve this issue by suggesting a revision to the protective order or a proposal from Google addressing the publicizing concern, but Google did not respond. Perfect 10 remains open to either option.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

----- Original Message ----
From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: Valerie Kincaid <valeriekincaid@yahoo.com>

Valerie,

As I previously identified, the Protective Order applies to documents only if they "comprise or reflect proprietary information used by [a party] in, or pertaining to, its business, which is not generally known and which the party would normally not reveal to third parties or would cause third parties to maintain in confidence, including, without limitation, trade secrets, financial data, contracts and agreements, current and future business plans, and marketing documents." Protective Order at Paragraph 1. On what basis does Perfect 10 contend that URLs of publicly-available websites are "proprietary information" of Perfect 10 under this definition?

Please be advised that if we are unable to reach agreement on this issue, Google will seek relief from the court by moving for de-designation of these charts. In that motion, Google will rely, among other things, on the representation of Jeffrey Mausner to Judge Matz in open court that Perfect 10 doesn't "have a problem with [screenshots of allegedly-infringing websites] being filed in court." Transcript at 41.

Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax:  (213) 443-3100
E-mail:  thomasnolan@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Tom,

The charts are properly designated confidential.  Moreover, the court specifically invited the parties to rework the protective order to address the situation of Google publicizing the URLs of infringing images, as Google does on chillingeffects.org, and Perfect 10 is willing to do this.  Please let me know if Google is agreeable.  Perfect 10 is also willing to consider any proposal Google has that addresses Perfect 10's concern that Google will publicize the information.

Very truly yours, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com


----- Original Message ----
From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: Valerie Kincaid <valeriekincaid@yahoo.com>
Cc: Jeffrey Mausner <jeffmausner@bmrlaw.com>; Michael T Zeller <michaelzeller@quinnemanuel.com>;
Rachel M Herrick <rachelherrick@quinnemanuel.com>
Sent: Tuesday, September 9, 2008 5:47:00 PM
Subject: RE: Perfect 10/Google

Valerie,

I write in furtherance of Google's meet-and-confer efforts regarding Perfect 10's designation as "Confidential" under the Protective Order of the six Charts appended to Perfect 10's Amended/Supplemental/Updated Responses to First Set of Interrogatories from Defendant Google Inc. to Plaintiff Perfect 10, Inc. As Google has previously identified, these Charts were improperly designated as Confidential because they contain only public information, and should therefore be de-designated and re-served on Google.

At the hearing before Judge Matz on August 18, 2008, Judge Matz instructed the parties to not treat materials that are "obviously public" as Confidential under the Protective Order. Transcript at 39 (attached hereto). And further, regarding screenshots containing locations of websites Perfect 10 claims are infringing, Jeffrey Mausner, counsel of record for Perfect 10, indicated that Perfect 10 doesn't "have a problem with those being filed in court." Transcript at 41.

You stated that you would provide a further response to Google after reviewing the August 18, 2008 Transcript. Mr. Mausner received the Transcript from the court reporter by email on August 24, 2008, and it is also attached to this message for your convenience.. If you have not done so already, please review the Transcript and please inform Google whether Perfect 10 will agree to de-designate and re-serve the six Charts created in connection with Google's Interrogatory No. 3. Please also be advised that if Perfect 10 so refuses, Google will seek relief from the Court.

Best Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Thomas Nolan
**Sent:** Thursday, August 21, 2008 10:37 AM
**To:** Valerie Kincaid
**Cc:** Jeffrey Mausner; Rachel M Herrick
**Subject:** RE: Perfect 10/Google

Hi Valerie,

I think that's a good idea. At the hearing, I believe Jeff indicated that he did not consider this information to be confidential in the sense that the Protective Order requires, and that he had no objection to Google publicly filing such documents with the Court. Rather, Jeff's only concern was with the publishing of the information on websites like Chilling Effects. We look forward to hearing from you after you have reviewed the transcript.

Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Wednesday, August 20, 2008 1:21 PM
**To:** Thomas Nolan
**Cc:** Jeffrey Mausner; Rachel M Herrick
**Subject:** Re: Perfect 10/Google

Tom,


We disagree with the content of your e-mail and we will provide a further response after we review the transcript of the hearing.


