1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION
4

5
    PERFECT 10, INC.,              )
6                                  )
            PLAINTIFF,             )
7                                  )
            VS.                    )  CASE NO. CV 04-9484-AHM(SHX)
8                                  )
                                   )
9   GOOGLE, INC.,                  )  LOS ANGELES, CALIFORNIA
                                   )  SEPTEMBER 22, 2009
10                                 )  (10:02 A.M. TO 11:09 A.M.)
                                   )  (11:21 A.M. TO 12:52 A.M.)
11          DEFENDANT.             )  (1:35 P.M. TO 2:43 P.M.)
    _____)  (2:52 P.M. TO 3:09 P.M.)
12                            HEARING
13            BEFORE THE HONORABLE STEPHEN J. HILLMAN
                  UNITED STATES MAGISTRATE JUDGE
14

15

16

17  APPEARANCES:           SEE NEXT PAGE

18  COURT REPORTER:        RECORDED

19  COURTROOM DEPUTY:      SANDRA L. BUTLER

20  TRANSCRIBER:           DOROTHY BABYKIN
                           COURTHOUSE SERVICES
21                         1218 VALEBROOK PLACE
                           GLENDORA, CALIFORNIA  91740
22                         (626) 963-0566

23

24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        LAW OFFICES OF JEFFREY N. MAUSNER
 2                             BY:  JEFFREY N. MAUSNER
                                    VALERIE KINCAID
 3                                  ATTORNEYS AT LAW
                               21800 OXNARD STREET
 4                             SUITE 910
                               WOODLAND HILLS, CALIFORNIA  91367
 5

 6   FOR GOOGLE:               QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES
 7                             BY:  THOMAS NOLAN
                                    ATTORNEY AT LAW
 8                             865 SOUTH FIGUEROA STREET
                               10TH FLOOR
 9                             LOS ANGELES, CALIFORNIA  90017

10                             QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES
11                             BY:  RACHEL M. HERRICK KASSABIAN
                                    ATTORNEY AT LAW
12                             555 TWIN DOLPHIN
                               SUITE 560
13                             REDWOOD SHORES, CALIFORNIA  04065

14   FOR AMAZON.COM,           TOWNSEND TOWNSEND & CREW
     ALEXA INTERNET:           BY:  MARK JANSEN
15                                  ATTORNEY AT LAW
                               TWO EMBARCADERO CENTER
16                             8TH FLOOR
                               SAN FRANCISCO, CALIFORNIA  94111
17
     ALSO PRESENT:             DR. NORMAN ZADA
18                             PRESIDENT, PERFECT 10

19                             MELANIE POBLETE
                               LEGAL ASSISTANT, PERFECT 10
20

21

22

23

24

25
```

I N D E X

CASE NO. CV 04-9484-AHM(SHX)                    SEPTEMBER 22, 2009

PROCEEDINGS:  HEARING RE DISCOVERY

1    LOS ANGELES,CALIFORNIA;TUESDAY, SEPTEMBER 22, 2009;10:02 A.M.

2            THE CLERK:  PLEASE REMAIN SEATED AND COME TO ORDER.

3    THIS COURT IS ONCE AGAIN IN SESSION.

4            CALLING CASE NUMBER CV 04-9484, PERFECT 10 VERSUS

5    GOOGLE.

6            COUNSEL, PLEASE STATE YOUR APPEARANCE FOR THE

7    RECORD.

8            MS. KASSABIAN:  GOOD MORNING, YOUR HONOR.

9            RACHEL HERRICK KASSABIAN AND THOMAS NOLAN HERE ON

10   BEHALF OF DEFENDANT GOOGLE.

11           MR. MAUSNER:  GOOD MORNING, YOUR HONOR.

12           JEFF MAUSNER, VALERIE KINCAID, WHO'S MY CO-COUNSEL;

13   DR. ZADA, AND MELANIE POBLETE, WHO IS THE LEGAL ASSISTANT ON

14   BEHALF OF PERFECT 10.

15           MR. JANSEN:  GOOD MORNING, YOUR HONOR.

16           MARK JANSEN OF TOWNSEND & TOWNSEND & CREW FOR

17   DEFENDANT AMAZON.COM AND ALEXA INTERNET.  THANK YOU.

18           THE COURT:  ALL RIGHT.  A COUPLE OF THE

19   GROUND-RULES.  I WILL NOT TOLERATE ANY INTERRUPTIONS OF

20   COUNSEL TODAY.  AND I DO NOT EXPECT TO HEAR FROM DR. ZADA

21   UNLESS IT IS AN EXTRAORDINARY CIRCUMSTANCE AND ONLY WITH

22   PERMISSION FROM THE COURT.

23           AND BASED ON MS. KASSABIAN'S MOST RECENT

24   DECLARATION LAST EVENING, I AM GOING FORWARD ON THE

25   ASSUMPTION THAT NOTHING HAS BEEN RESOLVED, OR ANYTHING THAT

1  HAS BEEN RESOLVED IS SO TRIVIAL I DON'T NEED TO HEAR ABOUT IT

2  AT THIS POINT.

3       CORRECT?

4       MS. KASSABIAN:  I BELIEVE SO, YOUR HONOR.

5       THE COURT:  ALL RIGHT.

6       LET'S BEGIN WITH THE RFAS.  AND WHAT I HAVE

7  PROVIDED YOU IS THE COURT'S CATEGORIZATION OF GOOGLE'S RFAS,

8  WHICH INCLUDE ONLY THE ONES TO WHICH NO RESPONSE --

9  SUBSTANTIVE RESPONSE WAS GIVEN.

10       WE'LL ADDRESS SEPARATELY THE I THINK 478 TO WHICH

11  SOME RESPONSES WERE GIVEN ALONG WITH OBJECTIONS.

12       SO, THESE WERE GROUPED ACCORDING TO RELATEDNESS AND

13  SUB-PARTS -- SUB-CATEGORIES AND JUST FOR REFERENCE ONLY.

14       SO, I INDICATED ON I THINK OUR LAST CONFERENCE CALL

15  THAT I WAS INCLINED TO GRANT -- AGAIN, I'M REFERRING JUST TO

16  THE CHART AT THIS POINT -- GRANT A LARGE PERCENTAGE OF THESE

17  RFAS.  AND HAVING PREPARED FOR THE HEARING TODAY, I STAND BY

18  THAT STATEMENT.

19       SO, PERHAPS I SHOULD HEAR FIRST FROM MR. MAUSNER,

20  LET'S SAY AS TO THE CHART ONLY, AND THEN WE'LL GET TO THE

21  REMAINING 478.

22       MR. MAUSNER:  GOOD MORNING, YOUR HONOR.

23       WE HAVE SUGGESTED TO GOOGLE THAT THE RFAS BE DONE

24  BY SAMPLING, JUST AS OTHER PARTS OF THE CASE.

25       GOOGLE'S POSITION IS THAT THEY WILL NOT AGREE TO

1    SAMPLING, AND THAT PERFECT 10 HAS TO ANSWER ALL OF THE RFAS.

2          IT'S OUR POSITION THAT THERE'S NO REASON NOT TO USE

3    SAMPLING IN CONNECTION WITH THE RFAS AS WELL BECAUSE THERE

4    ARE MANY REQUESTS THAT ARE QUITE DUPLICATIVE.  THERE ARE

5    REQUESTS DEALING WITH EACH DMCA NOTICE.  THERE'S NO REASON

6    THAT GOOGLE CAN'T JUST PICK OUT CERTAIN DMCA NOTICES AND

7    LIMIT THE REQUESTS TO THOSE RATHER THAN ASKING THE SAME

8    QUESTION OVER AND OVER AS TO EVERY SINGLE DMCA NOTICE.

9          WE'VE OFFERED, YOU KNOW, AT VARIOUS TIMES TO

10   RESPOND TO A HUNDRED, 125, 150.  I THINK 150 IS WELL WITHIN

11   WHAT'S REQUIRED IF SAMPLING IS USED.

12          THE COURT:  WELL, THE EASE OF WHICH -- WITH WHICH

13   THE MAJORITY OF THE DOCUMENTS LISTED IN THE CHART THAT I PUT

14   TOGETHER SORT OF ARGUES AGAINST SAMPLING.  I WOULD THINK THAT

15   PERFECT 10 COULD RESPOND TO A, B, AND C ON PAGE 1 IN MAYBE A

16   HALF HOUR FOR ALL OF THEM.

17          THERE ARE SOME -- THERE ARE SOME WHICH ARE NOT SO

18   EASILY ANSWERABLE, AND WE'LL GET TO THOSE.  BUT IT DOES SEEM

19   THAT THESE ARE PRETTY ROTE.

20          MR. MAUSNER:  WELL, I DON'T THINK WE COULD RESPOND

21   TO ALL OF THOSE IN ANYTHING CLOSE TO A HALF HOUR.  I DON'T

22   KNOW THAT WE COULD EVEN READ THEM IN A HALF HOUR.

23          BUT, YOU KNOW, THEY REQUIRE READING IT, LOOKING AT

24   THE DOCUMENT INVOLVED, AND THEN FORMULATING A RESPONSE.

25          WE THINK THAT THESE TYPES CAN BE DONE BY SAMPLING

1    AS WELL, AND THAT THERE'S NO REASON TO RESPOND TO ALL OF

2    THEM.  BUT WE WILL CERTAINLY ABIDE BY WHAT YOUR HONOR --

3         THE COURT:  WELL, LET ME HEAR FROM MS. KASSABIAN AS

4    TO THE RFAS LISTED ON THE CHART ONLY.  AND, THEN, I'LL GET

5    BACK TO MR. MAUSNER ON THE REMAINING.

6         MS. KASSABIAN:  GOOD MORNING, YOUR HONOR.

7         IT LOOKS -- I JUST WANTED TO CLARIFY ONE ISSUE.  IT

8    LOOKS LIKE THIS CHART SETS FORTH THE 478 REQUESTS FOR WHICH

9    NO SUBSTANTIVE RESPONSE WAS PROVIDED.

10        THE COURT:  RIGHT.  MAYBE I -- MAYBE THAT'S THE 478

11   NUMBER.

12        MS. KASSABIAN:  RIGHT, RIGHT.  I THINK YOU JUST

13   SWITCHED.  I JUST WANTED TO MAKE THAT --

14        THE COURT:  OKAY.

15        MS. KASSABIAN:  -- CLEAR FOR THE RECORD.  SO, WE

16   APPRECIATE THE TIME YOUR HONOR HAS TAKEN TO CREATE THIS

17   CHART, AND I THINK YOU'RE EXACTLY RIGHT.  A LOT OF THESE

18   WOULD BE EXTREMELY EASY TO ANSWER.  BUT THE BOTTOM LINE IS

19   THAT THE NUMBER OF THEM IS SIMPLY DRIVEN BY THE NUMBER OF

20   DMCA NOTICES.

21        JUST A ROUGH MATHEMATICAL CALCULATION REVEALS THERE

22   ARE ROUGHLY SEVEN QUESTIONS -- SEVEN REQUESTS PER NOTICE.

23   ALL OF THE NOTICES ARE AT ISSUE.  PERFECT 10 IS SEEKING

24   DAMAGES FOR ALL OF ITS NOTICES.

25        JUDGE MATZ IS CONSIDERING ALL OF THE NOTICES AND

1  RULING ON THE DMCA MOTIONS THAT WE HAVE BROUGHT.  SO, WE

2  BELIEVE THAT THE NOTION OF SAMPLING IS JUST COMPLETELY

3  INAPPOSITE HERE.  SO --

4       THE COURT:  WELL, IT WOULD BE HELPFUL IF THE

5  PARTIES ARE IN A POSITION, WHICH I DON'T THINK THEY ARE, TO

6  STIPULATE THAT SOMETHING COULD BE EXTRAPOLATED FROM THE

7  SAMPLING.  BUT THAT TO ME IS NEVER GOING TO HAPPEN AT THIS

8  POINT.

9       BUT IF THERE'S -- IF THAT'S A POSSIBILITY IN THE

10  NEAR FUTURE THAT SAMPLING WOULD LEAD TO SOME EVIDENTIARY

11  STIPULATION FOR PURPOSES OF AT LEAST SUMMARY JUDGMENT, THEN,

12  MAYBE MR. MAUSNER HAS A POINT.

13       MS. KASSABIAN:  AS I UNDERSTAND YOUR HONOR'S

14  COMMENTS REGARDING SAMPLING AT THE LAST FEW TELEPHONIC

15  CONFERENCES WE'VE HAD, THAT'S AN ISSUE THAT THE COURT IS

16  INTERESTED IN IN AN EFFORT TO AVOID THE BURDEN ON PERFECT 10

17  TO HAVE TO IDENTIFY MILLIONS AND MILLIONS OF ALLEGED

18  INFRINGEMENTS.  THAT'S NOT WHAT WE'RE DEALING WITH HERE.

19       THE COURT:  NO, I UNDERSTAND.  I UNDERSTAND.

20       MS. KASSABIAN:  YES.  BUT --

21       THE COURT:  BUT THE QUESTION IS, IS THERE A

22  REALISTIC POSSIBILITY THAT IF I WERE TO ORDER SAMPLING SO

23  THAT IF YOU LOOKED AT CATEGORY A AND A-2, THAT I SAID, YOU

24  KNOW, TEN OF THOSE, AND FIVE OF CATEGORY B, WHATEVER, THAT

25  THERE WOULD BE SOMETHING THAT YOU COULD REACH A STIPULATION

1  AS TO EXTRAPOLATING SOMETHING THAT WOULD BE USEFUL TO JUDGE

2  MATZ.

3       MS. KASSABIAN:  I THINK THE CONCERN WITH THAT, YOUR

4  HONOR, IS THAT EACH OF THESE NOTICES IS A LITTLE BIT

5  DIFFERENT.  SO, I'M NOT SURE PERFECT 10 COULD SAY, YOU KNOW,

6  WE'LL ANSWER REQUEST FOR ADMISSION AS TO DMCA NOTICE SERVED

7  ON JUNE 11, 2004, WHEN IN FACT THE NOTICES SERVED LATER IN

8  THE YEAR MIGHT HAVE DIFFERENT CONTENTS, MIGHT HAVE BEEN SENT

9  DIFFERENT WAYS.

10       SO, I DON'T THINK THAT THERE COULD BE A MEANINGFUL

11  EXTRAPOLATION WHEN EACH INDIVIDUAL NOTICE IS DIFFERENT.

12  THESE ARE NOT IDENTICAL.  THEY WEREN'T SENT IN IDENTICAL

13  FASHION.  THEY DO NOT HAVE IDENTICAL CONTENTS.  SOME ARE WHAT

14  I WOULD DESCRIBE AS MORE DEFECTIVE THAN OTHERS.

15       SO, I THINK IT WOULD BE NOT FEASIBLE TO DO AN

16  EXTRAPOLATION OR A SAMPLING WHEN WE'RE TALKING ABOUT 70-PLUS

17  DIFFERENT NOTICES SENT IN DIFFERENT CIRCUMSTANCES.

18       THE COURT:  ALL RIGHT.

19       YOU CAN BE SEATED.

20       BUT ANY QUICK RESPONSE?

21       MR. MAUSNER:  YES, YOUR HONOR.

22       GOOGLE HAS --

23       THE COURT:  MS. KASSABIAN, WHY DON'T YOU JUST STAY

24  THERE.  IT WOULD BE FASTER.

25       MR. MAUSNER:  GOOGLE HAS BROKEN THESE NOTICES INTO

1   THREE TYPES, WHICH IT CALLS GROUP A, GROUP B, AND GROUP C.

2   AND, THEN, THOSE 70 NOTICES THEY PUT INTO THOSE THREE TYPES,

3   IT SEEMS TO ME THAT MAYBE TWO OR THREE NOTICES IN EACH TYPE

4   WOULD BE SUFFICIENT FOR THIS.

5           DOING ALL OF THESE WILL DEFINITELY TAKE SEVERAL

6   DAYS OR MORE.  BUT IF WE CUT IT DOWN BY HAVING A CERTAIN

7   NUMBER IN EACH TYPE OF NOTICE, THAT WOULD MAKE THE TASK A LOT

8   EASIER.

9           THEY'RE SAYING THAT THEY NEED THIS FOR THEIR

10  SUMMARY JUDGMENT MOTION.  THEY'VE ALREADY FILED THE SUMMARY

11  JUDGMENT MOTION.  WE FILED OUR OPPOSITION.  THEY FILED THEIR

12  REPLY.  SO, THEY OBVIOUSLY DIDN'T NEED THIS TO DO THEIR

13  SUMMARY JUDGMENT MOTION.

14          THEY PROBABLY DON'T NEED ANY OF THIS AT ALL BECAUSE

15  THE MOTION HAS ALREADY BEEN FILED.  BUT WHAT I WOULD SUGGEST

16  IS THAT THEY BE REQUIRED TO SELECT TWO OR THREE NOTICES

17  WITHIN THEIR GROUP A, GROUP B, AND GROUP C BREAKDOWN AND THAT

18  PERFECT 10 RESPOND AS TO THOSE.

19          MS. KASSABIAN:  YOUR HONOR, IF I COULD JUST POINT

20  OUT A FEW EXAMPLES FROM YOUR CHART OF WHY THAT WOULDN'T WORK.

21  IF YOU SEE HERE, FOR INSTANCE, I'M LOOKING AT Q, WHICH IS ON

22  PAGE 5 OF 16, IT ASKS FOR ADMISSIONS THAT FOR ROUGHLY 80

23  PERCENT OF THE INFRINGING URLS LISTED IN THE JULY 19, 2004

24  NOTICE WERE IDENTICAL TO URLS LISTED IN ANOTHER NOTICE.

25          THERE ARE MANY SUCH RFAS THAT GO TO THE SPECIFIC

1    CONTENT OF INDIVIDUAL NOTICES THAT THIS WOULD NOT BE

2    REPRESENTATIVE OF ANYTHING OTHER THAN THE JULY 19TH NOTICE.

3    IT'S SIMPLY A QUESTION ABOUT THE FACT THAT ONE NOTICE

4    CONTAINED VERY DUPLICATIVE URLS, WHICH WE BELIEVE IS RELEVANT

5    TO THE ISSUES THAT JUDGE MATZ IS CURRENTLY CONSIDERING.

6           CERTAINLY WE WOULD HAVE LOVED TO HAVE PERFECT 10

7    ANSWER THESE RFAS BEFORE WE FILED OUR DMCA MOTION.  WE DID

8    NOT HAVE THAT LUXURY.  SO, WE WENT AHEAD WITH OUR MOTION

9    ANYWAY.

10           BUT I DON'T THINK THAT THAT MEANS THAT THESE ARE

11    MOOT, YOUR HONOR.  FIRST OF ALL, JUDGE MATZ MAY FIND THESE

12    ANSWERS VERY HELPFUL IN ELIMINATING POSSIBLE DISPUTES OF

13    FACT.

14           AND SECOND OF ALL, TO THE EXTENT ANY PORTION OF

15    GOOGLE'S MOTION IS DENIED, AND THE COURT FINDS THAT THERE

16    MIGHT BE TRIABLE ISSUES, WELL, IF PERFECT 10 WOULD JUST

17    ANSWER THESE RFAS, SOME OF THOSE TRIABLE ISSUES MIGHT BE

18    ELIMINATED OR MOOTED OR CERTAIN THINGS ARE ADMITTED.

19           SO, I THINK THAT'S THE CONCERN.

20           MR. MAUSNER:  YOUR HONOR, MAY I JUST SAY ONE THING.

21           THE COURT:  YES.

22           MR. MAUSNER:  THE REQUEST THAT SHE CHOSE IS A GOOD

23    EXAMPLE OF WHY THIS DOES TAKE A LONG TIME.

24           TO DETERMINE IF 80 PERCENT OF THE URLS IN ONE

25    NOTICE ARE THE SAME AS 80 PERCENT OF THE URLS IN THE OTHER

1   NOTICE IS GOING TO TAKE QUITE A BIT OF TIME.

2           THEY DON'T NEED MORE THAN ONE OF THOSE OR TWO OF

3   THOSE.  THE REASON THAT SOME OF THE NOTICES HAD THE SAME URLS

4   AS EARLIER NOTICES IS BECAUSE IT WASN'T TAKEN DOWN.  AND IT'S

5   NOT EVEN CLEAR WHAT THE RELEVANCE OF THAT IS.  BUT THIS IS

6   SOMETHING THAT'S VERY TIME CONSUMING IF IT HAS TO BE DONE

7   OVER AND OVER AGAIN.

8           MS. KASSABIAN:  AND IF I COULD JUST BRIEFLY

9   RESPOND, YOUR HONOR.

10          I AGREE THAT IT IS TIME CONSUMING.  AND GOOGLE

11  UNDERTOOK A GREAT DEAL OF EFFORT TO ANALYZE THESE NOTICES,

12  BOTH FOR RESPONDING TO THEM UNDER THE DMCA AND ALSO FOR

13  PREPARING THESE RFAS IN HOPES OF NARROWING THE ISSUES FOR THE

14  COURT.

15          IT IS TIME CONSUMING.  EVERYTHING ABOUT THIS CASE

16  IS TIME CONSUMING.  BUT IT IS THE CASE THAT PERFECT 10 HAS

17  BROUGHT, AND WE BELIEVE WE'RE ENTITLED TO ANSWERS.

18          THE COURT:  ONE OTHER AREA THAT I THINK IS INVOLVED

19  BOTH IN THE CHARTED RFAS AND THEN THE UNCHARTED RFAS TO WHICH

20  THERE ARE THE ALLEGEDLY INSUFFICIENT RESPONSES, ONE CATEGORY

21  I'VE BEEN CONCERNED ABOUT ARE -- I'LL GIVE YOU AN EXAMPLE --

22  IS Q, WHICH YOU JUST MENTIONED Q, WHICH -- SOMETIMES IT'S

23  DONE NUMERICALLY, SUCH AS IN Q, 316 OUT OF 376, INFRINGING

24  URLS ARE IDENTICAL TO OTHER INFRINGING URLS.

25          ANOTHER EXAMPLE OF THAT IS AT LEAST -- ADMIT THAT

1    AT LEAST 25 PERCENT OF -- I DON'T KNOW, 1,500 URLS ARE

2    SOMETHING OR NOT SOMETHING.  THOSE KIND OF RFAS I DO HAVE

3    SOME CONCERN ABOUT.

4           DO YOU KNOW WHICH ONES I'M REFERRING TO?

5           MS. KASSABIAN:  WELL, I HAVE Q HERE.  AND I'LL SEE

6    IF I CAN FIND THE ONE YOU'RE REFERRING TO ABOUT PERCENTAGES.

7    I THINK I RECALL THAT.

8           THE COURT:  THERE ARE SEVERAL WITH PERCENTAGES.

9    THERE'S A BUNCH THAT STARTS WITH, YOU KNOW, MORE THAN 1, MORE

10   THAN 25 -- AT LEAST 25 PERCENT, AT LEAST 50 PERCENT.  AND THE

11   NUMBERS -- THE TOTAL NUMBER IS VERY LARGE.

12          MS. KASSABIAN:  I THINK PERHAPS ARE YOU REFERRING

13   TO LL-4 AND LL-5, THOSE SORTS OF --

14          THE COURT:  THAT SOUNDS RIGHT.

15          (BRIEF PAUSE.)

16          THE COURT:  YES.

17          MS. KASSABIAN:  SO, THE REASON WHY THESE ARE

18   NECESSARY AND IMPORTANT, YOUR HONOR, IS THIS ISN'T JUST -- WE

19   DIDN'T JUST FEEL LIKE DOING AN EXERCISE THAT WOULD WASTE A

20   LOT OF OUR TIME AND A LOT OF PERFECT 10'S TIME.  THESE ARE

21   ISSUES THAT IF WE -- IF THE PARTIES DID NOT WORK THEM OUT

22   THROUGH DISCOVERY, THAT WOULD PUT THE BURDEN ON JUDGE MATZ

23   AND THE COURT TO HAVE TO GO THROUGH THESE NOTICES.

24          SO, FOR INSTANCE, ON Q, THE REASON THAT'S RELEVANT

25   IS BECAUSE, YOU KNOW, IN THE SPACE OF A WEEK PERFECT 10 SENT

1   DUPLICATIVE NOTICES WITHOUT LETTING GOOGLE KNOW THAT THESE

2   NOTICES WERE DUPLICATIVE.  AND, SO, GOOGLE HAD TO GO THROUGH

3   THE PROCESS OF PROCESSING BOTH NOTICES AND WASTING A TON OF

4   TIME.  WE BELIEVE THAT'S RELEVANT TO WHETHER THESE ARE PROPER

5   NOTICES.

6           AS TO LL-4 AND LL-5, THESE SORTS OF REQUESTS -- I

7   THINK THERE'S ALSO ONE AT PP-4.  SO, LOOKING AT PP-4, IT ASKS

8   FOR, "ADMIT THAT 50 PERCENT OF THE IMAGES ON THE DVDS

9   CONTAINED WITH THE JULY 2ND HARD DRIVE CANNOT BE LOCATED BY

10  IMAGE URL OR WEB PAGE URL."

11          THAT'S RELEVANT, YOUR HONOR.  IT'S CRITICAL

12  ACTUALLY TO OUR MOTION BECAUSE A LOT OF THE HARD DRIVES THAT

13  PERFECT 10 SERVED AS PURPORTED DMCA NOTICES WERE JUST MASSIVE

14  AMOUNTS OF SCREEN SHOTS, OF PICTURES IN FOLDERS WITHOUT ANY

15  IMAGE URL ON THEM WHATSOEVER.  SO, THERE WAS NO IMAGE URL

16  THAT GOOGLE COULD TAKE FROM THAT SCREEN SHOT AND USE TO

17  PROCESS AS PART OF ITS DMCA PROCEDURE.  THERE WAS NOTHING TO

18  REMOVE.

19          AND THAT'S VERY RELEVANT TO THE ISSUES THAT JUDGE

20  MATZ IS CONSIDERING.  ONE OF OUR BIG ARGUMENTS IS IF YOU SEND

21  US A NOTICE WITH NO URL TO PROVIDE THE LOCATION OF WHERE THAT

22  CAN BE FOUND, HOW COULD GOOGLE POSSIBLY REMOVE IT.  THERE'S

23  NOTHING TO REMOVE.  AND THERE'S NO EVIDENCE THAT THAT IMAGE

24  IS EVEN IN GOOGLE'S SEARCH INDEX IN THE FIRST PLACE.

25          SO, BY ASKING PERFECT 10, WHO KNOWS ITS NOTICES

1  BETTER THAN ANYONE ELSE, TO ADMIT THAT CONTENTS OF ITS

2  NOTICES -- FOR INSTANCE, THAT HALF OF THE SEVERAL HUNDRED

3  GIGABITS OF SCREEN SHOTS IN ONE OF THESE NOTICES DIDN'T EVEN

4  CONTAIN AN IMAGE URL WITH WHICH GOOGLE COULD LOCATE IT.  THAT

5  WILL HELP JUDGE MATZ MORE QUICKLY RESOLVE THE DECISION AS A

6  LEGAL MATTER AS TO WHETHER OR NOT A NOTICE WITH THAT TYPE OF

7  CONTENT IS DEFECTIVE OR NOT.

8          OTHERWISE THE COURT WOULD HAVE TO CLICK THROUGH --

9  SPEND WEEKS CLICKING THROUGH THESE NOTICES ITSELF TO

10 DETERMINE THAT.  AND I'LL REPRESENT TO YOU, YOUR HONOR, THAT

11 THAT'S A VERY DIFFICULT AND VERY, VERY TIME-CONSUMING TASK

12 THAT THIS COURT DOES NOT HAVE THE TIME FOR, NOR SHOULD THE

13 COURT HAVE TO SPEND ITS TIME DOING WHAT PERFECT 10 COULD DO

14 FOR IT VIA A RESPONSE TO AN RFA.

15         THE COURT:  BUT THIS MOTION IS UNDER SUBMISSION

16 NOW.

17         MS. KASSABIAN:  IT IS.

18         THE COURT:  SO, THIS -- I MEAN, YOU'RE NOT GOING TO

19 -- EVEN IF I WERE TO ORDER IT, IT'S NOT GOING TO BE

20 CONSIDERED IN THE MOTION.

21         MS. KASSABIAN:  WELL, I DON'T KNOW HOW LONG THE

22 COURT MIGHT TAKE.  I KNOW THE COURT'S VERY BUSY RIGHT NOW.  I

23 DON'T KNOW IF THE MOTION'S GOING TO BE UNDER SUBMISSION FOR A

24 WEEK, A MONTH, SIX MONTHS.

25         I DON'T THINK THAT'S A BASIS THOUGH NOT TO GRANT A

1    MOTION TO COMPEL OR A DULY PROPOUNDED RFA.  IF WE GET -- I

2    BELIEVE YOUR HONOR SHOULD ORDER PROMPT RESPONSES.  MANY OF

3    THESE CAN BE VERIFIED OFF THE TOP OF DR. ZADA'S HEAD OR JUST

4    THROUGH A QUICK REVIEW OF NOTICES.

5         IF WE CAN GET ANSWERS TO THESE IN TWO WEEKS OR A

6    MONTH OR EVEN ON A ROLLING BASIS, WE CAN SUBMIT A

7    SUPPLEMENTAL DECLARATION ATTACHING THOSE NOTICES THAT THE

8    COURT MIGHT FIND HELPFUL.  AND, THEN, EVEN IF THE MOTION IS

9    DENIED IN PART, THE DMCA MOTIONS, AT LEAST HAVING THESE

10   ADMISSIONS WILL HELP THE PARTIES NARROW ANY TRIABLE ISSUES

11   THAT MIGHT REMAIN FROM THAT ORDER.

12        MR. MAUSNER:  YOUR HONOR, IF THESE PERCENTAGES AND

13   OTHER THINGS WERE IMPORTANT, THEY COULD HAVE HAD THEIR OWN --

14        THE COURT:  A RULE 56(F) MOTION.

15        MR. MAUSNER:  NO, THEY COULD HAVE HAD THEIR OWN

16   WITNESS.  THIS IS THEIR MOTION FOR SUMMARY JUDGMENT.  OKAY.

17   IT'S NOT OURS.

18        THE COURT:  I UNDERSTAND.

19        MR. MAUSNER:  THEY COULD HAVE HAD THEIR OWN WITNESS

20   TESTIFY THAT 20 PERCENT OF THE URLS, WHATEVER.  OKAY.  THEY

21   DIDN'T HAVE ANY TESTIMONY LIKE THIS.  THERE'S JUST REALLY NO

22   REASON FOR THIS AT ALL.  AND IT IS UNDER SUBMISSION.

23   WHATEVER THEY THOUGHT WAS IMPORTANT THEY PUT IN ALREADY.

24        MS. KASSABIAN ADMITTED THAT THIS IS A GREAT DEAL OF

25   WORK.  IT SEEMS LIKE THERE'S NO REASON AT ALL TO PUT US TO

1  THIS TASK.  AND IT IS GOING TO TAKE A LONG TIME.

2         THEY'VE SUBMITTED THEIR MOTION AND THEIR REPLY.  IF

3  SOMETHING WAS IMPORTANT, THEY COULD HAVE HAD A WITNESS

4  TESTIFY THAT 20 PERCENT OR 25 PERCENT OF THE URLS WERE

5  WHATEVER THEY WANTED.  THEY DON'T NEED THESE REQUESTS FOR

6  ADMISSIONS.

7         MS. KASSABIAN:  AND IF I COULD JUST BRIEFLY

8  RESPOND, YOUR HONOR.  WE FILED THIS MOTION I THINK ABOUT A

9  YEAR AGO.

10         THE COURT:  THIS MOTION, YES.

11         MS. KASSABIAN:  YES.  AND WE CERTAINLY DID

12  EVERYTHING WE COULD TO TRY TO OBTAIN RESPONSES FROM PERFECT

13  10 BEFORE WE FILED THE MOTION.  IF THAT DIDN'T HAPPEN, I

14  DON'T THINK THAT THAT SHOULD BE HELD AGAINST GOOGLE.

15         BUT MORE IMPORTANTLY, NOTHING THAT MR. MAUSNER JUST

16  SAID IS RELEVANT TO A MOTION TO COMPEL.

17         THE COURT:  I MISSPOKE.  OBVIOUSLY, YOU WOULDN'T

18  HAVE NEEDED A 56(F) MOTION, BUT YOU CHOSE TO FILE YOUR

19  SUMMARY JUDGMENT MOTION --

20         MS. KASSABIAN:  YES.

21         THE COURT:  -- WHEN YOU DID WITHOUT THIS MATERIAL.

22  JUDGE MATZ COULD ACCEPT SUPPLEMENTAL EVIDENCE IF HE WISHED

23  TO, BUT HE HASN'T INDICATED THAT HE WILL.  SO --

24         MS. KASSABIAN:  AND JUST ON --

25         THE COURT:  -- WHAT DO YOU REALLY NEED AT THIS TIME

1    IN THE CHARTED MATERIAL?

2            MS. KASSABIAN:  WE NEED ANSWERS.  I MEAN, WE NEED

3    THEM ALL.  THERE'S -- I'VE YET TO HEAR, OTHER THAN JUST A

4    CLAIM OF THIS IS GOING TO TAKE A LONG TIME, PERFECT 10 IS NOT

5    ARGUING THESE AREN'T RELEVANT.  THEY'RE NOT ARGUING THAT

6    THEY'RE NOT AT ISSUE IN THE CASE.  THEY'RE SIMPLY SAYING WE

7    DON'T WANT TO TAKE THE TIME.  AND THAT'S JUST NOT A PROPER

8    BASIS TO OBJECT TO A REQUEST FOR ADMISSION.  IT'S JUST NOT.

9            MR. MAUSNER:  MANY OF THEM ARE NOT RELEVANT.

10           MS. KASSABIAN:  I MEAN, YOU KNOW, I THINK IT'S FAIR

11   TO SAY THAT, YOU KNOW, LOOKING AT "A" HERE, "ADMIT THAT A

12   GIVEN NOTICE DOES NOT IDENTIFY THE ALLEGED COPYRIGHT AND

13   MATERIAL CLAIM TO BE INFRINGED."

14           I MEAN, I THINK IT'S SAFE TO SAY THAT PERFECT 10 IS

15   GOING TO DENY EVERY ONE OF THOSE AND CAN TYPE IN THE WORD

16    "DENIED" AND CUT AND PASTE IT 30 TIMES, 40 TIMES.

17           I SUSPECT THAT THEY DISAGREE WITH THE CONTENTION

18   THAT THEY HAVE FAILED TO IDENTIFY THE COPYRIGHTED MATERIAL.

19   AND, YOU KNOW, THAT WOULD TAKE ALL OF ABOUT A HALF AN HOUR.

20           IF THAT'S THEIR POSITION, THEN, FINE, SO BE IT.

21   BUT WE'RE ENTITLED TO HAVE THAT IN THE RECORD.

22           THE COURT:  WELL, THE FIRST QUESTION I NEED TO

23   DECIDE IS WHETHER I SHOULD PUT PERFECT 10 TO THE BURDEN OF

24   RESPONDING AT THIS JUNCTURE, GIVEN THE POSTURE OF THE CASE,

25   GIVEN THE ISSUES THAT ARE NOT RESOLVED, ARE NOT GOING TO BE

1  RESOLVED BY ME TODAY, AND GIVEN THE MOTION THAT IS UNDER

2  SUBMISSION WITH JUDGE MATZ.  YOU KNOW, MAYBE THEY HAVE A

3  POINT, THAT YOU'LL GET THIS BUT ONLY WHEN -- WHEN YOU NEED

4  IT.

5       MS. KASSABIAN:  WELL, YOUR HONOR, I THINK WE

6  COULDN'T NEED IT MORE THAN WE NEED IT RIGHT NOW.

7       THE COURT:  BECAUSE YOU INTEND TO SUPPLEMENT THE

8  MOTION?

9       MS. KASSABIAN:  I THINK IT'S OUR OBLIGATION TO LET

10  THE COURT KNOW ADDITIONAL DISCOVERY HAS FINALLY BEEN PROVIDED

11  THAT BEARS DIRECTLY ON THE DMCA MOTION.  I THINK IT'S OUR

12  OBLIGATION.  AND I ABSOLUTELY WOULD DO THAT.

13       THE COURT:  I RESPECT YOUR POSITION.

14       MS. KASSABIAN:  AND --

15       THE COURT:  AND LET'S -- GO AHEAD.

16       MS. KASSABIAN:  OH, I'M SORRY.  IF I COULD ADDRESS

17  THE ISSUE OF WHETHER PERFECT 10 SHOULD BE TASKED WITH

18  RESPONDING TO THESE AT THIS JUNCTURE.  YOUR HONOR, I BELIEVE

19  THAT GOOGLE DID EVERYTHING IT POSSIBLY COULD HAVE TO GET THIS

20  ISSUE TEE'D UP AND SUBMITTED TO THE COURT.  AND SHORTLY AFTER

21  WE FILED IT I BELIEVE THERE WERE A NUMBER OF CONFERENCES THAT

22  JUDGE MATZ HELD, WHERE IT APPEARED THAT THE COURT WAS

23  INDICATING THAT IT WANTED TO RESOLVE CERTAIN ISSUES WITHOUT

24  RULING FIRST ON DISCOVERY MOTIONS.  THE COURT WASN'T

25  NECESSARILY SPECIFIC AS TO WHICH DISCOVERY MOTIONS IT WAS

1  REFERRING TO.  CERTAINLY IT WAS REFERRING TO THE ISSUE OF --

2              THE COURT:  YOU THINK AFTER THE STAY WAS LIFTED OR

3  --

4              MS. KASSABIAN:  BEFORE THE STAY.  RIGHT BEFORE THE

5  STAY WAS IMPOSED THERE WERE SOME CONFERENCES IN SEPTEMBER AND

6  OCTOBER OF 2008 WHERE JUDGE MATZ INDICATED THAT HE WOULD LIKE

7  TO TRY TO FIND A WAY TO RESOLVE THE CASE OR SUBSTANTIALLY

8  NARROW IT WITHOUT --

9              THE COURT:  THAT'S FOR SURE.

10              MS. KASSABIAN:  YES.

11              -- WITHOUT YOUR HONOR HAVING TO RULE ON A BUNCH OF

12  DISCOVERY MOTIONS.

13              AND, SO, WE HAD CERTAINLY NO WAY OF KNOWING WHETHER

14  THE COURT WAS INCLUDING THE RFA MOTION AS WELL AS TO WHY WE,

15  GOOGLE, FILED THE MOTION, THE DMCA MOTION WHEN IT DID.  THAT

16  WAS A MOTION THAT THE PARTIES WERE MEETING AND CONFERRING ON

17  LAST FALL RIGHT BEFORE THE STAY WAS IMPOSED.

18              WE ASKED THE COURT IF WE COULD HAVE LEAVE TO FILE

19  THE DMCA MOTION BEFORE THE STAY WAS IMPOSED, BUT THE COURT

20  DECLINED THAT REQUEST AND WENT AHEAD AND IMPOSED THE STAY.

21              OBVIOUSLY, DURING THE STAY NOTHING HAPPENED.  AND

22  WHEN THE STAY WAS LIFTED, YOU KNOW, OUR MOTIONS WERE STILL

23  UNDER SUBMISSION.  AND AT THAT POINT THE LAST WE HAD HEARD

24  FROM THE COURT WAS THAT THE COURT WAS HOPING TO RULE ON

25  DISPOSITIVE MOTIONS WITHOUT REACHING DISCOVERY ISSUES.

1    SO, RATHER THAN JUST SIT AND WAIT FOREVER, YOU

2    KNOW, SORT OF LIKE AT A STALEMATE, WELL, DO OUR MOTIONS GET

3    RULED ON OR DO WE FILE -- DO OUR DISCOVERY MOTIONS GET RULED

4    ON, OR DO WE FILE DISPOSITIVE MOTIONS, WE WENT AHEAD AND

5    PREPARED AND FILED OUR DMCA MOTIONS.

6    BUT I DON'T THINK THAT PERFECT 10 SHOULD BE ABLE TO

7    BENEFIT OR PROFIT FROM ITS DELAY IN RESPONDING TO THESE RFAS.

8    THEY'RE ALIVE.  THIS IS A CONTROVERSY --

9    THE COURT:  WELL, I HAVE NO IDEA WHETHER JUDGE MATZ

10   WOULD BE WILLING TO ACCEPT ADDITIONAL DECLARATIONS AND

11   EVIDENCE AT THIS POINT.  HE MAY, AND HE MAY NOT.  BUT I

12   UNDERSTAND THE ARGUMENTS ON BOTH SIDES.

13   LET'S MOVE ON TO THE ALLEGEDLY INSUFFICIENT

14   RESPONSES, WHICH THE DISCUSSION BEGINS AT PAGE 337 OF THE

15   JOINT STIPULATION AND, THEN, NUMERICALLY RFA BY RFA BEGINS AT

16   349.

17   OBVIOUSLY, AS I CONSIDER THESE, I WILL TAKE INTO

18   ACCOUNT ALL OF THE ARGUMENTS I JUST HEARD.  BUT I BROKE THESE

19   OUT IN MY OWN MIND AS SORT OF SEPARATE ISSUES.  AND I DO

20   BELIEVE THAT SOME OF THESE ARE -- A FEW OF THESE ARE

21   ARGUMENTATIVE, PERHAPS AMBIGUOUS -- THOUGH, THAT'S WHAT THE

22   MEET AND CONFER PROCESS IS FOR IS TO ELIMINATE AMBIGUITY, BUT

23   I GUESS THAT WASN'T DONE IN THIS CASE.

24   MY FAVORITE ONE IS 145.  "ADMIT THAT GOOGLE DOES NOT

25   OWN THE INTERNET."

1          I SUPPOSE THE ANSWER MIGHT BE "INSUFFICIENT

2    KNOWLEDGE TO RESPOND."

3          BUT THAT'S KIND OF -- THAT DIDN'T IMPRESS ME.

4          BUT ON THE OTHER HAND, I DO BELIEVE THAT MANY OF

5    THE RESPONSES ARE SILLY, ARGUMENTATIVE, AND DO NOT FAIRLY

6    ADDRESS THE REQUEST.

7          (PAUSE IN PROCEEDINGS.)

8          THE COURT:  LIKE RANDOMLY, LOOKING AT 109 ON PAGE

9    352, "ADMIT THAT GOOGLE DOES NOT PREVENT PERFECT 10 FROM

10   PROVIDING DMCA COMPLIANT NOTIFICATIONS."

11          THAT'S UNDERSTANDABLE TO A LAY PERSON AND TO

12   LAWYERS.

13          THE LAW REGARDING RULE 36 RFAS DOES ALLOW BOTH A

14   QUALIFIED RESPONSE.  BUT I DON'T THINK THAT RESPONSE FAIRLY

15   MEETS THE REQUEST.

16          I THINK 147 THAT'S PROBABLY APPROPRIATE.  IT'S A

17   QUALIFIED DENIAL.

18          402 ON PAGE 365, "ADMIT THAT YOU DID NOT ENCLOSE

19   COPIES OF THE MAGAZINE ISSUES LISTED IN ZADA'S

20   COMMUNICATION."

21          I MEAN, COME ON.  THAT'S A STRAIGHTFORWARD RFA.

22   AND SAYING THAT IT'S IRRELEVANT BECAUSE GOOGLE DID NOT ASK

23   FOR THE MAGAZINES IS NOT A PROPER OBJECTION.  THERE IS AN

24   ADMISSION BURIED IN HERE.

25          SO, THINGS LIKE THAT ARE GOING TO HAVE TO BE

1    CLEANED UP AND LINES STRICKEN SO THAT THERE'S A

2    STRAIGHTFORWARD ADMIT OR DENY OR, OCCASIONALLY, A DENIAL WITH

3    QUALIFICATIONS.

4              I'M NOT GOING TO TAKE THE TIME TO GO THROUGH ALL OF

5    THESE IN COURT, BUT I'M GOING TO HAVE TO GO THROUGH EACH AND

6    EVERY ONE UNLESS I DECIDE THAT THEY NEED NOT BE ANSWERED AT

7    THIS JUNCTURE AT ALL.

8              (PAUSE IN PROCEEDINGS.)

9              THE COURT:  JUMPING AHEAD TO PAGE 415, 4-1-5, RFA

10   502,

11             "ADMIT THAT ONE OR MORE OF THE URLS LISTED IN

12             ZADA'S COMMUNICATION YOU IDENTIFIED PERFECT10.COM

13             AS ALLEGED COPYRIGHT -- AS THE ALLEGED

14             COPYRIGHTED MATERIAL YOU CLAIM WAS INFRINGED."

15             I'M NOT SURE I UNDERSTAND WHAT THAT MEANS.

16             "ADMIT THAT ONE OR MORE OF THE URLS LISTED IN

17             ZADA'S COMMUNICATION IDENTIFIED THE WEBSITE AS

18             THE ALLEGED COPYRIGHTED MATERIAL."

19             THE ENTIRE WEBSITE I GUESS.  ALL RIGHT.

20             "OBJECTION.  VAGUE AND AMBIGUOUS.

21             MISCHARACTERIZES THE NOTICE."

22             PERFECT 10 STATED:

23             "THAT THE IMAGES MAY BE FOUND IN MANY CASES

24             ON PERFECT10.COM, NOT THAT THE ENTIRETY OF

25             PERFECT10.COM WAS BEING INFRINGED AT A PARTICULAR

1          URL."

2          I GUESS THAT MIGHT BE A QUALIFIED DENIAL.

3          523 ON PAGE 417, THIS IS SIMILAR TO THE EARLIER

4    EXAMPLE I GAVE.

5          "ADMIT IF RELEASED 123 OF 149 URLS LISTED IN

6          ZADA'S COMMUNICATION.  YOU IDENTIFIED MULTIPLE

7          PAGES IN THE MAGAZINE AS ALLEGED COPYRIGHTED

8          MATERIAL."

9          I DON'T SEE WHY THAT'S VAGUE AND AMBIGUOUS.

10          SO, I THINK -- I'M GOING TO HAVE TO GO THROUGH EACH

11    ONE, BUT I'LL HEAR BRIEF ARGUMENT ON BOTH SIDES.

12          MS. KASSABIAN:  YOUR HONOR, IF I COULD ACTUALLY

13    JUST --

14          THE COURT:  YES.

15          MS. KASSABIAN: -- SAY ONE THING.

16          SOMETHING ESCAPED ME WHEN YOU WERE ON OUR LAST

17    DISCUSSION.  I JUST WANTED TO MAKE SURE THE COURT WAS AWARE.

18    ABOUT TWO WEEKS AGO ROUGHLY AN EX PARTE APPLICATION WAS FILED

19    BY AMAZON REGARDING EXTENDING ITS MOTION FOR SUMMARY JUDGMENT

20    CUTOFF DATE.

21          THE COURT:  RIGHT.

22          MS. KASSABIAN: AND THAT WAS DONE AT YOUR HONOR'S

23    SUGGESTION, OR, AT LEAST, YOU ARE AWARE OF THAT.

24          ANYHOW, PERFECT 10 OPPOSED THE REQUEST AND ALSO

25    ASKED JUDGE MATZ THAT ALL DISCOVERY IN AMAZON AND GOOGLE

1   SHOULD BE STAYED PENDING THE COURT'S RESOLUTION OF ALL THE

2   PENDING SUMMARY JUDGMENT MOTIONS IN BOTH CASES.

3          JUDGE MATZ REJECTED THAT FLAT OUT.  HIS ORDER SAYS

4   THESE MOTIONS ARE UNDER SUBMISSION.  I'LL RULE ON THEM.

5   UNTIL THEN AMAZON DOESN'T HAVE TO FILE ADDITIONAL SUMMARY

6   JUDGMENT MOTIONS.

7          THE COURT:  RIGHT.

8          MS. KASSABIAN:  AND IN THE MEANTIME PERFECT 10 MUST

9   RESPOND TO ALL DISCOVERY IN THE GOOGLE AND AMAZON CASES.

10         SO, JUST ON THE ISSUE OF WHETHER PERFECT 10 SHOULD

11  HAVE TO RESPOND TO DISCOVERY WHILE THESE MOTIONS ARE PENDING,

12  I THINK JUDGE MATZ HAS MADE HIS FEELINGS VERY CLEAR ON THAT,

13  THAT HE WANTS TO MOVE THE BALL FORWARD ON DISCOVERY WHILE

14  HE'S CONSIDERING THAT.

15         THE COURT:  ALL RIGHT.

16         MS. KASSABIAN:  SORRY.  THAT'S --

17         THE COURT:  ANY COMMENTS ON THESE REMAINING

18  ALLEGEDLY INSUFFICIENT RFAS?

19         MS. KASSABIAN:  WELL, I THINK YOUR HONOR HAS IT

20  RIGHT.  AND THERE ARE A LOT OF -- THERE'S A LOT OF

21  ARGUMENTATIVE COMMENTARY IN HERE.  THERE ARE A LOT OF EVASIVE

22  ANSWERS THAT DON'T CLEARLY ADMIT OR DENY OR STATE A REASON

23  WHY PERFECT 10 CAN'T ADMIT OR DENY.

24         SO, I'LL LET PERFECT 10 GO FIRST SINCE I THINK YOUR

25  HONOR HAS CAPTURED IT.

1          MR. MAUSNER:  YOUR HONOR, THE FIRST THING I'D POINT

2     OUT IS THAT OUR RESPONSES ARE MUCH MORE RESPONSIVE, AND WE

3     ADMIT A LOT MORE THAN GOOGLE DID IN ITS RESPONSES TO OUR

4     RFAS.

5          IF WE ARE GOING TO BE REQUIRED TO DO ALL OF THIS

6     WORK, WHICH WE THINK IS UNNECESSARY, YOU KNOW, WE MAY HAVE TO

7     -- WE MAY HAVE TO BRING A SIMILAR MOTION REGARDING GOOGLE'S

8     BECAUSE THEY HAVE NOT RESPONDED TO HARDLY ANY OF OURS, YOU

9     KNOW, IN THE SAME FASHION THAT WE DID.

10          IF THERE'S SPECIFIC ONES YOU'D LIKE TO ASK ME

11     ABOUT, YOUR HONOR?

12          THE COURT:  NO.  I MEAN, COLLECTIVELY YOU'RE

13     PUTTING THE BURDEN ON THE COURT BECAUSE YOU'RE UNABLE TO

14     RESOLVE ANY OF THESE.  SO, I HAVE TO DO THE HEAVY LIFTING.

15     SO, WHAT ELSE IS THERE TO SAY.

16          THE THIRD OPTION I HAVE WOULD BE TO GRANT WHATEVER

17     I'M GOING TO GRANT AND DENY WHATEVER I'M GOING TO DENY, BUT

18     AS TO THE ONES GRANTED, GIVE A LENGTHY COMPLIANCE TIME TO SEE

19     WHAT HAPPENS ON THE MOTION BEFORE JUDGE MATZ.  I'M JUST

20     THINKING OUT LOUD.  BUT MAYBE TILL THE END OF THE YEAR IF I

21     GRANT THE MAJORITY OF THESE RFAS.

22          ALL RIGHT.  SO, THAT MOTION IS UNDER SUBMISSION.

23          MS. KASSABIAN:  THANK YOU, YOUR HONOR.

24          THE COURT:  TURNING TO THE ISSUE OF FINANCIAL

25     DOCUMENTS.

1          AND, MR. JANSEN, I'M NOT GOING TO FORGET ABOUT YOU.

2     YOU'RE BACK THERE, BUT YOU'LL CHIME IN WHEN YOU NEED TO.

3          ALL RIGHT?

4          MR. JANSEN:  CERTAINLY, YOUR HONOR.

5          THE COURT:  WITH RESPECT TO THE FINANCIAL

6     DOCUMENTS, THE WAY I'VE BROKEN THIS DOWN IN MY MIND IS I

7     THINK THE PARTIES ARE TALKING ABOUT SEVERAL DIFFERENT

8     DISCRETE THINGS.

9          ONE IS AS TO FINANCIAL DOCUMENTS THAT PERFECT 10

10    HAS ALREADY TURNED OVER PURSUANT TO MY PRIOR ORDER REGARDING

11    FINANCIAL SUMMARY DOCUMENTS.  THE QUESTIONS ARE WHAT HAS BEEN

12    REDACTED AND SHOULD THEY REMAIN REDACTED.

13         AND WHAT ABOUT THIRD-PARTY SETTLEMENT INFORMATION.

14         SO, THOSE ARE THE TWO ISSUES I THINK AS TO

15    DOCUMENTS ALREADY PRODUCED.

16         THEN, THERE IS A SECOND QUESTION, WHICH I WOULD

17    STATE AS, HAS PERFECT 10 TURNED OVER ALL BACK-UP DOCUMENTS

18    REGARDING ITS EXPERT WITNESS -- THAT ITS EXPERT ACCOUNTANT

19    RELIED ON SO THAT AN EXPERT CAN BE PROPERLY DEPOSED.

20         AND, THEN, THE NEXT BIG ISSUE WOULD BE IS NOW THE

21    RIPE TIME IN THE CASE FOR THE COURT TO ORDER THAT ALL BACK-UP

22    DOCUMENTS FOR ALL DAMAGES, ALL FINANCIAL INFORMATION BE

23    TURNED OVER.  AND THERE ARE SEVERAL REQUESTS FOR, QUOTE,

24    UNQUOTE, ALL DOCUMENTS.

25         AND IT WILL COME AS NO SURPRISE, I DON'T THINK,

1  THAT I'M NOT INCLINED TO ORDER THAT AT THIS TIME.

2          I THINK THOSE ARE -- THAT'S HOW I BREAK THE ISSUES

3  DOWN.

4          DOES THAT SOUND FAIR?

5          MR. MAUSNER:  YOUR HONOR, WE SPENT QUITE A BIT OF

6  TIME ON THIS, AND WE CAME UP WITH WHAT IT IS THAT WE THINK

7  NEEDS TO BE REDACTED.  AND THERE ARE SIX CATEGORIES --

8          THE COURT:  BUT AM I -- IS MY SUMMARY OF THE ISSUES

9  I NEED TO DECIDE IS THAT A FAIR CHARACTERIZATION?

10          MR. MAUSNER:  YES.

11          MS. KASSABIAN:  AND, YOUR HONOR, THE ONLY THING

12  THAT I WOULD ADD -- THOSE THREE ARE COMPLETELY RIGHT.  THOSE

13  ARE ALL RIPE FOR DECISION.  BUT I WOULD JUST ADD THAT

14  OBVIOUSLY UNDER ISSUE NUMBER ONE, THERE ARE ROUGHLY, I DON'T

15  KNOW, MAYBE 20 OR 30 SPECIFIC REQUESTS RELATED TO FINANCIAL

16  DOCUMENTS THAT WE WOULD, YOU KNOW, NEED TO --

17          THE COURT:  OH, THAT'S A GOOD POINT.  THAT'S THE

18  FOURTH CATEGORY.  AND THE REASON I FORGOT ABOUT THOSE IS THAT

19  IN MY MIND THEY AREN'T REALLY -- THEY MAY HAVE SOME FINANCIAL

20  IMPACT IN THE CASE, BUT YOU'RE TALKING ABOUT THINGS LIKE

21  REQUEST NUMBER 100 ON PAGE 41.

22          "ALL DOCUMENTS CONCERNING THE NUMBER OR

23          FREQUENCY OF VISITS TO EACH OF YOUR WEB PAGES

24          BY CUSTOMERS."

25          NOW, THOSE APPEAR IN THIS PORTION OF THE JOINT

1    STIPULATION, BUT IN MY MIND THEY ARE DIFFERENT THAN, QUOTE,

2    UNQUOTE, FINANCIAL DOCUMENTS.

3             AND THE SECOND THING I'LL SAY --

4             MS. KASSABIAN:  OH, I'M SORRY.

5             THE COURT:  DO YOU HAVE A QUESTION?

6             MS. KASSABIAN:  WAS THAT 100?

7             THE COURT:  YES.

8             MS. KASSABIAN:  REQUEST 100?

9             THE COURT:  YES.  PAGE 41.

10            MS. KASSABIAN:  OH, THAT'S -- THAT'S A DIFFERENT --

11   THAT'S UNDER A DIFFERENT SECTION.  I THINK ISSUE 1 IS WHAT

12   I'M REFERRING TO, WHICH STARTS AT PAGE 7.  AND THOSE ARE

13   ASKING FOR DOCUMENTS RELATED TO DAMAGES CLAIMS AND FINANCIAL

14   CONDITION.

15            THE COURT:  OKAY.

16            MS. KASSABIAN:  ISSUE 2 RELATES TO THE WEBSITES,

17   WHICH WE PURSUANT --

18            THE COURT:  OKAY.  SO, 100 IS ISSUE 2?

19            MS. KASSABIAN:  YES.

20            THE COURT:  OH, OKAY.  THAT'S GOOD.  OKAY.

21            ALL RIGHT.  SO, STARTING AT PAGE --

22            MS. KASSABIAN:  7.

23            THE COURT:  -- 7.  OKAY.  YES.

24            SO, WHAT I MEANT TO SAY, AND I THINK I SAID, IS

25   THAT 481, 82 -- 87, 94 I'M NOT INCLINED TO GRANT THOSE AT

1  THIS TIME.  WELL, 94 IS DIFFERENT.  I'M NOT INCLINED TO GRANT

2  81 AND 87.

3          94, WE CAN DISCUSS BECAUSE IT TALKS ABOUT DOCUMENTS

4  SUFFICIENT, AND PERFECT 10 MAY HAVE DONE THAT.

5          BUT, THEN, WE GET TO 95, "DOCUMENTS SUFFICIENT TO

6  IDENTIFY YOUR 25 LARGEST CUSTOMERS."

7          I'M NOT SURE THAT -- I'LL HEAR ARGUMENT ON THAT.

8          MS. KASSABIAN:  THANK YOU.

9          SO, YOUR HONOR, I JUST WANTED TO POINT OUT WITHOUT

10  GETTING US OFF TRACK HERE THAT I WOULD SUGGEST THE FOURTH

11  ISSUE WOULD BE, YOU KNOW, GOING THROUGH THE SPECIFIC REQUESTS

12  THAT WE'VE BROUGHT OUR MOTION ON.  BECAUSE WE DON'T THINK

13  DOCUMENTS -- YOU KNOW, SUFFICIENT RESPONSIVE DOCUMENTS HAVE

14  BEEN PRODUCED IN THOSE CATEGORIES.

15          THE COURT:  OKAY.  AND JUST SO I KNOW, YOU'RE GOING

16  UP THROUGH PAGE -- WHAT?

17          MS. KASSABIAN:  THE ENTIRE ARGUMENT GOES THROUGH TO

18  PAGE 40, BUT THE REQUESTS THEMSELVES STOP AT PAGE 21.  SO, 7

19  THROUGH 21.

20          THE COURT:  OKAY.

21          (PAUSE IN PROCEEDINGS.)

22          THE COURT:  AND I HAVE DIFFICULTY WITH -- I'M

23  LOOKING AT 181, 182.  SO, WHEN WE GET TO THOSE, REMIND ME.

24          SO, THE FIRST ISSUE THAT I IDENTIFY GOING BACK TO

25  THE TOP IS GIVEN MY PRIOR ORDER REGARDING FINANCIAL

1   SUMMARIES, IS THE FIRST -- WHAT WAS THE FIRST ISSUE I SAID?

2   REDACTIONS?

3           MS. KASSABIAN:  CORRECT.

4           THE COURT:  OKAY.  SO, I THINK YOU GAVE ME

5   SOMETHING --

6           MS. KASSABIAN:  I GAVE YOU THE BINDER.

7           THE COURT:  THE BINDER.  OKAY.

8           SO, GO AHEAD.

9           MS. KASSABIAN:  SO, YOUR HONOR, THIS BINDER

10  CONTAINS EXCERPTS OF EVERY REDACTED PAGE IN THE FINANCIALS

11  THAT PERFECT 10 HAS PRODUCED.

12          I BELIEVE, AND, MR. NOLAN, CORRECT ME IF I'M WRONG,

13  BUT I BELIEVE THAT FOR THE FINANCIAL REPORTS -- BECAUSE THERE

14  WERE MONTHLY REPORTS AND THEN ALSO A YEAR-END REPORT -- WE

15  JUST FOR PURPOSES OF KEEPING THE BINDER AT A REASONABLE SIZE,

16  WE JUST INCLUDED THE LAST FINANCIAL REPORT FOR EACH YEAR.

17  SO, THAT WOULD BE FOR TABS 6 THROUGH 14.

18          AND, THEN, FOR TAB 14, WHICH IS 2009, OBVIOUSLY,

19  WE'RE NOT AT DECEMBER YET, SO WE INCLUDED MAY.

20          SO, FOR TABS 1 THROUGH 5 WHAT YOU'RE GOING TO SEE

21  IN THIS BINDER ARE ALL OF THE REDACTIONS THAT PERFECT 10 MADE

22  TO ITS FINANCIALS, INCLUDING THINGS LIKE GROSS RECEIPTS,

23  GROSS PROFITS, INCOME, YOU KNOW, CRITICAL NUMBERS THAT WE

24  WOULD NEED TO SEE TO BE ABLE TO MAKE ANY SENSE OF PERFECT

25  10'S FINANCIAL CONDITION.

1          AND, THEN, STARTING AT TAB 6 THROUGH 13, AS WELL AS

2     14, WHICH IS FOR MAY RATHER THAN DECEMBER, YOU'RE GOING TO

3     SEE EVERY REDACTED PAGE OF THE FINANCIAL STATEMENTS THAT

4     PERFECT 10 PRODUCED, INCLUDING, FOR EXAMPLE, AT TAB 7.

5          JUST LOOKING AT THE STATEMENT FOR 2002 YOU'LL SEE

6     THINGS REDACTED, SUCH AS, FIXED ASSETS, DEEDS, STOCKHOLDER

7     EQUITY, RETAINED EARNINGS, NET INCOME, YOU KNOW, BASIC

8     NUMBERS THAT ANY DAMAGES EXPERT WOULD NEED TO BE APPRISED OF

9     IN ORDER TO RENDER AN OPINION ON GOOGLE'S OR AMAZON'S BEHALF

10    REGARDING PERFECT 10'S FINANCIAL CONDITION AND WHETHER

11    ANYTHING THAT GOOGLE OR AMAZON ALLEGEDLY DID HAS ANY BEARING

12    ON THE ALLEGED PROFITS OR LOSSES OF PERFECT 10.

13         SO, THAT'S WHAT'S IN THE BINDER.  AND EVERYTHING IS

14    HIGHLIGHTED IN YELLOW FOR YOU.

15         THE COURT:  OKAY.

16         MS. KASSABIAN:  I SUBMITTED THAT BECAUSE OBVIOUSLY

17    WITH THE MOTION WE WERE TRYING TO KEEP THINGS AS SMALL AS

18    POSSIBLE, AND WE JUST SUBMITTED A VERY SMALL AMOUNT OF

19    EXCERPTS.  BUT NOW YOU HAVE BEFORE YOU EVERYTHING.

20         THE COURT:  OKAY.

21         MS. KASSABIAN:  ON THE ISSUE OF REDACTIONS, WE

22    BELIEVE THE REDACTIONS THAT HAVE BEEN MADE RENDER THE

23    FINANCIAL STATEMENTS AND THE TAX RETURNS ALMOST MEANINGLESS

24    IN MANY RESPECTS.  IT'S GOING TO BE DIFFICULT, IF NOT

25    IMPOSSIBLE, TO USE THOSE FINANCIALS TO MAKE ANY SENSE OF

1  PERFECT 10'S FINANCIAL CONDITION AND TO BE ABLE TO REBUT ANY

2  ALLEGATION THAT PERFECT 10 HAS SUFFERED ANY ACTUAL DAMAGES

3  HERE.

4          IN THE JOINT STIPULATION PERFECT 10 BASICALLY

5  CLAIMS THAT IT REALLY ONLY REDACTED PERSONAL OR CONFIDENTIAL

6  FINANCIAL INFORMATION, SUCH AS SETTLEMENT AGREEMENTS AND

7  MEDICAL RECORDS.

8          I DON'T THINK THAT'S ACCURATE.  AND IF YOU LOOK

9  THROUGH THE BINDER, YOU CAN SEE THAT THERE ARE VAST

10  MAJORITIES OF REDACTIONS THAT DON'T HAVE ANYTHING TO DO WITH

11  MEDICAL RECORDS OR SETTLEMENT AGREEMENTS.

12          ALSO, I WOULD NOTE THAT THESE ARE CORPORATE TAX

13  RETURNS, YOUR HONOR.  THESE ARE NOT PERSONAL TAX RETURNS.

14  ANY INFORMATION THAT WAS SUBMITTED AS AN EXPENSE OR A

15  DEDUCTION ON A CORPORATE TAX RETURN IS FAIR GAME HERE.  A

16  CORPORATION DOES NOT HAVE A RIGHT TO PRIVACY THE WAY AN

17  INDIVIDUAL MIGHT.

18          SO, WE BELIEVE THAT THE REDACTIONS THAT HAVE BEEN

19  MADE HAVE GONE WAY OVERBOARD AND KIND OF NEUTRALIZED YOUR

20  HONOR'S ORDER THAT THESE ITEMS BE PRODUCED BECAUSE YOU CAN'T

21  COMPARE PROFITS AND LOSSES AND INCOME AND EXPENSES YEAR OVER

22  YEAR OVER YEAR.

23          SO, IF YOUR HONOR HAS ANY PARTICULAR QUESTIONS --

24          THE COURT:  NO.

25          MS. KASSABIAN:  OKAY.

1          THE COURT:  THANK YOU.

2          MR. MAUSNER:  WOULD YOU LIKE ME TO --

3          THE COURT:  WHEREVER YOU'RE COMFORTABLE.

4          MR. MAUSNER:  OKAY.

5          THE COURT:  SAME WITH YOU, MS. KASSABIAN.  IF YOU'D

6   RATHER STAY DOWN THERE, THAT'S FINE.

7          MS. KASSABIAN:  IT'S A HEAVY BINDER, SO I'LL --

8          MR. MAUSNER:  OKAY.  WE WENT THROUGH THEM.  WE

9   BROKE DOWN THE THINGS TO BE REDACTED INTO SIX CATEGORIES.

10  AND I THINK YOUR HONOR COULD RULE ON EACH OF THOSE SIX, AND

11  THEN WE CAN -- IF WE HAVE TO, WE CAN REPRODUCE FINANCIAL

12  STATEMENTS WITH CERTAIN PORTIONS UNREDACTED.

13         THE FIRST IS MEDICAL PAYMENT DETAIL.  WE GIVE THE

14  DATA THE PAYMENT --

15         THE COURT:  IS IT FOR THE MODEL?  FOR THE MODELS?

16         MR. MAUSNER:  I'M SORRY?

17         THE COURT:  FOR THE MODELS?

18         (MIKE BEING HIT.)

19         MR. MAUSNER:  YES.  OH, I'M SORRY.

20         THE COURT:  THAT'S ME.

21         MR. MAUSNER:  WELL, FOR THE MODELS AND FOR

22  EMPLOYEES.

23         THE COURT:  OKAY.

24         MR. MAUSNER:  AND INDEPENDENT CONTRACTORS.

25         THE COURT:  BUT IT'S A NUMBER.  IT'S NOT DOCTOR SO

1    AND SO FOR THE SERVICE.

2            MR. MAUSNER:  WELL, IT DOES SAY -- IT DOES SAY ON

3    THE UNREDACTED -- GIVES THE NAME OF THE DOCTOR, AND IT GIVES

4    THE NAME OF THE PERSON WHO RECEIVED TREATMENT.

5            SO, WHAT WE'RE PROPOSING IS THAT THE NAME OF THE

6    DOCTOR AND THE NAME OF THE PERSON WHO RECEIVED TREATMENT BE

7    REDACTED, THE AMOUNT OF THE PAYMENT NOT BE REDACTED.

8            THE COURT:  SOUNDS REASONABLE.

9            MS. KASSABIAN:  THAT'S FINE WITH US, YOUR HONOR.

10           THE COURT:  WE HAVE AN ORDER HERE.  OKAY.

11           MR. MAUSNER:  GOOD.

12           MS. KASSABIAN:  WELL, I GUESS WE SHOULD --

13           THE COURT:  WELL, MR. JANSEN CAN SPEAK UP IF HE

14   DISAGREES.

15           MR. JANSEN:  I THINK THAT'S FAIR ON THAT --

16           THE COURT:  THANKS FOR GOING ALONG.

17           ALL RIGHT.  WE'RE ON A ROLE HERE.  GO.

18           MR. MAUSNER:  NEXT IS THE CREDIT CARD NUMBER AND

19   THE NAME OF THE ISSUER OF THE CREDIT CARD, WHICH WILL BE

20   REDACTED.  THE AMOUNTS OF THE PAYMENTS WILL NOT BE REDACTED.

21           MR. JANSEN:  YOUR HONOR, I JUST -- YOU KNOW, WE'RE

22   TALKING ABOUT SPECIFIC CATEGORIES OF THINGS WE REDACTED.  I

23   THINK WE HAVE TO LOOK AT IT IN CONTEXT.

24           AND AS AN EXAMPLE, I'D LIKE TO HAND UP THE MOST

25   RECENT FINANCIAL STATEMENT, IF I COULD, MAY 2009.  WE JUST

1    GOT THIS A COUPLE OF DAYS AGO.

2              THE COURT:  OKAY.

3              MS. KASSABIAN:  THAT'S ACTUALLY TAB 14, BUT I

4    SUPPOSE YOUR COPY --

5              MR. JANSEN:  OH, THIS IS MARCH 31ST, 2009.  I DON'T

6    THINK THAT'S THE TABBED VERSION, YOUR HONOR.

7              I'D JUST LIKE TO -- I THINK IT'S IMPORTANT TO LOOK

8    AT THIS IN CONTEXT BECAUSE I WANT TO JOIN IN MS. KASSABIAN'S

9    COMMENTS THAT -- OUR ACCOUNTANT -- WE RETAINED AN ACCOUNTANT

10   TO LOOK THROUGH THESE MATERIALS IN PREPARATION FOR BOTH

11   TAKING DR. ZADA'S DEPOSITION, WHICH IS TENTATIVELY SCHEDULED

12   NOW FOR THE LAST WEEK OF OCTOBER.

13             MR. MAUSNER:  COULD I HAVE A COPY, MARK?

14             MR. JANSEN:  YES.

15             AS WELL AS FOR --

16             THE COURT:  WHAT DAY IS THAT SET FOR?

17             MS. KASSABIAN:  THE END OF OCTOBER.  I THINK A DATE

18   IS STILL BEING WORKED OUT.

19             MR. JANSEN:  WE'RE TRYING TO FIND A DATE IN THE

20   LAST WEEK OF OCTOBER.  AND WE ALSO MOVED THE DEPOSITION --

21             THE COURT:  I NEED TO KNOW WHAT DAY SO I CAN BE ON

22   VACATION THAT DAY.

23             (LAUGHTER.)

24             MR. JANSEN:  THE DATE -- EXACT DATE IS STILL UP IN

25   THE AIR, YOUR HONOR.

1          BUT WE ALSO -- IN LIGHT OF THE FACT THAT THE COURT

2    COULDN'T CONSIDER THIS MOTION UNTIL TODAY, WE MOVED THE

3    DEPOSITION -- IT WAS SCHEDULED FOR BRUCE HERSH --

4          THE COURT:  THE 19TH IT WAS SET FOR -- OR THE 16TH.

5          MR. JANSEN:  YES.  IT WAS -- IT WAS SET FOR LAST

6    WEEK.

7          THE COURT:  YES, THE 16TH.

8          MR. JANSEN:  AND NOW IT'S BEEN MOVED TENTATIVELY TO

9    THE WEEK OF THE 12TH OF OCTOBER.

10          THE COURT:  YES.

11          MR. JANSEN:  YOU KNOW, SUBJECT OBVIOUSLY TO -- WE

12    DON'T WANT TO RUSH THE COURT IN MAKING A RULING ON THIS.  AND

13    IF WE NEED TO, WE'LL MOVE IT --

14          THE COURT:  WELL, I THINK I CAN MAKE REDACTION

15    RULINGS RIGHT NOW.

16          MR. JANSEN:  SO, BASICALLY, IF YOU JUST LOOK

17    THROUGH AND JUST SKIM THROUGH THIS -- AS AN EXAMPLE, WE

18    SERVED A SUBPOENA ON MR. HERSH, WHICH SOUGHT THE FINANCIAL

19    STATEMENTS THAT HE PREPARED.  AND IF YOU LOOK AT THE FIRST

20    PAGE OF THIS, YOU'LL SEE IN FACT THAT HE DOESN'T REALLY

21    PREPARE FINANCIAL STATEMENTS PER SE, HE COMPILES THEM.  IT'S

22    THE LOWEST LEVEL OF REVIEW.

23          BUT DR. ZADA HAD TESTIFIED IN A PRIOR DEPOSITION IN

24    A DIFFERENT CASE THAT BASICALLY HE GIVES SOURCE MATERIALS TO

25    MR. HERSH.  MR. HERSH REVIEWS, FOR EXAMPLE, CHECKBOOKS, OTHER

1  BACK-UP DATA, AND THEN HE SORTS THEM -- MR. HERSH SORTS THE

2  EXPENSES INTO PARTICULAR CATEGORIES.

3          SO, OUR SUBPOENA SEEKS -- OF MR. HERSH SEEKS BOTH

4  THE FINANCIAL MATERIAL STATEMENTS HE PREPARED AS WELL AS THE

5  SOURCE MATERIALS.

6          THE COURT:  OKAY.  WE'LL GET TO THE SOURCE MATERIAL

7  IN A MINUTE.

8          MR. JANSEN:  YES, OKAY.

9          THE COURT:  LET'S STICK WITH REDACTIONS.

10         MR. JANSEN:  THE REDACTIONS HERE -- I MEAN, IF YOU

11 SIMPLY LOOK THROUGH, LIKE, PAGE 1 OR PAGE 2, WE DON'T HAVE

12 ANY SENSE OF, LIKE, WHAT THE FIXED ASSETS ARE, WHAT THE TOTAL

13 LIABILITIES AND ASSETS ARE AND HOW THEY WOULD -- SO, WE CAN'T

14 -- HAVE NO WAY OF SEEING HOW THOSE TREND OVER TIME,

15 UNDERSTANDING HOW RESOURCES WERE USED TO DEPRECIATE OR TO

16 WHAT EXTENT THESE ASSETS --

17         THE COURT:  I UNDERSTAND.

18         MR. JANSEN:  -- HAVE CHANGED IN VALUE.

19         THE COURT:  I UNDERSTAND.

20         MR. JANSEN:  THOSE ARE ISSUES THAT HAVE BEEN TAKEN

21 OUT.

22         THE COURT:  ALL RIGHT.

23         MR. JANSEN:  AUTOMOBILE EXPENSES ARE OUT.  MEDICAL

24 EXPENSES ARE OUT.  WE TALKED ABOUT THAT A LITTLE BIT.

25 OUTSIDE SERVICES -- WHAT ARE THOSE.  THERE'S A WHOLE SECTION

 1   HERE -- IF YOU LOOK AT PAGE -- LET'S SEE, PAGE 627 AT THE

 2   BOTTOM, YOU'LL SEE THE KINDS OF REVENUES AND EXPENSE ITEMS

 3   THAT HAVE BEEN JUST UTTERLY BLACKED OUT -- BANK SERVICE

 4   CHARGES, AUTOMOBILE EXPENSES, MEDICAL EXPENSES.  WE'VE TALKED

 5   ABOUT THOSE.  OUTSIDE SERVICES, PROFESSIONAL FEES.  WE'VE GOT

 6   A TOTAL, BUT WE HAVE NO IDEA WHAT MAKES UP THOSE TOTALS

 7   BECAUSE OF THE WAY THE REDACTIONS OCCURRED.

 8            AND IF YOU FLIP THROUGH THIS --

 9            THE COURT:  LET ME BREAK OUT OF THE REDACTION MODE

10   FOR A MOMENT AND SAY, IS THERE ANY OPPOSITION TO MY ORDERING

11   ALL SOURCE DOCUMENTS RELIED ON BY MR. HERSH PRODUCED --

12            MR. MAUSNER:  YES.

13            THE COURT: -- WELL IN ADVANCE OF THE DEPOSITION.

14            MR. MAUSNER:  YES.

15            THE COURT:  OKAY.  AND THE BASIS FOR THAT?

16            MR. MAUSNER:  WE THINK THAT THE SUMMARY FINANCIAL

17   DOCUMENTS ARE SUFFICIENT, AND THERE'S NO REASON TO PRODUCE

18   ALL OF THE BACK-UP DOCUMENT.

19            THE COURT:  IT'S A MEANINGLESS DEPOSITION THEN.

20   HOW CAN THEY DEPOSE HIM WITHOUT THAT?

21            MR. MAUSNER:  WELL, WHAT'S THE ISSUE IN DEPOSING

22   HIM.  WE'RE NOT -- YOU KNOW, HE'S NOT --

23            THE COURT:  HE'S YOUR EXPERT WITNESS.

24            MR. MAUSNER:  BUT THERE ARE -- THE ONLY EXPENSES

25   THAT I CAN THINK OF THAT INCREASED BECAUSE OF THIS

1    INFRINGEMENT ARE THE ATTORNEY'S FEES, AND WE'LL GIVE THEM THE

2    ATTORNEY'S FEES.

3         THE ISSUE IS, WHAT DID PERFECT 10 LOSE -- WHAT WERE

4    THE DECREASES IN REVENUE BECAUSE OF THE INFRINGEMENT.  WE'RE

5    NOT SAYING THAT -- WE'RE NOT SAYING THAT PERFECT 10 HAD

6    INCREASED EXPENSES ON THE HOUSE OR ON AUTOMOBILES OR ON

7    MEDICAL PAYMENTS OR ON ANY OF THIS OTHER STUFF BECAUSE OF THE

8    INFRINGEMENT.  NONE OF THIS STUFF MATTERS.

9         THE ONLY THING THAT MATTERS IS WHAT REVENUES DID

10   PERFECT 10 NOT GET BECAUSE SOMEONE COULD GO TO GOOGLE AND

11   LOOK AT THE IMAGES WITHOUT HAVING TO BUY A MAGAZINE OR

12   WITHOUT HAVING TO PAY THE MEMBERSHIP FEE FOR THE WEBSITE.

13        I DON'T THINK -- YOU KNOW, OTHER THAN THE

14   ATTORNEY'S FEES, I DON'T THINK THEY CAN ARTICULATE ANY WAY AT

15   ALL THAT ANY OF THIS IS AT ALL RELEVANT.  WE'VE GIVEN THEM SO

16   MUCH MORE STUFF THAN IS RELEVANT IN THIS CASE.  IT'S

17   RIDICULOUS.

18        THE COURT:  ALL RIGHT.  I'D LIKE TO STICK WITH THE

19   REDACTIONS.

20        MR. MAUSNER:  OKAY.  BUT --

21        THE COURT:  BECAUSE --

22        MR. JANSEN:  THAT'S FINE, YOUR HONOR.  MY POINT IS

23   --

24        THE COURT:  -- I MADE A RULING.

25        MR. JANSEN:  MY POINT IS THAT PERFECT 10 IS SEEKING

1   ACTUAL DAMAGES IN THIS CASE.

2              THE COURT:  YES.

3              MR. JANSEN:  AND WE HAVE A RIGHT TO TAKE DISCOVERY

4   OF THEIR FINANCIAL CONDITION.  AND IF THEY'RE RELYING ON

5   FINANCIAL STATEMENTS, WHICH THEY CLEARLY ARE AT SOME LEVEL,

6   WE'RE ENTITLED TO DEPOSE THE ACCOUNTANT WHO PUT THEM TOGETHER

7   TO DETERMINE HOW HE ALLOCATED EXPENSES BETWEEN VARIOUS

8   BUSINESS LINES AND HOW HE ALLOCATED INCOME BETWEEN VARIOUS

9   BUSINESS LINES, SUCH AS BETWEEN THE MAGAZINE VERSUS THE

10  WEBSITE VERSUS FAILED VIDEO BOXING PROMOTIONS VERSUS FAILED

11  ATTEMPTS TO PRODUCE MOVIES THAT NEVER GOT ACCEPTED BY

12  TELEVISION STATIONS.

13             SO, WE'RE ENTITLED TO EXAMINE BOTH THE EXPENSE AND

14  THE REVENUE SIDE, AND WE CAN'T DO THAT WITHOUT THE BACK-UP.

15             AND WE CAN'T -- WE CAN'T EXAMINE THE WITNESS OR

16  EVALUATE THE FINANCIALS WITH THIS LEVEL OF REDACTIONS.  FOR

17  EXAMPLE, JUST THIS ONE MOST RECENTLY PRODUCED STATEMENT,

18  WHICH IS MARCH 31ST, 2009, AS AN EXAMPLE.  AND THIS IS -- I

19  MEAN, YOU CAN JUST LOOK -- THERE'S NO WAY -- I MEAN, YOU CAN

20  SEE THAT THERE'S NO WAY THAT AN ACCOUNTANT COULD ACTUALLY

21  ANALYZE THIS MUCH LESS --

22             THE COURT:  AND HOW CAN PLAINTIFF -- HOW CAN

23  DEFENDANTS BE SURE THAT THERE AREN'T MISALLOCATED ITEMS, THAT

24  THEY LISTED FOR PROFESSIONAL FEES WERE NOT SOMETHING ENTIRELY

25  DIFFERENT WITHOUT THE SOURCE DOCUMENTS?

1        MR. MAUSNER:  WELL, OKAY.  FOR -- WELL, THE SOURCE

2   DOCUMENTS FOR THE PROFESSIONAL FEES ARE GOING TO BE -- AND

3   THAT'S SOMETHING WE'RE NOT -- WE'RE NOT GOING TO REDACT IN

4   THE NEXT SET THE PROFESSIONAL FEE FIGURES BECAUSE WE'RE GOING

5   TO GIVE THEM THE ATTORNEY'S FEES.

6        BUT THEY'RE NOT ENTITLED TO WHAT OUR ACTUAL -- TO

7   THE ACTUAL ATTORNEY'S FEES BILLS BECAUSE THAT CONTAINS WORK

8   PRODUCT AND ATTORNEY-CLIENT PRIVILEGE ON IT.

9        YOU KNOW, I THINK IF WE GO THROUGH THESE

10  CATEGORIES, AND WE GET A DETERMINATION ON THAT, SOME OF --

11       THE COURT:  ON REDACTION?

12       MR. MAUSNER:  YEAH.  SOME OF THE STUFF MAY NOT BE

13  REDACTED.

14       THE COURT:  ALL RIGHT.  LET'S GO BACK -- LET'S GO

15  TO NUMBER 2 --

16       MR. MAUSNER:  -- YEAH, NUMBER 2.

17       THE COURT:  -- OF THE REDACTION.

18       MR. MAUSNER:  OKAY.  NUMBER 2 IS THE CREDIT CARD

19  NUMBERS AND THE NAME OF THE ISSUER OF THE CARD WILL BE

20  REDACTED.  ALL OTHER INFORMATION -- THE DATE, THE CHECK

21  NUMBER, AND THE AMOUNT OF THE PAYMENT WILL BE SHOWN.  SO, IN

22  OTHER WORDS, THE CREDIT CARD NUMBER AND THE NAME OF THE BANK

23  THAT ISSUED THE CARD IS GOING TO BE REDACTED.

24       THE COURT:  OKAY.  ANY OBJECTION?

25       MS. KASSABIAN:  I DON'T SEE WHY THE NAME OF THE

1   BANK IS IN ANY WAY CONFIDENTIAL.

2            THE COURT:  I DON'T EITHER.

3            MS. KASSABIAN:  YES.

4            THE COURT:  BUT WHY DO YOU NEED IT EITHER?

5            MS. KASSABIAN:  TO DISTINGUISH BETWEEN THE

6   DIFFERENT -- SO WE CAN SAY, OKAY, THAT'S THE CHASE BILL.

7   THAT'S -- WE WILL HAVE NO WAY TO IDENTIFY WHICH IS WHICH.

8            THE COURT:  WHY DO YOU WANT THE NAME OF THE BANK?

9            MR. MAUSNER:  JUST BECAUSE IT'S PRIVATE INFORMATION

10  WHAT CREDIT --

11           THE COURT:  OKAY.

12           MR. MAUSNER:  -- CARD COMPANIES HE HAS.

13           THE COURT:  OKAY.  I WILL ORDER AS MR. MAUSNER

14  STATED WITH THE EXCEPTION THAT THE BANK NAMES SHALL NOT BE

15  REDACTED.

16           MR. JANSEN:  BUT THE NUMBERS WILL BE.  JUST THE

17  NUMBERS WILL BE REDACTED.

18           MS. KASSABIAN:  THE ACCOUNT NUMBERS.

19           THE COURT:  RIGHT.

20           MR. JANSEN:  OKAY.  THAT WILL BE LIKE -- AND THAT

21  WILL BE, FOR EXAMPLE, AT PAGE 634 OF THE FINANCIAL I PASSED

22  UP, JUST COLUMN -- THE SECOND COLUMN ON THE RIGHT-HAND SIDE

23  WOULD BE REDACTED.

24           MR. MAUSNER:  NEXT CATEGORY ARE THE AMOUNTS OF

25  SETTLEMENT PAYMENTS FOR CONFIDENTIAL SETTLEMENT.

1          MAY I HAND YOUR HONOR A PREVIOUS RULING WHICH YOUR

2     HONOR MADE ON THIS ISSUE IN THE --

3          THE COURT:  I CAN TELL WHEN I'VE BEEN WORKING TOO

4     LONG ON A CASE WHEN I CITED MY OWN RULINGS FROM 2003.

5          MR. JANSEN:  FOR YOUR RECORD, YOUR HONOR -- FOR

6     YOUR RECORD -- FOR THE RECORD, YOUR HONOR.  THIS IS LONG

7     BEFORE MY TIME.  AMAZON WAS NOT SUED UNTIL JULY 2005, WHICH

8     IS TWO YEARS AFTER THIS ORDER ISSUED.  SO, I DON'T THINK IT

9     CAN BE CONSIDERED BINDING ON US WHATSOEVER.

10         THE COURT:  WELL, OF COURSE, IT'S NOT BINDING.  YOU

11    WEREN'T A PARTY.

12         MR. JANSEN:  AND I DON'T THINK IT APPLIES --

13         THE COURT:  WELL, LET ME JUST READ IT.

14         (PAUSE IN PROCEEDINGS.)

15         THE COURT:  ACTUALLY, LET'S GO ON TO THE OTHERS SO

16    I CAN THINK ABOUT THIS ONE.  GO ON TO NUMBER 4.

17         MR. MAUSNER:  OKAY.  NUMBER 4 ARE AUTO EXPENSES.

18    PERFECT 10 IS NOT CLAIMING ANY DAMAGES RELATED TO THIS.

19    PERFECT 10 WILL NOT INCLUDE ANY SUCH EXPENSES IN ITS

20    CALCULATION OF LOSS.

21         THE COURT:  I'M GOING TO ORDER THAT UNREDACTED.

22         MR. MAUSNER:  I'M SORRY?

23         THE COURT:  UNREDACTED.

24         MR. MAUSNER:  OKAY.  AND, OF COURSE, YOUR HONOR, BY

25    PRODUCING THIS, WE'RE NOT CONCEDING THAT IT'S IN ANY WAY

1    RELEVANT OR THAT IT WOULD BE ADMISSIBLE.

2            THE COURT:  THAT'S MY ORDER.

3            MR. MAUSNER:  YES.

4            NUMBER 5 ARE HOUSE EXPENSES.  SAME THING.  PERFECT

5    10 IS NOT CLAIMING ANY DAMAGES RELATING TO THIS.  PERFECT 10

6    WILL NOT INCLUDE ANY SUCH EXPENSES IN ITS LOSS CALCULATION.

7            AND, ACTUALLY, YOUR HONOR, IF YOU ARE GOING TO

8    ORDER THESE PRODUCED, I THINK WE WILL RESERVE OUR POSITION ON

9    WHETHER WE WOULD CLAIM ANY SUCH EXPENSES IN A CALCULATION OF

10   LOSS.  I THINK I'LL WITHDRAW THAT WE'RE NOT GOING TO DO THAT.

11           ARE YOU GOING TO RULE THE SAME WAY ON THE HOUSE

12   EXPENSES?

13           THE COURT:  YES.

14           MR. MAUSNER:  OKAY.  SO, WE RESERVE OUR POSITION AS

15   TO WHETHER THIS WOULD BE RELEVANT OR NOT.

16           MS. KASSABIAN:  CAN I JUST CLARIFY, YOUR HONOR,

17   THAT THAT GOVERNS ALL EXPENSES RELATED TO THE PERFECT 10

18   HEADQUARTERS THAT ARE REFERRED TO AS I THINK THE BEVERLY PARK

19   MANSION OR THE PERFECT 10 MANSION?

20           THE COURT:  RIGHT.

21           MS. KASSABIAN:  THANK YOU.

22           MR. MAUSNER:  OKAY.  NUMBER 6 IS SALARIES OF

23   INDIVIDUAL PERFECT 10 EMPLOYEES.  WE WOULD GIVE AN OVERALL

24   FIGURE FOR IT AND NOT PRODUCE WHAT EACH EMPLOYEE MAKES.  AND

25   THIS IS FOR --

1                THE COURT:  THAT SOUNDS REASONABLE.

2                MR. MAUSNER: -- PRIVACY PURPOSES OF THE EMPLOYEES.

3                THE COURT:  THAT SOUNDS REASONABLE.

4                MR. JANSEN:  YOUR HONOR, THAT DOES NOT WORK BECAUSE

5     -- AND I'LL EXPLAIN WHY.  I THINK THE RECORD WILL SHOW ONCE

6     WE GET THROUGH THE DISCOVERY THAT PERFECT 10 AS A COMPANY

7     STOPPED PUTTING RESOURCES INTO, FOR EXAMPLE, ITS MAGAZINE AND

8     ITS WEBSITE AT VARIOUS POINTS IN TIME.

9                CERTAIN EMPLOYEES WERE EMPLOYEES OF THE MAGAZINE,

10    I.E., THE EDITOR, PEOPLE THAT WERE DEVOTED TO THE MAGAZINE.

11    OTHER PEOPLE WERE DEVOTED TO THE WEBSITE.  OTHER PEOPLE WERE

12    DEVOTED TO THESE FAILED TELEVISION PROGRAM VENTURES, FAILED

13    MOVIE VENTURES THAT HAVE NOTHING -- AND THOSE FAILURES HAD

14    NOTHING WHATSOEVER TO DO WITH ANY ALLEGED COPYRIGHT

15    INFRINGEMENTS.  THEY HAD TO DO WITH THE FACT THAT PERFECT 10

16    STOPPED WORKING.

17               SO, WE NEED TO BE ABLE TO, AS I SAID BEFORE,

18    ALLOCATE OUT THE EXPENSES RELATED TO EACH BUSINESS SECTOR OF

19    PERFECT 10 -- THE FAILED MOVIES, THE FAILED TELEVISION

20    PROGRAMS, THE FAILED VIDEO BOXING PROGRAMS --

21               THE COURT:  WELL, OKAY.  THEN, WHY DON'T I ORDER --

22               MR. JANSEN: -- THE MAGAZINE.  SO, WE NEED TO --

23               THE COURT:  WHY DON'T I ORDER THAT TO BE DONE AS

24    YOU INDICATED, AND MAYBE ALL THE PAYMENTS TO THE MODELS COULD

25    BE GROUPED TOGETHER.

1    MR. JANSEN:  I THINK THE THING TO REMEMBER, YOUR

2  HONOR, IS THAT, YOU KNOW, THERE IS NO RIGHT OF INDIVIDUAL

3  PRIVACY UNDER THE FEDERAL RULES OF EVIDENCE.  AND, SO, THE

4  FACT THAT THERE IS AN INDIVIDUAL LIKE -- AND I DON'T KNOW WHO

5  THE INDIVIDUAL IS -- BUT THE EDITOR, THE CONTENT EDITOR OF

6  PERFECT 10 MAGAZINE, OR THE KEY PHOTOGRAPHER.  THEY HAVE NO

7  FEDERAL RIGHT OF PRIVACY --

8    THE COURT:  I UNDERSTAND.

9    MR. JANSEN: -- IN THEIR SALARY INFORMATION.

10    AND MOREOVER, WE'VE GOT A PROTECTIVE ORDER HERE.

11  SO, UNLESS WE ARE ABLE TO LINK UP THE NAMES OF THE PERSON WHO

12  RECEIVED THE SALARY, AND THEN BE ABLE TO ALLOCATE HIS SALARY

13  OR HER SALARY TO THE MAGAZINE VERSUS THE FAILED MOVIES OR THE

14  INTERNET SITE, WE CAN'T ANALYZE THE DAMAGES.

15    MS. KASSABIAN:  AND, YOUR HONOR, IF I COULD ADD ONE

16  MORE THING.  I DON'T THINK THIS INFORMATION IS PRIVATE OR

17  CONFIDENTIAL.  PERFECT 10 WENT ON NATIONAL TELEVISION LAST

18  MONTH AND TOLD A NATIONAL AUDIENCE ON A PUBLIC TELEVISION

19  PROGRAM THAT EACH OF ITS EMPLOYEES MAKES A HUNDRED THOUSAND

20  DOLLARS A YEAR.

21    I THINK THAT THE CAT IS OUT OF BAG ON THAT, AND

22  WE'RE ENTITLED TO UNREDACTED STATEMENTS OF SALARIES.

23    THE COURT:  ALL RIGHT.  FAIR ENOUGH.  I WILL ORDER

24  THAT MATERIAL UNREDACTED SUBJECT TO THE PROTECTIVE ORDER.

25    SO, WHAT IS THE -- THIS IS ITEM NUMBER 6.  COULD

1  SOMEONE RESTATE WHAT I JUST ORDERED AS TO NUMBER 6.

2           MR. JANSEN:  YES.  YOU ORDERED WITH RESPECT TO

3  MEDICAL EXPENSES THAT THE AMOUNTS OF THE PAYMENT WOULD BE

4  SHOWN BUT NOT THE NAMES OF THE PATIENT OR THE DOCTOR.

5           WITH RESPECT TO CREDIT CARD PAYMENTS, IT'S JUST THE

6  NAME OF THE CREDIT CARD THAT GETS REDACTED.  SO, THAT WOULD

7  BE -- JUST THE SECOND FROM THE LEFT COLUMN --

8           MS. KASSABIAN:  THE NUMBER.

9           MR. JANSEN:  THE CREDIT CARD NUMBERS ONLY GET

10  REDACTED, NOT THE NAME OF THE BANK.

11           SO, THAT WOULD SIMPLY BE -- LET'S SEE, WHAT IS THE

12  PAGE NUMBER HERE.  FOR EXAMPLE, ON PAGE BH00634 OF THE MARCH

13  31ST, 2009 STATEMENT, IT WOULD SIMPLY BE A REDACTION OF THE

14  NUMBER THAT'S IN THE SECOND COLUMN ON THE LEFT-HAND SIDE --

15  SECOND COLUMN FROM THE LEFT OF THAT, FOR EXAMPLE.

16           WITH RESPECT TO AUTOMOBILE EXPENSES, NO REDACTION

17  ALLOWED.  THOSE HAVE TO BE UNREDACTED.

18           WITH RESPECT TO HOUSE, WHICH WOULD BE THE BUSINESS

19  LOCATION EXPENSES, UNREDACTED.

20           WITH RESPECT TO SALARIES OF EMPLOYEES, THOSE ARE

21  UNREDACTED SUBJECT TO THE PROTECTIVE ORDER -- AS IS

22  EVERYTHING ELSE OBVIOUSLY.

23           AND I THINK THE ONE OUTSTANDING ISSUE IS THE

24  SETTLEMENT PAYMENT ISSUE.

25           THE COURT:  WELL, I'M GOING TO GET TO THAT.

1           MR. JANSEN:  OKAY.

2           THE COURT:  WE'RE GOING TO TAKE A TEN-MINUTE

3    RECESS.  I'M GOING TO READ THIS MINUTE ORDER, TAKE CARE OF A

4    COUPLE OF OTHER THINGS.  I'LL COME BACK.  PERHAPS I WILL RULE

5    ON THE THIRD-PARTY SETTLEMENT ISSUE.

6           AND AT THAT POINT I'M GOING TO ASK COUNSEL TO

7    JOINTLY PREPARE A PROPOSED ORDER ON THE REDACTION ISSUE.  I

8    MAY BE DOING OTHER ORDERS MYSELF, BUT ON THIS ONE I'M GOING

9    TO WANT YOU TO TRACK THE LANGUAGE AS TO REDACTION THAT I'VE

10   ORDERED.

11          SO, WE'LL TAKE A TEN-MINUTE RECESS.

12          THE CLERK:  COURT IS IN RECESS.

13          (RECESS.)

14          THE COURT:  BE SEATED, PLEASE.

15          ALL RIGHT.  I'VE LOOKED AT THE ORDER IN THE NET

16   MANAGEMENT SERVICES CASE.  I ACTUALLY REMEMBER THIS RULING.

17   IT'S EXCELLENT, I WOULD SAY.  IT SEEMS TO ME IT WAS

18   ADDRESSING -- I MADE THE RULING, I DID, UNDER VERY UNIQUE

19   CIRCUMSTANCES THAT DON'T APPLY TO THIS CASE.

20          BUT LET ME -- LET ME ASK DEFENDANTS WHAT IS IT

21   EXACTLY YOU'RE SEEKING.  DO YOU WANT THE MONETARY AMOUNT

22   ONLY, OR DO YOU WANT THE ENTIRE AGREEMENTS, OR DO YOU WANT

23   THEM IDENTIFIED AS TO WHICH DEFENDANTS PAY WHAT?

24          MR. JANSEN:  YOUR HONOR, I THINK THERE ARE

25   DIFFERENT ISSUES RELATING TO THE SETTLEMENTS WITH OTHER

1   PARTIES.  BUT THE PRINCIPAL REASON THAT WE'RE ADDRESSING IT

2   IS WITH RESPECT TO ANALYZING THE FINANCIAL --

3          THE COURT:  RIGHT.

4          MR. JANSEN: -- DOCUMENTS IS WE NEED THE -- WE NEED

5   TO FIND OUT WHAT OTHER PEOPLE PAID MONEY TO PERFECT 10, WHO

6   THEY WERE, WHAT THEY PAID, WHEN THEY PAID IT.  SO -- BECAUSE

7   I THINK EVEN MR. MAUSNER HAS GOT TO ACKNOWLEDGE THAT SINCE HE

8   CLAIMS THE DAMAGES ONLY DEPEND UPON REVENUES, ANY SETTLEMENT

9   OR OTHER EXTRAORDINARY INCOME HAS TO BE DEDUCTED OUT OF THEIR

10  REVENUES, OR, AT LEAST, WE SHOULD BE ALLOWED TO TRY TO DO

11  THAT.  SO, WE NEED AT LEAST THAT INFORMATION FOR FINANCIAL

12  ANALYSIS PURPOSES.

13         NOW, THERE'S OTHER ISSUES WITH MAYBE SETTLEMENT

14  AGREEMENTS, SUCH AS, FOR EXAMPLE, WE'VE REQUESTED THE

15  MICROSOFT SETTLEMENT.  AND IT'S AN OUTSTANDING DOCUMENT

16  REQUEST.  I THINK WE HAVEN'T GOTTEN PERFECT 10'S RESPONSE

17  YET.  BUT THAT'S GOING TO BE VERY RELEVANT DOWN THE ROAD.

18  AND THAT'S JUST GOING TO BE A SUBJECT OF A FUTURE MOTION IF

19  PERFECT 10 REFUSES TO GIVE THAT TO US.

20         THE COURT:  SO, IF I WERE TO ORDER -- IF I WERE TO

21  GRANT THIS REQUEST AS TO REDACTIONS, WOULD THAT NOT INCLUDE

22  MICROSOFT.

23         MR. JANSEN:  THE MICROSOFT PAYMENT WOULD BE

24  INCLUDED, I ASSUME, IN WHATEVER FINANCIAL STATEMENT THAT

25  PAYMENT WOULD BE REFLECTED.  I DON'T KNOW WHEN THE PAYMENT

1   WAS MADE, BUT ASSUMING A SETTLEMENT WAS ENTERED I THINK IN

2   MARCH, AND I GUESS THE PAYMENT WAS RECEIVED SOMETIME IN THE

3   LAST FOUR MONTHS, YES, THAT AMOUNT SHOULD BE -- SHOULD NOT BE

4   REDACTED FROM A FINANCIAL STATEMENT.

5          THE COURT:  ASSUMING THAT THERE WAS MONEY PAID,

6   WHICH I --

7          MR. JANSEN:  ASSUMING THERE WAS.

8          THE COURT: -- CAN'T DISCLOSE AT THIS POINT.

9          MR. JANSEN:  YEAH, YEAH, THAT'S THE ISSUE.  IF

10  THERE'S MONEY RECEIVED, WE'RE ENTITLED TO KNOW THE SOURCE OF

11  THE MONEY RECEIVED AND THEN BACK OUT OR HAVE OUR ACCOUNTANT

12  DETERMINE WHETHER THAT SHOULD BE BACKED OUT.  BECAUSE IT

13  CERTAINLY HAS NOTHING TO DO WITH THE OPERATION OF A MAGAZINE.

14  IT HAS NOTHING TO DO WITH THE OPERATION OF A WEBSITE.  IT HAS

15  TO DO WITH THE OPERATION OF A LAWSUIT MACHINE, WHICH IS A

16  DIFFERENT BUSINESS SEGMENT OF PERFECT 10.

17         THE COURT:  WELL, WHAT ABOUT A GENERIC CATEGORY OF

18  PROCEEDS FROM LITIGATION?

19         MR. JANSEN:  NO.  I THINK WE'RE ENTITLED TO KNOW

20  THE EXACT PAYER AND THE AMOUNT PAID AND THE DATE IT WAS

21  RECEIVED AND THE DATE IT WAS BOOKED.

22         AND, AGAIN, WE HAVE A PROTECTIVE ORDER IN PLACE.  I

23  DON'T THINK THERE IS AN ISSUE WITH THE CONFIDENTIALITY OF

24  THESE THIRD PARTIES.  I DON'T EVEN KNOW WHO THEY ARE,

25  FRANKLY, RIGHT NOW.

1        YOU KNOW, ONE OF THE ODD THINGS ABOUT THIS CASE --

2   AND IT'S A LITTLE BIT OF AN ASIDE.  BUT MR. MAUSNER LIKES TO

3   COME TO COURT AND WHIP OUT AN ORDER ISSUED IN A CASE THAT YOU

4   PRESIDED OVER FOUR YEARS AGO OR FIVE YEARS AGO OR IN THIS

5   CASE SIX YEARS AGO.  AND WE HAVE REPEATEDLY ASKED THE

6   PLAINTIFF TO PRODUCE ALL THEIR LITIGATION FILES RELATING TO

7   OTHER LITIGATION.  THEY NEVER GIVE IT.  THEY REFUSE TO GIVE

8   IT TO US. BUT WHEN IT SUITS THEIR PURPOSE, THEY'RE HAPPY TO

9   COME IN HERE WITH AN ORDER THAT IS COMPLETELY OUT OF CONTEXT,

10  TRY TO DESCRIBE IT AS BEING SOMETHING IT'S NOT.

11        AND WE SHOULD BE ENTITLED TO GET THAT DISCOVERY.

12  NOW, THAT'S A DIFFERENT ISSUE AGAIN.  WE'LL RAISE THAT LATER,

13  BUT.

14        THE COURT:  ALL RIGHT.  LET ME HEAR FROM MS.

15  KASSABIAN.

16        ANYTHING FURTHER?

17        MS. KASSABIAN:  I AGREE, YOUR HONOR, WITH MR.

18  JANSEN. IF YOU LOOK, FOR INSTANCE, AT PAGE 133 OF THE BINDER

19  I GAVE YOU -- THIS IS TAB 14.  THE PROBLEM WITH WHAT PERFECT

20  10 HAS DONE HERE IN THESE REDACTIONS IS THAT BECAUSE EVERY SO

21  OFTEN THEY'LL GET A SETTLEMENT OF SOME KIND OR SOME OTHER

22  UNKNOWN INCOME, THEY ARE REDACTING THEIR TOTAL INCOME

23  FIGURES.  SO, WE CAN'T KNOW THEIR TOTAL INCOME -- YOU KNOW,

24  FOR EACH YEAR.

25        SO, IF YOU LOOK AT PAGE 133, YOU SEE NET ORDINARY

1    INCOME IS REDACTED.  THEN YOU SEE OTHER INCOME.  AND IT'S

2    SOMETHING -- SOMETHING HAPPENED.  SOMETHING CAME IN THE DOOR

3    THAT DAY, THAT MONTH.  IT'S BLACKED OUT.  THEN THERE'S SOME

4    INTEREST INCOME.  AND TOTAL INCOME -- TOTAL OTHER INCOME IS

5    REDACTED AND SO IS NET INCOME.

6            SO, IT JUST MAKES A MOCKERY OF THESE FINANCIAL

7    STATEMENTS.  AND THERE IS NOTHING PRIVATE ABOUT, YOU KNOW,

8    SETTLEMENT VALUES OR THE NAMES OF THE PARTIES THAT HAVE

9    SETTLED WITH PERFECT 10 RELATED TO ITS COPYRIGHTED IMAGES.

10   AND WITHOUT THAT INFORMATION IT JUST MAKES THESE FINANCIALS

11   IMPOSSIBLE TO BE UTILIZED BY DEFENDANTS IN ANY MEANINGFUL

12   WAY.

13           MR. MAUSNER:  FIRST OF ALL, AS FAR AS THIS ORDER,

14   YOUR HONOR, WE OBTAINED IT OFF OF PACER.  AND I THINK THEY

15   CAN ALSO.

16           THE COURT:  I UNDERSTAND.

17           MR. MAUSNER:  IF THESE SETTLEMENT AGREEMENTS ARE

18   ORDERED PRODUCED, I WOULD LIKE A -- AS PART OF THE ORDER THAT

19   BY PRODUCING THEM I AM NOT VIOLATING PROTECTIVE ORDERS IN THE

20   CASES --

21           THE COURT:  WELL, OF COURSE --

22           MR. MAUSNER:  -- THAT THEY --

23           THE COURT:  OF COURSE YOU WOULDN'T BE.

24           MR. MAUSNER:  YES.  THAT THEY'RE ENTERED INTO.  AND

25   --

1          THE COURT:  AND I KNOW -- YOU'VE REPRESENTED THAT

2     YOU HAVE AFFIRMATIVELY CONTACTED ALL SUCH PARTIES.  AND THEY

3     REFUSED TO CONSENT.

4          MR. MAUSNER:  CORRECT.

5          YOU KNOW, WHEN PARTIES ENTER INTO A CONFIDENTIAL

6     SETTLEMENT, YOU KNOW, THEY INTEND FOR IT TO REMAIN

7     CONFIDENTIAL.  AND I KNOW THERE'S A STRONG PUBLIC POLICY TO

8     ENCOURAGING SETTLEMENT.  IF THAT AGREEMENT IS NOT KEPT, AND

9     IT'S ABROGATED, I THINK YOU COULD DISCOURAGE SETTLEMENTS IN

10    THE FUTURE.  AND IT'S -- YOU KNOW, SOME OF THESE PEOPLE ARE

11    COMPETITORS OF GOOGLE AND AMAZON.

12         THE COURT:  WELL, AND THE WAY I'M GOING TO DEAL

13    WITH THAT IS I AM GOING TO ORDER THE SETTLEMENT INFORMATION

14    -- WELL, AGAIN, ARE YOU SEEKING THE AGREEMENTS OR JUST THE

15    MONETARY AMOUNT?

16         MS. KASSABIAN:  WITH RESPECT TO THIS PENDING

17    MOTION, WE'RE SEEKING TO HAVE THE REDACTIONS REMOVED ON THE

18    FINANCIAL STATEMENTS FOR ANY SETTLEMENT MONIES --

19         THE COURT:  OKAY.

20         MS. KASSABIAN:  -- THAT HAVE COME IN.

21         THE COURT:  OKAY.  BUT THEN --

22         MS. KASSABIAN:  SO, THOSE LINE ITEMS --

23         THE COURT:  BUT THEN IF I ORDER BACK-UP DOCUMENTS

24    -- ALL RIGHT.  SO, THIS IS WHAT I WILL ORDER IS THAT IN THE

25    FINANCIAL DOCUMENTS -- IN P10'S FINANCIAL DOCUMENTS THE

1  MONETARY AMOUNTS REGARDING SETTLEMENT OF OTHER LITIGATION

2  SHALL BE UNREDACTED BUT FOR ATTORNEY'S EYES ONLY.

3        MS. KASSABIAN:  AND, YOUR HONOR, I ASSUME THAT

4  WOULD INCLUDE THE DESCRIPTION; FOR INSTANCE, SO AND SO

5  SETTLEMENT AND THEN THE DOLLAR --

6        THE COURT:  YES.

7        MS. KASSABIAN: -- AMOUNT.

8        THE COURT:  YES.  SO THAT IF MICROSOFT PAID ANY

9  MONEY, AND IF MICROSOFT PAID $5, THAT THAT ENTIRE AMOUNT

10  WOULD BE FOR -- THAT ENTIRE INFORMATION WOULD BE FOR

11  ATTORNEY'S EYES ONLY AS OPPOSED TO THE EARLIER ORDERS WHICH

12  ARE JUST PURSUANT TO THE REGULAR PROTECTIVE ORDER.

13        MR. MAUSNER:  AND, YOUR HONOR, ARE YOU SAYING THAT

14  THE NAME OF THE SETTLING PARTY SHOULD BE INCLUDED --

15        THE COURT:  YES.

16        MR. MAUSNER: -- OR JUST THE AMOUNT?

17        THE COURT:  NO, THE NAME.  THE NAME.  BUT THE NAME

18  SHALL BE FOR ATTORNEY'S EYES ONLY.

19        MR. MAUSNER:  OKAY.

20        THE COURT:  AND THE AMOUNTS.

21        MR. MAUSNER:  OKAY.  AND YOU'RE AWARE, YOUR HONOR,

22  THAT JUDGE MATZ ORDERED THE MICROSOFT SETTLEMENT AGREEMENT

23  FILED UNDER SEAL.

24        THE COURT:  WEREN'T OTHER ONES ALSO FILED UNDER

25  SEAL?

1          MR. MAUSNER:  YES.  BUT JUDGE MATZ SPECIFICALLY

2   ORDERED THAT THAT ONE BE FILED -- ALL OF THEM -- TO THE

3   EXTENT --

4          THE COURT:  OKAY.

5          MR. MAUSNER: -- THAT THEY WERE FILED.  THEY MAY

6   NEVER HAVE BEEN FILED.

7          THE COURT:  OKAY.

8          MR. MAUSNER:  IT MAY JUST HAVE BEEN A DISMISSAL --

9          THE COURT:  AND I ASSUME THAT WAS AT THE REQUEST OF

10  BOTH PARTIES.

11         MR. MAUSNER:  YES.

12         THE COURT:  YES.  WELL --

13         MS. KASSABIAN:  CERTAINLY, YOUR HONOR, IF THESE

14  WERE DESIGNATED AS ATTORNEY'S EYES ONLY, THEY WOULD BE FILED

15  UNDER SEAL IF WE WERE TO EVER SUBMIT THEM.

16         THE COURT:  EXACTLY.  SO, I --

17         MR. MAUSNER:  IF --

18         THE COURT:  ALL RIGHT.

19         MR. MAUSNER:  ONE CORRECTION, YOUR HONOR.  IN THE

20  MICROSOFT CASE, THAT WAS JUDGE MATZ'S OWN ORDER THAT THEY BE

21  FILED UNDER SEAL.

22         THE COURT:  ALL RIGHT.  WELL, I DO THINK THAT THIS

23  SITUATION IN THIS CASE IS DIFFERENT FROM THE NET MANAGEMENT

24  CASE IN WHICH FINANCIAL DOCUMENTS WERE SOUGHT FOR AN ENTIRELY

25  DIFFERENT PURPOSE OR PURPOSES.  AND IT'S A FINE BALANCE.  AND

1    IT'S -- I DON'T DO SO -- I DON'T MAKE THE ORDER DISPARAGINGLY

2    OR WITHOUT -- WITHOUT RECOGNITION THAT THIS IS NOT WHAT THE

3    PARTIES INTENDED.  BUT I HAVE TO DO SOME BALANCING HERE.  AND

4    I THINK THE INFORMATION IS RELEVANT TO P10'S OVERALL

5    FINANCIAL CONDITION.  SO, THAT WILL COMPLETE THE ORDER ON

6    REDACTIONS.

7              MR. MAUSNER:  YOUR HONOR --

8              THE COURT:  IF YOU --

9              GO AHEAD.

10             MR. MAUSNER:  OKAY.  SINCE WE HAD THIS PRESENTATION

11   GEARED UP REGARDING THE PERFECT 10'S PRODUCTION, MAY WE DO

12   THAT NOW.

13             THE COURT:  WELL, LET -- IN A MINUTE.  LET ME JUST

14   FINISH MY THOUGHT.

15             IF YOU WANT, I'LL STAY THIS PARTICULAR ORDER TEN

16   DAYS IN CASE YOU WANT TO APPEAL IT TO JUDGE MATZ GIVEN WHAT

17   WAS JUST DISCUSSED.  I DON'T WISH TO DO ANYTHING CONTRARY TO

18   WHAT HIS INTENT MAY HAVE BEEN.  SO, I'M HAPPY TO STAY IT FOR

19   TEN DAYS.

20             LET'S GO TO THE SOURCE DOCUMENTS ISSUE.  AND THEN

21   WE'LL GO TO THE POWERPOINT.

22             MS. KASSABIAN:  YOUR HONOR, I'M SORRY TO INTERRUPT.

23   BUT I JUST WANTED TO --

24             THE COURT:  YES.

25             MS. KASSABIAN:  -- CLARIFY SOMETHING.

1          THE SIX SUBJECTS THAT PERFECT 10 JUST --

2          THE COURT:  YES.

3          MS. KASSABIAN: -- LISTED FOR YOUR HONOR THAT WE'VE

4     RULED ON, THAT DOES NOT CAPTURE ALL OF THE REDACTIONS

5     OBVIOUSLY THAT WERE MADE.  YOU SEE IN THE BINDER THERE ARE

6     THINGS LIKE GROSS RECEIPTS, GROSS PROFIT.  NOW THAT YOUR

7     HONOR HAS ORDERED THAT THE SETTLEMENT AMOUNTS BE UNREDACTED,

8     I PRESUME -- AND I WANT TO MAKE SURE THAT IT'S CLEAR IN YOUR

9     ORDER, YOUR HONOR -- THAT ALL OF THESE REDACTIONS ARE COMING

10    OUT SO THAT WE CAN NOW SEE --

11         THE COURT:  YES.

12         MS. KASSABIAN:  OKAY.  JUST --

13         THE COURT:  YES.

14         MS. KASSABIAN: -- WANTED TO CLARIFY THAT.

15         THE COURT:  AND THAT SHOULD BE IN THE ORDER.  SO,

16    ACTUALLY, IF YOU CAN GET ME THE ORDER -- WELL, TODAY IS

17    TUESDAY -- IF YOU CAN GET ME AN AGREED-UPON ORDER BY THE END

18    OF THE WEEK, THAT WOULD BE GREAT.  AND THEN I WILL ENTER IT

19    -- AND PUT IN THERE THAT IT'S STAYED FOR TEN DAYS.

20         IF THE ORDER STANDS, THEN, I DO WANT QUICK

21    COMPLIANCE BECAUSE YOU HAVE THIS DEPOSITION COMING UP.

22         WHEN?

23         MR. JANSEN:  IT'S -- RIGHT NOW WE'VE -- IT HASN'T

24    BEEN RESCHEDULED.  WE WANTED TO DO IT THE WEEK OF OCTOBER

25    12TH, YOUR HONOR.  BUT --

1          THE COURT:  WELL --

2          MR. JANSEN:  IF WE HAVE TO MOVE IT BACK A LITTLE

3     FURTHER, WE'LL DO SO.

4          THE COURT:  IF IT'S -- IF RECONSIDERATION IS

5     SOUGHT, YOU MAY HAVE TO.  BUT IF IT'S NOT SOUGHT, THEN, THAT

6     SHOULD BE SUFFICIENT.

7          MR. MAUSNER:  YOUR HONOR, COULD WE HAVE SOME MORE

8     TIME.  I THINK IT'S GOING TO TAKE MORE TIME TO FIGURE OUT,

9     YOU KNOW, EXACTLY WHAT HAS TO BE UNREDACTED AND UNREDACT IT.

10          THE COURT:  WELL, WHY DON'T YOU WORK ON THAT THIS

11     WEEK AND PROPOSE A DATE THAT'S WORKABLE FOR EVERYONE.

12          MR. JANSEN:  AND, YOUR HONOR, AS I UNDERSTAND THE

13     COURT'S ORDER, IS IT, EVERYTHING IS UNREDACTED EXCEPT VERY --

14     THREE VERY LIMITED THINGS, WHICH ARE THE CREDIT CARD NUMBERS,

15     THE NAMES OF PATIENTS, AND THE NAMES OF DOCTORS.  EVERYTHING

16     ELSE IS UNREDACTED.

17          THE COURT:  I THINK YOU'RE CORRECT.

18          MR. JANSEN:  SO, I DON'T SEE WHAT'S DIFFICULT ABOUT

19     THAT AND WHY --

20          THE COURT:  I DON'T EITHER, BUT I'M NOT GOING TO

21     TAKE TIME TO MICROMANAGE A COMPLIANCE DATE.

22          MR. MAUSNER:  IT MAY NOT BE --

23          THE COURT:  OKAY.

24          MR. MAUSNER:  -- BUT WE'LL LOOK AT IT.

25          THE COURT:  MY GOAL IS TO GET THE DEPOSITION OF MR.

1   HERSH TAKEN BY MID-OCTOBER.

2        NOW, SOURCE DOCUMENTS.  I TOOK DEPOSITIONS.  I TOOK

3   DEPOSITIONS OF EXPERTS.  I NEEDED TO KNOW EVERYTHING ON WHICH

4   THE EXPERT WAS RELYING.  I DON'T SEE WHY -- HOW I COULD COME

5   TO A DIFFERENT CONCLUSION HERE.

6        MS. KINCAID:  GOOD MORNING, YOUR HONOR.  VALERIE

7   KINCAID.

8        AS A THRESHOLD MATTER IN THE JOINT STIPULATION,

9   WHICH WAS FILED IN MAY 2009, BUT GOOGLE'S PORTIONS WERE

10   PRESENTED TO US IN NOVEMBER OF 2008 AND WERE NEVER CHANGED

11   AFTER THAT, THERE WAS NO DISCUSSION OF SOURCE DOCUMENTS.  WE

12   NEVER MET AND CONFERRED ABOUT THAT ISSUE.  THAT'S NOT

13   REQUESTS THAT WERE MADE.  I UNDERSTAND THAT AMAZON WANTS

14   THOSE DOCUMENTS, BUT THERE'S BEEN NO PROPER PROCEDURE

15   FOLLOWED HERE.

16        THE COURT:  WELL, ASSUMING YOU'RE CORRECT FOR THE

17   MOMENT, I DON'T KNOW THAT A MEET AND CONFER IS GOING TO YIELD

18   ANYTHING USEFUL.  I MEAN, IT'S JUST A PRETTY BASIC

19   PROPOSITION.

20        WHAT WOULD BE YOUR POSITION?

21        MS. KINCAID:  WELL, YOUR HONOR, I DON'T UNDERSTAND

22   HOW WE GOT FROM SUMMARY FINANCIAL DOCUMENTS TO BACK-UP FOR

23   EVERY PIECE OF -- EVERY EXPENSE HERE.

24        THE COURT:  WELL, BUT I HAD THE SAME QUESTION,

25   FRANKLY.  BUT THE ANSWER IS MR. HERSH.  THE ANSWER IS THAT I

1  WANT DEFENDANTS TO BE ABLE TO EXAMINE EVERYTHING MR. HERSH

2  EXAMINED.  THAT MAY OR MAY NOT BE THE UNIVERSE OF FINANCIAL

3  DOCUMENTS.

4          MS. KINCAID:  BUT THE ONLY POSSIBLE REASON FOR THAT

5  COULD BE TO SAY THAT HE -- HE WORKS WITH PERFECT 10

6  EXTENSIVELY.  AND I DON'T THINK THAT IT'S GOING TO MAKE ANY

7  DIFFERENCE IN HIS TESTIMONY WHETHER OR NOT HE'S BEING

8  CROSS-EXAMINED WITH A SOURCE DOCUMENT.  AND THEY SHOW NO

9  ENTITLEMENT TO SOURCE DOCUMENTS BECAUSE IT WAS NEVER BROUGHT

10 UP BEFORE.  WE NEVER MET AND CONFERRED ABOUT IT.  THEY NEVER

11 BRIEFED IT.  I MEAN, YOU'RE ASKING FOR SOMETHING WHICH I

12 BELIEVE IS QUITE EXTRAORDINARY, ALL THE SOURCE DOCUMENTS.  I

13 DON'T UNDERSTAND WHERE THE ENTITLEMENT COMES FROM.

14         THE COURT:  WELL, I MEAN, IT'S EMBRACED WITHIN

15 THESE MEGA REQUESTS.  I HATE TO USE THE WORD "MEGA" IN THIS

16 CASE, BUT ALL DOCUMENTS.

17         MS. KINCAID:  YOU KNOW, ALL THEY EVER SAID THAT

18 THEY WANTED DURING THE MEET AND CONFER PROCESS WERE THESE

19 UNREDACTED FINANCIAL STATEMENTS.

20         WHEN YOU MADE YOUR PRIOR ORDER, YOU SAID GIVE

21 SUMMARY FINANCIAL DOCUMENTS.  THIS IS MORE THAN SUMMARY

22 FINANCIAL DOCUMENTS WHEN WE GAVE THE REDACTED --

23         THE COURT:  OF COURSE IT -- OF COURSE IT IS.  BUT

24 IT'S -- CORRECT ME IF I'M WRONG.  MR. HERSH HAS ALL THIS

25 STUFF IN HIS OFFICE, RIGHT?

1      MS. KINCAID:  I KNOW THAT HE HAS VARIOUS SOURCE

2   DOCUMENTS, BUT I DON'T THINK THAT IT'S NECESSARY FOR THE

3   PRODUCTION OF THE SOURCE DOCUMENTS FOR HIS DEPOSITION TO GO

4   FORWARD AND FOR HIM TO BE PROPERLY CROSS-EXAMINED.

5      THE COURT:  I TEND TO DISAGREE.

6      MS. KINCAID:  HE'S AN ACCOUNTANT.  HE HAS GREAT

7   KNOWLEDGE OF WHAT HE DOES.  AND WHEN ASKED QUESTIONS ABOUT

8   HOW DID YOU DO CERTAIN THINGS, HE DOESN'T NEED TO SEE THOSE

9   SOURCE DOCUMENTS.  THEY'RE --

10      THE COURT:  LET ME ASK -- LET ME INTERRUPT YOU.

11      WOULD IT BE FEASIBLE TO BIFURCATE MR. HERSH'S

12   DEPOSITION INTO STAGE ONE WITHOUT THE SOURCE DOCUMENTS AND

13   THEN A FOLLOW-UP DEPOSITION, IF NECESSARY.

14      MR. JANSEN:  YOUR HONOR, IT WOULD BE POSSIBLE.

15   WE'D ACTUALLY ADDRESSED WITH MR. MAUSNER THE POSSIBILITY OF

16   ACTUALLY GOING FORWARD WITH MR. HERSH'S DEPOSITION A COUPLE

17   OF WEEKS AGO AND AGREEING THAT WE'D HAVE TO COME BACK, AND

18   THERE MIGHT BE A FURTHER ORDER, YOU KNOW, PRODUCTION BY THE

19   COURT.  AND THAT HE WOULD -- MR. HERSH WOULD THEN NEED TO BE

20   BROUGHT BACK. MR. MAUSNER REJECTED THAT OFFER.

21      I MEAN, I THINK CERTAINLY WHETHER OR NOT MR. HERSH

22   CAN EXPLAIN HOW HE DERIVED THE NUMBERS -- FOR EXAMPLE, HIS

23   REVENUE FIGURES AND HOW HE ATTRIBUTES CERTAIN AMOUNTS OF

24   DOLLARS TO INTERNET REVENUE, WE HAVE -- WHAT IS INTERNET

25   REVENUE MADE UP OF.  WHAT ARE THE COMPONENTS OF INTERNET

1 REVENUE ON THE FINANCIAL STATEMENTS.  HE MAY VERY WELL BE

2 ABLE TO ASCRIBE IT.  WE'RE ENTITLED TO LOOK AT THE DOCUMENTS

3 HE USED TO COMPILE THOSE NUMBERS AND ASK HIM DID YOU CONSIDER

4 THIS ITEM?  DID YOU CONSIDER THAT ITEM?  WE ARE ENTITLED TO

5 THE BACK-UP WHEN THEY'RE SEEKING --

6         THE COURT:  WELL, BUT YOU MADE THE SAME -- YOU MADE

7 THE SAME PROPOSAL I'M JUST MAKING.

8         MR. MAUSNER, I'M OFFERING YOU A CHANCE TO --

9         MR. MAUSNER:  WELL, I GUESS IT WOULD BE OKAY IF

10 IT'S LIMITED TO SEVEN HOURS, YOU KNOW, THREE AND A HALF NOW,

11 THREE AND A HALF LATER.  BUT WE DON'T WANT TO GET INTO A

12 14-HOUR DEPOSITION.  SO --

13         THE COURT:  IF THERE WERE A CASE THAT WOULD JUSTIFY

14 IT, IT MIGHT BE THIS CASE.

15         BUT ANYWAY WHAT ABOUT THE -- WHAT --

16         YES.  GO AHEAD.

17         MS. KINCAID:  I WOULD JUST LIKE TO TAKE A STEP BACK

18 FOR A SECOND.  JUDGE MATZ HAS MADE IT EXTREMELY CLEAR THAT HE

19 WANTED LIMITED DISCOVERY.  HE WANTED CIRCUMSCRIBED DISCOVERY.

20  HE WANTED NECESSARY DISCOVERY.  HIS VERY WORDS TO MR.

21 ZELLER WERE YOU'RE NOT GOING TO GET EVERYTHING YOU WANT.

22         THE COURT:  THAT'S WHY I'M PROPOSING THIS.

23         MS. KINCAID:  FOR SETTLEMENT TALKS AND FOR SUMMARY

24 JUDGMENT, WHICH WERE THE COMPLETE FOCUS, THIS IS COMPLETELY

25 UNNECESSARY.  I DON'T UNDERSTAND WHY THEY'RE TAKING MR.

1    HERSH'S DEPOSITION IN THE FIRST PLACE NOW, WHY THEY'RE DOING

2    THE FINANCIAL DISCOVERY.  WE HAVE ALL THESE PENDING MOTIONS

3    --

4            THE COURT:  I CAN UNDERSTAND WHY THEY WANT MR.

5    HERSH'S --

6            MS. KINCAID:  -- ON LIABILITY.  AND THEY'RE JUMPING

7    FORWARD TO THAT.

8            THE COURT:  I CAN UNDERSTAND WHY THEY WOULD WANT TO

9    TAKE IT NOW.

10            MS. KINCAID:  WELL --

11            THE COURT:  BUT WHY -- I THINK MY IDEA IS VIABLE.

12    AND I THINK THAT'S WHAT I'LL DO.

13            MS. KASSABIAN:  YOUR HONOR, MAY I BE HEARD BRIEFLY

14    --

15            THE COURT:  YES.

16            MS. KASSABIAN:  -- A RULING.  JUST A COUPLE OF

17    POINTS HERE.  I MEAN, WE'RE HAPPY TO PROCEED IN TWO STAGES

18    WITH THE HERSH DEPOSITION IF THAT'S WHAT YOUR HONOR WOULD

19    PREFER.

20            BUT I SUSPECT THAT A BUSY ACCOUNTANT WHO HAS BEEN

21    DOING THESE RECORDS FOR MANY, MANY YEARS IS NOT GOING TO BE

22    ABLE TO TELL US OFF THE TOP OF HIS HEAD EXACTLY WHAT

23    COMPRISES, QUOTE, OUTSIDE SERVICES OR, QUOTE, PAYROLL

24    EXPENSES.  HE'S GOING TO NEED HIS WORKING FILES.  ANY EXPERT,

25    AS YOUR HONOR KNOWS, YOU TAKE THESE DEPOSITIONS.  THEY HAVE

1    THEIR FILES WITH THEM SO THAT THEY CAN REFER TO THEM AND

2    EXPLAIN WHAT THEY MEAN.          BUT THAT SAID, YOU KNOW, IF

3    PREFERRED -- IF YOUR HONOR WOULD PREFER, AND IF PERFECT 10 IS

4    OKAY WITH GOING IN TWO PHASES, WE CAN DO THAT.  I JUST THINK

5    WE'RE GOING TO GET A LOT OF "I DON'T KNOWS" FROM -- "I DON'T

6    RECALLS" FROM MR. HERSH.

7            THE COURT:  WELL, LET ME ASK.  THIS MAY BE A

8    QUESTION FOR DR. ZADA, ACTUALLY.  WHERE IS ALL THE MATERIAL

9    THAT MR. HERSH RELIED ON.  IS IT WITH P10, OR IS IT WITH MR.

10   HERSH?

11           DR. ZADA:  YOUR HONOR, TRUTHFULLY, I DON'T -- I'M

12   SURE THAT BRUCE HAS SOME OF IT, BUT I WOULD LIKE TO POINT OUT

13   WE'VE BEEN AUDITED BY THE IRS AT LEAST TWO TIMES.  THEY'VE

14   NEVER FOUND ANYTHING, YOUR HONOR.

15           AND I CAN SEE A SITUATION WHERE THIS COULD BE A

16   REALLY HERCULEAN -- I MEAN, I'M NOT SURE WE HAVE DOCUMENTS

17   FROM, SAY, '96 TO, SAY, 2001 OR '02.  I'M NOT SURE IT'S

18   REQUIRED TO KEEP THEM AFTER FIVE YEARS.  I'M SORRY. I REALLY

19   DON'T KNOW.

20           BUT YOU'RE TALKING ABOUT HAVING TO GO THROUGH AN

21   ENORMOUS NUMBER OF DOCUMENTS, SOME OF WHICH ARE PERSONAL.  I

22   MEAN I CAN'T EVEN IMAGINE, YOU KNOW, WHAT'S GOING TO BE

23   INVOLVED IN THIS.  SO, I'M A LITTLE BIT CONCERNED ABOUT HOW

24   MANY DOCUMENTS ARE GOING TO HAVE TO BE PRODUCED AND HOW, YOU

25   KNOW, IF THEY'RE GOING ON A FISHING EXPEDITION TO TRY TO FIND

1   SOME SORT OF VIOLATION, OR ARE THEY ACTUALLY TRYING TO

2   DETERMINE THE ACTUAL LOSSES.

3          BECAUSE MY VIEW IS THE ACTUAL LOSSES ARE VERY

4   SIMPLE, YOUR HONOR.  WE HAVE TWO FORMS OF INCOME.  WE HAVE

5   INTERNET INCOME.  AND IT'S VERY CLEAR.  IT'S PAID FROM

6   PAYCOM.  IT'S NOT HARD TO DETERMINE THAT.  WE HAVE INCOME

7   THAT WE GET FROM SALES OF THE MAGAZINE, WHICH NO LONGER

8   EXIST, WHICH IS -- WHICH IS A CURTIS CIRCULATION CHECK.

9   THOSE TWO CHECKS ARE VERY EASY TO DETERMINE.

10         ON THE OTHER SIDE WE HAVE ALL OF OUR EXPENSES.  WE

11   HAVE ALL OF OUR EMPLOYEES' EXPENSES AND VARIOUS OTHER

12   EXPENSES ASSOCIATED WITH THE BUSINESS.  AND I'M NOT REALLY

13   SURE THAT THEY, YOU KNOW, HAVE TO GO THROUGH ALL OF THESE

14   SOURCE --

15         THE COURT:  ALL RIGHT.  LET ME --

16         MR. JANSEN:  -- CODE DOCUMENTS.

17         THE COURT:  LET ME ASK MR. JANSEN AND MS.

18   KASSABIAN.

19         WHAT -- I'M NOT ASKING YOU TO GIVE MORE INFORMATION

20   THAN YOU'RE WILLING TO AT THIS POINT.  BUT WHAT IS THE --

21   WHAT IS THE PURPOSE OF DEPOSING MR. HERSH AT THIS JUNCTURE?

22         MR. JANSEN:  IT'S NOT SECRET, YOUR HONOR.  WE

23   EXPLAINED TO JUDGE MATZ WHEN WE MOVED EX PARTE FOR A

24   CONTINUATION ON OUR SUMMARY JUDGMENT MOTION DEADLINE --

25         THE COURT:  CAN YOU SPEAK IN THE MICROPHONE.

1          MR. JANSEN:  YES.  I'M SORRY, YOUR HONOR.

2          IT'S NOT A SECRET.  WE EXPLAINED THIS TO JUDGE MATZ

3    WHEN WE FILED OUR EX PARTE APPLICATION TO EXTEND THE SUMMARY

4    JUDGMENT DEADLINE.  JUDGE MATZ ISSUED AN ORDER IN JULY --

5          THE COURT:  UH-HUH.

6          MR. JANSEN:  -- WHICH SEEMS TO ADVANCE THE AMAZON

7    CASE TO TRIAL VERY QUICKLY AFTER HE MAKES RULINGS ON PENDING

8    MOTIONS.  AT THAT POINT THE CASE WILL NOT BE RESOLVED

9    ENTIRELY EVEN IF HE GRANTS ALL THE MOTIONS IN OUR FAVOR, I

10   DON'T THINK, BECAUSE I BELIEVE AMAZON.COM WOULD AT LEAST BE

11   IN THE CASE TO SOME EXTENT.

12         WE TOLD THE COURT.  AND WE BELIEVE THERE IS NO

13   COGNIZABLE DAMAGE CLAIM IN THIS CASE.  AND WE NEED TO TAKE

14   EXAMINATION OF THE ACCOUNTANT TO ESTABLISH THAT.  AND WE PLAN

15   TO MOVE FOR -- THAT'S ONE OF OUR GROUNDS FOR SUMMARY

16   JUDGMENT.  THERE'S NO RIGHT TO -- THERE'S NO LINKAGE BETWEEN

17   ANY ACTS OF AMAZON.COM AND ANY DAMAGES SUFFERED BY PERFECT 10

18   OR ANY LOST BUSINESS.

19         AND WE NEED TO UNDERSTAND AND GET THEM TIED DOWN ON

20   WHAT THEIR BELIEF IS AS TO -- AS TO THE SOURCE OF THEIR

21   DAMAGES AND HOW THEY ALLOCATE REVENUES AND EXPENSES.

22   BECAUSE, AS I SAID, THEY VOLUNTARILY STOPPED THE MAGAZINE.

23   THEY PUT HUGE AMOUNTS OF MONEY INTO A MANSION.  IT'S JUST AN

24   EXCESSIVE LIFE-STYLE BASICALLY THAT'S BEING FUNDED THROUGH

25   PERFECT 10.  HUGE AMOUNTS OF MONEY INTO LAWYERS.  HUGE

1    AMOUNTS OF MONEY APPARENTLY INTO FAILED EFFORTS TO PRODUCE

2    TELEVISION PROGRAMS AND MOVIES.  I MEAN, THAT'S --

3            THE COURT:  ALL RIGHT.  THE --

4            MR. JANSEN:  -- THAT'S WHY WE NEED TO TAKE HIS

5    DEPOSITION.

6            THE COURT:  ALL RIGHT.  OKAY.  ALL RIGHT.

7            AND THAT WAS MY ASSUMPTION --

8            MR. JANSEN:  AND WE -- AND WE ACTUALLY NEED THE

9    BACK-UP --

10           THE COURT:  OKAY.

11           MR. JANSEN:  -- TO TAKE HIS DEPOSITION, SO.

12           ALTHOUGH, YOU KNOW, IF THE COURT WANTS TO DO IT

13   THAT WAY, WE'LL BE HAPPY TO DO IT.  BUT ON THE OTHER HAND,

14   THERE'S BEEN NO SHOWING OF BURDEN ON THE PART OF MR. HERSH TO

15   PRODUCE HIS BACK-UP MATERIALS, INCLUDING THE CORRESPONDENCE

16   HE HAD WITH PERFECT 10, WHICH WE SHOULD HAVE A RIGHT TO GO

17   THROUGH.

18           WHAT IS THE BURDEN OF THEM PRODUCING IT NOW AS

19   OPPOSED TO TAKING TWO DEPOSITIONS --

20           THE COURT:  OKAY.  LET'S --

21           MR. JANSEN:  -- ONE NOW AND ONE --

22           THE COURT:  LET'S --

23           MR. JANSEN:  -- YOU KNOW, THREE MONTHS FROM NOW.

24           THE COURT:  LET'S DO THIS BECAUSE I SENSE THAT WHAT

25   YOU SAID WAS THE PURPOSE OF MOVING FORWARD NOW.

1          I WILL ORDER A FIRST SESSION OF MR. HERSH'S

2     DEPOSITION AND ORDER THAT ALL SOURCE DOCUMENTS, BACK-UP

3     DOCUMENTS THAT ARE CURRENTLY IN HIS OFFICE SHALL REMAIN IN

4     HIS OFFICE AND BE ACCESSIBLE TO HIM FOR THIS DEPOSITION

5     SESSION.

6          SECONDLY, THAT MR. HERSH SHOULD ADVISE DR. ZADA IF

7     THERE ARE OTHER DOCUMENTS THAT HE NEEDS TO PREPARE HIMSELF

8     FOR THIS FIRST DEPOSITION SO THAT THOSE MAY BE AVAILABLE TO

9     MR. HERSH AT THE DEPOSITION.

10          I WILL SAY THAT THE FIRST SESSION MAY EXCEED SEVEN

11     HOURS.  WE'RE GOING TO HAVE TWO PARTIES HERE, COMPLICATED

12     ISSUES, MULTI-YEAR FINANCIALS.  SO, I'M GOING TO SAY THE

13     FIRST SESSION MAY GO A FULL DAY AND THEN HALF OF A SECOND

14     DAY.

15          AND AT THAT POINT WE'LL HAVE A TELEPHONIC HEARING,

16     IF NECESSARY, IF ONE OR BOTH DEFENDANTS SEEK A SECOND SESSION

17     WITH EVERY BACK-UP DOCUMENT IN THE NEAR FUTURE.  THEY MAY.

18     THEY MAY NOT.

19          ALL RIGHT.

20          MR. JANSEN:  WELL --

21          MR. MAUSNER:  YOUR HONOR, I'D JUST NOTE.  YOU ARE

22     ORDERING THINGS THAT THEY NEVER EVEN ASKED FOR.  I MEAN, TO

23     GO BEYOND ONE DAY, I MEAN THEY HAVEN'T EVEN ASKED FOR THAT.

24     WHY -- WHY IS THAT --

25          THE COURT:  BECAUSE I'M ORDERING IT.  I'M TELLING

1  YOU IN MY EXPERIENCE IN THIS CASE IT'S REASONABLE.  AND YOU

2  HAVE SEVEN HOURS WITH TWO ATTORNEYS IN A CASE WHERE $55

3  MILLION IS ALLEGED AND MULTI-YEAR FINANCIAL STATEMENTS.  I

4  DON'T THINK ANOTHER THREE OR FOUR HOURS IS WORTH HAVING A

5  TELEPHONIC CONFERENCE CALL OVER.

6             MR. JANSEN, YOU HAD A --

7             MR. JANSEN:  JUST FOR CLARIFICATION.  WITH RESPECT

8  TO THE -- YOU SAID THE BACK-UPS SHALL BE ACCESSIBLE TO MR.

9  HERSH FOR HIS DEPOSITION.  BUT THAT MEANS HE'LL HAVE IT, AND

10  WE WON'T HAVE IT.  THAT'S THE POINT.

11             THE COURT:  RIGHT.  I DON'T WANT -- I WANT HIM TO

12  BE ABLE TO HAVE EVERYTHING AT HIS FINGERTIPS THAT HE NEEDS TO

13  ANSWER YOU WITHIN REASON.

14             MR. JANSEN:  HOW WILL HE KNOW WHAT THAT IS UNTIL WE

15  START ASKING QUESTIONS.

16             THE COURT:  HE HAS HIS OWN FINANCIAL STATEMENTS.

17  IN OTHER WORDS, IF HE SAYS, I DON'T -- YOU KNOW, DR. ZADA.  I

18  DON'T HAVE THE 2007 PAPERS.  YOU KNOW, I NEED THOSE TO

19  PREPARE FOR THE DEPOSITION.  I WANT HIM TO HAVE THEM.

20             MR. JANSEN:  I'M JUST WONDERING WHY WE SHOULDN'T BE

21  ALLOWED TO HAVE ACCESS TO THE SAME FINANCIAL BACK-UP THAT

22  HE'S GOING TO BE RELYING UPON TO PREPARE FOR HIS DEPOSITION.

23  IF HE NEEDS IT TO PREPARE FOR HIS DEPOSITION -- ANSWERS ABOUT

24  THE FINANCIAL STATEMENTS HE PREPARED, SHOULDN'T WE BE ALLOWED

25  TO SEE THOSE BEFORE HE GIVES HIS DEPOSITION SO WE CAN JUST

1    GET IT OVER WITH, SO TO SPEAK.  AND MAYBE WE WON'T HAVE TO

2    COME BACK FOR -- AND HAVE A TELEPHONIC CONFERENCE.  I THINK

3    IF HE FEELS HE NEEDS THEM TO ANSWER QUESTIONS, WE SHOULD --

4              THE COURT:  THAT'S A GOOD POINT.

5              MR. JANSEN:  -- GET THOSE IN ADVANCE --

6              THE COURT:  YES.

7              MR. JANSEN:  -- JUST AS A MATTER OF FAIRNESS.

8              MS. KINCAID:  YOUR HONOR, WE HAVEN'T ESTABLISHED

9    THAT HE NEEDS THEM.  YOU SIMPLY SAID MR. HERSH SHOULD ACCESS

10   TO IT.

11             THE COURT:  WELL, BUT IF HE NEEDS -- IF HE PREPARES

12   ON THEM AND IS RELYING -- I MEAN, AT THE BEGINNING OF EVERY

13   DEPOSITION IS, YOU KNOW, WHAT PAPERS HAVE YOU RELIED ON IN

14   PREPARATION FOR YOUR TESTIMONY TODAY.  AND HE SAYS, THIS FILE

15   BOX AND THIS FILE BOX.

16             MS. KINCAID:  WELL, THE ONLY REASON THAT HE WILL

17   HAVE RELIED ON THOSE FILE BOXES IS THAT BECAUSE OF THE

18   PARTICULAR COURT ORDER HERE, YOUR HONOR.  WE STILL HAVEN'T

19   ESTABLISHED WHEN MR. JANSEN CAME TO THE PODIUM EARLIER YOUR

20   QUESTION WAS WHY DO YOU NEED THE BACK-UP DOCUMENTS.  AND HIS

21   ANSWER REALLY WAS, WELL, BECAUSE WE THINK WE MAY NEED THEM.

22             WE THINK SITTING HERE AS LAWYERS, NOT ACCOUNTANTS,

23   NOT FINANCIAL EXPERTS, THAT HE NEEDS THEM TO ANSWER THESE

24   QUESTIONS THAT WE HAVEN'T TOLD YOU WHAT THEY ARE YET.

25             I MEAN, IT'S ALREADY AN EXTRAORDINARY ORDER.  HE'S

1   COMING FOR 10.5 HOURS OF A FIRST SESSION.  LET'S SEE WHAT

2   COMES OF THAT FIRST SESSION.  WE'RE ALREADY TALKING ABOUT

3   THINGS THAT NOBODY EVER ASKED FOR.  THINGS ARE BEING

4   ORDERED.  TO TAKE IT ONE STEP FURTHER, THERE'S --

5           THE COURT:  DON'T PUSH YOUR LUCK.

6           MS. KINCAID:  -- I SEE ABSOLUTELY NO NEED FOR IT.

7           THE COURT:  DON'T PUSH YOUR LUCK BECAUSE I CAN

8   ORDER EVERYTHING PRODUCED.

9           MR. JANSEN:  YOUR HONOR, I'M NOT AN ACCOUNTANT.

10  I'M NOT A FINANCIAL EXPERT.  WE HIRED A FORENSIC ACCOUNTANT

11  TO ASSIST US WITH THIS.  HE'S TOLD US HE NEEDS TO HAVE

12  BACK-UPS FOR THE FINANCIALS BECAUSE THEY'RE SIMPLY

13  COMPILATIONS.  AND YOU CAN SEE ON THE FIRST PAGE OF EACH

14  STATEMENT MR. HERSH SAYS, "THIS IS A COMPILATION OF MATERIALS

15  GIVEN TO ME BY PERFECT 10."

16          SO, HE'S TAKEN MATERIALS FROM PERFECT 10.  HE'S

17  COMPILED THEM.  HE'S SORTED THEM INTO CATEGORIES.  AND OUR

18  ACCOUNTANT CAN'T VERIFY OR CRITICIZE OR EVEN EXAMINE MR.

19  HERSH'S CATEGORIZATION FOR PURPOSES --

20          THE COURT:  WELL, DR. ZADA SAID DOCUMENTS MAY NOT

21  EVEN EXIST FOR SOME YEARS.

22          MR. JANSEN:  WELL, THAT --

23          THE COURT:  THAT WOULD BE --

24          MR. JANSEN:  WE HAVE TO LIVE WITH THAT.

25          THE COURT:  -- IF NOT SPOLIATION, AT LEAST, MAY

1    AFFECT THE CASE.

2              MR. JANSEN:  WE HAVE TO LIVE WITH THAT.  SO, I

3    THINK WE SHOULD BE ALLOWED TO GET THE BACK-UP DOCUMENTS.  TO

4    THE EXTENT THEY EXIST OUR EXPERT -- I GUESS JUST LIKE THE IRS

5    WANTED TO LOOK AT THEM FOR THEIR OWN REASONS.  WE'RE

6    CERTAINLY NOT DOING A TAX AUDIT HERE.  WE'RE TRYING TO GET TO

7    THE BOTTOM OF WHAT ARE THE APPROPRIATE ALLOCATION OF

8    EXPENSES, INCOME, WERE THEY APPROPRIATELY DONE.  YOU KNOW, WE

9    DON'T HAVE TO ACCEPT THE --

10             THE COURT:  BUT THE PURPOSE OF A FIRST DEPOSITION

11   WOULD BE TO ADDRESS THE LARGE QUESTIONS THAT YOU LISTED.

12             MR. JANSEN:  OKAY.  THANK YOU, YOUR HONOR --

13             THE COURT:  SO --

14             MR. JANSEN:  THANK YOU.

15             THE COURT:  WELL, I MEAN -- YES?

16             MS. KASSABIAN:  YES.  I JUST WAS -- JUST WANTED TO

17   ECHO WHAT MR. JANSEN SAID THAT THESE ALL REFERENCE TO, YOU

18   KNOW -- THESE ALL REFERENCE COMPILATIONS OR OTHER SCHEDULES

19   AND WORKSHEETS.  SO, FOR INSTANCE, YOU KNOW, WHERE THERE'S A

20   LINE ITEM ON REVENUES THAT SAYS, INTERNET, PRESUMABLY, MR.

21   HERSH, I'M SURE, HE'S A FINE ACCOUNTANT.  HE HAS A SUBFILE

22   WITH A WORKSHEET THAT LISTS ALL OF THE SUBSCRIPTION FEES THAT

23   PERFECT 10 HAS EARNED OR WHATEVER INTERNET MEANS.  I'M JUST

24   SORT OF GUESSING AND ASSUMING THAT THAT'S WHAT IT MEANS.

25             THAT SORT OF UNDERLYING BACK-UP, THOSE SOURCE

1   NOTES, I MEAN, THOSE ARE ROUTINELY USED IN ACCOUNTANT

2   DEPOSITIONS.  AND I THINK IT WOULD JUST GO MUCH MORE QUICKLY,

3    AND WE'D BE THERE FOR A LOT LESS TIME IF WE COULD JUST ASK

4   THESE QUESTIONS ONCE.

5        BECAUSE MY FEAR IS THAT WE'LL SIT DOWN,  WE'LL GO

6   THROUGH ALL THESE SUBJECTS.  HE -- YOU KNOW, HE'LL BE LOOKING

7   AT DOCUMENTS SAYING, OH, YEAH, IT MEANS THIS AND THIS AND

8   THIS. AND WE WON'T BE ABLE TO SAY, WELL, CAN I SEE THAT.  CAN

9   I SEE WHAT YOU'RE LOOKING AT SO THAT I CAN QUESTION YOU ABOUT

10  THIS DOCUMENT THAT YOU'RE TESTIFYING ABOUT.

11        AND THEN WE'RE GOING TO BE BACK HERE SEVERAL MORE

12  MONTHS DOWN THE ROAD.  IT TAKES AWHILE, YOU KNOW, FOR US TO

13  GET TOGETHER OUR JOINT STIPULATION.  AND WE'RE GOING TO BE

14  TALKING ABOUT THESE ISSUES AGAIN.

15        SO, I GUESS I WOULD JUST, YOU KNOW, I WOULD ECHO

16  MR. JANSEN'S COMMENTS THAT IF MR. HERSH DOES HAVE A DRAWER IN

17  HIS OFFICE WITH WORKING FILES THAT HE USED TO PREPARE THESE

18  HIGH-LEVEL SUMMARY FINANCIALS, THAT'S NOT A BIG BURDEN.  YOU

19  KNOW, SEND THOSE OFF TO THE COPIER OR TURN THEM OVER TO US.

20  WE DID, BY THE WAY, ASK FOR THEM IN OUR JOINT STIPULATION AT

21  PAGE 25.

22        THE COURT:  WELL, THAT'S WHAT I SAID ABOUT TEN

23  MINUTES AGO.  I SAID ANYTHING THAT IS CURRENTLY IN HIS

24  OFFICE.

25        MS. KASSABIAN:  YEAH.  YEAH, I AGREE.

1        THE COURT:  IS THAT ACCEPTABLE?

2        MS. KASSABIAN:  I'M JUST ASKING IF WE CAN RECEIVE

3   COPIES OF THOSE THINGS IN ADVANCE SO THAT WE WILL BE ABLE TO

4   PREPARE AND ASK THE RELEVANT QUESTIONS AND NOT HAVE MR. HERSH

5   SORT OF TESTIFYING IN A VACUUM ABOUT THINGS WE CAN'T SEE.

6        THE COURT:  WHAT'S YOUR RESPONSE?

7        MS. KINCAID:  YOUR HONOR, THIS IS ALL QUITE

8   EXTRAORDINARY.  IT'S NOT AT PAGE 25 BECAUSE THIS WHOLE

9   DISCUSSION NEVER TOOK PLACE DURING THE MEET AND CONFER

10  PROCESS. WE HAVEN'T EVEN BEEN ABLE TO TALK TO THE ACCOUNTANT

11  ABOUT THESE ISSUES.  I HAVE NO IDEA WHAT THE BURDEN IS, WHAT

12  THE BURDEN ISN'T, WHAT THE DIFFERENT ISSUES ARE, RELEVANCE

13  AND EVERYTHING ELSE.   THIS IS JUST -- YOU KNOW, WHEN SHE

14  SAID PUT TOGETHER A NEW JOINT STIPULATION, ONE WAS NEVER PUT

15  TOGETHER IN THE FIRST PLACE THAT ADDRESSED THIS.  THIS IS

16  JUST IMPROPER.

17       TO HAVE THE FIRST SESSION, IT SOUNDS LIKE A GOOD

18  IDEA.  IF THEY'RE NOT GETTING SOMEWHERE ON SOMETHING, THEY

19  DON'T HAVE TO CONTINUE PURSUING THAT TESTIMONY.  THEY CAN GET

20  TO THE AREAS THAT THEY CAN GET TO.  IF THEY THINK THAT THEY

21  LEGITIMATELY HAVE A NEED FOR BACK-UP MATERIAL, THEN, THEY CAN

22  MAKE THEIR RECORD OF IT.  MAYBE WE CAN EVEN AGREE WITH THEM

23  ON IT THAT THEY NEED BACK-UP MATERIAL.  BUT SO FAR, NOTHING

24  OTHER THAN THE MOST VAGUE THEORETICAL THINGS HAVE BEEN SAID.

25       MS. KASSABIAN:  AND, YOUR HONOR, IF I COULD JUST

1    READ FROM PAGE 25 OF THE JOINT STIPULATION.  IT SAYS,

2              "THE FINANCIAL STATEMENTS THAT PERFECT 10 HAS

3              PRODUCED ARE SUMMARIES OF PERFECT 10'S FINANCIAL

4              CONDITION NECESSARILY BASED ON OTHER FINANCIAL

5                DOCUMENTS THAT GOOGLE MUST HAVE TO ASSESS PERFECT

6                 10'S CLAIMS DAMAGES.

7              PERFECT 10 HAS NO BASIS FOR WITHHOLDING THESE

8    SOURCE

9              DOCUMENTS.  PERFECT 10 SHOULD BE COMPELLED TO

10   PRODUCE

11             COMPLETE AND UNREDACTED COPIES OF ITS TAX RETURNS,

12             MONTHLY FINANCIAL STATEMENTS, ANY OTHER SUPPORTING

13             DOCUMENTS RELATED TO THE INFORMATION SUMMARIZED IN

14             THOSE MONTHLY FINANCIAL STATEMENTS."

15             AND IF THERE WAS A BURDEN ISSUE, PERFECT 10 SHOULD

16   HAVE SHOWN UP PREPARED HERE TODAY TO TELL YOU WHAT THAT

17   BURDEN IS.  THEY WERE ON NOTICE THAT THIS ISSUE WAS GOING TO

18   BE HEARD TODAY.  SO, IF THEY DON'T HAVE THE EVIDENCE, THEY

19   HAVEN'T MET THEIR BURDEN.

20             THE COURT:  I UNDERSTOOD THAT WAS ON THE TABLE

21   TODAY.

22             MS. KASSABIAN:  THANK YOU.

23             MS. KINCAID:  YOUR HONOR, THAT WAS BECAUSE AMAZON

24   TALKED ABOUT IT WHEN WE HAD ONE OF THE TELEPHONE CONFERENCES.

25   THEY SAID WE WANT SOURCE DOCUMENTS.  WE WANT BACK-UP

1 DOCUMENTS. THE MATERIAL THAT MS. HERRICK WAS READING FROM,

2 THEY KEPT INSISTING THAT SOMEHOW PERFECT 10 WAS DOING GAAP

3 ACCOUNTING, AND THEY MUST HAVE OTHER FINANCIAL DOCUMENTS.

4 THERE WAS NEVER A REFERENCE TO WE WANT SPECIFIC

5 BACK-UP FOR DIFFERENT TYPES OF EXPENSES. WE WENT BACK AND

6 FORTH ON THIS ISSUE IN WRITING ABOUT TEN TIMES. PLEASE TELL

7 ME EXACTLY WHAT KIND OF A DOCUMENT ARE YOU TALKING ABOUT.

8 AND ALL OF IT THEY EVER CAME BACK AND SAID WAS GAAP

9 ACCOUNTING PRINCIPLES, COMPLETE FINANCIAL PICTURE. NEVER

10 ANYTHING ABOUT ANYTHING SPECIFIC, A SOURCE DOCUMENT.

11 I THINK THAT THEY NEED TO MAKE A SHOWING MORE THAN

12 SAYING, WE THINK WE NEED BACK-UP DOCUMENTS. WE HAVE AN

13 EXPERT THAT SAYS HE'D LIKE TO SEE THIS. WE'D LIKE TO SEE

14 THAT. SURE. EVERYONE WOULD LIKE COMPLETE CARTE BLANCHE TO

15 SEE EVERYTHING THAT THE OTHER PARTY HAS. BUT THERE'S A

16 PROCEDURE FOR OBTAINING THE INFORMATION. AND THE PROCEDURE

17 HASN'T BEEN MET HERE. AND I DON'T THINK WE'VE HAD A SHOWING

18 YET. YOU'VE ALREADY SAID THERE'S GOING TO BE MORE THAN ONE

19 SESSION. WE ACCEPT THAT.

20 BUT SAYING THAT WE HAVE TO GET THE BACK-UP

21 DOCUMENTS, HAVEN'T EVEN BEEN ABLE TO TALK TO THE ACCOUNTANT

22 ABOUT IT, DON'T KNOW WHAT ALL THE VARIOUS ISSUES ARE, IT'S

23 JUST NOT REASONABLE. THEY'VE ALREADY GOTTEN THE THING THAT

24 THEY KEPT SAYING THEY NEEDED THE MOST, THE UNREDACTED

25 FINANCIAL STATEMENTS, WHICH, BY THE WAY, ARE NOT SUMMARY

1    FINANCIAL STATEMENTS.  THE ACCOUNTANT SPECIFICALLY SAID

2    THERE'S NOTHING SUMMARY ABOUT THIS.  THEY INCLUDE GENERAL

3    LEDGERS.

4         MS. KASSABIAN:  AND IF I COULD JUST ADD ONE MORE

5    COMMENT, YOUR HONOR.

6         PERFECT 10'S COUNSEL IS REPRESENTING MR. HERSH FOR

7    PURPOSES OF HIS DEPOSITION.  THEY HAVE SERVED TWO SETS OF

8    WRITTEN OBJECTIONS AND RESPONSES TO GOOGLE'S SUBPOENA AND TO

9    AMAZON'S SUBPOENA.  HOW THEY PREPARED THOSE RESPONSES WITHOUT

10   CONFERRING WITH MR. HERSH IS BEYOND ME.  I WOULD ASSUME THEY

11   WOULD HAVE TO CONFER WITH HIM BEFORE RESPONDING IN GOOD FAITH

12   TO A SUBPOENA THAT ASKS FOR THESE VERY DOCUMENTS.

13        THE COURT:  AM I GOING TO GET A MOTION TO COMPEL?

14        MS. KASSABIAN:  SORRY?

15        THE COURT:  AM I GOING TO GET A MOTION TO COMPEL

16   THE DEPOSITION?

17        MS. KASSABIAN:  NO, NO.  I THINK THE DEPOSITION IS

18   HAPPENING.  I'M JUST SAYING IN TERMS OF THESE DOCUMENTS, NOT

19   ONLY ARE THEY AT ISSUE IN OUR JOINT STIPULATION, BUT THEY

20   WERE ASKED FOR BY BOTH AMAZON AND GOOGLE OF MR. HERSH.  I

21   WOULD THINK THAT IN RESPONDING TO THAT SUBPOENA, THAT MR.

22   HERSH'S COUNSEL, MR. MAUSNER, WOULD HAVE AT LEAST CONFERRED

23   WITH HIM ABOUT WHETHER THESE THINGS EXIST OR ARE IN FILES

24   SOMEWHERE.

25        MR. JANSEN:  JUST FOR CLARITY, YOUR HONOR, WE

1   NOTICED MR. HERSH'S DEPOSITION AND SUBPOENAED HIM.  AND THE

2   REASON WE DIDN'T BRING A MOTION TO THE COURT ON HIS

3   PARTICULAR REQUEST AND THE OBJECTIONS THAT WERE MADE ON HIS

4   BEHALF IS BECAUSE THEY REALLY ARE -- THE REQUESTS TO HIM ARE

5   SUBSUMED WITHIN THE SAME CATEGORIES OF DOCUMENTS RAISED IN

6   THE GOOGLE MOTION --

7            THE COURT:  YES.

8            MR. JANSEN:  -- THAT'S CURRENTLY BEFORE THE COURT.

9            THAT'S THE REASON WE JUST FELT IT WAS BETTER TO

10  JOIN, GET YOUR RULING ON WHETHER WE'RE ENTITLED TO SOURCE

11  DOCUMENTS.  AND THEN IT WOULD PRETTY MUCH MOOT OUT IN OUR

12  VIEW THE SPECIFIC ISSUES IN THE HERSH DEPOSITION SUBPOENA

13  ITSELF.

14           ALTHOUGH I'VE GOT A COPY OF IT AND THE OBJECTIONS,

15  WHICH I THINK ARE BASELESS, I MEAN, FRANKLY.  BUT IT'S A VERY

16  SPECIFIC SUBPOENA.  AND IT ESSENTIALLY DOES ASK FOR ALL OF

17  MR. HERSH'S SOURCE DOCUMENTS OR HOW HE BROKE OUT REVENUES AND

18  EXPENSES.

19           MS. KINCAID:  YOUR HONOR, THE JOINT STIPULATION WAS

20  -- THE PORTIONS, GOOGLE'S PORTIONS WERE GIVEN TO US IN

21  NOVEMBER OF 2008.  THEY DIDN'T ASK FOR SOURCE DOCUMENTS.

22  THEY NEVER MET AND CONFERRED ABOUT SOURCE DOCUMENTS.  THEY

23  TALKED ABOUT GAAP ACCOUNTING PRINCIPLES AND GETTING A MORE

24  COMPLETE FINANCIAL PICTURE WITH OTHER FINANCIAL DOCUMENTS

25  WHICH DIDN'T EXIST AND WHICH WE TOLD THEM DIDN'T EXIST.

1       MUCH, MUCH LATER WE GOT A DEPOSITION SUBPOENA FOR

2   MR. HERSH.  THE DEPOSITION SUBPOENA DOES ASK FOR BACK-UP

3   DOCUMENTS.  BUT THAT ISSUE HASN'T EVEN BEEN MET AND CONFERRED

4   ABOUT, LET ALONE IN A JOINT STIPULATION.

5       WE HAVE THE TWO SESSIONS OF THE DEPOSITION.

6   THERE'S JUST NO NECESSITY TO HAVE THE BACK-UP FOR THE FIRST

7   ONE.  THERE'S BEEN NO --

8       THE COURT:  ALL RIGHT.

9       MS. KINCAID:  -- SHOW --

10      THE COURT:  MS. KASSABIAN.  THEN, I'LL TELL YOU MY

11  RULING.  YES?

12      MS. KASSABIAN:  AGAIN, I WOULD JUST ASK THAT -- I

13  UNDERSTAND IF -- YOU KNOW, THERE MAY BE DIFFERENT SORT OF

14  LAYERS OF DIGGING IN TERMS OF FINDING SOURCE DOCUMENTS.  I

15  WOULD JUST ASK THAT SO THAT, YOU KNOW, MR. JANSEN AND I

16  AREN'T FLYING DOWN TO L.A. FOR A BIG WASTE OF TIME, THAT WE

17  SIMPLY BE PERMITTED TO ACCESS COPIES OF WHATEVER WORKING

18  FILES SOURCE DOCUMENTS MR. HERSH IS PLANNING TO TESTIFY

19  ABOUT.  OTHERWISE, IT'S GOING TO BE A BIG GUESSING GAME FOR

20  US, YOU KNOW, ASKING QUESTIONS ABOUT DOCUMENTS --

21      THE COURT:  MAYBE HE'S NOT PLANNING ON REFERRING TO

22  ANY SOURCE DOCUMENTS.

23      MS. KASSABIAN:  WELL, IF HE CAN REMEMBER, YOU KNOW,

24  THE BACK-UP FOR A LINE ITEM FROM 2002, I WILL BE VERY

25  IMPRESSED.  BUT I'M GUESSING THAT HE'S GOING TO NEED HIS

1  FILES, WHICH ALL EXPERTS DO.  AND, CERTAINLY, ALL ACCOUNTANTS

2  DO.  THIS IS NOT HIS ONLY CLIENT.  I DON'T DOUBT.

3         I JUST DON'T WANT TO WASTE EVERYONE'S TIME AND

4  SIGNIFICANT EXPENSE FOR US TO FLY DOWN IF THERE ARE -- I

5  PRESUME MR. HERSH LIKE ANY GOOD ACCOUNTANT HAS A FILE DRAWER

6  FOR PERFECT 10.  THAT'S ALL WE'RE ASKING FOR.  IT'S JUST THE

7  BACK-UP.  IT MAY ONLY BE JUST WORKSHEETS.

8         THE COURT:  THE --

9         MS. KASSABIAN:  IT MAY NOT EVEN BE --

10        THE COURT:  THE AVAILABLE -- THE REASONABLY

11  AVAILABLE BACK-UP ON WHICH HE INTENDS TO BE DEPOSED.

12        MS. KASSABIAN:  AND --

13        THE COURT:  EXPECTS TO BE DEPOSED.

14        MS. KASSABIAN:  I GUESS I WOULD SAY JUST SINCE HE'S

15  NOT A LAWYER AND HE'S NOT GOING TO KNOW WHAT HE SHOULD DO TO

16  PREPARE, YES, ANY DOCUMENTS THAT HE WOULD NEED TO LOOK AT AND

17  RELY ON --

18        THE COURT:  DOES HE DO FORENSIC WORK DO YOU KNOW?

19        MS. KINCAID::  HE DOESN'T, YOUR HONOR.

20        MS. KASSABIAN:  SO, YOU KNOW, BASICALLY IF HE'S GOT

21  A FILE DRAWER THAT SAYS, PERFECT 10, THAT HAS SOME OF THIS

22  BACK-UP THEY'RE VERY READILY ACCESSIBLE THAT HE INTENDS TO

23  RELY ON, I WOULD --

24        THE COURT:  ALL RIGHT.  THAT'S THE ORDER.

25        MS. KINCAID:  YOUR --

1          THE COURT:  YES?

2          MS. KINCAID:  COULD I JUST MAKE ONE COMMENT.

3    EXPENSE IS NOT AN ISSUE IN THIS CASE FROM GOOGLE'S

4    PERSPECTIVE.  THEY FLEW SOMEONE DOWN FROM THEIR SAN FRANCISCO

5    OFFICE A COUPLE OF WEEKS AGO FOR A DEPOSITION WHICH THEY KNEW

6    WASN'T EVEN GOING TO GO FORWARD TO TAKE A NON-APPEARANCE.

7    SO, I REALLY DON'T THINK THAT THEY CAN SIT THERE AND

8    LEGITIMATELY SAY THAT SOMEHOW EXPENSE IS AN ISSUE.

9          THE COURT:  OKAY.

10          MS. KINCAID:  WE'RE GOING TO HAVE TWO SESSIONS

11    ANYWAY.

12          THE COURT:  ALL RIGHT.  THANK YOU.

13          I'M MAKING MY RULING.  MY RULING IS THAT TEN

14    BUSINESS DAYS PRIOR TO THE HERSH DEPOSITION COPIES OF ALL

15    REASONABLY AVAILABLE SOURCE DOCUMENTS UPON WHICH MR. HERSH

16    AND HIS COUNSEL ANTICIPATE HE WILL BE DEPOSED ON IN HIS FIRST

17    SESSION SHALL BE PROVIDED TO COUNSEL FOR EACH DEFENDANT.

18          ANY PERSONAL, MEDICAL, CREDIT CARD INFORMATION

19    ALONG THE LINES THAT WE'VE TALKED ABOUT EARLIER TODAY MAY BE

20    REDACTED IN THAT PRODUCTION.

21          ALL RIGHT.

22          MS. KASSABIAN:  THANK YOU, YOUR HONOR.

23          THE COURT:  THAT WILL BE -- YOU CAN PUT THAT IN AN

24    ORDER FOR ME TO SIGN, ALSO.

25          ALL RIGHT.  NOW, I THINK WE CAN MOVE TO THE

1    POWERPOINT, WHICH I PRESUME RELATES TO -- THE BATES STAMPING

2    ISSUE?

3            MR. MAUSNER:  THAT'S CORRECT, YOUR HONOR.

4            THE COURT:  ALL RIGHT.  AND BEFORE WE DO THAT, WHAT

5    IS UNACCEPTABLE IN USING ADOBE ACROBAT FOR FREE OR ALMOST

6    FREE?

7            MR. MAUSNER:  WE JUST GOT THAT YESTERDAY.

8            THE COURT:  WELL --

9            MR. MAUSNER:  AND WE --

10           THE COURT:  -- SO DID I.

11           MR. MAUSNER:  WE DON'T KNOW WHAT IT'S GOING TO

12   INVOLVE.

13           THE ONLY COST ESTIMATE THAT WE'VE EVER GOTTEN IS

14   AMAZON'S COST ESTIMATE, WHICH WAS $1 MILLION.  WE DON'T KNOW

15   HOW MUCH -- FIRST OF ALL, MS. HERRICK STATED THAT THE

16   MAJORITY OF DOCUMENTS ARE ADOBE DOCUMENTS.  THAT'S NOT

17   CORRECT.  THERE ARE JPG DOCUMENTS, P&G DOCUMENTS, OTHER TYPES

18   TOO.

19           BUT, YOU KNOW, IF WE DID IT JUST FOR THE ADOBE

20   DOCUMENT, WE DON'T KNOW HOW MUCH THAT WOULD COST.  WE DON'T

21   KNOW IF IT'S FEASIBLE.  THERE ARE TENS OF THOUSANDS OF ADOBE

22   FILES.

23           OUR VIEW ON THAT IS IF THEY THINK THAT THIS IS

24   WORTHWHILE -- I'D LIKE TO SHOW YOUR HONOR JUST HOW WELL

25   ARRANGED OUR ADOBE -- CAN I DO THAT FIRST?

1          THE COURT:  OKAY.  SO -- WAIT.  TO SUMMARIZE YOUR

2    RESPONSE SO FAR IS YOU HAVEN'T HAD A CHANCE TO LOOK AT THE --

3    WHAT ADOBE CAN DO, BUT THERE IS A SIGNIFICANT PERCENTAGE OF

4    DOCUMENTS WHICH ARE ADOBE-BASED.

5          MR. MAUSNER:  OKAY.

6          THE COURT:  OKAY.

7          MR. MAUSNER:  AND IT'S UNNECESSARY.  IT'S TOTALLY

8    -- AND WHEN YOU SEE HOW OUR DOCUMENTS ARE ARRANGED --

9          THE COURT:  ALL RIGHT.

10          MR. MAUSNER:  -- YOU WILL SEE HOW UNNECESSARY THIS

11    IS.

12          THE COURT:  BEFORE YOU DO THAT --

13          MR. MAUSNER:  UH-HUH.

14          THE COURT:  HOW CAN ANY ATTORNEY IN ANY LITIGATION

15    USE A DOCUMENT FOR WHATEVER PURPOSE IN MOTION PRACTICE OR

16    TRIAL THAT ISN'T UNIQUELY IDENTIFIED?

17          MR. MAUSNER:  THEY ARE UNIQUELY IDENTIFIED.  EVERY

18    DOCUMENT IS UNIQUELY IDENTIFIED BY BEING IN A FILE AND HAVING

19    A FILE NAME THAT'S DESCRIPTIVE AS OPPOSED TO A NUMBER.  THESE

20    -- THESE IDENTIFIERS ARE MUCH BETTER THAN JUST HAVING A

21    NUMBER THAT DOESN'T MEAN ANYTHING AT ALL.

22          THE COURT:  OKAY.  AND YOU'VE GONE OVER THIS

23    PRESENTATION ALREADY WITH COUNSEL?

24          MR. MAUSNER:  WELL, WE GAVE THEM A COPY OF IT.

25          THE COURT:  ALL RIGHT.  HAVE YOU DISCUSSED IT?  I

1 MEAN, ARE YOU REALLY --

2 MS. KASSABIAN: WE JUST --

3 MR. JANSEN: YOUR HONOR --

4 MS. KINCAID: -- RECEIVED IT.

5 THE COURT: OKAY.

6 MR. JANSEN: -- ACTUALLY, I WAS UNDER THE

7 IMPRESSION THAT THIS WAS SUPPOSED TO BE SENT TO US YESTERDAY

8 AT NOON. I DON'T KNOW HOW --

9 THE COURT: I'M SORRY. WHAT?

10 MR. JANSEN: I HAD BEEN UNDER THE IMPRESSION THAT

11 THIS WAS SUPPOSED TO BE SENT TO US BY NOON YESTERDAY. AND I

12 JUST GOT IT THIS MORNING WHEN I SHOWED UP --

13 THE COURT: OH --

14 MR. JANSEN: -- MR. MAUSNER HANDED IT TO ME.

15 THE COURT: WELL, I GOT IT THIS MORNING TOO.

16 I AM WONDERING IF MAYBE WE SHOULD TAKE A LUNCH

17 BREAK NOW BECAUSE --

18 MS. KASSABIAN: IT'S LUNCHTIME.

19 THE COURT: DON'T LAUGH. MAYBE THERE'S SOME

20 POSSIBILITY OF RESOLVING THIS ISSUE. I MEAN, LOOKING THROUGH

21 HERE I SEE THERE ARE IDENTIFIERS, I GUESS.

22 BUT ANYWAY IT MIGHT -- IT MIGHT BE PRODUCTIVE IF

23 YOU TRIED TO CONVINCE EACH OTHER BEFORE YOU TRIED TO CONVINCE

24 ME. OKAY.

25 SO, YOUR TECHNICAL PERSON WANTS TO LEAVE, I KNOW.

1          BUT HOW LONG WILL THE PRESENTATION TAKE?

2          MR. MAUSNER:  MAYBE 20 MINUTES OR SO.  WE COULD DO

3     THAT.  AND THEN WE COULD TALK TO THEM --

4          THE COURT:  ALL RIGHT.

5          MR. MAUSNER:  -- AFTER THE PRESENTATION.

6          THE COURT:  ALL RIGHT.  LET'S DO THAT.  LET'S SEE

7     THE PRESENTATION.

8          MR. MAUSNER:  OKAY.

9          MS. KASSABIAN:  AND JUST FOR THE RECORD, LEAFING

10    THROUGH IT, YOU KNOW, WE OBVIOUSLY HAVE A NUMBER OF

11    OBJECTIONS TO WHAT'S IN HERE AND HOW IT'S CHARACTERIZED.  BUT

12    WE'LL GO AHEAD AND --

13         THE COURT:  COULD I ASK WOULD IT BE OKAY IF MY

14    STAFF MEMBER LOOKED AT ONE OF THOSE SCREENS.

15         MR. MAUSNER:  YOUR HONOR, WE HAVE ANOTHER COPY HERE

16    THAT SHE COULD LOOK AT IF SHE'D LIKE.

17         THE COURT:  OH, OKAY.

18         MS. POBLETE:  WE'VE ALSO PROVIDED EVERY DOCUMENT

19    THAT'S BEEN LISTED THERE IS PROVIDED IN THESE FOLDERS IN A

20    LARGER SIZE, INCLUDING AN EXTRA HANDOUT, WHICH IS REFERRED TO

21    IN THE POWERPOINT PRESENTATION.  AND IT'S FOR THE PURPOSES OF

22    ILLUSTRATING WHERE TO POINT.

23         THE COURT:  OKAY.  LET'S TRY TO KEEP THIS TO 10, 15

24    MINUTES.  AND THEN WE CAN RESUME IT, IF NECESSARY.

25         MR. MAUSNER:  OKAY.  I'D LIKE TO BEGIN BY

1    EXPLAINING TO THE COURT WHY PERFECT 10'S PRODUCTIONS WERE

2    VASTLY SUPERIOR TO GOOGLE'S AND AMAZON'S PRODUCTIONS,

3    PARTICULARLY, GOOGLE'S, WHICH WERE OFTEN NOT ONLY UNREADABLE

4    BUT USUALLY CONTAINED MULTIPLE COPIES OF THE SAME DOCUMENT --

5    IN SOME CASES 13 COPIES OF THE SAME DOCUMENT.

6            JUST VERY BRIEFLY COULD YOU -- COULD YOU -- JUST ON

7    THE POWERPOINT.  START WITH PAGE 11 -- 10 AND 11.  WE'LL COME

8    BACK TO THIS, BUT.

9            OKAY.  THIS IS A -- THIS IS A DOCUMENT THAT GOOGLE

10   PRODUCED, PAGE 11, IN TIFF FORMAT.  OKAY.

11           AT PAGES 12 AND 13 ARE ALSO DOCUMENTS THAT GOOGLE

12   PRODUCED IN ITS FAVORED TIFF FORMAT.

13           14 AND 15 SHOW -- AND 16 SHOW DOCUMENTS THAT GOOGLE

14   PRODUCED MANY, MANY COPIES OF.  AND IT HAS THE BATES NUMBERS

15   THERE, THE COPIES THEY PRODUCED.

16           17 AND 18, WE'RE TALKING ABOUT REDACTIONS.  GOOGLE

17   HAS REDACTED MUCH MORE THAN PERFECT 10 HAS EVER REDACTED.

18   BUT WE'LL COME BACK TO THAT SOON.

19           PERFECT 10'S PRODUCTIONS WERE DONE ELECTRONICALLY

20   UTILIZING THE POWER OF WINDOWS AND ADOBE SOFTWARE.  WE'LL

21   FIRST GO THROUGH A SAMPLE OF PERFECT 10'S PRODUCTION WHICH

22   WILL SHOW HOW PERFECT 10'S PRODUCTIONS WERE ORGANIZED BY

23   FOLDER, AND THAT PERFECT 10'S PRODUCTIONS COULD BE READILY

24   COPIED, ORGANIZED, AND, MOST IMPORTANTLY, SEARCHED.

25           ON PAGE 2 THERE IS AN EXAMPLE OF THE OPENING PAGE

1    OF PERFECT 10'S JUNE 2009 PRODUCTION.  WE PRODUCED THIS TO

2    GOOGLE AND TO AMAZON ON A HARD DRIVE, A COMPUTER HARD DRIVE

3    THAT WE SENT TO THEM.  PAGE 2 SHOWS THE DIFFERENT FOLDERS

4    THAT WOULD INITIALLY HAVE BEEN SEEN BY ANYONE WHO OPENED THE

5    HARD DRIVE.  THE FOLDER ENTITLED "AMAZON" IS HIGHLIGHTED.

6           IF YOU CLICK ON THAT, IT GOES TO WHAT IS SHOWN ON

7    PAGE 3.  YOU CAN SELECT THE FOLDER THERE THAT SAYS, "ALEXA

8    DMCA."  IF YOU CLICK ON THAT, PAGE 4 SHOWS THE CONTENTS OF

9    THAT FOLDER.

10          IF YOU SELECT THE FOLDER LABELED 11/27/08, THAT IS

11   FOR THE DMCA NOTICE THAT PERFECT 10 SENT TO THE COPYRIGHT

12   AGENT FOR ALEXA ON NOVEMBER 27TH, 2008.

13          PAGE 5 SHOWS THE CONTENT OF THAT FOLDER.  THE FIRST

14   DOCUMENT IS THE WORD VERSION OF THE NOTICE.  THE SECOND

15   DOCUMENT IS THE EMAIL, WHICH WAS IN PDF FORMAT, FROM WHICH

16   THE NOTICE WAS SENT.

17          THE EMAIL HAD AN ATTACHMENT, WHICH IS "JANE

18   SARASIN.PDF," THE THIRD FILE.  IF YOU CLICK ON THAT THIRD

19   FILE, PAGE 6 SHOWS WHAT ALEXA AND AMAZON WOULD HAVE SEEN HAD

20   THEY OPENED THE JANE SARASIN.PDF DOCUMENT.

21          ON THE LEFT THERE ARE PAGES IN THAT DOCUMENT AS

22   DISPLAYED BY ADOBE'S PAGES TAB.  ON THE RIGHT IS A LARGER

23   COPY OF THE FIRST PAGE THAT'S SHOWN ON THE LEFT SHOWING

24   ALEXA'S SEARCH RESULTS ON THE PERFECT 10 MODEL NAME JANE

25   SARASIN.

1          ADOBE HAS A NUMBER OF ADVANTAGES NOT PRESENT IN A

2     TIFF PRODUCTION.  I'LL DISCUSS THEM NOW AND THEN GO OVER THEM

3     IN MORE DETAIL IN A FEW MINUTES.  PROBABLY THE MOST IMPORTANT

4     FEATURE OF ADOBE IS THAT IT MAINTAINS THE LINK STRUCTURE --

5     AND I'LL DEMONSTRATE THAT IN A MINUTE.

6          ADOBE HAS THE FOLLOWING ADDITIONAL FEATURES:

7          FIRST, ADOBE AUTOMATICALLY ASSIGNS PAGE NUMBERS.

8     AT THE TOP OF PAGE 6, FOR EXAMPLE, IT SAYS, PAGE 1 OF 42.

9          DO YOU SEE THAT, YOUR HONOR, IN THE TOOLBAR AT THE

10    TOP?

11         THE COURT:  NO.

12         (PAUSE IN PROCEEDINGS.)

13         MR. MAUSNER:  THERE'S A RED CHECK MARK NEXT TO

14    THAT.

15         THE COURT:  YES.

16         MR. MAUSNER:  ADOBE OFFERS A FIND FUNCTION SO THAT

17    GOOGLE AND AMAZON COULD HAVE SEARCHED THROUGH THE PARTICULAR

18    FILE FOR A PARTICULAR IMAGE WITH A PARTICULAR MODEL NAME.

19         THE SECOND CHECK MARK IN THE TOOLBAR THERE, THERE'S

20    A LITTLE FIND BOX.  YOU CAN JUST PUT IN WHATEVER YOU WOULD

21    LIKE TO LOOK FOR, HIT YOUR RETURN BUTTON, AND IT WILL FIND

22    THAT IN THE ADOBE FILE.

23         THIRD, ADOBE OFFERS THE ABILITY TO CHECK MARK

24    INFRINGING IMAGES.

25         FOURTH, ADOBE SHOWS THE SEARCH TERM.  NOTE THAT

1    JANE SARASIN IN THE ALEXA SEARCH BOX -- THIS IS WHERE THE

2    THIRD CHECK MARK IS.  JUST BELOW THAT IT SAYS, JANE SARASIN.

3    THAT IS THE SEARCH TERM THAT WAS USED TO OBTAIN THIS PAGE.

4            FIFTH, ADOBE SHOWS EXACTLY WHAT THE ALLEGEDLY

5    INFRINGING WEB PAGES LOOK LIKE IN COLOR.  ONE OF THE WEB

6    PAGES IS ON THE RIGHT.  OTHER WEB PAGES IN THIS PARTICULAR

7    ADOBE DOCUMENT ARE SHOWN IN REDUCED SIZE ON THE LEFT.

8            SIXTH, ADOBE STORES THE IMAGE URLS OF THE IMAGES AS

9    WELL.

10           SEVENTH, ADOBE HAS A RAPID URL EXTRACTION FEATURE

11   WHEREBY URLS OF INFRINGING WEB PAGES MAY BE READILY CUT AND

12   PASTED INTO OTHER DOCUMENTS.

13           THERE ARE MANY OTHER REALLY GREAT FEATURES OF ADOBE

14   NOT AVAILABLE IN DISJOINTED TIFF PRODUCTION RECOMMENDED BY

15   THE DEFENDANTS.

16           ON PAGE 6, ONE OF THE SEARCH RESULTS IS CIRCLED.

17           ADOBE STORES THE LINK FROM THAT SEARCH RESULT

18   MIMICKING THE EXPERIENCE OF BEING ON THE INTERNET ON THE DAY

19   THE ADOBE FILE WAS CREATED.  OKAY.  SO, IN OTHER WORDS, IT'S

20   LIKE YOU HAVE A LIVE WEB PAGE HERE.  IF YOU CLICK ON THE LINK

21   IN ADOBE IT WILL SHOW YOU WHAT WAS AT THAT LINK AT THE TIME

22   THE ADOBE FILE WAS CREATED.  SO, IF YOU CLICK ON THE CIRCLED

23   SEARCH RESULT ON PAGE 6, IT TAKES YOU TO PAGE 7.  AND ADOBE

24   STORES ALL OF THIS, WHICH IF A -- IF A LINK NO LONGER EXISTS

25   ON THE INTERNET, YOU HAVE A RECORD OF WHAT EXACTLY IT WAS

1    THAT THIS SEARCH RESULT LINKED TO ON THE DAY THAT IT WAS

2    ACCESSED BY PERFECT 10.

3          OKAY.  SO, YOU CLICK ON THE LINK ON PAGE 6.  IT

4    GOES TO PAGE 7.  AND AS YOU CAN SEE, THIS IS AN INFRINGING

5    IMAGE.  THE PERFECT 10 COPYRIGHT NOTICE IS RIGHT THERE IN THE

6    UPPER LEFT ON THE LARGE IMAGE.  IT SAYS, PERFECT 10 --

7     "PERFECT10.COM COPYRIGHT" -- WHAT'S THE DATE?  CAN SOMEBODY

8    READ THE DATE.

9          MS. POBLETE:  2006.

10          MR. MAUSNER:  2006 PERFECT 10, INC.  OKAY.

11          OKAY.  NOW, IN THE PARTICULAR IMAGE -- IN THE

12    PARTICULAR DMCA NOTICE THAT'S ILLUSTRATED ON THESE PAGES THAT

13    WE'VE BEEN TALKING ABOUT PERFECT 10 STATED THAT EVERY IMAGE

14    OF A MODEL WHICH WAS NOT CROSSED OUT OR PART OF AN

15    ADVERTISING BANNER WAS COPYRIGHTED BY PERFECT 10.

16          SO, ALL ALEXA OR GOOGLE, ANY OF THESE DEFENDANTS,

17    HAD TO DO WAS CLICK ON THE LINK SHOWN ON THESE PAGES AND SEE

18    WHERE THEY LED.  IF THEY LED TO A PAGE WITH AN IMAGE ON IT,

19    THAT'S AN INFRINGING IMAGE.

20          NONE OF THIS WOULD BE POSSIBLE WITH INERT TIFF FILE

21    THAT DOES NOT HAVE ANY OF THESE CAPABILITIES AT ALL.

22          PAGE 8 ILLUSTRATES SOME OF THE SEARCH CAPABILITIES

23    OF ADOBE.  IF GOOGLE OR AMAZON WANTED TO SEARCH THROUGH THE

24    ADOBE FILE FOR IMAGES OF A PARTICULAR PERFECT 10 MODEL, ALL

25    THEY HAD TO DO WAS PUT THAT MODEL'S NAME IN THE "FIND" BOX

1    AND PRESS ENTER.  AND ADOBE WOULD SHOW THEM EVERY INSTANCE

2    WHERE THAT MODEL'S NAME APPEARED IN THE DOCUMENT, INCLUDING

3    NEXT TO AN IMAGE OF THAT MODEL.  USING --

4              THE COURT:  A PDF IMAGE OR A --

5              MR. MAUSNER:  THIS IS A -- YES, THIS IS A PDF.

6              THE COURT:  OKAY.

7              MR. MAUSNER:  IT'S A SEARCH WITHIN THE -- YOU KNOW,

8    THE PDF FILES.

9              THE COURT:  OKAY.  WITHIN THE -- OKAY.

10             MR. MAUSNER:  USING -- THAT WOULD BE USING THE PDF

11   SEARCH FUNCTION.

12             THE COURT:  OKAY.

13             MR. MAUSNER:  MICROSOFT ALSO HAS A SEARCH

14   FUNCTION.  AND USING THAT, ONE CAN ACTUALLY SEARCH THROUGH A

15   COLLECTION OF ADOBE FILES FOR A PARTICULAR URL OR MODEL NAME

16   OR ANY OTHER TERM.  ONCE AGAIN THIS IS AN INCREDIBLY USEFUL

17   FEATURE.  THIS FEATURE IS ILLUSTRATED --

18             THE COURT:  NOW, BUT WAIT A SECOND.  THE PDF HAS AN

19   IDENTIFIER -- A UNIQUE IDENTIFIER?

20             MR. MAUSNER:  YES.  IT HAS A FILE.

21             THE COURT:  IT HAS THE URL.

22             MR. MAUSNER:  THE FILE NAME COULD BE ANYTHING, BUT

23   IT'S USUALLY SOMETHING THAT'S DESCRIPTIVE OF WHAT IT IS.

24   THAT'S THE WAY --

25             THE COURT:  BUT IS IT --

1           MR. MAUSNER: -- PERFECT 10 --

2           THE COURT:  IS IT UNIQUE?

3           MR. MAUSNER:  YES.

4           DR. ZADA:  YOUR HONOR, CAN I --

5           THE COURT:  YES.  BRIEFLY.  YES.

6           DR. ZADA:  OKAY.  YOUR HONOR, OUR POSITION IS THAT

7    THE WAY WE PRODUCED THESE DOCUMENTS MAKES IT EXTREMELY EASY

8    TO FIND A PARTICULAR PAGE OF A PARTICULAR DOCUMENT.  IN THIS

9    PARTICULAR CASE THE DOCUMENT IS LABELED JANE SARASIN.  IT WAS

10   CONTAINED IN A NOVEMBER 27, 2008 DMCA NOTICE.  AND EACH PAGE

11   OF THAT DOCUMENT HAS A PAGE NUMBER ON IT ASSIGNED BY ADOBE.

12   WE CAN FIND THINGS VERY QUICKLY THIS WAY, YOUR HONOR.  IF WE

13   WERE COMPELLED TO PUT BATES NUMBER OF, SAY, 99,242 ON A

14   PARTICULAR PAGE, OUR POSITION IS IT'S JUST BUSYWORK.  IT

15   DOESN'T HELP AT ALL IN FINDING THE DOCUMENT.  NOTHING ABOUT

16   THAT PAGE --

17          THE COURT:  I UNDERSTAND.

18          DR. ZADA:  YES.

19          THE COURT:  I'M JUST --

20          DR. ZADA:  OKAY.

21          THE COURT:  I'M JUST ASKING THE QUESTIONS I NEED,

22   BUT.  ALL RIGHT.

23          MR. MAUSNER:  OKAY.  SO, ON PAGE 8 THE POP-UP

24   THAT'S SHOWN THERE IS AN ILLUSTRATION OF HOW THE MICROSOFT

25   SEARCH FUNCTION WORKS.

1              NO?  WHAT IS THAT --

2              (PLAINTIFF COUNSEL CONFERRING.)

3              MR. MAUSNER:  ALL RIGHT.  OKAY.  PAGE 9 --

4              THE COURT:  SO, PAGE 8 WAS WHAT?

5              MR. MAUSNER:  PAGE 8 IS DEMONSTRATING THE SEARCH

6  FUNCTION.  AND IT'S ACTUALLY -- IT'S THE ADOBE SEARCH

7  FUNCTION.              (PLAINTIFF'S COUNSEL CONFERRING.)

8              MR. MAUSNER:  OKAY.

9              THE COURT:  OKAY.  IT'S THE ADOBE SEARCH FUNCTION

10 ON ALEXA.  OKAY.

11             MR. MAUSNER:  OKAY.  THIS IS A -- IT'S A PDF

12 DOCUMENT.  IT'S A SAVED FILE OF AN ALEXA SEARCH THAT WAS

13 SHOWN EARLIER.

14             THE COURT:  OKAY.  RIGHT.

15             YES.  GO AHEAD.

16             THE COURT:  SO, 9.

17             MS. POBLETE:  SO, WHAT WE DID WHEN WE DID THE

18 NOTICES IS IS WHAT WE BURNED IT OR CREATED A PDF FROM A URL.

19 SO, WE'LL -- SO, WHAT PERFECT 10 WOULD HAVE DONE IS TAKEN THE

20 URL OF THE WEB -- OF ALEXA WEB SEARCH AND ASKED PDF TO CREATE

21 A PDF DOCUMENT WHICH EXACTLY COPIES THAT, WHICH MEANS THAT IT

22 TAKES THE LINKING STRUCTURE, THE METADATA, HTML CODE.  IT

23 TAKES ALL OF IT, TURNS IT INTO A PDF, WHICH IS WHAT YOU SEE

24 ON YOUR SCREEN.

25             WITHIN THAT SCREEN THERE'S A SEARCH FUNCTION.

1    ADOBE HAS LIKE A SEARCH FUNCTION WHERE YOU CAN TYPE IN A

2    WORD.  AND BECAUSE IT'S HTML CODED THERE'S TEXT THERE.  AND,

3    SO, IT WILL FIND THE TEXT THAT WAS BURNED AS IT WAS ON THE

4    INTERNET OF THAT DAY.

5         THE COURT:  I SHOULD PROBABLY KNOW THE ANSWER TO

6    THIS, BUT HAS PERFECT 10 ALSO PRODUCED A LOG OR -- YES, A

7    LOG, I GUESS, THAT SAYS, HERE ARE ALL OF THE INFRINGING URLS.

8     HERE ARE ALL OF THE COPYRIGHTED MATERIALS.  HERE ARE ALL OF

9    THE SEARCH RESULTS WE'RE RELYING ON.  WHATEVER CATEGORIES --

10        MS. POBLETE:  DR. ZADA NEEDS TO ANSWER THAT IF

11   THAT'S OKAY.

12        THE COURT:  YES.

13        DR. ZADA:  CAN I ANSWER THAT, YOUR HONOR?

14        THE COURT:  YES.

15        DR. ZADA:  WE STARTED OFF BY FOLLOWING GOOGLE'S

16   INSTRUCTIONS.  GOOGLE'S INSTRUCTIONS WERE VERY SIMPLE.  THEY

17   SAID, DO A SEARCH.  TELL US WHAT'S THE SEARCH TERM YOU USED

18   WAS, WHICH WAS THE NAME OF THE MODEL.  IF THERE'S AN

19   INFRINGING LINK, CUT AND PASTE THAT URL FOR THAT LINK INTO

20   YOUR -- INTO YOUR NOTICE.

21        THE COURT:  UH-HUH.

22        DR. ZADA:  WE DID EXACTLY WHAT THEY ASKED FOR.  I

23   SPENT -- I MUST HAVE DONE 45 NOTICES LIKE THAT, YOUR HONOR.

24   WE ALSO PUT ON THE RIGHT SIDE OF THE SPREADSHEET THE VOLUME

25   AND ISSUE NUMBER OF PERFECT 10 MAGAZINE AND PAGE RANGE WHERE

1    THE INFRINGING IMAGES APPEARED.

2         WHAT HAPPENED WAS THAT AFTER WE SPENT ALL THIS TIME

3    GOOGLE CAME BACK AND SAID ALL OF YOUR NOTICES ARE DEFICIENT.

4    AND THEY CAME UP WITH A VARIETY OF REASONS WHICH I FELT WERE

5    NOT REALLY LEGITIMATE.  AND ONE OF THE MAIN REASONS WAS WE

6    DON'T KNOW WHICH IMAGE IS INFRINGING.

7         AND THAT IS ONE REASON WHY I WENT TO THE

8    ADOBE-STYLE NOTICE BECAUSE IN THE ADOBE-STYLE NOTICE YOU CAN

9    CHECK MARK THE IMAGES. YOU CAN CROSS OFF THE NON-IMAGES.  IT

10   IS A VASTLY SUPERIOR METHOD FOR PROVIDING DMCA NOTICES.  YOU

11   CAN SEE EXACTLY WHAT THE PAGE LOOKED LIKE WHEN YOU BURNED

12   THAT IMAGE.

13        IT IS SO VASTLY SUPERIOR TO WHAT THEY ASKED FOR THE

14   FIRST TIME AND THAT WHICH THEY SAID EVERYTHING WAS DEFICIENT,

15   AND THEN THEY SAID ALL OF THE ADOBE NOTICES ARE DEFICIENT.

16        ONE OF THE PROBLEMS IN THIS CASE IS THEY'VE NEVER

17   EXPLAINED WHAT A COMPLIANT NOTICE IS.  I'VE ASKED THEM FOR

18   THAT.  EVERYTHING WE DO IS DEFICIENT.  AND THAT'S THE WHOLE

19   DEFENSE THEY HAVE IN THIS CASE.  EVERYTHING YOU'VE GIVEN US

20   IS DEFICIENT.  BUT WE WON'T TELL YOU WHAT IS NOT DEFICIENT.

21        IN ANSWER TO YOUR QUESTION, I DID EXACTLY WHAT YOU

22   ASKED.  I GAVE THEM A LIST OF ALL THE URLS.  AND THAT WAS

23   DEFICIENT.  SO, THEN, WE TOOK IT ONE STEP FURTHER.  WE BURNED

24   EVERY INFRINGING WEB PAGE ON A PARTICULAR WEBSITE AND

25   PROVIDED IT TO THEM IN ADOBE SO THEY KNEW THE LOCATIONS OF

1   EVERY INFRINGING PERFECT 10 PICTURE ON THAT PAGE.  BECAUSE IN

2   MANY CASES THERE WERE GOOGLE ADS AROUND THOSE -- THOSE

3   IMAGES, YOUR HONOR.

4           AND, SO, WE'VE DONE WAY BEYOND WHAT WE BELIEVE THE

5   REQUIREMENTS OF THE DMCA ARE.  AND WE'RE NOT THE ONLY

6   COPYRIGHT PERSON THAT'S HAD A PROBLEM.  IN OUR OPPOSITION TO

7   THEIR MOTION WE HAD FOUR PEOPLE TESTIFY THAT THEY THOUGHT

8   GOOGLE'S DMCA POLICY WAS BASICALLY A SHAM OR SOMETHING

9   EQUIVALENT.

10          THEY DON'T -- THEY TELL YOU YOU HAVE TO FAX IT.

11  THEN YOU FAX YOUR NOTICE.  THEN THEY SAY YOU HAVE TO EMAIL

12  IT.  THEN YOU EMAIL IT, AND THEY SAY, OH, YOU'VE GOT TO EMAIL

13  IT AGAIN.  IT'S JUST ONE GIGANTIC, YOU KNOW, ATTEMPT TO

14  PREVENT COPYRIGHT HOLDERS FROM HAVING ANY RELIEF.

15          NOW, WE HAVE EXAMPLES OF GOOGLE'S DMCA LOG WHICH

16  YOU, YOUR HONOR, COMPELLED THEM TO PRODUCE.  IT WAS SUPPOSED

17  TO BE IN A SPREADSHEET FORMAT.  AND I THINK ON PAGES 11 AND

18  12 IT'S EXAMPLES OF THE CORRUPTED FILES THAT GOOGLE CLAIMS

19  ARE THEIR DMCA LOG.  PLUS, WE HAVE 13 COPIES OF OUR OWN

20  NOTICES BACK.  AND THEY'RE ALL IN DIFFERENT BATES RANGES.

21          THE COURT:  ALL RIGHT.  THIS IS WHAT I WOULD LIKE

22  TO DO.  I CAN TELL ALREADY THAT YOU'RE NOT PERSUADING THEM.

23  I WON'T SAY WHETHER OR NOT YOU'RE PERSUADING ME, BUT I'M

24  UNDERSTANDING.  BEFORE WE BREAK I WOULD LIKE A TWO-MINUTE

25  OVERVIEW FOR ME TO THINK ABOUT WHY YOU THINK WHAT THEY'VE

1    DONE IS UNACCEPTABLE.

2           MS. KASSABIAN:  SURE.  THANK YOU, YOUR HONOR.

3           THIS IS A VERY ENTERTAINING PRESENTATION, BUT IT'S

4    ENTIRELY IRRELEVANT.  WE'RE NOT ASKING --

5           THE COURT:  IT'S ENTERTAINING.

6           (LAUGHTER.)

7           MS. KASSABIAN:  SORT OF.

8           WE'RE NOT ASKING THEM TO TIFF THEIR PRODUCTION.

9    GOOGLE TIFFS ITS PRODUCTIONS.  MOST LITIGANTS IN FEDERAL

10   COURT TIFF THEIR PRODUCTIONS FOR A VARIETY OF REASONS.

11   THAT'S NOT WHAT WE'RE ASKING HERE.  WE'RE ASKING FOR THEM TO

12   PUT CONTROL NUMBERS ON THEIR DOCUMENTS.

13          INITIALLY, WE FIGURED, WELL, THE WAY YOU DO THAT IS

14   TO TIFF IT AND THEN HAVE YOUR DOCUMENT PRODUCTION COMPANY

15   APPLY A NUMBER.  BUT PERFECT 10 CLAIMED, NO, TIFFING IS TOO

16   EXPENSIVE.  WE DON'T WANT TO TIFF.  WE WANT TO STICK WITH

17   ADOBE.  SO, FINE.  WE WENT THROUGH ADOBE.  I DID A QUICK

18   SEARCH ON THE INTERNET.  COME TO FIND OUT THERE WAS A VERY

19   EASY FEATURE --

20          THE COURT:  OKAY.  BUT THE GIST --

21          MS. KASSABIAN:  -- ON ADOBE.

22          THE COURT:  AS I UNDERSTAND IT, THE GIST OF THEIR

23   ARGUMENT IS THAT THEY HAVE DONE BETTER THAN BATES STAMPING,

24   BETTER THAN ANY OTHER KIND OF DOCUMENT IDENTIFICATION.  AND

25   IT'S SEARCHABLE.  AND THAT YOU'RE DRIVING UP THE EXPENSE FOR

1    NO REASON TO NO BENEFIT TO ANYONE.

2             MS. KASSABIAN:  OKAY.  I'D LIKE TO --

3             THE COURT:  THAT'S HOW --

4             MS. KASSABIAN:  -- JUST QUICKLY ADDRESS EACH OF

5    THOSE.

6             THAT IT'S BETTER IS NOT GOING TO CHANGE.  THIS

7    FEATURE JUST APPLIES BATES STAMPS TO THE CURRENT FILE

8    STRUCTURE.  SO, NONE OF THAT WILL CHANGE.  PERFECT 10 CAN

9    KEEP ITS NESTED FOLDER SYSTEM --

10            THE COURT:  BUT NOT EVERYTHING IS ON ADOBE.

11            MS. KASSABIAN:  I'M SORRY?

12            THE COURT:  NOT EVERYTHING IS ON ADOBE.

13            MS. KASSABIAN:  THE PDF, THE ADOBE BATES-STAMPING

14   FEATURE AUTOMATICALLY CONVERTS ALL NON-ADOBE FILES TO ADOBE.

15   THERE'S NO CLICK, CLICK, CLICK.  IT'S AN AUTOMATED PROCESS.

16   AND IT WILL TAKE FIVE MINUTES FOR MR. -- DR. ZADA, WHO IS A

17   VERY SKILLED PERSON ON A COMPUTER, TO SEE YOU LITERALLY RIGHT

18   CLICK ON THE ENTIRE HARD DRIVE, LET'S SAY A GIVEN HARD DRIVE

19   FOR PERFECT 10'S PRODUCTION, AND YOU CLICK APPLY BATES

20   STAMPS, AND IT APPLIES --

21            THE COURT:  I --

22            MS. KASSABIAN:  -- BATES STAMPS TO THE --

23            THE COURT:  I HOPE IT'S AS EASY.  THEY'RE SHAKING

24   THEIR HEADS.

25            MS. KASSABIAN:  RIGHT.  WELL, IF I CAN JUST FINISH

1    -- IF I COULD JUST FINISH --

2              THE COURT:  ALL RIGHT.

3              MS. KASSABIAN:  YOU RIGHT CLICK.  IT APPLIES BATES

4    STAMPS TO EVERY PDF IN ANY FOLDER OR SUB-FOLDER THAT YOU'VE

5    CLICKED ON.  AND WE WOULD JUST CLICK ON THE HARD DRIVE --

6    AUTOMATICALLY.  IT DOESN'T COST ANYTHING.  IT DOESN'T TAKE

7    ANY PERSON ANY TIME.

8              THE COURT:  OKAY.

9              MS. KASSABIAN:  AND IF IN THOSE SUB-FOLDERS THERE

10   ARE NON-PDF FILES, IT AUTOMATICALLY CONVERTS THEM AND THEN

11   APPLIES THE BATES STAMP.

12             THE COURT:  OKAY.

13             MS. KASSABIAN:  SO, THAT TACKLES BETTER AND EXPENSE

14   --

15             THE COURT:  I HOPE YOU'RE RIGHT.  BUT GO AHEAD.

16             MR. MAUSNER:  WELL, THE DOCUMENTS THAT ARE NOT IN

17   ADOBE HAVE SOME OF THE SAME FEATURES WHICH MOST LIKELY WOULD

18   BE DESTROYED BY TURNING THEM INTO ADOBE.

19             THE COURT:  UH-HUH.

20             MR. MAUSNER:  BUT HERE'S THE POINT.  IF THEY WANT

21   TO DO THAT, THAT'S FINE.  LET THEM NUMBER IT.  AND WE'LL JUST

22   ADOPT -- WE'LL AGREE TO THEIR NUMBERING SYSTEM.  OKAY.  IF

23   IT'S AS EASY AS THEY SAY IT IS, IF THEY THINK IT'S NECESSARY

24   FOR SOME REASON -- WHICH WE DON'T.  WE STRONGLY DISAGREE WITH

25   THAT. WE THINK THIS IS GOING TO TAKE A LOT OF TIME.  IT MAY

1     -- IT IS GOING TO MESS THINGS UP.  BUT LET THEM DO THAT.

2     AND WE'LL -- WE'LL ABIDE BY THEIR NUMBERS.

3              THE COURT:  WELL, IF IT'S GOING TO MESS THINGS UP,

4     I'M NOT GOING TO ALLOW IT.  AND IF IT'S GOING TO DESTROY

5     DOCUMENTS, NO, I'M NOT GOING TO ALLOW IT.

6              MR. MAUSNER:  WELL --

7              MS. KASSABIAN:  AND I JUST --

8              MR. MAUSNER:  -- WE'LL HAVE -- WE'LL HAVE OURS

9     INTACT. AND WE'LL BE ABLE TO USE THAT.

10             THE COURT:  OKAY.

11             MR. MAUSNER:  BUT IF THEY WANT TO --

12             THE COURT:  OKAY.

13             MR. MAUSNER:  IF THEY WANT TO PUT NUMBERS ON THEM,

14    LET THEM DO IT.

15             THE COURT:  WHAT ABOUT THAT?

16             MR. MAUSNER:  WE DID IT -- WE'VE PRODUCED THESE

17    DOCUMENTS IN A GREAT WAY.  WE PRODUCED IT IN A TERRIFIC --

18             THE COURT:  ALL RIGHT.

19             MR. MAUSNER:  -- USABLE WAY.

20             THE COURT:  WHAT ABOUT HIS PROPOSAL?

21             MR. MAUSNER:  LET THEM DO WHAT THEY WANT WITH THE

22    DOCUMENTS.

23             THE COURT:  WHAT ABOUT HIS PROPOSAL?

24             MS. KASSABIAN:  OKAY.  SO, TWO ISSUES.

25             OBVIOUSLY, IT'S PERFECT 10'S BURDEN --

1           THE COURT:  I KNOW.  BUT MOVE ON --

2           MS. KASSABIAN:  -- TO PRODUCE --

3           THE COURT:  -- FROM THAT.

4           MS. KASSABIAN:  SECOND OF ALL, THE MAIN -- PERFECT

5    10 MENTIONED EARLIER THAT EACH DOCUMENT HAS A UNIQUE

6    IDENTIFIER.  I DON'T THINK THAT WHAT PERFECT 10 MEANS IS WHAT

7    WE MEAN.

8           OUR BIGGEST CONCERN HERE IS THAT IT'S IMPOSSIBLE TO

9    KNOW WHAT HAS BEEN PRODUCED AND WHAT HASN'T IF THERE AREN'T

10   PRINTABLE BATES NUMBERS ON DOCUMENTS.  RIGHT.

11          SO, WE'VE ALREADY EXPERIENCED A PROBLEM WITH THIS.

12   WE HAD A DEPOSITION OF GOOGLE LAST NOVEMBER WHERE PERFECT 10

13   SHOWED DOCUMENTS TO THE WITNESS THAT HAD NO BATES STAMP

14   NUMBERS.  WE OBJECTED AND SAID WHAT ARE THESE DOCUMENTS.

15   HAVE YOU EVEN PRODUCED THEM TO US.

16          MR. MAUSNER REPRESENTED ON THE RECORD THAT THEY

17   HAD.  WE WENT BACK AND SEARCHED THE SYSTEM.  AND THEY HAD

18   NOT.  SO, THE POINT OF BATES STAMPS IS SO THAT THERE IS SOME

19   CONTROL OVER DOCUMENTS SO THAT AT TRIAL NEW THINGS AREN'T

20   SHOWING UP WITH A PROMISE THAT, DON'T WORRY.  WE'VE PRODUCED

21   IT.  AND THEN WE HAVE TO TAKE A THREE-DAY RECESS TO GO AND

22   SEARCH TEN HARD DRIVES AND TRY TO FIND THAT NEEDLE IN THAT

23   HAYSTACK.

24           AND, ALSO, IT IS NOT TRUE THAT EVERY DOCUMENT

25   PERFECT 10 HAS PRODUCED IS SEARCHABLE.  VAST QUANTITIES OF

1    ITS PRODUCTION ARE SCANS THAT ARE NOT SEARCHABLE IN ANY WAY,

2    LIKE THEIR COPYRIGHT REGISTRATIONS AND MODEL RELEASES AND

3    STUFF.  SO, I JUST WANTED TO MAKE THAT NOTE FOR THE RECORD.

4              MR. MAUSNER:  MAY DR. --

5              THE COURT:  YES.

6              MR. MAUSNER:  -- DR. ZADA SAY SOMETHING.

7              THE COURT:  YES.

8              DR. ZADA:  YOUR HONOR, I VERY MUCH APPRECIATE THE

9    OPPORTUNITY FOR ME TO SPEAK BECAUSE I'M THE ONE THAT PRODUCED

10   ALL OF THIS STUFF, YOUR HONOR, AND I KNOW EXACTLY WHAT'S

11   THERE.

12             AND WITH ALL DUE RESPECT TO RACHEL HERRICK, SHE

13   DOES NOT KNOW EVEN A FRACTION OF OUR PRODUCTION.  A VERY

14   SUBSTANTIAL PORTION OF OUR PRODUCTION ARE JPG FILES.  THEY

15   ARE NOT ADOBE FILES.  AT LEAST 1.4 TO 1.5 MILLION IMAGES ARE

16   PRODUCED IN JPG.

17             IF YOU'LL BE KIND ENOUGH TO TURN TO PAGE 27 -- 28

18   OF YOUR HANDOUT, MICROSOFT HAS A WONDERFUL FEATURE FOR

19   DEALING WITH THESE PRODUCTIONS.  WE PRODUCED EACH OF THESE

20   PRODUCTIONS, THIS 1.4 MILLION JPG FILES IN FOLDERS.  THERE

21   WAS A FOLDER FOR EACH INFRINGING WEBSITE.  SO, FOR EXAMPLE,

22   IF THE NAME OF THE INFRINGING WEBSITE WAS GIGANEWS.COM, WE

23   PROVIDED APPROXIMATELY 16,000 PERFECT 10 IMAGES IN JPG FORMAT

24   IN THAT FOLDER.  IF THERE WAS ANOTHER FOLDER FOR ANOTHER

25   WEBSITE, NEWSDEEM, 16,000 PICTURES THERE.

1    IF YOU LOOK AT PAGE 28, WHAT YOU'LL SEE THERE IS

2    ONE OF MICROSOFT'S VIEWING OPTIONS TO LOOK AT A LARGE NUMBER

3    OF FILES WITHIN A FOLDER.  THIS IS WHAT I WOULD DESCRIBE AS

4    MICROSOFT'S LIST-VIEWING OPTION.  YOU CAN SEE EACH OF THE

5    IMAGE URLS FOR THOSE -- THOSE IMAGES.  NOW, THERE'S 16,000.

6    SO, I'M JUST SHOWING YOU A PORTION OF IT.  BUT IT'S A VERY --

7    THERE'S KNOWLEDGE THAT CAN BE IMPARTED FROM THESE IMAGE URLS.

8    IT'S THE MODEL NAME AND THE IMAGE NUMBER.  SO, ALEXA LATONA

9    02 IS VERY DESCRIPTIVE.  THEY WANT TO CONVERT THAT THING TO

10   AN ADOBE FILE AND THEN BATES STAMP THE NUMBER 994652 ON IT.

11   IT WILL DESTROY ANY ORGANIZATIONAL FEATURES OF THIS THING.

12   THIS IS SEARCHABLE.

13        IT'S ALSO -- IF YOU LOOK AT A DIFFERENT VIEWING

14   OPTION FOR MICRO- --

15        THE COURT:  WELL, THE THING IS YOU'RE NOT A LAWYER.

16   AND THEY WANT TO USE THIS FOR LITIGATION PURPOSES.  THAT'S

17   THE PROBLEM.  SO, LET THEM DO IT AT THEIR EXPENSE.

18        MR. MAUSNER:  WE HAVE NO OBJECTION TO THAT.

19        THE COURT:  SO, WHY DON'T YOU DO IT AT YOUR EXPENSE

20   -- OR NO EXPENSE.

21        MR. JANSEN:  YOUR HONOR, I THINK YOU JUST HIT ON

22   IT.  WHAT'S BEEN PRESENTED TO YOU TODAY IS A WALK THROUGH A

23   NOTICE, A DMCA NOTICE THAT WAS ALLEGEDLY SENT TO ALEXA.

24   OKAY.  THAT WAS WHAT WAS SHOWN.

25        THE COURT:  YES.

1          MR. JANSEN:  AND THIS IS THEIR PRODUCTION OF THAT

2   --

3          THE COURT:  YES.

4          MR. JANSEN:  -- THAT ALLEGED NOTICE TO ALEXA.  AND

5   MR. ZADA AND MR. MAUSNER ARE MAKING THE POINT, REALLY THE

6   ARGUMENT, TO YOU THAT IT'S VERY EASY TO GO THROUGH THESE

7   NOTICES TO SOMEHOW COMPLY WITH THEM, WHICH IS REALLY A

8   DIFFERENT ISSUE.

9          THE SUFFICIENCY OF THE NOTICE IS FOR PURPOSES OF

10  COMPLIANCE WITH DMCA.

11         THE COURT:  IS DIFFERENT IN LITIGATION PURPOSES.

12         MR. JANSEN:  IT'S TOTALLY DIFFERENT THAN USING --

13         THE COURT:  RIGHT.

14         MR. JANSEN:  -- A DOCUMENT FOR LITIGATION PURPOSES.

15         THE COURT:  RIGHT.

16         MR. JANSEN:  AND TO CORRECT THE RECORD, WHAT MR.

17  MAUSNER DOESN'T POINT OUT IS THAT A NOTICE WAS NEVER SENT TO

18  ALEXA.  SO, ALL THAT WHOLE SLIDESHOW YOU SAW IS ALL

19  COMPLETELY GARBAGE.  THERE -- AND HE WILL ADMIT.  THEY NEVER

20  SENT A NOTICE TO ALEXA.  SO --

21         THE COURT:  ALL RIGHT.

22         MR. JANSEN:  THAT'S ONE THING THAT HAS TO BE

23  CLARIFIED.  BUT I THINK THE ISSUES --

24         THE COURT:  I'M GOING TO -- I'M GOING TO ORDER

25  GOOGLE AND -- I GUESS YOU WANT THEM IN BATES-STAMP FORM, TOO,

1  RIGHT.  RIGHT?

2          MR. JANSEN:  I THINK THERE'S A --

3          THE COURT:  I MEAN --

4          MR. JANSEN:  -- PROBLEM WITH --

5          THE COURT:  WITH THE CURRENT --

6          MR. JANSEN:  I HAVE A PROBLEM WITH THE WAY --

7          THE COURT:  THE CURRENT PRODUCTION.

8          MR. JANSEN:  -- AND, YOU KNOW, THIS SPREAD -- THIS

9  WHOLE PRESENTATION WAS KIND OF JUST THROWN UP HERE.  I NEVER

10 GOT A CHANCE TO LOOK AT IT BEFORE -- BEFORE THIS HEARING.

11         THE COURT:  YES.

12         MR. JANSEN:  BUT WE HAD SUBMITTED A DECLARATION

13 BACK IN JUNE OF 2008 WHEN WE SUBMITTED A9.COM'S MOTION.  IN

14 OUR DECLARATION OF ERIN MC KINNEY, WHO IS OUR PARALEGAL, AND

15 SHE WENT THROUGH A9'S PRODUCTION -- PERFECT 10'S PRODUCTION

16 AS OF THAT DATE BEFORE THIS PRODUCTION OF MAY, AND SHE WENT

17 THROUGH AND EXPLAINED AT HER EXHIBIT 2 EXACTLY HOW

18 UNORGANIZED THE PRODUCTION IS OF MATERIALS OTHER THAN DMCA

19 NOTICES.  SHE WAS FOCUSING ON THE -- ON THE, YOU KNOW, OTHER

20 THINGS PRODUCED IN THE PRODUCTION AND EXPLAINED REALLY HOW --

21         THE COURT:  ALL RIGHT.  LET ME ASK --

22         MR. JANSEN: -- POORLY ORGANIZED THIS IS.

23         THE COURT:  ALL RIGHT.  MR. MAUSNER, IF I ORDER YOU

24 TO BATES STAMP THESE THROUGH ADOBE, INCLUDING EVERYTHING,

25 PDF, WILL THAT DAMAGE THE MATERIAL?

1          MR. MAUSNER:  I'M SORRY?

2          MS. KASSABIAN:  CAN I --

3          THE COURT:  WILL IT -- WILL THE MATERIAL BE

4     DAMAGED?

5          DR. ZADA:  YOUR HONOR, THAT WOULD COST US -- I

6     DON'T KNOW HOW MUCH IT WOULD COST US.

7          YOUR HONOR, MS. HERRICK HAS NO EVIDENTIARY SUPPORT

8     FOR HER CLAIM THAT THIS WOULD NOT COST A MILLION DOLLARS.  I

9     DON'T EVEN KNOW WHAT SHE'S ASKING FOR.  THIS -- YOU KNOW, WE

10    ARE LOSING A LOT OF MONEY, YOUR HONOR.  I MEAN, TO SPEND A

11    MILLION DOLLARS TO DO THIS --

12         THE COURT:  THEY'RE SAYING $159.

13         DR. ZADA:  IT'S NOT $159, YOUR HONOR.  THAT'S THE

14    PROBLEM WITH HER DECLARATION.  SHE DOESN'T EVEN KNOW WHAT'S

15    IN THERE.  SHE WANTS TO CONVERT ALL THE JPGS TO ADOBES.  THAT

16    WILL CLEARLY DAMAGE THE DOCUMENTS.  WE DOWNLOADED THAT

17    MATERIAL IN A JPG FORMAT, YOUR HONOR.  SHE WANTS TO CONVERT

18    IT TO ADOBE.  THAT'S GOING TO ADD 1.4 MILLION DOCUMENTS TO

19    THIS THING.  THERE'S NO REASON TO DO IT.  IT DAMAGES ALL THE

20    METADATA IN THE JPG --

21         THE COURT:  WELL, FROM WHAT YOU KNOW RIGHT NOW, DO

22    YOU BELIEVE THAT YOU CAN DO THIS QUICKLY AND CHEAPLY?

23         MS. KASSABIAN:  I BELIEVE THAT THE SOFTWARE THAT

24    PERFECT 10 PREFERS AND USES HAS THIS FEATURE.  AND PERFECT 10

25    HAS NOT USED IT.  AND WE WOULD JUST ASK THAT THEY USE IT.

1    YES.

2         DR. ZADA:  YOUR HONOR, SHE'S ASKING US TO SPEND

3    POSSIBLY -- THEY ESTIMATED IT WOULD BE A MILLION DOLLARS.

4    SHE HAS NO EVIDENTIARY SUPPORT -- WE GOT THIS THING

5    YESTERDAY, YOUR HONOR.  THAT WAS AN IMPROPER SURREPLY.

6         THE COURT:  ALL RIGHT.  THIS IS ANOTHER

7    ALICE-IN-WONDERLAND MOMENT IN THIS CASE.  I'VE NEVER DONE

8    THIS, BUT I'M GOING TO ORDER THE DEFENDANT TO BATES STAMP

9    ACCORDING TO THE PROCEDURES YOU DEEM MOST EFFICIENT AND COST

10   EFFECTIVE.  IF YOU ARE WRONG IN YOUR ESTIMATION OF THE COST

11   OR TIME AS YOU GET INTO THIS, I NEED TO KNOW SO I CAN TALK

12   ABOUT COST SHARING. IF IT'S VIRTUALLY FREE OR NEAR FREE, AND

13   IT CAN BE DONE WITH A CLICK -- A RIGHT CLICK ON A MOUSE,

14   THEN, DO IT.  JUST DO IT.

15        MS. KASSABIAN:  AND, YOUR HONOR, MY ONLY CONCERN IS

16   THAT OBVIOUSLY IF WE WERE TO RIGHT CLICK FOR PERFECT 10 AND

17   DO THIS CONVERSION ON OUR COMPUTERS INSTEAD OF THEIR

18   COMPUTERS, OBVIOUSLY, WE WOULD WANT TO MAKE SURE THAT PERFECT

19   10 WOULD NOT CONTINUE TO USE ITS UNSTAMPED DOCUMENTS.  AND MY

20   FEAR IS THAT THEY'RE NOT GOING TO WANT US TO BE THE MASTER OF

21   THEIR DOCUMENT PRODUCTION.  THEY'RE GOING TO RECEIVE THESE

22   FILES AND SAY, STEPS MISSING OR THIS ISN'T RIGHT.

23        THE COURT:  THIS IS WHY IT'S ALICE-IN-WONDERLAND.

24        MS. KASSABIAN:  YES.

25        THE COURT:  SO, DO IT.  AND THEN WE'LL GO FROM

1    THERE.

2           BUT IF YOU FIND OUT THAT YOU'RE WRONG, AND IT IS

3    COSTING THOUSANDS OF DOLLARS, I NEED TO KNOW THAT BEFORE YOU

4    SPEND THAT.

5           MS. KASSABIAN:  YES.  SO, IF YOUR -- I UNDERSTAND,

6    YOUR HONOR.  SO, IF I COULD, I'D LIKE TO OBVIOUSLY CONFER

7    WITH MY CLIENT ON THIS AND ACTUALLY RUN --

8           THE COURT:  YES.

9           MS. KASSABIAN:  WE ALREADY RAN A SAMPLE JUST TO

10   MAKE SURE THAT IT WORKED AS WE THOUGHT IT WOULD.  IF WE COULD

11   RUN A SAMPLE AND, PERHAPS, SUBMIT A SUPPLEMENTAL DOCUMENT TO

12   YOUR HONOR.  AND IF PERFECT 10 WANTS TO RUN ITS OWN SAMPLE

13   AND SUBMIT A DECLARATION TESTIFYING THAT IT RUINS THE

14   DOCUMENTS -- I DON'T THINK THEY CAN SAY THAT TODAY SINCE THEY

15   HAVEN'T HAD TIME TO RUN IT.  BUT, PERHAPS, WE CAN FILE A

16   SUPPLEMENTAL --

17          THE COURT:  WELL, YOU'RE GOING TO HAVE TO MAKE

18   COPIES OF WHAT YOU HAVE SO THAT WHAT THEY HAVE PRODUCED --

19   THEY INFORMALLY PRODUCED IT -- YOU MAINTAIN COPIES OF THAT.

20          AND, THEN, WITH ANOTHER COPY --

21          MS. KASSABIAN:  YES.

22          THE COURT:  -- THEN YOU CAN DO YOUR TESTING.

23          MS. KASSABIAN:  OKAY.

24          THE COURT:  OKAY.

25          MS. KASSABIAN:  SO, HOW ABOUT IF WE -- WE'LL TAKE A

1  HARD DRIVE.  WE'LL DO THE BATES STAMPING.  WE'LL SEND A COPY

2  OVER TO PERFECT 10.  IF THEY HAVE NO OBJECTION WITH IT, THEN,

3  THEY CAN DO THE REST OF IT WITH THEIR OWN --

4         THE COURT:  WELL, YOU'LL MAKE A COPY OF THE HARD

5  DRIVES AS PRODUCED ALREADY.

6         MS. KASSABIAN:  OH, THEY ALREADY HAVE THOSE.  YES.

7  THEY HAVE -- YOU MEAN THE CURRENT VERSION WITHOUT BATES

8  STAMPS?

9         THE COURT:  RIGHT.

10        MS. KASSABIAN:  YES.  THEY HAVE THOSE BECAUSE THEY

11 GAVE THEM TO US.

12        THE COURT:  RIGHT.  BUT THE COPIES THAT YOU HAVE

13 YOU MAKE A COPY OF SO IT'S CLEAR --

14        MS. KASSABIAN:  WHERE IT'S COMING FROM.

15        THE COURT:  THAT YOU RECEIVED EVERYTHING THEY SAY

16 THEY GAVE YOU.

17        THEN, YOU TAKE A CLEAN COPY.  YOU RUN IT THROUGH

18 THE PROCESS.  AND IF IT WORKS AS BEAUTIFULLY AS YOU HOPE IT

19 WILL, THEN, THOSE WILL BE THE BATES STAMPS THAT GOVERN THE

20 CASE.  AND NO HARM TO ANYONE'S DOCUMENTS.

21        MS. KASSABIAN:  AND, SO, YOU'RE JUST ASKING THAT

22 GOOGLE BE THE ONE TO APPLY --

23        THE COURT:  I JUST DON'T WANT --

24        MS. KASSABIAN:  -- THE BATES STAMPS.

25        THE COURT:  YES.  AND I DON'T WANT YOU TO DESTROY

1    THE PRODUCTION THAT THEY GAVE YOU.  THAT'S WHY I'M ASKING YOU

2    MAKE A COPY BEFORE YOU START TESTING THIS.  OKAY.

3         MS. KASSABIAN:  UH-HUH.

4         THE COURT:  AND THE LAST THING I'M ORDERING IS THAT

5    IF IT GETS TO BE OVER $159 OR SIGNIFICANT, YOU KNOW, I.T.

6    TIME THAT YOUR CLIENT NEEDS TO PAY, IF IT LOOKS LIKE IT'S

7    GETTING TO THAT, I NEED TO KNOW THAT BEFORE YOU DO THAT SO I

8    CAN TALK ABOUT COST SHARING.

9         MS. KASSABIAN:  OKAY.

10        THE COURT:  BUT I'M HOPING IT WILL BE PRETTY EASY.

11        MS. KASSABIAN:  OKAY.  AND IF WE DO IT WITH ONE OF

12   THE HARD DRIVES AND IT WORKS, WHAT NEXT?  WHAT'S THE NEXT

13   STEP?

14        THE COURT:  IF IT WORKS, THEN, YOU REPORT SUCCESS

15   TO THEM.  AND THAT THOSE -- WHAT ELSE WOULD NEED TO BE DONE.

16   I DON'T -- I MEAN, THOSE -- THEN THOSE WOULD BE THE DOCUMENTS

17   USED IN LITIGATION.

18        MS. KASSABIAN:  WELL, SO, YOUR HONOR, I MEAN,

19   THERE'S KIND OF A -- AGAIN, PERFECT 10 IS THE MASTER OF ITS

20   OWN PRODUCTION.  BUT THERE'S KIND OF A MASS OF -- THERE'S

21   FIVE HARD DRIVES.  THERE'S MANY, MANY, MANY DVDS AND CDS.

22   SO, I MEAN, I GUESS I STILL --

23        THE COURT:  SO --

24        MS. KASSABIAN:  -- HAVE CONCERNS ABOUT THE COURT

25   ASKING GOOGLE TO PREPARE PERFECT 10'S PRODUCTION --

1          THE COURT:  I UNDERSTAND THAT.  BUT IT'S --

2          MS. KASSABIAN:  YOU KNOW --

3          THE COURT: -- AN UNUSUAL SITUATION.  THE

4    REPRESENTATION THAT YOU'VE MADE IN GOOD FAITH IS THAT THE

5    ADOBE PROCESS OF BATES STAMPING CAN BE APPLIED TO EACH OF

6    THESE DISCRETE PRODUCTIONS -- CDS, HARD DRIVES -- IN A

7    RELATIVELY SIMPLE LOW-COST FASHION.

8          SO, YOU'LL START WITH ONE OF THE SMALLER CDS WITH

9    -- I MEAN, THE CD WITH THE SMALLEST AMOUNT OF INFORMATION

10   AND MAKE A COPY OF THAT CD.  YOU'LL RUN THE TEST ON IT.

11   YOU'LL REPORT RESULTS.

12         MS. KASSABIAN:  AND IF IT TAKES OUR -- LET'S SAY

13   OUR WORD PROCESSOR, SAY, 15, 20 HOURS TO GO THROUGH ALL THE

14   HARD DRIVES AND ALL THE CDS, ARE YOU SAYING WE WOULD THEN

15   COME TO YOUR HONOR AND ASK FOR COST SHIFTING OR --

16         THE COURT:  I NEED TO KNOW IF IT'S GOING TO TAKE 15

17   HOURS.  OKAY.

18         MS. KASSABIAN:  UH-HUH.

19         THE COURT:  BECAUSE I DID NOT KNOW THAT.  THAT'S

20   NEWS TO ME.  I THOUGHT THIS WAS, YOU KNOW, A RIGHT CLICK

21   SITUATION --

22         MS. KASSABIAN:  OH, IT IS.  IT IS.  BUT THESE ARE

23   MASSIVE HARD DRIVES.  AND SO --

24         THE COURT:  WELL --

25         MS. KASSABIAN:  -- WHEN YOU'RE TALKING ABOUT A

1   HUNDRED GIGABITS --

2            THE COURT: -- I NEED TO KNOW --

3            MS. KASSABIAN:  -- THE COMPUTER HAS TO --

4            THE COURT:  YOUR I.T. PERSON NEEDS TO GIVE YOU AN

5   ESTIMATE BEFORE YOU DO THAT.  I'M NOT GOING TO COST SHIFT

6   AFTER YOU'VE DONE IT ALL.

7            MS. KASSABIAN:  OKAY.

8            THE COURT:  SO, THE FIRST STEP IS COPY EVERYTHING

9   OR COPY ONE THING, ONE CD OR ONE HARD DRIVE.  GIVE THAT TO

10  YOUR I.T. PERSON AND SAY TO THE I.T. PERSON THIS IS WHAT WE

11  WANT DONE TO THIS.  WE WANT IT RUN THROUGH ADOBE FOR BATES --

12  THROUGH ITS BATES STAMPING FUNCTION.

13           BASED ON THE GIGABITS IN THIS HARD DRIVE, HOW MUCH

14  TIME IS THAT GOING TO TAKE AND WHAT IS THE VALUE OF THAT

15  TIME.

16           AND IF THEY SAY A FEW HUNDRED DOLLARS, I NEED --

17  YOU KNOW, THEN, IT'S A FEW HUNDRED DOLLARS.  IF IT'S $50,000,

18  THEN, NO, I NEED TO HEAR.

19           MS. KASSABIAN:  AGAIN, I FEEL THAT IT'S -- YOU

20  KNOW, IF THIS IS A BURDEN ISSUE, I FEEL THAT IT'S PERFECT

21  10'S BURDEN TO DEMONSTRATE THAT BURDEN.  SO --

22           THE COURT:  WELL, WE'RE NOT THERE YET.  BUT I GIVE

23  YOU THE CHANCE TO PROVE TO ME AND TO THEM THAT THIS CAN BE

24  DONE VERY EFFICIENT -- VERY COST EFFICIENT AND QUICK.  AND

25  NOW I'M GETTING CONCERNS THAT REALLY IT'S NOT GOING TO BE,

1    THAT IT'S GOING TO BE --

2            MS. KASSABIAN:  THAT'S NOT TRUE, YOUR HONOR.  IT'S

3    A VERY SIMPLE PROCEDURE.  IT'S JUST THAT PERFECT 10'S

4    PRODUCTION IS IN MANY DIFFERENT PARTS.

5            THE COURT:  RIGHT.

6            MS. KASSABIAN:  SOME IS PAPER, WHICH OBVIOUSLY --

7            THE COURT:  RIGHT.

8            MS. KASSABIAN:  -- HAS DIFFERENT IMPLICATIONS.  SOME

9    ARE HARD DRIVES.  SOME ARE CDS AND DVDS.

10           THE COURT:  OKAY.

11           MS. KASSABIAN:  SO, I GUESS I'M FINE WITH TAKING

12   ONE OF THOSE MEDIA, YOU KNOW, RUN IT.

13           THE COURT:  YES.

14           MS. KASSABIAN:  MAKE SURE -- CONFIRM THAT THE

15   SOFTWARE WORKS AS THE INSTRUCTIONS --

16           THE COURT:  UH-HUH.

17           MS. KASSABIAN:  -- FOR THE SOFTWARE APPEAR TO

18   INDICATE.  AND THEN WE CAN COME BACK TO YOUR HONOR, I GUESS,

19   AND TO PERFECT 10 AND SHARE THE RESULTS OF THAT WORK.

20           THE COURT:  OKAY.  I MEAN, THIS IS VERY UNUSUAL,

21   OBVIOUSLY.  BUT I AM SOMEWHAT IMPRESSED WITH WHAT THEY SHOWED

22   ME TODAY, AND THAT THIS CASE MIGHT HAVE TO EITHER GO FORWARD

23   ON THE BASIS OF THE PRODUCTION THEY'VE ALREADY MADE OR --

24   WHICH MAY BE A LITTLE BIT AWKWARD.  BUT IF THERE ARE UNIQUE

25   IDENTIFIERS ON EACH PAGE, BUT THEY'RE JUST NOT CALLED BATES

1    STAMPS, MAYBE THAT'S GOING TO BE GOOD ENOUGH IN THIS CASE.

2              MS. KASSABIAN:  THERE ARE NOT, YOUR HONOR.  THAT'S

3    WHAT I WANT TO CLARIFY.  THERE ARE NOT UNIQUE BATES --

4    IDENTIFIERS.  THEY'RE TALKING ABOUT FILE NAMES.  WHEN YOU

5    PRINT THAT DOCUMENT YOU DON'T SEE ANY FILE NAME.  YOU JUST

6    SEE WHAT YOU SAW ON THE SCREEN.  THERE ARE NOT UNIQUE

7    IDENTIFIERS.   THAT'S THE PROBLEM.

8              COULD I HAND A DOCUMENT UP TO YOUR HONOR.

9              THE COURT:  SURE.

10             (PAUSE IN PROCEEDINGS.)

11             MS. KASSABIAN:  YOU WANT TO PASS THEM AROUND.

12             (COUNSEL CONFERRING.)

13             DR. ZADA:  ARE WE GOING TO BE ABLE TO GET A COPY OF

14   --

15             MS. KASSABIAN:  YES, YES.  HE'S MAKING HIS ROUNDS.

16             SO, YOUR HONOR, WHAT WE'RE HANDING YOU ARE JUST A

17   COUPLE OF EXHIBITS THAT WERE USED IN THE PROVALA -- THE

18   GOOGLE DECLARATION LAST FALL.  THIS IS JUST AN EXAMPLE OF A

19   COUPLE OF SCREEN SHOTS THAT PERFECT 10 SHOWED OUR WITNESS IN

20   DEPOSITION.

21             AS YOU CAN SEE, THERE'S NO CONTROL NUMBERS, UNIQUE

22   IDENTIFIERS OF ANY KIND ON THESE SCREENS.

23             WE OBJECTED AND SAID WE DON'T RECOGNIZE THIS

24   DOCUMENT.  IT LOOKS LIKE IT'S BEEN MANIPULATED IN SOME WAY.

25   HAVE YOU PRODUCED THIS.

1          AND MR. MAUSNER SAID, YES, WE HAVE.  WELL, THERE

2     WAS A BIG FIGHT FIRST.  AND HE EVENTUALLY SAID, YES, WE HAVE.

3     .

4          AND THEN WE WENT BACK AND SEARCHED THEIR PRODUCTION

5     USING WORDS THAT YOU SEE IN THOSE SCREEN SHOTS, AND THEY

6     WEREN'T THERE.

7          AND THAT'S THE PROBLEM IS THAT THERE IS NO

8     CONFINEMENT OF THE EVIDENCE IF CONTROL NUMBERS ARE NOT ON THE

9     FACE OF A PRINTED DOCUMENT.  YOU DON'T HAND A WITNESS A HARD

10    DRIVE.  YOU HAND A WITNESS A PIECE OF PAPER.  THAT'S OUR

11    CONCERN.

12         THE COURT:  OKAY.  ENOUGH ON THIS ISSUE FOR TODAY.

13    I JUST DON'T WANT YOU TO GET DEEPLY INTO THIS AND SAY THAT

14    YOUR CLIENT HAS INCURRED THOUSANDS OF DOLLARS, AND NOW YOU

15    EXPECT THE COURT TO ALLOCATE.  OKAY.  I WANT TO KNOW IF IT

16    WORKS.  I WANT TO KNOW HOW MUCH TIME IS TAKEN.

17         MS. KASSABIAN:  UNDERSTOOD.  WE WILL RUN A TEST ON

18    A -- ON A ONE SAMPLE MEDIA.  AND WE WILL REPORT TO THE COURT

19    AND TO PERFECT 10 THE RESULTS.  AND IF PERFECT 10 WANTS TO

20    CHALLENGE THOSE RESULTS, THEY'RE OBVIOUSLY WELCOME TO DO SO.

21         THE COURT:  OKAY.  NOW, THAT'S THE END OF THIS

22    ISSUE FOR THE MOMENT.  NOTHING EVER ENDS IN THIS CASE.

23         BUT WE WON'T -- NOW, AM I CORRECT THAT THE ONLY

24    REMAINING ISSUE FOR TODAY IS SPECIFIC REQUESTS FOR PRODUCTION

25    THAT WE HAVEN'T SOMEHOW COVERED ALREADY?

1        MS. KASSABIAN:  THAT AND CONFIDENTIALITY

2   DESIGNATIONS.  THOSE ARE THE TWO REMAINING ISSUES.

3        THE COURT:  OKAY.

4        MR. JANSEN:  THERE'S ONE OTHER ISSUE, YOUR HONOR --

5        THE COURT:  YES.

6        MR. JANSEN:  -- WHICH I THINK WE MAYBE LOOKED OVER.

7    IT HAS TO DO WITH BASICALLY THE FINANCIAL STATEMENTS AGAIN.

8    AND I THINK THIS WAS RAISED IN THE MOVING PAPERS OF GOOGLE,

9   THE JOINT PAPERS AS WELL AS MS. KASSABIAN KIND OF CLARIFIED

10  IT AS EXHIBIT E TO THE DECLARATION SHE FILED A COUPLE OF DAYS

11  AGO ON THE 21ST.

12        AND THIS HAS AFFECTED -- A NUMBER OF FINANCIAL

13  STATEMENTS JUST WERE NEVER PRODUCED AT ALL.  AND I'D JUST

14  LIKE TO GET THE COURT'S GUIDANCE ON HOW --

15        THE COURT:  AND THEY SAY THEY DON'T HAVE THEM.

16        MR. JANSEN:  THEY SAY THEY DON'T HAVE THEM.

17        MR. MAUSNER:  WE'RE GOING TO TRY TO PRODUCE EVERY

18  SINGLE ONE WE HAVE --

19        THE COURT:  OKAY.

20        MR. MAUSNER:  -- REDACTED EXACTLY AS --

21        THE COURT:  OKAY.  WELL --

22        MR. MAUSNER: -- OR UNREDACTED --

23        THE COURT:  -- FOR THE RECORD THEY ARE ORDERED

24  PRODUCED.

25        MR. MAUSNER:  WHAT?

1          THE COURT:  FOR THE RECORD THEY ARE ORDERED

2   PRODUCED.

3          MR. JANSEN:  THANK YOU.

4          THE COURT:  ALL RIGHT.  SO, WE'LL TAKE ABOUT A HALF

5   HOUR LUNCH.  AND WHEN WE COME BACK LET'S TALK IN THIS ORDER:

6   CONFIDENTIALITY, SPECIFIC REQUESTS FOR PRODUCTION.  AND WHAT

7   WAS -- AND THAT WOULD BE IT.

8          MS. KASSABIAN:  THANK YOU.

9          THE COURT:  AND WHAT ARE THE NUMBERS THAT I SHOULD

10  BE LOOKING AT OF THE REQUESTS?

11         MS. KASSABIAN:  FOR THE PRODUCTION ISSUE IT'S PAGES

12  7 THROUGH 21 OF THE JOINT STIPULATION.

13         THE COURT:  OKAY.

14         MS. KASSABIAN:  AND FOR THE DE-DESIGNATION

15  CONFIDENTIALITY ISSUE, IT'S PAGES 91 THROUGH THE END, THROUGH

16  111.  THAT INCLUDES -- THAT PORTION IS JUST --

17         THE COURT:  I DON'T THINK I NEED --

18         MS. KASSABIAN:  -- IT'S ARGUMENT.

19         THE COURT: -- TO REVIEW THAT, BUT.

20         MS. KASSABIAN:  OKAY.

21         THE COURT:  BUT --

22         MS. KASSABIAN:  SO, JUST PAGE 7 THROUGH 21 ON THE

23  REQUESTS.

24         THE COURT:  WELL, LET ME GIVE YOU A PREVIEW.

25         REQUEST 81, YOU KNOW, I'M NOT GOING TO ORDER THAT

1    AT THIS TIME AS I'VE SAID.

2              SAME WITH 87.

3              MR. MAUSNER:  I'M SORRY, YOUR HONOR.  WHAT DID YOU

4    SAY ABOUT --

5              THE COURT:  87, I'M NOT ORDERING ALL DOCUMENTS.

6              LOOKING AHEAD TO 167, I'M NOT INCLINED TO GRANT

7    THAT AT THIS TIME.  YOU KNOW, ALL OF THESE, QUOTE, UNQUOTE,

8    FINANCIAL DOCUMENTS REFER TO LOTS OF THINGS BEYOND THE

9    FINANCIALS THEMSELVES.  I AM NOT INCLINED TO GRANT AT THIS

10   TIME.

11             181, ALL EFFORTS TO INCREASE REVENUES.  I MEAN,

12   THIS IS NOT IN COMPLIANCE WITH WHAT ALL OF US UNDERSTAND

13   JUDGE MATZ WANTS AND WHAT I WANT.

14             182, ALL EFFORTS TO INCREASE PAID MEMBERSHIPS.  NO.

15             SO, WE CAN START AGAIN WHEN I COME BACK WITH 81,

16   BUT THAT'S THE PREVIEW.

17             MR. MAUSNER:  YOUR HONOR --

18             MS. KASSABIAN:  THANK YOU.

19             THE COURT:  YES.

20             MR. MAUSNER:  -- THERE IS ONE DOCUMENT THAT I'D

21   LIKE TO PRESENT RELEVANT TO THE CONFIDENTIALITY.  WOULD YOU

22   LIKE IT NOW --

23             THE COURT:  SURE.

24             MR. MAUSNER:  -- TO LOOK AT OVER THE BREAK.

25             (PAUSE IN PROCEEDINGS.)

1          THE COURT:  AND WHY DON'T YOU TELL ME WHAT THIS IS.

2          MR. MAUSNER:  IT'S A STRING OF EMAILS BETWEEN ME

3    AND MS. HERRICK RELATING TO WHAT -- WHO IS -- WHO IS THE

4    PROBLEM ON THIS CONFIDENTIALITY ISSUE.

5          THEY ARE REFUSING TO TELL US WHAT IS CONFIDENTIAL

6    IN BRIEFS THAT WE FILED FROM THEIR POINT OF VIEW.  WE'VE TOLD

7    THEM VERY CLEARLY WHAT WE BELIEVE IS CONFIDENTIAL.  WE WANT

8    TO FILE REDACTED COPIES.  AND THEY WILL NOT IDENTIFY TO US

9    WHAT THEY THINK HAS TO BE REDACTED.  WE EVEN SENT THEM WHAT

10   WE THINK THEY WOULD WANT REDACTED AND SAID IS THERE ANYTHING

11   ELSE.  AND THEY'VE REFUSED TO TELL US IF THERE'S ANYTHING

12   ELSE TO PREVENT US, I GUESS, FROM FILING REDACTED COPIES.

13         THE COURT:  BUT THAT -- THIS IS NOT YOUR MOTION.

14         MS. KASSABIAN:  NO, IT'S NOT, YOUR HONOR.  THIS IS

15   IRRELEVANT TO TODAY'S HEARING.  AND WE OBJECT.

16         MR. MAUSNER:  WELL, IT'S NOT IRRELEVANT BECAUSE IT

17   SHOWS WHO IS THE PROBLEM ON THIS --

18         THE COURT:  ALL RIGHT.

19         MR. MAUSNER:  -- CONFIDENTIALITY ISSUE.  I MEAN, IT

20   IS THE HEIGHT OF HYPOCRISY WHAT THEY'RE DOING HERE.

21         THE COURT:  ALL RIGHT.  GO GET SOMETHING TO EAT.

22         SO, LET'S SAY 1:30.

23         (LUNCHEON RECESS AT 12:52 P.M. TO 1:35 P.M.)

24         THE CLERK:  THE HONORABLE STEPHEN HILLMAN, UNITED

25   STATES MAGISTRATE JUDGE PRESIDING.

1          THE COURT:  ALL RIGHT.  WHY DON'T WE TURN TO THE

2     RFAS STARTING WITH 81.

3          THE TENTATIVE IS TO EITHER DEFER OR TO DENY IT

4     WITHOUT PREJUDICE.  BUT NOT NOW.

5          ANY COMMENTS?

6          MS. KASSABIAN:  WELL, YOUR HONOR, I GUESS I WOULD

7     JUST SAY THAT ONE OF THE MAIN REASONS WE INCLUDED THIS WAS

8     BECAUSE OF THE IMPROPER REDACTIONS TO THE TAX RETURNS THAT

9     YOUR HONOR HAS ALREADY REMOVED THIS MORNING.  SO, I THINK IN

10    SOME WAYS THIS MIGHT BE KIND OF A MOOT ISSUE SINCE PERFECT 10

11    HAS PRODUCED TAX RETURNS, AND OUR OBJECTION WAS PRIMARILY ON

12    THE REDACTIONS.

13         THE COURT:  WELL, BUT AT SOME POINT FOR TRIAL YOU

14    WOULD WANT ALL OF THIS, SO.

15         MS. KASSABIAN:  YOU MEAN THE TAX RETURNS?

16         THE COURT:  RIGHT.

17         MS. KASSABIAN:  YES.  PERFECT 10 HAS PRODUCED ITS

18    TAX RETURNS I BELIEVE FOR --

19         THE COURT:  CORPORATE EARNINGS REPORTS.  I MEAN --

20         MS. KASSABIAN:  OH, CORPORATE.  RIGHT.  I MEAN, I

21    THINK THAT CERTAINLY ALL DOCUMENTS REGARDING, YOU KNOW,

22    REVENUES OR PROFITS OF THE BUSINESS CERTAINLY ARE RELEVANT TO

23    A CLAIM OF ACTUAL DAMAGES IF PERFECT 10 IS GOING TO CONTINUE

24    TO PRESS THAT SINCE IT'S OUR BELIEF THAT THE COMPANY HAS

25    NEVER HAD A PROFIT.

1          OF COURSE, THERE ARE MANY CASES DISALLOWING LOST

2    PROFITS WHERE A PARTY HAS NEVER OPERATED AT A PROFIT.

3          SO, YOU'RE RIGHT, YOUR HONOR, THAT WE WOULD WANT

4    DOCUMENTS REFLECTING --

5          THE COURT:  ALL RIGHT.  SO, I WILL DEFER RULING ON

6    81 AND 87, 94 --

7          MR. JANSEN:  YOUR HONOR -- YOUR HONOR, CAN I JUST

8    ADDRESS THE PROJECTION ISSUE.

9          NUMBER 87, THE PROJECTIONS, ANY SALES OR REVENUE

10   PROJECTIONS IN ITS BUSINESS PLANS I THINK WOULD BE VERY

11   IMPORTANT FOR EXAMINING DAMAGE ISSUES.

12         IF THERE'S PROJECTIONS IN WHICH --

13         THE COURT:  I FOCUS ON ALL DOCUMENTS.  SO, MAYBE --

14   HAVE YOU RECEIVED ANYTHING?

15         MR. JANSEN:  I HAVE ONE -- WE HAVE ONE SHEET OF

16   PAPER IN OUR FILES WE FOUND.  IT APPEARS TO HAVE BEEN WRITTEN

17   IN 2000 AND -- 1999 OR 2000.  I DON'T KNOW THE CONTEXT OF IT

18   YET, BUT THERE'S ONE SHEET OF PAPER THAT SEEMED TO BE A

19   BUSINESS PLAN, LIKE A THREE-PAGE BUSINESS PLAN OF WHAT

20   PERFECT 10 EXPECTED TO DO IN THE FUTURE.

21         BUT WE NEED TO -- I THINK PERFECT 10 SHOULD BE

22   ORDERED TO PRODUCE ANY SALES OR REVENUE OR PROFIT PROJECTIONS

23   OR BUSINESS PLANS, WHICH WOULD BE ENCOMPASSED WITHIN 87.  BUT

24   IT'S OBVIOUSLY NARROWER BECAUSE NOT ALL DOCUMENTS CONCERNING.

25   TO THE EXTENT THEY HAD PROJECTIONS OR BUSINESS PLANS I THINK

1   WE SHOULD GET THOSE.  AND THAT WOULD BE A DISCRETE SET OF

2   DOCUMENTS.

3           THE COURT:  SO, YOU WOULD SAY SOMETHING LIKE,

4   DOCUMENTS SUFFICIENT TO DELINEATE OR EXPLAIN PERFECT 10'S

5   PROJECTION OF SALES, REVENUE, OR PROFITS, ET CETERA?

6           MR. JANSEN:  DOCUMENTS CONTAINING OR SETTING OUT

7   THEIR SALES, REVENUE, OR PROFIT PROJECTIONS.

8           THE COURT:  SO, YOUR RESPONSE?  YES?

9           MR. MAUSNER:  WE SAID, "WITHOUT WAIVING ANY OF THE

10  FOREGOING OBJECTIONS, PERFECT 10 RESPONDS THAT TO THE EXTENT

11  IT UNDERSTANDS THIS REQUEST, IT WILL PROVIDE NON-PRIVILEGED

12  DOCUMENTS."

13          THE COURT:  OH.  RIGHT.  ACTUALLY, THAT VERBIAGE IN

14  MANY OF PERFECT 10'S RESPONSES IS THE SAME.  LET ME JUST

15  STATE THE OBVIOUS, THAT ANY ALLEGEDLY PRIVILEGED DOCUMENTS

16  MAY BE WITHHELD FOR ANY DOCUMENTS I'VE ORDERED PROVIDED THERE

17  IS A DETAILED PRIVILEGE LOG SERVED NO LATER THAN THE FINAL

18  DAY OF DOCUMENT PRODUCTION.

19          MR. MAUSNER:  WE HAVE AN AGREEMENT WITH THE OTHER

20  SIDE THAT WE DON'T HAVE TO HAVE PRIVILEGE LOGS, YOU KNOW, TO

21  THE EXTENT THAT IT'S SOMETHING THAT'S OBVIOUSLY BETWEEN --

22          THE COURT:  CORRECT.

23          MR. MAUSNER:  -- PERFECT 10 AND ITS ATTORNEYS AND

24  GOOGLE AND ITS ATTORNEYS.

25          MS. KASSABIAN:  I'M NOT SURE THAT'S A COMPLETELY

1   ACCURATE CHARACTERIZATION OF AN AGREEMENT, BUT ROUGHLY

2   SPEAKING --

3          THE COURT:  PRIVILEGE LOGS IF REQUESTED.

4          MS. KASSABIAN:  YEAH.  RIGHT.

5          THE COURT:  OKAY.  PRIVILEGE LOGS IF REQUESTED BY

6   EITHER DEFENDANT SHALL BE SERVED NO LATER THAN THE FINAL DATE

7   OF DOCUMENT PRODUCTION.

8          SO, ON 87, YES, I SEE THAT PERFECT 10 HAS ALREADY

9   AGREED TO PROVIDE DOCUMENTS THAT CAN BE FOUND REASONABLY.

10  SO, THOSE ARE ORDERED PRODUCED.  I'M JUST DEFERRING ANY ORDER

11  FOR ALL DOCUMENTS.

12         94 -- WELL, ARE YOU SEEKING AT THIS POINT ANYTHING

13  MORE THAN WHAT YOU'VE RECEIVED, EITHER PRIOR TO OR TODAY?

14         MS. KASSABIAN:  WELL, YOUR HONOR, IT'S POSSIBLE

15  THAT THE SOURCE DOCUMENTS THAT MR. HERSH AND PERFECT 10 WILL

16  BE PROVIDING MIGHT INCLUDE SOME OF THIS INFORMATION, BUT,

17  OBVIOUSLY, I CAN'T KNOW THAT AT THIS MOMENT.  BUT CERTAINLY

18  JUST, YOU KNOW, ANY SORT OF PRODUCT-BY-PRODUCT BREAKDOWN OF

19  PROFITS AND LOSSES WOULD BE SOMETHING WE'D BE SEEKING, AND WE

20  HAVE NOT YET RECEIVED THOSE MATERIALS AND PRODUCTION.

21         SO, IF IT'S PART OF THE HERSH PRODUCTION, THEN,

22  GREAT.  IF IT'S NOT, THEN, IT'S STILL A LIVE REQUEST.

23         THE COURT:  WELL, AND THE RESPONSE WAS, "PERFECT 10

24  WILL PROVIDE ACCOUNTING STATEMENTS THAT REFLECT EXPENDITURES

25  AS WELL AS REVENUE BY CATEGORY."

1          SO --

2          MS. KASSABIAN:  RIGHT, BUT THAT DOESN'T IDENTIFY

3    PROFITS.  WHAT WE'VE SEEN IS WHAT YOU'VE SEEN IN THE BINDER,

4    WHICH IS SOME --

5          THE COURT:  ALL RIGHT.  WELL, REQUEST -- EXCUSE ME.

6    REQUEST 94 THEN IS GRANTED TO THE EXTENT THAT I HAVE ORDERED

7    PRODUCTION OF MR. -- WHAT'S HIS NAME AGAIN?

8          MS. KASSABIAN:  HERSH.

9          THE COURT:  -- HERSH'S SOURCE DOCUMENTS.  TO THAT

10   DEGREE THE REQUEST IS GRANTED.

11         MS. KASSABIAN:  AND, YOUR HONOR, WOULD THAT INCLUDE

12   ANY MATERIALS THAT MR. HERSH MIGHT NEED TO REQUEST IF PERFECT

13   10 HAS THEM IN THEIR POSSESSION?

14         THE COURT:  YES.

15         ALL RIGHT.  95, WHY DO YOU NEED THIS?

16         MS. KASSABIAN:  SO, OBVIOUSLY, YOU KNOW, PERFECT

17   10'S -- THE THRUST OF THIS CASE HERE IS PERFECT 10'S CLAIM

18   THAT GOOGLE IS RUINING ITS BUSINESS.  AND WE WOULD LIKE TO

19   KNOW WHAT ARE GOOGLE'S PRIMARY REVENUE STREAMS, WHAT ARE ITS

20   LARGEST CUSTOMERS.

21         IF, IN FACT, IT TURNS OUT THAT THOSE CUSTOMER

22   RELATIONSHIPS HAVE FALLEN APART FOR REASONS TOTALLY UNRELATED

23   TO ANYTHING THAT ANY OF THE DEFENDANTS HAVE DONE, WE'RE

24   ENTITLED TO KNOW THAT.  AND WE'RE ENTITLED TO TAKE ANY

25   RELATED THIRD-PARTY DISCOVERY THAT MIGHT BE NECESSARY TO SHOW

1  THE TRUE SOURCE OF ANY LOSSES THAT PERFECT 10 MIGHT HAVE

2  SUFFERED.

3          MR. MAUSNER:  WELL, PERFECT 10'S CUSTOMERS ARE

4  PEOPLE WHO BOUGHT THE MAGAZINE AND PEOPLE WHO SUBSCRIBED TO

5  THE WEBSITE.  YOU KNOW, IT'S NOT LIKE IT HAS LARGE CUSTOMERS.

6          THE COURT:  WELL, THEY'RE INDIVIDUALS I ASSUME.

7          MR. MAUSNER:  THEY'RE WHAT?

8          THE COURT:  I ASSUME THEY'RE INDIVIDUALS.

9          MR. MAUSNER:  YES.

10         THE COURT:  NOT CORPORATIONS.  NEVER KNOW.

11         MS. KASSABIAN:  WELL, I SUPPOSE NEWSSTANDS SALES

12  MIGHT HAVE SOME CORPORATE CUSTOMER RELATIONSHIPS IF PERFECT

13  10 WERE SELLING, YOU KNOW, SEVERAL THOUSAND MAGAZINES TO -- I

14  DON'T KNOW -- AIRPORT LOCATIONS OR SOME 7-11.

15         THE COURT:  WELL, DO YOU HAVE ANY OF THAT

16  INFORMATION SO FAR?

17         MS. KASSABIAN:  NO, ABSOLUTELY NOT.  WE HAVE

18  NOTHING ON CUSTOMER RELATIONSHIPS AT ALL, NO BACK-UP, NO

19  DETAIL, NOT EVEN SUBSCRIPTION INFORMATION.

20         THE COURT:  IF THERE IS, LET'S SAY, A CORPORATE --

21  A CORPORATION INVOLVED, AND THE CORPORATION CEASED TO DO

22  BUSINESS FOR WHATEVER REASON -- YOU KNOW, GRAND CENTRAL

23  STATION WHERE I SAW -- DIDN'T PURCHASE, JUST SAW A PRODUCT.

24  AND, THEN, AFTER 9-11 THE TRAFFIC WENT DOWN, AND THAT KIOSK

25  NO LONGER SELLS PERFECT 10 MAGAZINES.  AREN'T THEY ENTITLED

1   TO KNOW THIS AND FIND OUT WHY THIS PURCHASER IS NO LONGER A

2   PURCHASER.

3            MR. MAUSNER:  THIS IS --

4            THE COURT:  WHAT IF I WOULD LIMIT IT TO -- MAYBE

5   NOT BY MONTH -- BUT YEARLY THE 25 LARGEST CORPORATE CUSTOMERS

6   FOR EACH PRODUCT OR SERVICE FOR THE YEARS IN QUESTION.  THAT

7   CAN'T BE DIFFICULT.

8            MS. KASSABIAN:  THAT WOULD BE ACCEPTABLE TO US,

9   YOUR HONOR.

10           THE COURT:  ALL RIGHT.

11           MR. MAUSNER:  SO, NO INDIVIDUALS --

12           THE COURT:  RIGHT.

13           MR. MAUSNER:  -- JUST CORPORATE CUSTOMERS.  OKAY.

14           THE COURT:  104 --

15           MS. KASSABIAN:  AND I'M SORRY, YOUR HONOR, IF I

16  MIGHT JUST ADD.  JUST THROWING THIS OUT THERE, IN ADDITION TO

17  NEWSSTANDS, THAT MIGHT INCLUDE THINGS LIKE ANY LICENSING

18  ARRANGEMENTS OR WHATEVER A CUSTOMER -- WHATEVER PERFECT 10

19  DEFINES ITS CUSTOMERS AS THAT ARE CORPORATE.

20           THE COURT:  YES.

21           104 -- OKAY.  104 IS ANOTHER ONE WHERE THEY'VE

22  AGREED TO GIVE YOU WHAT THEY COULD FIND.  AND THEY'RE JUST

23  INTERJECTING POTENTIAL PRIVILEGES.

24           SO, CONSISTENT WITH THE EARLIER RULING, I WOULD

25  ORDER THAT SUCH PRODUCTION BE MADE, BUT THAT AT THIS JUNCTURE

1    PERFECT 10 IS NOT REQUIRED TO PROVIDE ALL DOCUMENTS.

2            MS. KASSABIAN:  SO, JUST DOCUMENTS REFLECTING THAT

3    THERE ARE APPROXIMATELY A HUNDRED THOUSAND UNIQUE VISITORS

4    EACH MONTH?

5            THE COURT:  DOCUMENTS SUFFICIENT TO REFLECT, YES.

6            105, I WILL LIMIT IT TO DOCUMENTS SUFFICIENT TO

7    SHOW, ET CETERA.  PERFECT 10 IS DOING THAT ALREADY IT

8    APPEARS.

9            108, DOCUMENTS SUFFICIENT TO SHOW ARE ORDERED

10   PRODUCED.

11           IF ANYONE NEEDS TO SPEAK UP, DO SO.  BUT,

12   OTHERWISE, I'M GOING TO ROLL AHEAD.

13           SAME ORDER AS TO 109.

14           SAME ORDER AS TO 110.

15           SAME ORDER AS TO 111 AND 112, 113.

16           YES?  YOU HAVE A COMMENT ON 112?

17           MR. MAUSNER:  OKAY.  SO, WE GOT 111, 112 AND 113

18   WERE ALL --

19           THE COURT:  NOT 113.  162 -- OH, NO.  YES, 112, ARE

20   ALL THE SAME RULING.

21           MR. MAUSNER:  OKAY.  112.

22           THE COURT:  DOCUMENTS SUFFICIENT TO SHOW.

23           SAME AS TO 162.

24           MR. MAUSNER:  OKAY.  AFTER 112, IT'S 162.  OKAY.

25           THE COURT:  RIGHT.

1          AND, THEN, SAME AS TO 165 AND 166, 167, 168, 169,

2     170, 171 --

3          MS. KASSABIAN:  YOUR HONOR, COULD I JUST ASK THAT

4     171 BE YEARLY AS WELL?

5          THE COURT:  BE WHAT?

6          MS. KASSABIAN:  SIMILAR -- YEARLY.

7          THE COURT:  YEARLY.  OKAY.

8          MS. KASSABIAN:  YOU KNOW, IF THERE ARE ANY REGULAR

9     MARKETING OR ADVERTISING PLAN, JUST KIND OF SIMILAR TO THE

10    BUSINESS PLAN ISSUE.

11         THE COURT:  ALL RIGHT.

12         MS. KASSABIAN:  IN OTHER WORDS, IF THERE ARE

13    MULTIPLE ONES, WE WOULD LIKE TO SEE THEM ALL.

14         THE COURT:  OKAY.  ON A YEARLY BASIS.

15         MS. KASSABIAN:  I MEAN, I'M JUST GUESSING THAT THEY

16    MIGHT BE DONE YEARLY.

17         THE COURT:  OKAY.

18         MS. KASSABIAN:  PERHAPS THEY'RE DONE LESS

19    FREQUENTLY. BUT, IN OTHER WORDS, I DON'T -- I THINK WE

20    SHOULDN'T JUST RECEIVE ONE SAMPLE BUT, RATHER, ANY OF THESE

21    PROJECTION DOCUMENTS THAT THEY MIGHT HAVE CREATED.

22         THE COURT:  ALL RIGHT.

23         173, LIMITED TO DOCUMENTS SUFFICIENT TO SHOW.

24    PERFECT 10 IS ALREADY PRODUCING AND HAS AGREED TO PRODUCE

25    OTHER RESPONSIVE DOCUMENTS.

1          SAME ORDER AS TO 174, DOCUMENTS SUFFICIENT TO SHOW.

2          175, SAME RULING.

3          176, SAME RULING.

4          177, SAME RULING.

5          179, SAME RULING.  ACTUALLY, 179 WOULD BE LIMITED

6     BY WHATEVER I'VE ORDERED THE ACCOUNTANT TO PRODUCE -- AT THIS

7     TIME MR. HERSH.

8          181, DOCUMENTS SUFFICIENT TO SHOW SHALL BE

9     PRODUCED.

10          182, THEY'VE ALREADY AGREED TO PRODUCE WHAT IT

11     INTENDS TO RELY ON AT TRIAL.  I GUESS THAT'S THE SAME WAY AS

12     SAYING DOCUMENTS SUFFICIENT TO PRODUCE.

13          SO, I'LL AGAIN ASK COUNSEL TO PRESENT A CURRENTLY

14     AGREED-UPON ORDER RECITING THOSE RULINGS.

15          AND ALL DOCUMENTS WHICH -- ALL CATEGORIES FOR WHICH

16     I ONLY ORDERED PARTIAL PRODUCTION IS WITHOUT PREJUDICE TO

17     EITHER DEFENDANT SEEKING ALL DOCUMENTS FOR PURPOSES OF TRIAL.

18          NOW, FOR THE RECORD, SHOULD I STATE, MR. JANSEN,

19     WHAT REQUESTS OF YOURS ARE INCLUDED IN THESE RULINGS?  OR IS

20     IT --

21          MR. JANSEN:  I DON'T THINK SO -- IF YOU WOULD LIKE

22     TO --

23          THE COURT:  ALL RIGHT.  SAY IT AGAIN.

24          MR. JANSEN:  IF YOU'D LIKE TO, WE CAN GO THROUGH

25     THOSE, BUT I WOULD SUGGEST IT'S NOT REALLY NECESSARY.

1          THE COURT:  OKAY.  I THINK THEY'RE IN EXHIBIT 1 OF

2     YOUR APPLICATION TO JOIN IN THE ARGUMENT OF GOOGLE.

3          MR. JANSEN:  YES.

4          THE COURT:  ALL RIGHT.  AND WHATEVER LIMITATIONS I

5     APPLIED AS TO GOOGLE APPLY AS TO AMAZON.

6          ALL RIGHT.  THAT LEAVES US -- OR ME -- WITH THE

7     CONFIDENTIALITY ISSUE.  AND AS I UNDERSTAND, THE GIST OF

8     GOOGLE'S ARGUMENT IS THAT IT'S JUST A HEADACHE AND EXPENSE TO

9     BE FILING SO MANY DOCUMENTS UNDER SEAL.  AND IT'S A BURDEN TO

10    ALL INVOLVED, INCLUDING THE COURT.  AND THAT AT LEAST WITH

11    RESPECT TO THE ALLEGEDLY INFRINGING URLS, PERFECT 10 ITSELF

12    FILED THOSE AND THEN CHANGED ITS MIND.  AND THAT URLS BY

13    DEFINITION ARE NOT CONFIDENTIAL.

14         IS THAT IT IN A NUTSHELL?

15         MS. KASSABIAN:  THAT SUMMARIZES IT.

16         THE COURT:  OKAY.

17         MS. KASSABIAN:  THE PROTECTIVE ORDER DEFINES

18    CONFIDENTIAL INFORMATION AS EXCLUDING INFORMATION THAT'S

19    PUBLICLY AVAILABLE.

20         THE COURT:  UH-HUH.

21         MS. KASSABIAN:  AND CERTAINLY FOR EVERYTHING THAT'S

22    BEEN FILED, OR EVERYTHING THAT CAN BE JUST VIEWED BY ANYONE

23    ON THE INTERNET, THAT WOULD BE I THINK EXEMPTED FROM ANY

24    CONFIDENTIALITY --

25         THE COURT:  AND IF I COULD SUMMARIZE PERFECT 10'S

1    VERSION, I THINK THEIR CONCERN IS THAT THERE'S SORT OF A

2    UNIQUE KIND OF CONFIDENTIALITY ISSUE HERE, NOT THAT THE URLS

3    SCATTERED AMONG THE WEB ARE CONFIDENTIAL, BUT, RATHER, THAT

4    AGGREGATING THEM IN A SINGLE PLEADING OR MULTIPLE PLEADINGS

5    IN THIS CASE GIVES THE EVILDOERS AN OPPORTUNITY TO UNDERSTAND

6    WHERE EVERYTHING IS LOCATED SO THEY CAN CREATE EVILDOERS.

7    AND WE'RE NOT TALKING ABOUT -- I'M NOT TALKING ABOUT GOOGLE

8    OR AMAZON, BUT THAT SOME THIRD-PARTY EVILDOER CAN START UP A

9    NEW DAMAGING BUSINESS.

10           MR. MAUSNER:  OR PEOPLE CAN SIMPLY VIEW FOR FREE --

11           THE COURT:  YES.

12           MR. MAUSNER:  -- THE INFRINGING IMAGES BECAUSE

13    THEY'VE BEEN --

14           THE COURT:  RIGHT.

15           MR. MAUSNER:  -- TOLD EXACTLY WHERE THOSE IMAGES ARE

16    LOCATED.

17           THE COURT:  RIGHT, RIGHT.  SO, THAT'S WHERE I SEE

18    THE ISSUE TO BE.

19           MR. MAUSNER:  YES.  NOW, WE TALKED ABOUT THIS IN

20    FRONT OF JUDGE MATZ, AND JUDGE MATZ --

21           THE COURT:  WAIT ONE SECOND.  ARE WE TALKING --

22    I'VE BEEN FOCUSING ON URLS.  ARE THERE OTHER -- IS THERE

23    OTHER CONFIDENTIAL MATERIAL THAT I CAN PULL OUT AND DEAL WITH

24    SEPARATELY, OR IS IT JUST THE URLS?

25           MS. KASSABIAN:  NO, SORT OF THE MORE GLOBAL ISSUE

1   IS THAT PERFECT 10 HAS PRODUCED THESE HARD DRIVES WITH JUST A

2   CONFIDENTIALITY STICKER ON IT AND A COVER LETTER THAT SAYS,

3   YOU KNOW, THERE MAY BE SOME NON-CONFIDENTIAL STUFF IN THERE,

4   BUT TREAT IT ALL AS CONFIDENTIAL AND CALL US IF YOU HAVE ANY

5   QUESTIONS ABOUT WHAT IS OR WHAT IS NOT CONFIDENTIAL.

6           AND THAT SORT OF GLOBAL WHOLESALE OVER-DESIGNATION

7   IS PROHIBITED BY THE PROTECTIVE ORDER.  IT CAUSES, LIKE YOU

8   SAID, ALL KINDS OF HEADACHES FOR THE PARTIES HAVING TO FILE

9   THINGS UNDER SEAL THAT ARE NOT CONFIDENTIAL AT ALL.

10           SO, WHAT OUR MOTION ASKS FOR IS THAT PERFECT 10

11   TELL US WHICH DOCUMENTS ARE APPROPRIATELY DESIGNATED UNDER

12   THE CONFIDENTIALITY -- UNDER THE PROTECTIVE ORDER AND WHICH

13   DOCUMENTS ARE NOT.

14           MR. MAUSNER:  YOUR HONOR, MAY I --

15           THE COURT:  BUT THERE ARE DIFFERENT CATEGORIES OF

16   DOCUMENTS --

17           MS. KASSABIAN:  NO, I THINK --

18           THE COURT: -- PERSONAL INFORMATION OR --

19           MS. KASSABIAN:  NO.  I THINK WHAT YOUR HONOR -- WE

20   DON'T HAVE ANY DEBATE OR DISPUTE WITH PERFECT 10 ABOUT IF

21   THERE ARE SOME SPECIFIC INFORMATION RELATED TO PRIVATE -- YOU

22   KNOW, A PERSON'S PRIVATE INFORMATION.  WE DON'T HAVE ANY

23   ISSUE WITH THAT.

24           WE HAVE TWO ISSUES THAT ARE PRESENTED IN THE

25   MOTION.  ONE IS WHAT I WOULD CALL THE OVER-DESIGNATION ISSUE

1 WHERE PERFECT 10 HAS BASICALLY DESIGNATED ALL OF ITS FIVE

2 MASSIVE HARD DRIVES AS CONFIDENTIAL, THE WHOLE THING, AND

3 SAID, WELL, WE RECOGNIZE THAT MAYBE NOT EVERYTHING ON HERE IS

4 CONFIDENTIAL, BUT JUST CALL US AND WE'LL TELL YOU IF THERE'S

5 A PROBLEM.

6　　　　AND THAT'S JUST NOT WORKABLE IN A CASE THIS LARGE.

7　　　　THEN, THE OTHER ISSUE IS I THINK THE ONE YOUR HONOR

8 IS THINKING OF, WHICH IS TARGETED AT A SPECIFIC SET OF CHARTS

9 THAT WERE ATTACHED TO AN INTERROGATORY RESPONSE.  AND THAT'S

10 KIND OF THE URL ISSUE THAT YOUR HONOR IS THINKING OF, THAT

11 PERFECT 10 HAS DESIGNATED LISTS OF URLS CONFIDENTIAL IN SOME

12 AREAS BUT, YET, HAS PUBLICLY FILED THEM OTHER TIMES.

13　　　　THE COURT:  ALL RIGHT.  WELL, BEFORE I LOOK AT THIS

14 TRANSCRIPT, OR THE PORTION YOU WANT ME TO LOOK AT, LET'S

15 ADDRESS THAT FIRST ISSUE, WHICH IS OVER-DESIGNATION.

16　　　　MR. MAUSNER:  THAT IS ADDRESSED IN THIS TRANSCRIPT

17　--

18　　　　THE COURT:  ALL RIGHT.  ALL RIGHT.

19　　　　MR. MAUSNER:  -- IF YOUR HONOR WOULD LIKE TO LOOK AT

20 IT.

21　　　　THE COURT:  SO, WHAT PAGES?

22　　　　MS. KASSABIAN:  WHAT ARE THEY BEING SHOWN?

23　　　　MR. MAUSNER:  THIS.

24　　　　MS. KASSABIAN:  I'M SORRY, YOUR HONOR.  WE DON'T --

25 WE DON'T HAVE THAT YET.

1          THE COURT:  THIS IS FROM 2008.  ACTUALLY FROM THIS

2    CASE.

3          (PAUSE IN PROCEEDINGS.)

4          MR. MAUSNER:  YOUR HONOR HAS PAGES 39 THROUGH 41

5    AND 51 THROUGH 52.

6          THE COURT:  OKAY.

7          (PAUSE IN PROCEEDINGS.)

8          THE COURT:  OKAY.  BUT THAT ADDRESSES THE ISSUE I

9    WAS ADDRESSING.  NO, IT'S NOT.  IT'S REGARDING DMCA NOTICES

10   THAT HAVE THE URL.

11         THAT'S WHAT YOU DON'T -- THAT'S WHAT YOU WISH TO

12   REMAIN CONFIDENTIAL?

13         MR. MAUSNER:  WELL, ANY COLLECTION OF URLS --

14         THE COURT:  OKAY.

15         MR. MAUSNER: -- WHETHER IT'S IN A NOTICE OR IT'S IN

16   SOME KIND OF SPREADSHEET THAT WE CREATED.

17         THE PROBLEM HERE IS THAT GOOGLE HAS TAKEN OUR DMCA

18   NOTICES AND ACTUALLY SENT THEM TO A WEBSITE CALLED

19   "CHILLINGEFFECTS.ORG," WHICH PUBLISHES THEM.  SO, EVEN WHEN

20   GOOGLE REMOVES A URL, WHAT THEY DO IS THEY SAY -- THEY

21   PROVIDE A LINK TO THE DMCA NOTICE AT CHILLINGEFFECTS.ORG.

22   SO, YOU CAN SEE NOT ONLY THE URL THAT WAS REMOVED BUT EVERY

23   URL THAT PERFECT 10 INCLUDED IN ITS DMCA NOTICE.  IT'S JUST

24   -- IT GIVES INFRINGERS MORE OF A WAY --

25         THE COURT:  WHY ARE THEY -- WHY ARE THEY -- I CAN

1    ASK THEM, BUT WHY DO YOU BELIEVE THEY'RE SENDING THIS TO

2    CHILLINGEFFECTS.ORG?

3            MR. MAUSNER:  WELL, THEY -- I GUESS THEY DON'T

4    BELIEVE THAT INFRINGEMENT ON THE INTERNET SHOULD BE STOPPED.

5    THEY BELIEVE THAT EVERYTHING SHOULD BE FREE ON THE INTERNET.

6    THEY MUST BELIEVE THAT, OKAY, YOU KNOW, MAYBE WE HAVE TO TAKE

7    SOMETHING DOWN UNDER THE DMCA, BUT WE'RE GOING TO PUT -- NOT

8    ONLY SHOW YOU WHERE THAT URL IS BUT EVERY OTHER URL.  YOU

9    KNOW, IT'S PUNITIVE TO THE COPYRIGHT HOLDERS.  IT'S TO

10   DISCOURAGE COPYRIGHT HOLDERS FROM SENDING DMCA NOTICES.

11           AND NOT ONLY PERFECT 10, BUT OTHER COPYRIGHT OWNERS

12   HAVE STATED THAT THIS PRACTICE BY GOOGLE IS A WAY TO TRY TO

13   GET COPYRIGHT HOLDERS TO STOP SENDING DMCA NOTICES BECAUSE,

14   YOU KNOW, MOST OF THE TIME THEY DON'T EVEN TAKE IT DOWN, BUT

15   WHEN THEY DO TAKE IT DOWN, THEN, THEY JUST BASICALLY PUT IT

16   RIGHT BACK UP ON CHILLINGEFFECTS PLUS EVERY SINGLE OTHER URL

17   THAT'S IN THAT NOTICE.

18           THE COURT:  SO, IF I ORDER THAT ALL THIS REMAIN

19   CONFIDENTIAL, THAT PROBLEM WILL BE SOLVED?

20           MR. MAUSNER:  YES.

21           THE COURT:  ALL RIGHT.  AND -- WELL, LET ME HEAR

22   ABOUT -- WHAT IS THIS?

23           MS. KASSABIAN:  I COMPLETELY DISAGREE WITH

24   EVERYTHING THAT MR. MAUSNER JUST SAID, AND HE HAS NO BASIS

25   FOR SPEAKING TO THE INTENT OF GOOGLE IN THAT DERISIVE

1    FASHION.

2            CHILLINGEFFECTS.ORG IS A NON-PROFIT, 501(C)3

3    CORPORATION THAT DOES RESEARCH REGARDING VARIOUS THINGS,

4    INCLUDING THE EFFECTS OF THE DMCA ON THE INTERNET AND THE

5    MEDIA.  IT'S NOT A GOOGLE COMPANY.  IT'S A THIRD PARTY.  I

6    BELIEVE IT'S ASSOCIATED WITH STANFORD, ALTHOUGH I'M NOT

7    POSITIVE ABOUT THAT.

8            ANYWAY, A LOT OF DMCA NOTICES --

9            THE COURT:  IT'S AN ORG; IT'S NOT A COM.  OKAY.

10           MS. KASSABIAN:  IT'S AN ORG, YES.  IT'S A

11   CHARITABLE ORGANIZATION, RESEARCH, THINK TANK, NOT ASSOCIATED

12   WITH GOOGLE.

13           ANYWAY, A LOT OF DMCA NOTICES COME IN TO A VARIETY

14   OF SERVICE PROVIDERS, LIKE GOOGLE, WITHOUT ALL THE NECESSARY

15   INFORMATION TO BE ABLE TO CONTACT THE WEBMASTER THAT'S BEEN

16   ACCUSED OF INFRINGEMENT SO THAT THEY HAVE AN OPPORTUNITY TO

17   SUBMIT A COUNTER NOTICE UNDER THE DMCA.  THEY HAVE THE RIGHT

18   TO DO THAT.  IT MAY BE THAT THEY HAVE A LICENSE TO DISPLAY

19   THAT IMAGE.

20           AND, SO, OFTENTIMES THIRD PARTIES WHOSE URLS HAVE

21   BEEN REMOVED FROM GOOGLE'S SEARCH INDEX, THE ONLY WAY THEY

22   FIND THAT OUT IS BECAUSE WHEN YOU RUN A SEARCH THAT WOULD

23   NORMALLY RETRIEVE THAT RESULT, BUT THAT RESULT HAS BEEN

24   SUPPRESSED FROM THE INDEX BECAUSE OF THE DMCA NOTICE, THERE'S

25   A LINK THAT GOOGLE PROVIDES.

1    YOU CAN CLICK ON THAT LINK, AND IT TAKES YOU TO

2    CHILLING EFFECTS' WEBSITE, WHICH EXPLAINS THIS URL HAS BEEN

3    TAKEN DOWN PURSUANT TO A DMCA NOTICE.

4    AND WE HAVE -- GOOGLE HAS RECEIVED NUMEROUS COUNTER

5    NOTICES TO PERFECT 10'S OWN DMCA NOTICES, WHERE THE

6    COMPLAINANTS SAY, YOU KNOW, I FIRST LEARNED ABOUT THIS

7    BECAUSE OF THE LINK TO CHILLINGEFFECTS THAT SHOWS ME I'VE

8    BEEN ACCUSED OF INFRINGEMENT.  I OBJECT.  I DISAGREE.  HERE'S

9    MY COUNTER NOTICE.  PLEASE INCLUDE MY URL BACK IN THE INDEX.

10    AND, SO, THIS PROCESS VERY MUCH SERVES THE PUBLIC

11    FUNCTION, BOTH IN TERMS OF CHILLING EFFECTS' NEED AND DESIRE

12    TO GATHER INFORMATION FROM A VARIETY OF SERVICE PROVIDERS, TO

13    ANALYZE WHETHER THE DMCA IS WORKING, OR WHETHER IT'S NOT.

14    YOU KNOW, IT'S THEIR OWN RESEARCH --

15    THE COURT:  SORT OF A SLAP, ANTI-SLAP MOTION.

16    (LAUGHTER.)

17    MS. KASSABIAN:  I MEAN, I THINK -- YOU KNOW, I

18    THINK THEY'RE A THINK TANK, AND THEY -- YOU KNOW, THEY HAVE

19    THEIR OWN PURPOSES.

20    BUT, CERTAINLY, FROM GOOGLE'S PERSPECTIVE IT HELPS

21    COUNTER COMPLAINANTS FIND OUT THAT THEY HAD THEIR URLS

22    REMOVED, AND THAT THEY WILL SOMETIMES COME BACK --

23    THE COURT:  OKAY.  ALL RIGHT.  I APPRECIATE THE

24    EXPLANATION.

25    MS. KASSABIAN:  OKAY.

1    THE COURT:  SO, LET'S GO BACK TO --

2    MR. MAUSNER:  YOUR HONOR --

3    THE COURT:  YES.

4    MR. MAUSNER: -- MAY I SAY A COUPLE OF THINGS.

5    FIRST OF ALL, GOOGLE IS ONE OF THE LARGEST

6  CONTRIBUTORS TO CHILLINGEFFECTS.ORG.  WE STATED ON OUR

7  NOTICES THAT THEY WERE CONFIDENTIAL.  THEY SHOULD NOT BE

8  PUBLISHED ON THE INTERNET.

9    SHE SAYS THERE HAVE BEEN NUMEROUS COUNTER NOTICES

10 REGARDING PERFECT 10.

11    HOW MANY?

12    MS. KASSABIAN:  YOU'RE ASKING ME --

13    MR. MAUSNER:  YES.

14    MS. KASSABIAN: -- HOW MANY?  I'D HAVE TO CHECK THE

15 DOCUMENT PRODUCTION.  I THINK WE SUBMITTED SEVERAL DOZEN ON

16 THE DMCA BRIEFING.

17    MR. MAUSNER:  THAT FOUND OUT ABOUT -- HOW MANY

18 FOUND OUT ABOUT IT BECAUSE OF CHILLINGEFFECTS.ORG?

19    MS. KASSABIAN:  I DON'T HAVE THAT NUMBER WITH ME.

20 I DON'T THINK THIS IS APPROPRIATE.

21    THE COURT:  YOU CAN TALK ABOUT THIS LATER.

22    MR. MAUSNER:  IT'S NOT NUMEROUS.

23    THE COURT:  YOU CAN TALK ABOUT THIS LATER.

24    MS. KASSABIAN:  YES.

25    THE COURT:  THE ISSUE IS, FIRST OF ALL, IS PERFECT

1  10 OVER-DESIGNATING.  OVER-DESIGNATING IS -- ONE EXAMPLE OF

2  OVER-DESIGNATING IS RECKLESSLY THROWING A CONFIDENTIALITY

3  LABEL ON DOCUMENTS THAT HAVE NO BASIS FOR THAT DESIGNATION.

4          SO, THERE IS SOME INDICATION OF MAYBE NOT

5  RECKLESSNESS BUT GENEROUS CONFIDENTIALITY AND, PERHAPS,

6  OVERLY GENEROUS CONFIDENTIALITY DESIGNATIONS.  AND THAT IS

7  NOT APPROPRIATE.

8          SO, HOW CAN WE DEAL WITH IT?

9          MR. MAUSNER:  WELL, WE'RE SAYING THAT THESE URLS

10  ARE CONFIDENTIAL.  WE COLLECTED THE URLS.  WE PUT THE

11  COMPILATION OF THE URLS IS CONFIDENTIAL BECAUSE DISCLOSING --

12          THE COURT:  YOU'RE SAYING THE FORMAT, THE FORMAT --

13  THE COLLECTIVE FORMAT ADDS ARTISTIC VALUE.

14          MR. MAUSNER:  IT DOESN'T ADD ARTISTIC VALUE.

15          THE COURT:  NO, IT ADDS A MEANING.

16          MR. MAUSNER:  IT SHOWS -- PUBLISHING IT DAMAGES

17  PERFECT 10.

18          THE COURT:  OKAY.

19          MR. MAUSNER:  BECAUSE IT ALLOWS INFRINGERS TO FALL

20  ON THE INFRINGING WORKS.

21          THE COURT:  RIGHT.  WELL, THAT'S GOT TO BE

22  ARTICULATED.

23          MR. MAUSNER:  THERE'S NOTHING OVER-DESIGNATED ABOUT

24  THAT.

25          THE COURT:  ALL RIGHT.  SO, THAT'S -- THAT'S THE

1  ARGUMENT.

2       MS. KASSABIAN:  SO, I THINK PERFECT 10 IS

3  CONFLATING TWO ISSUES, RIGHT.  THERE ARE TWO COMMUNICATIONS

4  OR TWO SETS OF DOCUMENTS WE'RE TALKING ABOUT.

5       ON THE ONE HAND, UNDER THE DMCA PERFECT 10 AS A

6  COMPLAINANT IS SENDING NOTICES TO GOOGLE.  THAT HAS NOTHING

7  TO DO WITH THE LITIGATION, RIGHT.  THEY'RE JUST SENDING THEM

8  THROUGH THE DMCA CHANNELS TO GOOGLE.

9       IT IS PURSUANT TO THAT PROCESS THAT GOOGLE

10 PROCESSES THOSE NOTICES.  AND PART OF THAT PROCESSING

11 INCLUDES SENDING A -- PUTTING A CHILLING EFFECTS LINK IN THE

12 SEARCH RESULTS SO THAT THE WORLD KNOWS WHY THAT LINK IS GONE.

13      THE COURT:  AND THOSE CANNOT BE CONFIDENTIAL.

14      MS. KASSABIAN:  RIGHT.

15      MR. MAUSNER:  WHAT CAN'T BE --

16      MS. KASSABIAN:  IF I COULD FINISH.

17      MR. MAUSNER: -- OUR NOTICES CAN'T BE CONFIDENTIAL?

18      THE COURT:  YES.  I MEAN, HOW -- WELL, EXPLAIN TO

19 ME HOW YOU MAINTAIN CONFIDENTIALITY FROM THE BEGINNING.

20      MR. MAUSNER:  WE TELL THEM THAT THEY'RE

21 CONFIDENTIAL, THAT WE DO NOT WANT THEM PUBLISHED.

22      THE COURT:  OH.

23      MR. MAUSNER: BECAUSE PUBLISHING -- AND WE HAVE --

24 WE'VE SENT TO THEM --

25      CAN YOU FIND THOSE EMAILS.

1          WE HAVE SENT TO THEM --

2          THE COURT:  WELL, DOES THE LAW ALLOW THAT?  I DON'T

3  KNOW.

4          MS. KASSABIAN:  NO, IT DOES NOT.

5          MR. MAUSNER:  WELL, HOW CAN YOU TAKE SOMETHING THAT

6  IS REQUIRED BY LAW THAT WE SEND IT TO THEM, AND THEN TAKE IT

7  AND PUBLISH IT IN A WAY THAT -- YOU KNOW, UNDER THE DMCA

8  THEY'RE SUPPOSED TO TAKE DOWN INFRINGING URLS.  OKAY.  HOW

9  CAN YOU TAKE IT DOWN AND THEN PUT IT BACK UP PLUS MORE URLS

10  --

11          THE COURT:  BUT THE QUESTION I'M ASKING --

12          MR. MAUSNER:  -- BY PUBLISHING IT.

13          THE COURT:  -- IS DOES THE STATUTE SAY THAT DMCA

14  NOTICES, WHICH REQUEST CONFIDENTIALITY, MUST BE MAINTAINED IN

15  CONFIDENCE?

16          MS. KASSABIAN:  NO, IT DOESN'T, YOUR HONOR.  AND A

17  DMCA NOTICE IS A LEGAL COMPLAINT.  IT IS NOT CONFIDENTIAL.

18  IT CAN'T BE CONFIDENTIAL.  AND THERE'S CERTAINLY NOTHING THAT

19  DMCA STATES THAT REQUIRES CONFIDENTIALITY.

20          BUT I'D LIKE TO GET BACK TO WHAT I WAS TRYING TO

21  SAY BEFORE MR. MAUSNER INTERJECTED.  THERE'S THE DMCA NOTICE

22  PROCEDURE.  AND THEN THERE'S LITIGATION.

23          PERFECT 10 IS ABUSING THE PROTECTIVE ORDER, IS

24  MISUSING IT BY USING IT FOR A NON-LITIGATION PURPOSE.  SO, IN

25  OTHER WORDS IT'S SAYING, HEY, YOU KNOW THOSE NOTICES THAT WE

1    SENT TO YOU UNDER THE DMCA, WE'RE GOING TO STAMP THOSE AS

2    CONFIDENTIAL SO THAT YOU'D BE VIOLATING THE PROTECTIVE ORDER

3    ALLEGEDLY IF YOU FULFILL YOUR NORMAL DMCA PROCESSING

4    PROCEDURE WHERE YOU SEND THE NOTICE TO CHILLING EFFECTS AND

5    INCLUDE A LINK.

6            THAT'S NOT WHAT THIS PROTECTIVE ORDER IS FOR.  A

7    PROTECTIVE ORDER HAS A DEFINITION FOR WHAT'S CONFIDENTIAL,

8    AND THIS ISN'T IT.

9            AND PERFECT 10 IS TRYING TO USE THE PROTECTIVE

10   ORDER WHICH SHOULD ONLY GOVERN LITIGATION ACTIVITIES --

11           THE COURT:  DOES ANYONE HAVE THE PROTECTIVE ORDER?

12           MS. KASSABIAN:  I DO, YOUR HONOR.

13           THE COURT:  BUT WHAT MR. MAUSNER IS ALSO SAYING IS

14   THAT FROM THE OUTSET OF SERVING THE NOTICES, THAT

15   CONFIDENTIALITY WAS REQUESTED, NOT BACKDOOR THROUGH

16   LITIGATION BUT ON THE DAY THEY WERE SERVED.

17           MS. KASSABIAN:  WELL, I DON'T KNOW IF EVERY SINGLE

18   ONE THEY MADE THAT REQUEST.  BUT LIKE I SAID, THIS IS A LEGAL

19   COMPLAINT.  THEY CAN ASK FOR IT, BUT THAT DOES NOT MAKE IT

20   SO.  THERE'S NOTHING IN THE DMCA THAT REQUIRES THIS, THAT

21   DMCA NOTICES NOT BE SHARED WITH THE PUBLIC.  IN FACT, THE

22   PUBLIC HAS A RIGHT TO KNOW WHAT COMPLAINTS ARE BEING MADE AND

23   WHAT REMOVALS ARE TAKING PLACE UNDER THE STATUTE.

24           IF CONGRESS INTENDED DMCA NOTICES TO BE

25   CONFIDENTIAL, IT WOULD BE WRITTEN INTO THE STATUTE.  AND IF

1   IT WERE CONFIDENTIAL, WE COULD NEVER SHARE THOSE COMPLAINTS

2   WITH COUNTER COMPLAINANTS WHO HAVE THE RIGHT TO SUBMIT A

3   COUNTER NOTICE --

4              THE COURT:  I DON'T HAVE TO DECIDE THAT ISSUE --

5              MS. KASSABIAN:  NO, YOU DON'T.

6              THE COURT:  -- TO DECIDE THIS MOTION.  ALL RIGHT.

7              MS. KASSABIAN:  RIGHT.

8              THE COURT:  SO --

9              MS. KASSABIAN:  WE'RE GETTING A LITTLE OFFTRACK

10  HERE.

11             THE COURT:  WELL, I'M LEARNING.

12             MR. MAUSNER:  IF YOUR HONOR WILL LOOK AT THE SCREEN

13  THERE --

14             THE COURT:  YES.

15             MR. MAUSNER:  -- THESE ARE SOME OF THE TIMES THAT

16  WE'VE TOLD GOOGLE NOT TO PUBLISH THE LOCATION OF THE

17  INFRINGING MATERIAL.

18             THE COURT:  I DO RECALL SEEING THAT BEFORE.

19             MR. MAUSNER:  OKAY.  HERE'S ANOTHER ONE.

20             (PAUSE IN PROCEEDINGS.)

21             THE COURT:  OKAY.  AND EVEN IF I AGREE WITH YOU, I

22  CAN'T ORDER THEM NOT TO.  BECAUSE IT WAS MATERIAL THAT WAS

23  NOT -- WE'RE NOT TALKING ABOUT MATERIAL THAT WAS PRODUCED IN

24  LITIGATION.  SO, IF YOU WANT AN INJUNCTION, YOU GO SEE JUDGE

25  MATZ.

1    RIGHT?

2         MR. MAUSNER:  WELL, WE'RE DESIGNATING IT

3    CONFIDENTIAL.  EVERY TIME --

4         THE COURT:  WELL, I'M JUST SAYING --

5         MR. MAUSNER:  YEAH, BUT EVERY TIME IT IS -- EVERY

6    TIME IT'S DISCLOSED IN ANY WAY AT ALL IT'S HARMING PERFECT

7    10.  EVERY TIME ANY LIST OF URLS -- ANYTIME A URL THAT SHOWS

8    WHERE AN INFRINGING IMAGE IS LOCATED IS DISCLOSED BY GOOGLE

9    IN ANY MANNER IT'S HARMING PERFECT 10.

10        THE COURT:  ALL I'M STATING IS THE OBVIOUS, IS THAT

11   IF YOU SEEK TO ENJOIN GOOGLE FROM DOING WHATEVER THEY WANT

12   WITH DMCA NOTICES THAT WERE SERVED ON THEM BEFORE OR AFTER

13   THIS LITIGATION, AND YOU SEEK TO STOP THEM FROM DOING

14   ANYTHING WITH THOSE, NOT PRODUCED THROUGH DISCOVERY, BUT THE

15   ACTUAL NOTICES, THEN, YOU KNOW WHERE TO GO.

16        AS TO WHAT WAS PRODUCED IN DISCOVERY, YES, I'M THE

17   RIGHT PERSON TO DEAL WITH THAT.  SO, LET'S STICK WITH THAT.

18        SO, THE ISSUE THEN IS --

19        MS. KASSABIAN:  ARE THEY PROPERLY DESIGNATED.

20        THE COURT:  ARE THE DMCA NOTICES PROPERLY

21   DESIGNATED AS CONFIDENTIAL, HAVING ALREADY BEEN --

22        MS. KASSABIAN:  FILED.

23        THE COURT: -- SERVED AND -- SERVED OR FILED?  WHAT

24   IS THE PROPER TERMINOLOGY?  FILED?

25        MS. KASSABIAN:  OH, NO, I WAS SAYING THAT THEY'VE

1    ALREADY BEEN FILED BY PERFECT 10 ON ECF.  I MEAN, THEY'RE

2    PUBLICLY AVAILABLE.

3            THE COURT:  OKAY.

4            MS. KASSABIAN:  A LOT OF THESE NOTICES HAVE BEEN

5    FILED WITH THE COURT.  SO, BY DEFINITION, THEY'RE NOT

6    CONFIDENTIAL UNDER THE PROTECTIVE ORDER.

7            THE COURT:  AND, THEN, THE SECOND ISSUE IS THE

8    URLS.  AND I THINK THEY'RE REALLY DISTINCT ISSUES IN TERMS OF

9    CONFIDENTIALITY.

10           MS. KASSABIAN:  THOSE CERTAINLY ARE TWO OF THE

11   ISSUES.  AND, THEN, MORE GENERALLY, YOU KNOW, OUR CONCERN IS

12   THAT, AGAIN, PERFECT 10 JUST PUTS A STICKER ON A WHOLE HARD

13   DRIVE, AND WHEN YOU LOOK AT THAT HARD DRIVE YOU SEE, GOSH, A

14   LOT OF THIS DOESN'T HAVE URLS, DOESN'T APPEAR TO HAVE ANY

15   FINANCIAL INFORMATION.  SOME OF IT IS JUST SCREEN SHOTS FROM

16   THE WEB.  SOME OF IT IS NEWSPAPER ARTICLES.  JUST NOT

17   CONFIDENTIAL STUFF.

18           THE COURT:  NOW, THAT'S WHAT I'D LIKE YOU TO

19   ADDRESS.

20           MR. MAUSNER:  YOU KNOW, THERE HAS TO BE IN AMERICAN

21   COURTS A SMALL PLAINTIFF SHOULD BE ABLE TO SUE A LARGE

22   DEFENDANT WITHOUT BEING DRIVEN OUT OF BUSINESS AND CRUSHED

23   WITH, YOU KNOW, THIS KIND OF ISSUE AFTER ISSUE -- YOU KNOW,

24   NUMBERING PAGES, CONFIDENTIALITY.

25           WE HAVE BEEN VERY COOPERATIVE WITH THEM.  IN THAT

1  EMAIL STRING I THINK YOU WOULD SEE, YOUR HONOR, THAT WHENEVER

2  THEY WANT TO SHOW SOMETHING TO SOMEBODY, AND IT'S NOT -- IT'S

3  NOT HIGHLY -- YOU KNOW, THAT INVOLVED A CASE WHERE THEY

4  WANTED TO SHOW IT TO THEIR EXPERTS AND PEOPLE WHO WORKED IN

5  THE COMPANY AND SO ON.  WE SAID, FINE, DO IT.  THEY JUST

6  ASKED US.  WITHIN AN HOUR I SAID, FINE, SHOW IT TO THEM.

7          IT'S GOING TO BE EXTREMELY BURDENSOME FOR US TO GO

8  THROUGH AND STAMP EACH DOCUMENT "CONFIDENTIAL" OR

9  "NON-CONFIDENTIAL."  IT'S GOING TO BE JUST AS -- YOU KNOW,

10  MORE BURDENSOME THAN PUTTING A NUMBER ON IT.  AND WE JUST

11  CAN'T DO IT.  WE CANNOT DO EVERY --

12          THE COURT:  ALL RIGHT.  LET ME SEE THE PROTECTIVE

13  ORDER.  I APPRECIATE YOUR BEING HONEST AS TO THE DIFFICULTY.

14          MS. KASSABIAN:  I APOLOGIZE, YOUR HONOR.  THERE'S A

15  LITTLE BIT OF HIGHLIGHTING ON THERE, BUT THERE'S NO WRITING

16  OR ANYTHING.

17          THE COURT:  OKAY.

18          MS. KASSABIAN:  OH, NEVER MIND.  WE HAVE A CLEAN

19  COPY.

20          THE COURT:  OKAY.

21          (PAUSE IN PROCEEDINGS.)

22          MR. MAUSNER:  YOUR HONOR, I'D ALSO LIKE TO SHOW

23  YOUR HONOR WHAT GOOGLE HAS DESIGNATED AS CONFIDENTIAL --

24          THE COURT:  OKAY.

25          MR. MAUSNER:  -- MORE SO THAN EVEN PERFECT 10.

1        MS. KASSABIAN:  AND, AGAIN, YOUR HONOR, THAT

2   OBVIOUSLY HAS NOTHING TO DO WITH WHY WE'RE HERE TODAY.  AND

3   IF PERFECT 10 HAS A PROBLEM WITH GOOGLE'S DESIGNATIONS, THEY

4   CAN MEET AND CONFER WITH US AND FILE A MOTION, AND WE'LL DEAL

5   WITH THAT IN DUE COURSE.

6        MR. MAUSNER:  WELL, WE CAN'T DO THAT.  WE CAN'T --

7   WE CAN'T DO AS MANY MOTIONS AND AS MANY LETTERS AND EMAILS AS

8   GOOGLE DOES TO US OBVIOUSLY.

9        THE COURT:  IS THE PROBLEM REALLY WITH THE

10  CONFIDENTIALITY DESIGNATION OR WITH LOCAL RULE 79-3 SEALING.

11        WHERE'S THE PROBLEM?

12        MS. KASSABIAN:  CERTAINLY SEALING IS ONE OF THE

13  BIGGEST RESULTING PROBLEMS WITH PERFECT 10'S

14  OVER-DESIGNATION.  AND WE CITED IN OUR BRIEFING, YOUR HONOR,

15  THE ULLICO CASE.  I'M NOT SURE IF I'M PRONOUNCING THAT RIGHT.

16        THE COURT:  YES.  I KNOW.

17        MS. KASSABIAN:  U-L-L-I-C-O.

18        WE HAVE A VERY SIMILAR SITUATION HERE.  WHEN A

19  PARTY OVER-DESIGNATES, EVERY TIME WE WANT TO FILE A DOCUMENT

20  WITH THE COURT, EVERY TIME WE WANT TO SHOW A DOCUMENT AT A

21  DEPOSITION, EVERY TIME WE WANT TO REVIEW A DOCUMENT FOR

22  WORK-PRODUCT PURPOSES AND POSSIBLY SHOW IT TO OTHERS, WE

23  WOULD HAVE TO PICK UP THE PHONE AND CALL PERFECT 10 AND ASK

24  THEM IF IT'S OKAY.

25        THAT IS NOT HOW THE PROTECTIVE ORDER WORKS.  NOR

1  SHOULD THE COURT'S FILES CONSIST OF A BUNCH OF SEALED

2  DOCUMENTS THAT DON'T NEED TO BE SEALED BECAUSE THERE WAS

3  OVER-DESIGNATION HERE.

4          AND JUST FOR TRANSCRIPT PURPOSES, THAT'S

5  U-L-L-I-C-O, IN RE ULLICO, INC. LITIGATION, 237 FRD 314,

6  DISTRICT OF COLUMBIA 2006.

7          (PAUSE IN PROCEEDINGS.)

8          THE COURT:  WHO ARE THE KIND OF PEOPLE THAT YOU'RE

9  REQUESTING PERMISSION -- YOU'RE FINDING YOURSELF HAVING TO

10  REQUEST PERMISSION?

11          MS. KASSABIAN:  I'LL GIVE YOU A PERFECT EXAMPLE,

12  YOUR HONOR.

13          UNDER THE PROTECTIVE ORDER, IF WE WANT TO SHOW

14  CONFIDENTIAL DOCUMENTS TO, LET'S SAY, A CONSULTING EXPERT,

15  SOMEONE WHO WAS UNDER NO OBLIGATION TO DISCLOSE THEIR

16  IDENTITY TO PERFECT 10 BECAUSE THEY'RE NOT BEING DESIGNATED

17  AS A TESTIFYING EXPERT, IF PERFECT 10 HAS SLAPPED A

18  CONFIDENTIALITY STICKER ON THAT HARD DRIVE, WE CAN'T SHOW

19  THAT EXPERT PAGE 1 WITHOUT SENDING A LETTER TO PERFECT 10

20  ANNOUNCING OUR INTENTIONS.

21          WE SHOULD NOT HAVE TO DO THAT WITH NON-CONFIDENTIAL

22  DOCUMENTS.

23          THE COURT:  OKAY.  AND --

24          MR. MAUSNER:  YOUR HONOR, I DON'T HAVE A COPY OF

25  THE PROTECTIVE ORDER, BUT I THINK THEY CAN SHOW CONFIDENTIAL

1  MATERIALS.

2  THE COURT:  NO, I DON'T -- THAT'S WHAT I'M THINKING

3  -- THIS IS WHAT I'M THINKING OF.  NO, I THINK -- I THINK

4  SHE'S RIGHT.

5  OH, WAIT.  "PERSONS WHO ARE EXPRESSLY RETAINED

6  OR SOUGHT TO BE RETAINED BY A PARTY AS CONSULTANTS

7  OR TESTIFYING EXPERTS."

8  THAT'S AT PAGE 3 AT THE BOTTOM.

9  MS. KASSABIAN:  AND THE SAME ISSUE COMES UP IN

10  DEPOSITIONS.  YOU KNOW, IF WE WANT TO SHOW A DOCUMENT TO A

11  THIRD PARTY, IF PERFECT 10 HAS STAMPED IT CONFIDENTIAL, AND

12  IT'S NOT, THEN, WE CAN'T SHOW THAT DOCUMENT.

13  THE COURT:  WELL, MAYBE -- MAYBE THIS IS THE

14  SOLUTION, THAT I GRANT THE MOTION INSOFAR AS DMCA NOTICES,

15  WHICH WERE SEPARATELY AND INDEPENDENTLY SERVED, FILED,

16  WHATEVER ON THE DEFENDANTS, AND FIND THAT THOSE SHOULD NOT

17  HAVE ANY CONFIDENTIAL DESIGNATION.

18  AND THAT IF PERFECT 10 WISHES TO PROHIBIT

19  DISSEMINATION, THEY CAN PROCEED ACCORDINGLY.

20  BUT AS TO URLS, MAYBE THE SOLUTION IS TO SIMPLY

21  EXPAND THE CATEGORIES OF PERSONS WHO CAN LOOK AT URLS WITHOUT

22  GETTING PERMISSION, WHICH WOULD INCLUDE SOME PEOPLE AT GOOGLE

23  AND AMAZON.

24  I DON'T SEE WHY THAT MATERIAL NEEDS TO BE LIMITED

25  TO OUTSIDE COUNSEL -- OH, HERE, INSIDE COUNSEL IS ALREADY

1  COVERED. OKAY. BUT, YOU KNOW, WITNESSES. ANY WITNESSES CAN

2  BE SHOWN URLS. ANY -- I DON'T KNOW WHETHER THEY'RE

3  CATEGORIES, BUT --

4          MS. KASSABIAN: CONSULTING EXPERTS I GUESS WOULD BE

5  ANOTHER --

6          THE COURT: THAT'S THERE. I MEAN, I DON'T HAVE IT

7  --

8          MS. KASSABIAN: OH, YOU MEAN UNDER -- YES, LET ME

9  SEE.

10          THE COURT: ON PAGE 3 UNDER 5(D) AT THE BOTTOM,

11          "PERSONS WHO ARE EXPRESSLY RETAINED, OR SOUGHT

12          TO BE RETAINED BY A PARTY AS CONSULTANTS OR

13          EXPERTS."

14          DO YOU SEE WHERE I'M LOOKING?

15          MS. KASSABIAN: I DO.

16          (PAUSE IN PROCEEDINGS.)

17          MS. KASSABIAN: SORRY, YOUR HONOR. I'M JUST

18  LOOKING FOR ONE THING.

19          (PAUSE IN PROCEEDINGS.)

20          MR. JANSEN: YOUR HONOR, WHILE MS. KASSABIAN IS

21  LOOKING AT THAT, THERE'S ANOTHER ISSUE WHICH I THINK RELATES

22  TO JUST LARGELY A LOT OF DOCUMENTS THAT WERE PRODUCED THAT

23  CLEARLY COULDN'T HAVE ANY ARGUABLE CONFIDENTIAL NATURE, SUCH

24  AS COPIES OF PERFECT 10 MAGAZINES -- ARTICLES, THINGS LIKE

25  THAT. WE SHOULDN'T HAVE TO RUN THOSE BY THE --

1      THE COURT:  NO, I AGREE.  AND I THINK THAT THOSE

2  EXAMPLES PROBABLY FALL IN THIS JUST LARGE DOCUMENT DUMP WHERE

3  THEY HAVE NOT TAKEN THE TIME TO PULL OUT EXACTLY WHAT IS

4  CONFIDENTIAL AND ISN'T.

5      MR. JANSEN:  ABSENT THEM DESIGNATING IT -- GOING

6  BACK AND ACTUALLY PROPERLY DESIGNATING, THEY JUST PUT A

7  PROTECTIVE ORDER --

8      THE COURT:  WELL, DO YOU HAVE --

9      MR. JANSEN:  -- SOME KIND OF SAFE HARBOR SO WE

10  CAN'T BE SANCTIONED FOR ANY GOOD-FAITH SHOWING --

11      THE COURT:  OKAY.  IF YOU CAN PUT TOGETHER

12  CATEGORIES -- MAGAZINES, WHAT ELSE?

13      MR. JANSEN:  THOSE ARE JUST OFF THE TOP OF MY HEAD.

14

15      THE COURT:  OKAY.

16      MR. JANSEN:  I MEAN, I HAVEN'T GOT A PHOTOGRAPHIC

17  MEMORY OF WHAT'S IN THE DATA.

18      THE COURT:  ALL RIGHT.  I'LL GET BACK TO YOU.  HOLD

19  ON TO THAT THOUGHT.

20      MR. MAUSNER:  THAT IS ABSOLUTELY AGREEABLE TO US.

21      THE COURT:  YEA.

22      ALL RIGHT.  YES?

23      MS. KASSABIAN:  SO, IS YOUR HONOR NOT INCLINED TO

24  HAVE THE DOCUMENTS SEGREGATED BETWEEN WHAT'S ACTUALLY

25  CONFIDENTIAL AND WHAT'S NOT CONFIDENTIAL, OR?

1          THE COURT:  WELL, WHAT I'M TRYING TO DO IS

2   ACCOMMODATE EVERYONE'S REASONABLE INTERESTS.  AND, SO, THE

3   ORDER I'M PUTTING TOGETHER IS AN ORDER THAT GRANTS

4   DEFENDANT'S MOTION AS TO DMCA NOTICES AND EXPANDS THE

5   CATEGORIES OF PERSONS WHO CAN VIEW CONFIDENTIAL MATERIAL

6   BEYOND WHAT IS IN THE CURRENT PROTECTIVE ORDER, SUCH AS, ALL

7   WITNESSES.  AND IF THERE ARE OTHER CATEGORIES THAT YOU CAN

8   GIVE ME --

9          MS. KASSABIAN:  WELL, PERHAPS, ONE -- EXPANDING ON

10  THAT, PERHAPS ANOTHER SOLUTION IS THAT IN ADDITION TO WHAT

11  YOU'VE JUST SAID, WHICH WOULD BE VERY HELPFUL, YOU KNOW,

12  PERFECT 10 HAS REPEATEDLY MADE CLEAR THAT IT DOESN'T OBJECT

13  TO THIS SORT OF INFORMATION BEING FILED WITH THE COURT,

14  WHICH, OF COURSE, IS WHAT THE PROTECTIVE ORDER IS FOR.

15         AND, SO, PERHAPS WE COULD AGREE THAT ANYTHING

16  THAT'S DESIGNATED CONFIDENTIAL, AS OPPOSED TO HIGHLY

17  CONFIDENTIAL, CAN BE FILED WITH THE COURT OR SHOWN TO ANY

18  WITNESS.

19         BUT, OBVIOUSLY, IF IT'S HIGHLY CONFIDENTIAL, THEN,

20  IT HAS TO BE FILED UNDER SEAL.  BECAUSE I THINK THAT THE

21  DOCUMENTS THAT PERFECT 10 IS REALLY CONCERNED ABOUT -- THINGS

22  LIKE ITS FINANCIALS AND WHAT HAVE YOU -- THOSE HAVE ALL BEEN

23  DESIGNATED HIGHLY CONFIDENTIAL.

24         THE COURT:  BUT THEY'VE DESIGNATED THE URLS AS

25  CONFIDENTIAL, AND THEY DON'T WANT THOSE FILED.

1          MS. KASSABIAN:  THEY DO.  THEY'RE OKAY WITH HAVING

2    THEM FILED.  THEY REPRESENTED MANY TIMES THAT THEY DON'T HAVE

3    A PROBLEM WITH THINGS BEING PUBLICLY FILED ON THE ECF SYSTEM.

4      THEY JUST DON'T WANT THEM ON THE INTERNET VIA CHILLING

5    EFFECTS. SO --

6          THE COURT:  IS THAT CORRECT?

7          MR. MAUSNER:  WELL, I THINK -- I THINK WE DO HAVE

8    TO TAKE THE POSITION THAT LISTS OF URLS SHOULD BE FILED

9    BECAUSE SOMEONE ELSE MAY TAKE THEM AND PUT THEM ON THE

10   INTERNET.  SO --

11         THE COURT:  SO, YOU HAVE NOT AGREED AS INDICATED?

12         MR. MAUSNER:  WELL, CAN DR. ZADA SAY SOMETHING?

13         MS. KASSABIAN:  IT'S NOT THAT THEY'VE AGREED, YOUR

14   HONOR.  IT'S THAT THEY TOLD JUDGE MATZ, AND THEY TOLD US, AND

15   THEY TOLD YOUR HONOR IN THE JOINT STIPULATION THAT THEY DON'T

16   HAVE CONCERNS WITH STUFF BEING FILED, THEY JUST DON'T WANT

17   THINGS PUBLISHED ON THE INTERNET.  I MEAN, THAT'S IN THE

18   PAPERS.

19         IF THEY'RE NOW WITHDRAWING THAT REPRESENTATION, I

20   GUESS THAT'S A DIFFERENT ISSUE.

21         BUT I'M NOT SAYING WE'VE AGREED.  I'M SAYING

22   PERFECT 10 HAS REPRESENTED TO THE COURT THAT IT DOESN'T HAVE

23   A PROBLEM WITH THINGS BEING FILED IN THIS LAWSUIT, THE URLS

24   AND OTHER -- THOSE SORTS OF THINGS.  IT JUST HAS A PROBLEM

25   WITH THINGS BEING PUBLISHED ON THE INTERNET.

1             THE COURT:  YES?

2             MR. MAUSNER:  WE DON'T THINK INFRINGERS ARE GOING

3    TO GO ON TO THE ECF SYSTEM AND DOWNLOAD LISTS OF URLS.  BUT

4    WE WANT TO GET AS MUCH PROTECTION AS WE CAN.

5             THE COURT:  OKAY.  WELL, I CERTAINLY CAN ORDER THAT

6    -- I THINK I -- WELL, LET ME ASK IF YOU WOULD AGREE ON

7    BEHALF OF YOUR CLIENTS THAT ANY ECF-FILED DOCUMENTS WILL NOT

8    BE TRANSMITTED TO ANY THIRD-PARTY WEBSITE.

9             DOES THAT SOUND REASONABLE?

10            MS. KASSABIAN:  I GUESS I'M NOT SURE I UNDERSTAND

11   --

12            THE COURT:  SO THAT IF THEY --

13            MS. KASSABIAN:  -- I MEAN, THE ECF SYSTEM IS

14   PUBLICLY AVAILABLE.

15            THE COURT:  WELL, IT'S AVAILABLE TO ANYONE THAT

16   PAYS FOR IT.

17            MS. KASSABIAN:  RIGHT.

18            THE COURT:  SO, THE QUESTION IS, WOULD YOU AGREE

19   THAT YOU NOT BE THE CONDUIT TO THIRD-PARTY WEBSITES WHO MAY

20   HAVE LEGITIMATE OR ILLEGITIMATE INTERESTS IN WHAT IS ON ECF?

21            MS. KASSABIAN:  I MEAN, IT SEEMS A BIT VAGUE AND

22   AMORPHOUS.  I MEAN, THAT COULD INCLUDE, FOR INSTANCE, IF CNN

23   CONTACTED GOOGLE AND SAID, HEY, CAN YOU -- WE HEARD THAT A

24   BIG RULING CAME DOWN, CAN YOU SEND US THE RULING -- I MEAN --

25            THE COURT:  WELL, NO, YOU COULD SAY, THIS IS THE

1    CASE NUMBER.  THAT'S ALL I'M -- YOU CAN GO DO WHAT YOU WANT

2    TO DO.

3            MS. KASSABIAN:  UNDERSTOOD.  BUT I DON'T EVEN THINK

4    THERE'S A SUGGESTION THAT GOOGLE IS DOING THAT, YOU KNOW, AS

5    A COMPANY THAT GOOGLE IS TAKING ECF DOCUMENTS AND SENDING

6    THEM OUT THERE.

7            I MEAN, AS A GENERAL MATTER I UNDERSTAND WHAT YOUR

8    HONOR IS GETTING AT.  IT'S JUST A VERY LARGE COMPANY.  YOU

9    KNOW, TO REPRESENT THAT A 5,000-PLUS PERSON COMPANY IS --

10   YOU'RE NEVER GOING TO SEND A PUBLIC DOCUMENT TO A COMPANY

11   THAT HAS A WEBSITE, THIS MIGHT BE KIND OF HARD TO MANAGE IS

12   ALL.

13           THE COURT:  ALL RIGHT.

14           MR. MAUSNER:  BECAUSE OF THAT I THINK MAYBE THE

15   LISTS OF URLS DO HAVE TO REMAIN CONFIDENTIAL.  JUST TO, YOU

16   KNOW, PREVENT SOMEBODY FROM TAKING THEM AND PUBLISHING THEM

17   ON THE INTERNET.

18           MS. KASSABIAN:  AND, AGAIN, YOUR HONOR, THESE ARE

19   -- I'M NOT SURE WHAT HE MEANS BY URLS, BUT PERFECT 10 HAS

20   VOLUNTARILY PUBLICLY FILED THOUSANDS OF URLS AND DMCA NOTICES

21   AND LISTS OF WEBSITES AND URLS.  IF PERFECT 10 CAN DO IT, WHY

22   CAN'T DEFENDANTS DO IT.

23           THE COURT:  OKAY.  WE'RE ALL TENDING TO CONFLATE

24   THE CONFIDENTIALITY -- THE PROTECTIVE ORDER, EXCUSE ME, AND

25   THE CONFIDENTIALITY ISSUES WITH FILING DOCUMENTS UNDER SEAL.

1    AND WE REALLY NEED TO SEPARATE THOSE.

2          AND, CERTAINLY, FOR MOTIONS THAT ARE MADE BEFORE

3    JUDGE MATZ I'M NOT GOING TO FORECLOSE HIM FROM DOING WHATEVER

4    HE SEES FIT IN THOSE MOTIONS.

5          AND PROBABLY IN TERMS OF SEALING UNDER FILE --

6    FILING UNDER SEAL -- LONG DAY -- FILING UNDER SEAL ANY

7    MOTIONS BEFORE ME, THAT CAN BE ON A MOTION-BY-MOTION BASIS.

8          I'M JUST LOOKING -- THE ISSUE THAT'S TEE'D UP FOR

9    TODAY IS THE OVER-DESIGNATION ISSUE AND THE PROTECTIVE ORDER.

10   SO, THAT'S ALL I REALLY CAN ADDRESS.

11         SO, MY QUESTION THEN IS BACK TO THE DEFENDANTS --

12   BECAUSE I ASSUME YOU'RE BOUND BY THE SAME PROTECTIVE ORDER?

13         MR. JANSEN:  WE ARE, YOUR HONOR.

14         THE COURT:  OKAY.  DO EITHER OF THE DEFENDANTS'

15   COUNSEL HAVE ANY SUGGESTIONS AS TO HOW TO EXPAND THE

16   CATEGORIES OF PERSONS OR ENTITIES THAT CAN LOOK AT

17   CONFIDENTIAL MATERIAL IN ADDITION TO ANY DEPOSITION

18   WITNESSES?

19         MS. KASSABIAN:  AND I GUESS MY -- I'M SORRY.

20   OBVIOUSLY I'M SURE MR. JANSEN HAS THINGS TO SAY TOO, BUT ARE

21   YOU TALKING ABOUT JUST A UNILATERAL MODIFICATION OF THE

22   PROTECTIVE ORDER?

23         BECAUSE OBVIOUSLY WE WOULD OBJECT TO ANY GOOGLE

24   CONFIDENTIAL INFORMATION BEING ABLE TO BE -- YOU KNOW, THAT'S

25   BEEN LEGITIMATELY AND PROPERLY DESIGNATED UNDER THE

1   PROTECTIVE ORDER -- BEING ABLE TO BE SEEN BY OTHERS, FOR

2   INSTANCE, ANY WITNESSES OR WHAT HAVE YOU, WITHOUT FOLLOWING

3   THE REQUIREMENTS OF THE PROTECTIVE ORDER.  SO, I MEAN, IF

4   YOU'RE TALKING ABOUT JUST WITH RESPECT TO PERFECT 10

5   DOCUMENTS, I THINK WE CAN TALK ABOUT THAT.

6        THE COURT:  WELL, NO, I MEAN IF THE ORDER IS

7   AMENDED, IT'S AMENDED AS TO EVERYONE.

8        MS. KASSABIAN:  RIGHT.  AND THAT'S -- WE'RE NOT

9   HERE TO TALK ABOUT WHETHER GOOGLE HAS PROPERLY DESIGNATED OR

10  WHO GETS TO SEE GOOGLE DOCUMENTS.

11       SO, MY CONCERN ABOUT MODIFYING THE PROTECTIVE ORDER

12  IS THAT BY BRINGING THIS MOTION GOOGLE WILL BE LOSING -- AND

13  AMAZON WILL BE LOSING LEGITIMATE PROTECTIONS THAT IT IS

14  ENTITLED TO UNDER THE ORDER.

15       OUR MOTION HAS TO DO WITH PERFECT 10 DESIGNATING

16  THINGS THAT ARE NOT CONFIDENTIAL, THAT ARE, IN FACT, PUBLIC

17  IN NATURE.  AND WE WANT THOSE THINGS TO BE DE-DESIGNATED.

18       AND I FOUND A PORTION OF THE HEARING WHERE PERFECT

19  10 TOLD JUDGE MATZ WE DON'T HAVE A PROBLEM WITH THOSE BEING

20  FILED IN COURT.  WE JUST HAVE A PROBLEM WITH GOOGLE

21  PUBLISHING THE LOCATION OF INFRINGING WEBSITES ON THE

22  INTERNET.

23       AND, SO, IF WE CAN AGREE THAT WITH RESPECT TO

24  ALLEGED INFRINGING URLS, WHETHER THEY'RE IN A DMCA NOTICE, OR

25  IN AN EXHIBIT TO AN INTERROGATORY RESPONSE, OR IN SOME

1 COMPILATION OF SOME KIND, THAT IT'S OKAY FOR THE PARTIES TO

2 FILE THOSE THINGS PUBLICLY AS PERFECT 10 HAS BEEN DOING. BUT

3 THAT'S IT.

4 I GUESS I'M JUST TRYING TO -- YOU KNOW, WE BELIEVE

5 THEY'RE JUST NOT CONFIDENTIAL. BUT IF THERE'S A WAY THAT WE

6 CAN JUST NOT HAVE TO REACH THAT ISSUE BY AGREEING THAT THE

7 PARTIES CAN FILE THEM, THAT WOULD ELIMINATE THE BURDEN --

8 THE COURT: YES. USE BATES STAMP NUMBERS AND NOT

9 URL NUMBERS.

10 MS. KASSABIAN: I'M SORRY?

11 THE COURT: USE BATES STAMPING AND NOT URLS. THAT

12 WOULD PROTECT THEM.

13 MS. KASSABIAN: I'M SORRY. I'M NOT FOLLOWING.

14 THE COURT: IF THEY WERE TO USE BATES STAMPING IN

15 FILINGS AND NOT THE URLS.

16 MR. JANSEN: YOUR HONOR, I AGREE WITH GOOGLE'S

17 COUNSEL. I MEAN, WE'RE BECAUSE -- THE SOLUTION WE'RE TRYING

18 TO COME UP WITH IS A SOLUTION TO THE FACT THAT PERFECT 10,

19 UNLIKE THE DEFENDANTS, DID NOT PAGE BY PAGE DESIGNATE WHICH

20 DOCUMENTS THEY CONSIDERED CONFIDENTIAL. SO, THEY

21 OVER-DESIGNATED EVERYTHING AS CONFIDENTIAL. THAT'S THE

22 PROBLEM WE'RE TRYING TO DEAL WITH, NOT HOW OUR -- THE

23 DEFENDANTS PROPERLY DESIGNATED CONFIDENTIAL DOCUMENTS SHOULD

24 HAVE SOME EXPANDED VIEWERSHIP.

25 AND I THINK THE ISSUES THAT HAVE BEEN IDENTIFIED

1   RIGHT NOW SPECIFICALLY ARE THE DMCA NOTICES THAT PERFECT 10

2   SERVED --

3           THE COURT:  WELL, I'VE RULED ON THAT OR I --

4           MR. JANSEN:  THOSE ARE NOT CONFIDENTIAL, SO.

5           THE COURT:  OKAY.  I NOW AGREE WITH YOU.

6           MR. JANSEN:  OKAY.

7           THE COURT:  AND THE MOTION IS GRANTED.

8           MR. JANSEN:  OKAY.  AND THE URLS -- THE URLS

9   REFERENCED IN THOSE DMCA NOTICES ALSO BY NECESSITY ALSO ARE

10  NOT CONFIDENTIAL BECAUSE THEY'RE PART OF A PUBLIC

11  NON-CONFIDENTIAL DOCUMENT.  THE URLS THEMSELVES ARE NOT

12  CONFIDENTIAL EITHER.  THOSE URLS ARE REFERENCED IN THE DMCA

13  NOTICES.  SO HOW CAN THEY BE CONFIDENTIAL.  THAT'S ANOTHER

14  CATEGORY OF DOCUMENTS.

15          THE THIRD CATEGORY OF DOCUMENTS ARE THINGS WHICH I

16  THINK PERFECT 10 AGREES THERE'S SOME LARGE SET OF DOCUMENTS,

17  WHICH ARE THINGS LIKE PUBLICATIONS --

18          THE COURT:  MAGAZINES, RIGHT.

19          MR. JANSEN: -- PUBLICLY AVAILABLE WEBSITE

20  PHOTOGRAPHS, A WHOLE HOST OF THINGS WHICH WE CAN'T ALL SIT

21  HERE AND CATEGORIZE RIGHT NOW, BUT WHICH I THINK PERFECT 10

22  AGREES ARE IN NO WAY CONFIDENTIAL BUT HAVE BEEN

23  OVER-DESIGNATED.

24          AND I THINK THAT REALLY -- AND YOU ASKED THE

25  QUESTION OF WHETHER THE DEFENSE WOULD BE WILLING TO AGREE

1    THAT THEY WOULD NEVER PASS ON MATERIALS THAT ARE FILED WITH

2    THE COURT UNDER -- YOU KNOW, THAT HAVE URLS IN THEM TO OTHER

3    WEBSITES.  AND I CAN'T IMAGINE WHY AMAZON.COM OR ANY OF ITS

4    EMPLOYEES WOULD DO SO.

5          BUT I AGREE WITH MS. KASSABIAN IT'S VERY HARD TO

6    HEAR THAT QUESTION AND THEN TRY -- AGREE WITH THE CLIENT

7    WITHOUT RUNNING IT BY THE CLIENT AND THEN BE -- JUST THE

8    LARGE NUMBER OF POSSIBLE COMPLIANCE ISSUES WITH THAT.

9          BUT I DO AGREE IT IS SOMEWHAT -- IT IS VERY

10   BURDENSOME TO HAVE US IN A POSITION WHERE BECAUSE OF THE

11   OVER-DESIGNATION PROBLEM WE'RE RESTRICTED IN WHO WE CAN SHOW

12   DOCUMENTS TO WITHOUT GIVING ADVANCE NOTICE TO PERFECT 10.

13         FOR EXAMPLE, WE GOT A FORENSIC ACCOUNTANT, AS I

14   MENTIONED EARLIER, AS A CONSULTANT.  WE HAD TO GIVE NOTICE TO

15   PERFECT 10 OF THAT PERSON.

16         IS THAT AN UNFAIR GAMESMANSHIP ISSUE?  MAYBE IT IS.

17   MAYBE THEY SHOULDN'T REALLY HAVE A RIGHT TO KNOW WHO OUR

18   CONSULTANTS ARE -- AS LONG AS THOSE CONSULTANTS AGREE TO HOLD

19   THE MATERIAL CONFIDENTIAL AND NOT DISSEMINATE IT.

20         SO, I WOULD THINK THAT WE WOULD NEED TO -- IF

21   THEY'RE GOING TO BE ALLOWED TO JUST SIMPLY RELY ON THIS BROAD

22   DESIGNATION, WE NEED TO CARVE OUT CATEGORIES AS TO WHICH THE

23   DEFENDANTS CAN'T BE PENALIZED FOR SHOWING IT TO WITNESSES AT

24   DEPOSITIONS OR CONSULTANTS.

25         MR. MAUSNER:  WE'VE AGREED TO THAT.

1          DR. ZADA WOULD LIKE TO SAY SOMETHING, YOUR HONOR.

2          MR. ZADA:  YOUR HONOR, PERMIT ME FOR SAYING THAT

3  WE'VE TRIED TO MINIMIZE THE DISCOVERY LITIGATION IN THIS CASE

4  BY PRODUCING A MASSIVE AMOUNT OF MATERIAL.  WE'VE PRODUCED

5  APPROXIMATELY 3 MILLION PAGES OF DOCUMENTS.

6          THE OTHER SIDE HAS PRODUCED ABOUT 50,000 PAGES OF

7  DOCUMENTS.  A LOT OF THEM ARE 5, 10 COPIES OF THE SAME NOTICE

8  IN NO PARTICULAR ORDER.

9          AND THE ONE THING THAT I'M CONCERNED ABOUT.  I'M

10  NOT CONCERNED ABOUT THEM SHOWING OUR DOCUMENTS TO THEIR

11  EXPERTS.  WHAT I'M CONCERNED ABOUT IS BEING CRUSHED BY SOME

12  ORDER THAT WE HAVE TO STAMP "CONFIDENTIAL" ON SOME OF THE

13  PAGES -- OR ON THE PAGES.  THAT WILL BE CRUSHING.  YOU KNOW,

14  WE WOULD HOPE THAT THAT WOULD BE AVOIDED.

15          NOW, ONE THING I'D LIKE TO ADD, AND THAT IS, WE

16  THINK THERE'S A BIG DIFFERENCE BETWEEN PUBLISHING SOMETHING

17  IN THE COURT AND PUBLISHING SOMETHING ON CHILLINGEFFECTS.

18          WHEN GOOGLE PUBLISHES OUR DMCA NOTICE THAT I TOOK

19  TWO WEEKS TO CREATE, WHILE I WENT THROUGH THE INTERNET AND

20  FOUND EVERY LOCATION OF INFRINGING PICTURES, AND I MADE THAT

21  INTO A DOCUMENT.  FOR THEM TO PUBLISH THAT IS TO TAKE ALL OF

22  THE TWO WEEKS OF WORK THAT I SPENT LOCATING ALL THAT

23  INFRINGING MATERIAL AND MAKE THE LOCATION OF THAT MATERIAL

24  AVAILABLE TO EVERYONE IN THE WORLD.

25          AND IT COMPLETELY -- IT DESTROYS ANY PURPOSE IN THE

1 DMCA.  IF EVERY DMCA NOTICE THAT SOMEBODY CREATES IS ALLOWED

2 TO BE PUBLISHED ON THE INTERNET SO THAT ALL OF THE PEOPLE CAN

3 GO, AHA, HERE IT IS, HERE IT IS, I CAN FIND THIS MOVIE AT

4 THIS WEBSITE, I CAN FIND THIS SONG AT THIS WEBSITE, IT JUST

5 -- IT DESTROYS THE WHOLE PURPOSE OF THE DMCA, YOUR HONOR.

6         AND I DON'T -- THERE'S CERTAINLY NO --

7         THE COURT:  WHAT I'VE TOLD YOU, AND I'LL NOW TELL

8 YOU AGAIN, I HAVE NO POWER TO ENJOIN ANY SUCH ACTIVITY.

9         DR. ZADA:  BUT MY POINT, YOUR HONOR, IS WE ARE

10 DESIGNATING THESE NOTICES CONFIDENTIAL.  THIS IS A VERY

11 CONFIDENTIAL DOCUMENT TO US, YOUR HONOR, BECAUSE IT'S SHOWING

12 THE LOCATION OF THOUSANDS AND THOUSANDS OF PERFECT 10

13 PICTURES. I SPENT ALL THIS TIME GOING ON THE INTERNET,

14 FINDING ALL THIS STUFF, AND THEN GOOGLE JUST PUBLISHES IT ON

15 THE INTERNET.  THAT'S THE PROBLEM.  WE'VE TOLD THEM IT'S

16 CONFIDENTIAL.  WE DESIGNATED IT CONFIDENTIAL.  THIS IS AN

17 EXAMPLE OF PUBLISHING A DOCUMENT THAT HAS BEEN DESIGNATED

18 CONFIDENTIAL.

19         AND IF I UNDERSTAND YOUR RULING, YOU'RE SAYING THIS

20 IS NOT A CONFIDENTIAL DOCUMENT.  AND I JUST -- EVERYTHING

21 ELSE YOU'VE SAID, YOU KNOW, CARVING OUT THINGS, I LIKE THAT.

22 WE'RE HAPPY TO -- WE'RE HAPPY TO SAY THAT THE MAGAZINE IS NOT

23 CONFIDENTIAL FOR THE PURPOSES OF SHOWING TO EXPERTS, FOR THE

24 PURPOSES OF FILING IN THE COURT.  WE'RE WILLING TO STATE THAT

25 THE ADOBE DOCUMENTS THAT WE PRODUCED ARE NOT CONFIDENTIAL FOR

1    THE PURPOSES OF SHOWING TO EXPERTS OR FILING IN THE COURT.

2              BUT THE ONE THING THAT I FEEL FAIRLY STRONG ABOUT,

3    YOUR HONOR, IS THAT WHEN WE SPEND THE KIND OF TIME THAT WE'VE

4    SPENT TO CREATE THESE DMCA NOTICES AND FIND ALL OF THE

5    LOCATIONS OF THE INFRINGING MATERIAL, IT IS VERY DAMAGING TO

6    US TO HAVE IT PUBLISHED ON THE INTERNET.

7              THE COURT:  BUT AS TO THE DMCA NOTICES, THEY WERE

8    SERVED, FILED, WHATEVER ON THE DEFENDANTS PRIOR TO AND DURING

9    THIS LITIGATION -- UP TO TODAY, I ASSUME, OR RECENTLY, RIGHT?

10             DR. ZADA:  CORRECT.

11             THE COURT: -- AS PART OF YOUR BUSINESS.

12             DR. ZADA:  YEAH, BUT SEE --

13             THE COURT:  OKAY.  SO -- JUST A MINUTE.  JUST A

14   MINUTE.

15             SO -- AM I RIGHT?

16             DR. ZADA:  WELL, YOU'RE RIGHT, BUT WE'RE TRYING TO

17   PROTECT OUR BUSINESS, YOUR HONOR.

18             THE COURT:  RIGHT.  OKAY.  THEN, YOU TALK TO MR.

19   MAUSNER ABOUT GETTING RELIEF FROM JUDGE MATZ AS TO WHAT THE

20   DEFENDANTS MAY OR MAY NOT BE DOING WITH THAT INFORMATION.

21             YOU MAY HAVE A GOOD POINT.  IT'S NOT A DISCOVERY

22   ISSUE.  I'M A LIMITED-PURPOSE GUY.  OKAY.

23             SO, IF THEY'VE BEEN PUBLISHING OR TRANSMITTING DMCA

24   NOTICES TO SOMEONE ELSE CAUSING YOU HARM DURING THE PENDENCY

25   OF THIS LITIGATION, GO FOR IT.

1          YES?

2          MS. KASSABIAN:  SO, YOUR HONOR, JUST TO MOVE

3   FORWARD TO THINGS THAT YOU HAVEN'T YET DECIDED.

4          THE COURT:  YES.

5          MS. KASSABIAN:  I REALLY SEE TWO MAIN LIKELY

6   SOLUTIONS HERE.

7          THE COURT:  YES.

8          MS. KASSABIAN:  ONE IS THAT PERFECT 10 REPRODUCES

9   ITS PRODUCTION IDENTIFYING WHICH FOLDERS AND DOCUMENTS ARE

10  CONFIDENTIAL AND WHICH ARE NOT, WHICH IT SHOULD HAVE DONE IN

11  THE FIRST INSTANCE AND WHICH DEFENDANTS HAVE DONE.

12         AND THE SECOND IS IF PERFECT 10 STIPULATES THAT ANY

13  PARTY CAN FILE ANY DOCUMENT THAT'S NOT DESIGNATED HIGHLY

14  CONFIDENTIAL WITH THE COURT, THAT WOULD AVOID THE SEALING

15  ISSUES.

16         AS FAR AS I UNDERSTAND IT, THE ONLY DOCUMENTS THAT

17  PERFECT 10 REALLY CARES ABOUT NOT BEING --

18         THE COURT:  HIGHLY CONFIDENTIAL.

19         MS. KASSABIAN:  RIGHT.

20         THE COURT:  AND WHERE'S THE DEFINITION OF HIGHLY

21  CONFIDENTIAL?  I WAS LOOKING FOR THAT.

22         MS. KASSABIAN:  SO, YOU KNOW, THEY CAN EITHER

23  REPRODUCE WITH THE RIGHT DESIGNATIONS, DOING IT

24  ELECTRONICALLY, OR CLICKING AND DRAGGING FOLDERS, OR WHAT

25  HAVE YOU.  OR THEY CAN AGREE THAT THE DEFENDANTS ARE NOT --

1    WILL NOT BE -- THEY WILL NOT PURSUE SANCTIONS UNDER THE

2    PROTECTIVE ORDER IF THE DEFENDANTS FILE ANY CONFIDENTIAL OR

3    ARGUABLY DESIGNATED -- CONFIDENTIAL DESIGNATED DOCUMENTS ON

4    THE COURT SYSTEM.

5         THE COURT:  IS THERE A DEFINITION OF HIGHLY

6    CONFIDENTIAL, OR IS IT JUST UP TO DISCRETION?

7         MS. KASSABIAN:  I BELIEVE IT'S PARAGRAPH 14.

8         THE COURT:  RIGHT.  BUT I MEAN THERE'S NO --

9         MS. KASSABIAN:  YES.  I MEAN, THIS WAS BEFORE OUR

10   TIME, BUT IT DOESN'T REALLY CONTAIN --

11        THE COURT:  YES, IT DOESN'T REALLY.

12        HAVE THERE BEEN A LOT OF HIGHLY DESIGNATED --

13   HIGHLY CONFIDENTIAL DESIGNATIONS?

14        MS. KASSABIAN:  I DON'T THINK SO.  I THINK IT'S

15   BEEN FAIRLY LIMITED IN TERMS OF BOTH SIDES' DESIGNATION OF

16   HIGHLY CONFIDENTIAL MATERIALS.

17        THE COURT:  OKAY.

18        MS. KASSABIAN:  SO, YOU KNOW, IF PERFECT 10 DOESN'T

19   WANT TO REPRODUCE WITH ELECTRONIC STAMPS OR SEPARATE

20   CONFIDENTIAL FROM NON-CONFIDENTIAL AND PRODUCE TWO HARD

21   DRIVES, THEN, WE WOULD JUST ASK THAT WE NOT BE SUBJECT TO ANY

22   SANCTIONS IF WE FILE A DOCUMENT THAT CAME OFF THESE

23   CONFIDENTIAL HARD DRIVES WITH THE COURT.

24        THE COURT:  OKAY.

25        MR. MAUSNER:  YOUR HONOR -- YOUR HONOR, CAN WE JUST

1   LIKE TAKE A TWO-MINUTE BREAK?

2          THE COURT:  ALL RIGHT.  I WAS ABOUT TO RULE, BUT GO

3   AHEAD.

4          MR. MAUSNER:  OH, OKAY.  THANK YOU.

5          THE COURT:  NO, IF YOU NEED A RESTROOM BREAK, GO

6   AHEAD.

7          (BRIEF RECESS.)

8          THE COURT:  I WONDER IF EVERYONE COULD LIVE WITH

9   THIS.  THIS IS A TENTATIVE:

10          THAT I AGREE WITH THE MOTION AS TO DMCA NOTICES;

11   THAT I GRANT THE MOTION AS TO URLS.  HOWEVER, ORDER THAT --

12   HOWEVER, I FURTHER ORDER THAT THEY MAY BE USED ONLY FOR

13   PURPOSES OF THIS LITIGATION.

14          THIRDLY, THAT I GRANT THE MOTION AS TO PUBLICATIONS

15   AND ANY OTHER DOCUMENTS WHICH ARE READILY ASCERTAINABLE AS

16   BEING IN THE PUBLIC DOMAIN.  I CAN'T THINK OF ANY EXAMPLES,

17   BUT PUBLICATIONS WOULD BE THE PRIMARY ONE.

18          AND FINALLY PROVIDE THAT EVEN THOUGH I GRANT THE

19   MOTION AS TO THE URLS, I FURTHER ORDER THAT IF THEY ARE -- IF

20   THEY ARE INTENDED TO BE LISTED BY ANY PARTY IN AN AGGREGATE

21   FORM SO THAT NOT JUST ONE OR TWO OR FIVE BUT, YOU KNOW,

22   HUNDREDS OF URLS ARE GOING TO BE LISTED IN PLEADINGS, THEN,

23   PLAINTIFF MAY SEEK A SEALING ORDER AS TO SUCH PLEADINGS.

24          IT'S NOT PERFECT, BUT I'M WONDERING WHETHER I CAN

25   SELL IT TO ANYONE.

1          MS. KASSABIAN:  COULD I JUST CLARIFY, YOUR HONOR,

2     THAT AS TO THE SECOND ISSUE, I ASSUME YOU'RE NOT TALKING

3     ABOUT URLS LISTED IN THE NOTICES BECAUSE THAT WOULD BE

4     COVERED BY ITEM 1.

5          THE COURT:  RIGHT, RIGHT, RIGHT.  YES.

6          MS. KASSABIAN:  YOU'RE TALKING ABOUT OTHER --

7          THE COURT:  YES.

8          MS. KASSABIAN: -- LISTS --

9          THE COURT:  YES.

10         MS. KASSABIAN: -- OF URLS THAT PERFECT 10 --

11         THE COURT:  YES.

12         MS. KASSABIAN: -- MIGHT HAVE ASSEMBLED --

13         THE COURT:  YES.  THANK YOU.

14         MS. KASSABIAN:  -- THAT ARE NOT A DMCA LIST.

15         THE COURT:  RIGHT.

16         MS. KASSABIAN:  OKAY.

17         THE COURT:  SO, THAT'S A PROPOSAL.  I'M NOT SAYING

18    IT'S THE BEST OR THE ONLY.  BUT I JUST THINK THAT WHAT IS OUT

19    THERE IN THE DMCA NOTICES IS OUT THERE.

20         SO, IF YOU WANT TO TALK AMONG YOURSELVES FOR A

21    MOMENT OR REJECT IT NOW.

22         MS. KASSABIAN:  SO, JUST ONE MORE CLARIFICATION,

23    YOUR HONOR, AS TO ITEM 4.  THAT, AGAIN, WOULD BE SUBJECT TO

24    ITEM 1.  SO, IN OTHER WORDS, IF THERE'S AN AGGREGATE LISTING

25    OF URLS THAT CAME RIGHT OUT OF A DMCA NOTICE, THAT WOULD BE

1    COVERED BY ORDER NUMBER 1, WHICH DOES NOT --

2              THE COURT:  RIGHT.

3              MS. KASSABIAN:  -- WHICH DE-DESIGNATES THOSE.

4              THE COURT:  RIGHT.

5              MS. KASSABIAN:  OKAY.

6              MR. MAUSNER:  THIS WOULD BE AGREEABLE TO PERFECT

7    10. AND I ASSUME THIS MEANS THAT PERFECT 10 DOESN'T HAVE TO

8    STAY AND DO ANY STAMPINGS ON ANY PAGES.

9              THE COURT:  RIGHT.

10             MR. MAUSNER:  OKAY.  AND THEN, YOU KNOW, JUST TO

11   CLARIFY, THE BASIS FOR THE RULING ON THE DMCA NOTICES IS THAT

12   INFORMATION HAS ALREADY BEEN DISCLOSED BY GOOGLE TO CHILLING

13   EFFECTS.

14             CORRECT?

15             MS. KASSABIAN:  I DON'T THINK THAT'S -- I OBJECT TO

16   THAT CHARACTERIZATION.

17             THE COURT:  WAIT.  SAY IT AGAIN.

18             MR. MAUSNER:  THE REASON THAT THE DMCA NOTICES --

19             THE COURT:  UH-HUH.

20             MR. MAUSNER:  -- ARE NOT CONFIDENTIAL IS BECAUSE --

21             THE COURT:  NO.  THAT'S NOT MY REASONING.  AND I

22   DON'T KNOW THE LAW ON THIS.  MY REASONING IS THAT WHEN

23   PERFECT 10 SERVED OR FILED THEM, WHATEVER THE STATUTE

24   LANGUAGE IS, SERVED, PROBABLY, THAT WITH URLS NO ONE HAS

25   CITED ME ANY LAW THAT SAYS THOSE ARE NOT IN THE PUBLIC

1    DOMAIN.

2          MR. MAUSNER:  BUT YOU'RE NOT RULING THAT IT WAS

3    PERMISSIBLE FOR GOOGLE TO SEND THOSE NOTICES TO CHILLING

4    EFFECTS?

5          THE COURT:  I HAVE NO OPINION WHATSOEVER.  I

6    WOULDN'T DARE.

7          SO, NOW, MR. JANSEN, DOES THAT WORK FOR YOU --

8          MR. JANSEN:  YOUR HONOR --

9          THE COURT:  MY PROPOSAL?

10         MR. JANSEN:  -- FROM MY PERSPECTIVE IT'S GENERALLY

11   FINE.

12         THE COURT:  OKAY.

13         MR. JANSEN:  I THINK IT'S APPROPRIATE AS TO

14   AMAZON.COM.  THIS IS PRIMARILY GOOGLE'S MOTION.  AND --

15         THE COURT:  OKAY.

16         MR. JANSEN:  -- I WOULD DEFER TO THEM.

17         THE COURT:  ALL RIGHT.

18         MR. JANSEN:  IT'S ACCEPTABLE TO US.

19         THE COURT:  ALL RIGHT.

20         MS. KASSABIAN:  AS I UNDERSTAND YOUR RULING, I

21   THINK THAT WE CAN ABSOLUTELY WORK WITH THAT.  I JUST -- JUST

22   FOR CLARIFICATION, SO, ANYTHING IN A DMCA NOTICE WHERE THE

23   DMCA NOTICE ITSELF IS NOT DESIGNATED CONFIDENTIAL, AND --

24   THAT'S ITEM 1.

25         ITEM 2, IF THERE IS SOME SORT OF LIST OF URLS THAT

1   PERFECT 10 HAS PRODUCED TO US THAT IS NOT PART OF A NOTICE --

2            THE COURT:  WHICH WE THINK THEY HAVE.

3            MS. KASSABIAN:  -- THOSE LISTS CAN ONLY BE USED FOR

4   PURPOSES OF LITIGATION WHICH MEANS IT CAN BE FILED ON ECF.

5            IS THAT RIGHT?

6            THE COURT:  YES.

7            MS. KASSABIAN:  OKAY.  WITHOUT BEING UNDER SEAL.

8            THE COURT:  RIGHT.

9            MS. KASSABIAN:  AND THEN AS TO ITEM 3, ANYTHING

10  THAT WE SEE IN PERFECT 10'S PRODUCTION THAT APPEARS TO BE

11  PUBLIC, EVEN IF THERE IS A STAMP ON THE HARD DRIVE THAT SAYS

12  CONFIDENTIAL, WE CAN CONSIDER THAT DE-DESIGNATED.  AND WE CAN

13  USE OR FILE IT AS A --

14           THE COURT:  WELL, YOU'RE EXPECTED TO USE COMMON

15  SENSE --

16           MS. KASSABIAN:  YES.

17           THE COURT:  -- WHICH IS A MAGAZINE, YES.  I CAN'T

18  THINK OF A -- NO ONE HAS GIVEN ME ANOTHER EXAMPLE.

19           MS. KASSABIAN:  A WEBSITE.

20           THE COURT:  A WEBSITE.

21           MS. KASSABIAN:  PUBLICLY ACCESSIBLE, THAT IS.

22           THE COURT:  YES.  YES.

23           MS. KASSABIAN:  NEWS ARTICLES.

24           MR. MAUSNER:  -- IT WOULDN'T BE WOULD BE INFORMATION

25  REGARDING A MODEL THAT'S DESIGNATED CONFIDENTIAL IF IT'S

1  NEVER BEEN PUBLISHED.

2          THE COURT:  THAT'S COMMON SENSE, TOO.  SO, THERE

3  MAY BE A FEW THAT DON'T FALL --

4          MS. KASSABIAN:  SURE.

5          THE COURT:  -- EASILY IN EITHER CATEGORY.  BUT --

6          MS. KASSABIAN:  LIKE IF THERE WAS A CONTRACT THAT

7  SAID THIS IS CONFIDENTIAL, OBVIOUSLY, THAT WOULDN'T BE

8  SOMETHING THAT APPEARS TO BE IN THE PUBLIC DOMAIN.

9          THE COURT:  RIGHT.  AND YOU CONFER ABOUT THAT AND

10  THEN FILE A MOTION.  OKAY.

11          MS. KASSABIAN:  AND THEN I THINK THE FOURTH ITEM IS

12  KIND OF SUBSUMED WITHIN 1 AND 2 --

13          THE COURT:  RIGHT.

14          MS. KASSABIAN: -- WHICH IS ANY AGGREGATE LISTING OF

15  URLS OTHER THAN DMCA NOTICES, IF THEY'RE FILED, THAT PERFECT

16  10 CAN SEEK A SEALING ORDER IF IT CHOOSES.

17          THE COURT:  RIGHT.

18          MS. KASSABIAN:  OKAY.

19          THE COURT:  ALL RIGHT.  SO, I WOULD AGAIN ASK A

20  JOINTLY PREPARED ORDER ON THAT.

21          SO, THE ONLY ORDER I WILL BE DRAFTING AS TO TODAY'S

22  MOTIONS WILL BE ON THE RFAS.  AND I WILL HAVE THAT RULING

23  HOPEFULLY BY THE END OF THE WEEK.

24          MR. JANSEN:  YOUR HONOR, WITH RESPECT TO THE

25  DOCUMENT REQUESTS, DO YOU WANT COUNSEL TO DRAFT THAT?

1          THE COURT:  YES.

2          MR. JANSEN:  OKAY.

3          THE COURT:  SURE.

4          MR. JANSEN:  AND CAN WE DO SEPARATE ORDERS FOR THE

5    -- BECAUSE FINANCIAL -- JUST TO MOVE ON THE HERSH

6    DEPOSITION, IF WE COULD GET THAT --

7          THE COURT:  THAT'S FINE.

8          MR. JANSEN:  -- ON THE FINANCIALS --

9          THE COURT:  YES.

10         MR. JANSEN:  -- TO YOU AS SOON AS POSSIBLE.

11         THE COURT:  THAT'S FINE.

12         MR. JANSEN:  BECAUSE I THINK YOU GAVE US A TEN-DAY

13   STAY ON --

14         THE COURT:  WELL, I DON'T KNOW.  I MEAN, DO YOU

15   WANT A TEN-DAY STAY ON THAT, OR?

16         MR. MAUSNER:  REGARDING THE SETTLEMENTS --

17         THE COURT:  REGARDING SETTLEMENTS.

18         MR. MAUSNER: -- WE DO NEED TO CONSIDER --

19         THE COURT:  OKAY.

20         MR. MAUSNER:  -- WHETHER WE HAVE TO APPEAL THAT OR

21   NOT.  BUT --

22         THE COURT:  OKAY.  ALL RIGHT.  SO, GET THAT IN

23   EARLY SO THE CLOCK STARTS RUNNING.

24         MR. JANSEN:  YES.

25         MR. MAUSNER:  YES.

1        THE COURT:  OKAY.

2        MR. MAUSNER:  AND I JUST WANT TO CLARIFY --

3        THE COURT:  YES.

4        MR. MAUSNER:  -- THAT WE'RE COMPLYING WITH THE

5   COURT'S ORDER.  AND THAT DOES NOT CONSTITUTE A VIOLATION OF

6   THE PROTECTIVE ORDER IN THE OTHER CASES.

7        THE COURT:  RIGHT.

8        MS. KASSABIAN:  AND DOES THE TEN-DAY STAY, YOUR

9   HONOR -- I ASSUME THAT RUNS FROM TODAY SO THAT WE CAN TRY TO

10  RESOLVE THIS.

11       THE COURT:  WELL, I WAS GOING TO SAY FROM THE DATE

12  THE ORDER IS SIGNED, BUT SINCE IT'S OBVIOUS WHAT THE ORDER

13  IS.

14       MS. KASSABIAN:  YES.  IF IT WERE RUNNING FROM

15  TODAY, THEN, WE MAY STILL BE ABLE TO MAKE OUR OCTOBER 12TH --

16       THE COURT:  IS THAT OKAY?

17       MR. KASSABIAN:  -- HERSH DEPO.

18       THE COURT:  TEN DAYS FROM TODAY -- ASSUMING THE

19  ORDER IS SIGNED.  BUT UNDER THE -- UNDER THE LOCAL RULES THEY

20  STILL HAVE 10 DAYS TO SEEK RECONSIDERATION, BUT.

21       MS. KASSABIAN:  WELL, WE CAN TRY TO GET THE DRAFT

22  PROPOSED ORDER OVER TO PERFECT 10, YOU KNOW, IN THE NEXT

23  PROBABLY I WOULD THINK LESS THAN 48 HOURS.

24       THE COURT:  OKAY.

25       MS. KASSABIAN:  I JUST WANT TO MAKE SURE THAT --

1          THE COURT:  I'LL SAY THAT THE STAY WILL BE 10 DAYS

2    FROM TODAY, ASSUMING THE ORDER IS RECEIVED AND ENTERED BY

3    FRIDAY.

4          MS. KASSABIAN:  OKAY.

5          THE COURT:  YOU KNOW, I DON'T WANT TO GET INTO

6    SUBSTANTIVE DISCUSSIONS.  BUT ARE THERE SUBSTANTIVE

7    DISCUSSIONS AS TO SAMPLING ON INTERROGATORIES AND -- YOU

8    KNOW, INTERROGATORIES 1 AND 3.  I MEAN, HAVE YOU STARTED

9    THOSE DISCUSSIONS, OR --

10          MS. KASSABIAN:  NO.

11          THE COURT:  OKAY.

12          MS. KASSABIAN:  TODAY WE WERE FOCUSED ON THE --

13          THE COURT:  OKAY.

14          MS. KASSABIAN: -- YOU KNOW, MULTIPLE ISSUES.  AND

15    WE HAVE NOT --

16          THE COURT:  OKAY.

17          MS. KASSABIAN: -- MADE PROGRESS ON THAT YET.

18          THE COURT:  OKAY.  BUT YOU KNOW WHERE I AM ON THAT.

19     I MEAN, THAT'S THE WAY -- YOU KNOW, THAT'S THE WAY IT'S

20    GOING.  SO --

21          MR. JANSEN:  YOUR HONOR --

22          THE COURT:  YES.

23          MR. JANSEN: -- I'D LIKE TO HEAR YOUR THOUGHTS A

24    LITTLE BIT MORE ON THAT.  I FEEL IT MAKES SENSE TO HAVE SOME

25    KIND OF REPRESENTATIVE ANSWERS TO INTERROGATORIES LIKE THOSE

1   WITH --

2           THE COURT:  I NEED YOU AT THE MIKE AGAIN.

3           MR. JANSEN:  I THINK IT MAKES SENSE TO HAVE SOME

4   KIND OF REPRESENTATIVE ANSWERS.  THE PROBLEM WE'VE HAD IN

5   THIS CASE, THERE'S BEEN SOME BIG ISSUES THAT WE JUST HAVE NOT

6   REALLY GOTTEN FROM PERFECT 10 EVER, AN UNDER-OATH STATEMENT

7   OF WHAT THEY CLAIM THE INFRINGING CONDUCT IS.  AND EVERY TIME

8   THEY RESPOND TO A NEW SUMMARY -- A SUMMARY JUDGMENT MOTION,

9   SUDDENLY A NEW THEORY COMES OUT OF THE WOODWORK.  THAT'S WHY

10  WE NEED TO GET AN ANSWER THAT EXPLAINS WHAT THEY --

11          THE COURT:  RIGHT.

12          MR. JANSEN: -- THOUGHT THEY COULD --

13          THE COURT:  WERE YOU ON THE CONFERENCE -- YOU WERE

14  ON THE CONFERENCE CALL LAST WEEK.

15          MR. JANSEN:  I WAS.  RIGHT, YOUR HONOR.

16          THE COURT:  YES.

17          MR. JANSEN:  SO, THAT'S ONE KIND OF GLOBAL ISSUE.

18          THE COURT:  YES.

19          MR. JANSEN:  WHICH PROBABLY -- WE CAN PROBABLY WORK

20  OUT --

21          THE COURT:  OH, BY THE WAY, ON THE SETTLEMENT

22  AGREEMENTS --

23          MR. MAUSNER:  YOUR HONOR --

24          MR. JANSEN:  BUT BEFORE I GET --

25          THE COURT:  OH, BY THE WAY ON THE SETTLEMENT

1   AGREEMENTS -- GO BACK TO THE SETTLEMENT AGREEMENTS FOR A

2   MINUTE.  JUST REMEMBER, THAT'S HIGHLY CONFIDENTIAL.

3           MR. JANSEN:  HIGHLY -- SETTLEMENT -- HIGHLY

4   CONFIDENTIAL.

5           THE COURT:  THE SETTLEMENT -- THE SETTLEMENTS,

6   OTHER SETTLEMENTS.  REMEMBER, THAT'S HIGHLY CONFIDENTIAL.

7           MR. MAUSNER:  I THOUGHT IT WAS ATTORNEY'S EYES

8   ONLY, YOUR HONOR.

9           THE COURT:  YES.  THAT'S WHAT I MEAN.  ATTORNEY'S

10  EYES ONLY.

11          MS. KASSABIAN:  I THINK THAT'S THE SAME THING.

12          THE COURT:  YES.  YES.

13          OKAY.  GO AHEAD.

14          MR. JANSEN:  SO, THE OTHER ISSUE I THINK IS ONE

15  WHICH I THINK CERTAINLY THE INTERROGATORIES DO ASK FOR AND

16  IDENTIFY -- IDENTIFICATION OF EVERY WORK THAT THERE'S AN

17  ALLEGED INFRINGEMENT OF AND LINK TO THAT THE COPYRIGHT

18  REGISTRATION AND THE COPYRIGHT MATERIALS THAT IT'S PART OF.

19          AND ONE OF THE ISSUES WE'VE HAD IN PERFECT 10'S

20  PRODUCTION OF DOCUMENTS IS THAT THEY HAVE ABSOLUTELY -- THEIR

21  DOCUMENTS ARE NOT PRODUCED IN ANY WAY SUCH THAT THE COPYRIGHT

22  REGISTRATION, WHICH SHOWS THE DATE THAT THE WORKS WERE

23  REGISTERED, THERE IS NO LINK TO WHAT WORKS WERE REGISTERED ON

24  THAT DATE.  THEIR DOCUMENT PRODUCTION DOESN'T HAVE ANY

25  CORRELATION BETWEEN THE REGISTRATION FORM FILED WITH THE

1  COPYRIGHT OFFICE AND THE SO-CALLED DEPOSIT MATERIALS WHICH

2  ARE THE WORKS THAT WERE REGISTERED.

3          AND THIS IS VERY IMPORTANT --

4          THE COURT:  WELL, I THINK WE'RE TALKING ABOUT THE

5  SAME THING.

6          MR. JANSEN:  PROBABLY.

7          THE COURT:  YES.  I THINK WE'RE TALKING ABOUT

8  SAMPLING.  AND THAT'S CLEARLY WHAT JUDGE MATZ WANTS.  THAT'S

9  CLEARLY WHAT HE DID IMPOSE IN THE MICROSOFT MATTER.  AND

10  THAT'S THE MARCHING ORDERS.

11          SO, THE QUESTION IS, WHAT'S THE PROTOCOL, WHAT'S

12  THE EXPENSE, WHEN CAN IT BE DONE, WHO'S GOING TO DO IT.  AND

13  THIS IS WITHOUT ANY EXPECTATION OF A STIPULATION AS TO

14  EXTRAPOLATION FOR PURPOSES OF TRIAL.  THIS IS FOR THE GOAL OF

15  SUMMARY JUDGMENT OR SETTLEMENT.

16          MR. JANSEN:  BECAUSE I DON'T -- YES, I DON'T

17  BELIEVE THERE IS AN ABILITY TO EXTRAPOLATE.  AND I BELIEVE

18  THAT--

19          THE COURT:  YOU DON'T BELIEVE WHAT?

20          MR. JANSEN:  I THINK -- WE CANNOT, I DON'T THINK,

21  EXTRAPOLATE FOR PURPOSES OF TRIAL.  THAT IS WHATEVER -- I

22  MEAN, SPEAKING FROM AMAZON AND MY CLIENTS, I CAN'T SEE

23  STIPULATING --

24          THE COURT:  WELL, I CAN'T SEE YOU STIPULATING

25  EITHER.

1          MR. JANSEN:  TO ACCEPTING -- TO ACCEPTING A SAMPLE

2    WITHOUT THE ABILITY TO ASK FOR FULL INFORMATION --

3          THE COURT:  I KNOW THAT.

4          MR. JANSEN:  OKAY.  AS LONG AS THAT'S UNDERSTOOD.

5          THE COURT:  THAT WILL -- WE'LL PROBABLY CROSS THAT

6    BRIDGE SOMEDAY, BUT I'M JUST MAKING IT CLEAR THAT FOR NOW NO

7    ONE NEEDS TO WORRY ABOUT THE EXTRAPOLATION ISSUE BECAUSE THAT

8    IS -- THAT WAS NOT ADDRESSED IN THE MICROSOFT PROTOCOL.  IT

9    WAS EXPLICITLY CARVED OUT AS AN ISSUE THAT WAS NOT BEING

10   ADDRESSED. SO --

11         MR. MAUSNER:  AND, YOUR HONOR --

12         THE COURT:  YES.

13         MR. MAUSNER:  -- FOR MR. JANSEN TO SAY HE DOESN'T

14   KNOW WHAT WE'RE CLAIMING IN THIS CASE, WE FILED A SUMMARY

15   JUDGMENT MOTION.  WE FILED IT BACK IN OCTOBER OF LAST YEAR.

16   THEY FILED A SUMMARY JUDGMENT MOTION.  DR. ZADA AND OTHER

17   PEOPLE SUBMITTED -- AND HE SAYS THERE'S NOTHING UNDER OATH.

18   DR. ZADA SUBMITTED A --

19         HOW MANY PAGES?

20         DR. ZADA:  IT WAS --

21         MR. MAUSNER:  YOU KNOW, LIKE, IT WAS MORE THAN 50

22   PAGES CERTAINLY IN THESE MOTIONS DECLARATIONS.  AND IT'S VERY

23   CLEAR -- I MEAN, HE JUST SAYS THE SAME THING OVER AND OVER

24   AGAIN WITH NO SUPPORT.

25         THE COURT:  ALL RIGHT.

1           MR. MAUSNER:  HE KNOWS WHAT THE THEORIES ARE.

2           AND THE LAST THING, YOU KNOW, ON THE COPYRIGHTS FOR

3    HIM TO SAY THE COPYRIGHT CERTIFICATES AREN'T LINKED UP WITH

4    THE DEPOSIT MATERIALS.  THE COPYRIGHT CERTIFICATE SAYS

5    EXACTLY WHAT IT IS.  IT SAYS, PERFECT 10 MAGAZINE, VOLUME

6    III, NUMBER 5.  AND THEN THE MAGAZINE IS ANOTHER BOX.

7           BUT, YOU KNOW, THESE STATEMENTS THAT THEY COME UP

8    WITH ARE JUST SO OUTRAGEOUS, YOU KNOW, I CAN'T EVEN DEAL WITH

9    THEM.

10          MR. JANSEN:  IF YOU'RE WILLING TO LIMIT YOUR CASE

11   TO THE COPYRIGHT REGISTRATIONS THAT SPECIFICALLY IDENTIFY A

12   VOLUME AND AN ISSUE OF A MAGAZINE, WE CAN ACCEPT THAT LIMITED

13   --

14          MR. MAUSNER:  WE'RE NOT.  THE OTHER COPYRIGHT --

15          MR. JANSEN:  I DIDN'T THINK SO, MR. MAUSNER.

16          MR. MAUSNER:  -- IT IDENTIFIES A CD.

17          THE COURT:  OKAY.  YOU MAY WELL NEED --

18          MR. MAUSNER:  IT SAYS THE EXACT CD.

19          THE COURT:  OKAY.  YOU MAY WELL NEED AN I.T.

20   NEUTRAL TO GET YOU GOING ON THIS SAMPLING ISSUE.

21          NOW, A COUPLE MORE HOUSEKEEPING MATTERS.  I AM

22   RETURNING MY MINUTE ORDER IN THE OTHER CASE.  I'M RETURNING

23   THE TRANSCRIPT IN THIS CASE.

24          IT MIGHT BE A GOOD IDEA IF -- DO BOTH SIDES WANT --

25   WELL, DO BOTH SIDES WANT TO FILE THESE EXHIBITS OR --

1          MR. MAUSNER:  YES, YOUR HONOR, WE WOULD VERY MUCH

2     --

3          THE COURT:  -- DEMONSTRATIVE -- OKAY.

4          MR. MAUSNER:  -- LIKE TO FILE THE EXHIBITS.

5          THE COURT:  ALL RIGHT.  SO, THEN, THE BINDER

6     PROVIDED BY PERVEL AND THE HIGHLY CONFIDENTIAL DOCUMENT

7     PROVIDED BY MR. JANSEN AND THE POWERPOINT --

8          WHAT IS IN THIS FOLDER?  I'M SORRY.

9          MS. POBLETE:  THOSE ARE THE SUPPORTING DOCUMENTS OF

10    THE POWERPOINT PRESENTATION.

11         THE COURT:  OKAY.  SO, THOSE SHOULD ALL BE FILED --

12    I DON'T KNOW UNDER SEAL OR WHAT.  AND THIS OTHER SEARCH

13    RESULTS PAGE THAT MR. MAUSNER GAVE ME.  SO, THOSE SHOULD ALL

14    BE PART OF THE RECORD.

15         AND -- ANYTHING ELSE?

16         WELL, WE MADE PROGRESS.  THAT'S GOOD.

17         MS. KASSABIAN:  SO, JUST TO CLARIFY, YOUR HONOR,

18    YOU'RE ASKING US TO TAKE THESE BACK AND FILE THEM, OR ARE YOU

19    ASKING YOUR CLERK TO SUBMIT THEM?

20         THE COURT:  NO.  YOU'LL HAVE TO DO THAT.

21         MS. KASSABIAN:  I'M SORRY?

22         THE COURT:  YOU'LL HAVE TO DO THAT.

23         MS. KASSABIAN: I JUST WANTED TO MAKE SURE.

24         THE COURT:  BUT THERE IS NO URGENCY.

25         MS. KASSABIAN:  OKAY.

1          THE COURT:  ALL RIGHT.  THANK YOU, ALL.

2          MR. JANSEN:  THANK YOU, YOUR HONOR.

3          MS. KASSABIAN:  THANK YOU.

4          MR. MAUSNER:  YOUR HONOR, WE'RE SUPPOSED TO FILE

5  THOSE?  OKAY.

6          THE CLERK:  COURT IS ADJOURNED.

7          (PROCEEDINGS ADJOURNED AT 3:09 P.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3          I CERTIFY THAT THE FOREGOING IS A CORRECT

4   TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

5   PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7

8

9   DOROTHY BABYKIN                        10/2/09

10  _____      _____

11  FEDERALLY CERTIFIED TRANSCRIBER        DATED

12  DOROTHY BABYKIN

13

14

15

16

17

18

19

20

21

22

23

24

25