QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**GOOGLE INC.'S JOINDER IN DEFENDANTS AMAZON.COM, INC. AND ALEXA INTERNET'S *EX PARTE* APPLICATION FOR AN ORDER COMPELLING PERFECT 10, INC. TO AFFIX PRODUCTION NUMBERS TO ITS PRODUCTION AND TO REIMBURSE DEFENDANTS FOR COSTS AND REQUEST FOR A TELEPHONIC CONFERENCE, AND RESPONSE TO PERFECT 10'S OPPOSITION THERETO**<br><br>[Declaration of Thomas Nolan filed concurrently herewith]<br><br>Hon. Stephen J. Hillman<br><br>Date: None Set<br>Time: None Set<br>Place: Courtroom 550<br><br>Discovery Cut-off: None Set<br>Pre-trial Conference: None Set<br>Trial Date: None Set |

01980.51320/3178463.3

GOOGLE INC.'S JOINDER IN AMAZON.COM, INC. AND ALEXA INTERNET'S EX PARTE APPLICATION

Pursuant to Local Rule 7-19, and for all the reasons identified by Amazon.com, Inc. and Alexa Internet, Google Inc. hereby joins in Amazon.com, Inc. and Alexa Internet's *Ex Parte* Application for an Order Compelling Perfect 10, Inc. ("P10") to Affix Production Numbers to its Production and to Reimburse Defendants for Costs and Request for a Telephonic Conference, filed October 29, 2009 (Docket No. 355 in the *Amazon* case) (the "*Ex Parte* Application"). To avoid burdening the Court with unnecessarily repetitive briefing, Google incorporates by reference all arguments and evidence in the *Ex Parte* Application (and supporting papers) as though fully set forth herein.[1] The *Ex Parte* Application should be granted, because P10's Opposition fails to address (let alone refute) the merits of the Application.

Google writes separately here to respond to various inaccuracies in P10's opposition brief, and to address P10's effort to use the *Ex Parte* Application as a vehicle to interject various of its own new and unrelated discovery issues before this Court. P10's arguments are both irrelevant and meritless and should be rejected. Indeed, because P10 failed to meet and confer with Defendants before presenting these issues to the Court, P10 should be sanctioned.

## I. CONTRARY TO P10'S PROTESTATIONS, THE MATTERS PRESENTED IN THE *EX PARTE* APPLICATION ARE URGENT.

As the Court is aware, Google's motion to compel P10 to bates stamp the entirety of its past document production remains pending. However, P10 continues to produce documents to Defendants, including two productions on October 15 and 22, 2009 pertaining to the Court's October 6, 2009 Order compelling P10 to produce various financial and damages-related documents. *See* Declaration of Anthony

---

[1] Google informed Perfect 10 of its intention to file this Joinder and Response on a *ex parte* basis via email at 2:24 p.m. on October 30, 2009. Declaration of Thomas Nolan ("Nolan Decl.") filed concurrently herewith, at ¶ 3.

Malutta in Support of the *Ex Parte* Application (Docket No. 355-3), at ¶¶ 3 & 5. P10 also has been ordered to produce additional financial materials on or before November 9, 2009. *See* October 6, 2009 Order at ¶ 3. All of these document productions are relevant to the upcoming deposition of P10 accountant Bruce Hersh, currently set for **November 19 and 20**. By the *Ex Parte* Application, Amazon (and Google) have asked this Court to, among other things, require Perfect 10 to affix control numbers to these particular document productions, which will be critical to Mr. Hersh's deposition taking place in just over two weeks. Prompt court intervention is now required to (1) ensure that Defendants are able to locate and utilize P10's recently-produced financial documents in time for the Hersh deposition, and (2) put an end to the control-numbering issue on a going-forward basis.

