Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Email: Jeff@mausnerlaw.com
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773

Attorneys for Plaintiff Perfect 10, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>    Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., et al.<br><br>    Defendants. | Case No. CV 04-9484 AHM (SHx)<br><br>Consolidated with Case No. CV 05-4753 AHM (SHx)<br><br>**PERFECT 10'S MEMORANDUM IN SUPPORT OF ITS PROPOSED ORDER REGARDING THE IDENTIFICATION OF CERTAIN DOCUMENTS AND REPLY TO GOOGLE INC.'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS JOINDER IN AMAZON AND ALEXA'S EX PARTE APPLICATION**<br><br>**Before Judge Stephen J. Hillman**<br><br>Date:  None Set (taken under submission)<br>Time:  None Set<br>Place:  Courtroom of Judge Hillman<br>Discovery Cut-Off Date: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set<br><br>**[PROPOSED ORDER SUBMITTED CONCURRENTLY HEREWITH]** |

# **TABLE OF CONTENTS**

I. INTRODUCTION....................................................................................1

   A. EXPLANATION OF THE ORGANIZATION OF PERFECT
      10'S EXTERNAL HARD DRIVE .................................................3

II. BACKGROUND AND PROCEDURAL HISTORY...............................7

III. UNDER THE FEDERAL RULES, A PARTY HAS THE
OPTION OF PRODUCING DOCUMENTS AS THEY ARE
KEPT IN THE USUAL COURSE OF BUSINESS, AND THAT
IS WHAT PERFECT 10 HAS DONE HERE............................................8

IV. PERFECT 10'S PRODUCTIONS. ............................................................9

   A. Most Of Perfect 10's Productions Consist Of A) DMCA Notices and
      B) Evidence Showing That Defendants Did Not Remove
      Infringements. ...............................................................................10

   B. Perfect 10's Financial Documents Contain Many Responsive
      Documents. ...................................................................................11

   C. Summary Of Perfect 10's Most Recent Hard Drive Production. .......11

        1. Amazon. ................................................................................12

        2. Google....................................................................................12

        3. Usenet ....................................................................................12

        4. Efforts Contracts. ..................................................................12

        5. Chou Production. ..................................................................13

        6. DMCA misc. .........................................................................13

V. DEFENDANTS COULD HAVE VERY EASILY FOUND THE
DOCUMENTS IF THEY HAD WISHED TO DO SO. ..........................13

VI. PERFECT 10'S PROPOSAL..................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Mattel Inc. v. Walking Mountain Productions,* 353 F.3d 792
(9th Cir. 2003) ..................................................................................14

**Statutes**

17 U.S.C. §512(c) ..............................................................................4

**Rules**

Federal Rule of Civil Procedure 34(b)(2)(E)……………………………2, 8-9

## I. INTRODUCTION.

Google's proposed order, lodged on November 6, 2009 at 7:24 P.M., does not accurately reflect what the Court ordered during the November 3, 2009 telephone hearing.[1] In fact, it contains some rulings that directly contradict the Court's rulings. For example, the Court specifically ruled that Perfect 10 did not have to do what Google proposes in paragraph 2, regarding Perfect 10's earlier document productions. The Court also did not make the rulings in paragraphs 3 and 4. Google misstates when the documents referred to in paragraph 3 of its proposed order have to be produced – the previous order states that they are due ten days prior to the agreed upon date of the deposition, which has now been taken off calendar. Perfect 10, of course, cannot produce on November 9, 2009 the documents Mr. Hersh will refer to prepare for a deposition that Defendants apparently now want to take in January 2010. As to the remaining matters in paragraphs 1, 3, and 4, Judge Hillman made his rulings on the record, and what Google states is not an accurate transcription of those rulings. Defendants are abusing the discovery process. They have taken a motion regarding Bates numbering of documents, and are attempting to twist it into a barrage of proposals that have never been briefed or accepted by the Court. Defendants submitted a proposed order without any mention of the fact that the Court never so ordered and Perfect 10 never so agreed.

