1

2                    UNITED STATES DISTRICT COURT

3                  CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION
4

5
     PERFECT 10, INC.,                )
6                                     )
             PLAINTIFF,               )
7                                     )
             VS.                      )  CASE NO. CV 04-9484-AHM(SH)
8                                     )           CV 05-4753-AHM(SH)
                                      )
9    GOOGLE, INC., ET AL.,            )  LOS ANGELES, CALIFORNIA
                                      )  SEPTEMBER 14, 2009
10                                    )
             DEFENDANTS.              )
11   _____)

12                      TELEPHONIC HEARING
            BEFORE THE HONORABLE STEPHEN J. HILLMAN
13               UNITED STATES MAGISTRATE JUDGE

14

15

16
     APPEARANCES:              SEE NEXT PAGE
17
     COURT REPORTER:           RECORDED; COURT SMART
18
     COURTROOM DEPUTY:         SANDRA L. BUTLER
19
     TRANSCRIBER:              DOROTHY BABYKIN
20                             COURTHOUSE SERVICES
                               1218 VALEBROOK PLACE
21                             GLENDORA, CALIFORNIA  91740
                               (626) 963-0566
22

23

24
     PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Dockets.Justia.com

```
 1    APPEARANCES:  (CONTINUED)
      FOR THE PLAINTIFF:        LAW OFFICES OF JEFFREY N. MAUSNER
 2                              BY:  JEFFREY N. MAUSNER
                                     VALERIE KINCAID
 3                                   ATTORNEYS AT LAW
                                21800 OXNARD STREET
 4                              SUITE 910
                                WOODLAND HILLS, CALIFORNIA  91367
 5

 6    FOR GOOGLE:               QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES
 7                              BY:  MICHAEL T. ZELLER
                                     TOM NOLAN
 8                                   ATTORNEYS AT LAW
                                865 SOUTH FIGUEROA STREET
 9                              10TH FLOOR
                                LOS ANGELES, CALIFORNIA  90017
10
      FOR AMAZON.COM, ALEXA     TOWNSEND TOWNSEND & CREW
11    INTERNET:                 BY:  MARK JANSEN
                                     TIMOTHY CAHN
12                                   ATTORNEYS AT LAW
                                TWO EMBARCADERO CENTER
13                              8TH FLOOR
                                SAN FRANCISCO, CALIFORNIA  94111
14

15

16

17

18

19

20

21

22

23

24

25
```

```
1                        I N D E X
   CASE NO. CV 04-9484-AHM(SH)              SEPTEMBER 14, 2009
2          CV 05-4753-AHM(SH)

3   PROCEEDINGS:   TELEPHONIC CONFERENCE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1   LOS ANGELES, CALIFORNIA; MONDAY, SEPTEMBER 14, 2009;3:00P.M.

2            THE CLERK:  TODAY IS MONDAY, SEPTEMBER THE 14TH.

3   IT'S A TELEPHONIC HEARING REGARDING CASE NUMBER

4   CV 04-9484-AHM(SH), PERFECT 10 VERSUS GOOGLE CONSOLIDATED

5   WITH CASE NUMBER CV 05-4753, PERFECT 10 VERSUS AMAZON.COM,

6   A9.COM.

7            COUNSEL, PLEASE ENTER YOUR APPEARANCE.

8            THIS IS TAKING PLACE AT 3:00 P.M. ON SEPTEMBER 14TH

9   IN MAGISTRATE JUDGE HILLMAN'S CHAMBERS.

10           THE COURT:  HI.

11           MR. MAUSNER:  GOOD AFTERNOON, YOUR HONOR.

12           THE COURT:  COULD YOU SPEAK UP, MR. MAUSNER.

13           MR. MAUSNER:  IS THAT BETTER, YOUR HONOR?

14           THE COURT:  YES, THANK YOU.

15           WHO ELSE IS PRESENT?

16           MR. ZELLER:  WE ALSO HAVE MIKE ZELLER AND TOM NOLAN

17  FOR GOOGLE.

18           MR. CAHN:  AND TIM CAHN AND MARK JANSEN FOR AMAZON.

19           THE COURT:  OKAY.

20           MR. MAUSNER:  VALERIE KINCAID AND JEFF MAUSNER FOR

21  PERFECT 10.

22           THE COURT:  OKAY.  I DID -- I DID SEE THAT THERE

23  WAS THIS EX PARTE APPLICATION AND PERFECT 10'S OPPOSITION

24  REGARDING THE AMAZON DEADLINES.  I HAVEN'T BOTHERED TO -- I

25  HAVEN'T HAD A CHANCE TO SEE IF JUDGE MATZ HAS RULED ON THAT,

1    BUT I WOULD KIND OF DOUBT IT.

2              MR. MAUSNER:  HE HAS ACTUALLY, YOUR HONOR.

3              THE COURT:  OKAY.

4              MR. MAUSNER:  WOULD YOU LIKE ME TO STATE WHAT THE

5    RULING WAS?

6              THE COURT:  SURE.  I CAN LOOK IT UP, BUT TELL ME

7    QUICKLY.

8              MR. MAUSNER:  HE GRANTED AMAZON'S EX PARTE AND, IN

9    FACT, COMPLETELY VACATED THE SUMMARY JUDGMENT CUTOFF.

10             THE COURT:  OKAY.

11             MR. MAUSNER:  SO, YOU KNOW, IT'S OUR POSITION THAT

12   THERE'S NO REASON TO HAVE ANY OR MOST OF THE DISCOVERY

13   DISPUTES HEARD AT THIS TIME.

14             THE COURT:  HMM.

15             MR. CAHN:  AND CAN I, YOUR HONOR -- THIS IS TIM

16   CAHN FOR AMAZON.

17             THE COURT:  YES.

18             MR. CAHN:  THE REST OF THIS RULING MADE CLEAR THAT

19   HE WOULD ISSUE A NEW SUMMARY JUDGMENT SCHEDULE FOR AMAZON AT

20   THE TIME HE DECIDES THE PENDING SUMMARY JUDGMENT MOTION.  HE

21   DIDN'T GIVE ANY INDICATION IN HIS ORDER WHEN THAT WOULD BE,

22   BUT IT COULD BE AT ANY TIME.

23             THE COURT:  UH-HUH.

24             MR. ZELLER:  AND IF I MAY -- THIS IS MIKE ZELLER

25   FOR GOOGLE.

1          THE ORDER ALSO ENDS BY SAYING, PERFECT 10 MUST

2     STILL COMPLY WITH ANY DISCOVERY REQUESTS IN THIS CASE AND IN

3     THE GOOGLE CASE UNLESS OTHERWISE ORDERED BY YOUR HONOR.

4          THE COURT:  WELL, THAT CERTAINLY MAKES SENSE.  I

5     CAN'T DISAGREE WITH THAT.  BUT IT WAS GOOGLE, I BELIEVE, THAT

6     WAS SUGGESTING THAT WE STILL DEFER SOME OF THESE MOTIONS NEXT

7     WEEK TO SEE WHAT HAPPENED ON THE SUMMARY JUDGMENT MOTIONS.

8          MR. ZELLER:  RIGHT.  WHAT WE HAD SUGGESTED DEALT

9     WITH THE INFRINGEMENT CLAIMS, ALTHOUGH, YOU KNOW, MINDFUL

10    THAT AMAZON HAS ITS OWN ISSUES ON THAT, THAT AT LEAST DEALS

11    WITH THE MOST IMMEDIATE ISSUE WITH GOOGLE AS TO THE

12    INFRINGEMENT ISSUE.  OF COURSE OUR POSITION IS STILL THE SAME

13    AS WE HAD DISCUSSED LAST WEEK, WHICH IS THAT THE OTHER TWO

14    MOTIONS SHOULD BE PROPERLY HEARD NOW.

15         THE COURT:  WELL -- ANYONE ELSE WANT TO JOIN IN?

16         MR. MAUSNER:  YOUR HONOR, MAY I RAISE ONE THING

17    THAT HAS TO DO WITH US TRYING TO MEET AND CONFER REGARDING

18    THESE MOTIONS.

19         GOOGLE HAS TAKEN THE POSITION THAT THEY WANT TO

20    HAVE A COURT REPORTER PRESENT AT ALL THE MEET AND CONFERS.

21    WE --

22         THE COURT:  THAT'S AWFULLY EXPENSIVE.

23         MR. MAUSNER:  WHAT?

24         THE COURT:  THAT'S AWFULLY EXPENSIVE.

25         MR. MAUSNER:  IT IS.

1        THE COURT:  I DON'T KNOW WHY THAT WOULD BE

2    NECESSARY.

3        MR. MAUSNER:  IT'S OUR POSITION THAT WE'RE WILLING

4    TO DO THAT SO LONG AS WE DON'T HAVE TO PAY FOR ANY OF THE

5    COSTS OF THE REPORTER.

6        WE'VE TOLD GOOGLE REPEATEDLY THAT WE WOULD CONSENT

7    TO A COURT REPORTER IF GOOGLE WOULD PAY FOR US TO GET A COPY

8    OF THE TRANSCRIPT.  AND GOOGLE HAS REFUSED TO AGREE TO THAT.

9        AND BASICALLY WE'VE HAD TWO MEET AND CONFERS THAT

10   WE COULDN'T GO FORWARD ON BECAUSE OF THIS ISSUE.  WE HAD ONE

11   ACTUALLY TODAY, THAT WE SENT AN EMAIL TO GOOGLE SAYING LET'S

12   TRY TO MEET AND CONFER ON THESE THINGS, AND THEY AGREED.  AND

