1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Michael T. Zeller (Bar No. 196417)
2    michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
4  Facsimile: (213) 443-3100
     Charles K. Verhoeven (Bar No. 170151)
5    charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
6  San Francisco, California 94111
     Rachel Herrick Kassabian (Bar No. 191060)
7    rachelkassabian@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California 94065

9  Attorneys for Defendant GOOGLE INC.

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13  PERFECT 10, INC., a California          CASE NO. CV 04-9484 AHM (SHx)
    corporation,                            [Consolidated with Case No. CV 05-
14                                          4753 AHM (SHx)]
15  *Plaintiff,*                            **DECLARATION OF RACHEL
                                            HERRICK KASSABIAN IN
    vs.                                     SUPPORT OF GOOGLE INC.'S
16                                          OPPOSITION TO PERFECT 10,
    GOOGLE INC., a corporation; and         INC.'S MOTION FOR
17  DOES 1 through 100, inclusive,          EVIDENTIARY AND OTHER
                                            SANCTIONS AND/OR FOR THE
18  *Defendants.*                           APPOINTMENT OF A SPECIAL
                                            MASTER**
19
    AND COUNTERCLAIM                        Hon. A. Howard Matz
20
    PERFECT 10, INC., a California          Date:  December 21, 2009
21  corporation,                            Time:  10:00 a.m.
                                            Ctrm:  14
22  *Plaintiff,*
                                            **PUBLIC REDACTED**
23  vs.

24  AMAZON.COM, INC., a corporation;
    A9.COM, INC., a corporation; and
25  DOES 1 through 100, inclusive,

26  *Defendants.*

27

28

01980.51320/3233222.1

                              Case No. CV 04-9484 AHM (SHx) [Consolidated
                                   with Case No. CV 05-4753 AHM (SHx)]
   DECL. OF RACHEL KASSABIAN IN OPPOSITION TO P10'S MOTION FOR EVIDENTIARY SANCTIONS

I, Rachel Herrick Kassabian, declare as follows:

1. I am a member of the bar of the State of California and a partner with Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel for Defendant Google Inc. ("Google") in this action. I make this declaration of my personal and firsthand knowledge and, if called and sworn as a witness, could and would testify competently thereto.

## P10's Insufficient Meet and Confer Efforts Regarding Its Motion for Evidentiary Sanctions

2. On October 22, 2009 I received a letter from Jeffrey Mausner, counsel for Perfect 10, Inc. ("P10"), stating that P10 "intends to file a motion for evidentiary sanctions and/or the appointment of a special master." Attached as Exhibit A is a true and correct copy of that letter.

3. On October 23, 2009, my colleague Tom Nolan emailed Mr. Mausner (with a copy to me), asking P10 to provide the factual basis for its planned motion (which was absent from Mr. Mausner's October 22, 2009 letter). Attached as Exhibit B is a true and correct copy of that email.

4. Attached as Exhibit C is a true and correct copy of a letter I received from Mr. Mausner on October 25, 2009, in response to Mr. Nolan's October 23 letter.

5. On October 26, 2009, Mr. Nolan again emailed Mr. Mausner (with a copy to me), repeating Google's request for basic information underlying P10's claims, so that Google could investigate and respond to them. Attached as Exhibit D is a true and correct copy of that email.

6. Attached as Exhibit E is a true and correct copy of a letter I received from Mr. Mausner on October 27, 2009, responding to Mr. Nolan's October 26, 2009 email.

7. Attached as Exhibit F is a true and correct copy of Mr. Nolan's October 28, 2009 email to Mr. Mausner (on which I was copied), repeating Google's request

1  that P10 provide the legal basis for the sanctions it had described in its prior
2  correspondence.

3      8.    Attached as Exhibit G is a true and correct copy of a letter I received
4  from Mr. Mausner on November 2, 2009, responding to Mr. Nolan's October 28,
5  2009 email.

6      9.    Attached as Exhibit H is a true and correct copy of a letter I sent to Mr.
7  Mausner on November 20, 2009, responding to each of the issues raised in P10's
8  prior meet and confer correspondence. In that letter, we (1) identified specific bates
9  ranges where Google produced documents that P10 contended had not been
10 produced, (2) pointed out that P10 had never requested production of certain other
11 documents that P10 claimed were missing from Google's production, and (3)
12 provided P10 with governing Ninth Circuit case law regarding the circumstances in
13 which evidentiary sanctions might be appropriate (which circumstances are not
14 present here). P10 never responded to my November 20, 2009 letter.

**Google's Production of DMCA Notices, DMCA Tracking Spreadsheets and**
**Other DMCA Processing Documents**

17     10.   P10 has not served a document request specifically asking for
18 production of DMCA notices sent to Google by third parties. The P10 document
19 request most closely related to third-party DMCA notices is Request No. 51 in P10's
20 First Set of Requests for Production (served in 2005), which called for "GOOGLE's
21 DMCA Log for the years 2001 through 2005, or any other DOCUMENTS sufficient
22 to IDENTIFY all ENTITIES other than Perfect 10 from whom GOOGLE has
23 received a notice regarding an intellectual property violation, the URLs complained
24 about in each notice from each such ENTITY, and the dates of the complaints for
25 each such URL." Attached as Exhibit I is a true a correct copy of excerpts of P10's
26 First Set of Requests for Production, dated March 4, 2005.

27

28

11. Attached as Exhibit J is a true and correct copy of Magistrate Judge Hillman's May 22, 2006 Order regarding P10's Motion to Compel Google to Produce Documents and Answer Interrogatories.

12. Google has produced ████████ documents responsive to Request No. 51, such as third-party DMCA notices and DMCA removal records ████████████████. For instance, on March 15, 2006, Google produced documents responsive to Request No. 51 bearing control numbers ████ ████████████████. On November 7, 2006, Google produced further responsive documents at GGL 007462-007795.

13. On January 17, 2007, P10 served its Fifth Set of Requests for Production of Documents, which included (among other things) Request No. 196, seeking "Google's DMCA log of DMCA notices received from 3rd parties." Attached as Exhibit K is a true and correct copy of excerpts of P10's Fifth Set of Requests for Production, dated January 17, 2007.

14. Attached as Exhibit L is a true and correct copy of excerpts of the transcript of the April 14, 2008 hearing on Google's Objections to Magistrate Hillman's Order Granting in Part and Denying in Part P10's Motion to Compel Google to Produce Documents. Attached as Exhibit L1 is a true and correct copy of excerpts of P10's Brief in Opposition to Google's Objections to Magistrate Hillman's Order Granting in Part and Denying in Part P10's Motion to Compel Google to Produce Documents, dated March 26, 2008. Attached as Exhibit L2 is a true and correct copy of this Court's May 13, 2008 Order on Google's Objections to and P10's Motion for Review of Portions of the Magistrate Judge's Order Granting in Part and Denying in Part P10's Motion to Compel.

15. Attached as Exhibit M is a true and correct copy of an email I received from Mr. Mausner on April 30, 2008 stating that it would be "acceptable" for Google to produce documents to P10 in single-page TIFF format with Concordance and Opticon load files. To the best of my recollection, at no time since Mr. Mausner

1  agreed to TIFF production format has he withdrawn his consent, nor has P10 ever

2  sent my firm a meet and confer letter asking that any particular documents be

3  produced in some other format. P10 also has never brought a discovery motion

4  asking the Court to order that Google produce documents in a different format.

5      16.    In response to the Court's May 13, 2008 Order requiring the production

6  of Google's DMCA log pursuant to Request No. 196, Google collected and

7  produced its DMCA tracking spreadsheets, as well as additional documents

8  reflecting its processing of third-party DMCA notices. Google produced these

9  responsive documents on May 1, 2008, and has continued to supplement that

10  production as necessary, including on August 29, 2008 and September 13, 2008.

11  Google has produced spreadsheet-style DMCA processing documents bearing

12  control numbers ████████████████████████████████████

13  ████████████████████████████████████████████████

14  ███████████████████████. All of these documents were produced in a

15  text-searchable format. Excerpts from these documents are attached as Exhs. F, J,

16  GG, HH, II, KK, and LL to the Declaration of Shantal Rands Poovala in Support of

17  Google's Motions for Summary Judgment re: Google's Entitlement to Safe Harbor

18  under 17 U.S.C. § 512 ("Poovala Decl."), filed July 2, 2009 (Docket No. 534).

19      17.    Google also has produced ████████ additional non-spreadsheet-

20  style third-party DMCA processing documents that are responsive to P10's Request

21  for Production Nos. 51 and 196, including documents bearing control numbers ████

22  ████████████████. Attached as Exhibit N are true and correct

23  copies of samples of such documents. As of May 2008, Google had produced more

24  than ████ pages of third-party DMCA processing records spanning a more than

25  six-year time period.

26      18.    Attached as Exhibit O is a true and correct copy of an email from my

27  colleague Andrea Roberts to Mr. Mausner (with a copy to me) dated June 13, 2008,

28  providing P10 with the specific location (by bates number) of all of the documents

1  responsive to P10's request for DMCA logs in Google's document production as of
2  that date.

3      19.    Attached as Exhibit P is a true and correct copy of P10's Eleventh Set
4  of Requests for Production, dated October 21, 2009.

5  **P10's Failure to Serve Discovery Regarding Blogger and Google Groups**

6      20.    Attached as Exhibit Q is a true and correct copy of excerpts of the
7  transcript of the July 14, 2008 hearing on P10's Motion for Leave to File a Second
8  Amended Complaint, which sought (among other things) leave to add additional
9  copyright infringement claims related to Google's Blogger service. At the July 14
10 hearing, counsel for P10 confirmed that P10 would be serving additional discovery
11 related to Blogger if P10 were permitted to amend its complaint to add these new
12 claims.

13     21.    On July 16, 2008, this Court issued its Order Granting P10's Motion for
14 Leave to File a Second Amended Complaint, permitting P10 to amend its complaint
15 to add claims directed at Google's Blogger service (among other things). *See*
16 Docket No. 321.

17     22.    On November 19, 2008, P10 took the deposition of Google's Rule
18 30(b)(6) designee Shantal Rands Poovala. Google designated Ms. Poovala, in
19 response to P10's Rule 30(b)(6) deposition notice, to testify regarding various
20 DMCA-related issues, including all actions taken by Google to remove or disable
21 access to P10' s images in response to its claimed DMCA notices. Ms. Poovala's
22 deposition constituted P10's third day of deposition of Google pursuant to Rule
23 30(b)(6) regarding DMCA issues. As a courtesy to P10, Google produced its
24 Blogger DMCA processing spreadsheets in August 2008, well in advance of Ms.
25 Poovala's November 19, 2008 deposition, despite the fact that P10 had not yet
26 served any discovery requests regarding Blogger.

27     23.    Attached as Exhibit R is a true and correct copy of excerpts of P10's
28 Tenth Set of Requests for Production, dated September 1, 2009. As referenced

DECL. OF RACHEL KASSABIAN IN OPPOSITION TO P10'S MOTION FOR EVIDENTIARY SANCTIONS

1  above, P10 obtained leave to amend its complaint to add Blogger-related claims in

2  July 2008. P10's Tenth Set of Requests, served 14 months later, were the first P10

3  document requests served after the complaint's amendment that expressly referenced

4  hosted content on Google's Blogger service. As far as I am aware, P10 has not

5  requested to meet and confer regarding any of Google's responses to these Requests.

6      24.    None of the requests for production, interrogatories or requests for

7  admission that P10 has served on Google in this case to date mention or refer to

8  Google Groups.

9  **Google's Production of Termination Notices to Account Holders and Other**

10  **Documents Regarding Google's Repeat Infringer Policies**

11      25.    Attached hereto as Exhibit S are examples of termination emails

12  Google sent to account holders as a result of DMCA notices, which Google

13  produced on April 18, 2006. These documents were responsive to P10's Request for

14  Production Nos. 26-30, among other requests, as well as Judge Hillman's May 22,

15  2006 Order.

16      26.    In response to P10's Request for Production No. 30 (calling for "All

17  DOCUMENTS constituting or embodying all versions of GOOGLE's repeat

18  infringer policy, from 2000 to the present"), Google produced documents regarding

19  its repeat infringer policies. For example, Google produced responsive documents

20  on April 19, 2005, November 7, 2006, May 1, 2008, and September 5, 2008, bearing

21  control numbers GGL 000322-000324, 007340-007461, 027293-027914, 031777-

22  031782, 032195-32340, 032372-32390, 033243-033244, 052395-052411, 052476-

23  052910, 053972-053974, and 053976-053978. Google also submitted such

24  documents with its DMCA Motions filed on July 2, 2009. *See* Poovala Decl. ¶¶ 5,

25  16, 26, 27, & 36-39, and Exhs. B, C, F, & G.

26      27.    Attached as Exhibit T is a true and correct copy of excerpts of one of

27  Google's AdSense DMCA tracking spreadsheets (GGL 044911-044928), produced

28  to P10 on August 29, 2008.

1　███████████████████████████████

2　████████

3　　　28.　As Google's published "Blogger Help" informational web pages

4　describe (see

5　http://www.google.com/support/blogger/bin/answer.py?hl=en&topic=12492&answe

6　r=55373 ), Blogger users can use custom domains for their Blogger-hosted content

7　if they wish to do so, subject to the same terms of service applicable to all Blogger

8　users. *See* Poovala Decl. ¶¶ 26 & 27, and Exhs. F & G.

9　　　29.　Attached as Exhibit U is a true and correct copy of excerpts of printouts

10　of the publicly-available HTML source code for the web pages www.celebrities-

11　gone-wild.com and www.celebs-gallery.net, which I obtained by visiting these

12　websites using the Internet Explorer browser, then clicking on the "Page" option and

13　selecting "View Source." The HTML code for both pages displays numerous

14　references to "blogger" and "blogspot," which are highlighted in the attached exhibit

15　for ease of reference.

16　**Google's Search for, Collection and Production of Additional Documents in**

17　**Response to Magistrate Judge Hillman's May 22, 2006 Order and the Court's**

18　**May 13, 2008 Order**

19　　　30.　Paralegals working under my direction (as well as prior outside

20　counsel's direction) have periodically searched the minutes of Google's board of

21　director and executive committee meetings for any references to copyright

22　infringement, misappropriation of intellectual property rights, or trademark

23　infringement in connection with adult content (as called for by P10's Request No.

24　14, and as ordered by Magistrate Judge Hillman on May 22, 2006). No responsive

25　documents were located during those searches. Google notified P10 of this fact

26　more than a year ago, in June 2008.

27　　　31.　Google produced ████████████ documents responsive to P10's

28　Request for Production Nos. 128-131 and 194-195 (calling for reports, studies and

DECL. OF RACHEL KASSABIAN IN OPPOSITION TO P10'S MOTION FOR EVIDENTIARY SANCTIONS

memoranda circulated by various Google employees relating to: "search query frequencies, search query frequencies for adult-related terms, number of clicks on adult images and images in general, traffic to infringing websites, the draw of adult content, and percentage of searches conducted with the safe search filter off"), as ordered by the Court on May 13, 2008. The collection, review and production of documents responsive to these requests took many weeks to complete. Google produced these responsive documents on July 16, 2008, bearing control numbers ██████████████. Attached as Exhibit V is a true and correct copy of a sample of these documents, control numbered GGL 039140-039142.

**P10's Failure to Disclose its Belatedly-Alleged Need for Additional Discovery During the Parties' Extended Meet and Confer Discussions Regarding Filing for Summary Judgment on Google's Entitlement to DMCA Safe Harbor**

32.     Google informed P10 of Google's intention to seek summary judgment of DMCA safe harbor regarding all of P10's copyright infringement claims at least as early as August 2008. Google also sent detailed meet and confer letters explaining the basis for Google's planned motions, such as Google's November 7, 2008 letter (a true and correct copy of which is attached hereto as Exhibit W). P10 also sent Google a meet and confer letter dated April 23, 2009, stating that P10 too intended to move for summary judgment that "Google is not entitled to DMCA safe harbor under any of the sections of the Digital Millennium Copyright Act" (a true and correct copy of which is attached hereto as Exhibit X).

33.     In addition to exchanging written correspondence, the parties also discussed Google's planned DMCA motions (and P10's planned cross-motions) during telephonic meet and confer sessions on November 7, 2008 and May 5, 2009, among other times.

34.     Google filed its DMCA summary judgment motions on July 2, 2009. At no time during the nearly year-long meet and confer period leading up to Google's filing of its DMCA motions did P10 suggest that it would need additional

discovery to oppose Google's DMCA motions. To the contrary, P10's counsel Mr. Mausner specifically informed me during at least one of our meet and confer calls (on May 5, 2009) that the parties had completed enough discovery regarding DMCA issues, and that those issues were now ripe for summary judgment by the Court. On that May 5, 2009 call, Mr. Mausner also insisted that P10 had gathered enough evidence on the DMCA issues to file its own summary judgment motion that Google was ineligible for DMCA safe harbor. Mr. Mausner specifically described P10's DMCA summary judgment motion as "ripe," and insisted that "discovery is unnecessary," that discovery would just be "busy work," and that P10 wanted to get these motions "filed and decided as soon as possible."

35. Attached as Exhibit Y is a true and correct copy of excerpts from P10's Motion for Summary Judgment regarding Copyright Infringement filed July 5, 2009.

36. Attached as Exhibit Z is a true and correct copy of excerpts from the transcript of the September 4, 2009 hearing before Magistrate Judge Hillman.

37. Attached as Exhibit AA is a true and correct copy of the Court's July 8, 2009 Order on Google's Motion for an Order Setting Schedule for Filing Dispositive Motions, with relevant text highlighted for ease of reference.

### Google's Redactions of Its DMCA Processing Documents On Privilege and Work Product Grounds

38. Attached as Exhibit BB is a true and correct copy of a letter I received from P10's counsel Valerie Kincaid on June 3, 2009 asking questions about certain of the redactions in Google's document production.

39. Attached as Exhibit CC is a true and correct copy of a letter I sent to Ms. Kincaid on June 16, 2009 explaining the basis for the redactions referenced in Ms. Kincaid's June 3, 2009 letter.

40. Attached as Exhibit DD is a true and correct copy of excerpts of the transcript of the September 22, 2009 hearing on Google's Pending Discovery

DECL. OF RACHEL KASSABIAN IN OPPOSITION TO P10'S MOTION FOR EVIDENTIARY SANCTIONS

1   Motions, in which Mr. Mausner described his understanding of the parties'
2   agreement that detailed privilege logs need not be exchanged in this case.

3   **This Court's Orders Striking P10's Previous Improper Cross-Motions and Sur-**
4   **Replies in the Consolidated *Amazon* Case**

5   41.    Attached as Exhibit EE is a true and correct copy of the Court's Order
6   in the consolidated *Amazon* case dated November 4, 2008.

7   42.    Attached as Exhibit FF is a true and correct copy of the Court's Order
8   in the consolidated *Amazon* case dated January 6, 2009.

9   43.    Attached as Exhibit GG is a true and correct copy of the Court's Order
10  in the consolidated *Amazon* case dated July 8, 2009.

11

12          I declare under penalty of perjury under the laws of the United States of
13  America that the foregoing is true and correct.  Executed December 7, 2009 at San
14  Francisco, California.

15

16                                      Rachel Herrick Kassabian

# EXHIBIT A

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone    (310) 617-8100
                   (818) 992-7500
E-mail:  jeff@mausnerlaw.com

October 22, 2009

*Via Email*

Rachel Herrick, Esq.
Thomas Nolan, Esq.
Michael Zeller, Esq.
Brad Love, Esq.
Andrea Roberts, Esq.
Charles Verhoeven, Esq.
Quinn Emanuel
865 S. Figueroa Street
10th Floor
Los Angeles, California 90017

Re:    <u>Perfect 10 v. Google</u>

Dear Counsel:

Perfect 10 intends to file a motion for evidentiary sanctions and/or the appointment of a special master on the grounds set forth in this letter (the "Motion").  We will call you tomorrow so that we may meet and confer telephonically regarding the Motion.

Perfect 10 has determined that Google has not produced documents that it has been ordered to produce, that it has stated that it has or would produce, and/or that are responsive to Perfect 10's document requests and are in Google's possession.  Many of those documents are highly relevant to Google's Motions for Summary Judgment, and Perfect 10 did not have the benefit of those documents in opposing the motions.

Therefore, Perfect 10 will move for the following sanctions:

1.   That Google's Motions for Summary Judgment be denied.

2.   That Google be found to be ineligible for safe harbor under 17 U.S.C. §512.

3.   That Google be deemed not to have expeditiously removed or disabled access to material that is claimed to be infringing, in DMCA notices Google did not produce to Perfect 10 and/or in notices that were not included on Google's "DMCA log."

4.   Monetary sanctions.

5.   Other appropriate sanctions.

We look forward to speaking with you tomorrow.

Sincerely,

*Jeffrey N. Mausner*

Jeffrey N. Mausner

cc:  Counsel for Amazon.com



**EXHIBIT B**

| From: | Thomas Nolan |
| Sent: | Friday, October 23, 2009 3:06 PM |
| To: | Jeffrey Mausner |
| Cc: | Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; Valerie Kincaid |
| Subject: | RE: Conference of Counsel re Evidentiary Sanctions |

Jeff,

We have received your letter dated yesterday, October 22, 2009 regarding Perfect 10's intended motion for "evidentiary sanctions and/or the appointment of a special master."   Your letter makes serious accusations without providing any factual basis or explanation for them whatsoever.  For instance, your letter fails to identify even a single document or category of documents that supposedly has not been produced, nor any other facts with which Google could investigate and meaningfully respond to these accusations.  Accordingly, please send us a detailed meet and confer letter identifying with specificity the complete factual basis for Perfect 10's claimed concerns, including but not limited to identifying the following information:

1. What documents Perfect 10 contends that Google has not produced  but was ordered to produce (and which order required that production),
2. What documents Perfect 10 contends that Google has stated that it has or would produce, but did not produce (and which of Perfect 10's Requests for Production call for those documents),
3. What documents Perfect 10 contends are responsive to Perfect 10's document requests and are in Google's possession, but were not produced (and which of Perfect 10's Requests for Production call for those documents),
4. Exactly when when Perfect 10 allegedly discovered that each of these categories of documents allegedly was missing from Google's production,
5. How any of these allegedly missing categories of documents are relevant to Google's DMCA Motions for Summary Judgment, and  why Perfect 10 did not  timely raise this issue in opposing Google's DMCA  motions, and
6. Perfect 10's legal basis for seeking each of the forms of relief referenced in your letter.

Once we have received this information, we will  investigate Perfect 10's accusations, including consulting with our client to confirm whether (1) any of the claimed missing documents actually exist, and (2) whether any supplemental document production is necessary or appropriate.

Once this  process is complete, we will be happy to arrange a mutually convenient time to discuss this matter further with Perfect 10.  At this point, in light of Perfect 10's complete failure to provide any facts or information that would allow Google to (1) investigate Perfect 10's accusations and (2) meaningfully meet and confer regarding them, Perfect 10's reference to motion practice is premature.

Best Regards,

**Thomas Nolan**
*Associate,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3885 Direct
213.443.3000 Main Office Number
213.443.3100 FAX

Exhibit B, Page 14

thomasnolan@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Thursday, October 22, 2009 4:03 PM
**To:** Rachel Herrick Kassabian; Thomas Nolan; Michael T Zeller; Brad R. Love; Andrea P Roberts; Charles K Verhoeven
**Cc:** mtjansen@townsend.com; Timothy Cahn; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F.; Valerie Kincaid
**Subject:** Conference of Counsel re Evidentiary Sanctions

Please see the attached letter.  Jeff.

   This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeff@mausnerlaw.com

# EXHIBIT C
# (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)

# EXHIBIT D

| From: | Thomas Nolan |
|---|---|
| Sent: | Monday, October 26, 2009 6:46 PM |
| To: | Jeffrey Mausner |
| Cc: | Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; 'Valerie Kincaid'; Brad R. Love; Andrea P Roberts; Charles K Verhoeven; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F. |
| Subject: | RE: Conference of Counsel re Evidentiary Sanctions |

Jeff,

We have received your letter dated yesterday, Sunday, October 25.  As a preliminary matter, we disagree with the various false accusations and personal attacks in the letter.  In any event, your letter raises (for the first time in any meet and confer letter) ten discrete issues, some of which concern events or issues dating back to as early as 2005 and 2006, and all of which require consultation with our client.  We will investigate each of these issues (to the extent your letter provided sufficient information to do so), and provide a written response upon the completion of that investigation.

With respect to the document production issues, I note that your letter fails to address Questions 4, 5 and 6 in my email below.  Because Perfect 10's answers to these questions will bear significantly on the parties' meet and confer efforts, we would appreciate a response to them.

Your letter also raises for the first time a host of additional "issues" that are unrelated to document production, including accusations pertaining to responses to interrogatories served in 2005 and 2006, deposition testimony taken in 2006 and 2007, and alleged statements made in connection with Perfect 10's motion for preliminary injunction filed in 2005.  Setting aside our disagreement with Perfect 10's accusations, your letter fails to identify the legal relevance of these accusations, the relief Perfect 10 intends to seek with respect to them (if any), and the legal basis for the relief sought.  Please provide this information so that we can investigate and meaningfully meet and confer with Perfect 10 regarding these issues.

Finally, your letter purports to address only a "sample" of the discovery issues about which Perfect 10 claims to be concerned.  As you know, Perfect 10 is required to meet and confer with Google in good faith about each discovery issue it intends to present to the court by motion.  Accordingly, please provide a complete list of those issues (including identification of all categories of allegedly missing documents), so that Google can investigate them and the parties can attempt to resolve them via meet and confer.  If we do not receive further correspondence from Perfect 10 detailing any additional issues, we will assume there are none.

Best Regards,

**Thomas Nolan, Esq.** | **Quinn Emanuel Urquhart Oliver & Hedges, LLP** | 865 S. Figueroa Street, 10th Floor, Los Angeles, CA  90017 | Main: (213) 443-3000 | Direct: (213) 443-3885 | Fax: (213) 443-3100 | E-mail: thomasnolan@quinnemanuel.com | Website: http://www.quinnemanuel.com

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Monday, October 26, 2009 4:07 PM
**To:** Thomas Nolan
**Cc:** Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; 'Valerie Kincaid'; Brad R. Love; Andrea P Roberts; Charles K Verhoeven; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F.
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Rachel and Tom:  Pursuant to the letters I emailed to you and others on October 22 and 25, I called you today to further meet and confer regarding the issues raised in those letters, but got voice-mail.  (Valerie and Dr. Zada were on the phone as well.)  If you wish to further meet and confer regarding this matter, please call me either today or tomorrow to do so.  Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeff@mausnerlaw.com

---

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Sunday, October 25, 2009 8:52 PM
**To:** 'Thomas Nolan'
**Cc:** 'Michael T Zeller'; 'Rachel Herrick Kassabian'; 'Jansen, Mark T. '; 'trcahn@townsend.com'; 'Valerie Kincaid'; Brad R. Love bradlove@quinnemanuel.com ; Andrea P Roberts andreaproberts@quinnemanuel.com; Charles K. Verhoeven (charlesverhoeven@quinnemanuel.com); Malutta, Anthony J. ajmalutta@townsend.com; Cincone, Gia L. glcincone@townsend.com; Steiner, Elham F.
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Please see attached letter.  Jeff.

---

**From:** Thomas Nolan [mailto:thomasnolan@quinnemanuel.com]
**Sent:** Friday, October 23, 2009 3:06 PM
**To:** Jeffrey Mausner
**Cc:** Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; Valerie Kincaid
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Jeff,

We have received your letter dated yesterday, October 22, 2009 regarding Perfect 10's intended motion for "evidentiary sanctions and/or the appointment of a special master."   Your letter makes serious accusations without providing any factual basis or explanation for them whatsoever.  For instance, your letter fails to identify even a single document or category of documents that supposedly has not been produced, nor any other facts with which Google could investigate and meaningfully respond to these accusations.  Accordingly, please send us a detailed meet and confer letter identifying with specificity the complete factual basis for Perfect 10's claimed concerns, including but not limited to identifying the following information:

1. What documents Perfect 10 contends that Google has not produced  but was ordered to produce (and which order required that production),
2. What documents Perfect 10 contends that Google has stated that it has or would produce, but did not produce (and which of Perfect 10's Requests for Production call for those documents),

Exhibit D, Page 26

3. What documents Perfect 10 contends are responsive to Perfect 10's document requests and are in Google's possession, but were not produced (and which of Perfect 10's Requests for Production call for those documents),
4. Exactly when Perfect 10 allegedly discovered that each of these categories of documents allegedly was missing from Google's production,
5. How any of these allegedly missing categories of documents are relevant to Google's DMCA Motions for Summary Judgment, and why Perfect 10 did not timely raise this issue in opposing Google's DMCA motions, and
6. Perfect 10's legal basis for seeking each of the forms of relief referenced in your letter.

