1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Michael T. Zeller (Bar No. 196417)
2     michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
4  Facsimile: (213) 443-3100
     Charles K. Verhoeven (Bar No. 170151)
5     charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
6  San Francisco, California 94111
     Rachel Herrick Kassabian (Bar No. 191060)
7     rachelkassabian@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California 94065

9  Attorneys for Defendant GOOGLE INC.

10

11                  UNITED STATES DISTRICT COURT

12                 CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 13  PERFECT 10, INC., a California corporation, <br><br> 14 <br><br> 15             Plaintiff, <br><br> 16   vs. <br><br> 17  GOOGLE INC., a corporation; and DOES 1 through 100, inclusive, <br><br> 18             Defendants. | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)] <br><br> **DEFENDANT GOOGLE INC.'S CORRECTED OPPOSITION TO PLAINTIFF PERFECT 10, INC.'S MOTION FOR EVIDENTIARY AND OTHER SANCTIONS AGAINST GOOGLE AND/OR FOR THE APPOINTMENT OF A SPECIAL MASTER** |
| 19 <br> AND COUNTERCLAIM <br> 20 | Hon. A. Howard Matz |
| 21  PERFECT 10, INC., a California corporation, <br><br> 22             Plaintiff, <br><br> 23   vs. <br><br> 24  AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and <br> 25  DOES 1 through 100, inclusive, <br><br> 26             Defendants. | Date:  December 21, 2009 <br> Time:  10:00 a.m. <br> Place:  Courtroom 14 <br><br> Discovery Cut-off: None Set <br> Pre-trial Conference: None Set <br> Trial Date: None Set <br><br> **PUBLIC REDACTED** |

27

28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................1

ARGUMENT ..............................................................................................1

I.  P10'S REQUEST FOR SANCTIONS IS GROUNDLESS. ..............................1

   A.  Google Has Produced its "DMCA Logs." ................................................5

   B.  Google Has Produced Documents Regarding Its Repeat Infringer Policies. ............................................................................................8

   C.  P10 Never Requested Third-Party DMCA Notices. ..............................9

   D.  Google Has Produced Notices Of Termination Of Repeat Infringers. .........................................................................................10

   E.  Google Did Not Violate The May 22, 2006 Order With Respect to Board Meeting Minutes. ...............................................................10

   F.  Google Did Not Violate The May 13, 2008 Order With Respect to Reports Pertaining To Certain Custodians. ...............................11

   G.  There Is No Discovery Order Requiring The Production of Communications Between Google And Third Party DMCA Complainants And Infringers. ..............................................................11

II.  P10'S MOTION, FILED WITHOUT LEAVE OF COURT, VIOLATES MULTIPLE COURT ORDERS AND THE LOCAL RULES. ........................12

   A.  P10's Motion Is An Improper Sur-reply. ..............................................12

   B.  P10's Motion Is An Improper Attempt To Revive Its Stayed Cross-Motion For Summary Judgment Regarding DMCA Safe Harbor. ..........................................................................................14

III.  TO THE EXTENT P10'S MOTION IS CONSTRUED AS A "RULE 56(F) MOTION," IT IS UNTIMELY AND MERITLESS. ..............................15

   A.  P10's Claims For Additional Discovery Are Untimely. ........................15

   B.  P10 Discovery Request Does Not Comply With Rule 56(f). ................16

IV.  EVEN IF THE COURT CONSIDERS P10'S IMPROPERLY-RAISED SUBSTANTIVE ARGUMENTS, NONE HAVE MERIT. .............................17

   A.  Google's AdSense DMCA Tracking Spreadsheets Are Not Deficient. .........................................................................................17

01980.51320/3232216.2

| | | | |
|---|---|---|---|
| | B. | Google's Blogger DMCA Tracking Spreadsheets Are Not Deficient. | 19 |
| | C. | P10's Allegations Of Inconsistencies Between Google's Tracking Spreadsheets And Other DMCA Documents Are Incorrect. | 19 |
| V. | | P10'S REQUEST FOR A SPECIAL MASTER IS UNWARRANTED AND UNNECESSARY. | 20 |
| VI. | | PERFECT 10 SHOULD BE SANCTIONED. | 21 |
| CONCLUSION | | | 22 |

01980.51320/3232216.2

GOOGLE'S CORRECTED OPPOSITION TO PERFECT 10'S MOTION
FOR EVIDENTIARY AND OTHER SANCTIONS

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Am. Stock Exch., LLC v. Mopex, Inc.,*
  215 F.R.D. 87 (S.D.N.Y. 2002) ..................................................................................2

*Arista Records LLC v. Usenet.com, Inc.,*
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ........................................................................2

*B.K.B. v. Maui Police Dep't,*
  276 F.3d 1091 (9th Cir. 2002) ..................................................................................21

*Bermudez v. Duenas,*
  936 F.2d 1064 (9th Cir. 1991) ....................................................................................7

*Brae Transp., Inc. v. Coopers & Lybrand,*
  790 F.2d 1439 (9th Cir. 1986) ..................................................................................16

*CFTC v. Noble Metals, Int'l,*
  67 F.3d 766 (9th Cir. 1995) ........................................................................................2

*Cal. Union Ins. Co. v. Am. Diversified Sav. Bank,*
  914 F.2d 1271 (9th Cir. 1990) ..................................................................................16

*Chance v. Pac-Tel Teletrac Inc.,*
  242 F.3d 1151 (9th Cir. 2001) ..................................................................................16

*Combs v. Rockwell Int'l Corp.,*
  927 F.2d 486 (9th Cir. 1991) ......................................................................................2

*Continental Air Lines, Inc. v. Group Systems Intern. Far East, Ltd.,*
  109 F.R.D. 594 (C.D. Cal. 1986) ..............................................................................21

*DISC Intellectual Properties LLC v. Delman,*
  2007 WL 4973849 (C.D. Cal. Sept. 17, 2007) .....................................................12, 13

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.,*
  353 F.3d 1125 (9th Cir. 2004) ..................................................................................16

*Filiatrault v. Comverse Technology, Inc.,*
  275 F.3d 131 (1st Cir. 2001) ...................................................................................4, 15

*In re Irving-Austin Bldg. Corp.,*
  100 F.2d 574 (7th Cir. 1938) ....................................................................................20

*La Buy v. Howes Leather Co.,*
  352 U.S. 249 reh'g denied, 352 U.S. 1019 (1957) ....................................................20

*Logan v. Gary Community Sch. Corp.,*
  2009 WL 187811 (N.D. Ind. Jan. 23, 2009) ...............................................................2

GOOGLE'S CORRECTED OPPOSITION TO PERFECT 10'S MOTION
FOR EVIDENTIARY AND OTHER SANCTIONS

*Mackey v. Pioneer Nat'l Bank,*
    867 F.2d 520 (9th Cir. 1989) ................................................................................ 16

