1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Michael T. Zeller (Bar No. 196417)
2     michaelzeller@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
4  Facsimile: (213) 443-3100
     Charles K. Verhoeven (Bar No. 170151)
5     charlesverhoeven@quinnemanuel.com
   50 California Street, 22nd Floor
6  San Francisco, California 94111
     Rachel Herrick Kassabian (Bar No. 191060)
7     rachelkassabian@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
8  Redwood Shores, California 94065

9  Attorneys for Defendant GOOGLE INC.

10

11            UNITED STATES DISTRICT COURT

12            CENTRAL DISTRICT OF CALIFORNIA

| 13 PERFECT 10, INC., a California corporation, | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)] |
|---|---|
| 14 | |
| 15     *Plaintiff,* | **DISCOVERY MATTER** |
| 16     vs. | **JOINT STIPULATION ON GOOGLE INC.'S MOTION FOR A** |
| 17 GOOGLE INC., a corporation; and DOES 1 through 100, inclusive, | **DOCUMENT PRESERVATION ORDER TO PREVENT FURTHER SPOLIATION OF EVIDENCE BY** |
| 18     *Defendants.* | **PERFECT 10, INC.** |
| 19 | |
| AND COUNTERCLAIM | Hon. Stephen J. Hillman |
| 20 | |
| 21 PERFECT 10, INC., a California corporation, | Date: January 11, 2010 Time: 2:00 p.m. Crtrm.: 550 |
| 22     *Plaintiff,* | |
| 23     vs. | Discovery Cut-off: None Set Pretrial Conference Date: None Set Trial Date: None Set |
| 24 AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and | |
| 25 DOES 1 through 100, inclusive, | **PUBLIC REDACTED** |
| 26     *Defendants.* | |

27

28

01980.51320/3240295.1

JOINT STIPULATION ON GOOGLE INC.'S MOTION FOR A DOCUMENT PRESERVATION ORDER

# I.   PRELIMINARY STATEMENTS

## A.   Google's Preliminary Statement

Google Inc. ("Google") brings this motion to address Perfect 10, Inc.'s ("P10") apparent destruction of relevant evidence, and to obtain a court order prohibiting any further spoliation. ████████████████████████ ████████████████████████ Google learned that P10 has failed to institute even the most basic of document retention procedures, and worse, has been automatically deleting employee emails on an ongoing basis. P10's email deletion policy likely has resulted in the loss of a significant number of documents relevant to Google's defenses and counterclaims. ████████████████████████ ███████████████████████████████████████████ ████████████████████████████████████████████████ ██████ Though Google specifically requested production of such documents during discovery, P10 has produced only a handful of emails from Ms. Augustine's account. Further, through third party discovery Google has obtained important emails sent or received by Ms. Augustine which were not produced by P10. These facts point to the inescapable conclusion that additional relevant emails to or from Ms. Augustine existed at one time, but have been destroyed.

During the meet and confer process, P10 refused to respond to Google's requests for information regarding the scope and extent of P10's document destruction activities, so it may be that ██████ P10's employees' work computers (including Dr. Zada's computer) were set to automatically delete emails ██████. P10 also has refused to provide Google with assurances that it had or would change the auto-delete settings on its employees' computers to prevent any further destruction of documents.

In these circumstances, a document preservation order is both necessary and appropriate. Accordingly, Google asks the Court for an order (1) requiring P10 to identify the scope, duration and extent of its email deletion activities, and any other

01980.51320/3240295.1

document destruction activities it may have undertaken, and (2) instructing P10 to immediately take all steps necessary to preserve all documents relevant to this litigation, including modifying its computer settings for all P10 employees and independent contractors.[1]

### B. P10's Preliminary Statement

[*See* Declaration of Rachel Herrick Kassabian Regarding Perfect 10, Inc.'s Non-Cooperation Concerning Google Inc.'s Motion for a Document Preservation Order to Prevent Further Spoliation of Evidence by Perfect 10, Inc. (Submitted Pursuant to Local Rule 37-2.4)]

## II. GOOGLE'S POSITION

### A. Factual Background

Google recently discovered that in the five-year history of this action, P10 apparently has never instructed its employees to preserve documents relevant to this litigation, and worse, has been deleting relevant emails and other documents, on an ongoing basis, for an unknown period of time. ███████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████

████████████████████████████

███████████

████████████████████████

---

[1]  Sanctions likely will be necessary to remedy Perfect 10's spoliation of evidence. Google brings this motion without prejudice to Google's right to seek additional appropriate sanctions when the full extent of Perfect 10's spoliation has been discovered.



