QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

Attorneys for Defendant GOOGLE INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 04-9484 AHM (SHx)<br>[Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**DISCOVERY MATTER**<br><br>Hon. Stephen J. Hillman<br><br>**GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION FOR A DOCUMENT PRESERVATION ORDER TO PREVENT FURTHER SPOLIATION OF EVIDENCE BY PERFECT 10, INC.**<br><br>[Reply Declaration of Rachel Herrick Kassabian filed concurrently herewith]<br><br>Date: January 15, 2010<br>Time: 10:00 a.m.<br>Crtrm.: 550<br><br>Discovery Cutoff: None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set<br><br>**PUBLIC REDACTED** |

01980.51320/3268837.1

GOOGLE'S REPLY IN SUPPORT OF ITS MOTION FOR A DOCUMENT PRESERVATION ORDER

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT................................................................................................................1

I. P10'S OPPOSITION BRIEF DOES CONTEST THAT RELEVANT
   DOCUMENTS HAVE BEEN DESTROYED. ..................................................1

   A. P10 Does Not Dispute – Or Even Address – Its Employee
      Wendy Augustine's Sworn Testimony That ████████
      ████████████████████████████████ ..................................1

   B. P10 Admits That *Additional* Document Destruction Has
      Occurred With Respect to Documents Stored on Ms. Augustine's
      Computer. .............................................................................................3

   C. Other Key P10 Witnesses Lost Or Destroyed Documents During
      This Litigation As Well.........................................................................4

   D. P10's Failure To Preserve Documents Also Extends To Its Own
      Financial Records. ................................................................................5

II. P10 DOES NOT CONTEST THAT IT FAILED TO TAKE STEPS
    NECESSARY TO PRESERVE RELEVANT DOCUMENTS.........................7

III. NONE OF P10'S COUNTERARGUMENTS HAVE MERIT. .........................8

CONCLUSION ..........................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

ETrade Securities v. Deutsche Bank AG,
  230 F.R.D. 582 (D. Minn. 2005) .................................................................................... 8

Hamilton v. Signature Flight Support Corp.,
  2005 WL 3481423 (N.D. Cal. Dec. 20, 2005) .............................................................. 8

Leon v. IPX Sys. Corp.,
  464 F.3d 951 (9th Cir. 2006) ......................................................................................... 8

In re NTL, Inc. Securities Litigation,
  244 F.R.D. 179 (S.D.N.Y. 2007) ................................................................................... 5

Pueblo of Laguna v. U.S.,
  60 Fed. Cl. 133 (Fed. Cl. 2004) ............................................................................... 1, 10

Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc.,
  2009 WL 1258970, at *10 (N.D. Cal. May 5, 2009) .................................................. 10

Silvestri v. General Motors Corp.,
  271 F.3d 583 (4th Cir. 2001) ......................................................................................... 5

Turner v. Hudson Transit Lines, Inc.,
  142 F.R.D. 68 (S.D.N.Y. 1991) ..................................................................................... 5

United States v. Chen,
  99 F.3d 1495 (9th Cir. 1996) ......................................................................................... 9

United States v. ChevronTexaco Corp.,
  241 F. Supp. 2d 1065 (N.D. Cal. 2002) ........................................................................ 9

Zubulake v. UBS Warburg LLC,
  220 F.R.D. 212 (S.D.N.Y 2003) .................................................................................... 5

## Preliminary Statement

P10 has now admitted that documents held by key custodians in this case have been lost or destroyed. P10 also has refused to describe the full scope of that destruction, nor has P10 identified what steps it has taken (if any) to preserve relevant documents. Instead, P10 attempts to draw the Court's attention away from its document preservation failures by levying false accusations against Google, and insisting that a "mutual preservation order" is the answer. It is not. Preservation orders are issued only as necessary, and only for good cause shown. P10's Opposition leaves no doubt that P10 has failed to honor its obligation to preserve relevant evidence, and that absent a preservation order additional documents are in danger of being lost or destroyed. By contrast, P10 has presented no basis for a similar order against Google. P10's reactive posturing has wasted this Court's time, and its groundless "best defense is a good offense" litigation strategy should be rejected out of hand. A document preservation order against P10 should issue.

