QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065

Attorneys for Defendant GOOGLE INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 04-9484 AHM (SHx)<br>[Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**DEFENDANT GOOGLE INC.'S SURREPLY REGARDING PLAINTIFF PERFECT 10, INC.'S MOTION FOR EVIDENTIARY AND OTHER SANCTIONS AGAINST GOOGLE AND/OR FOR THE APPOINTMENT OF A SPECIAL MASTER** |
| AND COUNTERCLAIM | [Surreply Declaration of Rachel Herrick Kassabian filed concurrently herewith] |
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Hon. Stephen J. Hillman<br><br>Date: January 15, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 550<br><br>Discovery Cut-off: None Set<br>Pre-trial Conference: None Set<br>Trial Date: None Set<br><br>**PUBLIC REDACTED** |

# **TABLE OF CONTENTS**

**Page**

Preliminary Statement................................................................................. 1

Argument...................................................................................................... 2

I.  P10 STILL HAS NOT PRESENTED A LEGITIMATE DISCOVERY
    DISPUTE, LET ALONE A VIOLATION OF A COURT ORDER. .............. 2

    A.  Google Has Produced Its "DMCA Logs" in Compliance With the
        Court's Order................................................................................ 2

    B.  Google's Production Of Third-Party Notices Complied With the
        Court's Order................................................................................ 7

    C.  Google Has Produced Notices Of Termination As The Court
        Ordered........................................................................................ 9

    D.  There Has Been No Discovery Order Violation Regarding
        Communications With Particular Alleged AdSense Infringers........... 10

    E.  Google's Production of Documents Regarding Its Repeat Infringer
        Policy Complied With the Court's Order. ........................................ 11

    F.  Google's Production of Internal Reports And Memoranda
        Pertaining to Certain Custodians Complied With the Court's
        Order. ........................................................................................... 12

    G.  Google Has Produced Communications Between Google And
        Certain Website Owners in Compliance with the Court's Order. ....... 12

II. NONE OF THE ALLEGED "FACTS" P10 CLAIMS ARE
    "CONCEDED" SUPPORT P10'S DEMAND FOR DISCOVERY
    SANCTIONS................................................................................. 13

    A.  Whether Google's Tracking Spreadsheets ███████████
        ███████ Is Irrelevant to Discovery Sanctions. ............................. 13

    B.  The Contents of Google's Blogger And AdSense Spreadsheets
        Are Irrelevant to Discovery Sanctions............................................ 14

    C.  The "Start-Dates" For Google's Blogger and AdSense
        Spreadsheets Are Irrelevant to Discovery Sanctions. ...................... 14

    D.  DMCA Notices Regarding ████████ Are Irrelevant to
        Discovery Sanctions. .................................................................... 14

    E.  Purported DMCA Notices Regarding Rapidshare.com Are
        Irrelevant to Discovery Sanctions. ................................................. 15

    F.  Google's Substantive Response to The Referenced 28 P10 DMCA
        Notices Is Irrelevant to Discovery Sanctions.................................... 15

1      G.    Google's Substantive Response to the Referenced Three Notices
Regarding Blogger Infringers Is Irrelevant to Discovery Sanctions.... 15

2

3      H.    The Production Format Of Google's DMCA Spreadsheets Is
Irrelevant to Discovery Sanctions, and P10 Agreed to It In Any
Event. ......................................................................................................... 16

4

5      I.    P10's Claims Regarding Its "Adobe Notices" Are Irrelevant to
Discovery Sanctions. ................................................................................. 16

6  III.   GOOGLE'S PROCESSING OF P10 DMCA NOTICES SUBMITTED
AFTER THE CLOSE OF DMCA BRIEFING ALSO IS IRRELEVANT

7     TO DISCOVERY SANCTIONS. ...............................................................16

8  IV.   AS THE COURT HAS ALREADY INSTRUCTED P10, ITS
ARGUMENTS REGARDING CHILLINGEFFECTS.COM ARE

9     MISPLACED, AND HAVE NOTHING TO DO WITH ANY
DISCOVERY ORDER. ..............................................................................17

10

11  V.    GOOGLE'S "CHARACTERIZATIONS" OF P10'S MOTION ARE
ACCURATE.................................................................................................17

12  Conclusion...........................................................................................................18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

*Access Telecom, Inc. v. MCI Telecommunications Corp.*,
197 F.3d 694 (5th Cir. 1999) .................................................................................... 18

*Sullivan v. City of Springfield*,
561 F.3d 7 (1st Cir. 2009) ...................................................................................... 18

## Statutes

17 U.S.C. § 512(c) ......................................................................................................... 8
17 U.S.C. § 512(d) ......................................................................................................... 8
17 U.S.C. § 512(i) ........................................................................................................ 11

Rule 30(b)(6) ................................................................................................................. 9

Rule 56(f) .............................................................................................................. 1, 18

GOOGLE'S SURREPLY RE. PERFECT 10'S MOTION FOR EVIDENTIARY AND OTHER SANCTIONS

**Preliminary Statement**

Pursuant to the Court's Order dated December 21, 2009 (Dkt. No. 689), Google Inc. submits the following surreply regarding Perfect 10, Inc.'s ("P10") motion for evidentiary and other sanctions against Google.

