| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8 | QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP<br>  Michael T. Zeller (Bar No. 196417)<br>  michaelzeller@quinnemanuel.com<br>865 South Figueroa Street, 10th Floor<br>Los Angeles, California 90017-2543<br>Telephone: (213) 443-3000<br>Facsimile: (213) 443-3100<br>  Charles K. Verhoeven (Bar No. 170151)<br>  charlesverhoeven@quinnemanuel.com<br>50 California Street, 22nd Floor<br>San Francisco, California 94111<br>  Rachel Herrick Kassabian (Bar No. 191060)<br>  rachelkassabian@quinnemanuel.com<br>555 Twin Dolphin Drive, 5th Floor<br>Redwood Shores, California 94065 |
| 9 | Attorneys for Defendant GOOGLE INC. |

<br>

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>GOOGLE INC., a corporation; and DOES 1 through 100, inclusive,<br><br>            Defendants.<br><br>AND COUNTERCLAIM<br><br>PERFECT 10, INC., a California corporation,<br><br>            Plaintiff,<br><br>    vs.<br><br>AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive,<br><br>            Defendants. | CASE NO. CV 04-9484 AHM (SHx)<br>[Consolidated with Case No. CV 05-4753 AHM (SHx)]<br><br>**DEFENDANT GOOGLE INC.'S RESPONSE TO PLAINTIFF PERFECT 10, INC.'S EVIDENTIARY OBJECTIONS TO THE REPLY DECLARATION OF RACHEL HERRICK KASSABIAN IN SUPPORT OF GOOGLE'S MOTION FOR A DOCUMENT PRESERVATION ORDER TO PREVENT FURTHER SPOLIATION OF EVIDENCE BY PERFECT 10, INC.**<br><br>[Supplemental Declaration of Rachel Herrick Kassabian filed concurrently]<br><br>Hon. Stephen J. Hillman<br><br>Date: January 15, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 550<br><br>Discovery Cut-off: None Set<br>Pre-trial Conference: None Set<br>Trial Date: None Set |

Google Inc. submits the following Response to Perfect 10, Inc.'s ("P10") Evidentiary Objections to the Reply Declaration of Rachel Herrick Kassabian in support of Google's Motion for a Document Preservation Order to Prevent Spoliation of Evidence by Perfect 10, Inc. (Dkt. No. 709) ("Objections").

More than *two years* after Google first requested certain basic information about P10's production of financial reports through the meet and confer process, and only after Google has been forced to file *two separate discovery motions*, P10 now has *finally* provided that information in its purported "Objections" to the Kassabian Reply Declaration. P10's Objections underscore the impropriety of P10's continued and obstinate refusal to participate in the meet-and-confer process in good faith, as the Court's Local Rules require. P10 has no excuse for its "hide the ball" tactics, which have forced this Court to consider potentially avoidable motion practice time and again. P10 should be admonished and/or sanctioned for its conduct.

P10's Objections also fail to dispute Google's evidence that, not only did P10 fail to take appropriate steps to ensure that documents related to its publicity claims were preserved, certain of those documents actually have been destroyed. P10's Objections should be overruled, and Google's motion for a document preservation order should be granted.

## I. P10'S REFUSAL TO ANSWER BASIC QUESTIONS REGARDING ITS PRODUCTION OF FINANCIAL DOCUMENTS FOR MORE THAN TWO YEARS, FORCING MOTION PRACTICE THAT COULD HAVE BEEN AVOIDED, SHOULD BE SANCTIONED.

P10 claims to be seeking actual damages in this case, so documents showing its financial condition are plainly relevant. Google has been seeking production of P10's basic financial records for nearly *four years*. See Supplemental Declaration of Rachel Herrick Kassabian, filed concurrently ("Supp. Kassabian Decl."), at Exh. A (Google's Request for Production No. 71, seeking documents related to P10's claimed monetary damages, served March 3, 2005). Because P10's production was

