```
 1

 2

 3                    UNITED STATES DISTRICT COURT

 4                   CENTRAL DISTRICT OF CALIFORNIA
                            WESTERN DIVISION
 5

 6
      PERFECT 10, INC.,              )
 7                                   )
                                     )
 8           PLAINTIFF,              )
                                     )
 9           VS.                     )  CASE NO. CV 04-9484-AHM(SHX)
                                     )
10                                   )
      GOOGLE, INC., ET AL.,          ) LOS ANGELES, CALIFORNIA
11                                   ) JANUARY 15, 2010
                                     ) (10:08 A.M. TO 12:44 P.M.)
12           DEFENDANTS.             ) (1:08 P.M. TO 1:51 P.M.)
      _____)
13

14                              HEARING
15          BEFORE THE HONORABLE STEPHEN J. HILLMAN
                 UNITED STATES MAGISTRATE JUDGE
16

17

18

19    APPEARANCES:            SEE NEXT PAGE

20    COURT REPORTER:         RECORDED; COURT SMART

21    COURTROOM DEPUTY:       SANDRA BUTLER

22    TRANSCRIBER:            DOROTHY BABYKIN
                              COURTHOUSE SERVICES
23                            1218 VALEBROOK PLACE
                              GLENDORA, CALIFORNIA  91740
24                            (626) 963-0566

25    PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
      TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

```
 1   APPEARANCES:  (CONTINUED)
     FOR THE PLAINTIFF:       LAW OFFICES OF JEFFREY N. MAUSNER
 2                            BY:  JEFFREY N. MAUSNER
                                   ATTORNEY AT LAW
 3                            21800 OXNARD STREET
                              SUITE 910
 4                            WOODLAND HILLS, CALIFORNIA  91367

 5
     FOR GOOGLE:              QUINN EMANUEL URQUHART OLIVER &
 6                              HEDGES
                              BY:  THOMAS NOLAN
 7                                 ATTORNEY AT LAW
                              865 SOUTH FIGUEROA STREET
 8                            10TH FLOOR
                              LOS ANGELES, CALIFORNIA  90017
 9
                              QUINN EMANUEL URQUHART OLIVER &
10                              HEDGES
                              BY:  RACHEL M. HERRICK KASSABIAN
11                                 ATTORNEY AT LAW
                              555 TWIN DOLPHIN
12                            SUITE 560
                              REDWOOD SHORES, CALIFORNIA  94065
13
                              QUINN EMANUEL URQUHART OLIVER &
14                              HEDGES
                              BY:  BRAD LOVE
15                                 ATTORNEY AT LAW
                              50 CALIFORNIA STREET
16                            SAN FRANCISCO, CALIFORNIA  94111

17   FOR AMAZON.COM,          TOWNSEND TOWNSEND & CREW
     ALEXA INTERNET:          BY:  MARK JANSEN
18                                 ATTORNEY AT LAW
                              TWO EMBARCADERO CENTER
19                            8TH FLOOR
                              SAN FRANCISCO, CALIFORNIA  94111
20
     ALSO PRESENT:            DR. NORMAN ZADA
21                            PRESIDENT, PERFECT 10

22                            MELANIE POBLETE
                              LEGAL ASSISTANT, PERFECT 10
23

24

25
```

```
 1                         I N D E X
     CASE NO. CV 04-9484-AHM(SHX)              JANUARY 15, 2010
 2
     PROCEEDINGS:
 3            1.   PERFECT 10'S MOTION FOR DOCUMENT PRESERVATION
     ORDER TO PREVENT FURTHER SPOLIATION OF EVIDENCE;
 4            2.   PERFECT 10'S MOTION FOR EVIDENTIARY SANCTIONS
     AGAINST GOOGLE;
 5            3.   GOOGLE'S MOTION FOR DOCUMENT PRESERVATION ORDER
     TO PREVENT FURTHER SPOLIATION OF EVIDENCE BY PERFECT 10;
 6            4.   BATES STAMP ISSUE

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1    LOS ANGELES, CALIFORNIA; FRIDAY, JANUARY 15, 2010; 10:08 A.M.

2              THE CLERK:  CALLING CASE NUMBER CV 04-9484, PERFECT

3    10 VERSUS GOOGLE.

4              COUNSEL, PLEASE ENTER YOUR APPEARANCE FOR THE

5    RECORD.

6              MR. MAUSNER:  GOOD MORNING, YOUR HONOR.

7              JEFF MAUSNER FOR THE PLAINTIFF PERFECT 10.  ALSO

8    WITH ME IS DR. NORM ZADA AND LEGAL ASSISTANT MELANIE POBLETE.

9              THE COURT:  GOOD MORNING.

10             MS. KASSABIAN:  GOOD MORNING, YOUR HONOR.

11             RACHEL HERRICK KASSABIAN FROM QUINN EMANUEL HERE ON

12   BEHALF OF DEFENDANT GOOGLE.  AND WITH ME ARE MY COLLEAGUES

13   BRAD LOVE AND TOM NOLAN.

14             THE COURT:  GOOD MORNING.

15             MR. JANSEN:  GOOD MORNING, YOUR HONOR.

16             MARK JANSEN APPEARING FOR THE AMAZON.COM AND ALEXA

17   INTERNET DEFENDANTS.

18             THE COURT:  GOOD MORNING.

19             MR. JANSEN:  GOOD MORNING.

20             THE COURT:  I'VE SPENT A SUBSTANTIAL NUMBER OF

21   HOURS ON THESE MOTIONS.  AND UNLESS SOMEONE HAS A BETTER

22   IDEA, I THOUGHT I WOULD TAKE THEM UP IN THE FOLLOWING ORDER.

23             NUMBER ONE, P-10'S EVIDENTIARY SANCTIONS MOTION,

24   FOLLOWED BY P-10'S DOCUMENT PRESERVATION MOTION, FOLLOWED BY

25   GOOGLE'S DOCUMENT PRESERVATION MOTION, AND FINALLY, AND

1    HOPEFULLY BRIEFLY, THE BATES STAMPING ISSUE FROM LAST TIME.

2              I KNOW I CAN'T FINE TUNE -- WELL, I GUESS I COULD

3    FINE TUNE THE LENGTH OF TIME THAT I EXPECT ARGUMENT TO TAKE

4    ON EACH AND ALL OF THESE MOTIONS.  I WON'T TRY TO BE PRECISE,

5    BUT I WILL SAY GIVEN THE AMOUNT OF TIME I'VE SPENT ON THE

6    MOTIONS, I WOULD THINK THAT WE SHOULD BE DONE BY 11:30, IF

7    NOT EARLIER.  I JUST DON'T NEED A LOT OF -- OR ANY

8    REITERATION OF THE ARGUMENTS.

9              I'VE GONE OVER THE DECLARATIONS.  I'VE GONE OVER

10   ALL THE SURREPLIES AND SUR-SURREPLIES AND OBJECTIONS TO

11   EVIDENCE, AND I THINK I HAVE A PRETTY GOOD GRASP.

12             SO, UNLESS SOMEONE HAS A BETTER IDEA OF HOW TO

13   PROCEED, I'LL LET MR. MAUSNER ADDRESS THE MOTION FOR

14   EVIDENTIARY SANCTIONS.

15             MR. MAUSNER:  THANK YOU, YOUR HONOR.

16             THE COURT:  AND YOU'RE WELCOME TO REMAIN SEATED.

17             MR. MAUSNER:  WE DO HAVE SOME THINGS TO DEMONSTRATE

18   THAT ARE NOT IN THE PAPERS.

19             ONE IS WHETHER THE SHEETS -- THE BLOGGER AND

20   ADSENSE SHEETS THAT GOOGLE PRODUCED ARE SEARCHABLE.

21             DOES YOUR HONOR HAVE ACCESS TO THE --

22             THE COURT:  I CAN SEE THAT.

23             MR. MAUSNER:  WE CAN TURN IT FOR YOU, IF YOU'D

24   LIKE.

25             THE COURT:  ARE THESE THE FIRST MOTIONS IN WHICH

1   THE BLOGGER TERM HAS APPEARED?  BECAUSE I DON'T REMEMBER

2   DEALING WITH DISCOVERY ISSUES ON BLOGGER.  BUT I COULD BE

3   WRONG.

4           MS. KASSABIAN:  THAT'S CORRECT, YOUR HONOR.

5           THE COURT:  AND COULD YOU JUST BRIEFLY TELL ME WHAT

6   THAT SERVICE IS?

7           MS. KASSABIAN:  YES.  THE BLOGGER SERVICE IS A

8   CONTENT-HOSTING SERVICE THAT GOOGLE OFFERS THAT BASICALLY

9   ALLOWS ANY THIRD-PARTY USER TO CREATE A BLOG, A WEB LOG.

10          THE COURT:  MM-HMM.

11          MS. KASSABIAN:  ARE YOU FAMILIAR WITH THAT?

12          THE COURT:  RIGHT.  NO, I KNOW THAT MUCH.

13          MS. KASSABIAN:  AND PEOPLE CAN OBVIOUSLY, YOU KNOW,

14  POST WHATEVER CONTENT THEY WOULD LIKE ON THERE SUBJECT TO, OF

15  COURSE, GOOGLE'S TERMS AND CONDITIONS FOR USE OF THAT

16  SERVICE.  IT'S A FREE SERVICE AND, YOU KNOW --

17          THE COURT:  OKAY.

18          MS. KASSABIAN:  -- CAN BE USED BY ANY MEMBER OF THE

19  PUBLIC.

20          THE COURT:  ALL RIGHT.  I ASSUMED THAT WAS THE

21  DEFINITION.  BUT I DON'T THINK I'VE ENCOUNTERED IT BEFORE IN

22  THE CONTEXT OF THIS CASE.

23          ALL RIGHT.  MR. MAUSNER, SORRY.

24          MR. MAUSNER:  OKAY.  THE REASON THAT'S IMPORTANT IS

25  BECAUSE WE'VE ALWAYS KNOWN THAT GOOGLE LINKS TO THINGS.

1          AS IT TURNS OUT, AND WE DIDN'T FIND OUT ABOUT THIS

2   UNTIL AFTER THE PRELIMINARY INJUNCTION, GOOGLE IS LINKING TO

3   IMAGES THAT ARE ACTUALLY APPEARING ON THEIR SERVERS.

4          THE COURT:  FULL-SIZE IMAGES.

5          MR. MAUSNER:  FULL-SIZE IMAGES IN BLOGGER.

6          AND THAT'S IMPORTANT BECAUSE BOTH JUDGE MATZ AND

7   THE NINTH CIRCUIT ADOPTED THE SERVER TEST WHICH IS THAT IT IS

8   A DIRECT INFRINGEMENT IF IT'S ON YOUR SERVERS.

9          SO, WE DIDN'T KNOW ABOUT THAT AT THE TIME OF THE

10   PRELIMINARY INJUNCTION.  IF WE HAD KNOWN THAT, WE CERTAINLY

11   WOULD HAVE BROUGHT UP THE FACT THAT GOOGLE IS LINKING TO

12   FULL-SIZE IMAGES THAT ARE ACTUALLY ON GOOGLE'S SERVERS.

13          SO, ANYWAY, YOUR HONOR, AS YOU KNOW, MR. NOLAN AND

14   MS. KASSABIAN BOTH FILED DECLARATIONS STATING THAT GOOGLE

15   PRODUCED ITS BLOGGER AND ADSENSE SHEETS IN SEARCHABLE TIFF

16   FORMAT.

17          GOOGLE NOW ADMITS THAT ITS BLOGGER AND ADSENSE

18   SHEETS WERE NOT PRODUCED IN TIFF FORMAT -- THAT'S IN THEIR

19   SURREPLY, PAGE 4, LINE 11 -- BUT THEY'RE STILL CLAIMING THAT

20   IT IS SEARCHABLE.

21          AND WE PUT TOGETHER SOME EXHIBITS TO SHOW THE COURT

22   THAT THAT'S NOT CORRECT.  WE HAVE SOME HANDOUTS, AND WE'RE

23   ALSO GOING TO PUT THIS UP ON THE SCREEN.

24          THE COURT:  BUT IN THE CONTEXT OF THIS MOTION, WHAT

25   DISCOVERY ORDER -- IF WHAT YOU'RE SAYING IS CORRECT, WHAT

1   DISCOVERY ORDER DID GOOGLE VIOLATE?

2            MR. MAUSNER:  OKAY.

3            THE COURT:  TELL ME THAT FIRST.

4            MR. MAUSNER:  OKAY.  YOUR HONOR ORDERED THAT GOOGLE

5   PRODUCE A DMCA LOG.  JUDGE MATZ MODIFIED THAT.  AND PART OF

6   HIS MODIFICATION WAS THAT IT BE A SPREADSHEET-TYPE DOCUMENT.

7            OKAY.  NOW, WE ALWAYS HAD REQUESTED THAT THESE

8   DOCUMENTS BE PRODUCED IN ELECTRONIC FORMAT.  EVERY ONE OF OUR

9   REQUESTS SAYS PRODUCED IN ELECTRONIC FORMAT.

10           THE COURT:  BUT WAIT A SECOND.  BLOGGER DIDN'T

11  BECOME A PART OF THIS CASE UNTIL AFTER MY RULING AND JUDGE

12  MATZ'S REVISION.

13           MR. MAUSNER:  WELL, NO.  NO.  BLOGGER WAS PART OF

14  THE CASE ALL ALONG TO THE EXTENT THAT BLOGGER SITES APPEARED

15  IN SEARCH.  BLOGGER SITES -- YOU KNOW, AS FAR AS SEARCH,

16  THERE'S NO REASON THAT BLOGGER SITES SHOULD BE TREATED

17  DIFFERENTLY THAN ANY OTHER SITE.  IN FACT, BECAUSE THEY'RE

18  ACTUALLY HOSTED BY GOOGLE, THERE'S MORE LIABILITY INVOLVED.

19  BUT WE DIDN'T KNOW THAT AT THE TIME.

20           BUT -- AND LET ME FIND THE PLACE.

21           GOOGLE ACTUALLY ADMITS THAT -- HOLD ON.

22           (PAUSE IN PROCEEDINGS.)

23           MR. MAUSNER:  THIS IS -- OKAY.  IN THE SURREPLY

24  BRIEF, PAGE 8, LINES 3 TO 4, GOOGLE CONCEDES THAT BLOGGER

25  URLS APPEAR IN GOOGLE'S SEARCH RESULTS, AND THAT PERFECT 10

1    GAVE NOTICE TO GOOGLE OF ALLEGEDLY INFRINGING BLOGGER URLS.

2            GOOGLE ADMITS AT PAGE 8, LINES 3 TO 4, BLOGGER --

3            QUOTE:

4            "BLOGGER URLS CERTAINLY DO APPEAR IN GOOGLE'S

5            SEARCH RESULTS ALONG WITH EVERYTHING ELSE

6            GOOGLE INDEXES."

7            THE COURT:  RIGHT.

8            MR. MAUSNER:  OKAY.  BUT THEN THEY SAY:

9            "IT DOES NOT FOLLOW THAT EVERYTHING GOOGLE

10           INDEXES IS PART OF PERFECT 10'S CASE."

11           BUT IF IT IS INFRINGING AND GOOGLE INDEXES IT, THEN

12    IT IS PART OF THE CASE, WHETHER IT'S ON BLOGGER OR WHETHER

13    IT'S ON SOME OTHER WEBSITE.

14           SO THERE REALLY CAN BE NO QUESTION THAT IF IT IS IN

15    GOOGLE'S SEARCH RESULTS AND IT'S INFRINGING, IT'S ALWAYS BEEN

16    PART OF THE CASE WHETHER IT IS BLOGGER OR ANYTHING ELSE.  THE

17    ONLY THING THAT WAS ADDED TO THE COMPLAINT IN JULY 2008 WAS

18    THE HOSTING FUNCTION OF BLOGGER.

19           THE COURT:  OKAY.

20           MR. MAUSNER:  SEARCHING INVOLVING BLOGGER URLS HAS

21    ALWAYS BEEN WITHOUT ANY QUESTION PART OF THE CASE.

22           WHY WOULD A WEBSITE THAT GOOGLE ALSO HOSTS BE

23    TREATED DIFFERENTLY, IN FACT, BE GIVEN IMMUNITY FROM

24    DISCOVERY WHEN AN INFRINGING WEBSITE HOSTED BY A THIRD-PARTY

25    IS IN THE CASE IF IT'S INDEXED BY GOOGLE.  SO --

1          THE COURT:  BUT, IN ANY EVENT, THEY DID PRODUCE THE

2    MATERIAL THAT YOU'RE ABOUT TO EXPLAIN TO ME ON THE SCREEN.

3          MR. MAUSNER:  RIGHT.  BUT IT'S --

4          THE COURT:  BUT YOU'LL SAY IT WASN'T SEARCHABLE.

5          MR. MAUSNER:  IT WASN'T SEARCHABLE OR SORTABLE.

6          THE COURT:  OKAY.  AND YOU'VE MET AND CONFERRED

7    ABOUT THAT ISSUE, I ASSUME, MANY TIMES.

8          MR. MAUSNER:  WE KEPT ASKING THEM WHERE IS YOUR

9    LOG, WHERE IS YOUR SPREADSHEET.  MANY, MANY, TIMES WE'VE

10   ASKED THEM THAT.

11         THE COURT:  OKAY.  ALL RIGHT.  AND THE RESPONSE HAS

12   BEEN WHAT?

13         MR. MAUSNER:  WELL, IT WAS KIND OF A GRADUAL

14   RESPONSE.

15         FINALLY, THEY SENT US AN EMAIL THAT SAID, HERE IS

16   THE LOG.  BUT THEY'VE NEVER GIVEN IT TO US IN SPREADSHEET

17   FORMAT.  AND YOU REALLY CAN'T USE THAT.  AND WE'LL SHOW YOU

18   IN THIS DEMONSTRATION HOW DIFFICULT IT IS TO USE THE TIFF

19   DOCUMENTS THAT THEY PRODUCED BECAUSE THEY ARE COMPLETELY

20   UNSEARCHABLE AND UNSORTABLE.

21         AND IF YOU DON'T HAVE IT IN SEARCHABLE OR SORTABLE

22   FORMAT, IT'S VERY DIFFICULT TO DETERMINE -- LIKE, IF YOU WANT

23   TO FIND HOW MANY TIMES THERE'S BEEN A NOTICE FOR A WEBSITE,

24   YOU CAN'T DO THAT IF IT'S NOT SEARCHABLE OR SORTABLE.  OKAY.

25         AND ANOTHER THING IS, WHAT THEY GAVE US ISN'T

1    ANYWHERE NEAR COMPLETE.  IT DOESN'T HAVE -- IT MAYBE HAS 1

2    PERCENT OF WHAT WE KNOW EXISTS.  THERE ARE SPECIFIC URLS THAT

3    WE GOT FROM OTHER SOURCES, INCLUDING THE R.I.A.A., THE

4    RECORDING INDUSTRY, OR -- YEAH, THERE'S SPECIFIC URLS FROM

5    THEM.  THERE'S STUFF FROM CHILLINGEFFECTS.ORG THAT WE GOT

6    THAT ARE NOT INCLUDED ON THE BLOGGER SHEETS THAT THEY GAVE

7    US.  SO WE KNOW THAT IT'S NOT ANYWHERE COMPLETE.

8            IT'S NOT GIVEN TO US IN THE MANNER THAT IT'S

9    MAINTAINED AT GOOGLE.  AND IT ABSOLUTELY CANNOT BE A JPG FILE

10   AT GOOGLE BECAUSE YOU CAN'T EVEN ADD ANYTHING TO A J-PEG

11   FILE.  SO THAT'S NOT WHAT THEY HAVE.

12           WHAT THEY DID IS THEY PURPOSELY TOOK WHAT THEY HAD

13   THERE, BROKE IT UP INTO HUNDREDS OF PIECES, AND MADE IT

14   UNSEARCHABLE INSTEAD OF GIVING -- GIVING IT TO US IN THE FORM

15   THAT IT EXISTS AT GOOGLE AND IN THE SPREADSHEET-TYPE FORMAT

16   THAT JUDGE MATZ SPECIFICALLY ORDERED.

17           DO YOU WANT THE CITE TO JUDGE MATZ'S ORDER OR DO

18   YOU KNOW WHAT THAT IS?

19           THE COURT:  NO, I KNOW WHAT THAT IS.

20           MR. MAUSNER:  OKAY.  SHOULD I GO ON WITH THE

21   PRESENTATION, YOUR HONOR?

22           THE COURT:  WELL, I'D LIKE TO HEAR -- I DON'T WANT

23   TO GO BACK AND FORTH TOO MUCH.  BUT I'D LIKE TO HEAR GOOGLE'S

24   RESPONSE JUST TO THOSE BROAD ASSERTIONS SO I KNOW HOW MUCH

25   TIME I NEED TO SPEND ON LOOKING AT THE ACTUAL URLS.

1        YES?

2        MS. KASSABIAN:  YOUR HONOR, YOU ASKED THE EXACT

3   RIGHT QUESTION, WHAT DISCOVERY ORDER DOES THIS ALLEGATION

4   IMPLICATE, AND THE ANSWER IS NONE.

5        FIRST OF ALL, ON THE BLOGGER ISSUES -- THE BLOGGER

6   LOGS SPECIFICALLY, YOU'RE CORRECT THAT THIS BLOGGER WAS NOT

7   AT ISSUE IN THIS CASE UNTIL JULY OF 2008 WHEN PERFECT 10 GOT

8   PERMISSION TO ADD BLOGGER CLAIMS TO THE CASE.  THEY ASSURED

9   JUDGE MATZ THAT THEY WERE GOING TO BE SERVING ADDITIONAL

10  DISCOVERY ON BLOGGER.  THEY NEVER DID.

11       THE FIRST TIME THEY SERVED ANY BLOGGER DISCOVERY ON

12  GOOGLE WAS IN SEPTEMBER OF 2009.  AND EVEN THEN, THEY DIDN'T

13  ASK FOR GOOGLE'S BLOGGER DMCA LOGS OR BLOGGER DMCA NOTICES.

14       NEVERTHELESS, GOOGLE VOLUNTARILY PRODUCED ITS

15  BLOGGER LOG ABOUT A MONTH AFTER THOSE CLAIMS WERE ADDED TO

16  THE CASE.  THERE'S NEVER BEEN ANY ORDER ABOUT WHAT FORMAT

17  GOOGLE SHOULD PRODUCE ITS DOCUMENTS IN.  INSTEAD, THE PARTIES

18  HAVE MADE AGREEMENTS ON THIS.

19       WE SPECIFICALLY EMAILED PERFECT 10 AND SAID, LOOK

20  WE'RE GETTING READY TO DO OUR PRODUCTION HERE.  ON MAY 1ST WE

21  WERE ORDERED TO PRODUCE DMCA LOGS.  PERFECT 10 KNEW THAT.

22  AND WE SAID, IS IT OKAY IF WE DO THESE IN STANDARD LITIGATION

23  FORMAT, WHICH IS SINGLE-PAGE TIFF.  THEY SAID, "YES."

24       WE RELIED ON THAT AGREEMENT.  WE PRODUCED THOSE

25  DOCUMENTS IN FULLY OCR SEARCHABLE TIFF -- SINGLE-PAGE TIFF

1    DOCUMENTS, THAT HAVE LOAD FILES THAT ALLOW THEM TO BE

2    SEARCHABLE.

3            AND NEVER ONCE FROM MAY 1ST, 2008 TO JANUARY 15,

4    2010, NEVER ONCE, HAS PERFECT 10 EVER COME BACK TO US AND

5    SAID, YOU KNOW WHAT, WE CHANGED OUR MIND.  WE DON'T WANT

6    THESE IN TIFF.  WE'RE SORRY.  WE'LL PAY FOR YOU TO PRODUCE

7    THEM IN A DIFFERENT FORMAT.  WE WANT THEM IN SOME OTHER WAY.

8            THEY NEVER ASKED, LET ALONE DID THEY EVER BRING A

9    MOTION SEEKING AN ORDER COMPELLING GOOGLE TO PRODUCE THESE

10   DOCUMENTS IN SOME FORMAT OTHER THAN STANDARD LITIGATION

11   FORMAT, WHICH IS SINGLE-PAGE TIFF.

12           THIS IS A COMPLETE SIDESHOW.  THERE IS NO DISCOVERY

13   ORDER THAT REQUIRED GOOGLE TO PRODUCE THESE DOCUMENTS IN SOME

14   FORMAT OTHER THAN WHAT GOOGLE PRODUCED THEM IN.

15           AS FOR THE SPREADSHEET POINT, THE DOCUMENTS ARE

16   SPREADSHEETS.  YOU CAN SEE THAT JUST BY LOOKING AT THEM.

17   THEY HAVE A BUNCH OF COLUMNS AND A BUNCH OF ROWS.  THAT IS A

18   SPREADSHEET FORMAT.

19           AT THE TIME OF THE DMCA ORDER, THE ORDER THAT LED

20   TO THE PRODUCTION OF THE DMCA LOGS, PERFECT 10 INSISTED ON

21   PUTTING A DEFINITION IN THAT ORDER.  PERFECT 10 CAME UP WITH

22   THAT DEFINITION.  AND IN ITS MIND IT WOULD ENVISION THAT

23   THESE LOGS WOULD BE IN SOME SORT OF SPREADSHEET FORMAT.  THAT

24   ROUGH DESCRIPTION WAS INCLUDED IN THE ORDER TO MAKE SURE THAT

25   GOOGLE UNDERSTOOD WHAT IT NEEDED TO PRODUCE.  AND THAT'S WHAT

1   GOOGLE PRODUCED.

2          YOU CAN SEE BY LOOKING AT THESE DOCUMENTS, YOUR

3   HONOR, THIS IS JUST WHAT MR. MAUSNER JUST HANDED TO YOU,

4   THEY'RE IN SPREADSHEET FORMAT.  NO DISCOVERY ORDER IS

5   IMPLICATED BY THIS ENTIRE FORMAT ISSUE.

6          THE COURT:  DO YOU WANT TO COMMENT ON THE ASSERTION

7   THAT THEY -- THAT P-10 IS AWARE FROM THIRD PARTIES AND THE

8   RECORDING INDUSTRY IN PARTICULAR, THAT THERE ARE OTHER

9   DOCUMENTS.

10          MS. KASSABIAN:  I DON'T THINK THAT'S WHAT PERFECT

11   10 SAID.  I THINK WHAT HE'S SAYING IS WE HAVE YOUR LOGS --

12   WELL, FIRST THEY SAY YOU DIDN'T PRODUCE YOUR LOGS.  THEN THEY

13   SAY, WELL, OKAY, WE HAVE YOUR LOGS.  AND WE BELIEVE THAT

14   CERTAIN ROWS MUST BE MISSING FROM THAT LOG.

15          THAT'S NOT A DISCOVERY ORDER ISSUE.  RIGHT.

16          WE PRODUCED THE LOGS AS THEY EXIST AT GOOGLE.

17   WE'RE NOT REQUIRED TO ADD ROWS OR TO MODIFY THE DOCUMENTS IN

18   ANY WAY.  THIS IS THE LOG THAT GOOGLE KEEPS.  IF PERFECT 10

19   HAS FOUND SOME DMCA NOTICE OUT THERE ON CHILLING EFFECTS THAT

20   FOR SOME REASON DOESN'T APPEAR, MAYBE THAT NOTICE WAS

21   WITHDRAWN.  MAYBE THAT NOTICE WAS INVESTIGATED, AND IT TURNED

22   OUT THAT THERE WAS ACTUALLY NO COPYRIGHT INFRINGEMENT.

23          WHO KNOWS.  THERE COULD BE A MILLION REASONS WHY A

24   PARTICULAR DMCA NOTICE FOR A PRODUCT IN QUESTION MIGHT NOT

25   WIND UP APPEARING ON THE LOG.  THE QUESTION IS, DID GOOGLE

1    PRODUCE ITS BLOGGER LOGS.  AND GOOGLE DID.

2              SO, COMPLAINTS ABOUT THE SPECIFIC CONTENTS OF, YOU

3    KNOW, WHETHER CERTAIN COLUMNS ARE THERE OR WHETHER CERTAIN

4    ROWS ARE THERE, THAT GOES TO A MERITS ISSUE OF WHETHER OR NOT

5    GOOGLE'S DMCA PROCESSING EFFORTS ARE COMPLIANT WITH THE LAW.

6    THAT HAS NOTHING TO DO WITH WHETHER GOOGLE DID NOT PRODUCE A

7    DOCUMENT.

8              MR. MAUSNER:  MAY I RESPOND, YOUR HONOR.

9              THE COURT:  ALL RIGHT.

10             MR. MAUSNER:  OKAY.

11             THE COURT:  ARE PEOPLE COLD?  IT'S A LITTLE BIT

12   CHILLY IN HERE.  IS THAT GOOD OR NOT GOOD?

13             MS. KASSABIAN:  I'M OKAY.

14             MR. MAUSNER:  I'M FINE, YOUR HONOR.

15             THE COURT:  OKAY.  GO AHEAD.

16             MR. MAUSNER:  OKAY.  FIRST OF ALL, WE NEVER, EVER,

17   EVER AGREED TO TAKE THE LOGS IN NON-SEARCHABLE FORMAT.

18             AND HERE IS THE EMAIL THAT MS. KASSABIAN IS

19   REFERRING TO.

20             THE COURT:  BUT WE'RE TALKING ABOUT A VERY SERIOUS

21   SANCTIONS MOTION.

22             MR. MAUSNER:  YES.

23             THE COURT:  SO, ASSUMING THAT YOU'RE CORRECT, AND

24   IT'S NOT SEARCHABLE, HOW WOULD THAT LEAD TO A RECOMMENDATION

25   THAT THERE BE EVIDENTIARY SANCTIONS?

1            MR. MAUSNER:  THEY DID NOT PRODUCE WHAT THEY WERE

2    SUPPOSED TO PRODUCE -- WHAT WE, FIRST OF ALL, REQUESTED IN

3    ELECTRONIC FORMAT AND A SPREADSHEET-TYPE DOCUMENT AS ORDERED

4    BY JUDGE MATZ, WHICH IS A SPREADSHEET THAT'S SEARCHABLE.  A

5    SPREADSHEET IS SEARCHABLE AND SORTABLE.

6            WHAT THEY GAVE US WAS PAGES LIKE PAGE 1 OF HIS

7    HANDOUT, WHICH ARE BARELY READABLE.  THEY TOOK IT AND THEY

8    BROKE IT UP INTO OVER A THOUSAND PIECES, THIS SPREADSHEET.

9    AND THEN THEY MADE -- PURPOSEFULLY MADE IT SO THAT WE COULD

10   NOT SEARCH IT JUST TO MAKE IT DIFFICULT FOR US TO LITIGATE

11   THE CASE, TO IMPOSE SUMMARY JUDGMENT MOTIONS AND SO ON.

12           NOW, IF YOU LOOK AT THIS EMAIL, YOUR HONOR, EVEN IF

13   IT DOES APPLY TO THE LOGS, WHICH I DON'T THINK IT DID, IT

14   SPECIFICALLY SAYS:

15           "IT IS ACCEPTABLE FOR GOOGLE TO PRODUCE DOCUMENTS

16           IN THAT FORMAT AS LONG AS THEY ARE EASILY READABLE

17           AND SEARCHABLE."  OKAY?

18           AND THEY WERE NOT PRODUCED -- CLEARLY, THEY WERE

19   NOT PRODUCED IN THAT FORMAT.

20           AND WHETHER -- BOTH MR. -- AND MS. KASSABIAN

21   TESTIFIED THAT THESE DOCUMENTS WERE PRODUCED IN TIFF FORMAT.

22           I THINK -- WOULD YOU ASK HER, YOUR HONOR, IF THEY

23   NOW ADMIT THAT THEY WERE NOT PRODUCED IN TIFF FORMAT; THEY

24   WERE PRODUCED IN JPG FORMAT, SO WE CAN GET A CLEAR ANSWER ON

25   THAT.

1          THE COURT:  SURE.

2          MS. KASSABIAN:  YOUR HONOR, ON MAY 1ST, 2008 ALL OF

3    THE DMCA LOG DOCUMENTS THAT WERE PRODUCED WERE PRODUCED IN

4    TIFF FORMAT.  ON AUGUST 29TH, 2008 GOOGLE SUPPLEMENTED ITS

5    PRODUCTION.  THOSE WERE ALSO ALL IN TIFF FORMAT.  THOSE ARE

6    BOTH -- THESE WERE ALL BOTH BLACK AND WHITE DOCUMENT

7    COLLECTIONS.

8          AND A FEW OF THE DOCUMENTS ON MAY 1ST -- THAT WERE

9    PRODUCED ON MAY 1ST OF 2008, AND A FEW OF THE DOCUMENTS THAT

10   WERE PRODUCED ON SEPTEMBER 12TH, 2008 ARE MAINTAINED BY

11   GOOGLE IN COLOR.  WE THOUGHT IT WOULD BE MUCH MORE USABLE TO

12   PRODUCE THEM IN COLOR FOR PERFECT 10 AND WHOEVER ELSE IS

13   REVIEWING THESE DOCUMENTS BECAUSE I THINK THERE'S SOME COLOR

14   CODING OR THE COLOR -- THE COLORS TO THE DOCUMENT HELP

15   UNDERSTAND THE CONTENT OF THE DOCUMENT.

16         WELL, COLOR DOCUMENTS DON'T PRODUCE WELL IN TIFF.

17   SO, AS A COURTESY, WE PRODUCED THE COLOR DOCUMENTS IN

18   SEARCHABLE J-PEG FORMAT BECAUSE J-PEG IS A BETTER MEDIUM FOR

19   COLOR DOCUMENTS.  AGAIN, THERE'S NO DISCOVERY ORDER THAT SAYS

20   WHAT FILE FORMAT WE HAD TO PRODUCE THESE IN.

21         BUT WE PRODUCED THE BLACK AND WHITE DOCUMENTS ALL

22   IN SINGLE-PAGE TIFF.  AND THE COLOR DOCUMENTS WE PRODUCED IN

23   SEARCHABLE J-PEG BECAUSE THAT FORMAT IS BETTER ABLE TO HANDLE

24   COLOR.

25         MR. MAUSNER:  OKAY.  AND IS IT GOOGLE'S POSITION

1   THAT THEY DID HAVE TO BE PRODUCED IN SEARCHABLE FORMAT?

2          MS. KASSABIAN:  I'M NOT SURE IF THIS IS AN

3   APPROPRIATE INTERROGATION.

4          BUT THERE'S NO COURT ORDER OF ANY KIND REQUIRING

5   THAT EITHER PARTY PRODUCE SEARCHABLE DOCUMENTS.  GOOGLE

6   ALWAYS HAS PRODUCED FULLY OCR, SEARCHABLE, SINGLE-PAGE TIFF

7   DOCUMENTS WITH LOAD FILES.  WE ALWAYS HAVE.  THAT'S STANDARD.

8   AND THAT'S HOW WE DO -- PRODUCE ALL THE DOCUMENTS IN THIS

9   CASE.  I BELIEVE THAT'S HOW AMAZON PRODUCES ITS DOCUMENTS.

10  THAT'S PROBABLY HOW MICROSOFT PRODUCES ITS DOCUMENTS.  IT'S

11  STANDARD LITIGATION FORMAT.

12         YOU CAN'T --

13         THE COURT:  OCR MEANS WHAT?

14         MS. KASSABIAN:  OPTICAL CHARACTER RECOGNITION.

15         AND, SO, IN PROCESSING THESE DOCUMENTS FOR

16  PRODUCTION, LOAD FILES ARE CREATED THAT ALLOW -- AND, YOU

17  KNOW, I'M NOT AN EXPERT IN THIS, BUT THE LOAD FILES ALLOW --

18  THE DOCUMENTS ARE OCR'D ON OUR END.  AND WHEN YOU LOAD THE

19  DOCUMENT ALONG WITH THE LOAD FILES, IT MAKES THEM SEARCHABLE

20  BECAUSE THEY HAVE BEEN PROCESSED WITH OPTICAL CHARACTER

21  RECOGNITION TECHNOLOGY ON OUR END.

22         THERE'S NO COURT ORDER THAT REQUIRES THAT, YOUR

23  HONOR.  BUT WE'VE DONE THAT.

24         MR. MAUSNER:  AND DOES GOOGLE AGREE THAT ALL OF THE

25  BLOGGER IN THE ADSENSE SHEETS WERE PRODUCED IN JPG FORMAT NOT

```
1    IN TIFF FORMAT?

2            MS. KASSABIAN:  AS I --

3            THE COURT:  I CAN'T BELIEVE YOU'RE HAVING THIS

4    COLLOQUY.

5            MS. KASSABIAN:  I CAN'T EITHER, YOUR HONOR.

6            MR. MAUSNER:  WE CAN'T --

7            MS. KASSABIAN:  I CAN'T EITHER.

8            MR. MAUSNER:  WE CAN'T GET ANSWERS TO THIS.  BUT

9    WE'LL SHOW YOU.  YEAH, DO THEY CONCEDE THAT.

10           WELL, CAN I ASK --

11           THE COURT:  ALL RIGHT.  I'LL ALLOW -- I'LL ALLOW

12   JUST ONE MORE QUESTION.  GO AHEAD.

13           MR. MAUSNER:  OKAY.

14           MS. KASSABIAN:  AS I JUST EXPLAINED, ALL OF THE

15   COLOR SPREADSHEETS WERE PRODUCED IN J-PEG, AND THE BLACK AND

16   WHITE VERSIONS ARE IN TIFF.

17           MR. MAUSNER:  OKAY.  CAN I DO THE DEMONSTRATION

18   NOW, YOUR HONOR.  BECAUSE WE WANT TO SHOW THAT THESE -- THAT

19   EVERY PAGE OF THE BLOGGER SHEETS AND THE ADSENSE SHEETS WERE

20   PRODUCED IN JPG AND WERE NOT SEARCHABLE.  AND SOME OF THEM

21   ARE NOT EVEN READABLE.

22           THE COURT:  ALL RIGHT.  YOU CAN GIVE A TWO- TO

23   THREE-MINUTE DEMONSTRATION OF THE SAMPLE.

24           MR. MAUSNER:  THANK YOU, YOUR HONOR.

25           MS. KASSABIAN:  AND, YOUR HONOR, I MEAN, I THINK
```

