# Exhibit K

Dockets.Justia.com

# LAW OFFICES OF
# JEFFREY N. MAUSNER

Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
Telephone (818) 992-7500
E-mail: jeff@mausnerlaw.com

June 3, 2009

*VIA EMAIL*

Rachel Kassabian, Esq.
Quinn Emanuel
555 Twin Dolphin Dr. Suite 560
Redwood Shores, California 94065

Re:   Perfect 10 v. Google – Discovery Issues

Dear Rachel:

Google redacted material from hundreds of documents it produced, including, without limitation, emails, letters, and charts. Google has not explained why it made any of the redactions. We are attaching 23 examples of documents that contain such redactions. Please explain what material Google redacted and the basis for the redactions.

On a different topic, Google stated that it would produce various documents in response to certain interrogatory requests, but it is not clear whether Google has produced the documents and, if it did produce the documents, Google has not identified them. *See* Google Inc.'s Response To Perfect 10's Revised Interrogatories. In response to interrogatory no. 26 (formerly no. 9), no. 32 (formerly no. 12), and no 33 (formerly no. 13), Google stated that "[p]ursuant to Fed. R. Civ. P. 33(d), Google will further respond to this interrogatory by producing documents sufficient to reflect which URLs Google has suppressed from appearing in search results in response to notices of alleged infringement received from Plaintiff." Please confirm whether or not Google has produced the documents it said it would produce. If Google alleges that it has produced such documents, please identify them by bates-number, explaining which bates numbered documents relate to which notices of infringement, by date. In particular, please identify by bates number, which documents Google produced which reflect a) URLs Google has suppressed in response to Perfect 10's June 28, 2007 notice, and b) which URLs Google has suppressed in response to Perfect 10's July 2, 2007 notice, and any subsequent notices.

In response to no. 34 (formerly no. 17), Google stated that "[p]ursuant to Fed. R. Civ. P. 33(d), and pursuant to agreement of counsel, Google will respond to this interrogatory by producing documents sufficient to reflect which entities Google has terminated as a consequence of notices sent by Perfect 10, and, where available, the nature of the termination, and the date of such termination." Please confirm whether or not Google has produced the documents it said it would produce. If Google alleges that it has produced such documents, please identify them by bates-number.

Rachel Kassabian, Esq.
June 3, 2009
Page 2

Please provide the requested information by Friday June 5, 2009.

Your anticipated courtesy and cooperation is appreciated.

Very truly yours,

*Valerie Kincaid (BD)*

Valerie Kincaid

Encls.

**From:**       Valerie Kincaid [valeriekincaid@yahoo.com]
**Sent:**       Thursday, June 11, 2009 11:01 AM
**To:**         Rachel Herrick Kassabian
**Cc:**         Jeff Mausner
**Subject:**    Re: Perfect 10 v. Google

Rachel,


We asked Google to provide the requested information by Friday June 5, 2009, but we have not received a response.  Please respond.


Thanks, Valerie


Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:**  rittany  ouglass  brittany@mausnerla .com
**To:** Rachel Herrick Kassabian   rachelkassabian@ uinnemanuel.com
**Cc:** Valerie Kincaid   Valeriekincaid@yahoo.com  ; Jeff Mausner   eff@mausnerla .com
**Sent:** Wednesday, June 3, 2009 2:27:29 PM
**Subject:** Perfect 10 v. Google

Good afternoon Ms. Kassabian.  Please see the attached correspondence from Valerie Kincaid and the corresponding enclosures.  Thank you.

Sincerely,
Brittany Douglass
Assistant to Jeffrey N. Mausner


This e-mail may be confidential or may contain information which is protected by the attorney-client privilege and work product doctrine, as well as other privileges.  If you are not the intended recipient of this e-mail, any dissemination or copying of this message is strictly prohibited.  Anyone who mistakenly receives this e-mail should notify the sender immediately by telephone or return e-mail and delete it from his or her computer.

Brittany Douglass
Law Offices of Jeffrey N. Mausner
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367
T 818.992.7500
F 818.716.2773
brittany@mausnerlaw.com

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL: (650) 801-5000 FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S INTERNET ADDRESS
**rachelkassabian@quinnemanuel.com**

June 16, 2009

<u>VIA E-MAIL AND U.S. MAIL</u>

Valerie Kincaid
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
Email: valeriekincaid@yahoo.com

Re:    <u>Perfect 10, Inc. v. Google Inc. – Discovery Issues</u>

Dear Valerie:

I write in response to your June 3, 2009 letter regarding (1) Google's redactions in its document production and (2) Google's responses to certain of Perfect 10's Interrogatories.

First, the redactions at GGL 005618 and GGL 053399 and some of the redactions at GGL 032695 were made to remove information not relevant or responsive to Perfect 10's Requests for Production. The remainder of the redactions in the examples attached to your letter pertained to privileged attorney-client communications and/or attorney work product material.

