Jeffrey N. Mausner (State Bar No. 122385)
Law Offices of Jeffrey N. Mausner
Warner Center Towers
21800 Oxnard Street, Suite 910
Woodland Hills, California 91367-3640
Email: Jeff@mausnerlaw.com
Telephone: (310) 617-8100, (818) 992-7500
Facsimile: (818) 716-2773

Attorneys for Plaintiff Perfect 10, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE INC., a corporation,<br><br>        Defendants. | Case No.: CV 04-9484 AHM (SHx)<br><br>**<u>Before Judge A. Howard Matz</u>**<br><br>**PLAINTIFF PERFECT 10, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AGAINST DEFENDANT GOOGLE INC.**<br><br>***PUBLIC REDACTED VERSION***<br><br>[Filed Separately: Notice of Motion; Declarations of Dr. Norman Zada, Jeffrey N. Mausner, Sheena Chou, Melanie Poblete, Dean Hoffman, C.J. Newton, Margaret Jane Eden, Les Schwartz, Sean Chumura, David O'Connor, Bennett McPhatter; and [Proposed] Order]<br><br>Date:  April 5, 2010<br>Time:  10:00 a.m.<br>Place:  Courtroom 14, Courtroom of the<br>       Honorable A. Howard Matz<br><br>Discovery Cut-Off Date:  None Set<br>Pretrial Conference Date: None Set<br>Trial Date: None Set |

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT. ................................1

    A.    Google Concedes That It Will Not Act In Most Cases To Prevent Further Damage To Copyrighted Works. ...................................2

    B.    Google Refuses To Remove 22,000 P10 Thumbnails From Its Image Search Results. ..............................................................2

    C.    Google Is Directly Infringing Thousands Of Full-Size P10 Images. ................................................................................3

    D.    Google Refuses To Remove More Than 3,837 Full-Size P10 Images From Its Own Servers....................................................3

    E.    Google Refuses To Take Action Against Infringing Websites It Hosts. ...............................................................................4

    F.    Google Refuses To Suppress More Than 30,000 Infringing Links Identified In Perfect 10's DMCA Notices. ....................................4

    G.    Google Refuses To Take Action Against Violations Of Perfect 10's Rights Of Publicity. ...................................................5

    H.    Google's Unlawful Conduct Has Caused Perfect 10 To Suffer Irreparable Damage.........................................................5

II.   FACTUAL BACKGROUND. ...................................................................5

    A.    Perfect 10's Business And Intellectual Property. ....................................5

    B.    Google Provides Users With Unauthorized Access To P10 Images. ........................................................................6

III.  APPLICABLE LEGAL STANDARDS FOR THIS MOTION..........................8

IV.   GOOGLE'S SENDING OF PERFECT 10'S DMCA NOTICES TO CHILLINGEFFECTS.ORG CONSTITUTES DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT.......................................9

V.    GOOGLE'S STORAGE OF AT LEAST 3,837 FULL-SIZE P10 IMAGES ON ITS OWN SERVERS CONSTITUTES DIRECT INFRINGEMENT. ...............................................................................10

VI.   GOOGLE HAS DIRECT, VICARIOUS, AND CONTRIBUTORY LIABILITY FOR DISPLAYING 22,000 P10 IMAGES WHICH

COULD BE REMOVED USING IMAGE RECOGNITION
TECHNOLOGY. ........................................................................11

VII.   GOOGLE IS CONTRIBUTORILY AND VICARIOUSLY
       LIABLE FOR  REFUSING TO TAKE ACTION AGAINST
       MAJOR INFRINGING PAYSITES. .......................................12

VIII.  GOOGLE'S RECENT CONDUCT ESTABLISHES ITS
       LIABILITY FOR CONTRIBUTORY INFRINGEMENT. ............13

       A.   Google Failed To Take Simple Steps To Protect Identified
            P10 Images. ................................................................13

       B.   Google Has Failed To Remove Identified Infringing Cache
            Pages. .........................................................................14

       C.   Google Refuses To Remove Identified Infringing Thumbnails. ............15

       D.   Google Has Failed To Remove Identified "See Full-Size
            Image" Links. ..............................................................15

       E.   Google Refuses To Remove 3,837 Full-Size P10 Images
            From Its Blogger.com Servers. ....................................15

       F.   Google Continues To Place Its Ads Around The Same
            Infringing P10 Images. ................................................16

       G.   Google Continues To Display Perfect 10 Passwords On
            Its Own Website And Host Websites That Display Such
            Passwords. ...................................................................16

       H.   Google Incorrectly Asserts That It Has Removed Identified
            Links And Images. ........................................................17

IX.    GOOGLE IS INELIGIBLE FOR THE AFFIRMATIVE DEFENSE
       OF DMCA SAFE HARBOR. ...................................................17

       A.   Google Has Failed To Process Most Perfect 10 DMCA Notices,
            Let Alone Process Them Expeditiously. ......................18

       B.   Google Cannot Properly Assert That Perfect 10's DMCA
            Notices Are Deficient. ..................................................19

       C.   Google's Refusal To Explain How To Cure Alleged
            Deficiencies In Perfect 10's Notices Violates Section
            512(c)(3)(B)(ii). ..........................................................20

D.   The Standard For Determining The Sufficiency Of A DMCA Notice Should Depend On The ISP's Technological Capability. ...............................................................20

E.   Google Has Not Implemented A Proper DMCA Policy.........................21

F.   Google Has Neither Adopted, Nor Reasonably Implemented, A Repeat Infringer Policy. ............................................................21

G.   Google Has Sought To Discourage Copyright Holders From Submitting DMCA Notices. ........................................................23

X.   IN LIGHT OF NEW EVIDENCE, THIS COURT SHOULD REVISIT ITS RULING ON DISPLAY...........................................................24

XI.   CONCLUSION. ...............................................................25

# **TABLE OF AUTHORITIES**

**Cases**

*A & M Records, Inc. v  Napster,* 239 F.3d 1004 (9th Cir. 2001) ...............................17

*Arista Records  v. Usenet.com,* 633 F.Supp.2d 124 (S.D.N.Y 2009).......................2, 12

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005)...............9

*Perfect 10 v. Cybernet Ventures, Inc.,* 213 F.Supp. 2d 1146 (C.D.Cal. 2002) ...........22

*Perfect 10 v. Google, Inc.,* 416 F.Supp.2d 828 (C.D. Cal. 2006)...............................24

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007)................ passim

**Statutes**

17 U.S.C. § 106...............................................................................................................9

17 U.S.C. § 502...............................................................................................................8

17 U.S.C. §512................................................................................................... passim

1    **I.     INTRODUCTION AND SUMMARY OF ARGUMENT.**

2          Plaintiff  Perfect 10, Inc. ("Perfect 10") moves this Court to preliminarily enjoin

3    Defendant Google Inc.'s ("Google") continuing infringement of ***tens of thousands*** of

4    Perfect 10 copyrighted images ("P10 Images") and Google's violation of Perfect 10's

5    publicity rights.  Perfect 10 is entitled to immediate relief because of at least seven new

6    developments since Perfect 10 filed its original motion for preliminary injunction in

7    2005.  In its ruling on that motion, the Ninth Circuit reversed this Court's holding that

8    Perfect 10 was unlikely to succeed on the merits of its secondary liability claims, and

9    held that Google could be liable for contributory infringement "if it had knowledge that

10   infringing Perfect 10 images were available using its search engine, could take simple

11   measures to prevent further damage to Perfect 10's copyrighted works, and failed to

12   take such steps." *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1172 (9th Cir.

