QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Michael T. Zeller (Bar No. 196417)
  michaelzeller@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100
  Charles K. Verhoeven (Bar No. 170151)
  charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
  Rachel Herrick Kassabian (Bar No. 191060)
  rachelkassabian@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065

Attorneys for Defendant GOOGLE INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation, | CASE NO. CV 04-9484 AHM (SHx) [Consolidated with Case No. CV 05-4753 AHM (SHx)] |
| Plaintiff, | **DEFENDANT GOOGLE INC.'S OPPOSITION TO PLAINTIFF PERFECT 10 INC.'S SECOND MOTION FOR A PRELIMINARY INJUNCTION** |
| vs. | |
| GOOGLE INC., a corporation; and DOES 1 through 100, inclusive, | |
| Defendants. | [Declaration of Rachel Herrick Kassabian and Evidentiary Objections filed concurrently herewith] |
| AND COUNTERCLAIM | Hon. A. Howard Matz |
| PERFECT 10, INC., a California corporation, | Date:    April 5, 2010 Time:   10:00 a.m. Crtrm.: 14 |
| Plaintiff, | Discovery Cut-off: None Set Pretrial Conference Date: None Set Trial Date: None Set |
| vs. | |
| AMAZON.COM, INC., a corporation; A9.COM, INC., a corporation; and DOES 1 through 100, inclusive, | **[PUBLIC REDACTED]** |
| Defendants. | |

01980.51320/3374174.1

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................... 2

ARGUMENT ................................................................................................... 4

I.    P10 IS NOT LIKELY TO SUCCEED ON ITS COPYRIGHT CLAIMS. .......... 4

    A.    Google Has Shown Probable Success on Its DMCA Defense. ............... 4

        1.    P10's Rehashed DMCA Arguments Are Unavailing. ..................... 4

        2.    P10's New Arguments Do Not Undermine Safe Harbor. ............... 5

    B.    P10 Is Not Likely to Succeed on Its Direct Infringement Claim. ............. 6

        1.    P10's fails to state a claim of direct infringement based on thumbnail images and inline linking. ............................................... 7

        2.    Forwarding DMCA Notices to Chilling Effects Does Not Constitute Direct Infringement. ...................................................... 8

            (a)    Forwarding "spreadsheet" notices is not infringement. ........................................................................ 9

            (b)    Forwarding "screenshot-style" notices is fair use. ............... 9

            (c)    Google's forwarding of DMCA notices to Chilling Effects is protected by the First Amendment. ..................... 11

        3.    Providing A System To Which Users Can Upload Content Does Not Constitute Direct Infringement. .................................... 12

    C.    P10 Has Not Established Contributory Infringement. ............................ 14

        1.    P10 Has Not Established Underlying Direct Infringement. .......... 14

        2.    Google Lacks Knowledge of Infringement. ................................. 16

        3.    There Are No Simple Measures to Prevent Further Damage to P10's Copyrighted Works. ....................................................... 17

GOOGLE'S OPPOSITION TO PERFECT 10'S SECOND MOTION FOR A PRELIMINARY INJUNCTION

D.      P10 Has Not Established Vicarious Infringement. ................................. 18

    1.      Google Does Not Control Any Infringing Activity..................... 18

    2.      Google Does Not Receive a Direct Financial Benefit From
    The Alleged Underlying Infringement. ........................................ 20

II.     PERFECT 10 HAS NOT ESTABLISHED PROBABLE SUCCESS ON
ITS PUBLICITY CLAIM. .............................................................................. 21

III.    PERFECT 10 CANNOT SHOW IRREPARABLE HARM. ............................ 22

A.      P10's Long Delay Refutes Its Claim of Irreparable Harm. ...................... 22

B.      Alleged Monetary Damages Do Not Establish Irreparable Harm. .......... 23

IV.     THE BALANCE OF HARDSHIPS WEIGHS AGAINST P10. ...................... 24

V.      THE PUBLIC INTEREST WEIGHS AGAINST AN INJUNCTION. ............ 25

CONCLUSION .......................................................................................................... 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

**Page**

### Cases

A&M Records, Inc. v. Napster, Inc.,
  239 F.3d 1004 (9th Cir. 2001) ........................................................................ 16, 20

Abend v. MCA, Inc.,
  863 F.2d 1465 (9th Cir. 1988), aff'd sub nom. Stewart v. Abend,
  495 U.S. 207 (1990)........................................................................................ 25

Adams v. City of Chicago,
  135 F.3d 1150 (7th Cir. 1998) ............................................................................ 8

Campbell v. Acuff-Rose Music, Inc.,
  510 U.S. 569 (1994)........................................................................................ 25

Citibank, N.A. v. Citytrust,
  756 F.2d 273 (2d Cir. 1985) ............................................................................ 22

CoStar Group, Inc. v. LoopNet, Inc.,
  373 F.3d 544 (4th Cir. 2004) ........................................................................ 7, 12

eBay Inc. v. MercExchange, L.L.C.,
  547 U.S. 388 (2006)........................................................................................ 23

Ellison v. Robertson,
  189 F. Supp. 2d 1051 (C.D. Cal. 2002), rev'd on other grounds,
  357 F.3d 1072 (9th Cir. 2004) .......................................................... 12, 16, 20, 21

Field v. Google Inc.,
  412 F. Supp. 2d 1106 (D. Nev. 2006).................................................... 7, 10, 12, 13

Fisher v. Dees,
  794 F.2d 432 (9th Cir. 1986) ...................................................................... 10, 14

Getty Petroleum Marketing, Inc. v. Shipley Fuels Marketing, LLC,
  2007 WL 2844872 (E.D. Pa. Sept. 27, 2007)...................................................... 24

Hendrickson v. eBay, Inc.,
  165 F. Supp. 2d 1082 (C.D. Cal. 2001)................................................................ 6

Io Group v. Veoh Networks,
  586 F. Supp. 2d 1132 (N.D. Cal. 2008)........................................................ 20, 24

Laws v. Sony Music Entertainment, Inc.,
  448 F.3d 1134 (9th Cir. 2006) ........................................................................ 22

McDermott v. Ampersand Pub., LLC,
  593 F.3d 950 (9th Cir. 2010) ............................................................................ 4

Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,
    518 F. Supp. 2d 1197 (C.D. Cal. 2007) ................................................. 23

Netbula, LLC v. Chordiant Software, Inc.,
    2009 WL. 750201 (N.D. Cal. Mar. 20, 2009) ......................................... 20

Oakland Tribune, Inc. v. Chronicle Publishing Co.,
    762 F.2d 1374 (9th Cir. 1995) ............................................................... 22

Parker v. Google, Inc.,
    422 F. Supp. 2d 492 (E.D. Pa. 2006) ............................................... 13, 22

Perfect 10, Inc. v. Amazon.com,
    2009 WL. 1334364 (C.D. Cal. May 12, 2009) ..................................... 6, 17

Perfect 10, Inc. v. Amazon.com, Inc.,
    508 F.3d 1146 (9th Cir. 2007) ......................................................... passim

Perfect 10, Inc. v. CCBill LLC,
    488 F.3d 1102 (9th Cir. 2007) ......................................................... 16, 17

Perfect 10, Inc. v. Visa Int'l Service Assn.,
    494 F.3d 788 (9th Cir. 2007) ........................................................... 17, 20

Perfect 10 v. Google Inc.,
    416 F. Supp. 2d 828 (C.D. Cal. 2006) ............................................ passim

Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S.
    Dept. of Agr.,
    499 F.3d 1108 (9th Cir. 2007) ................................................................. 8

Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,
    907 F. Supp. 1361 (N.D. Cal. 1995) .................................................... 7, 13

Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,
    944 F.2d 597 (9th Cir. 1991) ................................................................. 23

Sony Corp. v. Universal City Studios,
    464 U.S. 417 (1984) .............................................................................. 11

Sosa v. DIRECTV, Inc.,
    437 F.3d 923 (9th Cir. 2006) ................................................................. 12

