```
 1

 2

 3                 UNITED STATES DISTRICT COURT

 4               CENTRAL DISTRICT OF CALIFORNIA
                        WESTERN DIVISION
 5


 6
    PERFECT 10, INC.,                )
 7                                   )
            PLAINTIFF,               )
 8                                   )
            VS.                      )   CASE NO. CV 04-9484-AHM(SHX)
 9                                   )
                                     )
10  GOOGLE, INC.,                    )   LOS ANGELES, CALIFORNIA
                                     )   JUNE 28, 2010
11                                   )
            DEFENDANT.               )
12  _____)

13                    TELEPHONIC CONFERENCE

14         BEFORE THE HONORABLE STEPHEN J. HILLMAN
                UNITED STATES MAGISTRATE JUDGE
15

16

17

18  APPEARANCES:            SEE NEXT PAGE

19  COURT REPORTER:         RECORDED

20  COURTROOM DEPUTY:       SANDRA L. BUTLER

21  TRANSCRIBER:            DOROTHY BABYKIN
                            COURTHOUSE SERVICES
22                          1218 VALEBROOK PLACE
                            GLENDORA, CALIFORNIA  91740
23                          (626) 963-0566

24

25  PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
    TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

```
 1    APPEARANCES:  (CONTINUED)
      FOR THE PLAINTIFF:       LAW OFFICES OF JEFFREY N. MAUSNER
 2                             BY:  JEFFREY N. MAUSNER
                                    DAVID NATHAN SCHULTZ
 3                                  ATTORNEYS AT LAW
                               21800 OXNARD STREET
 4                             SUITE 910
                               WOODLAND HILLS, CALIFORNIA  91367
 5

 6    FOR THE DEFENDANT:       QUINN EMANUEL URQUHART & SULLIVAN LLP
                               BY:  RACHEL H. KASSABIAN
 7                                  BRAD LOVE
                                    ATTORNEYS AT LAW
 8                             555 TWIN DOLPHIN
                               SUITE 560
 9                             REDWOOD SHORES, CALIFORNIA  04065

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                          I N D E X

 2   CASE NO. CV 04-9484-AHM(SHX)              JUNE 28, 2010

 3   PROCEEDINGS:   TELEPHONIC CONFERENCE

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          LOS ANGELES, CALIFORNIA; MONDAY, JUNE 28, 2010

2              THE CLERK:  GOOD MORNING.

3              TODAY IS MONDAY, JUNE 28TH, 2010.  THIS IS A

4      TELEPHONIC CONFERENCE IN THE CHAMBERS OF MAGISTRATE JUDGE

5      STEPHEN J. HILLMAN REGARDING CASE NUMBER CV 04-9484, PERFECT 10

6      VERSUS GOOGLE.

7              COUNSEL, PLEASE ENTER YOUR APPEARANCE FOR THE RECORD.

8              MR. SCHULTZ:  DAVID SCHULTZ.

9              THE COURT:  HI, MR. SCHULTZ.  JUDGE HILLMAN.

10             MR. SCHULTZ:  GOOD AFTERNOON, YOUR HONOR.  HOW ARE

11     YOU?

12             THE COURT:  OKAY.  I DON'T THINK WE'VE MET.  HAVE WE?

13             MR. SCHULTZ:  WE HAVE NOT MET.  I WAS ON THE LAST

14     CONFERENCE CALL THAT WE DID HAVE BACK IN MAY, BUT WE HAVE NOT

15     OFFICIALLY MET IN PERSON.

16             THE COURT:  WELL, WELCOME TO THE --

17             MR. MAUSNER:  JEFF MAUSNER FOR PERFECT 10 ALSO.

18             THE COURT:  AH, THERE HE IS.  THERE HE IS.  I THOUGHT

19     YOU ABANDONED ME.

20             MR. MAUSNER:  NO.

21             THE COURT:  HOW ARE YOU?  YOU'RE NOT GOING TO RESPOND

22     TO THAT.

23             WE'RE WAITING FOR THE OTHER SIDE.

24             (PAUSE IN PROCEEDINGS.)

25             MR. MAUSNER:  YOUR HONOR, I HAVE A SEVERE COUGH, AND

1   I MAY HAVE TO LIKE GO AWAY FROM THE PHONE NOT TO DISRUPT THINGS

2   IF I START COUGHING.

3              THE COURT:  WELL, I WON'T CATCH IT.  THAT'S ONE

4   ADVANTAGE TO A TELEPHONIC CONFERENCE.  BUT I HOPE YOU FEEL

5   BETTER.

6              MR. MAUSNER: -- KEEPS GERMS FROM BEING SPREAD ALSO,

7   WHICH IS GOOD.

8              (PAUSE IN PROCEEDINGS.)

