O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | | Date | July 26, 2010 |
|---|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|

| Stephen Montes | Not Reported | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:      Attorneys **NOT** Present for Defendants:

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

On November 19, 2004, Perfect 10, Inc. ("P10") filed suit against Google, Inc. ("Google"), alleging a variety of claims, including direct, contributory, and vicarious copyright infringement.  P10 creates and sells pictures of nude models through a now-defunct print magazine and through a password-protected subscription website.  It alleges that Google—a search engine and provider of other internet services—infringes on its copyright by, among other things, linking to third-party websites that host images that infringe P10's copyrights, caching portions of websites that host infringing images, and hosting infringing images on its own servers that have been uploaded by users of its "Blogger" service.[1]

In three separate motions, Google has moved for partial summary judgment that it is entitled to immunity under three different provisions of the Digital Millennium

---

[1] The Court notes that the Ninth Circuit has already examined whether P10 has met its prima facie infringement case in an opinion granting P10 a preliminary injunction against Google on certain of its claims.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007), *superseding* 487 F.3d 701.  The Ninth Circuit examined the underlying copyright liability without considering the merits of Google's affirmative defense under the DMCA.  508 F.3d at 1158 n.4 ("Therefore, we must consider Google's potential liability under the Copyright Act without reference to title II of the DMCA.").

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

Copyright Act ("DMCA"). Specifically, Google asserts that it deserves safe harbor under 17 U.S.C. § 512(d) for its web and image searches, under 17 U.S.C. § 512(b) for its caching feature, and under 17 U.S.C. § 512(c) for its Blogger service.

For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Google's motion for partial summary judgment of entitlement to safe harbor under 17 U.S.C. § 512(d) for its Web and Image Search.[2] The Court GRANTS Google's motion for partial summary judgment for its caching feature based on 17 U.S.C. § 512(d), without having to assess whether it would be separately entitled to safe harbor under 17 U.S.C. § 512(b).[3] The Court GRANTS Google's motion for partial summary judgment of entitlement to safe harbor under 17 U.S.C. § 512(c) for its Blogger feature.[4]

## II.    FACTUAL BACKGROUND[5]

---

[2]Docket No. 456.

[3]Docket No. 458.

[4]Docket No. 457.

[5]Unless otherwise stated, the facts below are undisputed. Although the parties have claimed confidentiality in many filed documents, they have not provided the Court with specifications necessary to redact any of the specific recitals. Throughout P10's Statements of Genuine Issues for all three of the motions, it purports to "dispute" a fact, but then states allegations that are consistent with the asserted fact. *See, e.g.*, Perfect 10's Statement of Genuine Issues In Opposition to Google's Motion for Summary Judgment Re: Safe Harbor Under 17 U.S.C. § 512(d) For Web And Image Search ("SGI(d)") ¶ 25 (responding to the assertion that "[w]ebsites are included in Google's organic search results if they were crawled by the Googlebot and if they are relevant to users' queries," P10 states, "Disputed. Perfect10.com is presumably 'relevant' to a search for Jamike Hansen, as P10 is the sole owner of copyrights of her published images. However, a Google search on Jamike Hansen yields only infringing websites, most of which are Google advertising affiliates. Such search results do not contain a single link to perfect10.com." This purported dispute does not account for whether perfect10.com is crawled by the Googlebot, and, indeed, the Googlebot does not crawl websites that are

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

Google operates an Internet search engine by using an automated software program, known as a web crawler or the "Googlebot," to obtain copies of publicly-available webpages for use in its search index. Google's Consolidated Statement of Undisputed Facts in Support of Google's Motion for Summary Judgment Re: Safe Harbor Under 17 U.S.C. § 512(d) for Web and Image Search ("CSUF(d)") ¶¶ 1-2. For Image Search, Google's search engine compiles an index of the text associated with each image crawled, which is associated with a particular "thumbnail" image. *Id.* at ¶ 2. The Googlebot does not crawl literally every website. Haahr Decl. ¶ 14.

Google also provides Web Search users with the option of selecting a link to a "cached copy" of the webpages that appear in its search results. Google's Consolidated Statement of Undisputed Facts in Support of Google's Motion for Summary Judgment Re: Google's Entitlement to Safe Harbor Under 17 U.S.C. § 512(b) for its Caching Feature ("CSUF(b)") ¶ 5. The cached copy is an archival copy that Google stores on its servers until the next time its Googlebot visits that particular webpage. CSUF(b) ¶ 9. In most cases, the cached copy is stored only for a few weeks, and all of the copies are replaced within 18 months. Rebuttal Brougher Decl. ¶¶ 3-5. No images are stored in Google's cache, only the text; however, any images displayed on a cached page are delivered from their original source, if they still exist at that source. CSUF(b) ¶¶ 7-8.

In addition, Google provides a service, known as Blogger, that allows Blogger account holders to create their own blogs hosted on Google's servers. Google's Corrected Consolidated Separate Statement of Undisputed Facts in Support of Google's Motion for Summary Judgment Re: Safe Harbor Under 17 U.S.C. § 512(c) for its Blogger Service ("CSUF(c)") ¶ 1. *See* www.blogspot.com. Blogger account holders may display images on their blogs—in some cases the images are uploaded onto Google's servers and in other cases a user hyperlinks to content hosted on other servers. Poovala Decl. ¶ 26.

Google has a DMCA notification policy for each of these services. Poovala Decl., Ex. B (web search and cache), Ex. D (image search), Ex. G (Blogger). Google requires a

---

password protected, like perfect10.com is. *See* Haahr Decl. ¶ 14.). The Court will not address these immaterial "disputes," which do nothing more than strain the Court's resources and distract from the real issues in this litigation.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

complainant to send a DMCA notice to Google's designated agent, specifying the copyrighted work infringed (including how to locate it), the complete URL at which the infringing material is located, and the Web Search query that links to the web page. Poovala Decl. ¶¶ 6-8.  Google maintains the same DMCA policy for its Web Search and its cache.  Poovala Decl. ¶ 5.  Its policies differ slightly for its Image Search (requiring copyright holders to include the "image URL" for each image) and for the Blogger service (requiring copyright holders to include the "post URL" for each post and to target their notifications to the DMCA agent for its blogger site).  Poovala Decl. ¶¶ 22-23; 27-31.