Valerie


Valerie Kincaid
valeriekincaid@yahoo.com

From: Thomas Nolan <thomasnolan@quinnemanuel.com>
To: "valeriekincaid@yahoo.com" <valeriekincaid@yahoo.com>
Cc: Jeffrey Mausner <jeffmausner@bmrlaw.com>; Rachel M Herrick <rachelherrick@quinnemanuel.com>
Sent: Tuesday, August 19, 2008 6:36:27 PM
Subject: RE: Perfect 10/Google

Valerie,

As you know, the Protective Order applies only to documents that "comprise or reflect proprietary information used by [a party] in, or pertaining to, its business, which is not generally known and which the party would normally not reveal to third parties or would cause third parties to maintain in confidence, including, without limitation, trade secrets, financial data, contracts and agreements, current and future business plans, and marketing documents.." Protective Order at Paragraph 1. At yesterday's Scheduling Conference, Judge Matz instructed the parties to comply with the Protective Order by not designating public information confidential. These charts contain nothing but model names, numbers, magazine page numbers, and URLs of publicly available Internet websites. This is public information, and therefore, the charts were improperly designated.

As for your statement regarding the Work Product Doctrine, that is irrelevant to whether the charts are confidential as defined by the Protective Order. Moreover, these charts were produced to Google in response to Interrogatory No. 3, and therefore, to the extent they were "work product" (which they are not), Perfect 10 waived any such protections by producing them.

Please let us know whether Perfect 10 has reconsidered its position in light of the above, and in light of Judge Matz's instructions.

Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100
E-mail: thomasnolan@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Valerie Kincaid [mailto:valeriekincaid@yahoo.com]
**Sent:** Tuesday, August 19, 2008 12:53 PM
**To:** Thomas Nolan
**Cc:** Jeff Mausner
**Subject:** Perfect 10/Google

Tom,

We received your e-mail dated August 14, 2008.

Perfect 10's charts are confidential because they provide to potential infringers the location of infringing copies of Perfect 10's copyrighted works. They tell potential infringers on which websites infringing copies of Perfect 10's copyrighted works may be viewed and downloaded for free. Contrary to Google's assertions, they are not publicly available. If you believe these charts are publicly available, please let us know the location of the charts on the Internet. In addition, Charts 1 and 2 constitute work product that Perfect 10 produced even though it had no obligation to do so.

As you know, Google has published Perfect 10's DMCA notices on Chillingeffects.com, thus allowing potential infringers to access the infringing copies of Perfect 10's copyrighted works. Google cannot claim that the information is "publicly available" because of this malicious action.

Please contact me if you wish to discuss this matter further.


Thanks, Valerie


 Valerie Kincaid
valeriekincaid@yahoo.com

# Exhibit M

## Jeffrey N. Mausner

**From:** GoogleTech
**Sent:** Wednesday, June 27, 2001 8:57 PM
**To:** Jeffrey N. Mausner
**Subject:** RE:{Google#133-047}

We have just performed a search for the site in question and found it on both the Internet and within our own index. We recognize the annoyance and exasperation that this situation may represent to you, but there is nothing that Google can do to remove the offending content without the cooperation of the site administrator.

Google is a provider of information, not a mediator. Even if we were able to eliminate the offending page from our index, it would still be on the Web. Every few weeks our robots sweep the Web for content. If the site is still available on the Web when we crawl, we will likely pick it up and add it to our index again. Only an administrator can, by including code that blocks our robots or placing a request with us, prevent his/her page from being listed. Without administrator cooperation we cannot exclude material available on the Internet from our index. We will honor the judgments of a legal authority against any party found to be violating copyright.

Please contact us if you are able to obtain the cooperation of the site's administrator or a court order against the offending site. We are sorry that we cannot be of more assistance on this matter.

Regards,

The Google Team

-----Original Message-----
From: Jeffrey N. Mausner (jmausner@bmrlaw.com)
Date: Friday, June 22, 2001 05:34 PM
To: copyright@yahoo-inc.com (copyright@yahoo-inc.com); webmaster@google.com (webmaster@google.com)
Cc: norm zadeh (normanz@earthlink.net); Ron Johnston (Ronald_Johnston@aporter.com)
Subject:

June 22, 2001

By Electronic Mail to webmaster@google.com, and by fax to (650) 618-1499

By Electronic Mail to copyright@yahoo-inc.com, and by fax to (408) 349-3301
Anthony P. Coll
c/o Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94089