## II. **P10 HAS FAILED TO IDENTIFY ANY REASON WHY IT CANNOT USE THE ADOBE BATES STAMPING FEATURE ON A GOING-FORWARD BASIS.**

Contrary to P10's assertions, this is not simply a rehash of Google's pending motion to compel. Applying control numbers to documents on a going-forward basis is not the same issue as applying control numbers to (and re-producing) P10's entire past production. Perfect 10 has proffered no basis for its refusal to apply control numbers to its document productions on a going-forward basis, using the Adobe bates-stamping feature Google has identified for P10. Indeed, P10 did use the Adobe bates-stamping feature to apply control numbers to a recent production on behalf of one of its employees (the Sheena Chou documents), but not to its other recent productions—and has insisted that it will *not* bates stamp any future productions absent a court order. Nolan Decl., at Ex. A (10/25/09 Email from J. Mausner to T. Nolan). Unfortunately, P10 has made clear that it will not consent to a resolution of this issue, so a court order will be necessary.

Further, the Garcia Declaration P10 submits in opposition to the *Ex Parte* Application does not even mention P10's October 15 and 22 productions, or future P10 productions, which are the subject of the *Ex Parte* Application. Instead, the Garcia Declaration concerns the entirety of P10's past production. And even as to that subject, Mr. Garcia ***does not address*** the issue of how much it would cost P10 to employ the Adobe bates stamping feature. Instead, Mr. Garcia declares to what his company would charge P10 to convert its entire document production to TIFF format, and then bates stamp the TIFF'ed documents.[2] Because P10 has ***not*** submitted a declaration regarding the cost of using the Adobe bates stamping feature on its past or future productions, P10 and its expert Mr. Garcia implicitly confirm that using Adobe would be inexpensive.

### III. **P10'S LATEST HARD DRIVE PRODUCTION IS INDECIPHERABLE AND ANY FINANCIAL DOCUMENTS PRODUCED THEREON ARE BURIED WITHIN THOUSANDS OF PAGES OF SCREENSHOTS**.

Moreover, Perfect 10's October 22 document production, which purportedly contains the financial and damages-related documents P10 was ordered to produce (*see* October 6, 2009 Order) is in fact an 18.2 Gigabyte hard drive containing P10's now-familiar assortment of screenshots of purported search results from various

---

[2] Declaration of Carlos Garcia re: Cost of Bates Numbering Perfect 10's Document Production (Docket No. 356-2), at ¶ 4 ("Our company does such jobs by first converting the entire production to TIFF format to make sure the Bates numbers are the same size, and then converting to Adobe."). Of course, the size of the font of the control numbers being applied to P10's documents is irrelevant, and is merely a new excuse by P10 to avoid using the Adobe Bates stamping feature after Google demonstrated that Perfect 10's cost excuse lacked merit. If affixing larger bates stamps by TIFF'ing its production will cost P10 $250,000 (according to P10's witness Mr. Garcia), and affixing smaller bates stamps using Adobe will cost P10 nothing besides some paralegal processing time, then P10 should opt for (or be ordered to employ) the Adobe method. What matters is that some control numbers (of any size) be affixed to P10's massive and undifferentiated production.

search engines, purported DMCA notices, screenshots of "whois" results, non-searchable scans of certain contracts, a handful of emails, and various other documents spread over dozens of folders and sub-folders. Nolan Decl. ¶ 7. P10 claims it produced these documents as it maintains them in the "usual course of business" (Opposition at 3), but that cannot be true—the lion's share of documents in this production are related to litigation, not any of P10's core businesses. And most importantly, there is no labeled folder indicating that it contains the documents responsive to the October 6 Order (such as "October 6, 2009 Order," "financial documents," "damages-related documents," or something of that nature). *Id.* As a result, Google and Amazon are simply left to search for and guess at which of the thousands of documents produced are, in P10's opinion, responsive to which of the compelled Requests. Since P10 elected to produce the court-ordered financial documents scattered amongst tens of thousands of pages of other documents apparently unrelated to the October 6, 2009 Order, P10 should be required to identify the location of the documents responsive to each Request in that Order.

## IV. **A COURT ORDER IS NECESSARY BECAUSE P10 HAS EFFECTIVELY KILLED THE SECOND PROPOSAL BY DEMANDING MODIFICATIONS THAT WOULD EVISCERATE IT.**

In briefing following the September 22, 2009 hearing on Google's pending discovery motions, and in response to concerns expressed by the Court (and by P10), Google proposed a compromise resolution of Google's Motion to Compel Bates-numbering: namely, that in lieu of bates-numbering its document productions, P10 be required to identify any of its non-bates numbered documents used in this litigation by providing a declaration containing their file path(s) and production date(s) (the "Second Proposal"). Following the Court's expression of a preference for the Second Proposal at the October 9 telephonic conference, Google initiated meet and confer efforts to address P10's only stated concern with it—that P10 not have to provide this information for proposed deposition exhibits five days

in advance of the scheduled depositions.[3] Despite this modification, P10 refused to agree to the Second Proposal, instead raising a host of new excuses and proposing modifications that would render the Second Proposal essentially useless.