Google's proposal is so unreasonable, and if ordered by the Court, would be so devastating to Perfect 10's ability to fairly litigate this case, that Perfect

---

[1] Google's Notice of Lodging fails to inform the Court that Perfect 10 never approved Google's form of the Proposed Order. Google sent its proposed order to Perfect 10 at 3:40 P.M. on Friday, November 6, and then lodged it with the Court at 7:25 P.M. that same day, without waiting for Perfect 10's comments. Furthermore, the Proposed Order does not indicate that it is only the Defendants' proposal, and that Perfect 10 had not approved it. Perfect 10's version of the proposed order, submitted herewith, is captioned [Perfect 10's Proposed] Order. Defendants made no attempt to work out the language of a mutually agreeable order prior to sending Google's Proposed Order late Friday afternoon.

10 requests that if the Court is inclined to grant Google's order, the parties be allowed to present evidence as to how long it would take to comply with such an order, why such an order is not necessary, and whether it is allowed under the Federal Rules.

Google knows that there are ***many tens of thousands*** of "lowest level folders or subfolders" in Perfect 10's productions, and that there is ***absolutely no need*** to enumerate "lowest level folders." For example, Perfect 10's sending of DMCA notices is responsive to many of Google's requests, as it is just one of many ways in which Perfect 10 has attempted to protect its business and enhance its revenues. But there is absolutely no need whatsoever for Perfect 10 to be required to enumerate each and every one of ***more than ten thousand*** "lowest level folders" in Perfect 10's DMCA notices folder. That is a complete exercise in unnecessary busywork, not required by any Federal Rule, and in fact, contrary to FRCP 34(b)(2)(E)(iii) .

Defendants' insertion of Paragraph 2 into its Proposed Order exemplifies how Defendants are taking advantage of Perfect 10 and this Court. Defendants have created a parallel universe where several of the biggest corporations in the world are allowed to circumvent procedure and court orders. There has been no meet-and-confer or motion relating to the Perfect 10 "death order" that Defendants are now attempting to foist on Perfect 10 and this Court. There has been no examination of the underlying hard drives by the Court, or any independent verification that Perfect 10's productions are anything but extremely well organized. In fact, at a recent hearing , the Court commented that it was impressed with Perfect 10's Adobe style productions (September 22, 2009 hearing, page 114 lines 21-22), which the Defendants had previously mischaracterized as disorganized document dumps. At the telephone conference on November 3, 2009, this Court specifically told Defendants not to include prior productions in the proposed order. Nonetheless, Defendants went

ahead and inserted Paragraph 2 and filed a brief (on Friday night) in support of it (leaving Perfect 10 with no court days to prepare a written response to the proposed order and brief). Moreover, there is no urgency here. Defendants actually want this Court to order that Mr. Hersh cannot be deposed prior to December 21, 2009 -- thus showing that Defendants misrepresented the necessity of immediately taking Mr. Hersh's deposition.

### A. EXPLANATION OF THE ORGANIZATION OF PERFECT 10'S EXTERNAL HARD DRIVE

On October 25, 2009, Perfect 10 produced a hard drive that contains over 100,000 pages. The documents are sorted into 16 separate top-level folders. (Attached hereto as Exhibit 1 is a screenshot showing the top-level folders.) On November 3, 2009, this Court heard the Amazon Defendants' Ex Parte Application, and addressed a number of different issues raised in that application, including the Amazon Defendants' request that this Court order Perfect 10 to identify which documents on the hard drive are responsive to the 26 separate document requests set forth in Paragraph 4 of this Court's Order dated October 6, 2009. (For the Court's convenience, attached hereto as Exhibit 2 is a copy of the Order.) At the hearing, this Court ordered the parties to submit proposals regarding how Perfect 10 should identify documents on the hard drive that are responsive to a particular document request.

Perfect 10's proposal is set forth below. However, there is no reason to deviate from the Federal Rules and require document identification because Perfect 10's production – like its prior productions – is highly organized, and primarily consists of DMCA notices and evidence showing that defendants have not removed infringements. The documents are in folders which are labeled so that Defendants may readily determine where to find documents.