13   WE SET UP THE TIME AT ONE O'CLOCK --

14       THE COURT:  ON WHICH --

15       MR. MAUSNER:  -- ON THE PHONE --

16       THE COURT:  ON WHICH THINGS?  ON THE PENDING

17   MOTIONS OR SOMETHING ELSE?

18       MR. MAUSNER:  YES.  ON SOME ISSUES REGARDING THE

19   PENDING MOTIONS.

20       THE COURT:  UH-HUH.

21       MR. MAUSNER:  AND WE ALL GOT ON THE PHONE.  AND

22   THEN IT TURNS OUT THERE WAS A COURT REPORTER THERE.  AND WE

23   TOOK BASICALLY THE SAME POSITION, WHICH IS, THERE ARE TWO

24   ALTERNATIVES.  WE WOULD GO FORWARD WITH THE COURT REPORTER IF

25   GOOGLE WOULD PAY ALL THE COSTS, INCLUDING A COPY OF THE

1    TRANSCRIPT FOR US; OR THEY DO IT WITHOUT A COURT REPORTER.

2    BUT WE CAN'T HAVE -- DOING IT WITH THE COURT REPORTER AND

3    THEN NOT BEING ABLE TO GET A COPY OF THE TRANSCRIPT WITHOUT

4    PAYING FOR IT.  I MEAN, THESE -- SOME OF THESE THINGS CAN

5    TAKE MANY HOURS, AND IT CAN GET VERY EXPENSIVE FOR US.

6          THE COURT:  I ALSO THINK -- I THINK THERE'S

7    ARGUMENTS ON BOTH SIDES AS TO WHETHER IT'S HELPFUL.  BUT IT

8    MAY BE OBSTRUCTIVE TO PEOPLE CANDIDLY DISCUSSING RESOLUTION.

9    SO -- I MEAN, I DON'T WANT TO HEAR ABOUT PEOPLE NOT TRUSTING

10   EACH OTHER.  THAT'S JUST UNACCEPTABLE TO ME.  I KNOW THAT

11   SOME OF THESE ISSUES -- A LOT OF THESE ISSUES ARE VERY

12   COMPLEX AND HAVE TO BE REDUCED TO WRITING.  AND I CERTAINLY

13   DON'T WANT TO ENCOURAGE AN EMAIL BATTLE OVER WHO SAID WHAT IN

14   A MEET AND CONFER.

15         BUT, YOU KNOW, I'M NOT INCLINED TO IMPOSE A

16   COST-SPLITTING ORDER FOR THIS KIND OF COURT REPORTING.

17         MR. ZELLER:  AND IF I MAY, JUDGE HILLMAN.

18         THE COURT:  YES.

19         MR. ZELLER:  THIS IS MIKE ZELLER FROM GOOGLE.

20         A COUPLE OF POINTS HERE.  NUMBER ONE, WE ARE PAYING

21   FOR THE COSTS OF THE REPORTER.  I CAN CERTAINLY TALK ABOUT

22   THE HISTORY OF WHAT LED US TO THIS DECISION.  I'LL SKIP THAT

23   UNLESS THE COURT IS INTERESTED IN HEARING IT.  BUT WE ARE

24   PAYING.  WE ARE, GOOGLE, ARE PAYING FOR THE COURT REPORTER.

25   THAT IS BY FAR THE BULK OF THE EXPENSE.

1          WHAT MR. MAUSNER IS ALSO SAYING THAT WE ALSO SHOULD

2    PAY FOR IS THE TRANSCRIPT, A COPY OF A TRANSCRIPT FOR THEM.

3          THE COURT:  WELL, IF YOU'RE NOT USING IT -- IF

4    YOU'RE NOT USING IT, AND YOU'RE NOT USING IT IN A MOTION OF

5    SOME SORT, THEN, I SUPPOSE IT'S YOUR -- YOU PAID FOR IT.  YOU

6    GET TO KEEP IT.

7          MR. ZELLER:  CORRECT.  AND ULTIMATELY WHAT WE'RE

8    HOPEFUL IS THAT THIS WILL BE CONDUCIVE TO AVOIDING THE KINDS

9    OF DISPUTES IN THE PAST THAT HAVE ARISEN ABOUT MEET AND

10   CONFERS, INCLUDING WHO SHOT WHOM AND, YOU KNOW, HE-SAID,

11   SHE-SAID KIND OF DISPUTES.

12         BUT AT THE END OF THE DAY WHAT WE'RE HOPEFUL IS

13   THAT THE COURT REPORTER'S PRESENCE WILL AVOID THOSE DISPUTES

14   AND NO ONE WILL EVEN NEED A TRANSCRIPT.  I MEAN, IT'S NOT OUR

15   INTENTION THAT GOOGLE IS GOING TO ROUTINELY ORDER THESE

16   TRANSCRIPTS EITHER.  WE'RE HOPING THAT THIS WILL ACTUALLY

17   AVOID THOSE VERY KINDS OF DISPUTES.

18         SO, TO IMPOSE SOME BLANKET REQUIREMENT THAT WE PAY

19   FOR ONE FOR PERFECT 10 IS SOMEWHAT CONTRARY TO WHAT -- I

20   MEAN, FIRST OF ALL, WE'RE ALREADY PAYING FOR THE BULK OF IT.

21   NUMBER TWO, IT'S KIND OF CONTRARY TO WHAT WE'RE HOPING IS

22   GOING TO HAPPEN HERE.

23         AND, THEN, OF COURSE, ALSO, I MEAN, JUST IN

24   GENERAL, THE AMERICAN RULE IS THE PARTIES PAY THEIR OWN

25   COSTS.  AND THAT'S TRUE FOR DEPOSITION TRANSCRIPTS AS WELL.

1   AND WE THINK THAT THIS SHOULD BE THE SAME POINT HERE.

2           THE OTHER -- THE OTHER POINT --

3           MR. MAUSNER:  MAY I RESPOND TO THAT FIRST, YOUR

4   HONOR?

5           THE COURT:  ARE YOU ASKING ME -- IS EVERYONE ASKING

6   ME TO MAKE SOME ORDER ON THIS TODAY?

7           MR. MAUSNER:  YES.

8           AND MAY I RESPOND TO THAT, YOUR HONOR?

9           THE COURT:  YES, YES.

10          MR. MAUSNER:  OKAY.  THEY DO NOT HAVE A RIGHT TO

11  HAVE A COURT REPORTER PRESENT IN A TELEPHONE CONVERSATION

12  BETWEEN US AND THEM.  WE OBJECT TO THAT, AND WE WILL NOT

13  ALLOW IT UNLESS THEY AGREE TO -- YOU KNOW, WE'RE TRYING TO BE

14  VERY REASONABLE HERE.  WE'RE SAYING YOU HAVE NO RIGHT TO HAVE

15  A COURT REPORTER THERE.  BUT IF YOU ARE GOING TO HAVE A COURT

16  REPORTER THERE, WE WILL CONSENT TO IT AS LONG --

17          BY THE WAY, I'M GETTING AN ECHO.  ARE YOU GETTING

18  AN ECHO ALSO?

19          THE COURT:  NO.

20          MR. MAUSNER:  LET ME TRY A DIFFERENT PHONE BECAUSE

21  IT'S ECHOING BACK.

22          HELLO?

23          THE COURT:  YES.

24          MR. MAUSNER:  OKAY.

25          THE COURT:  IS THAT BETTER?

1       MR. MAUSNER:  NO -- WELL, LET ME SEE.

2       SO, ANYWAY, OUR POSITION IS THAT, YOU KNOW, THEY

3  HAVE NO RIGHT TO DO THIS AT ALL.  THEY CANNOT IMPOSE A COURT

4  REPORTER ON A PRIVATE TELEPHONE CONVERSATION BETWEEN US AND

5  THEM.  BUT WE ARE WILLING TO DO IT SO LONG AS THEY WOULD PAY

6  FOR A TRANSCRIPT FOR US.

7       AND FOR THEM TO SAY, OH, WE'RE NOT GOING TO GET

8  THIS THING TRANSCRIBED, OF COURSE THEY'RE GOING TO GET IT

9  TRANSCRIBED.  AND THEN THEY'RE GOING TO HAVE AN UNFAIR

10  ADVANTAGE OVER US BECAUSE WE'RE NOT GOING TO HAVE THE

11  TRANSCRIPT.

12       SO, I THINK THE BAR IS VERY CLEAR THAT EITHER THERE

13  IS NOT GOING TO BE A COURT REPORTER THERE UNLESS EVERYONE

14  CONSENTS TO IT.  OR IF -- AND WE HAVE SAID WE WILL CONSENT TO

15  IT AS LONG AS WE JUST GET A TRANSCRIPT OF IT.  I DON'T THINK

16  THAT THAT'S ASKING VERY MUCH.

17       THE COURT:  WELL, YOU KNOW WHAT.  I'M NOT IN A

18  POSITION TO MAKE A RULING ON THIS.  I HAVE TO SAY THIS EXACT

19  ISSUE HAS NOT COME UP IN MY 17 OR WHATEVER YEARS ON THE

20  BENCH.  AND IF YOU WANT A FORMAL RULING, THEN, I CAN'T DO

21  THAT TODAY.

22       I WOULD LIKE TO MOVE ON -- AND I'M GOING TO ORDER

23  THAT NO COURT REPORTER BE USED UNLESS THERE IS A COURT ORDER

24  PERMITTING.  YOU'RE JUST GOING TO HAVE TO STUMBLE ALONG IN

25  THESE MEET AND CONFERS AND MAKE AN APPROPRIATE MOTION, ONE

1    SIDE OR THE OTHER.

2            SO, THE QUESTION --

3            MR. JANSEN:  YOUR HONOR --

4            THE COURT:  YES?

5            MR. JANSEN:  THIS IS MARK JANSEN FOR AMAZON.COM AND

6    ALEXA.

7            THE COURT:  YES.

8            MR. JANSEN:  AND I JUST WANT TO SAY WE HAVE NOT

9    TAKEN A POSITION ON THAT ONE WAY OR THE OTHER, BUT WE DID

10   HAVE A FOLLOW-UP CALL WITH MR. MAUSNER THIS AFTERNOON AFTER

11   THE TERMINATION OF A DISCUSSION WITH GOOGLE BECAUSE OF THIS

12   CONFLICT.  AND WE DID DISCUSS IN PARTICULAR THE FINANCIAL

13   DOCUMENTS IMPASSE.  AND I WANT TO CONFIRM TO THE COURT THAT

14   WE HAVE CONFIRMED WITH MR. MAUSNER AND MS. KINCAID THAT THERE

15   IS TWO UNSOLVABLE DISPUTES REGARDING THEIR OBLIGATION TO

16   PRODUCE COMPLETE FINANCIAL RECORDS THAT IS CLEAR.  AND WE

17   AGREE THAT THERE WAS AN IMPASSE ON THAT THAT NEEDS COURT

18   RESOLUTION.

19           SO, WE ACCORDINGLY TOOK OFF CALENDAR THE DEPOSITION

20   OF PERFECT 10'S ACCOUNTANT THAT WAS NOTICED FOR THIS

21   WEDNESDAY, WHICH WE HAD NOTICED WHEN WE DID -- BECAUSE OF THE

22   PENDING AND NOW TEMPORARILY VACATED SUMMARY JUDGMENT MOTION

23   DEADLINE.  WE AGREED TO SET THAT DEPOSITION FOR SOME TIME IN