Once we have received this information, we will investigate Perfect 10's accusations, including consulting with our client to confirm whether (1) any of the claimed missing documents actually exist, and (2) whether any supplemental document production is necessary or appropriate.

Once this process is complete, we will be happy to arrange a mutually convenient time to discuss this matter further with Perfect 10. At this point, in light of Google's complete failure to provide any facts or information that would allow Google to (1) investigate Perfect 10's accusations and (2) meaningfully meet and confer regarding them, Perfect 10's reference to motion practice is premature.

Best Regards,

**Thomas Nolan**
*Associate,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3885 Direct
213.443.3000 Main Office Number
213.443.3100 FAX
thomasnolan@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Thursday, October 22, 2009 4:03 PM
**To:** Rachel Herrick Kassabian; Thomas Nolan; Michael T Zeller; Brad R. Love; Andrea P Roberts; Charles K Verhoeven
**Cc:** mtjansen@townsend.com; Timothy Cahn; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F.; Valerie Kincaid
**Subject:** Conference of Counsel re Evidentiary Sanctions

Please see the attached letter. Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner

Exhibit D, Page 27

Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeff@mausnerlaw.com



**EXHIBIT E**

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone    (310) 617-8100
                     (818) 992-7500
E-mail:  jeff@mausnerlaw.com

October 27, 2009

***Via Email***

Rachel Herrick Kassabian, Esq.
Thomas Nolan, Esq.
Michael Zeller, Esq.
Brad Love, Esq.
Andrea Roberts, Esq.
Charles Verhoeven, Esq.
Quinn Emanuel
865 S. Figueroa Street
10th Floor
Los Angeles, California 90017

Re:    Perfect 10 v. Google

Dear Counsel:

This letter responds to Tom Nolan's email of October 26, 2009.  We believe that Perfect 10 has more than complied with Local Rule 7-3, by sending you my October 22, 2009 letter and my very extensive October 25, 2009 letter, and by making two efforts to place conference calls to you.  Perfect 10 has also addressed the questions in Mr. Nolan's October 23, 2009 email in its two prior meet and confer letters, including Questions 4, 5, and 6.  Nevertheless, we will provide additional information below.

As explained in my letter of October 25, 2009, Google converted an easy to search and sort Excel spreadsheet into more than one thousand separate pieces. Google then made these pieces even more unsearchable and unsortable by converting them to a different format.  As a result, Perfect 10 only realized that Google had failed to produce thousands of pages of DMCA notices in the last few weeks, when it finally was able to fully analyze the converted spreadsheet fragments and compare them to Google's disorganized, garbled, redacted, and often duplicative document production.

By failing to produce many DMCA notices, Google has deprived Perfect 10 of much evidence directly relevant to numerous issues raised by Google's summary judgment motions, including: (i) whether Google has suitably implemented a repeat infringer policy; (ii) whether Google expeditiously removed or disabled access to the infringing material; (iii) what Google considers to be a compliant DMCA notice; and (iv) whether Google is entitled to safe harbor protection under the DMCA.  If Google processed a notice from another copyright owner similar to Perfect 10's notices, Google has no basis to argue that Perfect 10's notices are non-compliant.  Furthermore, Google's failure to produce these documents prevented Perfect 10 from finding other witnesses (besides Ms. Eden and Messrs. Schwartz, Newton, and Hoffman) who could

testify that Google did not expeditiously remove their infringing materials as well. Google's failure to produce these documents prevented Perfect 10 from analyzing whether Google terminated repeat infringers mentioned in the documents, or whether Google expeditiously removed infringing materials mentioned therein.

The above discussion, as well as the discussion in my prior meet and confer letters, sets forth just a few of the many ways in which Perfect 10 has been prejudiced by Google's failure to comply with Court orders and its discovery obligations. There is no simple way to correct for Google's failure to produce thousands of pages of documents, whose content remains unknown, and which may be incredibly relevant to Google's motions for summary judgment. There is also no simple way to correct for Google's ongoing obstruction of discovery. Accordingly, we request that Google agree to imposition of the sanctions set forth in my October 22 letter. If Google is willing to agree to such sanctions, please let us know. Because Google's pending motions for summary judgment are very much dependent on the documents that Google has failed to produce, Perfect 10 will be forced to go forward with its motion for sanctions at this time unless you agree to take Google's summary judgment motions off calendar, and produce the missing discovery. We cannot wait for your "investigation."

Finally, in response to the last sentence of Mr. Nolan's October 26, 2009 email, do not assume that there are no other ways in which Google has failed to comply with court orders, failed to comply with its discovery obligations, or otherwise obstructed the discovery process. Google's improper course of conduct will be fully set forth in Perfect 10's motion for sanctions. Nevertheless, Perfect 10 has fully complied with Local Rule 7-3 by sending its October 22, 25, and 26 meet and confer letters and by seeking to discuss these matters in two separate telephone conferences.

Sincerely,

*Jeffrey N. Mausner*

Jeffrey N. Mausner

cc: Counsel for Amazon.com



**EXHIBIT F**

| From: | Thomas Nolan |
| Sent: | Wednesday, October 28, 2009 10:19 PM |
| To: | 'Jeffrey Mausner' |
| Cc: | Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; 'trcahn@townsend.com'; 'Valerie Kincaid'; Brad R. Love; Andrea P Roberts; Charles K Verhoeven; 'ajmalutta@townsend.com'; 'glcincone@townsend.com'; 'Steiner, Elham F.' |
| Subject: | RE: Conference of Counsel re Evidentiary Sanctions |

Jeff,

We have received your letter dated October 27, 2009.

Suffice to say that, as with your previous letters, Google disagrees with the false accusations and personal attacks in your letter. Those issues aside, Perfect 10 most certainly has not complied with its meet-and-confer obligations under the Local Rules. Your written correspondence makes numerous accusations regarding various discovery matters dating back more than four years. As I said before, Google is investigating those accusations as it best understands them, given the limited information Perfect 10 has provided to date. However, your correspondence explicitly states that it does not "fully set forth" all of Perfect 10's apparent concerns, and it still has failed to meaningfully answer my questions 4, 5, and 6 below even with respect to the "sample" it does describe. Further, your correspondence fails to identify all the relief Perfect 10 apparently will seek, or any legal basis Perfect 10 might claim for it. Indeed, Perfect 10 has yet to cite a single case which would support its arguments. And as for your claims regarding "efforts to place conference calls," even assuming Google had been extended sufficient time to investigate the issues raised (which we have not), you have never extended the courtesy of telling us what time you expected to "place" such a call – you simply try to "ambush" us. Indeed, though you knew that Ms. Kassabian was out of the office from October 19 through October 26 (returning October 27), you placed two such supposed "meet and confer" calls to her office during this time – knowing she wouldn't be there to answer. That is not a good faith meet and confer effort.

Again, if Perfect 10 wishes to bring a motion for "sanctions" on one or more issues, it must provide a complete list of those issues (including identification of all categories of allegedly missing documents), so that Google can investigate them and the parties can attempt to resolve them via meet and confer. Perfect 10's intended motion may be mooted in whole or in part by this process, thereby saving the Court from having to deal with a premature motion like the one you propose. In any event, Perfect 10 first raised these issues just six days ago – and has not yet even bothered to provide Google with notice of the basic information and authorities supporting its accusations. If Perfect 10 fails to meet these basic meet-and-confer obligations, and fails to give Google a reasonable opportunity to investigate and respond to Perfect 10's accusations, Perfect 10 will *itself* be subject to sanctions. *See* Local Rules 11-9 and 83-7.

Lastly, since your October 27 letter again fails to identify any additional issues about which Perfect 10 intends to file a motion, Google can only assume that there are none. With respect to the issues Perfect 10 has identified in its October 22, 25 and 27 correspondence, we will investigate them expeditiously and get back to you with our written response in due course.

Best Regards,

Thomas Nolan
Quinn Emanuel Urquhart Oliver & Hedges, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Direct: (213) 443-3885
Main Phone: (213) 443-3000
Main Fax: (213) 443-3100

E-mail:  thomasnolan@quinnemanuel.com
Web:  www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above.  This message may be an attorney-client communication and/or work product and as such is privileged and confidential.  If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited.  If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

---

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Tuesday, October 27, 2009 11:57 AM
**To:** Thomas Nolan
**Cc:** Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; 'Valerie Kincaid'; Brad R. Love; Andrea P Roberts; Charles K Verhoeven; ajmalutta@townsend.com; glcincone@townsend.com; 'Steiner, Elham F.'
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Please see the attached letter.  Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeff@mausnerlaw.com

**From:** Thomas Nolan [mailto:thomasnolan@quinnemanuel.com]
**Sent:** Monday, October 26, 2009 6:46 PM
**To:** Jeffrey Mausner
**Cc:** Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; 'Valerie Kincaid'; Brad R. Love; Andrea P Roberts; Charles K Verhoeven; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F.
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Jeff,

We have received your letter dated yesterday, Sunday, October 25.   As a preliminary matter, we disagree with the various false accusations and personal attacks in the letter.  In any event, your letter raises (for the first time in any meet and confer letter) ten discrete issues, some of which concern events or issues dating back to as early as 2005 and 2006, and all of which require consultation with our client.  We will investigate each of these issues (to the extent your letter provided sufficient information to do so), and provide a written response upon the completion of that investigation.

With respect to the document production issues, I note that your letter fails to address Questions 4, 5 and 6 in my email below. Because Perfect 10's answers to these questions will bear significantly on the parties' meet and confer efforts, we would appreciate a response to them.

Your letter also raises for the first time a host of additional "issues" that are unrelated to document production, including accusations pertaining to responses to interrogatories served in 2005 and 2006, deposition testimony taken in 2006 and 2007, and alleged statements made in connection with Perfect 10's motion for preliminary injunction filed in 2005. Setting aside our disagreement with Perfect 10's accusations, your letter fails to identify the legal relevance of these accusations, the relief Perfect 10 intends to seek with respect to them (if any), and the legal basis for the relief sought. Please provide this information so that we can investigate and meaningfully meet and confer with Perfect 10 regarding these issues.

Finally, your letter purports to address only a "sample" of the discovery issues about which Perfect 10 claims to be concerned. As you know, Perfect 10 is required to meet and confer with Google in good faith about each discovery issue it intends to present to the court by motion. Accordingly, please provide a complete list of those issues (including identification of all categories of allegedly missing documents), so that Google can investigate them and the parties can attempt to resolve them via meet and confer. If we do not receive further correspondence from Perfect 10 detailing any additional issues, we will assume there are none.

Best Regards,

**Thomas Nolan, Esq.** | **Quinn Emanuel Urquhart Oliver & Hedges, LLP** | 865 S. Figueroa Street, 10th Floor, Los Angeles, CA 90017 | Main: (213) 443-3000 | Direct: (213) 443-3885 | Fax: (213) 443-3100 | E-mail: thomasnolan@quinnemanuel.com | Website: http://www.quinnemanuel.com

---

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Monday, October 26, 2009 4:07 PM
**To:** Thomas Nolan
**Cc:** Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; 'Valerie Kincaid'; Brad R. Love; Andrea P Roberts; Charles K Verhoeven; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F.
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Rachel and Tom: Pursuant to the letters I emailed to you and others on October 22 and 25, I called you today to further meet and confer regarding the issues raised in those letters, but got voice-mail. (Valerie and Dr. Zada were on the phone as well.) If you wish to further meet and confer regarding this matter, please call me either today or tomorrow to do so. Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910

Exhibit F, Page 33

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Sunday, October 25, 2009 8:52 PM
**To:** 'Thomas Nolan'
**Cc:** 'Michael T Zeller'; 'Rachel Herrick Kassabian'; 'Jansen, Mark T. '; 'trcahn@townsend.com'; 'Valerie Kincaid'; Brad R. Love bradlove@quinnemanuel.com ; Andrea P Roberts andreaproberts@quinnemanuel.com; Charles K. Verhoeven (charlesverhoeven@quinnemanuel.com); Malutta, Anthony J. ajmalutta@townsend.com; Cincone, Gia L. glcincone@townsend.com; Steiner, Elham F.
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Please see attached letter.  Jeff.

**From:** Thomas Nolan [mailto:thomasnolan@quinnemanuel.com]
**Sent:** Friday, October 23, 2009 3:06 PM
**To:** Jeffrey Mausner
**Cc:** Michael T Zeller; Rachel Herrick Kassabian; 'Jansen, Mark T. '; trcahn@townsend.com; Valerie Kincaid
**Subject:** RE: Conference of Counsel re Evidentiary Sanctions

Jeff,

We have received your letter dated yesterday, October 22, 2009 regarding Perfect 10's intended motion for "evidentiary sanctions and/or the appointment of a special master."   Your letter makes serious accusations without providing any factual basis or explanation for them whatsoever.  For instance, your letter fails to identify even a single document or category of documents that supposedly has not been produced, nor any other facts with which Google could investigate and meaningfully respond to these accusations.  Accordingly, please send us a detailed meet and confer letter identifying with specificity the complete factual basis for Perfect 10's claimed concerns, including but not limited to identifying the following information:

1.  What documents Perfect 10 contends that Google has not produced  but was ordered to produce (and which order required that production),
2.  What documents Perfect 10 contends that Google has stated that it has or would produce, but did not produce (and which of Perfect 10's Requests for Production call for those documents),
3.  What documents Perfect 10 contends are responsive to Perfect 10's document requests and are in Google's possession, but were not produced (and which of Perfect 10's Requests for Production call for those documents),
4.  Exactly when Perfect 10 allegedly discovered that each of these categories of documents allegedly was missing from Google's production,
5.  How any of these allegedly missing categories of documents are relevant to Google's DMCA Motions for Summary Judgment, and  why Perfect 10 did not  timely raise this issue in opposing Google's DMCA  motions, and
6.  Perfect 10's legal basis for seeking each of the forms of relief referenced in your letter.

Once we have received this information, we will  investigate Perfect 10's accusations, including consulting with our client to confirm whether (1) any of the claimed missing documents actually exist, and (2) whether any supplemental document production is necessary or appropriate.

Once this  process is complete, we will be happy to arrange a mutually convenient time to discuss this matter further with Perfect 10.  At this point, in light of Perfect 10's complete failure to provide any facts or information that would

Exhibit F, Page 34

allow Google to (1) investigate Perfect 10's accusations and (2) meaningfully meet and confer regarding them, Perfect 10's reference to motion practice is premature.

Best Regards,

**Thomas Nolan**
*Associate,*
**Quinn Emanuel Urquhart Oliver & Hedges LLP.**

865 S. Figueroa St 10th Floor
Los Angeles, Ca 90017
213-443-3885 Direct
213.443.3000 Main Office Number
213.443.3100 FAX
thomasnolan@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Jeffrey Mausner [mailto:jeff@mausnerlaw.com]
**Sent:** Thursday, October 22, 2009 4:03 PM
**To:** Rachel Herrick Kassabian; Thomas Nolan; Michael T Zeller; Brad R. Love; Andrea P Roberts; Charles K Verhoeven
**Cc:** mtjansen@townsend.com; Timothy Cahn; ajmalutta@townsend.com; glcincone@townsend.com; Steiner, Elham F.; Valerie Kincaid
**Subject:** Conference of Counsel re Evidentiary Sanctions

Please see the attached letter. Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeff@mausnerlaw.com

# EXHIBIT G

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone    (310) 617-8100
                    (818) 992-7500
E-mail:  jeff@mausnerlaw.com

November 2, 2009

*Via Email*

Rachel Herrick Kassabian, Esq.
Thomas Nolan, Esq.
Michael Zeller, Esq.
Brad Love, Esq.
Andrea Roberts, Esq.
Charles Verhoeven, Esq.
Quinn Emanuel
865 S. Figueroa Street
10th Floor
Los Angeles, California 90017

   Re: Perfect 10 v. Google

Dear Counsel:

   This letter responds to Tom Nolan's email of October 28, 2009.  In that email, he requested that Perfect 10 provide a legal basis for the relief it intends to request in connection with its motion for sanctions (the "Motion").  Although Perfect 10 is not obligated to do Google's legal research regarding this issue, the law is well settled that preclusionary sanctions may be awarded in the court's discretion in cases where a party has failed to produce documents ordered to be produced or has "stonewalled" the other party with respect to production obligations.  *See* generally *Arista Records LLC v. Usenet.Com. Inc.* 633 F.Supp. 2d 124, 134, 138 (S.D.N.Y. 2009) (district courts have wide discretion to determine appropriate sanction for discovery abuses under Rule 37 and under their inherent power); *Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 267 (2d Cir. 1999)(accord); s*ee also Clinton v. California Dept. of Corrections*, 2009 WL 1308984,*2 (E.D Cal. May 11, 2009)(sanctions may be imposed for failing to comply with court order regarding discovery include precluding …a claim or defense); *Fjelstad v. American Honda Motor Co.,* 762 F.2d 1334, 1337-1338 (9th Cir. 1985)(district courts may rely on inherent powers to penalize some forms of discovery abuse).  *See also* the cases cited in the above cases.  In fact, in *Arista Records,* the district court specifically imposed sanctions similar to those sought by Perfect 10 because of Defendants' discovery abuse:

> I find that the appropriate sanction in this case is to preclude Defendants from asserting their affirmative defense of protection under the DMCA's safe harbor provision. Because Defendants' motion for summary judgment is premised on their entitlement to such protection, that motion is mooted and will be dismissed.

*Arista Records,* 633 F.Supp.2d at 142. Moreover, as the aforementioned cases hold, FRCP 37 clearly provides for sanctions if a party fails to obey an order to provide discovery, which sanctions include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Rule 37(b)(2)(A). Perfect 10 is not limited to the above authority as support for its position or the relief sought in the Motion. It is providing the same to you as a courtesy per your request.

Sincerely,

*Jeffrey N. Mausner*

Jeffrey N. Mausner

cc: Counsel for Amazon.com

# EXHIBIT H
# (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)

# EXHIBIT I

RUSSELL J. FRACKMAN (State Bar No. 49087)
JEFFREY D. GOLDMAN (State Bar No. 155589)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

JEFFREY N. MAUSNER (State Bar No. 122385)
BERMAN, MAUSNER & RESSER
11601 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1742
Telephone: (310) 473-3333
Facsimile: (310) 473-8303

DANIEL J. COOPER (State Bar No. 198460)
PERFECT 10, INC.
72 Beverly Park Dr.
Beverly Hills, California 90210
Telephone: (310) 205-9817
Facsimile: (310) 205-9638

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>GOOGLE, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>                    Defendants. | CASE NO. CV 04-9484 NM (CW)<br><br>**PLAINTIFF'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS** |

TO DEFENDANT GOOGLE, Inc. AND ITS COUNSEL OF RECORD

HEREIN: Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff

Perfect 10, Inc. propounds the following First Set of Requests for the Production of

DOCUMENTS to Defendant GOOGLE, Inc.  Documents shall be produced to

Daniel Cooper, Esq., 72 Beverly Park, Beverly Hills, CA, 30 days after the service

of these requests.

1

## DEFINITIONS AND INSTRUCTIONS

1. The terms "GOOGLE", "YOU" and "YOUR" shall refer to Defendant GOOGLE, Inc. and any company owned or controlled in whole or in part by GOOGLE and anyone acting on GOOGLE's behalf.

2. The term "URL" shall refer to the web address of a particular web page of a website. In our descriptions of URLs, we will not include the beginning www or http:// symbols.

3. The term "BASE URL" shall refer to that portion of a URL that determines the website at issue. Thus the URL 1greatcelebsite.com would be the BASE URL for the URL 1greatcelebsite.com/amy_weber/ which would describe a particular webpage in the website 1greatcelebsite.com, and the URL aclasscelebs.com would be the BASE URL for the URL aclasscelebs.com/nevec/gallery6.htm, which would again represent a particular page of aclasscelebs.com. The BASE URL is typically the URL of the home page of the website.

4. The term "ENTITY" shall include any form of business entity including but not limited to a corporation, partnership, joint venture, limited partnership and sole proprietorship, as well as an individual human being.

5. The term "GOOGLE LISTED WEBSITE" shall refer to any website or URL that, at any time, GOOGLE has listed in any of its search results, including but not limited to those generated through Web Search or Image Search.

6. The term "GOOGLE AFFILIATED WEBSITE" shall refer to any BASE URL for which GOOGLE has received money, in connection with its participation in GOOGLE's Adwords or Adsense programs, or any other paid inclusion program.

7. The term "GOOGLE AFFILIATED ENTITY" shall refer to any ENTITY which has owned or controlled one or more "GOOGLE AFFILIATED WEBSITES."

2

8.  The term "CELEBRITY" means any of the following persons: Britney Spears, Christina Aguilera, Jennifer Lopez, Jennifer Love Hewitt, Sarah Michelle Gellar, Melissa Joan Hart, Drew Barrymore, Alicia Silverstone, Andie MacDowell, Anna Kournikova, Yasmine Bleeth, Jane Krakowski, Elisabeth Shue, Geena Davis, Gillian Anderson, Gwyneth Paltrow, Meg Ryan, Michelle Pfeiffer, Barbara Eden, Barbra Streisand, Calista Flockhart, Halle Berry, Hunter Tylo, Jessica Simpson, Niki Taylor, Rachel Stevens, Salma Hayek, Sandra Bullock, Christina Applegate, Claudia Schiffer, Daisy Fuentes, Danielle Fishel, Julia Roberts, Shania Twain, Sharon Stone, Keri Russell, Cameron Diaz, Jessica Alba, Lucy Lui, Jennifer Aniston, Madonna, Faith Hill, Tara Reid, Courtney Cox, Janet Jackson, Leslie Carter, Mandy Moore, Mariah Carey, Jessica Biel, Beverly Mitchel, Pamela Anderson, Angelina Jolie, Carmen Electra, Katie Homes,  Kirsten Dunst, Alyssa Milano, Alyson Hannigan, Gates McFadden, Natalie Portman, Madchen Amick, Ashley Judd, Amy Weber, Bridget Fonda, Christie Turlington, Jennifer Connelly, Rebecca Gayheart, Jenny McCarthy, Christina Ricca, Brooke Burke, Clair Danes, Daniela Pestova, Denise Richards, and Katie Holmes.

9.  The term "PERFECT 10 MODELS" shall refer to the names of the persons listed in Exhibit 1.

*10.* The terms "DOCUMENT" or "DOCUMENTS" shall herein have the same meaning as "writings and recordings" and "photographs," as defined in Rule 1001 of the Federal Rules of Evidence, and includes, but is not limited to, writings of every kind, including photographs, images, print-outs, websites, CDs, DVDs, hard drives, letters, e-mails, telegrams, memoranda, web pages, reports, studies, calendar and diary entries, outlines, notes, analyses, statistical or informational accumulations, audits, and associated work papers, any kind of records of meetings and conversations, sound or mechanical reproductions, programming notes, comments, computer data bases, computer print-outs, source code, object code,

3

websites, flow-charts, all stored compilations of information of any kind which may be retrievable, including, without limitation, computer discs, hard drives, and RAM, and copies and duplicates of DOCUMENTS which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached thereto) whether or not the originals are in YOUR possession, custody or control. *If A DOCUMENT is available in electronic form, it should be produced in that electronic form, even if it is also available in hard copy*

11. The term "IDENTIFY" when used in connection with an ENTITY shall mean to provide the name, mailing address, e-mail address, and business telephone number of the ENTITY IDENTIFIED, and of each ENTITY believed by YOU to own or control any such ENTITY.

12. The term "IDENTIFY" when used in connection with an image, shall mean to provide that image (in electronic format when available), the URL for that image, and the model name if available.

13. The term "IDENTIFY" when used in connection with a website shall mean to provide the URL of the website, and the name, address, and telephone number of the webmaster for the website, if known.

14. The term "IDENTIFY" when used in connection with a GOOGLE employee, shall mean to provide that employee's name, job title, and the length of time he or she has held that job title.

15. The term "IDENTIFIED BASE URLS" shall refer to the BASE URLS listed in Exhibit 4, attached hereto.

16. The term "GOOGLE AFFILIATE APPLICATION FORM" shall mean any DOCUMENTS GOOGLE provides to, or exchanges with, any potential GOOGLE AFFILIATED ENTITIES in connection with such entities making payments to GOOGLE for any of GOOGLE'S services.

17. The term "TERMINATION" shall mean barring an ENTITY from

4

publicity or trademark infringement.

18. All studies, reports, memoranda, letters, or notes that refer to, relate to, or reflect the extent to which adult content available through GOOGLE's Web Search and Image Search serves as a draw for traffic to GOOGLE.com.

19. All studies, reports, memoranda, letters, or notes that refer to, relate to, or reflect the extent to which adult content available through GOOGLE's Web Search and Image Search affects GOOGLE's revenues.

20. All DOCUMENTS that constitute or embody communications between or among employees of GOOGLE that refer to, relate to, or reflect the extent to which adult content available through GOOGLE's Web Search and Image Search serves as a draw for traffic to GOOGLE.com.

21. All DOCUMENTS that constitute or embody communications between or among employees of GOOGLE that refer to, relate to, or reflect the extent to which adult content available through GOOGLE's Web Search and Image Search affects GOOGLE's revenues.

22. All DOCUMENTS that refer to or reflect the DISABLING of any of the BASE URLs listed in Exhibit 4.

23. DOCUMENTS sufficient to IDENTIFY all BASE URLs DISABLED by GOOGLE as a result of notices sent by Perfect 10.

24. All DOCUMENTS that constitute or embody communications between GOOGLE and ENTITIES that own or control the GOOGLE AFFILIATED WEBSITES identified in YOUR response to Interrogatory 1.

25. All communications between GOOGLE and the ENTITIES identified in YOUR response to Interrogatory No. 2.

26. All notices of TERMINATION (as a result of intellectual property violations) sent by GOOGLE to any ENTITY that has owned or controlled a GOOGLE LISTED WEBSITE.

27. All notices of TERMINATION sent by GOOGLE to any ENTITY that has owned or controlled a GOOGLE LISTED WEBSITE.

8

28. All notices of TERMINATION sent by GOOGLE to any ENTITY as a result of complaints from Perfect 10.

29. All DOCUMENTS that relate to, constitute or embody communications between GOOGLE and the ENTITIES that have owned or controlled any of the following websites: 000celebs.com.ar, 1024x768wallpapers.com, 21stars.net, abc-celebs.com, aclasscelebs.com, adoredcelebrities.com, adult.backwash.com, alibabaweb.com, all-nude-celebrities-free.com, annasayfa.host.sk, antoninoc.net, averlo.com, babefocus.com, big.clarence.com, Britney-spears-nudes.net, bukuroshe.parajsa.com, celebguru.com, celebrities.nice.ru, celebrityarchive.de, celebritybattles.com, celebritypictures.com, celebritypicturesarchive.com, celebsdb.com, celebstation.org, chez.com, cubic2003.free-sex.cz, desktopgirls.ru, e-celeb.by.ru, eracle.it, extremefakecelebs.com, family-incest-sex.net, famouspeoplepics.com, fotochicas.com, fotomodellefamose.com, free-nude-and-naked-celebs-fakes.com, gossip.babeleweb.net, greh.ru, gwool.com, home.tiscali.be, home-2.worldonline.nl, icycelebs.com, incest-search.com, index.hr, indicedivx.com, i-sd.com, Jennifer-anniston-naked.com, jerkengine.com, lairofluxlucre.com, kobiety.website.pl, mapage.noos.fr, eros.externet.hu, megapolis.com.ar, miss.mgn.ru, modellemania.net, monitor.hr, nejcpass.com, nude-celebrity.net, mg.danboss.com, minovia.com, moono.com, ottoperuna.altervista.org, paparazzi-nude.com, perfectpeople.net, photoglamour.it, pix.alronix.net, platinum-celebs.com, playboy.fason.ru, pornosaur.com, postalesmix.com, promethyl.org, ragazzesexy.tv, rape-videos.us, rate-celebs.com, realcelebs4u.com, robbscelebs.co.uk, russiancelebrities.org, russiancelebrities.net, spacesurfer.com, stofff-fr.com, superbabes.nl, thecelebzone.com, topesexy.net, trillianfakes.com, vamp.dk, wallpapery.net, wscan.org.