*Nat'l Ass'n of Radiation Survivors v. Turnage,*
    115 F.R.D. 543 (N.D. Cal. 1987) ........................................................................... 20

*Precision Seed Co. v. Consolidated Grain & Barge Co.,*
    2006 WL 1339430 (S.D. Ohio May 16, 2006) .................................................... 7, 10

*Reilly v. Natwest Markets Group, Inc.,*
    181 F.3d 253 (2d Cir. 1999) ..................................................................................... 2

*Rodriguez-Cuervos v. Wal-Mart Stores, Inc.,*
    181 F.3d 15 (1st Cir. 1999) ..................................................................................... 15

*Spalding Labs., Inc. v. Arizona Biological Control, Inc.,*
    2008 WL 2227501 (C.D. Cal. May 29, 2008) .................................................... 12, 13

*United States v. Kahaluu Constr. Co., Inc.,*
    857 F.2d 600 (9th Cir. 1988) ................................................................................. 21

*Wanderer v. Johnston,*
    910 F.2d 652 (9th Cir. 1990) ............................................................................... 3, 4

*Ward v. Nat'l Geographic Soc'y,*
    2002 WL 27777 (S.D.N.Y. Jan. 11, 2002) .............................................................. 2

*Washington v. Garrett,*
    10 F.3d 1421 (9th Cir. 1993) ................................................................................... 8

*Young v. Polo Retail, LLC,*
    2007 WL 951821 (N.D. Cal. March 28, 2007) ...................................................... 21

## **Statutes**

17 U.S.C. §512 ................................................................................................................ 14

Fed R. Civ. P. 26(b)(1) ..................................................................................................... 8

Fed. R. Civ. P. 53 ........................................................................................................... 20

Fed. R. Civ. P. 53(a)(1)(C) .............................................................................................. 20

Fed. R. Civ. P. 56(f) ........................................................................................... 4, 15, 16, 17

Local Rule 7-10 .......................................................................................................... 12, 13

GOOGLE'S CORRECTED OPPOSITION TO PERFECT 10'S MOTION
FOR EVIDENTIARY AND OTHER SANCTIONS

**Preliminary Statement**

Perfect 10's ("P10") Motion for Evidentiary and Other Sanctions (the "Motion") fails to establish even a single legitimate discovery dispute—let alone any repeated, prejudicial violations of Court orders that are a prerequisite to the extraordinary evidentiary sanctions P10 demands. Indeed, the Motion's primary claim—that Google failed to produce its "DMCA log" and other DMCA-related documents—is demonstrably false.

P10's Motion is an improper attempt to reopen briefing on Google's motions for summary judgment regarding DMCA safe harbor ("DMCA Motions"), and to resurrect its own DMCA cross-motion for summary judgment. None of P10's arguments is "newly discovered," as P10 claims. To the contrary, many of them are simply a re-hash of arguments P10 first made in its oppositions to Google's DMCA Motions. This Court has repeatedly admonished P10 for its filing of unauthorized cross-motions and sur-replies and warned P10 that it may be sanctioned for doing so again. Yet that is exactly what P10 has done by this Motion, in contravention of this Court's clear instructions, as well as the Local Rules, the Court's Scheduling and Case Management Order, and the Court's July 8, 2009 Order staying all briefing on P10's cross-motion for summary judgment. P10's Motion should be denied, and P10 should be sanctioned for filing it.[1]

**Argument**

**I. P10'S REQUEST FOR SANCTIONS IS GROUNDLESS.**

P10's demand for evidentiary sanctions is without merit. As P10's own authority demonstrates, dispositive evidentiary sanctions are a drastic remedy

---

[1] Google made every attempt to address P10's concerns through a meaningful conference of counsel, including by sending P10 detailed meet and confer letters demonstrating that its accusations lacked any factual basis. P10 persisted in bringing the present motion nonetheless. *See* Kassabian Decl. ¶¶ 2-9 and Exs. A-H.

reserved for the most egregious of litigation misconduct, such as spoliation of evidence or willful violation of court orders. *See, e.g., Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 140 (S.D.N.Y. 2009) (awarding evidentiary sanctions for repeated willful permanent deletion of critical relevant evidence and other intentional discovery abuses, where adverse-inference sanctions previously had been imposed yet misconduct continued, and became even more egregious);[2] *see also CFTC v. Noble Metals, Int'l*, 67 F.3d 766, 772-73 (9th Cir. 1995) (evidentiary sanctions awarded for intentional violation of a court order and repeated dilatory tactics); *Combs v. Rockwell Int'l Corp.*, 927 F.2d 486, 488 (9th Cir. 1991) (sanctions awarded for falsifying deposition).[3]

---

[2]    P10's cited authority, *Arista* and *Reilly,* concerned spoliation of evidence and do not apply here. In *Arista*, the sanctioned party was guilty of several intentional acts of spoliation and misconduct and had been previously been sanctioned. 633 F. Supp. 2d at 140. This misconduct included (1) the intentional and permanent deletion of seven hard drives' worth of key data (*id.* at 135-36); (2) the intentional destruction of employee email that was responsive to discovery requests (*id.* at 136); (3) the intentional destruction of user histories that were critical to the disposition of the case (*id.* at 132); and (4) the purposeful engineering of witnesses' unavailability during fact discovery (*id.* at 137-38). Similarly, in *Reilly*, the defendant—after long asserting that the ex-employee plaintiff's deal documents did not exist—claimed to have recently "discovered" the documents, "some seven linear feet" in total, adjacent to plaintiff's old office. *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 260 (2d Cir. 1999). These documents were then produced on the day of the final pre-trial conference, with myriad damaging portions allegedly missing. *Id.* at 260-61.

[3]    *See also Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 94-96 (S.D.N.Y. 2002) (precluding affirmative defense when defendant inexcusably failed to disclose it until one month after close of discovery); *Logan v. Gary Community Sch. Corp.*, 2009 WL 187811, at *1-2 (N.D. Ind. Jan. 23, 2009) (striking affirmative defenses when defendants had "a long history of noncompliance with Court Orders as well as the Federal and Local Rules of Civil Procedure" and when those defenses "relate to the substance of the discovery"); *Ward v. Nat'l Geographic Soc'y,* 2002 WL 27777, at *2 (S.D.N.Y. Jan. 11, 2002) (preclusion of evidence is a "drastic remedy" to be imposed only "in those rare cases where a party's conduct represents flagrant bad (footnote continued)

1    P10's Motion does not raise even a single legitimate discovery dispute, much
2  less prove a violation of any court order.  Every single supposedly missing category
3  of documents P10 references was either (1) produced (like Google's DMCA logs),
4  (2) non-existent (like Board meeting minutes referencing adult content), or (3) never
5  even requested by P10 during discovery, let alone the subject of a discovery order
6  (like third-party DMCA notices and Google's Blogger DMCA logs).