1

2

3 ²

4 * * *

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

² Declaration of Rachel Herrick Kassabian ("Kassabian Decl."), Ex. H (Augustine Deposition Transcript at 73:21-74:3).



1

2

3

4

5 [3]

6

7

8

9

10 Ms. Augustine later submitted an "errata" document to the transcript of

11 her deposition

12 . See id., Ex. G (Signature and Errata to

13 Wendy Augustine Deposition Transcript).

14

15

16

17

18

19

20

21 . Kassabian Decl., Ex. I (Chou Deposition

22 Transcript at 41:23-45:5).

23

24

25

26

27 [3] Kassabian Decl., Ex. H (Augustine Deposition Transcript at 193:5-194:15).

28

24 Kassabian Decl., Ex. I (Chou Deposition Transcript at 41:23-45:5).

25      The full extent of the evidence destruction resulting from P10's apparent

26 failure to implement any kind of a litigation hold prior to or during this action

27 remains unknown, but the loss of relevant documents critical to Google's defenses

28 and counterclaims appears to be significant, because P10 has produced very few

01980.51320/3240295.1

company emails in response to Google's document requests. For instance, while Ms. Augustine has been employed by P10 for over seven years (and during the entire period of this litigation), Google's review of P10's various productions has turned up a total of only approximately 71 emails sent or received by Ms. Augustine.[4] Of those 71 emails, 54 are ███████████████████████ ████. Kassabian Decl. ¶ 17. Thus, P10 has produced just 17 other email communications to or from Ms. Augustine, for the entire seven-year period of her employment at P10—which equates to less than 2.5 emails per year of her employment. Id.

This cannot be the totality of Ms. Augustine's relevant emails. At her deposition, Ms. Augustine testified that ████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ ████████████████████████ Yet P10 produced just 15 emails between Ms. Augustine and other P10 employees, and of those, 11 emails were copied to third parties. Id., Ex. N. Other than those 11 emails to third parties (which were copied to other P10 employees as well), P10 produced not a single email between Ms. Augustine's work email account and *any* third parties ████████████████████████████

---

[4] In total, it appears that Perfect 10 has produced approximately 1000 emails sent or received by its employees; however, approximately 680 of those emails are ██████████████████████████████████, and approximately 100 more are Norman Zada's DMCA-related communications with Google employees. Kassabian Decl. ¶ 14. This leaves just 220 P10 employee emails produced to date, despite the fact that the time period in question spans more than ten years, during which P10 has employed well over a dozen employees.

1 ███████████████████████████████████████████████████

2 ████. Id., Ex. H (Augustine Deposition Transcript, at 57:23-58:5, 60:6-8, 61:17-

3 19, 103:16-104:5, 123:15-124:12, 255:7-256:21). Nor did P10 produce even a

4 single email between Ms. Chou and Ms. Augustine, despite the fact that they have

5 worked together at P10 for five years████████████████████████████████

6 ████████████████████. Id. ¶ 14 & Ex. I (Chou Deposition Transcript at 18:12-

7 19:1██████████████████████). In fact, P10 hasn't produced a single

8 email between Ms. Chou and *any* other P10 employee. Id. ¶ 14. Plainly, relevant

9 emails were destroyed (or otherwise not produced).

10 Setting aside the inferences to be drawn from P10's paltry email production,

11 Google's document subpoenas to third parties have confirmed the deficiencies in

12 P10's production, by uncovering key emails and other documents sent to or received

13 by P10 employees that P10 has failed to produce. Kassabian Decl. ¶¶ 18-20 and

14 Exs. O (documents produced by Online Creations Inc.), P (documents produced by

15 Nadine Schoenweitz A/K/A Nataskia Maren) & Q (documents produced by Picscout

16 Inc.). These documents concern, among other topics, ████████████████████

17 ████████████████████████████████████████████████████

18 ████████████████████████████████████████████████████

19 ████████████████████████████████████████████████████

20 ████████ Though all of these documents were sent or received by P10 during the

21 pendency of this litigation, P10 produced none of them. Id.