## Argument

### I. P10'S OPPOSITION BRIEF DOES CONTEST THAT RELEVANT DOCUMENTS HAVE BEEN DESTROYED.

P10 does not dispute that emails and other documents of key P10 custodians have been lost or destroyed during the pendency of this case, warranting issuance of a document preservation order. See Pueblo of Laguna v. U.S., 60 Fed. Cl. 133, 138 (Fed. Cl. 2004) (document preservation order warranted where proponent shows that opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place).

### A. P10 Does Not Dispute – Or Even Address – Its Employee Wendy Augustine's Sworn Testimony That ████████████ ████████████████████████████.

Ms. Augustine testified under oath that ████████████
████████████████████████████████████████

01980.51320/3268837.1

-1-
GOOGLE'S REPLY IN SUPPORT OF ITS MOTION FOR A DOCUMENT PRESERVATION ORDER

1 ███████████████████████████. See Declaration of Rachel Herrick Kassabian
2 dated December 2, 2009 (Dkt. No. 658) ("Kassabian Decl.") at Exh. H (Augustine
3 Deposition Transcript at 103:20-104:18). P10's Opposition brief does not even
4 address this testimony. Indeed, P10 submits an opposing declaration from
5 Ms. Augustine, yet nowhere in that declaration does Ms. Augustine retract or even
6 address her prior sworn testimony that ██████████████████████
7 ████████. See Declaration of Wendy Augustine dated December 10, 2009
8 ("Augustine Decl.") (Dkt. No. 661). P10 also submits a declaration from its counsel
9 Mr. Mausner, yet nowhere in that declaration does Mr. Mausner contest his
10 September 8, 2009 letter to Google confirming that ████████████████
11 ███████████████████████████. See Declaration of Jeffrey Mausner dated
12 December 10, 2009 (Dkt. No. 662); compare Kassabian Decl., Ex. B (9/8/09 letter
13 from Mausner). Thus, is it undisputed that ████████████████████████
14 ████████████████████████████████████████████████████████
15 ████████████.

16 Instead, P10 offers that the admittedly-deleted emails may (or may not) be
17 recoverable through some sort of unspecified "backup system" P10 claims to
18 maintain. Joint Stipulation on P10's Motion for a Mutual Document Preservation
19 Order ("Opp.") at 2.[2] Yet P10 provides no details whatsoever regarding that system,
20 such as what time periods and custodians it covers. See Declaration of Norman
21 Zada dated December 10, 2009 ("Zada Decl.") at ¶ 3 (Dkt. No. 663). Nor does P10

---

[1] See Google's Motion (Dkt. No. 657) at 13-14 (explaining Ms. Augustine's role as a critical witness in this case).

[2] As the Court is aware, P10 filed its "opposition" to Google's Motion in the form of a purported "Joint Stipulation" which includes both P10's opposition, and P10's separate motion for its own document preservation order. For ease of reference, Google refers to the Joint Stipulation filed by Google on December 11,
(footnote continued)

explain why it is that, in the more than four months since Google first raised this issue in meet and confer, P10 has not been able to recover even a single one of the lost emails (if in fact they are recoverable). See Kassabian Decl., Exh. A (Google's 8/25/09 meet and confer letter first raising issue of lost P10 emails).

P10 cannot play hide the ball with the Court, the way it did with Google during meet and confer. P10 should be ordered to provide the information Google requested in its moving papers, including a complete explanation of what documents were lost during what time period and for which custodians, and what portion of these documents (if any) have been or can be recovered from backup sources. See Google's Motion at 19-20.

**B.   P10 Admits That *Additional* Document Destruction Has Occurred With Respect to Documents Stored on Ms. Augustine's Computer.**

In its Opposition, P10 admits to additional document destruction involving Ms. Augustine – specifically, that Ms. Augustine "lost everything on her hard drive, in the fall of 2008,"[3] "most likely from a virus." See Opp. at 2; Zada Decl. ¶ 2. P10 does not identify the time period of the document loss, which it could have done by confirming when (before the fall 2008 hard drive failure) Ms. Augustine's electronic documents were last gathered and produced. P10 again speculates that these lost documents *may* (or may not) be recoverable through some sort of unspecified

---

2009 (Dkt. No. 657) as Google's "Motion," and the Joint Stipulation filed by P10 on December 14, 2009 (Dkt. No. 690) as P10's "Opposition" ("Opp.").

[3]   P10 submits contradictory declarations from Dr. Zada and Ms. Augustine which only raise further questions regarding what was lost, why and when. First, Dr. Zada declares that "all of the information on [Ms. Augustine's] hard drive was lost." Zada Decl. ¶ 2. By contrast, Ms. Augustine declares that a computer technician "was able to retrieve emails dated September 17, 2008 and after" from that same computer. Augustine Decl. ¶ 5. P10 should be ordered to submit the comprehensive declaration Google has asked for in its moving papers.