Like its moving papers, P10's reply papers fail to *address,* much less satisfy, the standard applicable to its sanctions motion – namely, the violation of a specific Court order and resulting prejudice to P10. Instead, P10 devotes its reply to two things: (1) rehashing the same unfounded discovery complaints it made in its moving papers, and (2) asserting various inappropriate, untimely substantive arguments going to the merits of Google's DMCA motions for summary judgment, which are currently under submission before Judge Matz. Neither of these strategies succeed.

First, as Google's opposition shows, P10's discovery protests are groundless and do not even arguably satisfy the high burden for imposing evidentiary sanctions, because (among other things) no violation of any court order has occurred. Second, P10's merits-based arguments have no place here (or anywhere else for that matter), because briefing on Google's DMCA Motions has long been closed—and even if it wasn't, P10's arguments lack merit in any event. In these circumstances, P10's primary relief sought—a draconian demand for summary judgment in its favor on the issue of DMCA safe harbor—is a model of baseless overreaching.

P10's reply brief also defeats the alternative relief it claims to be seeking. Specifically, P10's motion alternatively sought sanctions in the form of re-opening briefing on Google's DMCA Motions to conduct discovery that P10 claims Google should have produced years ago. However, P10's reply confirms that P10 ███████ ███████████████████████████ and thus waives any such claim P10 might have had. Waiver aside, P10 had every opportunity to make such arguments in opposition to Google's DMCA Motions last summer, but chose not to do so, instead electing to oppose them on the merits and file its own cross-motion. P10 cannot escape its concession that it needed no further discovery on DMCA issues.

1    P10's latest volley of vitriol aside, the fact remains that Google has complied
2  with all Court orders in this case, and P10 has not demonstrated otherwise. P10's
3  motion should be denied.

4                                    **Argument**

5  **I.    P10 STILL HAS NOT PRESENTED A LEGITIMATE DISCOVERY**
6        **DISPUTE, LET ALONE A VIOLATION OF A COURT ORDER.**

7          In its Opposition to P10's evidentiary sanctions motion (Dkt. No. 647)
8  ("Opp."), Google identified the relevant standard governing the evidentiary sanctions
9  P10 seeks—namely, that P10 must establish (*inter alia*) (1) a violation of a court
10 order by Google, (2) resulting prejudice to P10, and (3) satisfaction of other factors,
11 including a demonstration that lesser sanctions are unavailable. See Opp. at 1-5.
12 P10's reply (Dkt. No. 659, filed under seal) ("Reply") does not even *address* this
13 standard, much less meet it. Instead, P10's Reply merely re-hashes the discovery
14 accusations in its original motion (Dkt. No. 620, filed under seal) ("Motion")—
15 which brief *also* failed to address the governing standard. See Opp. at 1-5. The
16 Court need look no further to deny P10's Motion. In any event, P10's scattershot
17 discovery claims are addressed and refuted in turn below.

18        **A.    Google Has Produced Its "DMCA Logs" in Compliance With the**
19              **Court's Order.**

20        P10's Reply insists—again—that Google has not produced its "DMCA log."
21 Reply at 6-8. P10 made this same argument in its Motion (at 6-10), and Google has
22 already demonstrated its falsity in Google's opposition papers. See Opp. at 5-8.
23 Specifically, in compliance with the Court's May 13, 2008 Order Google produced its
24 DMCA log documents, including "spreadsheet-type" documents and other processing
25 records. See Opp. at 5-8; Declaration of Rachel Herrick Kassabian dated December
26 7, 2009 (Dkt. No. 645) ("Kassabian Decl.") ¶¶ 12, 16 & 17 (explaining production,
27 identifying specific documents produced bearing Bates numbers ██████████
28 ███████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████

2 ████████████████████████████████, and referencing sample documents

3 produced); Surreply Declaration of Rachel Herrick Kassabian filed concurrently

4 ("Surreply Kassabian Decl.") ¶ 3 (identifying additional processing documents and

5 logs produced bearing Bates numbers ███████████████████████).

6 P10's incessant arguments to the contrary ignore reality. Google did not violate the

7 May 13, 2008 Order.

8   P10's Reply goes on to present a disorganized list of twelve gripes P10 has

9 concerning Google's "DMCA log" documents. As a preliminary matter, these

10 arguments contradict P10's prior insistence that Google never produced such

11 documents. Reply at 6-8.[1] Contradictions aside, P10's complaints are largely a re-

12 hash of prior arguments, and not one has merit. Most importantly, none of these

13 complaints implicates any discovery order, much less the violation of one. Google

14 addresses them below, grouped by subject matter for the Court's convenience:

15   **Objections to Content (Nos. 1, 2, 3, 8, 9, 10): Irrelevant.** P10 claims that

16 Google's "DMCA log" documents do not include a variety of information P10 thinks

17 they should contain—for example, ██████████████████ (No. 1),

18 ████████████████████████████ (No. 2), ██████████

19 ██████████ (Nos. 8 and 9), and ████████████████████ (Nos. 3

20 and 10). Reply at 6-7. P10 has made all these claims before (see Motion at 9 and

21 17), and Google has already explained that they are completely irrelevant to the issue

---

23 [1]   P10 complains in a footnote that certain Bates ranges Google now identifies as

24 part of its "DMCA log" documents were not listed in Google's June 13, 2008

25 courtesy email. Reply at 6, n.5. P10 is correct – for the unremarkable reason that

26 Google supplemented its production of its DMCA tracking documents in the fall of

2008, *after* Google had provided the June 13, 2008 courtesy email. See Kassabian

27 Decl. ¶ 16 (referencing supplemental productions in August and September 2008).

This has nothing to do with any discovery order.