deficient, Google has spent the past *two years* attempting to meet and confer with P10 on these issues. See Supp. Kassabian Decl. at Exh. B (Ltrs. to J. Mausner dated 1/29/08 and 3/18/08 requesting production of such documents). Despite Google's efforts, for more than eighteen months P10 *consistently refused* to make a full and complete production of all of its monthly financial reports, or to explain what happened (if anything) to any missing reports. Id. at Exh. C (excerpts of the Declaration of Rachel Herrick Kassabian dated May 6, 2009 (Dkt. No. 408) at ¶ 51). P10's stonewalling ultimately forced Google to move to compel the production of these missing financial reports in May of 2009. See id. at Exh. D (Joint Stipulation on Google's Motion to Compel (Dkt. No. 408) at 25-26). In opposition to that motion, P10 represented that the missing monthly reports "don't exist for certain months," and accused that "Google has misrepresented that Perfect 10 instead has the records, but refuses to produce them." Id. (Joint Stipulation at 34).

On October 6, 2009, the Court granted Google's Motion to Compel in part, ordering P10 to produce *all* of its monthly financial reports—to the extent such documents exist—in complete and unredacted form. Id. at Exh. E (Order Granting in part Google Inc.'s Motion to Compel, dated October 6, 2009 (Dkt. No. 560) at ¶ 1). The following week, P10 produced a disk containing one massive .pdf file, and included a cover letter stating, in part: "Enclosed please find a disk containing Perfect 10's *HIGHLY CONFIDENTIAL* financial statements and tax returns, pursuant to the Order dated October 6, 2009." Id. at Exh. F (10/15/09 cover letter from P10). P10's cover letter did *not*, however, indicate whether any of the reports Google had identified as missing were included on this disk, and based on Google's review of that disk, Google believed it did not contain all such missing reports. See id.; see also id. at Exh. G (excerpts of the Reply Declaration of Rachel Kassabian dated January 6, 2010 (Dkt. No. 701) at ¶ 6).

Accordingly, by letter dated November 4, 2009, Google informed P10 that many monthly reports still appeared to be missing from P10's document production,

1 and asked P10 to produce all missing reports or, if such documents were no longer in
2 P10's possession, to explain what happened to them. Id. at Exh. H (11/4/09 Ltr. to J.
3 Mausner). P10 completely ignored this request for several weeks, and even then gave
4 only a partial, evasive response, stating that P10 produced financial statements "to the
5 extent such documents exist" and that certain financial statements for "relatively
6 recent years (for example 2007) … don't exist because they were not generated." Id.
7 at Exh. I (11/23/09 Email from J. Mausner to R. Kassabian). In subsequent meet-
8 and-confer correspondence Google followed up again, identifying the specific
9 monthly financial reports it believed were still missing from P10's production and
10 again asking P10 to identify specifically which of those reports other than the 2007
11 reports (1) were lost or destroyed (and how/when), and which (2) were never created.
12 Id. (email exchange beginning 11/4/09 and ending 1/5/10). P10 repeatedly refused to
13 give meaningful answers to these clear and simple questions in the meet-and-confer
14 process, instead simply reiterating without any specificity that P10 "produced its
15 existing financial statements." Id.
16      P10's evasiveness left Google with no choice but to raise P10's missing
17 financial reports with the Court, since the issue of document preservation is currently
18 pending before the Court and will be heard on January 15. See Google's Reply (Dkt.
19 No. 701). It was only then, *after* Google raised its concerns with the Court, that P10
20 finally stepped up and answered these simple questions (albeit in the guise of
21 "Evidentiary Objections" submitted in response to Google's Reply materials). See
22 Objections at 3-5 (finally providing a chart explaining what happened to each of the
23 missing financial reports). Specifically, P10 finally confirmed that (1) it had
24 produced 22 additional financial statements in its October 15, 2009 production, and
25 (2) the remaining missing financial statements were not generated "[a]s far as Perfect
26 10 can determine" (though P10 provided no declaration from Dr. Zada or P10's

accountant Mr. Hersh confirming this alleged fact).[1] P10's conduct is inexcusable. Had P10 simply provided this information in response to any one of Google's multiple letters and emails requesting it, there would have been no need for Google to raise it with the Court. Instead, P10's staunch refusal to participate in the meet and confer process forced Google to bring an issue to the Court's attention that could have been avoided.