1    THIS WHOLE EXERCISE IS A GIANT WASTE OF TIME.  I THINK YOUR

2    HONOR UNDERSTANDS THAT THERE'S BEEN NO COURT ORDER REQUIRING

3    ANYTHING.  SO THIS PRESENTATION IS IRRELEVANT.

4            IF IT'S JUST TWO OR THREE MINUTES, THAT'S FINE.

5    BUT I'D RATHER NOT WASTE OUR TIME OR THE COURT'S TIME GOING

6    THROUGH THIS EXERCISE FOR LONGER THAN THAT.

7            MR. MAUSNER:  PAGE 1 OF HANDOUT 1, AS WELL AS

8    WHAT'S UP ON THE SCREEN, IS THE FIRST PAGE OF GOOGLE'S REPEAT

9    INFRINGER TRACKING SHEETS, WHICH I'LL REFER TO AS THE BLOGGER

10   SHEETS.  THIS IS IN JPG FORMAT EXACTLY AS IT WAS PRODUCED TO

11   US.

12           AS YOU CAN SEE, AND AS MELANIE WILL DEMONSTRATE,

13   THIS IS NOT SEARCHABLE BY DOING A CONTROL-F FUNCTION.

14           MR. JANSEN:  YOUR HONOR, I'M SORRY.  COULD YOU ASK

15   DR. ZADA TO TURN THE SCREEN BACK SO WE CAN ALSO SEE IT.

16           THE COURT:  ALL RIGHT.

17           MR. JANSEN:  HE JUST NEEDS TO MOVE IT TOWARDS YOU.

18           MS. KASSABIAN:  AND I ALSO HAVE A QUESTION FOR MR.

19   MAUSNER.

20           ARE YOU REPRESENTING THAT THIS VERSION THAT YOU'RE

21   USING HERE CAME FROM THE DISK, THE PRODUCTION DISK, THAT WE

22   SENT YOU?

23           MR. MAUSNER:  YES, THE FIRST PAGE OF THAT DID.

24   YES.

25           MS. KASSABIAN:  SO, IT DIDN'T COME --

1             MR. MAUSNER:  EVERYTHING DID, IN FACT.

2             MS. KASSABIAN:  SO, IT DIDN'T COME FROM EXHIBIT 2

3    TO CHANTEL'S DECLARATION LIKE IT SAYS HERE, EXHIBIT II.

4             MR. MAUSNER:  OH.  THE FIRST PAGE IS FROM THE DISK.

5             MS. KASSABIAN:  SO, JUST TO BE CLEAR, YOUR HONOR,

6    THIS IS NOT THE FORMAT OF THE DOCUMENT THAT GOOGLE PRODUCED

7    TO PERFECT 10.

8             THE COURT:  GREAT.

9             MS. KASSABIAN:  THIS IS A PDF FORMAT THAT WAS

10   SUBMITTED --

11            MR. MAUSNER:  NO, NO, NO.  WE'RE NOT --

12            THE COURT:  STOP IT.  STOP IT.  THIS IS NOT GOING

13   TO DETERIORATE.  ALL RIGHT.

14            MR. MAUSNER:  MAY I CLARIFY?

15            THE COURT:  WELL, THEY'RE SAYING THIS IS NOT THE

16   FORMAT THAT WAS PRODUCED TO YOU.

17            MR. MAUSNER:  NO.  NO.  MAY I CLARIFY, YOUR HONOR.

18            THE FIRST PAGE OF THE HANDOUT IS THE FORMAT THAT IT

19   WAS PRODUCED IN ON THE DISK.

20            MS. KASSABIAN:  AND THEN I'D JUST LIKE TO ASK THEN

21   WHY IT SAYS HERE ON THIS FIRST PAGE, "THIS IS TAKEN FROM

22   EXHIBIT II TO THE DECLARATION OF CHANTEL POOVALA.

23            MS. POBLETE:  IT'S THERE ON THE SECOND PAGE.

24            MR. MAUSNER:  IT DOESN'T SAY THAT ON THE FIRST PAGE

25   --

1          MS. KASSABIAN:  OKAY.

2          MR. MAUSNER:  IT'S ONLY SAID ON THE SECOND PAGE.

3          MS. KASSABIAN:  OKAY.  SO, THE SECOND PAGE IS NOT

4     FROM THE PRODUCTION VERSION.

5          MR. MAUSNER:  RIGHT.  AND I'LL EXPLAIN WHAT IT IS

6     AS WE GO ALONG.  OKAY.

7          THE COURT:  ALL RIGHT.

8          MR. MAUSNER:  OKAY.

9          THE COURT:  AND WE'RE GOING ALONG QUICKLY AT THIS

10    POINT.

11         MR. MAUSNER:  YES.

12         SO, THERE'S NO FUNCTION TO DIRECTLY SEARCH THE JPG

13    FILE ITSELF.

14         NOW, PAGE 2 OF THE HANDOUT IS A BLOWUP OF WHAT IS

15    ON PAGE 1.  AND IT IS AN ADOBE DOCUMENT.  WE TURNED IT INTO

16    AN ADOBE DOCUMENT SO IT COULD BE BLOWN UP AND SO THAT CHECK

17    MARKS COULD BE PLACED ON IT.  THERE ARE TWO CHECK MARKS BY

18    TWO OF THE URLS ON PAGE 2.

19         AS MS. KASSABIAN SAID, GOOGLE ALSO PROVIDED OCR

20    FILES, WHICH ARE TEXT FILES THAT ARE SUPPOSED TO MATCH THE

21    VISIBLE TEXT IN THE DOCUMENT.  WHEN THE OCR FILE HAS TEXT

22    THAT MATCHES THE TEXT IN THE UNDERLYING FILE, THE DOCUMENT IS

23    SEARCHABLE.  WHEN THERE'S A SIGNIFICANT DIFFERENCE BETWEEN

24    THE TEXT APPEARING IN THE DOCUMENT AND THE OCR FILE PROVIDED

25    BY GOOGLE, THE DOCUMENT IS NOT SEARCHABLE.

1          PAGE 3 OF THE HANDOUT IS WHAT GOOGLE PROVIDED TO

2     PERFECT 10 AS PART OF THE OCR TEXT FOR PAGE 2.  THE FIRST

3     HIGHLIGHTED URL ON PAGE 3 CORRESPONDS TO THE FIRST CHECKED

4     URL ON PAGE 2.  THE SECOND HIGHLIGHTED URL ON PAGE 3

5     CORRESPONDS TO THE SECOND CHECKED URL ON PAGE 2.

6          IF YOUR HONOR COMPARES PAGES 2 AND 3, YOU WILL SEE

7     THAT THE OCR TEXT PROVIDED BY GOOGLE HAS LEFT OUT ALL OF THE

8     URLS LISTED BETWEEN THE FIRST AND SECOND CHECKED URLS ON PAGE

9     2.

10          FURTHERMORE, THE TEXT BETWEEN THE URLS ON PAGE 3 IS

11     GARBLED.  THIS MEANS THAT PAGE 2, WHICH IS THE BLOWUP OF PAGE

12     1 OF GOOGLE'S BLOGGER SHEETS, IS NOT SEARCHABLE EVEN IF IT IS

13     PROCESSED USING OCR SOFTWARE.  SO, BASICALLY A GARBLED OCR

14     TEXT FILE MEANS THE VISIBLE TYPE ON THE PAGE IS TOO SMALL OR

15     UNCLEAR TO BE RECOGNIZED BY THE OCR PROGRAM.

16          SO, WHAT WOULD HAPPEN IS YOU COULD SEARCH WHAT IS

17     HIGHLIGHTED IN YELLOW ON PAGE 3, BUT YOU COULDN'T SEARCH

18     ANYTHING THAT DIDN'T SHOW UP IN THE OCR FILE, WHICH IS THE

19     VAST MAJORITY OF WHAT IS ON PAGES 1 AND 2.

20          SO, THIS IS NOT SEARCHABLE AT ALL.  IF YOU PUT IN

21     ANY OF THE URLS THAT ARE UNDERLINED ON PAGE 1, IT WON'T TURN

22     UP IN A SEARCH.  AND IT MAKES IT VIRTUALLY IMPOSSIBLE TO WORK

23     WITH THIS TO SHOW -- TO FIND HOW MANY TIMES A URL APPEARS IN

24     THESE SHEETS.

25          THE COURT:  ALL RIGHT. I UNDERSTAND.

1          MR. MAUSNER:  OKAY.

2          THE COURT:  I ACTUALLY UNDERSTAND.

3          ALL RIGHT.  NOW, WHAT'S THE RESPONSE?

4          MS. KASSABIAN:  WELL, THESE DOCUMENTS ARE

5     MEANINGLESS.  I HAVE NO IDEA THE ACCURACY OF ANY OF THESE

6     PRINTOUTS.  I DIDN'T BRING A LOAD-FILE EXPERT WITH ME HERE

7     TODAY.

8          WHAT I WILL SAY IS THAT AT NO TIME IN THE PAST YEAR

9     AND A HALF HAS PERFECT 10 EVER BOTHERED TO PICK UP THE PHONE

10    AND --

11         THE COURT:  THAT WAS NEXT QUESTION.

12         MS. KASSABIAN:  -- SAY, RACHEL, YOU KNOW WHAT, A

13    COUPLE OF THE LOAD FILES IN YOUR PRODUCTION SEEM TO BE

14    GARBLED.  CAN YOU PLEASE CHECK YOUR RECORDS AND PRODUCE THOSE

15    PAGES AGAIN.

16         THE COURT:  THAT WAS MY QUESTION.

17         MS. KASSABIAN:  NOT ONCE.

18         MR. MAUSNER:  WE HAVE REPEATEDLY SAID TO THEM,

19    WHERE IS THE SPREADSHEET.  WE WANT A SPREADSHEET.  WE WANT A

20    SEARCHABLE AND A SORTABLE SPREADSHEET.

21         MS. KASSABIAN:  AND THAT'S FALSE.  NEVER ONCE HAS

22    PERFECT 10 EVER PICKED UP THE PHONE, CALLED ME AND SAID --

23         THE COURT:  ALL RIGHT.

24         MS. KASSABIAN:  -- I WOULD LIKE A SORTABLE VERSION

25    OF WHAT YOU PRODUCED.

1          THE COURT:  ALL RIGHT.  AND I'M ASSUMING THERE IS

2    SOMEONE AT GOOGLE WHO COULD INSTRUCT OR ASSIST, I SHOULD SAY,

3    MR. MAUSNER IN DOING WHAT P-10 WANTS TO DO WITH THESE

4    DOCUMENTS.

5          MS. KASSABIAN:  THEY'VE ALREADY DONE IT.  DR. ZADA

6    SUBMITTED A DECLARATION SAYING THAT HE USED SOME SOFTWARE TO

7    CONVERT OUR TIFF FILES TO SOME OTHER FORMAT AND RE-CREATE A

8    SEARCHABLE -- THEY ALREADY HAVE IT, YOUR HONOR.  THERE'S NO

9    POINT TO THIS WHOLE DISCUSSION.  THEY'VE ALREADY --

10          THE COURT:  WELL, BUT --

11          MS. KASSABIAN:  RATHER THAN ASKING US, THEY JUST

12    DID IT THEMSELVES.

13          THE COURT:  BUT TO THE EXTENT THAT THEY MAY NOT BE

14    ABLE TO SEARCH THESE SPREADSHEETS -- OR THIS SPREADSHEET, I'M

15    ASSUMING THERE IS SOMEONE WHO CAN INSTRUCT THEM HOW TO DO SO.

16          MR. MAUSNER:  YOUR HONOR, IF WHAT YOU'RE GOING TO

17    DO IS SAY PRODUCE MORE, WHY DON'T THEY JUST PRODUCE THE

18    SPREADSHEET AS IT EXISTS AT GOOGLE, WHICH IS THE ENTIRE

19    SPREADSHEET, NOT BROKEN UP, IN XCEL FORMAT THE WAY THEY KEEP

20    IT.  BECAUSE THEN WE CAN SEARCH IT.  WE CAN SORT IT.  WE CAN

21    DO WHATEVER HAS TO BE DONE WITH IT.

22          MS. KASSABIAN:  AND THIS IS A PERFECT EXAMPLE OF

23    WHY THE MEET AND CONFER RULES ARE IN PLACE, YOUR HONOR.

24    NEVER ONCE IN THE PAST 20 MONTHS HAS MR. MAUSNER EVER MADE

25    THAT REQUEST OF ME.  I WOULD HAVE BEEN HAPPY TO CONSIDER IT.

1          INSTEAD, WHAT HE DID IS HE AGREED TO A TIFF

2     PRODUCTION.  WE SPENT THOUSANDS OF DOLLARS CREATING THAT TIFF

3     PRODUCTION.  WE PRODUCED IT.  RADIO SILENCE FOR A YEAR AND A

4     HALF.  THEN PERFECT 10 WAKES UP IN NOVEMBER AND DECIDES IT'S

5     NOT HAPPY WITH ITS OPPOSITION TO GOOGLE'S DMCA MOTIONS AND

6     FILES THIS SANCTIONS MOTION COMPLAINING ABOUT THINGS THAT IT

7     NEVER RAISED WITH US IN MEET AND CONFER.

8          MR. MAUSNER:  IT'S NOT EVEN IN TIFF.  THEY'VE

9     ADMITTED THAT IT'S NOT IN TIFF.  AND SHE KEEPS GOING BACK TO

10    STATEMENTS SHE MADE IN THE DECLARATION WHICH CLEARLY ARE NOT

11    TRUE.  IT IS NOT IN TIFF.

12         AND WE HAVE REPEATEDLY, REPEATEDLY ASKED THEM FOR

13    -- WHERE'S THE LOG.  WHERE'S THE LOG.  OKAY.  WE SHOULD HAVE

14    GOTTEN THIS IN SPREADSHEET FORMAT THE WAY IT EXISTS AT

15    GOOGLE.

16         MS. KASSABIAN:  AND, AGAIN, YOUR HONOR, THEY NEVER

17    ASKED FOR IT.  THEY AGREED TO A DIFFERENT FORMAT.  AND WHEN

18    WE PRODUCED SUPPLEMENTAL PRODUCTIONS IN AUGUST AND IN

19    SEPTEMBER OF 2008, THEY NEVER ONCE OBJECTED TO ANY OF THOSE

20    OR COMPLAINED ABOUT ANY OF THIS.

21         THEY RESPONDED TO OUR DMCA MOTIONS WITH THE

22    DOCUMENTS THEY HAD, WHICH WERE FULLY TEXT SEARCHABLE,

23    SINGLE-PAGE TIFFS AND J-PEGS WITH LOAD FILES.  THERE'S NO

24    PREJUDICE HERE.  NONE.

25         THEY DON'T NEED GOOGLE TO EXPLAIN HOW TO USE TIFF

1    -- SINGE-PAGE TIFF FILES.  THEY JUST NEED A TECHNICIAN.

2    PRESUMABLY DR. ZADA, WHO CLAIMS TO BE A COMPUTER EXPERT,

3    KNOWS ALL ABOUT TIFF FILES.  IN HIS DECLARATION HE SAYS HE'S

4    ALREADY TAKEN THESE DOCUMENTS AND CONVERTED THEM TO SOME

5    OTHER FORMAT.

6             BUT WHAT WE PRODUCED WAS FULLY SEARCHABLE, YOUR

7    HONOR, EVEN THOUGH THERE WAS NO ORDER THAT WE DO THAT.

8             THE COURT:  ALL RIGHT.

9             MS. KASSABIAN:  AND YOU CAN SEE THAT THEY'RE

10   SEARCHING THESE DOCUMENTS AND THESE VARIOUS EXHIBITS THAT

11   THEY'VE PRODUCED.

12            MR. MAUSNER:  YOUR HONOR, THEY WERE ORDERED TO

13   PRODUCE A SPREADSHEET.  NOW, WHY DID THEY TAKE THE

14   SPREADSHEET -- I KNOW YOU DON'T WANT TO DO A LOT OF

15   QUESTIONS, BUT COULD YOU ASK HER HOW ARE THESE SPREADSHEETS

16   KEPT AT GOOGLE.  ARE THEY MICROSOFT XCEL FILES?  HOW ARE THEY

17   KEPT AT GOOGLE?

18            AND THEN THE QUESTION IS, WHY DID THEY TAKE THAT

19   VERY SIMPLE DOCUMENT, AND INSTEAD OF GIVING IT TO US, BREAK

20   IT UP INTO PIECES AND MAKE IT UNSEARCHABLE.  AND THEY'RE NOT

21   TIFF.  THEY'RE J-PEG.  THEY'RE COMPLETELY UNSEARCHABLE.  WHY

22   DID THEY DO THAT.

23            AND, YOUR HONOR, COULD YOU ASK THEM WHAT FORMAT

24   IT'S KEPT IN SO WE KNOW THAT, SO WE CAN AT LEAST MOVE ON FROM

25   THAT?

1          THE COURT:  ARE YOU ABLE TO ANSWER THOSE QUESTIONS?

2          MS. KASSABIAN:  YOUR HONOR, OF COURSE, THOSE ARE

3     SPREADSHEETS.  I DON'T KNOW WHICH TYPE OF SPREADSHEET

4     SOFTWARE IS USED.

5          BUT THE POINT IS, THERE'S A REASON WHY SINGLE-PAGE

6     TIFFS ARE STANDARD FORMAT FOR MODERN LITIGATION.  IT IS THE

7     ONLY WAY TO SAFELY REDACT DOCUMENTS FOR PRIVILEGE.  OUR

8     SINGLE-PAGE TIFF -- WE SPENT AN EXORBITANT SUM OF MONEY

9     PROCESSING AND PRODUCING THESE IN SINGLE-PAGE TIFF, WHICH

10    ALLOWS FOR REDACTION OF PRIVILEGED INFORMATION.  RIGHT.

11    NATIVE FILES DON'T.  THAT'S WHY PARTIES IN MODERN LITIGATION

12    DON'T EXCHANGE DOCUMENTS IN NATIVE FORMAT.

13         AND JUST TO MAKE SURE THAT WE WOULDN'T RUN INTO

14    THIS PROBLEM, WE SPECIFICALLY TOLD PERFECT 10 BEFORE WE DID

15    IT THAT THAT'S WHAT WE WERE GOING TO DO.  AND THEY DIDN'T

16    RAISE A STINK UNTIL NOW.

17         THE COURT:  ALL RIGHT.  IS THERE ANYTHING ELSE ON

18    OTHER ISSUES CONTAINED WITHIN THIS MOTION THAT EITHER SIDE

19    WISHES TO BE HEARD ON?

20         MR. MAUSNER:  JUST --

21         THE COURT:  YES.

22         MR. MAUSNER:  JUST GOING BACK TO THE LOGS, THEY

23    STILL HAVEN'T ANSWERED THE FACT THAT THERE ARE MANY, MANY

24    URLS IN NOTICES.  THEY DON'T SHOW UP ON THE LOGS.  THEY

25    DIDN'T PRODUCE THE NOTICES TO US.  THEY DIDN'T PRODUCE

1    ANYTHING.

2              THE ONLY WAY WE FOUND THEM WAS THE R.I.A.A. SAYS

3    THEY'VE BEEN SENDING THESE TO THEM.  THE M.P.A.A. SAYS

4    THEY'VE BEEN SENDING TO THEM.  WE JUST FOUND OUT ABOUT THAT

5    RIGHT ABOUT THE TIME THAT WE FILED THE MOTION.  WE DIDN'T

6    EVEN KNOW THIS BECAUSE THEY DIDN'T PRODUCE IT.

7              THERE ARE NOTICES ON CHILLING EFFECTS THAT DON'T

8    SHOW UP IN THE LOGS AND DON'T SHOW UP -- WE DIDN'T GET THE

9    ACTUAL NOTICES AND WE DIDN'T GET THE LOGS.

10             THE TERMINATION NOTICES THEY NEVER PRODUCED.  YOU

11   ORDERED THEM TO PRODUCE ALL TERMINATION NOTICES.  WHERE ARE

12   ALL OF THESE THINGS.  THERE ARE MANY, MANY THINGS THAT WE'RE

13   FINDING OUT FROM OTHER SOURCES THAT WERE NEVER PRODUCED TO

14   US.

15             AND ALL OF THE ORDERS SAY, "ALL."  AND THEY SHOULD

16   BE ON THE LOGS.  WE ASSUMED EVERYTHING WOULD BE ON LOGS.  AND

17   WE HAVEN'T GOTTEN THOSE IN ANY FORMAT FROM GOOGLE.

18             THE COURT:  OKAY.

19             MR. MAUSNER:  SO, WE DON'T KNOW -- THERE COULD BE

20   --

21             THE COURT:  TERMINATION NOTICES.  AND WHAT WERE THE

22   OTHER CATEGORIES?

23             MR. MAUSNER:  DMCA NOTICES, TERMINATION NOTICES,

24   CORRESPONDENCE WITH WEBMASTERS.

25             DR. ZADA:  YOUR HONOR, IF YOU DON'T MIND MY

1    INTERRUPTING.

2              THE COURT:  I DO.

3              MS. KASSABIAN:  CAN I RESPOND?

4              THE COURT:  YES.

5              MS. KASSABIAN:  OKAY.  I'D LIKE TO START WITH THE

6    DMCA NOTICES.  IF YOU LOOK AT THE SUPPOSED NOTICES THAT

7    PERFECT 10 ATTACHES THAT GOOGLE SUPPOSEDLY HASN'T PRODUCED,

8    THE VAST MAJORITY OF WHAT THEY ATTACHED TO THEIR SANCTIONS

9    MOTION ARE BLOGGER NOTICES, BLOGGER DMCA NOTICES.  AT NO TIME

10   IN THE HISTORY OF THIS ENTIRE CASE HAS PERFECT 10 SERVED THE

11   DOCUMENT REQUEST ASKING FOR BLOGGER DMCA NOTICES, NOT EVEN TO

12   THIS DAY.

13             SECONDLY, A LOT OF THE NOTICES THEY ATTACH IN THEIR

14   SANCTIONS PAPERS ARE RECENT.  LOOK AT THE DATES ON THEM.

15   THEY'RE 2008, 2009.  GOOGLE HAS NOT RECENTLY SUPPLEMENTED ITS

16   PRODUCTION.  EVERY COUPLE OF YEARS, YOU KNOW, THEY PULL

17   TOGETHER THE NEW DOCUMENTS THAT ARE CONSTANTLY BEING CREATED,

18   AS PEOPLE CONTINUE TO COMPLAIN ABOUT THINGS AND NOTICES COME

19   IN AND NOTICES ARE PROCESSED.  AND WE SUPPLEMENT OUR

20   PRODUCTION.

21             THE COURT:  WELL, BUT --

22             MS. KASSABIAN:  SO THE FACT THAT SOME RECENT

23   NOTICES DON'T APPEAR ON SPREADSHEETS DATING IN 2008 IS

24   UNREMARKABLE.

25             THE COURT:  GOING BACK TO THE DMCA BLOGGER NOTICES,

1  ARE THEY ARGUABLY CONTAINED IN THE EARLIER -- I THINK IT'S

2  DISCOVERY REQUEST -- 51?

3          MS. KASSABIAN:  ABSOLUTELY NOT, YOUR HONOR.

4          THE COURT:  WELL, NOW THAT BLOGGER HAS BEEN ADDED

5  TO THE CASE IN GOOD FAITH SHOULD YOU HAVE?

6          MS. KASSABIAN:  ABSOLUTELY NOT.  NOT EVEN PERFECT

7  10 -- PERFECT 10 HAS NEVER EVEN SENT ME A LETTER ASKING FOR

8  US TO TAKE A LOOK BACK AT ALL OF THE PAST REQUESTS AND

9  DUPLICATE THEM FOR BLOGGER.  AND I THINK WE WOULD OBJECT TO

10  THAT.  NOT EVERY ONE OF THOSE REQUESTS MIGHT BE RELEVANT TO

11  BLOGGER, MIGHT BE SUITABLE OR APPROPRIATE FOR BLOGGER.  SO

12  ABSOLUTELY NOT.

13          THEY'RE ASKING YOUR HONOR TO SANCTION GOOGLE FOR

14  NOT PRODUCING DOCUMENTS REGARDING A 2006 ORDER PERTAINING TO

15  THE SERVICE THAT THEY DIDN'T SUE US ABOUT UNTIL 2008.  THAT'S

16  ABSURD.  IT TAKES TEN MINUTES TO GENERATE A SET OF DOCUMENT

17  REQUESTS RELATED TO BLOGGER.  THEY'VE NEVER DONE IT.  AND

18  THEY'RE CERTAINLY NOT ENTITLED TO SANCTIONS FOR GOOGLE NOT

19  HAVING VOLUNTARILY PRODUCED THOSE.

20          THE COURT:  AND YOU'RE NOT ASKING -- MR. MAUSNER,

21  YOU'RE NOT ASKING FOR A 56(F) CONTINUANCE SO THAT YOU COULD

22  GET THOSE DOCUMENTS, CORRECT?

23          MR. MAUSNER:  WELL, WE THINK THAT THOSE DOCUMENTS

24  SHOULD HAVE BEEN PRODUCED.  THEY SHOULD HAVE, FIRST OF ALL,

25  BEEN PRODUCED EVEN BEFORE BLOGGER HOSTING WAS IN THE CASE

1    BECAUSE BLOGGER WAS ALWAYS IN THE CASE FOR SEARCH.

2              ALL OF THE NOTICES INDICATE SEARCHES AS WELL AS

3    HOSTING SO WHY -- YOU KNOW, WHY WOULDN'T THEY BE PRODUCED --

4              THE COURT:  AND YOU GOT NONE IN BLOGGER SEARCH?

5              MR. MAUSNER:  WE GOT SOME.  WE GOT SOME, BUT WE

6    DIDN'T GET THEM ALL.

7              AND THEY REPRESENTED TWICE THAT ALL NOTICES HAD

8    BEEN PRODUCED.  THEY REPRESENTED THAT IN RESPONSE TO REQUEST

9    NUMBER 196.  AND THEY REPRESENTED IT IN -- BEFORE THIS COURT

10   IN OPPOSING THE MOTION TO COMPEL ON 196 BY SAYING, "ALL

11   NOTICES HAVE BEEN PRODUCED."  THEY DIDN'T SAY, ALL NOTICES

12   EXCEPT BLOGGER.  THEY SAID, "ALL NOTICES."

13             AND, THEN --

14             THE COURT:  BUT ANSWER MY QUESTION.

15             MR. MAUSNER:  YES.

16             THE COURT:  YOU'RE NOT REQUESTING A 56(F)

17   CONTINUANCE.  SO --

18             MR. MAUSNER:  WE'RE WORKING -- I MEAN, IF THERE

19   AREN'T GOING TO BE THE SANCTIONS.

20             WE WERE -- WE'RE REQUESTING SOME TYPE OF

21   CONTINUANCE.  I'M NOT SURE IF IT'S 56(F), BECAUSE WE ARE --

22   WE DON'T THINK WE HAVE TO PREPARE MORE DISCOVERY.  WE THINK

23   THAT THEY JUST HAVE TO ANSWER DISCOVERY THAT'S ALREADY BEEN

24   PROPOUNDED AND ORDERED AT LEAST TWICE.

25             THIS IS NOT A SITUATION WHERE YOU'RE COMING IN AND

1   YOU'RE SAYING --

2           THE COURT:  BUT YOU'VE NEVER EVEN FORMALLY

3   REQUESTED BLOGGER DMCA NOTICES ONCE BLOGGER HAS BEEN IN THE

4   CASE.  AND YOU CERTAINLY HAVE NOT MOVED FOR THEM.

5           MR. MAUSNER:  WELL, WE MOVED FOR ALL NOTICES.  WE

6   ASKED FOR ALL NOTICES.  WE MOVED FOR ALL NOTICES.  AND THE

7   COURT ORDERED ALL NOTICES.  AND THEY SAID THAT THEY HAD

8   PRODUCED ALL NOTICES.  OKAY.

9           THE COURT:  AFTER BLOGGER WAS IN THE CASE?  AFTER

10  BLOGGER --

11          MS. KASSABIAN:  NO, YOUR HONOR.

12          THE COURT:  THERE'S THE BLOGGER SEARCH AND THE

13  BLOGGER -- WHAT'S THE OTHER TERM?

14          MR. MAUSNER:  WELL, THE OTHER TERM --

15          MS. KASSABIAN:  THERE'S NOT BLOGGER SEARCH.  AND HE

16  -- I DON'T KNOW WHAT HE'S TALKING ABOUT.  THERE'S A SINGLE

17  BLOGGER SERVICE.

18          MR. MAUSNER:  WELL, BUT SEARCH INCLUDES -- WELL,

19  WHEN YOU DO A SEARCH FOR THE NAME OF A PERFECT 10 MODEL, YOU

20  GET WEBSITES --

21          THE COURT:  OKAY.  YOU KNOW WHAT, TO MOVE THIS

22  ALONG --

23          MR. MAUSNER:  OKAY.

24          THE COURT:  -- I'M GOING TO SAY THAT -- AND YOU CAN

25  TELL, I'M VERY SKEPTICAL ABOUT P-10'S POSITION ON THIS

1   PARTICULAR MOTION.

2          AND IT SEEMS TO ME TO MOVE THINGS ON AND DO THINGS

3   FAIRLY THAT IF THERE'S GOING TO BE A RULE 56(F) MOTION, AND I

4   DON'T MEAN TO TALK YOU INTO ONE, BUT IF THERE'S GOING TO BE

5   ONE, THERE NEEDS TO BE A FORMAL MOTION.  AND EITHER JUDGE

6   MATZ CAN SEND THAT TO ME, WHICH IS FINE, OR -- IT

7   APPROPRIATELY WOULD BE DECIDED BY HIM.

8          BUT I DON'T KNOW THAT I CAN SEGUE THIS MOTION INTO

9   A RULE 56(F) MOTION WHICH YOU MAY NOT EVEN WANT TO MAKE OR

10  MAY NOT EVEN NEED AND CERTAINLY HAVEN'T ASKED FOR.

11         MS. KASSABIAN:  AND, YOUR HONOR, NOT ONLY HAS

12  PERFECT 10 NOT ASKED FOR IT, AT PAGE 24 OF THEIR REPLY BRIEF

13  THEY SAY, AND I QUOTE, WE ARE NOT SEEKING A CONTINUANCE --

14         THE COURT:  I KNOW.

15         MS. KASSABIAN:  -- UNDER RULE 56(F).

16         THE COURT:  I KNOW.

17         MS. KASSABIAN:  THE MADNESS HAS TO STOP AT SOME

18  POINT.  THEY HAVE TO BE HELD TO THEIR REPRESENTATIONS.  OKAY.

19  THEY ARE DISAVOWING A 56(F).

20         NOW, IF THEY WANT TO FILE ONE ANYWAY AND CONTRADICT

21  THEMSELVES, JUDGE MATZ CAN DECIDE WHETHER A 56(F) MOTION

22  FILED SEVEN MONTHS LATE IS APPROPRIATE.  BUT THEY HAVEN'T

23  ASKED YOU FOR ONE.

24         THE COURT:  NO.  I'M NOT CONVERTING IT INTO ONE.  I

25  AM JUST -- I GUESS, I'M -- I'M TAKEN ABACK BY THE FACT THAT

1    IF P-10 THOUGHT THAT THE PRIOR DISCOVERY ORDERS FOR DMCA

2    NOTICES ABSOLUTELY EMBRACED BLOGGER DMCA NOTICES THAT THAT

3    WOULDN'T HAVE BEEN THRASHED OUT COMPLETELY BEFORE THE HEARING

4    ON THIS MOTION.

5          MS. KASSABIAN:  THEY NEVER RAISED IT.

6          MR. MAUSNER:  WELL --

7          MS. KASSABIAN:  AND CAN I ALSO SAY, YOUR HONOR,

8    THEY'VE NEVER ACTUALLY REQUESTED DMCA NOTICES.  WHAT MR.

9    MAUSNER JUST SAID IS NOT CORRECT.  THEY CAN'T POINT TO A

10   SINGLE OF THEIR DOCUMENT REQUESTS THAT SAY WE WANT DMCA --

11   THERE'S NOT ONE.

12         THE COURT:  FOR BLOGGER.

13         MS. KASSABIAN:  FOR ANY SERVICE.  THEY HAVE NOT

14   SERVED THAT REQUEST.  THEY HAVE ASKED FOR DMCA LOGS, DMCA

15   DOCUMENTS REFLECTING WHAT WAS PROCESSED.  THEY HAVE NOT ONE

16   SINGLE DOCUMENT REQUEST THAT SAYS, PRODUCE YOUR DMCA NOTICES.

17         MR. MAUSNER:  YOUR HONOR, THOUGH, WHAT HAPPENED WAS

18   WE ASKED FOR LOGS OR OTHER DOCUMENTS THAT WOULD CONTAIN

19   THAT.  GOOGLE STATED, WE HAVE PRODUCED ALL NOTICES.  THEY

20   STATED THAT TWICE.

21         AND AT THE TIME THEY MADE THOSE STATEMENTS, THEY

22   HAD PRODUCED SOME BLOGGER NOTICES.  IT TURNS OUT THEY DIDN'T

23   PRODUCE THEM ALL, NOT ANY WAY NEAR ALL, BUT WHAT ARE WE

24   SUPPOSED TO THINK.

25         WE GET SOME BLOGGER NOTICES FROM THEM.  WE GET TWO

1   STATEMENTS FROM THEM STATING WE HAVE PRODUCED ALL NOTICES.

2          THE COURT:  UH-HUH.

3          MR. MAUSNER:  SO WHY -- WE THOUGHT THEY PRODUCED

4   ALL BLOGGER NOTICES.  THEY SAID THEY PRODUCED ALL NOTICES.

5   AND NOW WE FOUND OUT THEY HAVEN'T PRODUCED -- AND THEY'RE

6   ADMITTING IT, THEY HAVEN'T PRODUCED BLOGGER NOTICES -- OR

7   THEY HAVEN'T PRODUCED MOST OF THE BLOGGER NOTICES.

8          YOUR HONOR STATED THAT YOU WERE A LITTLE BIT

9   SKEPTICAL.  COULD I ASK YOU WHY, YOUR HONOR, AND MAYBE WE CAN

10  EXPLAIN SOMETHING.

11         THE COURT:  WELL, I THINK FROM THE CONTENT OF MY

12  QUESTIONS, I'M NOT SEEING THIS AS SERIOUS DISCOVERY ORDER

13  VIOLATIONS THAT WOULD RISE TO THE LEVEL OF EVIDENTIARY

14  SANCTIONS.

15         MR. MAUSNER:  WELL, THAT THEY HAVEN'T PRODUCED

16  PROBABLY 90-SOMETHING PERCENT OF THE BLOGGER NOTICES OR THE

17  BLOGGER URLS.  I THINK THEY'LL TELL YOU THAT THAT'S TRUE THAT

18  THEY HAVEN'T.  THEY'VE ONLY PRODUCED --

19         THE COURT:  BECAUSE THEY --

20         MR. MAUSNER:  -- A VERY SMALL PROPORTION OF THEM.

21         THE COURT:  BECAUSE THEY ARGUABLY HAVE NOT BEEN

22  REQUESTED.

23         MR. MAUSNER:  WELL --

24         MS. KASSABIAN:  THAT IS CORRECT, YOUR HONOR.  NOT

25  ONE SINGLE OF PERFECT 10'S DOCUMENT REQUESTS ASK FOR ANY KIND

1    OF DMCA NOTICE AND CERTAINLY NONE OF PERFECT 10'S REQUESTS

2    ASK FOR BLOGGER DMCA NOTICES.

3            IF THEY HAVE SUCH A REQUEST, I WOULD LOVE THEM TO

4    POINT IT OUT RIGHT NOW BECAUSE IT DOESN'T EXIST.

5            MR. MAUSNER:  OKAY.  IN 51, WE ASKED FOR LOGS OR

6    DOCUMENTS THAT WOULD SHOW EVERY -- I'M TRYING TO RECALL IT.

7    I DON'T HAVE IT IN FRONT OF ME -- THAT WOULD SHOW EVERY

8    NOTICE THAT THEY RECEIVED.

9            IN RESPONSE TO THAT, THEY STATED, WE'RE PRODUCING

10   ALL NOTICES.  AND THEN TWICE AFTER THAT, THEY REPRESENTED

11   THAT THEY HAD PRODUCED ALL NOTICES.

12           THE COURT:  RIGHT.  AND THIS WAS IN --

13           MS. KASSABIAN:  IN 2005.

14           THE COURT:  RULE 51 WAS ORDERED IN 2005?

15           MS. KASSABIAN:  THIS WAS 2005.

16           THE COURT:  THE BLOGGER --

17           MR. MAUSNER:  AND IN THOSE NOTICES --

18           THE COURT:  JUST A MINUTE.  JUST A MINUTE.  WE WANT

19   THE RECORD BECAUSE THIS -- I WANT THE RECORD CLEAR.

20           SO THAT WAS IN 2005.  JUDGE MATZ AMENDED MY ORDER

21   IN 2005 OR 6, I GUESS?

22           DR. ZADA: '08.

23           MS. KASSABIAN:  I THINK PERFECT 10 IS TALKING ABOUT

24    --

25           MR. MAUSNER:  IT WAS .08.

1              MS. KASSABIAN:  -- THE 2006 ORDER RIGHT NOW.

2              THE COURT:  OKAY.

3              MS. KASSABIAN:  IN 2005, PERFECT 10 ASKED FOR DMCA

4    LOG-TYPE DOCUMENTS.

5              THE COURT:  OKAY.

6              MS. KASSABIAN:  AT THAT TIME, GOOGLE SAID, YOU KNOW

7    WHAT, INSTEAD OF THAT WE'LL GIVE YOU THE NOTICES.  SO NOTICES

8    WERE PRODUCED --

9              THE COURT:  OKAY.

10             MS. KASSABIAN:  -- PERTAINING TO WHAT WAS AT ISSUE

11   IN THE CASE AT THAT TIME.

12             THE COURT:  AND BLOGGER WAS ADDED IN '08.

13             MS. KASSABIAN:  2008.

14             THE COURT:  OKAY.

15             MR. MAUSNER:  BUT IN THOSE -- IN THOSE NOTICES THAT

16   WERE PRODUCED, THEY --

17             (MR. MAUSNER AND DR. ZADA CONFERRING.)

18             DR. ZADA:  YOUR HONOR, WE HAVE GIVEN GOOGLE BLOGGER

19   NOTICES IN '05.  WE DIDN'T KNOW THAT IT WAS BLOGGER.  WE

20   ASKED FOR ALL NOTICES, YOUR HONOR, BECAUSE IN DISCOVERY, AS

21   I'M SURE YOU'RE AWARE, WHEN YOU ASK FOR ALL NOTICES, YOU

22   ASSUME YOU'RE GOING TO FIND OUT WHAT PROGRAMS THEY HAVE.  AND

23   SO WE ASKED FOR ALL NOTICES.  IF THEY HAD PROVIDED US WITH

24   THE BLOGGER NOTICES, WE WOULD HAVE FOUND OUT ABOUT BLOGGER.

25             THEY ALSO DENIED IN R-PHASE THAT THEY STORED

1    FULL-SIZE IMAGES ON THEIR SERVERS, WHICH, IN FACT, THEY DID.

2    THEY'VE ALSO DENIED IN R-PHASE THAT THEY DID NOT MAINTAIN A

3    DMCA LOG, BUT WE'VE NEVER RECEIVED A DMCA LOG.

4         SO SINCE THIS CASE HAS STARTED IN APRIL OF '05,

5    YOUR HONOR, THEY SAID THEY WOULD RESPOND --

6         THE COURT:  '04.

7         DR. ZADA:  -- AND PRODUCE DOCUMENTS IN RESPONSE TO

8    51, AND THEY NEVER DID.