Second, regarding your request that Google confirm that it has produced documents in response to Perfect 10's Interrogatory Nos. 26, 32, 33 and 34 pursuant to <u>Rule</u> 33(d), Google has indeed produced documents responsive to those interrogatories. As for your request that Google identify by bates number the specific pages produced in response to each of these interrogatories, you will recall that Google has requested that same information from Perfect 10, but Perfect 10 has refused, necessitating motion practice. *See* Google's Motion to Compel Further Responses to Interrogatory Nos. 3 and 11, at pp. 40-49, 51 (currently pending before the Court). The Court has already made clear that both parties will be subject to the same discovery obligations in this litigation. *See, e.g.,* Transcript of April 14, 2008 Hearing before Judge Matz, at 13 ("any ruling I would make of this type would have to be reciprocal and equally reciprocal"). Please let us know whether Perfect 10 will agree to assign unique control numbers to each page of its document production and provide the

quinn emanuel urquhart oliver & hedges, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois 60606-6301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG ,United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561 1711 FAX +81 3 5561-1712

same information it now seeks from Google – namely, the identification of specific control numbers at which documents responsive to Google's interrogatories (including Interrogatory Nos. 3 and 11) may be found. Unless and until Perfect 10 is willing to provide this information itself, on a reciprocal basis, Perfect 10's request to Google is both inconsistent with its other positions and inappropriate.

I look forward to hearing from you.

Very truly yours,

Rachel Herrick Kassabian

Rachel Herrick Kassabian

2

**From:** Valerie Kincaid [valeriekincaid@yahoo.com]
**Sent:** Wednesday, July 01, 2009 4:16 PM
**To:** Rachel Kassabian
**Cc:** Jeff Mausner
**Subject:** Re: Perfect 10 v. Google

Rachel,

We received your response to my letter.

For all redacted pages, not just the examples, Google must identify by bates-number (1) the material Google redacted based on a claim of attorney-client privilege or work product; versus (2) the material Google redacted based on a claim that the material is "irrelevant," and "non-responsive." Furthermore, Google cannot state that material is "irrelevant," and "non-responsive" and state nothing more.

Google claims that GCL 053399.TIF is redacted because the material is purportedly "irrelevant," and "non-responsive." All of the material on GCL 053399.TIF is redacted. If **all** of the material on the entire the page were in fact "non-responsive," then why was the page produced? The production of GCL 053399.TIF indicates that it contained responsive material. Moreover, GCL 053399.TIF is stamped CONFIDENTIAL. How can a blank page possibly be characterized as confidential?

Google claims that GCL 032695.TIF is redacted because "some" of the redacted material is purportedly "irrelevant," and "non-responsive." Snippets of material are redacted. First, Google claims that certain unidentified snippets are "irrelevant," and "non-responsive" -- Google is refusing to state the basis upon which it redacted other, unidentified material. Google must identify which snippets were redacted because the material is purportedly "non-responsive," and "irrelevant," and the basis, if any, for redacting the remaining snippets.
(Furthermore, it seems highly unlikely that snippets of material are "non-responsive," and "irrelevant.") Also, Google must explicitly state why material is purportedly "irrelevant," and "non-responsive."

Perfect 10 cannot evaluate the validity Google's redactions unless Google identifies the material redacted based upon Google's contention that the material is "irrelevant," and "non-responsive," and explicitly states why the material is purportedly "irrelevant" and "non-responsive." Please inform us if Google is willing to identify by bates-number the material that is purportedly "irrelevant," and "non-responsive" and if Google is willing to explicitly state why material is purportedly "irrelevant" and "non-responsive."

With regard to Google's responses to interrogatories, please let us know when you are available for a telephonic meet and confer, since Perfect 10 disagrees with Google's position. First, Google failed to even confirm whether it produced the documents Google said it would produce. Second, Google must make the requested identification. The situation here is not analogous to Google's interrogatory requests (nos. 3 and 11) directed to Perfect 10. The Court has deemed those interrogatories are mega interrogatories and explicitly determined that Perfect 10 is not obligated to make the identification Google requests -- therefore, Google's attempt to draw an analogy is entirely unpersuasive.

We look forward to hearing from you soon.

Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

**From:**      Valerie Kincaid [valeriekincaid@yahoo.com]
**Sent:**      Wednesday, July 15, 2009 9:48 AM
**To:**        Rachel Kassabian
**Cc:**        Jeff Mausner
**Subject:**   Re: Perfect 10 v. Google

Rachel,

By the close of business tomorrow, please respond to the correspondence below, and let us know when you are available for the requested meet and confer.

Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** Valerie Kincaid    valeriekincaid@yahoo.com
**To:** Rachel Kassabian    rachelkassabian@  uinnemanuel.com
**Cc:** Jeff Mausner    eff@mausnerla  .com
**Sent:** Wednesday, July 1, 2009 4:16:12 PM
**Subject:** Re: Perfect 10 v. Google

Rachel,

We received your response to my letter.

For all redacted pages, not just the examples, Google must identify by bates-number (1) the material Google redacted based on a claim of attorney-client privilege or work product; versus (2) the material Google redacted based on a claim that the material is "irrelevant," and "non-responsive." Furthermore, Google cannot state that material is "irrelevant," and "non-responsive" and state nothing more.

Google claims that GCL 053399.TIF is redacted because the material is purportedly "irrelevant," and "non-responsive." All of the material on GCL 053399.TIF is redacted. If **all** of the material on the entire the page were in fact "non-responsive," then why was the page produced? The production of GCL 053399.TIF indicates that it contained responsive material. Moreover,  GCL 053399.TIF is stamped CONFIDENTIAL. How can a blank page possibly be characterized as confidential?

Google claims that GCL 032695.TIF is redacted because "some" of the redacted material is purportedly "irrelevant," and "non-responsive." Snippets of material are redacted. First, Google claims that certain unidentified snippets are "irrelevant," and "non-responsive" -- Google is refusing to state the basis upon which it redacted other, unidentified material. Google must identify which snippets were redacted because the material is purportedly "non-responsive," and "irrelevant," and the basis, if any, for redacting the remaining snippets.