13   2007).

14         Despite this ruling, Google has failed to take simple measures to prevent further

15   damage to Perfect 10's copyrighted works.  Although Perfect 10 has sent Google more

16   than 167 DMCA notices, the infringement on Google's system has increased almost

17   ten-fold since 2005.  Google is now displaying more than ***22,000 thumbnails*** of P10

18   Images in its Image Search results and is storing at least 3,837 full-size P10 Images on

19   its own servers.  Google has placed ads next to more than 18,000 P10 Images.  It has

20   promoted and refused to act against Google paysite affiliates that are collectively

21   stealing and selling more than 180,000 P10 Images.  As a result, Perfect 10 has lost an

22   additional $20 million since 2005, is near bankruptcy, and must have immediate relief

23   to survive.   Declaration of Dr. Norman Zada, filed concurrently herewith ("Zada

24   Decl."), ¶¶5-6, 9, 16, 45, Exhs. 1, 8, 9, 30.

25         The following facts, which were not before the Court in 2005, establish Perfect

26   10's likelihood of success on the merits of its claims:

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**A.      Google Concedes That It Will Not Act In Most Cases To Prevent Further Damage To Copyrighted Works.**

Google now concedes that it will only remove links identified by copyright holders that go *directly to an infringing work.*  Such links represent only roughly 30,000 out of the more than 222 million links that Google currently provides to sites that infringe P10 Images.  Google's policy of removing at most 1 out of 7,000 links to infringing websites fails to protect copyright holders and does not constitute a viable DMCA policy.  Moreover, Google has admitted that it will not take any action against infringing paysites, including its own advertising affiliates, such as *usenet.com.*  Courts have ruled that these websites are massive infringers whose services are "used overwhelmingly for copyright infringement."  *See, e.g., Arista Records LLC v. Usenet.com, Inc.,* 633 F.Supp.2d 124, 131 (S.D.N.Y 2009).  These sites currently infringe hundreds of thousands of P10 Images.  Nevertheless, Google: (i) continues to provide hundreds of thousands of links to these sites; (ii) receives fees for promoting these sites through sponsored links and ad placement; and (iii) refuses to sever its business relationship with these sites or require them to remove identified infringing material.  Zada Decl. ¶¶17, 42-45, Exhs. 10, 27-30.

**B.      Google Refuses To Remove 22,000 P10 Thumbnails From Its Image Search Results.**

In its ruling, the Ninth Circuit noted that "[w]ithout image recognition technology, Google lacks the practical ability to police the infringing activities of third-party websites."  *Perfect 10 v. Amazon*, 508 F.3d at 1174.  Today, Google and others indisputably possess this technology, which would allow Google to locate and remove infringing P10 Images immediately.  Zada Decl. ¶¶87-88, Exh. 66.  Nevertheless, Google has refused to use image recognition technology or take any other steps to prevent the same identified infringing P10 Image from repeatedly appearing in Google's Image Search results.  Consequently, the number of P10 thumbnails displayed in Google's Image Search results has increased from 2,500 in 2005 to more

than 22,000 today.  Perfect 10 has identified the same P10 Images to Google, in some cases 80 separate times, but Google has done nothing to prevent those same images from reappearing in its Image Search results.  Zada Decl. ¶2, Exh. 9.

### C. Google Is Directly Infringing Thousands Of Full-Size P10 Images.

*In the last few months*, Google has begun forwarding both full-size and reduced P10 Images contained in Perfect 10's DMCA notices to Google's partner, *chillingeffects.org*, for publication on the Internet.  As a result, P10 Images and links that Perfect 10 has asked Google to remove are instead being *reinstated* on the servers of Google's partner site, *chillingeffects.org*.  Because Google provides a direct in-line link to these images, Google users can now search for a Perfect 10 model and download all of the images of that model in Perfect 10's confidential DMCA notices, as well as thousands of other P10 Images, all while remaining at *google.com*.  Zada Decl. ¶¶13-15, Exhs. 5-7.

Google's unauthorized conveyance of P10 Images to *chillingeffects.org* for display on the Internet is a willful violation of Perfect 10's distribution and display rights.  Google's conduct constitutes direct infringement that is not protected by fair use or any DMCA safe harbor.  Moreover, Google's in-line linking to that same infringing material via its search results constitutes contributory infringement under the Ninth Circuit's test.  Instead of disabling access to identified infringing P10 Images, Google is willfully re-establishing access to these images.

Perfect 10 has repeatedly insisted that Google not publish its confidential DMCA notices on the Internet, particularly those containing actual images and live links, but Google refuses to stop.  Google's unwillingness to cease such unlawful conduct prevents Perfect 10 from sending it further DMCA notices, which effectively precludes Perfect 10 from protecting its copyrighted works.

### D. Google Refuses To Remove More Than 3,837 Full-Size P10 Images From Its Own Servers.

When Perfect 10's original preliminary injunction motion was before this Court

and the Ninth Circuit, Google failed to reveal that it was storing full-size P10 Images on Google's own servers.  Since that time, Perfect 10 has learned that Google is storing at least 3,837 full-size P10 Images on its servers as part of Google's Blogger program, as well as numerous other images associated with other Google hosting programs. Declaration of Sheena Chou, filed concurrently herewith ("Chou Decl."), ¶¶8-11, Exh. 9; Zada Decl. ¶¶49-66, 77-78, Exhs. 33-46, 57-58, 9.

Google's storage of P10 Images on its own servers constitutes direct infringement of Perfect 10's reproduction right.  Moreover, Google's in-line linking in its search results to images on Google's servers violates Perfect 10's display right and establishes Google's direct liability under the Ninth Circuit's server test.  Despite Perfect 10's repeated identification of such images in multiple DMCA notices sent to Google, Google refuses to remove these images from its servers.  Chou Decl. ¶¶8-11.

**E.     Google Refuses To Take Action Against Infringing Websites It Hosts.**

Google's hosting of infringing websites was also not previously before this Court.  Although these websites display Perfect 10 passwords and offer links for users to download thousands of P10 Images, Google refuses to take action against either of these infringing activities.  Zada Decl. ¶¶11-12, Exh. 3-4.