Southco, Inc. v. Kanebridge Corp.,
    390 F.3d 276 (3d Cir. 2004) .............................................................. 9, 15

Southtech Orthopedics, Inc. v. Dingus,
    428 F. Supp. 2d 410 (E.D.N.C. 2006) ................................................... 24

Tiber Lab., LLC v. Hawthorn Pharm., Inc.,
    527 F. Supp. 2d 1373 (N.D. Ga. 2007) ................................................... 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

01980.51320/3374174.1

UMG Recordings, Inc. v. Veoh Networks, Inc.,
  2009 WL. 334022 (C.D. Cal. 2009) ........................................................ 21

Upper Deck Authenticated, Ltd. v. CPG Direct,
  971 F. Supp. 1337 (S.D. Cal 1997) ..................................................... 21, 22

**Statutes**

37 C.F.R. § 202.1 .......................................................................... 9, 15

17 U.S.C. § 106 ............................................................................. 7, 12

17 U.S.C. § 107 ........................................................................... 10, 15

17 U.S.C. § 512 ................................................................................ 4

17 U.S.C. § 512(g)(2)(A) ................................................................. 9. 10

47 U.S.C. § 230(c)(1)........................................................................ 22

Cal. Civ. Code § 3344........................................................................ 21

**Miscellaneous**

Rule 30(b)(6).................................................................................. 3

Rule 56(f) ..................................................................................... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## Preliminary Statement

This is Perfect 10, Inc.'s ("P10") third attempt to derail Google's motions for summary judgment regarding its entitlement to safe harbor under the DMCA ("DMCA Motions"). First, in July 2009, it filed an overlapping motion for summary judgment, which this Court stayed in favor of hearing Google's DMCA Motions first ("Stayed P10 MSJ"). Then, in November 2009, P10 filed an evidentiary sanctions motion, which Judge Hillman did not grant. Having no success in those efforts, P10 has re-packaged them into a second motion for a preliminary injunction ("Second PI Motion"). Google's DMCA Motions are fully briefed, yet P10 now seeks to "leapfrog" them with its Second PI Motion in hopes of forcing the Court to consider liability issues first—a proposition this Court has rejected. P10's efforts again fail.

The Court previously warned P10 that its "practice or pattern of making all these slashing claims and then saying prove us wrong is not quite the way it's supposed to work, Mr. Mausner. And it's not the way it's going to work from here on in."[1] Ignoring this admonition, P10 has not even attempted to proffer sufficient evidence to support its sweeping injunction demand. On the facts and the law, P10 has not shown probable success on copyright infringement or publicity claims, nor do its DMCA arguments suggest Google is unlikely to prevail on this defense. Indeed, P10 goes so far as to brazenly ask this Court to trample the First Amendment freedoms of Google, research universities and others. Moreover, P10 makes no plausible showing of irreparable harm—nor could it, since its several-year delay in filing its Second PI Motion undermines any claim of irreparable harm. The Second PI Motion should be denied.

---

[1] Declaration of Rachel Herrick Kassabian ("Kassabian Dec."), Ex. E (12/18/08 Hearing Tr. at 22:10-14).

-1-

### Background[2]

1

2     **P10's First PI Motion.** Well over four years ago, on August 24, 2005, P10

3   moved for a preliminary injunction ("First PI Motion"). Dkt No. 22.  Applying the

4   "server test," this Court found Google's use of frames and in-line links did not

5   constitute "display" or "distribution" of full-size images stored on and served by third

6   party websites.  It also found that Google's use of thumbnail images in Image Search

7   results constitutes "display" and is not likely to fall within the fair use exception.

8   Perfect 10 v. Google Inc., 416 F.Supp.2d 828, 843-44, 851 (C.D. Cal. 2006).  On

9   contributory infringement, P10 failed to establish that Google's AdSense program

10   materially contributes to direct infringement on third-party websites. Id. at 856.  And

11   on vicarious infringement, this Court found P10 was not likely to prove Google has

12   the "right and ability to control" the infringing activity. Id. at 858.

13     On appeal, the Ninth Circuit agreed that the "server test" applied and that

14   Google's use of frames and in-line links did not constitute direct infringement of full-

15   size images served on third-party sites.  Perfect 10, Inc. v. Amazon.com, Inc., 508

16   F.3d 1146, 1159-60 (9th Cir. 2007).  It also held that Google is likely to succeed on

17   its fair use defense for thumbnail images in Image Search. Id. at 1168.  On

18   contributory infringement, the Ninth Circuit held Google could be liable only if it had

19   knowledge infringing P10 images were available using its search engine, could take

20   simple measures to prevent further damage to P10's copyrighted works, and failed to

21   do so. Id. at 1172. Because the district court did not resolve factual disputes over the

22

23   _____

24     [2]   The relevant facts are set forth in Google's DMCA Motions. See Decl. of
Rachel Herrick Kassabian (filed concurrently), Ex. D (Google's Search Motion at 1-

25   16).  A complete set of Google's DMCA summary judgment papers, including all
supporting declarations and exhibits, are concurrently being lodged with the Court,

26   and are also included on a DVD attached as Exhibit A to the Kassabian Declaration.

27   References to the Poovala, Brougher, and/or Haahr Declarations herein are references
to the Declarations filed in support of Google's DMCA Motions.

28

1   adequacy of P10's DMCA notices and Google's responses, and over whether there are

2   feasible means for Google to refrain from providing access to infringing images, the

3   Ninth Circuit remanded this claim. Id. at 1173. On vicarious infringement, the Ninth

4   Circuit agreed P10 had not established probable success. Id. at 1175.

5       **P10's Second Amended Complaint.** In July 2008, the Court granted P10

6   leave to amend to add new claims against Google's Blogger service. Dkt No. 321.

7       **Google's DMCA Motions And The Stayed P10 MSJ.** DMCA discovery has

8   been ongoing for several years. In November 2008, P10 deposed Google's final two

9   Rule 30(b)(6) designees on DMCA issues, Shantal Rands Poovala and Paul Haahr.

10  Kassabian Dec. ¶ 3.[3] On July 2, 2009, Google filed its DMCA Motions. P10 then

11  filed the Stayed P10 MSJ, arguing Google is directly, contributorily, and vicariously

12  liable for copyright infringement and not entitled to safe harbor. Dkt No. 436. The

13  Court stayed briefing on P10's motion until further order of the Court. Kassabian

14  Dec., Ex. F (7/8/09 Order, Dkt No. 453). Google's DMCA Motions are fully briefed

15  and under submission. Id., Ex. G (8/13/09 Order, Dkt. No. 500). Those motions

16  could end or substantially narrow copyright aspects of this case.[4]

17

18

---

19  [3] P10 had previously deposed another Google 30(b)(6) witness on DMCA issues, Alexander Macgillivray, and three other Google witnesses. Kassabian Dec. ¶ 3.

20  [4] On November 29, 2009, P10 filed a motion for evidentiary sanctions, belatedly
21  claiming Google's DMCA production was insufficient. Dkt No. 617. The Court
    tentatively concluded evidentiary sanctions were inappropriate. Dkt No. 759.
22  Moreover, while in recent months P10 has argued that the DMCA Motions cannot be
23  decided until Google produces additional documents, the contention lacks merit. Not
    only did P10 never properly request the additional documents it seeks and waive any
24  ability to seek such additional discovery under Rule 56(f) by opposing Google's
25  DMCA Motions on their merits, Google has already produced those very categories
    of documents. Kassabian Dec., Ex. T (Google's Opp. to P10's Sanctions Mot. at 5-
26  11 & 15-17, Dkt. No. 653). P10's new demands for more of the same are improper,
27  redundant, and waived in any event. They are no ground to delay ruling on the
    DMCA Motions.