9              MS. KASSABIAN:  RACHEL KASSABIAN AND BRAD LOVE --

10             THE COURT:  HI, IT'S JUDGE HILLMAN.  HOW ARE YOU?

11             MS. KASSABIAN:  HI, JUDGE HILLMAN.  WE'RE DOING

12   GREAT.  HOW ARE YOU.

13             THE COURT:  OKAY.

14             MR. SCHULTZ AND MR. MAUSNER ARE ON THE OTHER LINE.

15             CAN EVERYONE HEAR EACH OTHER?

16             MR. MAUSNER:  YES.

17             MR. SCHULTZ:  YES.

18             MS. KASSABIAN:  YES.

19             THE COURT:  OKAY.

20             OKAY.  I DON'T HAVE A TENTATIVE RULING ON THIS

21   MOTION.  IT'S SOMEWHAT CLOSE IN MY MIND.

22             I GUESS TO FOCUS ARGUMENT I'M CONCERNED AS TO WHETHER

23   P10 HAS SHOWN ME SUFFICIENTLY THAT DR. SCHMIDT HAS SOME UNIQUE

24   PERSONAL KNOWLEDGE REGARDING THE FIVE OR SO ISSUES, GLOBAL

25   ISSUES THAT THEY WISH TO DEPOSE HIM ON; AND, SECONDLY, WHETHER

1    THEY HAVE JUMPED THROUGH ENOUGH HOOPS TO HAVE ME ORDER DR.

2    SCHMIDT TO TESTIFY; OR IF, INDEED, THERE ARE ANY MORE -- ON THE

3    OTHER HAND, IF THERE ARE ANY MORE HOOPS THAT COULD BE JUMPED

4    THROUGH.

5              MR. SCHULTZ:  THIS IS MR. SCHULTZ.

6              MR. MAUSNER:  YOUR HONOR, ARE WE ON THE RECORD?

7              THE COURT:  YES.

8              MR. MAUSNER:  -- ON THE RECORD.

9              THE COURT:  ON THE RECORD.

10             MR. SCHULTZ:  YOUR HONOR, THIS IS MR. SCHULTZ.

11             I'D BE HAPPY TO ADDRESS THAT, AND THERE ARE SEVERAL

12   DIFFERENT POINTS IT SEEMS TO ME.

13             FIRST OF ALL, I DON'T MEAN TO NECESSARILY DISPUTE HOW

14   YOUR HONOR IS FRAMING THE QUESTION.  BUT I'M NOT SURE --

15   NOTWITHSTANDING THE FACT THAT WE'RE TALKING ABOUT THE PRESIDENT

16   OF THE CORPORATION, YOUR HONOR.  BUT I'M NOT SURE THAT, IN

17   FACT, IT'S OUR BURDEN TO SHOW THAT DR. SCHMIDT HAS THIS UNIQUE

18   KNOWLEDGE.  I THINK WE'RE STILL TALKING ABOUT A MOTION FOR A

19   PROTECTIVE ORDER.  AND, THEREFORE, IT'S OUR BELIEF THAT IT'S

20   GOOGLE'S BURDEN TO SHOW THAT DR. SCHMIDT DEPOSED WILL CAUSE HIM

21   ANNOYANCE, EMBARRASSMENT, DEPRESSION OR UNIQUE BURDEN.

22             THAT'S, IN FACT, THE CASE LAW WE'VE CITED.  YOU KNOW,

23   BASICALLY IT'S NOT A HEAVY BURDEN WE'RE TALKING ABOUT HERE,

24   NUMBER ONE.

25             AND, NUMBER TWO, THAT IT'S VERY UNUSUAL TO COMPLETELY

1    PREVENT A DEPOSITION FROM GOING FORWARD.

2           BUT TO SPECIFICALLY ADDRESS THE QUESTIONS YOU'RE

3    TALKING ABOUT, AND TO PUT ASIDE SORT OF EXACTLY WHAT THE --

4    WHETHER OR NOT THE KNOWLEDGE HAS TO BE UNIQUE OR NOT, IT SEEMS

5    TO ME THAT AS CEO OF THE COMPANY, DR. SCHMIDT UNQUESTIONABLY

6    HAS KNOWLEDGE REGARDING GOOGLE'S POLICIES AND PRACTICES

7    CONCERNING ALL THE DIFFERENT PROGRAMS AT ISSUE IN THE CASE --

8    WEB SEARCH, IMAGE SEARCH, BLOGGER, BLOG SPOT, ADSENSE, ADWORDS.

9           CERTAINLY AS WELL IN RESPONSE TO SOME OF THE

10   DISCOVERY, AND IN RESPONSE TO THE SPECIFIC REQUESTS FOR

11   PRODUCTION OF DOCUMENTS THAT WE SENT WITH THE DEPOSITION,

12   GOOGLE CONCEDED THAT DR. SCHMIDT HAS KNOWLEDGE REGARDING SOME

13   OF THESE SUBJECTS INSOFAR AS THERE WAS COMMUNICATION AND

14   CORRESPONDENCE THAT WENT BACK AND FORTH.  NOW THEY ATTEMPT TO

15   CLAIM THAT THAT'S ONLY WITH RESPECT TO PRELITIGATION CONDUCT

16   AND COMMUNICATION.  BUT WE DON'T KNOW THAT.  WE HAVEN'T HAD THE

17   OPPORTUNITY TO FIGURE THAT OUT.

18          AND IT SEEMS TO ME THAT WHEN WE'RE TALKING ABOUT

19   WHETHER OR NOT WE'VE MADE A SPECIFIC SHOWING, CERTAINLY IF YOU

20   LOOK AT OUR CITATIONS OF THE ZIMORA CASE WHERE THEY'RE IN A

21   SIMILAR SITUATION, THE DEFENDANTS SUBMITTED NO AFFIDAVIT FROM

22   THE PRESIDENT SAYING THAT HE HAD NO INFORMATION ABOUT MATTERS

23   RELEVANT TO THE LITIGATION.  AND THE COURT HELD UNDER THOSE

24   CIRCUMSTANCES IT'S REASONABLE TO EXPECT THAT A COMPANY

25   PRESIDENT WOULD HAVE SUBSTANTIAL KNOWLEDGE ABOUT BASIC COMPANY

1    POLICY AND PRACTICE.

2              THE COURT:  WELL, I ASSUME --

3              MR. SCHULTZ: -- SO, IT WOULD SEEM TO ME --

4              THE COURT:  WAIT, WAIT, WAIT, WAIT.

5         I'M ASSUMING --

6              MR. SCHULTZ:  OH, I'M SORRY, YOUR HONOR.

7              THE COURT:  I'M ASSUMING THAT YOUR GENERAL

8    PROPOSITION --

9              THAT'S ONE OF THE PROBLEMS WITH DOING THESE

10   TELEPHONICALLY IS I CAN'T BREAK IN VERY EASILY.

11             MR. SCHULTZ:  I APOLOGIZE --

12             THE COURT:  NO, NO.  IT'S ALL RIGHT.  IT'S ALL RIGHT.

13   IF YOU COULD JUST LISTEN FOR THAT POSSIBILITY.

14             I MEAN, I'M ASSUMING THAT MOST CEOS ARE EXPECTED TO

15   KNOW SOMETHING ABOUT A LOT OF POLICIES, BUT THAT'S NOT THE

16   STANDARD.

17             MR. SCHULTZ:  OKAY.

18             THE COURT:  I REALLY WOULD LIKE YOU TO FOCUS ON WHAT

19   I'M INTERESTED IN, AND THAT IS ARE THERE OTHER DISCOVERY

20   METHODS, ADDITIONAL 30(B)(6) DEPOSITIONS THAT COULD BE BROUGHT

21   BEFORE TAKING DR. SCHMIDT'S TIME.  OR, IN FACT, ARE YOU SIMPLY

22   GETTING STONEWALLED ENTIRELY, AND THIS IS YOUR HAIL MARY BEST

23   OPTION.

24             MR. SCHULTZ:  WELL, I'LL BE HAPPY TO ADDRESS IT.  I

25   WAS GETTING TO THAT, YOUR HONOR.

1          IT SEEMS TO ME MY ANSWER TO THAT IS TWOFOLD.

2          ON THE ONE HAND, I THINK YOU -- I WOULDN'T

3    NECESSARILY DESCRIBE THIS AS A HAIL MARY, BUT IT SEEMS TO ME

4    THAT THIS IS AN APPROPRIATE OPTION UNDER THE CIRCUMSTANCES.

5          WHY?  WE TOOK -- THERE'S ONLY A CERTAIN NUMBER OF

6    DEPOSITIONS WE'RE ALLOWED TO TAKE IN THE CASE.  WE'VE ALREADY

7    TAKEN THE DEPOSITIONS OF MR. MACGILLIVRAY, MS. WOJCICKI -- I'M

8    PRONOUNCING HER NAME WRONG.  I APOLOGIZE -- AND MR. BROUGHER.

9          AND AS WE POINTED OUT IN OUR PAPERS, MORE THAN A

10   HUNDRED DIFFERENT TIMES EACH OF THEM SAID I DON'T KNOW OR THE

11   EQUIVALENT TO QUESTIONS WE WERE TRYING TO ASK.

12         WE'VE SERVED REAMS AND REAMS OF WRITTEN DISCOVERY TO

13   WHICH IN MANY, IF NOT MOST, IF NOT ALL CASES WE'VE RECEIVED

14   OBJECTIONS.  AND YOUR HONOR IS WELL AWARE THAT WE KEEP HAVING

15   TO COME BEFORE YOU, AND WE KEEP HAVING ALL THESE DISCOVERY

16   DISPUTES WHERE WE'RE ARGUING WE'RE ENTITLED TO DOCUMENTS.  AND

17   GOOGLE IS TAKING THE POSITION -- AND I'M NOT SAYING THEY'RE

18   UNREASONABLE POSITIONS, BUT THEY'RE TAKING THE POSITION THAT

19   WE'RE NOT ENTITLED -- YOU KNOW, WE'RE NOT ENTITLED TO THOSE

20   DOCUMENTS.

21         SO, OUR POSITION HERE IS THIS ISN'T A HAIL MARY.

22   THIS IS A POSITION WHERE WE BELIEVE WE'RE ENTITLED TO TAKE DR.

23   SCHMIDT'S DEPOSITION UNDER THE CIRCUMSTANCES.

24         IF I UNDERSTAND GOOGLE'S POSITION, THEY SEEM TO BE

25   SAYING IT'S NOT ENOUGH FOR YOU TO SERVE YOUR DISCOVERY.  YOU

1   HAVE TO -- OR ASK THE QUESTIONS IN DEPOSITION.  IF YOU DON'T

2   GET ANSWERS TO THOSE QUESTIONS, YOU THEN HAVE TO END UP GOING

3   FORWARD AND FILING ADDITIONAL MOTIONS TO COMPEL OR ADDITIONAL

4   MOTIONS TO REOPEN 30(B)(6) DEPOSITIONS.

5           AND YOU CAN'T THEN GO ON AND TAKE THE DEPOSITION OF

6   SOMEBODY ELSE WITHIN THE CHAIN OF COMMAND WHO HAS KNOWLEDGE.

7   THIS IS NOT A SITUATION WHERE WE'RE TRYING AS OUR FIRST

8   DEPOSITION TO DEPOSE DR. SCHMIDT.

9           NOW, THE OTHER REASON, AND WHY I THINK, YOU KNOW, TO

10  CALL THIS A HAIL MARY, I'M NOT SURE IT'S THE MOST ACCURATE

11  CHARACTERIZATION OF THE SITUATION, IS BECAUSE FRANKLY THE OTHER

12  ISSUE WHERE THIS SEEMS TO BE RELEVANT IN TERMS OF DR. SCHMIDT

13  IS OUR FINDING OUT THAT DR. SCHMIDT MADE THE COMMENT IN THE

14  YOUTUBE LITIGATION THAT IT WAS HIS POLICY AND PRACTICE -- AND

15  I'M GOING TO GET THE QUOTE RIGHT IN FRONT OF ME SO I DON'T

16  MISSTATE IT INTO THE RECORD -- "IT WAS MY PRACTICE" --

17          MR. MAUSNER:  WHILE YOU'RE LOOKING FOR THAT, LET ME

18  JUST NOTE ONE OTHER THING.

19          YOUR HONOR, GOOGLE HAS ALSO FILED A MOTION FOR

20  PROTECTIVE ORDER TO TRY TO KEEP US FROM TAKING THE DEPOSITION

21  OF MS. POOVALA.  SO, APPARENTLY, THEIR POSITION NOW IS THAT WE

22  SHOULD NOT BE ABLE TO TAKE ANY DEPOSITIONS AT ALL.

23          MR. SCHULTZ:  AND, ACTUALLY, YOUR HONOR, LET ME

24  FOLLOW UP WITH ONE POINT ABOUT THAT BECAUSE YOUR HONOR

25  SPECIFICALLY SAID, WELL, WHAT ABOUT ADDITIONAL 30(B)(6)

1    DEPOSITIONS.  AND WITH RESPECT TO MS. POOVALA, THEY'RE TAKING

2    THE POSITION THAT, LOOK, YOU ALREADY HAVE A 30(B)(6) DEPOSITION

3    OF HER.  THEREFORE, YOU CAN'T DEPOSE HER INDIVIDUALLY.  SO, I

4    FEEL LIKE WE'RE IN A SITUATION, YOUR HONOR, WHERE WE --

5            THE COURT:  IS THAT -- IS THAT WHAT THAT MOTION COMES

6    DOWN TO?  I HAVEN'T READ THAT.  I HAVEN'T STUDIED THAT MOTION.

7            IS THAT THE HEART OF THAT DISPUTE?

8            MR. SCHULTZ:  THAT'S PART OF IT, YOUR HONOR.

9            MR. MAUSNER:  YES.  WE -- WE --

10           MR. SCHULTZ:  YOUR HONOR --

11           THE COURT:  LET'S STICK WITH THIS ONE.

12           MR. MAUSNER:  -- THIS DEPOSITION FOR TWO HOURS PRIOR

13   -- WELL PRIOR TO THE MOTION FOR SUMMARY JUDGMENT.  NOW,

14   THEY'RE SAYING WE CAN'T TAKE HER DEPOSITION --

15           THE COURT:  ALL RIGHT.

16           MR. MAUSNER:  -- INDIVIDUALLY --

17           THE COURT:  ALL RIGHT.  LET'S STICK WITH THE --

18           MR. MAUSNER:  -- AFTER SHE WAS THE MAIN WITNESS --

19           THE COURT:  LET'S STICK WITH THIS.

20           MR. MAUSNER:  -- IN ALL OF THEIR MOTIONS FOR SUMMARY

21   JUDGMENT.

22           THE COURT:  ALL RIGHT.  LET'S GO BACK TO THIS ONE.

23           MR. SCHULTZ:  OKAY.

24           THE COURT:  ALL RIGHT.

25           MR. SCHULTZ:  SO, TO RETURN, YOUR HONOR -- AND I AM

1    ALMOST FINISHED WITH IT.  I DON'T WANT TO MONOPOLIZE YOUR TIME

2    ON THIS.

3            BUT DR. SCHMIDT SAID -- AND WE FIND OUT ABOUT THIS IN

4    MARCH.  HE SAID IT WAS MY PRACTICE TO DELETE OR OTHERWISE CAUSE

5    THE EMAILS THAT I HAD READ TO GO AWAY AS QUICKLY AS POSSIBLE.

6            AND, FRANKLY, WE SEE THAT.  AND WE GET VERY CONCERNED

7    BECAUSE YOUR HONOR IS WELL AWARE OF THE LITIGATION BEFORE YOU

8    WITH RESPECT TO DOCUMENT PRESERVATION ORDERS AND THINGS LIKE

9    THAT.  AND ALL OF A SUDDEN WE SEE THIS.  AND WE SAY TO

10   OURSELVES, WELL, YOU KNOW, WE HAVEN'T GOTTEN DOCUMENTS PRODUCED

11   INVOLVING DR. SCHMIDT.  WE NEED TO DEPOSE HIM TO FIND OUT WHAT

12   COMMUNICATIONS HE PERHAPS HAD.

13           NOW, GOOGLE COMES BACK AND SAYS, WELL, LOOK, THAT'S A

14   RED HERRING BECAUSE WE'VE HAD EMAIL BACK-UP SYSTEMS IN PLACE

15   SINCE JULY 2007 TO PREVENT THE DELETION OF DR. SCHMIDT'S

16   EMAILS.

17           THE PROBLEM WITH THAT AND THE REASON WHY WE SHOULD BE

18   ENTITLED TO DEPOSE DR. SCHMIDT, NOT ONLY ABOUT HIS BASIC

19   COMPANY KNOWLEDGE AND BECAUSE WE'VE ALREADY DEPOSED OTHER

20   UNDERLINGS, WAS BECAUSE THIS COMPLAINT WAS FILED IN NOVEMBER

21   2004.  WE SERVED DISCOVERY TO WHICH DR. SCHMIDT'S EMAILS WOULD

22   HAVE BEEN RESPONSIVE.  IT WAS SERVED IN MARCH 2005, PERFECT

23   10'S FIRST REQUEST FOR PRODUCTION.  I'M NOT GOING TO QUOTE THE

24   REQUEST IN OUR PAPERS THAT SPECIFICALLY ADDRESSED THAT ISSUE.

25           SO, THEREFORE, THERE IS A PERIOD OF OVER TWO YEARS

1   WHERE WE DON'T KNOW WHAT HAPPENED TO DR. SCHMIDT'S EMAILS.  AND

2   FOR GOOGLE TO SAY, WELL, YOU CAN'T ASK HIM ABOUT THAT BECAUSE

3   YOU HAVEN'T SHOWN IT'S RELEVANT, WELL, WE DON'T KNOW WHAT THOSE

4   EMAILS CONTAINED.  WE CAN'T KNOW.  AND GOOGLE HASN'T COME

5   FORWARD WITH A SINGLE SHRED OF EVIDENCE BEFORE YOU IN

6   CONNECTION WITH THIS HEARING TO ADDRESS THAT -- TO ADDRESS THAT

7   ISSUE.

8          THERE IS NO DECLARATION FROM DR. SCHMIDT.  THERE'S NO

9   DECLARATION FROM ANYBODY RELATING TO WHETHER OR NOT THERE MAY

10  BE RELEVANT EMAILS DURING THAT PERIOD OF TIME PRIOR TO JULY

11  2007.