Google then verifies that the copyrighted work is, in fact, infringed, and, if so, it blocks the infringing URL from appearing in Google search results.  Google allows the operator of the infringing website to file a counter-notification, which would then unblock the URL, unless the complainant files a lawsuit within 10 days.  Poovala Decl. ¶¶ 11-20.  Google will terminate account holders on its Blogger service if it determines that three DMCA notices of infringement were valid.  Poovala Decl. ¶ 37.

Between 2001 and the time the summary judgment motion papers were filed, P10 sent Google 83 DMCA notices.  Kassabian Decl., Exhs. L1-L17; Poovala Decl. Exhs. L1-L48, N1-N18.  The parties sort these notices into three groups—the 17 Group A notices sent in 2001, Kassabian Decl. ¶ 13, Exhs. L1-L17; the 48 Group B "spreadsheet" notices sent between May 31, 2004 and April 24, 2007, Poovala Decl. ¶ 41, Exhs. L1-L48; and the 18 Group C "DVD and hard drive notices" sent in or after December 2005, Poovala Decl. ¶ 48, Exhs. N1-N18.  Google has not processed any of the Group A notices. CSUF(d) ¶¶ 33, Poovala Decl. ¶ 79-80, Exh. FF-GG.  The parties dispute whether Google has processed all of the Group B notices.  CSUF(d) ¶¶ 33, Poovala Decl. ¶ 79-80, Exh. FF-GG; Zada Decl. ¶ 26, Ex. 14.  Google has processed a fraction of the Group C notices beginning in 2007, but it has not processed the majority of the notices.  Poovala Decl. ¶¶ 87-88, Exs. HH & II.

## III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|----------|----------------------|------|---------------|

| Title | PERFECT 10, INC. v. GOOGLE, INC. |
|-------|----------------------------------|

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the opposing party if that party does not present such specific facts. *Id.* Only admissible evidence may be considered in deciding a motion for summary judgment. *Id.*; *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

scintilla of evidence." *Anderson*, 477 U.S. at 252.  Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## IV.   ANALYSIS

### A.   Threshold Requirements for Safe Harbor Under All Three Sections

In order to be eligible for any of these three safe harbors under the DMCA, a party must satisfy three threshold conditions.  First, the party must be a service provider as defined under 17 U.S.C. § 512(k)(1)(B).  Second, the party must have "adopted and reasonably implemented, and inform[] subscribers and account holders of the service provider's system or network of a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers."  17 U.S.C. § 512(i)(1).  Third, the party must "accommodate[] and . . . not interfere with standard technical measures" used by copyright owners to identify or protect copyrighted works.  17 U.S.C. §§ 512(i)(1)-(2).

P10 does not dispute that Google meets the first and third threshold requirements—service provider status and non-interference with standard technical measures.  CSUF(d) ¶¶ 1-3.  P10 does argue, however, that there are genuine issues of material fact as to whether Google has implemented a suitable repeat infringer policy.

The key case analyzing the "repeat infringer" requirement under 512(i) is *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1110-11 (9th Cir. 2007).  As this Court noted in *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 665 F. Supp. 2d 1099, 1117 (C.D. Cal. 2009),

> In *CCBill*, the Ninth Circuit set forth the standard for evaluating termination policies under the DMCA:
>
> > [A] service provider "implements" a policy if it has a working notification system, a procedure for dealing with

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

DMCA-compliant notifications, and if it does not actively prevent copyright owners from collecting information needed to issue such notifications.... The statute permits service providers to implement a variety of procedures, but an implementation is reasonable if, under "appropriate circumstances," the service provider terminates users who repeatedly or blatantly infringe copyright.

*CCBill*, 488 F.3d at 1109 (citations omitted). *See also Corbis Corp.* [*v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1104 (W.D. Wash. 2004)] ("Because it does not have an affirmative duty to police its users, failure to properly implement an infringement policy requires a showing of instances where a service provider fails to terminate a user even though it has sufficient evidence to create actual knowledge of that user's blatant, repeat infringement of a willful and commercial nature."); H.R. Rep. 105-551(II), at 61 ("[T]he Committee does not intend this provision to undermine the principles of new subsection (1) or the knowledge standard of new subsection (c) by suggesting that a provider must investigate possible infringements, monitor its service, or make difficult judgments as to whether conduct is or is not infringing.").

Here, Google has provided evidence that it has a system for receiving and processing notifications. *See* CSUF(d) ¶¶ 4-8. Moreover, Google points out—and P10 does not dispute—that Web Search, Image Search, and the caching feature do not have account holders or subscribers, CSUF(d) ¶ 23. P10 does not contend that Google must, or even can, have a repeat infringer policy for those services. *See* 17 U.S.C. § 512(i)(1)(A) (requiring a repeat infringer policy for those services with "subscribers and account holders").

As for the Blogger service, Google provides clear evidence that it terminates Blogger users who repeatedly or blatantly infringe copyright. CSUF(c) ¶¶ 13, 15, 34. P10 nevertheless makes several unavailing arguments that Google's repeat infringer policy is deficient. It argues that Google has not removed many of the links that P10 complained about or placed on its DMCA log. In response, Google counters that it is

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

required to record into its log only notices that are DMCA compliant, *CCBill*, 488 F.3d at 1113-14, and that all of the notices that were not recorded were within Group C, in the form of DVDs or hard drives. *See* CSUF(c) ¶ 35. Google has offered evidence that all the notices that did comply with the DMCA were recorded in its logs. CSUF(c) ¶ 15. P10 next argues that the DMCA logs contain too few entries to be truly comprehensive. However, this argument suffers from the same deficiency—that Google was required to record only DMCA compliant notices. P10 also argues that Google could not have had an effective repeat offender policy because it tracks only email addresses, not the actual names of users. However, the DMCA does not impose an obligation on service providers to track their users in any particular way. In *Io Group, Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1144 (N.D. Cal. 2008), the court did not require the service provider to verify or track actual identities because "the hypothetical possibility that a rogue user might reappear under a different user name and identity does not raise a genuine fact issue as to the implementation of" the service provider's repeat infringer policy. This Court agrees.