Re: Notification of Claimed Copyright Infringement Pursuant to 17 U.S.C. § 512(c); Use of PERFECT 10 Copyrighted Works; Violation of Right of

**G    89**

6/27/01

EXHIBIT 37 Page 267          ER G377

# Exhibit N

FILED SEPARATELY UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

# Exhibit O

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone  (818) 992-7500
E-mail:  jeff@mausnerlaw.com

June 3, 2009

*VIA EMAIL*

Rachel Kassabian, Esq.
Quinn Emanuel
555 Twin Dolphin Dr. Suite 560
Redwood Shores, California 94065

   Re:  Perfect 10 v. Google – Discovery Issues

Dear Rachel:

   Google redacted material from hundreds of documents it produced, including, without limitation, emails, letters, and charts.  Google has not explained why it made any of the redactions.  We are attaching 23 examples of documents that contain such redactions.  Please explain what material Google redacted and the basis for the redactions.

   On a different topic, Google stated that it would produce various documents in response to certain interrogatory requests, but it is not clear whether Google has produced the documents and, if it did produce the documents, Google has not identified them.  *See* Google Inc.'s Response To Perfect 10's Revised Interrogatories.  In response to interrogatory no. 26 (formerly no. 9), no. 32 (formerly no. 12), and no 33 (formerly no. 13), Google stated that "[p]ursuant to Fed. R. Civ. P. 33(d), Google will further respond to this interrogatory by producing documents sufficient to reflect which URLs Google has suppressed from appearing in search results in response to notices of alleged infringement received from Plaintiff."  Please confirm whether or not Google has produced  the documents it said it would produce.  If Google alleges that it has produced such documents, please identify them by bates-number, explaining which bates numbered documents relate to which notices of infringement, by date.  In particular, please identify by bates number, which documents Google produced which reflect a) URLs Google has suppressed in response to Perfect 10's June 28, 2007 notice, and b) which URLs Google has suppressed in response to Perfect 10's July 2, 2007 notice, and any subsequent notices.

   In response to no. 34 (formerly no. 17), Google stated that "[p]ursuant to Fed. R. Civ. P. 33(d), and pursuant to agreement of counsel, Google will respond to this interrogatory by producing documents sufficient to reflect which entities Google has terminated as a consequence of notices sent by Perfect 10, and, where available, the nature of the termination, and the date of such termination."  Please confirm whether or not Google has produced the documents it said it would produce.  If Google alleges that it has produced such documents, please identify them by bates-number.

Please provide the requested information by Friday June 5, 2009.

Your anticipated courtesy and cooperation is appreciated.

Very truly yours,

*Valerie Kincaid* (BD)

Valerie Kincaid

Encls.

| **From:** | Valerie Kincaid [valeriekincaid@yahoo.com] |
|---|---|
| **Sent:** | Thursday, June 11, 2009 11:01 AM |
| **To:** | Rachel Herrick Kassabian |
| **Cc:** | Jeff Mausner |
| **Subject:** | Re: Perfect 10 v. Google |

Rachel,

We asked Google to provide the requested information by Friday June 5, 2009, but we have not received a response.  Please respond.

Thanks, Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:**  rittany  ouglass   brittany@mausnerla  .com
**To:** Rachel Herrick Kassabian   rachelkassabian@ uinnemanuel.com
**Cc:** Valerie Kincaid    Valeriekincaid@yahoo.com  ; Jeff Mausner    eff@mausnerla  .com
**Sent:** Wednesday, June 3, 2009 2:27:29 PM
**Subject:** Perfect 10 v. Google

Good afternoon Ms. Kassabian.  Please see the attached correspondence from Valerie Kincaid and the corresponding enclosures.  Thank you.

Sincerely,
Brittany Douglass
Assistant to Jeffrey N. Mausner

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited.  Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Brittany Douglass
Law Offices of Jeffrey N. Mausner
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
T 818.992.7500
F 818.716.2773
brittany@mausnerlaw.com

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S INTERNET ADDRESS
**rachelkassabian@quinnemanuel.com**

June 16, 2009

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Valerie Kincaid
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
Email: valeriekincaid@yahoo.com

Re:    <u>Perfect 10, Inc. v. Google Inc. – Discovery Issues</u>

Dear Valerie:

I write in response to your June 3, 2009 letter regarding (1) Google's redactions in its document production and (2) Google's responses to certain of Perfect 10's Interrogatories.