First, Perfect 10 insists that the Second Proposal should apply to **all** parties, including Defendants. This demand is illogical and unnecessary, since of course Defendants *have* affixed control numbers to their productions. Nor may P10 shift the burden of identifying P10's own documents onto Defendants—because P10 has steadfastly refused to bates-stamp its production, it must live with the consequences of that election, including the fact that when Defendants use P10's documents in court proceedings, they necessarily will be unstamped.[4]

---

[3] *See* Declaration of Jeffrey Mausner dated October 30, 2009 (Docket No. 356-3) ("Mausner Decl."), Ex. 1 at p.6 (10/9/09 email from Kassabian to Mausner). Specifically, with regard to depositions, Google proposed that Perfect 10 identify non-bates numbered documents at the time they are offered to the witness, either via written declaration containing the file path and production date, or by reading that information into the record. *Id.*

[4] Contrary to P10's insinuations, in this litigation Google has never used a Google-produced document that was not bates-numbered. P10's accusation that Google submitted evidence in support of its DMCA Motions for Summary Judgment that it did not bates-number is in fact a reference to P10's own purported DMCA notices (comprising massive DVDs and hard drives which Perfect 10 sent to Google under the DMCA). Given their volume and the fact that Perfect 10 plainly already had these materials, Google did not re-produce them back to Perfect 10 during discovery (*see* Nolan Decl., at Ex. B (6/3/09 Letter from A. Roberts to J. Mausner)), but Google of course submitted these documents as they were transmitted by P10—without bates stamps. Since these were P10 documents, P10—not Google—is to blame for that lack of bates-stamping. Similarly, Google showed certain P10-produced documents to Perfect 10 employee Sheena Chou during her deposition. Nolan Decl. ¶ 8. These did not bear bates numbers because P10 never affixed them. *Id.* And during its deposition of On Line Creations, Google used certain printouts from On Line Creations' own public website. Again, these were not Google-produced documents.

Second, P10 proposes to modify the Second Proposal to exclude any files included on an "external disk." This would eviscerate the entire point of the Second Proposal, which seeks to provide Defendants and the Court with proof that any proffered P10 documents were indeed produced. The need for identification of documents only *increases* with the number of documents P10 submits in court proceedings. P10's proposed exclusion of "external disks" would be an exception that completely swallows the rule.

Third, Perfect 10 refuses to agree to identify the file path and production date in declaration form. P10 has never given a reason why it could not provide this information in a declaration, and the only apparent reason to resist declaring to this information is to dodge responsibility for its accuracy. Without a sworn statement, neither the Court nor Google can be sure that the documents are properly identified.[5]

Because P10 has made clear that it will not agree to the Second Proposal, a Court order will be necessary in the event the Court maintains its preference to proceed with the Second Proposal.

## V. **P10'S ATTEMPT TO INTERJECT NEW DISCOVERY ISSUES ABOUT WHICH IT HAS NOT COMPLETED MEET AND CONFER SHOULD BE REJECTED, AND SANCTIONS SHOULD BE IMPOSED.**

In its opposition to the *Ex Parte* Application concerning the issue of P10's recent discovery failures, P10 makes several unsubstantiated accusations regarding Google's discovery conduct in this case. In addition to being inappropriate in the context of opposing an *ex parte* application in a different case, these accusations (1) have not been the subject of proper meet and confer efforts, and (2) are false.

---

[5] Perfect 10 claims that a portion of Google's document production it refers to as Google's "DMCA log" is "unsearchable." This is false. Google's electronic document production, including the documents P10 appears to be referring to as DMCA logs, have been produced in a text-searchable format. Nolan Decl. ¶ 6.