Google claims that the hard drive "contains voluminous materials that appear to have little (if any) relevance to the October 6 Order (or this case, for

that matter)." (Google's Supplemental Memorandum page 2 lines 10-11.) The only example that Google gives is "a 1,429 page .pdf file containing what appears to be the U.S. Copyright Office's *entire directory* of agents designated by service providers to receive notifications of claimed infringement pursuant to Section 512(c) of the Copyright Act." (*Id.* at page 2 lines 14-16.) However, that document is highly relevant. Google has claimed that Perfect 10 should have sent DMCA notices for its various functions (AdSense, AdWords, Blogger, Blogspot, Image Search, Web Search, etc.) to different addresses. However, this document conclusively shows that Google only has one DMCA agent and one address listed at the Copyright Office to send DMCA notices to – it does not have separate listings for AdSense, AdWords, Blogger, Blogspot, Image Search, Web Search, etc. Perfect 10 produced the entire document so that every entry is available to show that Google did not have any other listings for agents at the Copyright Office. If Perfect 10 had not produced this document, Google would claim that Perfect 10 could not use it at trial. This document directly rebuts Google's claim that Perfect 10 should have sent DMCA notices for its various functions to different addresses, since there are no different addresses listed at the Copyright Office for different functions – only one overall listing for Google. This document, along with the DMCA notices themselves, which show the address where Perfect 10 sent the notices, is therefore responsive to the following document requests in the October 6 order: z. Document Request No. 181 (documents sufficient to show Perfect 10's efforts to increase revenues generated by perfectl0.com); aa. Document Request No. 182 (documents sufficient to show Perfect 10's efforts to increase paid memberships in perfect10.com). Perfect 10 is attempting to increase its revenues and increase its paid memberships by attempting to stop the rampant infringement taking place on websites that Google links to and has business relationships with. Perfect 10 is unable to increase its paid memberships and

thereby increase its revenues as long as the vast majority of its images are available for free using Google's search engine.

The folder titled "usenet," which Google complains about (page 2 lines 1-2), contains two subfolders, one containing infringing downloads from newsdemon and the other from giganews, both infringing usenet websites that Google links to and has advertising relationships with. These subfolders are labeled descriptively – "90509 newsdemon sc" and "giganews 10209 sc." The infringing images contained in the first sub-folder were downloaded from newsdemon.com on September 5, 2009 by Sheena Chou (Google knows what her initials mean because they spent a full day deposing her); the infringing images contained in the second sub-folder were downloaded from giganews.com on October 2, 2009 by Sheena Chou. These documents are responsive to the following document requests in the October 6 order: g. Document Request No. 108 (documents sufficient to show the fact alleged in paragraph 17 of the amended complaint in the Google case, i.e., the described infringement is devastating to and threatens the existence of Perfect 10's business); h. Document Request No. 109 (the revenues Perfect 10 received resulting from searches on Google are substantially less than they should be); i. Document Request No. 110 (the damages caused by activities alleged in the amended complaint far exceed any benefit to Perfect 10 from Google); n. Document Request No. 166 (documents sufficient to show the effect or impact, if any, of any conduct or action by Google on the market share of Perfect 10); o. Document Request No. 167 (same); p. Document Request No. 168 (same); q. Document Request No. 169 (same); r. Document Request No. 170 (same).

The Court can see just how time consuming this process is; doing it for many tens of thousands of folders, as Defendants want in their proposed order, could potentially take years, prevent Perfect 10 from litigating the merits of this case (most likely Google's and Amazon's goal), and delay the determination on

the merits. Perfect 10's production is already infinitely more organized than Google's; Google does not put any of its documents into folders and sub-folders as Perfect 10 has done, or give information about when the document was downloaded or by whom. Google's document production is a "document dump," not Perfect 10's. Google's complaints about Perfect 10's production, particularly when compared to Google's production, is so outrageous that it can only be characterized as a purposeful misrepresentation or made by someone who has not taken the time to examine Perfect 10's productions.

Google complains about a folder entitled "articles after production," which Google correctly understands contains "various recent newspaper articles and similar documents" that were collected since Perfect 10's last document production. Google claims that this folder shows that Perfect 10 did not produce the documents as they are kept in the ordinary course of business. (Page 2 lines 20-25.) Apparently, Google's argument is that Perfect 10 collected articles about infringement, and that these articles were collected for the litigation rather than in the regular course of Perfect 10's business. This argument does not make sense, for several reasons. First, it is part of Perfect 10's business to protect its copyrights, since that is the only way it can increase paid memberships and thus its revenues. Collecting articles about infringement and copyright protection is part of that. Second, even if this was not deemed to be part of Perfect 10's business, putting such articles into a separate file would be exactly what should be done with such articles, so that they are not mixed in with the other business documents. Third, Google simply has not explained why there is any problem with having a file containing such articles, and putting them in a descriptive file folder. If Google produced any such articles, it would simply have mixed them in with all of its other disorganized documents, rather than putting them in a clearly labeled, easy to find folder. Google's argument about Perfect 10's documents not being produced as they