24   MID-OCTOBER ON THE ASSUMPTION THAT YOU WOULD ACTUALLY HAVE A

25   CHANCE TO HEAR AT LEAST THE FINANCIAL DOCUMENTS PART OF THE

1   MOTION IF NOT OTHER ASPECTS OF THE MOTION NEXT WEDNESDAY AS

2   CURRENTLY -- OR NEXT TUESDAY AS CURRENTLY SCHEDULED SO THAT

3   YOU COULD ISSUE A RULING AND PERFECT 10 CAN TIMELY PRODUCE

4   WHATEVER, IF ANY, DOCUMENTS YOU ORDERED PRODUCED FURTHER.

5            THE COURT:  WHAT OTHER -- IS THAT THE ONLY PORTION

6   THAT YOU WOULD LIKE TO HAVE A RULING ON?

7            MR. JANSEN:  WELL, THAT WAS ALL THAT WE DISCUSSED

8   IN THE PHONE CALL THAT TIM CAHN AND I HAD WITH MR. MAUSNER

9   AND MS. KINCAID AT 1:30 THIS AFTERNOON, BUT TO CONFIRM THAT

10   MR. HERSH SHOULD BE PUT OFF UNTIL YOU CAN RULE ON AT LEAST

11   THE FINANCIAL DOCUMENTS.  HE IS THE ACCOUNTANT.

12            I THINK THERE'S OTHER ISSUES WHICH PROBABLY COULD

13   BE ADDRESSED AT THIS HEARING NEXT TUESDAY, BUT THAT'S ONE

14   THAT WE EXPRESSLY DID DISCUSS IN THE PHONE CALL WE JUST HAD

15   ABOUT AN HOUR AND A HALF AGO.

16            THE COURT:  ALL RIGHT.  WELL, WHY DON'T YOU -- I'M

17   GOING TO KEEP THE AMAZON MOTION ON CALENDAR FOR NEXT WEEK.

18   AND IF THERE ARE TOPICS IN THAT MOTION THAT MAKE SENSE TO YOU

19   TO DEFER SO THAT PERHAPS YOU WOULD BE PIGGY-BACKED ON

20   WHATEVER ORDER I MADE IN GOOGLE ON SOME OF THEM, LET THE

21   CLERK KNOW BY THE END OF THE DAY TOMORROW WHETHER THERE ARE

22   ANY TOPICS IN YOUR MOTION THAT YOU ARE NOT SEEKING RULING ON

23   NEXT WEEK.  OTHERWISE I WILL ASSUME --

24            MR. JANSEN:  YOUR HONOR, THE ISSUE OF OBJECTIONS TO

25   PERFECT 10'S FINANCIAL DISCLOSURES IS ACTUALLY TEE'D UP IN

1    THE GOOGLE MOTION, WHICH AMAZON HAS FILED A REQUEST TO JOIN.

2         SO, THAT'S THE MOTION THAT ADDRESSES THE AREAS OF

3    PERFECT 10'S INADEQUATE PRODUCTION OF FINANCIAL DOCUMENTS.

4    SO, THAT'S --

5         MR. ZELLER:  YOUR HONOR, MIKE ZELLER --

6         MR. JANSEN: -- THAT'S THE MOTION THAT WE WOULD LIKE

7    TO KEEP ON CALENDAR.

8         MR. ZELLER:  SORRY FOR INTERRUPTING.

9         THIS IS MIKE ZELLER FROM GOOGLE.

10        SETTING ASIDE THE TRANSCRIPT ISSUE, I MEAN, THERE

11   HAVE BEEN ALREADY EXTENSIVE MEET AND CONFERS ON THESE ISSUES.

12   WE'LL ATTEMPT TO TALK TO THEM AGAIN.

13        BUT ONE THING I DID WANT TO MAKE CLEAR WAS IS THAT

14   OVER THE COURSE OF TIME, INCLUDING RECENTLY, WE'VE SENT

15   MULTIPLE LETTERS TO PERFECT 10, YOU KNOW, OUTLINING IN SOME

16   DETAIL A NUMBER OF THESE ISSUES WHICH WE HAD HOPED TO RESOLVE

17   ON THE, YOU KNOW, TWO ISSUES THAT GOOGLE IN PARTICULAR THINKS

18   ARE STILL -- TWO MOTIONS RATHER THAT GOOGLE STILL THINKS IN

19   PARTICULAR, YOU KNOW, SHOULD BE THE SUBJECT OF THE HEARING ON

20   THE 22ND.

21        SO, THERE HAVE BEEN OTHER COMMUNICATIONS.  I DIDN'T

22   WANT THE IMPRESSION TO BE LEFT THAT SOMEHOW THE COURT

23   REPORTER ISSUE IS COMPLETELY --

24        THE COURT:  WELL -- OKAY.  MY --

25        MS. KINCAID:  YOUR HONOR --

1            THE COURT:  WAIT A SECOND.

2            WHAT I WANT TO KNOW IS HAVE THERE BEEN SUBSTANTIVE

3    DISCUSSIONS ON A SAMPLING PROTOCOL ALONG THE LINES THAT WAS

4    USED SUCCESSFULLY IN THE MICROSOFT CASE.  BECAUSE THAT IS THE

5    BULK OF -- I WON'T PUT AN ADJECTIVE TO IT -- THAT IS THE

6    LARGE PART OF THE GOOGLE MOTIONS PUTTING ASIDE THE RFA

7    MOTION.

8            MR. ZELLER:  WHAT I WAS REFERRING TO WAS THE TWO

9    OTHER MOTIONS.  WE HAVE NOT -- WE HAVE NOT DISCUSSED THE

10   SAMPLING PROCEDURE.  AND THAT HASN'T TO MY KNOWLEDGE BEEN THE

11   SUBJECT OF DISCUSSIONS --

12           THE COURT:  OKAY.  SO, THE OTHER TWO MOTIONS, THE

13   GOOGLE MOTIONS, GOOGLE BELIEVES SHOULD GO FORWARD NEXT WEEK.

14           MR. ZELLER:  THAT'S CORRECT, YOUR HONOR.

15           THE COURT:  OKAY.  NOW, I WOULD -- HOLD ON.

16           (PAUSE IN PROCEEDINGS.)

17           THE COURT:  BEFORE I SAY OKAY, I AM WONDERING ON

18   YOUR -- THE MOTION TO COMPEL DOCUMENTS, NOT THE RFAS AND NOT

19   INTERROGATORIES 1 AND 3, BUT THE THIRD MOTION, IT SEEMS TO ME

20   A LOT OF THAT MAY BE WRAPPED UP IN THE DECISION ON SAMPLING

21   AS WELL.  AND I CAN TELL YOU WHAT ISSUES IN PARTICULAR I

22   THINK THAT MAY APPLY TO.

23           I THINK THAT MAY AFFECT ISSUES 2, 5, 6, 8, AND 9

24   AND MAYBE ONE OR TWO OTHERS.

25           WHAT I'M THINKING IS THAT THERE MAY BE A FEW THINGS

1    IN THE DOCUMENT MOTION, A FEW TOPICS THAT ARE RIPE FOR RULING

2    AND WOULD NOT BE AFFECTED BY ANY SAMPLING DISCOVERY ORDER,

3    BUT THERE MAY BE SEVERAL THAT NEED TO SEE THE OUTCOME OF MORE

4    MEETINGS.

5            MR. MAUSNER:  YOU KNOW, ONE THING I'D HAVE TO NOTE,

6    YOUR HONOR, IS THAT SOME OF THESE THINGS HAVE BEEN COMPLETELY

7    ELIMINATED, LIKE THE COPYRIGHT MATERIALS.  GOOGLE SPENT OVER

8    A WEEK -- THEY HAD COPY SERVICES FOR OVER A WEEK IN OUR

9    OFFICE COPYING ALL OF THE COPYRIGHT MATERIALS.  SO, I DON'T

10   THINK EVEN GOOGLE WOULD CLAIM THAT THAT ONE IS STILL AT

11   ISSUE.

12           THE COURT:  OKAY.  FAIR ENOUGH.

13           MR. MAUSNER:  THERE'S SOME OTHER ONES -- PIC SCOUT

14   COME TO MIND --

15           THE COURT:  ALL RIGHT.  LET ME ASK GOOGLE.  WHAT IS

16   YOUR RESPONSE TO WHAT I JUST SAID?

17           MR. ZELLER:  WELL, I THINK IT'S -- NUMBER ONE, WHAT

18   I'D LIKE IS AN OPPORTUNITY TO GO THROUGH AND LOOK AT IT JUST

19   TO MAKE SURE --

20           THE COURT:  YES.

21           MR. ZELLER:  -- YOU KNOW, ONE BY ONE.  AND I THINK

22   YOUR HONOR'S POINT IS A FAIR ONE.

23           WHAT I GUESS I WAS MOSTLY FOCUSED ON IN TERMS OF

24   THE DOCUMENTS AND WHAT IT IS THAT WE THINK CERTAINLY IS RIPE

25   FOR DISPOSITION AT THIS POINT REALLY ENCOMPASSED THE

1    FINANCIAL DOCUMENTS.  SO, I'VE SORT OF COME OUT FROM THE

2    OTHER END.

3              THE COURT:  SO, THAT'S NUMBER ONE.

4              MR. ZELLER:  YES.

5              THE COURT:  YES.  AND ANYTHING ELSE?

6              MR. ZELLER:  WELL, AGAIN, I MEAN, WE CAN'T -- I

7    DON'T HAVE THE ENTIRE FILING IN FRONT OF ME --

8              THE COURT:  YES, RIGHT.

9              MR. ZELLER:  -- SO I HESITATE TO JUST DO IT ON THE

10   FLY.

11             THE COURT:  YES, I UNDERSTAND.

12             MR. ZELLER:  WHAT I'D LIKE TO DO, YOUR HONOR, IS I

13   CAN -- TODAY WE CAN GO THROUGH IT AND LOOK AT IT IN DETAIL,

14   SEE WHAT IT IS --

15             THE COURT:  OKAY.

16             MR. ZELLER:  -- AND WHAT WE THINK EITHER CAN BE

17   DEFERRED OR DOESN'T REQUIRE A RULING AND THEN GIVE NOTICE TO

18   THE PARTIES AND YOUR HONOR.

19             THE COURT:  OKAY.  SO, WHAT I WOULD LIKE TO KNOW

20   AGAIN BY THE END OF TOMORROW -- IN FACT, I WOULD LIKE IT IN

21   WRITING.

22             MR. ZELLER:  YES.

23             THE COURT:  JUST FOR MY CLERK'S BENEFIT.  JUST FAX

24   A MEMO TO (213) 894-4381 WITH COPY TO ALL COUNSEL INDICATING

25   WHICH ISSUES IN THE DOCUMENT MOTION YOU'RE REQUESTING THAT I

1   HEAR ORAL ARGUMENT ON NEXT TUESDAY.

2           AND ON THE INTERROGATORY MOTION I'M ASSUMING ALL OF

3   THAT IS NOT QUITE READY -- IT'S NOT READY FOR A RULING.

4           AND I'M ASSUMING ON THE RFA MOTION THAT I'M GOING

5   TO HEAR SOME GOOD NEWS, THAT THAT'S BEEN HOPEFULLY RESOLVED

6   BY NEXT WEEK.  AND I GAVE YOU MY THOUGHTS ON THAT A WEEK AGO.

7           THAT'S THE GENERAL SHAPE OF WHAT I THINK NEXT