30. All DOCUMENTS constituting or embodying all versions of GOOGLE's repeat infringer policy, from 2000 to the present.

9

number of times from November 20, 2001 to the present that an Image Search request was entered by users of GOOGLE which contained one of the following terms in either upper, lower, or mixed case: "perfect10.com," "Perfect 10," "Perfect Ten," "perfect 10 pics," "Perfect Ten pics," "perfect 10 scans," "Perfect Ten scans," "Perfect 10 models," "perfect 10 nudes," and "Perfect Ten models."

47. For each of the following terms: sex, tit, nude, porn, fuck, model, hardcore, anal, intercourse, blowjob, naked, Perfect 10, Playboy, Penthouse, supermodel, orgasm, rape, incest, and Britney Spears, DOCUMENTS sufficient to determine the percentage of all searches made via GOOGLE's Web Search that included that term, for each year from December 31, 2001 to the present.

48. For each of the following terms: sex, tit, nude, porn, fuck, model, hardcore, anal, intercourse, blowjob, naked, Perfect 10, Playboy, Penthouse, supermodel, orgasm, rape, incest, and Britney Spears, DOCUMENTS sufficient to determine the percentage of all searches made via GOOGLE's Image Search that included that term, for each year from 2001 to the present.

49. All DOCUMENTS that constitute or embody GOOGLE's contractual agreements for the use of copyrighted material in connection with GOOGLE's Print program.

50. All DOCUMENTS that constitute or embody communications between and among GOOGLE employees referring or relating to the use of copyrighted material in connection with GOOGLE's Print program.

51. GOOGLE's DMCA Log for the years 2001 through 2005, or any other DOCUMENTS sufficient to IDENTIFY all ENTITIES other than Perfect 10 from whom GOOGLE has received a notice regarding an intellectual property violation, the URLs complained about in each notice from each such ENTITY, and the dates of the complaints for each such URL. These

12

DOCUMENTS should be provided in electronic format if available.

52. DOCUMENTS sufficient to IDENTIFY all GOOGLE AFFILIATED WEBSITES that have used as "key words" (as the term is used by GOOGLE in connection with its Adwords program) either "Perfect 10," "perfect10.com," "perfectten.com," or the names of any Perfect 10 models listed in Exhibit 2, and for each such website, which terms were used, along with the dates of such use.

53. All versions of form contracts or agreements between GOOGLE and any Adwords or Adsense websites used from 2001 to the present.

54. All versions of GOOGLE rules, regulations and guidelines relating to content on any Adwords or Adsense websites, from 2001 to the present.

55. All communications with third parties that refer to Plaintiff, Perfect 10.

56. All internal documents that refer to Plaintiff, Perfect 10.

57. All DOCUMENTS that refer to GOOGLE'S document retention policy.

58. All DOCUMENTS that refer or relate to the designation of a copyright agent under the DMCA.

59. All complaints filed (in any jurisdiction in the U.S. and in any foreign country) against GOOGLE relating to copyright infringement, trademark infringement, or infringement of right of publicity.

60. All DOCUMENTS relating to any insurance that GOOGLE has or claims to have in connection with any of the claims asserted.

61. All DOCUMENTS relating to any indemnity claims made by GOOGLE to any third party with respect to the claims in the amended complaint.

62. All DOCUMENTS that relate to, evidence, refer to, or reflect communications with any webmaster with respect to any of the Perfect 10 copyrighted works or Perfect 10 models or Perfect 10 trademarks.

63. All DOCUMENTS that support GOOGLE'S fourteenth affirmative defense.

64. All DOCUMENTS that support GOOGLE'S fifteenth affirmative defense.

13

assist GOOGLE in more expeditious handling of Perfect 10's notices.

Dated: March 4, 2005

JEFFREY N. MAUSNER
BERMAN, MAUSNER & RESSER,
A LAW CORPORATION

Daniel J. Cooper
PERFECT 10, INC.

By: _Jeffrey N. Mausner_
Jeffrey N. Mausner
Attorneys for Plaintiff, PERFECT 10, INC.

15



**EXHIBIT J**

RUSSELL J. FRACKMAN (State Bar No. 49087)
JEFFREY D. GOLDMAN (State Bar No. 155589)
MITCHELL SILBERBERG & KNUPP LLP
11377 West Olympic Boulevard
Los Angeles, CA 90064-1683
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

DANIEL J. COOPER (State Bar No. 198460)
PERFECT 10, INC.
72 Beverly Park Dr.
Beverly Hills, California 90210
Telephone: (310) 205-9817
Facsimile: (310) 205-9638

JEFFREY N. MAUSNER (State Bar No. 122385)
BERMAN, MAUSNER & RESSER
11601 Wilshire Boulevard, Suite 600
Los Angeles, California 90025-1742
Telephone: (310) 473-3333
Facsimile: (310) 473-8303

Attorneys for Plaintiff
Perfect 10, Inc.

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT
MAY 2 2 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

LODGED

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND CONSOLIDATED CASE | MASTER FILE NO. CV04-9484 AHM (SHx)<br><br>(PROPOSED) ORDER RE PERFECT 10'S MOTION TO COMPEL DEFENDANT GOOGLE, INC. TO PRODUCE DOCUMENTS AND TO ANSWER INTERROGATORIES<br><br>(SET NO. ONE)<br><br>Date: February 21, 2006<br>Time: 10 A.M.<br>Place: Courtroom of Judge Hillman |

DOCKETED ON CM
MAY 2 2 2006
BY _____ 046
163

(Proposed)Order re Perfect 10's Motion to Compel Defendant
Google to Produce Documents and To Answer Interrogatories
1
Exhibit J, Page 56

# INTRODUCTORY STATEMENT

Perfect 10, Inc. and Google Inc. submit this proposed order regarding Perfect 10's Motion to Compel Production of Documents and Responses to Interrogatories. Although the parties have attempted to agree on all provisions of this order, they have been unable to agree as to what the Court ordered with respect to Perfect 10's Document Requests Nos. 47 and 48. Accordingly, for these two requests, the parties have set forth below their respective understanding of what the Court ordered and respectfully request that the Court clarify its ruling as to these requests.

## PROPOSED ORDER

Plaintiff Perfect 10 Inc.'s Motion to Compel Defendant Google Inc., to produce Documents (Set No. One) and to Answer Interrogatories (Set No. One) propounded to Defendant Google, Inc., came on regularly for hearing at the above noted time and place, the Honorable Stephen J. Hillman presiding. Jeffrey N. Mausner, Esq., of Berman Mausner & Resser, appeared on behalf of Plaintiff Perfect 10, Inc. ("Perfect 10"). Jennifer A. Golinveaux, Esq., Andrew P. Bridges, Esq., and Susan E. Lee, Esq., of Winston & Strawn, appeared on behalf of Defendant Google, Inc.

Upon consideration of all papers and records on file and the parties' oral argument, the Court orders as follows:

## ORDERS RE PERFECT 10'S MOTION TO
## COMPEL PRODUCTION OF DOCUMENTS

**Document Requests 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 30, 51, 55, 56, 57, 58, 59, 60, 61, 65, 66, 67, 68, 69, 70, 71, 74, 75.**

Google has agreed to produce non-privileged responsive documents for the following document requests of Perfect 10, either as originally propounded, or as modified as set forth herein: 1, 2, 3, 4, 5, 6, 7, 8, 12, 13, 30, 51, 55 (subject to the limitation set forth in Google's written response), 56, 57, 58, 59 (limited to the United

Exhibit J, Page 57

States), 60 (subject to the limitation set forth in Google's written response), 61, 65, 66, 67, 68 (relating to Google's Web Search and Image Search services, and Google's advertising programs), 69 (relating to Google's Web Search and Image Search services, and Google's advertising programs), 70 (relating to Google's Web Search and Image Search services, and Google's advertising programs), 71, 74, 75. The Court ordered that these documents are to be produced by Google by April 15, 2006.

**Document Requests Nos. 9, 10, 11, 15, 24, 25, 35, 39, 40, 41, 43, 44, 45, 46, 52**

The Court defers ruling on Perfect 10's Requests for Production of Documents Nos. 9, 10, 11, 15, 24, 25, 35, 39, 40, 41, 43, 44, 45, 46, 52 at this time.

**Document Request No. 28**

Google is ordered to produce all documents in response to Perfect 10's Request For Production of Documents No. 28 (as modified): "All notices of termination sent by GOOGLE to any ENTITY as a result of complaints from Perfect 10." The documents shall be produced by April 15, 2006.

**Document Request No.72 (as modified)**

Google has agreed to produce all documents in response to Perfect 10's Request For Production of Documents No. 72 (as modified): "Documents sufficient to describe how an image is 'extracted' as alleged in Paragraph 18 of the Counterclaim". The Court ordered that these documents shall be produced by April 15, 2006.

**Document Request No.73 (as modified)**

Google is ordered to produce all documents in response to Perfect 10's Request For Production of Documents No. 73 (as modified): "DOCUMENTS sufficient to establish Google's allegations in Paragraph 58 of the Counterclaim." These documents shall be produced by April 15, 2006.

**Document Request No. 77 (as modified)**

Google is ordered to produce all documents in response to Perfect 10's Request For Production of Documents No. 77 (as modified): "All DOCUMENTS that evidence,

(Proposed)Order re Perfect 10's Motion to Compel Defendant **3** Google to Produce Documents and To Answer Interrogatories

Exhibit J, Page 58

1  contradict, refer to, or relate to YOUR contention in Paragraph 50 of your cross-
2  complaint that Perfect 10 refused to take steps to assist GOOGLE in more
3  expeditious handling of Perfect 10's notices." These documents shall be produced
4  by April 15, 2006.

5  **Document Request No. 22 (as modified)**

6  Subject to the limitations set forth in its written responses, Google has agreed
7  to produce the following documents in response to Perfect 10's Request For
8  Production of Documents No. 22 (as modified): "All DOCUMENTS that refer to or
9  reflect the suppression of any of the URLs listed in Exhibit 4 from appearing in Google
10  Image and Web Search results." (Exhibit 4 is attached to the Revised Document
11  Requests.) The Court ordered that these documents shall be produced by April 15,
12  2006.

13  **Document Request No. 23 (as modified)**

14  Subject to the limitations set forth in its written responses,  Google has
15  agreed  to produce the following documents in response to Perfect 10's Request For
16  Production of Documents No. 23 (as modified): "DOCUMENTS sufficient to
17  IDENTIFY all URLs DISABLED by GOOGLE as a result of notices sent by Perfect
18  10." The Court ordered that these documents shall be produced by April 15, 2006.

19  **Document Request No. 14 (as modified)**

20  Google is ordered to produce all documents in response to Perfect 10's
21  Request for Production of Documents No. 14, modified as follows: "Google's
22  minutes of board of director and other executive committee meetings that refer to,
23  relate to or mention copyright infringement, misappropriation of rights, or
24  trademark infringement in connection with adult content, from the formation of
25  Google to the present." These documents shall be produced by April 15, 2006.

26  **Document Request No. 16 (as modified)**

27  Google has agreed to produce all documents in response to Perfect 10's
28  Request for Production of Documents No. 16, modified as follows: "Google's

(Proposed)Order re Perfect 10's Motion to Compel Defendant      **4**
Google to Produce Documents And To Answer Interrogatories

Exhibit J, Page 59

1 minutes of Board of Director and/or other executive committee meetings that refer
2 to, relate to or mention Perfect 10." The Court ordered that these documents shall be
3 produced by April 15, 2006.

4 **Document Request No. 17 (as modified)**

5 Google is ordered to produce all documents in response to Perfect 10's
6 Request for Production of Documents No. 17, modified as follows: "All
7 DOCUMENTS that constitute or embody communications between or among employees
8 of GOOGLE that refer to or relate to GOOGLE'S potential liability for copyright
9 infringement, misappropriation of rights of publicity or trademark infringement in
10 connection with adult content, from the formation of Google to the present." The
11 presumptive deadline for production is April 15, 2006.

12 **Document Requests Nos. 18, 19, 20, and 21**

13 The Court took Perfect 10's Motion to Compel Document Requests Nos. 18,
14 19, 20, and 21 under submission.

15 **Document Requests Nos. 26 and 27 (as modified)**

16 Google is ordered to produce all documents in response to Perfect 10's
17 Request for Production of Documents Nos. 26 and 27, which are now combined
18 and modified into one Request as follows: "All notices of termination issued by
19 Google as a result of alleged intellectual property violations." The Court sets April 15,
20 2006 as a target date for production.

21 **Document Request No. 29 (as modified)**

22 Google is ordered to produce all documents in response to Perfect 10's
23 Request for Production of Documents No. 29, modified as follows: All documents
24 that relate to, constitute or embody communications between Google and the owners
25 of the following websites, to the extent that ownership information is reflected in
26 Google's records:

27

28 000celebs.com.ar, 1024x768wallpapers.com, 21stars.net, abc-celebs.com,
aclasscelebs.com, adoredcelebrities.com, adult.backwash.com, alibabaweb.com, all-nude-

(Proposed)Order re Perfect 10's Motion to Compel Defendant    5
Google to Produce Documents and To Answer Interrogatories

celebrities-free.com, annasayfa.host.sk, antoninoc.net, averlo.com, babefocus.com, big.clarence.com, Britney-spears-nudes.net, bukuroshe.parajsa.com, celebguru.com, celebrities.nice.ru, celebrityarchive.de, celebritybattles.com, celebritypictures.com, celebritypicturesarchive.com, celebsdb.com, celebstation.org, chez.com, cubic2003.free-sex.cz, desktopgirls.ru, e-celeb.by.ru, eracle.it, extremefakecelebs.com, family-incest-sex.net, famouspeoplepics.com, fotochicas.com, fotomodellefamose.com, free-nude-and-naked-celebs-fakes.com, gossip.babeleweb.net, greh.ru, gwool.com, home.tiscali.be, home-2.worldonline.nl, icycelebs.com, incest-search.com, index.hr, indicedivx.com, i-sd.com, Jennifer-anniston-naked.com, jerkengine.com, lairofluxlucre.com, kobiety.website.pl, mapage.noos.fr, eros.externet.hu, megapolis.com.ar, miss.mgn.ru, modellemania.net, monitor.hr, nejcpass.com, nude-celebrity.net, mg.danboss.com,

minovia.com, moono.com, ottoperuna.altervista.org, paparazzi-nude.com, perfectpeople.net, photoglamour.it, pix.alronix.net, platinum-celebs.com, playboy.fason.ru, pornosaur.com, postalesmix.com, promethyl.org, ragazzesexy.tv, rape-videos.us, rate-celebs.com, realcelebs4u.com, robbscelebs.co.uk, russiancelebrities.org, russiancelebrities.net, spacesurfer.com, stofff-fr.com, superbabes.nl, thecelebzone.com, topesexy.net, trillianfakes.com, vamp.dk, wallpapery.net, wscan.org.

These documents shall be produced by April 15, 2006.

**Document Requests Nos. 31, 32, 33 and 34**

With respect to Perfect 10's Document Requests 31, 32, 33 and 34, the parties are ordered to continue to meet and confer in order to identify current and former employees of Google in connection with these requests.

**Document Request No. 37**

The Court orders Google to produce the following documents in response to Perfect 10's Document Request No. 37: "Any indemnification agreements between GOOGLE and Amazon." These documents shall be produced by April 15, 2006. The Court reserves ruling on the remainder of the documents requested by Perfect 10 in Document Request No. 37.

**Document Request No. 38**

The Court orders Google to produce the following documents in response to Perfect 10's Document Request No. 38: "All contracts between GOOGLE and Amazon for provision of search services." These documents shall be produced by April 15, 2006. The Court reserves ruling on the remainder of the documents requested by Perfect 10 in Document Request No. 37.

**Document Request No. 42**

The Court defers ruling on Perfect 10's Document Request No. 42.

1 Nevertheless, the Court requests that Google assist Perfect 10 in finding out, on a

2 real time basis, what is currently stored on Google's servers for three of the

3 following websites: czeckmate.hpg.ig.com.br, animald.com, celebs-online.com,

4 freehostempire.com, web1000.com, celebclub.com, celebsxposed.com, eroticountry.com,

5 celebritypictures.com, movieman.com, erotichomepages.com, femcelebs.wo.to, boom.ru,

6 perso.respublica.fr, tomsk.ru, sex.erotism.com, spika-presents.com, ultimate-celebs.com,

7 and xoom.it.

8 **Document Request Nos. 47 and 48**

9 Having been unable to agree as to precisely what the Court ordered

10 regarding Document Request Nos. 47 and 48, the parties set forth below their

11 respective understandings of the Court's order. For the Court's convenience, the full

12 transcript of the February 21-22 discovery hearings is attached to the Proposed

13 Order re Google's Motion to Compel Production of Documents and Responses to

14 Interrogatories as Exhibit A.

15 **Perfect 10's version re Document Request Nos. 47 and 48:**

16 The Court orders Google to produce the following documents: Any internal

17 reports or documents currently in existence that discuss the amount or percentage of

18 searches on Google Image Search and/or Web Search on any of the following terms:

19 sex, tit, nude, porn, fuck, Lolita, bestiality, beastiality, model, hardcore, anal, intercourse,

20 blowjob, naked, Perfect 10, Playboy, Penthouse, supermodel, orgasm, rape, incest, and

21 Britney Spears, for any period of time from December 31, 2001 to the present. Any such

22 documents shall be produced by April 15, 2006. The Court defers ruling on the

23 remainder of Perfect 10's Document Requests Nos. 47 and 48.

24 *ORDER*
**~~Google's version~~ re Document Request Nos. 47 and 48:**

25 The Court orders Google to produce the following documents: Internal

26 summary reports currently in existence sufficient to determine the amount or

27 percentage of searches on Google Image Search and Web Search on each of the

28 following terms: sex, tit, nude, porn, fuck, Lolita, bestiality, beastiality, model, hardcore,

anal, intercourse, blowjob, naked, Perfect 10, Playboy, Penthouse, supermodel, orgasm, rape, incest, and Britney Spears, for each year (or, *and/or* for shorter periods of time if ~~annual reports do not~~ *they* exist ), from December 31, 2001 to the present. Any such documents shall be produced by April 15, 2006. The Court defers ruling on the remainder of Perfect 10's Document Requests Nos. 47 and 48.

Perfect 10's explanation of why the Court should adopt Perfect 10's version:

These 2 Document Requests were dealt with at the hearing on February 22, 2006 (see February 22, 2006 Transcript, from page 15, line 23 to page 23, line 12,copies of which are attached hereto as Exhibit A). After discussion, at page 21, lines 18-23, the Court invited Mr. Mausner, counsel for Perfect 10, to rephrase the requests. The following rephrasing of the requests was accepted by the Court verbatim, without further argument by either side:

Mr. Mausner: "Any internal reports or documents currently in existence that discuss the amount or percentage of searches on any of the following terms."

The Court: "Yes. For the dates listed, and I will grant the revised request, and I will not rule on the request as stated at this time. In terms of compliance date, I suppose April 15th."

Mr. Bridges: "Thank you, Your Honor".

(February 22, Transcript, page 23, lines 3-11).

Google's proposed version tries to limit the order by rephrasing it to read "internal summary reports" as opposed to what was ordered, "any internal reports or documents." Google may have documents which are not "internal summary reports" which should be produced, as specifically ordered by the Court.

Perfect 10 also believes that the Court did not intend the Requests, as rephrased, to limit production by Google to documents or reports only prepared for a yearly period, but intended for Google to produce documents responsive to the rephrased requests, even if the same deal with shorter time periods. Hence, Perfect 10's version includes the wording "for any period of time" from December 31, 2001 to the present. Perfect 10 is

1 concerned that if Google's version is adopted, Google would use it as a pretext to not
2 produce responsive documents, claiming that it only has to produce documents showing
3 the frequency of search terms for full year periods. In other words, if documents existed
4 showing that there were 20 million searches for the term "sex" on one day in 2005,
5 Google could claim that it does not have to produce that document because it does not
6 show how many searches there were for all of 2005 (i.e. "for each year"). Perfect 10
7 believes that the Court's order at the hearing was clear that Google is to produce any
8 existing reports or documents showing the frequency of the listed search terms from
9 December 31, 2001 to the present, whether that document covers a day, a week, or a
10 month during that time period, and that the Court's ruling was not limited to only
11 documents which show the frequency of search terms for an entire year. Perfect 10
12 believes that Google is trying to evade producing documents by phrasing the Order in its
13 way, and refusing to agree to the language Perfect 10 has suggested.

14       The discussion at the hearing concerning Document Requests 47 and 48 is found at
15 pages 18-23 of the February 22, 2006 Transcript, Exhibit A. It is clear that the Court, in
16 stating the documents should be produced "For the dates listed" logically meant any
17 documents covering any period of time from December 31, 2001 to the present, and not
18 only documents covering an entire year period. In fact, counsel for Perfect 10 specifically
19 stated that the documents might reflect search frequency by month, by year, or on a certain
20 day. (February 22, 2006 Transcript, page 18 lines 10-15.)

21       A similar issue concerning time frames came up at the hearing with respect to
22 Interrogatory No. 24. In that discussion (page 29, lines 11-17, February 22 transcript,
23 Exhibit A), the Court stated: "I think what I'm prepared to grant is harmonious with what I
24 did a few minutes ago, which would be to order responses—a response to interrogatory 24
25 to the extent that Google can answer the interrogatory based on currently existing
26 historical reports and *whether they can answer on a yearly basis or a monthly basis*
27 *whatever.*" (Emphasis added.)

28       The same is true for Document Requests 47 and 48, as the Court specifically noted

(Proposed)Order re Perfect 10's Motion to Compel Defendant    **9**
Google to Produce Documents and To Answer Interrogatories

Exhibit J, Page 64

1    when it said that this was harmonious with what it did a few minutes ago. Hence, Google

2    should be required to produce any existing reports or documents that discuss the amount

3    or percentage of searches on Google Image Search and/or Web Search for any of the listed

4    terms, for any period of time (i.e., a day, week, month, or year, etc.) from December 31,

5    2001 to the present.

6    Google's explanation of why the Court should adopt Google's version:

7         Google's proposed order re document requests 47 and 48 differs from P10's

8    version in two important respects. First, Google's proposed order calls for "*[i]nternal*

9    *summary reports* currently in existence *sufficient to determine* the amount or

10    percentage of searches on, while P10's version calls for "*[a]ny internal reports or*

11    *documents* currently in existence that discuss the amount or percentage of searches

12    on" the specified terms. **Google's proposed language simply tracks P10's**

13    **requests**, which sought "documents sufficient to determine the percentage" of

14    searches on the specified terms. Moreover, as Google's counsel explained to P10's

15    counsel, the term "internal summary reports" in Google's version as opposed to "any

16    internal reports or documents" in P10's version, is necessary to make clear that the

17    Court deferred the request as a mega request to the extent that it would require

18    Google to mine data from underlying logs or to produce massive underlying logs,

19    which would arguably be called for by P10's proposed language "any internal

20    reports or documents."

21         The second difference is that P10's proposed order calls for documents "for

22    any period of time from December 31, 2001 to the present," while Google's version

23    accurately reflects the Court's order in calling for documents "for each year (or for shorter

24    periods of time if annual reports do not exist ), from December 31, 2001 to the present."

25    At the hearing, the Court specifically ordered production of internal reports "for the dates

26    listed" in Plaintiff's document requests 47 and 48 (February 22, 2006 Transcript, page 23

27    line 7, attached hereto as Exhibit A), which called for documents "sufficient to determine

28    the percentage of all searches . . . for each year from December 31, 2001 to the present"

(Proposed)Order re Perfect 10's Motion to Compel Defendant   **10**
Google to Produce Documents and To Answer Interrogatories

Exhibit J, Page 65

and from "2001 to the present," respectively.  Moreover, while P10 argues that Google's proposed language is unacceptable because "if documents existed showing that there were 20 million searches for the term "sex" on one day in 2005, Google could claim that it does not have to produce that document because it does not show how many searches there were for all of 2005," P10's point is not well taken, because Google's proposed language *specifically calls for* documents "for each year (*or for shorter periods of time if annual reports do not exist*) (emphasis added)."  Google's proposed language accurately reflects P10's requests and the Court's order, while P10's proposed language does not.

**Document Requests Nos. 49 and 50**

The Court orders Google to produce a sample contractual agreement for the Book Search Program, with a presumptive deadline of April 15, 2006.  The Court denies, without prejudice, Perfect 10's Motion to Compel the remainder of Document Requests Nos. 49 and 50.

**Document Request No. 53**

The Court orders Google to produce documents responsive to Perfect 10's Document Request number 53 revised as follows: A representative sample of each type of Adwords and Adsense form contracts or agreements used from 2001 to the present. These documents shall be produced by April 15, 2006.

**Document Request No. 54**

The Court orders Google to produce documents responsive to Perfect 10's Document Request number 54 as follows: "A representative sample of each type of GOOGLE rules, regulations and guidelines relating to content on any Adwords or Adsense websites, from 2001 to the present."  These documents shall be produced by April 15, 2006.

**Document Request No. 62**

Google is ordered to produce all internal documents and/or communications that refer to Perfect 10.  Based on that, the Court denies Perfect 10's Motion to Compel with respect to its Document Request No. 62 on the basis that it is redundant.

## ORDERS RE PERFECT 10'S MOTION TO
## COMPEL ANSWERS TO INTERROGATORIES

**Revised Interrogatories Nos. 25, 26, 27, 28, 30, 31, 32, and 33.**

Google has agreed to answer Revised Interrogatories 25, 26, 27, 28, 30, 31, 32, and 33 by April 15, 2006, and the Court so orders.

**Revised Interrogatory No. 24**

Revised Interrogatory No. 24 states: "Please identify the fifty most frequently used search terms in Google's Web Search in order of use, and the fifty most frequently used search terms in Google's Image Search in order of use, for each of the years 2002 and 2005 and for each such term, state the percentage of all Google Web searches and the percentage of all Google Image searches during each of those years that contained that term." The Court orders Google to provide information in response to Revised Interrogatory No. 24 to the extent that Google can answer based on currently existing historical reports, even if the currently existing reports are for different or partial time periods. Google can respond either in a narrative or by way of document production. Google shall provide such information by April 15, 2006. The Court reserves its ruling on the remainder of Perfect 10's Revised Interrogatory No. 24.

**Revised Interrogatory No. 29**

The Court defers its ruling on Interrogatory No. 29.

**Revised Interrogatory No. 34**

The Court orders Google to answer Revised Interrogatory No. 34 which states as follows: "Please IDENTIFY any ENTITIES that Google has terminated as a consequence of notices sent by Perfect 10, the nature of the termination, and the date of such termination." Google shall provide the answer to this interrogatory by April 15, 2006. Google may answer this interrogatory by producing notices of termination.

(Proposed)Order re Perfect 10's Motion to Compel Defendant          **12**
Google to Produce Documents and To Answer Interrogatories

Exhibit J, Page 67

SCANNED

**Revised Interrogatory No. 35**

    The Court defers its ruling on Interrogatory No. 35.

Dated: May 16, 2006        Respectfully submitted,

                         JEFFREY N. MAUSNER
                         BERMAN, MAUSNER & RESSER

                         By: _Jeffrey N. Mausner_ (D.T.)
                         Jeffrey N. Mausner
                         Attorneys for Plaintiff, PERFECT 10, INC.

Approved as to form only:      WINSTON & STRAWN LLP

Dated: May 16, 2006          By: _____
                         Andrew P. Bridges
                         Jennifer Golinveaux
                         Attorneys for Defendant and
                         Counterclaimant GOOGLE INC.

**IT IS SO ORDERED**

Dated: 5/17/06            _____
                       STEPHEN J. HILLMAN
                       United States Magistrate Judge

1    they can do.