7    Confirming the lack of basis for P10's Motion, P10 ignores the five-factor test
8  governing evidentiary sanctions of this type.  Specifically, in addition to proving a
9  violation of a court order (which P10 cannot do), P10 must show that each of the
10  following five factors weigh in favor of issuing evidentiary sanctions:

11      (1) the public's interest in expeditious resolution of litigation; (2) the
12      court's need to manage its docket; (3) the risk of prejudice to [the party
13      seeking sanctions]; (4) the public policy favoring disposition of cases on
14      their merits; and (5) the availability of less drastic sanctions.
15  *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990) (alteration in original)
16  (followed by *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)).  As
17  *Wanderer* observed, the Ninth Circuit has "found the element of prejudice to be
18  essential, stating that sanctions which interfere with the litigants' claim or defenses
19  *violate due process* when they are imposed 'merely for punishment of an infraction
20  that did not threaten to interfere with the rightful decision of the case.'"  *Id.*
21  (quotation omitted) (emphasis added).  P10 fails to address any of these elements.

22    Nor could P10 meet this heavy burden.  As a preliminary matter, P10's own
23  conduct demonstrates that it cannot even assert, let alone prove, any supposed
24  prejudice flowing from any alleged DMCA-related discovery failures given its

25  _____

26  faith and callous disregard of the Federal Rules of Civil Procedure," and declining to
27  impose such a sanction for party's failure to timely produce a document) (citations
     omitted).
28

1   election to (1) file its own motion for summary judgment on the very same DMCA

2   issues (implicitly conceding that more discovery was unnecessary), and (2) oppose

3   Google's DMCA motions on the merits (rather than raising alleged discovery

4   deficiencies). *See Filiatrault v. Comverse Tech., Inc.*, 275 F.3d 131, 138 (1st Cir.

5   2001) (filing a cross-motion for summary judgment "almost invariably indicates that

6   the moving party was not prejudiced by a lack of discovery."); <u>Fed. R. Civ. P.</u> 56(f).

7       Even were P10 permitted to reverse course now and claim prejudice due to

8   supposedly missing DMCA-related discovery, P10's Motion makes no such showing.

9   P10's primary prejudice argument is that if Google had produced a "spreadsheet-

10  type" DMCA log, P10 would have been able to discover "repeat infringers," as well

11  as "other [unspecified] Google conduct making Google ineligible for safe harbor."

12  Motion at 22. P10's prejudice argument is a non-starter, since Google *did* produce its

13  text-searchable "spreadsheet-style" DMCA log documents, in compliance with the

14  court's order, roughly a year before it filed for summary judgment. Declaration of

15  Rachel Herrick Kassabian ("Kassabian Decl."), filed concurrently herewith, at ¶¶ 16,

16  22 and 27. Indeed, Google attached copies of those DMCA tracking spreadsheets to

17  its DMCA Motions, and P10's opposition briefs refer to them at length—as Google's

18  "DMCA logs," no less. *See* Section I.A, *infra*.

19      P10's related (albeit contradictory) argument that it was prejudiced by

20  Google's production of its DMCA tracking spreadsheets in electronic TIFF format

21  also falls flat. P10 omits the fact that its counsel *expressly agreed* to that format, in

22  advance of Google's production of those documents. Kassabian Decl. ¶ 15, Ex. M.

23  P10 cannot claim prejudice regarding a production format to which it consented.[4]

24

25      [4]  Nor do any of the other *Wanderer* factors favor P10. Google's DMCA Motions
26  are fully-briefed and ripe for ruling on the merits. Granting the sanctions P10 seeks
    would in fact be less expeditious than ruling on the motions themselves, since it will
27
    require the Court to consider extensive additional briefing and argument on all of
28      (footnote continued)

1       Each of P10's specific claims of discovery order violations are addressed—and

2 refuted—below.

**A.    <u>Google Has Produced its "DMCA Logs."</u>**

4       The bulk of P10's arguments rely on a false factual premise—that Google

5 allegedly failed to produce its "DMCA log," in violation of the Court's May 13, 2008

6 Order. In fact, Google did produce its DMCA tracking spreadsheets, and did so by

7 the date specified in that Order. Kassabian Decl. ¶ 16.[5] P10 insists that these

8 documents are not spreadsheets—but they are, as can be seen simply by looking at

9 them.[6] Google filed excerpts of these documents with its DMCA Motions. *See*

10 Poovala Decl. (Dkt. Nos. 433-45) ¶¶ 37-38, 79- 81, 88, 93, and Exs. F, J, GG, HH, II,

---

P10's evidentiary side-shows. P10's alternative proposal to appoint a special master
would only serve to delay the case even further. Factors (1) and (2) thus weigh in
Google's favor. Factor (4) obviously weighs against P10, since its desired sanctions
would resolve the DMCA issue on grounds other than its merits. And P10 has made
no showing that lesser sanctions are not available (Factor 5).

[5] P10 also claims that Google's production of DMCA documents violates the
May 22, 2006 Order. *See* Motion at 7:6-7. Not so. P10 refers to its Request No. 51,
but that Request did *not* require production of a "DMCA log." Rather, it called for
*either* a "DMCA log" *or* "other documents sufficient to identify all entities ... from
whom Google has received a notice regarding an intellectual property violation."
Kassabian Decl. Ex. I. Google went with the latter option. The May 22 Order
memorialized Google's agreement to produce such DMCA documents (*id.*, Ex. J)—
which Google did, by producing third party DMCA notices back in 2006. *Id.* ¶ 12.
Google also later produced its "DMCA log" documents in 2008. *Id.* ¶¶ 16-17.

[6] Google's DMCA tracking spreadsheets were produced at ███████████
████████████████████████████████████████. In addition to
these spreadsheets, Google has produced ████████████ additional responsive
documents which documented Google's processing of DMCA notices. *See*
Kassabian Decl. Ex. N (sample DMCA processing documents in 5/1/08 production).
Google provided P10 with the exact Bates-ranges where all such documents could be
found on June 13, 2008—more than a year before filing its DMCA Motions.
Kassabian Decl., Ex. O (6/3/08 email from A. Roberts to J. Mausner).

01980.51320/3232216.2

1  KK, and LL).  P10 itself even cited and discussed them in its opposition briefs,

2  referring to them as Google's "DMCA logs."  *See, e.g.*, Blogger Opp. at 6:18-26;

3  Search Opp. at 4:12-15.

4      Also contrary to P10's claim, these documents were produced in fully text-

5  searchable electronic TIFF format, consistent with standard modern litigation

6  practice.  Declaration of Jonathan Land, dated December 7, 2009 and filed

7  concurrently herewith ("Land Decl.") ¶ 4.  P10 cannot complain about this format

8  since its counsel *expressly agreed* to TIFF format in advance of Google's production.