22 After learning of P10's document destruction activities ████████████████,

23 Google commenced meet and confer, asking P10 to "immediately take whatever

24 steps are necessary to modify the settings on ████████████████████████

25 ██████████████ all ████ Perfect 10 computers to ensure that no ████████

26 destruction of potentially relevant evidence occurs." Kassabian Decl., Ex. A. P10

27 failed to substantively respond to Google's request. Id.,¶ 4, Ex. B. Google further

28

1  asked P10 to disclose the scope and extent of P10's document destruction,
2  including:

3  • How the settings on ▮▮▮▮▮▮▮ Perfect 10 email account were established,
4    by whom, and when;

5  • Whether emails on ▮▮▮▮▮▮▮ Perfect 10 email account have been deleted,
6    and if so, how many and when;

7  • The location of any "backup" files for the deleted ▮▮▮▮ emails, including on
8    ▮▮▮▮▮▮▮▮▮▮▮ Perfect 10 computers or servers, or at an off-site
9    location maintained by any Perfect 10 service provider or vendor;

10 • Whether Perfect 10 gave any document preservation instruction to any Perfect 10
11   employees, contractors, or other personnel regarding this lawsuit, and if so,
12   when; and

13 • Whether the email accounts of any Perfect 10 employees, contractors, or other
14   personnel ▮▮▮▮▮▮▮▮ have ever been set to automatically delete
15   emails (and if so, who, when and after how long).

16 Kassabian Decl., Exs. A & C.  To date, P10 has not answered any of these
17 questions.  Id. ¶ 10, Exs. D, E, & F.  Accordingly, Google now seeks the Court's
18 assistance in ordering P10 to disclose the scope, duration and extent of P10's email
19 deletion activities (and any other document destruction activities), and to
20 immediately take all steps necessary to preserve all documents relevant to this
21 litigation, including modifying its computer settings for all P10 employees.

22     **B.     Legal Standard**

23     Litigants have an affirmative obligation to preserve relevant documents in
24 anticipation of—and certainly during—litigation.  See, e.g., A. Farber and Partners,
25 Inc. v. Garber, 234 F.R.D. 186, 193 (C.D. Cal. 2006) ("There is no doubt that a
26 litigant has a duty to preserve evidence it knows or should know is relevant to
27 imminent litigation ….");  Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,
28 593 F. Supp. 1443, 1455 (C.D. Cal. 1984) ("While a litigant is under no duty to keep

1  or retain every document in its possession once a complaint is filed, it is under a
2  duty to preserve what it knows, or reasonably should know, is relevant in the action,
3  is reasonably calculated to lead to the discovery of admissible evidence, is
4  reasonably likely to be requested during discovery, and/or is the subject of a pending
5  discovery request."); John B. v. Goetz, 531 F.3d 448, 459 (6th Cir. 2008) ("As a
6  general matter, it is beyond question that a party to civil litigation has a duty to
7  preserve relevant information, including ESI [electronically stored information],
8  when that party 'has notice that the evidence is relevant to litigation or ... should
9  have known that the evidence may be relevant to future litigation.'" (citing Fujitsu
10  Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d Cir. 2001) and Zubulake v. UBS
11  Warburg LLC, 220 F.R.D. 212, 216-18 (S.D.N.Y. 2003)). This obligation attaches
12  "[a]s soon as a potential claim is identified" and it requires litigants "to suspend any
13  existing policies related to deleting or destroying files." In re Napster, Inc.
14  Copyright Litigation, 462 F. Supp.2d 1060, 1067-1070 (N.D. Cal. 2006).
15      A party's failure to preserve evidence once litigation is imminent constitutes
16  spoliation, and "the opposing party may move the court to sanction the party
17  destroying evidence." Id. at 1066; see also Leon v. IPX Sys. Corp., 464 F.3d 951,
18  958 (9th Cir. 2006) (affirming dismissal and award of attorney's fees as sanctions
19  for spoliation). Courts routinely require affidavits describing a party's efforts to
20  locate relevant documents and its knowledge as to any loss or destruction of
21  documents. See, e.g., Buchanan v. Consolidated Stores Corp., 206 F.R.D. 123,
22  125 (D. Md. 2002) ("Defendant will be ordered to provide an affidavit describing
23  the efforts made to locate documents responsive to requests" for production of
24  documents).
25      Additionally, a court has the authority to issue a document preservation order
26  without any finding of spoliation whatsoever. See RealNetworks, Inc. v. DVD
27  Copy Control Association, Inc., Nos. C 08-04548 MHP, C 08-04719 MHP, 2009
28  WL 1258970, at *10 (N.D. Cal. May 5, 2009) (instructing parties to prepare