"backup system," (see Opp. at 2-3), but provides no further information. This is yet another reason why Google's motion should be granted.

### C. Other Key P10 Witnesses Lost Or Destroyed Documents During This Litigation As Well.

In addition to Ms. Augustine, Google has recently learned that various P10 independent contractors also have lost or destroyed documents during this litigation. As the Court will recall, P10 is asserting publicity violations on behalf of nine individuals (the "Nine Models"). Google has begun its depositions of the Nine Models and has learned that key documents relevant to those publicity claims, including contracts and assignments of rights, have been lost or shredded during recent years. See Reply Declaration of Rachel Herrick Kassabian ("Kassabian Reply Decl."), filed concurrently, at Exh. A (10/16/09 Schoenweitz Deposition Transcript at 54:23-25 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓)); id. at 55:9-14 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓);[4] see also Kassabian Reply Decl., Exh. D (11/11/09 Weber Deposition Transcript at 68:3-14) (▓▓▓▓▓▓▓▓▓▓▓▓▓); id., Exh. E (11/19/09 Smith Deposition Transcript at 19:17-20:15 and 25:24-26:2) (▓▓▓).

---

[4] Google initiated meet-and-confer efforts regarding Ms. Schoenweitz's destruction of documents by letter dated October 27, 2009. Kassabian Reply Decl. ¶ 3 and Exh. B. P10 refused to provide a substantive response to Google's letter for nearly two months, until December 22, 2009, *after* Google filed the instant motion. Id. ¶ 3 and Exh. C. In that December 22 letter, Mr. Mausner's office (which is representing both P10 and Ms. Schoenweitz) did not dispute Ms. Schoenweitz's testimony that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Id. at ¶ 3 & Exh. C.

P10 knew that documents related to these models' publicity rights would be relevant to its litigation purportedly asserting those rights, yet apparently failed to take steps necessary to preserve such documents. A document preservation order against P10 should issue for this reason as well. See, e.g., In re NTL, Inc. Securities Litigation, 244 F.R.D. 179, 194 (S.D.N.Y. 2007) (preservation obligation extends to the 'key players' in the case.") (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y 2003)); Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) ("If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."). See also Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 73-74 (S.D.N.Y. 1991) ("a party's discovery obligations are not satisfied by relying on non-parties to preserve documents").

### D. P10's Failure To Preserve Documents Also Extends To Its Own Financial Records.

And further, even though P10 was specifically ordered to produce its periodic financial statements by the Court's Order dated October 6, 2009 (Dkt. No. 560), P10 has failed to produce financial statements for many months (including months during the pendency of this litigation), and has now acknowledged that some of those documents "do not exist." Specifically, P10 has failed to produce monthly financial statements for the following months:

| Year | Months |
|---|---|
| 1997 | January, February, March, April, May, June, July, September and October |
| 1998 | November |
| 1999 | April, May, June, July, August, September, October and November |
| 2000 | January, February, April, May, June, July, August, September, October, and November |

| 2001 | January, February, March, April and May |
| 2002 | February, June, July, August and October |
| 2003 | June and August |
| 2004 | March and April |
| 2005 | February |
| 2006 | January and February |
| 2007 | February, May, June, August, October and November |
| 2008 | January, February, April, July, October, and November |
| 2009 | January, February, April, June, July, August, September, October, November, and December |

See Kassabian Reply Decl., Exh. F (excerpts of Joint Stipulation on Google's Motion to Compel (Dkt. No. 408) at 25-26). During recent meet and confer, P10 vaguely asserted that the missing documents "do not exist," and confirmed that the missing statements from 2007 were never created. Id. ¶ 6 & Ex. G. But P10 has steadfastly refused to confirm specifically which of the remaining dozens of missing statements (1) were never generated in the first place, or (2) were generated, but lost or destroyed during this litigation. Id. P10 also recently informed Google that the original copies of two of its monthly statements (for December 2001 and June 2004) which were produced but only with redactions, no longer exist either. Id. Google asked P10 to advise if these complete and unredacted statements were *not* lost or destroyed during this litigation, and P10 did not respond. Id.

The record is replete with instances in which relevant P10 documents have been lost or destroyed during the pendency of this action. A document preservation order is necessary.