28

1 of discovery sanctions. Opp. at 6. Specifically, the Court's May 13, 2008 order
2 required Google to produce its DMCA log documents, and Google did so. That P10
3 might have kept a different type of log or used a different format has no bearing on
4 the fact that Google complied with the Court's Order and produced its DMCA log
5 documents.[2]

6 **Objections to Format (No. 11): False.** P10 also objects to the format of
7 Google's production, claiming that the documents were "disjointed" and "not
8 searchable." Reply at 7-8. Again, P10 has already presented this argument—
9 verbatim, in fact (see Motion at 11:18-19)—and Google has already shown it to be
10 false. Opp. at 6. Google's production was made in a fully-searchable format
11 (including the single-page TIFF and JPEG files)—and in a format to which P10's
12 counsel expressly agreed.[3] Id. P10's counsel Jeff Mausner submits a Reply
13 Declaration attempting to contradict the clear terms of his written agreement to
14 Google's single-page TIFF format of electronic document production, claiming that it

15 ─────────────

16 [2] Although presented in the guise of a "sanctions" motion, P10's arguments
17 regarding the sufficiency of the content of Google's DMCA tracking documents are a
transparent attempt to re-argue the merits of Google's qualification for safe harbor.
18 P10 had all of these DMCA tracking documents in its possession at the time it
19 opposed Google's DMCA Motions, and had a full and fair opportunity to make
whatever arguments it wished at that time. Those Motions are fully briefed and under
20 submission before Judge Matz. P10's belated and improper attempt to supplement its
21 prior briefing should be rejected out of hand.
[3] P10 cries that it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Google's DMCA Motions
22 because of the electronic file format of Google's document productions. Reply at 8-
23 9. But in fact, P10 *did* oppose Google's DMCA Motions on their merits—and also
managed to filed its own DMCA motion against Google—without ever raising an
24 objection regarding the format of Google's document productions. Nor could it in
25 any event, since P10 agreed to that format. See Opp. at 4. P10's principal holds
himself out to be an expert in computer science and technology, and P10 is an
26 extremely experienced litigant. P10 knew exactly what it was agreeing to in
27 consenting to Google's production of documents in single-page TIFF format, and
cannot now be heard to complain about this standard production format.

28

1 "was only for Google's production on Thursday, May 1, 2008, not for the
2 spreadsheet-type DMCA log specified in Judge Matz's later [May 13] Order." Reply
3 Declaration of Jeffrey N. Mausner dated December 13, 2009 (Dkt. No. 660) ¶ 5. This
4 statement is not credible. At an April 14, 2008 hearing, Judge Matz affirmed the
5 Court's February 22, 2008 order requiring Google to produce its DMCA log
6 documents on May 1, 2008 (though Judge Matz's written order did not issue until
7 May 13), and Mr. Mausner acknowledged his awareness of this production deadline
8 to Google's counsel in writing on more than one occasion. Surreply Kassabian Decl.
9 ¶¶ 6-10 and Exs. C-E. In fact, shortly after receiving Google's May 1, 2008
10 production, Mr. Mausner specifically asked Google to identify (by "bates number *or*
11 *tif number*") where in that production the DMCA log documents were located. Id. ¶
12 12 and Ex. F. Without question, P10 knew of and consented to Google's production
13 of its DMCA log documents in TIFF format. Although P10's Reply adds a new
14 objection that some of Google's color documents were produced in .jpg format, P10
15 can hardly complain about that format since its own production—the alleged virtues
16 of which P10 has extolled at length—includes large numbers of .jpg files. See, e.g.,
17 Joint Stipulation on Google's Motion to Compel (Dkt No. 408) at 109-110 (claiming
18 the "superiority of Perfect 10's current production" and referencing particular "jpg
19 files" contained therein). And as Google has already shown, P10 has never even
20 requested—much less obtained a court order—that Google produce its electronic
21 document productions in a different format. See Opp. at 6; Kassabian Decl. ¶ 15.
22 Again, no discovery order is implicated here.[4]

23
24

---

25 [4] On Reply, P10 again takes issue with certain unspecified redactions of certain
unspecified documents. Reply at 4. Google already explained that (1) the redactions
26 to Google's "log" documents were made to protect the attorney-client privilege (Opp.
at 6 n.7), and (2) the Blogger tracking spreadsheet was in fact produced in complete
27 and unredacted form. Id. (citing Blogger Reply at 7:12-14 and n.7). And in any
28 (footnote continued)

1     **Objections to Organization (Nos. 4, 5, and 12): Irrelevant.** P10 claims that
2 Google's "DMCA log" documents were somehow not "useful" to P10 because they
3 were not organized in a particular way—for example, by placing certain information
4 or other documents "next to" each other. Reply at 7-8. Again, Google has already
5 explained that it produced its documents as they exist at Google, which is all that is
6 required. Opp. at 6-7. No violation of any court order has occurred.