Nor, unfortunately, is this the first time P10 has refused to meet-and-confer in good faith in this case. For example, Google first requested that P10 make available for copying and inspection its copyright registration and deposit materials—i.e. the fundamental, key documents for the copyright aspects of its case—on **March 31, 2008**. See Supplemental Declaration of Rachel Herrick Kassabian dated May 18, 2009 (Dkt. No. 420) at ¶ 18. P10 refused to agree until **May 8, 2009**—the very next day *after* Google was forced to file a motion to compel the inspection. Id. at Exh. H. (5/8/09 email from V. Kincaid to T. Nolan).

As another example, in the very Motion at issue now, Google repeatedly requested that P10 answer specific questions regarding its apparent spoliation of evidence, including whether P10 employees' computers were set to automatically delete emails, the location of any "backup" files for deleted emails, and whether P10 had taken appropriate steps to ensure preservation of documents relevant to this case. See Joint Stipulation on Google's Motion for a Document Preservation Order (Dkt. No. 657) at 19-20. P10 refused to answer these questions for *several months* (see id. at 8-9), and ultimately provided some information regarding the reasons for the deletion of emails and the presence of an apparent backup system only *after* Google

---

[1] P10's October 15, 2009 production of 22 previously-unproduced financial statements confirms that P10's protestations in opposition to Google's motion to compel were less than candid. See Suppl. Kassabian Decl. at Exh. D (Joint (footnote continued)

01980.51320/3276862.5
-4-
GOOGLE'S RESPONSE TO PERFECT 10'S EVIDENTIARY OBJECTIONS TO THE REPLY DECLARATION OF RACHEL HERRICK KASSABIAN

was forced to file its Motion. See P10's "Joint Stipulation" on Perfect 10's Motion for a Mutual Document Preservation Order (Dkt. No. 690, filed under seal) at 2-5.

As a third example, P10 has now brought its own retaliatory motion for a document preservation order—without engaging in any meaningful meet-and-confer, including by failing to identify any plausible basis for the motion. See Google's Opposition to Perfect 10's Motion for a Mutual Document Preservation Order (Dkt. No. 693) at 9-10.

And as still another example, at the September 22, 2009 hearing on two of Google's discovery motions (one of which addressed P10's improper confidentiality designations), P10 attempted to raise—again in retaliatory fashion—the entirely separate issue of *Google's* confidentiality designations. Supp. Kassabian Decl. at Exh. J (9/22/09 Hearing Transcript at 147:22-148:15). As Google made clear on the record, that issue was not properly before the Court, because (among other things) P10 had never met and conferred with Google about it. Id. The Court rightfully ignored P10's attempted sideshow. Id.

P10's incalcitrance continues to waste the Court's time—and Google's time. Google respectfully requests that at the upcoming hearing on January 15, 2010, P10 be admonished that if it continues to refuse to answer legitimate meet-and-confer questions or otherwise meaningfully participate in the meet and confer process, the Court will impose fee-shifting for any resulting motions brought. Indeed, the Local Rules and the Federal Rules expressly provide that sanctions may be appropriate in these circumstances. See Local Rule 37-4 ("The failure of any counsel to comply with or cooperate in the foregoing procedures may result in the imposition of sanctions."); Fed. R. Civ. Proc. 37(a)(5)(A) (permitting recovery of fees if the requested discovery is provided only after the motion was filed).

---

Stipulation at 34) (P10 accusing that "Google has misrepresented that Perfect 10
(footnote continued)

Moreover, P10's personal accusations against Ms. Kassabian are completely unwarranted, because P10 itself caused Ms. Kassabian's misunderstanding by refusing to answer basic questions regarding what P10 had and had not produced (as described above). Google's recent meet-and-confer correspondence made clear that Google intended to raise these issues with the Court at the January 15 hearing if the parties could not resolve them informally. See Supp. Kassabian Decl. ¶ 10 & Exh. I. P10 ignored these emails and refused to answer these basic questions (id. at Exh. G), knowing the result would be that Google would raise them—and P10 would then baselessly accuse Google of misstating the record. P10's gamesmanship must come to an end.