9         AND AS A RESULT, WHEN WE FILED OUR MOTION FOR

10   PRELIMINARY INJUNCTION, WE DID NOT HAVE ANY BLOGGER NOTICES,

11   WHICH THEY KNEW ABOUT BECAUSE WE HAD SENT THEM DMCA NOTICES

12   IN FEBRUARY OF '05 ABOUT BLOGGER.

13        THE COURT:  WELL, THE CASE WAS FILED IN FEBRUARY OF

14   '04.  I DON'T THINK THE BLOGGER SERVICE EVEN EXISTED THEN.

15        MR. MAUSNER:  IT WAS -- I THINK IT WAS NOVEMBER

16   '04.

17        DR. ZADA:  BUT, YOUR HONOR --

18        MR. MAUSNER:  I MAY BE WRONG ABOUT THAT.  I'M NOT

19   SURE.

20        DR. ZADA:  -- WE HAVE ACCUSED GOOGLE OF DIRECTLY

21   INFRINGING FULL-SIZE PERFECT 10 IMAGES SINCE THE CASE BEGAN.

22   AND THE DIRECT INFRINGEMENT OF THE FULL-SIZE IMAGES OCCURS ON

23   BLOGGER.  WE ACCUSED THEM OF THAT.

24        THEY CAME UP WITH THIS STRANGE ARGUMENT THAT

25   BECAUSE THEY WERE INLINE LINKING TO THINGS THAT WEREN'T ON

1   THEIR SERVERS, THAT THEY DID NOT HAVE ANY DIRECT INFRINGEMENT

2   LIABILITY.  WHEN THEY WERE MAKING THE ARGUMENT THAT THEY WERE

3   INLINE LINKING TO FULL-SIZE IMAGES THAT WERE NOT ON THEIR

4   SERVERS, THEY CONCEALED THE FACT THAT SOME OF THESE IMAGES

5   WERE ON THEIR SERVERS BECAUSE THEY WERE HOSTED BY GOOGLE.

6           AND, SO, THE PROBLEM IN THIS CASE WAS THAT EVER

7   SINCE THE VERY BEGINNING, GOOGLE HAS INTENTIONALLY CONCEALED

8   THAT THEY STORED FULL-SIZE PERFECT 10 IMAGES ON THEIR

9   SERVERS.

10          AND THE DISCOVERY REQUESTS THAT WE MADE ASKING FOR

11  ALL NOTICES, IF THEY HAD BEEN PROPERLY RESPONDED TO WOULD

12  HAVE REVEALED THE BLOGGER NOTICES, WHICH ARE PART OF SEARCH

13  AS WELL AS HOSTING.

14          THE COURT:  I FULLY UNDERSTAND WHAT YOU'RE SAYING.

15  SO, LET ME FULLY UNDERSTAND THE RESPONSE.

16          MS. KASSABIAN:  PERFECT 10 HAS NOT SERVED A SINGLE

17  DOCUMENT REQUEST ASKING FOR DMCA NOTICES.  PERIOD.  FULL

18  STOP.  THEY NEVER ASKED.  IT'S NEVER BEEN ORDERED.

19          GOOGLE HAS VOLUNTARILY PRODUCED LOTS OF DMCA

20  NOTICES.  IN 2006 GOOGLE PRODUCED NOTICES IN LIEU OF

21  PRODUCING A LOG.  THAT SHOULD HAVE BEEN ENOUGH.  BUT PERFECT

22  10 CAME BACK AND SAID, YOU KNOW WHAT, WE WANT YOUR LOGS TOO.

23  SO, THAT LED TO THE 2008 DISCOVERY ORDER THAT REQUIRED GOOGLE

24  TO PRODUCE ITS LOGS, WHICH GOOGLE DID.

25          THERE IS NOT ONE SINGLE DOCUMENT REQUEST EVER

1   ASKING FOR GOOGLE TO PRODUCE NOTICES OF ANY KIND, LET ALONE

2   BLOGGER NOTICES.  IF IT WAS SO IMPORTANT, PERFECT 10 SHOULD

3   HAVE SERVED A DISCOVERY REQUEST ON IT.  THEY NEVER DID.

4   NOWHERE IN THEIR PAPERS WILL YOU FIND A SINGLE DOCUMENT

5   REQUEST THAT HAS THE PHRASE "DMCA NOTICES" IN IT.  IT WAS NOT

6   REQUESTED.

7           THE COURT:  SO, COULD SOMEONE READ ME 51, REQUEST

8   51.  AND WHAT WAS THE OTHER ONE? -- 200 SOMETHING?

9           MS. KASSABIAN:  YOUR HONOR, IT SAYS:

10          "51.  GOOGLE'S DMCA LOG FOR THE YEARS 2001

11          THROUGH 2005, OR ANY OTHER DOCUMENTS SUFFICIENT

12          TO IDENTIFY ALL ENTITIES, OTHER THAN PERFECT 10,

13          FROM WHOM GOOGLE HAS RECEIVED A NOTICE REGARDING

14          AN INTELLECTUAL PROPERTY VIOLATION, THE URLS

15          COMPLAINED ABOUT IN EACH NOTICE FROM EACH SUCH

16          ENTITY, AND THE DATES OF THE COMPLAINTS FOR EACH

17          SUCH URL."

18          THESE DOCUMENTS --

19          DR. ZADA:  THAT COVERS BLOGGER, YOUR HONOR.

20          MS. KASSABIAN:  "THESE DOCUMENTS SHOULD BE PROVIDED

21          IN ELECTRONIC FORMAT IF AVAILABLE."

22          THEY ASKED FOR THE LOG.

23          THE COURT:  AND WHAT WAS THE SECOND REQUEST, THE

24   LATER REQUEST?

25          MS. KASSABIAN:  THE LOG.  IN 2008 THEY SERVED

1    REQUEST 196 ASKING FOR GOOGLE'S DMCA LOG.  THAT'S IT.

2    GOOGLE'S DMCA LOG.  THAT'S THE WHOLE THING, AS I RECALL.

3            MR. MAUSNER:  AND, THEN, TWICE GOOGLE REPRESENTED

4    WE HAVE PRODUCED ALL NOTICES.

5            DR. ZADA:  YOUR HONOR, GOOGLE ONLY HAS ONE DMCA

6    AGENT.  ONE DMCA AGENT.  ALL OF THE NOTICES REGARDING

7    INTELLECTUAL PROPERTY VIOLATIONS GO TO THAT ONE DMCA AGENT.

8    WE ASKED FOR ALL NOTICES, DOCUMENTS SUFFICIENT --

9            THE COURT:  WHERE DID YOU ASK FOR THAT?

10           DR. ZADA:  51.  WE ASKED FOR --

11           THE COURT:  SO, THAT'S YOUR --

12           DR. ZADA: -- DOCUMENTS SUFFICIENT TO IDENTIFY ALL

13   PARTIES THAT HAVE --

14           THE COURT:  OR A LOG.

15           DR. ZADA:  PARDON?  OR A LOG.  THEY DIDN'T GIVE US

16   EITHER OF THEM.

17           THE COURT:  BUT DID THEY REPRESENT THAT THEY GAVE

18   YOU --

19           MR. MAUSNER:  YES.

20           THE COURT: -- ALL THE NOTICES.

21           DR. ZADA:  SEVERAL TIMES, YOUR HONOR.  THEY WERE

22   ORDERED BY THE --

23           MR. MAUSNER:  LET ME --

24           MS. KASSABIAN:  I'M JUST GOING TO SHORT-CIRCUIT

25   THIS.  IN 2006 GOOGLE SAID WE'LL PRODUCE THE NOTICES INSTEAD

1   OF THE LOG.  HERE YOU GO.

2              DR. ZADA:  NO, YOU NEVER SAID THAT.

3              MR. MAUSNER:  NO, YOUR HONOR.  LET ME --

4              THE COURT:  I DO RECALL THAT.  THAT'S WHY I'VE BEEN

5   CONFUSED.

6              MS. KASSABIAN:  AND, AGAIN, THAT'S NOT AN ORDER.

7   THAT WAS A VOLUNTARY PRODUCTION THAT SATISFIED THAT REQUEST.

8              THE COURT:  WELL, WAS IT MISLEADING?

9              DR. ZADA:  BUT, YOUR HONOR --

10             MS. KASSABIAN:  WE WILL PRODUCE THE NOTICES.

11             THE COURT:  ALL OF THEM?

12             MS. KASSABIAN:  IN 2006 --

13             DR. ZADA:  NO.

14             MS. KASSABIAN:  -- IT DID A REASONABLE SEARCH AND

15   PRODUCED EVERYTHING IT COULD FIND AT THAT TIME.  BLOGGER

16   WASN'T PART OF THE CASE UNTIL 2008.

17             DR. ZADA:  YOUR HONOR --

18             MS. KASSABIAN:  GOOGLE HAD NO REASON TO --

19             THE COURT:  WELL, HERE'S WHAT I'M COMING BACK TO.

20   THE MORE I HEAR THE LESS COMFORTABLE I WOULD BE TODAY

21   RECOMMENDING VERY SERIOUS -- EXTREMELY SERIOUS SANCTIONS --

22   EVIDENTIARY SANCTIONS.

23             TO MY SIMPLE MIND IT SEEMS LIKE THIS.  THAT THERE

24   IS A DISPUTE -- I WON'T CHARACTERIZE IT AS A GOOD FAITH OR A

25   BAD FAITH DISPUTE.  THERE IS A DISPUTE AS TO WHAT THE IMPACT,

1   IF ANY, WAS BY ADDING BLOGGER INTO THE CASE IN 2008 AND WHAT

2   GOOGLE'S DISCOVERY RESPONSE OR SUPPLEMENTS TO THEIR PRIOR

3   RESPONSES SHOULD HAVE BEEN IN LIGHT OF A NUMBER OF FACTORS,

4   INCLUDING WHETHER PERFECT 10 ADVISED GOOGLE THAT AS A RESULT

5   OF BLOGGER NOW BEING FORMALLY IN THE CASE THEY SHOULD GO BACK

6   AND SUPPLEMENT ALL PRIOR DISCOVERY ORDERS.  SO, THAT'S WHERE

7   THE DISPUTE IS.

8           AND IT SEEMS TO ME THAT ALL I REALLY NEED TO DO IS

9   RULE ON THE EVIDENTIARY SANCTIONS MOTION, WHICH AT THIS POINT

10  OBVIOUSLY I WOULD DENY.  AND I WANT TO HEAR A LITTLE BIT MORE

11  BEFORE I -- AND I DIDN'T INTEND TO RULE FROM THE BENCH ON ANY

12  OF THESE, BUT THAT MAY BE WHAT HAPPENS.

13          AND I WANT TO HEAR MORE, BY THE WAY, FROM GOOGLE

14  REGARDING THE TERMINATION NOTICES AND THE CORRESPONDENCE WITH

15  WEBMASTERS THAT MR. MAUSNER MENTIONED.

16          BUT THAT AT THAT POINT EITHER -- IF THAT'S THE REAL

17  DISPUTE, THEN, P-10 CAN EITHER PROCEED WITH A RULE 56(F)

18  MOTION OR NOT.  BECAUSE I DON'T KNOW WHETHER THEY BELIEVE

19  THAT ADDITIONAL DISCOVERY COULD DEFEAT THE DMCA MOTION ON THE

20  MERITS.

21          DR. ZADA:  YOUR HONOR, CAN I MAKE A POINT.

22          BASICALLY OUR POSITION IS THAT EVER SINCE THE CASE

23  STARTED BACK IN APRIL OF '05, GOOGLE HAS MADE A SEQUENCE OF

24  --

25          THE COURT:  APRIL '04.

1          DR. ZADA:  WELL, THE CASE WAS FILED IN NOVEMBER OF

2     '04.  BUT EVER SINCE GOOGLE'S FIRST DISCOVERY RESPONSE IN

3     APRIL 18, '05 WHERE THEY PROMISED TO PROVIDE US WITH

4     DOCUMENTS RESPONSIVE TO RULE 51 AND, THEN, DID NOT DO SO, DID

5     NOT PROVIDE US WITH ANY NOTICES REGARDING BLOGGER, DID NOT

6     PROVIDE US WITH NOTICES REGARDING ANYTHING, DID NOT PROVIDE

7     US WITH HANDWRITTEN LOGS FROM 2002 AND 2003, WHICH WOULD HAVE

8     EMBARRASSED THEM IF WE HAD THEM BECAUSE WE WOULD HAVE SHOWED

9     THEM TO JUDGE MATZ AND TO THE NINTH CIRCUIT, AND IT WOULD

10    HAVE BEEN OBVIOUS THAT GOOGLE HAS NOT MADE ANY ATTEMPT TO

11    PROCESS DMCA NOTICES.

12          EVER SINCE THAT TIME THEY HAVE VIOLATED A SEQUENCE

13    OF COURT ORDERS BY YOUR HONOR AND BY JUDGE MATZ.  THEY WERE

14    ORDERED TO PRODUCE ALL NOTICES OF TERMINATION.  THEY DID NOT

15    PRODUCE ANY NOTICES OF TERMINATION FOR ANY THIRD PARTY.  THEY

16    ONLY PRODUCED A FEW RELATED TO PERFECT 10 NOTICES.

17          THEY WERE ORDERED TO PRODUCE A DMCA LOG AS A

18    SPREADSHEET.  THEY HAD A SPREADSHEET.  YOU HAVE TO DO THIS

19    WITH A SPREADSHEET.  THEY DID NOT PRODUCE IT.  THEY BROKE IT

20    UP INTO THOUSANDS OF PIECES.

21          THEY HAVE VIOLATED SO MANY ORDERS.  IF YOUR HONOR

22    DOES NOT SANCTION GOOGLE IN ANY WAY, THERE WOULD BE NO POINT

23    IN DISCOVERY IN THIS CASE.  WE WILL NOT BOTHER --

24          THE COURT:  ALL RIGHT.

25          DR. ZADA: -- TO TAKE ANY DISCOVERY BECAUSE THEY

 1   WILL JUST DISOBEY ORDERS --

 2            THE COURT:  DR. ZADA --

 3            DR. ZADA: -- AND WE WILL NEVER GET ANYTHING.  I'M

 4   SORRY.

 5            THE COURT:  DR. ZADA, UNLESS I INVITE YOU TO ARGUE,

 6   THAT'S ALL I'M HEARING FROM YOU TODAY, AT LEAST ON THIS

 7   MOTION.

 8            MS. KASSABIAN:  I WOULD APPRECIATE THAT, YOUR

 9   HONOR.

10            THE COURT:  ALL RIGHT.  MS. KASSABIAN, COULD YOU

11   ADDRESS THE TERMINATION NOTICES AND THE WEB MASTER

12   CORRESPONDENCE.

13            MR. MAUSNER:  YOUR HONOR, BEFORE WE GO ON TO THAT,

14   MAY WE JUST SHOW YOU WHERE GOOGLE REPRESENTED THAT IT HAD

15   PRODUCED ALL NOTICES.  WE'LL PUT THAT UP ON THE SCREEN.

16   OKAY.

17            THE COURT:  AND WHAT'S THE DATE OF THIS?

18            MR. MAUSNER:  OKAY.

19            MS. KASSABIAN:  CAN I HAVE A CITATION TO WHAT IN

20   YOUR PAPERS IS THIS ATTACHED AS AN EXHIBIT?

21            MR. MAUSNER: "GOOGLE'S RESPONSES AND OBJECTIONS TO

22   PLAINTIFF'S FIFTH SET" --

23            MS. KASSABIAN:  WHAT EXHIBIT IS THIS IN IN YOUR

24   FILING?

25            MR. MAUSNER:  HERE'S A --

1          (PAUSE IN PROCEEDINGS.)

2          MS. KASSABIAN:  YOUR HONOR, COULD HE -- COULD I

3   PLEASE HAVE A CITATION SO I CAN KNOW WHERE TO LOOK.

4          THE COURT:  ALL RIGHT.  HE'S LOOKING -- HE'S

5   LOOKING FOR IT.

6          MS. KASSABIAN:  OKAY.  I CAN'T -- BECAUSE I CAN'T

7   SEE THAT.

8          THE COURT:  OKAY.

9          MR. MAUSNER:  IT'S EXHIBIT F TO THE DECLARATION OF

10   JEFFREY M. MAUSNER IN SUPPORT OF PERFECT 10'S MOTION FOR

11   EVIDENTIARY AND OTHER SANCTIONS.

12          MS. KASSABIAN:  THANK YOU.

13          MR. MAUSNER:  OKAY.

14          THE COURT:  OKAY.  PAGE WHAT?

15          MR. MAUSNER:  LET'S SEE --

16          THE COURT:  WELL, IT'S RESPONSE TO 196.

17          MR. MAUSNER:  196, RIGHT.

18          THE COURT:  NOT PAGE BUT RESPONSE TO REQUEST 196.

19          MR. MAUSNER:  IT SAYS:

20          "GOOGLE ALREADY PRODUCED DOCUMENTS RESPONSIVE

21          TO REQUEST NUMBER 51 CONSTITUTING ALL NOTICES

22          RECEIVED BY GOOGLE REGARDING INTELLECTUAL

23          PROPERTY VIOLATION."

24          THE COURT:  OKAY.  AND THAT RESPONSE WAS DATED

25   WHAT?

1             MS. KASSABIAN:   FEBRUARY 2007.

2             THE COURT:   OKAY.  AND LET ME ASK, DID THAT REFER

3    TO ALL NOTICES RECEIVED BY GOOGLE FROM ANY SOURCE REGARDING

4    INTELLECTUAL PROPERTY VIOLATIONS FOR A CERTAIN TIME PERIOD?

5             MS. KASSABIAN:   THIS IS A WRITTEN RESPONSE TO AN

6    OBJECTION TO A DUPLICATIVE DOCUMENT REQUEST.  IN 2007 -- OR

7    LATE 2006, PERFECT 10 SERVED A REDUNDANT DOCUMENT REQUEST,

8    AGAIN ASKING FOR DMCA LOGS EVEN THOUGH THE PARTIES HAD

9    ALREADY HASHED THAT OUT THE PRIOR YEAR.  AND GOOGLE SAID, WE

10   OBJECT TO THIS.  WE'VE ALREADY GIVEN YOU NOTICES.

11            AND PERFECT 10 KNOWS WHAT IT HAD BECAUSE THOSE

12   PRODUCTIONS HAPPENED IN 2006.  SO, GOOGLE DID A REASONABLE

13   SEARCH AND GATHERED THE DMCA NOTICES THAT WERE IMPLICATED BY

14   THE CASE AT THAT TIME, I.E., THERE WAS NO BLOGGER INVOLVED AT

15   THIS POINT IN THE CASE.  NOBODY WAS TALKING ABOUT BLOGGER.

16            THE COURT:  I UNDERSTAND.

17            MS. KASSABIAN:  AND PRODUCED THOSE NOTICES.

18            NOW, ULTIMATELY, GOOGLE LOST THIS FIGHT.  GOOGLE'S

19   OBJECTIONS TO REQUEST NUMBER 196 WERE OVERRULED LEADING TO

20   YOUR HONOR'S FEBRUARY 22ND, 2008 ORDER THAT GOOGLE PRODUCE

21   ITS DMCA LOGS.  AND GOOGLE DID, SATISFYING THIS REQUEST.

22   THERE'S NO DISCOVERY ORDER VIOLATION IMPLICATED BY ANY OF

23   THIS.

24            IF I COULD -- COULD I ADDRESS YOUR HONOR'S --

25            MR. MAUSNER:  AND THERE'S ANOTHER PLACE, YOUR

1    HONOR, IN A JOINT STIPULATION WHERE THEY STATE THAT THEY

2    PRODUCED ALL NOTICES.

3              THE COURT:  IN WHAT YEAR ARE YOU REFERRING TO?

4              MR. MAUSNER:  IT WAS ALSO BEFORE THE AMENDMENT.

5              THE COURT:  OKAY.  ALL RIGHT.

6              OKAY.  NOW, IF YOU'D ADDRESS THE ISSUES I WANTED TO

7    HEAR ABOUT.

8              MS. KASSABIAN:  THANK YOU.

9              JUST TO CLOSE THE LOOP ON THIS BLOGGER DISCOVERY

10   ISSUE.  WHEN PERFECT 10 WAS TRYING TO CONVINCE JUDGE MATZ TO

11   ALLOW IT TO AMEND ITS COMPLAINT IN 2008 AND ADD BLOGGER, I

12   SPECIFICALLY SAID, ONE OF THE PROBLEMS WE'RE GOING TO HAVE,

13   YOUR HONOR, IS THAT WE'RE GOING TO HAVE TO PRODUCE A WHOLE --

14   GO THROUGH A WHOLE BUNCH OF DISCOVERY REQUESTS ON THIS NEW

15   SERVICE.

16             AND I SAID:

17             "ALL OF THE DISCOVERY THAT'S ALREADY BEEN

18             SERVED REGARDING SEARCH, I ANTICIPATE THAT

19             PERFECT 10 IS GOING TO ATTEMPT TO SERVE

20             PARALLEL DISCOVERY AIMED AT BLOGGER INSTEAD

21             OF AIMED AT GOOGLE'S SEARCH SERVICE."

22             THE COURT SAYS:

23             "JUDGE MATZ:  YOU ARE GOING TO DO THAT, AREN'T YOU,

24             MR. MAUSNER?

25             "MR. MAUSNER:  WELL, I DON'T KNOW IF IT'S

1          GOING TO BE EXACTLY THE SAME.  WE ARE GOING TO

2          TAKE DISCOVERY REGARDING BLOGGER, BUT IT

3          DEPENDS ON WHAT WE NEED OBVIOUSLY.

4          "THE COURT:  WELL, BUT IT'S GOING TO BE ALONG

5          THE SAME LINES AS THE DISCOVERY YOU HAVE BEEN

6          CONDUCTING ALL ALONG, RIGHT?  IT'S JUST ABOUT

7          BLOGGER.

8          "MR. MAUSNER:  I DON'T KNOW THAT THE DISCOVERY

9          REQUESTS WOULD BE THE SAME.  BUT, YES, YES, WE

10          ARE GOING TO TAKE DISCOVERY ABOUT BLOGGER

11          CERTAINLY."

12          THE COURT:  HAS ANY BEEN TAKEN?

13          MS. KASSABIAN:  NO.

14          THE COURT:  BECAUSE NONE HAS COME TO MY ATTENTION.

15          MS. KASSABIAN:  NO.  IN SEPTEMBER OF 2009, ABOUT

16     FOUR MONTHS AGO, PERFECT 10 SERVED SOME NEW DOCUMENT

17     REQUESTS, AND I THINK A FEW OF THEM MENTIONED BLOGGER.  BUT

18     NONE OF THEM ASKED FOR BLOGGER DMCA NOTICES OR A BLOGGER DMCA

19     LOG.

20          THE COURT:  OKAY.

21          MR. MAUSNER:  AND THE REASON WAS THEY SAID THAT

22     THEY HAD PRODUCED ALL NOTICES ALREADY.

23          THE COURT:  WELL --

24          MR. MAUSNER:  NOW WE FOUND OUT THAT'S NOT TRUE.

25          THE COURT:  -- I DON'T KNOW IF I WOULD INTERPRET

1    THAT COLLOQUY THE SAME WAY.

2              ALL RIGHT.

3              MS. KASSABIAN:  YOUR HONOR, ON THE TWO OTHER

4    ISSUES.

5              THE COURT:  YES, SPEAK.

6              MS. KASSABIAN:  IF I MAY APPROACH --

7              THE COURT:  SURE.

8              MS. KASSABIAN: -- MR. LOVE MAY APPROACH.

9              WE HAVE IN OUR PAPERS, AS YOU KNOW, AND AS YOUR

10   HONOR REQUESTED, WE REPEATEDLY MAKE REFERENCE TO VARIOUS

11   BATES NUMBERS IN GOOGLE'S PRODUCTION WHERE RESPONSIVE

12   DOCUMENTS CAN BE FOUND TO REFUTE PERFECT 10'S CLAIMS THAT

13   GOOGLE DIDN'T PRODUCE THOSE DOCUMENTS.

14             SO, WHAT I'VE ASSEMBLED HERE, AND I'VE ALSO HANDED

15   PERFECT 10 A COURTESY COPY, IS JUST A COLLECTION OF SOME OF

16   THOSE DOCUMENTS, WHICH WERE KIND OF RATHER VOLUMINOUS TO

17   SUBMIT WITH THE BRIEFING.  BUT IF YOUR HONOR HAS ANY

18   QUESTIONS WHATSOEVER ABOUT ANY OF THE REPRESENTATIONS IN ANY

19   OF THE PAPERS ABOUT WHAT DOCUMENTS GOOGLE PRODUCED IN

20   RESPONSE TO EACH OF THESE CATEGORIES, THIS COURTESY BINDER

21   SHOWS SAMPLE DOCUMENTS FOR EACH OF THE, I BELIEVE, SEVEN

22   CATEGORIES THAT PERFECT 10 ACCUSES.

23             (GOOGLE COUNSEL BRIEFLY CONFERRING.)

24             MS. KASSABIAN:  CATEGORY I(C) IN YOUR BINDER, TAB

25   1(C) HAS SAMPLE TERMINATION NOTICES.