Exh. K, Page 7

(Furthermore, it seems highly unlikely that snippets of material are "non-responsive," and "irrelevant.") Also, Google must explicitly state why material is purportedly "irrelevant," and "non-responsive."

Perfect 10 cannot evaluate the validity Google's redactions unless Google identifies the material redacted based upon Google's contention that the material is "irrelevant," and "non-responsive," and explicitly states why the material is purportedly "irrelevant" and "non-responsive." Please inform us if Google is willing to identify by bates-number the material that is purportedly "irrelevant," and "non-responsive" and if Google is willing to explicitly state why material is purportedly "irrelevant" and "non-responsive."

With regard to Google's responses to interrogatories, please let us know when you are available for a telephonic meet and confer, since Perfect 10 disagrees with Google's position. First, Google failed to even confirm whether it produced the documents Google said it would produce. Second, Google must make the requested identification. The situation here is not analogous to Google's interrogatory requests (nos.. 3 and 11) directed to Perfect 10. The Court has deemed those interrogatories are mega interrogatories and explicitly determined that Perfect 10 is not obligated to make the identification Google requests -- therefore, Google's attempt to draw an analogy is entirely unpersuasive.

We look forward to hearing from you soon.

Valerie

Valerie Kincaid
valeriekincaid@yahoo.com

---

**From:** rad R. ove  bradlove@ uinnemanuel.com
**To:** valeriekincaid@yahoo.com   valeriekincaid@yahoo.com
**Cc:** Rachel Herrick Kassabian   rachelkassabian@ uinnemanuel.com
**Sent:** Tuesday, June 16, 2009 1:03:13 PM
**Subject:** Perfect 10 v. Google

Valerie,

Please see the attached letter.

Thanks,


Brad Love
Quinn Emanuel Urquhart Oliver & Hedges, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Direct: (415) 875-6330
Main Phone: (415) 875-6600
Main Fax: (415) 875-6700
E-mail:  bradlove@quinnemanuel.com
Web: www.quinnemanuel.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Exh. K, Page 8

**quinn emanuel** trial lawyers | silicon valley

555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065-2139 | TEL: (650) 801-5000 FAX: (650) 801-5100

WRITER'S DIRECT DIAL NO.
**(650) 801-5005**

WRITER'S INTERNET ADDRESS
**rachelkassabian@quinnemanuel.com**

July 24, 2009

**VIA E-MAIL AND U.S. MAIL**

Valerie Kincaid
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, CA 91367
Email: valeriekincaid@yahoo.com

Re:     Perfect 10, Inc. v. Google Inc. – Discovery Issues

Dear Valerie:

I write in response to your July 1, 2009 email regarding (1) Google's redactions in its document production and (2) Google's responses to certain of Perfect 10's Interrogatories. In both instances, Perfect 10 is seeking information from Google that Perfect 10 itself is unwilling to provide in response to Google's discovery requests.

**Redactions in Google's Document Production**

In your email, you claim that "Google cannot state that material is 'irrelevant,' and 'non-responsive' and state nothing more." Similarly, you purport to object to the redaction of certain "[s]nippets of material," claiming that "Perfect 10 cannot evaluate the validity [of] Google's redactions unless Google identifies the material redacted … and explicitly states why the material is purportedly 'irrelevant' and 'non-responsive.'" As you know, Perfect 10 has never provided Google this level of detail with respect to any of its own redactions. For example, regarding Perfect 10's improper redactions of its financial statements and tax returns, Perfect 10 refused to provide anything but general and unsubstantiated assertions of irrelevance and privacy. *See, e.g.,* Email from V. Kincaid to R. Kassabian, et al., dated October 10, 2008 (stating only that "Perfect 10 does not believe the redacted information is relevant to the issue of actual damages" and giving no further explanation); Email from V. Kincaid to T. Nolan, et al., dated October 25, 2008 (stating only that the redacted

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100
NEW YORK | 51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL (415) 875-6600 FAX (415) 875-6700
CHICAGO | 250 South Wacker Drive, Suite 230, Chicago, Illinois 60606-6301 | TEL (312) 463-2961 FAX (312) 463-2962
LONDON | 16 Old Bailey, London EC4M 7EG .United Kingdom | TEL +44(0) 20 7653 2000 FAX +44(0) 20 7653 2100
TOKYO | Akasaka Twin Tower Main Building, 6th Floor, 17-22 Akasaka 2-Chome, Minato-ku, Tokyo 107-0052 Japan | TEL +81 3 5561-1711 FAX +81 3 5561-1712

information is "indisputably private and highly confidential"). Perfect 10 therefore is seeking far more information than it has ever provided to Google. This is inappropriate. The Court has been clear that both parties will be subject to the same discovery obligations in this litigation. *See, e.g.*, Transcript of April, 14, 2008 Hearing before Judge Matz, at 13 ("any ruling I would make of this type would have to be reciprocal and equally reciprocal").

Perfect 10 also now seeks the identification of particular documents by "bates-number," but this is information that Perfect 10 has steadfastly refused to provide to Google. For example, Perfect 10 has refused to properly designate individual documents as Confidential under the Protective Order, despite Google's repeated requests. Instead, Perfect 10's counsel has purported to apply an improper "blanket" designation to its hard drives—which Perfect 10 admits contain a mix of confidential and non-confidential materials—and has told Google that "if there is something you want to file in court or show to someone not subject to the protective order, just call me and I will tell you if you can do so." Letter from J. Mausner to T. Nolan, dated May 20, 2008. Perfect 10 can demand no more of Google than Perfect 10 is willing to do itself.