**F.     Google Refuses To Suppress More Than 30,000 Infringing Links Identified In Perfect 10's DMCA Notices.**

Google has also refused to suppress more than 30,000 URLs identified by Perfect 10 in the 167 DMCA notices it has sent to Google – almost all of the infringing images and links that Perfect 10 has identified in its notices.  Although Google has recently begun to process new notices (which identified URLs in a fashion similar to the 30,000 URLs Google has not suppressed), Google has forwarded those same notices to *chillingeffects.org*.  Zada Decl. ¶81. Consequently, Google has failed to disable access to the infringing material.  Furthermore, Google has asserted that every one of Perfect 10's DMCA notices is deficient, but has refused at least 130 requests by Perfect 10 to provide it with an example of what Google considers to be a compliant

notice.  Zada Decl. ¶¶26, 91-95.

Instead of working with copyright holders to prevent further damage to their copyrighted works, Google has made it as difficult as possible for Perfect 10 and others to submit DMCA notices that Google will process.  Zada Decl. ¶¶27, 92-96, Exhs. 16, 68-69.  It is no wonder that Google's DMCA policy has been described by others as "*obstructionist,*" "*legally dubious,*" "*likely illegal,*" and a "*sham.*"  *See* Declarations of Jane Eden, Dean Hoffman, Les Schwartz, and C.J. Newton, filed concurrently herewith; Declaration of Jeffrey N. Mausner, filed concurrently herewith ("Mausner Decl."), Exh. C.

### G.   Google Refuses To Take Action Against Violations Of Perfect 10's Rights Of Publicity.

Google has consistently refused to take any action against violations of Perfect 10's assigned rights of publicity, including violations by Google's advertising affiliates on websites that Google hosts.  Zada Decl. ¶¶15, 101, Exhs. 7, 73.  This issue also was not previously before this Court.

### H.   Google's Unlawful Conduct Has Caused Perfect 10 To Suffer Irreparable Damage.

The seven new developments identified above have caused Perfect 10 to suffer irreparable damage.  Since filing its original motion in 2005, Perfect 10 has been forced to close its magazine and end its cell-phone downloading business.  Its revenues have dropped from nearly $2,000,000 per year to less than $150,000 per year.  Perfect 10 cannot earn any appreciable revenue because everything it sells is being given away for free by Google, which earns revenue from Perfect 10's intellectual property while paying it nothing.  Perfect 10's founder, Dr. Norman Zada, who has already lent Perfect 10 nearly $60 million, will soon no longer be able to fund Perfect 10.  *Id.* ¶5.

## II.   FACTUAL BACKGROUND.

### A.   Perfect 10's Business And Intellectual Property.

Perfect 10 owns the copyrights for all of the P10 Images described in this

Motion.  Zada Decl. ¶¶1-2, Exh. 9;  Declaration of Melanie Poblete, filed concurrently herewith; Mausner Decl. ¶22.

After losing more than $50 million because of rampant infringement, Perfect 10 was forced to close its magazine in June 2007, lay off key employees, and end most of its operations.  Perfect 10 still operates *perfect10.com* and sells back issues of its magazine, but its revenues are now less than $150,000 a year.  Zada Decl. ¶5.

### B.      Google Provides Users With Unauthorized Access To P10 Images.

Google owns and operates the website *google.com*.  Google also owns and operates the websites *blogspot.com* and *blogger.com*, which it uses to host third-party websites and store images.  Zada Decl. ¶¶2, 8-11, Exhs. 3,  9.  Google has provided visitors to its websites with unauthorized access to P10 Images in at least eleven different ways:

1)  Google is storing at least 3,837 full-size P10 Images on its own *blogger.com* servers, along with 3,837 medium-sized versions of the same images.  Google's *blogger.com* servers also store tens of thousands of full-size celebrity images, worth tens of millions of dollars.  Chou Decl. ¶¶8-11; Zada Decl. ¶¶8-9.

2)  Google has hosted more than 565 websites in its *blogspot.com* program that have infringed, in total, more than 11,000 P10 Images.  Google's *blogspot.com* hosting program ***completely conceals the identity of the webmaster***.  A "who is" search on a *blogspot.com* hosted website shows "Google", and not the webmaster, as the website's owner.  Google has complete control over the *blogspot.com* websites it hosts and can remove these websites at any time.  Zada Decl. ¶¶8-10, Exh. 9.

3)  Through its AdSense advertising program, Google has placed unauthorized ads next to at least *18,000* infringing P10 Images, as well as hundreds of thousands of other celebrity images.  Google has also placed ads on *blogspot.com* websites that it hosts that have infringed at least 4,000 P10 Images.  Google continues to place its ads next to the same P10 Images that have been identified to Google, in some cases *eighty times* or more.  Zada Decl. ¶¶2, 16, 74-76, Exhs. 8, 9, 54-56.

4)  Google hosts websites which offer links for downloading full-size P10 Images from massive infringing sites such as *rapidshare.com, megaupload.com,* and *depositfiles.com.*  Google has also powered search engines used exclusively to find *rapidshare.com* links.  *Rapidshare.com* is the twelfth most visited website on the Internet and one of the world's greatest thieves of intellectual property.  It sells thousands of P10 Images and billions of dollars of pirated full-length movies and songs.  *Rapidshare.com* has been repeatedly condemned by German courts.  Zada Decl. ¶17, Exh. 10; Mausner Decl. Exh. N.

Perfect 10 has sent DMCA notices to Google that have identified 26,000 P10 Images infringed by *rapidshare.com*.  Nevertheless, Google has kept *rapidshare.com* as an AdSense affiliate and continues to host websites that offer thousands of P10 Images from *rapidshare.com*.  Zada Decl. ¶¶11, 17, 40, Exhs. 3, 10, 26.

5)  Google also promotes other massive infringers.  For example, six months after the operators of the website *thepiratebay.org* were sentenced to one year in jail in Sweden for copyright infringement, Google still provides more than 5 million links to that website.  In total, Google is currently providing at least *222 million links* to 108 massive infringing websites, or roughly 2,000,000 links for each infringer.  In contrast, Google provides legitimate businesses such as Macdonald's with only roughly 1,000 links each.  Zada Decl. ¶17, Exh. 10.  Despite repeated notice, Google also promotes, for payment, at least 20 paysites that have collectively infringed more than 180,000 P10 Images.  Google provides premium search result placement (Sponsored Links) and thousands of regular search result links for these paysites, and places ads for these paysites on other websites.  Zada Decl. ¶¶42-45, Exhs. 27-30.

6)  Google is currently displaying **more than 22,000 P10 thumbnails** in its Image Search results.  It is also in-line linking those images to infringing third-party websites, thereby using P10 Images to promote the websites of the very competitors of Perfect 10 who stole those P10 Images.  Zada Decl. ¶¶6-7, 11, Exhs. 1-3, 9.  Perfect 10 has evidence that users have downloaded millions of P10 Images from websites to

which Google has in-line linked.  Zada Decl. ¶86, Exhs. 65, 9.