28

1    **P10's Delays.**  P10 has shown little interest in pushing this case forward.  As

2  detailed in Google's *Ex Parte* Application to Strike the Second PI Motion (which

3  Google incorporates by reference), P10 has repeatedly sought to defer its discovery

4  obligations and delay progress and resolution of this case for its own strategic

5  advantage.  Kassabian Dec., Ex. U (*Ex Parte* App. at 9-12, Dkt. No. 789).

6                                   **Argument**

7         Preliminary injunctive relief is available to a party showing: (1) it is likely to

8  succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of

9  preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is

10 in the public interest.  <u>McDermott v. Ampersand Pub., LLC</u>, 593 F.3d 950, 957 (9th

11 Cir. 2010) (citation omitted).  P10 does not meet this standard.

12 **I.    P10 IS NOT LIKELY TO SUCCEED ON ITS COPYRIGHT CLAIMS.**

13       **A.    Google Has Shown Probable Success on Its DMCA Defense.**

14       Even if P10 could establish probable success on its copyright infringement

15 claims (which it has not, <u>see</u> <u>infra</u>), Google may defeat a preliminary injunction by

16 showing probable success on its DMCA safe harbor defense.  <u>Amazon.com</u>, 508 F.3d

17 at 1158.  Google's DMCA Motions establish there is no triable issue of material fact

18 on this issue, so Google meets the probable success standard with ease.  As set forth

19 in the DMCA Motions (incorporated here by reference), Google meets the threshold

20 requirements for safe harbor and is entitled to safe harbor on P10's copyright claims.[5]

21             **1.    P10's Rehashed DMCA Arguments Are Unavailing.**

22       For the most part, the Second PI Motion merely rehashes the same arguments

23 P10 made on Google's DMCA Motions.  For example, P10 argued both in its DMCA

24 ───────────────────────────

25    [5]  Specifically, Google is entitled to safe harbor under Section 512(d) regarding
P10's search-related claims, under Section 512(c) regarding P10's Blogger-related
26 claims, and under Section 512(b) regarding P10's cache-related claims.  17 U.S.C. §
512; Kassabian Dec., Ex. D (Search Motion, Dkt No. 456); <u>id.</u> Ex.  C  (Blogger
27 Motion, Dkt No. 457); <u>id.</u> Ex. B (Cache Motion, Dkt No. 458) (filed herewith).
28

1  oppositions and its Second PI Motion that Google did not expeditiously process P10's

2  DMCA notices.  See 2d PI Motion at 10, 14, 18-19; P10's Search, Blogger, and Cache

3  Opps. (Dkt Nos. 495, 497, & 498).  These arguments fail for the same reasons Google

4  explained at length in its DMCA briefing (incorporated here)—namely, P10's notices

5  were defective and  Google expeditiously processed the intelligible portions of the

6  P10 DMCA notices it received.  See Kassabian Dec., Exs. A (supporting DMCA

7  declarations), B (Cache Motion and Reply), C (Blogger Motion and Reply) and D

8  (Search Motion and Reply).

**2.   P10's New Arguments Do Not Undermine Safe Harbor.**

10      P10 improperly uses its Second PI Motion as an excuse to supplement its

11  oppositions to the DMCA Motions without leave of court.  For instance, P10 claims

12  its Second PI Motion covers alleged conduct not addressed in the DMCA Motions:

13  that (1) Google recently began forwarding P10 images to Chilling Effects, (2) Google

14  does not implement its repeat infringer policy, and (3) P10 sent new notices after the

15  DMCA Motions were filed.  P10's arguments do not create a triable issue of material

16  fact or suggest Google is not likely to succeed on this defense.

17      First, Google's practice has always been to send notices to Chilling Effects.

18  Nor has P10 sent Google a single notice identifying links to allegedly infringing

19  material on chillingeffects.org, and thus has not triggered a duty to act under the

20  DMCA.  Second, P10's argument that Google does not implement its repeat infringer

21  policy is demonstrably false.[6]  P10 offers no evidence suggesting that AdSense code

22

23  6                                                                           

24                                                                      Google

25  enforced its repeat infringer policies with respect to intelligible P10 notices.  Id.

26

27

28

1 appears on web pages listed in multiple DMCA notices. Instead, P10 merely offers
2 spreadsheets describing its complaints about web pages with the same root URL,
3 ignoring that Google has produced processing spreadsheets showing its enforcement
4 of repeat infringer policies for the web pages P10 lists. Poovala Dec., Ex. LL.

5     Third, P10's submission of 95 claimed DMCA notices in October and
6 November 2009 has no bearing on DMCA safe harbor. These notices, sent during
7 litigation and after briefing on the DMCA Motions, are a transparent attempt to keep
8 P10's copyright claims alive by manufacturing claims supposedly not covered by the
9 DMCA Motions. Post-litigation infringement notices such as these do not constitute
10 notice within the meaning of the DMCA and accordingly are irrelevant to Google's
11 eligibility for safe harbor. Perfect 10, Inc. v. Amazon.com, 2009 WL 1334364, *5
12 (C.D. Cal. May 12, 2009) (November 2008 notice sent to A9's copyright agent during
13 litigation, plus notices produced in discovery, were "legally irrelevant"). Even if
14 considered, these notices (which include screen shots of allegedly infringing images),
15 suffer from many of the same deficiencies as P10's Group C Notices.[7] Because they
16 are vastly smaller in volume, they were not impossible to process like many of the
17 Group C Notices. See 2d PI Motion at 20 (acknowledging Google processed recent
18 notices). But a service provider's processing of a DMCA notice does not render that
19 notice DMCA-compliant. See Hendrickson v. eBay, Inc., 165 F.Supp.2d 1082, 1092
20 (C.D. Cal. 2001) (eBay's removal of a listing did not excuse notice's defects).
21 Having already established there is no triable issue of fact regarding Google's
22 entitlement to DMCA safe harbor, Google is likely to succeed on this defense.

23     **B.**    **P10 Is Not Likely to Succeed on Its Direct Infringement Claim.**

24     Because Google is entitled to DMCA safe harbor, P10's liability arguments
25 need not be reached. Even if considered, P10 has not demonstrated probable success.

26

27     [7]   In the DMCA Motions, Google addressed P10's DMCA notices in groups, as
described in detail in those papers. Kassabian Dec., Ex. D at 12-16 (Search Motion).
28

1    To prove direct infringement, P10 must show (1) "ownership of the allegedly
2    infringed material"[8] and (2) that Google "violate[s] at least one exclusive right
3    granted to copyright holders under 17 U.S.C. § 106." Amazon.com, 508 F.3d at
4    1159. Moreover, P10 "must also show volitional conduct on the part of the defendant
5    in order to support a finding of direct copyright infringement." Field v. Google Inc.,
6    412 F.Supp.2d 1106, 1115 (D. Nev. 2006); see also Religious Tech. Ctr. v. Netcom
7    On-Line Commc'n Servs., Inc., 907 F.Supp. 1361, 1369-70 (N.D. Cal. 1995) (direct
8    infringement requires a volitional act by defendant; automated copying by machines
9    occasioned by others not sufficient); CoStar Group, Inc. v. LoopNet, Inc., 373 F.3d
10   544, 555 (4th Cir. 2004) ("Agreeing with ... Netcom, we hold that the automatic
11   copying, storage, and transmission of copyrighted materials, when instigated by
12   others, does not render an ISP strictly liable for copyright infringement"). Even then,
13   Google can defeat P10's motion if it shows a likelihood of establishing any
14   affirmative defense, including fair use. Id. at 1158. P10's direct infringement claims
15   lack merit, and P10 cannot meet its burden. Kassabian Dec., Ex. K (10/6/08 Hearing
16   Tr. at 20:22-23).