12         SO, IT'S NOT NECESSARILY ONLY THAT WE'VE -- THAT

13  WE'VE DEPOSED OTHER PEOPLE AND WE'RE DOING WHAT YOUR HONOR

14  CHARACTERIZED AS A HAIL MARY.  THIS IS A SECOND REASON WHY WE

15  BELIEVED WE WERE ENTITLED TO TAKE DR. SCHMIDT'S DEPOSITION.  WE

16  THINK HE NOT -- WE THINK HE NOT ONLY HAS INFORMATION THAT'S

17  RELEVANT TO THE HEART OF THE ISSUES IN THIS CASE.  WE THINK HE

18  ALSO HAS -- WE ALSO FEEL THAT WE'RE ENTITLED TO FIND OUT WHAT

19  HAPPENED TO THE DOCUMENTS AS TO THE EMAILS THAT HE TALKED ABOUT

20  DELETING, WHETHER OR NOT THERE WERE ANY RELEVANT EMAILS THERE.

21         BECAUSE, FRANKLY, WE WERE TROUBLED BACK IN JANUARY

22  WHEN YOUR HONOR RELIED UPON MS. BROUGHER'S DECLARATION, EVEN

23  THOUGH MS. BROUGHER HADN'T BEEN AT GOOGLE FOR A LONG TIME, TO

24  DENY OUR MOTION FOR A DOCUMENT PRESERVATION ORDER.  NOW, WE

25  HAVE THIS WHOLE ISSUE COMING UP.

1          AND IT FRANKLY CONCERNS US THAT NOT ONLY IS IT

2     BECOMING VERY DIFFICULT FOR US TO GET DOCUMENTS FROM GOOGLE,

3     BUT WE'RE FINDING OUT THAT THERE MAY BE DOCUMENTS OUT THERE

4     THAT NO LONGER EXIST.

5          SO, BOTH WITH RESPECT TO DR. SCHMIDT'S KNOWLEDGE WITH

6     RESPECT TO THE FACT THAT WE'VE ALREADY TAKEN OTHER LOWER-LEVEL

7     DEPOSITIONS WITHOUT GETTING THE ANSWERS TO OUR QUESTIONS, AND

8     WE SHOULDN'T HAVE TO MAKE MOTIONS TO COMPEL WITH RESPECT TO

9     THOSE DOCUMENTS AND THOSE DISCOVERY MATTERS AND THOSE

10    DEPOSITIONS IN ORDER TO GET ANSWERS.  WE SHOULD -- BECAUSE OF

11    WHAT HAPPENED WITH DR. SCHMIDT AND HIS TESTIMONY REGARDING HIS

12    DESTRUCTION OF EMAILS, IT SEEMS TO ME THAT WE ARE ENTITLED TO

13    HAVE THIS DEPOSITION GO FORWARD.  AND IT CERTAINLY SEEMS TO ME

14    THAT IN LIGHT OF ALL THOSE THINGS, IT'S GOOGLE'S BURDEN HERE.

15    AND GOOGLE HASN'T SATISFIED ITS BURDEN.

16          THE COURT:  ALL RIGHT.

17          MS. KASSABIAN.

18          MS. KASSABIAN:  GOOD AFTERNOON, YOUR HONOR.

19          I WILL JUST -- UNLESS THERE IS SOMETHING YOUR HONOR

20    IS PARTICULARLY CONCERNED ABOUT, I WILL JUST TAKE MR. SCHULTZ'S

21    COMMENTS IN ORDER.

22          THE FIRST THING YOUR HONOR ASKED MR. SCHULTZ WAS TO

23    IDENTIFY SOME SPECIFIC UNIQUE KNOWLEDGE THAT DR. SCHMIDT WOULD

24    HAVE TO JUSTIFY PERFECT 10'S TAKING HIS DEPOSITION ABOUT

25    DMCA-RELATED ISSUES IN THIS CASE.

1        I DIDN'T HEAR ONE SINGLE SPECIFIC PIECE OF

2    INFORMATION THAT PERFECT 10 BELIEVED DR. SCHMIDT AND ONLY DR.

3    SCHMIDT --

4            (COUGHING.)

5        MS. KASSABIAN:  SO, INSTEAD, I HEARD HIM SAYING,

6    FIRST, THAT IT'S NOT THEIR BURDEN ON THIS MOTION.  WE ALL AGREE

7    THAT THE RULE 26(C) MOTION GOOGLE HAS TO SHOW GOOD CAUSE.

8    HOWEVER, WHEN DR. -- WHAT MR. SCHULTZ FAILS TO RECOGNIZE IS

9    THAT WITH AN APEX DEPOSITION, IT'S ABSOLUTELY -- THERE ARE TWO

10   QUESTIONS THAT COURTS ASK.  THIS IS NOT YOUR RUN-OF-THE-MILL

11   DEPOSITION.  THIS IS A CEO --

12       THE COURT:  I UNDERSTAND.

13       MS. KASSABIAN:  -- OF A 20,000-PERSON, MULTI-MILLION

14   DOLLAR COMPANY.

15       THERE ARE TWO QUESTIONS THAT ARE ASKED.  DOES THE

16   HIGH-LEVEL DEPONENT HAVE UNIQUE, NOT CUMULATIVE KNOWLEDGE, AND

17   ARE THERE OTHER LESS BURDENSOME DISCOVERY METHODS.  THOSE ARE

18   THE QUESTIONS THAT YOUR HONOR ASKED AT THE OUTSET.

19       HAVEN'T HEARD ANY EVIDENCE OF ANYTHING UNIQUE.  AND

20   CERTAINLY HAVE NOT HEARD ANY DEMONSTRATION THAT THERE ARE NO

21   LESS BURDENSOME METHODS.

22       SO, IF WE CAN JUST SORT OF TAKE THIS ONE AT A TIME.

23   FIRST, DR. -- OR MR. SCHULTZ SAID, DR. SCHMIDT MUST HAVE

24   KNOWLEDGE REGARDING GOOGLE'S POLICIES AND PRACTICES.

25       WELL, LET'S ASSUME HE DOES.  THAT IS CLEARLY NOT

1   UNIQUE.  THAT IS CLEARLY INFORMATION THAT NOT ONLY HAS PERFECT

2   10 ALREADY ASKED OTHER DEPONENTS QUESTIONS ABOUT AND OBTAINED

3   ANSWERS, BUT THERE'S JUST NO POSSIBLE WAY THAT PERFECT 10 CAN

4   DEMONSTRATE THAT WHATEVER KNOWLEDGE DR. SCHMIDT MIGHT ALSO HAVE

5   ABOUT GOOGLE'S POLICIES -- WHICH THEY DON'T REALLY SPECIFY.

6   THEY JUST SAY GENERALLY GOOGLE POLICIES ABOUT --

7            (COUGHING.)