P10 also offers declarations from four copyright holders—Dean Hoffman, C.J. Newton, Les Schwartz, and Margaret Jane Eden—complaining about Google's processing of their DMCA notices. The Ninth Circuit has held that evidence of notices provided by a party other than the plaintiff may be relevant in determining whether a service provider has "implemented its repeat infringer policy in an unreasonable manner." *CCBill*, 488 F.3d at 1113. However, as Google notes, P10 did not identify any of these individuals in its Rule 26 disclosures. Rebuttal Kassabian Decl. ¶ 6. "If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, Google was deprived of the opportunity to depose or otherwise directly rebut these witnesses' declarations. P10 has provided no argument as to why its failure was substantially justified or harmless. Thus, the Court will not consider these declarations on this motion for partial summary judgment. *See Guang Dong Light Headgear Factory Co. v. ACI Intern., Inc.*, 2008 WL 53665 at *1 (D. Kan. Jan. 2, 2008) (striking an affidavit in a motion for summary judgment because the witness's identity and testimony were not properly disclosed under Rule 26).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

For the foregoing reasons, then, the Court concludes that Google employs an adequate repeat infringer policy and practice.

**B.     Safe Harbor For Web and Image Searches Under Section 512(d) ("Information Location Tools")**

The Court will now analyze whether Google has proven it has met all the requirements for a safe harbor for its web and image searches under 17 U.S.C. § 512(d). To the extent that Google's Blogger service and web search caching feature function as information location tools by linking users to content hosted on third-party websites, rather than any content hosted by Google, this analysis will apply to those tools as well.[6]

Section 512(d) entitled "Information location tools," provides a safe harbor from liability for a "service provider" that infringes a copyright by "referring or linking users to an online location containing infringing material or infringing activity, by using information location tools, including a directory, index, reference, pointer, or hypertext link"—provided that the provider:

> (1)(A) does not have actual knowledge that the material or activity is infringing;
>
> (B) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
>
> (C) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to the material;
>
> (2) does not receive a financial benefit directly attributable to the

---

[6]In particular, Google offers evidence, which is undisputed by P10, that no images found in Google's cache are stored on Google's servers. CSUF(b) ¶ 7.  Thus, any claims for copyright infringement based on images "found in" Google's cache are actually claims for infringement based on linking users to content hosted on third-party websites, and therefore the § 512(d) safe harbor will apply to these claims.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(3) upon notification of claimed infringement as described in subsection (c)(3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity, except that, for purposes of this paragraph, the information described in subsection (c)(3)(A)(iii) shall be identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate that reference or link.

17 U.S.C. § 512(d).

The preceding cited portion of the DMCA thus effectively requires that for P10 to have provided adequate notice purporting to disclose infringements on Google's web and image searches, P10 had to satisfy 17 U.S.C. § 512(c)(3)(A), which applies to "Information residing on systems or networks at direction of users." It specifies that in order for a notification of claimed infringement to be effective, it must include:

(i) A physical or electronic signature of a person authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(ii) Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site.

(iii) Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

17 U.S.C. § 512(c)(3).

P10 argues that Google acquired knowledge of infringement upon its receiving notices of infringement from P10 and that once Google had this knowledge, it did not act expeditiously to suppress the infringing links. (P10 does not, however, argue that Google receives a direct financial benefit from the infringing activity, has the right and ability to control such activity, and thus cannot enjoy safe harbor for its web and image search results.)

For its part, Google asserts that it has met all of the requirements necessary to qualify for the section 512(d) safe harbor for its web and image search results. It counters P10's arguments that Google had knowledge of infringement by asserting that P10's notices of infringement were defective for a multitude of reasons and that Google nonetheless expeditiously processed numerous notices in circumstances where it was feasible to do so. The Court must examine the specific characteristics of the notices to determine which party is correct.

The parties divide the DMCA notices into three groups based on when they were sent to Google. (See Section II of this Order.) The Group A notices consist of email communications that P10 sent between May 11, 2001 and July 6, 2001. CSUF(d) ¶¶ 28-31 n.1. The Group B notices comprise notices sent primarily in Excel spreadsheet form

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

between May 31, 2004 and April 24, 2007.  CSUF(d) ¶¶ 32-48 n.2.  The Group C notices were provided on DVDs and external hard drives between December 9, 2005 and June 13, 2009.  CSUF(d) ¶¶ 49-68 n.3.

      1.  The Group A notices

      Google first argues that the Group A notices are irrelevant because they are time-barred.  Google is incorrect, as the Ninth Circuit has held that "[i]n a case of continuing copyright infringements, an action may be brought for all acts that accrued within the three years preceding the filing of the suit."  *Roley v. New World Pictures*, 19 F.3d 479, 481 (9th Cir. 1994).  P10 has presented facts that indicate that Google was still linking to URLs identified as infringing in the Group A notices within three years of when the lawsuit commenced.  Zada Decl. ¶¶ 15-17, Ex. 8-10.  Thus, the claims are not time-barred.

      Google also argues that because P10 has not answered Google's requests for admission pertaining to the Group A notices, P10 cannot rely on these notices as evidence of Google's knowledge.  Google bases this argument on Fed. R. Civ. P. 26 and 37, but these rules merely allow the court *discretion* to prohibit a party who disobeys a discovery order or a request for discovery from introducing the related evidence.  The Court does not find that P10's conduct with respect to the Group A notices rises to a  level that would justify their exclusion from consideration.