First, the redactions at GGL 005618 and GGL 053399 and some of the redactions at GGL 032695 were made to remove information not relevant or responsive to Perfect 10's Requests for Production. The remainder of the redactions in the examples attached to your letter pertained to privileged attorney-client communications and/or attorney work product material.

Second, regarding your request that Google confirm that it has produced documents in response to Perfect 10's Interrogatory Nos. 26, 32, 33 and 34 pursuant to <u>Rule</u> 33(d), Google has indeed produced documents responsive to those interrogatories.  As for your request that Google identify by bates number the specific pages produced in response to each of these interrogatories, you will recall that Google has requested that same information from Perfect 10, but Perfect 10 has refused, necessitating motion practice.  *See* Google's Motion to Compel Further Responses to Interrogatory Nos. 3 and 11, at pp. 40-49, 51 (currently pending before the Court).  The Court has already made clear that both parties will be subject to the same discovery obligations in this litigation.  *See, e.g.,* Transcript of April, 14, 2008 Hearing before Judge Matz, at 13 ("any ruling I would make of this type would have to be reciprocal and equally reciprocal").  Please let us know whether Perfect 10 will agree to assign unique control numbers to each page of its document production and provide the

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois  60606-6301 | TEL (312) 463-2961  FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG ,United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 ,Japan | TEL +81 3 5561-1711  FAX +81 3 5561-1712

same information it now seeks from Google – namely, the identification of specific control numbers at which documents responsive to Google's interrogatories (including Interrogatory Nos. 3 and 11) may be found. Unless and until Perfect 10 is willing to provide this information itself, on a reciprocal basis, Perfect 10's request to Google is both inconsistent with its other positions and inappropriate.

I look forward to hearing from you.

Very truly yours,

Rachel Herrick Kassabian

Rachel,

We received your response to my letter.

For all redacted pages, not just the examples, Google must identify by bates-number (1) the material Google redacted based on a claim of attorney-client privilege or work product; versus (2) the material Google redacted based on a claim that the material is "irrelevant," and "non-responsive." Furthermore, Google cannot state that material is "irrelevant," and "non-responsive" and state nothing more.

Google claims that GCL 053399.TIF is redacted because the material is purportedly "irrelevant," and "non-responsive." All of the material on GCL 053399.TIF is redacted. If **_all_** of the material on the entire page were in fact "non-responsive," then why was the page produced? The production of GCL 053399.TIF indicates that it contained responsive material. Moreover, GCL 053399.TIF is stamped CONFIDENTIAL. How can a blank page possibly be characterized as confidential?

Google claims that GCL 032695.TIF is redacted because "some" of the redacted material is purportedly "irrelevant," and "non-responsive." Snippets of material are redacted. First, Google claims that certain unidentified snippets are "irrelevant," and "non-responsive" -- Google is refusing to state the basis upon which it redacted other, unidentified material. Google must identify which snippets were redacted because the material is purportedly "non-responsive," and "irrelevant," and the basis, if any, for redacting the remaining snippets.
(Furthermore, it seems highly unlikely that snippets of material are "non-responsive," and "irrelevant.") Also, Google must explicitly state why material is purportedly "irrelevant," and "non-responsive."

Perfect 10 cannot evaluate the validity Google's redactions unless Google identifies the material redacted based upon Google's contention that the material is "irrelevant," and "non-responsive," and explicitly states why the material is purportedly "irrelevant" and "non-responsive." Please inform us if Google is willing to identify by bates-number the material that is purportedly "irrelevant," and "non-responsive" and if Google is willing to explicitly state why material is purportedly "irrelevant" and "non-responsive."

With regard to Google's responses to interrogatories, please let us know when you are available for a telephonic meet and confer, since Perfect 10 disagrees with Google's position. First, Google failed to even confirm whether it produced the documents Google said it would produce. Second, Google must make the requested identification. The situation here is not analogous to Google's interrogatory requests (nos. 3 and 11) directed to Perfect 10. The Court has deemed those interrogatories are mega interrogatories and explicitly determined that Perfect 10 is not obligated to make the identification Google requests -- therefore, Google's attempt to draw an analogy is entirely unpersuasive.

We look forward to hearing from you soon.

Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

Rachel,


By the close of business tomorrow, please respond to the correspondence below, and let us know when you are available for the requested meet and confer.