First, P10 submits a meet and confer letter it sent Google just over a week ago, in which it makes conclusory, unsubstantiated claims that Google has not produced unspecified documents. *See* Mausner Decl., Ex. 2. As can be seen, P10's letter fails to identify even a single allegedly "missing" document or provide any information Google could use to investigate P10's unsupported accusations. Google is in the process of meeting and conferring with P10 to seek the factual basis for P10's accusations, so that Google may investigate and respond to them. Nolan Decl. ¶ 4. Until that process is complete, P10's attempt to raise these purported issues now, in this context, is premature and should be rejected out of hand.

Second, P10's opposition references six of its Document Requests (Nos. 342-47) and claims that Google's document production was insufficient. Opp. at 6. P10 has never even *mentioned* these particular document requests to Google, much less requested to meet-and-confer under Local Rule 37-1 regarding Google's responses thereto. Nolan Decl. ¶ 5.

P10 takes the position that these and other of its purported discovery issues are so important that P10 should not be required to engage in "unnecessary motion practice" to obtain an order on them. Opp. at 8. What P10 describes as "unnecessary motion practice" might fairly also be called "compliance with Local Rules and court orders." P10 may not jettison the Local Rules governing discovery disputes by interjecting these new (and wholly distinct) issues into its opposition to the *Ex Parte* Application. Indeed, it was P10's inclusion of extraneous discovery issues from the *Google* case in its opposition to Amazon's *Ex Parte* Application that forced Google to have to submit this brief in order to respond to them.

Unfortunately, this is not the first time P10 has attempted to sandbag Defendants and waste the Court's time with new discovery issues that were not previously the subject of meet and confer. For example, at the September 22, 2009 hearing on Google's motions to compel, P10 attempted to raise and argue certain of its own new discovery issues it had not first raised with Google. Nolan Decl., Ex. C

| 1 | (9/22/09 Hearing Transcript, at 147:22-148:15). The Court rightfully declined to |
|---|---|
| 2 | hear P10's improperly-raised issues at that time. *Id*. Similarly, on November 14, |
| 3 | 2008, P10 sought to place significant limits on Google's discovery efforts via a |
| 4 | purported "Joint Letter" faxed to the Court. Nolan Decl., Ex. D. Further, in its |
| 5 | opposition to an earlier *Ex Parte* application submitted by the Amazon Defendants, |
| 6 | Perfect 10 improperly requested a complete stay on discovery in both the *Google* |
| 7 | and *Amazon* cases, pending a ruling on its own summary judgment motion in the |
| 8 | *Amazon* case, without first meeting and conferring with Google on the issue. Nolan |
| 9 | Decl., at Ex. E (Perfect 10's Response to Defendants Amazon.com and Alexa |
| 10 | Internet's Ex Parte Application to Continue Summary Judgment Filing Deadline, at |
| 11 | p.6). Indeed, P10 has even used this improper tactic as a litigation threat. For |
| 12 | example, in its rejection of Google's Second Proposal discussed above, P10 |
| 13 | threatened to use a further telephone conference with this Court regarding the bates |
| 14 | stamping issue as a pretext to "bring up other discovery issues at that time, including |
| 15 | Google's refusal to identify its AdSense and hosting clients," again without properly |
| 16 | identifying or seeking to meet-and-confer with Google about such "issues" in |
| 17 | advance. Mausner Decl, Ex. 1 at p.1 (10/25/09 Email from J. Mausner to T. Nolan). |
| 18 | P10's failure to comply with its meet and confer obligations not only dooms |
| 19 | its "requests" from the start, it also can—and should—be the basis for sanctions |
| 20 | against P10 and/or its counsel. *See* Local Rule 37-4 ("The failure of any counsel to |
| 21 | comply with or cooperate in the foregoing procedures may result in the imposition |
| 22 | of sanctions."). P10's pattern of disregard for the Rules shows no signs of abating. |
| 23 | P10 should be sanctioned in the amount of $1,000, to be paid to the Court, to put an |
| 24 | end to these abuses of the Court's time and resources. |
| 25 | /// |
| 26 | /// |
| 27 | /// |
| 28 | /// |

| | |
|---|---|
| DATED: November 2, 2009 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP |
| | By  *Rachel Herrick Kassabian* |
| | Rachel Herrick Kassabian |
| | Attorneys for Defendant GOOGLE INC. |