Perfect 10's Memorandum in Support of its Proposed Order

are kept in the regular course of business is further contradicted by Mr. Nolan's statement in his declaration: "I saw no subfolder or file name labeled with any clear reference to the Court's Order dated October 6, 2009." If there had been a folder labeled "October 6, 2009 order," then Google would have claimed that this showed that Perfect 10's documents were not kept in the regular course of business. Google has simply produced nothing which shows that Perfect 10's documents were not produced as they are kept in the usual course of business.

Mr. Nolan states in his declaration (paragraph 6) that "[i]n my review of the [November 25, 2008] hard drive I located no folders of documents labeled 'financial documents.'" However, Mr. Nolan knows full well that the financial statements and tax returns were produced on a separate disk on October 16, 2009, not in the November 25, 2008 production.

## II. BACKGROUND AND PROCEDURAL HISTORY.

Twenty-six (26) Google document requests are at issue. With regard to the vast majority of the requests, Google never met and conferred but nonetheless included the requests in its massive joint stipulation to bolster its claim that it was entitled to unredacted financial documents. In fact, in its responses to many of the 26 requests, Perfect 10 stated that it would produce documents. Therefore, there was nothing to meet and confer about. Google's sole purpose in including the requests in its encyclopedic joint stipulation was to obtain unredacted financial documents. At the hearing on September 22, 2009, this Court granted Google's request to obtain unredacted financial documents, with a few limitations. (*See* Exhibit 2, Order, Paragraph 1.) This Court then addressed each document request individually although Google *never* requested that relief in its joint stipulation. This Court placed limitations on Google's document requests and ordered Perfect 10 to "produce all of the above-described documents … to the extent that they have not already been produced, and to the extent they exist and can be located with a reasonable

7

Perfect 10's Memorandum in Support of its Proposed Order

search by October 26, 2009." On October 16, 2009, Perfect 10 produced financial documents, with the minimal redactions this Court permitted. On October 25, 2009, Perfect 10 produced the hard drive at issue.

As part of its tag-team strategy, Amazon then filed its ex parte application with this Court and complained that Perfect 10 should identify the specific documents on that hard drive that fall into each of Google's 26 requests. Thus, Google's original intent to use the requests as a vehicle to compel Perfect 10 to produce unredacted financial documents had mushroomed into Amazon's request that Perfect 10 perform a task not required by the Federal Rules – identifying specific documents that are responsive to document requests. Google did not make any such request in its joint stipulation or at the September 22 discovery hearing. Amazon did not make any such request at the September 22 discovery hearing. Moreover, at the hearing on the ex parte application, Google argued that this requirement should only apply to Perfect 10, which is not surprising because Defendants constantly seek to compel Perfect 10 to undertake burdensome tasks that are not required by the Federal Rules while engaging in egregious discovery abuses.

## III. UNDER THE FEDERAL RULES, A PARTY HAS THE OPTION OF PRODUCING DOCUMENTS AS THEY ARE KEPT IN THE USUAL COURSE OF BUSINESS, AND THAT IS WHAT PERFECT 10 HAS DONE HERE.

The documents were produced as they are kept by Perfect 10 in the usual course of business, in folders that explain what they are. (*See* Declaration of Dr. Norman Zada in Opposition to Amazon's Ex Parte Application, Docket No. 356, ¶3.) That exceeds what the Federal Rules require. *See* Rule 34(b)(2)(E) (emphasis added):

(E) <u>Producing the Documents or Electronically Stored Information</u>. Unless otherwise stipulated or ordered by the court,

8
Perfect 10's Memorandum in Support of its Proposed Order

these procedures apply to producing documents or electronically stored information:

(i) **A party must produce documents as they are kept in the usual course of business *or*** must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, **a party must produce it in a form or forms in which it is ordinarily maintained** or in a reasonably usable form or forms; and