8   WEEK'S HEARING WILL BE.  IT'S FINANCIAL DOCUMENTS AND MAYBE

9   ONE OR TWO OTHERS IN THE DOCUMENT -- IN GOOGLE'S DOCUMENT

10  MOTION AS WELL AS PERHAPS A FEW RULINGS ON THE RFA MOTION.

11  AND, THEN, FINALLY, AMAZON'S FINANCIAL DOCUMENTS ISSUE.

12          MR. MAUSNER:  WHICH I THINK THAT'S BASICALLY THE

13  SAME AS GOOGLE'S.

14          THE COURT:  YES, I KNOW THAT.  BUT I'M THINKING OUT

15  LOUD AGAIN.  I MEAN, I'M NOT GOING TO ORDER ALL DAMAGES

16  DOCUMENTS.  FINANCIAL CONDITION IS SOMETHING ELSE.  BUT

17  DAMAGES DOCUMENTS, YOU KNOW, THAT'S GOING TO HAVE TO -- I'M

18  NOT GOING TO GRANT THAT.  SO, I ASSUME THERE'S SOMETHING ELSE

19  THAT GOOGLE AND AMAZON ARE SEEKING.

20          MR. CAHN:  YOUR HONOR, THIS IS TIM CAHN FOR AMAZON

21  TALKING.

22          WE BOIL IT DOWN TO BASICALLY THREE CATEGORIES OF

23  FINANCIAL DOCUMENTS -- UNREDACTED STATEMENTS, BACK-UP SOURCE

24  INFORMATION FOR THE FINANCIAL STATEMENT, AND COMMUNICATIONS

25  BETWEEN THE ACCOUNTANT AND PERFECT 10.

1          THE COURT:  OKAY.  AND YOU REACHED AN IMPASSE ON

2    THAT.

3          MR. CAHN:  YES.

4          THE COURT:  I DO NOT WANT TO HEAR ARGUMENT, BUT I'D

5    LIKE TO HEAR JUST BARE BONES WHAT THE DISPUTE IS.

6          MR. MAUSNER.

7          MR. MAUSNER:  WELL, THAT WAS ACTUALLY ONE OF THE

8    THINGS THAT WE WANTED TO DISCUSS TODAY.  THERE ARE CERTAIN

9    THINGS IN THE REDACTED -- WE REDACTED CERTAIN THINGS THAT

10   ABSOLUTELY CANNOT BE GIVEN TO THEM.  THE MAIN ONE IS ANYTHING

11   SHOWING THE AMOUNTS OF SETTLEMENTS IN OTHER CASES.  AND WE

12   CAN'T GIVE THAT TO THEM.  THEY'RE CONFIDENTIAL SETTLEMENT

13   AGREEMENTS.  AND, YOU KNOW, WE CAN'T DO IT WITHOUT THE

14   CONSENT OF THE THIRD PARTY THAT WE SETTLED WITH.

15          AND WE MADE AN ATTEMPT --

16          THE COURT:  WELL, THE COURTS -- I'M NOT TALKING

17   ABOUT THIS CASE, BUT COURTS MAKE THOSE ORDERS ALL THE TIME.

18   AND MAYBE ATTORNEY'S-EYES-ONLY IF I WERE TO GRANT IT.  BUT

19   THAT'S WHAT COURTS DO.

20          MR. MAUSNER:  WELL, IN THE PAST, YOUR HONOR, YOU

21   DID NOT DO THAT, AND YOU DENIED THE MOTION OF ANOTHER PARTY

22   IN THIS EXACT SAME SITUATION AND DID NOT ALLOW SETTLEMENT

23   AGREEMENTS TO BE PRODUCED WHEN THE PARTIES DIDN'T WANT TO

24   PRODUCE THEM.

25          THERE IS STUFF THAT I THINK WE CAN AGREE TO

1   UNREDACT I WAS LOOKING AT THIS MORNING.  ONE IS THERE'S A

2   CATEGORY OF PROFESSIONAL FEES.  THEY HAVE -- AT LEAST FOR THE

3   ATTORNEY'S FEES PART OF THAT I THINK WE CAN UNREDACT THAT.

4   AND WE WILL DO SO.

5           THERE ARE OTHER THINGS, YOU KNOW, SUCH AS MEDICAL

6   -- MEDICAL PAYMENTS FOR MODELS WHICH WE DON'T THINK THAT

7   THEY NEED.  YOU KNOW, MAYBE THERE'S A WAY THAT WE CAN GIVE

8   THEM AN OVERALL FIGURE THAT DOESN'T STATE WHO THE MODEL IS

9   AND HOW MUCH WAS PAID OR WHATEVER.  AND I JUST DON'T THINK

10  THERE'S ANY REASON THAT THEY NEED SOMETHING LIKE THAT.

11          MR. CAHN:  YOUR HONOR, THIS IS TIM CAHN FOR AMAZON.

12          THE RESULT OF PERFECT 10'S REDACTIONS RENDER MANY

13  OF THE FINANCIAL STATEMENTS ALMOST MEANINGLESS IN TERMS OF

14  BEING ABLE TO GAUGE THE FINANCIAL CONDITION OF THE COMPANY,

15  UNDERSTAND FROM WHAT SOURCES OF REVENUE NUMBERS THAT APPEAR

16  ON THE FINANCIAL STATEMENTS MYSTERIOUSLY RELATE TO, OR TO

17  UNDERSTAND WHAT EXPENSES THAT PERFECT 10 IS CLEARLY USING TO

18  CALCULATE THE PROFITABILITY OR LACK OF PROFITABILITY OF ITS

19  BUSINESS AND TO KNOW WHAT THOSE EXPENSES ARE.

20          THE COURT:  WELL, WHY DO YOU NEED ANY -- WHY SHOULD

21  I GIVE YOU ANY OF THIS AT THIS JUNCTION WHEN WE HAVEN'T EVEN

22  GOTTEN SAMPLING.  YOU HAVEN'T EVEN GOTTEN TO THE HEART OF THE

23  CASE.

24          MR. CAHN:  WELL, I THINK JUDGE MATZ HAS INDICATED

25  THAT HE IS GOING TO -- WHEN HE FINALLY DOES RULE ON THE

1    PENDING SUMMARY JUDGMENT MOTIONS, HE'S GOING TO MOVE RATHER

2    SWIFTLY IN THE AMAZON CASE.  AND WE DON'T KNOW WHEN THAT

3    SUMMARY JUDGMENT DEADLINE -- FINAL DEADLINE WILL BE, BUT IT

4    COULD BE, YOU KNOW, WITHIN A MONTH OF WHEN JUDGE MATZ RULES,

5    FOR EXAMPLE.

6          SO, WE BELIEVE THAT FINANCIAL -- THE DISCOVERY AS

7    TO PERFECT 10'S FUNDAMENTAL BUSINESS PROFITABILITY IS

8    CRITICAL TO ARGUMENTS THAT AMAZON WOULD WANT TO BRING ON A

9    SUMMARY JUDGMENT MOTION.

10          MR. ZELLER:  AND IF I MAY ADD FOR GOOGLE, YOUR

11    HONOR, AS WE MENTIONED BEFORE, THERE ARE A VARIETY OF CLAIMS

12    IN THIS CASE THAT ARE MADE AGAINST GOOGLE AND HAVE NOT BEEN

13    MADE IN THE OTHER CASES.  THESE INCLUDE RIGHT OF PUBLICITY.

14    THESE INCLUDE TRADEMARK INFRINGEMENT CLAIMS.

15          SO, EVEN ASSUMING THAT THE DMCA MOTIONS ARE

16    GRANTED, AND THAT THEY KNOCK OUT THE COPYRIGHT INFRINGEMENT

17    CLAIMS, OR EVEN ASSUMING THAT WE LOSE ON SOME OR ALL OF THE

18    DMCA MOTIONS, AND THEN THERE'S A SAMPLING PROCEDURE USED FOR

19    THE COPYRIGHT INFRINGEMENT, THAT WOULD NOT OBVIATE OUR NEED

20    FOR THE FINANCIAL DISCOVERY.

21          AND IT IS CERTAINLY -- AS WAS DESCRIBED EARLIER --

22    IT IS HOLDING UP DEPOSITIONS.  IT IS HOLDING UP OUR ABILITY

23    TO TAKE --

24          THE COURT:  ALL RIGHT.

25          MR. ZELLER: -- DISCOVERY THAT --

1          THE COURT:  OKAY.

2          MR. ZELLER: -- WILL AT SOME JUNCTURE NEED TO BE

3     TAKEN --

4          THE COURT:  ALL RIGHT.

5          MR. ZELLER: -- REGARDLESS OF HOW THE COPYRIGHT

6     INFRINGEMENT CLAIMS ARE TREATED.

7          ALSO, WITH RESPECT TO -- IN ANSWER TO YOUR

8     QUESTION, IT IS THAT MANY OF THESE DOCUMENTS ARE DOCUMENTS

9     THAT PERFECT 10 HAS ALREADY PRODUCED, AT LEAST THAT'S THE

10    BACK-UP, OF COURSE, OF AT LEAST THE FINANCIAL STATEMENTS

11    THEMSELVES.  THOSE ARE HEAVILY REDACTED.

12         AND IT JUST SEEMS THAT PARTICULARLY AS TO THOSE

13    KINDS OF STATEMENTS, THERE'S ABSOLUTELY NO REASON WHY WE

14    SHOULD NOT HAVE THAT INFORMATION NOW.  I MEAN, THIS IS FAR

15    MORE WORK FOR PERFECT 10 TO REDACT ALL THIS INFORMATION THAN

16    IT IS TO SIMPLY PRODUCE IT AS THESE EXIST.

17         AND ONE THAT I HAD IN MIND PARTICULARLY WAS THE

18    "PERFECT 10, INC. FINANCIAL REPORT, MAY 31ST, 2009."  THE

19    ENTIRE EQUITY SIDE OF THIS FINANCIAL STATEMENT HAS BEEN

20    REDACTED.

21         SO, THERE ARE MAJOR COMPONENTS OF WHAT ONE WOULD

22    WANT TO KNOW ABOUT THE FINANCIALS AND TO TIE IT IN

23    SPECIFICALLY, FOR EXAMPLE, TO THE CLAIMS THAT WOULD NOT BE

24    TOUCHED UPON EITHER BY THE SAMPLING OR THE DMCA MOTIONS

25    REGARDLESS OF THEIR DISPOSITION WOULD BE TRADEMARK

1    INFRINGEMENT.  IN ISSUE IS GOING TO BE THE VALUE OF THE

2    PERFECT 10 MARK.  AND THAT ISSUE IS JUST NOT GOING TO BE

3    OBVIATED BY ANY OF THESE OTHER POTENTIAL CONTINGENCIES.

4         THE COURT:  OKAY.  SO, HAVE -- I THINK MR. MAUSNER

5    GAVE ME -- NO, MR. ZELLER GAVE ME THREE AREAS THAT YOU'RE

6    GOING TO FOCUS ON NEXT WEEK.  AND THOSE AREAS -- THE

7    UNREDACTED STATEMENTS, BACK-UP DOCUMENTS, AND COMMUNICATIONS

8    BETWEEN THE ACCOUNTANT AND PERFECT 10.

9         THAT'S IT IN A NUTSHELL AS FAR AS AMAZON AND GOOGLE

10   ARE CONCERNED?  THAT'S THE HEART OF WHAT YOU'RE SEEKING.

11        MR. ZELLER:  YES.  AND UNREDACTED STATEMENTS --

12        THE COURT:  YES, I SAID THAT.

13        MR. ZELLER:  -- OF THE FINANCIALS THAT HAVE BEEN