2         THE COURT:  This is sort of out -- out of the realm

3    of this motion, but I would like you to assist

4    Mr. Mausner in helping him find what he wants on a

5    realtime basis in terms of and determining what is

6    currently stored for, let's say, three of these websites,

7    what is currently stored on Google servers, which has

8    nothing do to really with this request because it is a

9    mega request, but in terms of just moving this forward, I

10   would appreciate that.

11        MR. BRIDGES:  Okay.

12        THE COURT:  All right.  43 is a mega request, as I

13   said.  45 is a mega request and 46 is a mega request,

14   unless there is a -- no.  That's what they are, mega

15   requests, unless there's something else you want on a

16   realtime basis.

17        MR. MAUSNER:  Well, this is the number of times

18   these search requests have been --

19        THE COURT:  Right.

20        MR. MAUSNER:  -- so there really isn't a real time

21   equivalent to that.

22        THE COURT:  That's what I assumed.

23             All right.  So those two are deferred, 45 and

24   46.

25             47 and 48.  47 is a mega request.  48 is a mega

1    request.

2        MS. GOLINVEAUX:  Your Honor, in addition to being

3    mega requests, we would strongly argue that 47 and 48 are

4    completely irrelevant to the case.  The number of times

5    that any user has done a search on terms like "rape,"

6    "incest" or "Britney Spears" over a period of close to

7    five years is irrelevant to the claims that plaintiff is

8    asserting.

9        MR. BRIDGES:  Moreover, Your Honor, if one takes at

10   face value Perfect 10's statements that this is relevant

11   because it may be taking people to sites that compete

12   with Perfect 10, and the like, Perfect 10's images do not

13   include any sexual activity.  They do not include any

14   bestiality.  They do not include any of the concepts that

15   are discussed here.  It shows how vastly overbroad this

16   is.  People looking for these things are looking for an

17   entirely different subgenre of product from Perfect 10.

18   And frankly, people looking for Britney Spears are not

19   looking for what they are looking for at Perfect 10.  And

20   I just want to mention that to underscore the lack of

21   relevance.

22       THE COURT:  Well, it gets back to the distinction

23   between pornography and adult content, but for the

24   record, what is the relevancy argument?

25       MR. MAUSNER:  Okay.  This relates to the percentage

1    of Google's business that is just basically serving as a

2    large adult content website that has misappropriated all

3    of these pictures and we think that is going to be a very

4    large percentage of this business.  Our position is for

5    image search, Google, in large extent, isn't even acting

6    as a search engine.  It's just acting as a very large

7    adult content and pornographic website that has

8    misappropriated these pictures.

9         MS. GOLINVEAUX:  Your Honor, request 47 is actually

10   directed to web search, not image search.

11        MR. MAUSNER:  48, I think is -- 47 is web search.

12   48 is image search.

13        THE COURT:  All right.

14        MR. MAUSNER:  And, Your Honor, this is not a mega

15   request because Google keeps these records and yesterday,

16   Ms. Golinveaux admitted that they keep the records and

17   this is something that's very confidential to them.  They

18   don't want to disclose it.  Google keeps lots of records

19   about everything, and there's no question that one of the

20   most important records that it keeps is how -- whatever

21   the most common search results.  This -- it's not going

22   to be hard for them to find this.  They don't have to

23   give it to us for every day.  They keep it in some form,

24   and they should just give it to us --

25        THE COURT:  Well, what was the ruling I made on the

1  top 50 searches?

2  　　MR. BRIDGES:  That, I believe, was deferred.

3  　　THE COURT:  I think it was also; so this should be

4  likewise deferred.

5  　　MS. GOLINVEAUX:  These requests would require a

6  different magnitude -- I mean, Google has estimated that

7  it could take months running 40 computers concurrently in

8  order to process the data sought in requests 43, 47, 48.

9  It's different than the top 10 searches, for example.

10 　　MR. MAUSNER:  If Google has readily available

11 information about how many searches are done on the term

12 "sex," my guess is that's in the top 5.  They have that

13 kept in some manner, you know, by month, by year, on a

14 certain day and that's what they should give us and that

15 is going to be very easy for them to find that

16 information and give it to us.  This is not at all a mega

17 search.

18 　　THE COURT:  Well, the declarations indicate -- that

19 support the concept that these are mega searches.

20 　　MR. MAUSNER:  Well, it may be if they do it in some

21 format.  If they give us the number from December 31,

22 2001 to the present, they may have to put some stuff

23 together, but we're willing to take it in a different

24 format.  We're willing to take it in whatever format they

25 have it.  They and -- they actually -- we just recently

1  found out they do publish non-adult content search

2  results, the number of searches or the percentage of

3  searches on it.  They have the stuff kept in a way that

4  it's going to be very easy for them to find.  I don't

5  know what format they have it in.  They won't tell us

6  what format they have it in, but we'll take it in

7  whatever format it's in, and that's all we'll ask for,

8  whatever they have it in, that they give it to us, but

9  there's no question that they know how many searches are

10  done during some time period for the term "sex" and what

11  percentage that is of all their searches, whether, you

12  know, that's number one or number two or number three --

13      THE COURT:  Well, how do you know that they have it

14  in currently available form?

15      MR. MAUSNER:  They keep records of everything.  This

16  is the most obvious thing -- Your Honor, can ask them, do

17  they keep any records at all -- ask them, Your Honor, of

18  how many searches are done on the term "sex," and if they

19  do, they should give it to us in whatever form they keep

20  it.  They don't have to do any work on it --

21      THE COURT:  It's a fair question.

22      MR. MAUSNER:  Whatsoever.

23      MS. GOLINVEAUX:  Your Honor, the search query logs

24  that Google maintains are truly massive, and that's why

25  it would require months to process the data they

1  requested, the request requested.  We could tell you if

2  it was limited to sex and what it would involve.  I could

3  give you a better estimate for that.

4      THE COURT:  You're saying Google will not maintain

5  historical logs for some of these terms?

6      MS. GOLINVEAUX:  Well, there are search query logs

7  that represent -- that gather the data for all queries

8  made on Google, and those are the logs that would need to

9  be mined to answer these requests.  They are segregated

10  out.

11      MR. MAUSNER:  But, Your Honor, I'm sure they have

12  some kind of reports as to what the most common search

13  terms are.

14      MS. GOLINVEAUX:  But that's not what this request --

15      MR. MAUSNER:  It is what this request is asking for.

16  They have -- you know, if you look at what Overture

17  keeps, which is another search engine, but it's much

18  smaller and the number of searches are going to be

19  probably, you know, 100 times less than what's on Google,

20  you can ask them how many searches are done on "sex," and

21  they have it readily available.  For Google to claim that

22  they don't have that information, I will -- I will bet

23  anything that that's just flat out false.  You know, they

24  are saying some kind of log is massive, but they have

25  this stuff, and Larry Page is saying in an interview with

1    Time Magazine that it's single digits, all of this adult

2    content and pornography is only in the single-digit

3    percentages.

4            That's not going to be true, and they have this

5    stuff readily available in some format, and they should

6    give it to us in whatever format they have it.  They

7    probably do reports all the time about, you know, here

8    are the most common search terms for this week --

9    MS. GOLINVEAUX:  Your Honor, that is not what this

10   request is seeking.  The burden to respond to these

11   requests is enormous and now what Mr. Mausner is

12   describing now are completely different kinds of reports,

13   whether there have been reports or studies or

14   communications.

15   MR. MAUSNER:  Okay.  So you look at the report and

16   you see if the term sex is included within the report.

17   If it is, then it falls directly within this.

18   THE COURT:  Well, no, as with many of the requests,

19   they can be artfully rephrased and when they are artfully

20   rephrased, they might request something entirely

21   different; so if you want to try to rephrase it in a way

22   that they can respond to it without tremendous burden, do

23   so now.

24   MR. MAUSNER:  "Any documents which indicate the

25   number of searches on or the percentage of searches that

Exhibit J, Page 76

SCANNED

1    are done on the following terms."

2        THE COURT:  Why is that different from the request

3    as stated?

4        MR. MAUSNER:  Because this would be -- I think the

5    request as stated covers that, but this would be, if

6    there are any documents that exist that talk about how

7    often the term "sex" is searched.

8        THE COURT:  So in other words, "Any reports,

9    internal document reports" -- no.  "Any internal reports

10   currently in existence that discuss the amount of

11   searches using the terms listed."

12       MS. GOLINVEAUX:  Your Honor, again searches, the

13   number of searches on "Britney Spears" or "rape" or

14   "incest" is completely irrelevant to this case.

15       THE COURT:  Well, I'm not sure I agree with you on

16   that.

17       MS. GOLINVEAUX:  And --

18       THE COURT:  They have a theory of liability here

19   that they are allowed to pursue.

20       MS. GOLINVEAUX:  Your Honor, 47 also does address

21   web search, not image search.

22       THE COURT:  I know that.

23       MR. MAUSNER:  You know, the same may be true for web

24   search as image search.  You know, my guess is it's a lot

25   higher on image search, but, you know, we would like to

1   see what it is on web search as well and the comparison

2   of them may be relevant.

3           Okay.  So something like this:  "Any internal

4   reports or documents currently in existence that discuss

5   the amount or percentage of searches on any of the

6   following terms."

7       THE COURT:  Yes.  For the dates listed.  And I will

8   grant the revised request, and I will not rule on the

9   request as stated at this time.  In terms of a compliance

10  date, I suppose April 15th.

11      MR. BRIDGES:  Thank you, Your Honor.

12      THE COURT:  All right.  Let's move on to 49,

13  "Documents that constitute Google's contractual

14  agreements for the use of copyright material in

15  connection with Google's Print Program."

16      MR. MAUSNER:  Your Honor, may I have just one

17  second, please?

18      THE COURT:  Yeah.

19          Obviously, for requests like the one I just

20  ruled on, if Google needs to file a privilege log, they

21  will do so.

22      MR. BRIDGES:  Right.

23          Your Honor, on this one, it might be useful if

24  I start actually.

25      THE COURT:  Okay.

1 statistics for 10 days in 2002 or they keep it by

2 10-day -- in other words 2002, I guess if they had it for

3 each 10-day period, it wouldn't be hard to add it up, but

4 if they only had it for 10 days in 2002, we would be

5 willing to take it for that 10-day period and, you know,

6 not require the whole year if they don't have it.

7     THE COURT:  Well --

8     MR. MAUSNER:  In other words, if they don't keep

9 them on a yearly basis, we would be willing to take it on

10 some other basis, if that's a problem.

11     THE COURT:  I think what I'm prepared to grant is

12 harmonious with what I did a few minutes ago, which would

13 be to order responses -- a response to Interrogatory 24

14 to the extent that Google can answer the interrogatory

15 based on currently existing historical reports and

16 whether they can answer on a yearly basis or a monthly

17 basis whatever.  If they have the reports, then they are

18 not burdensome and they could respond either in a

19 narrative way to Interrogatory 24 or they could respond

20 by way of document production, and that would still

21 reserve ruling on the mega request that 24 is as stated.

22 So unless Google wishes to be heard, that would be my

23 ruling, and it's co-extensive with the document

24 production ruling a few moments ago.  I don't remember

25 the number.

# EXHIBIT K

1  RUSSELL J. FRACKMAN (State Bar No. 49087)
2  JEFFREY D. GOLDMAN (State Bar No. 155589)
   MITCHELL SILBERBERG & KNUPP LLP
3  11377 West Olympic Boulevard
   Los Angeles, CA 90064-1683
4  Telephone: (310) 312-2000
   Facsimile: (310) 312-3100
5  DANIEL J. COOPER (State Bar No. 198460)
6  PERFECT 10, INC.
   72 Beverly Park Dr.
7  Beverly Hills, California 90210
   Telephone: (310) 205-9817
8  Facsimile: (310) 205-9638

9  JEFFREY N. MAUSNER (State Bar No. 122385)
   BERMAN, MAUSNER & RESSER
10 11601 Wilshire Boulevard, Suite 600
   Los Angeles, California 90025-1742
11 Telephone: (310) 473-3333
   Facsimile: (310) 473-8303

12 Attorneys for Plaintiff
   Perfect 10, Inc.
13

14                UNITED STATES DISTRICT COURT

15               CENTRAL DISTRICT OF CALIFORNIA

16

17 PERFECT 10, INC., a California          MASTER FILE No. CV04-9484 AHM
   corporation,                            (SHx)
18
              Plaintiff,                    PLAINTIFF'S FIFTH SET OF REQUESTS
19                                          FOR THE PRODUCTION OF
        v.                                  DOCUMENTS TO DEFENDANT
20                                          GOOGLE, INC.
   GOOGLE, INC., a corporation; and
21 DOES 1 through 100, inclusive,

22            Defendants.

23

24 _____ AND CONSOLIDATED CASE

25

26 PROPOUNDING PARTY:              PLAINTIFF PERFECT 10, INC.

27 RESPONDING PARTY:              GOOGLE, INC.

28 SET NUMBER:                    FIVE

Exhibit K, Page 80

                                    1

TO DEFENDANT GOOGLE, Inc. AND ITS COUNSEL OF RECORD
HEREIN: Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff
Perfect 10, Inc. propounds the following Fifth Set of Requests for the Production
of DOCUMENTS to Defendant GOOGLE, Inc.  DOCUMENTS shall be produced
to Jeffrey N. Mausner, 11601 Wilshire Blvd., Suite 600, Los Angeles, CA 90025,
30 days after the service of these requests.

## DEFINITIONS AND INSTRUCTIONS

1.     The terms "DOCUMENT" or "DOCUMENTS" shall herein have the
same meaning as "writings and recordings" and "photographs," as defined in Rule
1001 of the Federal Rules of Evidence, and includes, but is not limited to, writings
and recordings of data of every kind, including photographs, images, print-outs,
websites, CDs, DVDs, hard drives, letters, e-mails, telegrams, memoranda, web
pages, reports, studies, calendar and diary entries, outlines, notes, analyses,
statistical or informational accumulations, audits, and associated work papers, any
kind of records of meetings and conversations, sound or mechanical reproductions,
programming notes, comments, computer data bases, computer print-outs, source
code, object code, websites, flow-charts, all stored compilations of information of
any kind which may be retrievable, including, without limitation, computer discs,
hard drives, and RAM, and copies and duplicates of DOCUMENTS which are not
identical duplicates of the originals (e.g., because handwritten or "blind" notes
appear thereon or are attached thereto) whether or not the originals are in YOUR
possession, custody or control. *If A DOCUMENT is available in electronic form, it
should be produced in that electronic form, even if it is also available in hard copy.*

2.     The term "RELATE TO" or "RELATING TO" shall mean refer to,
describe, reflect, evidence, mention, constitute, or contradict.

3.     The terms "GOOGLE", "YOU" and "YOUR" shall refer to Defendant
GOOGLE, Inc. and any company or ENTITY owned or controlled in whole or in
part by GOOGLE and anyone acting on GOOGLE's behalf.

Exhibit K, Page 81

2

1      4.    The term "ENTITY" shall include any form of business entity
2  including but not limited to a corporation, partnership, joint venture, limited
3  partnership and sole proprietorship, as well as an individual human being.

4      5.    The term "CELEBRITY" means any of the following persons:
5  Britney Spears, Christina Aguilera, Jennifer Lopez, Jennifer Love Hewitt, Sarah
6  Michelle Gellar, Melissa Joan Hart, Drew Barrymore, Alicia Silverstone, Andie
7  MacDowell, Anna Kournikova, Yasmine Bleeth, Jane Krakowski, Elisabeth Shue,
8  Geena Davis, Gillian Anderson, Gwyneth Paltrow, Meg Ryan, Michelle Pfeiffer,
9  Barbara Eden, Barbra Streisand, Calista Flockhart, Halle Berry, Hunter Tylo,
10  Jessica Simpson, Niki Taylor, Rachel Stevens, Salma Hayek, Sandra Bullock,
11  Christina Applegate, Claudia Schiffer, Daisy Fuentes, Danielle Fishel, Julia
12  Roberts, Shania Twain, Sharon Stone, Keri Russell, Cameron Diaz, Jessica Alba,
13  Lucy Liu, Jennifer Aniston, Madonna, Faith Hill, Tara Reid, Courtney Cox, Janet
14  Jackson, Leslie Carter, Mandy Moore, Mariah Carey, Jessica Biel, Beverly
15  Mitchel, Pamela Anderson, Angelina Jolie, Carmen Electra, Katie Homes, Kirsten
16  Dunst, Alyssa Milano, Alyson Hannigan, Gates McFadden, Natalie Portman,
17  Madchen Amick, Ashley Judd, Amy Weber, Bridget Fonda, Christie Turlington,
18  Jennifer Connelly, Rebecca Gayheart, Jenny McCarthy, Christina Ricca, Brooke
19  Burke, Claire Danes, Daniela Pestova, Denise Richards, and Katie Holmes.

20      6.    The term "IDENTIFY" when used in connection with an ENTITY
21  shall mean to provide the name, mailing address, e-mail address, and business
22  telephone number of the ENTITY IDENTIFIED, and of each ENTITY believed by
23  YOU to own or control any such ENTITY.

24      7.    The term "IDENTIFY" when used in connection with an image, shall
25  mean to provide an electronic copy of that image, the URL that Google assigned to
26  that image, and the model name if available.

27      8.    The term "IDENTIFY" when used in connection with a website shall
28  mean to provide the URL of the website, and the name, address, and telephone

Exhibit K, Page 82

3

PAGE 4/66 * RCVD AT 1/18/2007 5:52:21 PM [Pacific Standard Time] * SVR:WSSFRF01/3 * DNIS:3 * CSID:3104738303 * DURATION (mm-ss):17-48

1 | employee.

2 | 161. For each of the websites listed in Exhibit C attached hereto (list of

3 | Adsense sites that have infringed Perfect 10 copyrights), documents sufficient to

4 | show that the website owns or has a license for the copyright for one or more of the

5 | CELEBRITY images it displays.

6 | 162. For each of the websites listed in Exhibit C, documents sufficient to

7 | show that the website has a license from any CELEBRITY to use that

8 | CELEBRITY'S name for commercial purposes.

9 | 163. Any contracts with any CELEBRITY showing that GOOGLE has the

10 | right to use that CELEBRITY'S name for commercial purposes.

11 | 164. All DOCUMENTS referring or RELATING TO, or communications

12 | between GOOGLE employees, concerning GOOGLE's efforts to keep users at

13 | google.com (as opposed to sending users to third party websites).

14 | 165. DOCUMENTS sufficient to estimate, for each CELEBRITY, the

15 | number of images of that CELEBRITY copied by GOOGLE onto GOOGLE

16 | servers, in each of the years 2003, 2004, 2005, and 2006.

17 | 166. All studies, reports, notes, internal communications, or other

18 | DOCUMENTS discussing or RELATING TO the number of adult images or

19 | images involving mature content copied by GOOGLE onto GOOGLE servers in

20 | each of the years 2003, 2004, 2005, and 2006.

21 | 167. All studies, reports, notes, internal communications, or other

22 | DOCUMENTS discussing or RELATING TO the number of CELEBRITY images

23 | copied by GOOGLE onto GOOGLE servers in each of the years 2003, 2004, 2005,

24 | and 2006.

25 | 168. For each of the websites listed in Exhibit C, all emails and other

26 | communications between GOOGLE and the operators, webmasters, or contact

27 | persons for those websites.

28 | 169. DOCUMENTS sufficient to determine the names and current contact

Exhibit K, Page 83

12

1      194.   All documents RELATING TO John Levine, Heraldo Botelho,

2   Radhika Malpani, Jessie Jiang, Lawrence You, Diane Tang, and Alexander

3   Macgillivray.

4      195.   All documents constituting, comprising, evidencing, RELATING TO,

5   or referring to communications to, from, or with John Levine, Heraldo Botelho,

6   Radhika Malpani, Jessie Jiang, Lawrence You, Diane Tang, and Alexander

7   Macgillivray, or persons or entities acting on their behalf.

8      196.   Google's DMCA log of DMCA notices received from 3rd parties.

9

10  Dated: January _17_ , 2007

11                          JEFFREY N. MAUSNER,
                            BERMAN, MAUSNER & RESSER

12                          DANIEL J. COOPER,
                            PERFECT 10, INC.

13

14                   By:    _Jeffrey N. Mausner_

15                          Jeffrey N. Mausner Attorneys for Plaintiff,
                            PERFECT 10, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT L

1      UNITED STATES DISTRICT COURT

2   CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

3     HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4                    – – –

5

6   # CERTIFIED COPY

7

8   PERFECT 10, INC., A CALIFORNIA          )
    CORPORATION,                            )
9                                           )
                          PLAINTIFF,        )
10                                          )
              vs.                           )  No. CV04-09484-AHM(SHx)
11                                          )
    GOOGLE, INC., ET AL.,                   )
12                                          )
                          DEFENDANTS.       )
13  _____)

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS

17             LOS ANGELES, CALIFORNIA

18             MONDAY, APRIL 14, 2008

19

20

21

22   _____

23        CINDY L. NIRENBERG, CSR 5059
         U.S. Official Court Reporter
24       312 North Spring Street, #438
         Los Angeles, California 90012
25          *www.cindynirenberg.com*

```
 1   APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:
                         MAUSNER IP LAW
 4                       BY: JEFFREY N. MAUSNER, ATTORNEY AT LAW
                         21800 OXNARD STREET
 5                       SUITE 910
                         WOODLAND HILLS, CA 91367
 6                       310-617-8100

 7

 8

 9

10   FOR THE DEFENDANTS:
                         QUINN EMANUEL URQUHART OLIVER & HEDGES
11                       BY: MICHAEL T. ZELLER, ATTORNEY AT LAW
                         865 SOUTH FIGUEROA STREET
12                       10TH FLOOR
                         LOS ANGELES, CA 90017
13                       213-443-3000

14

15                       QUINN EMANUEL URQUHART OLIVER & HEDGES
                         BY: RACHEL M. HERRICK, ATTORNEY AT LAW
16                       555 TWIN DOLPHIN DRIVE
                         SUITE 560
17                       REDWOOD SHORES, CA 94065
                         650-801-5000

18

19

20

21

22

23

24

25
```

1  that you, I guess, into or maybe through 2006 produced

2  individual DMCA notices.

3          Is that the crux of your objection?

4          MR. ZELLER:  I think that's fairly put.  I mean, I

5  don't know if I would necessarily put it just in terms of a

6  past burden.

7          One concern that we have about this request, too, is,

8  of course -- and I would assume that we will have an ongoing

9  obligation to update as we go along, and that means that we are

10 periodically going to have to turn over, you know, so-called

11 DMCA logs.  You know, we have a problem with this as a matter

12 of principle.

13         If every time Google is sued in a case like this

14 that, you know, we have ongoing obligations to turn them over

15 to every single plaintiff, that's an issue to the company.

16 But, moreover, as the Court is aware, the prior request

17 basically gave us the option, produce the documents that will

18 show the information or produce your logs.

19         We took the one option that gave them the particular

20 information, and that's what we turned over to them.  Now they

21 have come back and said, "Oh, well, we really wanted both.  We

22 wanted the underlying documents and we wanted the log."

23         To our view, that's just, frankly, not fair.  But

24 part of the issue is, too, that, you know -- and there is a

25 definitional issue here as to what do they consider a log to

1    be.   In the years past, when Google was --

2            THE COURT:  Do they define it --

3            MR. ZELLER:  No, they do not.

4        .   THE COURT:   -- in the requests?

5            MR. ZELLER:  No.

6            THE COURT:  So what's a log, Mr. Mausner?

7            MR. MAUSNER:  A DMCA log is a listing of notices of

8    infringement received by a service provider along with the

9    action taken in response and would also give the name of the

10   infringer, because if you're dealing with a repeat-infringer

11   policy, the only way you can do that is to have the infringer

12   in it.

13           They are usually kept in the form of a spreadsheet,

14   probably an electronic one.  Could be manual.  But it shows the

15   notice, the infringer and the action taken.

16           THE COURT:  Do you assume that there is only one such

17   log?

18           MR. MAUSNER:  We don't know.

19           THE COURT:  So if there were a log that had entries

20   on it for some department of amphibian psychology that

21   publishes a journal every six months that three-and-half people

22   read, would it have any relevance to this case?

23           MR. MAUSNER:  Well, you are saying that Google had   .

24   that kind of a log?

25           THE COURT:  I don't know what Google has.  I am

1

2

3                    CERTIFICATE

4

5      I hereby certify that pursuant to Section 753,

6  Title 28, United States Code, the foregoing is a true and

7  correct transcript of the stenographically reported

8  proceedings held in the above-entitled matter and that the

9  transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date: APRIL 18, 2008

13

14              *Cindy L. Nirenberg*

15              Cindy L. Nirenberg, CSR No. 5059

16

17

18

19

20

21

22

23

24

25

# EXHIBIT L1
# (FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER)

# EXHIBIT L2

1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10   PERFECT 10, INC., a California           Case No. CV04-9484 AHM (SHx) √
     corporation,                             [Consolidated with Case No. CV 05-
11                                            4753 AHM (SHx)]
                   Plaintiff,
12                                            ORDER ON GOOGLE INC.'S
          vs.                                 OBJECTIONS TO, AND PERFECT
13                                            10, INC.'S MOTION FOR REVIEW
     GOOGLE INC., a corporation; and          OF, PORTIONS OF THE
14   DOES 1 through 100, inclusive,           MAGISTRATE JUDGE'S ORDER OF
                                              FEBRUARY 22, 2008 GRANTING IN
15                 Defendants.                PART AND DENYING IN PART
                                              PERFECT 10'S MOTION TO
16   _____         COMPEL

17   AND COUNTERCLAIM                         Hon. A. Howard Matz

18   _____
     PERFECT 10, INC., a California           Courtroom:        14
     corporation,                             Hearing Date:     April 14, 2008
19                                            Hearing Time:     10:00 am
                   Plaintiff,
20                                            Discovery Cutoff: None Set
          vs.                                 Pretrial Conference Date: None Set
21                                            Trial Date:  None Set
     AMAZON.COM, INC., a corporation;
22   A9.COM, INC., a corporation; and
     DOES 1 through 100, inclusive,
23
                   Defendants.
24   _____

25
26
27
28
Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]
[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

Exhibit L2, Page 94

1

**ORDER**

2        Google Inc.'s Objections To, and Perfect 10, Inc.'s Motion for Review

3 of, the Magistrate Judge's Order of February 22, 2008, Granting in Part and Denying

4 In Part Perfect 10, Inc.'s Motion to Compel, came on for hearing on April 14, 2008,

5 the Honorable A. Howard Matz presiding.  Jeffrey N. Mausner appeared on behalf

6 of Plaintiff Perfect 10, Inc. ("Perfect 10").  Michael T. Zeller and Rachel M. Herrick

7 appeared on behalf of Defendant and Counterclaimant Google Inc. ("Google").

8        Upon consideration of all papers and records on file and the parties'

9 oral argument, the Court orders as follows:

10

11        **<u>ORDERS ON PERFECT 10'S OBJECTIONS</u>**

12 **PERFECT 10'S OBJECTIONS REGARDING REQUEST NOS. 135, 136, AND**

13 **137**

14        Perfect 10's objections to the Magistrate Judge's Order regarding

15 Request Nos. 135, 136, and 137 are overruled, and the Magistrate Judge's Order

16 regarding those Requests is affirmed.

17 **PERFECT 10'S OBJECTIONS REGARDING (PROPOSED) FURTHER**

18 **ORDER NO. 2**

19        Perfect 10 objected to the Magistrate Judge's decision to not enter

20 (Proposed) Further Order No. 2.  Pursuant to the discussion at the hearing, the

21 (Proposed) Further Order is imposed mutually on both parties as to all past, present

22 and future requests for production.  Accordingly, on or before June 16, 2008,

23 Google shall provide Perfect 10 with a written response stating whether Google has

24 produced documents in response to each of Perfect 10's requests for documents,

25 listed by set number and request number.  If no documents responsive to a request

26 are located after a good-faith reasonable search and, therefore, none ultimately

27 produced, Google shall so state with respect to each such request.  On or before this

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

Exhibit L2, Page 95

1  same date, Perfect 10 shall provide Google with a written response stating whether

2  Perfect 10 has produced documents in response to each of Google's requests for

3  documents, listed by set number and request number.  If no documents responsive to

4  a request are located after a good-faith reasonable search and, therefore, none

5  ultimately produced, Perfect 10 shall so state with respect to each such request.  The

6  obligations of Google and Perfect 10 herein to state whether they have produced

7  documents in response to each other party's requests for documents, listed by set

8  number and request number, shall apply to all future requests for documents as well,

9  and shall be subject to the parties' duties to seasonably supplement their discovery

10 responses pursuant to Fed. R. Civ. P. 26(e).