9  Kassabian Decl., Ex. M (4/30/08 email from Mausner).[7]

10      P10 further argues that Google violated the May 13, 2008 Order by failing to

11  include certain information in its log documents.  *See* Motion at 3:5-21.  That, too, is

12  incorrect.  That Order required Google to produce its DMCA logs.  Kassabian Decl.,

13  Ex. L2 (5/13/08 Order, Dkt. No. 294) at 5.  Google did so.  *Id.* ¶ 16.  That P10 might

---

21  [7]  P10 accuses Google of improperly redacting portions of its DMCA processing

22  documents "that it finds embarrassing or damning."  Motion at 15.  P10 has no basis

23  for this statement, nor is it true.  The redactions to Google's spreadsheet documents

    were for attorney-client privileged and/or work product doctrine materials.  *See*

24  Kassabian Decl., Exs. BB-DD (meet-and-confer correspondence to P10 explaining

25  redactions).  As for the Blogger DMCA tracking spreadsheet, Google produced this

    document with no redactions, as Google previously explained when P10 first raised

26  this argument in its opposition to Google's DMCA Motions.  *See* Blogger Reply at

27  7:12-14 and n.7.  Nor is a motion for evidentiary sanctions the appropriate vehicle to

    challenge redactions for privilege.

28

01980.51320/3232216.2

have kept a different type of log is irrelevant.[8] *See* Blogger Reply at 6:5-12. Google produced what it had and did not violate the May 13, 2008 Order.[9]

Finally, P10 complains that Google violated the May 13, 2008 Order by failing to produce its Blogger DMCA tracking spreadsheets by the June 16, 2008 production deadline set by that Order. P10 is wrong again. The May 13, 2008 Order did not require the production of *any* Blogger documents because (1) Blogger was not yet part of the case and (2) P10 had not yet served discovery directed to Blogger. *See* Kassabian Decl. ¶¶ 20-22, Ex. Q (7/14/08 Hearing Transcript in which P10 disclosed its intention to serve Blogger-related discovery if its motion to add Blogger claims was granted); 7/16/08 Order (Docket No. 321). P10 did not serve any Blogger-related discovery until September 1, *2009*. Kassabian Decl. ¶ 23. Nonetheless, Google voluntarily produced the Blogger DMCA tracking spreadsheets on August 29, 2008, as a courtesy to P10, in advance of P10's <u>Rule</u> 30(b)(6) deposition of Google regarding DMCA issues. There has been no violation of any discovery order on this issue. *Id.* ¶ 22. *See Precision Seed Co. v. Consol. Grain & Barge Co.*, 2006 WL 1339430, at *4 (S.D. Ohio May 16, 2006) (denying motion for sanctions where defendant "was not obliged to produce" the documents at issue in response to the

---

[8] Contrary to P10's contention, P10 – not Google – provided the definition of what P10 considered to be "DMCA logs" in its discovery requests. Kassabian Decl., Exs. L (4/14/08 Hearing Transcript) & L1 (P10's Opposition to Google's Objections to Magistrate Hillman's Order). That Google's DMCA tracking documents might not look exactly as P10 speculated they would is no basis for sanctions.

[9] P10 also claims that Google's supposed failure to produce its DMCA logs prevented P10 from "discovering" the identity of one alleged "repeat infringer" ████████████████████████. Setting aside the falsity of P10's premise, P10 has never served a single discovery request regarding Google Groups. As such, Google was not obligated to produce any documents related to Google Groups, nor has any discovery order ever issued regarding Google Groups. *See* Kassabian Decl. ¶ 24. P10 has never even sent a DMCA notice regarding Google Groups. Poovala Rebuttal Decl. ¶ 24. This cannot form the basis for a demand for evidentiary sanctions.

1    amended discovery request); *see also Bermudez v. Duenas*, 936 F.2d 1064, 1068 (9th

2    Cir. 1991) (motion to compel was properly denied where documents had not yet been

3    requested).[10]

4    **B.    Google Has Produced Documents Regarding Its Repeat Infringer**

5          **Policies.**

6          P10 next claims that Google violated the May 22, 2006 Order by failing to

7    produce documents ███████████████████ for Blogger or ████████

8    ████ for AdSense.  In fact, Google has complied with that Order by producing non-

9    privileged documents reflecting its repeat infringer policies.  Included amongst these

10   documents are Google's public-facing terms of service setting forth Google's repeat

11   infringer policy, as well as the actual processing documents that reflect Google's

12   implementation of its repeat infringer policies.  *See* Poovala Decl. ¶¶ 5, 16, 26-27, &

13   36-39 and Exs. B, C, F, G (published policies), J, K & II (DMCA tracking

14   spreadsheets); Kassabian Decl. ¶ 26.

15         P10 insists that it did not receive a physical document that specifically states

16   ████████████████████████████  In fact, Google's Blogger tracking

17   spreadsheet does state ████████████████  *See* Poovala Decl., Ex. J.  In

18   any event, this is wholly beside the point and exalts form over substance.  Google

19   scarcely need use the exact words P10 would like in its internal documents, and is not

20   required to create documents in response to document requests.  *See, e.g.,*

21   *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993) ("defendant was not

22   required to create documents to satisfy … discovery requests").  Nor was Google

23   obligated to produce privileged documents referencing these policies.  *See* <u>Fed R.</u>

24

25        [10]  Relatedly, P10 points out that it has sent 95 separate purported DMCA notices
26   to Google in the past six weeks.  Google is processing those notices to the fullest
27   extent possible, given their deficiencies, as P10 itself admits.  *See* Motion at 20.  This
     does not and cannot have any bearing on any discovery order.

28

01980.51320/3232216.2

1 | <u>Civ. P.</u>. 26(b)(1) (permitting "discovery regarding any nonprivileged matter that is
2 | relevant"). Google produced the non-privileged, responsive documents it had,
3 | including ███████████ documents showing its enforcement of its ███
4 | ███ policy. *See, e.g.*, Poovala Decl. ¶ 37 (referencing "████████████
5 | ███ when a blog account has been terminated pursuant to Blogger's ██████
6 | repeat infringer policy") & Ex. J (DMCA tracking spreadsheet showing accounts
7 | terminated ████████████████). Additionally, Google produced all of
8 | these documents in advance of P10's deposition of Google's <u>Rule</u> 30(b)(6) witnesses
9 | regarding DMCA issues, and P10 had the opportunity to ask whatever questions it
10 | wished on these subjects. Kassabian Decl. ¶¶ 16 & 22. P10 cannot use its failure to
11 | do so as a pretext for evidentiary sanctions. No court order has been violated.