1 document preservation order despite a finding that existing preservation policies
2 were "sufficient"). Because a preservation order merely clarifies a litigant's existing
3 duty to preserve relevant documents, they "are common in complex litigations, and
4 are increasingly routine in cases involving electronic evidence, such as e-mails and
5 other forms of electronic communication." <u>Pueblo of Laguna v. United States</u>, 60
6 Fed. Cl. 133, 136 (Fed. Cl. 2004). Document preservation orders are necessary
7 when "the opposing party has lost or destroyed evidence in the past or has
8 inadequate retention procedures in place." <u>Id.</u>, at 138.

9    **C.**    <u>**Argument**</u>

10        **1.**    **P10 Does Not Dispute That It Has Destroyed Documents** ▮
11                ▮▮▮▮▮▮▮▮▮▮▮▮ **During The Pendency**
12         **Of This Action.**

13     P10 does not dispute that it has deleted ▮▮▮▮ emails on a
14 continuous basis during this litigation. Kassabian Decl., Ex. B. Nor has P10
15 provided any confirmation that it has modified ▮▮▮ email settings to
16 preserve ▮ emails pursuant to Google's recent request. <u>Id.</u> ¶¶ 4-10, and Exs. B, D
17 & F. Because P10 has refused to provide information regarding the scope and
18 extent of this document destruction, Google has every reason to believe that ▮
19 P10 employees' computers were ▮▮▮ programmed to delete emails on an
20 ongoing basis. <u>Id.</u> The paucity of P10's email production suggests that many
21 hundreds or thousands of emails may have been destroyed. <u>Id.</u> ¶¶ 14, 17.
22 Moreover, through third-party discovery Google has obtained several documents
23 that should have been produced by P10 but were not, suggesting that those
24 documents (among others) were destroyed pursuant to P10's email deletion policy.
25 <u>Id.</u> ¶¶ 18-20, and Exs. O, P & Q.
26     It makes no difference that P10's document destruction was the result of an
27 automatic setting ▮▮▮▮▮▮. Reasonably anticipated
28 litigation imposes an affirmative duty on a party to suspend any document deletion

or destruction policies.  <u>See</u> <u>Stevenson v. Union Pac. R.R. Co.</u>, 354 F.3d 739, 749 (8th Cir. 2004) (when litigation is imminent or has already commenced, "a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy"); <u>In re Napster, Inc. Copyright Litigation</u>, 462 F. Supp.2d at 1070 (failure to suspend document destruction policy and failure to produce relevant employee emails discovered from third parties justified sanctions).  P10's actions are inexcusable.

### 2.     The Destroyed Documents Were Relevant To This Litigation.

Rather than dispute its destruction of evidence, P10 insists that *all* of the emails it has destroyed are not likely to be relevant or discoverable—in other words, "no harm, no foul."  Kassabian Decl., Ex. B.  As a preliminary matter, P10 has no basis to make this statement, since P10 does not claim to know which emails it deleted, not does P10 claim to have reviewed them before deletion.

Moreover, P10 is wrong on the merits—these emails were indeed relevant under the governing legal standards.  According to P10, long-time employee Ms. Augustine is one of its most critical witnesses.  She has been extensively involved with P10's business(es) and operations for more than seven years ██████████

████████████████████████████████████████████

████████████████████████████████████████.