## II. P10 DOES NOT CONTEST THAT IT FAILED TO TAKE STEPS NECESSARY TO PRESERVE RELEVANT DOCUMENTS.

Not only does P10 concede the actual loss and destruction of documents, but its Opposition also does not contest that it failed to take any steps necessary to preserve documents, such as by giving document preservation instructions. See Motion at 5-8. Indeed, Ms. Augustine—the primary custodian of P10's copyright records—testified that ███████████████████████████. See Motion at 4 (quoting Augustine Deposition Transcript). All three of the Nine Models who have been deposed to date testified similarly—███████████████ ███████. See, e.g., Kassabian Reply Decl., Exh. A (Schoenweitz Deposition Transcript at 75:11-18 (███████████████████████████████ ████████████████████████)).[5]

Thus far, the only evidence of any preservation instruction of any kind from P10 to anyone is from P10 part-time employee Sheena Chou, who testified that ████████████████████████████████████████████████████ ████████████████████████████████████████████. Motion at 5-8. This is insufficient. All litigants—including P10—have an obligation to preserve relevant documents. Since P10 has not honored this obligation voluntarily, the Court should order P10 to do so now.

---

[5] Ms. Weber and Ms. Smith gave similar testimony. Id., Exh. D (Weber Deposition Transcript at 22:8-11 (███████████████████████████ ████████████)); id., Exh. E (Smith Deposition Transcript at 79:8-11 ("Q. Did anyone tell you that you needed to preserve documents that related to the Perfect 10 versus Google litigation? A. No.")).

01980.51320/3268837.1
-7-
GOOGLE'S REPLY IN SUPPORT OF ITS MOTION FOR A DOCUMENT PRESERVATION ORDER

## III. NONE OF P10'S COUNTERARGUMENTS HAVE MERIT.

Instead of addressing its failure to preserve documents directly, P10 raises a series of unsupported claims and other distractions. First, P10 audaciously asserts that Google did not meet and confer prior to filing this motion. Opp. at 22-23. Nothing could be further from the truth. Google sent repeated letters and emails to P10 dating back to August 25, 2009, asking P10 to confirm that it would take steps necessary to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ensure that no further document destruction occurred. Kassabian Decl., Exh. A. Google also asked P10 to disclose the scope and extent of P10's document destruction. *P10 completely ignored Google's letters for more than three months.* See Kassabian Decl. ¶ 10. It was only *after* Google filed this motion that P10 provided at least *some* of this information, and even then only via its opposition papers. See Zada Decl. ¶ 2 (partially explaining loss of Augustine emails); Augustine Decl. ¶ 5 (stating that after her August 2009 deposition, Ms. Augustine instructed a technician to modify the settings on her computer to prevent further email deletion). P10 should be sanctioned for its obstinate and groundless refusal to participate in the meet and confer process, which obstinance left Google with no choice but to file this motion.

Second, P10 insists that the documents that have been lost or destroyed are "irrelevant." Opp. at 2. P10 has no basis to claim that the emails Ms. Augustine lost are irrelevant, because P10 does not know which emails have been lost. Indeed, when documents are lost, inferences regarding relevance are drawn *against* the party who lost them, not in its favor. See Leon v. IPX Sys. Corp., 464 F.3d 951, 959 (9th Cir. 2006) ("because the relevance of destroyed documents cannot be clearly ascertained because the documents no longer exist, a party can hardly assert any presumption of irrelevance as to the destroyed documents"); Hamilton v. Signature Flight Support Corp., 2005 WL 3481423, at *6 (N.D. Cal. Dec. 20, 2005) ("For purposes of relevance ... courts must take care not to 'hold[ ] the prejudiced party to

too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would subvert the ... purposes of the adverse inference, and would allow parties who have ... destroyed evidence to profit from that destruction.'") (citation omitted); E*Trade Securities v. Deutsche Bank AG, 230 F.R.D. 582, 589-90 (D. Minn. 2005) (selected preservation of documents gives rise to inference that relevant information was lost). Similarly, documents related to the nine models' past assignments of their publicity rights to companies other than P10 are indeed relevant to P10's publicity claims—since P10 contends that its assignments are exclusive. See Second Amended Complaint ¶ 16. P10's relevance argument fails.