7     **Objections to Production Dates (Nos. 6 and 7): Irrelevant.** P10 next
8 objects to the dates of production of the Blogger and AdSense logs. Reply at 7.
9 Again, these arguments are nothing new (Motion at 10 and n.8), and Google has
10 previously refuted them. Opp. at 7. Specifically, there was nothing untimely about
11 Google's production and its supplementation of that production. Indeed, Google
12 produced its DMCA tracking spreadsheets for Blogger before P10 even *requested*
13 them. Id. P10's new claim that the Court's May 13, 2008 Order (issued months
14 before P10's Blogger claims even were added to the case) required the production of
15 the Blogger DMCA tracking spreadsheets is also belied by P10's statements at the
16 hearing resulting in that Order, in which P10 requested only "a DMCA log for
17 *search*." Surreply Kassabian Decl., Ex. C (transcript of April 14, 2009 hearing). And
18 even were P10 correct (though it is not) that Google should have produced these
19 documents in May 2008 rather than August/September of 2008, P10 could not
20 possibly articulate how this slight delay could warrant a ***complete denial*** of Google's
21 DMCA Motions as a sanction. P10 had ample time to review these documents, since
22 Google's DMCA Motions were not filed until July 2009, nearly a year later. Once
23 again, there is no discovery violation here, much less a violation that prejudiced P10.

24
25
26

27 event, no discovery order is implicated by this allegation since P10 has never filed a
motion or obtained an order regarding these redactions.
28

1
2

**B.** **Google's Production Of Third-Party Notices Complied With the Court's Order.**

3   P10's reply next argues (again) that Google should have but did not produce
4   third-party DMCA notices concerning Google's Blogger service. See Reply at 9-12.
5   As before, P10 is still wrong. Google has already shown that P10 never *requested*
6   third-party Blogger notices, nor did this Court order their production. Opp. at 9-10;
7   see also Kassabian Decl. ¶¶ 12 and 17 (referencing Google's production of other
8   third-party notices in response to the Court's May 22, 2006 and May 13, 2008 Orders
9   at ███████████████████████████████████████).[5] As
10  previously explained, P10 represented to Judge Matz that if it were permitted to add
11  Blogger claims to its complaint, it would then need to serve Blogger-related
12  discovery requests. Opp. at 7; Kassabian Decl. ¶¶ 20-22, Ex. Q. P10 did not do so
13  until fourteen months later, in September 2009—and even those requests did not ask
14  for Blogger DMCA notices. Opp. at 7; Kassabian Decl. ¶ 23. P10's reply brief
15  completely ignores these glaring facts. There is no discovery order violation here.

16  Notwithstanding the immutable fact that P10 never requested Blogger DMCA
17  notices, P10's reply presses four reasons why it thinks Google should have produced
18  them anyway. These are merely re-packaged versions of P10's prior arguments, and
19  fail for the same reasons previously provided.

20
21   [5] P10 wildly accuses that not producing Blogger notices ████████
22   ██████████████ Reply at 5. But Judge Matz has already found otherwise. See
23   July 16, 2008 Order ("P10 argues vociferously that Google concealed its storage of
24   full-size images during discovery and misrepresented this fact to this Court and the
25   Ninth Circuit. That argument is dubious."). Nor could it even plausibly be true—
26   Google's acquisition of Blogger was publicly reported in 2003 (see, e.g.,
     http://searchenginewatch.com/2161891), and Google's ownership of Blogger is
27   evident on the Blogger website itself. And most importantly, Google was not obliged
28   to produce documents P10 never requested.

1    First, P10 claims that Blogger URLs appear in Google search results and that
2   certain Blogger URLs incidentally appeared in certain of P10's 2005 DMCA notices.
3   Reply at 10. This is correct, but irrelevant—Blogger URLs certainly do appear in
4   Google search results, along with everything else Google indexes, but it does not
5   follow that everything Google indexes is part of P10's case. Nor is it relevant that an
6   occasional Blogger URL appeared in P10's DMCA notices directed to Web and
7   Image Search. See Blogger Motion at 8 (Dkt. No. 427).[6] P10 sought leave to amend
8   its complaint to add Blogger claims in July 2008—which it would not have needed to
9   do if in fact Blogger has always been a part of the case. At that time, P10 professed
10  that it—the master of its case—did not know that it had Blogger claims against
11  Google until shortly before it approached the Court to seek amendment. See P10's
12  Motion for Leave to File a Second Amended Complaint (Dkt. No. 297) at 2 (claiming
13  that P10 "only recently learned about" its Blogger allegations). Google cannot be
14  sanctioned for not producing documents regarding matters even the plaintiff did not
15  consider to be a part of its case.

16       Second, P10 again claims that its Request No. 51 required the production of
17  Blogger notices. Reply at 10. It did not, and Google has already refuted this claim in
18  detail. Opp. at 9-10.