And lastly, P10 claims that Google should have raised these issues earlier. But Google of course *did* attempt to raise these issues earlier. In fact, Google first raised them to the Court more than eight months ago, in the Joint Stipulation on Google's prior motion to compel:

> During the meet and confer process, Perfect 10 refused to confirm whether it has these missing [monthly] financial statements in its possession, and if not, what happened to them. These are obviously critical issues. For example, if Perfect 10 destroyed the financial records just prior to or during this litigation, then Google is entitled to pursue spoliation sanctions against Perfect 10 . . . . Perfect 10 should be ordered to produce these documents without further delay, or to submit a sworn affidavit explaining what happened to these documents . . . .

Supp. Kassabian Decl. at Exh. D (Joint Stipulation at 26). Plainly this is not a new issue and P10 suffered no surprise or prejudice when Google mentioned it again by way of its Reply papers. Google also raised these issues with specific regard to P10's

---

instead has the [missing monthly financial] records, but refuses to produce them.")

October 15, 2009 production more than two months ago, on November 4, 2009. And as further described above, P10 failed to give meaningful answers to Google's questions on the spoliation issues prior to December 10, 2009, the date P10 returned its portions of the Joint Stipulation on Google's motion for a document preservation order. Google's good faith attempt to resolve this issue continued throughout December 2009 and into early January 2010. Suppl. Kassabian Decl. ¶ 10 & Ex. I. Yet P10 only provided the information on January 11—and even then, only by way of its Objections to Google's Reply papers (see Objections at 4), a full month after Google was forced to file its Motion. Given P10's obstinate refusal to answer these simple questions for months on end, Google can hardly be faulted for again seeking recourse from the Court.

## II. P10'S OBJECTIONS FAIL TO ADDRESS GOOGLE'S EVIDENCE REGARDING DESTRUCTION OF DOCUMENTS RELEVANT TO P10'S PUBLICITY CLAIMS.

P10's Objections do not address—and thus, obviously, do not rebut—the merits of Google's evidence regarding P10's failure to preserve relevant documents pertaining to the publicity rights of the "Nine Models," which P10 is purporting to assert. See Google's Reply (Dkt. No. 701) at 4-5, 7. This un-rebutted evidence offers further support for Google's motion for a preservation order. P10 was obliged to preserve documents relevant to the publicity rights it claims to have acquired—apparently for the sole purpose of asserting them in this litigation. P10 failed to do so—both by failing to gather and preserve them itself, and by failing to instruct the "Nine Models" to do so as well. See, e.g., In re NTL, Inc. Securities Litigation, 244 F.R.D. 179, 194 (S.D.N.Y. 2007) (preservation obligation extends to the 'key players' in the case") (citing Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 218 (S.D.N.Y 2003)); Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) ("If a party cannot fulfill this duty to preserve because he does not own or

control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence."). See also Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 73-74 (S.D.N.Y. 1991) ("a party's discovery obligations are not satisfied by relying on non-parties to preserve documents").

Instead, P10 claims that Google should have raised these issues earlier, in its moving papers. Again, P10 cannot fault Google for this. Google raised the issue of apparent document destruction by one of the "Nine Models" months ago, first by letter dated October 27, 2009, and in repeated follow-up correspondence, including on November 4, 16 and 24, and December 14 and 15, but P10 staunchly refused to answer Google's questions for nearly two months, claiming it would not do so until after what it believed was the due date for corrections to the deposition transcript. Supp. Kassabian Decl. ¶ 12. So Google waited, hoping for a good-faith response from P10. P10 did not provide a response until December 22, 2009—weeks *after* Google was forced to file its Motion for a Preservation Order. Id. Google then raised this additional relevant evidence of document destruction with the Court as soon thereafter as it could, via its Reply brief. See Google's Reply at 4-5. And in any event, P10 has now had the opportunity to respond (albeit unpersuasively) to this evidence in its Objections, so it can hardly claim any prejudice from Google having included this additional evidence on Reply.

DATED: January 14, 2010        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

By  /s/ Rachel Herrick Kassabian
    Rachel Herrick Kassabian
    Attorneys for Defendant GOOGLE INC.