1          THE COURT:  BUT ARE YOU REPRESENTING THAT ALL

2    TERMINATION NOTICES WERE PRODUCED?

3          MS. KASSABIAN:  I'M REPRESENTING THAT GOOGLE DID A

4    REASONABLE SEARCH AND PRODUCED DOCUMENTS RESPONSIVE, WHICH IS

5    EXACTLY WHAT WAS REQUIRED.

6          THE COURT:  OH, THAT WAS ONE OF THE DOCUMENTS

7    RESPONSIVE --

8          MS. KASSABIAN:  YEAH, YEAH.

9          THE COURT: -- QUOTE, UNQUOTE.  OKAY.

10          MS. KASSABIAN:  JUDGE MATZ HAS SORT OF --

11          MR. MAUSNER:  NO.  NO, YOUR HONOR.  THE ORDER WAS

12    ALL TERMINATION NOTICES.  AND THEY HAVE ADMITTED THAT THEY

13    HAVE NOT PRODUCED BLOGGER TERMINATION NOTICES.

14          AND ANOTHER POINT --

15          THE COURT:  ALL RIGHT.  WAIT.  WAIT A SECOND.

16          WILL SOMEONE READ ME REQUEST 26 AND 27 -- OR THE

17    ORDER, I GUESS.

18          MR. MAUSNER:  THE ORDER.

19          THE COURT:  THE ORDER ON 26 AND 27.

20          MR. JANSEN IS GETTING A HEADACHE I CAN TELL.

21          MR. MAUSNER:  ANOTHER POINT, YOUR HONOR, IS

22    EVERYTHING THAT WE'VE SAID ABOUT BLOGGER ALSO APPLIES TO

23    ADSENSE.  AND ADSENSE WAS SPECIFICALLY MENTIONED IN THE

24    COMPLAINT --

25          THE COURT:  THE ORIGINAL COMPLAINT.

1          MR. MAUSNER: -- THE ORIGINAL COMPLAINT, THE FIRST

2    AMENDED COMPLAINT THAT WAS FILED WITHIN A COUPLE OF MONTHS OF

3    THAT.  ADSENSE HAS ALWAYS BEEN IN THE CASE.  EVERYTHING THAT

4    WE'VE SAID ABOUT THEM NOT PRODUCING NOTICES, ABOUT NOT

5    PRODUCING TERMINATION NOTICES APPLIES TO ADSENSE AS WELL.

6    AND THERE CAN BE NO QUESTION THAT ADSENSE HAS ALWAYS BEEN IN

7    THE CASE.

8          THE COURT:  ALL RIGHT.  WHAT WAS THE FINAL RULING

9    BY EITHER ME OR JUDGE MATZ ON 26 AND 27?

10          MR. MAUSNER:  WE'RE GETTING THAT UP ON THE SCREEN

11   IN ONE SECOND, YOUR HONOR.

12          THE COURT:  OKAY.

13          MS. KASSABIAN:  I CAN READ IT IF YOU'D LIKE.

14          THE COURT:  ALL RIGHT.  WAS THIS MINE OR JUDGE

15   MATZ?

16          MS. KASSABIAN:  THIS WAS YOURS.

17          THE COURT:  OKAY.

18          MS. KASSABIAN: (READING.)

19          "GOOGLE IS ORDERED TO PRODUCE ALL DOCUMENTS

20          IN RESPONSE TO PERFECT 10'S REQUESTS FOR

21          PRODUCTION NUMBERS 26 AND 27, WHICH ARE

22          NOW COMBINED AND MODIFIED INTO ONE REQUEST AS

23          FOLLOWS:

24          "ALL NOTICES OF TERMINATION ISSUED BY GOOGLE

25          AS A RESULT OF ALLEGED INTELLECTUAL PROPERTY

1          VIOLATIONS."

2          AND IT SETS A PRODUCTION DATE.  AND, THEN, I

3     BELIEVE THERE WAS A DEFINITION --

4          MR. NOLAN:  YES, THE REQUESTS THEMSELVES, YOUR

5     HONOR, PERFECT 10 DEFINED CERTAIN TERMS -- GOOGLE-AFFILIATED

6     WEB SITES AND OTHERS THAT THEY USED IN THOSE REQUESTS, 26 AND

7     27.  AND THAT DEFINITION SPECIFICALLY LIMITED IT TO GOOGLE

8     ADVERTISING PRODUCTS, SUCH AS ADWORDS AND ADSENSE.

9          THE COURT:  ALL RIGHT.  AND THE REPRESENTATION FROM

10    GOOGLE IS THAT EVERYTHING --

11         MS. KASSABIAN:  THIS WAS, AGAIN, BACK IN 2006 --

12         THE COURT:  YES.

13         MS. KASSABIAN:  -- I BELIEVE.

14         THE COURT:  YES.

15         MS. KASSABIAN:  AND GOOGLE DID A REASONABLE SEARCH

16    AND PRODUCED WHAT IT FOUND.  NOW, WE ARE CONSTANTLY

17    SUPPLEMENTING PRODUCTION.  BUT FOR PERFECT 10 TO SAY THAT

18    GOOGLE DIDN'T PRODUCE BLOGGER-RELATED TERMINATION NOTICES --

19         THE COURT:  WELL, IT'S THE SAME ARGUMENT AS --

20         MS. KASSABIAN:  -- IT'S THE SAME ARGUMENT, YOUR

21    HONOR.  BLOGGER WAS NOT REQUESTED.

22         THE COURT:  OKAY.

23         MS. KASSABIAN:  AND BEHIND TAB 1(C) YOU WILL SEE

24    SOME SAMPLE DOCUMENTS FROM OUR PRODUCTION.  WE ASSUMED THE

25    COURT DIDN'T WANT A TRUCKLOAD OF DOCUMENTS SO WE CREATED THIS

1   HANDY BINDER.

2          THE COURT:  YOU KNOW ME WELL.

3          MR. MAUSNER:  YOUR HONOR.

4          THE COURT:  YES?

5          MR. MAUSNER:  IT'S UP ON THE SCREEN NOW.

6          THE COURT:  OKAY.

7          MR. MAUSNER:  IT SAYS:

8          "ALL NOTICES OF TERMINATION ISSUED BY GOOGLE

9          AS A RESULT OF ALLEGED INTELLECTUAL PROPERTY

10         VIOLATION."

11         THE COURT:  OKAY.

12         MR. MAUSNER:  OKAY.  NOW, THEY ALSO -- THEY HAVE

13   NOT PRODUCED ALL ADSENSE TERMINATION NOTICES.  OKAY.  THEY

14   ADMIT THEY HAVEN'T PRODUCED ALL BLOGGER NOTICES --

15         THE COURT:  WELL --

16         MR. MAUSNER: -- BUT THEY HAVE THIS EXCUSE --

17         THE COURT:  BUT THEY'RE STILL PRODUCING THEM THEY

18   SAY.

19         MR. MAUSNER:  WELL --

20         MS. KASSABIAN:  PERFECT 10 HAS NO BASIS FOR THE

21   STATEMENT THAT IT'S MAKING RIGHT NOW.

22         MR. MAUSNER:  WELL, IS SHE REPRESENTING THAT THEY

23   HAVE PRODUCED ALL ADSENSE NOTICES?

24         MS. KASSABIAN:  I ALREADY MADE THIS REPRESENTATION

25   BACK IN 2006 AND PROBABLY IN SOME OF THE SUPPLEMENTAL

1   PRODUCTIONS.  GOOGLE SEARCHED FOR RESPONSIVE DOCUMENTS AND

2   PRODUCED THEM AS THEY WERE FOUND AND AS THEY'VE BEEN CREATED.

3          I CANNOT SIT HERE -- GOOGLE IS A HUGE COMPANY.  I

4   CANNOT SIT HERE AND SAY THERE'S NOT A SINGLE NOTICE SOMEWHERE

5   THAT MIGHT HAVE BEEN MISSED.  BUT GOOGLE DID WHAT IT WAS

6   OBLIGED TO DO UNDER THE RULES, CONDUCTED A REASONABLE SEARCH.

7          PERFECT 10 ADMITS THAT MANY OF THESE DOCUMENTS HAVE

8   BEEN PRODUCED.  IT SAYS, WE SPECULATE THAT THERE MUST BE MORE

9   THAT YOU DIDN'T PRODUCE.

10          WELL, MY FIRST QUESTION IS -- OR MY FIRST STATEMENT

11   IS THEY HAVE NO BASIS FOR THAT SPECULATION.

12          AND MY SECOND STATEMENT IS THIS IS A DOCUMENT

13   PRODUCTION THAT'S CONTINUALLY BEING UPDATED AS NEW DOCUMENTS

14   ARE CREATED.

15          AND MY THIRD STATEMENT IS WHAT IS THE PREJUDICE.

16   PERFECT 10 HAD DOZENS OF THESE -- I THINK WE SUBMITTED DOZENS

17   OF EXAMPLES.  THEY HAD THESE DOCUMENTS WITH THEM WHEN THEY

18   OPPOSED OUR DMCA MOTIONS.  THEY ALSO HAD THE GOOGLE DMCA

19   PROCESSING SPREADSHEETS, I.E., THE DMCA LOGS WHICH HAVE A

20   COLUMN LISTING TERMINATIONS.  WHAT IS THE HARM.  THEY HAVE

21   THAT EVIDENCE.  THEY USED IT IN OPPOSITION TO THE DMCA

22   MOTIONS.  WHAT'S THE PREJUDICE.  YOU HAVE TO SHOW PREJUDICE

23   WHEN YOU'RE TRYING TO OBTAIN EVIDENTIARY SANCTIONS BY AN

24   AFFIRMATIVE DEFENSE.

25          THE COURT:  LET ME JUST HEAR FROM MS. KASSABIAN

1    ABOUT THE LAST CATEGORY THAT I HAVE, WHICH IS CORRESPONDENCE

2    OF WEB MASTERS.

3            AND, THEN, I WOULD LIKE YOU TO ADDRESS EXACTLY WHAT

4    SHE JUST MENTIONED, PREJUDICE.

5            MS. KASSABIAN:  THAT WOULD BE TAB 1(D) IN YOUR

6    BINDER, YOUR HONOR.  SAME THING.  I BELIEVE --

7            WHICH NUMBER, REQUEST NUMBER --

8            MR. NOLAN:  29.

9            THE COURT:  OKAY.  I SEE IT.

10           MS. KASSABIAN:  THIS IS REQUEST NUMBER 29, I

11   BELIEVE.  AND I THINK THIS WAS THE ORDER THAT THE COURT

12   SPECIFICALLY LIMITED TO -- GOOGLE HAD TO PRODUCE

13   COMMUNICATIONS WITH CERTAIN ENUMERATED WEB SITES THAT PERFECT

14   10 HAD LISTED IN ITS REQUESTS LIMITED BY -- ONLY WITH RESPECT

15   TO INFORMATION THAT GOOGLE HAD ACCESS TO REGARDING WHO OWNED

16   THOSE WEB SITES.  THAT'S WRITTEN INTO THE ORDER.  AND THAT IS

17   EXACTLY WHAT GOOGLE DID.

18           PERFECT 10 EVEN POINTS TO SOME OF THESE

19   COMMUNICATIONS IN ITS OWN PAPERS AND SAYS, WELL, WE THINK

20   THERE SHOULD BE MORE.

21           IT'S PURE SPECULATION.  THE DOCUMENTS HAVE BEEN

22   PRODUCED.  AND, AGAIN, SUBJECT TO SUPPLEMENTATION AS ALL OF

23   THIS IS.

24           THE COURT:  ALL RIGHT.  MR. MAUSNER.

25           WELL, LET ME SAY THIS.  THIS IS THE FINAL ROUND OF

1    ARGUMENT ON THIS MOTION.  IF MS. KASSABIAN WHEN SHE'S READY

2    HAS ANYTHING ELSE SHE WOULD LIKE TO SAY, SHE MAY SAY SO.

3    THEN, I'LL HEAR FROM MR. MAUSNER.  AND THEN THE MOTION IS

4    TAKEN UNDER SUBMISSION.

5            SO, LET ME ASK MS. KASSABIAN.  ANYTHING ELSE YOU

6    WANT TO SAY GENERALLY ABOUT THIS MOTION?

7            MS. KASSABIAN:  WELL, YOUR HONOR, I DON'T THINK THE

8    STANDARD HAS BEEN MET.  IF YOUR HONOR HAS ANY QUESTIONS ABOUT

9    WHETHER GOOGLE HAS PRODUCED CERTAIN CATEGORIES OF DOCUMENTS,

10   I WANT TO ANSWER THOSE FOR YOU --

11           THE COURT:  OKAY.

12           MS. KASSABIAN:  -- IF THERE'S ANY DOUBTS IN YOUR

13   MIND.

14           BUT ONE THING THAT'S IMPORTANT TO NOTE IS THAT FOR

15   MANY OF THESE CATEGORIES OF DOCUMENTS THEY'VE NEVER BEEN

16   REQUESTED.  AND FOR THE CATEGORIES THAT HAVE BEEN REQUESTED,

17   WE'VE PRODUCED EVIDENCE THAT GOOGLE DID, IN FACT, MAKE THOSE

18   PRODUCTIONS.

19           SO, I DON'T WANT TO WASTE ANY MORE OF YOUR HONOR'S

20   TIME UNLESS THE COURT HAS ANY --

21           THE COURT:  NO ONE IS WASTING MY TIME, BUT I --

22           MS. KASSABIAN:  UNLESS YOUR HONOR HAS ANY SPECIFIC

23   QUESTIONS.

24           THE COURT:  ALL RIGHT.

25           MR. MAUSNER.

1          MR. MAUSNER:  NOW, FIRST OF ALL, AS TO WHETHER THE

2    DOCUMENTS WERE REQUESTED.  WE ASKED FOR ALL.

3          NOW, THERE ARE THOUSANDS OF INFRINGING WEBSITES.

4    WE DIDN'T -- WHEN WE MADE A REQUEST FOR -- OR WHEN THEY

5    REPRESENTED THEY HAD PRODUCED ALL -- YOU KNOW, YOU DON'T

6    BREAK THESE DOWN BY CELEBSFANTASY.COM.  YOU DON'T LIST ALL OF

7    THE INFRINGING WEBSITES.

8          AT THE TIME WE MADE THE REQUEST BLOGGER WAS JUST

9    ONE OF THOSE MANY WEBSITES BECAUSE WE DIDN'T KNOW THAT IT WAS

10   ALSO OWNED BY GOOGLE.  THEY SHOULD HAVE PRODUCED IT AT THAT

11   TIME.

12         AND THEY DID PRODUCE SOME.  THEY JUST DIDN'T

13   PRODUCE ALL.  AND IT WAS TOTALLY MISLEADING TO US WHEN THEY

14   SAID WE PRODUCED THEM ALL.

15         ONCE THE ORDER GOES INTO PLACE THAT THE HOSTING IS

16   ADDED, THEN WHAT EXCUSE DO THEY HAVE FOR NOT UPDATING AND

17   PRODUCING THESE THINGS.  THEY SHOULD --

18         THE COURT:  ONE EXCUSE THEY WOULD ASSERT IS --

19   GOING BACK TO THE COLLOQUY BEFORE JUDGE MATZ -- IS THAT THERE

20   WAS NOTHING THERE.  YOU HAD THE RIGHT TO STAND UP AND SAY,

21   WE'RE NOT GOING TO PRODUCE -- WE'RE NOT GOING TO SERVE ANY

22   MORE DISCOVERY.  WE'RE GOING TO RELY ON THEM UPDATING ALL THE

23   PRIOR DISCOVERY NOW THAT BLOGGER IS IN THE CASE.  AND THEY

24   WOULD HAVE SAID WHATEVER THEY WOULD HAVE SAID.  SO --

25         MR. MAUSNER:  WELL, I DIDN'T THINK OF THAT.

1          THE COURT:  I'M NOT SAYING YOU WERE MISLEADING, BUT

2     I'M JUST SAYING THAT'S WHAT THE ARGUMENT WOULD BE.

3          MR. MAUSNER:  WELL, I DIDN'T KNOW IF WE WERE GOING

4     TO PROPOUND DISCOVERY.

5          THE COURT:  SO, WHAT IS THE PREJUDICE?  DO YOU WANT

6     -- IS THERE SOMETHING ELSE THAT YOU NEED TO EFFECTIVELY

7     SUPPLEMENT YOUR OPPOSITION TO THE DMCA NOTICES.  AND THERE IS

8     NO RULE 56(F) MOTION BEFORE ME, AND YOU HAVEN'T MADE IT

9     BEFORE JUDGE MATZ.

10          MR. MAUSNER:  WELL, THE PREJUDICE IS WE DON'T KNOW

11     A LOT OF THINGS, AND WE HAVEN'T BEEN ABLE TO OPPOSE THE

12     SUMMARY JUDGMENT MOTIONS WITH THE DOCUMENTS THAT WE DON'T

13     HAVE.  OKAY.  WE DON'T KNOW HOW MANY DMCA NOTICES THERE HAVE

14     BEEN ALTOGETHER.  WE DON'T KNOW HOW MANY COMPLAINING PARTIES

15     THERE HAVE BEEN.  WE DON'T KNOW HOW MANY TERMINATION NOTICES

16     THERE HAVE BEEN.  WE DON'T KNOW HOW MUCH CORRESPONDENCE

17     THERE'S BEEN BETWEEN GOOGLE AND THE INFRINGERS.

18          FOR EXAMPLE, THE CORRESPONDENCE THAT YOUR HONOR

19     ORDERED WAS WITH WEBMASTERS, THAT THEY HAD INFORMATION ABOUT

20     WHO THEY ARE.  ANYONE WHO'S AN ADSENSE WEBMASTER THEY HAD

21     THAT INFORMATION BECAUSE THEY PAY THEM.  THEY PAY THEM FOR

22     CLICKS ON THEIR WEBSITE.  SO, THEY HAVE TO KNOW THE NAME --

23     THEY HAVE TO PROBABLY KNOW THE SOCIAL SECURITY NUMBER AND

24     WHERE TO SEND THE MONEY.

25          I'LL BET THAT THEY NEVER CHECKED WITH ACCOUNTING TO

1    GET THOSE RECORDS.  THEY JUST SAID, SEARCH DOESN'T KNOW THIS.

2    SO, WE'RE NOT GOING TO GIVE YOU THIS.

3              THE COURT:  LET ME ASK YOU THIS.

4              MR. MAUSNER:  YOU'RE GOING --

5              THE COURT:  AND I REALLY WANT A BRIEF ANSWER.

6              MR. MAUSNER:  OKAY.

7              THE COURT:  I HAVE NOT READ THE DMCA MOTIONS.  NOT

8    SURPRISINGLY I DON'T THINK, BUT I HAVE NOT READ THE MOTIONS.

9    I HAVE SOME GUESS AS TO WHAT THEY MUST SAY.  BUT WHAT

10   SPECIFIC ARGUMENTS IN THEIR MOTIONS COULD MORE DOCUMENTS HELP

11   YOU ADDRESS?

12             MR. MAUSNER:  THERE ARE SEVERAL THINGS.  THERE ARE

13   BASICALLY TWO GROUNDS ON WHICH WE'RE OPPOSING THE MOTIONS.

14             ONE IS THAT THEY DID NOT EXPEDITIOUSLY RESPOND TO

15   PERFECT 10'S NOTICES.  IF WE HAD A FULL LOG FROM THEM SHOWING

16   -- WE KNOW WHEN THEY RECEIVED PERFECT 10'S NOTICES, BUT WE

17   DON'T KNOW WHEN OR IF THEY DISABLED ACCESS TO THE INFRINGING

18   MATERIAL.  OKAY.  SO, IF WE HAD A FULL LOG --

19             THE COURT:  BUT WAIT A SECOND.

20             MR. MAUSNER:  -- WE WOULD HAVE THAT.

21             THE COURT:  WHY DO YOU NOT ONLY DISAVOW WANTING A

22   56(F) CONTINUANCE IN THIS MOTION, BUT HAVE FAILED TO MAKE A

23   SEPARATE MOTION TO JUDGE MATZ?

24             MR. MAUSNER:  I DON'T KNOW THE ANSWER TO THIS LEGAL

25   --

1          THE COURT:  YOU KNOW, HE'S NOT --

2          MR. MAUSNER:  -- TO THIS LEGAL QUESTION, WHETHER IT

3     IS A 56(F) MOTION.  IF YOUR POSITION IS --

4          THE COURT:  THE POSITION IS THAT A 56(F) MOTION IS

5     MY SIDE NEEDS ADDITIONAL DISCOVERY IN ORDER TO FAIRLY OPPOSE

6     A SUMMARY JUDGMENT MOTION.

7          MR. MAUSNER:  OKAY.  WELL, OUR POSITION IS WE

8     PROPOUNDED THAT DISCOVERY.  NOT ONLY DID WE PROPOUND IT, WE

9     ALSO -- WITH A LOT OF WORK, AS YOU KNOW, ON BOTH OF OUR

10    PARTS, WE GOT ORDERS NOT ONLY FROM YOU, FROM JUDGE MATZ,

11    ORDERING THEM TO PRODUCE THIS STUFF.

12         AND IT TURNS OUT -- AND WE FOUND OUT A LOT OF THIS

13    AFTER OUR --

14         THE COURT:  BUT THEY HAVE TURNED OVER TERMINATION

15    NOTICES.  THEY HAVE TURNED --

16         MR. MAUSNER:  YOUR HONOR --

17         THE COURT:  JUST A MINUTE.  THEY HAVE TURNED OVER

18    CORRESPONDENCE WITH THE CERTAIN WEBMASTERS.  THEY UNDERSTAND

19    THEIR DUTY IS CONTINUING UNTIL THE DAY OF TRIAL.  BUT IF

20    THEY'RE NOT DOING IT FAST ENOUGH FOR YOU TO MEANINGFULLY

21    OPPOSE THEIR SUMMARY JUDGMENT MOTION, THEN, IT SEEMS TO ME

22    YOU NEED TO MAKE A RULE 56(F) MOTION.

23         MR. MAUSNER:  OKAY.  IF THAT'S -- IF THAT IS

24    COVERED UNDER RULE 56(F).  MY UNDERSTANDING WAS 56(F) IS

25    YOU'VE GOT TO PROPOUND MORE DISCOVERY.  IF IT'S ALREADY BEEN

1   PROPOUNDED AND ORDERED, IT WOULDN'T REALLY BE A 56(F).  IT

2   WOULD BE WHAT WE DID, WHICH IS A SANCTIONS MOTION.

3        MAY I SAY ONE THING ABOUT THE TERMINATION NOTICES?

4        THE COURT:  YES.

5        MR. MAUSNER:  WE HAD A DEMONSTRATION HERE.  AND IF

6   YOUR HONOR DOESN'T WANT THE DEMONSTRATION, WE WOULD JUST ASK

7   IF WE COULD SUBMIT THE DOCUMENTS LATER ON.  THEY HAVE NOT

8   EVEN PRODUCED -- SHE SAID DOZENS.  I DON'T THINK THEY'VE EVEN

9   PRODUCED A DOZEN OR TWO DOZEN TERMINATION NOTICES.  MOST OF

10  THE STUFF THAT THEY HAVE IN THE BATES RANGE WHICH THEY JUST

11  IN THEIR SURREPLY -- THEIR SURREPLY WAS THE FIRST TIME THEY

12  EVER IDENTIFIED WHAT THEY SAID AT THEIR TERMINATION NOTICES.

13  MOST OF THE STUFF IN THERE ISN'T EVEN CLOSE TO  TERMINATION

14  NOTICES.  IT'S OUR NOTICES, THE GENERAL PRACTICES.  THERE ARE

15  I WOULD SAY DEFINITELY LESS THAN TWO DOZEN, PROBABLY LESS

16  THAN A DOZEN TERMINATION NOTICES IN THERE.

17        THE COURT:  WELL --

18        MR. MAUSNER:  THEY SHOULD BE PRECLUDED FROM

19  CLAIMING THAT THEY TERMINATED ANYONE THAT'S NOT IN THEIR

20  TERMINATION NOTICES -- IF THEY'RE SAYING THAT THAT'S

21  EVERYTHING.

22        WE'RE A SMALL -- I'M A SOLE PRACTITIONER.  PERFECT

23  10 IS A SMALL COMPANY.  WE'RE UP AGAINST THIS BEHEMOTH WITH

24  AT LEAST SEVERAL LAWYERS THAT I KNOW ABOUT AT GOOGLE,

25  PROBABLY MORE BEHIND THE SCENES.  AND, YOUR HONOR, THEY'RE

1    JUST KILLING US WITH THIS STUFF, AND WE CAN'T DEAL WITH IT.

2              THE COURT:  WELL, LET ME --

3              MR. MAUSNER:  THIS IS SO UNFAIR.

4              THE COURT:  LET ME COMMENT ON SOMETHING THAT YOU

5    SAID A MINUTE AGO CORRECTLY.  AND THAT IS THAT -- I THINK

6    YOU'RE RIGHT, THAT RULE 56(F) IS IN THE SITUATION WHERE YOU

7    WANT TO PROPOUND NEW DISCOVERY TO OPPOSE THE MERITS OF A

8    SUMMARY JUDGMENT MOTION.  IT'S JUST IN THE CONTEXT OF THIS

9    CASE IT'S MURKIER THAN THAT.

10             WHAT I FIND APPALLING ON BOTH SIDES IS THAT THIS

11   ISSUE OF WHETHER THE PRIOR DISCOVERY REQUESTS SHOULD HAVE

12   BEEN SUPPLEMENTED BECAUSE OF BLOGGER BEING FORMALLY ADDED TO

13   THE CASE, WHY THAT WAS NOT FLUSHED OUT AND BROUGHT TO ME, IF

14   NECESSARY, AS A FREESTANDING DISCOVERY MOTION, OR EVEN A

15   MOTION FOR A PROTECTIVE ORDER, SOMEHOW BROUGHT TO THE COURT'S

16   ATTENTION BEFORE THIS VERY SERIOUS SANCTIONS MOTION WAS

17   BROUGHT IS REALLY VERY, VERY TROUBLING.

18             AND I AGREE WITH YOU.  I UNDERSTAND YOUR POINT.

19   BUT BEFORE I WOULD RECOMMEND THIS TYPE OF SANCTIONS MOTION I

20   WOULD HAVE TO BE UTTERLY CONVINCED THAT THERE HAD BEEN A

21   MEETING OF THE MINDS AS TO WHAT WAS REQUIRED BY MY ORDERS AND

22   JUDGE MATZ'S ORDERS, AND THAT THERE WAS A -- THAT CONTEMPT

23   WAS SHOWN, THAT GOOGLE WAS NOT RESPONDING TO THOSE ORDERS,

24   AND, THEREFORE, EVIDENTIARY SANCTIONS OR THE ONLY SANCTIONS

25   THAT -- SANCTION THAT WOULD DO JUSTICE IN THIS CASE.

1          SO, YOU MAY BE RIGHT THAT RULE 56 MAY NOT --

2          IF YOU'D LET MR. MAUSNER DO HIS WORK.  HE'S DOING A

3    GOOD JOB, DR. ZADA.  OKAY.  IF YOU NEED A BREAK, WE'LL TAKE A

4    BREAK.

5          JUST A MINUTE.

6          MR. MAUSNER:  MAY I SAY ONE THING, YOUR HONOR?

7          WE DIDN'T KNOW THAT THIS -- ALL OF THIS HAD NOT

8    BEEN PRODUCED.  WE'RE GETTING BOMBARDED WITH --

9          THE COURT:  WELL, YOU KNEW BEFORE YOU FILED THE

10   MOTION.

11         MR. MAUSNER:  YES.  BUT, SEE, WE WERE ALREADY IN

12   THE POSITION WHERE WE HAD TO RESPOND -- WE GOT THREE SUMMARY

13   JUDGMENT MOTIONS FROM THEM.

14         THE COURT:  YES.

15         MR. MAUSNER:  WE HAD TO RESPOND TO THIS.  WE WERE

16   WORKING, YOU KNOW, UNBELIEVABLE DAY AND NIGHT.  IN THE COURSE

17   OF DOING THAT, WE'RE FINDING, WAIT A MINUTE.  IT DOESN'T LOOK

18   LIKE EVERYTHING IS HERE.  AND THEN WE START -- LIKE I TALKED

19   TO THE R.I.A.A.  I TALKED TO THE M.P.A.A.

20         IT TURNS OUT THEY'RE SENDING ALL OF THESE NOTICES.

21         THE COURT:  OKAY.  BUT THEN YOU --

22         MR. MAUSNER:  WE NEVER KNEW ABOUT IT.

23         THE COURT:  THEN YOU COME UP WITH THE IDEA OF

24   FILING THIS MOTION.  AND WHAT HAPPENS TO THE MEET AND CONFER.

25   I MEAN, WHAT WENT ON.  WAS THERE A MEET AND CONFER.

1        MS. KASSABIAN:  I'LL TELL YOU WHAT HAPPENED, YOUR

2   HONOR.  THEY SENT US A LETTER.  THERE WAS NO SUBSTANTIVE MEET

3   AND CONFER.  THEY SENT US A LETTER SAYING WE'RE GOING TO FILE

4   A MOTION FOR EVIDENTIARY SANCTIONS AGAINST YOU FOR THE

5   FOLLOWING TEN REASONS.  IT WAS THREE OR FOUR LETTERS.  THE

6   FIRST LETTER DIDN'T REALLY GIVE ANY DETAIL.  WE WROTE BACK

7   AND SAID, WHAT ARE YOU TALKING ABOUT.  THEY FINALLY GAVE US

8   SOME DETAIL.  WE SENT THEM A VERY DETAILED LETTER BACK

9   POINTING THEM TO SPECIFIC BATES NUMBERS WHERE THEY COULD FIND

10  THE DOCUMENTS THAT THEY THOUGHT WERE MISSING --

11        THE COURT:  WHAT ABOUT THE WHOLE BLOGGER ISSUE?

12        MS. KASSABIAN:  -- WHEN THEY FILED THIS MOTION.

13        THE COURT:  THE WHOLE BLOGGER ISSUE.

14        MS. KASSABIAN:  THEY NEVER RAISED IT IN ONE LETTER

15  -- THEY NEVER SAID TO US WE'D LIKE YOU TO SUPPLEMENT YOUR

16  PRODUCTION.  ALL OF THE PAST REQUESTS, PLEASE APPLY THOSE TO

17  BLOGGER.  THEY NEVER SO MUCH AS ASKED IT.

18        THE COURT:  EVEN IN PREPARATION FOR THIS MOTION?

19        MS. KASSABIAN:  I DON'T THINK SO.  THE MEET AND

20  CONFER LETTER --

21        THE COURT:  WELL, WAS THERE --

22        MS. KASSABIAN:  -- I THINK WE POINTED -- WE POINTED

23  OUT TO THEM THAT -- WHEN THEY ASKED, WHERE ARE THESE BLOGGER

24  DOCUMENTS, I THINK WE POINTED OUT YOU HAVEN'T REQUESTED THEM.

25        BUT, THEN, THEY DIDN'T RESPOND AND SAY, OKAY.

1    WELL, WE'RE GOING TO SERVE A REQUEST ON YOU.

2            THEY JUST FILED THE MOTION.  THEY DON'T WANT THE

3    DOCUMENTS.  THEY WANT OUR DMCA MOTION DENIED.  THAT'S WHAT

4    THIS IS ABOUT.

5            THE COURT:  WAS THERE AT LEAST A TELEPHONIC MEET

6    AND CONFER ON THIS MOTION?

7            MS. KASSABIAN:  NO, THERE WAS NOT.

8            MR. MAUSNER:  I THINK WE SENT THEM PROBABLY OVER 20

9    PAGES OF SINGLE-SPACED DOCUMENTS SETTING FORTH WHAT WE

10   THOUGHT WAS MISSING AND THE BASIS FOR THIS MOTION.

11           THE COURT:  DID YOU DISCUSS IT WITH MS. KASSABIAN

12   AND SAY, WE ARE FUNDAMENTALLY AT ODDS OVER WHAT DISCOVERY

13   OBLIGATIONS YOU HAVE NOW THAT BLOGGER IS IN THE CASE.  AND WE

14   NEED TO GET THIS RESOLVED.  AND IF WE DON'T, THEN, WE'LL

15   PROCEED WITH A DIFFERENT MOTION.

16           BUT I DON'T THINK THAT HAPPENED.  NOW I KNOW THAT

17   MY TIME IS BEING WASTED.

18           MS. KASSABIAN:  IT IS, YOUR HONOR.  THEY SENT US A

19   LETTER.  WE RESPONDED.  THEY FILED THEIR MOTION.  THEY'VE

20   NEVER ASKED FOR BLOGGER DOCUMENTS.

21           THE COURT:  ALL RIGHT.

22           MS. KASSABIAN:  IF THEY WANTED THEM, THEY COULD

23   HAVE SERVED A REQUEST.

24           THE COURT:  I'M MOVING ON TO THE NEXT MOTION.

25           MR. MAUSNER:  YOUR HONOR, MAY I -- YOU KNOW, THAT'S

1  NOT THE WAY THINGS HAPPENED.  WE TRIED TO GET THIS STUFF FROM

2  THEM VERY HARD.  THEY STONEWALL US ON EVERYTHING.  I MEAN, WE

3  -- AND IT DOES -- THE LETTERS I SENT TO THEM DO MENTION

4  BLOGGER.

5          OKAY.  THIS IS MY DECLARATION.  LET'S SEE, EXHIBIT

6  L TO MY DECLARATION IN SUPPORT OF THE SANCTIONS.  YOU'LL SEE

7  IN THERE THERE ARE VERY DETAILED LETTERS ABOUT WHAT WE WERE

8  SAYING IS MISSING.  SPECIFICALLY MENTIONS BLOGGER IN THERE.

9          MS. KASSABIAN:  WHICH PAGE?

10          MR. MAUSNER:  127.

11          MS. KASSABIAN:  OF THE LETTER.  WHAT PAGE OF THE

12  LETTER?

13          MR. MAUSNER:  OH.  PAGE 2 OF THE OCTOBER 25 LETTER.

14          MS. KASSABIAN:  SO, YOU'RE TALKING ABOUT HEADING

15  NUMBER 1, SECTION 1?  "GOOGLE HAS FAILED TO PRODUCE THOUSANDS

16  OF NOTICES."

17          IS THAT WHAT YOU'RE REFERRING TO WHEN YOU SAY --

18          MR. MAUSNER:  WELL, IT -- YES, IT ALSO HAS IT --

19  YES, IN SEVERAL PLACES ACTUALLY.

20          MS. KASSABIAN:  SO, THEY SAY WE DIDN'T PRODUCE

21  BLOGGER NOTICES IN THEIR LETTER.  AND WE WROTE THEM BACKING

22  SAYING --

23          THE COURT:  SAYING NOTICES WERE NEVER REQUESTED.

24          MS. KASSABIAN:  -- YOU'VE NEVER REQUESTED IT.  AND

25  THEY DIDN'T THEN SEND US A REQUEST.  THEY FILED THIS MOTION.

1          THE COURT:  ALL RIGHT.  I'VE HEARD ENOUGH ON THIS

2     MOTION.  I'M MOVING ON.

3          I THINK I SAID THE NEXT ONE WOULD BE P-10'S MOTION

4     FOR A DOCUMENT PRESERVATION ORDER -- I MIGHT HAVE SAID

5     GOOGLE'S MOTION.

6          MR. MAUSNER:  YOU SAID P-10'S AND THEN GOOGLE'S.

7          THE COURT:  I SAID -- OKAY.  SO, LET'S DO THAT.

8          ALL RIGHT.  MR. MAUSNER, YOU WANT TO BE HEARD ON

9     THIS MOTION.

10         MR. MAUSNER:  ACTUALLY I DO, YES.

11         (PAUSE IN PROCEEDINGS.)

12         THE COURT:  LET ME GIVE YOU MY THOUGHTS ON THIS ONE

13    BECAUSE IT'S ALREADY PAST 11:30.  THE REASON I PUT THIS

14    MOTION SECOND IS I WANT TO SEE OBVIOUSLY WHAT TRANSPIRED IN

15    ARGUMENT OF THE FIRST MOTION.  AND GIVEN WHAT HAS TRANSPIRED,

16    I DO NOT INTEND TO GRANT THIS SPOILATION MOTION.

17         THE ONE CONCERN I HAVE AFTER ALL IS SAID AND DONE

18    IS THE SUFFICIENCY OF CHRIS BREWER'S KNOWLEDGE REGARDING WHAT

19    HAPPENED EARLY ON IN THIS CASE -- BECAUSE SHE WAS NOT THERE.

20    AND HER -- PARAGRAPHS OF HER DECLARATION ARE ARGUABLY

21    SOMEWHAT CONCLUSORY.

22         ON THE OTHER HAND, I'M PRETTY CONVINCED THAT GOOGLE

23    HAS HAD A SERIOUS LITIGATION HOLD POLICY IN PLACE IN GENERAL

24    AND IN THIS CASE.

25         IF P-10 WANTED -- WHICH THEY DIDN'T ASK TO

1   CROSS-EXAMINE THE DECLARANT, BUT IF THEY WANTED TO TAKE MS.

2   BREWER'S DEPOSITION, I MIGHT CONSIDER THAT BEFORE I RULE ON

3   THIS MOTION.  BUT I JUST DON'T THINK THERE'S ANY REAL DEBATE

4   OVER -- CERTAINLY NOTHING HAS BEEN SHOWN TO ME TO HAVE BEEN

5   DESTROYED OR MADE UNACCESSIBLE.

6           THOSE ARE MY THOUGHTS.

7           MR. MAUSNER:  YOUR HONOR, I THINK THIS MOTION GOES

8   WITH THE PREVIOUS MOTION BECAUSE WE'RE JUST NOT GETTING THESE

9   THINGS.  OKAY.  AND MS. KASSABIAN NOW IS SAYING, WELL, WE'VE

10  DONE A REASONABLE SEARCH TO GET THEM.  WHERE ARE ADDITIONAL

11  TERMINATION NOTICES, YOU KNOW, ABOVE THE MAYBE 12 OR SO THAT

12  THEY PRODUCED.

13          THE COURT:  WHEN WAS THE LAST PRODUCTION, IF YOU

14  KNOW, OF TERMINATION NOTICES?  WHEN WAS THE LAST SUPPLEMENT?

15  WITHIN SIX MONTHS?

16          (MR. MAUSNER CONFERRING WITH DR. ZADA.)

17          MR. MAUSNER:  AROUND MAY OF 2006.

18          THE COURT:  OKAY.

19          MR. MAUSNER:  AS I WAS SAYING, FOR CORRESPONDENCE

20  WITH THE WEBMASTERS THAT THEY KNOW THE IDENTITIES OF, THEY GO

21  TO -- YOU KNOW, HAVE THEY GONE TO THE ACCOUNTING DEPARTMENT

22  TO SEE THE IDENTITY OF THESE WEBMASTERS.

23          MY GUESS IS BECAUSE WE GOT SO FEW DOCUMENTS THEY

24  JUST SAY, WELL, YOU KNOW, SEARCH DOESN'T KNOW THE IDENTITY OF

25  THEM.  AND THEY NEVER WENT TO CHECK TO SEE IF THEY HAVE

1   ACCOUNTING RECORDS OF THESE IDENTITIES -- THE IDENTITIES OF

2   THESE WEBMASTERS.  ARE THOSE BEING PRESERVED.

3          WE HAVEN'T GOTTEN THE DOCUMENTS SO I THINK THE

4   PRESUMPTION IS -- THE DOCUMENTS MAY HAVE BEEN DESTROYED IF WE

5   DIDN'T GET THEM.  EITHER THEY'RE NOT PRODUCING THEM AS THEY

6   SHOULD, AND THEY'RE NOT DOING A REASONABLE SEARCH FOR THEM,

7   OR THEY WERE DESTROYED.

8          WHAT'S UP ON THE SCREEN NOW IS A LIST OF EMPLOYEES

9   WHO REVIEWED OR PROCESSED PERFECT 10'S ALLEGED NOTICES OF

10  INFRINGEMENT.  WE'D LIKE TO KNOW DID EACH OF THESE EMPLOYEES

11  RECEIVE LITIGATION HOLD INSTRUCTIONS.  THERE'S NO EVIDENCE

12  WHATSOEVER ON THAT.  AND MS. BREWER DIDN'T SUBMIT ANY

13  EVIDENCE.  IT'S SEVERAL PAGES.  YOU CAN PAGE THROUGH THIS.

14         THERE ARE A LARGE NUMBER OF EMPLOYEES.  WERE ALL

15  THE DOCUMENTS ON EACH OF THESE EMPLOYEES' COMPUTERS

16  PRESERVED.  WERE ALL THESE EMPLOYEES' COMPUTERS SEARCHED FOR

17  EMAILS AND OTHER DOCUMENTS THAT WERE ORDERED PRODUCED OR

18  REQUESTED BY PERFECT 10.

19         AND THE SAME SHOULD BE TRUE FOR ALL GOOGLE

20  EMPLOYEES WHO REVIEWED OR PROCESSED --

21         THE COURT:  WELL --

22         MR. MAUSNER:  -- THIRD-PARTY NOTICES.

23         THE COURT:  -- THIS IS ALL ALONG THE LINES OF WHAT I

24  WAS SAYING JUST IN MORE DETAIL.  I MAY ORDER THAT, BUT.

25         MS. KASSABIAN:  CAN I RESPOND, YOUR HONOR?

1          THE COURT:  YES.

2          MS. KASSABIAN:  THERE IS A VEHICLE -- THERE IS A

3   MECHANISM FOR TAKING THIS KIND OF DISCOVERY.  PERFECT 10

4   HASN'T DONE IT.  IF THEY WANT TO TAKE A DEPOSITION, THEN

5   NOTICE THE DEPOSITION.  WE ARE HERE ON PERFECT 10'S MOTION

6   ACCUSING US OF SPOILATION.  THEY'VE PRODUCED ZERO EVIDENCE OF

7   SPOILATION.  THEY'VE PRODUCED ZERO EVIDENCE OF DOCUMENT LOSS

8   OR DESTRUCTION.  EVERY CASE THAT PERFECT 10 HAS CITED TO THE

9   COURT WHERE A PRESERVATION ORDER WAS ISSUED INVOLVED SWORN

10  TESTIMONY CONFIRMING DESTRUCTION OR INTENTIONAL SPOILATION OF

11  DOCUMENTS.  PERFECT 10 HAS NONE OF THAT HERE.

12          AND I'D LIKE TO READ YOU A SENTENCE FROM THE

13  CAPRICORN CASE THAT'S CITED IN BOTH PARTIES' BRIEFS.

14          IT SAYS HERE:

15          "PLAINTIFF'S MOTION READS MORE LIKE A MOTION

16          TO COMPEL DOCUMENTS AND THINGS NOT PREVIOUSLY

17          PRODUCED THAN A MOTION FOR A PRESERVATION

18          ORDER.  THERE IS NO INDICATION THAT THOSE

19          MATERIALS SOUGHT ARE IN DANGER OF BEING

20          LOST OR DESTROYED."

21          THAT'S THE SITUATION HERE.  THEY HAVE ABSOLUTELY

22  CATEGORICALLY NOT MET THEIR BURDEN IN ANY WAY, SHAPE, OR

23  FORM.  IF THEY HAVE QUESTIONS ABOUT DOCUMENT PRESERVATION,

24  PARTIES ROUTINELY TAKE DEPOSITIONS ON THAT SUBJECT OR SERVE

25  DOCUMENT REQUESTS OR WHAT HAVE YOU.

1          WE'VE PRODUCED OUR DOCUMENT PRESERVATION POLICIES.

2     WE'VE ANSWERED -- EVEN THOUGH PERFECT 10 CAME TO US WITH ZERO

3     BASIS FOR EVEN WANTING TO MEET AND CONFER ABOUT THIS.  WE'VE

4     ANSWERED THEM AS BEST WE CAN.  WE SUBMITTED A DECLARATION

5     THAT I DON'T EVEN THINK WE WERE OBLIGED TO GIVEN THE COMPLETE

6     ABSENCE OF ANY SHOWING OF NEED HERE.

7          ON THIS MOTION PERFECT 10 HASN'T MET THEIR BURDEN.

8     IT SHOULD BE DENIED.  IF THEY WANT TO TAKE DISCOVERY, WE CAN

9     DO THAT.  WE DON'T HAVE TO BOTHER YOUR HONOR WITH THAT.

10          THE COURT:  WELL, THEY MAY WANT TO TAKE A 30(B)(6)

11     -- A PERSON MOST KNOWLEDGEABLE DEPO AS TO EVENTS THAT

12     OCCURRED PRIOR TO MS. BREWER'S DECLARATION.

13          MS. KASSABIAN:  AND ON THAT POINT, YOUR HONOR, I

14     JUST WANT TO SAY WE'VE CITED A NUMBER OF AUTHORITIES

15     ESTABLISHING THAT CORPORATE EMPLOYEES CAN ABSOLUTELY TESTIFY

16     TO THE CORPORATE BOOKS AND RECORDS.

17          THE COURT:  I LOOKED AT THE --

18          MS. KASSABIAN:  THERE'S ABUNDANT AUTHORITY ON THAT.

19          MS. BREWER TESTIFIES THAT SHE RELIED ON GOOGLE'S

20     BOOKS AND RECORDS DOCUMENTING WHAT WE'VE DESCRIBED HERE IN

21     PREPARING HER DECLARATION.  SHE DIDN'T MAKE IT UP.  SHE

22     DIDN'T GUESS.  IT HAS NOTHING TO DO WITH HER BEING IN LAW

23     SCHOOL.

24          THE COURT:  ALL RIGHT.  I NEED TO REVIEW HER

25     DECLARATION AGAIN AND THE OBJECTIONS AND THE RESPONSE FOR THE

1    OBJECTIONS.

2            MR. MAUSNER:  YOUR HONOR, GOOGLE SEEMS TO HAVE A

3    DOUBLE STANDARD AS TO WHAT THE LAW IS.  WHEN THEY FIRST FILED

4    THEIR MOTION FOR A PRESERVATION ORDER AGAINST US, THEY SAID

5    THAT THERE DOES NOT HAVE TO BE ANY EVIDENCE OF SPOILATION.  I

6    THINK THE SAME LAW SHOULD APPLY, WHATEVER YOUR HONOR DECIDES

7    TO DO, AS TO BOTH PARTIES.

8            THE COURT:  LET'S MOVE ON TO GOOGLE'S SPOILATION --

9    I MEAN, PRESERVATION.  EXCUSE ME.  WELL, IT IS A SPOILATION

10   MOTION.

11           I HAVE ONE QUESTION FOR YOU, MR. MAUSNER, AND THAT

12   IS FOR HOW LONG HAS P-10 BEEN LOOKING FOR THE EMAIL BACKUP

13   DATA, (A).

14           (B) HAS ANYTHING BEEN FOUND.

15           (C) IF SO, HAS ANYTHING BEEN PRODUCED BY WAY OF

16   EMAIL BACKUP.

17           AND, (D), IF NOT, BECAUSE OF AN ASSERTION OF

18   PRIVILEGE, HAS THERE BEEN A PRIVILEGE LOG SERVED.

19           BUT IT IS CURIOUS -- IT SEEMS TO ME THAT P-10 HAS

20   BEEN LOOKING OR ASSERTS THAT IT'S BEEN LOOKING FOR THE BACKUP

21   EMAILS FOR MONTHS NOW, AND NOTHING -- IT SEEMS LIKE NOTHING

22   HAS BEEN LOCATED.  AND IF IT'S BEEN PRIVILEGED DOCUMENTS

23   ONLY, WHICH I DON'T THINK WOULD BE THE CASE, THEN, WHERE'S

24   THE LOG.

25           MR. MAUSNER:  AS FAR AS THE LOG, YOUR HONOR, WE

1   HAVE AN AGREEMENT WITH THE OTHER SIDE THAT THERE DO NOT HAVE

2   TO BE DETAILED LOGS.  ANYTHING THAT'S BETWEEN ATTORNEYS AND

3   THE CLIENTS IS JUST -- YOU KNOW, FALLS UNDER THAT CATEGORY.

4   WE'VE DONE THAT.

5           THE COURT:  BUT A LOT OF THESE EMAILS WOULD NOT BE

6   APPARENTLY.

7           ANYWAY, GO BACK.  HOW LONG HAVE YOU WORKING?  HAVE

8   YOU FOUND ANY?

9           MR. MAUSNER:  OKAY.  TWO THINGS HAVE BEEN LOOKED

10  AT.  ONE IS THE BACKUP.  THE BACKUP IS A HUGE FILE THAT IS IN

11   -- TEXT FORMAT?  TEXT FORMAT.  NOTHING -- NO EMAILS OF WENDY

12  AUGUSTINE HAVE BEEN -- I DON'T THINK ANY --

13          (MR. MAUSNER CONFERRING.)

14          MR. MAUSNER:  OKAY.  MOST OF IT APPEARS TO BE SPAM.

15  THERE ARE SOME PERSONAL EMAILS THAT HAVE BEEN LOCATED, AND

16  THAT'S IT SO FAR.  STILL LOOKING IN THAT.

17          THE COURT:  HOW LONG IS THAT GOING TO TAKE?

18          MR. MAUSNER:  6 GIGABITS.

19          WE ALSO TRIED -- OR PERFECT 10 ALSO TRIED TO

20  RECOVER THE DRIVE THAT WAS DESTROYED BY A VIRUS, AND THAT

21  COULD NOT BE DONE.  SO, THAT'S NOT GOING TO LEAD TO ANYTHING.

22          WHAT WAS YOUR OTHER QUESTION, YOUR HONOR?

23          THE COURT:  I GUESS -- THOSE WERE MY QUESTIONS.

24          MR. MAUSNER:  OKAY.

25          THE COURT:  DOES SOMEONE HAVE A COPY OF THE

1   PROPOSED ORDER ON THIS MOTION?  I JUST WANTED TO LOOK AT THE

2   VARIOUS --

3           MS. KASSABIAN:  I BELIEVE WE DO, YOUR HONOR.

4           (PAUSE IN PROCEEDINGS.)