And further, Perfect 10 has refused to even assign unique control numbers to each page of its document production, necessitating motion practice. *See* Google's Motion to Compel Perfect 10 to (1) Produce Documents, (2) Comply with the Protective Order, and (3) Affix Document Control Numbers to Its Document Productions, at pp. 101-110 (currently pending before the Court). Without such control numbers, it is not even realistically *possible* for Perfect 10 to identify documents *for* Google in the manner that Perfect 10 now seeks *from* Google. Unless and until Perfect 10 is willing to provide this information itself, Perfect 10's attempts to impose additional discovery burdens on Google are inappropriate.

Lastly, you raise a series of questions regarding one particular page in Google's document production, identified as "GCL 053399." Specifically, you ask why Google redacted the page and produced it. We assume that you are referring the page control numbered "GGL 053399," as Google has not produced any documents with the control number prefix "GCL." With that assumption, as is readily apparent from a review of Google's production, that redacted page was part of a larger document, not a single-page document. Your insinuations about its contents are unfounded.

### Google's Responses to Interrogatories

For similar reasons, Perfect 10's claims regarding Google's responses to interrogatories are also unfounded and incorrect.

First, in your email, you claim that Google did not "confirm whether it produced the documents Google said it would produce." This simply is not true. *See* Letter from R. Kassabian to V. Kincaid, dated June 16, 2009 ("[R]egarding your request that Google confirm that it has produced documents in response to Perfect 10's Interrogatory Nos. 26, 32, 33 and 34 pursuant to <u>Rule</u> 33(d), Google has indeed produced documents responsive to those interrogatories.")

And second, you appear to request that Google identify particular documents by "bates-number" as responsive to particular parts of particular interrogatories. As you well know, Perfect 10 has never identified any document by control number as responsive to *any* of Google's interrogatories. In its response to Google's Interrogatory No. 3, Perfect 10 simply referred to "electronic copies and/or

paper print-outs of infringements." Its response to Google's Interrogatory No. 11, Perfect 10 similarly pointed only to certain categories of documents that Perfect 10 purportedly had or would produce. And in its Updated Response to Google's Fourth Set of Interrogatories, Perfect 10 was even less specific, referencing the *entire* document productions of *both* parties. Again, Perfect 10 may not demand more *from* Google than it is willing to provide *to* Google.

Please advise whether Perfect 10 will agree to bates stamp each page of its production, and provide on a reciprocal basis the same detailed information it now seeks from Google in terms of redactions and interrogatory responses.

Very truly yours,

Rachel Herrick Kassabian

# Exhibit L

FILED SEPARATELY UNDER SEAL
PURSUANT TO PROTECTIVE ORDER

# Exhibit M

## Jeffrey N. Mausner

**From:**   GoogleTech
**Sent:**   Wednesday, June 27, 2001 8:57 PM
**To:**     Jeffrey N. Mausner
**Subject:** RE:(Google#133-047)

We have just performed a search for the site in question and found it on both the internet and within our own index. We recognize the annoyance and exasperation that this situation may represent to you, but there is nothing that Google can do to remove the offending content without the cooperation of the site administrator.

Google is a provider of information, not a mediator. Even if we were able to eliminate the offending page from our index, it would still be on the Web. Every few weeks our robots sweep the Web for content. If the site is still available on the Web when we crawl, we will likely pick it up and add it to our index again. Only an administrator can, by including code that blocks our robots or placing a request with us, prevent his/her page from being listed. Without administrator cooperation we cannot exclude material available on the Internet from our index. We will honor the judgments of a legal authority against any party found to be violating copyright.

Please contact us if you are able to obtain the cooperation of the site's administrator or a court order against the offending site. We are sorry that we cannot be of more assistance on this matter.

Regards,

The Google Team

-----Original Message-----
From:  Jeffrey N. Mausner (jmausner@bmrlaw.com)
Date:  Friday, June 22, 2001  05:34 PM
To:  copyright@yahoo-inc.com (copyright@yahoo-inc.com); webmaster@google.com (webmaster@google.com)
Cc:  norm zadeh (normanz@earthlink.net); Ron Johnston (Ronald_Johnston@aporter.com)
Subject:

June 22, 2001

By Electronic Mail to webmaster@google.com, and by fax to (650) 618-1499

By Electronic Mail to copyright@yahoo-inc.com, and by fax to (408) 349-3301
Anthony P. Coll
c/o Yahoo! Inc.
701 First Avenue
Sunnyvale, CA 94089

Re: Notification of Claimed Copyright Infringement Pursuant to 17 U.S.C. § 512(c); Use of PERFECT 10 Copyrighted Works; Violation of Right of

**G    89**

6/27/01

EXHIBIT 37 Page 267                    ER G377

# Exhibit N



LANGUAGES ›

# BIRD & BIRD

About Us    Office Locations    Our People    Expertise    Events    News & Publications    Alumni    Careers    Contact Us

Newsletters
Articles
Case Reports
Books
Press Releases

**Print page**
**Feedback or ask**

# Hamburg Court rules on copyright liability of RapidShare

The information in this article is provided subject to our terms and conditions of use.

## 27.10.09 - Dr Fabian Niemann

In its judgment of 12 June 2009 the Regional Court of Hamburg granted an injunction (cease and desist order) in preliminary proceedings in favour of the German music collecting society GEMA against the Swiss filehoster RapidShare AG. The decision was based on the finding that although RapidShare used an MD5 hash filtering program, it had not done sufficient to prevent its users from illegally uploading music to its servers and thereby making the music publicly available. Contrary to many press reports, the court did not impose a fine or damages on RapidShare.