7)  Google has offered thousands of full-size P10 Images to its users via its "see full-size image" links and its in-line links.  Zada Decl. ¶¶6-7, 11, Exhs. 1-3.

8)  Google has itself displayed passwords for *perfect10.com* and has hosted websites which display *perfect10.com* passwords.  Such passwords have allowed users to illegally download at least 4,500,000 P10 Images from *perfect10.com*.  Google has also linked to password hacking websites which offer such passwords.  Perfect 10's evidence demonstrates that users have gone to *google.com*, searched on *google.com* for *perfect10.com* passwords, and then entered *perfect10.com* using such passwords.  Zada Decl. ¶85, Exh. 64.

9)  Google has provided thousands of links to massive infringers of P10 Images via its Google Web Search results.  Zada Decl. ¶¶17, 42-45, 73, Exhs. 10, 27-30, 53.

10)  Google has specially formatted P10 Images so they could be downloaded on cell phones.  Zada Decl. ¶6.

11)  Google has forwarded Perfect 10's DMCA notices containing full-size P10 Images to its partner, *chillingeffects.org,* for republication on the Internet, and then provided links in its search results to those images.  *See* Section IV, below.

## III.   **APPLICABLE LEGAL STANDARDS FOR THIS MOTION.**

This Court may grant injunctive relief to Perfect 10 "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  Under the Ninth Circuit's test, "[p]reliminary injunctive relief is available to a party who demonstrates either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor.  These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Perfect 10 v. Amazon,* 508 F.3d at 1158 (quotation and citation omitted).  As explained below, Perfect 10's evidence establishes its right to injunctive relief on its claims that Google is liable for direct, contributory

and vicarious copyright infringement.[1]

## IV.   GOOGLE'S SENDING OF PERFECT 10'S DMCA NOTICES TO CHILLINGEFFECTS.ORG CONSTITUTES DIRECT AND CONTRIBUTORY COPYRIGHT INFRINGEMENT.

Since January 27, 2006, Perfect 10 has sent at least ten emails to Google, demanding that Google not provide Perfect 10's confidential DMCA notices to its partner, *chillingeffects.org,* for publication on the Internet.  *Chillingeffects.org* first published Perfect 10's spreadsheet-style notices, which provided a roadmap to infringing P10 Images on the Internet.  In December 2009, Google did the unthinkable and began forwarding all of the ***infringing images and live links*** in Perfect 10's Adobe-style notices to *chillingeffects.org* for display on the Internet.  Google also included links in its search results to these notices.  As a result, Google users can do a Google search for a Perfect 10 model, click on a Google link to *chillingeffects.org*, and download tens of thousands of full-size P10 Images  – images that Perfect 10's DMCA notices specifically asked Google to remove.  Zada Decl. ¶¶13-15, Exhs. 5-7.

Google's conduct constitutes direct infringement, because it violates Perfect 10's distribution, display, and reproduction rights.  *See* 17 U.S.C. §106.  Google's forwarding of these notices and linking to them in its search results also constitutes contributory infringement.  Furthermore, because Google is knowingly providing access to infringing material, Google is ineligible for any DMCA safe harbor.  Finally, Google's forwarding of full-size infringing images and live links to *chillingeffects.org* to repost on the Internet cannot possibly be considered fair use.

---

[1] Google is liable for direct infringement if Perfect 10 shows "ownership of the allegedly infringed material" and demonstrates that Google "violate[d] at least one exclusive right detailed in 17 U.S.C. § 106." *Id.* at 1159 (quotation omitted).  Google is contributorily liable if it has knowledge that infringing P10 Images are available using its system, but fails to take simple measures to prevent further damage to Perfect 10's copyrighted works. *Id.* at 1172.  Google is vicariously liable if it "profit[s] from direct infringement while declining to exercise a right to stop or limit it." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930 (2005).

## V.   GOOGLE'S STORAGE OF AT LEAST 3,837 FULL-SIZE P10 IMAGES ON ITS OWN SERVERS CONSTITUTES DIRECT INFRINGEMENT.

Google's storing of full-size P10 Images on its servers, and its in-line linking to those images, were not before this Court or the Ninth Circuit in connection with Perfect 10's original preliminary injunction motion, because Google concealed its storage of such images in 2005.  *See Perfect 10 v. Amazon,* 508 F.3d at 1160 ("Because Google's computers do not store the photographic images, Google does not have a copy of the images for purposes of the Copyright Act.").

Since that time, Perfect 10 has discovered that Google is hosting thousands of infringing *blogspot.com* websites on Google's own servers, which offer billions of dollars of pirated full-length movies, songs, computer software, and images.  Google has hosted at least 565 *blogspot.com* websites that have infringed, in total, at least 11,000 P10 Images.  Furthermore, Google has placed Google ads around at least 4,000 of those images on its own servers.   Perfect 10 has also discovered that Google is storing at least 3,837 *full-size* P10 Images on its own *blogger.com* servers, even though Perfect 10 has sent multiple DMCA notices to Google that include a copy of these infringing images with the full *blogger.com* URL.  Even when Google takes down a *blogspot.com* site, the related full-size P10 Images usually remain on Google's *blogger.com* servers.  Moreover, Google often provides multiple URLs for the same image, so that image continues to appear even when one such URL is blocked.  Zada Decl. ¶64, Exh. 44; Chou Decl. ¶¶8-11.

Google has also stored, and failed to expeditiously remove, full-size P10 Images on its Google Groups, Google Sites, and *gghpt.com* servers.  This conduct also subjects Google to direct liability.  Zada Decl. ¶¶65-66, 77, Exhs. 45-46, 57.

Google is vicariously liable because it has placed Google ads around at least 4,000 of the P10 Images that it has hosted in its *blogspot.com* program.  Zada Decl. ¶9. Google receives a direct financial benefit from clicks on each ad, and has the right and ability to control such infringement, because it occurs on Google's own servers.

Google thus satisfies the requirements for vicarious copyright infringement under the Supreme Court's *Grokster* test, because Google profits from the infringement while declining to exercise a right to stop or limit it.

Furthermore, Google does not keep track of the identities of the clients it hosts and thus allows these websites to infringe anonymously.  Because Google is listed by Internet Registrars as the registered *owner and contact* for such infringing websites, it must take responsibility when it receives notice of such anonymous infringement. There simply is no one else the copyright holder can hold responsible.  Zada Decl. ¶¶8-10, Exh. 9.

## VI.   GOOGLE HAS DIRECT, VICARIOUS, AND CONTRIBUTORY LIABILITY FOR DISPLAYING 22,000 P10 IMAGES WHICH COULD BE REMOVED USING IMAGE RECOGNITION TECHNOLOGY.