17         **1.    P10's fails to state a claim of direct infringement based on**
18              **thumbnail images and inline linking.**

19   P10's Second PI Motion ignores the applicable standards for direct
20   infringement. First, P10 rehashes its unsuccessful argument that Google directly
21   infringes P10's copyrights by displaying thumbnail images via Image Search. 2d PI
22   Motion at 2:18. The Ninth Circuit's ruling "that Google's use of Perfect 10's
23   thumbnails is a fair use" is binding precedent, however. Perfect 10, 508 F.3d at 1168.
24   The Ninth Circuit found that "Google has put Perfect 10's thumbnail images (along
25   with millions of other thumbnail images) to a use fundamentally different than the

---

27   [8]   Other than a 12-image "sample," P10 does not even attempt to show it owns the
      claimed infringed images. P10's motion should be denied for this reason alone.

28

1   use intended by Perfect 10" and "Google has provided a significant benefit to the

2   public." Id. P10's demand that this Court ignore precedent and enjoin Google from

3   displaying thumbnail images must be rejected.[9]

4        P10 next asks the Court to "revisit its ruling on display"—i.e., to change the

5   server test and adopt some other test for inline linking. 2d PI Motion at 24-25. The

6   Ninth Circuit's affirmation of the server test with respect to in-line linking—which

7   includes hyper-linking to images stored on third-party servers—is also binding and

8   governs this remanded case. Perfect 10, 416 F.Supp.2d at 838-39, 843-45, aff'd, 508

9   F.3d at 1159-62; Ranchers Cattlemen Action Legal Fund United Stockgrowers of

10  America v. U.S. Dept. of Agr., 499 F.3d 1108, 1114 (9th Cir. 2007).[10] As this Court

11  has confirmed, "[t]he server test is still the test. It will be up to the Ninth Circuit to

12  revise the test." Kassabian Dec., Ex. M (10/27/08 Hearing Tr. at 6:24-7:6 ).[11] P10

13  has no likelihood of proving that Google directly infringes by displaying thumbnail

14  images or by in-line linking to images on third-party websites.

15              **2.    Forwarding DMCA Notices to Chilling Effects Does Not**

16                     **Constitute Direct Infringement.**

17  P10 argues that Google engages in "direct and contributory copyright

18  infringement" by forwarding copies of P10's DMCA notices to Chilling Effects. 2d

19  PI Motion at 9:2-22. P10's contention fails. As a preliminary matter, P10's nebulous

20  claim that Chilling Effects is "Google's partner" ignores Chilling Effects' structure

21  and operations. Id. at 3:6. Chilling Effects is a non-profit research institution

22

23  [9]  P10 is collaterally estopped from challenging the Ninth Circuit's findings. See,
    e.g., Adams v. City of Chicago, 135 F.3d 1150, 1153 (7th Cir. 1998).

24  [10]  P10 claims "Google has hosted at least 565 blogspot.com websites that have

25  infringed, in total, at least 11,000 P10 Images." 2d PI Motion at 10. P10 has not
    provided evidence that Google hosts these 11,000 images.

26  [11]  P10 argues the advent of the server test led to the development of "massively

27  infringing sites." 2d PI Motion at 24-25. P10 offers no evidence, only speculation,
    for this proposition.

28

1   dedicated to the protection of free expression on the Internet.  It is a "joint project of
2   the Electronic Frontier Foundation and Harvard, Stanford, Berkeley, University of
3   San Francisco, University of Maine, George Washington School of Law, and Santa
4   Clara University School of Law clinics," designed to help Internet users "understand
5   the protections that the First Amendment and intellectual property laws give to your
6   online activities."  Kassabian Dec., Ex. N.  It provides a clearinghouse service in
7   which the public is invited to submit cease and desist notices (including DMCA
8   notices), regarding which law students conduct research, all of which is then posted
9   in an online database.  Id.  Google forwards DMCA notices to Chilling Effects in
10  furtherance of that ongoing research, among other reasons.[12]

11              **(a)     Forwarding "spreadsheet" notices is not infringement.**

12      Many of P10's DMCA notices do not contain any images and instead merely
13  list URLs and/or websites where allegedly infringing images may be found.  Words
14  and short phrases such as URLs are not copyrightable.  See 37 C.F.R. § 202.1 (2004);
15  Southco, Inc. v. Kanebridge Corp., 390 F.3d 276, 286 (3d Cir. 2004).  Nor does P10
16  establish any ownership in the URLs themselves.  Forwarding such notices to
17  Chilling Effects cannot constitute direct infringement.

18              **(b)     Forwarding "screenshot-style" notices is fair use.**

19      Some of P10's DMCA notices contain actual images.  Even if P10 is correct
20  that Google's forwarding of such notices constitutes a "direct infringement" of P10's

21  _____

22  [12]   Google also forwards DMCA notices to Chilling Effects to comply with the
23  DMCA.  Under the statute, Google must "take[] reasonable steps promptly to notify
    the [provider of the material] that it has removed or disabled access to the material"
24  in processing DMCA notices.  17 U.S.C. § 512(g)(2)(A).  Indeed, providing links to
25  DMCA notices at Chilling Effects in place of the links Google suppresses from
    search results is often the only way to inform providers that their material has been
26  removed pursuant to the DMCA, since DMCA complainants like P10 often do not
27  provide contact information for them.  See Poovala Dec., Ex. B; Haahr Dec. ¶ 7;
    Kassabian Dec., Ex. D (Search Reply at 23:1-11); 17 U.S.C. § 512(g)(2)(A).
28

1   copyrights—and P10 has failed to make this showing—that forwarding clearly is a
2   fair use under 17 U.S.C. § 107.[13]   There are four "fair use" factors to consider:  (1)
3   the purpose and character of the use, including whether such use is of a commercial
4   nature or is for nonprofit educational purposes; (2) the nature of the copyrighted
5   work; (3) the amount and substantiality of the portion used in relation to the
6   copyrighted work as a whole; and (4) the effect of the use upon the potential market
7   for or value of the copyrighted work.  17. U.S.C. § 107.  These factors favor Google.

8      **Purpose and Character of the Use.**  Google forwards DMCA notices to
9   Chilling Effects: (1) in furtherance of Chilling Effects' academic research regarding
10  free expression on the Internet, and (2) to give statutory notice to providers when that
11  material is removed in response to a DMCA notice.  See 17 U.S.C. § 512(g)(2)(A).
12  This is a highly transformative, noncommercial use of P10's notices.    See
13  Amazon.com, 508 F.3d at 1164.  This factor weighs heavily in Google's favor.[14]

14      **Nature of the Work.**  P10 claims copyrights in adult images.  Because P10's
15  images were previously published for commercial benefit, they are thus ineligible for

16

17  [13]  Google's published DMCA policy informs complainants that Google forwards
18  DMCA notices to Chilling Effects.  Poovala Dec., Ex. B.  P10 was aware of this
19  policy before it changed the format of its notices to include images.  See Zada Dec.
    ¶ 13 (                                                                              ).
20  Google merely continued its existing procedures; it was *P10* that changed the format
21  of its DMCA notices.  See Blogger Opp. at 9:2-8 (Dkt. No. 495); Cache Opp. at 8
    (Dkt. No. 497); Zada Dec. ¶ 13 (
22                           ).  P10's disregard of Google's published DMCA instructions is
23  an apparent effort to contrive an infringement claim by creating DMCA notices in a
24  format that P10 believes is infringing and submitting them to Google knowing
    Google would forward them to Chilling Effects.  Such gamesmanship should not be
25  rewarded.  See Field, 412 F.Supp.2d at 1113 (rejecting copyright owner's attempt to
    manufacture claim in the hopes of making money from Google's standard practice).
26  [14]  P10's purported requests that Google process its notices without forwarding
27  them to Chilling Effects do not weigh against a finding of fair use.  See Fisher, 794
    F.2d at 437 (denial of permission to use a work does not weigh against fair use).
28

1    enhanced protection available for unpublished works. Perfect 10, 416 F.Supp.2d at
2    849-50. Thus, this factor does not weigh significantly in either party's favor.

3         **Amount Used**. Because Google forwards P10's DMCA notices to Chilling
4    Effects as P10 provided them to Google, Google uses no more of them than necessary
5    to inform providers of their contents. Kassabian Dec., Ex. D (Search Reply at 22:1-
6    11); Poovala Dec., Ex. B; Haahr Dec. ¶ 7. This factor weighs in Google's favor.