8            MS. KASSABIAN:  THERE'S NO POSSIBLE WAY THAT -- WELL,

9   MR. SCHULTZ SAYS, WELL, WE'VE ALREADY TAKEN OTHER DEPOSITIONS,

10  AND WE DIDN'T GET THE ANSWERS WE WANTED.  NOW, PERFECT 10 HAS

11  DEPOSED FIVE GOOGLE EMPLOYEES.  FIVE.  NOW, THE SIXTH

12  DEPOSITION IS NOT THE CEO.  THERE ARE 20,000 GOOGLE EMPLOYEES.

13           IF FOR ANY REASON PERFECT 10 WAS UNHAPPY WITH ANY OF

14  THE DEPOSITION TESTIMONY THAT IT OBTAINED FROM THE OTHER FIVE

15  GOOGLE DEPONENTS, IT CERTAINLY NEVER TOLD US.  AT NO POINT

16  PRIOR TO THIS MOTION FOR A PROTECTIVE ORDER THAT GOOGLE FILED

17  SEVERAL WEEKS AGO DID PERFECT 10 EVER EVEN REMOTELY SUGGEST

18  THAT ANY OF THOSE OTHER 30(B)(6) AND INDIVIDUAL GOOGLE

19  DEPONENTS DID NOT ANSWER THE QUESTIONS ON THESE SUBJECTS THAT

20  WERE POSED TO THEM.

21           MOREOVER, EVEN ASSUMING THEY DIDN'T IN SOME RESPECTS,

22  THE ANSWER IS TO MEET AND CONFER WITH US AND SAY, HEY, YOU KNOW

23  WHAT.  THERE WERE CERTAIN ISSUES WE DON'T THINK YOUR WITNESS

24  WAS PREPARED ON.  SO, WE DON'T THINK THAT WAS THE RIGHT

25  DEPONENT.  YOU NEED TO DESIGNATE A DIFFERENT 30(B)(6) WITNESS

1    ON THAT.

2              NEVER DID PERFECT 10 EVER MAKE THAT ARGUMENT TO US.

3              NEXT, MR. SCHULTZ SAYS THAT WE HAVE CONCEDED THAT DR.

4    SCHMIDT MUST HAVE RELEVANT KNOWLEDGE REGARDING DOCUMENTS THAT

5    GOOGLE PRODUCED THAT RELATE TO DR. SCHMIDT.

6              IN FACT, THOUGH, PERFECT 10 HASN'T POINTED TO A

7    SINGLE DOCUMENT, NOT ONE, IN GOOGLE'S 54-PLUS-THOUSAND-PAGE

8    DOCUMENT PRODUCTION THAT HAS ANYTHING TO DO WITH DR. SCHMIDT.

9    NOT ONE PAGE.

10             THAT'S WITHIN PERFECT 10'S POWER.  WE PRESUME PERFECT

11   10 HAS LOOKED THROUGH THE PRODUCTION AND, IN FACT, FOUND

12   NOTHING TO ARGUE IN FAVOR OF A SCHMIDT DEPOSITION BECAUSE THEY

13   WOULD HAVE BROUGHT IT TO YOUR HONOR'S ATTENTION.

14             WHEN THEY POINTED TO GOOGLE'S RESPONSES TO THE 12TH

15   SET OF DOCUMENTS -- DOCUMENT RESPONSES, WE CLARIFIED IN OUR

16   SUPPLEMENTAL MEMO THAT THE ONLY DOCUMENT THAT WAS REFERENCED

17   THERE IN RESPONSE TO A COUPLE OF REQUESTS CALLING FOR DOCUMENTS

18   REGARDING SCHMIDT'S COMMUNICATIONS REGARDING PERFECT 10 WAS

19   THIS SETTLEMENT EMAIL THAT DR. ZADA SENT DR. SCHMIDT BACK IN

20   NOVEMBER OF 2004 WHEN HE WASN'T HAPPY, I GUESS, WITH HIS

21   DISCUSSIONS WITH GOOGLE'S LEGAL TEAM.  AND DR. SCHMIDT REFERRED

22   DR. ZADA TO GOOGLE'S LEGAL TEAM.

23             SO, WE POINTED THAT DOCUMENT OUT TO SHOW AN ABSENCE

24   OF ANY EVIDENCE THAT THERE'S ANYTHING IN THE RECORD THAT SHOWS

25   SOME CONNECTION BETWEEN DR. SCHMIDT AND THIS CASE, LET ALONE

1    UNIQUE KNOWLEDGE BY DR. SCHMIDT.

2            PERFECT 10 HAS ALL OF OUR DOCUMENTS.  IF THERE WAS

3    SOMETHING IN THERE THAT WAS RELEVANT, THEY COULD AND SHOULD

4    HAVE COMMITTED IT TO YOUR HONOR IN CONNECTION WITH THIS MOTION.

5    THEY HAVEN'T POINTED TO ONE SINGLE PAGE OF DOCUMENTS NOR ONE

6    INTERROGATORY RESPONSE NOR ONE RFA RESPONSE OR ANYTHING ELSE

7    THAT MIGHT SUGGEST THAT DR. SCHMIDT HAS SOMETHING WITHIN HIS

8    PERSONAL KNOWLEDGE THAT IS UNIQUE TO ONLY HIM THAT WOULD

9    REQUIRE HIS DEPOSITION IN THIS CASE.

10           NEXT, MR. SCHULTZ MENTIONED THE ZIMORA CASE.  AND HE

11   SAID THAT THAT SUPPORTED THEIR ARGUMENT THAT THE CEO SHOULD

12   HAVE TO TESTIFY IN THIS CASE.

13           IN THE ZIMORA CASE, I BELIEVE IT WAS A SMALL CLOSELY

14   HELD AGRICULTURAL CORPORATION, AND THERE THE PLAINTIFF SEEKING

15   THE DEPOSITION HAD PRODUCED EVIDENCE THAT THE CEO HAD

16   PERSONALLY OVERSEEN ISSUES RELATED TO THE ADVANCEMENT OF WOMEN

17   IN HIS COMPANY.  AND THIS WAS A SEX DISCRIMINATION SUIT.  SO,

18   THERE HAD BEEN EVIDENCE PRODUCED BY THAT PLAINTIFF THAT THE CEO

19   HAD UNIQUE PERSONAL KNOWLEDGE BECAUSE HE OVERSAW THE COMPANY'S

20   RESPONSE TO SEX, HARASSMENT AND DISCRIMINATION COMPLAINTS.

21           THERE'S NO EVIDENCE OF THAT HERE.  THERE'S NO

22   EVIDENCE THAT DR. SCHMIDT OVERSEES DMCA PROCESS OR HAS ANY

23   INVOLVEMENT WHATSOEVER IN THAT ASPECT OF THE COMPANY.

24           NEXT, MR. SCHULTZ SAYS, WELL, WE'VE DEPOSED OTHER

25   GOOGLE DEPONENTS, AND THEY SAID I DON'T KNOW.

1          I'VE ALREADY COVERED THAT IN LARGE PART.  OBVIOUSLY,

2     IF -- THERE'S A VERY SIMPLE AND STRAIGHTFORWARD REMEDY WHEN YOU

3     SERVE A 30(B)(6) NOTICE AND THE WITNESS DOESN'T HAVE THE RIGHT

4     ANSWERS.  YOU ASK FOR ANOTHER 30(B)(6) WITNESS.  YOU DON'T SAY,

5     OKAY, THAT DIDN'T WORK OUT FOR ME.  SO, I WOULD LIKE TO TALK TO

6     YOUR CEO.  THEY NEVER DID THAT.

7          MOREOVER, IF YOU READ THE TRANSCRIPT EXCERPTS, A LOT

8     OF THOSE QUESTIONS FRANKLY WERE COMPLETELY OFF THE TOPIC OR

9     INCOMPREHENSIBLE.  THERE'S NOTHING WRONG WITH A WITNESS SAYING

10    I DON'T KNOW IF, IN FACT, THIS WAS NOT SOMETHING THAT THEY WERE

11    SUPPOSED TO BE PRESSED TO KNOW AS A 30(B)(6) WITNESS OR IF, IN

12    FACT, THE QUESTION WAS INCOMPREHENSIBLE, REPETITIVE, OR

13    OTHERWISE GAVE THE WITNESS SOME LEGITIMATE BASIS TO SAY I DON'T

14    KNOW.

15         THE COURT:  WHAT WERE THEY -- WHAT WERE THEY -- AND I

16    DON'T EXPECT YOU TO KNOW THIS EXACTLY, BUT WHAT WERE THEY

17    NOTICED -- WHAT TOPICS WERE THEY NOTICED FOR?

18         MS. KASSABIAN:  I ACTUALLY CAN GIVE YOU SOME EXAMPLES

19    OF THAT, YOUR HONOR.  I BELIEVE WE MENTIONED SOME OF THAT IN

20    OUR SUPPLEMENTAL MEMO, BUT LET ME SEE -- AND THIS COMES FROM

21    THE SUPPLEMENTAL DECLARATION OF BRAD LOVE, WHICH WAS FILED I

22    BELIEVE ON JUNE 14TH.  AND HE ATTACHES TO HIS DECLARATION THE

23    30(B)(6) NOTICE THAT PERFECT 10 SERVED ON GOOGLE -- I BELIEVE

24    THIS IS BACK IN 2006, YOUR HONOR.  THIS IS NEARLY FOUR YEARS

25    AGO.  AND THIS IS THE FIRST TIME THAT WE'RE HEARING THAT

1   PERFECT 10 THINKS THAT IT DID NOT GET THE ANSWERS THAT IT

2   DESERVED IN RESPONSE TO THIS 30(B)(6) DEPO NOTICE SERVED FOUR

3   YEARS AGO.

4            FOR INSTANCE, SOME OF THE QUESTIONS WERE:

5            WHAT DID GOOGLE DO TO PROCESS PERFECT 10'S DMCA

6   NOTICES AND WHEN.

7            LET'S SEE.  ALL ACTIONS TAKEN BY GOOGLE WITH RESPECT

8   TO DISABLING ACCESS TO PERFECT 10 COPYRIGHTED MATERIAL.

9            THE BIGGEST ADVERTISERS IN THE ADULT CONTENT

10  BUSINESS.

11           HOW DOES GOOGLE EARN MONEY THROUGH ITS ADSENSE AND

12  ADWORDS PROGRAMS.

13           GOOGLE'S REVIEW OF THE CONTENT OF ADSENSE AND

14  ADWORDS.

15           THESE ARE OBVIOUSLY ADSENSE AND ADWORDS POLICY-TYPE

16  OF QUESTIONS.

17           LET'S SEE.  THE AVAILABILITY -- HOW THE AVAILABILITY

18  OF ADULT CONTENT THROUGH GOOGLE DRAWS TRAFFIC TO GOOGLE ON ITS

19  IMPACT AND IMPACTS ITS REVENUES.

20           THAT'S ONE OF THE ISSUES THEY WANTED SUPPOSEDLY TO

21  ASK DR. SCHMIDT ABOUT THAT THEY'VE ALREADY COVERED.

22           THE COURT:  LET ME JUST INTERRUPT YOU THERE.

23           DO EITHER SIDE RECALL TAKING THAT ADULT CONTENT DRAW,

24  WAS THERE TESTIMONY ON THAT, OR DID HE SAY I DON'T KNOW?

25           MS. KASSABIAN:  WE CAN LOOK THROUGH TO SEE

1    ATTACHMENTS AND SEE QUICKLY IF THAT SPECIFIC QUESTION WAS

2    ASKED.  BUT I CAN'T -- OF COURSE WE CAN'T CONTROL EXACTLY WHAT

3    PERFECT 10 ASKED.  WE CAN CERTAINLY ONLY -- THE WITNESSES CAN

4    ONLY ANSWER THE QUESTIONS THAT WERE POSED.  THE POINT IS THAT

5    WAS ONE OF THEIR TOPICS THAT THEY WANTED TO TALK ABOUT.

6    ALTHOUGH IT'S COMPLETELY IRRELEVANT BY THE WAY TO THE MERITS OF

7    THIS CASE.  IT HAS NOTHING TO DO WITH THE MERITS.

8              BUT IN ANY EVENT --

9              MR. SCHULTZ:  CAN I JUST ADDRESS THE ISSUES ABOUT THE

10   36 -- 30(B)(6) FOR ONE SECOND?

11             THE COURT:  ALL RIGHT.

12             MR. SCHULTZ:  MY ONLY CONCERN HERE, YOUR HONOR, IS WE

13   SEEM TO BE FOCUSING ON THAT WE SHOULD HAVE FOLLOWED UP ON

14   30(B)(6) DEPOSITIONS.