      However, the Court does find that Google has shown that there is no genuine dispute of material fact that the Group A notices were inadequate to provide notice under the DMCA.  Google has offered undisputed evidence that all of the Group A notices were sent by email to "webmaster@google.com" instead of to the address of Google's designated agent listed at the Copyright Office.  Kassabian Decl. Exhs. L1-L17; Rebuttal Kassabian Decl. Ex. B.  In addition, the notices are substantively deficient.  They uniformly do not identify specifically which copyrighted works were infringed as required by 17 U.S.C. § 512(c)(3)(A)(ii).  Kassabian Decl. ¶ 13, Exhs. L1-L17.  Thus, the Court finds that Google has shown that there is no genuine dispute of material fact that the Group A notices did not provide notice under the DMCA.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

2. The Group B notices

As for the Group B notices, Google has *not* met its burden of showing that there is
no dispute of material fact as to whether these notifications were valid under the DMCA.
Each notice contains references to dozens or even hundreds of alleged infringing links.
Google argues that these notices are invalid in their entirety because the majority of the
references are invalid.  Google is correct that many of the references do contain
incomplete URLs, lack image-specific URLs, or do not reference the copyrighted work
with specificity.  Poovala Decl. Exhs. L1-L48.  References having these deficiencies do
not confer adequate notice under the DMCA.  The DMCA requires a notification to
include "[i]dentification of the copyrighted work claimed to be infringed," 17 U.S.C. §
512(c)(3)(A)(ii), and "identification of the reference or link, to material claimed to be
infringing, that is to be removed or access to which is to be disabled, and information
reasonably sufficient to permit the service provider to locate that reference or link," 17
U.S.C. § 512(d)(3).  Of course, Google was not required to act to remove any entry that
did not meet the DMCA requirements.

However, P10 does point to some notices that *do* meet all of the requirements of
the DMCA.  For example, in its May 31, 2004 notice, P10 provided Google with the
complete URL "http://pix.alronix.net/Photo_Scans/Tits/Monika_Zsibrita/pic00076.htm"
along with the volume, issue, and page number of *Perfect 10 Magazine* in which the
image originally appeared.  Zada Decl. ¶ 21; Exh. 13.  These individual references
sufficed to confer notice of infringement for those particular URLs, despite the fact that
other URL references within the notices were insufficient.

In *CCBill*, the Ninth Circuit expressed concern that "[p]ermitting a copyright
holder to cobble together adequate notice from separately defective notices . . . unduly
burdens service providers."  488 F.3d at 1113.  In that case, P10 provided CCBill with
three sets of documents that would have required the defendant service provider to "find
the relevant line in the spreadsheet indicating ownership information, then comb the
22,185 pages provided by Perfect 10 in order to find the appropriate image, and finally
copy into a browser the location printed at the top of the page—a location which was, in
some instances, truncated."  *Id.*  Here, by-and-large the Group B notices also are
organized in spreadsheet format, including a cover letter or email and a three-column

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

spreadsheet.  Poovala Decl. ¶ 42, Ex. L1-L48.  The first column lists infringing URLs, the second lists the search terms used to find the URL, and the third lists the location of the copyrighted work at issue within P10's website or magazine.  *Id.*  Unlike in *CCBill*, where the service provider would have to refer back and forth between different files, here the Group B notices enabled Google to scan the entries to determine their compliance with the DMCA.  This is not an undue burden.  Therefore, P10 has demonstrated that at least some of those notices were valid under the DMCA.

The parties dispute whether Google has processed all of the adequate Group B notices.  SGI(d) ¶ 33; Zada Decl. ¶ 26, Ex. 14.  In addition, P10 argues that even as to those notices that Google did process, Google failed to do so quickly enough to satisfy the DMCA requirement that "upon notification of claimed infringement" the alleged infringer act "expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity."  *See* 17 U.S.C. § 512(d)(3).

Google has the burden as the moving party on this summary judgment motion, to show that there is no genuine issue of material fact as to whether it is entitled to DMCA safe harbor for the Group B notices and thus is entitled to judgment as a matter of law on this issue.  It has not met that burden.  Google offers evidence that it began processing P10's Group B notices immediately upon receipt and completed processing the majority of the notices within one-to-two weeks of receipt.  Poovala Decl. ¶¶ 56-91.  However, P10 offers other evidence that sometimes Google waited between four and seventeen months to process a number of the Group B notices, as well as evidence that some notices were not processed at all.  Zada Decl. ¶ 26.  This factual dispute as to how long the processing took precludes summary judgment for Google for the Group B notices.

In addition, the legislative history suggests that Congress contemplated that whether a service provider's removal or disabling of access to infringing material was expeditious ordinarily would be a factual rather than a legal inquiry, unless the delay is unusually lengthy and not justifiable.  Thus, the Senate Judiciary Committee Report on the DMCA notes

Subsection (c)(1)(A)(iii) provides that once a service provider obtains actual knowledge or awareness of facts or circumstances from which

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

infringing material or activity on the service provider's system or network is apparent, the service provider does not lose the limitation of liability set forth in subsection (c) if it acts expeditiously to remove or disable access to the infringing material. *Because the factual circumstances and technical parameters may vary from case to case, it is not possible to identify a uniform time limit for expeditious action.*

S. Rep. No. 105-190, at 44 (1998) (emphasis added). Thus, the Court DENIES Google's motion for summary judgment as to safe harbor for at least some of the Group B notices.