Valerie


Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** Valerie Kincaid    valeriekincaid@yahoo.com
**To:** Rachel Kassabian    rachelkassabian@  uinnemanuel.com
**Cc:** Jeff Mausner    eff@mausnerla  .com
**Sent:** Wednesday, July 1, 2009 4:16:12 PM
**Subject:** Re: Perfect 10 v. Google

Rachel,

We received your response to my letter.

For all redacted pages, not just the examples, Google must identify by bates-number (1) the material Google redacted based on a claim of attorney-client privilege or work product; versus (2) the material Google redacted based on a claim that the material is "irrelevant," and "non-responsive." Furthermore, Google cannot state that material is "irrelevant," and "non-responsive" and state nothing more.

Google claims that GCL 053399.TIF is redacted because the material is purportedly "irrelevant," and "non-responsive." All of the material on GCL 053399.TIF is redacted. If **_all_** of the material on the entire the page were in fact "non-responsive," then why was the page produced? The production of GCL 053399.TIF indicates that it contained responsive material. Moreover, GCL 053399.TIF is stamped CONFIDENTIAL. How can a blank page possibly be characterized as confidential?

Google claims that GCL 032695.TIF is redacted because "some" of the redacted material is purportedly "irrelevant," and "non-responsive." Snippets of material are redacted. First, Google claims that certain unidentified snippets are "irrelevant," and "non-responsive" -- Google is refusing to state the basis upon which it redacted other, unidentified material. Google must identify which snippets were redacted because the material is purportedly "non-responsive," and "irrelevant," and the basis, if any, for redacting the remaining snippets.

(Furthermore, it seems highly unlikely that snippets of material are "non-responsive," and "irrelevant.") Also, Google must explicitly state why material is purportedly "irrelevant," and "non-responsive."

Perfect 10 cannot evaluate the validity Google's redactions unless Google identifies the material redacted based upon Google's contention that the material is "irrelevant," and "non-responsive," <u>and</u> explicitly states why the material is purportedly "irrelevant" and "non-responsive." Please inform us if Google is willing to identify by bates-number the material that is purportedly "irrelevant," and "non-responsive" and if Google is willing to explicitly state why material is purportedly "irrelevant" and "non-responsive."

With regard to Google's responses to interrogatories, please let us know when you are available for a telephonic meet and confer, since Perfect 10 disagrees with Google's position. First, Google failed to even confirm whether it produced the documents Google said it would produce. Second, Google must make the requested identification. The situation here is not analogous to Google's interrogatory requests (nos.. 3 and 11) directed to Perfect 10. The Court has deemed those interrogatories are mega interrogatories and explicitly determined that Perfect 10 is not obligated to make the identification Google requests -- therefore, Google's attempt to draw an analogy is entirely unpersuasive.

We look forward to hearing from you soon.

Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** rad R. ove  bradlove@ uinnemanuel.com
**To:** valeriekincaid@yahoo.com    valeriekincaid@yahoo.com
**Cc:** Rachel Herrick Kassabian   rachelkassabian@ uinnemanuel.com
**Sent:** Tuesday, June 16, 2009 1:03:13 PM
**Subject:** Perfect 10 v. Google

Valerie,

Please see the attached letter.

Thanks,


Brad Love
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Direct: (415) 875-6330
Main Phone: (415) 875-6600
Main Fax: (415) 875-6700
E-mail: bradlove@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S INTERNET ADDRESS
**rachelkassabian@quinnemanuel.com**

July 24, 2009

**VIA E-MAIL AND U.S. MAIL**

Valerie Kincaid
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
Email: valeriekincaid@yahoo.com

Re:     Perfect 10, Inc. v. Google Inc. – Discovery Issues

Dear Valerie:

I write in response to your July 1, 2009 email regarding (1) Google's redactions in its document production and (2) Google's responses to certain of Perfect 10's Interrogatories. In both instances, Perfect 10 is seeking information from Google that Perfect 10 itself is unwilling to provide in response to Google's discovery requests.