(iii) **A party need not produce the same electronically stored information in more than one form.**

Google states, with no support whatsoever, that the documents were not produced as kept in the ordinary course of business. The only evidence submitted on this is the Declaration of Dr. Norman Zada in Opposition to Amazon's Ex Parte Application, Docket No. 356, ¶3. Google seems to argue that any documents relating to Perfect 10's protection of its copyrights cannot be kept in the ordinary course of business, since they also relate to this lawsuit. But clearly, protection of Perfect 10's copyrights is a very large part of its business. Perfect 10 keeps the records regarding its attempts to protect its copyrights in the ordinary course of its business. Perfect 10 has produced those documents with the same descriptive file names as it uses itself. Since Perfect 10 has produced the documents in the form in which they are kept in the usual course of business, it does not have to organize and label them to correspond to the categories in Google's and Amazon's requests.

## IV. PERFECT 10'S PRODUCTIONS.

Perfect 10 would first like to explain the primary content of its past productions because Defendants have attempted to confuse the issue. The bulk of Perfect 10's productions consist of DMCA notices and documents showing

that nothing was done in response to those notices, i.e., print-outs showing that the infringing content was still available on various dates after the DMCA notice. The same is true of the hard drive at issue. With regard to the recent productions, most of the documents that are particularly relevant to Google's requests are either in "efforts contracts" (one of the 16 top-level folders in the hard drive) or in the October 16 production of financial statements and tax returns.

### A. Most Of Perfect 10's Productions Consist Of A) DMCA Notices and B) Evidence Showing That Defendants Did Not Remove Infringements.

The vast preponderance of Perfect 10's document productions consist of a) DMCA notices, and b) evidence showing that defendants did not remove the infringements identified in those notices. Because Perfect 10 did not know when defendants would finally remove the infringements, it kept archiving print-outs showing that the infringing material was still available, on later and later dates. Perfect 10 believes that the evidence of primary importance is a) the DMCA notices, and b) the evidence of when Defendants finally took action. This would also be verifiable by DMCA logs, if they were kept by defendants, but both Google and the Amazon defendants have failed to produce such logs, for the most part, even after being ordered to do so, and the Amazon defendants have admitted to doing nothing in response to more than 25 notices from Perfect 10. (Copyright deposit materials are also important, but those are not the subject of the present dispute.)

In the most recent hard drive production, most of the documents are, once again, related to infringements. Those documents are responsive to the following document requests in Judge Hillman's October 6 Order: Paragraph 4 g (Document Request No. 108); h (Document Request No. 109); i (Document Request No. 110); n (Document Request No. 166); o (Document Request No.

167); p (Document Request No. 168); q (Document Request No. 169); r (Document Request No. 170).

*Those documents were produced as they were maintained by Perfect 10.* Perfect 10 creates a folder for each category, and fills those folders with documents as they are downloaded. When Perfect 10 produces documents, those folders are produced exactly as they are maintained. Since these are Perfect 10's working folders for its own purposes, they are maintained in the manner that Perfect 10 believes is most efficient.

### B. Perfect 10's Financial Documents Contain Many Responsive Documents.

On October 16, 2009, Perfect 10 produced its Financial Statements and tax returns. Perfect 10 had produced most of those documents years ago, with portions redacted, including its tax returns. Perfect 10's financial documents are the primary source of documents responsive to virtually all of Google's recent requests. Those documents tell the story as to a) what payments Perfect 10 has received and from whom, and b) what payments Perfect 10 has made and to whom.

### C. Summary Of Perfect 10's Most Recent Hard Drive Production.

There were a total of 16 top-level folders in the hard drive produced on October 25, 2009. Perfect 10 summarizes below the contents of six (6) of the major folders. Perfect 10's production is highly organized and Defendants may readily find any documents they want.

*Most of the external hard drive consisted of infringements and DMCA notices contained in three folders – Amazon, Google, and Usenet,* and they were produced as they were maintained by Perfect 10. All of the infringements and DMCA notices are relevant to the issue of what steps Perfect 10 has taken to a) protect and expand its business, and b) how Defendants are damaging that business.