14   PRODUCED.

15        THE COURT:  YES.  OKAY.  I MEAN, WHEN I FOCUS ON

16   GETTING READY, I JUST WANT TO -- I'M GOING TO FOCUS ON THOSE.

17        AND AMAZON AGREES WITH THAT?

18        MR. CAHN:  YES.

19        THE COURT:  OKAY.

20        ALL RIGHT.  SO, THEN, TO REITERATE WHAT I SAID FIVE

21   MINUTES AGO, I NEED TO KNOW IN THE DOCUMENT MOTIONS AND IN

22   THE AMAZON MOTION WHETHER THERE'S ANYTHING ELSE THAT I'M

23   GOING TO BE ASKED TO RULE ON NEXT WEEK OTHER THAN ISSUE

24   NUMBER ONE AND THE CORRESPONDING PORTION IN -- ISSUE NUMBER

25   ONE IN THE DOCUMENT MOTION AND THE CORRESPONDING PORTIONS OF

1    AMAZON MOTIONS.

2              AND, THEN, SECONDLY, POTENTIALLY BUT HOPEFULLY NOT

3    ANY RFA ISSUES.

4              ANYTHING ELSE IN GOOGLE'S DOCUMENT MOTION THAT THEY

5    WISH ME TO CONSIDER? -- OTHER THAN ISSUE ONE, THEY'LL LET ME

6    KNOW BY FAX BY THE END OF TOMORROW.

7              MR. ZELLER:  YES.  AND ONE -- APART FROM THE

8    SUBSTANTIVE ISSUES I KNOW THAT THERE ARE A COUPLE OF ISSUES

9    PERTAINING TO PROTECTIVE ORDERS AS WELL AS THE BATES STAMPING

10   OF THE DOCUMENTS WHICH IS CAUSING SOME ISSUES.  AND I KNOW

11   THAT THOSE ARE ADDRESSED IN THE DOCUMENT ISSUE.

12             THE COURT:  WELL --

13             MR. MAUSNER:  CAN I SAY SOMETHING?

14             THE COURT:  IN A MINUTE.

15             THINGS LIKE BATES STAMPING, AGAIN, THAT'S GOING TO

16   BE SUBSUMED WITHIN A RULING ON SAMPLING.

17             WON'T IT?

18             MR. ZELLER:  NO.  THIS IS -- THIS DEALS WITH THE

19   PRODUCTION THAT PERFECT 10 HAS ALREADY MADE TODAY.

20             THE COURT:  RIGHT.

21             MR. ZELLER:  BUT THE DOCUMENTS ARE NOT BATES

22   STAMPED.  THERE ARE NO CONTROL NUMBERS.

23             THE COURT:  RIGHT, RIGHT.  BUT WHY WOULD I ORDER

24   THAT AT THIS POINT UNTIL I'VE RULED ON THE SAMPLING ISSUE.

25   WHY AM I GOING TO HAVE THEM BATES STAMP EVERYTHING THAT

1   THEY'VE PRODUCED.

2           MR. ZELLER:  IT'S ALREADY A PAST ISSUE IN THE SENSE

3   THAT WE NEED TO HAVE CONTROLS OF WHAT HAS ALREADY BEEN

4   PRODUCED.  AND THAT IS RELEVANT EVEN TO THE DMCA ISSUES AND

5   APART FROM SAMPLING.  A GOOD BULK OF THAT PRODUCTION IS THE

6   CONTENT OF DMCA NOTICES.  THEY'VE BEEN PRODUCED TO US ON HARD

7   DRIVE WITHOUT ANY CONTROL NUMBERS, WITHOUT ANY REAL

8   DOCUMENTATION AS TO WHAT'S ON THERE.

9           AND THERE ALREADY ARE DISPUTES AS TO WHAT HAS BEEN

10  PRODUCED AND WHAT HASN'T.  AND, OF COURSE, IT IS CUSTOMARY IN

11  ANY LITIGATION, PARTICULARLY ONE OF THIS SIZE, FOR THERE TO

12  BE BATES NUMBERS OR CONTROL NUMBERS OF SOME SORT ASSOCIATED

13  WITH THE PRODUCTION.  AND THAT'S WHAT WE DON'T HAVE.

14          MR. MAUSNER:  MAY I RESPOND -- MAY I RESPOND TO

15  THAT, YOUR HONOR?

16          THE COURT:  BRIEFLY.

17          MR. MAUSNER:  THERE HAVE BEEN -- THERE HAVE BEEN

18  SEVEN SUMMARY JUDGMENT MOTIONS THAT HAVE BEEN FILED WITHOUT

19  HAVING ANY PROBLEMS AT ALL REGARDING THIS STAMPING EVERY

20  DOCUMENT.

21          THE WAY WE PRODUCED IT TO THEM IS VERY ORGANIZED.

22  IT'S ON DISKS AND A HARD DRIVE.  AND FOLDERS THAT HAVE

23  SUBFOLDERS AND SO ON.  IT'S A MUCH MORE ORGANIZED WAY THAN

24  JUST STAMPING EVERY DOCUMENT.  THESE ARE ORGANIZED.

25          AND, YOU KNOW, SINCE THIS MOTION WAS FILED, GOOGLE

1   HAS FILED THREE SUMMARY JUDGMENT MOTIONS.  AMAZON HAS FILED

2   AT LEAST ONE OR TWO SUMMARY JUDGMENT MOTIONS.  THIS HASN'T

3   BEEN A -- YOU KNOW, HASN'T PREVENTED THEM FROM FILING THEIR

4   SUMMARY JUDGMENT MOTIONS.

5          WE'VE ALSO FILED OUR SUMMARY JUDGMENT MOTIONS.  AND

6   NONE OF THIS HAS PREVENTED ANY PARTY FROM FILING THESE

7   MOTIONS.

8          I'D ALSO NOTE THAT AWHILE BACK -- AND THIS WAS

9   BEFORE FURTHER PRODUCTIONS HAD TAKEN PLACE -- MR. MALUTTA,

10  WHO IS ONE OF AMAZON'S ATTORNEYS, STATED THAT HE GOT

11  ESTIMATES FROM CONTRACTORS AS TO HOW MUCH IT WOULD COST TO

12  BATES STAMP ALL OF THESE DOCUMENTS.  AND THE ESTIMATE HE GOT

13  WAS $1 MILLION.

14         NOW, TO PUT PERFECT 10 TO THE COST OF PAYING $1

15  MILLION TO STAMP -- NUMBER STAMP ON ALL OF THESE DOCUMENTS

16  WHEN THERE'S BEEN NO PROBLEM AT ALL IN DOING THESE SUMMARY

17  JUDGMENT MOTIONS WITHOUT IT SEEMS TO BE VERY BURDENSOME AND

18  WASTEFUL AT THIS POINT.

19         MR. ZELLER:  MIKE ZELLER.

20         IT IS JUST PUZZLING THAT A PLAINTIFF WOULD BE

21  ASSERTING IN ANY CASE IN THIS DAY AND AGE THAT BATES NUMBERS

22  SHOULDN'T BE ATTACHED TO THEIR PRODUCTION.  I DON'T -- IT'S

23  JUST -- IT'S ONE OF THOSE SELF-EVIDENT PROPOSITIONS.

24         AND I HAVE NO IDEA WHAT THE BASIS WAS OR THE

25  ACCURACY OF THE REPRESENTATION BEING MADE ABOUT WHAT MR.

1   MALUTTA SAID.  CERTAINLY AREN'T HEARING FROM PERFECT 10 AN

2   ACTUAL ESTIMATE OR WHY THESE WEREN'T STAMPED IN THE FIRST

3   PLACE.  I'VE NEVER HAD A CASE, AND I WOULD BE HARD-PRESSED

4   FOR ANY ATTORNEY ON THIS PHONE TO IDENTIFY A CASE, LET ALONE

5   ONE OF THIS MAGNITUDE, WHERE A MAJOR PARTY TO IT WASN'T

6   STAMPING ITS PRODUCTION AND PROVIDING AT LEAST SOME

7   IDENTIFYING CONTROL INFORMATION.

8           THE COURT:  WELL, IT WOULD HELP ME TO KNOW A

9   REALISTIC COST ESTIMATE.

10          MR. MAUSNER:  WELL, YOU KNOW, WE HAVEN'T HAD A COST

11  ESTIMATE DONE.  BUT AMAZON HAD IT DONE.   AND MR. MALUTTA --

12  THIS IS ON THE RECORD OF THE HEARING IN FRONT OF JUDGE MATZ

13  -- STATED THAT IT'S $1 MILLION.

14          MR. JANSEN:  OKAY.  THAT'S -- THIS IS MARK JANSEN.

15          I DON'T BELIEVE MR. MALUTTA'S ON THE PHONE RIGHT

16  NOW, BUT I BELIEVE THAT IS TOTALLY TAKEN OUT OF CONTEXT BY

17  MR. MAUSNER.

18          THE ESTIMATE -- TO THE EXTENT THERE WAS AN

19  ESTIMATE, IT WAS JUST A VERY GENERAL ESTIMATE, WHAT ARE THE

20  COSTS TO ACTUALLY ORGANIZE PERFECT 10'S PRODUCTION -- BECAUSE

21  PERFECT 10, ALTHOUGH MR. MAUSNER CLAIMS OTHERWISE, THE

22  DOCUMENT PRODUCTION THEY'VE MADE IS COMPLETELY UNORGANIZED.

23  THERE IS NO LOGIC TO THE PRODUCTION.  IT IS ESSENTIALLY AN

24  ELECTRONIC EQUIVALENT OF THE OLD-FASHIONED MIX-UP OF PAPERS

25  IN TOTALLY UNRELATED WAYS.

1          OUR PARALEGAL -- AND WE HAVE STARTED TO GO THROUGH

2     IT TO PREPARE FOR DEPOSITIONS.  IT'S ONE THING TO FILE A

3     SUMMARY JUDGMENT MOTION, YOUR HONOR, BUT IT'S HARD TO --

4     ACTUALLY TO PREPARE FOR DEPOSITION AND TRIAL IN A CASE WHERE

5     DOCUMENTS ARE NOT ORGANIZED, THEY'RE NOT NUMBERED.  AND WE

6     EXPECTED -- WE CAN'T EVEN FIND A COPY OF PERFECT 10'S

7     MAGAZINES IN THIS PRODUCTION.  YOU'D THINK AT THE VERY LEAST

8     THEY WOULD HAVE PRODUCED THEIR MAGAZINES, WHICH IS THE BASIC

9     PREMISE OF THEIR BUSINESS, AND IN WHICH THEY CLAIM ALL OF

10    THEIR COPYRIGHTED MATERIALS WERE FIRST PUBLISHED TO US IN AN

11    ORGANIZED GROUP.  BUT WE HAVEN'T EVEN GOTTEN THEIR MAGAZINES

12    --

13          MR. MAUSNER:  THAT'S --

14          MR. JANSEN:  -- IN ANY ORGANIZED WAY.

15          MR. MAUSNER:  AND MARK --

16          MR. JANSEN:  AND WE CANNOT FIND THOSE MAGAZINES,

17    JEFF.

18          MR. MAUSNER:  MARK -- MARK, AN ATTORNEY FROM YOUR

19    OFFICE AND A PARALEGAL FROM YOUR OFFICE WENT TO OUR OFFICE

20    LAST WEEK.  AND WE GAVE THEM EVERYTHING IN A CONFERENCE ROOM.

21    OKAY.  AGAIN.  WE GAVE THEM ALL OF THE COPYRIGHT

22    CERTIFICATES.  WE GAVE THEM ALL OF THE DEPOSIT MATERIALS,