11 **PERFECT 10'S OBJECTIONS REGARDING REQUEST NO. 197**

12         Perfect 10's objections to the Magistrate Judge's denial of this Request

13 are sustained.  Google shall produce transcripts in its possession, custody or control

14 of depositions of any Google employees, officers and directors taken in connection

15 with the lawsuit *Columbia Pictures Industries, et. al. v. Drury, et. al.*, filed in the

16 United States District Court for the Southern District of New York.

17

18         **ORDERS ON GOOGLE'S OBJECTIONS**

19 **GOOGLE'S OBJECTIONS REGARDING REQUEST NOS. 128-131 and 194-**

20 **195**

21         Google's objections to Request Nos. 128-131 and 194-195 are

22 overruled, but the Requests are limited to reports, studies, or internal memoranda.

23 On or before June 16, 2008, Google shall produce the following:

24         All reports, studies, or internal memoranda ordered, requested, or

25 circulated by Bill Brougher, Susan Wojcicki, Walt Drummond, and Eric Schmidt

26 relating to the following topics:  search query frequencies, search query frequencies

27 for adult-related terms, number of clicks on adult images and images in general,

28

-3-

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

1  traffic to infringing websites, the draw of adult content, and percentage of searches

2  conducted with the safe search filter off.  (Request Nos. 128-131).

3         All reports, studies, or internal memoranda circulated by or to John

4  Levine, Heraldo Botelho, Radhika Malpani, Jessie Jiang, Lawrence You, Diane

5  Tang, and Alexander MacGillivray relating to the following topics:  search query

6  frequencies, search query frequencies for adult-related terms, number of clicks on

7  adult images and images in general, traffic to infringing websites, the draw of adult

8  content, and percentage of searches conducted with the safe search filter off.

9  (Request Nos. 194-95).

10 **GOOGLE'S OBJECTIONS REGARDING REQUEST NO. 174**

11        Google's objections are sustained in part and overruled in part.  On or

12 before May 15, 2008, Google shall produce documents sufficient to describe

13 Google's attempts to develop or use any image recognition software capable of

14 matching a known still photographic image with another image in Google's search

15 engine index or search engine database.  Google is not ordered to produce

16 documents regarding any other types of image recognition technology.

17 / / /

18 / / /

19 / / /

20 / / /

21 / / /

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

27 / / /

28

Case No. CV 04-9484 AHM (SHx) [Consolidated
with Case No. CV 05-4753 AHM (SHx)]

[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE
MAGISTRATE JUDGE'S ORDER

**GOOGLE'S OBJECTIONS REGARDING REQUEST NO. 196**

Google's objections are overruled, subject to the following clarification regarding the scope of Request No. 196.  Perfect 10 sought, and the Magistrate Judge ordered, production of "Google's DMCA log."  As Perfect 10 clarified at the hearing, "DMCA log" as used in Request No. 196 refers to a spreadsheet-type document summarizing DMCA notices received, the identity of the notifying party and the accused infringer, and the actions (if any) taken in response.  Google's obligation to produce documents in response to Request No. 196 shall be subject to the foregoing definition.

**IT IS SO ORDERED.**

DATED:  May 13, 2008

By_____
A. Howard Matz
United States District Judge

-5-

Case No. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)]

[PROPOSED] ORDER ON GOOGLE'S OBJECTIONS TO, AND PERFECT 10'S MOTION FOR REVIEW OF, THE MAGISTRATE JUDGE'S ORDER

# EXHIBIT M

| | |
|---|---|
| **From:** | Jeff Mausner [jeffmausner@bmrlaw.com] |
| **Sent:** | Wednesday, April 30, 2008 1:39 AM |
| **To:** | Rachel Herrick Kassabian |
| **Cc:** | Thomas Nolan; Michael T Zeller |
| **Subject:** | RE: Production of documents |

```
Rachel: It is acceptable for Google to produce documents in that format as long as they are
easily readable and searchable, without any special software or computer equipment.
However, Perfect 10 will be producing the documents on a hard drive or DVDs, in pdf, jpg,
excel, or some other image or printscreen format, as they are maintained by Perfect 10.
Jeff.
```

**From:** Rachel M Herrick [mailto:rachelherrick@quinnemanuel.com]
**Sent:** Tuesday, April 29, 2008 2:37 PM
**To:** Jeffrey Mausner
**Cc:** Thomas Nolan; Michael T Zeller
**Subject:** RE: Production of documents

Jeff,

In anticipation of Google's production on Thursday, and Perfect 10's forthcoming production, we'd like the parties to agree to produce documents in standard single page tiff format, with Concordance and Opticon load files. Please let us know if this is acceptable to Perfect 10.

Rachel M. Herrick
Quinn Emanuel Urquhart Oliver & Hedges, LLP
555 Twin Dolphin Drive, Suite 560
Redwood Shores, CA 94065
Direct: (650) 801-5005
Main Phone: (650) 801-5000
Main Fax: (650) 801-5100
E-mail: rachelherrick@quinnemanuel.com
Web: www.quinnemanuel.com

**From:** Jeffrey Mausner [mailto:jeffmausner@bmrlaw.com]
**Sent:** Tuesday, April 29, 2008 12:06 PM
**To:** Rachel M Herrick
**Cc:** Thomas Nolan
**Subject:** Production of documents

Rachel: We had an agreement with prior counsel that if either party inadvertently produced attorney-client privileged or work product doctrine documents, it would not be deemed a waiver. We have additional

Exhibit M, Page 99

documents ready to produce to Google, and I want to make sure that that agreement is still in place. Please confirm. Jeff.

This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges. If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited. Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Jeffrey N. Mausner
Warner Center Towers, Suite 910
21800 Oxnard Street
Woodland Hills, California 91367-3640
Telephone: (310)617-8100; (818)992-7500
Facsimile: (818)716-2773
e-mail: jeffmausner@bmrlaw.com

# EXHIBIT N
# (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)

# EXHIBIT O
# (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)

# EXHIBIT P

1  Jeffrey N. Mausner (State Bar No. 122385)
2  Law Offices of Jeffrey N. Mausner
   Warner Center Towers
3  21800 Oxnard Street, Suite 910
   Woodland Hills, California 91367-3640
4  Email: Jeff@mausnerlaw.com
   Telephone: (310) 617-8100, (818) 992-7500
5  Facsimile: (818) 716-2773

6  Attorneys for Plaintiff Perfect 10, Inc.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  PERFECT 10, INC., a California corporation, | Case No. CV 04-9484 AHM (SHx) |
| 12 | Consolidated with Case No. CV 05-4753 AHM (SHx) |
| 13          Plaintiff, | |
| 14     v. | **PLAINTIFF PERFECT 10'S ELEVENTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT GOOGLE, INC.** |
| 15  GOOGLE, INC., a corporation; and DOES 1 through 100, inclusive, | |
| 16 | |
| 17          Defendant. | |
| 18 | |
| 19  AND CONSOLIDATED CASE. | |
| 20 | |

21  PROPOUNDING PARTY:              PLAINTIFF PERFECT 10, INC.

22  RESPONDING PARTY:              DEFENDANT GOOGLE, INC.

23  SET NUMBER:              ELEVENTH

24

25

26

27

28

TO DEFENDANT GOOGLE, INC. AND ITS COUNSEL OF RECORD HEREIN, QUINN, EMANUEL: Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Perfect 10, Inc. propounds the following Eleventh Set of Requests for the Production of DOCUMENTS to Defendant GOOGLE, INC. DOCUMENTS shall be produced to Jeffrey N. Mausner, Warner Center Towers, 21800 Oxnard Street, Suite 910, Woodland Hills, California 91367-3640, 30 days after the service of these requests.

## DEFINITIONS

1. The terms "DOCUMENT" or "DOCUMENTS" shall herein have the same meaning as "writings and recordings" and "photographs," as defined in Rule 1001 of the Federal Rules of Evidence, and includes, but is not limited to, writings of every kind, including photographs, images, print-outs, websites, CDs, DVDs, hard drives, letters, e-mails, telegrams, correspondence, records of telephone conversations, memoranda, statements, declarations, affidavits, minutes, web pages, reports, studies, calendar and diary entries, outlines, notes, analyses, statistical or informational accumulations, audits, checks, and associated work papers, any kind of records of meetings and conversations, sound or mechanical reproductions, programming notes, comments, computer data bases, computer print-outs, source code, object code, websites, flow-charts, contracts, agreements, all stored compilations of information of any kind which may be retrievable, including, without limitation, computer disks, hard drives, and RAM, and copies, drafts, and duplicates of DOCUMENTS which are not identical duplicates of the originals (e.g., because handwritten or "blind" notes appear thereon or are attached thereto) whether or not the originals are in YOUR possession, custody or control. *If a DOCUMENT is available in electronic form, it should be produced in that electronic form, even if it is also available in hard copy.*

2. The terms "RELATING TO" means referring to, mentioning,

concerning, reflecting, pertaining to, evidencing, tending to prove or disprove, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting.

3. The term "COMMUNICATIONS" means any transmission of information from one person to another, including but not limited to emails, letters, memoranda, telephone conversations, in-person conversations, voicemail, facsimiles, and electronic messages of any kind.

4. SHANTAL RANDS POOVALA means Shantal Rands and/or Shantal Rands Poovala.

5. The terms "GOOGLE", "YOU" and "YOUR" shall refer to Defendant GOOGLE, Inc. and any company or ENTITY owned or controlled in whole or in part by GOOGLE and anyone acting on GOOGLE's behalf.

## INSTRUCTIONS

1. All DOCUMENTS which exist in electronic format shall be produced in electronic format. If the documents are electronic, please produce them in their native format, as they existed at the time they were created, based on archive or back-up data. If the DOCUMENT is not available in its native format, please produce it in other formats in which it is available.

2. All DOCUMENTS shall be produced specifying the document request that they relate to.

3. File folders with tabs or labels, or directories of files identifying DOCUMENTS, must be produced intact with the DOCUMENTS.

4. If you are unable to produce any DOCUMENT requested because the DOCUMENT is no longer in existence, or no longer within your possession, custody, or control, you must so state and identify each DOCUMENT by describing its content and setting forth its date, author(s), and recipient(s). In addition, you must describe the circumstances under which the DOCUMENT ceased to exist or passed from your possession, custody, or control, and identify

each person believed to have possession, custody or control of the DOCUMENT.

5. In producing these documents and things, you are requested to identify and produce for inspection and copying not only those documents and things in your custody, but all documents and things in the custody of your attorneys, consultants, agents, other representatives, and other persons or entities subject to your control.

6. If any DOCUMENTS or things are not produced based upon a claim of privilege, you must state the following for each such DOCUMENT:

a) The title of the DOCUMENT or thing;

b) The general subject matter of the content of the DOCUMENT or description of the thing;

c) The date of its creation and any revisions;

d) The identity of all author(s), addressee(s), and recipient(s) of the DOCUMENT;

e) The nature of the privilege being claimed; and

f) The facts upon which the claim of privilege is made.

7. GOOGLE has a duty to supplement its response from now until the time of trial, as provided by Rule 26(e) of the Federal Rules of Civil Procedure.

**DOCUMENTS TO BE PRODUCED**

383. All emails and/or other COMMUNICATIONS between SHANTAL RANDS POOVALA and any other Google employee RELATING TO the processing of a notice received from any person claiming to be a copyright owner.

384. All emails, faxes, and/or other COMMUNICATIONS received by SHANTAL RANDS POOVALA from any person claiming to be a copyright owner.

385. All emails and/or other COMMUNICATIONS sent by SHANTAL

RANDS POOVALA to any person claiming to be a copyright holder.

386. All emails and/or other COMMUNICATIONS sent by or received by SHANTAL RANDS POOVALA RELATING TO the fact that a DMCA notice was deficient or could not or would not be processed.

387. All emails and/or other COMMUNICATIONS sent by or received by SHANTAL RANDS POOVALA RELATING TO the fact that a DMCA notice was processed, would be processed, or could be processed.

388. All COMMUNICATIONS RELATING TO DMCA notices which Ms. Poovala processed.

Dated: October 21, 2009          LAW OFFICES OF JEFFREY N. MAUSNER


By: _Jeffrey N. Mausner_____
    Jeffrey N. Mausner
    Attorney fo Plaintiff Perfect 10, Inc.

# EXHIBIT Q

1　　　　　UNITED STATES DISTRICT COURT

2　　　CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3　　　　HONORABLE A. HOWARD MATZ, U.S. DISTRICT JUDGE

4　　　　　　　　　　　- - - -

5

6　　　　　　　　　　　　　　　　　COPY

7　　　　　　　　　　　　　　　)
PERFECT 10, INC., A CALIFORNIA　　)
8　CORPORATION,　　　　　　　)
　　　　　　　　　　　　　　　)
9　　　　　　　　PLAINTIFF,　　)
　　　　　　　　　　　　　　　)
10　　　　　vs.　　　　　　　) No. CV04-09484-AHM(SHx)
　　　　　　　　　　　　　　　)
11　GOOGLE, INC., ET AL.,　　　)
　　　　　　　　　　　　　　　)
12　　　　　　　　DEFENDANTS.　)
　　───────────────────────────)

13

14

15　　　　　REPORTER'S TRANSCRIPT OF PROCEEDINGS

16　　　　　　　LOS ANGELES, CALIFORNIA

17　　　　　　　MONDAY, JULY 14, 2008

18

19

20

21

22　　　　───────────────────────────

23　　　　　CINDY L. NIRENBERG, CSR #5059
　　　　　　U.S. Official Court Reporter
24　　　　　312 North Spring Street, #438
　　　　　　Los Angeles, California 90012
25　　　　　　*www.cindynirenberg.com*

```
 1    APPEARANCES OF COUNSEL:

 2

 3    FOR THE PLAINTIFF:
                          MAUSNER IP LAW
 4                        BY: JEFFREY N. MAUSNER, ATTORNEY AT LAW
                          21800 OXNARD STREET
 5                        SUITE 910
                          WOODLAND HILLS, CA 91367
 6                        310-617-8100

 7

 8    FOR THE DEFENDANTS:
                          QUINN EMANUEL URQUHART OLIVER & HEDGES
 9                        BY: RACHEL M. HERRICK, ATTORNEY AT LAW
                          555 TWIN DOLPHIN DRIVE
10                        SUITE 560
                          REDWOOD SHORES, CA 94065
11                        650-801-5000

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT,  CENTRAL DISTRICT OF CALIFORNIA

1  don't you go to the lectern, please.

2         MS. HERRICK:  Thank you, Your Honor.

3         MR. MAUSNER:  There were just a couple of corrections

4  on the tentative.

5         THE COURT:  I'll hear from you later.  Let me hear

6  from her for a minute.

7         I'll give you a chance to address the basic

8  conclusion of the tentative in a minute, but answer Number 8,

9  first, please.

10        MS. HERRICK:  Sure.  Thank you.

11        We absolutely do believe that adding an entire new

12 set of claims placed upon Google's Blogger product is indeed

13 going to increase discovery.  There is no question about that

14 unless Perfect 10 is going to represent here today that it's

15 not going to serve a set of document requests, a set of

16 interrogatories, a set of RFA's targeting the Blogger service,

17 it will absolutely result in increased and different discovery

18 than has been conducted today.

19        THE COURT:  Yeah, but the next question asked about

20 duplicative discovery.

21        You are not going to be required to undergo any

22 effort that you previously did undergo if I permit this

23 amendment.

24        You may have additional new responses to make.  There

25 is no existing cutoff on discovery.  They would have a right to

```
1   submit those, and it's just going to mean that you go about

2   getting the information and responding to the discovery pretty

3   much in the same fashion except that it's a new terrain.

4           MS. HERRICK:  Exactly.

5           THE COURT:  It's not the old terrain, right?

6           MS. HERRICK:  Well, I disagree, actually.  We are

7   going to have to start from scratch on a parallel track to

8   what's been done regarding Google search.  As this Court knows,

9   and I believe Exhibit M to my declaration, the Herrick

10  declaration, shows Google offers a number of products and

11  services.  Search is a very, very different product than

12  Blogger, and there have been a series of discovery efforts that

13  have been ongoing for the past three-and-half years regarding,

14  you know, Perfect 10's attempts to obtain discovery and

15  admissions regarding the search product.

16          They are going to start from scratch, I assume, and

17  issue -- or request leave to issue brand new sets of discovery

18  in parallel to those regarding search but now regarding the

19  Blogger service, and this is an effort --

20          THE COURT:  When you say in parallel, it may be that

21  they use their word processor to change some language to extend

22  to Blogger.  But it's the same kind of discovery that they have

23  been conducting all these years is what you are telling me,

24  right?

25          MS. HERRICK:  Two issues.  Number 1, to the extent
```

1  it's the same, it's absolutely duplicative, and there's an

2  abundance of case law holding --

3         THE COURT:  It can't be the same if it's about an

4  entirely new function that Google performs through its

5  ownership of Blogger, right?

6         MS. HERRICK:  Right.  I am making two points here.

7         The first is all of the discovery that's already been

8  served regarding search, I expect and anticipate that Perfect

9  10 is going to attempt to re-serve parallel discovery aimed at

10 Blogger instead of aimed at Google's search service.

11        THE COURT:  You are going to do that, aren't you, Mr.

12 Mausner?

13        MR. MAUSNER:  Well, I don't know if it's going to be

14 exactly the same.  We are going to take discovery regarding

15 Blogger, but it depends what we need obviously.

16        THE COURT:  But it's going to be along the same lines

17 as the discovery you have been conducting all along, right?

18 It's just about Blogger.

19        MR. MAUSNER:  I don't know that the discovery request

20 would be the same, but, yes, yes, we are going to take

21 discovery regarding Blogger certainly.

22        MS. HERRICK:  So my second point is that obviously

23 Blogger is a different service.  It operates differently.  A

24 different provision of the DMCA safe harbor applies.  That

25 would be Section 512(c) rather than Section 512(d).  C covers

1

2

3                          CERTIFICATE

4

5      I hereby certify that pursuant to Section 753,

6   Title 28, United States Code, the foregoing is a true and

7   correct transcript of the stenographically reported

8   proceedings held in the above-entitled matter and that the

9   transcript page format is in conformance with the

10  regulations of the Judicial Conference of the United States.

11

12  Date: JULY 16, 2008

13

14                    _____

15                    Cindy L. Nirenberg, CSR No. 5059

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

# EXHIBIT R

1 Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
2 Warner Center Towers
21800 Oxnard Street, Suite 910
3 Woodland Hills, California 91367-3640
Email: Jeff@mausnerlaw.com
4 Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773
5
6 Attorneys for Plaintiff Perfect 10, Inc.
7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 PERFECT 10, INC., a California corporation, | MASTER FILE NO. CV04-9484 AHM (SHx) |
| 12 | |
| 13 Plaintiff, | **PLAINTIFF PERFECT 10'S TENTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT GOOGLE, INC.** |
| 14 v. | |
| 15 GOOGLE, INC., a corporation; and | |
| 16 DOES 1 through 100, inclusive, | |
| 17 Defendant. | |
| 18 —————————————— | |
| 19 AND CONSOLIDATED CASE. | |

20

21 PROPOUNDING PARTY:               PLAINTIFF PERFECT 10, INC.

22 RESPONDING PARTY:                DEFENDANT GOOGLE, INC.

23 SET NUMBER:                      TEN

24     TO DEFENDANT GOOGLE, INC. AND ITS COUNSEL OF RECORD

25 HEREIN, QUINN, EMANUEL: Pursuant to Rule 34 of the Federal Rules of Civil

26 Procedure, Plaintiff Perfect 10, Inc. propounds the following Tenth Set of Requests

27 for the Production of DOCUMENTS to Defendant GOOGLE, INC.

28 DOCUMENTS shall be produced to Jeffrey N. Mausner, Warner Center Towers,

13.    All e-mails shall be produced in their native electronic format, as they existed at the time they were created.  If the e-mail is not available in its native format, please produce it in other formats in which it is available.

14.    All DOCUMENTS shall be produced specifying the document request that they relate to.

15.    In producing these documents and things, you are requested to identify and produce for inspection and copying not only those documents and things in your custody, but all documents and things in the custody of your attorneys, consultants, agents, other representatives, and other persons or entities subject to your control.

16.    You are to produce the original and all copies of each requested document and thing (in electronic format if it exists), as well as the file in which they are kept, including all copies which bear any additional file stamps, marginal notes, or other additional markings or writings that do not appear on the original.

17.    GOOGLE has a duty to supplement its response from now until the time of trial, as provided by Rule 26(e) of the Federal Rules of Civil Procedure.

18.    To the best of Perfect 10's knowledge, the websites listed in Exhibit 1 have either a) been hosted by GOOGLE and infringed Perfect 10's copyrights, b) infringed Perfect 10's copyrights and been Google AdSense sites, or c) been hosted by GOOGLE, were Google AdSense sites, and violated Perfect 10's rights of publicity and/or copyrights.

**DOCUMENT REQUESTS**

342.    DOCUMENTS sufficient to IDENTIFY the owner of each of the websites listed in Exhibit 1.

343.    DOCUMENTS sufficient to IDENTIFY the webmaster of each of the websites listed in Exhibit 1.

344.    DOCUMENTS sufficient to IDENTIFY the contact person for each of the websites listed in Exhibit 1.

| SITE | Ads | Hosted | Rapidshare or Other Downloader |
|---|---|---|---|
| **HOSTED BY GOOGLE WITH ADS AND INFRINGES P10 COPYRIGHTS** | | | |
| alanwarez.blogspot.com | 1 | 1 | |
| allenjoyhere.blogspot.com | 1 | 1 | |
| alltolls.blogspot.com | 1 | 1 | |
| amy-weber.absu.blogspot.com | 1 | 1 | |
| a-rosa.blogspot.com | 1 | 1 | |
| babepixx.blogspot.com | 1 | 1 | |
| babeswrestling.blogspot.com | 1 | 1 | |
| bankofspank.blogspot.com | 1 | 1 | |
| baxojayz.blogspot.com | 1 | 1 | |
| beautiwhores.blogspot.com | 1 | 1 | |
| bikiny-photo.blogspot.com | 1 | 1 | |
| bollyhollyactress.blogspot.com | 1 | 1 | |
| brasileirasgostosas.blogspot.com | 1 | 1 | |
| celebrity-images-free.blogspot.com | 1 | 1 | |
| celebrityinc.blogspot.com | 1 | 1 | |
| celebrity-wallpaper.blogspot.com | 1 | 1 | |
| celebslegswideopen.blogspot.com | 1 | 1 | |
| checkyoureyes.blogspot.com | 1 | 1 | |
| chic-star.blogspot.com | 1 | 1 | |
| chutederein.blogspot.com | 1 | 1 | |
| coupes-cabriolets.blogspot.com | 1 | 1 | |
| croatoa.blogspot.com | 1 | 1 | |
| devil666666.blogspot.com | 1 | 1 | |
| dice1976.blogspot.com | 1 | 1 | |
| diosashollywood2007.blogspot.com | 1 | 1 | |
| erica-campbell-photos.blogspot.com | 1 | 1 | |
| erickglopez.blogspot.com | 1 | 1 | |
| erotemplo.blogspot.com | 1 | 1 | |
| famous-photo-gallery.blogspot.com | 1 | 1 | |
| fayelog.blogspot.com | 1 | 1 | |
| fisherwy.blogspot.com | 1 | 1 | |
| flexi-blog.blogspot.com | 1 | 1 | |
| galleryofbeautifulwomen.blogspot.com | 1 | 1 | |
| hollybollycelebrities.blogspot.com | 1 | 1 | |
| hollywoodcelebritieswallpapers.blogspot.com | 1 | 1 | |
| hotadultgallery.blogspot.com | 1 | 1 | |
| hotcelebritieswallpaper.blogspot.com | 1 | 1 | |
| hot-chicks-gallerie.blogspot.com | 1 | 1 | |
| jen-makes-u-smile.blogspot.com | 1 | 1 | |

Exhibit R, Page 120

<div align="center">

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

</div>

I am employed in the county of Los Angeles, State of California.

I am over the age of 18 and am not a party to the within action; my business address is: 21800 Oxnard Street, Suite 910, Woodland Hills, California 91367

On September 1, 2009, I served the foregoing document(s) described as follows:

**PLAINTIFF PERFECT 10'S TENTH SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT GOOGLE, INC.**

on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope addressed to the address(es) as follows:

| | |
|---|---|
| **Mark Jansen**<br>**Anthony Malutta**<br>**Tim Cahn**<br>**Gia Cincone**<br>**Townsend Townsend & Crew**<br>**Two Embarcadero Center, 8th Floor**<br>**San Francisco, California 94111** | **Rachel Herrick Kassabian**<br>**Charles Verhoeven**<br>**Quinn Emanuel**<br>**555 Twin Dolphin Drive, Suite 560**<br>**Redwood Shores, California 94065** |
| | **Thomas Nolan**<br>**Michael Zeller**<br>**Quinn Emanuel**<br>**865 S. Figueroa St. 10th Floor**<br>**Los Angeles, California 90017** |

**MAIL:** I placed such envelope with fully prepaid postage thereon in the United States mail at Los Angeles, California.

**FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on September 1, 2009 at Los Angeles, California.

BY: _Brittany S. Douglass_
Brittany S. Douglass

<div align="center">

PROOF OF SERVICE

</div>

# EXHIBIT S
# (FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER)

# EXHIBIT T
# (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)

# EXHIBIT U

```
<!DOCTYPE html PUBLIC "-//W3C//DTD XHTML 1.0 Strict//EN"
"http://www.w3.org/TR/xhtml1/DTD/xhtml1-strict.dtd">
<html xmlns='http://www.w3.org/1999/xhtml'
xmlns:b='http://www.google.com/2005/gml/b'
xmlns:data='http://www.google.com/2005/gml/data'
xmlns:expr='http://www.google.com/2005/gml/expr'>
<head>
<link href='http://www.iconj.com/ico/0/n/0nehpw4ps6.ico' rel='shortcut icon'
type='image/x-icon' />
<script type="text/javascript">(function() { var a=window;function
e(b){this.t={};this.tick=function(c,h,d){d=d?d:(new
Date).getTime();this.t[c]=[d,h];}this.tick("start",null,b)}var f=new
e;a.jstiming={Timer:e,load:f};try{a.jstiming.pt=a.gtbExternal&&a.gtbExternal.pageT()
||a.external&&a.external.pageT}catch(g){};a.tickAboveFold=function(b){b=b;var
c=0;if(b.offsetParent){do
c+=b.offsetTop;while(b=b.offsetParent)}b=c;b<=750&&a.jstiming.load.tick("aft")};var
i=false;function
j(){if(!i){i=true;a.jstiming.load.tick("firstScrollTime")}}a.addEventListener?a.addE
ventListener("scroll",j,false):a.attachEvent("onscroll",j); })();</script>
<meta content='text/html; charset=UTF-8' http-equiv='Content-Type' />
<meta content='true' name='MSSmartTagsPreventParsing' />
<meta content='blogger' name='generator' />
<link href='http://www.blogger.com/favicon.ico' rel='icon'
type='image/vnd.microsoft.icon' />
<link href='http://www.celebrities-gone-wild.com/' rel='canonical'/>
<link rel="alternate" type="application/atom+xml" title="Celebrities Gone Wild,
Celebrity Gone Bad, Celebs Gone Wild, Sexy Celebs, Stars Gone Wild - Atom"
href="http://www.celebrities-gone-wild.com/feeds/posts/default" />
<link rel="alternate" type="application/rss+xml" title="Celebrities Gone Wild,
Celebrity Gone Bad, Celebs Gone Wild, Sexy Celebs, Stars Gone Wild - RSS"
href="http://www.celebrities-gone-wild.com/feeds/posts/default?alt=rss" />
<link rel="service.post" type="application/atom+xml" title="Celebrities Gone Wild,
Celebrity Gone Bad, Celebs Gone Wild, Sexy Celebs, Stars Gone Wild - Atom"
href="http://www.blogger.com/feeds/40259314237772929/posts/default" />
<link rel="EditURI" type="application/rsd+xml" title="RSD"
href="http://www.blogger.com/rsd.g?blogID=40259314237772929" />
<link rel="me" href="http://www.blogger.com/profile/1088464013784326135" />
<link rel="openid.server" href="http://www.blogger.com/openid-server.g" />
<title>Celebrities Gone Wild, Celebrity Gone Bad, Celebs Gone Wild, Sexy Celebs,
Stars Gone Wild</title>
<link
href='http://8657440958847002366-a-1802744773732722657-s-sites.googlegroups.com/site
/celebsgonewildsite/Home/favicon.ico' rel='shortcut icon'
type='image/vnd.microsoft.icon'/>
<link type='text/css' rel='stylesheet'
href='http://www.blogger.com/static/v1/widgets/120160635-widget_css_bundle.css' />
 <link rel="stylesheet" type="text/css"
href="http://www.blogger.com/static/v1/v-css/3727950723-blog_controls.css"/>
 <link rel="stylesheet" type="text/css"
href="http://www.blogger.com/dyn-css/authorization.css?targetBlogID=4025931423777299
29&zx=080d40c1-4c69-4207-b674-18ea95c4c6ee"/>
<style type="text/css">#navbar-iframe { display:block }
</style>