12 | **C.** **P10 Never Requested Third-Party DMCA Notices.**

13 | P10 next argues that Google violated the May 22, 2006 Order by failing to
14 | produce certain third-party DMCA notices. P10 is wrong on two counts—P10 never
15 | requested them during discovery (nor does the May 22 Order require their
16 | production), and in any event, Google *has* produced such documents. The relevant
17 | request, Request No. 51, sought *either* Google's DMCA log *or* other documents
18 | sufficient to identify third party DMCA complainants and the URLs complained of.
19 | Google agreed to produce the latter category, and the May 22 Order simply reflects
20 | that agreement. Kassabian Decl., Ex. J. Google produced those documents (third-
21 | party DMCA notices) in the Spring of 2006. *See* Kassabian Decl. ¶ 12. Google also
22 | supplemented that production with additional third-party DMCA notices and other
23 | DMCA processing documents in November 2006 and May 2008. Kassabian Decl.
24 | ¶¶ 12 & 16. Indeed, by May 2008, Google had produced more than ███ pages of
25 | third-party DMCA processing records spanning a more than six-year period. *Id.* ¶ 17.
26 | Further, P10's argument that Request No. 51 (or the Court's subsequent May
27 | 22, 2006 Order) required the production of third-party DMCA notices relating to
28 | Blogger is incorrect. Again, P10 did not add its Blogger claims until July 2008, and

1 did not serve discovery directed to Blogger until September 2009. Regardless,

2 Google voluntarily produced the Blogger DMCA tracking spreadsheets in August

3 2008 (just one month after P10 added its Blogger claims), which satisfies Request

4 No. 51.[11] There has been no violation of any discovery order on this issue. *Precision*

5 *Seed Co.*, 2006 WL 1339430, at *4.[12]

**D.    Google Has Produced Notices Of Termination Of Repeat Infringers.**

7      P10 argues that Google has violated the May 22, 2006 Order by failing to

8 produce DMCA termination notices. This is incorrect. Google has indeed produced

9 termination emails. *See* Kassabian Decl. ¶ 25 and Ex. S (sample termination notices).

10 Additionally, Google's DMCA tracking spreadsheets reflect DMCA terminations.

11 *See, e.g.*, Poovala Decl. ¶ 37 and Ex. J (Blogger spreadsheet ▮▮▮▮); *id.* at ¶ 38

12 and Ex. LL (AdSense spreadsheet ▮▮▮▮). This production complies with

13 the May 22, 2006 Order.[13]

**E.    Google Did Not Violate The May 22, 2006 Order With Respect to**

**Board Meeting Minutes.**

16      P10 argues that Google "abused" the discovery process by failing to produce

17 documents in response to the Court's Order calling for "minutes of board of director

18 and other executive committee meetings that refer to, relate to or mention copyright

---

20 [11]  P10 also claims that Google has not produced DMCA notices it received from

21 the MPAA, RIAA, Microsoft and Playboy. Motion at 3-4. The notices P10 refers to

22 concern Blogger, and as discussed above, P10 never requested third-party DMCA
notices for Blogger, nor has the Court ordered their production.

23 [12]  P10 also claims that Google produced duplicate copies of some DMCA notices

24 from 2004 and 2005 in May 2008 after it had already produced those notices in 2006.
Zada Decl. ¶ 5. Google's re-production of these notices in no way violated any

25 discovery order, let alone even arguably constitutes a basis for evidentiary sanctions.

26 [13]  Moreover, to the extent P10 refers to "notices of termination" regarding
Blogger, P10 has never served a document request asking for such documents, nor

27 did the Court's May 22, 2006 Order require such a production, since Blogger was not
at issue until July 2008. Kassabian Decl. ¶ 23; 7/16/08 Order (Dkt. No. 321).

28

1  infringement, misappropriation of rights, or trademark infringement in connection
2  with adult content ...." Motion at 19. Not so. Google searched for responsive
3  documents, and none were found. Kassabian Decl. ¶ 30. Indeed, Google specifically
4  informed P10 of this fact in June 2008—over a year ago. *Id.* ¶ 30. P10's accusation
5  that Google intentionally misled the Court on this issue is baseless and false.

6  **F.    Google Did Not Violate The May 13, 2008 Order With Respect to**
7  **Reports Pertaining To Certain Custodians.**

8      P10 takes issue with Google's responses to its Request Nos. 128-31 and 194-
9  95, claiming that Google produced no documents, so it must have violated the
10  Court's May 13, 2008 Order. This is false. Google undertook a collection, review,
11  and production process that took several weeks, and produced over ▮▮▮▮ pages of
12  responsive documents. Kassabian Decl. ¶ 31 and Exs. H (11/20/09 meet-and-confer
13  letter) and V (example of such documents). No discovery order has been violated
14  here.

15  **G.    There Is No Discovery Order Requiring The Production of**
16  **Communications Between Google And Third Party DMCA**
17  **Complainants And Infringers.**

18      P10 contends that Google has not produced emails from Google to all
19  copyright holders and all alleged infringers related to third-party DMCA notices.
20  Motion at 18-19. P10 first requested such communications in its Eleventh Set of
21  Document Requests served on October 21, 2009—just six weeks ago. P10 has never
22  met and conferred on this issue, nor filed a motion to compel, nor obtained a
23  discovery order. *See* Kassabian Decl., Ex. P (Excerpts from P10's 11th Set of
24  Document Requests). No discovery order has been violated here.

25      In sum, P10 has presented no factual or legal basis for evidentiary sanctions.
26  Its Motion should be rejected.

27

28

01980.51320/3232216.2

GOOGLE'S CORRECTED OPPOSITION TO PERFECT 10'S MOTION
FOR EVIDENTIARY AND OTHER SANCTIONS

## II. P10'S MOTION, FILED WITHOUT LEAVE OF COURT, VIOLATES MULTIPLE COURT ORDERS AND THE LOCAL RULES.

### A. P10's Motion Is An Improper Sur-reply.

P10's motion for evidentiary sanctions is, in fact, a poorly disguised and improper sur-reply to Google's DMCA Motions. P10 had ample time to prepare its opposition papers, and has no basis to file such a sur-reply, especially without the Court's leave. At P10's request, Google stipulated to give P10 nearly *six weeks* to oppose its DMCA Motions (Dkt. Nos. 465 and 470). P10 had the opportunity to make whatever arguments it wanted, and it did, submitting 75 pages of briefing, 11 declarations and several hundred pages of exhibits. Briefing on those Motions is closed. Yet P10 continues to file more and more argument and purported "evidence"—first, a barrage of purported "Evidentiary Objections" and "Responses to Evidentiary Objections" (filed October 12, 2009), and now a purported "Motion for Evidentiary and Other Sanctions." This latest filing is in contravention of the Local Rules and the Court's Scheduling and Case Management Order. It should be rejected on this basis as well.