Kassabian Decl., Ex. H (Augustine Deposition Transcript, at 57:23-58:5, 60:6-8, 61:17-19, 72:23-24, 103:16-104:5, 123:15-124:12, 215:5-11, 255:7-256:21).  Ms. Augustine testified at deposition that ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████

████████████████████

01980.51320/3240295.1

Further, P10 identified Ms. Augustine in its Rule 26(a) disclosures as an "Assistant to the Publisher" who would be able to "authenticate ... printouts" of alleged infringing images, and who "will be able to testify regarding P10's copyright applications and registrations." Id., Ex. R (P10's Updated and Supplemental Disclosures Pursuant to Federal Rule of Civil Procedure 26(a), at 4:15-24). P10 also identified Ms. Augustine as a witness with knowledge of numerous relevant issues, including:

- Google's alleged "placing ads next to millions of images without authorization, on websites for which it has received repeated notices of infringement,"

- Google's alleged continuing "to accept advertising from, and link to, websites for which it has received repeated notices of infringement,"

- Google's alleged hosting of "websites that it knows infringe copyrights,"

- Google's alleged ability to "1) remove all links to all websites controlled by an entity, which would dramatically reduce the traffic to that entity and severely damage its business; 2) refuse to take advertising from an entity; 3) refuse to do business with, or pay, an entity; 4) confiscate monies owed to an entity; 5) enforce the terms of any agreements with an entity,"

- Google's alleged placement of "thousands of ads next to the images of [P10] models,"

- Google's alleged design of Web and Image Search results "so that a disproportionate number of its pages of reduced-size images link to websites on which Google places ads and earns revenue,"

- Google's alleged publishing "username/password combinations which allow unauthorized access to thousands of websites,"

- Google's alleged provision of "thousands of Perfect 10 images available for free to Google users,"

- Google's alleged use of "Perfect 10's trademarks without authorization for its own commercial gain,"

- Google's alleged making of "copies of thousands of Perfect 10 images without authorization," and

- Google's alleged use of "Perfect 10's own copyrighted works, without its permissions, to promote itself."

Id., Ex. R (P10's Updated Response to Google's 4th Set of Interrogatories). Indeed, P10 has indicated that it intends to rely on Ms. Augustine to testify at trial regarding authentication of the copyright registrations for P10's image library. Id., Ex. S (9/22/09 Letter from J. Mausner to T. Cahn). Without question, Ms. Augustine is a key witness whose emails meet the relevance standards for purposes of document preservation obligations. Wm. T. Thompson Co., 593 F. Supp. at 1455 (requiring parties to maintain documents "reasonably calculated to lead to the discovery of admissible evidence [or] reasonably likely to be requested during discovery").

Further, third-party discovery has confirmed that specific relevant documents involving Ms. Augustine exist but were not produced by P10. ██████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ Kassabian Decl., Ex. O (██████ OLC email from W. Augustine). These emails and others like it are vital to Google's defense, because they show ██████████████████████████

████████████████ critical information which could preclude P10 from obtaining statutory damages for any infringement ████████████.[5] Id. The harm P10's email

---

[5] See 17 U.S.C. § 412 ("no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for ... any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work").

01980.51320/3240295.1

1  deletion activities have caused Google are demonstrable, not merely hypothetical, as
2  P10 suggests.

3      In any event, P10 was and remains obligated to preserve all materials
4  "reasonably calculated to lead to the discovery of admissible evidence." Wm. T.
5  Thompson Co., 593 F. Supp. at 1455. P10 cannot just assert by fiat that its failure
6  to uphold its duty to preserve relevant documents in anticipation of litigation was
7  somehow harmless. Indeed, any inferences as to the relevance of the deleted emails
8  are to be drawn against P10. See Leon, 464 F.3d at 959 ("because the relevance of
9  destroyed documents cannot be clearly ascertained because the documents no longer
10  exist, a party can hardly assert any presumption of irrelevance as to the destroyed
11  documents") (citation omitted); Hamilton v. Signature Flight Support Corp., 2005
12  WL 3481423, at *6 (N.D. Cal. 2005) ("For purposes of relevance ... courts must take
13  care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the
14  likely contents of the destroyed [or unavailable] evidence,' because doing so 'would
15  subvert the ... purposes of the adverse inference, and would allow parties who have
16  ... destroyed evidence to profit from that destruction.'") (citation omitted); National
17  Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 557 (N.D. Cal. 1987)
18  ("Where one party wrongfully denies another the evidence necessary to establish a
19  fact in dispute, the court must draw the strongest allowable inferences in favor of the
20  aggrieved party.").