Third, P10 defends its paltry email production by claiming that it withheld certain emails on privilege and/or work-product grounds—for example, emails between Wendy Augustine (a non-lawyer) and Sheena Chou (another non-lawyer). Opp. at 3-4. As a preliminary matter, such emails presumptively would *not* be privileged, and P10's opposition brief does not even attempt to justify or substantiate that withholding.[6] In any event, the fact that certain unidentified emails may have been withheld (on apparently improper grounds) does not change the fact that other emails have been destroyed.

Fourth, P10 argues that "Google has never served a single request ... specifically requesting emails." Opp. at 3, n.2. This is false. As Google pointed out in its moving papers, Google has served dozens of document requests seeking "communications," which term was defined to include emails (to the extent that

---

[6] P10 appears to be taking the position that all of its internal emails are privileged because P10 currently is engaged in litigation. That is not the law. See, e.g., United States v. ChevronTexaco Corp., 241 F.Supp.2d 1065, 1069 (N.D. Cal. 2002) ("The privilege protects communications between an attorney and her client made in confidence for the purpose of securing legal advice from the lawyer.") (citing United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996)).

point was not already obvious). See Kassabian Decl. ¶ 15 (listing examples of such document requests).

And fifth, P10 argues that Google has not produced certain documents. Opp. at 24-37. In addition to being untrue (*see* Google's Opposition to P10's Preservation Motion, Dkt. No. 647), what Google has or has not produced is irrelevant to whether P10 has lost or destroyed documents.[7] P10's attempt to draw the Court's attention away from P10's failings by levying false accusations at Google should be rejected summarily.[8]

At bottom, what P10 does *not* do in its Opposition is answer the following questions Google posed months ago during the meet-and-confer process, and again in Google's moving papers:

- How the settings on ▇▇▇▇▇▇▇ P10 email account were established, by whom, and when;

---

[7] All of the discovery issues P10 recounts in opposition to the instant Motion (see Opp. at 26-37) have already been fully briefed in P10's Sanctions Motion and Google's Opposition thereto. See Docket Nos. 633 and 647. Rather than burden the Court by repeating those arguments here, Google respectfully refers the Court to its Opposition at 5-11 (Docket No. 647), and incorporates those arguments by reference as though fully set forth herein.

[8] In seeking what it describes as a mutual preservation order, P10 erroneously suggests that two cases cited in Google's Motion support the notion that a court can enter a preservation order against a party without cause. The cases stand for no such thing. The court in Realnetworks, Inc. v. DVD Copy Control Ass'n, Inc. instructed the parties to cooperate in drafting a document preservation order that would apply only to one party, the plaintiff, after finding that "Real did not have a preservation policy in place." 2009 WL 1258970, at *10 (N.D. Cal. May 5, 2009). Similarly, the court in Pueblo of Laguna only ordered one party – the United States – to preserve documents after finding that failures in its document retention procedures were "pervasive and systematic." 60 Fed. Cl. at 139. Since P10 has demonstrated no cause whatsoever, and has not pointed to even a single instance of loss or destruction of documents by Google, a mutual preservation order is unnecessary.

- Whether emails on ▮▮▮▮ P10 email account have been deleted, and if so, how many and when;
- The location of any "backup" files for the deleted ▮▮▮ emails, including ▮▮▮▮▮▮, on P10 computers or servers, or at an off-site location maintained by any P10 service provider or vendor;
- Whether P10 gave any document preservation instruction to any P10 employees, contractors, or other personnel regarding this lawsuit, and if so, when; and
- Whether the email accounts of any P10 employees, contractors, or other personnel ▮▮▮▮▮ have ever been set to automatically delete emails (and if so, who, when and after how long).

P10 should be ordered to answer these questions now, and to immediately take all steps necessary to preserve all relevant documents.

## Conclusion

P10 has confirmed that it has destroyed documents, and has failed to implement even the most basic litigation hold or otherwise take steps to ensure that relevant documents were not lost or destroyed. For all the reasons identified in Google's moving papers, the Court should issue an order (1) requiring P10 to identify the scope, duration and extent of its email deletion activities, and any other document loss or destruction that has occurred, and (2) instructing P10 to immediately take all steps necessary to preserve all documents relevant to this litigation, including modifying its computer settings for all employees and officers to remove any auto-deletion instructions.

///

///

///

DATED: January 6, 2009            QUINN EMANUEL URQUHART OLIVER &
                                  HEDGES. LLP


                                  By _____*Rachel Herrick Kassabian*_____
                                     Rachel Herrick Kassabian
                                     Attorneys for Defendant GOOGLE INC.