19       Third, P10 claims for the first time that because Google voluntarily produced
20  some Blogger notices, it should have produced more. Reply at 11. This is irrelevant
21  to P10's demand for sanctions, since again, P10 never requested Blogger notices and
22  this Court never ordered their production. Opp. at 9-10.

23

24

25     [6]  In this surreply Google refers to its Motion for Summary Judgment re: Safe
26  Harbor under 17 U.S.C. § 512(d) for Web and Image Search (Dkt. No. 428) as its
27  "Search Motion" and its Motion for Summary Judgment re: Safe Harbor Under 17
    U.S.C. § 512(c) for its Blogger Service (Dkt. No. 427) as its "Blogger Motion."
28

1         **Fourth,** P10 claims that Google's production of its Blogger DMCA tracking
2    spreadsheets was not timely, and that P10 was ███████████████████████
3    This has nothing to do with the production of DMCA notices, and is redundant of
4    P10's earlier arguments regarding Google's DMCA logs (see p. 6, supra), but in any
5    event, P10 is wrong again.  Google timely produced its Blogger DMCA tracking
6    sheets in August 2008 – just one month after P10 added its Blogger claims, and
7    before P10 *even requested* them.  Opp. at 9-10.  Nor could P10 possibly articulate
8    prejudice from the timing of this production.  P10 had several months to review these
9    documents before it deposed Google's Rule 30(b)(6) witness on DMCA issues in
10   November 2008, and nearly a year to review them before Google filed its DMCA
11   Motions in July 2009.  Opp. at 9-10; Kassabian Decl. ¶¶ 22-23.  P10 may have failed
12   to do so, but Google cannot be blamed for that.

13        **C.**    **Google Has Produced Notices Of Termination As The Court**
14            **Ordered.**

15        P10's Reply repeats its objections to Google's production of "notices of
16   termination."  Reply at 12-13; see also Motion at 13.  But as already shown, Google
17   did produce such termination notices and other termination documents.  Opp. at 10;
18   Kassabian Decl. ¶ 25 & Ex. S (attaching sample produced documents with bates
19   numbers); Surreply Kassabian Decl. ¶ 4 (listing responsive documents produced at
20   ██████████████████████████████████████████████████ ); Poovala
21   Decl. (Dkt. Nos. 433-435) ¶ 37 and Ex. J (Blogger spreadsheet ████████ ); id. at
22   ¶ 38 and Ex. LL (AdSense spreadsheet ██████████████ ).  P10 also reiterates that
23   Google supposedly violated the Court's May 2006 Order by failing to produce
24   termination notices for Blogger.  But again, that Order did not encompass Blogger
25   documents because Blogger was not part of the case in until July 2008—over two
26   years after that Order issued.  Opp. at 9-10 and n.13.  Nor has P10 ever requested
27   such Blogger documents, much less obtained a Court order compelling them.  Id.
28   And in any event the Blogger DMCA tracking spreadsheets provide ███████████

1   ████████. Poovala Decl. (Dkt. Nos. 433-435) ¶ 37 and Ex. J (Blogger spreadsheet

2   ████████). No discovery order has been violated. Moreover, P10 makes no

3 showing of prejudice suffered from not having more termination documents, nor

4 could it. Google has already produced documents showing exactly which repeat

5 infringers were terminated, and when. See Search Motion at 6-7.

6     **D.**    **There Has Been No Discovery Order Violation Regarding**

7         **Communications With Particular Alleged AdSense Infringers.**

8     P10 next claims that Google did not produce certain communications with the

9 ████████████████ including ██████ and ████████ Reply

10 at 13. In fact, P10 admits that Google *has* produced communications related to these

11 websites. Reply at 13; Reply Declaration of Norman Zada dated December 13, 2009

12 (Dkt. No. 659, filed under seal) ("Zada Reply Decl.") ¶ 11 (████████

13 ████████████████████). P10 speculates

14 that there might be some unidentified additional communications, but does not

15 specify what communications it believes are missing, what those communications

16 might contain, or why or how P10 was prejudiced in opposing Google's DMCA

17 Motions without them. Google complied with the Court's 2006 Order and produced

18 communications with the owners of the websites listed in Request No. 29 "to the

19 extent that ownership information is reflected in Google's records" on April 18, 2006

20 at ████████ and on April 26, 2006 at ████████. Surreply

21 Kassabian Decl. ¶ 2.[7] No discovery order has been violated.

22

23

24

25    [7]   As Google has repeatedly explained to P10, ████████

26 ████████████████████████████

27 ████████████████████████████. Kassabian

  Decl., Ex. H. This is not a basis for evidentiary sanctions.