5           THE COURT:  THEN, AS WE SIT HERE TODAY, DOCUMENTS,

6   EMAILS HAVE BEEN LOST AND HAVE NOT BEEN -- BACKUPS HAVE NOT

7   BEEN LOCATED.

8           AND AS WE SIT HERE TODAY, PERFECT 10 HAS NOT SHOWN

9   ME THAT EVEN TODAY THEY HAVE A DOCUMENT RETENTION POLICY FOR

10  LITIGATION, OR THAT IT HAS --

11          MR. MAUSNER:  YOUR HONOR --

12          THE COURT:  OR THAT IT HAS BEEN COMMUNICATED TO

13  THEIR EMPLOYEES OR CONTRACTORS.

14          MR. MAUSNER:  IF I MAY SHOW YOU SOMETHING --

15          THE COURT:  YES.

16          MR. MAUSNER:  -- IN CAMERA, YOUR HONOR, THAT'S

17  PRIVILEGED.

18          THE COURT:  WELL, ANSWER WHAT I JUST SAID.

19          MR. MAUSNER:  OKAY.  YES, IT HAS BEEN -- I HAVE IT

20  RIGHT HERE IF YOU'D LIKE TO SEE IT.  IF IT CAN BE SHOWN TO

21  YOU IN CAMERA.

22          MS. KASSABIAN:  YOUR HONOR, THE EXISTENCE OF THAT

23  COMMUNICATION IS NOT PRIVILEGED.  IF IT'S --

24          THE COURT:  WELL, I DON'T KNOW WHAT HE'S GOING TO

25  SHOW ME.  ARE YOU GOING TO SHOW ME A POLICY, OR ARE YOU GOING

1    TO SHOW ME INSTRUCTIONS, OR?

2              MR. MAUSNER:  EMAILS TO EMPLOYEES FROM ME.

3              MS. KASSABIAN:  DATED WHEN?  I MEAN, WE'VE NEVER

4    HEARD ABOUT THEM.

5              THE COURT:  THAT WAS MY FIRST QUESTION.  YOU ARE

6    SMART.

7              MR. MAUSNER:  IT'S AUGUST 2009.

8              THE COURT:  YES.  OKAY.  I DON'T NEED TO SEE IT.

9              MR. MAUSNER:  YOU WOULDN'T --

10             THE COURT:  I DON'T NEED TO SEE THAT -- I DON'T

11   NEED TO SEE IT IN CAMERA CERTAINLY.  BUT THAT ONLY HEIGHTENS

12   MY CONCERN.

13             MR. MAUSNER:  I'M SORRY.  WHAT DID YOU --

14             THE COURT:  THAT ONLY HEIGHTENS MY CONCERN.  I

15   MEAN, P-10 IS NOT A FORTUNE 500 COMPANY.  I WOULDN'T

16   NECESSARILY EXPECT DR. ZADA TO HAVE THE POLICY, WRITTEN

17   POLICIES THAT A GOOGLE HAS.  BUT, NEVERTHELESS, THIS IS WHERE

18   WE ARE.

19             AND, BY THE WAY, I DON'T PERSONALLY SEE A

20   PRESERVATION ORDER AS PUNITIVE IN ANY WAY BUT, RATHER,

21   PROPHYLACTIC.  AND IT IS NOT A BADGE OF SHAME TO HAVE A

22   PRESERVATION ORDER ENTERED AGAINST ONE.  IT IS PERHAPS

23   PRUDENT -- WELL, IT IS PRUDENT IN CERTAIN INSTANCES.

24             BUT WHAT WE HAVE NOW IS A SITUATION WHERE I SEE MS.

25   AUGUSTINE AS A PRETTY IMPORTANT PLAYER IN THE CASE -- WITNESS

1   IN THE CASE.  HER EMAILS WERE DESTROYED.  BACKUPS SO FAR HAVE

2   PRODUCED NOTHING RELEVANT TO THIS CASE.  AND THE ONLY

3   DOCUMENT PRESERVATION INSTRUCTIONS ARE APPARENTLY AS OF

4   AUGUST OF '09.

5          SO, IT WOULD SEEM PRUDENT AND NOT PUNITIVE TO ENTER

6   AN ORDER EVEN IF IT'S A UNILATERAL ORDER.

7          AND I KNOW YOU WANT IT BOTH WAYS, BUT I'VE ALREADY

8   GIVEN MY THOUGHTS ON THE OTHER ONE.  I MEAN, WHAT IS THE HARM

9   -- WHAT IS THE HARM OF MY SIGNING THIS PROPOSED ORDER.

10  BECAUSE WE DON'T KNOW -- I DON'T KNOW THE ANSWERS TO ANY OF

11  THESE QUESTIONS.

12          DR. ZADA:  YOUR HONOR, COULD --

13          MR. MAUSNER:  MAY I GIVE YOU ANSWERS TO THOSE

14  QUESTIONS, YOUR HONOR.

15          THE COURT:  I DON'T WANT TO HEAR TODAY A

16  DESCRIPTION OF HOW THE SETTINGS WERE SET AND WHEN AND BY WHOM

17  ON MS. AUGUSTINE'S EMAIL ACCOUNT AND HOW MANY HAVE BEEN

18  DELETED.  YOU CAN'T GIVE ME ALL THAT INFORMATION TODAY I

19  DON'T THINK.

20          MR. MAUSNER:  I CAN ACTUALLY.

21          THE COURT:  BUT IF YOU CAN GIVE IT TO ME, THEN YOU

22  CAN GIVE IT TO THEM UNDER AN ORDER.  IF YOU'RE PREPARED TO

23  ANSWER ALL OF THESE THINGS.

24          I DON'T KNOW HOW YOU CAN ANSWER THE LAST BULLET

25  POINT ON PAGE 1.

1          "IDENTIFY ANY OTHER LOSS OR DESTRUCTION OF

2          DOCUMENTS THAT HAS AFFECTED THE DISCOVERY

3          P-10 HAS PROVIDED TO GOOGLE."

4          I MEAN, IF THE ANSWER IS NONE, THEN, I GUESS IT'S

5     NONE.

6          MR. MAUSNER:  THE ANSWER IS I THINK THERE WERE

7     DIFFERENT -- SIMILAR QUESTIONS.  IT MAY HAVE BEEN A DIFFERENT

8     MOTION OR SOMETHING, LET'S SAY.

9          (PAUSE IN PROCEEDINGS.)

10          THE COURT:  IT'S REALLY NOT 1:00.  IT'S ALMOST

11     NOON.

12          MS. KASSABIAN:  I THOUGHT THE SAME THING, YOUR

13     HONOR.  IT'S NOT.  IT'S NOON.  BUT IT'S STILL GETTING LATE IN

14     THE MORNING.

15          THE COURT:  I'M SORRY.  MR. MAUSNER, IF YOU WANT TO

16     ADDRESS A FEW OF THESE, THAT'S FINE.  BUT MY QUESTION IS IF

17     THIS ORDER -- IF IT'S NOT PUNITIVE AND NOT COSTLY AND IS

18     PROPHYLACTICALLY WISE, WHY SHOULDN'T I ORDER IT?

19          MR. MAUSNER:  WELL, ONE THING, YOUR HONOR.  WOULD

20     YOU PUT IN HERE THAT IT IS NOT PUNITIVE.  PERFECT 10 HAS NOT

21     DONE ANYTHING WRONG.  THE WHOLE PROBLEM AROSE BECAUSE OF A

22     VIRUS, WHICH WAS VERY PREVALENT AT THAT TIME.  AND IT WASN'T

23     OUR FAULT THAT THESE EMAILS WERE DESTROYED.

24          THE COURT:  WELL, I'M NOT SAYING THAT I KNOW THAT

25     THEY ARE, AND I DON'T THINK GOOGLE IS SAYING THAT THEY KNOW

1   THAT THEY ARE.  I'M NOT GOING TO -- I DO FIND FAULT IF THERE

2   HAS BEEN NO LITIGATION HOLD AND DOCUMENT PRESERVATION ORDER

3   FROM THE INCEPTION OF THIS CASE UNTIL LATE IN '09.  THAT IS

4   TROUBLING.

5           MR. MAUSNER:  YOUR HONOR, THERE HAS BEEN.  THERE

6   HAS ALWAYS BEEN A LITIGATION HOLD AS FAR AS DR. ZADA IS

7   CONCERNED.  AND HE HAS ALL OF HIS EMAILS, AND THEY'RE BACKED

8   UP AS WELL.

9           THE COURT:  BUT IT'S NOT -- IT'S NOT IN OPPOSITION

10  TO THIS MOTION, IS IT?

11          MR. MAUSNER:  WELL, I'M SAYING THAT RIGHT NOW.  AND

12  DR. ZADA IS HERE, AND HE CAN SAY IT AS WELL.

13          THE COURT:  ALL RIGHT.  WELL --

14          MR. MAUSNER:  I MEAN, WE --

15          THE COURT:  I'M TELLING YOU, I'M NOT GOING TO -- I

16  MAY ADD A SENTENCE.  I MAY NOT.  I'M TELLING YOU, THIS IS NOT

17  A SANCTION.  OKAY.

18          MR. MAUSNER:  OKAY.

19          THE COURT:  THIS IS NOT A SANCTION.

20          MR. MAUSNER:  THANK YOU, YOUR HONOR.

21          DR. ZADA:  YOUR HONOR, COULD I JUST SAY ONE THING?

22          THE COURT:  YES.

23          DR. ZADA:  GOOGLE HAS NOT PRODUCED ANY DMCA NOTICES

24  OF ANY KIND EVEN THOUGH ORDERED BY THIS COURT PRIOR TO MARCH

25  10TH OF 2002.  NO DMCA NOTICES AT ALL.

1          MS. POOVALA TESTIFIES IN HER DECLARATION THAT

2    GOOGLE HAS BEEN PROCESSING DMCA NOTICES PRIOR TO 2002.  MR.

3    MAC GILLVARY TESTIFIED THAT GOOGLE RECEIVED THOUSANDS OF

4    INQUIRIES EVERY DAY IN SUPPORT OF THEIR OPPOSITION TO OUR

5    MOTION FOR PRELIMINARY INJUNCTION.

6          BY THE TESTIMONY OF THE GOOGLE WITNESSES THERE

7    SHOULD BE THOUSANDS AND THOUSANDS AND THOUSANDS OF INQUIRIES

8    AND NOTICES AND NOTICES GOING BACK BEFORE MARCH OF 2002.

9          I BELIEVE THAT A DESTRUCTION OF ALL THE NOTICES

10   PRIOR TO MARCH OF 2002 HAS OCCURRED.  THEY HAVE NOT PRODUCED

11   THEM.  AND TO ME THAT IS A FAR MORE SIGNIFICANT ISSUE THAN

12   WHETHER A LEGAL ASSISTANT OF JEFF MAUSNER HAD A VIRUS ATTACK

13   ON HER COMPUTER AND LOST SOME EMAILS.

14          I MEAN, THERE IS -- THEY HAVE PRODUCED 12

15   TERMINATION NOTICES.  THEY HAVE PRODUCED NO TERMINATION

16   NOTICES REGARDING ANY OF THE URLS IN THEIR AD SHEETS --

17   ADSENSE SHEETS.  THEY HAVE PRODUCED NO TERMINATION NOTICES

18   FOR THEIR BLOGGER SHEETS.  THEY HAVE PRODUCED NO TERMINATION

19   NOTICES PERIOD.  ALL WERE ORDERED.  THEY HAVE PRODUCED NEXT

20   TO NOTHING, YOUR HONOR.

21          AND THE PROBLEM IS, FOR EXAMPLE, MS. KASSABIAN

22   REFERS TO A BATES RANGE IN HER THING.  THAT BATES RANGE THERE

23   ARE PERFECT 10 DMCA NOTICES IN THERE.  THERE ARE NOTICES

24   SAYING, WHERE'S MY PAYMENT.

25          THE PROBLEM IS THEY NEVER PRODUCED ANY DOCUMENTS

1   WHICH ACTUALLY SHOW WHAT'S THERE.  THEY REFER THE COURT TO

2   THOUSANDS OF PAGES OF THINGS.  THERE'S NOTHING THERE.

3        AND THE PROBLEM IS WE HAVE BEEN FIGHTING THIS

4   BATTLE.  WE'RE A VERY SMALL COMPANY.  I'VE HAD TO FIRE ALMOST

5   EVERYBODY.  AND WE CAN'T DEAL WITH THIS CLEAR ATTEMPT TO

6   OBFUSCATE THE WHOLE CASE.  THEY HAVE THESE LOGS.  THEY'RE IN

7   XCEL FORMAT.  THEY SHOULD HAVE PRODUCED THEM THAT WAY.

8        OUR POSITION IS WE WERE VERY SUBSTANTIALLY

9   PREJUDICED.  IF THEY HAVE A DMCA LOG IN XCEL FORMAT, WE

10  SHOULD GET IT.

11       MR. MAUSNER:  YOUR HONOR, I THINK THAT AT THE VERY

12  LEAST, YOUR HONOR, IF YOU'RE NOT -- AND IT SOUNDS LIKE YOU'RE

13  NOT GOING TO IMPOSE SANCTIONS -- CAN WE GET AN ORDER THAT

14  THEY PRODUCE THE ENTIRE DMCA LOG IN THE FORMAT THAT THEY HAVE

15  IT IN.  IF IT'S XCEL SPREADSHEET OR SOME OTHER KIND OF A

16  SPREADSHEET, THAT THEY PRODUCE IT IN THAT MANNER THE ENTIRE

17  LOG.  I MEAN, THAT SHOULD BE THE VERY LEAST THAT WE GET.

18       DR. ZADA:  THE OTHER THING THAT I WOULD REQUEST,

19  YOUR HONOR --

20       THE COURT:  LET ME HEAR THEIR RESPONSE.  AND I --

21       MS. KASSABIAN:  YOUR HONOR, WE'VE ARGUED THAT

22  MOTION.  THAT'S DONE.  WE'RE NOT HERE ON A MOTION TO COMPEL.

23  WE'RE HERE ON A MOTION FOR EVIDENTIARY SANCTIONS.  THEY'RE

24  ASKING YOUR HONOR TO FIND THAT GOOGLE'S NOT ENTITLED TO DMCA

25  SAFE HARBOR.  THAT'S WHY WE'RE HERE.

1          THE COURT:  WELL, I'M NOT -- I'M NOT DEALING WITH

2     THAT.

3          MS. KASSABIAN:  THEY CAN'T SIT HERE AND MAKE UP --

4          THE COURT:  THAT'S NOT THE MOTION BEFORE ME.

5          MS. KASSABIAN:  WELL, I'M JUST SAYING IN TERMS OF

6     THEM GOING BACK AND REHASHING THE DMCA LOG FORMAT ISSUE THAT

7     WE SPENT AN HOUR AND A HALF TALKING ABOUT.  THAT'S DONE.  ALL

8     RIGHT.  THERE'S BEEN NO COURT ORDER REQUIRING IT PRODUCED IN

9     ANY FORMAT.  WE PRODUCED PURSUANT TO AN AGREED FORMAT.  END

10    OF STORY.

11         DR. ZADA:  YOUR HONOR, WE WOULD LIKE THE

12    OPPORTUNITY -- THERE'S A REAL PROBLEM HERE BECAUSE YOUR HONOR

13    BELIEVES THAT THEY HAVE PRODUCED ALL TERMINATION NOTICES.

14    THEY HAVE PRODUCED --

15         THE COURT:  NO, NO.  I DON'T KNOW THAT THEY HAVE.

16         DR. ZADA:  OKAY.

17         THE COURT:  AND I DON'T KNOW THAT THEY'RE SAYING

18    THEY HAVE.

19         DR. ZADA:  OKAY.  WE WOULD LIKE AN OPPORTUNITY,

20    YOUR HONOR, TO PROVE TO THE COURT THAT THEY --

21         MR. MAUSNER:  HOW ABOUT THIS, YOUR HONOR.  WE MAKE

22    AN ORDER THAT THEY PRODUCE ALL OF THESE THINGS THAT HAVE BEEN

23    PREVIOUSLY ORDERED AND THAT IT DOES INCLUDE BLOGGER.  BECAUSE

24    THEY PRODUCED SOME BLOGGER BUT NOT ALL OF IT.  I MEAN,

25    THERE'S NO QUESTION AT THIS POINT --

1          THE COURT:  WELL, AS TO THE FIRST PART OF THAT,

2    THEY'RE UNDER A CONTINUING OBLIGATION TO PRODUCE WHAT THEY'VE

3    ALREADY BEEN ORDERED TO PRODUCE.  OKAY.

4          GIVEN THE COLLOQUY -- SECONDLY, GIVEN THE COLLOQUY

5    THAT WAS MADE BEFORE JUDGE MATZ WHERE HE ASKED, ARE YOU GOING

6    TO PROPOUND NEW BLOGGER DISCOVERY, AND THE ANSWER WAS WE'LL

7    SEE.

8          BUT YOU DID NOT SAY, NEVERTHELESS, JUDGE,

9    EVERYTHING BEFORE NOW APPLIES EQUALLY TO BLOGGER AND HEAR

10   WHAT GOOGLE'S RESPONSE WOULD BE AND WHAT JUDGE MATZ'S IS.  I

11   CAN'T JUST ORDER THAT.

12         MR. MAUSNER:  I THINK YOU CAN, YOUR HONOR.  JUDGE

13   MATZ HAS --

14         THE COURT:  WELL, I THINK -- I CAN --

15         MR. MAUSNER:  -- DELEGATED THIS -- EVERYTHING HERE

16   IN THIS MOTION TO YOU.  AND THEY HAVE AN OBLIGATION TO

17   PRODUCE IT TO US.  AND THEY'RE STILL SITTING HERE AND THEY'RE

18   SAYING, THEY'RE NOT GOING -- WE'RE NOT GOING TO UPDATE IT, OR

19   WE'RE GOING TO WAIT TWO YEARS TO UPDATE IT.  THAT'S NOT FAIR

20   TO US.

21         MS. KASSABIAN:  YOUR HONOR, WE'VE BEEN HERE BEFORE.

22   WE'RE NOT OBLIGATED TO PRODUCE ANYTHING THAT WASN'T

23   REQUESTED.  IF PERFECT 10 WANTS TO REQUEST SOMETHING, THEY

24   KNOW HOW TO DO IT.

25         DR. ZADA:  YOUR HONOR --

1          MS. KASSABIAN:  WE'RE NOT HERE ON A MOTION TO

2     COMPEL.  WE'RE HERE ON A MOTION FOR EVIDENTIARY SANCTIONS.

3          THE COURT:  WELL, IF YOUR POSITION IS THAT ALL OF

4     THE BLOGGER DOCUMENTS ARE EMBRACED WITHIN THE PRIOR DISCOVERY

5     ORDERS, AND THAT GOOGLE IS ACTING IN BAD FAITH BY NOT SO

6     RECOGNIZING AFTER REPEATEDLY BEING ADVISED THAT P-10

7     CONSTRUES THE PRIOR ORDERS THAT WAY, THEN, I'LL DECIDE THAT

8     MOTION.

9          MR. MAUSNER:  YES.

10          THE COURT:  IF THERE'S A SEPARATE MOTION --

11          MR. MAUSNER:  YES.

12          THE COURT: -- WHICH IS, NO, WE CONCEDE WE'RE NOT

13     HAPPY, BUT WE CAN UNDERSTAND THAT GOOGLE IN GOOD FAITH DID

14     NOT BELIEVE THAT BLOGGER WAS EMBRACED WITHIN THE PRIOR

15     DISCOVERY ORDERS, BUT WE WISH TO SEEK THAT, THAT IS A

16     SEPARATE MOTION.

17          MR. MAUSNER:  WE TAKE THAT POSITION THAT BLOGGER --

18     THAT EVERYTHING, ALL, WAS WITHIN THE PRIOR ORDERS, AND THAT

19     IT SHOULD HAVE BEEN PRODUCED TO US.

20          THE COURT:  DESPITE THE COLLOQUY OR WHAT YOU SAID

21     --

22          MR. MAUSNER:  YES.

23          THE COURT: -- TO JUDGE MATZ?

24          MR. MAUSNER:  YES.

25          MS. KASSABIAN:  THEY ASSURED JUDGE MATZ THAT THEY

1    WEREN'T NECESSARILY GOING TO REQUIRE THE SAME DISCOVERY

2    REQUESTS REGARDING BLOGGER.  THEY WERE GOING TO WAIT AND SEE,

3    AND THEY WOULD DO FURTHER DISCOVERY REGARDING BLOGGER.  THEY

4    NEVER DID IT.  END OF STORY.

5            MR. MAUSNER:  WELL, WHY DID WE HAVE TO PROPOUND THE

6    SAME DISCOVERY REQUESTS IF IT ALREADY COVERED ALL, AND THE

7    ORDER HAS ALREADY COVERED ALL.

8            WE PROPOUNDED --

9            THE COURT:  BECAUSE YOU DIDN'T SAY THAT TO HIM.

10           MR. MAUSNER:  IT'S HARD TO REMEMBER WHAT I WAS

11   THINKING.

12           BUT, YOUR HONOR, WE -- IF YOU LOOK AT WHAT THE

13   ACTUAL ORDERS ARE -- PLEASE, JUST LOOK AT THE ORDERS.  LOOK

14   AT THEIR REPRESENTATIONS.  THEY SAID ALL NOTICES INVOLVING

15   INTELLECTUAL PROPERTY.  ALL.  ALL.

16           WHY ISN'T BLOGGER INCLUDED IN THAT.  IT SHOULD HAVE

17   INCLUDED BLOGGER PRIOR TO THE AMENDMENT.  BUT, CLEARLY, IT

18   NOW COVERS BLOGGER.  AND THEY HAVE A CONTINUING DUTY TO

19   PRODUCE IT, AND THEY HAVEN'T.

20           IF WE GO AND WE PREPARE NEW DISCOVERY REQUESTS,

21   THEY'RE GOING TO OBJECT TO IT.  AND THEN WE'RE GOING TO BE

22   BACK HERE IN FRONT OF YOU.  IT'S GOING TO BE MONTHS, IF NOT

23   MORE, BEFORE THAT GETS DECIDED.  WHAT'S THE POINT OF THAT.

24           THE COURT:  FIRST OF ALL, I CANNOT REMEMBER WHAT

25   THE DEBATE WAS AND WHAT THE MEET AND CONFER WAS A FEW YEARS

AGO IN THIS CASE ON THE ISSUE OF ALL INTELLECTUAL PROPERTY OR AS LIMITED BY SOME PARAMETERS.

AND I DON'T KNOW IF COUNSEL DO, BUT --

MR. MAUSNER: IN THAT SAME COLLOQUY WITH JUDGE MATZ, HE SAID I'M NOT GOING TO LIMIT THIS REQUEST IN ANY WAY.

CAN YOU FIND THAT. IT'S THE EXHIBIT TO THE KASSABIAN REPLY DECLARATION, I BELIEVE. SHE ATTACHED THE TRANSCRIPT.

THE COURT: OKAY. THIS IS WHAT I -- THIS IS WHAT I WOULD LIKE.

MR. MAUSNER: HE SAID I'M NOT LIMITING IT --

MS. KASSABIAN: HE WAS TALKING ABOUT ORDERING THE DMCA LOGS.

MR. MAUSNER: YES.

MS. KASSABIAN: IS THAT WHAT YOU WERE REFERRING TO?

MR. MAUSNER: YES.

MS. KASSABIAN: HE ORDERED DMCA LOGS PRODUCED. REGARDLESS OF WHETHER IT CALLED FOR BLOGGER OR NOT WE PRODUCED THEM.

THE COURT: AND YOU DID THAT. YOU DID THAT.

MR. MAUSNER: NO.

MS. KASSABIAN: PERFECT 10 HAS THEM.

MR. MAUSNER: OKAY. IF THEY PRODUCED BLOGGER LOGS, AND THEY'RE SAYING THEY PRODUCED THAT --

DR. ZADA: WHERE ARE THEY.

1          MR. MAUSNER: -- IN RESPONSE TO JUDGE MATZ'S ORDER

2     -- IN OTHER WORDS, BLOGGER IS COVERED BY THAT -- WHY ISN'T

3     BLOGGER ALSO COVERED BY THEIR EARLIER REPRESENTATIONS AS

4     WELL.

5          MS. KASSABIAN:  IT'S NOT --

6          MR. MAUSNER: -- ALL, ALL, ALL.

7          MS. KASSABIAN:  BLOGGER WAS NOT COVERED BY AN ORDER

8     ISSUED BEFORE THERE WERE BLOGGER CLAIMS IN THE CASE.  THAT'S

9     ALL THERE IS TO SAY ABOUT THIS.  AND WE'VE TALKED ABOUT IT

10    ABOUT SEVEN TIMES NOW.

11         MR. MAUSNER: -- WHY DID THEY PRODUCE SOME OF THEM.

12         THE COURT:  BECAUSE THEY WERE PART OF THE DMCA

13    LOGS.

14         DR. ZADA:  YES, BUT, YOUR HONOR, THE PROBLEM IS IT

15    GOES WAY BEYOND BLOGGER.  THEY HAVEN'T PRODUCED ANY ADSENSE

16    TERMINATION NOTICES AT ALL FOR THEIR ADSENSE SHEET.  THEY

17    FILE A MOTION FOR SUMMARY JUDGMENT.  MS. POOVALA CLAIMS THAT

18    THEY HAVE AGGRESSIVELY TERMINATED PEOPLE.  THEY PRODUCED AN

19    ADSENSE LOG WITH ONLY 634 URLS, BUT THERE'S NOT A SINGLE

20    TERMINATION NOTICE THAT THEY HAD PRODUCED FOR ANY ONE OF

21    THOSE 634 URLS.

22         THEY HAVE NOT PRODUCED ANY OF THE DOCUMENTS THAT

23    WOULD HAVE GIVEN US AN OPPORTUNITY TO SAY, YOU KNOW WHAT,

24    THEY NEVER ACTUALLY PRODUCED ANY OF THOSE PEOPLE.  THIS COURT

25    ORDERED THEM TO PRODUCE ALL TERMINATION NOTICES.  WE GOT NO

1    TERMINATION NOTICES FOR ADSENSE.  WE GOT NO TERMINATION

2    NOTICES FOR BLOGGER.  IN FACT, THE ONLY TERMINATION NOTICES

3    THAT THEY PRODUCED WERE A COUPLE OF EMAILS REGARDING OUR

4    NOTICES.

5              WHAT THEY ACTUALLY PRODUCED WERE A FEW TERMINATION

6    NOTICES REGARDING OUR NOTICES.  NO TERMINATION NOTICES OF ANY

7    KIND FOR ANY THIRD-PARTY NOTICES.

8              AND I WOULD REQUEST THE COURT THAT WE BE GIVEN AN

9    OPPORTUNITY, AND THEY BE ORDERED, TO SAY HOW MANY TERMINATION

10   NOTICES THEY HAVE ISSUED.

11             AND THIS, BY THE WAY, WOULD ALWAYS HAVE BEEN PART

12   OF THE DMCA LOG.  IF WE EVER GOT THE DMCA LOG THAT WAS

13   ORDERED BY JUDGE MATZ AND YOUR HONOR, WE WOULD HAVE SEEN WHO

14   THEY TERMINATED.  IF WE EVER GOT THE DMCA LOG, WE WOULD SEE

15   HOW MANY NOTICES THEY GOT, HOW MANY URLS THEY DISABLED, AND

16   WAS IT EXPEDITIOUS.

17             THEY HAVE BEEN SYSTEMATICALLY OBFUSCATING THE

18   DISCOVERY IN THIS CASE SINCE THE VERY BEGINNING.  THEY DON'T

19   WANT TO PRODUCE A DMCA LOG THAT ANYBODY CAN UNDERSTAND,

20   THAT'S IN A MICROSOFT SPREADSHEET BECAUSE THEY DON'T WANT US

21   TO BE ABLE TO SAY, YOU KNOW WHAT, MAC GILLVARY LIED, POOVALA

22   LIED, AND EVERYBODY ELSE LIED BECAUSE BASICALLY THEY HAVEN'T

23   BEEN DOING ANYTHING REGARDING THE DMCA SINCE THIS CASE

24   STARTED UNTIL WE FINALLY FILED OUR LAWSUIT.

25             THE DMCA LOG WILL TELL THE WHOLE STORY.  THEY WERE

1    ORDERED TO PRODUCE IT, YOUR HONOR.  AND WE WOULD REQUEST THAT

2    YOUR HONOR ORDER THEM TO PRODUCE THEIR ACTUAL DMCA LOG IN

3    XCEL FORMAT AS IT HAS TO BE MAINTAINED.  YOU CAN'T ADD NEW

4    ENTRIES TO A J-PEG FILE.  IT HAS TO BE PRODUCED -- MAINTAINED

5    IN XCEL FORMAT.

6            MR. MAUSNER:  YOUR HONOR --

7            THE COURT:  LET ME -- WAIT.

8            MR. MAUSNER:  -- JUST TO SPEED THINGS ALONG, TO

9    SPEED THIS CASE ALONG, WE REQUEST THAT YOU ORDER THAT THEY

10   PRODUCE A LOT OF THESE THINGS.  THEY PRODUCE A FULL DMCA LOG

11   IN SPREADSHEET FORMAT.  AND THEY PRODUCE ALL DMCA NOTICES AND

12   ALL NOTICES OF TERMINATION.  AND THAT INCLUDES BLOGGER, WHICH

13   WITHOUT ANY QUESTION NOW IS IN THE CASE.  THEY EVEN MADE A

14   SUMMARY JUDGMENT MOTION REGARDING IT, AND WE HAVEN'T GOTTEN

15   THOSE DOCUMENTS.

16           AND I THINK A REASONABLE PERSON, AND CERTAINLY I,

17   THOUGHT WHEN THEY SAID ALL IT MEANT EVERYTHING.

18           THE COURT:  MR. JANSEN.

19           MR. JANSEN:  WELL, YOUR HONOR, I -- YES, I

20   APPRECIATE THE -- I KNOW IT'S THE AFTERNOON RIGHT NOW, AND

21   I'M NOT SURE WHEN THE COURT PLANS TO RECESS.  BUT I CAN'T

22   COMMENT OBVIOUSLY ON WHETHER OR NOT GOOGLE HAS OR HASN'T

23   COMPLIED WITH THE COURT'S ORDERS OR THAT KIND OF ISSUE, BUT

24   ONE ISSUE THAT HAS COME UP, WHICH I THINK HAS KIND OF BEEN

25   DEFLECTED HERE, IS A VERY SERIOUS CONCERN ON THE PART OF

1    AMAZON.COM THAT IT APPEARS, AS MR. MAUSNER REVEALED JUST THIS

2    MORNING, THAT APPARENTLY THERE NEVER WAS A LITIGATION HOLD

3    PUT ON PERFECT 10 DOCUMENTS.

4            AND AS THE COURT NOTICED, WENDY AUGUSTINE IS A VERY

5    IMPORTANT WITNESS.  SHE'S A PERFECT 10 --

6            THE COURT:  WELL, I'VE ALREADY SIGNED THE ORDER.

7            MR. JANSEN:  YOU HAVE.  OKAY.  I WAS NOT AWARE OF

8    IT.  I THINK IT'S IMPORTANT --

9            THE COURT:  TEN MINUTES AGO I SIGNED THE ORDER.

10           MR. JANSEN:  OKAY.  BECAUSE WE HAVE THAT ISSUE

11   ABOUT THE --

12           THE COURT:  NO, I SIGNED THAT ORDER WITH TWO SMALL

13   MODIFICATIONS, AND THAT IS THAT I WANT A DECLARATION FILED,

14   NOT JUST SUBMITTED, AND I WANT IT WITHIN TEN DAYS.

15           MR. JANSEN:  OKAY.

16           THE COURT:  YES.

17           MS. KASSABIAN:  YOUR HONOR, I ONLY WANT TO RESPOND

18   TO THAT COLLOQUY IF YOUR COURT -- IF YOUR HONOR HAS ANY

19   CONCERNS ABOUT IT.  I THINK IT'S JUST A REHASH OF WHAT WE'VE

20   ALREADY COVERED.

21           THE COURT:  WELL, LET ME -- I DO WANT TO ADDRESS

22   IT.

23           JUST A MINUTE.

24           (PAUSE IN PROCEEDINGS.)

25           THE COURT:  I AM CONCERNED ABOUT MOVING THIS

1    LENGTHY CASE ALONG.  AND I AM VERY INTERESTED IN GETTING P-10

2    THE DMCA LOG AS IT EXISTS IN XCEL SPREADSHEET FORMAT.  I AM

3    INTERESTED IN GETTING THEM ALL DMCA NOTICES.  AND I AM VERY

4    CONCERNED ABOUT THE OVERARCHING BLOGGER DISCOVERY ISSUE.

5            IF GOOGLE IS PREPARED TO STATE ON THE RECORD THAT

6    THEY WOULD PRODUCE THE DMCA LOG IN THE XCEL SPREADSHEET

7    FORMAT TODAY, THAT WOULD BE USEFUL -- AS WELL AS ALL DMCA

8    NOTICES INCLUDING BLOGGER NOTICES.

9            I DON'T WANT TO BLUDGEON YOU INTO THAT IF YOU'RE

10   NOT PREPARED TO DO THAT TODAY.  BUT I THINK THAT'S LIKELY

11   WHAT I WOULD ORDER PRODUCED IF THERE WAS A MOTION.

12           MS. KASSABIAN:  WELL, THAT'S JUST THE PROBLEM, YOUR

13   HONOR.  THEY'VE NEVER ASKED FOR ANY OF THOSE THINGS.  AND

14   THEY'VE COME INTO COURT --

15           THE COURT:  I KNOW.

16           MS. KASSABIAN: -- AND YOUR HONOR IS NOT GOING THEIR

17   WAY.  SO, NOW THEY'RE TRYING TO CHANGE UP THEIR MOTION ON THE

18   FLY TO GET SOME SORT OF ORDER OUT OF YOU AND AGAINST GOOGLE.

19   THAT'S NOT FAIR.

20           IF THEY WANT TO SERVE DISCOVERY REQUESTS OR SEND ME

21   A MEET AND CONFER LETTER ASKING FOR ANY OF THOSE THINGS, I

22   WILL BE MORE THAN HAPPY TO GET RIGHT ON THAT AS EXPEDITIOUSLY

23   AS POSSIBLE.

24           ON THE ISSUE -- THE FIRST ISSUE OF THE DMCA LOG, IT

25   COSTS GOOGLE A GREAT DEAL OF TIME AND MONEY TO PRODUCE THOSE

1    DOCUMENTS AS IT DID IN RELIANCE ON THE AGREEMENT THAT WE HAD

2    WITH PERFECT 10.  IF THEY WANT US TO REPRODUCE DOCUMENTS IN A

3    DIFFERENT FORMAT, THERE'S GOING TO BE A HUGE ADDITIONAL COST

4    BURDEN THERE.

5         A PARALLEL ISSUE WAS RAISED WITH PERFECT 10.

6    THEY'RE INSISTING WE DON'T WANT TO REPRODUCE ALL DOCUMENTS

7    FOR YOU, GOOGLE, WITH BATES STAMPS ON IT.  WHY SHOULD GOOGLE

8    HAVE TO REPRODUCE ITS IDENTICAL DOCUMENTS IN A DIFFERENT

9    FORMAT.

10         THE COURT:  YOU HAD TO REMIND ME OF THAT ISSUE.  I

11   THOUGHT WE WERE ALMOST DONE.

12         MS. KASSABIAN:  IT'S RIDICULOUS, YOUR HONOR.  IT'S

13   RIDICULOUS.  IT'S ABSOLUTELY RIDICULOUS.  THEY NEVER ONCE

14   EVEN SENT ME A LETTER ASKING THAT VERY QUESTION.  IT IS

15   ABSOLUTELY UNFAIR FOR THEM TO DRAG US IN COURT ON A SANCTIONS

16   MOTION AND THEN QUICKLY ON THE FLY TRY TO TURN IT INTO A

17   MOTION TO COMPEL HEARING ON DOCUMENTS THEY'VE NEVER REQUESTED

18   IN A FORMAT THEY'VE NEVER REQUESTED.  THAT'S NOT FAIR.  AND

19   THAT'S NOT WHY YOUR HONOR IS HERE.

20         THERE ARE VEHICLES AND CHANNELS FOR PERFECT 10 TO

21   REACH OUT TO US AND TO ASK FOR WHAT IT WANTS AND WHAT IT

22   BELIEVES IT NEEDS.  PERFECT 10 HAS NOT EXTENDED THAT

23   COURTESY.

24         THE COURT:  WELL, I SAID I'M NOT GOING TO BLUDGEON

25   YOU INTO AGREEING TO THAT TODAY.  I --

1          MS. KASSABIAN:  I CAN'T AGREE TO THESE THINGS --

2          THE COURT:  I WOULD ASK YOU TO -- I WOULD ASK YOU

3    TO TRY TO RESOLVE THIS PARTICULAR ISSUE --

4          MS. KASSABIAN:  I'M HAPPY TO.

5          THE COURT: -- WITHOUT A MOTION.  I'D LIKE YOU TO

6    TRY TO RESOLVE THE DMCA -- ALL DMCA NOTICES ISSUE WITHOUT A

7    MOTION.  AND ON THE BLOGGER DISCOVERY DOCUMENT REQUEST 51, ET

8    CETERA --

9          DR. ZADA:  WE'VE ASKED FOR THIS MATERIAL SINCE THE

10   CASE STARTED.

11         THE COURT:  OH, PLEASE, PLEASE.

12         MS. KASSABIAN:  YOUR HONOR, I OBJECT.  I OBJECT TO

13   THIS CONTINUED COLLOQUY BY DR. ZADA.  WE'RE NEVER GOING TO

14   GET OUT OF HERE.

15         THE COURT:  THAT WAS THE WRONG THING FOR HIM TO

16   SAY.  I'LL SAY THAT.

17         MR. MAUSNER:  MAY I SAY SOMETHING, YOUR HONOR?

18         THE COURT:  BRIEFLY.

19         MR. MAUSNER:  OKAY.  THERE SHOULDN'T BE ANY BURDEN

20   IN PRODUCING THIS.  WE'RE ASKING FOR IT IN THE VERY FORMAT

21   THAT IT ALREADY EXISTS.  ALL THEY GOT TO DO IS TAKE THE

22   SPREADSHEET, AND THEY CAN EVEN EMAIL IT TO US.

23         I DON'T UNDERSTAND IF YOU THINK THIS WILL MOVE THE

24   CASE ALONG, PREVENT FURTHER WORK BY EVERYBODY, FURTHER

25   MOTIONS, WHY WOULDN'T YOU JUST ORDER THAT THEY PRODUCE TO US

1  THE XCEL -- THE SPREADSHEET IN XCEL FORMAT AS IT EXISTS.

2  IT'S NOT GOING TO TAKE THEM VERY LONG TO DO THAT.  AND --

3          THE COURT:  LET'S SEE WHAT HAPPENS OVER THE NEXT

4  WEEK OR SO.  AND I CAN RESOLVE ALL OF THIS I THINK ON A

5  TELEPHONIC CONFERENCE WITHOUT BRIEFING.

6          MS. KASSABIAN:  AND, YOUR HONOR, IF I COULD JUST --

7          THE COURT:  IF NECESSARY.

8          MR. MAUSNER:  BUT, YOUR HONOR, WE KNOW EXACTLY WHAT

9  HAS TO BE DONE HERE.  THEY JUST HAVE TO PRODUCE TO US THE

10  XCEL SPREADSHEET, ALL THE DMCA NOTICES.  YOU KNOW, WHY --

11  PLEASE JUST ORDER IT SO WE CAN MOVE ON FROM THIS AND GO

12  FORWARD.

13          THE COURT:  WELL, I'M NOT GOING TO DO IT TODAY.

14          MR. MAUSNER:  OKAY.

15          THE COURT:  I'M TELLING YOU I'LL MAKE MYSELF

16  AVAILABLE.

17          YES?

18          MS. KASSABIAN:  TO BE CLEAR, PERFECT 10 IS

19  ABSOLUTELY WRONG TO SAY JUST EMAIL US THE FILES.  WE'RE

20  TALKING ABOUT MASSIVE MULTI-HUNDRED THOUSAND -- HUNDRED,

21  SLASH, THOUSAND -- NOT HUNDRED THOUSAND -- PAGE FILES THAT

22  HAVE BEEN CONVERTED TO TIFF AND PAINSTAKINGLY REDACTED FOR

23  PRIVILEGE.  IT WILL TAKE A VERY LONG TIME AND COST A VERY

24  GREAT DEAL OF MONEY TO REDO THAT PROCESS.

25          DOCUMENTS CANNOT BE REDACTED IN NATIVE FORMAT.

1   THIS IS NOT THE SIMPLE ISSUE THAT PERFECT 10 MAKES IT OUT TO

2   BE.  THERE'S A REASON WHY PARTIES USE SINGLE-PAGE TIFF.  THAT

3   WAS SUFFICIENT.  THAT'S ALL WE HAD TO DO.  THEY WERE FULLY

4   SEARCHABLE.  AND ACCORDING TO DR. ZADA, HE HAS ALREADY USED

5   SOFTWARE TO CONVERT THAT TO SOME OTHER FORMAT THAT HE

6   PREFERS.

7           MR. MAUSNER:  YOUR HONOR, WE RECEIVED APPROXIMATELY

8   1,000 PAGES OF THE JPG FILES THAT THEY'RE CLAIMING IS A LOG.