The judgment triggered huge international press attention, *inter alia* because of the value the court attributed to the claim (EUR 24 million), which was misinterpreted by the press as a "fine". The judgment is important because outside Germany no there have been no judgments against RapidShare. However, in Germany there have already been a couple of previous judgments on RapidShare.

### Decision

The court rendered a cease and desist order stating that RapidShare must stop making publicly available or letting its users make publicly available the music listed by GEMA in the claim and that, in case of further infringements, RapidShare has to pay a disciplinary fine of up to EUR 250,000 for each case of infringement.

The court decided that the value of dispute was EUR 24,075,000. This amount is neither a fine nor damages which need to be compensated. The value of dispute is directly only relevant to calculate the court fees and the recoverable lawyer fees, but is also a sign of the court's evaluation of the copyright infringements.

### Background

The court found that RapidShare was responsible not for direct copyright infringement, but as a "disquietor" ("Störer"). This principle is peculiar to German law. A "disquietor" is a person who is made responsible for an IP infringement because of its relevant causal contribution. Such relevant contribution is usually assumed if the person has put in place a technical cause for an infringement, is aware of the infringement and does not prevent the (repetition of the) infringement although being able to do so within reasonable means. The German courts apply the disquietor principle with respect to injunctive relief claims (but not with respect to damage claims), even against access, caching and hosting providers within the meaning of the E-Commerce Directive, arguing that the protections of the Directive do not apply to injunctive relief once a person is aware of the infringements.

### Reasoning

In detail, the court found that RapidShare is liable to cease and desist because it did not effectively prevent internet users from sharing copyrighted music files on RapidShare although GEMA had given notice of the infringement several times before the lawsuit. The sole use of a filter program called "MD5" by RapidShare was held to be insufficient because it did not effectively prevent users sharing the files in dispute. Instead, RapidShare would have needed to undertake more specific steps to make sure that the relevant files notified to it by GEMA are deleted and not shared again on RapidShare. The court held that RapidShare did not sufficiently prove that it has undertaken such reasonable steps (which could even include manual inspection for the particular disputed files).

Exh. N, Page 1

Search

Sharpen Your Focus
Expertise by sector, service and location. Select a single option, or a combination of any 2 options

Select a Sector
Select a Practice
Select a Location

SUBMIT    Reset ››

### Context

There had already been several German court judgments in preliminary injunctive proceedings regarding alleged copyright infringements involving file sharing hosts – all based on the "disquieter"-principle. The judgments include five Regional Appeal Court judgments, four in favour of the rightholders and one in favour of the infrastructure provider (Regional Appeal Court Hamburg of 2.7.2008, file number: 5 U 73/07, granting judgment regarding RapidShare; Regional Appeal Court Cologne of 21.9.2007, file number: 6 U 86/07, granting judgment regarding RapidShare; Regional Appeal Court Hamburg of 28.1.2009, file number: 5 U 255/07, granting judgment regarding usenets; Regional Appeal Court Hamburg of 14.1.2009, ref. 5 U 113/07, granting judgment regarding usenets; Regional Appeal Court Düsseldorf of 15.1.2008, file number: I-20 U 95/07, denying judgments regarding usenets) as well as a couple of judgments of Regional Courts. All Regional Appeal Court judgments have been decided in preliminary injunction proceedings which cannot be appealed to the highest German civil court, the Federal Court of Justice. Thus, there will be no clear legal situation in Germany in the near future.

### Impact

In conclusion, all courts found that file sharing hosts do not regularly need to check their platforms for copyright infringements in general, but need to take reasonable steps in order to stop infringements **and** avoid their repetition as soon as they get notice of the infringement. Knowledge is deemed proved if the provider warns users of the possibility of copyright infringements (which some of the providers did in their early days, but now most of the big providers do not do this anymore). The main issue currently is the question: what kind of measures need to be undertaken by the provider once it is notified of infringing content? A manual inspection of the platform by the provider's employees is certainly a sufficient step, but not practical for the providers in mass cases; the sole use of a pure MD5 filter on the other hand is not sufficient as the files can easily be renamed which makes it impossible to filter them. In terms of the required steps the Hamburg and Cologne regional courts apply a higher standard than the Düsseldorf Regional Court. It remains to be seen how the Federal Court of Justice may decide the case in the future. Until then, claiming rightholders (who can choose the jurisdiction within Germany in internet cases) will prefer going to Hamburg and Cologne.

Legal notices    Accessibility    Sitemap    Print page    Back to top of page

Exh. N, Page 2





                                              S    T S | M    T S | Cose

## German Court Rules Against Rapidshare

June 23, 2009 -  oba |    ta an Mob e |  e a an  Mana ement

By Wolfgang Spahr, Berlin

The Regional Court of Hamburg has ruled in favor of German collecting society GEMA, which had requested that the court issue an order prohibiting file-hosting service rapidshare.com from making around 5,000 music tracks available on the Internet.

The court fined Rapidshare &euro24 million ($33.5 million).

"The judgment states that the hosting service itself is now responsible for making sure that none of the music tracks concerned are distributed via its platform in the future. This means that the copyright holder is no longer required to perform the ongoing and complex checks," it was stated in a declaration issued by GEMA.

The court also ruled that the precautions allegedly taken by rapidshare.com and other file-hosting sites were not sufficient to effectively prevent the copyright breaches caused by the service.