At the time of Perfect 10's initial preliminary injunction motion, Google was displaying approximately 2,500 thumbnails of P10 Images in its Image Search results. A Google user who clicked on these thumbnails could view and download, on average, between ten and twenty additional P10 Images from the infringing website to which the thumbnail was linked, including full-size images.  Zada Decl. ¶6.  The Ninth Circuit concluded that Google was not vicariously liable for such conduct, however, because "[w]ithout image-recognition technology, Google lacks the practical ability to police the infringing activities of third-party websites."  *Perfect 10 v. Amazon,* 508 F.3d at 1174.

Since that time, Google has demonstrated that it has image recognition capability by offering a "Find similar images" option, which locates identical or nearly identical images.  Moreover, image recognition has generally been available since at least 2008.  Zada Decl. ¶¶87-88. Exh. 66.  Nevertheless, Google refuses to use such technology to prevent further damage to P10 Images repeatedly identified in Perfect 10's DMCA notices.  As a result, the same P10 Image keeps reappearing in Google's Image Search results, in some cases more than *eighty times*.  Furthermore, despite

receiving 167 DMCA notices from Perfect 10, Google is now displaying more than 22,000 P10 thumbnails in its Image Search results – almost nine times the number it displayed in 2005.  Each of those infringing thumbnails is now linked by Google to an infringing website that offers, on average, 9,000 infringing P10 Images.  Zada Decl. ¶6.

Google's display of 22,000 P10 thumbnails directly infringes upon Perfect 10's copyrighted works.  The damage from Google's infringement is massive, and the display simply is not a fair use.  No fair use analysis that takes into account Google's total destruction of Perfect 10's business would conclude that Google's display of 22,000 P10 thumbnails, and its linking of those thumbnails to infringing Perfect 10 competitors, was "fair."  Google has lost several much less egregious cases in Europe, where its display of thumbnails was ruled not to be fair use.  Mausner Decl. Exh. P.

Google also repeatedly places ads around the same identified P10 Images, thereby profiting from infringement and severely damaging Perfect 10's ability to earn revenue from its copyrighted works.  Zada Decl. ¶¶16, 74-76, Exhs. 8, 54-56, 9.  Such conduct constitutes vicarious infringement under *Grokster*.

Finally, Google's providing links from 22,000 repeatedly identified P10 thumbnails to websites that each offer, on average, 9,000 full-size P10 images for viewing or downloading unquestionably constitutes contributory infringement under the Ninth Circuit's test.

## VII.  GOOGLE IS CONTRIBUTORILY AND VICARIOUSLY LIABLE FOR REFUSING TO TAKE ACTION AGAINST MAJOR INFRINGING PAYSITES.

Google is refusing to stop its paid promotion arrangements with massive infringing paysites, which offer billions of dollars in pirated movies, songs, computer software, and images, including infringing P10 Images.  Similar massive infringers, such as *usenet.com, thepiratebay.org,* and *rapidshare.com*, have already been found liable in the United States, Sweden, and Germany, respectively.  *See Arista Records  v. Usenet.com,* 633 F.Supp.2d at 131 ("There can be no dispute that Defendants' services

were used overwhelmingly for copyright infringement."); Mausner Decl. Exhs. N and O.  Yet Google continues to accept payments to promote such infringers by placing ads for them on other websites and by providing sponsored links and thousands of regular links to them in its search results.  Zada Decl. ¶¶17, 42-45, Exhs. 10, 27-30.  Such conduct constitutes both contributory and vicarious copyright infringement.

## VIII.  <u>GOOGLE'S RECENT CONDUCT ESTABLISHES ITS LIABILITY FOR CONTRIBUTORY INFRINGEMENT.</u>

In its opinion on Perfect 10's initial preliminary injunction motion, the Ninth Circuit held as follows:

> There is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials. We cannot discount the effect of such a service on copyright owners, even though Google's assistance is available to all websites, not just infringing ones.

*Perfect 10 v. Amazon.com*, 508 F.3d at 1172.  The Ninth Circuit then held that "Google could be held contributorily liable if it had knowledge that infringing Perfect 10 images were available using its search engine, could take simple measures to prevent further damage to Perfect 10's copyrighted works, and failed to take such steps."  *Id.*

The evidence before this Court of Google's substantial contribution to infringement is significantly greater than the evidence that was before the Ninth Circuit.  Perfect 10 now has evidence that Google is displaying thousands of full-size P10 Images from Google servers and that users have downloaded millions of P10 Images on sites linked to by Google.  Zada Decl. ¶¶85-86, Exhs. 64-65.  This evidence, discussed below, further supports Google's liability for contributory infringement under the Ninth Circuit's test.

### A.    Google Failed To Take Simple Steps To Protect Identified P10 Images.

Perfect 10 has sent Google at least 167 DMCA notices, which identified more

than 40,000 URLs on free sites that infringe P10 Images.  Google has not suppressed at least 30,000 of those URLs, and has suppressed less than 500 of them expeditiously.  Zada Decl. ¶¶18-81, Exhs. 11-60.

Google has also refused to take *any action* against: (i) its massive infringing paysite advertisers, who are infringing, in total, more than 180,000 P10 Images; and (ii) massive paysite infringers *rapidshare.com, megaupload.com, depositfiles.com*, and *binaries.net,* which have all been Google AdSense affiliates and have infringed tens of thousands of P10 Images.  Google currently provides as many as 137 million links to *rapidshare.com* or websites that promote *rapidshare.com*.  Zada Decl. ¶¶17, 42-45, 81, Exhs. 10, 27-30.

Google also refuses to take action against: (iii) *blogspot.com* websites that Google hosts on its own servers, which offer links for downloading P10 Images, display Perfect 10 passwords, and/or violate Perfect 10's rights of publicity; (iv) massive infringing websites *imagevenue.com* and *imagerise.com*, from which Google copies tens of thousands of infringing thumbnails for its Image Search results; and (v) any Google link that does not lead directly to an infringing image.  Zada Decl. ¶¶9, 11-12, 15, 81, 85, Exhs. 3-4, 7, 64.  Google's failure in most cases to take any steps whatsoever, despite knowledge that thousands of infringing P10 Images are available using its search engine, establishes Google's contributory liability.

**B.    Google Has Failed To Remove Identified Infringing Cache Pages.**

Perfect 10 has included hundreds of copies of Google's infringing cache pages in Adobe-style DMCA notices it has sent to Google.  These pages identified *both the infringing Google cache link and the infringed P10 Image*.  Nevertheless, Google has failed to remove most identified infringing cache links from its search results.  Even when Google has recently processed a few DMCA notices containing infringing cache links, demonstrating their sufficiency, it has forwarded such notices to *chillingeffects.org*.  Zada Decl. ¶¶47-48, Exhs. 31-32, 9.