7         **Effect on the Market**. P10 asserts that it is in the market of selling adult
8    images.   Google's forwarding of P10's DMCA notices to a non-profit research
9    organization has no impact on that market, since (among other things) Chilling
10   Effects is not a potential P10 customer. This factor weighs heavily in Google's favor.
11   See Sony Corp. v. Universal City Studios, 464 U.S. 417, 450 (1984) ("a use that has
12   no demonstrable effect upon the potential market for, or the value of, the copyrighted
13   work need not be prohibited in order to protect the author's incentive to create").
14   Google's forwarding DMCA notices to Chilling Effects is a fair use.[15]

15            **(c)    Google's forwarding of DMCA notices to Chilling**
16                     **Effects is protected by the First Amendment.**

17        A DMCA notice is a legal complaint submitted to a third-party.   There is
18   nothing in the DMCA or in fair use law that permits the sender of a DMCA notice to
19   impose conditions on the use of the notice by its recipient.  Indeed, attempts at such
20   limitations run contrary to Constitutional guarantees of free speech. The fundamental
21   purpose of Chilling Effects is to aggregate and distribute knowledge in order to
22   protect free expression on the Internet.  The activities of Chilling Effects, and the
23   activities of participants in the project—Google included—are protected by the free
24
25

---

26   [15]   P10 relatedly claims Google infringes by linking to DMCA notices on Chilling
27   Effects.   But, as discussed above, merely hyper-linking to supposedly infringing
     content is not direct infringement. See, e.g., Perfect 10, 416 F.Supp.2d at 842.
28

1  speech guarantees of the First Amendment and the right to lobby the government for
2  changes in law.  See Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).

3          **3.**      **Providing A System To Which Users Can Upload Content**
4                        **Does Not Constitute Direct Infringement.**

5        As shown on Google's DMCA Motions, Google is entitled to safe harbor for
6  its Blogger service.  That alone defeats P10's Second PI Motion on this subject.  P10
7  nevertheless asks the Court to determine here if passively providing a service
8  allowing users to upload content to the Internet gives rise to liability for direct
9  infringement.  It does not.[16]  Courts addressing this issue – which are rare since
10 DMCA safe harbor is typically litigated first and is determinative – hold that "ISPs,
11 when passively storing material at the direction of users in order to make that material
12 available to other users upon their request, do not 'copy' the material in direct
13 violation of § 106 of the Copyright Act."  Costar Group, 373 F.3d at 555 ("automatic
14 copying, storage, and transmission of copyrighted materials, when instigated by
15 others, does not render an ISP strictly liable for copyright infringement"); see also
16 Ellison v. Robertson, 189 F.Supp.2d 1051, 1056-1057 (C.D. Cal. 2002), rev'd on
17 other grounds, 357 F.3d 1072 (9th Cir. 2004) (passive service provider not
18 responsible for direct infringement as result of user's uploading infringing material).
19 This Court adopted a similar volition-based standard for direct infringement here.
20 See Perfect 10, 416 F.Supp.2d at 852 n.17 (rejecting argument that automatic caching
21 in user's browser is actionable reproduction) (citing Field, 412 F.Supp.2d at 1115
22 (requiring plaintiff to show volitional conduct by defendant for direct infringement)).

23

24

25     [16]   P10 focuses its attention on the Blogger service, but also makes a similar
26 argument in passing regarding the alleged hosting of images on Google Groups,
   Google Sites, and *gghpt.com* servers.  2d PI Motion at 10.  Google's points regarding
27 the Blogger service apply equally to these additional claims.
28

1    Through its Blogger service, Google provides a neutral, automated web-
2 publishing and hosting tool that can be used by account holders for significant non-
3 infringing purposes.   See Poovala Dec. ¶ 26; cf. Parker v. Google, Inc., 422
4 F.Supp.2d 492, 497 (E.D. Pa. 2006) (dismissing direct infringement claim because
5 Google's copying of Usenet posts at the direction of users is "a system that
6 automatically transmits users' material but is itself indifferent to the material's
7 content"); Field, 412 F.Supp.2d at 1115 (dismissing direct infringement claim
8 because Google's storage of third-party created web pages in its cache is "automated,
9 non-volitional conduct by Google in response to a user's request").   Stated another
10 way, a service provider's "act of designing or implementing a system that
11 automatically and uniformly creates temporary copies of all data sent through it is not
12 unlike that of the owner of a copying machine.... Although some of the people using
13 the machine may directly infringe copyrights, courts analyze the machine owner's
14 liability under the rubric of contributory infringement, not direct infringement."
15 Netcom, 907 F.Supp. at 1369.[17] Google cannot be directly liable for passively storing
16 material uploaded by users through the automatic operation of its Blogger service.

17    Independently, Google has a strong fair use defense to P10's direct
18 infringement claims as well. Blogger users, not Google, initiate the alleged copying
19 and storage in creating web pages with Blogger; Google's involvement is automated.
20 See Poovala Dec. ¶ 26.   Courts consistently recognize that automated copying is
21 necessary and appropriate to support the significant transformative power of the
22 Internet.   See, e.g., Perfect 10, 416 F.Supp.2d at 852 n.17; Field, 412 F.Supp.2d. at
23 1123 (holding Google's automatic copying of material uploaded by Internet users is
24 transformative and a fair use).   The Ninth Circuit precedent similarly holds that
25
26

27   [17]   Congress referenced the Netcom decision approvingly in the committee report
on the DMCA. Kassabian Dec., Ex. S (S. Rep. No. 105-190, at 19 (1998)).
28

1 Google's automated copying and storage of material uploaded by third parties is a
2 fair use. See Amazon.com, 508 F.3d at 1168.

3 　　Google's passive, content-neutral copying of material uploaded by and hosted
4 for Blogger users is a fundamentally different and transformative use of the allegedly
5 copyrighted material.  See Poovala Dec. ¶ 26, Ex. F ("Blogger is a free service for
6 communication, self-expression and freedom of speech.   We believe Blogger
7 increases the availability of information, encourages healthy debate, and makes
8 possible new connections between people."); Amazon.com, 508 F.3d at 1165.
9 Hosting material on Blogger at the direction of users is also noncommercial (see
10 Poovala Dec. ¶ 26) and copies no more than is necessary to fulfill the back-end
11 hosting requirements of the Blogger program.  Poovala Dec. ¶ 26, Ex. F.  Google's
12 actions are undertaken in good faith, merely automatically responding to user
13 requests.  See Fisher v. Dees, 794 F.2d 432, 436-37 (9th Cir. 1986).  Finally, P10
14 offered no evidence that Google's actions have impacted the market for P10's images.
15 See Amazon.com, 508 F.3d at 1168 ("market harm cannot be presumed" when the
16 use is transformative).  Google is likely to establish fair use as to its conduct.

17 　　　　　**C.    P10 Has Not Established Contributory Infringement.**

18 　　Google can be contributorily liable for infringement of P10's copyrights *only*
19 (1) if P10 shows direct infringement by third parties, and (2) if Google "had
20 knowledge that infringing Perfect 10 images were available using its search engine,
21 could take simple measures to prevent further damage to Perfect 10's copyrighted
22 works, and failed to take such steps." Amazon.com, 508 F.3d at 1172, 1169.  P10 has
23 not established it is likely to meet this standard.

24 　　　　　**1.    P10 Has Not Established Underlying Direct Infringement.**

25 　　P10 makes scattershot claims that Google is variously contributorily liable for:
26 (1) forwarding P10's DMCA notices to Chilling Effects and linking to them, (2)
27 linking to full-size P10 images from thumbnails and providing "see full-size images"
28 links, (3) not removing infringing cache pages, thumbnail images, and images stored

1   on Google servers, (4) accepting payments from "massive infringers" and placing ads
2   next to infringing images, (5) displaying P10 passwords and hosting websites that do
3   so, (6) failing to take simple steps to protect P10's images, and (7) incorrectly
4   asserting it removed identified links and images.   P10 fails to meet—and indeed
5   ignores—its threshold burden of proving underlying direct infringement by a third
6   party for any of this conduct.