15             THERE WERE NOTICES THAT WERE SENT OUT FOR 30(B)(6)

16   DEPOSITIONS, BUT MY UNDERSTANDING IS THAT BOTH -- THE

17   DEPOSITION OF BOTH MR. MACGILLVARY AND MR. BROUGHER WERE ALSO

18   CONVERTED INTO INDIVIDUAL DEPOSITIONS.  AND I FRANKLY WAS NOT

19   AROUND AND INVOLVED IN THE CASE AT THE TIME SO I CAN'T SPEAK

20   FOR MS. WOJCICKI, BUT I'M NOT SURE THAT SHE WAS A 30(B)(6)

21   DESIGNEE AS WELL.

22             SO, TO SAY IN PART, WELL, YOU KNOW, WE SHOULD HAVE

23   GOTTEN OTHER PEOPLE FOR THE 30(B)(6) DEPOSITION I THINK MISSES

24   THE BOAT.  IT MISSES THE BOAT IN SOME WAY.  WE WERE DEPOSING

25   PEOPLE IN THEIR INDIVIDUAL CAPACITIES AS WELL.  AND WE WEREN'T

1    GETTING ANSWERS TO THESE QUESTIONS.

2              MS. KASSABIAN:  YOUR HONOR, MAY I FINISH?

3              THE COURT:  YES.

4              MR. SCHULTZ:  NO, THAT'S ALL.  BACK TO YOU, RACHEL.

5    I'M SORRY.

6              MS. KASSABIAN:  YES.

7              MR. LOVE:  YOUR HONOR, I HAVE PORTIONS OF MR.

8    BROUGHER'S --

9              YES, THIS IS MR. LOVE.

10             -- AND I HAVE PORTIONS OF MR. BROUGHER'S DEPOSITION

11   TRANSCRIPT, WHO WAS ONE OF THE WITNESSES GOOGLE DESIGNATED TO

12   TESTIFY ON THAT 30(B)(6) TOPIC.  HE WAS ASKED IF HE HAD SEEN

13   ANY ANALYSES REGARDING THE PERCENTAGE OF WEB SEARCHES --

14             MR. SCHULTZ:  BRAD, I'M SORRY TO INTERRUPT YOU.  CAN

15   YOU JUST TELL ME WHERE YOU'RE READING FROM.

16             MR. LOVE:  THIS IS PAGE 81.  IT IS DEPOSITION

17   TRANSCRIPT.

18             MR. SCHULTZ:  I SEE.

19             MR. LOVE:  HE WAS ASKED IF HE HAD SEEN THOSE --

20             MR. SCHULTZ:  WHAT LINE?

21             MR. LOVE:  IF HE HAD SEEN WEB SEARCHES -- IF HE HAD

22   SEEN ANY ANALYSIS DONE REGARDING THE PERCENTAGE OF WEB SEARCHES

23   FOR ADULT CONTENT.  TESTIFIED THAT HE HAD NOT.

24             HE TESTIFIED -- HE ASKED IF HE HAD SEEN ANY ANALYSES

25   OR STUDIES ON THE PERCENTAGE OF SEARCHES DONE WITH SAFE SEARCH

1    ON.  AND HE TESTIFIED HE HAD NOT.

2           MS. KASSABIAN:  YOUR HONOR, THEY -- AND, YOUR HONOR,

3    THEY SEARCHED IT -- I'M NOT SURE IF YOU'RE FAMILIAR WITH WHAT

4    THAT IS.  BUT THAT IS A FEATURE ON GOOGLE THAT PERMITS THE USER

5    TO LIMIT THE SEARCH RESPONSES TO THINGS THAT WOULD NOT BE LIKE

6    ADULT CONTENT --

7           THE COURT:  ALL RIGHT.

8           MS. KASSABIAN: -- OR OTHERWISE SENSITIVE.

9           SO, THE POINT IS THERE WERE SOME QUESTIONS ASKED ON

10   THIS OF MR. BROUGHER, AND HE ANSWERED THEM.  THE NEXT -- EVEN

11   ASSUMING, THOUGH, THAT THERE WAS SOMETHING WRONG WITH HIS

12   ANSWERS THAT HE GAVE THREE OR FOUR YEARS AGO, THAT DOES NOT

13   THEN SOMEHOW JUSTIFY NOW FOUR YEARS LATER ASKING GOOGLE'S CEO

14   TO TESTIFY ON THIS SUBJECT.  IT'S NOT EVEN BEFORE US.

15          BUT IF I COULD CONTINUE, YOUR HONOR, ON SOME OF THE

16   OTHER POINTS --

17          THE COURT:  YES.

18          MS. KASSABIAN: -- THAT MR. SCHULTZ RAISED.

19          HE ALSO SAID, WELL, WE WANT TO TALK TO DR. SCHMIDT

20   ABOUT DOCUMENT PRESERVATION.

21          THAT AMONG MANY OTHER SUBJECTS IS NOT SOMETHING THAT

22   PERFECT 10 HAS EVER SOUGHT TO QUESTION GOOGLE ABOUT THE OTHER

23   WITNESSES OR VIA A 30(B)(6) DEPOSITION.  WITH A 20,000-PERSON

24   COMPANY YOU DON'T GO TO THE CEO AND SAY, LET'S TALK ABOUT

25   SOMETHING LIKE DOCUMENT PRESERVATION.  THERE ARE MANY WAYS TO

1    GET THAT SORT OF TESTIMONY.  PERFECT 10 HAS NEVER SERVED A

2    30(B)(6) ON THIS OR OTHERWISE SERVED A DEPO NOTICE ON A WITNESS

3    INFORMING US THAT THEY WANTED TO ASK THAT WITNESS ABOUT

4    DOCUMENT PRESERVATION.

5         SO, UNDER THE TEST FOR AN APEX DEPOSITION, THAT'S

6    JUST COMPLETELY OUT.  THERE CLEARLY ARE OTHER LESS BURDENSOME

7    MEANS THAN ASKING THE CEO TO SIT DOWN AND TALK ABOUT THAT THAT

8    HAVE NOT BEEN EXERCISED BY PERFECT 10.

9         THE NEXT ISSUE THAT DR. SCHULTZ RAISES IS HE SAYS --

10        THE COURT:  NOT DR. SCHULTZ.  BUT HE MAY -- MAYBE

11   HE'S A DOCTOR.

12        MR. SCHULTZ:  I'M NOT.

13        BUT THANK YOU FOR GIVING ME THE TITLE, RACHEL.  I

14   APPRECIATE IT.

15        MS. KASSABIAN:  I'LL GIVE IT TO YOU TODAY.  IT WILL

16   BE AN HONORARY DOCTORATE.

17        MR. SCHULTZ:  OKAY.  IN WHAT MAY I ASK?

18        MS. KASSABIAN:  YOU CAN CHOOSE.

19        MR. SCHULTZ:  OH, THANK YOU.

20        THE COURT:  MANNERS.  MANNERS.

21        MR. SCHULTZ:  I'M SORRY.  I DIDN'T HEAR THAT, YOUR

22   HONOR.

23        THE COURT:  MANNERS.

24        MR. SCHULTZ:  THANK YOU.

25        MS. KASSABIAN:  HE SAYS, WELL, YOUR HONOR -- MR.

1   SCHMIDT SAYS, THERE ARE DOCUMENT REQUESTS THAT PERFECT 10

2   SERVED GOING BACK TO MARCH OF 2005 THAT WOULD CALL FOR DR.

3   SCHMIDT'S DOCUMENTS, AND I'M NOT GOING TO QUOTE THEM.

4           WELL, I'D LOVE TO HEAR HIM QUOTE THEM.  BECAUSE THERE

5   AREN'T ANY GOING BACK TO MARCH OF 2005 THAT HAS ANYTHING TO DO

6   WITH DR. SCHMIDT.

7           AS YOUR HONOR WELL KNOWS, WHEN A LAWSUIT IS FILED,

8   THE DUTY TO PRESERVE DOCUMENTS EXTENDS ONLY TO RELEVANT

9   CUSTODIANS NOT EVERY SINGLE PERSON IN A 20,000-PERSON COMPANY.

10  THERE ARE NO DOCUMENT REQUESTS GOING BACK THAT FAR THAT HAS

11  ANYTHING TO DO WITH DR. SCHMIDT.

12          THE NEXT THING THAT MR. SCHULTZ TALKED ABOUT IS,

13  WELL, THERE'S NO DECLARATION FROM DR. SCHMIDT SAYING, I DON'T

14  HAVE --

15          THE COURT:  THERE'S NO REQUIREMENT -- THERE'S NO

16  REQUIREMENT FOR THAT.  I AGREE WITH YOU.

17          MS. KASSABIAN:  I'M SORRY, YOUR HONOR?

18          THE COURT:  THERE'S NO REQUIREMENT FOR THAT KIND OF

19  LAW.

20          MS. KASSABIAN:  THAT'S RIGHT.  THERE'S NO

21  REQUIREMENT.

22          SO, IN CLOSING, MR. SCHULTZ SAID, CLEARLY THERE'S

23  INFORMATION THAT DR. SCHMIDT HAS THAT'S RELEVANT.

24          BUT HE DIDN'T ACTUALLY POINT TO ANYTHING.  I STILL

25  HAVEN'T HEARD ANY UNIQUE PERSONAL KNOWLEDGE THAT PERFECT 10

1    BELIEVES THAT DR. SCHMIDT HAS.  APEX DEPOSITIONS ARE NOT TO BE

2    TAKEN LIGHTLY.  YOU DON'T DEPOSE FIVE EMPLOYEES OF A 30,000 --

3    20,000-PERSON COMPANY AND THEN SAY, WELL, I WANT MORE.  SO,

4    DEPOSITION NUMBER SIX IS GOING TO BE YOUR CEO REGARDLESS OF

5    WHETHER I HAVE ANY BASIS TO BELIEVE THAT HE COULD SAY ANYTHING

6    UNIQUE AND RELEVANT TO THIS CASE.

7             AND, LASTLY, YOUR HONOR, I DO WANT TO POINT OUT THAT

8    ALL OF THESE ISSUES THAT PERFECT 10 SPECULATES THAT DR. SCHMIDT

9    MIGHT BE ABLE TO TALK ABOUT -- THINGS LIKE, POLICIES AND

10   PRACTICES REGARDING SEARCH, BLOGGER, ADSENSE, DMCA ISSUES,

11   COPYRIGHT INFRINGEMENT.  THESE ARE ALL DMCA-RELATED ISSUES,

12   RIGHT?  I THINK WE'VE BEEN AROUND THIS BLOCK MANY, MANY TIMES.

13   THIS DEPOSITION NOTICE WAS SERVED IN MARCH OF 2010, EIGHT

14   MONTHS AFTER PERFECT 10 FILED FOR SUMMARY JUDGMENT ON DMCA

15   ISSUES.

16            IF, IN FACT, IT WAS UNHAPPY WITH THE TESTIMONY IT HAD

17   OBTAINED ON COPYRIGHT AND DMCA ISSUES, IT WAS OBLIGED TO RAISE

18   THAT IN A TIMELY FASHION AND THROUGH THE APPROPRIATE MEANS --

19   NOT TO WAIT EIGHT MONTHS AND THEN DECIDE, I'M GOING TO TRY TO

20   ASK FOR A CEO'S DEPOSITION WITHOUT POINTING TO ANYTHING

21   SPECIFIC.

22            SO, THERE REALLY IS A TIMING ISSUE HERE, YOUR HONOR.

23   IT'S ONE THING TO INCONVENIENCE THE CEO OF A LARGE COMPANY.

24   IT'S ANOTHER THING TO DO IT AT A POINT WHEN THE ISSUES THAT

25   THEY SUPPOSEDLY WANT TO ASK HIM ABOUT ARE SO UNTIMELY.  WE NOW

1   KNOW THAT JUDGE MATZ IS ON THE VERGE OF FILING HIS FINAL

2   WRITTEN ORDER.

3           BUT IN ANY EVENT, TO SERVE A DEPOSITION NOTICE LIKE

4   THIS THAT IS SO INCREDIBLY BURDENSOME ON THE COMPANY EIGHT

5   MONTHS AFTER THIS SAME PLAINTIFF HAS ALREADY SOUGHT SUMMARY

6   JUDGMENT ON THE VERY ISSUES THEY WANT TO ASK THE CEO ABOUT IS

7   JUST ABSOLUTELY UNCALLED FOR.

8           AND WE BELIEVE WE'VE MET OUR BURDEN TO SHOW GOOD

9   CAUSE ON THAT BASIS IN ADDITION TO THE BASIS THAT NOTHING IN

10  PERFECT 10'S PAPERS AND NOTHING MR. SCHULTZ HAS SAID HERE TODAY

11  IDENTIFIED EVEN ONE SINGLE ISSUE THAT DR. SCHMIDT AND ONLY DR.

12  SCHMIDT WOULD KNOW AND BE ABLE TO SPEAK TO PERTAINING TO THIS

13  CASE.

14          MR. SCHULTZ:  YOUR HONOR, MAY I BRIEFLY RESPOND --

15          THE COURT:  YES.  SURE.

16          MR. SCHULTZ: -- TO FOUR OF THOSE POINTS.

17          THIS IS MR. SCHULTZ AGAIN.

18          THERE ARE AT LEAST FOUR POINTS THAT MS. KASSABIAN HAS

19  MADE THAT TROUBLE ME BECAUSE I FRANKLY THINK THEY'RE INCORRECT.

20          THE FIRST POINT SHE MAKES IS SHE SAYS, WELL, WE NEVER

21  QUESTIONED ANYBODY BELOW DR. SCHMIDT REGARDING DOCUMENT

22  PRESERVATION, AND THERE ARE LESS BURDENSOME WAYS FOR US TO GET

23  THE INFORMATION THAN DEPOSING DR. SCHMIDT.

24          THE PROBLEM WITH THAT, OF COURSE, IS ONE OF THE MAJOR

25  GENESES, AND THE REASON WHY WE SERVED OUR SUBPOENA WHEN WE

1    SERVED IT IN MARCH WAS AT LEAST IN PART BECAUSE THAT'S WHEN WE

2    FOUND OUT THAT DR. SCHMIDT STATED THAT IT WAS HIS PRACTICE TO

3    DELETE OR OTHERWISE CAUSE THE EMAILS HE HAD READ TO GO AWAY AS

4    QUICKLY AS POSSIBLE.

5           FRANKLY, IF HE'S THE ONE DELETING THE EMAILS, I DON'T

6    SEE HOW YOU CAN POSSIBLY HAVE ANYBODY ELSE BE ABLE TO TESTIFY

7    AS TO WHAT EMAILS HE MAY OR MAY NOT HAVE SEEN BECAUSE THEY'RE

8    NO LONGER IN THE SYSTEM.  THEY'VE BEEN DELETED BY DR. SCHMIDT.

9    AND, THEREFORE, HE'S THE ONLY ONE WHO CAN TESTIFY ABOUT IT.

10          FOR US -- FOR HER TO SAY THAT WE DIDN'T ASK THESE

11   QUESTIONS BEFORE ABOUT SOMEONE ELSE, THE POINT IS WE ASKED THEM

12   NOW BECAUSE WE FOUND OUT THAT DR. SCHMIDT HAD BEEN DELETING

13   EMAILS.  BELIEVE YOU ME, IF I KNEW ABOUT THAT YEARS EARLIER, I

14   WOULD HAVE ASKED ABOUT IT.  BUT NOW WE -- YOU KNOW, YOUR HONOR

15   I THINK SAID IN JANUARY THAT THERE WAS A QUESTION AS TO WHETHER

16   WE HAD A BASIS FOR A DOCUMENT PRESERVATION ORDER BECAUSE OF

17   WHAT GOOGLE HAD DONE.  WE DIDN'T HAVE THIS EVIDENCE BACK THERE.