>    3.   The Group C notices

The Group C notices are, however, a different story. As Google has demonstrated, the Group C notices, much like the notices described in *CCBill*, require the service provider to move back and forth between several different files in order to determine that a given URL was infringing (in the instances where the URLs were provided, which was not always the case). The Group C notices generally consist of a cover letter, a spreadsheet, and a hard drive or DVDs containing electronic files. Poovala Decl. ¶ 48, ex. N1-N18. Where P10 provided spreadsheets, the spreadsheets do not identify the infringing URL, but merely the top-level URL for the entire website. Poovala Decl. ¶ 51. P10 evidently expected Google to comb through hundreds of nested electronic folders containing over 70,000 distinct files, including raw image files such as JPEG files and screen shots of Google search results, in order to find which link was allegedly infringing. Poovala Decl. ¶¶ 52-53, Ex. O; Khan Decl. ¶ 6. In many cases, the file containing the allegedly infringing image does not even include a URL, or the URL was truncated. Poovala Decl. ¶¶ 54-55. The spreadsheets also do not identify the copyrighted work that was allegedly infringed. *Id.* at ¶ 50. Instead, the cover letters contain a statement similar or identical to the following:

> If you wish to examine the copyrighted images of Perfect 10 which correspond to these infringing images, I have previously sent to you all of the images on our website, as of June, 2007. [*sic*] Also, as I have previously advised you, if you would like a free subscription to Perfect 10's website, please let me know and I will provide a user name and

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

password for you.

Poovala Decl., Ex. N4 at 846. P10 then expected Google to search through a separate electronic folder—attached only to the June 28, 2007 DMCA notice—containing all of the more than 15,000 images that appeared on P10's website as of June 2007, in order to identify the copyrighted work that was infringed. Poovala Decl. ¶ 50, Ex. N3.

As the Ninth Circuit explained in *CCBill*, "The DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." *CCBill*, 488 F.3d at 1113. P10's Group C notices do not "identif[y] . . . the copyrighted work claimed to have been infringed . . . ." 17 U.S.C. § 512(c)(3). To refer Google to more than 15,000 images appearing on the entirety of P10's website falls far short of identifying what may have been infringed. Nor is a reference to the totality of the P10 image collection "a representative list" of "multiple copyrighted works" appearing without authorization at a single infringing site. *See* 17 U.S.C. § 512(c)(3). Thus, all of P10's Group C notices lack the identification of the copyrighted work required by section 512(c)(3)(A)(ii).[7]

P10's Group C notices are additionally defective because they do not contain all of

---

[7]P10 argued at the hearing that if an allegedly infringing photo included in the thousands of website screenshot files sent to Google contains a P10 copyright notice—*see, e.g.*, Zada Decl., Ex. 33 at 2—that copyright notice should satisfy the requirement that P10 "identif[y] . . . the copyrighted work claimed to have been infringed." 17 U.S.C. § 512(c)(3)(A)(ii). However, such a copyright notice on a screenshot taken from an infringing website does not identify the copyrighted *work*. At best, the notice merely serves to identify someone claiming to own the image, whereas it would contain the necessary identification if it also showed the URL on the P10 website or the volume and page number of *Perfect10* magazine at which the original copyrighted image appears. In any event, Google is not obligated to comb through tens of thousands of images to determine which ones contain copyright notices. This would impermissibly "shift a substantial burden from the copyright owner to the provider," *CCBill*, 488 F.3d at 1113, as described more fully in the next paragraph.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

the required information in a single written communication. In *CCBill*, the Ninth Circuit held that Perfect 10's "separate communications" in that case were inadequate because "[p]ermitting a copyright holder to cobble together adequate notice from separately defective notices . . . unduly burdens service providers." *CCBill*, 488 F.3d at 1113. As the *CCBill* court noted, "the text of § 512(c)(3) requires that the notice be 'a written communication.' (Emphasis added)." *Id.* Though the notices at issue in that case were actually sent at different times, the thousands of separate electronic files on each disk that P10 sent to Google are the functional equivalent of separate notices. Unlike certain of the Group B notices that contain all of the statutorily required information in a single spreadsheet, no single document in any of the Group C notices contains all of the information required in a valid DMCA notification. Instead, in order to process a Group C notice, Google would be required to examine thousands of separate files in order to determine which URLs might be infringing and which copyrighted images are alleged to be infringed. This would impermissibly "shift a substantial burden from the copyright owner to the provider." *Id.*

For example, in order to process one entry in the spreadsheet for the July 2, 2007 notice—Ex. N4 to the Poovala Declaration (the cover letter of which is attached hereto as Exhibit 1) —Google would have to go through the following steps, among others.

**Step One.**   First, it would have to look to the cover letter for the required statements by the copyright owner of ownership, nonlicensed use, and veracity of the notice, as well as for instructions about how to process the two enclosed DVDs. Ex. N4 at 845-47.

**Step Two.**   Then Google would have to refer to the attached Excel spreadsheet, which specifies the top-level (not image-specific) URL for the allegedly infringing website, the DVD on which the images at that site appear, and the folder or subfolder in which the images appear. *See* Ex. N4 at 848-56. This, for example, is the first page of the spreadsheet accompanying the July 2, 2007 notice, reproduced as Page 848 of Exhibit N4:

///
///

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

| INFRINGING WEBSITE | LOCATION OF IMAGES | FOLDER OR SUBFOLDER |
|---|---|---|
| 4eyes.free.fr | DISK I | ALL LARGE ARE P10 |
| 82.208.64.6 | DISK I | ALL LARGE ARE P10 |
| 99modelle.com | DISK I | ALL LARGE ARE P10 |
| abshell.net | DISK I | ALL ARE P10 |
| adamast.ru | DISK I | ALL LARGE ARE P10 |
| adamscelebs.net | DISK I | ALL LARGE ARE P10 |
| aeonsuper.250x.com | DISK I | ALL ARE P10 |
| aeonsuper.250x.com | DISK I | ALL LARGE ARE P10 |
| agrreviews.com | DISK I | ALL LARGE ARE P10 |
| akty.cz | DISK I | ALL LARGE ARE P10 |
| alacarga.com | DISK I | ALL LARGE ARE P10 |
| alibi.com.mk | DISK I | ALL LARGE ARE P10 |
| all-sascholk.infostore.org | DISK I | ALL ARE P10 |
| allwallpapers.net | DISK I | ALL LARGE ARE P10 |
| amp2000.com.ar | DISK I | ALL LARGE ARE P10 |
| anarkasis.com | DISK I | ALL ARE P10 |
| angelicscans.com | DISK I | ALL LARGE ARE P10 |
| angolodellasega.com | DISK I | ALL LARGE ARE P10 |
| ar1.picturetrades.com | DISK I | ALL ARE P10 |
| averlo.com | DISK I | ALL LARGE ARE P10 |
| babefocus.com | DISK I | ALL LARGE ARE P10 |
| babeportal.dk | DISK I | ALL LARGE ARE P10 |
| babereactor.com.ar | DISK I | ALL LARGE ARE P10 |
| bevarfildeling.dk | DISK I | ALL LARGE ARE P10 |
| big.dada.net | DISK I | ALL ARE P10 |
| big.supereva.com | DISK I | ALL LARGE ARE P10 |
| bimmer.roadfly.com | DISK I | ALL LARGE ARE P10 |
| blastyourbrain.com | DISK I | ALL ARE P10 |
| blinkyou.com | DISK I | ALL LARGE ARE P10 |
| boobieblog.com | DISK I | ALL LARGE ARE P10 |