**Redactions in Google's Document Production**

In your email, you claim that "Google cannot state that material is 'irrelevant,' and 'non-responsive' and state nothing more." Similarly, you purport to object to the redaction of certain "[s]nippets of material," claiming that "Perfect 10 cannot evaluate the validity [of] Google's redactions unless Google identifies the material redacted ... and explicitly states why the material is purportedly 'irrelevant' and 'non-responsive.'" As you know, Perfect 10 has never provided Google this level of detail with respect to any of its own redactions. For example, regarding Perfect 10's improper redactions of its financial statements and tax returns, Perfect 10 refused to provide anything but general and unsubstantiated assertions of irrelevance and privacy. See, e.g., Email from V. Kincaid to R. Kassabian, et al., dated October 10, 2008 (stating only that "Perfect 10 does not believe the redacted information is relevant to the issue of actual damages" and giving no further explanation); Email from V. Kincaid to T. Nolan, et al., dated October 25, 2008 (stating only that the redacted

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois 60606-6301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG ,United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 ,Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

information is "indisputably private and highly confidential"). Perfect 10 therefore is seeking far more information than it has ever provided to Google. This is inappropriate. The Court has been clear that both parties will be subject to the same discovery obligations in this litigation. *See, e.g.,* Transcript of April, 14, 2008 Hearing before Judge Matz, at 13 ("any ruling I would make of this type would have to be reciprocal and equally reciprocal").

Perfect 10 also now seeks the identification of particular documents by "bates-number," but this is information that Perfect 10 has steadfastly refused to provide to Google. For example, Perfect 10 has refused to properly designate individual documents as Confidential under the Protective Order, despite Google's repeated requests. Instead, Perfect 10's counsel has purported to apply an improper "blanket" designation to its hard drives—which Perfect 10 admits contain a mix of confidential and non-confidential materials—and has told Google that "if there is something you want to file in court or show to someone not subject to the protective order, just call me and I will tell you if you can do so." Letter from J. Mausner to T. Nolan, dated May 20, 2008. Perfect 10 can demand no more of Google than Perfect 10 is willing to do itself.

And further, Perfect 10 has refused to even assign unique control numbers to each page of its document production, necessitating motion practice. *See* Google's Motion to Compel Perfect 10 to (1) Produce Documents, (2) Comply with the Protective Order, and (3) Affix Document Control Numbers to Its Document Productions, at pp. 101-110 (currently pending before the Court). Without such control numbers, it is not even realistically *possible* for Perfect 10 to identify documents *for* Google in the manner that Perfect 10 now seeks *from* Google. Unless and until Perfect 10 is willing to provide this information itself, Perfect 10's attempts to impose additional discovery burdens on Google are inappropriate.

Lastly, you raise a series of questions regarding one particular page in Google's document production, identified as "GCL 053399." Specifically, you ask why Google redacted the page and produced it. We assume that you are referring the page control numbered "GGL 053399," as Google has not produced any documents with the control number prefix "GCL." With that assumption, as is readily apparent from a review of Google's production, that redacted page was part of a larger document, not a single-page document. Your insinuations about its contents are unfounded.

## Google's Responses to Interrogatories

For similar reasons, Perfect 10's claims regarding Google's responses to interrogatories are also unfounded and incorrect.

First, in your email, you claim that Google did not "confirm whether it produced the documents Google said it would produce." This simply is not true. *See* Letter from R. Kassabian to V. Kincaid, dated June 16, 2009 ("[R]egarding your request that Google confirm that it has produced documents in response to Perfect 10's Interrogatory Nos. 26, 32, 33 and 34 pursuant to <u>Rule</u> 33(d), Google has indeed produced documents responsive to those interrogatories.")

And second, you appear to request that Google identify particular documents by "bates-number" as responsive to particular parts of particular interrogatories. As you well know, Perfect 10 has never identified any document by control number as responsive to *any* of Google's interrogatories. In its response to Google's Interrogatory No. 3, Perfect 10 simply referred to "electronic copies and/or

paper print-outs of infringements." Its response to Google's Interrogatory No. 11, Perfect 10 similarly pointed only to certain categories of documents that Perfect 10 purportedly had or would produce. And in its Updated Response to Google's Fourth Set of Interrogatories, Perfect 10 was even less specific, referencing the *entire* document productions of *both* parties. Again, Perfect 10 may not demand more *from* Google than it is willing to provide *to* Google.

Please advise whether Perfect 10 will agree to bates stamp each page of its production, and provide on a reciprocal basis the same detailed information it now seeks from Google in terms of redactions and interrogatory responses.

Very truly yours,

*Rachel Herrick Kassabian*

Rachel Herrick Kassabian

# Exhibit P

FILED SEPARATELY UNDER SEAL
PURSUANT TO PROTECTIVE ORDER