**1. Amazon.** This folder contains 11 sub-folders holding 745 files, and is 3.83 Gigabytes in size. It contains DMCA notices to the Amazon defendants, and proof of existing infringements by the Amazon Defendants. The folders have titles which are self-explanatory such as "alexa still up" (infringements that are still available using alexa.com) and "alexa DMCA" (recent DMCA notices sent to Alexa). This material was produced as maintained by Perfect 10.

**2. Google.** This folder contains 17 folders holding 8,307 files and is 9.43 Gigabytes in size. The folders are self-descriptive with labels such as "ads" (infringements near Google ads) "defame" (searches that defame Perfect 10 models by associating them with prostitution, bestiality, etc.) and "google display" (examples of Google's display of Perfect 10 images via in-line linking).

**3. Usenet.** This folder contains 2 subfolders holding 27,342 files and is 4.48 Gigabytes in size. This folder contains images that were recently downloaded from two large usenet infringers, newsdemon.com and giganews.com. Perfect 10 has repeatedly given both Google and the Amazon defendants notice of infringement on these websites, but they continue to provide links to these websites in their search results. These websites are also Google Adwords affiliates.

**4. Efforts Contracts.** This folder contains documents relating to Perfect 10's efforts to promote or increase revenues, efforts to increase paid memberships, and related to spending on promotion. (z Document Request No. 181; aa Document Request No. 182; f Document Request No. 105.) This folder also contains loan documents in a subfolder labeled "loans." (t Document Request No. 173; u Document Request 174.) This folder contains only 79 files and is very easy to review. Once again, the subfolders have self explanatory labels, such as "Battledome" (a TV show that Perfect 10 models appeared on for promotional purposes), "Chris Meyers Bob Golic" (a radio show that was

broadcast from Perfect 10 for promotional purposes) and "Stuttering John" (one of the former regulars on the Howard Stern Show, which is another show that Dr. Zada and Perfect 10 models appeared on for promotional purposes.)

**5. Chou Production.** This folder contains 1 file, 1.33 MB. This consists of the emails that Sheena Chou produced for her deposition and shows her attempts to join various infringing paysites. Such documents were responsive in that they were further evidence of Perfect 10's efforts to protect its copyrights so as to be able to increase revenues and paid memberships. (z Document Request 181; aa Document Request 182.)

**6. DMCA misc.** This folder contains DMCA notices to earthlink.net, aol.com, and adultadworld .com and is self-explanatory. It contains documents responsive to z Document Request 181 and aa Document Request 182.

In comparison to Perfect 10's organized production, Google's productions were completely disorganized, as there were no labeled folders of any kind, the same documents were produced in some cases 13 times, and documents were often either redacted or unreadable. Amazon has produced virtually no documents at all. Google has never explained to Perfect 10 if or how its documents were organized.

## V. DEFENDANTS COULD HAVE VERY EASILY FOUND THE DOCUMENTS IF THEY HAD WISHED TO DO SO.

Defendants have completely mischaracterized Perfect 10's production in an attempt to wrongly convince the Court to force Perfect 10 to engage in some extraordinarily and totally unnecessary busywork project. Defendants have either not taken the time to examine Perfect 10's production or are purposefully misrepresenting it. What is happening in this case is that there is a massive obstruction taking place by Defendants. The Amazon defendants have refused to answer virtually all discovery requests, and have produced a total of approximately 800 documents, most of which are public in nature. Google has

disobeyed multiple court orders. It has produced less than 1% of the DMCA notices identifying the URLs in its Blogger tracking spreadsheet, and did not even produce that document when ordered to do so. Google's motions for summary judgment utilize two "DMCA logs" which were not produced when ordered by Judge Matz and which do not reside in the range of 23,000 documents which Google claimed was its "DMCA log."

## VI. PERFECT 10'S PROPOSAL.

Defendants have no basis for their proposal. The Court should not issue Defendants' proposed order before either a) examining Perfect 10's recent production and comparing it to Defendants' productions, or b) appointing an outside expert or discovery referee to do so. The Federal Rules do not require Perfect 10 to go through the busywork exercise requested by Defendants, who are attempting to make Perfect 10 do their work for them, by constantly running to this Court and asking it to micromanage Perfect10.