23    WHICH ARE THE DISKS AND THE MAGAZINES.  AND THEY WERE SITTING

24    RIGHT THERE IN THE CONFERENCE ROOM.  AND THEY'RE STILL

25    AVAILABLE IN MY OFFICE.  GOOGLE SEVERAL MONTHS AGO SPENT OVER

1   A WEEK WITH A COPY SERVICE.  YOU KNOW, ONE COPY SERVICE FOR

2   THE HARDCOPIES AND ANOTHER ONE FOR THE DISKS.  AND THEY

3   COPIED EVERYTHING.

4           AND I'VE TOLD YOU SEVERAL TIMES YOU HAVE A CHOICE.

5   YOU CAN EITHER GET AN EXACT COPY WHAT GOOGLE COPIED OR YOU

6   CAN REPRODUCE EXACTLY -- DO THE COPYING YOURSELF.  YOU CAN

7   SPEND A WEEK DOING IT.  BUT WE'VE GIVEN YOU ALL OF THAT STUFF

8   IN THE PAST.  IT'S ALL ON HARD DRIVES.

9           MR. JANSEN:  OKAY.  NOW, JUDGE HILLMAN, THIS IS

10  MARK JANSEN.

11          MR. MAUSNER -- GOOGLE BROUGHT THIS MOTION.  I'M

12  SIMPLY EXPLAINING WE HAVE HAD A REAL PROBLEM IN THE WAY

13  DOCUMENTS ARE PRODUCED.  THEY ARE NOT NUMBERED.  AND FOR THE

14  VERY FIRST TIME ON THIS PHONE CALL MR. MAUSNER SEEMS TO BE

15  INDICATING THAT THEIR FIRST -- PERFECT 10'S FIRST DOCUMENT

16  PRODUCTION IN THIS CASE IS MAKING AVAILABLE THE DOCUMENTS IN

17  HIS OFFICE LAST TUESDAY.

18          MR. MAUSNER:  THAT'S NOT TRUE --

19          MR. JANSEN:  I THINK --

20          MR. MAUSNER:  THEY HAD THAT --  YOU'VE HAD THAT

21  STUFF FOR --

22          MR. JANSEN:  MR. MAUSNER, MR. MAUSNER, PLEASE DON'T

23  INTERRUPT ME.

24          YOUR HONOR, WHAT I WAS REFERRING TO WHEN I WAS

25  MAKING THE COMMENT WAS THAT WE HAVE GOTTEN OVER THE YEARS A

1    LARGE ELECTRONIC PRODUCTION FOR, YOU KNOW, DISKS OF WHAT --

2    AS MR. MAUSNER SAYS, FOLDERS WITHIN SUB-FOLDERS WITHIN

3    SUB-FOLDERS OF ALLEGEDLY, QUOTE, ORGANIZED MATERIAL THAT WE

4    HAVE UNDERSTOOD TO BE THEIR DOCUMENT PRODUCTION.

5            BUT AS I SAID, YOU WOULD THINK AT THE VERY LEAST IF

6    WE WERE GETTING AN ORGANIZED PRODUCTION AS MR. MAUSNER CLAIMS

7    WE'RE GETTING, WE WOULD HAVE AT LEAST RECEIVED FULL COPIES OF

8    EACH OF THE PERFECT 10 MAGAZINES AS PART OF THEIR INITIAL

9    PRODUCTION.  I ASSUME IT WOULD BE PART OF THEIR INITIAL

10   DISCLOSURE THAT JUST THE COPYRIGHTED -- THAT THE MAIN, YOU

11   KNOW THE MAIN IMAGES ON WHICH THEY'RE BASING THEIR COMPLAINT.

12   BUT WE'VE NEVER, AS FAR AS I'M AWARE, EVER RECEIVED AN

13   ORGANIZED PRODUCTION OF ALL THE -- ALL OF THOSE MAGAZINES IN

14   ONE PLACE.  WE CAN'T EVEN LOCATE THEIR MAGAZINES IN OUR

15   DOCUMENT PRODUCTION TO DATE.

16           THE DOCUMENT PRODUCTION THAT WAS ALLEGEDLY MADE

17   LAST WEEK WAS, AGAIN, TOTALLY UNORGANIZED.  BOXES OF ALLEGED

18   COPYRIGHT DEPOSIT MATERIAL THAT HAS NO RELATIONSHIP

19   WHATSOEVER TO THE REGISTRATION APPLICATIONS.  AND THAT'S

20   ANOTHER ISSUE WHICH I THINK WE'LL HAVE TO ADDRESS AT A FUTURE

21   HEARING.  BUT THEY HAVE ABSOLUTELY NO CORRELATION BETWEEN

22   THEIR COPYRIGHT AND REGISTRATION APPLICATION AND THE

23   CORRESPONDING COPYRIGHT DEPOSIT MATERIAL.  AND THAT'S GOING

24   TO BE A FUNDAMENTAL PROOF ISSUE AT TRIAL.  AND IT MAY BECOME

25   A DISCOVERY ISSUE WE HAVE TO ADDRESS LATER, NOT ON THIS PHONE

1   CALL, I HOPE, AND NOT ON THE PENDING MOTION.

2          THE COURT:  ALL RIGHT.  HERE IS THE QUESTION I HAVE

3   FOR ALL OF YOU.  AND I DON'T WANT AN ANSWER BECAUSE -- TODAY

4   -- BECAUSE YOU'RE NOT GOING TO BE ABLE TO GIVE IT TO ME.

5   BUT -- BECAUSE IS THIS NOT THE CASE THAT CALLS OUT FOR SOME

6   SORT OF CREATIVE DOCUMENT IDENTIFICATION IN A COST-EFFECTIVE

7   WAY SO THAT EVERYONE KNOWS WHAT HAS BEEN PRODUCED AND CAN

8   REFER TO THE SAME DOCUMENT FOR WHATEVER PURPOSE IT MAY BE

9   USED, WHETHER IT BE FOR DEPOSITION, SUMMARY JUDGMENT, OR

10  TRIAL WITHOUT GOING TO A MILLION-DOLLAR EXPENSE, WHICH I

11  CERTAINLY AM NOT GOING TO ORDER THAT.

12         ON THE OTHER HAND, I HEAR LOUD AND CLEAR WHAT THE

13  DEFENDANTS' PROBLEMS ARE.

14         AND THEY'RE DEALING WITH A MESS, MR. MAUSNER, AN

15  ABSOLUTE INDECIPHERABLE MESS THAT DR. ZADA AND PROBABLY DR.

16  ZADA ALONE FULLY UNDERSTANDS WHAT IT COMPRISES.  SO THAT --

17  YOU KNOW, THAT'S REALLY WHAT WE'LL NEED TO DISCUSS NEXT WEEK.

18         AND YOU TALK ABOUT A MEET AND CONFER.  THAT'S

19  WHAT I NEED A MEET AND CONFER ON AS WELL AS SAMPLING IS HOW

20  TO GET CONTROL OF THIS CASE AND THESE DOCUMENTS SO THAT

21  EVERYTHING IS FIXED IN TIME AND EVERYTHING IS SEARCHABLE AND

22  --

23         MR. MAUSNER:  IT IS ACTUALLY SEARCHABLE NOW BECAUSE

24  ADOBE FORMAT IS THE BEST WAY TO SEARCH SOMETHING.  TIF

25  DOCUMENTS ARE JUST, YOU KNOW, LOOSE DOCUMENTS THAT ARE

1   NUMBERED IN SOME RANDOM WAY.  WE HAVE THEM ARRANGED

2   LOGICALLY.  THEY'RE IN, YOU KNOW, FILES AND SUB-FILES AND

3   SUB-FILES THAT, YOU KNOW, ARRANGE THEM TO EXACTLY POINTING TO

4   WHAT THEY ARE.  AND WE'LL SHOW YOU ON THE 22ND.

5           THE COURT:  BUT HAVE YOU SHOWN THEM?  HAS THERE

6   BEEN TESTIMONY OR DECLARATION OR SOMETHING THAT SAYS HOW

7   THEY'RE ORGANIZED.

8           MR. MAUSNER:  YES, THERE HAVE BEEN.  NOW, THERE HAS

9   BEEN IN CONNECTION WITH THIS MOTION AND OTHER THINGS THAT --

10  OTHER THAN WHAT'S BEEN FILED IN COURT.  BUT, SURE, WE'LL DO

11  IT ON THE 22ND.

12          MR. ZELLER:  THIS IS MIKE ZELLER AGAIN.  I'M NOT

13  REALLY SURE THE BASIS OF WHY MR. MAUSNER IS SAYING SOME OF

14  THESE POINTS ABOUT HIS PRODUCTION.  FOR A FACT, A NUMBER OF

15  THESE FILES ARE NOT SEARCHABLE.  AND THEY CERTAINLY ARE

16  DISORGANIZED.  AND I CERTAINLY THINK THAT THE BEST WAY OF

17  DOING THIS RATHER THAN TALKING IN GENERALITIES AND MAKING

18  REPRESENTATIONS ON BOTH SIDES IS WE WILL BRING SOME EXAMPLES

19  FOR YOUR HONOR TO SEE AT THE HEARING.

20          MR. MAUSNER:  WE WILL DO SO, ALSO.  THE ONLY ONES

21  THAT AREN'T SEARCHABLE ARE THE ONES THAT WERE NOT SEARCHABLE

22  IN THEIR NATIVE FORMAT.  IF THEY WERE SEARCHABLE IN THEIR

23  NATIVE FORMAT, WE'VE KEPT THEM THAT WAY.

24          THE COURT:  HAVE YOU CONSIDERED JOINTLY RETAINING

25  AN I.T. PERSON AS A NEUTRAL TO SOLVE THIS IMPASSE?

1          MR. MAUSNER:  WE HAVE -- NO, WE HAVE NOT DONE THAT,

2     YOUR HONOR.

3          THE COURT:  WOULD THAT BE SOMETHING WORTH

4     DISCUSSING?

5          MR. MAUSNER:  POSSIBLY, YES.

6          THE COURT:  MR. ZELLER, WHAT DO YOU THINK?

7          MR. ZELLER:  I THINK THAT'S A -- I THINK THAT'S A

8     VERY PROMISING IDEA, YOUR HONOR.  I MEAN, I THINK THAT --

9     THEY'RE CERTAINLY ARE, AND I'VE USED IT IN SOME OTHER CASES,

10    ALTHOUGH, NOT QUITE LIKE THIS IN THIS PARTICULAR

11    CIRCUMSTANCE.  BUT THERE CERTAINLY ARE SERVICES THAT OPERATE

12    DATA ROOMS.

13         YOU KNOW, CERTAINLY PART OF IT WILL DEPEND ON THIS

14    KIND OF FUNDAMENTAL ISSUE ABOUT ORGANIZATION AND HOW IT'S

15    PROVIDED TO US.  THAT MAY AT LEAST ASSIST IN KNOWING WHAT THE

16    UNIVERSE OF MATERIALS ARE SO WE DON'T HAVE DISPUTES ABOUT

17    WHAT WE WERE GIVEN AND WHEN WE WERE GIVEN IT WITH RESPECT TO

18    ELECTRONIC FILES.  AND, SO, THAT MAY HELP ON -- I THINK ON

19    SOME POTENTIAL FRONT.

20         THE COURT:  YOU KNOW I'M NOT WORRIED ABOUT IMPOSING

21    A LITIGATION EXPENSE ON EVERYONE INCLUDING PERFECT 10,

22    WHATEVER ITS FINANCIAL CONDITION MAY BE.  BUT I WANT THERE TO

23    BE, YOU KNOW, A REALISTIC RELATIONSHIP TO SOME GOOD COMING

24    OUT OF THIS, SOMETHING WORTHWHILE COMING OUT OF IT.  AND

25    BATES STAMPING MAY BE THE LEAST EFFECTIVE PRODUCTIVE AND