<style id='page-skin-1' type='text/css'><!--
/*
----------------------------------------------------------------------
Blogger Template Style
Name:    Bloggerized Adsense
Designer: Isnaini
URL:     www.isnaini.com
Date:    01 Des 2007
----------------------------------------------------------------------
```

Exhibit U, Page 133

```
0-h/elizabethhurleyvoguerusx.jpg"><img style="cursor: pointer; width: 242px; height:
320px;"
src="http://4.bp.blogspot.com/_4LV86E7_ssg/Su39Ix7VOQI/AAAAAAAAGM/4K1ZpGBvo4M/s320/
elizabethhurleyvoguerusx.jpg" alt="" id="BLOGGER_PHOTO_ID_5399250353786310914"
border="0" /></a> <a onblur="try {parent.deselectBloggerImageGracefully();} catch(e)
{}"
href="http://2.bp.blogspot.com/_4LV86E7_ssg/Su39gVWV1TI/AAAAAAAAGE/9xq6pCKz7vw/s160
0-h/elizabethhurleyvoguerusw.jpg"><img style="cursor: pointer; width: 237px; height:
320px;"
src="http://2.bp.blogspot.com/_4LV86E7_ssg/Su39gVWV1TI/AAAAAAAAGE/9xq6pCKz7vw/s320/
elizabethhurleyvoguerusw.jpg" alt="" id="BLOGGER_PHOTO_ID_5399250260215584050"
border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();}
catch(e) {}"
href="http://4.bp.blogspot.com/_4LV86E7_ssg/Su39gPZoixI/AAAAAAAAF8/hRD17GOfXMc/s160
0-h/elizabethhurleyvogueruss.jpg"><img style="cursor: pointer; width: 238px; height:
320px;"
src="http://4.bp.blogspot.com/_4LV86E7_ssg/Su39gPZoixI/AAAAAAAAF8/hRD17GOfXMc/s320/
elizabethhurleyvogueruss.jpg" alt="" id="BLOGGER_PHOTO_ID_5399250258618780434"
border="0" /></a> <a onblur="try {parent.deselectBloggerImageGracefully();} catch(e)
{}"
href="http://3.bp.blogspot.com/_4LV86E7_ssg/Su39gNT_KOI/AAAAAAAAFO/_LAbuUrOHUE/s160
0-h/elizabethhurleyvoguerusl.jpg"><img style="cursor: pointer; width: 238px; height:
320px;"
src="http://3.bp.blogspot.com/_4LV86E7_ssg/Su39gNT_KOI/AAAAAAAAFO/_LAbuUrOHUE/s320/
elizabethhurleyvoguerusl.jpg" alt="" id="BLOGGER_PHOTO_ID_5399250258058225890"
border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();}
catch(e) {}"
href="http://4.bp.blogspot.com/_4LV86E7_ssg/Su39f-453NI/AAAAAAAAFs/6iZF6_8hSIw/s160
0-h/elizabethhurleyvoguerus.jpg"><img style="cursor: pointer; width: 242px; height:
320px;"
src="http://4.bp.blogspot.com/_4LV86E7_ssg/Su39f-453NI/AAAAAAAAFs/6iZF6_8hSIw/s320/
elizabethhurleyvoguerus.jpg" alt="" id="BLOGGER_PHOTO_ID_5399250254186536146"
border="0" /></a> <a onblur="try {parent.deselectBloggerImageGracefully();} catch(e)
{}"
href="http://2.bp.blogspot.com/_4LV86E7_ssg/Su39fs3YVmI/AAAAAAAAFk/c47ofzPw3FY/s160
0-h/elizabethhurleyvoguerus2.jpg"><img style="cursor: pointer; width: 238px; height:
320px;"
src="http://2.bp.blogspot.com/_4LV86E7_ssg/Su39fs3YVmI/AAAAAAAAFk/c47ofzPw3FY/s320/
elizabethhurleyvoguerus2.jpg" alt="" id="BLOGGER_PHOTO_ID_5399250249348306530"
border="0" /></a></p>
<div style='clear: both;'></div>
</div>
<div class='post-footer'>
<p class='post-footer-line post-footer-line-2'>
<span class='post-labels'>
Labels:
<a href='http://www.celebrities-gone-wild.com/search/label/Elizabeth%20Hurley'
rel='tag'>Elizabeth Hurley</a>
</span>
</p>
<p class='post-footer-line post-footer-line-1'>
<span class='post-author'>
</span>
<span class='post-timestamp'>
at
<a class='timestamp-link'
href='http://www.celebrities-gone-wild.com/2009/11/elizabeth-hurley-vogue-magazine-r
ussia.html' title='permanent link'>4:20 PM</a>
</span>
<span class='post-comment-link'>
<a class='comment-link'
href='https://www.blogger.com/comment.g?blogID=402593142377729929&postID=69159039201
80468759' onclick=''>0
```

Exhibit U, Page 134

```
comments</a>
</span>
<span class='post-backlinks post-comment-link' >
</span>
<span class='post-icons' >
<span class='item-control blog-admin pid-1278109480' >
<a
href='http://www.blogger.com/post-edit.g?blogID=402593142377729929&postID=6915903920
180468759' title='Edit Post' >
<span class='quick-edit-icon' >  </span>
</a>
</span>
</span>
</p>
<p class='post-footer-line post-footer-line-3' ></p>
</div>
</div>
<div class='post uncustomized-post-template' >
<a name='74005416587033772' ></a>
<h3 class='post-title' >
<a
href='http://www.celebrities-gone-wild.com/2009/11/brooke-hogan-brooke-knows-best.ht
ml' >Brooke Hogan ~ "Brooke Knows Best" promoshoot</a>
</h3>
<div class='post-header-line-1' ></div>
<div class='post-body' >
<p>Here are some sexy HQ photos of Brooke Hogan.<br /><br /><a onblur="try
{parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://4.bp.blogspot.com/_4LV86E7_ssg/Su37HOwpQpI/AAAAAAAAAE0/gQ4LaJBdAhU/s160
0-h/98124_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_4_122_873lo.jpg">
<img style="cursor: pointer; width: 214px; height: 320px;"
src="http://4.bp.blogspot.com/_4LV86E7_ssg/Su37HOwpQpI/AAAAAAAAAE0/gQ4LaJBdAhU/s320/
98124_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_4_122_873lo.jpg"
alt="" id="BLOGGER_PHOTO_ID_5399247640127423122" border="0" /></a> <a onblur="try
{parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_4LV86E7_ssg/Su37HglIqtI/AAAAAAAAAEs/JXvZT8Ci1HU/s160
0-h/98101_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_2_122_487lo.jpg">
<img style="cursor: pointer; width: 214px; height: 320px;"
src="http://2.bp.blogspot.com/_4LV86E7_ssg/Su37HglIqtI/AAAAAAAAAEs/JXvZT8Ci1HU/s320/
98101_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_2_122_487lo.jpg"
alt="" id="BLOGGER_PHOTO_ID_5399247634710440658" border="0" /></a><br /><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_4LV86E7_ssg/Su37HYniifI/AAAAAAAAAEk/LyvoatCI4F4/s160
0-h/01277_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_3_122_242lo.jpg">
<img style="cursor: pointer; width: 213px; height: 320px;"
src="http://3.bp.blogspot.com/_4LV86E7_ssg/Su37HYniifI/AAAAAAAAAEk/LyvoatCI4F4/s320/
01277_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_3_122_242lo.jpg"
alt="" id="BLOGGER_PHOTO_ID_5399247632573041138" border="0" /></a> <a onblur="try
{parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_4LV86E7_ssg/Su37HF2R8nI/AAAAAAAAAEc/ikrkEy5Io74/s160
0-h/01272_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_1_122_166lo.jpg">
<img style="cursor: pointer; width: 214px; height: 320px;"
src="http://1.bp.blogspot.com/_4LV86E7_ssg/Su37HF2R8nI/AAAAAAAAAEc/ikrkEy5Io74/s320/
01272_Preppie_-_Brooke_Hogan_Promo_Shoot_for_Brooke_Knows_Best_1_122_166lo.jpg"
alt="" id="BLOGGER_PHOTO_ID_5399247627534594674" border="0" /></a></p>
<div style='clear: both;' ></div>
</div>
<div class='post-footer' >
<p class='post-footer-line post-footer-line-2' >
<span class='post-labels' >
Labels:
<a href='http://www.celebrities-gone-wild.com/search/label/Brook%20Hogan'
rel='tag' >Brook Hogan</a>
```

Exhibit U, Page 135

```
</span>
</p>
<p class='post-footer-line post-footer-line-1'>
<span class='post-author'>
</span>
<span class='post-timestamp'>
at
<a class='timestamp-link'
href='http://www.celebrities-gone-wild.com/2009/11/brooke-hogan-brooke-knows-best.ht
ml' title='permanent link'>4:15 PM</a>
</span>
<span class='post-comment-link'>
<a class='comment-link'
href='https://www.blogger.com/comment.g?blogID=402593142377729929&postID=74005416587
0337724' onclick=''>0
comments</a>
</span>
<span class='post-backlinks post-comment-link'>
</span>
<span class='post-icons'>
<span class='item-control blog-admin pid-1278109480'>
<a
href='http://www.blogger.com/post-edit.g?blogID=402593142377729929&postID=7400541658
70337724' title='Edit Post'>
<span class='quick-edit-icon'> </span>
</a>
</span>
</span>
</p>
<p class='post-footer-line post-footer-line-3'></p>
</div>
</div>
<h2 class='date-header'>Monday, August 17, 2009</h2>
<div class='post uncustomized-post-template'>
<a name='6598147651482992468'></a>
<h3 class='post-title'>
<a href='http://www.celebrities-gone-wild.com/2009/08/alizee-pictures.html'>Alizee
Pictures</a>
</h3>
<div class='post-header-line-1'></div>
<div class='post-body'>
<p>Here are a few pictures of the French singer Alizee Jacotey. She's a Latin/French
Pop/Rock singer that is great to see in concert. I must say for a french girl, she's
pretty cute and has a great voice.<br /><br /><a onblur="try
{parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_4LV86E7_ssg/SojopUqKPeI/AAAAAAAADc/5ycYjnEGXZU/s160
0-h/Alizee-21.JPG"><img style="cursor: pointer; width: 320px; height: 240px;"
src="http://2.bp.blogspot.com/_4LV86E7_ssg/SojopUqKPeI/AAAAAAAADc/5ycYjnEGXZU/s320/
Alizee-21.JPG" alt="" id="BLOGGER_PHOTO_ID_5370798352257138146" border="0" /></a><br
/><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_4LV86E7_ssg/Sojoo7hD6kI/AAAAAAAADU/KDu8hbcOv-E/s160
0-h/Alizee-17.JPG"><img style="cursor: pointer; width: 320px; height: 240px;"
src="http://1.bp.blogspot.com/_4LV86E7_ssg/Sojoo7hD6kI/AAAAAAAADU/KDu8hbcOv-E/s320/
Alizee-17.JPG" alt="" id="BLOGGER_PHOTO_ID_5370798393192478290" border="0" /></a><br
/><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://4.bp.blogspot.com/_4LV86E7_ssg/Sojooj_TWII/AAAAAAAADM/G1qqMT135CY/s160
0-h/Alizee-24.JPG"><img style="cursor: pointer; width: 320px; height: 240px;"
src="http://4.bp.blogspot.com/_4LV86E7_ssg/Sojooj_TWII/AAAAAAAADM/G1qqMT135CY/s320/
Alizee-24.JPG" alt="" id="BLOGGER_PHOTO_ID_5370798339192478290" border="0" /></a><br
/><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://4.bp.blogspot.com/_4LV86E7_ssg/SojooFu5POI/AAAAAAAADE/Nh5SKJiOk_A/s160
0-h/Alizee-10.JPG"><img style="cursor: pointer; width: 320px; height: 240px;"
src="http://4.bp.blogspot.com/_4LV86E7_ssg/SojooFu5POI/AAAAAAAADE/Nh5SKJiOk_A/s320/
```

Exhibit U, Page 136

```
<!DOCTYPE html PUBLIC "-//W3C//DTD XHTML 1.0 Strict//EN"
"http://www.w3.org/TR/xhtml1/DTD/xhtml1-strict.dtd">
<html xmlns='http://www.w3.org/1999/xhtml'
xmlns:b='http://www.google.com/2005/gml/b'
xmlns:data='http://www.google.com/2005/gml/data'
xmlns:expr='http://www.google.com/2005/gml/expr'>
<head>
<link href='http://www.iconj.com/ico/O/n/Onehpw4ps6.ico' rel='shortcut icon'
type='image/x-icon' />
<script type="text/javascript">(function() { var a=window;function
e(b){this.t={};this.tick=function(c,h,d){d=d?d:(new
Date).getTime();this.t[c]=[d,h];this.tick("start",null,b)}var f=new
e;a.jstiming={Timer:e,load:f};try{a.jstiming.pt=a.gtbExternal&&a.gtbExternal.pageT()
||a.external&&a.external.pageT}catch(g){};a.tickAboveFold=function(b){b=b;var
c=0;if(b.offsetParent){do
c+=b.offsetTop;while(b=b.offsetParent)}b=c;b<=750&&a.jstiming.load.tick("aft")};var
i=false;function
j(){if(!i){i=true;a.jstiming.load.tick("firstScrollTime")}}a.addEventListener?a.addE
ventListener("scroll",j,false):a.attachEvent("onscroll",j); })();</script>
<meta content='text/html; charset=UTF-8' http-equiv='Content-Type' />
<meta content='true' name='MSSmartTagsPreventParsing' />
<meta content='blogger' name='generator'/>
<link href='http://www.blogger.com/favicon.ico' rel='icon'
type='image/vnd.microsoft.icon' />
<link href='http://www.celebs-gallery.net/' rel='canonical' />
<link rel="alternate" type="application/atom+xml" title="Celebrity Photo Gallery -
Celebrity Photos - Sexy Celebrities - Cool Sexy Pics - Atom"
href="http://www.celebs-gallery.net/feeds/posts/default" />
<link rel="alternate" type="application/rss+xml" title="Celebrity Photo Gallery -
Celebrity Photos - Sexy Celebrities - Cool Sexy Pics - RSS"
href="http://www.celebs-gallery.net/feeds/posts/default?alt=rss" />
<link rel="service.post" type="application/atom+xml" title="Celebrity Photo Gallery
- Celebrity Photos - Sexy Celebrities - Cool Sexy Pics - Atom"
href="http://www.blogger.com/feeds/9835069122053099936/posts/default" />
<link rel="EditURI" type="application/rsd+xml" title="RSD"
href="http://www.blogger.com/rsd.g?blogID=9835069122053099936" />
<link rel="me" href="http://www.blogger.com/profile/1088464013784326135" />
<link rel="openid.server" href="http://www.blogger.com/openid-server.g" />
<title>Celebrity Photo Gallery - Celebrity Photos - Sexy Celebrities - Cool Sexy
Pics</title>
<link type='text/css' rel='stylesheet'
href='http://www.blogger.com/static/v1/widgets/120160635-widget_css_bundle.css' />
 <link rel="stylesheet" type="text/css"
href="http://www.blogger.com/static/v1/v-css/3727950723-blog_controls.css"/>
 <link rel="stylesheet" type="text/css"
href="http://www.blogger.com/dyn-css/authorization.css?targetBlogID=9835069122053099
936&zx=10f239fe-b5fe-4515-9077-2cdea29059d2"/>
<style type="text/css">#navbar-iframe { display:block }
</style>


<style id='page-skin-1' type='text/css'><!--
/*
-----------------------------------------------------------------
Blogger Template Style
Name:       Bloggerized Adsense
Designer:   Isnaini
URL:        www.isnaini.com
Date:       01 Des 2007
-----------------------------------------------------------------
*/
/* Variable definitions
====================
<Variable name="bgColor" description="Page Background Color"
```

Exhibit U, Page 138