Local Rule 7-10 mandates that "[a]bsent prior written order of the Court, the opposing party shall not file a response to the reply" in support of a motion. Paragraph III.C.5 of this Court's Scheduling and Case Management Order provides that "[t]he non-moving party may not file a sur-reply [regarding a summary judgment motion] unless the Court first grants leave to do so." Courts routinely strike or refuse to consider documents submitted in violation of these rules. *See, e.g., Spalding Labs., Inc. v. Arizona Biological Control, Inc.*, 2008 WL 2227501, at *1 n.2 (C.D. Cal. May 29, 2008) ("The Court strikes and does not consider Spalding's 14-page 'sur-opposition' to ARBICO's reply brief.") (citing Local Rule 7-10); *DISC Intellectual Properties LLC v. Delman*, 2007 WL 4973849, at *1 n.1 (C.D. Cal. Sept. 17, 2007) (rejecting "Defendants ... attempt[] to file a Response to Plaintiffs' Reply in violation of Local Rule 7-10.").

01980.51320/3232216.2

1  No matter its title, P10's Motion is a blatant attempt to re-argue the merits of

2  Google's DMCA Motions. Though P10 claims to be raising "new" arguments

3  prompted by "recently discovered" evidence, the Motion simply re-argues several

4  issues already covered in P10's summary judgment opposition briefs, including:

- The contents and sufficiency of Google's "DMCA log" (Search Opp. at 22-24; Search Reply at n.9);

- Google's implementation of its repeat infringer policy (Search Opp. at 4-5; Search Reply at 2-6);

- Google's alleged failure to track the "identities" of alleged infringers (Blogger Opp. at 6; Blogger Reply at 9);

- Claims regarding Google Groups (Blogger Opp. at 17-18; Blogger Reply at 14-15 and n.10);

- Purported redactions to Google's Blogger spreadsheet (Blogger Opp. at 20-23; Blogger Reply at 7 and n.7); and

- Google's tracking of alleged repeat infringers for Blogger and/or AdSense (Blogger Opp. at 6 and 9-10; Search Opp. at 4; Blogger Reply at 9).

17  Plainly, there was no "recently-discovered evidence" to warrant filing a sur-reply –

18  much less to do so without first obtaining the required leave of court. P10's Motion

19  should be stricken and/or disregarded under Local Rule 7-10 and the Court's

20  Scheduling and Case Management Order. *Spalding Labs.*, 2008 WL 2227501, at *1

21  n.2; *DISC Intellectual Properties*, 2007 WL 4973849, at *1 n.1.[14]

22

---

23  [14]  P10 has been admonished not to file improper sur-replies before. By its
24  October 6, 2008 Minute Order regarding A9.com, Inc.'s summary judgment motion
25  in the consolidated *Amazon* case, the Court instructed the parties to file narrow
   supplemental briefs limited to specific identified issues. Dkt. No. 170. P10's filing
26  far exceeded the scope of that Order, and included a six-page sur-reply and three
27  lengthy supporting declarations. *See* Dkt. Nos. 194-207. Defendant A9.com moved
   to strike the sur-reply (Dkt. No. 201), and the Court granted the motion (Dkt. No.
28  (footnote continued)

## B. P10's Motion Is An Improper Attempt To Revive Its Stayed Cross-Motion For Summary Judgment Regarding DMCA Safe Harbor.

P10's Motion also violates another order—this Court's July 8, 2009 Order. Specifically, just a few days after Google filed its DMCA Motions, P10 filed (in contravention of this Court's Scheduling and Case Management Order)[15] its own cross-motion seeking summary judgment on the same issue of DMCA safe harbor (Dkt. Nos. 436-49, July 5, 2009). *See* Kassabian Decl., Ex. Y (P10's Motion for Summary Judgment at 5:27-28 (requesting summary judgment that "Google cannot rely upon any of the safe harbor defenses for service providers set forth in Section 512 of the DMCA ....")). On July 8, 2009, this Court vacated the hearing on P10's cross-motion, stayed all further briefing thereon, and set a briefing schedule for Google's DMCA Motions. *Id.* Ex. AA (7/8/09 Order (Dkt. No. 453)).

Though cast as a sanctions motion, P10's Motion argues the purported merits of DMCA safe harbor and requests the very same relief it sought by way of its July 5 summary judgment cross-motion – "[t]hat Google be found be ineligible for the safe harbor provisions of the DMCA set forth in 17 U.S.C. §512." Motion at 23:9-12. P10's Motion is a thinly-disguised attempt to resuscitate its original (stayed) cross-motion, in contravention of the July 8 Order, and should be rejected on this additional basis.[16]

---

220). Despite that Order, P10 later filed a purported "cross-motion" for summary judgment against A9.com (Dkt. No. 275), forcing A9.com to move to strike once again. Dkt. Nos. 276-77 and 279. The Court granted A9.com's motion, noting that "Perfect 10's cross-motion was neither necessary nor authorized," and ruling that "A9 need not and should not file a response to the cross-motion." Dkt. No. 284.

[15] *See* Scheduling and Case Management Order, § III.C.5 ("The parties shall avoid filing cross-motions for summary judgment on identical issues of law, such that the papers would be unnecessarily cumulative.").

[16] This Court has repeatedly admonished P10 regarding improper cross-motions. In the *Amazon* case, P10 has tried three separate times to file improper cross-motions, (footnote continued)

## III. TO THE EXTENT P10'S MOTION IS CONSTRUED AS A "RULE 56(F) MOTION," IT IS UNTIMELY AND MERITLESS.

P10 belatedly argues that it could not adequately oppose Google's DMCA Motions because it needs more discovery. To the extent the Court construes this argument as one brought under Rule 56(f), P10 has waived it by repeatedly representing that the DMCA safe harbor issue is ripe for summary adjudication—including by filing its own summary judgment motion on that very issue, and by opposing Google's DMCA motions on the merits.[17] *See Filiatrault*, 275 F.3d at 138 (filing a cross-motion "almost invariably indicates that the moving party was not prejudiced by a lack of discovery."); *Rodriguez-Cuervos v. Wal-Mart Stores, Inc.*, 181 F.3d 15, 23 (1st Cir. 1999) ("Ordinarily, a party may not attempt to meet a summary judgment challenge head-on but fall back on Rule 56(f) if its first effort is unsuccessful."). Waiver aside, P10's argument is both untimely and meritless.