21      This is especially true where, as here, P10 appears to have selectively
22  produced emails involving the custodian(s) in question. Specifically, the small
23  handful of emails P10 has produced involving Ms. Augustine pertain to ███████
24  ██████████████████████████████████████████████████████████
25  ████████████████████████████. Kassabian
26  Decl., Ex. N. This selective retention and production of Ms. Augustine's emails
27  underscores the presumed relevance of the deleted emails, and highlights the need
28  for Court intervention. See E*Trade Securities LLC v. Deutsche Bank AG, 230

F.R.D. 582, 589-590 (D. Minn. 2005) (holding that selective preservation of documents prior to scheduled destruction gives rise to an inference that relevant information was lost and that the destroying party acted in bad faith).

There are numerous categories of emails involving Ms. Augustine that one would expect to see in P10's production which are not there, including:

- Emails between Ms. Augustine and various third parties regarding Ms. Augustine's work selecting images for P10 to purchase █████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████;

- Emails between Ms. Augustine and other P10 employees and independent contractors coordinating P10 special events █████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████;

- Work-related emails with Norman Zada regarding public relations inquiries ██ ████████████████████████████████████████████████████ ████████████████████████████████████████;

- Emails between Ms. Augustine and P10 part time employee Sheena Chou ███ ██████████████████████████████████; and

- Emails between Ms. Augustine and other P10 employees identifying infringements of specific copyrighted works registered by P10 ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████.

01980.51320/3240295.1

P10 failed to produce such documents, despite the fact that they are (1) relevant to this case and (2) responsive to numerous of Google's document requests.[6] P10's document destruction involving Ms. Augustine was not harmless.

### 3. P10's Failure To Implement A Document Preservation Protocol Likely Resulted In Document Destruction

██████████████████████████████████████████.

In addition to the concrete evidence of document destruction pertaining to ████████████ work email account ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████

████ Nor has P10 claimed during meet and confer efforts to have issued such instructions. Id. ¶ 10. Because P10 failed to implement a litigation hold, its document destruction activities likely extended ████████████████████ ████████ to the accounts ████████ of its current and former officers, employees and independent contractors.

The relatively small number of employee emails P10 has produced supports this conclusion. Specifically, for the entire ten-plus year time span in question, P10 has produced just 220 emails sent or received by its various employees (not including ████████████████████████████ Dr. Zada's DMCA-related correspondence with Google). Id. ¶ 14. Without question P10 should have produced many more emails than that, regarding such subjects as its magazine business, its website business, its model boxing and television/film ventures, image acquisition efforts, right of publicity acquisitions, image licensing, marketing and

---

[6] See Kassabian Decl. ¶¶ 15-16 and Exs. K (Google document requests calling for such communications) & L (Augustine subpoena calling for such communications).

01980.51320/3240295.1

1   promotional efforts, and alleged infringements.[7]  As yet another example, ██████

2   ████████████████████████████████████████████████████████████

3   ████████████████████████████████████████████████████████████

4   ██P10 has not produced even a single email between Ms. Chou and either Zada or

5   Augustine – or any other P10 employee, for that matter.  Kassabian Decl. ¶ 14 &

6   Ex. I.  At a minimum, P10 should have implemented a litigation hold on these

7   communications when P10 first contemplated suit against Google in 2001.  Id.; In re

8   Napster, Inc. Copyright Litigation, 462 F. Supp. 2d at 1067.  Apparently P10 did not

9   do so.

10  ███████████████████████████ through third party discovery Google has

11  confirmed the existence of specific relevant communications that should have been

12  produced by P10, but were not, lending further support to the inescapable

13  conclusion that P10 has destroyed relevant emails.  For instance, Google has

14  obtained emails between Dr. Zada and certain models for whom P10 purports to be

15  asserting rights of publicity claims, which P10 never produced in response to

16  Google's document requests.  Id., Exs. P (emails from Nadine Schoenweitz A/K/A

17  Nataskia Maren to Dr. Zada produced by Nadine Schoenweitz A/K/A Nataskia

18  Maren) and K (Google document requests calling for communications with models

19  and communications regarding assignments of publicity rights).  Many other similar

20  communications relevant to P10's claims may have been destroyed (or otherwise not

21  produced) as well.