28

GOOGLE'S SURREPLY RE. PERFECT 10'S MOTION FOR EVIDENTIARY AND OTHER SANCTIONS

**E.  Google's Production of Documents Regarding Its Repeat Infringer Policy Complied With the Court's Order.**

P10's Reply again objects that Google should have, but has not, produced repeat infringer policy documents referencing the phrases ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Reply at 14; see also Motion at 13-14. P10 is wrong. As Google previously explained, Google collected and produced its repeat infringer documents, including its public-facing terms of service and the actual processing documents reflecting Google's implementation of its repeat infringer policies. Opp. at 8; Kassabian Decl. ¶¶ 16, 26 (identifying responsive documents produced at ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮). The Court's May 22, 2009 Order merely required production of "nonprivileged responsive documents" for P10's Request No. 30, seeking all versions of Google's "repeat infringer policy, from 2000 to the present." That is what Google produced. Google is not required to create documents in response to P10's discovery requests, nor was it required to produce privileged documents. Google has complied with this Order. Opp. at 8-9.[8]

---

[8]  P10 also repeats its argument that Google has violated the DMCA by not including the phrases ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in its public repeat infringer policy. Reply at 14; see also Motion at 13-14. This is a merits argument, not a discovery argument, and thus is irrelevant here. Moreover, it is incorrect. The DMCA only requires that Google adopt and reasonably implement a repeat infringer policy, and inform its subscribers and account holders of same. 17 U.S.C. § 512(i). Google had indeed informed its subscribers and account holders that its policy is to terminate repeat infringers. Poovala Decl. (Dkt. Nos. 433-435) ¶¶ 36-39. The DMCA has no requirement that service providers ▮▮▮▮▮▮▮▮▮▮ and P10 cites no authority to the contrary.

1    **F.    Google's Production of Internal Reports And Memoranda**

2            **Pertaining to Certain Custodians Complied With the Court's Order.**

3    P10 again insists that Google failed to produce certain "reports" or

4    "memoranda" on particular subjects involving particular custodians. Reply at 15;

5    Motion at 19-20. Google has already refuted this argument as well—Google

6    searched for responsive documents and produced the ▮▮▮▮▮▮▮▮▮▮▮▮

7    documents it located. Opp. at 11; Kassabian Decl. ¶ 31 (identifying responsive

8    documents produced at ▮▮▮▮▮▮▮▮▮▮). No discovery order was violated.[9]

9    **G.    Google Has Produced Communications Between Google And**

10          **Certain Website Owners in Compliance with the Court's Order.**

11    P10 claims that Google has not complied with the portion of Judge Hillman's

12    May 22, 2006 Order requiring production of "communications between Google and

13    the owners of the following websites, to the extent that ownership information is

14    reflected in Google's records: [list of websites]" and/or the portion requiring

15    production of "[a]ll DOCUMENTS that constitute or embody GOOGLE's response

16    to any notice or complaint that GOOGLE received from Perfect 10 either directly or

17    indirectly in either 2004 or 2005. Reply at 16. P10 is again wrong.

18    Regarding the former, Google has already explained that it complied with the

19    Court's 2006 Order and produced communications with the owners of the websites

20    listed in Request No. 29 "to the extent that ownership information is reflected in

21    Google's records" (as the Order states) on April 18, 2006 at ▮▮▮▮▮▮▮

22    and on April 26, 2006 at ▮▮▮▮▮▮▮▮. See § I.D, supra; Surreply Kassabian

23    Decl. ¶ 2. And regarding the latter, as above, Google has also produced these –

24

25    [9]  P10 apparently finds it "inconceivable" that ▮▮▮▮▮▮▮▮▮▮

26    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

27    ▮▮▮▮▮▮▮▮▮▮▮ Reply at 19. P10 of course has no basis

    whatsoever for its speculation.

28

1 specifically, its DMCA processing documents regarding P10. Kassabian Decl. ¶¶ 12

2 and 16 (identifying responsive documents located at █████████████████

3 ████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████ );

5 Surreply Kassabian Decl. ¶ 3 (identifying additional responsive documents located at

6 ████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 ████████████████████████████████████████████████ ); see

9 also Declaration of Rachel Herrick Kassabian in Support of Google's Opposition to

10 P10's Motion for a Document Preservation Order (Docket No. 693) ¶14 ("Google has

11 produced over 1,000 emails from various email accounts regarding its processing of

12 Perfect 10's claimed DMCA notices"). Indeed, even P10 admits that some "such

13 communications" have been produced. Reply at 16.

14 **II.  NONE   OF   THE   ALLEGED   "FACTS"   P10   CLAIMS   ARE**

15 **"CONCEDED"   SUPPORT   P10'S   DEMAND   FOR   DISCOVERY**

16 **SANCTIONS.**

17 P10's Reply claims that Google "has not disputed" a number of its accusations,

18 and that therefore, Google is precluded from any DMCA safe harbor. P10 misses the

19 mark, since none of these supposed concessions supports evidentiary sanctions.

20 **A.  Whether   Google's   Tracking   Spreadsheets** █████████████

21 █████████ **Is Irrelevant to Discovery Sanctions.**

22 P10 claims that Google concedes that Google's "DMCA logs" do not contain

23 █████████████████████ as P10 defines it. Reply at 17 (repeating Reply

24 at 6, itself repeating Motion at 3). But as Google has already shown, the DMCA does

25 not require Google to track ██████████ as P10 uses the term—Google need only track

26 *accounts*, and terminate them where appropriate (see Opp. at 18; Blogger Reply at 9

27 (Dkt. No. 504)). What matters here is that Google produced its DMCA log tracking

28 documents as ordered. See Opp. at 6-7. There is no discovery violation here.