9   AND NOW SHE'S SAYING THAT A HUNDRED THOUSAND PAGES --

10          MS. KASSABIAN:  I DIDN'T SAY A HUNDRED THOUSAND.  I

11  SAID HUNDREDS OR AT LEAST A THOUSAND.

12          IT'S MANY, MANY PAGES OF DOCUMENTS, YOUR HONOR.

13  THIS IS NOT -- FIRST OF ALL, THIS IS NOT WHAT THEY REQUESTED

14  IN THEIR MOTION.

15          MR. MAUSNER:  BUT WE --

16          MS. KASSABIAN:  NOWHERE IN THEIR MOTION -- SIR, MAY

17  I FINISH?

18          MR. MAUSNER:  YES.

19          MS. KASSABIAN:  NOWHERE IN THEIR MOTION DID THEY

20  ASK YOUR HONOR TO ORDER THAT GOOGLE PRODUCE THE DMCA LOG IN A

21  DIFFERENT FORMAT.  THIS IS JUST AN EXCUSE TO TRY TO GET

22  BEFORE THE COURT AND OFFER MORE EVIDENCE ON THEIR DMCA

23  MOTIONS.  IT'S INAPPROPRIATE.

24          MR. MAUSNER:  OKAY.  YOUR HONOR, I'M LOOKING AT THE

25  PROPOSED ORDER THAT WE SUBMITTED, PARAGRAPH 3.

1           "GOOGLE IS HEREBY ORDERED TO PRODUCE THE

2           DOCUMENTS WHICH IT HAS FAILED TO PRODUCE

3           AS SET FORTH IN PERFECT 10'S MEMORANDUM

4           OF POINTS AND AUTHORITIES WITHIN TEN

5           DAYS OF THIS ORDER.

6           "THESE DOCUMENTS INCLUDE THE FOLLOWING:

7           (A)  THE SPREADSHEET-TYPE DMCA LOG SUMMARIZING

8           DMCA NOTICES RECEIVED, THE IDENTITY OF THE

9           NOTIFYING PARTY AND THE ACCUSED INFRINGER, AND

10          THE ACTIONS, IF ANY, TAKEN IN RESPONSE WHICH

11          GOOGLE HAS FAILED TO PRODUCE IN VIOLATION OF

12          THE COURT'S MAY 13TH, 2008 ORDER AND EARLIER

13          ORDERS BY JUDGE HILLMAN;

14          (B)  THE DMCA NOTICES AND OTHER DOCUMENTS

15          THAT GOOGLE HAS FAILED TO PRODUCE IN VIOLATION

16          OF THE COURT'S ORDERS AND GOOGLE'S REPRESENTATIONS

17          THAT SUCH DOCUMENTS HAVE BEEN PRODUCED."

18          SPECIFICALLY, WE REQUESTED IT IN THIS ORDER, AND

19   WE'RE ASKING YOU TO DO THAT NOW, YOUR HONOR.

20          MS. KASSABIAN:  AND, YOUR HONOR, IN THEIR REPLY

21   BRIEF THEY EXPRESSLY DISCLAIMED ANY REQUEST TO CONTINUE

22   GOOGLE'S DMCA MOTION SO THAT THEY COULD OBTAIN ADDITIONAL

23   DISCOVERY.

24          WHAT IS THE ULTIMATE POINT OF -- LET'S JUST ASSUME

25   FOR A MOMENT THAT PERFECT 10 HAS PROVEN THAT EVEN ONE PAGE OF

1    DOCUMENTS WASN'T PRODUCED WHEN IT SHOULD HAVE BEEN PRODUCED.

2    LET'S JUST ASSUME THAT THAT'S TRUE.  WHAT IS THE POINT HERE.

3    PERFECT 10 HAS STATED IN THEIR SIGNED FILING THAT THEY ARE

4    NOT SEEKING TO CONTINUE THE DMCA BRIEFING ON THAT.  IN FACT

5    --

6             MR. MAUSNER:  THAT'S NOT WHAT WE REPRESENTED.

7             MS. KASSABIAN:  PERFECT 10 FILED -- CAN I FINISH.

8             IN FACT, THEY FILED THEIR OWN CROSS MOTION FOR

9    SUMMARY JUDGMENT.

10            IT'S CLEAR FROM THE CASE LAW THAT WE CITED THAT

11   WHEN A PARTY FILES ITS OWN MOTION FOR SUMMARY JUDGMENT, THAT

12   IS A CONCESSION TO THE COURT --

13            THE COURT:  THAT THEY'RE READY.

14            MS. KASSABIAN:  -- THAT NO FURTHER DISCOVERY IS

15   NECESSARY.  SO, WHAT IS THE POINT OF THIS EXERCISE.  THOSE

16   MOTIONS ARE UNDER SUBMISSION.  AND PERFECT 10 IS NOT ASKING

17   FOR A 56(F) CONTINUANCE.

18            MR. MAUSNER:  YOUR HONOR, WE ALREADY TALKED ABOUT

19   WHETHER IT'S A 56(F) IF YOU PROPOUNDED THE DISCOVERY -- IT'S

20   BEEN ORDERED, BUT YOU HAVEN'T GOTTEN IT YET.  SO, THAT'S --

21            YOU KNOW, CERTAINLY WHEN WE GET THESE DOCUMENTS,

22   WE'RE GOING TO LOOK AT THEM, AND WE'RE GOING TO SEE IF

23   THERE'S ANYTHING THAT --

24            THE COURT:  I'LL TELL YOU RIGHT NOW, IF I WERE TO

25   ORDER THE DMCA LOG IN XCEL FORM, AND IF IT WAS EXPENSIVE, AT

1   THIS POINT I WOULD TURN TO P-10 BECAUSE OF THE HISTORY OF

2   PRODUCTION AND THE PRIOR AGREEMENT.  SO, YOU BETTER BE SURE

3   BEFORE YOU INSIST ON THIS THAT YOU'RE PREPARED TO PAY --

4           MR. MAUSNER:  WHAT WOULD THAT -- I THINK THE ANSWER

5   IS YES, BUT WHAT WOULD THAT INVOLVE?  WE ORDERED --

6           THE COURT:  YOU'RE ASKING ME?

7           MR. MAUSNER:  WE ORDERED IT IN THE FORMAT THAT IT

8   EXISTS.

9           MS. KASSABIAN:  YOUR HONOR, THEY'VE NEVER EVEN

10  DISCUSSED THIS WITH ME.  THIS IS THE FIRST TIME I'M HEARING

11  ANY OF THIS.

12          THE COURT:  THAT'S WHY I'M JUST --

13          MS. KASSABIAN:  WE DON'T NEED TO WASTE YOUR TIME

14  WITH THIS.

15          THE COURT:  -- AT MY WIT'S END.

16          MS. KASSABIAN:  IF THEY WANT THAT FILE, THEN, THEY

17  SHOULD ASK FOR IT.  THEY'VE NEVER DONE THAT.  AND WE CAN TALK

18  ABOUT COST ISSUES.  WE CAN TALK ABOUT PRIOR AGREEMENTS.  WE

19  CAN TALK ABOUT WHAT IT WOULD MEAN, WHAT WE WOULD HAVE TO DO.

20  WE CAN TALK ABOUT WHETHER THEY NEED IT SINCE DR. ZADA HAS

21  ALREADY CREATED A SORTABLE SPREADSHEET FROM OUR DOCUMENTS.

22  WE CAN TALK ABOUT ALL THOSE THINGS WITHOUT WASTING YOUR

23  HONOR'S TIME.

24          MR. MAUSNER:  YOUR HONOR, THEY PAY FOR IT UP TO

25  $5,000.  IF IT'S ABOVE THAT, WE'LL DISCUSS IT WITH THEM.  I

1   DON'T THINK IT SHOULD BE EVEN CLOSE TO THAT, AND WE WILL

2   PROBABLY PAY IT ALL.  BUT WE WILL PAY FOR IT.  WE WANT THIS

3   IN XCEL FORMAT.  IT SHOULD HAVE BEEN PRODUCED ALREADY.  BUT

4   TO MOVE THIS ALONG, WE'LL AGREE TO PAY FOR IT.  OKAY.

5          WE ASKED FOR THIS, YOUR HONOR, IN OUR PROPOSED

6   ORDER.  AND I DON'T UNDERSTAND WHY -- WHY THERE SHOULD BE ANY

7   HESITATION.  WE SHOULD HAVE IT ALREADY.  WE SHOULD HAVE HAD

8   IT A LONG TIME AGO.

9          WHAT'S GOING TO HAPPEN WHEN WE ASK THEM FOR THIS.

10  IN FRONT OF YOU --

11         MS. KASSABIAN:  THAT'S WHAT A MEET AND CONFER IS

12  ABOUT.

13         MR. MAUSNER:  -- IN FRONT OF YOU, YOUR HONOR, IN

14  FRONT OF YOU, THEY'VE GIVEN US SUCH A HARD TIME ABOUT THIS.

15  DO YOU THINK THEY'RE GOING TO GIVE US THE TIME OF DAY.  WHEN

16  WE ASKED THEM TO PRODUCE THIS IN XCEL FORMAT WERE THEY NOT

17  EVEN THERE.

18         PLEASE JUST ORDER THIS.  WE'LL GET THE THING.

19  WE'LL LOOK AT IT.  WE'LL DECIDE IF THERE'S ANYTHING FURTHER

20  THAT HAS TO BE SUBMITTED IN CONNECTION WITH THE SUMMARY

21  JUDGMENT MOTIONS, AND WE CAN MOVE ON.

22         THE COURT:  I'M NOT GOING TO ORDER IT TODAY.

23         MS. KASSABIAN:  THANK YOU, YOUR HONOR.

24         MR. MAUSNER:  WHEN CAN WE --

25         MS. KASSABIAN:  I'D ASK THAT THE COURT REQUIRE

1    PERFECT 10 TO FOLLOW THE LOCAL RULES AND MEET AND CONFER ON

2    ISSUES LIKE THIS BEFORE DRAGGING THEM IN FRONT OF THIS COURT.

3              MR. MAUSNER:  YOUR HONOR, CAN WE SET A TELEPHONIC

4    HEARING.  WE'LL TALK TO THEM, AND, THEN, CAN WE SET A

5    TELEPHONIC HEARING?

6              THE COURT:  I DON'T HAVE MY CALENDAR RIGHT NOW.

7    YOU CAN SET IT UP EARLY NEXT WEEK.

8              NOW, WHAT ABOUT THE OVERARCHING BLOGGER ISSUE?  I'M

9    TRYING TO FIGURE OUT --

10             MS. KASSABIAN:  YOUR HONOR, PERFECT 10 REPRESENTED

11   TO JUDGE MATZ THAT IT WAS NOT GOING TO PROPOUND THE SAME

12   DISCOVERY ON BLOGGER NECESSARILY THAT IT PROPOUNDED FOR THE

13   OTHER SERVICES.

14             THE COURT:  AND THEN IT DID NOTHING.  AND THEN IT

15   DID NOTHING.

16             MS. KASSABIAN:  AND THEN THEY DID NOTHING.

17             SO, THERE'S NOTHING TO ORDER ON BLOGGER.  IF THEY

18   WANT TO SERVE DISCOVERY ON BLOGGER, NO ONE HAS TO STOP THEM.

19   NO ONE IS REFUSING.  WE'RE NOT SEEKING A PROTECTIVE ORDER

20   FROM BLOGGER DISCOVERY.  THEY NEED TO FOLLOW THE FEDERAL

21   RULES.  THIS IS SO ELEMENTARY.

22             THE COURT:  WELL, BASED ON WHAT I HAVE READ AND

23   HEARD, I AM NOT LEFT WITH THE IMPRESSION THAT GOOGLE HAS

24   VIOLATED A COURT ORDER.

25             NOW, IF MS. KASSABIAN WANTS TO ADDRESS THE OTHER

1    ISSUES THAT DR. ZADA WAS TALKING ABOUT, ADSENSE AND OTHER

2    ISSUES AND WHETHER TERMINATION NOTICES AND WHETHER EVERYTHING

3    HAS BEEN PRODUCED, YOU KNOW, I THINK WE'VE ADDRESSED THAT

4    ALREADY.

5         MS. KASSABIAN:  I THINK WE'VE COVERED IT.

6         THE COURT:  BUT --

7         DR. ZADA:  WELL, YOUR HONOR --

8         THE COURT:  I'M NOW LEFT WITH THE IMPRESSION THAT

9    SANCTIONS ARE WARRANTED OR WOULD BE WARRANTED -- EVIDENTIARY

10   SANCTIONS ARE WARRANTED BECAUSE BLOGGER DISCOVERY HAS NOT

11   BEEN FORTHCOMING.

12        TO THE CONTRARY, I DON'T THINK BLOGGER DISCOVERY

13   HAS BEEN PROPOUNDED BASED ON WHAT'S BEEN QUOTED TO ME AND THE

14   EXCERPTS THAT I HAVE SEEN OF THE DISCOVERY AND THE ORDERS.  I

15   DON'T.

16        AND I'M APPALLED THAT IT TOOK UNTIL TODAY FOR YOU

17   TO EVEN GET THEIR UNDERSTANDING -- GOOGLE'S UNDERSTANDING OF

18   WHAT YOU WERE REALLY TALKING ABOUT.  TALK ABOUT A WASTE OF

19   MONEY.

20        MS. KASSABIAN:  AND THAT'S WHY WE'VE ASKED FOR

21   SANCTIONS, YOUR HONOR.  WE'VE ASKED THAT PERFECT 10 BE

22   SANCTIONED FOR FAILING TO TALK THESE ISSUES THROUGH BEFORE

23   THEY FILED THIS MOTION.

24        THE COURT:  IT SEEMS TO ME THAT SIX MONTHS AGO THAT

25   YOU SHOULD HAVE BEEN SAYING -- MS. KASSABIAN -- WE

1   FUNDAMENTALLY DISAGREE ABOUT WHETHER BLOGGER DISCOVERY WAS

2   EMBRACED IN THE EARLIER COURT ORDERS.  AND IF WE AGREE TO

3   DISAGREE, THEN LET'S GO BACK TO HILLMAN AND GET IT RESOLVED

4   BEFORE AN EVIDENTIARY SANCTIONS MOTION, BEFORE WE RESPOND TO

5   THE SUMMARY JUDGMENT MOTION AND FILE OUR OWN SUMMARY JUDGMENT

6   MOTION.  LET'S GET IT RESOLVED BECAUSE WE HAVE A GOOD FAITH

7   DISAGREEMENT.

8          MR. MAUSNER:  YOUR HONOR, SIX MONTHS AGO WE DID NOT

9   KNOW THAT THEY HAD NOT GIVEN US ALL BLOGGER DISCOVERY.  WE

10  HAD SOME BLOGGER DISCOVERY.  AND WE THOUGHT THAT THEY HAD

11  GIVEN US ALL BLOGGER DISCOVERY.  WE DIDN'T KNOW THIS, THAT

12  THEY HADN'T UNTIL WE WERE ALREADY WORKING ON THE OPPOSITIONS

13  TO THE SUMMARY JUDGMENT MOTION.  AND WE DIDN'T KNOW THE SCOPE

14  OF IT UNTIL WE WERE COMPLETELY DONE WITH THE SUMMARY JUDGMENT

15  MOTIONS.  SIX MONTHS AGO WE HAD NO IDEA OF THAT BECAUSE --

16         THE COURT:  BUT WHEN DID YOU FIRST SAY -- EXCUSE ME

17  FOR USING YOUR FIRST NAME.  EXCUSE ME, RACHEL, I DON'T

18  UNDERSTAND WHY YOU HAVEN'T GIVEN US TONS OF BLOGGER DISCOVERY

19  GIVEN THE PRIOR COURT ORDERS.

20         WHEN WAS THAT FIRST SAID?

21         MR. MAUSNER:  IT WAS SAID IN THE -- AFTER THE

22  SUMMARY JUDGMENT BECAUSE THAT'S WHEN WE REALIZED IT IN THE

23  MEET AND CONFER LETTERS.

24         MS. KASSABIAN:  OCTOBER 22ND, 2009 -- 27TH, 2009

25  WHEN PERFECT 10 SENT ITS DEMAND LETTER REGARDING THIS

1    EVIDENTIARY SANCTIONS MOTION.  THAT'S THE FIRST TIME THEY

2    SAID -- AND THEY DIDN'T SAY WHAT YOU JUST SAID.  THEY DIDN'T

3    SAY, WE BELIEVE AND WE WOULD LIKE GOOGLE TO AGREE THAT THE

4    PRIOR REQUESTS SHALL ALSO NOW APPLY TO BLOGGER.

5             THAT HAS NEVER BEEN UTTERED BY PERFECT 10 EXCEPT AT

6    THIS HEARING AND IN THE BRIEFING.  BUT ON OCTOBER 25TH, 2009

7    THEY SENT A DEMAND LETTER SAYING WHERE ARE ALL THE BLOGGER

8    DMCA NOTICES.  AND WE WROTE BACK A FEW DAYS LATER AND SAID,

9    WHAT ARE YOU TALKING ABOUT.  YOU'VE NEVER SERVED A DISCOVERY

10   REQUEST ASKING FOR THOSE DOCUMENTS.

11            DESPITE KNOWING THAT, THEY COULD HAVE RESPONDED AND

12   SAID, OOPS, OUR BAD.  CAN WE MAKE AN AGREEMENT THAT ALL THE

13   PRIOR DISCOVERY REQUESTS WILL APPLY TO BLOGGER, AND WE'LL

14   GIVE YOU SIX MONTHS, OR HOWEVER LONG IT MIGHT TAKE, FOR YOU

15   TO GO THROUGH ALL THOSE 400 REQUESTS AND APPLY THEM ALL TO

16   BLOGGER.

17            OR LET'S TALK ABOUT EACH ONE.  FOR INSTANCE, ONE OF

18   THEM INVOLVES REVENUES, RIGHT, FOR SERVICES THAT YOU HAVE TO

19   PAY FOR.  AND, OF COURSE, YOU DON'T HAVE TO PAY FOR BLOGGER.

20   SO, THAT MIGHT BE ONE THAT WOULDN'T APPLY FROM THE PRIOR

21   DISCOVERY.

22            THIS CONVERSATION HAS NEVER TRANSPIRED.  PERFECT 10

23   HAS NEVER APPROACHED US ABOUT THIS.  THAT HAS TO COME FIRST

24   BEFORE ANY ARGUMENT CAN BE MADE THAT YOUR HONOR SHOULD ISSUE

25   AN ORDER ON SOMETHING THAT HASN'T EVEN BEEN REQUESTED OR

1   DISCUSSED IN MEET AND CONFER.

2          MR. MAUSNER:  WELL, I HAVE ALWAYS THOUGHT THAT IT

3   WAS REQUESTED BECAUSE IT SAID ALL.  THIS BLOGGER THING IS

4   JUST A -- BLOGGER SHOULD BE NO DIFFERENT FROM ANYTHING ELSE.

5   THEY SHOULD HAVE TURNED THIS STUFF OVER TO US.  WE THOUGHT

6   THEY DID.

7          FOR HER TO SAY, OH, IF YOU HAD COME TO US, WE WOULD

8   HAVE GIVEN IT.  THEY'RE NOT GOING TO GIVE IT TO US.  WE'RE

9   SITTING RIGHT HERE.  THEY'RE STILL SAYING WE'RE NOT GOING TO

10  GIVE IT TO YOU.  WE ASKED FOR IT.  WE MET AND CONFERRED ON

11  IT.  WE SENT THEM --

12         WHAT'S THE EXHIBIT TO MY DECLARATION?

13         WE SENT THEM SEVERAL VERY DETAILED AND LONG LETTERS

14  ABOUT THIS.  IF THEY THOUGHT THAT -- YOU KNOW, IF THEY WERE

15  GOING TO EVER GIVE US THIS STUFF, WHY DIDN'T THEY GIVE IT TO

16  US THEN.

17         MS. KASSABIAN:  YOUR HONOR --

18         MR. MAUSNER:  EXHIBIT O TO MY DECLARATION.

19         MS. KASSABIAN:  THOSE ARE ALL LETTERS THAT WERE

20  SENT TO US A FEW WEEKS BEFORE THEY FILED THIS MOTION.  AND

21  NONE OF THOSE LETTERS -- IN NONE OF THOSE LETTERS DOES

22  PERFECT 10 SAY, YOU KNOW WHAT, WE HAVE THIS UNDERSTANDING.

23  YOU OBVIOUSLY HAVE THIS OTHER UNDERSTANDING.  LET'S REACH

24  AGREEMENT AND GIVE US THOSE BLOGGER DOCUMENTS.

25         THEY DIDN'T WANT THAT ANSWER.  THEY DIDN'T CARE

1    ABOUT THAT ANSWER.  WE GAVE THEM OUR RESPONSE.  WE SAID YOU

2    DIDN'T REQUEST THEM.  NOW WHAT DO YOU HAVE TO SAY, PERFECT

3    10.

4              MR. MAUSNER:  OKAY.  THEY --

5              MS. KASSABIAN:  AND THEIR RESPONSE WAS JUST TO FILE

6    THIS MOTION.

7              MR. MAUSNER:  OKAY.  THEY DIDN'T COME UP WITH THIS

8    EXCUSE OR ARGUMENT THAT THEY DIDN'T GIVE IT TO US BECAUSE

9    THEY WERE BLOGGER UNTIL THEIR OPPOSITION.  WE DIDN'T EVEN

10   KNOW THAT THAT WAS GOING TO BE THE BASIS THAT THEY WERE

11   OPPOSING THIS ON.  ALL WE KNEW WAS --

12             THE COURT:  THERE WAS NO MEET AND CONFER.

13             MR. MAUSNER:  YEAH.  WELL, THE MEET AND CONFER

14   SAID, YOU DIDN'T GIVE US ALL OF THESE NOTICES.

15             THE COURT:  THAT'S NOT THE MEET AND CONFER, AND YOU

16   KNOW THAT.

17             MR. MAUSNER:  IT IS.

18             THE COURT:  A MEET AND CONFER IS A DISCUSSION

19   BETWEEN COUNSEL PREFERABLY IN PERSON AND, IF NOT IN PERSON

20   BECAUSE COUNSEL IS IN THE NORTHERN DISTRICT, THEN, AT LEAST

21   TELEPHONICALLY.

22             MR. MAUSNER:  OKAY.  YOUR HONOR, I SENT THEM

23   SEVERAL LETTERS.  AND IN THOSE LETTERS I SAID IF YOU WANT TO

24   DISCUSS THIS FURTHER, PLEASE CALL ME -- SEVERAL TIMES.  I

25   TRIED TO CALL THEM, AND I LEFT MESSAGES SEVERAL TIMES.  OKAY.

1          MS. KASSABIAN:  MR. MAUSNER DID CALL ME ON A DAY

2     THAT HE KNEW I WAS OUT ON VACATION, AND I WAS NOT THERE, AND

3     I DID NOT ANSWER THE PHONE.

4          MR. MAUSNER:  I ALSO CALLED TOM NOLAN.

5          AND I CALLED HER ON MORE THAN ONE OCCASION.

6          YOUR HONOR, YOU KNOW, YOU -- I'M NOT SURE WHY, BUT

7     YOU HAVE THIS VERY -- THIS VIEW ABOUT HOW WE ARE OPERATING OR

8     SOMETHING LIKE THIS.  WHY IN THE WORLD WOULD A VERY SMALL

9     COMPANY AND A VERY SMALL LAW FIRM WANT TO FILE MOTIONS IF

10    THEY THOUGHT THAT THEY COULD GET THIS STUFF WITHOUT IT.

11         THIS IS NOT -- YOU KNOW, WE'RE GETTING KILLED IN

12    THIS THING.  WE'RE GETTING CRUSHED BY THEM BECAUSE THEY HAVE

13    SO MUCH MORE RESOURCES THAN WE HAVE.  WE HAVE TRIED TO GET

14    THIS STUFF.  YOU THINK THAT WE HAVE 20/20 HINDSIGHT ABOUT

15    EVERYTHING IN THE PAST.  YOU THINK BACK IN 2006 WHEN WE GOT

16    AN ORDER TO PRODUCE A LOG, AND THEY WERE REPRESENTING WE

17    PRODUCED ALL NOTICES, THAT WE SOMEHOW SHOULD HAVE KNOWN THAT

18    THEY WERE EXCLUDING BLOGGER NOTICES EVEN THOUGH THEY NEVER

19    SAID IT.

20         WE DON'T HAVE 20/20 HINDSIGHT.  WE'VE BEEN TRYING

21    OUR HARDEST TO GET THIS STUFF AND LITIGATE THE CASE PROPERLY

22    AND SO ON.  AND WE JUST KEEP -- LIKE SHE WRITES THAT EMAIL TO

23    ME SAYING WE'RE GOING TO PRODUCE THIS IN TIFF FORMAT UNLESS

24    WE HEAR TO THE CONTRARY.  AT THE TIME SHE WAS MAYBE THINKING,

25    OH, OKAY.  YEAH, WE'RE GOING TO PRODUCE THESE SPREADSHEETS IN

1    TIFF FORMAT.

2           SO, I GET THE THING AND I SAID, WELL, TIFF

3    GENERALLY IS OKAY FOR REGULAR DOCUMENTS.  AND I SAID, THAT'S

4    OKAY AS LONG AS IT IS EASILY READABLE AND SEARCHABLE.  I

5    WASN'T EVEN THINKING ABOUT THE SPREADSHEETS BEING INCLUDED IN

6    THAT.  OKAY.  AND, THEN, THEY DON'T EVEN PRODUCE THEM IN

7    TIFF.  THEY PRODUCE THEM IN JPG WHICH NO QUESTION IS NOT

8    SEARCHABLE.

9           BUT YOU'RE KIND OF -- I DON'T KNOW, IT SEEMS LIKE

10   YOU'RE VIEWING WHAT WE DID AS SOMEHOW, YOU KNOW, WE JUST WANT

11   TO GO OUT AND FILE A MOTION.  OF COURSE WE DON'T.  BECAUSE

12   THEY'RE -- IT'S ADVANTAGEOUS FOR THEM.  THEY'RE GETTING LOTS

13   OF FEES FROM THESE MOTIONS.  AND GOOGLE IS --

14          THE COURT:  YOU KNOW WHAT, I --

15          MR. MAUSNER: -- YOU KNOW, IT'S DELAYING AND

16   DELAYING --

17          THE COURT:  YOU KNOW I THINK WELL OF YOU.  AND I

18   KNOW YOU'RE UNDER THE GUN.  I JUST DON'T THINK THAT EITHER OF

19   THE MOTIONS YOU BROUGHT -- AND I'M NOT TALKING SANCTIONS.  I

20   DON'T THINK EITHER OF THE MOTIONS YOU BROUGHT WERE WORTH THE

21   EXPENSE OF BRINGING THEM.

22          AND THE MOTION THAT WOULD HAVE BEEN THE MOST USEFUL

23   TO BOTH SIDES WOULD BE TO CLARIFY THIS VERY ISSUE OF BLOGGER

24   DISCOVERY.  THUMBS UP OR THUMBS DOWN.  AND IT COULD HAVE BEEN

25   DONE EARLIER AND MUCH CHEAPER AND WITH LOT LESS VOLLEY OF

1   VITRIOL ON BOTH SIDES -- WHOEVER WROTE THAT PHRASE, I LIKE

2   THAT.

3          YOU KNOW, IT'S JUST -- YOU TALK ABOUT EXPEDITIOUS

4   AND ECONOMICAL.  THAT WOULD HAVE BEEN THE MOTION.  THAT'S ALL

5   I'M SAYING.

6          MR. MAUSNER:  OKAY.

7          THE COURT:  AND I DON'T THINK THAT YOU EXHAUSTED --

8   YOU CLEARLY DID NOT EXHAUST THE MEET AND CONFER REQUIREMENT

9   FULLY.  OR THIS MOTION -- THESE MOTIONS, OR, AT LEAST, THIS

10  EVIDENTIARY MOTION, WOULD HAVE NOT BEEN FILED.  YOU WOULD

11  HAVE BROUGHT THE OTHER MOTION.

12         HE WOULD HAVE SAID, YOU KNOW WHAT, WE AGREE TO

13  DISAGREE, AND WE'RE SHOCKED THAT YOU READ THE PRIOR ORDERS

14  THIS WAY.  AND WE THINK YOU'RE DOING IT IN GOOD FAITH -- BAD

15  FAITH.  AND OF COURSE IT INCLUDES THIS.  AND THAT MOTION

16  COULD HAVE BEEN RESOLVED.  NOW, IT'S NOT EVEN BEFORE ME.

17         MR. MAUSNER:  WELL, IT IS, YOUR HONOR, BECAUSE

18  WE'RE ASKING THAT YOU ORDER -- IN THE PROPOSED ORDER WE ASK

19  THAT YOU ORDER THAT THESE DOCUMENTS BE PRODUCED.

20         AND, YOUR HONOR, IT'S -- HOW ABOUT THIS, YOUR

21  HONOR.  WE'LL TAKE A RECESS OVER LUNCH.  WE'LL SEE IF THEY'LL

22  PRODUCE THEM.  AND, THEN, WE'LL COME BACK.  AND I'M ALMOST

23  POSITIVE THAT THEY'RE GOING TO SAY WE'RE NOT GOING TO GIVE

24  THIS TO YOU.  AND AT THAT POINT WE'LL ASK YOU, WOULD YOU

25  PLEASE ORDER THAT THESE DOCUMENTS BE PRODUCED SO WE CAN MOVE

1    ON WITH THIS PART OF THE CASE.

2              MS. KASSABIAN:  YOUR HONOR, IF THAT'S WHAT PERFECT

3    10 WANTS, THAT'S WHAT THEY SHOULD HAVE DONE DURING THE MEET

4    AND CONFER PROCESS BEFORE WE EVER GOT HERE.

5              THEY HAVE SERVED SOMETHING IN THE NEIGHBORHOOD OF

6    3- OR 400 REQUESTS FOR PRODUCTION OF DOCUMENTS IN THIS CASE.