"The judgment of the Regional Court of Hamburg marks a milestone in GEMA's efforts to combat the illegal use of music works on the Internet," said Dr. Harald Heker, CEO of GEMA, in a statement. "GEMA will continue to do everything it can to shield its members from online piracy. We are confident that in this way we will be able to reduce the illegal use of the GEMA repertoire on the Internet to a negligible level."

Bobby Chang, COO of RapidShare AG in Cham (Switzerland), commented: "We do not consider the court's decision to be a breakthrough. As other proceedings in similar disputes with GEMA have shown, there is considerable disparity amongst the individual courts in some cases.

"Our experience is that the courts of appeal tend to restrict the scope of the decisions made by the lower courts. For this reason, we think that it would make more sense to work together to provide music fans with the right services at the right price and to open up a new source of income for music-markets on the Internet."

**Links referenced within this article**

Global
tt :      b  boar  b  bbb   n  ustry   oba  js
Digital and Mobile
tt :      b  boar  b  bbb   n  ustry    ta  mob e js
Legal and Management
tt :      b  boar  b  bbb   n  ustry e a  mana ement js

**Find this article at:**
http://www.billboard.biz/bbbiz/content_display/industry/e3i6fad5a2a1d8e51322a228bfb25596759

                                              S    T S | M    T S | Cose

© 2008 Nielsen Business Media, Inc. All rights reserved.
  Uncheck the box to remove the list of links referenced in the article.



# Exhibit O





Dow Jones Reprints: This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers, use the Order Reprints tool at the bottom of any article or visit www.djreprints.com.

See a sample reprint in PDF format.          Order a reprint of this article now

## THE WALL STREET JOURNAL.
WSJ.com

TECHNOLOGY  |  APRIL 18, 2009

# Four Guilty in Web Piracy Case

By AARON O. PATRICK and SARAH MCBRIDE

The operators of a notorious file-sharing Web site were found guilty of copyright infringement by a Swedish court, a key legal victory for the entertainment industry that nonetheless may do little to stem the piracy of entertainment on the Internet.

Four men behind the site, called the Pirate Bay, were sentenced to a year in jail and ordered to pay 31 million Swedish kronor ($3.7 million) in damages to artists. The men—Peter Sunde, Gottfrid Svartholm Warg, Fredrik Neij and Carl Lundstrom—remain free and said they would appeal.

The music industry said the ruling would serve as a global deterrent to file-sharing, which has hobbled the music business and begun to eat away at the film and TV industries. The industry also hopes it will prompt Internet service providers in Sweden and elsewhere to shut off access to people who download music and movies without paying.

"A generation will understand that the Pirate Bay and what they are doing isn't OK," said John Kennedy, the head of the global music trade body the International Federation of the Phonographic Industry.

Other big file-sharing sites also face legal challenges, including civil suits against both Mininova, based in the Netherlands, and isoHunt in Canada.

But the industry's past legal victories against services like Napster and Kazaa were short-lived, as new services sprang up quickly to replace those closed by the authorities. Combating new file-sharing sites is complicated, forcing the industry to go jurisdiction-by-jurisdiction to persuade governments and Internet service providers to take action.

"The real problem is that average people...seem to like getting entertained for free on the Internet," said Eric Garland, president of Big Champagne LLC, a digital entertainment consultancy. "People find and anoint new places to do this again and again and again."

In the wake of Friday's verdict, the Pirate Bay site was operating normally, offering links to thousands of games, TV shows, books and movies, including "X-Men Origins: Wolverine", an action movie from News Corp.'s Twentieth Century Fox movie studio due to open May 1 in the U.S.

"Will [the court decision] on its own act as a deterrent? No," said Eric Nicoli, a former chief executive of music company EMI Group Ltd. "There is no price that can effectively compete with free."

The U.S. entertainment industry has been trying to shut down Pirate Bay almost since it began in 2003, and enlisted the support of the U.S. State Department pressure the Swedish government to act. Swedish police raided the site's office in 2006 and later charged the men with copyright violations.

Exh. O, Page 1

The industry admitted Friday's ruling does not solve its problems.

"This isn't the end of the battle," said Ted Shapiro, general counsel for the Motion Picture Association in Europe. He said the group is exploring ways to capitalize on the legal victory, such as perhaps going after Pirate Bay's Internet-hosting providers.

He also said any consumers who believed Pirate Bay's assertions that they weren't doing anything wrong will have second thoughts about using file-sharing sites after the ruling. "Today the court made it clear that what they were doing was illegal, and a serious offense," he said.

The ruling also comes as the entertainment industry is still struggling to find a business model that works for a world in which consumers increasingly expect content to be free. Some artists have argued the music industry should give up fighting Internet piracy and make most music free online.

But record company executives continue to try to charge as much as possible for online sales, even though analysts estimate more than 90% of music downloaded is not paid for.

Mr. Kennedy said the music industry would now take legal action through the Swedish courts to shut the Pirate Bay down. But the process of appeals and civil litigation could drag on for years. The operators of the site have said most of their computer equipment has been moved out of Sweden.

The site is the world's largest host of BitTorrent trackers, programs that monitor the location of files on the computers of people prepared to share them, according to David Price, an Internet security expert at Envisional Ltd. in Cambridge, England, who has investigated the site for clients.

The trackers allow the Pirate Bay to operate as a giant global index of free entertainment on the Internet. BitTorrent breaks up large computer files into small pieces so they can be sent quickly over the Web.

The Pirate Bay site probably needs 20 or 30 high-end server computers to operate, according to Dr. Price, and may be too expensive for someone else to replicate.