**C.      Google Refuses To Remove Identified Infringing Thumbnails.**

Google has refused to process DMCA notices in which Perfect 10 places check marks next to thumbnails of infringing P10 Images which appear in Google Image Search results and provides Google with a copy of the web pages where those thumbnails appear.  Google could easily remove the identified thumbnails because it can obviously find its own webpage when given a copy of that page.  Google nevertheless refuses to act, incorrectly claiming that Perfect 10 has not provided it with the applicable URL, even though that URL appears at the bottom of the pages provided by Perfect 10.   Zada Decl. ¶¶68-69, Exhs. 48-49.

Moreover, even though Google has recently begun to process some such "check-the-infringing-image" style notices, after refusing for years to do so, it is forwarding these very same notices to *chillingeffects.org*.  Google's forwarding of these notices negates any minimal steps it may have taken to prevent further damage to Perfect 10's copyrighted works and effectively makes it impossible for Perfect 10 to send further DMCA notices to Google.  Zada Decl. ¶67, Exh. 47.

**D.      Google Has Failed To Remove Identified "See Full-Size Image" Links.**

Perfect 10 has also sent DMCA notices to Google in which Perfect 10 provided copies of the infringing web page obtained by clicking on Google's "See Full-Size Image" link, as instructed by Google.  These notices included a copy of the URL requested by Google, as well as the infringing/infringed images themselves.  Nevertheless, Google has failed to suppress the vast majority of links identified by Perfect 10 in these notices.  Zada Decl. ¶¶70-71, Exhs. 50-51, 9.

**E.      Google Refuses To Remove 3,837 Full-Size P10 Images From Its Blogger.com Servers.**

Google refuses to remove approximately 3,837 full-size P10 Images from its own *blogger.com* servers, even though Perfect 10 has sent DMCA notices to Google which include a webpage showing the complete URL for these images, along with the

infringing/infringed images themselves.  Google has also refused to process an excel spreadsheet that Perfect 10 has provided which lists most of those 3,837 URLs.  Zada Decl. ¶¶49-64, Exhs. 33-44;  Chou Decl. ¶¶8-10.

**F.**    **Google Continues To Place Its Ads Around The Same Infringing P10 Images.**

Google has placed its advertising ("ads by google") *next to at least 18,000 P10 Images* on free websites, including *blogspot.com* websites that Google hosts on its own servers.  In most cases, Google has not removed such ads, even after receiving notice from Perfect 10 that the web pages where Google placed these ads infringe upon Perfect 10's copyrighted works.  Furthermore, even when Google has removed ads that it initially placed next to P10 Images on certain infringing websites, Google has simply placed its ads next to those same P10 Images on other infringing websites.  In some cases, Google has continued to place its ads around the same image, despite 80 notices from Perfect 10 regarding that image.  Zada Decl. ¶¶2, 11, 16, 74-76, Exhs. 3, 8, 54-56, 9.  Chou Decl. ¶12.

Google's misuse of thousands of P10 Images for advertising purposes, and its failure to take steps to prevent further damage to Perfect 10's copyrighted works, has substantially damaged Perfect 10's revenues and constitutes contributory and vicarious copyright infringement.

**G.**    **Google Continues To Display Perfect 10 Passwords On Its Own Website And Host Websites That Display Such Passwords.**

Google continues to display passwords to *perfect10.com* on its own website. Moreover, Google continues to host websites on its *blogspot.com* servers that also display Perfect 10 passwords.  Such passwords have been used to illegally download more than 4.5 million images from *perfect10.com*.  Perfect 10 also has evidence that users have gone to *google.com*, searched for *perfect10.com* passwords on *google.com*,

1   and then made unauthorized downloads of P10 Images from *perfect10.com* using those

2   passwords.  Zada Decl. ¶¶12, 85, Exhs. 4, 64. [2]

3          Google's dissemination of these passwords to its users materially assists those

4   users in gaining unauthorized access to the pay-only members' area of Perfect 10's

5   website, from which users make unauthorized copies of P10 Images by downloading

6   them.  Google could easily limit its display of passwords to *perfect10.com* because

7   Perfect 10 has provided Google with notice of exactly where those passwords are

8   located in Google's search results.  Google could also simply search for and delete

9   strings of the form "username:password@ www.perfect10.com."  Nevertheless,

10  Google has chosen not to take any of these simple measures.

### H.   Google Incorrectly Asserts That It Has Removed Identified Links And Images.

13         On various occasions, Google has: (i) incorrectly claimed that it has removed

14  infringing links and images; (ii) continued to infringe the same image from a slightly

15  different URL on the same website; and/or (iii) sent a Perfect 10 notice to

16  *chillingeffects.org* even when it did not process that notice.  For example, Google has

17  incorrectly asserted that it has removed at least 60 P10 Images from Google-hosted

18  websites, when it did not.  Zada Decl. ¶¶77-79, Exhs. 57-59.  Such conduct is further

19  evidence of Google's liability for contributory infringement.

## IX.  GOOGLE IS INELIGIBLE FOR THE AFFIRMATIVE DEFENSE OF DMCA SAFE HARBOR.

22         In order to be eligible for the safe harbor affirmative defense under the DMCA,

23  Google must expeditiously process Perfect 10's DMCA notices *and* suitably

---

[2] Such illegal downloading violates Perfect 10's exclusive rights to reproduce and distribute its copyrighted photographs, pursuant to Sections 106(1) and (3) of the Copyright Act. *See, e.g., A & M Records, Inc. v  Napster,* 239 F.3d 1004, 1014 (9th Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights.").  People who use unauthorized passwords to enter *perfect10.com* to download images know or should know that they are engaging in copyright infringement, just as users of Napster did.

implement a policy against repeat infringers.[3]  Google fails to satisfy either of these requirements, for multiple reasons.

### A.    Google Has Failed To Process Most Perfect 10 DMCA Notices, Let Alone Process Them Expeditiously.

As explained in greater detail in Section VIII, above, Google has failed to process the vast majority of DMCA notices sent by Perfect 10, which identify infringing material on free sites, massive infringing paysites, and *blogspot.com* websites hosted by Google itself.  When Google has suppressed a URL identified by Perfect 10, it has typically waited between 100 and 500 days to do so.  Zada Decl. ¶¶18-81, Exhs. 11-60.  Google's willingness to provide massive infringers with thousands of links, regardless of the number of complaints against them, should by itself preclude a safe harbor.  Zada Decl. ¶17, Exh. 10.