7        **Chilling Effects.**   P10 has failed to prove any acts of direct infringement by
8   Chilling Effects in connection with Google's forwarding of DMCA notices to
9   Chilling Effects.   Chilling Effects is a nonprofit research organization dedicated to
10  the protection of free speech on the Internet—there is a no more paradigmatic fair use
11  than that.[18]   See 17 U.S.C. § 107.   Indeed, P10's desired injunction would effectively
12  hold that research universities cannot aggregate and analyze non-confidential legal
13  complaints in order to safeguard First Amendment rights.

14       **P10 passwords.**   P10 fails to show that third-party websites displaying P10
15  passwords violate P10's rights as a copyright holder.   The passwords are not
16  copyrightable. See 37 C.F.R. § 202.1 (2004); Southco, 390 F.3d at 286.   Nor has P10
17  shown that users logging onto perfect10.com with unauthorized passwords infringed
18  P10's exclusive rights. See Amazon.com, 508 F.3d at 1173 n.13.[19]

19

20

___

21  [18]   If P10 is instead suggesting that *users* of Chilling Effects are the alleged
22  "direct infringers," then that claim is irrelevant to this case.   Even if P10 had evidence
23  that Chilling Effects users have "infringed" P10's copyrights (which it has not
24  proffered), the "contributory infringer" in that scenario would be *Chilling Effects*, not
     Google.   Google is aware of no authority imposing liability for "contributing" to a
25  "contributory infringer" who in turn "contributes" to direct infringement by another.
     [19]   P10 merely claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27  ▮▮▮▮▮, but offers no evidence to support even that nebulous statement.   Zada
     Dec. ¶ 85.
28

                              -15-

1    **Other alleged third-party infringement.**  As to the remaining conduct for

2    which P10 claims Google is contributorily liable, i.e. categories (2), (3), (4), (6), and

3    (7), P10 fails to prove that third-party websites infringed P10's images.  For example,

4    P10 fails to show that Google links to specific images which are owned by P10 and

5    infringed by third-party websites.  P10 also fails to show that Google displays ads on

6    third-party websites next to images which are owned by P10 and infringed by the

7    third-party website.  The same is true of the other third-party conduct P10 identifies.

8    Thus, P10 fails to show underlying direct infringement.  That alone is fatal to P10's

9    contentions.

10            **2.    Google Lacks Knowledge of Infringement.**

11        Contributory liability requires that the secondary infringer "has actual

12   knowledge that specific infringing material is available using its system."

13   Amazon.com, 508 F.3d at 1172 (citing A&M Records, Inc. v. Napster, Inc., 239 F.3d

14   1004, 1022 (9th Cir. 2001); Ellison, 357 F.3d at 1077.  There is no evidence Google

15   had knowledge of specific infringing materials available on its systems for any of the

16   alleged conduct.  Nor can P10 impute such knowledge by way of its DMCA notices.

17   Not one of P10's notices identified alleged infringement on chillingeffects.org, for

18   example.   Because they are defective, P10's claimed notices accordingly did not

19   impute knowledge of infringement on Google's systems.  Perfect 10, Inc. v. CCBill

20   LLC, 488 F.3d 1102, 1113 (9th Cir. 2007) (defective DMCA notices cannot be used

21   to impute "knowledge of infringement"); Amazon.com, 508 F.3d at 1172-73

22   (remanding P10's contributory infringement claim due to factual disputes over the

23   adequacy of P10's DMCA notices).[20]   P10 does not claim Google had other

24   knowledge of infringement.  Thus, P10 fails to satisfy this element.

25

26    [20]   P10 argues that when Google removes an ad from an infringing URL, it places
27   the ad next to P10 images on other infringing URLs.  If true, P10 must submit a valid
      DMCA notice; it does not assert it has done so.  P10 also argues Google refused to
28        (footnote continued)

01980.51320/3374174.1

### 3. There Are No Simple Measures to Prevent Further Damage to P10's Copyrighted Works.

This Court need not consider whether Google could take simple measures to prevent further damage to P10's copyrights, because P10 fails on the other requirements for contributory infringement. See Perfect 10, Inc. v. Visa Int'l Service Assn., 494 F.3d 788, 795 (9th Cir. 2007). Nevertheless, P10 is not likely to prevail on this element either.

P10 contends Google should not wait for P10 to submit a notice of infringement, but should use image recognition technology to affirmatively police the Internet to prevent copies of P10 images from appearing in Image Search results and to prevent ads from being placed next to P10 images, pointing to Google's "find similar images" feature. 2d PI Motion at 11-12. Google already addressed this issue in its DMCA Motions. Kassabian Dec., Ex. D (Search Reply at 23-25). The DMCA places the burden of identifying infringement on the copyright owner. CCBill, 488 F.3d at 1111. Without proper notice of infringement, Google has no way of knowing which uses a copyright owner like P10 regards as infringing, and which are licensed, a fair use, or otherwise acceptable. Poovala Dec., ¶¶ 15, 25. Image recognition technology and Google's "find similar images" feature cannot identify infringing versus fair use or licensed images, nor does P10 present any evidence they can.

P10 also argues Google failed to take simple measures to prevent further damage to P10's images because Google has not suppressed certain URLs identified by P10 and refuses to act against so-called massive infringing paysite advertisers, massive paysite infringers, blogspot.com websites, imagevenue.com, imagerise.com,

---

process a spreadsheet listing infringing Blogger URLs. According to P10, however, ███████████████████████. Zada Dec. ¶ 54. As noted above, post-litigation "notice" does not constitute notice of infringement under the DMCA. Perfect 10, 2009 WL 1334364 at *5.

1   or any link that does not lead directly to a web page with an infringing image. 2d PI
2   Motion at 14. But P10 does not submit *any* evidence that *any* simple measure exists
3   for Google to refrain from providing access to ostensibly infringing images in these
4   ways. Google is under no obligation to suppress or "take action" against websites
5   displaying infringing content or passwords for which P10 has not provided adequate
6   notice. Thus, responding to P10's defective DMCA notices is not a "simple
7   measure" for protecting P10's images. Nor does P 10 identify any authority that
8   Google s obligated to affirmatively police the Internet for alleged infringing images
9   and P10 passwords, or to cut *all* links to websites—even non-infringing links—
10  merely because those websites display allegedly infringing material somewhere on
11  their sites (which material may not even be indexed and linked by Google). Because
12  the law provides otherwise, these cannot be simple measures for preventing further
13  damage to P10's images.

14          **D.      P10 Has Not Established Vicarious Infringement.**

15          "[T]o succeed in imposing vicarious liability, a plaintiff must establish that the
16  defendant exercises the requisite control over the direct infringer and that the
17  defendant derives a direct financial benefit from the direct infringement."
18  Amazon.com, 508 F.3d at 1173. P10 fails to show probable success on either prong.

19          **1.      Google Does Not Control Any Infringing Activity.**

20          "[A] defendant exercises control over a direct infringer when he has both a
21  legal right to stop or limit the directly infringing conduct, as well as the practical
22  ability to do so." Amazon.com, 508 F.3d at 1173.

23          **Third-party websites.** The heart of P10's vicarious infringement claim is that
24  Google is liable for the allegedly infringing activities of third-party websites and
25  other users. But the Ninth Circuit already ruled that "Perfect 10 has not demonstrated
26  a likelihood of showing that Google has the legal right to stop or limit the direct
27  infringement of third-party websites." Id. And this Court rejected P10's nearly-
28  identical argument when it granted A9.com summary judgment, finding that "[t]here

1   is clearly no legal right that A9 has to stop the infringing conduct, and it doesn't have
2   the practical ability to do so." Kassabian Dec., Ex. M (10/27/08 Hearing Tr. at 7:20-
3   9:1); <u>see also</u> 11/4/08 Order (Dkt. No. 221 in the consolidated case).