18   BELIEVE ME, IF WE DID, WE WOULD HAVE BROUGHT IT BEFORE YOU.

19   NOW WE HAVE IT.  AND NOW WE'RE ENTITLED TO ASK ABOUT IT.

20          MS. KASSABIAN ALSO TALKED ABOUT WHETHER OR NOT THERE

21   WERE -- WHETHER OR NOT THERE WERE REQUESTS FOR PRODUCTION BACK

22   IN 2005 THAT WERE -- TO WHICH EMAILS FROM DR. SCHMIDT COULD

23   HAVE BEEN GERMANE.  AND THE ONLY REASON I DIDN'T QUOTE IT.  AND

24   I APOLOGIZE FOR THIS IS I DIDN'T HAVE THE PAGE IN FRONT OF ME,

25   BUT I'LL QUOTE THEM NOW.  AND IT WILL SHOW YOU THAT CERTAINLY

1    DR. SCHMIDT COULD HAVE HAD RESPONSIVE EMAILS OR RELEVANT EMAILS

2    THAT RELATE TO THESE REQUESTS.

3              ALL DOCUMENTS THAT CONSTITUTE OR EMBODY

4              COMMUNICATIONS BETWEEN OR AMONG EMPLOYEES OF GOOGLE

5              THAT REFER OR RELATE TO PLAINTIFF PERFECT 10.

6              ALL DOCUMENTS THAT CONSTITUTE OR EMBODY

7              COMMUNICATIONS BETWEEN OR AMONG EMPLOYEES OF GOOGLE

8              THAT REFER TO OR RELATE TO GOOGLE'S POTENTIAL

9              LIABILITY FOR COPYRIGHT INFRINGEMENT,

10             MISAPPROPRIATION OF RIGHTS OF PUBLICITY OR TRADEMARK

11             INFRINGEMENT.

12             ALL COMMUNICATIONS WITH THIRD PARTIES THAT REFER TO

13             PLAINTIFF PERFECT 10.

14             ALL INTERNAL DOCUMENTS THAT REFER TO PLAINTIFF

15             PERFECT 10.

16             NOW, I UNDERSTAND THAT THERE IS NO SPECIFIC MENTION

17    OF DR. SCHMIDT IN THERE.  BUT CERTAINLY HE'S AN EMPLOYEE OF THE

18    COMPANY.  HE WORKS FOR THE COMPANY.  AND THOSE REQUESTS CALL

19    FOR, AMONG OTHER THINGS, DOCUMENTS SENT OR EMAILS SENT OR

20    RECEIVED BY DR. SCHMIDT.

21             SO, THE NOTION THAT THERE WASN'T A REQUIREMENT TO

22    PRESERVE EMAILS ON THIS SUBJECT BY DR. SCHMIDT, THAT SEEMS TO

23    BE SIMPLY INCORRECT.

24             AND, YOU KNOW, THAT'S WHY THE ARGUMENT HERE THAT

25    THERE WAS NO DUTY, THERE WERE NO DOCUMENTS BECAUSE HE MAY NOT

1    HAVE HAD KNOWLEDGE OR INFORMATION.  THIS IS A COPYRIGHT

2    INFRINGEMENT CLAIM HOW GOOGLE OPERATES ON ITS SYSTEM.  AND IN

3    TERMS OF THE VARIOUS PRODUCTS IT'S CERTAINLY SOMETHING THAT'S

4    RELEVANT TO THE CLAIMS HERE.

5           AND THE NOTION THAT DR. SCHMIDT MAY NEVER HAVE SENT

6    OR RECEIVED ANY RELEVANT EMAILS ON THE SUBJECT TO ME BORDERS ON

7    THE ABSURD.  YOU'RE DEALING WITH A CEO OF A COMPANY WHO CLEARLY

8    DEALS WITH THE ISSUES OF COPYRIGHT INFRINGEMENT OR RIGHTS OF

9    PUBLICITY, IF NOT ON A DAY-TO-DAY BASIS, CERTAINLY AT SOME TIME

10   DURING THE MORE THAN TWO-YEAR PERIOD FROM MARCH OF 2005 WHEN

11   THESE DOCUMENT REQUESTS WERE SERVED UNTIL JULY 2007 WHEN GOOGLE

12   ASSERTS THAT THERE WERE SUPPOSEDLY CLAIMS PUT IN THAT WOULD

13   HAVE PROTECTED AND PREVENTED THE DESTRUCTION OF EMAILS.

14          SO, THAT'S POINT NUMBER TWO, THE NOTION THAT THIS

15   ISN'T THE RELEVANT ISSUE SEEMS TO ME TO BE INCORRECT.

16          THE OTHER POINT, YOUR HONOR, IS YOUR HONOR SAID THAT

17   THERE IS NO REQUIREMENT THAT DR. SCHMIDT SUBMIT A DECLARATION

18   HERE.  AND WITHOUT AGREEING OR DISAGREEING WITH THAT, THE FACT

19   THAT THERE IS NO DECLARATION FROM ANYBODY SAYING THAT DR.

20   SCHMIDT HAS -- YOU KNOW, DR. SCHMIDT HAS NO RELEVANT KNOWLEDGE

21   OR INFORMATION.  AND I THINK WHEN BALANCING THE BURDEN HERE, I

22   THINK THAT'S RELEVANT AS WELL.

23          AND THE LAST POINT I'D LIKE TO MAKE IS MS. KASSABIAN

24   TALKS ABOUT THE FACT THAT WE DIDN'T SERVE THE SUBPOENA ON DR.

25   SCHMIDT UNTIL MARCH 2010, EVEN THOUGH THE DMCA ISSUES WERE

1    RAISED BY MOTION BEFOREHAND.

2         THE TWO POINTS THAT ARE RELEVANT THERE ARE, FIRST, WE

3    SERVED THE SUBPOENA RIGHT AFTER WE FOUND OUT ABOUT DR.

4    SCHMIDT'S POLICIES AND PRACTICES WITH REGARD TO EMAILS.

5         AND WITH RESPECT TO THE FACT THAT JUDGE MATZ'S RULING

6    MAY BE COMING DOWN THE PIKE SHORTLY, I THINK WE'VE SAID IN THE

7    VARIOUS DIFFERENT PLEADINGS THAT WE'VE SUBMITTED TO YOUR HONOR,

8    AND I WON'T BELABOR THE POINT TOO MUCH, OTHER THAN JUST TO SAY

9    THAT REGARDLESS OF HOW THAT RULING COMES DOWN, EVEN IF THE

10   TENTATIVE RULING BECOMES THE FINAL RULING, THERE'S STILL GOING

11   TO BE DMCA ISSUES THAT ARE RELEVANT HERE.

12        SO, THE NOTION THAT SOMEHOW WE'RE NOT ENTITLED TO

13   DEPOSE DR. SCHMIDT SIMPLY AND MERELY BECAUSE JUDGE MATZ MIGHT

14   BE RULING IS JUST INCORRECT AS A MATTER OF FACT --

15        THE COURT:  WAIT.  IF HE GOES ESSENTIALLY WITH HIS

16   TENTATIVE, WHAT ARE THE DMCA ISSUES LEFT IN THE CASE?

17        MR. SCHULTZ:  WELL, I HOPE MR. MAUSNER CAN CORRECT ME

18   IF I SAY THIS WRONG, BUT THERE WERE DIFFERENT CATEGORIES OF

19   DMCA NOTICES, AND I BELIEVE THE TENTATIVE IS THAT OUR RULE B OR

20   CATEGORY B DMCA NOTICES WOULD BE SUFFICIENT.

21        MR. MAUSNER:  YES, THAT WAS ONE RULING.

22        NOW, IN THE TENTATIVE HE INDICATED THAT THE CATEGORY

23   C NOTICES WERE NOT SUFFICIENT.  BUT, THEN, DURING THE ORAL

24   ARGUMENT I THINK JUDGE MATZ RECOGNIZED THAT THE CATEGORY C

25   DOCUMENTS WERE SUFFICIENT AS WELL AND, IN FACT, TOLD GOOGLE'S

1    COUNSEL THAT WHAT THEY WERE SAYING ABOUT WHAT WAS LACKING IN

2    THE GROUP C NOTICES WAS UNDULY BURDENSOME FOR THE COPYRIGHT

3    OWNER.

4            MS. KASSABIAN:  YOUR HONOR, MAY I RESPOND?

5            THE COURT:  TELL ME AGAIN WHAT -- SOMEONE TELL ME

6    AGAIN, WHAT WERE THE THREE CATEGORIES REAL QUICKLY, A, B, AND

7    C.

8            MR. MAUSNER:  YOUR HONOR --

9            THE COURT:  I CAN LOOK IT UP ONLINE, BUT IF YOU COULD

10   JUST BRIEFLY SUMMARIZE.

11           MR. MAUSNER:  I COULD DO THAT.

12           THE CATEGORY A DOCUMENTS WERE THE EARLY NOTICES THAT

13   PERFECT 10 SENT.

14           CATEGORY B DOCUMENTS -- THE CATEGORY B NOTICES WERE

15   NOTICES THAT WERE IN SPREADSHEET FORMAT.

16           CATEGORY C NOTICES WERE NOTICES THAT ATTACHED A COPY

17   OF THE INFRINGING IMAGE PRINTED OUT.  AND ALSO HAD THE URL WITH

18   THE INFRINGING IMAGE --

19           AND THERE'S A LOT MORE INFORMATION RELATED TO B AND C

20   NOTICES, BUT ESPECIALLY C NOTICES.  BUT THAT'S -- THOSE ARE THE

21   ESSENTIAL POINTS REGARDING THE DMCA NOTICES.

22           B WERE SPREADSHEETS.  C WERE ACTUAL PRINTOUTS OF THE

23   INFRINGING IMAGE.

24           MS. KASSABIAN:  YOUR HONOR, MAY I RESPOND?

25           THE COURT:  YES.

1          MS. KASSABIAN:  PERFECT 10 IS JUST I GUESS MAKING MY

2     POINT FOR ME.  WE HAVE NO IDEA EXACTLY WHAT THAT FINAL RULING

3     IS GOING TO SAY.  CERTAINLY TO THE EXTENT THAT ANY OF PERFECT

4     10'S COPYRIGHT CASES REMAIN, IT MIGHT BE A VERY, VERY TINY

5     PIECE, WHICH IS WHAT THE TENTATIVE ORDER LEFT.  IT DID NOT

6     LEAVE ALL OF PERFECT 10'S CATEGORY B NOTICES.  IT STRUCK ALL OF

7     "A" AND ALL OF "C."  AND THEN IT SAID CATEGORY B NOTICES WERE

8     DEFECTIVE IN A VARIETY OF WAYS.  BUT THAT IN CERTAIN WAYS THEY

9     WERE NOT DEFECTIVE.

10          IF YOU APPLY THE COURT'S GUIDELINES AND RULINGS TO

11     THE ACTUAL BODY OF CATEGORY B NOTICES, ALL BUT A TINY, TINY

12     FRACTION ARE OUT OF THE CASE.

13          SO, NUMBER ONE, WE HAVE NO IDEA EXACTLY WHAT THE

14     FINAL RULING IS GOING TO BE.  BUT, CERTAINLY, IT'S GOING TO

15     HAVE A HUGE IMPACT ON WHAT POTENTIAL SCOPE OF DMCA OR

16     COPYRIGHT-RELATED DISCOVERY, IF ANY, IS GOING TO REMAIN.

17          AND THE SECOND EVEN MORE IMPORTANT POINT I WANT TO

18     MAKE IS PERFECT 10 HAS ABSOLUTELY NO BASIS OTHER THAN PURE AND

19     UTTER SPECULATION.  TO TELL YOUR HONOR THAT DR. SCHMIDT HAS

20     EVER EVEN SEEN ONE OF THESE NOTICES OR WOULD HAVE ANYTHING TO

21     SAY ABOUT PERFECT 10 NOTICES -- THERE'S AN ADMINISTRATIVE

22     PERSON IN GOOGLE'S LEGAL DEPARTMENT WAY DOWN THE CHAIN WHO

23     HANDLES DMCA REMOVALS.

24          THERE'S ABSOLUTELY NO BASIS BEFORE YOUR HONOR TO

25     SUGGEST THAT DR. SCHMIDT WOULD HAVE ANYTHING TO SAY ABOUT THE

1    SUFFICIENCY OF PERFECT 10'S NOTICES.  ZERO.  I MEAN, THAT'S

2    HUGE.

3              THE COURT:  ALL RIGHT.  WELL, I'M GOING TO GO AHEAD

4    AND --

5              MR. MAUSNER:  MAY I SAY SOMETHING, YOUR HONOR?

6              THE COURT:  WELL, LET ME JUST SAY THIS.  I'M GOING TO

7    CONTINUE TO STUDY THE MOTION AND PREPARE A RULING, BUT I WILL

8    KEEP IN MIND THAT THERE'S -- THERE IS THE DMCA ISSUE WHICH

9    COULD BE SEVERELY IMPACTED ONE WAY OR THE OTHER BY JUDGE MATZ'S

10   RULING, SO.  THERE'S A LOT -- THERE'S A LOT --

11             MR. MAUSNER:  -- SECOND.

12             THE COURT:  THERE'S NO REASON TO PUT THIS ON --

13             MR. MAUSNER:  FIRST OF ALL, YOUR HONOR, THE PERSON

14   THAT MS. KASSABIAN IS REFERRING TO IN THE DMCA DEPARTMENT AT

15   GOOGLE IS MS. POOVALA.  AND THEY HAVE ALSO FILED A PROTECTIVE

16   ORDER TRYING TO PREVENT US FROM TAKING MS. POOVALA'S

17   DEPOSITION. WE HAVE BEEN TRYING TO DEPOSE HER SINCE OCTOBER.

18   FIRST THEY TOLD US SHE WAS OUT ON MATERNITY LEAVE MONTH AFTER

19   MONTH.  AND, THEN, FINALLY, WHEN SHE CAME BACK FROM MATERNITY

20   LEAVE THEY SAID, WELL, NOW THAT SHE'S BACK WE'RE NOT GOING TO

21   ALLOW YOU TO DEPOSE HER.

22             SO, THIS IS ALL VERY HYPOCRITICAL ON THEIR PART

23   BECAUSE THEY'RE ALSO NOT ALLOWING US TO DEPOSE MS. POOVALA.

24             MR. SCHULTZ:  I WAS JUST GOING TO SAY, YOUR HONOR, I

25   THINK WE'RE GETTING WHIPSAWED ON THE ONE HAND.  GOOGLE'S

1  POSITION IS, WELL, YOU CAN'T TAKE THE DEPOSITION OF DR.

2  SCHMIDT.  YOU HAVE TO TAKE THE DEPOSITION OF THE PERSON WHO

3  DEALT WITH THESE NOTICES.  WHEN WE WANT TO TAKE THE DEPOSITION

4  OF THE PERSON WHO DEALT WITH THESE NOTICES, MS. POOVALA, WE'RE

5  TOLD WE CAN'T TAKE HER DEPOSITION.

6       AND IN BOTH CASES WE'RE TOLD, WELL, WHEN YOU'RE

7  UNHAPPY WITH ANSWERS YOU GOT TO QUESTIONS, YOU SHOULD BE

8  MEETING AND CONFERRING SO THAT YOU CAN HAVE AN ADDITIONAL

9  30(B)(6).  BUT EVERY TIME WE MEET AND CONFER, IT FORCES PERFECT

10  10 ONCE AGAIN TO HAVE TO FILE ANOTHER MOTION.