Page 1 of 10

Figure 1.  (Sample spreadsheet.)

    **Step Three**.  Then, for Google to figure out which images P10 alleged to be infringing on the website referred to as "big.supereva.com" on the above shown Ex. N4 at 848, it would have to load Disk I on a computer and open the "ALL LARGE ARE P10" folder.  This is the top-level menu window that loads when that is done:

///

///

///

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |



Figure 2.  (Top-Level Menu)

The contents of the "ALL LARGE ARE P10" folder are shown next.

///

///

///

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |



Figure 3.  (Files shown when Top-Level Window is opened.)

**Step Four.**

Google would next have to open the "big.supereva.com" folder, which contains 129 files.  Figure 4, below, shows some of the contents of a very small portion of the "big.supereva.com" folder.

///
///

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |



Figure 4.  (Contents of the big.supereva.com folder.)

///
///
///
///
///
///
///

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

The cover letter (discussed above in Step One) instructs Google that within the "ALL LARGE ARE P10" folder, "all full-sized images are copyrighted by Perfect 10," presumably distinguishing full-sized images from thumbnails.  *See* Ex. N4 at 845.  On the immediately preceding Figure 4 there are at least four entries described as "thumbs" and at least nine entries described as "large."  Although there are no entries described as "full-sized," the Court assumes that Google would equate "large" with "full-sized."  In any event, what P10's cover letter fails to explain is whether it also claimed an ownership interest in the entries described merely with the model's name (*e.g.,* "amy 7"), which would have required Google to open up those files as well.[8]

**Step Five**.
      Figure 5, shown next, is the file that opens when a user clicks on the file in Figure 4 labeled "amy large 2.png."

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

[8]In some of the Group C notices, P10 uses green check marks or red Xs to indicate that particular photos are or are not P10-owned images.  *See, e.g.*, Zada Decl., Exs. 8 at 4 and 41 at 9.  However, P10 did not do this for the images in the "big.supereva.com" folder.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |



Figure 5.

Figure 5 does not contain a complete URL specifying where the image or images in question appear.  The URL is truncated by ellipses in the middle, thereby requiring Google to search within the big.supereva.com website to find the allegedly infringing

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

image.[9]  As discussed above, in order to find the copyrighted work to which Figure 5 corresponds, Google would have to search through either the perfect10.com website or through a folder containing over 15,000 P10 images that P10 had submitted with its June 28, 2007 DMCA notice.  Poovala Decl. ¶ 50, Ex. N3.

Thus, in order to process a single allegedly infringing URL, Google would have to go through at least eight steps—(1) review the cover letter; (2) review the spreadsheet; (3) insert Disk I; (4) open the "ALL LARGE ARE P10" folder; (5) open the "big.supereva.com" folder; (6) open the "amy large 2.png" file; (7) determine the image URL for the image in that file notwithstanding that the URL was truncated; and (8) refer to the folder sent with a separate DMCA notice containing the 15,000 P10 images in order to find the copyrighted image that corresponds to the "amy large 2.png" file.  Google might have to complete this process for many, if not all, of the 70,000 distinct files contained in the DVDs (including some files that each contain hundreds of pages of images), as well as for the external hard drive submitted with Ex. N3, which contained at least 46,187 pages of material.  *See* Khan Decl. ¶¶ 6, 13, 19.  This would be even more onerous than the situation in *CCBill*, where the Ninth Circuit found it was improper to require the defendant to "first find the relevant line in the spreadsheet indicating ownership information, then comb the 22,185 pages provided by Perfect 10 in order to find the appropriate image, and finally copy into a browser the location printed at the top of the page—a location which was, in some instances, truncated."  *CCBill*, 488 F.3d at 1113.

At the hearing, P10 voiced its concern that this Court's ruling would prevent it from including collections of infringing images as supporting evidence for otherwise valid DMCA notices.  Not so; P10 remains free to include additional supporting evidence, such as screenshots, with the material it submits to a service provider.  However, at a minimum, the essential elements of notification—the copyright owner's attestations of ownership, nonlicensed use, and veracity of the notice; contact information

---

[9]Some of the files submitted to Google did include complete URLs, such as page 2 of Exhibit 33 to the Zada Declaration.  However, the numerous steps Google would nonetheless have to take to process a Group C notice for those files would render that notice invalid.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

for the complainant; identification of the copyrighted work; and identification of the infringing material (including the location of that material and if necessary, a specific link under section 512(d))—must be included in a single written communication. Because the Group C notices fail to provide all of this information in one place, they do not impute knowledge to Google. Perfect 10 has therefore not raised a genuine issue of material fact as to whether Google is eligible for safe harbor under § 512(d).