Defendants are seeking to win this case by drowning Perfect 10 in unnecessary busywork, penalizing Perfect 10 for producing close to 5,000,000 pages of documents, while they have disobeyed Court orders and /or produced next to nothing.[2] Perfect 10 has already spent an enormous amount of time producing millions of documents. Perfect 10's productions have been well organized. This Court should not order Perfect 10 to perform a busywork

---

[2] Google's counsel, Quinn Emanuel, will undoubtedly continue these abusive tactics unless the Court stops them. See footnote 3, *infra*. In fact, Google's lead counsel, Michael Zeller of Quinn Emanuel, and the firm, have been sanctioned by the District Court for the Northern District of California and the Ninth Circuit. In *Mattel, Inc. v. Walking Mountain Productions,* No. C 01-0091 MISC WHA, the District Court held that "Mattel had sought the discovery for the improper purpose of annoyance and harassment and had failed to take reasonable steps to avoid imposing undue burden … ." The court found that "Mattel and its law firm of Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP are engaging in unwarranted oppressive tactics." Order Determining Amount of Attorney's Fees, attached as Exh. D to Mausner Declaration, Docket No. 419. The Ninth Circuit affirmed the award of sanctions, in *Mattel Inc. v. Walking Mountain Productions,* 353 F.3d 792, 813-14 (9th Cir. 2003). See Docket No. 417, page 24, footnote 11.

project which could take months, without making a thorough examination of what Perfect 10 has already produced.

Remember, Perfect 10 has produced its documents; Google and Amazon can only complain about the way they are arranged. In the meantime, Google and Amazon are making a mockery of their discovery obligations.

Furthermore, none of the Defendants' requests have anything to do with the pending summary judgment motions, which should decide the cases and lead to settlement, while Perfect 10's issues directly relate to those motions. The Defendants are using their vastly larger resources to bury Perfect 10 (and the Court) in unimportant matters so that Perfect 10 cannot bring important issues to the Court's attention.

However, if the Court still believes further document identification is necessary, Perfect 10 proposes the following for the hard drive produced on October 25, 2009:

1. Perfect 10 will agree to provide the folders and subfolders (going down no further than the first subfolder level) containing responsive documents for each of 15 requests of defendants' choosing.

2. Whatever the Court decides is applied equally to Google regarding Judge Hillman's discovery orders and Judge Matz's May 13, 2008 order,[3] except that, because Google did not organize its production into folders, Google be required to give the Bates number ranges of responsive documents. (This is separate from the Court's ruling on November 3, 2009 that Perfect 10 and Google's counsel meet and confer about Perfect 10's complaints about Google's document productions and use of documents at depositions, and that

---

[3] Making its Orders apply mutually to Perfect 10 and the Defendants is not only fair; ***it will also undoubtedly cut down on the number of motions and ex parte applications filed by the Defendants***, because the Defendants will stop trying to impose requirements on Perfect 10 that they would not want to be under themselves. Judge Matz did this in his May 13, 2008 Order (Docket No. 294), page 2 lines 20-22.

| | |
|---|---|
| 1 | Perfect 10 may ask this Court for a hearing on the same if counsel cannot reach |
| 2 | agreement.) |
| 3 | In the event that the Court is inclined to issue an order that could take |
| 4 | substantially more time than what Perfect 10 is proposing, Perfect 10 |
| 5 | respectfully requests that before that is done, the Court appoint a technical |
| 6 | advisor to issue a report regarding the degree of compliance of the various |
| 7 | parties with their discovery obligations.  The advisors' fees would be shared |
| 8 | equally by the parties.  Perfect 10 reiterates that any order the Court makes |
| 9 | regarding identification of documents should apply mutually to Perfect 10 and |
| 10 | Google.  This is not only fair, but will cut down on the number of motions and |
| 11 | ex parte applications filed by the Defendants, since the Defendants will then |
| 12 | stop trying to impose requirements on Perfect 10 that they would not want to be |
| 13 | under themselves.  *See* Judge Matz's May 13, 2008 Order (Docket No. 294), |
| 14 | page 2 lines 20-22. |

Dated: November 9, 2009         Respectfully submitted,
                                Law Offices of Jeffrey N. Mausner

                           By: *Jeffrey N. Mausner*
                                _____
                                Jeffrey N. Mausner
                                Attorney for Plaintiff Perfect 10, Inc.