```
 1    EXPENSIVE THING THAT I COULD DO, SO.

 2            MR. ZELLER:  I GUESS I GO BACK TO THAT ISSUE BUT --

 3    IN A SECOND.  BUT THE ISSUE OF A DATA ROOM, FOR EXAMPLE,

 4    WHERE PEOPLE PROVIDE, YOU KNOW, INFORMATION OR DATA, WHATEVER

 5    THE CASE MAY BE, TO AN I.T. NEUTRAL, THOSE OPERATIONS TEND TO

 6    BE RELATIVELY INEXPENSIVE.  THEY'RE NOT, YOU KNOW, FREE, OF

 7    COURSE.  BUT THEY ARE NOT A CONSIDERABLE EXPENSE.

 8            BUT ON THE OTHER HAND -- I MEAN, I KNOW FOR A FACT

 9    BECAUSE CERTAINLY I HAVE LOTS OF CASES, INCLUDING THIS ONE,

10    WHERE WE PRODUCED DOCUMENTS IN ELECTRONIC FORM.  NORMALLY YOU

11    CONVERT THEM TO TIF FILES.  YOU ASSOCIATE A BATES NUMBER WITH

12    IT.  IT'S EMBEDDED IN THE DOCUMENT.  IT'S JUST -- IT IS NOT

13    ROCKET SCIENCE.  AND IT'S NOT THAT DIFFICULT.  AND IT'S NOT

14    THAT EXPENSIVE.

15            PERHAPS, PERFECT 10 HAS MADE IT MORE DIFFICULT

16    BECAUSE OF THE FACT THAT IT PRODUCED THESE PRIOR FILES IN A

17    NON-SEARCHABLE FORMAT WITHOUT CONTROL NUMBERS AND IN A HIGHLY

18    DISORGANIZED, FRANKLY, INCOMPREHENSIBLE MANNER.

19            THE COURT:  LET ME ASK --

20            MR. ZELLER:  SO, THERE'S --

21            THE COURT:  LET ME ASK YOU THIS.

22            MR. ZELLER:  UH-HUM.

23            THE COURT:  WELL, FINISH YOUR THOUGHT.  I'M SORRY.

24            MR. ZELLER:  SURE.

25            THE COURT:  FINISH YOUR THOUGHT.  I INTERRUPTED
```

1    YOU.

2              MR. ZELLER:  SURE.  NO, NO.  THAT'S -- I THINK THAT

3    WAS --

4              THE COURT:  ALL RIGHT.

5              WHAT I WOULD LIKE TO KNOW IS CAN WHAT YOU JUST

6    DESCRIBED, WHICH DOES INCLUDE SORT OF DIGITAL BATES STAMPING

7    --

8              MR. ZELLER:  UH-HUM.

9              THE COURT: -- YOU KNOW, CAN I GET ONE OR TWO

10   ESTIMATES OF WHAT THAT WOULD COST WITHIN A WEEK -- YOU KNOW,

11   BY NEXT WEEK.

12             MR. ZELLER:  YES.  I'LL SEE WHAT WE CAN DO ON OUR

13   FRONT.  CERTAINLY, FOR MANY CASES JUST AS A MATTER OF COURSE

14   WE TAKE THE DOCUMENTS, YOU KNOW, WHATEVER FORMAT THEY'RE IN,

15   THEY GET CONVERTED TO TIF.  OUTSIDE LITIGATION SUPPORT

16   SERVICES DO THIS ALL THE TIME.  ALSO, A LOT OF FIRMS HAVE THE

17   CAPABILITY OF DOING IT IN-HOUSE.  AND THEN THAT TIF FORMAT,

18   IT'S EASILY SEARCHABLE.  I MEAN IT'S OCR.  SO, YOU CAN

19   ACTUALLY SEARCH THE WHOLE THING, WHICH IS QUITE DIFFERENT

20   FROM WHAT WE CURRENTLY HAVE IN THIS PRODUCTION.

21             BUT WE CAN CERTAINLY -- WE CAN CERTAINLY GET YOU

22   ESTIMATES.  I KNOW THAT WE DO THEM AS A MATTER OF COURSE IN

23   MANY OTHER CASES.

24             THE COURT:  WELL, THEY -- I MEAN THIS IS, YOU KNOW,

25   I'M NOT TYING YOU DOWN TO WHAT -- I'M NOT HOLDING YOU TO ANY

1   NUMBER YOU GIVE ME.  BUT BASED ON YOUR PRIOR EXPERIENCE AND

2   YOUR GENERAL KNOWLEDGE OF WHAT --

3            (TAPE CHANGED TO SIDE 2.)

4            THE COURT:  -- BASED ON WHAT YOU'VE RECEIVED IN

5   THIS CASE FROM PERFECT 10, I MEAN CAN YOU GIVE ME A WILD

6   ESTIMATE.

7            MR. ZELLER:  UNFORTUNATELY, I THINK IT WOULD BE

8   JUST A SHEER GUESS BECAUSE THE REALITY IS IS THAT I KNOW THAT

9   THERE ARE DRIVES THAT HAVE BEEN PRODUCED BY PERFECT 10 THAT I

10  HAVE NEVER LOOKED AT FOR THE SIMPLE REASON THAT OTHER PEOPLE

11  DESCRIBED THEM AS JUST SUCH A MESS AND INCOMPREHENSIBLE THAT

12  IT WOULDN'T BE WORTH MY TIME.  SO, FRANKLY, I WOULD JUST BE

13  GIVING SUCH A WILD GUESS.  BUT I CAN GIVE THE COURT

14  INFORMATION --

15           THE COURT:  BUT I MEAN UNDER --

16           MR. ZELLER:  -- IN SHORT ORDER.

17           THE COURT:  UNDER A HUNDRED THOUSAND.

18           MR. ZELLER:  I -- IT'S A GUESS.  I WOULD -- I WOULD

19  IMAGINE THAT IS TRUE.  YOU KNOW, CERTAINLY THE KINDS OF RATES

20  THAT I AM CHARGED FOR DOING PRODUCTIONS, THAT'S WHAT I WOULD

21  -- I WOULD EXPECT IT WOULD BE BELOW THAT NUMBER.  BUT, YOU

22  KNOW, A LARGE PART OF IT DEPENDS TOO ON VARIABLES SUCH AS,

23  YOU KNOW, WHAT'S THE DIFFICULTY OF THE CONVERSION FROM THE

24  NATIVE FORMAT TO A TIF FILE.  OBVIOUSLY, SOME FILES -- DATA

25  FILE FORMATS ARE MORE EXOTIC THAN OTHERS AND REQUIRE, YOU

1   KNOW, MORE EFFORT AND TIME.  MUCH OF IT IS JUST REALLY TIME

2   BASED.

3           BUT LET ME PUT IT THIS WAY.  I MEAN, I DO LARGE

4   PRODUCTIONS WHERE IN THE COURSE OF A DAY OR TWO I TURN OVER

5   ALL MANNER OF ELECTRONIC FILES TO THE OUTSIDE LITIGATION

6   FIRM.  AND THEY SEND THE THING BACK, YOU KNOW, IN A FULLY

7   SEARCHABLE TIF FORMAT DOCUMENT WITH BATES NUMBERS IN A DAY OR

8   TWO.  SO, IT'S JUST --

9           THE COURT:  THAT --

10          MR. ZELLER:  IT'S NOT THAT --

11          THE COURT: -- CAN'T BE A HUNDRED THOUSAND DOLLARS.

12          MR. ZELLER:  RIGHT.  EXACTLY.  I MEAN THAT'S JUST

13  NOT ANYWHERE NEAR THE RATES OF WHAT I'M NORMALLY SEEING.

14          IT ALSO -- PART OF MY HESITATION IS BECAUSE I DON'T

15  WANT TO BE WRONG ON THESE NUMBERS.  BUT, ALSO, OF COURSE,

16  USUALLY WITH THESE LITIGATION FIRMS, THE OUTSIDE KIND OF

17  SUPPORT FIRMS, THEY'RE DOING A LOT OF OTHER THINGS FOR US,

18  TOO.  SO, I DO SEE BILLS.

19          THE COURT:  UH-HUM.

20          MR. ZELLER:  BUT, YOU KNOW, EVERYTHING THAT GOES

21  UNDERNEATH IT, YOU KNOW, WOULD BE A LITTLE BIT -- AGAIN, IT

22  WOULD JUST BE A GUESS.  AND I CAN GET -- I CAN GET YOU HARD

23  INFORMATION ON THIS --

24          THE COURT:  THAT --

25          MR. ZELLER:  -- YOU KNOW, IN SHORT ORDER.

1          THE COURT:  THAT WOULD BE GREAT.

2          MR. MAUSNER:  JUST --

3          THE COURT:  YES.

4          MR. MAUSNER:  -- TO COMPLETE THE RECORD, YOUR HONOR.

5          THIS IS FROM THE AUGUST 18TH, 2008 HEARING BEFORE

6    JUDGE MATZ.  MR. MALUTTA, COUNSEL FOR AMAZON, STATED, QUOTE,

7              "WE HAVE HAD QUOTES FROM VENDORS.  AND IT'S NEAR

8              A MILLION DOLLARS TO CONVERT THEIR NATIVE FILES

9              INTO SOMETHING THAT'S USABLE IN A STANDARD

10             LITIGATION DATABASE, CLOSE QUOTE.

11         THE COURT:  OKAY.

12         MR. MAUSNER:  SO.

13         THE COURT:  ALL RIGHT.  BUSINESS IS TOUGH.  MAYBE

14   THEY'LL MAKE A GOOD OFFER NOW.

15         ALL RIGHT.  SO, I THINK I KNOW WHERE WE ALL ARE SO

16   THAT -- THIS ISSUE, THIS BATES STAMP ISSUE IS ISSUE IX, ROMAN

17   NUMERAL IX, I GUESS, IN THE DAMAGES MOTION.  SO, WE HAVE