```
<span class='item-control blog-admin'>
<a class='quickedit'
href='http://www.blogger.com/rearrange?blogID=98350691220530993&widgetType=HTML&widg
etId=HTML11&action=editWidget' onclick='return
_WidgetManager._PopupConfig(document.getElementById("HTML11"));'
target='configHTML11' title='Edit'>
<img alt='' height='18' src='http://img1.blogblog.com/img/icon18_wrench_allbkg.png'
width='18'/>
</a>
</span>
</span>
<div class='clear'></div>
</div></div>
<div class='antara section' id='ads1'></div>
<div class='narrowcolumn'>
<div class='antara section' id='ads2'><div class='widget Blog' id='Blog1'>
<div class='blog-posts hfeed'>
<!-- google_ad_section_start(name=default) -->
<h2 class='date-header'>Tuesday, February 24, 2009</h2>
<div class='post hentry'>
<a name='382430795963259177b'></a>
<h3 class='post-title entry-title'>
<a
href='http://www.celebs-gallery.net/2009/02/brooklyn-decker-photo-gallery.html'>Broo
klyn Decker Photo Gallery</a>
</h3>
<div class='post-header-line-1'></div>
<div class='post-body entry-content'>
<div style="text-align: center;"><a onblur="try
{parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSbWm7YHVI/AAAAAAAAESc/4S7JBu4MLFI/s160
0-h/zx09_brooklyn_decker_32.jpg"><img style="cursor: pointer; width: 273px; height:
400px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSbWm7YHVI/AAAAAAAAESc/4S7JBu4MLFI/s400/
zx09_brooklyn_decker_32.jpg" alt="" id="BLOGGER_PHOTO_ID_5306537073658305874"
border="0" /></a><br /><br /><b>Brooklyn Decker</b> (born 3 August 1987) is an
American fashion model best known for her appearances in the Sports Illustrated
Swimsuit Edition. She is the fiancee of tennis player Andy Roddick.<br />Here are
numerous highlights from her swimsuit modeling career...<br /><br /><a onblur="try
{parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://4.bp.blogspot.com/_7p77wBr1CEo/SaSV9PK57nI/AAAAAAAAEFO/Xo9ai2YI-PI/s160
0-h/89670_07_122_483lo.jpg"><img style="cursor: pointer; width: 400px; height:
298px;"
src="http://4.bp.blogspot.com/_7p77wBr1CEo/SaSV9PK57nI/AAAAAAAAEFO/Xo9ai2YI-PI/s400/
89670_07_122_483lo.jpg" alt="" id="BLOGGER_PHOTO_ID_5306531140226117234" border="0"
/></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSV9FtWcuI/AAAAAAAAEFs/wAYY4Asb1hU/s160
0-h/09_brooklyn_decker_05.jpg"><img style="cursor: pointer; width: 400px; height:
267px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSV9FtWcuI/AAAAAAAAEFs/wAYY4Asb1hU/s400/
09_brooklyn_decker_05.jpg" alt="" id="BLOGGER_PHOTO_ID_5306531137686237922"
border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();}
catch(e) {}"
href="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSV8wsQgUI/AAAAAAAAEFk/HDVEx6fK5dw/s160
0-h/09_brooklyn_decker_01.jpg"><img style="cursor: pointer; width: 400px; height:
267px;"
src="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSV8wsQgUI/AAAAAAAAEFk/HDVEx6fK5dw/s400/
09_brooklyn_decker_01.jpg" alt="" id="BLOGGER_PHOTO_ID_5306531132044509506"
border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();}
catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSVhA7mD_I/AAAAAAAAEFc/irBrBgTTRts/s160
0-h/08brooklyndecker15vr1.jpg"><img style="cursor: pointer; width: 400px; height:
265px;"
```

Exhibit U, Page 139

src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSVhA7mD_I/AAAAAAAAEFc/irBrBgTTRts/s400/08brooklyndecker15vr1.jpg" alt="" id="BLOGGER_PHOTO_ID_5306530655367466994" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSVhH1UGFI/AAAAAAAAEFU/Ib0OhZHIt2s/s160-h/07_bdecker_22.jpg"><img style="cursor: pointer; width: 400px; height: 294px;" src="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSVhH1UGFI/AAAAAAAAEFU/Ib0OhZHIt2s/s400/07_bdecker_22.jpg" alt="" id="BLOGGER_PHOTO_ID_5306530657220171858" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://4.bp.blogspot.com/_7p77wBr1CEo/SaSVhI-V6HI/AAAAAAAAEFM/wB9ImmkafSE/s160-h/07_bdecker_07.jpg"><img style="cursor: pointer; width: 400px; height: 294px;" src="http://4.bp.blogspot.com/_7p77wBr1CEo/SaSVhI-V6HI/AAAAAAAAEFM/wB9ImmkafSE/s400/07_bdecker_07.jpg" alt="" id="BLOGGER_PHOTO_ID_5306530657526474866" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSVhA3e0QI/AAAAAAAAEFE/EgY-p_AZPFI/s160-h/06bdecker128vo.jpg"><img style="cursor: pointer; width: 400px; height: 326px;" src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSVhA3e0QI/AAAAAAAAEFE/EgY-p_AZPFI/s400/06bdecker128vo.jpg" alt="" id="BLOGGER_PHOTO_ID_5306530655350178722" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSVg8ZzthI/AAAAAAAAEE8/4NQCRrOjVAs/s160-h/06bdecker096wv.jpg"><img style="cursor: pointer; width: 400px; height: 312px;" src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSVg8ZzthI/AAAAAAAAEE8/4NQCRrOjVAs/s400/06bdecker096wv.jpg" alt="" id="BLOGGER_PHOTO_ID_5306530654152013330" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://4.bp.blogspot.com/_7p77wBr1CEo/SaSbEHnFgeI/AAAAAAAAESE/B9FfSq9BSaO/s160-h/wetnwild_bwwpmblO5.JPG"><img style="cursor: pointer; width: 152px; height: 200px;"
src="http://4.bp.blogspot.com/_7p77wBr1CEo/SaSbEHnFgeI/AAAAAAAAESE/B9FfSq9BSaO/s200/wetnwild_bwwpmblO5.JPG" alt="" id="BLOGGER_PHOTO_ID_5306536756014055906" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSbELGwMUI/AAAAAAAAESM/LyMQC1otGro/s160-h/wetnwild_bwwpmblO6.JPG"><img style="cursor: pointer; width: 154px; height: 200px;"
src="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSbELGwMUI/AAAAAAAAESM/LyMQC1otGro/s200/wetnwild_bwwpmblO6.JPG" alt="" id="BLOGGER_PHOTO_ID_5306536756952183106" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSbEHUe7GI/AAAAAAAAERO/9PQ-VI_wWOg/s160-h/victoriasSecret2.jpg"><img style="cursor: pointer; width: 148px; height: 200px;" src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSbEHUe7GI/AAAAAAAAERO/9PQ-VI_wWOg/s200/victoriasSecret2.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536755936029794" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSbEF5wdsI/AAAAAAAAER8/O14ew81DKnQ/s160-h/vsbrooke2.jpg"><img style="cursor: pointer; width: 148px; height: 200px;" src="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSbEF5wdsI/AAAAAAAAER8/O14ew81DKnQ/s200/vsbrooke2.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536755555497666" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa3GomNkI/AAAAAAAAERk/mOO__Gu_ueI/s160-h/ScannedImage_10.jpg"><img style="cursor: pointer; width: 150px; height: 200px;" src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa3GomNkI/AAAAAAAAERk/mOO__Gu_ueI/s200/ScannedImage_10.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536532413658690" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa3FKyIJI/AAAAAAAAERc/6f2Y2G4lLuE/s160-h/ScannedImage_7.jpg"><img style="cursor: pointer; width: 150px; height: 200px;" src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa3FKyIJI/AAAAAAAAERc/6f2Y2G4lLuE/s200/ScannedImage_7.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536532020204690" border="0" /></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa21B3k3I/AAAAAAAAERM/AcsC-MTYsko/s160-h/Brooklyn_Decker_479x600_39kb_media_2768_media_122324_1189108728.jpg"><img style="cursor: pointer; width: 160px; height: 200px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa21B3k3I/AAAAAAAAERM/AcsC-MTYsko/s200/Brooklyn_Decker_479x600_39kb_media_2768_media_122324_1189108728.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536527687816050" border="0" /></a><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"

Exhibit U, Page 140

href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa3JM2VEI/AAAAAAAAERs/iTD1i4g8gUQ/s160
0-h/selfportraitkl3.jpg"><img style="cursor: pointer; width: 149px; height: 200px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSa3JM2VEI/AAAAAAAAERs/iTD1i4g8gUQ/s200/
selfportraitkl3.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536533102580802" border="0"
/></a><br /><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSad5tOt_I/AAAAAAAAEQk/CxIO2fDEVaw/s160
0-h/bk05ai0.jpg"><img style="cursor: pointer; width: 124px; height: 200px;"
src="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSad5tOt_I/AAAAAAAAEQk/CxIO2fDEVaw/s200/
bk05ai0.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536099449190386" border="0" /></a><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSad81TFxI/AAAAAAAAEQs/YEYOIVg7JyU/s160
0-h/bk06xa6.jpg"><img style="cursor: pointer; width: 140px; height: 200px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSad81TFxI/AAAAAAAAEQs/YEYOIVg7JyU/s200/
bk06xa6.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536100285847314" border="0" /></a><br
/><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSaeG2QqAI/AAAAAAAAERE/R3IeSQnPq4Y/s160
0-h/bk25gc0.jpg"><img style="cursor: pointer; width: 132px; height: 200px;"
src="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSaeG2QqAI/AAAAAAAAERE/R3IeSQnPq4Y/s200/
bk25gc0.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536102974236674" border="0" /></a><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSaWGb-2_I/AAAAAAAAEQc/7NYAFKEnDJM/s160
0-h/bk03gz5.jpg"><img style="cursor: pointer; width: 137px; height: 200px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSaWGb-2_I/AAAAAAAAEQc/7NYAFKEnDJM/s200/
bk03gz5.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535965425064946" border="0" /></a><br
/><a onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSaePvnkaI/AAAAAAAAEQ8/TsNauSS-X3I/s160
0-h/bk21ne4.jpg"><img style="cursor: pointer; width: 140px; height: 200px;"
src="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSaePvnkaI/AAAAAAAAEQ8/TsNauSS-X3I/s200/
bk21ne4.jpg" alt="" id="BLOGGER_PHOTO_ID_5306536105362297250" border="0" /></a><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSaWBJOewI/AAAAAAAAEQU/rbyA9ONI9Ek/s160
0-h/b21.jpg"><img style="cursor: pointer; width: 134px; height: 200px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSaWBJOewI/AAAAAAAAEQU/rbyA9ONI9Ek/s200/
b21.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535964004219650" border="0" /></a><br /><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSaVxedT8I/AAAAAAAAEP8/iWmZskx-NHA/s160
0-h/b15.jpg"><img style="cursor: pointer; width: 137px; height: 200px;"
src="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSaVxedT8I/AAAAAAAAEP8/iWmZskx-NHA/s200/
b15.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535959798304706" border="0" /></a><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSaV_zEytI/AAAAAAAAEQE/4kbNOXdreqk/s160
0-h/b16.jpg"><img style="cursor: pointer; width: 132px; height: 200px;"
src="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSaV_zEytI/AAAAAAAAEQE/4kbNOXdreqk/s200/
b16.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535963642874578" border="0" /></a><br /><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSZ53ErNBI/AAAAAAAAEPO/tGZet5iYnuU/s160
0-h/b14.jpg"><img style="cursor: pointer; width: 132px; height: 200px;"
src="http://1.bp.blogspot.com/_7p77wBr1CEo/SaSZ53ErNBI/AAAAAAAAEPO/tGZet5iYnuU/s200/
b14.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535480264438802" border="0" /></a><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSaWDnz7BI/AAAAAAAAEQM/i9n8IyZxcrI/s160
0-h/b18.jpg"><img style="cursor: pointer; width: 130px; height: 200px;"
src="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSaWDnz7BI/AAAAAAAAEQM/i9n8IyZxcrI/s200/
b18.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535964669373458" border="0" /></a><br /><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSZ50HpoEI/AAAAAAAAEPs/vL7somvhS4c/s160
0-h/b13.jpg"><img style="cursor: pointer; width: 134px; height: 200px;"
src="http://3.bp.blogspot.com/_7p77wBr1CEo/SaSZ50HpoEI/AAAAAAAAEPs/vL7somvhS4c/s200/
b13.jpg" alt="" id="BLOGGER_PHOTO_ID_5306535479471611970" border="0" /></a><a
onblur="try {parent.deselectBloggerImageGracefully();} catch(e) {}"
href="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSZ5kyBDbI/AAAAAAAAEPc/LVpmkt4Xd_g/s160
0-h/b09.jpg"><img style="cursor: pointer; width: 137px; height: 200px;"
src="http://2.bp.blogspot.com/_7p77wBr1CEo/SaSZ5kyBDbI/AAAAAAAAEPc/LVpmkt4Xd_g/s200/

Exhibit U, Page 141

# EXHIBIT V
# (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER)



**EXHIBIT W**

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S INTERNET ADDRESS
**rachelherrick@quinnemanuel.com**

November 7, 2008

<u>**VIA E-MAIL AND U.S. MAIL**</u>

Jeffrey N. Mausner, Esq.
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367

**Re: Perfect 10 v. Google**

Dear Jeff:

I write to confirm our telephonic meet and confer discussion earlier this afternoon pursuant to Local Rule 7-3 regarding Google's contemplated motion for partial summary judgment under the safe harbor provisions of the DMCA, and to summarize the key grounds we believe support such a motion.

As you know, the DMCA provides safe harbor to service providers where the claims of infringement are by reason of (i) "the intermediate and temporary storage of material on a system or network controlled or operated by or for the service provider" (17 U.S.C. § 512(b)), (ii) "storage at the direction of a user of material" residing on a service provider's system or network (17 U.S.C. §512(c)), or (iii) "referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link" (17 U.S.C. § 512(d)).

Google meets the requirements for each of these statutory safe harbors and thus is entitled to partial summary judgment in its favor on Perfect 10's copyright infringement claims. As a

51320/2681828.1     **quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052, Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712
LONDON | 16 Old Bailey, London EC4M 7EG,United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100     Exhibit W, Page 145

threshold matter, it is beyond reasonable dispute that Google has a reasonably implemented repeat infringer policy because "it has a working notification system, a procedure for dealing with DMCA-compliant notifications, [] does not actively prevent copyright owners from collecting information needed to issue such notifications," and does not fail to respond when it learns of alleged copyright infringement. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109, 1113 (9th Cir. 2007).

Google is entitled to safe harbor under § 512(b) because it fulfills the requirements of that section with respect to Perfect 10's allegations of copyright infringement by reason of Google's "intermediate and temporary storage" in its cache of material from alleged "Stolen Content Websites." *Field v. Google*, 412 F. Supp. 2d 1106 (D. Nev. 2006).

Google is also entitled to safe harbor under § 512(c) with respect to Blogger users who allegedly posted Perfect 10 copyrighted images on their blogs hosted on Google servers. Google did not have actual or apparent knowledge of the alleged infringement because it never received DMCA-compliant notifications of copyright infringement from Perfect 10. Perfect 10's purported DMCA notices therefore did not impute knowledge of infringement on Google and did not trigger a duty to remove allegedly infringing material from blog posts. Google also removed or disabled access to allegedly infringing material where a discernible URL was provided in Perfect 10's communications. Further, Google does not have the right and ability to control the allegedly infringing activity on Blogger because the content in question is posted by third parties, not Google. The law is clear that the ability to terminate account holders does not equate to an ability to control alleged infringing activity by those account holders. *Io Group, Inc. v. Veoh Networks, Inc.*, 2008 WL 4065872, *19 (N.D. Cal. 2008) ("the right and ability to control infringing activity . . . cannot simply mean the ability of a service provider to block or remove access to materials posted on its website or stored on its system"); *Corbis Corp. v. Amazon.com, Inc.*, 351 F.Supp.2d 1090, 1110 (W.D. Wash. 2004) (same); *Hendrickson v. eBay Inc.*, 165 F.Supp.2d 1082, 1093 (C.D. Cal. 2001); *Costar Group Inc. v. Loopnet, Inc.*, 164 F.Supp.2d 688, 704 (D. Md. 2001) (same). To hold otherwise would mean that service providers would lose immunity under the DMCA by engaging in acts required by the DMCA. *Hendrickson*, 165 F.Supp.2d at 1093-94. Finally, even assuming Google had such right and ability to control (which it does not), Google receives no direct financial benefit from the alleged infringement, because, among other reasons, neither infringing or non-infringing users pay anything to use Google's Blogger service. *Costar*, 164 F.Supp.2d at 705 (website which charged the same price to infringing and non-infringing users, and did not charge for the service where the infringement was found did not receive a sufficiently direct benefit to fall within the statute).

Similarly, Google is entitled to safe harbor under § 512(d) with respect to Perfect 10's allegations of copyright infringement by reason of Google's Web and Image Search functions. Again, Google did not receive DMCA-compliant notifications of copyright infringement from Perfect 10. Having failed to comply with the DMCA, Perfect 10's purported DMCA notices did not impute knowledge of infringement to Google and did not trigger a duty for Google to remove

Exhibit W, Page 146

allegedly infringing URLs from its search results. Furthermore, Google removed or disabled access to allegedly infringing materials in those instances where Perfect 10's communications provided a discernible URL for the location of such materials. As is also beyond reasonable dispute, Google does not have the right and ability to control alleged Stolen Content Websites because it cannot stop third-party websites from infringing. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1174 (9th Cir. 2007) ("Google cannot stop any of the third-party websites from reproducing, displaying, and distributing unauthorized copies of Perfect 10 images because that infringing conduct takes place on third-party websites"); October 27, 2008 Transcript of Hearing on A9.com's Motion for Partial Summary Judgment, at 7-8 (finding that A9.com does not have the "right and ability" to stop or "shut down" infringing conduct on third-party websites).

Please let me know if you would like to discuss Google's contemplated motion further.

Very truly yours,

*Rachel M. Herrick*

Rachel M. Herrick

RMH:ar
51320/2693239.1

# EXHIBIT X

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone (818) 992-7500
E-mail: jeff@mausnerlaw.com

April 23, 2009

*Via Email and U.S. Mail*

Rachel Herrick, Esq.
Quinn Emanuel
555 Twin Dolphin Dr. Suite 560
Redwood Shores, California 94065

Brad Love, Esq.
Quinn Emanuel
50 California Street 22nd Floor
San Francisco, California 94111

Thomas Nolan, Esq.
Michael Zeller, Esq.
Quinn Emanuel
865 S. Figueroa Street
10th Floor
Los Angeles, California 90017

      Re:    <u>Perfect 10 v. Google – Conference of Counsel Pursuant to Local Rule 7.3</u>

Dear Rachel, Michael, Brad, and Tom:

      This letter is written pursuant to Local Rule 7-3. Perfect 10 intends to move for summary judgment against Google on the grounds set forth in this letter. We can conduct the telephonic portion of the meet and confer regarding Perfect 10's motion at the same time we complete the meet and confer regarding Google's proposed motions, as set forth in your letter of earlier today. The grounds upon which Perfect10 contemplates moving for summary judgment are as follows:

**1.** Perfect 10's DMCA notices were compliant pursuant to 17 U.S.C. §512. If there were deficiencies in the notices, Google should have complied with 17 U.S.C. §512(c)(3)(B)(ii), which it did not do.

**2.** Google is not entitled to a DMCA safe harbor under any of the sections of the Digital Millennium Copyright Act ("DMCA").

**3.** Google has not adopted and reasonably implemented a policy that provides for the termination of repeat infringers.

**4.** Google is directly, contributorily and vicariously liable for infringing Perfect 10 images.

**Google Is Not Entitled To DMCA Safe Harbor.**

Google is ineligible for safe harbor because, *inter alia,* (a) Google did not expeditiously remove or disable access to infringing material upon notice, as discussed in further detail below; (b) Google had actual knowledge of infringing material and activity available using its search engine, and was aware of facts or circumstances from which infringing activity was apparent; (c) Google did not maintain a DMCA log; and (d) Google did not adopt or reasonably implement a repeat infringer policy or otherwise comply with Section 512(i)(1)(A).

**Google Did Not Adopt and Reasonably Implement A Repeat Infringer Policy.**

As demonstrated by Google's handling of Perfect 10's notices, Google did not adopt and reasonably implement a repeat infringer policy as shown by, *inter alia,* the following: Google's failure to respond to, or partial response to, and/or delayed response to, Perfect 10's notices show that Google did not have or reasonably implement a repeat infringer policy. Google did not maintain a DMCA log or otherwise keep track of repeat infringers.

**Google Is Liable For Copyright Infringement For Its Direct, Contributory And Vicarious Infringement Of Perfect 10's Images.**

Despite notice, Google has engaged in the conduct below, and other conduct, which supports findings of liability against Google.

1. Google's failure to respond to, or partial response to, and/or delayed response to, Perfect 10's notices.

2. Google has not expeditiously removed or disabled access to infringing material or, when Google has removed identified infringing images or links, it has not removed or disabled access to the infringing material.

3. Google has failed to remove or disable access to thousands of identified infringing images and links.

4. Google stores and displays full-size and medium-size P10 Images.

5. Google hosts websites that infringe P10 Images and earns revenues from those websites, including from clicks on ads placed next to P10 Images on such websites.

6. Google disseminates perfect 10.com passwords and usernames and links to and hosts websites that disseminate perfect10.com usernames and passwords.

7. Google places ads around thousands of P10 Images. Google has partnered with hundreds of infringing websites, including imagevenue.com and imagerise.com, to share revenues

from clicks next to P10 Images without asking Perfect 10 for permission or offering to pay Perfect 10 anything.

8.  Google provides sponsored links and regular links to massive identified infringers.

9.  Google hosts rapidshare affiliated sites.

10. Google powers rapidshare search engines.

11. Google in-line links to websites that infringe P10 Images. Google has displayed thousands of copies of P10 Images in its Image Search results, and linked those images to infringing third party websites.  By linking P10 images to infringing websites, Google essentially uses P10 works to promote the websites of Perfect 10's competitors who stole those works.  In many cases, Google links P10 "thumbnails" to websites that abuse Perfect 10's trademarks and falsely portray Perfect 10 models as elicit porn stars.

12. Google shows P10 Images via a "See full-size image" link.

13. Google displays infringing P10 "thumbnails" in its Image Search results.

14. Google caches infringing images via its Web Search results.

15. Google links to and/or accepts advertising payments from massive infringing websites such as giganews.com, newsdemon.com, and other websites.

16. Google facilitates downloading of P10 Images onto cell phones, and has specially formatted P10 images so they could be downloaded on cell phones.

17. Google has "arranged" its Web search results on the names of P10 models so that in many cases, they lead predominantly to infringing websites that are Google advertising partners.

18. Google had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps.

We look forward to speaking with you soon.

Sincerely,

*Jeffrey N. Mausner*

Jeffrey N. Mausner

# EXHIBIT Y

1  Jeffrey N. Mausner (State Bar No. 122385)
2  Law Offices of Jeffrey N. Mausner
   Warner Center Towers
3  21800 Oxnard Street, Suite 910
   Woodland Hills, California 91367-3640
4  Email: Jeff@mausnerlaw.com
   Telephone: (310) 617-8100, (818) 992-7500
5  Facsimile: (818) 716-2773

6  Attorneys for Plaintiff, Perfect 10, Inc.

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11 | PERFECT 10, INC., a California | Case No.: CV 04-9484 AHM (SHx)
   | corporation, | Consolidated with Case No. CV 05-4753
12 | | AHM (SHx)
   | Plaintiff, |
13 | | **PLAINTIFF PERFECT 10, INC.'S**
   | v. | **NOTICE OF MOTION AND MOTION**
14 | | **FOR SUMMARY JUDGMENT AND**
   | GOOGLE INC., a corporation; and | **SUMMARY ADJUDCATION RE:**
   | DOES 1 through 100, inclusive, | **COPYRIGHT INFRINGMENT**
15 | | **AGAINST DEFENDANT GOOGLE,**
   | Defendants. | **INC.**
16 | |
17 | AND CONSOLIDATED CASE. | **BEFORE JUDGE A. HOWARD MATZ**
18 | | [Filed Separately: Perfect 10's Statement of
   | | Uncontroverted Facts and Conclusions of
19 | | Law; Declarations of Dr. Norman Zada,
   | | Sean Chumura, Sheena Chou, Melanie
20 | | Poblete, Jeffrey Mausner, Dean Hoffman,
   | | C.J. Newton, and David O'Connor in
21 | | Support of Perfect 10's Motion for
   | | Summary Judgment and Summary
22 | | Adjudication; and [Proposed] Order.]
23 | | Date:   August 17, 2009
   | | Time:   10:00 a.m.
24 | | Place:  Courtroom 14, Courtroom of the
   | |             Honorable A. Howard Matz
25 | |
   | | Discovery Cut-Off Date:  None Set
26 | | Pretrial Conference Date: None Set
   | | Trial Date: None Set
27

28

---

Perfect 10's Notice of Motion and Motion for Summary Judgment and
Summary Adjudication Re: Copyright Infringement Against Google

1 | giganews.com, despite receiving thousands of images from Perfect 10 allegedly

2 | infringed by that web site.  The operators of a website similar to giganews.com,

3 | thepiratebay.org, were recently convicted of criminal copyright infringement in

4 | Sweden and sentenced to a year in jail.  Nevertheless, Google continued to provide

5 | as many as 8.8 million links to thepiratebay.org after that conviction, and

6 | continued to copy P10 Images made available on thepiratebay.org into Google's

7 | Image Search results.  Zada Decl. ¶14, Exh. 7.

8 |      Fourth, many of the images that Google uses in its Image Search results

9 | display Perfect 10 copyright notices and have been the subject of multiple notices.

10 | Nevertheless, Google continues to make copies of the same images, display them

11 | in its Image Search results, and in-line link them to larger infringing P10 Images.

12 | Google also continues to place Google ads next to such images.  Zada Decl. ¶¶58-

13 | 60, Exhs. 43-44, 9.

14 |      Fifth, Google could remove virtually all P10 Images from its Image Search

15 | and Web Search results using Image Recognition technology but has refused to do

16 | so.  Zada Decl. ¶67, Exh. 51.

17 | **2.     Second Prong: Google Has Simple Ways To Prevent
Further Damage To Perfect 10's Copyrighted Works.**

18 |      There is no genuine issue of material fact that Google "could take simple

19 | measures to prevent further damage to Perfect 10's copyrighted works."  *See*

20 | *Perfect 10 v. Amazon.com,* 508 F.3d at 1172.  Google could remove identified

21 | infringing links upon notice.  Google could maintain a DMCA log and act against

22 | repeat infringers.  Google could treat massive infringers of intellectual property in

23 | the same way it allegedly treats child porn sites – it cuts all links to them.  Instead,

24 | Google has done next to nothing.   [*see* Section V.D, below].

25 | **D.     Google Is Ineligible For DMCA Safe Harbor, Which Is An
Affirmative Defense.**

26 |  

27 |      Google cannot rely upon any of the safe harbor defenses for service

28 | providers set forth in Section 512 of the DMCA, for at least five reasons.  First,

1   Google has not acted expeditiously in response to Perfect 10's notices.  Second,

2   Google has admitted that the websites it hosts are account holders for the purposes

3   of the DMCA.  However, Google has not terminated its hosting of these websites,

4   even after repeated notices of infringement, nor does Google even know, in many

5   cases, who is operating these infringing websites.  Third, Google has not acted at

6   all with respect to its massive infringing paysite advertisers, or its massive

7   infringing AdSense affiliates, which it also describes as account holders.  Fourth,

8   Google has not maintained a DMCA log in a manner that allows it to prove either

9   that it expeditiously disabled access to infringing material or that it suitably

10  terminated repeat infringers.  Zada Decl. ¶¶8-60, Exhs. 1-44.  Finally, Google has

11  not responded expeditiously to a number of other copyright holders' notices as

12  well.  *See,* Mausner Decl. Exh. C; Declarations of Dean Hoffman and C.J. Newton.

13  **II.    FACTUAL BACKGROUND.**

14          **A.    Perfect 10's Business And Intellectual Property.**

15          Perfect 10 owns the copyrights for all of the P10 Images described in this

16  Motion, including the 12 images Perfect 10 selected  as a sample (the "Sample").

17  Zada Decl. ¶¶1-2, Exh. 9;  Declaration of Melanie Poblete ("Poblete Decl.").

18          After losing more than $50 million because of rampant infringement, Perfect

19  10 was forced to close its magazine in June, 2007, lay off most of its employees,

20  and end most of its operations.  It still operates *perfect10.com* and sells back issues

21  of its magazine.  Zada Decl. ¶5.

22          **B.    Google Provides Users With Unauthorized Access To P10 Images.**

23          Google owns and operates the website *google.com*.  It also operates the

24  websites *blogspot.com* and *blogger.com*, which it uses to host third-party websites

25  and store their images.  Google has provided visitors to its websites with

26  unauthorized access to P10 Images in at least thirteen different ways, each of

27  which siphons customers away from P10 to Google and its infringing affiliates:

28          1)  Google has stored at least 3,808 full-size P10 Images on its blogger.com

allow users to illegally download P10 Images; (6) stop powering search engines specifically designed to search for infringing rapidshare.com links; (7) remove P10 thumbnails from Google's Image Search results that have been repeatedly identified in Perfect 10's DMCA notices; (8) remove links in Google's Web Search results that lead directly to the infringing web pages identified in Perfect 10's notices;[5] (9) delete all links to websites that infringe over 1,000 P10 Images; (10) send infringing images to advertisers and other massive infringers and require them to remove such images or be delisted from Google search results; (11) adopt and reasonably implement a policy against repeat infringers, as required under the DMCA §512(i); (12) stop publishing confidential username and password combinations that have facilitated widespread, unauthorized access to Perfect 10's website; (13) stop hosting websites that illegally disseminate passwords to perfect10.com; and (14) remove from Google search results websites that publish confidential username/password combinations, as identified in Perfect 10's notices.

## VI.   **GOOGLE DOES NOT QUALIFY FOR DMCA SAFE HARBOR.**

In order to qualify for the safe harbor provisions of the DMCA, Google must satisfy all of the relevant statutory requirements.  Google's admitted many-month delay in processing certain Perfect 10 notices, its complete failure to process other notices, its failure to maintain a DMCA log, and its failure to keep track of its hosting clients, along with other reasons discussed below, all preclude Google from qualifying for the safe harbor affirmative defense.

### A.   **Perfect 10's Notices Substantially Complied With the Requirements of the DMCA.**

The relevant statutory requirements for DMCA notices are set forth in 17 U.S.C. § 512(c)(3).  The notices sent by Perfect 10 to Google substantially complied with these requirements, for at least five separate reasons.

---

[5] Google has belatedly removed some URLs identified in Perfect 10's notices, but has failed to remove thousands of other infringing URLs identified by Perfect 10.  Zada Decl. ¶¶40-61, Exhs. 27-45.

1        First, there is no dispute that Perfect 10's notices satisfied subsections (i),

2  (iv), (v), and (vi) of Section 512(c)(3) because they contained: (i) a physical or

3  electronic signature of Dr. Zada; (iv) information reasonably sufficient to permit

4  Google to contact Dr. Zada; (v) a statement that Dr. Zada, on behalf of Perfect 10,

5  had a good faith belief that use of the material in the manner complained of was

6  not authorized; and (vi) a statement that the information in each notice was

7  accurate, and under penalty of perjury, that Dr. Zada is authorized to act on behalf

8  of Perfect 10.  *See* Zada Decl., ¶¶24, 34, 40, 53, 56, Exhs. 13, 22, 27, 37, 41, 9.

9        To satisfy the remaining two subsections, (ii) and (iii), Perfect 10 sent

10  notices to Google in 2004 *based on Google's own instructions*.  Perfect 10

11  complied with subsection (ii) by providing:  (a) the name of the model in the

12  infringed image(s) and (b) either the volume, issue, and page numbers of the

13  Perfect 10 Magazine containing those infringed images, or a reference to

14  perfect10.com sufficient to allow Google to locate those images on perfect10.com.

15  Perfect 10 offered to provide Google with a free password to perfect10.com.

16  Later, beginning in June 2007, Perfect 10 satisfied subsection (ii) by sending

17  *actual copies of the infringed/infringing images*, meticulously edited to exclude

18  non-P10 Images.   Zada Decl. ¶¶22-24, 33-39, Exhs. 9, 12-13, 22-26.

19        To satisfy subsection (iii), Perfect 10 initially provided the infringing URLs

20  from Google's Web Search results, as instructed by Google.  These URLs

21  appeared in green at the end of each search result.   Later, starting in June 2007,

22  Perfect 10 sent Google copies, using Adobe, of the infringing web pages which

23  contained *the full URL of the infringing web page, as well as a copy of the*

24  *infringed/infringing image*.  *Id.* ¶¶22-24, 33-39, Exhs. 9, 12-13, 22-26.

25        It cannot be disputed that Perfect 10's notices provided Google with

26  sufficient information to locate and remove infringing links, because Google

27  belatedly removed at least 1,000 such links from its Web Search results in response

28  to Perfect 10's spreadsheet style notices.  *Id.* ¶¶26-28, 40-51, Exhs. 14-16, 27-35.

1    Furthermore, Google also belatedly processed Perfect 10's Adobe style notices

2    containing the URL and infringed/infringing images, demonstrating that those

3    notices were substantially compliant as well. Zada Decl. ¶¶59-61, Exhs. 44-45.

4    Third, Google's letters to Perfect 10 in 2004 never suggested that there were

5    any deficiencies in Perfect 10's notices. Google did in fact process a number of

6    Perfect 10's notices in June 2009.[6] *Id.* ¶¶61, 26-28, Exhs. 45, 14-16.

7    Fourth, that Perfect 10's notices provided sufficient information for Google

8    to locate and disable access to infringing material is evidenced by the fact that

9    Yahoo! was able to remove links and images from its search results within three

10   days after receiving similar notices from Perfect 10. Yahoo! did not request

11   additional information from Perfect 10 or suggest that Perfect 10's notices were

12   deficient in any way. Zada Decl. ¶¶62-63, 46-47. Microsoft was also able to

13   process certain Perfect 10 notices that Google has refused to process. *Id.* ¶53. *See*

14   *also*, O'Connor Decl. ¶¶3-6, Exh. 1; Chumura Decl. ¶¶3-5, Exh. 1; Pallas Depo.,

15   145:6-146.10; 148:23-149:7, attached as Exh. G to Mausner Decl., filed under seal.

16   Fifth, as demonstrated in the Zada Declaration, Google could have simply

17   inputted the URLs provided by Perfect 10 into its search box to find the

18   corresponding infringing search results. Zada Decl. ¶31, Exh. 20. Google has

19   already demonstrated that it can remove URLs identified by Perfect 10. Google

20   simply failed to remove such URLs from its Image Search results, and delayed or

21   took no action whatsoever to remove such URLs from most of Google's Web

22   Search results. Zada Decl. ¶¶16-18, 26-28, 59-60, Exhs. 14-16, 44, 9.

23   Sixth, Google has stated that if a notice were deficient, Google would

24   contact the copyright holder. And, to the extent that there were any deficiencies in

25   [6] As noted above, Google waited four months before removing any results at
26   all, but then was able to remove at least one thousand infringing links in its Web
     Search results, but did not remove such infringing links from its Image Search
27   results. Zada Decl. ¶¶26-28, Exhs. 14-17. Furthermore, even when Google
     removed links from its Web Search results, it still published those same URLs on
28   Chillingeffects.org, despite Perfect 10's objections. *Id.* ¶64, Exh. 48; Declaration
     of Dean Hoffman ¶¶4-9; Declaration of C.J. Newton ¶5.

1    Perfect 10's notices, Google was required, under §512(c)(3)(B)(ii), to contact

2    Perfect 10 to cure any such deficiencies.  Google not only failed to work with

3    Perfect 10 in any meaningful way, it refused repeated requests by Perfect 10 to

4    provide Perfect 10 with concrete examples of compliant notices, which Perfect 10

5    could then use as a template.  Zada Decl. ¶¶26, 70, Exhs. 14, 53.

6         **B.**    **Google Has Failed to Act Expeditiously To Remove Or Disable**

7             **Access To The Infringing Material.**

8         In order to qualify for the safe harbor provisions of the DMCA, which is an

9    affirmative defense, a service provider must "act[] expeditiously to remove, or

10   disable access to, the material" that is claimed to be infringing or to be the subject

11   of infringing activity.  17 U.S.C. § 512(c) and (d).  Google cannot meet this

12   requirement for multiple reasons.

13        First, as of May 18, 2009, Google has removed no more than approximately

14   71 full-size P10 Images from its blogger.com servers, even though Perfect 10

15   identified more than 3,800 infringing images in its notices.  Second, Google took

16   between three and seventeen months to remove many Web Search links.  Third,

17   Google completely failed to remove those same links from its Image Search

18   results.  Fourth, Google has not removed or disabled access to tens of thousands of

19   infringements identified by Perfect 10's notices, including infringing Web Search

20   links, infringing cache links, infringing "See full-size image" links, infringing P10

21   thumbnails, and infringing in-line links.  Fifth, Google continues to place Google

22   ads next to P10 Images for which it has received notice.  Sixth, Google continues

23   to host and link to password hacking websites and continues to display

24   perfect10.com passwords itself.  Finally, Google has not even maintained a DMCA

25   log to prove that it has complied with the expeditious removal and repeat infringer

26   requirements.  Such conduct establishes that Google cannot meet the requirement

27   of expeditiously removing or disabling access to infringing material.  Zada Decl.

28   ¶¶8-60, Exhs. 1-44.  Chou Decl.

C.   **Google Has Neither Adopted, Nor Reasonably Implemented, A Repeat Infringer Policy.**

Yet another reason that Google does not qualify for any DMCA safe harbor is Google's failure to adopt and reasonably implement a repeat infringer policy, as required by 17 U.S.C. §512(i))(1)(A).  A repeat infringer policy is not the same as a copyright policy relating to notice and take-down of infringing materials, because it must deal with the infringer rather than the infringing material itself.  *See Perfect 10 v. Cybernet Ventures, Inc*., 213 F.Supp. 2d 1146 (C.D.Cal. 2002) 1177:

> [S]ection 512(i) is focused on infringing users, whereas 512(c) is focused primarily on the infringing material itself.  …  The Court does not read section 512 to endorse business practices that would encourage content providers to turn a blind eye to the source of massive copyright infringement while continuing to knowingly profit, indirectly or not, from every single one of these same sources until a court orders the provider to terminate each individual account.  … [O]nline service providers are meant to have strong incentives to work with copyright holders. The possible loss of the safe harbor provides that incentive and furthers a regulatory scheme in which courts are meant to play a secondary role to self-regulation.

Google has not reasonably implemented a repeat infringer policy, as shown in these five ways: (1) Google admits that its blogspot.com and blogger.com clients are account holders or subscribers for purposes of the DMCA.  Zada Decl. ¶8, Exh. 1.  However, Google does not keep track of the identities of many such account holders.  Because Google only requires an email address and password, it cannot prevent an infringer from continuing to use Google's hosting services with a different email address and password.  *Id.* ¶6.  (2)  Google has failed to keep a spreadsheet-type DMCA log to track repeated complaints regarding the same infringer.  It has also not kept track of the identities of such infringers.  Zada Decl. ¶19.  As a result, Google does not have a mechanism for terminating repeat infringers or preventing such repeat infringers from becoming account holders or subscribers for its other programs.  (3)  Google has not prevented its blogspot.com account holders from continuing to infringe P10 Images and has not removed such images from its own blogger.com servers, despite repeated notice.  Zada Decl.

1  ¶¶40-51, Exhs. 27-35.  (4) Google has not stopped doing business with AdWords

2  and AdSense account holders who infringe P10 Images.   Zada Decl. ¶¶12-14, 34-

3  37, Exhs. 5-7, 22-25.  (5)  Google itself is a repeat infringer, as it has continued to

4  infringe full-size P10 Images via its blogger.com program, even when it has

5  removed the corresponding blogspot.com hosted website.  Zada Decl. ¶¶40-51,

6  Exhs. 27-35.  Accordingly, because Google has failed to comply with the

7  requirements of the DMCA, the safe harbor protections of the statute provide no

8  basis for this Court to deny the Motion.

9  **VII.  CONCLUSION.**

10        The stakes in this case are high, for both Perfect 10 and for all copyright

11  holders.  Google has continued to misuse massive quantities of Perfect 10's

12  intellectual property for its own commercial gain, despite receiving more than

13  67 Perfect 10 DMCA notices, beginning in 2001. Google has allowed its

14  hosting clients to remain anonymous, leaving copyright holders with no one

15  other than Google to hold responsible.  Google has failed to expeditiously

16  remove or disable most of the infringing links and images identified by Perfect

17  10 in its notices.  Google has refused to process notices that can be processed,

18  and which Yahoo!  and/or Microsoft have processed.  Google has even refused

19  to process notices identical to others it has processed!  Finally, Google has not

20  prevented further damage to thousands of Perfect 10's copyrighted works, and

21  thus is liable for contributory infringement under the test established by the

22  Ninth Circuit in this case.  For all of the reasons set forth herein, Perfect 10

23  respectfully requests that this Court grant its motion for summary judgment.

24  Dated: July 5, 2009        Respectfully submitted,
                           Law Offices of Jeffrey N. Mausner

25

26                    By: _____
                         *Jeffrey N. Mausner*

27                       Jeffrey N. Mausner,
                     Attorney for Perfect 10, Inc.

28



**EXHIBIT Z**



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION


PERFECT 10, INC.,            )
                             )
        PLAINTIFF,           )
                             )
        VS.                  )   CASE NO. CV 04-9484-AHM(SHX)
                             )
                             )
GOOGLE, INC.,                )   LOS ANGELES, CALIFORNIA
                             )   SEPTEMBER 4, 2009
                             )   (3:15 P.M. TO 4:00 P.M.)
        DEFENDANT.           )
_____)

TELEPHONIC CONFERENCE

BEFORE THE HONORABLE STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE




APPEARANCES:              SEE NEXT PAGE

COURT REPORTER:           RECORDED

COURTROOM DEPUTY:         SANDRA L. BUTLER

TRANSCRIBER:              DOROTHY BABYKIN
                          COURTHOUSE SERVICES
                          1218 VALEBROOK PLACE
                          GLENDORA, CALIFORNIA   91740
                          (626) 963-0566




PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Exhibit Z, Page 160