### A. P10's Claims For Additional Discovery Are Untimely.

P10 urges that "newly discovered" discovery violations warrant its request for additional discovery before the Court rules on the pending DMCA Motions. In fact, none of the issues P10 raises is "newly discovered." For example, P10 makes a series of arguments regarding Google's "DMCA log." But the document request for calling for those documents (Request No. 196) was served in 2007; the Court Order requiring production of those documents issued May 13, 2008; Google produced responsive

---

requiring three separate motions to strike by the Amazon Defendants—all of which were granted. *See* Kassabian Decl., Exs. EE, FF, and GG (Orders dated 11/4/08, 1/9/09, and 7/8/09 (Docket Nos. 220, 284, and 320)). In its January 9, 2009 Order, the Court cautioned P10 that its "cross-motion was neither necessary nor authorized." In its July 8, 2009 Order, the Court explicitly warned that "[i]f Mr. Mausner again files such cross-motions in either of the *Perfect 10* cases, the Court may impose sanctions." *Id.*, Ex. GG. P10 repeatedly has defied these warnings.

[17] *See also* Kassabian Decl., Ex. X (4/23/09 Letter from Jeffrey Mausner to Google); *id.*, Ex. Z (Transcript of 9/4/09 hearing before Judge Hillman, at 15:2-9).

GOOGLE'S CORRECTED OPPOSITION TO PERFECT 10'S MOTION
FOR EVIDENTIARY AND OTHER SANCTIONS

1  documents by the June 16, 2008 deadline and even provided P10 with the exact

2  control numbers where those documents could be located in June 2008 – 18 months

3  ago.  *See* Kassabian Decl., Ex. O (6/13/08 Email from A. Roberts to J. Mausner); *see*

4  *also id.* ¶¶ 10-17 (describing Google's production of DMCA spreadsheets and

5  additional DMCA processing documents).  Similarly, P10 raises a number of

6  arguments about Blogger-related documents (including Google's DMCA tracking

7  spreadsheets for Blogger), but those documents were produced in August 2008 – 16

8  months ago.  Kassabian Decl. ¶ 22.  If it believed any of this discovery was deficient,

9  P10 has no excuse for failing to timely make a Rule 56(f) motion at the time its

10  opposition to Google's DMCA Motions were due.[18]

11      **B.    P10 Discovery Request Does Not Comply With Rule 56(f).**

12          P10's claimed need for additional discovery also is substantively deficient.  A

13  successful Rule 56 (f) motion must include "(a) a timely application which (b)

14  specifically identifies [by affidavit] (c) relevant information, (d) where there is some

15  basis for believing that the information sought actually exists."  *Employers Teamsters*

16  *Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th

17  Cir. 2004) (citation omitted).  The movant must also "proffer sufficient facts to show

18  that the evidence sought … would prevent summary judgment."  *Chance v. Pac-Tel*

19  *Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).  "Failure to comply with the

20  requirements of Rule 56(f) is a proper ground for denying discovery and proceeding

21

22

23  [18]  Setting aside the fact that P10 has not even properly (let alone timely) invoked
    Rule 56(f), that rule cannot be used to compensate for a party's failure to diligently

24  pursue discovery.  *E.g.*, *Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir.

25  1989) ("A movant cannot complain if it fails diligently to pursue discovery before
    summary judgment"); *Cal. Union Ins. Co. v. Am. Diversified Sav. Bank*, 914 F.2d

26  1271, 1278 (9th Cir. 1990).  Rule 56(f) cannot save P10 from its failure to propound

27  document requests directed to Blogger until more than fourteen months after P10
    amended its complaint to add Blogger-related claims.  Kassabian Dec. ¶ 23.

28

GOOGLE'S CORRECTED OPPOSITION TO PERFECT 10'S MOTION
FOR EVIDENTIARY AND OTHER SANCTIONS

1 to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439,

2 1443 (9th Cir. 1986).

3       P10 fails to address, let alone satisfy, these requirements. Its papers are

4 woefully untimely. The Mausner declaration merely authenticates documents, while

5 the Zada and Chou declarations fail to provide (a) any basis for believing that

6 allegedly "unproduced" evidence exists, (b) an explanation as to why the evidence is

7 relevant to Google's DMCA motions, or (c) how it would defeat those motions. The

8 record on DMCA issues is extensive and more than sufficient to permit the Court to

9 decide them. P10's Motion seeks to cloud that clear reality—and delay a ruling on

10 DMCA safe harbor—by suggesting that this record is somehow incomplete. But P10

11 never raised any issue regarding this record at the time of Google's document

12 productions, Google's depositions, or even in its oppositions to Google's DMCA

13 Motions. Even this untimely Motion fails to raise any genuine issues of fact. Rule

14 56(f) cannot save P10.

15 **IV.    EVEN IF THE COURT CONSIDERS P10'S IMPROPERLY-RAISED**

16       **SUBSTANTIVE ARGUMENTS, NONE HAVE MERIT.**

17       P10 makes a bevy of substantive accusations in hopes of creating the

18 appearance of some factual dispute that is somehow relevant to Google's DMCA

19 Motions. To the extent the Court elects to consider P10's untimely and improper

20 arguments going to the substance of Google's DMCA Motions and the evidence

21 presented thereon, however, none of those arguments passes muster. P10 failed to

22 demonstrate any disputed issue of material fact in its opposition papers, and it fails to

23 do so in this Motion as well.

24       **A.    Google's AdSense DMCA Tracking Spreadsheets Are Not Deficient.**

25       P10 makes a variety of claims regarding the contents of Google's AdSense

26 DMCA tracking spreadsheets, none of which is correct. For instance, P10 claims that

27 the AdSense spreadsheets date back only to ███████. This is false—Google

28

1 | produced AdSense tracking spreadsheets dating back to ██████. Kassabian
2 | Decl., Ex. T (AdSense spreadsheet at GGL 044911-044928).

3 |     Next, P10 rehashes its argument from its Oppositions to Google's DMCA
4 | Motions that the AdSense DMCA tracking spreadsheets purportedly should contain
5 | thousands of Blogger URLs but do not. P10 is wrong, and Google has already
6 | explained why it is unnecessary to "double-process" a webpage that has been taken
7 | down pursuant to Google's Blogger DMCA policy. *See* Blogger Reply at n.8;
8 | Poovala Decl. ¶¶ 37, 93.

9 |     Further, P10 argues the AdSense spreadsheets do not contain certain URLs
10 | identified by P10. P10 again is incorrect. The 2006-2008 spreadsheet Google filed
11 | with its DMCA motions in fact does contain URLs identified by P10. Poovala Decl.
12 | ¶ 94, and Ex. LL at 1698-1702. Additionally, the URLs allegedly identified in P10's
13 | 2004-2005 notices were processed for AdSense separately from other third-party
14 | notices██████████████. *Id.* ¶ 94 (explaining
15 | processing), and Ex. LL at 1683-1697; *see also* Mausner Decl.(Docket No. 482), Ex.
16 | K (Botelho Decl. ISO Google's Opp. to Motion for Preliminary Injunction).