22          **4.      This Court Should Issue A Document Preservation Order**

23                  **And Instruct P10 To Investigate And Disclose The Full**

24                  **Extent Of Its Document Destruction Activities.**

25

26

27      [7]  Google served document requests calling for such communications as early as
    March 2005. See, e.g., Kassabian Decl., ¶ 15.

28

1    To prevent any further prejudice to Google, Google asks the Court for an

2  immediate order suspending all of P10's document deletion and destruction

3  activities. A document preservation order is necessary and appropriate given that

4  P10 has previously destroyed evidence and lacks adequate document retention

5  procedures. See Pueblo of Laguna, 60 Fed. Cl. at 138 (granting motion for

6  document preservation order based on evidence of party's previous document

7  destruction).

8    P10 should also be ordered to provide a declaration describing the scope and

9  extent of its document deletion activities, including the following:[8]

10   • Describe how the settings on ▮▮▮▮▮▮ P10 email account were

11     established, by whom, and when;

12   • Describe whether emails on ▮▮▮▮▮▮ P10 email account have been

13     deleted, and if so, how many and during what time period;

14   • Identify the location of any "backup" files for the deleted ▮▮▮▮▮

15     emails, including ▮▮▮▮▮▮▮▮▮ on P10 computers or

16     servers, or at an off-site location maintained by any P10 service provider

17     or vendor;

18   • Explain whether P10 gave any document preservation instruction to any

19     P10 employees, contractors, or other personnel regarding this lawsuit, and

20     if so, when and to whom;

21   • Identify whether the email accounts of any P10 employees, contractors, or

22     other personnel ▮▮▮▮▮▮ have ever been set to automatically

23     delete emails (and if so, who, when and after how long); and

24

25   [8] Once the extent of P10's document destruction has been discovered, Google

26  reserves its right to seek additional sanctions, including without limitation evidence

27  preclusion, adverse inference instructions, and monetary sanctions. See In re
    Napster, Inc. Copyright Litigation, 462 F. Supp.2d at 1078.

28

1    • Identify any other loss or destruction of documents that has affected the
2        discovery P10 has provided to Google.

3    Such a declaration is particularly appropriate given P10's failure to

4    meaningfully meet and confer regarding its document destruction. P10 has refused

5    to confirm whether ████████████████████████ emails were

6    systematically deleted during this litigation. Kassabian Decl., Ex. B. P10 has also

7    refused to provide any information on its document preservation policies or whether

8    archived copies of any of the deleted documents exist. Id. Thus, an affidavit is

9    necessary to determine the scope of P10's spoliation and the potential means to

10    remedy it. See Buchanan, 206 F.R.D. 123, 125 (D. Md. 2002); Fed. R. Civ. P.

11    37(b)(2).

12  **III.**  **P10'S POSITION**

13    [*See* Declaration of Rachel Herrick Kassabian Regarding Perfect 10, Inc.'s

14    Non-Cooperation Concerning Google Inc.'s Motion for a Document Preservation

15    Order to Prevent Further Spoliation of Evidence by Perfect 10, Inc. (Submitted

16    Pursuant to Local Rule 37-2.4)]

17  **IV.**  **FINAL STATEMENTS**

18    **A.**    **Google's Final Statement and Requested Relief**

19    P10 has admittedly destroyed documents, and has failed to implement even

20    the most basic litigation hold, at great prejudice to Google. This Court should issue

21    an order (1) requiring P10 to identify the scope, duration and extent of its email

22    deletion activities, and any other document destruction activities, and (2) instructing

23    P10 to immediately take all steps necessary to preserve all documents relevant to

24    this litigation, including modifying its computer settings for all employees and

25    officers to remove any auto-deletion instructions.

26    **B.**    **P10's Final Statement and Requested Relief**

27    [*See* Declaration of Rachel Herrick Kassabian Regarding Perfect 10, Inc.'s

28    Non-Cooperation Concerning Google Inc.'s Motion for a Document Preservation

1 Order to Prevent Further Spoliation of Evidence by Perfect 10, Inc. (Submitted

2 Pursuant to Local Rule 37-2.4)]

3

4 DATED: December 11, 2009          QUINN EMANUEL URQUHART OLIVER &
                                    HEDGES. LLP

5

6                                   By_____

7                                      Rachel Herrick Kassabian (Bar No.
                                       191060)

8                                      Attorneys for Defendant GOOGLE INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

01980.51320/3240295.1