**B.    The Contents of Google's Blogger And AdSense Spreadsheets Are Irrelevant to Discovery Sanctions.**

P10 again repeats a litany of alleged "deficiencies" in Google's AdSense spreadsheets, claiming that Google has conceded them. Reply at 17-19. Google has not, but more importantly, as Google has already pointed out in its opposition brief, P10's complaints regarding the contents of the AdSense sheets go to the merits of the DMCA safe harbor issue and are not in fact a discovery dispute. Opp. at 17-19. The only relevant question here is whether Google produced its "DMCA log" documents, and Google did so. Opp. at 6. In any event, Google has already refuted P10's accusations regarding the contents of these spreadsheets (Opp. at 17-20) and its repeat infringer policy (Opp. at 8-9).

**C.    The "Start-Dates" For Google's Blogger and AdSense Spreadsheets Are Irrelevant to Discovery Sanctions.**

P10 again insists that because Google's Blogger and AdSense logs begin on particular dates, Google is somehow ineligible for DMCA safe harbor before those dates. Reply at 19; Motion at 16. As Google has already shown, P10 is wrong again—Google produced its tracking documents, thereby fulfilling its discovery obligations. See Opp. at 6-7. On the merits, P10 presents no authority that the DMCA requires maintenance of any particular type of "log" document for any particular period of time. See id.[10]

**D.    DMCA Notices Regarding ███████ Are Irrelevant to Discovery Sanctions.**

P10 repeats its claim that Google "failed to take action" in response to alleged DMCA notices received regarding one ████████████

---

[10]  P10's accusation regarding the start date of Google's Blogger log is also false – Google produced Blogger DMCA tracking spreadsheets dating back to ████████. See Blogger Reply at 6.

GOOGLE'S SURREPLY RE. PERFECT 10'S MOTION FOR EVIDENTIARY AND OTHER SANCTIONS

01980.51320/3272736.1

1       █████. Reply at 19; Motion at 16. Again, this is irrelevant because (1) to the extent

2 it is a discovery issue, P10 has never served discovery requests regarding Google

3 Groups, nor has any order issued on that subject, and (2) to the extent it is a merits

4 issue, it has no bearing on this discovery sanctions motion. Opp. at 7 n.9.

      **E.**    **Purported DMCA Notices Regarding Rapidshare.com Are**

           **Irrelevant to Discovery Sanctions.**

7       P10 again urges that Google produced some DMCA notices received regarding

8 "rapidshare.com," but not others, and that Google should have "take[n] action" in

9 response. Reply at 20; Motion at 12-13 and 17. Google has previously refuted this

10 claim (Opp. at 18). Moreover, because P10 admits that Google produced at least six

11 separate DMCA notices regarding rapidshare.com, P10's claim that it would have

12 discovered "repeat infringers" from production of more such documents falls flat—

13 the alleged additional notices would have identified the same entity, rapidshare.com.

14 Nor does P10's merits-based argument that Google should have responded differently

15 to these notices under the DMCA have any place in this discovery sanctions motion.

16 No discovery order has been violated.

      **F.**    **Google's Substantive Response to The Referenced 28 P10 DMCA**

           **Notices Is Irrelevant to Discovery Sanctions.**

19       P10 again points to 28 of its own purported DMCA notices and suggests that

20 Google should have responded to them differently than it did. Reply at 21; Motion at

21 16-17. This too is a merits issue, not a discovery issue, and has no bearing here. On

22 the merits, Google has already refuted these claims in its DMCA Motions. <u>See</u>

23 Search Motion at 19-24; Blogger Motion at 7-10.

      **G.**    **Google's Substantive Response to the Referenced Three Notices**

           **Regarding Blogger Infringers Is Irrelevant to Discovery Sanctions.**

26       P10 repeats its claim that Google did not respond appropriately to particular

27 DMCA notices regarding particular Blogger sites. Reply at 21; Motion at 11. Again,

28

1 | this is not a discovery issue. On the merits, Google has already refuted these claims
2 | in its DMCA Motions. <u>See</u> Blogger Motion at 7-10.

3 | **H.** **The Production Format Of Google's DMCA Spreadsheets Is**
4 | **Irrelevant to Discovery Sanctions, and P10 Agreed to It In Any**
5 | **Event.**

6 | P10 again objects to the format of Google's document production. Reply at
7 | 21-22. But as Google has pointed out (including at § I.A, <u>supra</u> and Opp. at 6), P10
8 | *agreed* to Google's format of production, and Google's electronic documents have *all*
9 | been produced in searchable format. Opp. at 4 and 6. Nor was there ever any Court
10 | order on this subject, so plainly, there could have been no violation of same.

11 | **I.** **P10's Claims Regarding Its "Adobe Notices" Are Irrelevant to**
12 | **Discovery Sanctions.**

13 | Lastly, P10 presents yet another objection to the contents of Google's "DMCA
14 | log" documents, ██████████████████████████████

15 | ████████████████ Reply at 22. Again, Google produced its log documents as
16 | they exist, which is all the Court's order requires. <u>See</u> Opp. at 6. P10's remaining
17 | merits arguments regarding whether Google's processing efforts were expeditious
18 | have no place in this discovery sanctions motion, and in any event, Google has
19 | already refuted them. <u>See</u> Search Motion at 12-15; Blogger Motion at 10.