7    FOR THEM TO ASK ME TO STEP OUT INTO THE HALLWAY AND JUST GIVE

8    A BLANKET AGREEMENT THAT WE WILL PRODUCE BLOGGER TYPES OF

9    DOCUMENTS FOR EVERY REQUEST IN THOSE 400 DOCUMENT REQUESTS IS

10   OUTRAGEOUS.  THEY NEED TO TAKE THIS UP IN THE PROPER CONTEXT.

11             THE COURT:  ALL RIGHT.  LET'S MOVE ON BRIEFLY TO --

12             MR. MAUSNER:  HOW ABOUT DOING TWO OF THEM, THE XCEL

13   SPREADSHEET AND THE DMCA NOTICES.  SHE CAN SAY YES OR NO NOW

14   OR OVER LUNCH --

15             THE COURT:  WE'RE GOING TO FINISH THIS HEARING IN

16   THE NEXT TEN MINUTES.  AND, THEN, YOU'RE WELCOME TO USE THE

17   COURTROOM THE REST OF THE DAY IF YOU WANT TO, BUT WE'RE NOT

18   TAKING A LUNCH BREAK.

19             THE LAST THING IS THE BATES STAMPING ISSUE.  AND I

20   THINK THE LAST THING I SAID ON THIS MOTION WAS THAT I WAS

21   FAVORING GOOGLE'S ALTERNATIVE ARGUMENT FROM A FEW MONTHS AGO,

22   THAT WHEN DOCUMENTS ARE FILED IN MOTIONS, THAT THEY HAVE

23   DISCRETE BATES STAMPING ON THEM.

24             AND BEYOND THAT I JUST -- THEY'VE ALWAYS GOTTEN

25   ALONG ON THIS ISSUE, STUMBLING ALONG SO FAR WITHOUT BATES

1  STAMPING, SO.  THAT'S SORT OF WHERE I WAS.

2        MR. MAUSNER:  OKAY.  THANK YOU.  THANK YOU, YOUR

3  HONOR.

4        MS. KASSABIAN:  SO, I GUESS I'M NOT --

5        THE COURT:  DO YOU REMEMBER YOUR SECOND ALTERNATIVE

6  --

7        MS. KASSABIAN: -- A HUNDRED PERCENT CLEAR, THAT

8  PERFECT 10 IDENTIFY A FILE PATH FOR --

9        THE COURT: -- A FILE PATH AND --

10        MS. KASSABIAN: -- THE SPECIFIC FILE PATH AND

11  PRODUCTION DATE FOR --

12        THE COURT:  OR FILED DOC-  -- FOR DOCUMENTS FILED

13  AS PART OF MOTIONS.

14        MS. KASSABIAN:  DOCUMENTS FILED AS PART OF MOTIONS.

15        THE COURT:  RIGHT.  SO THAT THEY HAVE DISCRETE FILE

16  PATHS AND BATES STAMPS.

17        MR. MAUSNER:  YOUR HONOR, THE OTHER THING WE WOULD

18  ASK IS THAT BOTH PARTIES IDENTIFY DOCUMENTS THAT WAY.

19        THE COURT:  YES.

20        MS. KASSABIAN:  YOUR HONOR, THERE ARE NO FILE PATHS

21  FOR OUR DOCUMENTS.  OUR DOCUMENTS HAVE BATES NUMBERS.  THEY

22  ARE SELF-IDENTIFIED.  THAT'S WHY THEY DID THAT.  THAT'S WHY

23  PARTIES DO THAT IN LITIGATION.

24        MR. MAUSNER:  I'M NOT SAYING FOR THEIR DOCUMENTS.

25  WHEN THEY USE ONE OF OUR DOCUMENTS, THEY DO THE SAME THING.

1   THEY IDENTIFIED THE FILE PATH WHERE THEY GOT THE DOCUMENT.

2        MS. KASSABIAN:  THAT'S OUTRAGEOUS.  THESE ARE

3   PERFECT 10'S DOCUMENTS.  WE SHOULDN'T SUFFER THE BURDEN OF

4   HAVING TO GO THROUGH EXTRA STEPS WHEN USING --

5        THE COURT:  WELL, IF YOU'RE USING THEIR DOCUMENT,

6   YOU'RE USING THEIR FILE PATH AND THEIR BATES STAMP NUMBER.

7        MS. KASSABIAN:  UNLESS I'M USING A PAPER FILE.

8        THE POINT OF DOING THIS, YOUR HONOR, IS SO THAT

9   GOOGLE CAN KNOW WHETHER THE DOCUMENT HAS BEEN PRODUCED.

10  PERFECT 10 ALREADY KNOWS WHAT IS IN ITS PRODUCTION.  THEY ARE

11  THE MASTER OF THEIR PRODUCTION.

12       MR. MAUSNER:  YOUR HONOR, IF THEY'RE USING THE

13  DOCUMENT, THEY OBVIOUSLY GOT IT.  SO, THEY KNOW THE FILE

14  PATH.

15       MS. KASSABIAN:  ONE MORE POINT, YOUR HONOR.  WE --

16       MR. MAUSNER:  WE JUST ASK THAT IT BE -- THAT THE

17  ORDER BE EQUAL AS TO BOTH PARTIES.

18       MS. KASSABIAN:  YOUR HONOR, MR. LOVE HAS JUST

19  POINTED SOMETHING OUT TO ME THAT I FORGOT.  WE DON'T USE ALL

20  OF THE INDIVIDUAL HARD DRIVES AND DISKS ON A DAILY BASIS TO

21  ACCESS PERFECT 10'S PRODUCTION.  IT MAKES IT IMPOSSIBLE TO

22  WORK WITH THEM.

23       YOU'D HAVE TO -- WHEN YOU'RE LOOKING FOR A

24  DOCUMENT, YOU'D HAVE TO PLUG IN EACH SEPARATE HARD DRIVE AND

25  EACH DISK ONE AT A TIME AND RUN SEARCHES IN EACH OF THOSE

1   MEDIA.  SO, INSTEAD, WE'VE LOADED EVERYTHING ONTO A DATABASE.

2   SO, WE DON'T USE THE DISKS -- THE MEDIA THAT HAVE THE FILE

3   PATH STRUCTURE ON THEM.  OUR DATABASE HAS THE DOCUMENTS

4   LOADED ON THERE.

5          THE COURT:  DOES SOMEONE HAVE THE PROPOSED ORDER ON

6   THIS MOTION?  I HAVE --

7          MR. MAUSNER:  YOUR HONOR, THAT'S A VERY INTERESTING

8   ADMISSION.  AND I KNEW BASED ON THEIR BROCHURE THAT THAT WAS

9   TRUE.

10          THEY'VE TAKEN ALL THESE DOCUMENTS.  THEY PUT IT

11   INTO A DATABASE.  THEY CAN VERY, VERY EASILY LOCATE ANY

12   DOCUMENT THAT THEY USE AND THEY KNOW IT WAS IN THE

13   PRODUCTION.

14          YOUR HONOR, I THINK THAT THAT JUST SHOWS THAT ALL

15   OF THIS REALLY WAS A RED HERRING JUST TO PUT US TO THIS

16   UNBELIEVABLE BURDEN OF BATES STAMPING ALL OF THE DOCUMENTS.

17          THEY HAVE THE DOCUMENTS IN A DATABASE.  THEY CAN

18   VERY EASILY -- IF A DOCUMENT IS THERE, THEY CAN RUN A SEARCH

19   ON THEIR DATABASE AND FIND THE DOCUMENT.  I --

20          MS. KASSABIAN:  THAT'S COMPLETELY FALSE, YOUR

21   HONOR.  THAT'S NOT AN ADMISSION OF ANY KIND.

22          WE TOOK CERTAIN STEPS TO GET SOME OF THEIR

23   DOCUMENTS ONTO A DATABASE SO THAT WE COULD MAKE SOME USE OF

24   THEM.  THAT DOESN'T CHANGE THE FACT THAT WHEN PERFECT 10

25   LOOKS AT A DOCUMENT THAT HAS NO BATES STAMP, OR FILES A

1    DOCUMENT THAT HAS NO BATES STAMP, WE HAVE NO IDEA IF THEY

2    PRODUCED IT.

3           AND MOST OF THEIR DOCUMENTS, A GOOD PORTION OF

4    THEIR DOCUMENTS AREN'T OCR'D.  SO, EVEN THOUGH THEY MIGHT BE

5    ON A HARD DRIVE OR IN A DATABASE, RUNNING SEARCHES WON'T DO

6    ANYTHING.  YOU CAN'T FIND THEM.

7           THE COURT:  DO COUNSEL HAVE A COPY OF THE PROPOSED

8    ORDER?

9           MS. KASSABIAN:  I'M LOOKING FOR THAT RIGHT NOW.

10          THE COURT:  OKAY.

11          MR. JANSEN:  YOUR HONOR --

12          THE COURT:  MR. JANSEN.

13          MR. JANSEN:  YOUR HONOR, YOUR HONOR, I JUST WANT TO

14   ADDRESS --  I THINK SOME ISSUES IS THAT -- YOU KNOW, THE

15   PERFECT 10 DOCUMENT PRODUCTION IS VERY DISORGANIZED.  AND

16   HEADING TOWARDS TRIAL, YOU KNOW, JUST THINKING ABOUT TRIAL,

17   HOW ARE WE GOING TO -- IN A PRETRIAL STATEMENT WHEN PERFECT

18   10 LISTS ITS EXHIBITS, HOW ARE WE GOING TO BE ABLE TO FIGURE

19   OUT WHERE THEY CAME FROM AND WHETHER THEY'VE ACTUALLY BEEN

20   PRODUCED BEFORE.

21          THE COURT:  WELL, THIS --

22          MR. JANSEN:  AND THE REASON THIS IS AN ISSUE, YOUR

23   HONOR, IS BECAUSE PERFECT 10 HAS CERTAIN RULE 26 OBLIGATIONS

24   TO PRODUCE DOCUMENTS THAT IT RELIES ON THAT IT EXPECTS TO USE

25   IN ITS CASE.

1        WHAT'S ACTUALLY HAPPENING IS THAT WHEN THEY TAKE

2    DEPOSITIONS IN THIS CASE OF -- FOR EXAMPLE, THEY TOOK THE

3    DEPOSITION OF JONATHAN MC LANE FROM A-9 IN MID-NOVEMBER.  AND

4    VIRTUALLY EVERY DOCUMENT THAT WAS MARKED AT THAT DEPOSITION

5    WAS A DOCUMENT THAT PERFECT 10 HAD NEVER PRODUCED BEFORE.

6    THEY WERE JUST PULLING THEM OUT OF THE HAT.  THEY HAD BEEN

7    APPARENTLY IN SOME CASES TAKEN OFF THE WEB A COUPLE DAYS

8    BEFORE.  BUT THEY HAD NOT BEEN PRODUCED.  AND THEY DIDN'T

9    HAVE DOCUMENT PRODUCTIONS ON THEM -- DOCUMENT PRODUCTION

10   NUMBERS ON THEM.

11       SO, A FUNDAMENTAL PROBLEM IS THAT PERFECT 10 HAS

12   MADE WHAT THEY CALL A MASSIVE PRODUCTION OF DOCUMENTS IN THIS

13   CASE.  AND THEY HAVE.  IT'S AN ENORMOUS PRODUCTION OF LARGELY

14   COMPLETELY IRRELEVANT DOCUMENTS.

15       AND WHEN THEY ACTUALLY COME TO EXAMINE A WITNESS AT

16   A DEPOSITION, THEY PULL DOCUMENTS OUT THAT HAVE NEVER BEEN

17   PRODUCED.

18       AND THAT'S A FUNDAMENTAL PROBLEM.  I THINK THEY

19   SHOULD BE ORDERED TO PRODUCE ALL THE DOCUMENTS ON WHICH THEY

20   EXPECT TO BASE THEIR CASE WITHIN THE NEXT TWO WEEKS.

21       AND I THINK THEY SHOULD ALSO BE ORDERED TO PRODUCE

22   ALL DOCUMENTS -- THIS CASE HAS BEEN GOING ON SINCE 1990- --

23   2005.  THEY SUED AMAZON IN JULY 2005.  IF THEY HAVEN'T

24   PRODUCED ALL THE DOCUMENTS ON WHICH THEY'VE BASED THEIR CASE

25   BY THIS POINT WE HAVE SERIOUS PROBLEMS THAT WE NEED TO

1    ADDRESS NOW BECAUSE IT'S NOT FAIR FOR THEM TO BE PULLING OUT

2    AT A DEPOSITION OF ONE OF MY WITNESSES DOCUMENTS THAT THEY

3    HAVE NEVER PRODUCED.  AND 90 PERCENT OF THE DOCUMENTS AT THE

4    DEPOSITION ARE ONES THAT HAVE NEVER BEEN PRODUCED BY THEM.

5         THE COURT:  OKAY.

6         MR. JANSEN:  AND THAT IS A SERIOUS PROBLEM.  I

7    THINK WE NEED TO ADDRESS THAT, NUMBER ONE -- AS A NUMBER ONE

8    ISSUE.

9         AND, THEN, I THINK ALSO THE COURT SHOULD ORDER THAT

10   AS TO AT LEAST FUTURE PRODUCTIONS MADE BY PERFECT 10, THAT

11   THEY BE BATES STAMPED.

12        YOU MAY RECALL THAT YOU ORDERED -- AFTER THE

13   SEPTEMBER 22ND HEARING WE HAD HERE LAST YEAR YOU ORDERED

14   PERFECT 10 TO PRODUCE DOCUMENTS, ESPECIALLY FINANCIAL

15   DOCUMENTS AND OTHER DOCUMENTS THAT --

16        THE COURT:  YES, I'M LOOKING AT THAT ORDER RIGHT

17   NOW.

18        MR. JANSEN:  YES.  AND I DON'T THINK YOU'VE SEEN

19   THEIR RESPONSE.  I THINK THEIR RESPONSE IS VERY TELLING.  I'D

20   LIKE TO PASS THAT UP TO YOU.  BECAUSE YOU ORDERED THEM -- YOU

21   RECOGNIZED OVER THE PHONE THAT WHAT THEY PRODUCED IN RESPONSE

22   WAS A HARD DRIVE AND SOME DISKS THAT WERE NOT ORGANIZED, WERE

23   NOT NUMBER STAMPED, AND YOU ORDERED THEM TO COME BACK AND

24   GIVE A STATEMENT AS TO WHAT DOCUMENTS WERE RESPONSIVE TO YOUR

25   ORDER.

1          I'D LIKE TO JUST PASS IT UP IF I COULD TO YOU.

2          HERE'S A COPY, JEFF.

3          MR. MAUSNER:  YOUR HONOR, IF WE'RE GOING TO BE

4    GOING A FEW MINUTES, CAN WE JUST TAKE A VERY SHORT BREAK.

5          THE COURT:  ALL RIGHT.  ALL RIGHT.

6          THE ORDER I'M LOOKING FOR --

7          MR. JANSEN:  I HAVE A COPY OF YOUR ORDER TOO, YOUR

8    HONOR.

9          THE COURT:  WELL, NO, I HAVE THAT ONE.

10         I'M LOOKING FOR A PROPOSED ORDER THAT LISTS THIS

11   ALTERNATIVE.  AND I DON'T KNOW WHERE THAT IS.

12         MS. KASSABIAN:  YOUR HONOR, I BELIEVE IT'S DOCKET

13   NUMBER 407.

14         (COUNSEL CONFERRING.)

15         THE COURT:  MS. BUTLER FOUND IT.  SHE GETS LUNCH.

16   NO ONE ELSE GETS LUNCH.

17         (LAUGHTER.)

18         THE COURT:  DO YOU WANT TO TAKE A BREAK NOW?

19         MR. MAUSNER:  JUST A COUPLE OF MINUTES, YOUR HONOR.

20         THE COURT:  ALL RIGHT.  LET'S TAKE 10 MINUTES.

21         MR. JANSEN:  WE'LL TRY TO FIND THAT.

22         THE COURT:  ALL RIGHT.

23         (RECESS, 12:43 P.M. TO 1:08 P.M.)

24         MR. JANSEN:  SO, YOUR HONOR, I DON'T HAVE -- WE

25   DON'T HAVE A MOTION OBVIOUSLY ON THIS PARTICULAR ISSUE, BUT I

1    JUST THINK THIS SORT OF ILLUSTRATES THE CONCERN.  ESPECIALLY

2    FROM THE AMAZON.COM AND ALEXA INTERNET PERSPECTIVE,

3    REGARDLESS OF WHAT HAPPENS WITH THE PAST PRODUCTIONS, ON A

4    GO-FORWARD BASIS CERTAINLY WITH FUTURE PRODUCTIONS PERFECT 10

5    SHOULD BE NUMBERING ITS PRODUCTIONS.

6            AND I THINK THE PROBLEM IS SORT OF ILLUSTRATED BY

7    THEIR RESPONSE TO THE COURT'S ORDER, WHAT YOU ISSUED WHEN YOU

8    RAISED THE CONCERN THAT THEIR PRODUCTION FOLLOWING THE

9    SEPTEMBER 22ND, 2009 DISCOVERY HEARING WAS JUST A HUGE

10   MISHMASH, AGAIN, OF UNNUMBERED DISORGANIZED DOCUMENTS, A LOT

11   OF WHICH WERE ON A DISK, SOME OF WHICH WERE ON A HARD DRIVE.

12           AND IN RESPONSE WE HAD THE TELEPHONE CONFERENCE

13   CALL, AND THEN YOU ISSUED THE ORDER REQUIRING THEM TO

14   IDENTIFY WHERE IN THE PRODUCTION THE RESPONSIVE DOCUMENTS

15   WERE LOCATED.

16           AND IF YOU LOOK AT THE RESPONSE -- AND I FLAGGED

17   TWO PAGES, BUT I THINK IF YOU'RE JUST LOOKING AT THE VERY

18   FIRST PARAGRAPH IN RESPONSE ON PAGE --

19           THE COURT:  I GOT -- I UNDERSTAND.

20           MR. JANSEN:  IT BASICALLY JUST REFERRED TO --

21   THERE'S A FINANCIAL DOCUMENTS DISK.  IT CONTAINS 2,600 PAGES

22   OF FINANCIAL STATEMENTS.  AND THEN THEY GO THROUGH -- TO

23   ALLEGEDLY COMPLY WITH YOUR ORDER FROM NOVEMBER 12TH, THEY

24   JUST SAY, WELL, THESE ARE ON THE FINANCIAL DOCUMENTS DISK.

25   WHERE?

1        THE LACK OF NUMBERING MAKES IT IMPOSSIBLE FOR THEM

2   TO COMPLY WITH THE COURT'S ORDER.  IT MAKES IT IMPOSSIBLE FOR

3   US TO FIND THE DOCUMENTS THEY'RE REFERRING TO.  IT MAKES US

4   -- IT'S GOING TO MAKE IT VERY DIFFICULT FOR US TO MAKE A

5   RECORD WHEN WE TAKE MR. HERSH'S DEPOSITION EVENTUALLY.

6        AND THIS IS NOT JUST -- AS YOU KNOW, YOU ALSO HAVE

7   AN ORDER OUT WHICH PERFECT 10 IS SUPPOSED TO BE PRODUCING

8   ADDITIONAL DOCUMENTS TEN DAYS BEFORE MR. HERSH'S DEPOSITION,

9   WHICH WE'RE TRYING TO SCHEDULE FOR EARLY IN FEBRUARY.

10       AND, SO, WHEN THAT PRODUCTION GETS MADE IN ABOUT

11  TEN DAYS OR WHENEVER, THOSE DOCUMENTS SHOULD BE ORDERED

12  NUMBERED.

13       AND, AGAIN, THESE -- AS MS. KASSABIAN POINTED OUT

14  EARLIER IN CONNECTION WITH THE BATES NUMBERING ISSUE, THERE

15  IS A PROGRAM ON ADOBE WHICH ON THE PRESS OF A BUTTON CAN

16  AUTOMATICALLY NUMBER THESE DOCUMENTS.

17       NOW, THIS PARTICULAR FINANCIAL DOCUMENT DISK THAT

18  THEY PRODUCED ON AN UNNUMBERED BASIS, WE HAD IT NUMBERED.

19  SO, WE HAVE A NUMBERED -- WE HAVE NUMBERED THOSE DOCUMENTS.

20  BUT THAT DOESN'T HELP PERFECT 10 COMPLY WITH YOUR ORDER THAT

21  IT IDENTIFY WHICH DOCUMENTS ARE RESPONSIVE TO WHICH OF THESE

22  REQUESTS.

23       AND THAT'S THE PROBLEM.  THAT'S WHY THEY NEED TO

24  NUMBER THE DOCUMENTS.  WE SHOULDN'T HAVE TO NUMBER THE

25  DOCUMENTS AFTER THEY PRODUCED THEM SO WE CAN KEEP CONTROL OF

1    THEM.

2         MR. MAUSNER:  YOUR HONOR, ALL OF THE FINANCIAL

3    DOCUMENTS ARE RESPONSIVE TO EACH OF THOSE REQUESTS.  IT ISN'T

4    JUST SOME OF THEM.  THEY ASK, LIKE, ALL DOCUMENTS THAT RELATE

5    TO DAMAGES.  SO, WHAT ARE THOSE DOCUMENTS.  THEY'RE THE

6    DOCUMENTS ON THE FINANCIAL DOCUMENTS DISK.  YOUR HONOR, WE'RE

7    NOT GOING TO SPECIFY ANY MORE THAN THAT.

8         AND THOSE ARE ARRANGED VERY WELL.  THEY'RE ARRANGED

9    CHRONOLOGICALLY.  IT'S A SEARCHABLE DOCUMENT.  I MEAN, IT'S

10   -- NONE OF THIS IS BEFORE -- THIS IS MUCH LESS BEFORE THE

11   COURT THAN THE THINGS THAT WE'VE REQUESTED ORDERS ON THAT WE

12   CANNOT GET ORDERS ON.  SO, UNLESS --

13        THE COURT:  WELL, I SEE THAT THEY WERE PRODUCED --

14        MR. MAUSNER:  AND, BY THE WAY, NO ONE HAS EVER

15   RAISED -- EVER, EVER RAISED ANY ISSUE REGARDING PERFECT 10'S

16   RESPONSE TO THE NOVEMBER 12TH, 2009 ORDER OF JUDGE HILLMAN.

17   OKAY.  NOT A LETTER.  NOT AN EMAIL.  NOT A CALL.  NOTHING.

18        MR. JANSEN:  INTERESTING WITH RESPECT TO -- THIS

19   GOES TO THE BATES STAMPING ISSUE, YOUR HONOR, WHICH YOU ASKED

20   TO JUST ADDRESS I THINK, YOU KNOW, WITHOUT A LOT OF

21   ADDITIONAL BRIEFING, WHICH WE COULD HAVE SUBMITTED.

22        BUT JUST SIMPLY TO RAISE THE POINT THAT WHATEVER

23   HAPPENS WITH RESPECT TO PAST PRODUCTIONS AND, YOU KNOW,

24   WHETHER OR NOT IT MAY BE APPROPRIATE, AND PROBABLY IT IS FOR

25   PERFECT 10 TO BE ABLE TO IDENTIFY EVERY DOCUMENT IT RELIES ON

1   BY ITS FILE PATH DIRECTORY IDENTIFICATION, THAT'S SOMETHING I

2   THINK WE WERE ALWAYS AMENABLE TO, TO THEM DOING IT IN LIEU OF

3   NUMBERING.

4           BUT ON A GO-FORWARD BASIS THEIR DOCUMENTS SHOULD BE

5   NUMBERED ON ALL PRODUCTIONS.

6           MS. KASSABIAN:  WE AGREE WITH THAT, YOUR HONOR.  IT

7   APPEARS TO BE TECHNOLOGICALLY FEASIBLE, WOULDN'T REQUIRE

8   RE-PRODUCING OLD DOCUMENTS.  I --

9           THE COURT:  ALL RIGHT.  SO, THE LANGUAGE -- WE

10  CAN'T FIND THE PROPOSED ORDER, BUT THE LANGUAGE IS -- OH, DID

11  WE FIND IT?

12          THE CLERK:  SHE'S GETTING IT RIGHT NOW, YOUR HONOR.

13          THE COURT:  ALL RIGHT.

14          MS. KASSABIAN:  SO, YOUR HONOR, I BELIEVE WHAT THAT

15  WAS WAS A FILING, LIKE A BRIEF, SUPPLEMENTAL MEMO FROM US --

16          THE COURT:  IT WAS A BRIEF.  OKAY.

17          MS. KASSABIAN: -- WHERE WE PUT THAT IN THERE AS AN

18  ALTERNATIVE.  IT WAS NEVER EMBODIED IN A PROPOSED ORDER, BUT

19  YOU HAVE THE LANGUAGE.

20          THE COURT:  OKAY.

21          MS. KASSABIAN:  AND WE'RE HAPPY TO STICK IT IN A

22  PROPOSED ORDER OR SANDRA COULD.

23          THE COURT:  WELL, LET'S LOOK AT THE LANGUAGE AGAIN.

24  ALL RIGHT.

25          (PAUSE IN PROCEEDINGS.)

1          THE COURT:  LET ME ASK GOOGLE ON THIS COURTESY

2    BINDER -- I DON'T THINK IT NEEDS TO BE FILED, BUT IF YOU WANT

3    TO FILE IT --

4          MS. KASSABIAN:  WE WANT YOUR HONOR --

5          THE COURT:  HAS IT BEEN -- HAS IT BEEN SERVED?

6          MS. KASSABIAN:  YES.

7          WE WANT YOUR HONOR TO HAVE ACCESS TO IT IF YOUR

8    HONOR NEEDS IT TO RULE ON THE MOTIONS.  WE CAN EITHER JUST

9    LEAVE IT WITH YOU AS A CHAMBERS COPY --

10          THE COURT:  ALL RIGHT.

11          MS. KASSABIAN:  -- AND RETRIEVE IT -- YOU KNOW, WE

12    COULD LODGE IT AND RETRIEVE IT WHEN YOU'RE DONE IF YOU'D

13    LIKE.

14          THE COURT:  WELL, I DON'T KNOW THAT I'M GOING TO

15    WRITE A VERY LENGTHY ORDER ON THESE -- ON P-10'S MOTIONS.

16          MS. KASSABIAN:  OR WE COULD TAKE IT HOME TODAY IF

17    YOU DON'T WANT.

18          THE COURT:  WELL, YOU CAN -- I'LL KEEP IT.

19          MS. KASSABIAN:  OKAY.

20          THE COURT:  I DON'T THINK IT NEEDS TO BE FILED.

21          MR. MAUSNER:  YOUR HONOR, THERE ARE OTHER HAND-OUTS

22    THAT WE HAD BESIDES EXHIBIT 1, AND WE WOULD LIKE TO FILE

23    THOSE.

24          IS THAT OKAY?

25          THE COURT:  SURE.  YES.

1          MR. MAUSNER:  THERE WERE OTHERS THAT WE DIDN'T GET

2     A CHANCE TO GO INTO, BUT WE WOULD LIKE TO FILE THOSE.

3          THE COURT:  I DON'T KNOW HOW LENGTHY AN ORDER I'M

4     GOING TO WRITE ON THESE, BUT I'LL SEE.

5          (PAUSE IN PROCEEDINGS.)

6          THE COURT:  IT'S ON PAGE 5.

7          (PAUSE IN PROCEEDINGS.)

8          MS. KASSABIAN:  AND, YOUR HONOR, THE ONLY

9     MODIFICATION TO THIS I BELIEVE WAS AFTER WE FILED THIS

10    DOCUMENT PERFECT 10 OBJECTED THAT IT DIDN'T WANT TO HAVE TO

11    PRODUCE THE FILE PATHS IN ADVANCE OF THE DEPOSITION.

12         AND, SO, WE SAID, WELL, THAT'S FINE.  YOU CAN

13    PROVIDE THE FILE PATHS AT THE DEPOSITION IF YOU DON'T WANT US

14    TO KNOW IN ADVANCE WHAT EXHIBITS YOU'RE GOING TO BE USING AT

15    THE DEPOSITION.

16         THAT'S THE ONLY CHANGE I WOULD NOTE.

17         THE COURT:  WELL, LET ME ASK YOU THIS.  DO YOU

18    REALLY NEED A DECLARATION, OR DO YOU JUST NEED --

19         MS. KASSABIAN:  WELL, I MEAN --

20         THE COURT:  -- AN EMBEDDED FILE PATH AND PRODUCTION

21    DATE ON ANY NON-BATES STAMPED DOCUMENTS?

22         MS. KASSABIAN:  IF IT CAN BE PRINTED RIGHT ON

23    THERE, THAT WOULD BE FINE.  BUT I THINK THAT PROBABLY WOULD

24    BE MORE BURDENSOME FOR THEM.  BUT --

25         THE COURT:  I THINK A DECLARATION WOULD BE MORE

1  BURDENSOME.

2          MS. KASSABIAN:  WELL, WHATEVER LOGISTICALLY WOULD

3  BE THE EASIEST IS FINE WITH US AS LONG AS THERE IS A SPECIFIC

4  FILE PATH ASSOCIATED WITH EACH DOCUMENT.

5          THE COURT:  ALL RIGHT.  I COULD CHANGE IT TO AN

6  ORDER THAT P-10 SUFFICIENTLY IDENTIFY THE FILE PATH AND

7  PRODUCTION DATE FOR ANY NON-BATES STAMPED NUMBERED DOCUMENTS,

8  ET CETERA.  IF YOU DON'T WANT TO MAKE THAT CHOICE RIGHT NOW.

9          MR. MAUSNER:  THAT WOULD BE BETTER, YOUR HONOR.

10         THE COURT:  ALL RIGHT.

11         MR. MAUSNER:  EITHER A SEPARATE PIECE OF PAPER OR

12  IN THE FILE PATH.

13         AND, THEN, I DO ASK AGAIN, YOUR HONOR, THAT IT

14  SHOULD BE APPLICABLE TO BOTH PARTIES.  BOTH PARTIES SHOULD

15  IDENTIFY WHERE THE DOCUMENT COMES FROM.

16         MS. KASSABIAN:  AND, AGAIN, WE VIGOROUSLY OBJECT

17  FOR MANY REASONS, INCLUDING THE FACT THAT GOOGLE AND AMAZON

18  SHOULD NOT HAVE TO PAY THE PRICE OF AN EXTRA BURDEN OF

19  IDENTIFYING PERFECT 10'S OWN DOCUMENT TO IT.

20         THE COURT:  WELL, YOU'RE USING BATES STAMPS.

21         MS. KASSABIAN:  SORRY?

22         THE COURT:  YOU'RE USING BATES STAMPS.

23         MS. KASSABIAN:  IN OUR DOCUMENTS.

24         THE COURT:  YES.

25         MS. KASSABIAN:  THAT'S CORRECT.

1          THE COURT:  SO --

2          MR. MAUSNER:  BUT FOR OUR -- WE'RE SAYING FOR OUR

3   DOCUMENTS THEY JUST DO THE SAME THING WE'RE GOING TO DO.

4          MS. KASSABIAN:  PERFECT 10 IS --

5          MR. MAUSNER:  EITHER A --

6          MS. KASSABIAN:  THEY'RE SAYING, GOOGLE --

7          MR. MAUSNER: -- OR A SEPARATE PIECE OF PAPER.

8          MS. KASSABIAN:  THEY'RE SAYING, GOOGLE, IF YOU USE

9   A PERFECT 10 DOCUMENT IN A FILING, YOU HAVE TO IDENTIFY FOR

10  US WHERE WE PRODUCED THAT DOCUMENT TO YOU.

11         THAT'S RIDICULOUS.  IF WE HAVE THE DOCUMENT, IT'S

12  IN THEIR PRODUCTION.  WHERE ELSE WOULD WE HAVE GOTTEN IT.

13         THE COURT:  RIGHT.  AND IT WOULD MAKE MORE SENSE

14  FOR YOU TO JUST USE THE SAME I.D. PATH THAT THEY'VE USED.  I

15  MEAN, THE DOCUMENT AT THAT POINT IS GOING TO BE

16  SELF-AUTHENTICATING.

17         MS. KASSABIAN:  IF WE HAVE IT, AND WE SAY ATTACHED

18  AS EXHIBIT A TO RACHEL'S DECLARATION IS A PRINT-OUT FROM

19  PERFECT 10'S PRODUCTION, THEN, OBVIOUSLY, PERFECT 10 -- IF WE

20  HAVE IT, AND WE'RE SWEARING THAT WE GOT IT FROM PERFECT 10'S

21  PRODUCTION, THEN, PERFECT 10 KNOWS WHERE IT IS.  THEY'RE THE

22  MASTER OF THEIR OWN PRODUCTION.

23         THE REASON WHY WE WANT PERFECT 10 TO IDENTIFY THE

24  FILE PATH IS BECAUSE WHEN WE RECEIVE A DOCUMENT FROM THEM,

25  AND THEY SAY -- WELL, USUALLY, THEY DON'T SAY, BUT IF THEY

1   WERE TO SAY, TRUST US, WE PRODUCED THIS, WE CAN'T FIND WHERE

2   THEY PRODUCED THAT.  BECAUSE THEY HAVEN'T AFFIXED NUMBERS

3   CONFIRMING THAT.

4           SO, THIS SHOULD NOT BE AN EQUAL BURDEN.  THIS IS TO

5   PROVIDE THE COURTESY TO AMAZON AND GOOGLE EQUIVALENT TO A

6   BATES-STAMPING FUNCTION OF CONFIRMING FOR US THAT SOMETHING

7   WE'RE SEEING IN A FILING OR DEPOSITION OR WHAT HAVE YOU HAS

8   IN FACT BEEN PRODUCED TO US.

9           IF WE ARE USING A PERFECT 10 DOCUMENT, OBVIOUSLY IT

10  CAME FROM THEIR PRODUCTION BECAUSE HOW ELSE WOULD WE HAVE

11  GOTTEN IT.

12          DO YOU SEE WHAT I'M SAYING, YOUR HONOR?

13          MR. MAUSNER:  WELL, THEY CANNOT SHOW -- BOTH SIDES

14  SHOULD -- IF THEY'RE USING THE DOCUMENT KNOW WHERE IT CAME

15  FROM.  BUT THEY CAN FIND IT MUCH EASIER BECAUSE THEY HAVE

16  THAT HUGE DATABASE WHICH IS JUST SEARCHABLE IN ONE THING.

17          AND I DON'T THINK IT'S -- IT'S CERTAINLY NOT MORE

18  BURDENSOME.  IT'S PROBABLY LESS BURDENSOME FOR THEM TO DO IT

19  THAN IT IS FOR US TO DO IT.  AND I THINK THINGS SHOULD JUST

20  BE APPLIED EQUAL.

21          THE COURT:  BUT WHAT'S THE BENEFIT?  WHAT'S THE

22  BENEFIT?

23          MS. KASSABIAN:  EXACTLY.

24          MR. MAUSNER:  SO WE KNOW WHERE THIS DOCUMENT WAS.

25  I MEAN, WE DON'T KNOW OFF THE TOP OF OUR HEAD WHERE EVERY

1   SINGLE DOCUMENT IS LOCATED.

2        MS. KASSABIAN:  THAT'S NOT WHAT THIS IS ABOUT.

3   THIS IS ABOUT THEM BEING ABLE TO CONFIRM TO US THAT THEY

4   PRODUCED IT AND TO VERIFY THAT.  THAT'S WHY A FILE PATH IS

5   NECESSARY.

6        MS. POBLETE:  YOUR HONOR, THE ONLY PROBLEM WITH

7   THAT -- THIS IS MELANIE.  THE ONLY PROBLEM WITH THAT IS, FOR

8   INSTANCE, IF THEY USED A PHOTOGRAPH FROM ONE OF OUR DEPOSIT

9   MATERIALS, HOW ARE WE TO KNOW WHICH DEPOSIT MATERIAL, WHICH

10  PHOTOGRAPH THEY USED.  THERE'S NO IDENTIFYING -- THERE MAY BE

11  -- WHAT I'M SAYING IS THERE MAY BE ONE PHOTOGRAPH ASSOCIATED

12  TO A DEPOSIT MATERIAL AS WELL AS LIKE A DOWNLOAD FROM A

13  USENET SITE.

14       MS. KASSABIAN:  THAT'S OUR POINT.  THAT'S WHY THEY

15  SHOULD HAVE BATES STAMPED.  BUT THEY DIDN'T.  WE SHOULDN'T

16  BEAR THE BURDEN OF HAVING TO LABEL THEIR DOCUMENTS FOR THEM,

17  EITHER WITH THE FILE PATH OR WITH THE BATES NUMBER.  THIS ALL

18  COULD HAVE BEEN AVOIDED HAD THEY USED A BATES-NUMBERING

19  SOFTWARE IN THE FIRST PLACE.

20       GOOGLE AND AMAZON SHOULD NOT HAVE TO INCUR EXTRA

21  LEGAL AND PARALEGAL FEES TRYING TO LABEL PERFECT 10'S

22  DOCUMENTS FOR IT.  YOU MIGHT AS WELL ORDER US TO BATES STAMP

23  THE DOCUMENTS.  IF WE HAVE TO AFFIX A LABEL TO THEIR

24  DOCUMENTS WE'RE NO BETTER OFF THAN WE WERE -- WE'RE WORSE OFF

25  THAN WE WERE BEFORE WE BROUGHT THE MOTION.

1        MR. MAUSNER:  AS USUAL EVERYTHING IS OKAY AS LONG

2   AS WE HAVE TO DO IT.  BUT FOR THEM TO BE SUBJECT TO THE SAME

3   THING, THEN, ALL OF A SUDDEN IT SHOULDN'T BE --

4        THE COURT:  WELL, IT'S NOT THE SAME THING.  THERE'S

5   TWO DIFFERENT CONCEPTS HERE.  YOU'RE NOT --

6        MS. KASSABIAN:  THAT'S EXACTLY RIGHT.

7        THE COURT:  THEY ARE IDENTIFYING ADEQUATELY THEIR

8   OWN PRODUCTIONS TO YOU.

9        THE QUESTION IS WHETHER THEY NEED TO LAY A

10  FOUNDATION IN ESSENCE FOR P-10 DOCUMENTS THAT HAVE BEEN

11  PRODUCED BY P-10 TO GOOGLE WHEN GOOGLE WANTS TO USE THEM IN

12  DEPOSITIONS OR MOTIONS.

13       MR. MAUSNER:  RIGHT.

14       THE COURT:  SO, IT'S APPLES AND ORANGES.

15       MS. KASSABIAN:  IT ABSOLUTELY IS, YOUR HONOR.  THIS

16  ISN'T ABOUT EQUALITY.  THESE ARE TWO DIFFERENT ISSUES.

17       THE COURT:  SO, WHAT IS THE PURPOSE OF -- WHAT

18  WOULD BE THE PURPOSE OF MY ORDERING THEM TO DO THAT?

19       MR. MAUSNER:  THE SAME PURPOSE AS FOR US SO WE CAN

20  FIND WHERE IT WAS IN THE PRODUCTION.  I MEAN, WE DON'T KNOW

21  OFF THE TOP --

22       THE COURT:  LIKE THAT THEY WANT TO KNOW WHETHER IT

23  WAS PRODUCED --

24       MS. KASSABIAN:  THAT'S RIGHT, YOUR HONOR.

25       THE COURT:  -- NOT WHERE IN THE PRODUCTION.

1          MR. MAUSNER:  WELL, THEN --

2          THE COURT:  WELL, NOT JUST WHERE.  THEY WANT TO

3   KNOW THAT YOU ACTUALLY PRODUCED SOMETHING.  WHEREAS, IF

4   THEY'RE USING IT, IPSO FACTO, IT WAS PRODUCED.

5          MR. MAUSNER:  WELL -- YES, WE CAN ALSO REPRESENT

6   THAT SOMETHING WAS PRODUCED.  THAT'S A LOT EASIER THAN

7   FINDING THE FILE PATH.

8          IF THEY REPRESENT THAT WE PRODUCED IT, OKAY, SO

9   WE'D LIKE TO KNOW WHERE THE FILE PATH IS.  I MEAN, IT'S JUST

10  -- IT'S JUST A MATTER OF FAIRNESS TOO.