True to its philosophy of free information, one of the defendants, Mr. Sunde, posted Friday's verdict on the Internet using Twitter before it was read aloud by a judge in Stockholm district court.

Mr. Sunde later appeared in an online video message and held up a sign saying "I owe you 31 million Swedish (kronor)" with "J/K," or just kidding, at the bottom. "I think that's as close as they're going to get to any money from us," he said.

&mdash;Jennifer Martinez contributed to this article.

**Write to** Aaron O. Patrick at Aaron.Patrick@wsj.com and Sarah McBride at sarah.mcbride@wsj.com

Printed in The Wall Street Journal, page B5

Copyright 2009 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

## guardian.co.uk

# The Pirate Bay trial: guilty verdict

Swedish court sentences four co-founders of notorious download
site The Pirate Bay to a year in jail and a \$3.6m fine

**Jemima Kiss**
guardian.co.uk, Friday 17 April 2009 10.25 BST

A larger | smaller

The four co-founders of website The Pirate Bay have been found guilty of assisting the
distribution of illegal content online by a Swedish court today and have been sentenced
to a year in jail and a \$3.6m (£2.4m) fine.

Charges against the site, which allows web users to access music, movies and TV shows
without paying for them and claimed 22 million users during February, were brought
by a consortium of media, film and music companies led by the International
Federation of the Phonographic Industry.

A Stockholm court found the four defendants guilty of making 33 specific files
accessible for illegal sharing through The Pirate Bay, which means they will have to
pay compensation to 17 different music and media companies including Sony BMG,
Universal, EMI, Warner, MGM and 20th Century Fox.

All four have pledged to appeal against the decision though the process may take
several years.

One of the defendants, Peter Sunde Kolmisoppi, admitted on Twitter that Pirate Bay
had lost its case.

"Stay calm – nothing will happen to TPB, us personally or filesharing what so ever.
This is just a theatre for the media," he said.

"Really, it's a bit LOL. It used to be only movies, now even verdicts are out before the
official release."



The Pirate Bay

John Kennedy, chairman and chief executive of the International Federation of the
Phonographic Industry, said: "We're very pleased at the verdict of what was a very
important case for us.

"It would have been very difficult to put on a brave face if we had lost, but this verdict
sends a strong educational and deterrent message."

The trial began on 16 February in Stockholm district court, when the four co-founders

Exh. O, Page 3

of The Pirate Bay, Fredrik Neij, Carl Lundström, Gottfrid Svartholm Warg and Kolmisoppi, were put in the dock on charges of assisting copyright infringement.

The Pirate Bay does not itself host audio and video files, but provides links to torrents hosted elsewhere on the internet.

Throughout the trial, the Pirate Bay defendants have played up their image as rebellious outsiders, arriving at court in a slogan-daubed party bus and insisting that their position was to defend a popular technology rather than illegal filesharing.

Prosecutors made a major slip-up on the second day of the trial after failing to convince the judge that illegally copied files had been distributed by the site.

They were forced to drop the charge of "assisting copyright infringement" and focus on the lesser charge of "assisting making available copyrighted content". They had been seeking SKr115m (£9.1m) in compensation for loss of earnings due to the millions of illegal downloads facilitated by the site.

The trial has further polarised the tech community and the music industry with both sides eagerly awaiting the result, which will be regarded as a precedent for future filesharing cases.

Supporters of The Pirate Bay held a street party in Moscow last night, with organisers saying the trial had proved that the companies behind the prosecution were "motivated only by their greed and inertia, want to prevent people sharing music, movies, or anything, on a purely altruistic basis".

The chairman of the Swedish Independent Music Producers Association, Jonas Sjöström, said as the trial concluded that the consortium is "tired and sick of services like The Pirate Bay who have no understanding or respect for the creative community, and instead have their own financial interests at heart".

Meanwhile, Sweden's National Museum of Science and Technology announced yesterday that it had bought a server owned by The Pirate Bay confiscated by police last year. The museum paid SKr2,000 for the server and will display it in its archive of illegally copied material.

guardian.co.uk © Guardian News and Media Limited 2010

Exh. O, Page 4

Database on legal information
relevant to the audiovisual
sector in Europe

**IRIS Merlin**

english · français · deutsch

Homepage | IRIS index | Help | Information Sources | IRIS Newsletter | Databases | Advanced Search | Comments

*IRIS 2009-6:17/29*

# Sweden
# The Pirate Bay Case



### Michael Plogell and Erik Ullberg

*Wistrand Advokatbyrå, Gothenburg*

On 17 April 2009, *Stockholms tingsrätt* (the District Court of Stockholm) delivered its judgment regarding four people behind the well-known file-sharing site "The Pirate Bay", hereinafter jointly referred to as the accused.

The case concerns the question of criminal liability for acting as an accessory to and for the preparation of a crime against the Copyright Act.

The Pirate Bay uses so-called BitTorrent technology, which makes it possible for people to share data files with each other. Through The Pirate Bay it is possible for internet users to upload and store so-called torrent files on The Pirate Bay website, as well as to search for such files. The torrent files can refer to specific data files, for example a music album. By means of a so-called tracker, a user may find a person with that music album. The actual file-sharing, however, occurs between users within the framework of a so-called swarm (a group of users in the course of sharing files).