Google has expeditiously processed no more than 500 URLs out of the 40,000 identified by Perfect 10.  Google did not respond at all to 14 DMCA notices sent by Perfect 10 in 2001.  Zada Decl. ¶¶18-20, 81, Exhs. 11-12.  In 2004, Perfect 10 began to send spreadsheet-style notices to Google created by following Google's instructions.  Google did not respond to these notices for at least four months, until after Perfect 10 sent it a draft complaint.  Google did not process 952 URLs from Perfect 10's July 19, 2004 notice at all, and refused to process approximately 1,000 additional URLs identified by Perfect 10 which Google could have processed.  Zada Decl. ¶¶28-33, Exhs. 17-19. When Google finally acted on October 11, 2004, it removed certain identified Web Search links but did not remove the same identified links from its

---

[3] The safe harbors found in Sections 512 (c) and (d) of the DMCA both apply only if the host or search engine, "upon obtaining such knowledge or awareness [of infringing material or activity], acts expeditiously to remove, or disable access to, the [alleged infringing] material."  17 U.S.C. §§ 512(c)(1) (A)(iii) and (C); *Id.* § 512(d)(1)(C) and (3).  Section 512(i) of the DMCA provides that no safe harbor is available unless the service provider "has adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers."  *Id.* § 512(i).

Image Search results until at least ███████████.  Zada Decl. ¶¶35-36, Exhs. 20-22; Mausner Decl. ¶21, Exh. H. Google waited until at least ███████████ to take action against its AdSense affiliates.  Zada Decl. ¶34, Exh. 9.  Google waited as long as seventeen months to remove some identified infringing image URLs.  Zada Decl. ¶¶29-32, Exhs. 17-19.  Finally, Google did not process certain notices forwarded to it by Amazon for four years.  Zada Decl. ¶¶37-39, Exhs. 23-25.

### B.   Google Cannot Properly Assert That Perfect 10's DMCA Notices Are Deficient.

Google has steadfastly asserted that every one of the 167 DMCA notices sent to it by Perfect 10 is deficient.  Zada Decl. ¶¶91-92, Exh. 52.  Google's assertion is incorrect, for at least six separate reasons.

First, the DMCA notices sent by Perfect 10 to Google beginning in 2004 complied with Google's instructions.  These instructions clearly stated that Perfect 10 should include the URL that appears at the end of each Web Search result, and the search term, in its notices.  Perfect 10 followed these instructions to create the spreadsheet-style notices it sent Google from May 31, 2004 through April 24, 2007.  Zada Decl. ¶¶25-27, Exhs. 14-16.  Consequently, Google has no basis to claim that such notices are all substantially non-compliant.

Second, Google processed Perfect 10's spreadsheet-style notices, albeit belatedly, so these notices could not have been deficient.

Third, the Adobe-style notices that Perfect 10 began to send to Google in June 2007 are also not deficient, because they also followed Google's instructions.  In addition to providing the URL requested by Google, Perfect 10 used Adobe Acrobat Professional to include an actual copy of the infringing web page with the infringing P10 Images clearly identified.  Yahoo! and Interserver processed similar notices in three days and two days, respectively.  Zada Decl. ¶¶82-84, Exhs. 61-63.

Fourth, many of Perfect 10's Adobe-style notices concerning Google Image Search involved Perfect 10 sending a copy of Google's own Image Search results to

Google.  Google cannot possibly assert that it cannot find a web page that it created when provided with a copy of that page.  Zada Decl. ¶¶68-70, Exhs. 48-50.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████ Other computer experts have provided similar testimony.  *See* Declarations of David O'Connor, Sean Chumura, and Bennett McPhatter, filed concurrently herewith.

Finally, Google itself has now conceded that Perfect 10's Adobe-style notices are not deficient, because it has finally begun to process these notices within the past few months.  However, because Google is now forwarding the full-size P10 Images in these notices to *chillingeffects.org* for posting on the Internet, and then linking to such images in its search results, Perfect 10 cannot send any further DMCA notices to Google.  Zada Decl. ¶¶13-15, Exhs. 5-7.

### C.   Google's Refusal To Explain How To Cure Alleged Deficiencies In Perfect 10's Notices Violates Section 512(c)(3)(B)(ii).

Section 512(c)(3)(B)(ii) of the DMCA provides that, in order to be eligible for safe harbor, Google must attempt to contact the complaining party to cure alleged deficiencies in its DMCA notices.  Since May 31, 2004, however, Google has refused to provide Perfect 10 with any meaningful explanation as to why it claims that any of Perfect 10's 167 notices (including those created following Google's instructions) is defective or explain how to cure any alleged deficiencies.  Moreover, despite 130 requests from Perfect 10, Google has refused to provide a single example of what it considers to be a compliant notice.  Zada Decl. ¶¶26, 91-93, 15, Exhs. 52, 68, 7, 9.

### D.   The Standard For Determining The Sufficiency Of A DMCA Notice Should Depend On The ISP's Technological Capability.

In order to comply with the statutory requirements, a DMCA notice must provide an internet service provider with sufficient information to locate the infringing material.  Because Google possesses image recognition technology, Perfect 10's

notices, which included a copy of the infringing P10 Images and a complete URL, satisfied this standard. All Google needed to do was create a database of identified infringing images and use its image recognition capabilities to block previously identified images from repeatedly reappearing in its Image Search results. Zada Decl. ¶¶87-88, Exh. 66. Google has refused to do so, however. Google has also refused to cooperate with Perfect 10 to implement a "check the infringing image" notification system, even when ordered by this Court to do so. Mausner Decl. ¶¶2-13, Exhs. A, AA. *See* Section IX.G, below.

### E.  Google Has Not Implemented A Proper DMCA Policy.

Google's policy of removing, on average, only 1 link in 7,000 to an infringing website, does nothing to prevent further damage to copyrighted works and does not constitute a valid DMCA policy. Google has no policy in place to deal with massive infringing websites or to prevent the same identified infringing image from reappearing in its Image Search results. Zada Decl. ¶¶90-92, 95, Exh. 69; Chou Decl. ¶¶13-14. Once Google receives notice of massive infringement on a website, it must either contact that website's webmaster and require that the webmaster remove the alleged infringing material, or cut all links to that website. Otherwise, Google users can continue to locate identified infringing images through one of the many thousands of other links that Google provides to that same website.

### F.  Google Has Neither Adopted, Nor Reasonably Implemented, A Repeat Infringer Policy.

Google has taken the extremely narrow view that only its advertising and hosting clients are "account holders and subscribers" under the DMCA. Google asserts that it does not need to track infringement complaints against other websites that appear in its search results, or terminate these sites from its system, even if Google copies thousands of images from these sites for its Image Search results. As a result, Google does not have a suitable repeat infringer policy in place, and does not prevent massive quantities of infringing material from being forever available in its system.

For example, Perfect 10 has identified at least 10,000 infringing image URLs from *imagevenue.com*, a Google AdSense affiliate, in notices sent to Google.  Nevertheless, Google continues to make more than 6,000 infringing P10 Images from *imagevenue.com* available in its Image Search results.  Zada Decl. ¶9.  Google simply does not have a policy in place to prevent ongoing massive repeat infringement, as required by 17 U.S.C. §512(i)(1)(A).[4]  Even if the Court were to accept Google's assertion that Section 512(i) is not directly applicable to search results, terminating repeat infringers from its search results is a simple measure that Google has failed to employ to prevent further damage to copyrighted works.