4       **Paysites.** P10 argues Google is vicariously liable for accepting payments to
5   promote infringers by placing ads for them on other sites and providing sponsored
6   links and thousands of other links to them in search results. 2d PI Motion at 13:2-5.
7   P10 does not explain how such conduct might constitute vicarious infringement. Nor
8   could it. "The ability to stop or limit [infringement] means to shut it down."
9   Kassabian Dec., Ex. M (10/27/08 Hearing Tr. at 8:22-24). As the Ninth Circuit has
10  ruled, "Google cannot terminate those third-party websites or block their ability to
11  'host and serve infringing full-size images' on the Internet." <u>Amazon.com</u>, 508 F.3d
12  at 1174. Paysites are third-party websites. Google does not control what they do—
13  infringing or otherwise—or have the ability to remove them from the Internet.

14      P10 suggests that the fact that some paysites may be AdSense affiliates
15  changes this analysis. 2d PI Motion at 13:2-5, 16:16-18. But the Ninth Circuit
16  rejected this argument and ruled that a mere contractual relationship with an AdSense
17  site is insufficient to impose vicarious liability. <u>Amazon.com</u>, 508 F.3d at 1173-74
18  ("Google's right to terminate an AdSense partnership does not give Google the right
19  to stop direct infringement by third-party websites. An infringing third-party website
20  can continue to [infringe] after its participation in the AdSense program has ended.").

21      **Blogger users.** Perhaps seeking to sidestep this ruling, P10 argues that Google
22  is vicariously liable for any infringing activities of Blogger users. 2d PI Motion at
23  10:25-28. This claim fails as well. Google provides the Blogger service—free of
24  charge—in order to provide a platform for free expression, commentary and the free
25  exchange of ideas. Some users may choose to violate the Terms of Service by
26  posting infringing images. But even if users actually infringe—a point P10 has not
27  proven—Google does not have the "right and ability" to control what Blogger users
28  choose to upload and, without proper notice, cannot know whether any particular

1   image is infringing, authorized, and/or a fair use.[21]  Google can terminate a Blogger

2   account, but the mere existence of a contractual relationship and the ability to end it

3   does not establish vicarious liability.  See Amazon.com, 508 F.3d at 1173-74; Io

4   Group v. Veoh Networks, 586 F.Supp.2d 1132, 1151 (N.D. Cal. 2008) (ability to

5   remove material pursuant to DMCA notices does not constitute right and ability to

6   control infringement) (citations omitted).[22]

### 2.   Google Does Not Receive a Direct Financial Benefit From The Alleged Underlying Infringement.

9        The Court need not reach this issue because P10 fails to show the right or

10  ability to control infringing activity.  See Amazon.com, 508 F.3d at 1175 n.15

11  (same); see also Visa, 494 F.3d at 806 (same).  But even if the "direct financial

12  benefit" element is addressed, P10 fails to show probable success on the merits.

13       Courts have construed "direct financial benefit" narrowly in the Internet

14  context.[23]  For example, this Court recently rejected a theory of "direct financial

15  benefit" based on infringement that "continue[d] to attract users and advertising

---

17  [21]  It is thus distinguished from services the very purpose of which was to infringe
18  copyrights.  See, e.g., Napster, 239 F.3d at 1020 (co-founder mentioned "the need to
    remain ignorant of users' [identities] 'since they are exchanging pirated music'").

19  [22]  Image recognition technology does not change this analysis.  As the Court
20  ruled vis-à-vis A9.com, "The ability to stop or limit [third party infringement] isn't
    synonymous with the ability to detect it.  It means to shut it down."  Kassabian Dec.,
21  Ex. M (10/27/08 Hearing Tr. at 8:22-24).  Even if image recognition technology
    could detect infringement (which it cannot), it certainly cannot "shut down" third-
22  party websites.  Further, to the extent P10 claims Google should use image
23  recognition technology to avoid indexing infringing images, this is a claim of
    contributory infringement, not vicarious.  Amazon.com, 508 F.3d at 1175.

24  [23]  See also Ellison, 357 F.3d at 1079 (no direct financial benefit from providing
25  access to infringing material where the record lacked evidence AOL attracted or
    retained subscriptions because of infringement or lost subscriptions because of
26  obstruction of the infringement); Netbula, LLC v. Chordiant Software, Inc., 2009 WL
27  750201 at *3 (N.D. Cal. Mar. 20, 2009) (rejecting "direct financial benefit" argument
    based solely on compensation packages tied to profits of an alleged infringer).

28

1  dollars to Veoh, and increase[d] the value of [the Investors Defendants'] financial
2  interests in Veoh." UMG Recordings, Inc. v. Veoh Networks, Inc., 2009 WL
3  334022, at *6 (C.D. Cal. 2009).

4       P10 argues Google is vicariously liable for placing ads around P10 images "it
5  has hosted in its blogspot.com program," apparently because "Google receives a
6  direct financial benefit from clicks on each ad ...." 2d PI Motion at 10:25-28; see
7  also id. at 12:12-15. This is precisely the sort of attenuated "financial benefit" theory
8  courts have rejected. P10 must demonstrate some causal connection between the
9  alleged infringing activity and the alleged "financial benefit." Ellison, 357 F.3d at
10 1079. But P10 has failed to make any credible showing that the alleged availability
11 of allegedly infringing P10 images is the reason Blogger users click on particular
12 ads—or access any particular Blogger sites at all. As in UMG Recordings, this is
13 "too far removed from the alleged infringement to be considered a 'direct' financial
14 interest." 2009 WL 334022, at *6.

15 **II.**    **PERFECT 10 HAS NOT ESTABLISHED PROBABLE SUCCESS ON**
16     **ITS PUBLICITY CLAIM.**

17      P10's arguments on its publicity claim are limited to two sentences. P10 cites
18 no law and no facts. It does not even try to show probable success on any element of
19 this claim, including, for example, that the models were damaged. See Upper Deck
20 Authenticated, Ltd. v. CPG Direct, 971 F.Supp. 1337 (S.D. Cal 1997); Cal. Civ. Code
21 § 3344. Nor could P10 have met its burden in any event. Although P10 claims nine
22 models exclusively assigned their publicity rights to P10, in fact, P10 is at best a non-
23 exclusive licensee—and may not hold any publicity rights at all,
24 ██████████████████████████████████. Kassabian Dec., Ex. O
25 (Weber Depo. at 91-97 (██████████████████████)); id. Ex. P
26 (████████/Maren Depo at 114-116, 123-130 (same)); id. Ex. Q (Smith Depo. at
27 55-60 (same)). As one Court has held, "[e]ven if the right to publicity could be

28

1  assigned under California law, it is unlikely that a non-exclusive licensee could assert
2  it." Upper Deck, 971 F.Supp. at 1349.

3      Moreover, P10's publicity claim is preempted by the Communications
4  Decency Act—since Google is not a "content provider"—and by the Copyright Act,
5  since P10 seeks to exercise rights "equivalent" to the scope of copyright law. See 47
6  U.S.C. § 230(c)(1) & (e)(3); Parker, 422 F.Supp.2d at 501; Laws v. Sony Music
7  Entertainment, Inc., 448 F.3d 1134, 1139-43 (9th Cir. 2006).