11       SO, IT'S BEEN VERY DIFFICULT FOR US TO GET ANY SORT

12  OF DISCOVERY, YOUR HONOR.  AND I WON'T BELABOR THE POINT OTHER

13  THAN TO SAY THAT I THINK GOOGLE CAN'T HAVE IT BOTH WAYS.

14       MS. KASSABIAN:  YOUR HONOR, THIS IS MS. KASSABIAN.

15       I'M SORRY.  I WAS NOT FINISHED WITH WHAT I WAS

16  SAYING.  CERTAINLY, I'M SURE, AS YOUR HONOR IS AWARE, THE

17  POOVALA DEPOSITION AND PROTECTIVE ORDER MOTION IS NOT ON

18  CALENDAR FOR TODAY.  I WILL SIMPLY SAY THAT PERFECT 10 ALREADY

19  DID DEPOSE HER AT LENGTH IN NOVEMBER OF 2008.  BUT CERTAINLY --

20       MR. MAUSNER:  FOR TWO HOURS.

21       MS. KASSABIAN: -- WE WILL ARGUE THAT --

22       MR. MAUSNER:  FOR TWO HOURS AND THEN THEY WALKED OUT.

23       MS. KASSABIAN:  BUT, YOUR HONOR, IF I COULD JUST

24  FINISH.  I'D APPRECIATE IF MR. MAUSNER COULD RESPECT MY TIME TO

25  ADDRESS YOUR HONOR HERE TODAY.

1        SO, WE WILL CERTAINLY TAKE UP THE ISSUES RELATING TO

2   THE POOVALA -- THE SECOND POOVALA DEPOSITION THAT PERFECT 10

3   WANTS TO TAKE OF HER WHEN THAT HEARING OCCURS IN AUGUST.

4        BUT IF I COULD JUST FINISH DIRECTING WHAT DR. -- WHAT

5   MR. -- LET'S CALL HIM DR. SCHULTZ -- WHAT DR. SCHULTZ WAS

6   SAYING AT THE END THERE.  SINCE YOUR HONOR IS TAKING THIS

7   MATTER UNDER SUBMISSION, I WANT TO MAKE SURE YOUR HONOR HAS ALL

8   THE INFORMATION THAT IT NEEDS.

9        MR. SCHULTZ MADE, I BELIEVE, TWO OR THREE POINTS.  I

10  ADDRESSED THE FIRST ONE, WHICH RELATED TO HOW THE DMCA RULING

11  IS GOING TO IMPACT ANY FUTURE DMCA DISCOVERY, LET ALONE

12  DMCA-RELATED DISCOVERY DIRECTED AT THE CEO.

13       SECONDLY, HE SAID, WELL, YOU KNOW, THE REASON WHY WE

14  FILED THE MOTION -- THE DEPOSITION NOTICE WHEN WE DID WAS

15  BECAUSE THAT'S WHEN WE LEARNED THAT DR. SCHMIDT HAD TESTIFIED

16  TO HAVING A PRACTICE OF DELETING EMAILS IN THE VIACOM CASE,

17  WHICH I GUESS THOSE DOCUMENTS WERE UNSEALED IN 2010.

18       THE PROBLEM WITH MR. SCHULTZ'S ARGUMENT, HOWEVER, IS

19  THAT THERE IS ABSOLUTELY NOTHING WRONG WITH ANY WITNESS

20  DELETING EMAILS IF THAT IS NOT A RELEVANT WITNESS TO THE CASE,

21  WHICH AGAIN IS JUST SOMETHING THAT PERFECT 10 IS CONVENIENTLY

22  JUMPING OVER.

23       THE NEXT ISSUE THAT MR. SCHULTZ TALKED ABOUT WAS THE

24  2005 REQUEST FOR PRODUCTION.  HE SAID THAT DR. SCHMIDT COULD

25  HAVE RESPONSIVE EMAILS REGARDING THINGS LIKE ALL DOCUMENTS

1    REGARDING PERFECT 10 OR ALL DOCUMENTS REGARDING COPYRIGHT

2    INFRINGEMENT.

3          FIRST OF ALL, ON THE PERFECT 10 REQUEST, ANY ONE AT

4    THE COMPANY COULD THEORETICALLY -- IF YOU'RE GOING TO SHRINK TO

5    THE LEVEL OF SPECULATION -- HAVE SOME DOCUMENT REGARDING

6    PERFECT 10.  THAT IS NOT THE STANDARD.  IT IS PURE SPECULATION

7    TO SAY DR. SCHMIDT POTENTIALLY COULD HAVE A DOCUMENT.  SO COULD

8    A NIGHTTIME JANITOR AT GOOGLE.  THAT DOES NOT MEAN THAT

9    COMPANIES ARE OBLIGED TO PRESERVE EVERY SINGLE EMPLOYEE'S

10   EMAILS BECAUSE OF SOME THEORETICAL POSSIBILITY.

11         WHAT COMPANIES ARE OBLIGED TO DO IS TO INVESTIGATE,

12   FIGURE OUT WHICH WITNESSES HAVE SOME INVOLVEMENT IN THE CASE,

13   AND THEN TO PRESERVE -- MAKE SURE THAT THOSE DOCUMENTS ARE

14   PRESERVED.

15         THAT'S EXACTLY WHAT GOOGLE DID.  WHAT PERFECT 10 IS

16   ASKING TO DO IS GO ON A FISHING EXPEDITION.  AND WE CITED AMONG

17   OTHER CASES, YOUR HONOR, THE AMERISTAR JET CHARTER VERSUS

18   SIGNAL COMPOSITE CASE, WHICH IS 244 F.3D 189, WHICH IS ONE OF

19   THE MANY, MANY APPELLATE DECISIONS THAT SAYS, WE WILL NOT ALLOW

20   SIGNAL -- IN THIS CASE THE PLAINTIFF -- TO GO ON A FISHING

21   EXPEDITION WITH THE MERE HOPE THAT IT WILL OBTAIN CERTAIN

22   INFORMATION.

23         AND THAT'S WHAT THEY'RE TALKING ABOUT HERE.  THEY'RE

24   SAYING IT'S THEORETICALLY POSSIBLE HE MIGHT HAVE SENT SOME

25   EMAILS MENTIONING PERFECT 10, AND, THEREFORE, WE'RE ENTITLED TO

1   PUT HIM IN A DEPOSITION CHAIR AND ASK HIM ABOUT THAT.  THAT'S

2   JUST NOT --

3            (CHANGE TO TAPE 2.)

4            MS. KASSABIAN:  POINTS TO MAKE --

5            MR. SCHULTZ:  -- GO AHEAD.

6            MS. KASSABIAN:  ALL DOCUMENTS REGARDING COPYRIGHT

7   INFRINGEMENT.  IN FACT, THAT IS NOT -- THAT IS A REQUEST, AS I

8   RECALL, THAT WAS SUBSEQUENTLY GREATLY NARROWED PURSUANT TO A

9   MOTION TO COMPEL.

10           SO, I JUST WANT TO POINT OUT, YOUR HONOR, THAT SOME

11  OF THE REQUESTS THAT MR. SCHULTZ WAS REFERENCING YOUR HONOR

12  ACTUALLY DECLINED TO ORDER GOOGLE TO PRODUCE DOCUMENTS IN THOSE

13  CATEGORIES AND NARROWED SOME OF THOSE REQUESTS ON A MOTION TO

14  COMPEL THAT WAS FILED BACK IN 2006.

15           SO, THE BOTTOM LINE HERE IS TO COME FORWARD AND SAY,

16  WE'RE GUESSING THAT MAYBE AT SOME POINT PERFECT 10 -- OR MR. --

17  DR. SCHMIDT MIGHT HAVE SENT AN EMAIL.  WE HAVE NO EVIDENCE OF

18  IT.  WE HAVE NO BASIS TO SAY THAT.  BUT WE'RE GUESSING THAT HE

19  MIGHT.  THAT DOES NOT MEET THE APEX DEPOSITION STANDARD.

20           THE COURT:  ALL RIGHT.  BRIEFLY, MR. SCHULTZ, AND

21  THEN I'M --

22           MR. SCHULTZ:  ALL I'M GOING TO SAY, YOUR HONOR, IS

23  I'M GOING TO CITE YOU TO THE CASE THAT WE CITED IN YOUR PAPERS,

24  AND THAT GOOGLE CITED.  THIS IS THE ZUBALAKE CASE, 220 FRD 212,

25  WHICH SAYS:

1       "ANYONE WHO ANTICIPATES BEING A PARTY, OR IS A

2       PARTY TO A LAWSUIT, MUST NOT DESTROY UNIQUE

3       RELEVANT EVIDENCE THAT MUST BE USEFUL TO AN

4       ADVERSARY.

5       "WHILE A LITIGANT IS UNDER NO DUTY TO KEEP OR

6       RETAIN EVERY DOCUMENT IN ITS POSSESSION, IT IS

7       UNDER A DUTY TO PRESERVE WHAT IT KNOWS, OR

8       REASONABLY SHOULD KNOW, IS RELEVANT IN THE ACTION.

9       AND/OR IS" --

10      AND I'M SKIPPING A LITTLE BIT --

11      "AND/OR IS THE SUBJECT OF A PENDING DISCOVERY

12      REQUEST."

13      NOW, THE ANSWER ISN'T TO SAY, WELL, WE THINK THIS

14   PERSON IS -- WE DON'T KNOW IF THIS PERSON IS IRRELEVANT OR NOT.

15   THE ANSWER IS TO LET YOUR COMPANY KNOW THAT THERE'S A LAWSUIT

16   INVOLVED HERE.

17      BUT CLEARLY WE DON'T KNOW AS TO ANY DOCUMENTS THAT

18   MIGHT HAVE BEEN RELEVANT AFTER 2005 THAT WERE UNDER DR.

19   SCHMIDT'S POSSESSION, HIS EMAILS, WE CAN'T FIND OUT ABOUT THOSE

20   BECAUSE THEY'RE GONE FOR THE TWO YEARS BEFORE ANY PROTECTION

21   PROVISIONS WERE PUT THERE.

22      MS. KASSABIAN:  AND, CERTAINLY, YOUR HONOR, NO

23   30(B)(6) DEPOSITION NOTICE HAS EVER BEEN SERVED ON GOOGLE

24   ASKING FOR INFORMATION REGARDING DOCUMENT PRESERVATION, WHICH,

25   OF COURSE, WOULD BE A LESS BURDENSOME MEANS THAN SUMMONING THE

1    CEO TO SIT AND ASK HIM TO TRY TO GUESS WHAT HE KNOWS HE MIGHT

2    HAVE SENT OR RECEIVED BY EMAILS.

3              THE COURT:  ALL RIGHT.  THANK YOU ALL.

4              MR. SCHULTZ:  YOUR HONOR --

5              MR. MAUSNER:  YOUR HONOR --

6              THE COURT:  WHAT?

7              MR. MAUSNER:  YOUR HONOR --

8              MR. SCHULTZ:  ONE ADDITIONAL POINT WE --

9              MR. MAUSNER:  JUDGE HILLMAN?

10             THE COURT:  YES?

11             MR. SCHULTZ:  ONE ADDITIONAL POINT WE NEED TO --

12             MR. MAUSNER:  THERE IS ONE MATTER REGARDING YOUR JUNE

13   16TH ORDER.  YOU HAD ORDERED PERFECT 10 AND GOOGLE TO TRY TO

14   REACH -- THIS IS IN PARAGRAPH 1 OF YOUR ORDER WHERE YOU'RE

15   TALKING ABOUT DMCA LOGS AND ELECTRONIC SPREADSHEETS FORMAT.

16             YOU SAID:

17             "SUCH DOCUMENTS WERE ALREADY PRODUCED IN TIFF

18             FORMAT AS TO WEB SEARCH, IMAGE SEARCH AND ADSENSE.

19             ANY SUPPLEMENTAL DOCUMENTS SHALL BE PRODUCED WITHIN

20             20 DAYS."