## C.    Safe Harbor for Caching Feature Under Section 512(b)

Google has moved for summary judgment that it is entitled to safe harbor under 17 U.S.C. § 512(b) for its caching feature. As discussed in footnote six, *supra*, it is undisputed that Google's servers do not store images found in its cache. The images displayed on a cached page are made available to a viewer from their original source, if they still exist at that source. CSUF(b) ¶ 7-8. Thus, P10's claims for infringement based on images "located in" Google's cache are really claims based on Google's linking to outside infringing content, and the preceding § 512(d) analysis applies. That analysis concluded that Google is entitled to the § 512(d) safe harbor with respect to linking to outside infringement for all of the Group A, all of the Group C, and some of the Group B notices. For those Group B notices for which Google would not be entitled to safe harbor under § 512(d), a question could remain whether Google might nevertheless be entitled to safe harbor under § 512(b) because P10 had failed to indicate in its notices that the infringing material had been removed from the originating site, as required by § 512(b)(2)(E)(ii). But it is unnecessary to go through that analysis. On July 21, 2010, the Court ordered the parties to file statements identifying "where in the existing briefs on Google's motion for safe harbor under 17 U.S.C. § 512(b) there is any reference in any of the "Group B" "spreadsheet" notices sent between May 31, 2004 and April 24, 2007 (Poovala Decl. ¶ 41, Exhs. L1-L48) identifying any specific material on Google's cache as infringing." The Court has reviewed the parties' responses to this Order. In its response, Google demonstrated that nowhere in any of the Group B notices did P10 identify any specific material in Google's cache as infringing. P10 merely cited to one Group B notice that mentioned in passing that "Jerkengine.com has thousands of Perfect 10 infringements available by clicking on the Google cache link and dainews.nu has

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

many as well."[10]  Poovala Decl., Ex. L22 at 431.  However, the spreadsheet attached to that notice does not cite to any Google cache pages as infringing, and the mere reference to "thousands of Perfect 10 infringements" could not reasonably be deemed to confer notice of infringement as to these cache pages on Google.  Thus, the Court has been presented with no evidence that any portion of the Group B notices for which the availability of safe harbor is still at issue contains a valid notification of infringement for a Google cache page.  As a result, the Court GRANTS Google's motion for partial summary judgment for its caching feature.

### D.      Safe Harbor for Google's Blogger Service Under Section 512(c)

Because Google's Blogger service allows account holders to create their own blogs, which in some cases include allegedly infringing images that are uploaded onto Google's own servers, it is necessary to analyze the availability of a safe harbor under 17 U.S.C. § 512(c), which addresses service providers that store material on their systems at the direction of users.  *See* CSUF(c) ¶ 1; Poovala Decl. ¶ 26.  A service provider that stores allegedly infringing material on its system or network at the direction of users is entitled to safe harbor under 17 U.S.C. § 512(c)(1) if it

> (A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
>
> (ii) in the absence of such actual knowledge, is not aware of facts or

---

[10]In its response, P10 argued—without any statutory or case law support—that a notice identifying a web page necessarily identifies the cached page as well.  In support, P10 cites to the Poovala Declaration, which discloses that it is Google's practice to automatically remove a cached link when it suppresses the corresponding live web page URL.  Poovala Decl. ¶ 10.  Google's policy in responding to a notice is irrelevant to the question of whether that notice identified a cached web page in the first place.  P10 also ignored the Court's instructions and cited to references to Group C notices.  *See* Response (Docket No. 932) at 3 (citing Zada Decl. ¶ 39 for the proposition that "The Google cache link matches the full URL of the infringing web page . . . ." but not acknowledging that this paragraph of Zada's declaration is referring to Group C notices).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | | Date | July 26, 2010 |
|---|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | | |

circumstances from which infringing activity is apparent; or

(iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;

(B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

(C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1). Sixteen of P10's DMCA notices contain Blogger URLs. Poovala Decl. ¶ 93. Fourteen of these notices are part of the Group B notices, and two of them are part of Group C. *Id.*

The Court set forth the notice requirements for the § 512(c) safe harbor above in Section IV.B. *See* p. 10 of this Order. In *UMG Recordings, Inc. v. Veoh Networks Inc.,* 665 F. Supp. 2d 1099, 1107 (C.D. Cal. 2009), this Court noted that in *CCBill*, *supra*, "the Ninth Circuit provided clear guidance on how to apply the knowledge elements of the Section 512(c) safe harbor." The Court incorporates that discussion by reference and will not repeat it here.[11]

As discussed above in the section of this Order concerning § 512(d), some Group B notices could be considered adequate for imparting notice under the DMCA. However, in its opposition papers and in oral argument at the hearing P10 did not contend that Google failed to expeditiously process even a single Blogger URL within that group of notices, although it did include one such page (Exh. 45, p. 11) in the binder it handed up in court. *See* Zada Decl. ¶¶ 8, 41-51, 60-61, Exhs. 1, 9, 28-35, 45; Chou Decl. ¶¶ 8-11

---

[11]Suffice it to say that much of this Court's analysis was embraced by and quoted by the Court in *Viacom International, Inc. v. YouTube, Inc.*, — F. Supp. 2d —, 2010 WL 2532404, at *9, *12-*13 (S.D.N.Y. June 23, 2010).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|----------|----------------------|------|---------------|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

(citing only examples of a delay in removing Blogger infringing material identified in P10's Group C notices). Thus, Google clearly is entitled to safe harbor under § 512(c) for its Blogger service for the links identified only in the Group B notices, with the possible exception of the 23 supposedly infringing URLs that were included in that single page.

The Group C notices that list Blogger URLs are inadequate, however. They have all of the same deficiencies as the rest of the Group C notices. The requirements for a copyright holder are slightly less stringent under § 512(c) than under § 512(d) in that the former does not explicitly require the copyright holder to provide what the latter does: a specific "identification of the reference or link, to material or activity claimed to be infringing, that is to be removed or access to which is to be disabled." 17 U.S.C. § 512(d)(3). Section 512(c) merely requires the copyright holder to provide "identification of the material that is claimed to be infringing . . . and information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. § 513(c)(3)(A)(iii). Google has a tenable argument that a copyright holder would need to provide the post-URL of a particular Blogger post in order to include information "reasonably sufficient" to permit the location of the material. However, the Court need not address this argument now, since the other manifest deficiencies in the Group C notices—including their lack of specific identification of the copyrighted material and their inexplicably complicated organization—prevent them from imparting knowledge under the statute. Thus, Google need not show that it acted expeditiously on the Group C Blogger notices in order to be eligible for safe harbor under § 512(c).