18   ISSUE I, WHICH IS DAMAGES CLAIMS AND FINANCIAL CONDITION.  WE

19   HAVE ISSUE IX.  AND I'LL HEAR WHAT ELSE, IF ANY, THAT GOOGLE

20   AND AMAZON WANT A RULING ON NEXT WEEK.

21         YOU'RE GOING TO DO YOUR BEST COLLECTIVELY, THAT IS,

22   GOOGLE AND PERFECT 10, ON THE RFAS.  INTERROGATORY 1 AND 3

23   MOTION WILL BE NOT HEARD NEXT WEEK PENDING FURTHER

24   DISCUSSIONS.

25         AND, BY THE WAY, HAS GOOGLE HAD -- MR. ZELLER, HAVE

1   YOU HAD A CHANCE TO LOOK AT THE WAY IT WAS DONE IN MICROSOFT,

2   THE SAMPLE PROTOCOL, WHICH MAY BE OF SOME USE IN THIS CASE.

3           MR. ZELLER:  THE SHORT ANSWER IS TO A DEGREE WE

4   HAVE.  IF I UNDERSTAND IT, THERE WAS AN ISSUE -- AND I DON'T

5   BELIEVE IT HAS BEEN RESOLVED YET.  OTHER PEOPLE ON THE PHONE

6   CAN CORRECT ME IF I AM WRONG ON THIS.  BUT I BELIEVE THAT

7   THERE WAS AN ISSUE OF AT LEAST ONE OF THE TRANSCRIPTS WHERE

8   THIS WAS DISCUSSED.  IT'S NOT AVAILABLE TO US.  I BELIEVE

9   IT'S BEEN SEALED.

10          MR. MAUSNER:  THAT'S NOT CORRECT.  IT WAS UNSEALED.

11          MR. ZELLER:  OKAY.  I WASN'T AWARE OF THAT

12   HAPPENING, BUT --

13          THE COURT:  I THINK IT MAY HAVE ALSO -- IT WAS AN

14   ORDER THAT JUDGE MATZ ISSUED, WASN'T IT?

15          MR. ZELLER:  I'M SORRY, AN ORDER?

16          THE COURT:  MR. MAUSNER.

17          MR. MAUSNER:  AN ORDER UNSEALING IT.  THAT'S

18   CORRECT.

19          THE COURT:  YES.  I MEAN, IT WAS A -- IT WAS A

20   COURT ORDER THAT ORDERED THE SAMPLING PROCEDURES.

21          MR. MAUSNER:  YES.

22          THE COURT:  YES.

23          MR. MAUSNER:  THERE WAS A COURT ORDER --

24          THE COURT:  YES.

25          MR. MAUSNER:  -- FOR THE SAMPLING PROCEDURES --

1          THE COURT:  AND IT WAS UNSEALED.

2          MR. MAUSNER: -- THAT'S CORRECT.  BUT THEN THE

3   SAMPLING DOCUMENTS WERE ACTUALLY FILED.  THE TRANSCRIPT WAS

4   JUST A POST-SETTLEMENT DISCUSSION BETWEEN JUDGE MATZ, ANDREW

5   BRIDGES, AND ME REGARDING WHETHER, YOU KNOW, SAMPLING WAS

6   USEFUL.  IT WAS ORIGINALLY SEALED.  AND THEN JUDGE MATZ ASKED

7   US IF WE HAD ANY OBJECTION TO IT BEING UNSEALED.  WE DIDN'T.

8   AND YOU ORDERED IT UNSEALED.

9          THE COURT:  OKAY.

10          MR. ZELLER:  BUT I THINK THERE ARE A COUPLE OF

11   ISSUES THAT ARE BEING CONFLATED.  YOU KNOW, ONE DEALS WITH

12   THAT PARTICULAR TRANSCRIPT, WHICH I NOW KNOW IS NOT SEALED,

13   SO -- OR, AT LEAST, NOW IT'S UNSEALED.  SO, WE WILL GO AND

14   LOOK AT THAT.  BUT THAT THE BIGGER ISSUE DEALS WITH -- I

15   MEAN, CERTAINLY WE HAVE BEEN INVOLVED IN PRIOR DISCUSSIONS

16   WITH JUDGE MATZ REGARDING THIS SAMPLING PROCEDURE IN GENERAL,

17   YOU KNOW, AS I MENTIONED BEFORE IN THE LAST CALL THAT IS, YOU

18   KNOW, NOT AN ISSUE THAT WE ARE CONSENTING TO.  OBVIOUSLY,

19   WE'LL DO AS WE ARE ORDERED.  AND WE'LL, YOU KNOW, BASED ON

20   YOUR SUGGESTIONS HERE SEE IF THERE IS SOME WAY OF DISCUSSING

21   IT WITH PERFECT 10.

22          BUT I STRONGLY SUSPECT BASED ON THE PRIOR

23   DISCUSSIONS THAT WE DID HAVE ON SAMPLING AS WELL AS SOME OF

24   THE INDICATIONS WHERE I -- AT LEAST MY IMPRESSION WAS, AND,

25   PERHAPS, I'M WRONG, THAT THE PARTIES DIDN'T BELIEVE THAT THE

1    SAMPLING WAS VERY CONDUCIVE ULTIMATELY TO RESOLUTION.  AND IT

2    WOULD --

3              THE COURT:  I BELIEVE IT WAS.  AND I BELIEVE IT WAS

4    FOR THEM.

5              MR. JANSEN:  YOUR HONOR, THIS IS MARK --

6              THE COURT:  YES.

7              MR. JANSEN:  THIS IS MARK JANSEN.  I READ THE

8    TRANSCRIPT THAT WAS UNSEALED.  THAT WAS A DISCUSSION THAT WAS

9    ORDERED TO OCCUR BY JUDGE MATZ BETWEEN THE MICROSOFT COUNSEL

10   AND PERFECT 10 COUNSEL.  AND THE DISCUSSION AS I RECALL

11   READING IT WAS THAT REALLY THE -- THE WAY THIS WORKED OUT WAS

12   FAIRLY UNWIELDY AND NOT HELPFUL TO MICROSOFT IN ACTUALLY

13   UNDERSTANDING THE CLAIMS AGAINST IT.

14             THE COURT:  WELL, WE'VE ALL READ THE SAME

15   TRANSCRIPT.  I THINK IT WAS SOMEWHAT HELPFUL.  AND I THINK IT

16   WOULD POTENTIALLY BE EVEN MORE HELPFUL IN THE GOOGLE CASE

17   THAN IT WAS IN MICROSOFT.  I'M NOT SURE ABOUT AMAZON.  BUT

18   THAT'S THE DIRECTION I'M GOING.  AND THAT'S ALL I HAVE TO SAY

19   ABOUT THAT RIGHT NOW.

20             MR. JANSEN:  AND WE UNDERSTAND, YOUR HONOR.  BUT

21   YOU'RE ASKING -- YOU BELIEVE THE PARTIES SHOULD MEET AND

22   CONFER --

23             THE COURT:  WAIT.  SAY IT AGAIN.  YOU'RE KIND OF

24   PENNING IN AND OUT.  WHAT DID YOU --

25             MR. JANSEN:  I'M SORRY.  AND WE UNDERSTAND THAT

1    YOU'RE ASKING US TO MEET AND CONFER ON THAT ISSUE.

2              THE COURT:  YES.

3              MR. ZELLER:  AND WE WILL CERTAINLY DO THAT, YOUR

4    HONOR.

5              THE COURT:  ALL RIGHT.  NOW, GIVEN THE LIMITED

6    NATURE OF NEXT WEEK'S HEARING WHY DON'T WE DO IT

7    TELEPHONICALLY.  AND I'LL SAVE EVERYONE A LOT OF MONEY THAT

8    CAN GO TOWARDS BATES STAMPING OR SOMETHING.  ALL RIGHT.

9              MR. MAUSNER:  YES.  SURE.

10             THE COURT:  OKAY.

11             MR. ZELLER:  THAT SOUNDS FINE, YOUR HONOR.

12             THE COURT:  ALL RIGHT.  I'LL SET IT UP FOR A

13   TELEPHONIC TEN O'CLOCK NEXT TUESDAY.

14             MR. MAUSNER:  OH, IT'S GOING TO BE TEN O'CLOCK.

15             THE COURT:  THAT'S WHAT I HAD, YES.

16             MR. MAUSNER:  OKAY.

17             THE COURT:  I CAN ADJUST THAT IF EVERYONE WANTS TO.

18   I'D LIKE TO GET IT DONE THEN.

19             MR. MAUSNER:  THAT'S FINE WITH PERFECT 10.

20             THE COURT:  OKAY.  OKAY.

21             ALL RIGHT.  ANYTHING ELSE WE CAN TAKE CARE OF NOW?

22   NO.

23             MR. ZELLER:  THAT COVERS IT FROM OUR --

24             THE COURT:  GOING, GOING, GONE.  ALL RIGHT.

25   THANKS.

1          MR. ZELLER:  THANK YOU VERY MUCH.

2          THE COURT:  BYE-BYE.

3          MR. MAUSNER:  THANK YOU, YOUR HONOR.  BYE.

4          (PROCEEDINGS ADJOURNED.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                       C E R T I F I C A T E

3

4            I CERTIFY THAT THE FOREGOING IS A CORRECT

5    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9

10   DOROTHY BABYKIN                        12/1/09

11   _____       _____

12   FEDERALLY CERTIFIED TRANSCRIBER        DATED

13   DOROTHY BABYKIN

14

15

16

17

18

19

20

21

22

23

24

25