```
 1   APPEARANCES:   (CONTINUED)
     FOR THE PLAINTIFF:          LAW OFFICES OF JEFFREY N. MAUSNER
 2                               BY:   JEFFREY N. MAUSNER
                                       VALERIE KINCAID
 3                                     ATTORNEYS AT LAW
                                 21800 OXNARD STREET
 4                               SUITE 910
                                 WOODLAND HILLS, CALIFORNIA   91367
 5

 6   FOR THE DEFENDANT:          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES
 7                               BY:   MICHAEL T. ZELLER
                                       ATTORNEY AT LAW
 8                               865 SOUTH FIGUEROA STREET
                                 10TH FLOOR
 9                               LOS ANGELES, CALIFORNIA   90017

10                               QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES
11                               BY:   RACHEL M. HERRICK KASSABIAN
                                       ATTORNEY AT LAW
12                               555 TWIN DOLPHIN
                                 SUITE 560
13                               REDWOOD SHORES, CALIFORNIA   04065

14                               TOWNSEND TOWNSEND & CREW
                                 BY:   TIMOTHY CAHN
15                                     ATTORNEY AT LAW
                                 TWO EMBARCADERO CENTER
16                               8TH FLOOR
                                 SAN FRANCISCO, CALIFORNIA   94111
17
     ALSO PRESENT:               DR. NORMAN ZADA
18                               PRESIDENT, PERFECT 10

19

20

21

22

23

24

25
```

I N D E X

CASE NO. CV 04-9484-AHM(SHX)                    SEPTEMBER 4, 2009

PROCEEDINGS:    TELEPHONIC CONFERENCE

Exhibit Z, Page 162

1          THE COURT:  WHO'S THIS?

2          DR. ZADA:  IT'S NORM ZADA.

3          THE COURT:  HI.

4          DR. ZADA:  WOULD YOU LIKE TO SEE BASICALLY AS A

5    SUPPLEMENTAL BRIEF A SUGGESTION FOR SAMPLING?

6          THE COURT:  WELL, WHAT I WOULD LOVE TO SEE IS A

7    JOINT SUPPLEMENTAL BRIEF SAYING, YOU KNOW, THE PARTIES HAVE

8    AGREED WITHOUT PREJUDICE TO APPEAL -- OR RECONSIDERATION BY

9    JUDGE MATZ, THE PARTIES HAVE AGREED TO, YES, A, B, AND C IN

10   TERMS OF SAMPLING.  BUT WE HAVE LEGITIMATE DIFFERENCES IN

11   CERTAIN AREAS, AND WE'D LIKE TO NARROW THESE DISPUTES TO

12   THAT.  THAT WOULD BE EXTREMELY HELPFUL.  AND, LIKEWISE, AN

13   AGREEMENT AS TO THE RFAS.

14         I DON'T MEAN -- WELL, LET ME HEAR JUST -- LET ME

15   HEAR GOOGLE'S SORT OF CANDID RESPONSE.

16         MR. MAUSNER:  YOUR HONOR, MAY I SAY SOMETHING.

17   THIS IS JEFF MAUSNER.

18         ARE YOU AWARE OF THE COURT'S ORDER IN WHICH THE

19   COURT STATES THAT IT EXPECTS TO RULE ON THE PENDING SUMMARY

20   JUDGMENT MOTIONS BY LATE SUMMER?

21         THE COURT:  THAT'S IN AMAZON.

22         MR. MAUSNER:  CORRECT.

23         THE COURT:  YES.

24         MR. MAUSNER:  CORRECT.

25         THE COURT:  YES, THERE'S NOTHING -- THERE'S NO

1    PENDING MOTIONS IN GOOGLE.

2           MR. MAUSNER:  YES, THERE ARE.  THERE ARE ACTUALLY

3    FOUR PENDING SUMMARY JUDGMENT MOTIONS IN GOOGLE, WHICH I

4    EXPECT THE COURT WOULD RULE ON AFTER THE AMAZON MOTION.

5           THE COURT:  I DIDN'T EVEN KNOW THAT.

6           MR. MAUSNER:  YES.

7           THE COURT:  AND ARE THEY DMCA MOTIONS OR WHAT?

8           MR. MAUSNER:  THREE OF THEM ARE DMCA MOTIONS, AND

9    ONE OF THEM IS COMBINED CONTRIBUTORY INFRINGEMENT AND DMCA.

10          DR. ZADA:  WELL, WHAT HE IS POINTING OUT, YOUR

11   HONOR, IS THAT WE ACTUALLY FILED A MOTION FOR SUMMARY

12   JUDGMENT AGAINST GOOGLE, AND WE USED 12 SAMPLE IMAGES IN THAT

13   MOTION.

14          THE COURT:  UH-HUH.

15          DR. ZADA:  AND WITH 12 SAMPLE IMAGES WE FELT WE

16   COVERED ALL THE BASES.

17          THE COURT:  UH-HUH.  OKAY.  I DID NOT KNOW THIS.

18   AND I WISH I HAD KNOWN THIS A FEW DAYS AGO.  AND IT'S, YOU

19   KNOW, MY FAULT FOR NOT KEEPING UP WITH THE DOCKET.

20          DR. ZADA:  SO, OUR POINT, YOUR HONOR, IS THAT WE

21   BELIEVED THAT WHEN WE DID OUR MOTION FOR SUMMARY JUDGMENT

22   AGAINST GOOGLE, IT'S PRETTY MUCH ALL THAT NEEDED TO BE DONE.

23          AND FORGIVE ME FOR ADDING SOMETHING HERE.  I HAVE

24   DONE A CALCULATION AS TO THE NUMBER OF PAGES IT WOULD TAKE TO

25   ANSWER GOOGLE'S INTERROGATORIES 3 AND 11, AND THE ANSWER WAS

1    30 MILLION PAGES.  THAT'S HOW MANY IT WOULD TAKE TO PRINT

2    OUT.

3         MY POINT OUT IS THAT THEY'RE VERY FAR OFF IN MY

4    MIND AS TO WHAT IS DOABLE.  AND I'M VERY MUCH IN FAVOR OF THE

5    SAMPLING ISSUE, BUT THEIR MOTION IS NOT REALLY A SAMPLING

6    MOTION.  THEY'RE JUST --

7         THE COURT:  WELL, LET ME ASK --

8         MR. MAUSNER:  AND, YOUR HONOR, THE THREE OTHER

9    MOTIONS WERE FILED BY GOOGLE, AND THEY WERE ABLE TO FILE

10   THOSE MOTIONS WITHOUT ANY OF THE RELIEF THAT THEY'RE SEEKING

11   IN THESE MOTIONS -- IN THE DISCOVERY MOTIONS.

12        THE COURT:  SAY THAT AGAIN -- OH, I SEE WHAT YOU'RE

13   SEEING.  YES, RIGHT.

14        DR. ZADA:  THEY HAD NO SAMPLING ISSUES.  THIS WAS

15   THEIR MOTION, YOUR HONOR.

16        THE COURT:  SO, THEN THE QUESTION IS, DOES EVERYONE

17   WANT ME TO JUST SHOVE THESE ASIDE UNTIL ALL THOSE MOTIONS ARE

18   RULED ON BY JUDGE MATZ.

19        DR. ZADA:  WE THINK THAT WOULD MAKE A LOT OF SENSE,

20   YOUR HONOR.  BECAUSE UNTIL SUCH TIME AS WE KNOW WHAT THE

21   DEFENDANTS WILL BE HELD LIABLE FOR, IF ANYTHING, YOU KNOW,

22   FOR US TO HAVE TO GO THROUGH AND DO A MASSIVE AMOUNT OF WORK

23   ON THINGS THAT WE MAY NOT BE AWARDED DAMAGES ON SEEMS

24   PREMATURE.

25        THE COURT:  WHEN DID HE TAKE THESE UNDER

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT
TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE
PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

DOROTHY BABYKIN                                    9/30/09

_____                    _____

FEDERALLY CERTIFIED TRANSCRIBER            DATED

DOROTHY BABYKIN

# EXHIBIT AA

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 8, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC.  v. GOOGLE, INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)

The Court GRANTS, *nunc pro tunc*, Google's "Motion for Order for Schedule for Filing Dispositive Motions" for the reasons stated in Google's briefs.[1] In addition, the Court STAYS further briefing on Perfect 10's just-filed motion for summary judgment (Docket No. 436) until further order of the Court.  The August 17, 2009 hearing for Perfect 10's motion is vacated.

The Court is aware that Google decided to file its three DMCA motions, noticed for August 17, 2009, without awaiting the Court's order on its motion.  Although Google's filing of the DMCA motions before the Court's order exhibited gamesmanship -- *i.e.*, it gives the appearance of Google racing to the courthouse at the same time it was purporting to seek the Court's guidance on an orderly sequence of the filing of motions -- Google did not violate any Court order.

The Court also notes that the parties have not proposed deadlines for opposition and reply briefs.  The Court requires the oppositions to Google's DMCA motions to be filed by July 27, 2009 and the replies to be filed by August 3, 2009.

_____ : _____

Initials of Preparer          SMO

---

[1]Docket No. 411.

Exhibit AA, Page 167

# EXHIBIT BB
# (FILED UNDER SEAL
# PURSUANT TO
# PROTECTIVE ORDER)

# EXHIBIT CC

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S INTERNET ADDRESS
**rachelkassabian@quinnemanuel.com**

June 16, 2009

## VIA E-MAIL AND U.S. MAIL

Valerie Kincaid
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
Email: valeriekincaid@yahoo.com

Re:     Perfect 10, Inc. v. Google Inc. – Discovery Issues

Dear Valerie:

I write in response to your June 3, 2009 letter regarding (1) Google's redactions in its document production and (2) Google's responses to certain of Perfect 10's Interrogatories.

First, the redactions at GGL 005618 and GGL 053399 and some of the redactions at GGL 032695 were made to remove information not relevant or responsive to Perfect 10's Requests for Production. The remainder of the redactions in the examples attached to your letter pertained to privileged attorney-client communications and/or attorney work product material.

Second, regarding your request that Google confirm that it has produced documents in response to Perfect 10's Interrogatory Nos. 26, 32, 33 and 34 pursuant to Rule 33(d), Google has indeed produced documents responsive to those interrogatories.  As for your request that Google identify by bates number the specific pages produced in response to each of these interrogatories, you will recall that Google has requested that same information from Perfect 10, but Perfect 10 has refused, necessitating motion practice.  *See* Google's Motion to Compel Further Responses to Interrogatory Nos. 3 and 11, at pp. 40-49, 51 (currently pending before the Court).  The Court has already made clear that both parties will be subject to the same discovery obligations in this litigation.  *See, e.g.,* Transcript of April, 14, 2008 Hearing before Judge Matz, at 13 ("any ruling I would make of this type would have to be reciprocal and equally reciprocal").  Please let us know whether Perfect 10 will agree to assign unique control numbers to each page of its document production and provide the

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017-2543 | TEL (213) 443-3000  FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York  10010-1601 | TEL (212) 849-7000  FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California  94111 | TEL (415) 875-6600  FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois  60606-6301 | TEL (312) 463-2961  FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG  ,United Kingdom | TEL +44(0) 20 7653 2000  FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052  ,Japan | TEL +81 3 5561-1711  FAX +81 3 5561-1712

Exhibit CC, Page 193

same information it now seeks from Google – namely, the identification of specific control numbers at which documents responsive to Google's interrogatories (including Interrogatory Nos. 3 and 11) may be found. Unless and until Perfect 10 is willing to provide this information itself, on a reciprocal basis, Perfect 10's request to Google is both inconsistent with its other positions and inappropriate.

I look forward to hearing from you.

Very truly yours,

Rachel Herrick Kassabian

# EXHIBIT DD


CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

|  |  |  |
|---|---|---|
| PERFECT 10, INC., | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CASE NO. CV 04-9484-AHM(SHX) |
| | ) | |
| | ) | |
| GOOGLE, INC., | ) | LOS ANGELES, CALIFORNIA |
| | ) | SEPTEMBER 22, 2009 |
| | ) | (10:02 A.M. TO 11:09 A.M.) |
| | ) | (11:21 A.M. TO 12:52 A.M.) |
| DEFENDANT. | ) | (1:35 P.M. TO 2:43 P.M.) |
| | ) | (2:52 P.M. TO 3:09 P.M.) |

HEARING
BEFORE THE HONORABLE STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:               SEE NEXT PAGE

COURT REPORTER:            RECORDED

COURTROOM DEPUTY:          SANDRA L. BUTLER

TRANSCRIBER:               DOROTHY BABYKIN
                           COURTHOUSE SERVICES
                           1218 VALEBROOK PLACE
                           GLENDORA, CALIFORNIA  91740
                           (626) 963-0566

PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1

2                    UNITED STATES DISTRICT COURT

3                   CENTRAL DISTRICT OF CALIFORNIA
                          WESTERN DIVISION

4

5
     PERFECT 10, INC.,              )
6                                   )
           PLAINTIFF,               )
7                                   )
           VS.                      )   CASE NO. CV 04-9484-AHM(SHX)
8                                   )
                                    )
9    GOOGLE, INC.,                  )   LOS ANGELES, CALIFORNIA
                                    )   SEPTEMBER 22, 2009
10                                  )   (10:02 A.M. TO 11:09 A.M.)
                                    )   (11:21 A.M. TO 12:52 A.M.)
11         DEFENDANT.               )   (1:35 P.M. TO 2:43 P.M.)
     _____)   (2:52 P.M. TO 3:09 P.M.)
12
                                 HEARING
13            BEFORE THE HONORABLE STEPHEN J. HILLMAN
                   UNITED STATES MAGISTRATE JUDGE

14

15

16

17   APPEARANCES:            SEE NEXT PAGE

18   COURT REPORTER:         RECORDED

19   COURTROOM DEPUTY:       SANDRA L. BUTLER

20   TRANSCRIBER:            DOROTHY BABYKIN
                             COURTHOUSE SERVICES
21                           1218 VALEBROOK PLACE
                             GLENDORA, CALIFORNIA   91740
22                           (626) 963-0566

23

24

25   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

Exhibit DD, Page 196

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:        LAW OFFICES OF JEFFREY N. MAUSNER
 2                             BY:   JEFFREY N. MAUSNER
                                     VALERIE KINCAID
 3                                   ATTORNEYS AT LAW
                               21800 OXNARD STREET
 4                             SUITE 910
                               WOODLAND HILLS, CALIFORNIA  91367
 5

 6   FOR GOOGLE:               QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES
 7                             BY:  THOMAS NOLAN
                                    ATTORNEY AT LAW
 8                             865 SOUTH FIGUEROA STREET
                               10TH FLOOR
 9                             LOS ANGELES, CALIFORNIA  90017

10                             QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES
11                             BY:  RACHEL M. HERRICK KASSABIAN
                                    ATTORNEY AT LAW
12                             555 TWIN DOLPHIN
                               SUITE 560
13                             REDWOOD SHORES, CALIFORNIA  04065

14   FOR AMAZON.COM,           TOWNSEND TOWNSEND & CREW
     ALEXA INTERNET:           BY:  MARK JANSEN
15                                  ATTORNEY AT LAW
                               TWO EMBARCADERO CENTER
16                             8TH FLOOR
                               SAN FRANCISCO, CALIFORNIA  94111
17
     ALSO PRESENT:             DR. NORMAN ZADA
18                             PRESIDENT, PERFECT 10

19                             MELANIE POBLETE
                               LEGAL ASSISTANT, PERFECT 10
20

21

22

23

24

25
```

1                          I N D E X
    CASE NO. CV 04-9484-AHM(SHX)              SEPTEMBER 22, 2009
2
    PROCEEDINGS:   HEARING RE DISCOVERY
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        OF COURSE, THERE ARE MANY CASES DISALLOWING LOST

2    PROFITS WHERE A PARTY HAS NEVER OPERATED AT A PROFIT.

3        SO, YOU'RE RIGHT, YOUR HONOR, THAT WE WOULD WANT

4    DOCUMENTS REFLECTING --

5        THE COURT:  ALL RIGHT.  SO, I WILL DEFER RULING ON

6    81 AND 87, 94 --

7        MR. JANSEN:  YOUR HONOR -- YOUR HONOR, CAN I JUST

8    ADDRESS THE PROJECTION ISSUE.

9        NUMBER 87, THE PROJECTIONS, ANY SALES OR REVENUE

10   PROJECTIONS IN ITS BUSINESS PLANS I THINK WOULD BE VERY

11   IMPORTANT FOR EXAMINING DAMAGE ISSUES.

12       IF THERE'S PROJECTIONS IN WHICH --

13       THE COURT:  I FOCUS ON ALL DOCUMENTS.  SO, MAYBE --

14   HAVE YOU RECEIVED ANYTHING?

15       MR. JANSEN:  I HAVE ONE -- WE HAVE ONE SHEET OF

16   PAPER IN OUR FILES WE FOUND.  IT APPEARS TO HAVE BEEN WRITTEN

17   IN 2000 AND -- 1999 OR 2000.  I DON'T KNOW THE CONTEXT OF IT

18   YET, BUT THERE'S ONE SHEET OF PAPER THAT SEEMED TO BE A

19   BUSINESS PLAN, LIKE A THREE-PAGE BUSINESS PLAN OF WHAT

20   PERFECT 10 EXPECTED TO DO IN THE FUTURE.

21       BUT WE NEED TO -- I THINK PERFECT 10 SHOULD BE

22   ORDERED TO PRODUCE ANY SALES OR REVENUE OR PROFIT PROJECTIONS

23   OR BUSINESS PLANS, WHICH WOULD BE ENCOMPASSED WITHIN 87.  BUT

24   IT'S OBVIOUSLY NARROWER BECAUSE NOT ALL DOCUMENTS CONCERNING.

25   TO THE EXTENT THEY HAD PROJECTIONS OR BUSINESS PLANS I THINK

1   WE SHOULD GET THOSE. AND THAT WOULD BE A DISCRETE SET OF

2   DOCUMENTS.

3           THE COURT: SO, YOU WOULD SAY SOMETHING LIKE,

4   DOCUMENTS SUFFICIENT TO DELINEATE OR EXPLAIN PERFECT 10'S

5   PROJECTION OF SALES, REVENUE, OR PROFITS, ET CETERA?

6           MR. JANSEN: DOCUMENTS CONTAINING OR SETTING OUT

7   THEIR SALES, REVENUE, OR PROFIT PROJECTIONS.

8           THE COURT: SO, YOUR RESPONSE? YES?

9           MR. MAUSNER: WE SAID, "WITHOUT WAIVING ANY OF THE

10  FOREGOING OBJECTIONS, PERFECT 10 RESPONDS THAT TO THE EXTENT

11  IT UNDERSTANDS THIS REQUEST, IT WILL PROVIDE NON-PRIVILEGED

12  DOCUMENTS."

13          THE COURT: OH. RIGHT. ACTUALLY, THAT VERBIAGE IN

14  MANY OF PERFECT 10'S RESPONSES IS THE SAME. LET ME JUST

15  STATE THE OBVIOUS, THAT ANY ALLEGEDLY PRIVILEGED DOCUMENTS

16  MAY BE WITHHELD FOR ANY DOCUMENTS I'VE ORDERED PROVIDED THERE

17  IS A DETAILED PRIVILEGE LOG SERVED NO LATER THAN THE FINAL

18  DAY OF DOCUMENT PRODUCTION.

19          MR. MAUSNER: WE HAVE AN AGREEMENT WITH THE OTHER

20  SIDE THAT WE DON'T HAVE TO HAVE PRIVILEGE LOGS, YOU KNOW, TO

21  THE EXTENT THAT IT'S SOMETHING THAT'S OBVIOUSLY BETWEEN --

22          THE COURT: CORRECT.

23          MR. MAUSNER: -- PERFECT 10 AND ITS ATTORNEYS AND

24  GOOGLE AND ITS ATTORNEYS.

25          MS. KASSABIAN: I'M NOT SURE THAT'S A COMPLETELY

1    ACCURATE CHARACTERIZATION OF AN AGREEMENT, BUT ROUGHLY

2    SPEAKING --

3           THE COURT:  PRIVILEGE LOGS IF REQUESTED.

4           MS. KASSABIAN:  YEAH.  RIGHT.

5           THE COURT:  OKAY.  PRIVILEGE LOGS IF REQUESTED BY

6    EITHER DEFENDANT SHALL BE SERVED NO LATER THAN THE FINAL DATE

7    OF DOCUMENT PRODUCTION.

8           SO, ON 87, YES, I SEE THAT PERFECT 10 HAS ALREADY

9    AGREED TO PROVIDE DOCUMENTS THAT CAN BE FOUND REASONABLY.

10   SO, THOSE ARE ORDERED PRODUCED.  I'M JUST DEFERRING ANY ORDER

11   FOR ALL DOCUMENTS.

12          94 -- WELL, ARE YOU SEEKING AT THIS POINT ANYTHING

13   MORE THAN WHAT YOU'VE RECEIVED, EITHER PRIOR TO OR TODAY?

14          MS. KASSABIAN:  WELL, YOUR HONOR, IT'S POSSIBLE

15   THAT THE SOURCE DOCUMENTS THAT MR. HERSH AND PERFECT 10 WILL

16   BE PROVIDING MIGHT INCLUDE SOME OF THIS INFORMATION, BUT,

17   OBVIOUSLY, I CAN'T KNOW THAT AT THIS MOMENT.  BUT CERTAINLY

18   JUST, YOU KNOW, ANY SORT OF PRODUCT-BY-PRODUCT BREAKDOWN OF

19   PROFITS AND LOSSES WOULD BE SOMETHING WE'D BE SEEKING, AND WE

20   HAVE NOT YET RECEIVED THOSE MATERIALS AND PRODUCTION.

21          SO, IF IT'S PART OF THE HERSH PRODUCTION, THEN,

22   GREAT.  IF IT'S NOT, THEN, IT'S STILL A LIVE REQUEST.

23          THE COURT:  WELL, AND THE RESPONSE WAS, "PERFECT 10

24   WILL PROVIDE ACCOUNTING STATEMENTS THAT REFLECT EXPENDITURES

25   AS WELL AS REVENUE BY CATEGORY."

C E R T I F I C A T E

        I CERTIFY THAT THE FOREGOING IS A CORRECT

TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.


DOROTHY BABYKIN                          10/2/09

_____                  10/6/0 9

FEDERALLY CERTIFIED TRANSCRIBER          DATED

DOROTHY BABYKIN

# EXHIBIT EE

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-4753 AHM (SHx) | Date | November 4, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:        Attorneys **NOT** Present for Defendants:

**Proceedings:**        IN CHAMBERS (No Proceedings Held)


The Court GRANTS IN PART and DENIES IN PART A9.com's "Motion to Strike Supplemental Declarations of Norman Zada and Jeffrey Mausner; Unauthorized Sur-Reply."[1]  The Court sustains A9's objections as to sections III and IV of Perfect 10's supplemental brief.  The Court also sustains A9's objections to Exhibits L and M to the Mausner Supplemental Declaration. The Court overrules A9's objections to Exhibit N to that declaration, as well as its objections to the Supplemental Declaration of Dr. Zada. Although Dr. Zada's declaration is admissible, it is regrettable that he is so quick to attribute deception to arguments or statements that he characterizes as false but that may simply be incorrect.


|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |

---

[1]Docket No. 201.

Exhibit EE, Page 203

# EXHIBIT FF

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-4753 AHM (SHx) | Date | January 6, 2008 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:        Attorneys **NOT** Present for Defendants:

**Proceedings:**        IN CHAMBERS (No Proceedings Held)

The Court GRANTS A9's *ex parte* application to strike Perfect 10's cross motion for partial summary judgment.[1]  Perfect 10's cross-motion was neither necessary nor authorized.  A9 need not and should not file a response to the cross-motion.  The Court will construe Perfect 10's opposition to A9's motion as a request for a finding on the merits in Perfect 10's favor.

_____ : _____
Initials of Preparer            SMO

---

[1]Docket No. 276.

Exhibit FF, Page 204

# EXHIBIT GG

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 05-4753 AHM (SHx) | Date | July 8, 2009 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. AMAZON.COM, INC., *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)


The Court GRANTS Alexa Internet's *ex parte* application to strike Perfect 10's cross motion for summary judgment on direct infringement[1] for the same reasons stated in the Court's order of January 6, 2009 addressing an identical situation in this case.  If Mr. Mausner again files such cross motions in either of the Perfect 10 cases, the Court may impose sanctions.


_____ :  _____

Initials of Preparer          _____

[1]Docket No. 316.