17 |     P10 asserts Google has received multiple notices regarding rapidshare.com that
18 | are not tracked on the AdSense spreadsheet. This is false. The notices P10
19 | references do not allege AdSense infringement—nor even that Google is offering
20 | Web Search links to the allegedly infringing rapidshare.com pages. Instead, these
21 | notices complain of individual Blogger posts that link to rapidshare.com pages where
22 | content can be downloaded (which content Google does not index). *See* Search
23 | Motion at 9; Haahr Decl. ¶ 14-15. Accordingly, they are tracked in the Blogger
24 | DMCA tracking spreadsheets. *See* Poovala Decl. ¶¶ 26-37, 88-89, & 93.

25 |     Finally, P10 claims that the AdSense spreadsheets do not contain ██████
26 | ██████the identities of the infringers. This is irrelevant. There is no
27 | requirement in the DMCA to track "identities" as P10 uses the term (*see* Blogger
28 | Reply at 9), and ████████████████████ it is unclear

01980.51320/3232216.2

-18-

what harm P10 is claiming. *See* Dkt. No. 635. Again, Google is not required to create documents in response to discovery requests—it produced the responsive documents it had, as they are created and kept.[19]

**B.** **Google's Blogger DMCA Tracking Spreadsheets Are Not Deficient.**

P10 next claims that Blogger URLs in its notices are not reflected on the Blogger DMCA tracking spreadsheets. This is false. Blogger removals corresponding to P10's claimed DMCA notices are indeed tracked on Google's Blogger spreadsheets. *See* Poovala Decl. ¶ 93 and Ex. KK at 1510-1681. P10 further incorrectly argues that Google somehow "conceals" the hosting of various websites. While Google allows Blogger users to customize their URLs if they choose, all blogs hosted by Google are subject to the same Blogger DMCA policies. Kassabian Decl. ¶ 28; Poovala Dec. ¶¶ 26 & 27, and Exs. F & G. Indeed, this is demonstrated by Dr. Zada's own declaration ████████████████████
████████████████████████████████████████████████
██████████████. Zada Decl. ¶ 31. The fact that Google hosts these pages is publicly available information (Kassabian Decl. Ex. U), and Dr. Zada's own declaration confirms that Google has tracked DMCA complaints and removed infringing content from those pages pursuant to Blogger's repeat infringer policies. Zada Decl. ¶ 31.

**C.** **P10's Allegations Of Inconsistencies Between Google's Tracking Spreadsheets And Other DMCA Documents Are Incorrect.**

---

[19] P10 also claims that Google violated its repeat infringer policy for AdSense account holders in notices it processed "by continuing to place its ads next to the same infringing Perfect 10 images on the same infringing websites." Motion at 20. This is incorrect and has been previously addressed. ████████████████
████████████████████████████████████████████████████ *See* Search Motion at 7 and 16; Poovala Decl. ¶¶ 37-38 and 94.

01980.51320/3232216.2

P10 contends that there are "inconsistencies" between Google's spreadsheet documents and other documents related to Google's DMCA processing records. This is incorrect and irrelevant. Specifically, P10 claims . Motion at 18. But as Google's DMCA Motions make clear, . *See* Poovala Decl. ¶¶ 14, 26-33, 37& 77; Haahr Decl. ¶¶ 4-14. There is no discrepancy here.

## V. P10'S REQUEST FOR A SPECIAL MASTER IS UNWARRANTED AND UNNECESSARY.

P10's request for the appointment of a special master misses the mark. As noted above, P10's Motion raises no legitimate discovery issues, so the appointment of a special master to investigate them is unnecessary. But even assuming *arguendo* that there was any merit to any of P10's allegations, the appointment of a special master under Fed. R. Civ. P. 53 is not warranted here. In pretrial matters, "special masters are to be used sparingly and only where the use of the court's time is not justified." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560 (N.D. Cal. 1987) (quoting *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259, reh'g denied, 352 U.S. 1019 (1957)). Because "[t]he evils of delay and added expense are both inherent in references," it has long been the case that the appointment of a special master is disfavored. *In re Irving-Austin Bldg. Corp.*, 100 F.2d 574, 577 (7th Cir. 1938). Indeed, the plain text of Rule 53 indicates that the appointment of a special master in pretrial matters is limited only to those cases "that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district." Fed. R. Civ. P. 53(a)(1)(C).

01980.51320/3232216.2

1   Here, P10 does not request wholesale reference of discovery matters to a
2   special master (as the Court previously considered in late 2008); rather, P10 seeks
3   appointment of a special master solely to investigate its handful of purported DMCA
4   discovery disputes, and to rule on Google's DMCA Motions (already on file and
5   under submission with this Court). P10 does not even attempt to explain why this
6   appointment is necessary, nor why this Court is not competent to adjudicate P10's
7   instant Motion and Google's pending DMCA Motions. P10's impatience and
8   intolerance for how this Court properly chooses to manage its heavy docket is not a
9   valid ground for seeking a special master. P10's request should be denied.

10

11  **VI.   PERFECT 10 SHOULD BE SANCTIONED.**

12       P10's Motion is frivolous and improper. P10 has been repeatedly admonished
13  against filing such supplemental briefing, and it has been explicitly warned that it
14  could be sanctioned for doing so. Yet P10 went forward with this Motion anyway, in
15  violation of Local Rules and Court Orders and based solely on demonstrable
16  falsehoods, mischaracterizations and baseless speculation. Monetary sanctions are
17  properly imposed for "willfulness, bad faith, or fault" of a party or its counsel,
18  including for filing frivolous motions. *See, e.g., Young v. Polo Retail, LLC*, 2007 WL
19  951821, at *9-10 (N.D. Cal. March 28, 2007) (awarding monetary sanctions for filing
20  of a frivolous motion); *Continental Air Lines, Inc. v. Group Systems Intern. Far East,*
21  *Ltd.*, 109 F.R.D. 594, 600 (C.D. Cal. 1986) (same); *United States v. Kahaluu Constr.*
22  *Co., Inc.*, 857 F.2d 600, 603 (9th Cir. 1988); *B.K.B. v. Maui Police Dep't*, 276 F.3d
23  1091, 1108 (9th Cir. 2002) ("an attorney's reckless misstatements of law and fact,
24  when coupled with an improper purpose, …are sanctionable under a court's inherent
25  power.") (citation omitted). *See also* Notes 14 and 16, *supra* (referencing the Court's
26  prior admonishments to P10 regarding such improper motions). P10 should be
27  sanctioned in the amount of $5,000, payable to the Court, and further should be

28

admonished that any future violations of Orders and <u>Local Rules</u> will subject it to issue preclusion sanctions.

### **Conclusion**

For the foregoing reasons, Google requests that P10's Motion be denied and/or stricken in its entirety, and that P10 be sanctioned in the amount of $5,000.

DATED: December 9, 2009   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP


By *Rachel Herrick Kassabian*
    Rachel Herrick Kassabian
    Attorneys for Defendant GOOGLE INC.