20 | **III.** **GOOGLE'S PROCESSING OF P10 DMCA NOTICES SUBMITTED**
21 | **AFTER THE CLOSE OF DMCA BRIEFING ALSO IS IRRELEVANT**
22 | **TO DISCOVERY SANCTIONS.**

23 | P10's Reply next discusses the 95 DMCA notices with which P10 bombarded
24 | Google in a six-week period beginning on October 16, 2009. P10 argues that because
25 | Google has processed them, they must not be deficient. Reply at 22-23. As a
26 | preliminary matter, this is not a discovery issue, and thus is irrelevant here. On the
27 | merits, P10 is wrong because a service provider's attempt to process a defective
28 |

1   DMCA notice may not be used as evidence that the notice was in fact DMCA-
2   compliant. See, e.g., Search Motion at 23-24; Search Reply at 8-9 (Dkt. No. 505).

3   **IV.   AS THE COURT HAS ALREADY INSTRUCTED P10, ITS**
4   **ARGUMENTS REGARDING CHILLINGEFFECTS.COM ARE**
5   **MISPLACED, AND HAVE NOTHING TO DO WITH ANY**
6   **DISCOVERY ORDER.**

7   P10 argues that Google infringes P10's copyrights by forwarding P10's
8   DMCA notices to chillingeffects.com. This argument is irrelevant here because it
9   does not even *implicate* a discovery order, let alone constitute a violation of one. Nor
10  is it in any way relevant to DMCA safe harbor issues. And moreover, the Court has
11  already explicitly instructed P10 at the September 22, 2009 hearing that it cannot
12  raise objections regarding chillingeffects.com as a sidebar to another discovery
13  motion. P10's arguments have no place here.

14  **V.   GOOGLE'S "CHARACTERIZATIONS" OF P10'S MOTION ARE**
15  **ACCURATE.**

16  Lastly, P10 claims that Google has somehow "mischaracterized" its Motion.
17  Not so. First, P10 argues that its Motion is not a "sur-reply." Reply at 24. This is
18  facially incorrect. In both its moving and reply papers, P10 presents a wide variety of
19  substantive arguments going to the merits of the DMCA safe harbor issue—for
20  example, the sufficiency of Google's repeat infringer policy, the contents of P10's
21  DMCA notices, and the adequacy of Google's responses to various DMCA Notices.
22  See, e.g., Motion at 1-2, 5, 7; Reply at 2, 5, 14-15. None of these arguments have any
23  place here, and are inappropriate, untimely and meritless in any event, as Google has
24  previously explained. See, e.g., Opp. at 14.

25  Second, P10 claims that it ████████████████████████████
26  ████████████████████ Reply at 24. But P10's Motion of course *does* seek
27  additional discovery, in the form of additional documents that P10 believes (1) exist,
28  and (2) should be produced now. See Motion at 1-6. Nevertheless, not only did P10

1 waive any claim to additional discovery by failing to bring a Rule 56(f) motion in the
2 first instance, it now expressly disclaims relief under Rule 56(f) as well. For both
3 reasons, P10 has waived any claim to reopen briefing on Google's DMCA Motions
4 following pursuit of additional discovery. See Access Telecom, Inc. v. MCI
5 Telecommunications Corp., 197 F.3d 694, 719 (5th Cir. 1999) (plaintiff "waived the
6 issue of inadequate discovery" by failing to file a Rule 56(f) motion); Sullivan v. City
7 of Springfield, 561 F.3d 7, 16 (1st Cir. 2009) (plaintiffs could not argue that summary
8 judgment was premature when "they affirmatively requested that the court resolve the
9 case on the existing evidence").

10      Third, P10 insists that its request for a special master is appropriate. It is not.
11 P10 has failed to demonstrate the need for a special master to rule on this motion, as
12 Google has already shown. Opp. at 20-21. P10 does not even address the relevant
13 standards for that determination, much less articulate any reason why this Court is
14 somehow incapable of ruling on discovery matters. Plainly, the Court is more than
15 qualified to determine the scope of and compliance with its own discovery orders.
16 Indeed, Judge Matz has already implicitly rejected the "special master" proposal by
17 transferring this Motion to the Court for determination as it deems appropriate. See
18 Surreply Kassabian Decl., Ex. A (December 16, 2009 Order (Dkt. No. 684)).

19 <center>**Conclusion**</center>

20      Google respectfully requests that P10's Motion be denied and/or stricken in its
21 entirety, and that P10 and/or its counsel be sanctioned in the amount of $5,000 for
22 subjecting this Court to yet another baseless, groundless, and improper filing.

23 DATED: January 8, 2010      QUINN EMANUEL URQUHART OLIVER &
24                         HEDGES, LLP
25
26                         By   /Rachel Herrick Kassabian
27                              Rachel Herrick Kassabian
                             Attorneys for Defendant GOOGLE INC.
28