11         IF WE'RE GOING TO HAVE TO DO THIS, THEN WHY

12  SHOULDN'T THEY -- WITH MUCH MORE RESOURCES AND THEIR

13  SEARCHABLE DATABASE, WHICH SHOWS THAT, YOU KNOW, THIS WHOLE

14  BATES NUMBERING THING WAS NEVER REALLY NECESSARY TO BEGIN

15  WITH, THEN WHY SHOULDN'T THEY BE SUBJECT TO THE SAME

16  REQUIREMENT.

17         MS. KASSABIAN:  YOUR HONOR, THAT'S JUST -- FIRST OF

18  ALL, MR. MAUSNER DOESN'T KNOW WHAT HE'S TALKING ABOUT.  HE'S

19  NEVER BEEN TO MY LAW OFFICES.  HE'S NEVER SEEN WHAT DATABASES

20  I KEEP.

21         THIS ISN'T ABOUT -- THIS ISN'T JUST ABOUT FINDING

22  DOCUMENTS.  THIS IS ABOUT KNOWING WHAT THE UNIVERSE OF

23  DOCUMENTS IN THIS CASE IS, CONFINING IT IN SOME WAY.

24         GOOGLE AND AMAZON HAVE DONE THEIR JOB AND BATES

25  STAMPED DOCUMENTS, WHICH IS STANDARD LITIGATION PRACTICE, SO

1   THAT PEOPLE KNOW WHAT'S IN AND WHAT'S OUT.  WE DON'T KNOW

2   THAT WITH PERFECT 10'S PRODUCTION.  SO WE'RE ASKING THAT THEY

3   LABEL THEM SOMEHOW.

4           FIRST WE SUGGESTED BATES STAMPING.  THAT'S NOT

5   GOING TO BE ORDERED.  SO, NOW WE'VE SUGGESTED THIS FILE PATH

6   OPTION, WHICH WILL BE JUST FINE.  AND YOUR HONOR'S RIGHT THAT

7   THAT WOULD WORK JUST FINE FOR US.

8           BUT TO SAY, GOOD FOR THE GOOSE, GOOD FOR THE GANDER

9   IN A SITUATION THAT'S APPLES AND ORANGES MAKES NO SENSE.  WE

10  SHOULDN'T HAVE TO TELL PERFECT 10 WHERE IN ITS OWN PRODUCTION

11  PERFECT 10 CAN FIND PERFECT 10'S OWN DOCUMENTS.

12          THE COURT:  WELL --

13          MS. KASSABIAN:  THEY'VE GOT A TEAM OF PARALEGALS TO

14  DO THAT.

15          THE COURT:  YOU WOULD AGREE THEN TO AT LEAST

16  AMENDING THE LANGUAGE ON PAGE 5 OF THIS -- THIS BRIEF,

17  SUPPLEMENTAL MEMO.  YOU WOULD AGREE THAT I COULD FAIRLY AMEND

18  IT TO SAY THAT P-10 IS ORDERED TO SUBMIT -- TO SUFFICIENTLY

19  IDENTIFY THE FILE PATH AND PRODUCTION DATE OF P-10 DOCUMENTS,

20  NOT JUST --IT WOULDN'T BE GOOGLE DOCUMENTS.

21          MS. KASSABIAN:  ABSOLUTELY.

22          THE COURT:  OKAY.

23          MS. KASSABIAN:  BECAUSE THEY WOULD USE GOOGLE'S

24  BATES NUMBERS FOR THAT.

25          THE COURT:  FOR ANY P-10 NON-BATES NUMBERED

1    DOCUMENTS P-10 OFFERS AS EVIDENCE IN ANY COURT PROCEEDING, ET

2    CETERA.

3              AND THEN STRIKE THE LAST SENTENCE -- ABOUT FIVE

4    DAYS PRIOR TO A DEPO.

5              MS. KASSABIAN:  YES, THAT'S FINE.  THE POINT IS IS

6    THAT AT THE TIME THAT WE -- THE DOCUMENT IS BEING USED --

7              THE COURT:  RIGHT.

8              MS. KASSABIAN:  -- THAT WE BE PROVIDED WITH THAT.

9              THE COURT:  I'LL JUST SAY, SUFFICIENTLY AND TIMELY.

10             MS. KASSABIAN:  WELL, I THINK IT SHOULD SAY, AT THE

11   TIME THE DOCUMENT IS OFFERED EITHER IN A MOTION, AT A

12   HEARING, AT A TRIAL.

13             MR. JANSEN:  I THINK WITH RESPECT TO TRIAL, YOUR

14   HONOR, I THINK WE SHOULD --

15             MS. KASSABIAN:  WELL --

16             MR. JANSEN:  -- THE ORDER SHOULD APPLY TO THE

17   PRETRIAL SUBMISSION OF EXHIBITS.  SO THAT WE HAVE TIME TO

18   ACTUALLY LOOK AT THE -- ADEQUATE TIME TO ACTUALLY LOOK AT THE

19   PRODUCTION AND MAKE SURE THAT, IN FACT, IT WAS PRODUCED AS

20   REPRESENTED.  SO IT NEEDS TO BE IN CONNECTION WITH THE, YOU

21   KNOW, THE PRETRIAL FILING OF EXHIBIT LISTS.

22             MS. KASSABIAN:  SO PERHAPS IT COULD SAY AT THE TIME

23   THE DOCUMENT IS -- I MEAN, I PRESUME WE'RE GOING TO BE

24   EXCHANGING EXHIBITS IN ADVANCE.  SO AT THE TIME THE DOCUMENT

25   IS OFFERED.

1           WOULD THAT --

2           MR. JANSEN:  THE TIME -- YEAH, THE TIME OF EXCHANGE

3   OF EXHIBIT LISTS.  RIGHT.  PRETRIAL.

4           THE COURT:  WELL, THAT'S GOING TO BE UP TO JUDGE

5   MATZ AS FOR TRIAL.

6           MR. MAUSNER:  COULD YOU READ THE -- THE ORDER, YOUR

7   HONOR.

8           THE COURT:  IF I CAN DECIPHER THIS.

9           P-10 IS SUFFICIENTLY -- NO.

10          P-10 IS ORDERED TO SUFFICIENTLY IDENTIFY THE

11          FILE PATH AND PRODUCTION DATE FOR ANY P-10

12          NON-BATES NUMBERED DOCUMENTS WHICH P-10

13          OFFERS IN EVIDENCE OR EXHIBIT IN ANY

14          COURT PROCEEDING INCLUDING MOTIONS, DEPOSITIONS

15          AND PRETRIAL HEARINGS, AT THE TIME SUCH DOCUMENTS

16          ARE FIRST INTRODUCED.

17          HOW DOES THAT SOUND?

18          MS. KASSABIAN:  I THINK THAT WORKS.

19          IS THAT OKAY WITH YOU, MR. JANSEN?

20          MR. JANSEN:  I'M JUST CONCERNED ABOUT THE FIRST

21  INTRODUCED PART, YOUR HONOR, BECAUSE THAT WILL AFFECT THE

22  PRETRIAL HEARING.  I BELIEVE AT THE END OF -- THE

23  IDENTIFICATION NEEDS A COMMON -- PRETRIAL EXHIBITS ARE

24  EXCHANGED OR LISTED.

25          MS. KASSABIAN:  I THINK THAT'S --

1          THE COURT:  I'M NOT DEALING WITH PRETRIAL

2   CONFERENCE OR TRIAL.

3          MR. JANSEN:  OKAY.  A PRETRIAL CONFERENCE.

4          THE COURT:  RIGHT.

5          MR. JANSEN:  OKAY.  I UNDERSTAND.  OKAY.

6          THE COURT:  BECAUSE I DON'T KNOW WHAT JUDGE MATZ

7   WOULD WANT.

8          MS. KASSABIAN:  WHEN SUCH DOCUMENTS ARE FIRST

9   INTRODUCED OR FILED?

10          THE COURT:  OR FILED.

11          MS. KASSABIAN:  BECAUSE YOU CAN INTRODUCE A

12   DOCUMENT AT A DEPOSITION OR A HEARING.

13          THE COURT:  RIGHT.  RIGHT.

14          MR. MAUSNER:  YOUR HONOR, ONE THING.  THERE MAY

15   NEED TO BE AN EXCEPTION FOR LIKE EX PARTE -- FOR OPPOSITIONS

16   OR, IN PARTICULAR, EX PARTE OPPOSITIONS BECAUSE WE MAY NOT --

17   NOT HAVE TIME TO DO IT AT THE TIME.

18          SO, COULD IT SAY, OR REASONABLY -- REASONABLE TIME

19   THEREAFTER?

20          MS. KASSABIAN:  YOUR HONOR, THAT WOULD MAKE IT

21   IMPOSSIBLE FOR US TO REPLY.  SO WE OBJECT TO THAT.

22          MR. JANSEN:  YOUR HONOR, IF PERFECT 10 IS ABLE TO

23   PULL A DOCUMENT OUT OF ITS DOCUMENT PRODUCTION TO ATTACH TO A

24   REPLY TO AN EX PARTE APPLICATION, THEY CAN IDENTIFY WHERE

25   THEY GOT IT WHEN THEY -- WHEN THEY FILE THEIR MOTION OR THEIR

1    PAPERS.

2              MR. MAUSNER:  WELL, THAT MAY NOT ALWAYS BE TRUE.

3    WE MAY NOT KNOW WHEN IT WAS FIRST PRODUCED, YOU KNOW, RIGHT

4    THEN.  AND WE MAY HAVE TO LOOK BACK FOR THAT.

5              THE COURT:  WELL, YOU DON'T NEED TO DO THE

6    PRODUCTION DATE IF YOU SUFFICIENTLY IDENTIFY THE FILE PATH.

7              MR. MAUSNER:  BUT, IT --

8              THE COURT:  NO, I GUESS THE ORDER SAYS, "AND

9    PRODUCTION DATE."

10             MS. KASSABIAN:  BUT THEY'LL KNOW WHERE THEY GOT IT

11   FROM.  IF THEY PULL A HARD DRIVE OUT OF THE DRAWER, STICK IT

12   IN THE COMPUTER --

13             THE COURT:  I'M GOING TO --

14             MS. KASSABIAN:  -- FIND THE DOCUMENT.

15             THE COURT:  I'M GOING TO LEAVE IT AT THAT.  IF

16   THERE'S SOME EXIGENT CIRCUMSTANCE, WE'LL WORRY ABOUT THAT

17   NEXT YEAR.

18             SO, WHY DON'T YOU READ BACK WHAT I JUST SAID,

19   PLEASE, SOMEONE.

20             MS. KASSABIAN:  TOM, DO YOU HAVE IT?

21             MR. NOLAN:  YES.  PERFECT 10 --

22             MS. KASSABIAN:  TOM, INTO THE MICROPHONE.

23             MR. NOLAN:  WHAT I'VE TRANSCRIBED OF YOUR HONOR'S

24   ORDER IS:

25             PERFECT 10 IS ORDERED TO SUFFICIENTLY

1          IDENTIFY THE FILE PATH AND PRODUCTION

2          DATE FOR ANY PERFECT 10 NON-BATES NUMBERED

3          DOCUMENTS THAT PERFECT 10 OFFERS AS EVIDENCE

4          OR AS AN EXHIBIT IN ANY COURT PROCEEDING,

5          INCLUDING MOTIONS, DEPOSITIONS AND PRETRIAL

6          HEARINGS AT THE TIME SUCH DOCUMENTS ARE FIRST

7          INTRODUCED OR FILED.

8          MR. MAUSNER:  AND I DON'T KNOW IF IT HAS TO GO INTO

9   THE ORDER, YOUR HONOR, BUT -- YOU KNOW, SOMETIMES WE DO GET

10  THINGS RIGHT OFF OF THE INTERNET A DAY OR TWO OR A WEEK

11  BEFORE THAT HAVEN'T BEEN PRODUCED.  SO, IF THEY HAVEN'T BEEN

12  PRODUCED YET, WE WILL JUST SAY --

13         THE COURT:  RIGHT.

14         MR. MAUSNER:  -- NOT PRODUCED YET.

15         THE COURT:  ALL RIGHT.  IF YOU WOULD PUT THAT IN A

16  PROPOSED ORDER NEXT WEEK.

17         MS. KASSABIAN:  WE WILL, YOUR HONOR.

18         MR. MAUSNER:  YOUR HONOR, MAY I JUST SAY SOMETHING.

19  I KNOW YOU'VE DECIDED THESE THINGS.

20         THE COURT:  YES.

21         MR. MAUSNER:  BUT PERFECT 10 PRODUCED ITS DOCUMENTS

22  IN THEIR NATIVE FORMAT.  WE DIDN'T ALTER THEM IN ANY WAY.  WE

23  PRODUCED THEM EXACTLY AS THEY WERE, MOST OF THEM SEARCHABLE

24  ADOBE DOCUMENTS.

25         GOOGLE TOOK THOSE LIKE ITS -- ITS SPREADSHEET,

1    TURNED THEM INTO NON-SEARCHABLE JPG FILES, PUT A NUMBER ON

2    THEM.  AND WE'RE THE ONES WHO ARE NOT GETTING A SEARCHABLE

3    DOCUMENT.  WE'RE GETTING PENALIZED FOR EVERYTHING.  AND I

4    JUST THINK THE OUTCOME OF THIS HAS BEEN VERY UNFAIR.

5         MR. JANSEN:  YOUR HONOR, I CAN REPRESENT THAT WHAT

6    MR. MAUSNER HAS SAID IS NOT TRUE.  IT'S NOT ACCURATE.

7         THE DOCUMENTS WE'VE GOTTEN FROM THEM ARE ALSO NOT

8    IN NATIVE FORMAT.  WE HAVE NOT GOTTEN "WORD" VERSIONS OF

9    THEIR DMCA NOTICES, FOR EXAMPLE.  WE'VE JUST GOTTEN COPIES

10   THAT ARE REALLY NOT SORTABLE.

11        SO, WE HAVE THE SAME ISSUE, AND WE'LL BE DISCUSSING

12   THAT WITH THEM.

13        MR. MAUSNER:  WELL, THEY'VE GOTTEN PDF VERSIONS,

14   WHICH IS EXACTLY WHAT WE SENT TO THEM.

15        MS. KASSABIAN:  WHICH IS NOT NATIVE FROM THE

16   DOCUMENT THAT WAS CREATED.  I AGREE WITH MR. JANSEN ON THAT.

17   BUT I THINK IT'S A SIDE ISSUE.  I THINK WE'RE DONE HERE.

18        MR. MAUSNER:  WHEN YOU TAKE UP -- WHEN YOU SEND

19   SOMEONE A LETTER, YOU WRITE IT IN "WORD," AND THEN YOU TURN

20   IT INTO A PDF DOCUMENT BEFORE YOU SEND IT TO HIM.  YOU DON'T

21   SEND HIM SOMETHING IN "WORD."  AND THE PDFS ARE SEARCHABLE.

22   I MEAN --

23        MS. KASSABIAN:  THEY'RE JUST NOT NATIVE.  I'M JUST

24   -- WE'RE JUST -- I THINK MR. JANSEN IS RIGHT ABOUT THAT.

25        DR. ZADA:  THERE'S BIG DIFFERENCE BETWEEN TAKING A

1   MICROSOFT XCEL SPREADSHEET, WHICH IS SORTABLE AND SEARCHABLE

2   AND CAN BE COPIED IN ONE SECOND AND DOESN'T REQUIRE $5,000 TO

3   COPY.  AND CONVERTING IT INTO 1,096 PIECES OF ADOBE,

4   UNSEARCHABLE -- EXCUSE ME -- J-PEG UNSEARCHABLE, THAT IS A

5   CLEAR DESTRUCTION OF THE ORIGINAL DOCUMENT.  AND IT WAS

6   DESIGNED TO PREVENT US FROM DISCOVERING THE TRUTH QUICKLY

7   ENOUGH FOR US TO OPPOSE YOUR MOTION.

8           WE OPPOSED IT WELL ANYWAY, BUT WE WERE

9   SUBSTANTIALLY PREJUDICED BY THIS, YOUR HONOR.  AND I THINK

10  WE'RE ENTITLED --

11          THE COURT:  WELL, WHY DIDN'T YOU BRING THIS TO MY

12  ATTENTION.

13          DR. ZADA:  BECAUSE, YOUR HONOR, WE CAN'T DO

14  EVERYTHING.  WE'RE A SMALL LITTLE COMPANY.  WE HAD MULTIPLE

15  ORDERS SAYING, PRODUCE A DMCA LOG.

16          THEY HAVE -- THEY HAVE DENIED THAT THEY DID NOT

17  HAVE A DMCA LOG IN THEIR REQUEST FOR ADMISSIONS.  AND THEN

18  THEY HAVE NEVER, NEVER PRODUCED A DMCA LOG.  THEY HAVE NEVER

19  PRODUCED A DMCA LOG WHICH SUMMARIZES ALL THE NOTICES

20  RECEIVED.

21          THEY HAVE PRODUCED TWO -- A BLOGGER AND ADSENSE

22  SPREADSHEET AFTER MATZ'S ORDER BY THREE MONTHS.  IT WASN'T

23  EVEN IDENTIFIED IN THEIR DMCA LOG BATES RANGE.  AND WE DIDN'T

24  EVEN KNOW WHAT IT WAS.  THEY DIDN'T EVEN SAY, OH, THIS IS THE

25  DMCA LOG THAT'S RESPONSIVE TO JUDGE MATZ'S ORDER.  THEY JUST

1    BURIED IT IN 50,000 PAGES OF UNFATHOMABLE MATERIAL.  THAT'S A

2    PROBLEM.

3              MS. KASSABIAN:  YOUR HONOR, I WOULD --

4              DR. ZADA:  YOUR HONOR CAN'T SEE THEIR PRODUCTIONS.

5    THAT'S THE PROBLEM.  SHE MAKES A DECLARATION WHICH SAYS, WE

6    PRODUCED THESE TERMINATION NOTICES.  THERE'S 311 PAGES AND 12

7    WERE TERMINATION NOTICES.  AND THEY WERE ONLY RELATED TO OUR

8    NOTICES.  THEY DID NOT PRODUCE ANY ADSENSE TERMINATION

9    NOTICES.  THEY DID NOT PRODUCE ANY BLOGGER TERMINATIONS, YOUR

10   HONOR.  AND, YOUR HONOR, VERY HONESTLY, WHEN I -- THE WORD

11   "ALL" TO ME IS ALL.

12             AND WHEN YOU DO DISCOVERY AND YOU SAY, WE WANT ALL

13   NOTICES OF TERMINATION, THAT'S NOT ALL NOTICES, MINUS

14   ADSENSE, MINUS GOOGLE GROUPS, MINUS BLOGGER, MINUS PAGE &

15   PIER.  THAT'S ALL.

16             MS. KASSABIAN:  AND, YOUR HONOR --

17             DR. ZADA:  AND WE HAVE STRUGGLED.  WE HAVE HAD

18   THREE MOTIONS, YOUR HONOR.  WE FIRST FILED OUR DISCOVERY

19   APRIL 18TH, '05.  THEY SAID THEY PRODUCED RESPONSIVE

20   DOCUMENTS.  THEY PRODUCED NOTHING.

21             THEN WE GO IN FOR A MOTION TO COMPEL.  YOU ORDERED

22   REQUEST 51.  IT CLEARLY SAYS, ALL INTELLECTUAL NOTICES --

23   VIOLATIONS.  IT DOESN'T SAY NOT BLOGGER.  WE DON'T EVEN KNOW

24   WHAT BLOGGER IS.  THAT'S THE PURPOSE OF DISCOVERY.

25             THE PURPOSE OF DISCOVERY IS TO FIND OUT ABOUT

1    BLOGGER.  I'M NOT PSYCHIC.  I CAN'T MAKE A DISCOVERY MOTION

2    ABOUT BLOGGER IF I DON'T KNOW THAT BLOGGER EXISTS.  I HAVE TO

3    MAKE A MOTION ABOUT ALL.  AND ALL IS ALL.  AND IT COVERS ALL

4    TERMINATION NOTICES.  WE DIDN'T GET THAT.

5            WE WANT AN OPPORTUNITY TO SHOW THAT THEY DIDN'T

6    PRODUCE -- THEY PRODUCED LIKE 1 PERCENT OF THE TERMINATION

7    NOTICES, YOUR HONOR.  SHE MAKES THIS STATEMENT, IT MAKES IT

8    SEEM LIKE THEY PRODUCED ALL OF THEM.  THEY PRODUCED 12.

9            MS. KASSABIAN:  AND, YOUR HONOR, I AGAIN OBJECT AND

10   ASK THAT PERFECT 10 BE -- APPEAR THROUGH ITS COUNSEL AT THIS

11   HEARING.

12           THE COURT:  THE COURT JUST HAS ONE MORE QUESTION,

13   AND THEN WE'RE DONE.  AND YOU'LL PROBABLY TELL ME TEN

14   DIFFERENT TIMES.

15           WHY WEREN'T BLOGGER DOCUMENTS PART OF THE ORDER

16   REGARDING REQUEST 51 EVEN BEFORE BLOGGER CAME INTO THE CASE?

17           MS. KASSABIAN:  BECAUSE THERE WERE NO BLOGGER

18   CLAIMS IN THE CASE AT THE TIME.  THEY DIDN'T REQUEST BLOGGER

19   DOCUMENTS AND THE ORDER DOESN'T REQUIRE --

20           THE COURT:  BUT THE REQUEST WAS FOR ALL -- WHAT WAS

21   THE REQUEST, AGAIN?

22           MS. KASSABIAN:  NO, IT WASN'T.  THE REQUEST WAS FOR

23   A DMCA LOG, RIGHT?  THAT'S 51?

24           DR. ZADA:  WHICH THEY DIDN'T GIVE US.

25           MS. KASSABIAN:  AND -- AND --

1              THE COURT:  AND THERE WERE --

2              MS. KASSABIAN:  AND THEN --

3              THE COURT:  -- BLOGGER DOCUMENTS PRODUCED.

4              MS. KASSABIAN:  NO.  NO.  THE REQUEST WAS FOR A

5    DMCA LOG AND IN RESPONSE -- OR DOCUMENTS THAT --

6              THE COURT:  MM-HMM.

7              MS. KASSABIAN:  -- YOU KNOW, SUFFICIENT TO SHOW

8    DMCA LOG INFORMATION.

9              AND GOOGLE SAID, WE WILL PRODUCE NOTICES INSTEAD

10   AND PRODUCED THE NOTICES THAT WERE IMPLICATED BY THE SCOPE OF

11   THE CASE AT THAT TIME.

12             MR. MAUSNER:  AND THEY SAID ALL, ALL NOTICES.

13             "ALL THE INTELLECTUAL PROPERTY NOTICES HAVE

14             BEEN PRODUCED."

15             THAT'S WHAT THEY SAID.

16             THE COURT:  OKAY.  AND --

17             MS. KASSABIAN:  YOUR HONOR, THERE ARE 25 -- I THINK

18   GOOGLE SERVICES -- THERE ARE A DOZEN OR TWO GOOGLE SERVICES

19   THAT HAVE DMCA PROCEDURES.  THERE'S ABSOLUTELY NO REASON TO

20   ENGAGE IN DISCOVERY ABOUT SERVICES THAT HAPPEN TO BE OPERATED

21   OR OWNED BY GOOGLE THAT AREN'T IMPLICATED BY THIS CASE.

22             IF PERFECT 10 HAD ASKED FOR DISCOVERY ABOUT A

23   SERVICE THAT HAD NOTHING TO DO WITH ITS COMPLAINTS, WE

24   PROBABLY WOULD HAVE REJECTED AS IRRELEVANT.  BUT FOR ALL THE

25   DISCOVERY REQUESTS THAT THEY'VE PROPOUNDED THAT HAD TO DO

1   WITH SERVICES AT ISSUE IN THE CASE, GOOGLE HAS PRODUCED THAT

2   INFORMATION.

3           IF THEY WANTED BLOGGER LOGS OR BLOGGER NOTICES, WHY

4   DIDN'T THEY JUST ASK.  WHY DIDN'T THEY --

5           DR. ZADA:  BECAUSE WE DIDN'T KNOW THEY EXISTED.

6           MS. KASSABIAN:  SIR, IF I CAN FINISH.

7           WHY DIDN'T THEY JUST SERVE A REQUEST.  WHY ARE THEY

8   TRYING TO SHOEHORN A 2006 ORDER INTO SOMETHING THAT IT'S NOT,

9   AN ORDER ON CLAIMS THAT WEREN'T EVEN IN THE CASE AT THAT

10  TIME.  I MEAN, THAT WOULD REQUIRE PSYCHIC ABILITIES ON

11  GOOGLE'S BEHALF TO KNOW THAT IT WAS OBLIGED TO PRODUCE

12  DOCUMENTS REGARDING VARIOUS SERVICES THAT IT OFFERED THAT AT

13  THE TIME WERE NOT IN THE CASE.

14          MR. MAUSNER:  YOUR HONOR --

15          MS. KASSABIAN:  THERE ARE OTHER SERVICES AS WELL

16  THAT ARE NOT CURRENTLY IMPLICATED.  WE'RE NOT OBLIGED TO

17  PRODUCE THOSE DOCUMENTS EITHER AND CERTAINLY NOT OBLIGED TO

18  PRODUCE DOCUMENTS THAT HAVEN'T BEEN REQUESTED.

19          AND ONE MORE POINT, YOUR HONOR, I WANT TO MAKE

20  CLEAR.  REQUEST 51 CALLED FOR A LOG.  GOOGLE HAS PRODUCED ITS

21  BLOGGER LOG.  THERE IS NO PREJUDICE HERE WHATSOEVER.

22          EVEN IF PERFECT 10 IS RIGHT, AND IT'S NOT, THE MAY

23  2008 ORDER THAT SAID, GOOGLE MUST PRODUCE ITS DMCA LOG

24  APPLIED TO BLOGGER.  EVEN THOUGH BLOGGER WASN'T IN THE CASE.

25  EVEN THOUGH GOOGLE HAD NO NOTICE THAT THAT'S WHAT PERFECT 10

1    THOUGHT THAT THAT REQUEST MEANT.

2              GOOGLE PRODUCED ITS BLOGGER LOG IN AUGUST, A COUPLE

3    OF MONTHS LATER AND ONLY ONE MONTH AFTER PERFECT 10 WAS

4    GRANTED LEAVE TO ADD ITS BLOGGER CLAIMS AND BEFORE PERFECT 10

5    EVEN REQUESTED IT.  THERE'S BEEN NO DISCOVERY ORDER VIOLATION

6    HERE.

7              THE COURT:  I JUST, YOU KNOW -- I GET CONCERNED

8    BECAUSE I DON'T -- I REALLY WANT --

9              MS. KASSABIAN:  BUT THEY'VE GOT IT, YOUR HONOR.

10             THE COURT:  NO, I KNOW.

11             MS. KASSABIAN:  THEY'VE GOT THE LOG.

12             THE COURT:  NO, NO, I'M JUST -- I WANT TO MAKE SURE

13   THAT I FEEL THE RESULT IS FAIR, THE RESULTS ON THESE

14   REMAINING TWO MOTIONS ARE FAIR.

15             IT'S JUST INCONCEIVABLE FROM WHAT I KNOW ABOUT THE

16   CASE THAT PRIOR TO BLOGGER BEING FORMALLY ADDED TO THE CASE,

17   THAT GOOGLE WAS ON ANY KIND OF NOTICE THAT ANYTHING OTHER

18   THAN GOOGLE'S SEARCH WAS THE NATURE OF THE CASE.

19             MS. KASSABIAN:  THAT IS EXACTLY RIGHT, YOUR HONOR.

20             MR. MAUSNER:  IT WAS GOOGLE'S --

21             MS. KASSABIAN:  YOU ARE EXACTLY RIGHT.  AND THAT'S

22   THE END OF IT.  THAT IS THE EXACT ARGUMENT THAT WE'VE

23   PRESENTED IN THESE BRIEFS, AND YOU'VE GOT IT RIGHT.

24             MR. MAUSNER:  OKAY.  GOOGLE'S SEARCH INCLUDES

25   BLOGGER WEBSITES.  EVERY BLOGGER WEBSITE IS INCLUDED IN

1    GOOGLE'S SEARCH INDEX.  AND EVERY TIME YOU DO A SEARCH THAT

2    HAS A TERM LIKE THE NAME OF A PERFECT 10 MODEL THAT'S ON THE

3    BLOGGER SITE, IT WILL TURN UP IN THE SEARCH THAT YOU DO --

4    YOU KNOW, JUST AS ANY OTHER WEBSITE DOES -- IN THE SEARCH

5    RESULTS.  YOU CLICK ON IT, AND IT TAKES YOU TO THE INFRINGING

6    IMAGE.  OKAY?

7            WHAT WAS I GOING TO SAY.

8            MS. KASSABIAN:  THAT'S ACTUALLY INCORRECT.  THAT'S

9    NOT HOW BLOGGER WORKS.  IT'S NOT AUTOMATIC THAT ALL BLOGGER

10   URLS ARE INCLUDED IN SEARCH.  SO JUST AS A PRELIMINARY MATTER

11   THAT'S FALSE.

12           BUT THE POINT IS --

13           MR. MAUSNER:  WELL, WHAT YOU SAID IS THAT BLOGGER

14   URLS ARE INCLUDED IN SEARCH.

15           MS. KASSABIAN:  SEARCH IS THE SERVICE THAT WAS AT

16   ISSUE AT THE TIME THAT ORDER CAME OUT AND GOOGLE PRODUCED ITS

17   NOTICES REGARDING SEARCH.

18           THE COURT:  AND THAT WAS THE ISSUE THAT WENT TO THE

19   CIRCUIT.  AND THAT WAS THE ONLY ISSUE THAT WENT TO THE

20   CIRCUIT.

21           MS. KASSABIAN:  THAT'S RIGHT, YOUR HONOR.  THIS IS

22   A GIANT WASTE OF TIME.  THERE'S NO BEAR THERE.

23           DR. ZADA:  YOUR HONOR, SEARCH HAS GOOGLE GROUPS.

24   IT HAS BLOGGER.  IT HAS NOW GOOGLE SITES.  IT HAS MANY OTHER

25   DIFFERENT GOOGLE FUNCTIONS.

1           WHEN WE STARTED THIS CASE IN 2005, IF YOU WENT TO

2     THEIR DMCA PAGE, THEY HAD ONE AGENT.  AND THERE WERE ONLY TWO

3     TYPES OF SEARCH -- THERE WERE ONLY TWO OPTIONS, WEB SEARCH

4     AND GOOGLE GROUPS.  BLOGGER WAS NOT EVEN MENTIONED IN THEIR

5     DMCA PAGE.

6           YOU COULDN'T SEND A BLOGGER NOTICE, AND WE DIDN'T

7     KNOW ABOUT BLOGGER IN 2005.  WE DID SEND SOME DMCA NOTICES

8     REGARDING INFRINGEMENTS ON BLOGGER WEBSITES, BUT WE HAD NO

9     WAY OF KNOWING THAT GOOGLE HOSTED THEM.

10          AND I THINK IT'S VERY RELEVANT IN THIS CASE THAT AS

11    LONG AS THEY LINK TO THE SITE, THAT WAS PART OF THE CASE.

12    THEY HAD BEEN LINKING TO BLOGGER SITES AND GOOGLE GROUP SITES

13    AND ALL OF THESE OTHER SITES SINCE THE BEGINNING OF THE CASE.

14          AND MY UNDERSTANDING ABOUT DISCOVERY IS, THE

15    PURPOSE OF DISCOVERY IS WHEN YOU DON'T KNOW SOMETHING, YOU

16    ASK TO GIVE ALL NOTICES.  AND WHEN YOU ASK FOR ALL NOTICES

17    AND ALL TERMINATION NOTICES, YOU'RE SUPPOSED TO GET ALL

18    NOTICES.  YOU'RE NOT SUPPOSED TO GET JUST THE ONES WE WANT TO

19    GIVE YOU.

20          AND, FURTHERMORE, IF YOU DON'T KNOW ABOUT BLOGGER,

21    HOW ARE YOU GOING TO FIND OUT ABOUT BLOGGER UNLESS YOU ASK

22    FOR ALL NOTICES.  THAT'S HOW YOU FIND OUT ABOUT BLOGGER.

23          AND THAT'S THE PROBLEM.  WE DID WHAT WE COULD DO AT

24    THE TIME.  WE ASKED FOR ALL NOTICES, AND THEY HAD AN

25    OBLIGATION TO PROVIDE ALL NOTICES TO US.  AND THEY DIDN'T DO

1   THAT.

2           NOT ONLY DID THEY NOT DO BLOGGER, YOUR HONOR, THEY

3   DIDN'T DO ADSENSE.  AND WE'VE ALREADY SHOWN EVIDENCE THERE'S

4   A LOT OF OTHER NOTICES.  AND I DON'T CONSIDER 200,000 URLS

5   AND 1,500 NOTICES FROM THE R.I.A.A. TO BE A MINOR

6   TECHNICALITY.

7           IF THEY ARE SAYING -- REPRESENTING, MS. POOVALA

8   SAID THE BLOGGER SHEETS COVER BASICALLY THE LIST.  NO, IT

9   WASN'T A COMPLETE LIST.  IT HAD 19,000 URLS, BUT GUESS WHAT,

10  IT WAS MISSING 200,000 URLS FROM THE R.I.A.A.  AND IT WAS

11  MISSING URLS FROM THE M.P.A.A.

12          AND IF WE HAD OPPOSED THEIR MOTION AND INSTEAD OF

13  SAYING TO JUDGE MATZ, THERE'S 19,000 URLS, IF WE SAID, JUDGE

14  MATZ, THERE'S 500,000 URLS, THAT MIGHT HAVE HAD A DIFFERENT

15  OUTCOME HERE BECAUSE THEN THE INFRINGEMENT IS SO MASSIVE ON

16  THEIR SYSTEM, THAT THEY MIGHT HAVE BEEN HELD TO A DIFFERENT

17  STANDARD.

18          THE PROBLEM WAS, WE ASKED THE RIGHT QUESTIONS.  WE

19  ASKED FOR ALL.  WE WERE ORDERED ALL.  WE WERE ORDERED ALL

20  AGAIN.  THEY REPRESENTED THEY PRODUCED ALL, ALL INTELLECTUAL

21  PROPERTY NOTICES.

22          AND, REMEMBER, ALSO THEY HAVE ONE DMCA AGENT.  ONE

23  DMCA AGENT IS GETTING ALL OF THESE NOTICES.  SO, THEY DON'T

24  HAVE A SEPARATE DMCA AGENT FOR BLOGGER.

25          SO, WHEN WE ASKED FOR ALL NOTICES, WE ASSUMED IT

1    WAS ALL THE NOTICES THEIR DMCA AGENT GOT, AND IT INCLUDED

2    BLOGGER, AND BLOGGER WAS IN THE CASE FROM THE VERY BEGINNING

3    BECAUSE IT WAS PART OF THEIR SEARCH RESULTS.  GOOGLE GROUPS

4    IS IN THE CASE SINCE THE VERY BEGINNING.

5         THE ONLY REASON WE AMENDED TO INCLUDE BLOGGER FOR

6    HOSTING, YOUR HONOR, WAS BECAUSE WE WANTED TO MAKE SURE THAT

7    WE HAD THE HOSTING FUNCTION COVERED ALSO.  THE SEARCH

8    FUNCTION WAS ALWAYS COVERED IN THE CASE.  AND BLOGGER WAS

9    ALWAYS IN THE CASE.  AND IT'S CERTAINLY PART OF ALL.

10        MS. KASSABIAN:  I'M GOING TO SAY IT ONE MORE TIME,

11   YOUR HONOR.  PERFECT 10 HAS NEVER SERVED A REQUEST FOR ANY

12   DMCA NOTICES, BLOGGER OR OTHERWISE.

13        I KNOW DR. ZADA, IF HE SCREAMS IT LOUD ENOUGH,

14   HE'LL MAKE IT TRUE, IS WHAT HE THINKS.  BUT THAT'S JUST NOT

15   TRUE.

16        DR. ZADA:  WELL, IT --

17        MS. KASSABIAN:  THEY NEVER SERVED A SINGLE REQUEST

18   NOR A --

19        MR. JANSEN:  YOUR HONOR, I'D LIKE --

20        MR. MAUSNER:  WE WERE AFTER THE LOG --

21        MS. KASSABIAN:  IF I CAN FINISH -- MR. MAUSNER, MAY

22   I FINISH?

23        THE COURT:  LET HER FINISH.  LET HER FINISH.  AND

24   WE'RE GOING TO BE DONE IN TWO MINUTES.  GO AHEAD.

25        MS. KASSABIAN:  THEY HAVE NEVER SERVED A SINGLE

1    DOCUMENT REQUEST ASKING FOR DMCA NOTICES NOR HAS AN ORDER

2    ISSUED TO THAT EFFECT ON BLOGGER OR OTHERWISE -- BUT,

3    CERTAINLY, AS TO BLOGGER, SINCE THEY'VE NEVER REQUESTED ANY

4    DISCOVERY ON BLOGGER UNTIL SEPTEMBER OF 2009.

5         AND YOUR HONOR IS RIGHT THAT ORDERS ISSUED BEFORE

6    THE COMPLAINT WAS AMENDED TO ADD BLOGGER CLAIMS CANNOT

7    POSSIBLY HAVE APPLIED TO SERVICES THAT WEREN'T AT ISSUE, THAT

8    PERFECT 10 TOLD JUDGE MATZ IT WAS UNAWARE OF AT THE TIME

9    THOSE ORDERS CAME OUT.

10        MR. JANSEN:  YOUR HONOR, I JUST THINK THAT -- I DO

11   THINK THAT IN FAIRNESS TO THE DEFENDANTS AT GOOGLE AS WELL AS

12   AMAZON IN THE FUTURE THAT THE WAY THE PLAINTIFF'S CASE HAS

13   MORPHED SINCE IT WAS FILED, IN LIGHT OF THE DISTRICT COURT'S

14   RULING ON THE PRELIMINARY INJUNCTION AND THEN THE NINTH

15   CIRCUIT BASICALLY REJECTING THE PLAINTIFF'S THEORY OF -- YOU

16   KNOW, BASICALLY ACCEPTING A FAIR-USE DEFENSE.  THEN THE

17   PLAINTIFF'S CASE HAS MORPHED SINCE THAT RULING CAME DOWN FROM

18   THE NINTH CIRCUIT TO ENCOMPASS OTHER KINDS OF ACTIVITY.  SO,

19   THE CASE HAS TOTALLY MORPHED.

20        IF YOU LOOK AT THE ORIGINAL COMPLAINTS, THEY WERE

21   FOCUSED EXCLUSIVELY ON SO-CALLED IMAGE SEARCH RESULTS AND THE

22   THUMBNAILS THAT IT CAME UP IN THOSE SEARCHES.

23        NOW, SINCE THE DISTRICT COURT REJECTED THOSE

24   THEORIES, AND THE NINTH CIRCUIT SAID THIS IS COMPLETELY A

25   FAIR USE TO BRING UP THESE, YOU KNOW, TO SHOW THESE, TO LINK

1    TO THESE SMALL, REDUCED SIZED IMAGES, THE PLAINTIFF'S CASE

2    HAS TOTALLY MORPHED.  THEY'VE COME UP WITH NEW THEORIES.  AND

3    I THINK IT'S JUST FUNDAMENTALLY UNFAIR TO TRY AND

4    RETROACTIVELY APPLY ALL DISCOVERY REQUESTS THAT WERE ISSUED

5    UNDER THE OLD THEORIES AND PRIOR DISCOVERY ORDERS TO THE NEW

6    THEORIES THE PLAINTIFFS HAVE HAD TO TRY AND COME UP WITH TO

7    DEAL WITH THE NINTH CIRCUIT'S RULING.

8            MR. MAUSNER:  YOU DON'T EVEN HAVE THE CHRONOLOGY

9    RIGHT BECAUSE JUDGE MATZ'S ORDER WAS AFTER THE NINTH CIRCUIT.

10           BUT BLOGGER HAS -- BLOGGER'S ALWAYS BEEN PART OF

11   THE CASE AS FAR SEARCH IS CONCERNED.  AND THESE THINGS SHOULD

12   -- SOME OF THEM WERE, IN FACT, TURNED OVER.  HOW CAN YOU

13   SAY, WELL, SOME OF THESE IT WAS RIGHT TO TURN OVER.

14           AND THEY SAY TWICE WE'VE GIVEN YOU ALL.  THEY GAVE

15   US SOME.  THEN THEY SAY, WE'VE GIVEN YOU ALL NOTICES.  AND

16   THEN THEY SAY, WELL, WE DIDN'T HAVE TO GIVE YOU THE OTHER

17   ONES EVEN THOUGH WE SAID WE GAVE THEM -- GAVE THEM ALL, AND

18   WE GAVE YOU SOME.  I MEAN, HOW COULD YOU NOT BE MISLED BY

19   THAT.

20           I MEAN, IT'S JUST -- WE THOUGHT THEY GAVE US ALL.

21   THERE WERE SOME OF THEM THERE.  AND THEN IT TURNS OUT THEY

22   DIDN'T.

23           AND WE'VE BEEN PREJUDICED BECAUSE WE COULDN'T USE

24   THE OTHER ONES THAT WE ALL KNOW EXIST AND WE ONLY FOUND OUT

25   VERY RECENTLY IN THEIR OPPOSITION TO THE SUMMARY JUDGMENT.

1    AND THEY'RE GETTING AWAY WITH TOTALLY MISLEADING US ON THIS.

2            MS. KASSABIAN:  YOUR HONOR, CAN I JUST REMIND THE

3    COURT THAT IN JULY OF 2009 PERFECT 10 FILED A MOTION FOR

4    SUMMARY JUDGMENT REGARDING BLOGGER AGAINST GOOGLE.  THAT

5    MOTION IS ON FILE WITH THE COURT RIGHT NOW.

6            THE COURT:  I DIDN'T KNOW THAT.

7            MS. KASSABIAN:  IF PERFECT 10 NEEDED DISCOVERY, WHY

8    WOULD IT HAVE FILED A MOTION FOR SUMMARY JUDGMENT, TELLING

9    THE COURT, YOU KNOW WHAT, WE HAVE WHAT WE NEED.  WE THINK

10   WE'RE ENTITLED TO JUDGMENT AS A MATTER OF LAW BASED ON THE

11   RECORD.  PLEASE RULE ON OUR MOTION.  THAT'S WHAT THEY SAID.

12   AND THERE'S ABUNDANT CASE LAW THAT SAYS THAT'S DISPOSITIVE.

13           MR. MAUSNER:  OKAY.  THAT EXACTLY PROVES OUR POINT.

14   WE THOUGHT AT THE TIME WE FILED THAT MOTION THAT WE DO HAVE

15   ALL OF THE NOTICES AND EVERY DOCUMENT THAT THEY SAID THAT

16   THEY PRODUCED AND THAT THEY WERE ORDERED TO PRODUCE.  THAT'S

17   WHY WE WENT THROUGH WITH THE SUMMARY JUDGMENT MOTION.

18           MS. KASSABIAN:  WELL, YOU SAID THAT YOU SUBMITTED

19   THOSE DOCUMENTS WITH YOUR -- WITH YOUR MOTION FOR SUMMARY

20   JUDGMENT ON BLOGGER?

21           MR. MAUSNER:  YES, WE SUBMITTED -- WE SUBMITTED

22   WHAT WE HAD BECAUSE THAT'S ALL WE HAD.  WE COULD MAKE A

23   STRONGER MOTION AND WE CAN MAKE A STRONGER OPPOSITION IF WE

24   HAD EVERYTHING.  WE THOUGHT WE HAD IT UNTIL VERY RECENTLY

25   BECAUSE THEY MISLED US.

```
 1                THE COURT:  BUT --

 2                MS. KASSABIAN:  THAT'S UTTERLY FALSE, YOUR HONOR.

 3     WHEN A PARTY FILES FOR SUMMARY JUDGMENT, IT'S TELLING THE

 4     COURT, WE HAVE WHAT WE NEED.  WE'RE ENTITLED TO JUDGMENT AS A

 5     MATTER OF LAW.

 6                THE COURT:  WE'RE DONE FOR TODAY.

 7                MS. KASSABIAN:  THANK YOU, YOUR HONOR.

 8                MR. MAUSNER:  THANK YOU, YOUR HONOR.

 9                MR. JANSEN:  THANK YOU, YOUR HONOR.

10                THE CLERK:  COURT IS ADJOURNED.

11                (PROCEEDINGS ADJOURNED 1:51 P.M.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2                      C E R T I F I C A T E

3

4          I CERTIFY THAT THE FOREGOING IS A CORRECT

5    TRANSCRIPT FROM THE ELECTRONIC SOUND RECORDING OF THE

6    PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

7

8

9    DOROTHY BABYKIN                    2/20/10

10   _____     _____

11   FEDERALLY CERTIFIED TRANSCRIBER       DATED

12   DOROTHY BABYKIN

13

14

15

16

17

18

19

20

21

22

23

24

25