The court found that file-sharing of music, films and computer games had occurred by means of the use of the Pirate Bay's services. This file-sharing constituted an unlawful transmission to the public of copyright-protected material. Therefore, objectively speaking, file-sharers who were engaged in such activities using The Pirate Bay's services had infringed the copyright of the rightsholders in question. This issue was of crucial importance, since the existence of a principal crime is essential in order to establish the liability of accomplices. In this context, the court stated that it is not mandatory to identify or to hold the actual perpetrator liable, but it is enough that a principal crime was objectively committed.

During the proceedings it was alleged that some infringements had occurred outside Sweden by file-sharers who were established abroad. Therefore, Swedish courts should be found to lack jurisdiction. Nevertheless, the court held that, since the material was made available and had effects in Sweden, strong arguments suggested that an infringement should be deemed to have occurred within the country. The court continued, arguing that the Pirate Bay is available in Swedish and that its servers had previously been situated in Sweden. Accordingly, the court established that infringements had occurred in Sweden.

Copyright infringement may be a crime under the Copyright Act, if it is committed with negligence or intent.

By providing a website with sophisticated search functions, easy upload and storage functionalities, as well as the website-linked tracker, the accused had promoted the crimes that file-sharers committed in an objective sense, the court stated. The fact that torrents may have been available on other websites, as well before or at the same time as they were made available on The Pirate Bay did not change the court's view.

Exh. O, Page 5

Furthermore, according to the court, the accused had cooperated with each other and had been acting as a "team" for the operation and development of The Pirate Bay. Thus, the court did not make any differentiation as regards individual liability between the four accused, although they had arguably taken part in the Pirate Bay in different ways. The accused had also been aware of the fact that copyright materials had been shared by use of the Pirate Bay. Hence, the accused had intentionally promoted copyright infringement. As a result, they were accessories to criminal activity in breach of the Copyright Act.

However, the court did not find the accused guilty of preparation of criminal activity in breach of the Copyright Act, given that this crime was concurrent with the above-mentioned one.

Given that the accused had acted with intent, they could not be released from liability under the "safe harbour" provisions applicable to the providers of services in the information society.

The court sentenced each of the accused to serve one year in prison. The sentence was determined on the basis of the fact that their actions resulted in a large amount of copyright-protected material being made available to the public. Moreover, the court considered that the activities were carried out commercially and in an organised manner.

Additionally, the court established that the four persons are jointly liable to jointly pay damages to those record and film companies which were plaintiffs in the case and whose rights had been illegally exploited. The claims of the companies were based on both reasonable compensation for unlawful use of copyright-protected material, as well as compensation for certain loss of sales and market damage. The plaintiffs were awarded damages amounting to approximately MSEK 30 altogether.

The judgment has already been appealed.

In the aftermath of the court's decision, the head judge has been accused of a conflict of interest in relation to the accused. The ground for this accusation is the fact that the judge, who specialises in intellectual property matters, is a member of *Svenska Föreningen för Upphovsrätt* (the Swedish Association for Copyright) and a board member of *Svenska Föreningen för Industriellt Rättsskydd* (the Swedish Association for the Protection of Industrial Property). Counsel for the plaintiffs are also members of these organisations. These associations are not open to the industry, but only to legal professionals. The chairman has rejected the charges of conflict of interest, claiming that his membership makes it possible for him to keep up to date in the field. The issue has caused much debate as to whether, on the one hand, it is proper for a judge to be a member of such organisations and, on the other hand, whether this constitutes a conflict of interest in the legal sense. A formal complaint has been lodged. The issue will now be decided by the court of appeals. If that court should find a conflict of interest, a retrial may have to be ordered.

## References

¦  *Stockholms tingsrätts avgörande den 17 april 2009 i mål nr B 13301-06*
   Judgment of the District Court of Stockholm of 17 April 2009 in case No. B 13301-06

This article has been published in IRIS Legal Observations of the European Audiovisual Observatory.
IRIS 2009-6:17/29
© European Audiovisual Observatory

# Exhibit P

# BLOOMBERG.com



## Google Loses German Copyright Cases Over Image-Search Previews

**Share** BX **t** ❏ | **Email** | **Print** | A **A** **A**

By Karin Matussek

Oct. 13 (Bloomberg) -- **Google Inc.**, owner of the world's most popular Internet-search engine, lost two copyright lawsuits in Germany over displaying photos and artworks as thumbnails in a preview of search results.

Google's preview of a picture by German photographer Michael Bernhard violates his copyrights, the Regional Court of Hamburg ruled, his lawyer Matthies van Eendenburg said in an interview today. Thomas Horn, who holds the copyrights on some comics that were displayed in Google search results, won a second case, court spokeswoman **Sabine Westphalen** said in an e-mail.

``It doesn't matter that thumbnails are much smaller than original pictures and are displayed in a lower resolution,'' the court said in its ruling for Bernhard. ``By using photos in thumbnails, no new work is created,'' that may have justified displaying them without permission.

The conflict highlights disputes over how copyrighted works can be used without an owner's permission. Web sites such as Google have made it easier for consumers to share such material, prompting artists, publishers and sports leagues to step up efforts to protect their property.

Google's German spokesman **Stefan Keuchel** didn't immediately reply to a message left on his voice-mail requesting comment.

The rulings can be appealed.

German newspaper Computerbild earlier reported the ruling for Horn.

The cases are 308 O 42/06 and 308 O 248/07 at the Hamburg Regional Court.

To contact the reporter on this story: **Karin Matussek** in Berlin at **kmatussek@bloomberg.net**

*Last Updated: October 13, 2008 07:09 EDT*



©2010 BLOOMBERG L.P. ALL RIGHTS RESERVED. Terms of Service | Privacy Policy | Trademarks