Furthermore, even if the Court were to accept Google's contention that it does not have to terminate repeat infringers from its search results, Google still has not reasonably implemented a repeat infringer policy, for at least seven reasons: (1) Google admits that its advertising and hosting clients are account holders or subscribers for purposes of the DMCA, but Google does not keep track of the identities of many such account holders.  Zada Decl. ¶¶8-10, 97-99, Exhs. 70-71; (2) Google has not removed at least 3,837 identified full-size P10 Images from Google's *blogger.com* servers.  *Id*. ¶¶49-65, Exhs. 33-45;  (3) Google has taken no action whatsoever against a number of its AdSense advertising affiliates, even after 28 separate Perfect 10 DMCA notices.  *Id*. ¶¶74-76, Exhs. 54-56; (4) Google has not stopped doing business

---

[4]  A repeat infringer policy is not the same as a copyright policy relating to notice and take-down of infringing materials, because it must deal with the infringer rather than the infringing material itself.  As the District Court stated in *Perfect 10 v. Cybernet Ventures, Inc.*, 213 F.Supp. 2d 1146, 1177 (C.D.Cal. 2002):

[S]ection 512(i) is focused on infringing users, whereas 512(c) is focused primarily on the infringing material itself.  …  The Court does not read section 512 to endorse business practices that would encourage content providers to turn a blind eye to the ***source of massive copyright infringement*** while continuing to knowingly profit, indirectly or not, from every single one of these same sources until a court orders the provider to terminate each individual account. … [O]nline service providers are meant to have strong incentives to work with copyright holders. The possible loss of the safe harbor provides that incentive and furthers a regulatory scheme in which courts are meant to play a secondary role to self-regulation. (emphasis added).

with AdWords and AdSense account holders who have infringed, in total, hundreds of thousands of P10 Images. *Id.* ¶¶17, 42-45, Exhs. 10, 27-30; ███████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ When it was ordered to produce all "notices of termination resulting from intellectual property violations,"

████████████████████████████████████████████████████████

████████████████████████████ *Id.* ¶¶97-99, Exh. 9; and

(7) Google also continues to place its ads next to the same repeatedly identified infringing P10 Images. *Id.* ¶¶2, 16, 74-76, Exhs. 8, 54-56, 9.  Google's conduct cannot possibly represent a suitable implementation of a repeat infringer policy.

### G.  Google Has Sought To Discourage Copyright Holders From Submitting DMCA Notices.

Google has done everything possible to discourage Perfect 10 and other copyright holders from submitting DMCA notices.  Google has changed its instructions, refused to process notices, refused to provide examples of compliant notices, made unreasonable or impossible requests, and refused to stop forwarding confidential notices to *chillingeffects.org*.  Zada Decl. ¶¶18-33, 90-96, Exhs. 11-19, 68-69, 9; Chou Decl. ¶¶6-14.  For example, Google has demanded that Perfect 10: (i) ***not*** send notices by email; (ii) resend notices that were first sent by mail or fax ***solely by email***; and (iii) then resend the very same notices for a third time ***solely by email***. Google's demands are contrary to the language of the DMCA, which allows both emailed and non-emailed notices.  Other copyright holders have had similar experiences, and have even called Google's DMCA policy a "sham."  Declarations of Jane Eden, Dean Hoffman, Les Schwartz, and C.J. Newton; Exh. C to Mausner Decl.

Google has also failed to work with Perfect 10 to implement a "check the infringing image" notification system, as ordered by the Court. *See* May 8, 2006 Court Order ¶9, attached as Exh. A to the Mausner Declaration.  This  system would have: (i) created a simple and effective procedure for removing infringing material; and (ii) prevented Google from asserting that every Perfect 10 notice was deficient. Mausner Decl. ¶¶2-13, Exhs. A, AA. When Perfect 10 tried to follow the Court's Order on its own, by providing copies of infringing web pages with check marks next to infringing images, Google refused to process such notices.  Zada Decl. ¶¶67-69, Exhs. 47-49, 9; Mausner Decl. Ex. B.

## X.  IN LIGHT OF NEW EVIDENCE, THIS COURT SHOULD REVISIT ITS RULING ON DISPLAY.

In ruling on Perfect 10's initial preliminary injunction motion, this Court adopted the server test advocated by Google.  *Perfect 10 v. Google, Inc.,* 416 F.Supp.2d 828, 839 (C.D. Cal. 2006).  The advent of the server test has led to the development of massive infringing websites such as *nudecelebforum.com, phun.org, pornbb.org,* and *exbii.com.*  These websites display infringing images by in-line linking to other websites that host these images, such as *imagevenue.com, imagerise.com, imageshack.us*, and *blogger.com*, so as to escape liability for direct copyright infringement under the server test.  Zada Decl. ¶100, Exh. 72.  The image hosting sites, in turn, are typically located in countries such as Russia and thus outside the reach of American courts, or claim that they are protected from liability under Section 512(c) of the DMCA.  Moreover, the server test allows any website to in-line link to any legitimate website, and thereby make available any copyrighted material from that website.  Since there is no direct infringer in this situation, the in-line linking website can use the copyrighted material in a frame, and place its advertising around it, with impunity.  Finally, Google's own expert, Dr. John Levine, stated after the Ninth Circuit's ruling that the in-line linking site is just as responsible for the display of an

image as the hosting site, implying that both sites are directly liable.  Mausner Decl. Exh. E.

Because of the server test, most large infringing third-party websites can no longer be sued for direct copyright infringement.  It has become harder than ever for copyright holders to protect their works.  In light of this new evidence, this Court should reexamine the viability of the server test when ruling upon this motion.

## XI.  CONCLUSION.

The stakes in this case are high, for both Perfect 10 and for all copyright holders. Despite receiving 167 DMCA notices from Perfect 10, Google is: (1) providing at least 222 million links (which Google will not remove) to websites that infringe P10 Images; (2) displaying 22,000 P10 thumbnails in its Image Search results, which Google links to infringing websites; (3) storing 3,837 full-size P10 Images on its own servers; (4) promoting massive infringing paysites that are selling more than 180,000 P10 Images; and (5) forwarding Perfect 10's notices to *chillingeffects.org*, thus re-establishing access to thousands of P10 Images that Google was supposed to remove.

The evidence submitted by Perfect 10 establishes a likelihood of success on the merits of its claims that Google is liable for direct, contributory and vicarious copyright infringement.  Perfect 10's desperate financial condition establishes its need for immediate relief.  Accordingly, for all of the reasons set forth herein and in the Declaration of Dr. Norman Zada filed concurrently herewith, Perfect 10 respectfully requests that this Court grant its Motion for Preliminary Injunction.

Dated: March 3, 2010            Respectfully submitted,

Law Offices of Jeffrey N. Mausner

By: __  *Jeffrey N. Mausner*            ___
        Jeffrey N. Mausner,
        Attorney for Plaintiff Perfect 10, Inc.