8  **III.   PERFECT 10 CANNOT SHOW IRREPARABLE HARM.**

9      **A.   P10's Long Delay Refutes Its Claim of Irreparable Harm.**

10      P10 filed suit against Google nearly *six years ago*. The Ninth Circuit vacated
11  P10's preliminary injunction in 2007, and P10 amended its complaint to add Blogger
12  claims in July 2008. Yet, P10 waited until March 2010 to file its Second PI Motion.
13  This lengthy delay undercuts P10's claims of irreparable harm.[24] Oakland Tribune,
14  Inc. v. Chronicle Publishing Co., 762 F.2d 1374, 1377 (9th Cir. 1995) (long delay
15  "implies a lack of urgency and irreparable harm"); Citibank, N.A. v. Citytrust, 756
16  F.2d 273, 276 (2d Cir. 1985) (delay negates presumption of irreparable harm).[25]

17      Further undercutting P10's claim of irreparable harm is the fact that it has
18  repeatedly slowed down this case, arguing Google was proceeding with discovery
19  and motion practice too quickly. See Kassabian Dec., Ex. H (11/14/08 "Joint Letter"

20

21  [24] P10's First PI Motion did not seek to enjoin Google from some of the conduct
22  P10 now seeks to enjoin, such as alleged violations of publicity rights. Thus, this is
    the *first time* P10 seeks a preliminary injunction as to this conduct – more than half a
23  decade after P10 filed its publicity claims. P10's motion is a model of untimeliness.
    [25] P10 may argue that irreparable harm is imminent because Google began
24  forwarding copies of P10 images to Chilling Effects and linking to them in search
25  results. This is a problem of P10's own making. Forwarding notices to Chilling
    Effects has been part of Google's DMCA procedure for years, and P10 was well
26  aware of it before changing the format of its notices to include images. And, P10
27  states that it has ceased sending Google DMCA notices, so by its own admission,
    there could be no purported continuing harm to enjoin.
28

01980.51320/3374174.1

-22-

GOOGLE'S OPPOSITION TO PERFECT 10'S SECOND MOTION FOR A PRELIMINARY INJUNCTION

1   to the Court Re: P10's Request to Stay Discovery (Dkt No. 380) (requesting stay of

2   all discovery motions and discovery unrelated to Google's DMCA Motions).  And

3   just six months ago, P10 requested a stay of all discovery in *Google* pending a ruling

4   on P10's motion in *Amazon*.  Id. Ex. J (P10's Resp. to Amazon Defs.' *Ex Parte*

5   Applic. to Continue Summ. Judg. Deadline (Dkt No. 348 in Consolidated Case) at

6   8:4-7).  Indeed, P10 agreed to an *indefinite* stay of this case pending resolution of the

7   *Microsoft* case.  See Kassabian Dec., Ex. I (P10's Resp. to Court's 12/2/08 Tentative

8   Order) (Dkt No. 394).  And even after that stay lifted, P10 waited nearly another year

9   before filing its Second PI Motion.  P10's repeated, lengthy delays undermine its

10   current claim of irreparable harm.

11       **B.     Alleged Monetary Damages Do Not Establish Irreparable Harm.**

12       Delays aside, P10 also fails to carry its burden of proving irreparable harm.[26]  It

13   claims it is "near bankruptcy, and must have immediate relief to survive," and that its

14   revenues have dropped to $150,000 per year.  2d PI Motion at 1, 5.  But monetary

15   damages cannot constitute the irreparable harm required for a preliminary injunction.

16   Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597,

17   603 (9th Cir. 1991) (economic injury does not support finding of irreparable harm

18   because it can be remedied by damages); Metro-Goldwyn-Mayer Studios, Inc. v.

19   Grokster, Ltd., 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007) (same); Tiber Lab., LLC

20   v. Hawthorn Pharm., Inc., 527 F. Supp. 2d 1373, 1381-82 (N.D. Ga. 2007) (same).

21       Nor does P10 show that an injunction could or would rescue it from its

22   financial failure.  P10 has never operated at a profit.  See Kassabian Dec., Ex. R

23   (10/17/05 Zada Reply Dec. for First PI Motion (Dkt. No. 58) ¶ 60).  Norman Zada

24

---

25   [26]   Copyright owners cannot rely on a presumption of irreparable harm from
alleged infringement.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 392-93

26   (2006) (Supreme Court "has consistently rejected invitations to replace traditional

27   equitable considerations with a rule that an injunction automatically follows" a
copyright infringement finding); see also Grokster, 518 F.Supp.2d at 1211.

28

1   has voluntarily elected to keep the company afloat over the years by lending it
2   millions of dollars, and now indicates that he may stop doing so. 2d PI Motion at 5.
3   An investor's voluntary election to stop funding a money-losing enterprise does not
4   constitute irreparable harm. See Getty Petroleum Marketing, Inc. v. Shipley Fuels
5   Marketing, LLC, 2007 WL 2844872, *22-23 (E.D. Pa. Sept. 27, 2007) (denying
6   preliminary injunction where harm was "self-inflicted" by plaintiff's own business
7   decisions); Southtech Orthopedics, Inc. v. Dingus, 428 F.Supp.2d 410, 422 (E.D.N.C.
8   2006) (same). P10 fails to show it will suffer irreparable harm absent an injunction.

9   **IV.    THE BALANCE OF HARDSHIPS WEIGHS AGAINST P10.**

10          Balanced against P10's long delays and its unproven   claims of irreparable
11  harm, the injunction P10 seeks would impose significant burdens on Google and the
12  Court.   As noted, the proposed injunction avowedly poses a direct threat to free
13  speech, including Google's participation in Chilling Effects.   The injunction also
14  purportedly would require Google to identify massive numbers of allegedly
15  infringing images—which P10 has not bothered to properly identify to Google or the
16  Court.  P10 suggests Google can accomplish this feat by using image recognition
17  technology to police the Internet, but image recognition cannot detect whether a
18  particular use is infringing.  Thus, P10's claimed relief is, at least in part, impossible.

19         P10 further suggests Google should omit all links to websites containing any
20  infringing content and terminate advertising relationships with such websites, even if
21  Google does not link to infringing URLs or display ads on infringing URLs.  Thus,
22  P10 again asks Google to police the Internet to ensure it does not link to or place ads
23  on any third-party website that may infringe P10's images somewhere on its website,
24  without any notice from P10.  Such injunctive relief is inappropriate because, as a
25  matter of law, Google has no such obligation. See Io Group, 586 F.Supp.2d at 1145;
26  Kassabian Dec., Ex. S (S. Rep. No. 105-190, at 19 (1998)).   It is also grossly
27  overbroad and again threatens free speech as it forces Google to act against entire
28  websites, not simply the infringing material. See Perfect 10, 416 F.Supp.2d at 858

01980.51320/3374174.1

-24-

1  n.25 ("[B]ecause websites are often comprised of dozens, if not hundreds of pages,
2  suppressing an entire website due to the infringing content found on one or more
3  specific pages would result in the suppression of speech and would be against the
4  public interest.")  These burdens are particularly inappropriate now, since the Court's
5  imminent ruling on Google's DMCA Motions could render P10's desired injunction
6  moot.  See Kassabian Dec., Ex. F (7/8/09 Order).

7  **V.      THE PUBLIC INTEREST WEIGHS AGAINST AN INJUNCTION.**

8         This Court previously recognized that strong public interests counsel against
9  P10's desired injunctive relief.  See Perfect 10, 416 F.Supp.2d at 848-49 ("search
10 engines such as Google Image Search provide great value to the public"); id. at 859
11 (the "value of facilitating and improving access to information on the Internet ...
12 counsels against an injunction here").  This is particularly true where, as here, P10's
13 claims implicate strong fair use defenses.  See Campbell v. Acuff-Rose Music, Inc.,
14 510 U.S. 569, 578 n.10 (1994) (in fair use cases, the public interest can weigh against
15 injunctive relief); Abend v. MCA, Inc., 863 F.2d 1465, 1479 (9th Cir. 1988), aff'd sub
16 nom. Stewart v. Abend, 495 U.S. 207 (1990).

17                              **Conclusion**

18         For the foregoing reasons, this Court should deny P10's Second PI Motion.

19 DATED: March 15, 2010             QUINN EMANUEL URQUHART &
20                                    SULLIVAN, LLP

21                                    By  /s/ Rachel Herrick Kassabian
22                                       Rachel Herrick Kassabian
                                         Attorneys for Defendant GOOGLE INC.