21             THE COURT:  RIGHT.

22             MR. MAUSNER:  IF PLAINTIFF SEEKS AN EXCEL FORMATTED

23   PRODUCTION OF THE SAME SPREADSHEETS ALREADY PRODUCED IN TIFF

24   FORMAT, THE COURT IS LIKELY TO ORDER SUCH PRODUCTION IF THE

25   PARTIES ARE UNABLE TO REACH AN AGREEMENT IN THIS REGARD WITHIN

1   FIVE DAYS.

2          OKAY.  SO, WE HAVE NOT BEEN ABLE TO REACH AN

3   AGREEMENT ON THIS, AND WE REQUEST THAT THE COURT ORDER THE

4   PRODUCTION AS IT INDICATED IT WOULD IN THE JUNE 16TH ORDER.

5          MS. KASSABIAN:  YOUR HONOR, MAY I RESPOND?

6          THE COURT:  YES.  I NEED TO GO ON THE BENCH.  SO, I

7   DON'T HAVE MUCH --

8          MS. KASSABIAN:  OKAY.  WELL, I JUST WANT TO SAY.

9   OBVIOUSLY NUMBER ONE, THIS IS NOT ON CALENDAR FOR TODAY.

10         NUMBER TWO, IT'S BEEN MORE THAN FIVE DAYS SINCE THIS

11  ORDER ISSUED.  SO, I'M NOT SURE WHY PERFECT 10 IS ASKING --

12  WAITED UNTIL THIS MORNING TO RAISE IT.

13         AND, NUMBER THREE, PERFECT 10 HAS SENT US AN EMAIL

14  GIVING US NOTICE THAT IT INTENDS TO OBJECT TO YOUR HONOR'S

15  ORDER ON THE EVIDENTIARY SANCTIONS MOTION, INCLUDING OBJECTING

16  ON THIS VERY CATEGORY.

17         SO, I'M NOT SURE WHAT THE POINT IS HERE.  PERFECT 10

18  IS NOW PUTTING THESE ISSUES IN FRONT OF JUDGE MATZ.  SO, I

19  GUESS I'M NOT -- I DON'T QUITE UNDERSTAND WHAT THEY'RE TRYING

20  TO GET OUT OF ASKING YOUR HONOR TO REVISIT THIS ISSUE NOW AT

21  THE SAME TIME THAT THEY'RE ASKING JUDGE MATZ TO CONSIDER IT.

22         MR. MAUSNER:  WELL, THE REASON, YOUR HONOR, IS

23  BECAUSE YOU'VE SPECIFICALLY STATED IN YOUR ORDER THE COURT IS

24  LIKELY TO ORDER SUCH PRODUCTION IF THE PARTIES ARE UNABLE TO

25  REACH AN AGREEMENT IN THIS REGARD WITHIN FIVE DAYS.

1          AND WE'RE ASKING YOU -- YOU KNOW, WE HAVEN'T REACHED

2     AN AGREEMENT --

3          THE COURT:  ALL I NEED TO KNOW --

4          MR. MAUSNER:  -- IN FIVE DAYS --

5          THE COURT:  ALL I NEED TO KNOW --

6          MR. MAUSNER:  -- WE HAVE THIS HEARING TODAY IN FRONT

7     OF YOU --

8          THE COURT:  OKAY.

9          MR. MAUSNER:  -- SO I'M RAISING IT.  AND WE'RE ASKING

10    YOU TO MAKE THIS ORDER BECAUSE THEY'RE NOT AGREEING TO PRODUCE

11    IT.

12         THE COURT:  ALL RIGHT.  IS THAT --

13         MR. SCHULTZ:  -- JUST TO LET YOUR HONOR KNOW, NO,

14    THAT'S IT.  THAT'S WHAT THE ORDER SEEMS -- THAT'S WHAT YOUR

15    JUNE 16TH ORDER SEEMS TO --

16         THE COURT:  I KNOW WHAT IT SAYS.  I DRAFTED IT

17    MYSELF.

18         I'M ASKING MS. KASSABIAN, IS IT CORRECT THAT GOOGLE

19    WILL NOT WILLINGLY PROVIDE THE DATA IN EXCEL FORMAT?

20         MS. KASSABIAN:  THAT'S NOT CORRECT, YOUR HONOR.

21         PERFECT 10 -- YOUR ORDER SAID, YOU KNOW, TRY TO AGREE

22    WITHIN FIVE DAYS.  THAT WOULD HAVE BEEN JUNE 21ST.

23         PERFECT 10 SENT ME AN EMAIL ABOUT THIS FOR THE FIRST

24    TIME THIS MORNING, JUNE 28TH.  AS I EXPLAINED TO MR. MAUSNER IN

25    RESPONSE TO HIS EMAIL THIS MORNING, MY CLIENT CONTACT AT GOOGLE

1   IS ON VACATION FOR THE 4TH OF JULY.  I CANNOT GET AUTHORITY FOR

2   ANY DISCOVERY AGREEMENT.  I CAN CERTAINLY ASK, AND I'M HAPPY TO

3   TAKE THAT UP IF IT'S SOMETHING THAT WE CAN AGREE ON, AND THEN

4   THEY WOULD THEN WITHDRAW THAT PART OF THEIR OBJECTIONS THAT

5   THEY'RE GOING TO FILE WITH JUDGE MATZ ON THIS.

6           BUT I CAN'T DO IT TODAY BECAUSE AS I EXPLAINED

7   BECAUSE PERFECT 10 WAITED UNTIL NOW TO RAISE IT --

8           THE COURT:  OKAY.  WELL, I --

9           MS. KASSABIAN: -- BECAUSE MY CONTACT IS UNAVAILABLE.

10          THE COURT:  MY COMMENT THAT I EXPECT COUNSEL -- OR

11  WHATEVER, YOU KNOW -- THE EXPECTATION IS THAT GOOGLE WILL AGREE

12  TO DO THAT.

13          AND IF GOOGLE DECLINES TO DO THAT, THEN, I'D LIKE TO

14  KNOW BY, LET'S SAY, WEDNESDAY, CLOSE OF BUSINESS WEDNESDAY.

15          MS. KASSABIAN:  AND, YOUR HONOR, JUST AGAIN, MY

16  CLIENT IF OUT OF THE STATE UNTIL THE MIDDLE OF NEXT WEEK.  SO,

17  I JUST SIMPLY CAN'T GET AUTHORITY.

18          BUT I DO WANT TO REMIND YOUR HONOR THAT AT THE

19  HEARING IN JANUARY WHEN WE TALKED THIS ISSUE IN TERMS OF

20  REPRODUCING DOCUMENTS IN A DIFFERENT FORMAT FROM THE FORMAT

21  THAT PERFECT 10 AGREED TO LET US PRODUCE THEM IN, YOU SAID

22  YOU'D SERIOUSLY CONSIDER ORDERING THAT PRODUCTION AS LONG AS

23  PERFECT 10 PAID FOR IT.

24          SO, THAT'S, FOR INSTANCE, ONE ISSUE THAT PERFECT 10

25  IS NOW JUST NOT RAISING BECAUSE THESE ARE VERY, VERY LARGE

```
 1    MULTI HUNDRED-THOUSAND PAGE -- NOT HUNDRED-THOUSAND -- HUNDREDS

 2    OF THOUSANDS OF PAGES OF SPREADSHEETS THAT ARE GOING TO REQUIRE

 3    PAINSTAKING REDACTION FOR ATTORNEY-CLIENT PRIVILEGE AND OTHER

 4    WORK THAT GOOGLE ALREADY DID IN TIFF FORMAT.  YOU KNOW, WHAT

 5    WE'RE TALKING ABOUT IS A HUGE UNDERTAKING.

 6              I'M NOT SAYING WE'RE NOT WILLING TO DO IT.  BUT I'M

 7    SAYING THAT YOUR HONOR RECOGNIZED THAT BACK IN JANUARY AT THE

 8    HEARING AND SAID THAT IF PERFECT 10 REALLY WANTED THESE -- EVEN

 9    THOUGH PERFECT 10 HAS ALREADY CONVERTED THEIR TIFF DOCUMENTS

10    USING SOFTWARE TO A SEARCHABLE SPREADSHEET FORMAT, IF THEY

11    REALLY WANTED THESE DOCUMENTS REPRODUCED IN THAT FORMAT, THAT

12    YOU WOULD ORDER COST SHIFTING.

13              SO, THAT'S JUST ONE OF THE MANY ISSUES THAT I'D LIKE

14    TO TALK TO PERFECT 10 ABOUT, BUT I DO NEED TO BE ABLE TO

15    CONSULT WITH MY CLIENT --

16              THE COURT:  ALL RIGHT.

17              MS. KASSABIAN:  -- TO MAKE ANY FINAL DECISION ON --

18              THE COURT:  ALL RIGHT.  YOU LET MY CLERK KNOW WHEN

19    THAT HAS REACHED AN IMPASSE, WHICH I FRANKLY THINK IT WILL BE

20    -- WILL REACH AN IMPASSE.  AND WE'LL HAVE ANOTHER

21    CONVERSATION.  I DON'T NEED BRIEFING ON THIS.

22              MS. KASSABIAN:  OKAY.

23              MR. MAUSNER:  YOUR HONOR, ONE THING, YOUR HONOR.

24              THE COURT:  YES.

25              MR. MAUSNER:  OH, OKAY.
```

1          GOOGLE -- MS. KASSABIAN IS AGAIN SAYING THAT THEY

2     WERE IN TIFF FORMAT.  GOOGLE EARLIER ADMITTED THAT THEY WEREN'T

3     IN TIFF FORMAT.  THEY WERE IN JPEG FORMAT, WHICH IS

4     NON-SEARCHABLE.

5          AND, YOU KNOW, THEY FIRST SAID TIFF.  THEN, WHEN WE

6     WERE GOING TO THAT, THEY WERE IN JPEG.  THEY CONCEDED THAT WAS

7     TRUE.  WE SHOWED THAT TO YOU AT THE HEARING.  AND NOW SHE'S

8     SAYING -- AND ALSO YOUR ORDER INCORRECTLY SAYS TIFF.  THEY WERE

9     IN JPEG.  BUT THAT'S BESIDE THE POINT.  AND WE'LL BRING THAT UP

10    TO JUDGE MATZ.  BUT YOUR HONOR DID SAY THAT IF THEY DON'T AGREE

11    TO PRODUCE IT TO US IN EXCEL FORMAT, YOU WANTED TO ORDER THEM

12    TO PRODUCE IT.

13         SO, WHEN -- SHOULD WE SET ANOTHER HEARING ON THIS,

14    YOUR HONOR?

15         THE COURT:  WELL, ASSUMING THAT HER CLIENT COMES BACK

16    NEXT MONDAY, WHY DON'T WE SCHEDULE SOMETHING FOR --

17         MS. KASSABIAN:  YOUR HONOR, I'M SORRY.  HE'S NOT BACK

18    ON MONDAY.  LET ME PULL UP MY EMAIL.  I BELIEVE HE'S BACK ON

19    THE 8TH.

20         THE COURT:  ALL RIGHT.  LISTEN, WHEN THE ISSUE IS

21    FULLY AT AN IMPASSE, WE'LL QUICKLY SET UP A TELEPHONIC HEARING.

22         OKAY?

23         MS. KASSABIAN:  THANK YOU, YOUR HONOR.

24         MR. MAUSNER:  OKAY.  THANK YOU, YOUR HONOR.

25         MR. SCHULTZ:  HOW SHOULD WE NOTIFY YOUR HONOR JUST TO

1   INFORM YOU THAT IT'S AN IMPASSE?  VIA EMAIL?

2            THE COURT:  YOU CAN LET MY CLERK KNOW.

3            MR. SCHULTZ:  VERY GOOD.

4            THE COURT:  SHE HAS VERY GOOD CONTACT WITH ME.

5            MR. SCHULTZ:  I BET SHE DOES.

6            THE COURT:  ALL RIGHT.  THANK YOU ALL.

7            MS. KASSABIAN:  THANK YOU, YOUR HONOR.

8            MR. SCHULTZ:  THANK YOU FOR YOUR TIME, YOUR HONOR.

9            (TELEPHONIC PROCEEDINGS CONCLUDED.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                    C E R T I F I C A T E

4

5         I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

6    FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE

7    ABOVE-ENTITLED MATTER.

8

9

10

11   DOROTHY BABYKIN                        7/9/10

12   _____       _____

13   FEDERALLY CERTIFIED TRANSCRIBER        DATED

14   DOROTHY BABYKIN

15

16

17

18

19

20

21

22

23

24

25