The other requirement Google must meet to be eligible for safe harbor under § 512(c) is that it must show that it "does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." 17 U.S.C. § 512(c)(1)(B). In order to lose the protection of the safe harbor, a service provider must both be able to control the infringement *and* receive a financial benefit directly attributable to the infringement. *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1109 (W.D. Wash. 2004).

P10's only argument that Google has a right and ability to control infringing activity on Blogger is that the infringing material is on Google's servers and Google can take it down after it has been uploaded by users. The mere ability of a service provider to

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 26, 2010 |
|----------|----------------------|------|---------------|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

remove content after it has been uploaded is insufficient as a matter of law to establish the right and ability to control the infringing activity required by § 512(c)(1)(B). *UMG Recordings v. Veoh, supra*, 665 F. Supp. 26 at 1112-13.   P10 has not raised a triable issue that Google has a right and ability to control infringing activity.  Thus, the Court need not consider whether Google receives a financial benefit from the alleged infringement because it already meets the criteria for safe harbor under 17 U.S.C. § 512(c)(1)(B).

Thus, Google has demonstrated that it is entitled to safe harbor for its Blogger service under 17 U.S.C. § 512(c) as a matter of law.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Google's motion for partial summary judgment of entitlement to safe harbor under 17 U.S.C. § 512(d) for its Web and Image Search.  The Court GRANTS Google's motion for partial summary judgment for its caching feature based on 17 U.S.C. § 512(d), without having to assess whether it would be separately entitled to safe harbor under 17 U.S.C. § 512(b).  The Court GRANTS Google's motion for partial summary judgment of entitlement to safe harbor under 17 U.S.C. § 512(c) for its Blogger feature.

                                                 :

Initials of Preparer                      smo

July 2, 2007

To Alexander Macgillivray, Google's DMCA Agent and in-house counsel
Google, Inc.
1600 Amphitheatre Parkway, Building 47
Mountain View, CA 94043
By FedEx and by e-mail to: *amac@google.com*

To Andrew Bridges, Esq.
Winston & Strawn, LLP
101 California Street
San Francisco, CA 94111
By e-mail to: *ABridges@winston.com*

Dear Mr. Macgillivray and Mr. Bridges:

The following is a DMCA notice as well as a discovery production in *Perfect 10 v. Google*.

If you have difficulties locating the infringements identified in this DMCA notice, please do not hesitate to contact me. Although we believe all the required information is contained in this notice, I would be happy to walk you through the process of identifying our copyrighted works, if necessary. I can be reached at normanz@earthlink.net.

Accompanying this notice are two DVDs which contain approximately 20,000 full-size P10 copyrighted images from infringing web sites to which Google links. The DVDs are being sent to Mr. Macgillivray at Google, both for purposes of the DMCA notice and for production in the *Perfect 10 v. Google* case.

How to locate infringing images on the DVDs.

Disk I contains images displayed by Google from infringing web sites. The images are separated into three folders. The first folder is labeled "ALL ARE P10," which means that all of the images of models in that folder, with the exception of model images that are part of advertising banners, etc., are copyrighted by Perfect 10. The second folder is labeled "ALL LARGE ARE P10." This means that all full-sized images are copyrighted by Perfect 10. The third folder is labeled, "ALL LARGE WITH P10 NOTICES." This means that all large images which display Perfect 10 copyright notices are copyrighted by Perfect 10.

Typically, the large Perfect 10 images in Disk I are viewable in one of three ways: a) they appear immediately after the thumbnail is clicked on; b) after the thumbnail is clicked on, a page of thumbnails appears and one of those is clicked on; or c) it is necessary to go to a list of model names or otherwise navigate through the third party web site while remaining at google.com and then click on a model name or a thumbnail to view the full-size image.

GGL 032133

I have included an excel spreadsheet which details the folders on the hard drive that are related to this DMCA notice.

The left column of the spreadsheet lists the infringing web site (except on the last page). The middle column indicates which disk contains the infringing images from that web site. The right column indicates which folder or subfolder contains those images.

Disk II contains more images on infringing web sites to which Google links. The last folder, entitled "MODEL – ALL LARGE ARE P10," was obtained by doing searches on Perfect 10 model names. All large images in that folder, even if they are of a different model, are copyrighted by Perfect 10.

Neither Google nor the infringing third party web sites on which Perfect 10 images appear in either Disk I or Disk II, are authorized to make copies of the Perfect 10 images appearing in Disk I or Disk II.

As I have stated to you before, Google is not authorized to make any copies of any Perfect 10 copyrighted image, or to allow Google ads to appear near such images.

If you wish to examine the copyrighted images of Perfect 10 which correspond to these infringing images, I have previously sent to you all of the images on our web site, as of June, 2007. Also, as I have previously advised you, if you would like a free subscription to Perfect 10's website, please let me know and I will provide a user name and password for you.

I swear under penalty of perjury that a) I have a good faith belief that the use of the Perfect 10 copyrighted material in the manner complained of in this email is not authorized by the copyright holder Perfect 10, its agent, or the law, b) that the information in this notification is accurate, to the best of my knowledge, and c) that I am authorized to act on behalf of Perfect 10, Inc. the owner of the exclusive rights in the material which is being infringed.

Please contact me if you have any questions about this notice.

Sincerely,

Norm Zada, Ph.D.
Perfect 10, Inc.
800-606-6639
P.O. Box 3398
Beverly Hills, CA 90212
Fax: 310-205-9644
normanz@earthlink.net

**Exhibit N4, page 846**

GGL 032134

Enclosure to Mr. Macgillivray:  Two DVDs.

cc:  Mark Jansen, Esq., without enclosure

**Exhibit N4, page 847**

GGL 032135