O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys **NOT** Present for Plaintiffs: | Attorneys **NOT** Present for Defendants: |
|---|---|

**Proceedings:**     IN CHAMBERS (No Proceedings Held)

## I.    INTRODUCTION

Before the Court is Plaintiff Perfect 10, Inc.'s ("P10") motion for a preliminary injunction against Defendant Google, Inc. ("Google").  The parties are familiar with the procedural history of the case, some of which is set forth in the Court's July 26, 2010 Order granting in part and denying in part Google's motions for partial summary judgment as to safe harbor under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512.  The Court need not further elaborate on the procedural history here, other than to note that P10 filed an earlier motion for a preliminary injunction against Google, which the Court granted in part and denied in part on February 17, 2006.  *Perfect 10 v. Google, Inc.*, 416 F. Supp. 2d 828 (C.D. Cal. 2006).  The Ninth Circuit affirmed in part and reversed in part, vacating the injunction that this Court issued based upon direct infringement and remanding for this Court to reconsider P10's contributory infringement claims.  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007).  P10 now moves for a preliminary injunction against Google based upon the Ninth Circuit's ruling on its contributory infringement claims, as well as based upon new evidence that—P10 argues—justifies a finding of direct and vicarious infringement.

The Court held a hearing on P10's preliminary injunction motion on April 5, 2010 and explored related issues at the hearing on Google's DMCA-based summary judgment motions on May 10, 2010.  For the following reasons, the Court DENIES P10's motion for a preliminary injunction.[1]

---

[1]Docket No. 772.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|----------|----------------------|------|---------------|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

## II.    STATEMENT OF FACTS

        The parties incorporate by reference their moving papers filed with Google's
motions for partial summary judgment as to safe harbor under the DMCA.  *See* Opp'n at
2 n.2; Reply at 3 n.2.  Because many of the facts overlap between those motions and this
one, the Court also incorporates by reference its recital of the facts in its July 26, 2010
DMCA safe harbor order.[2]  The statement of facts in this Order will be limited to those
facts that are newly presented in the preliminary injunction motion.  Whenever there is
any ambiguity about which set of declarations the Court is citing, the Court will clarify.
For example, the Court will specify either "Zada PI Decl." (for the Zada Declaration filed
with the Preliminary Injunction motion) or "Zada DMCA Decl." (for the Zada
Declaration filed with Google's motions for partial summary judgment as to safe harbor
under the DMCA).

        In addition to Google's web search, image search, cache, and Blogger feature,
which were described in the Court's July 26, 2010 Order, P10 has offered evidence that
Google has a practice of forwarding the DMCA takedown notices it receives and
processes—including those from P10—to the website *chillingeffects.org*.[3]  Zada PI Decl.

_____

        [2]The Court notes, for clarity purposes, that P10 and Google classify P10's DMCA
takedown notices using different terms.  In its July 26, 2010 Order, the Court adopted
Google's use of the terms "Group A," "Group B," and "Group C" to refer to the notices
sent in 2001; the "spreadsheet" notices sent between May 31, 2004 and April 24, 2007;
and the "DVD and hard drive notices" sent in or after December 2005, respectively.  *See*
July 26, 2010 Order at 4.  P10 uses the term "spreadsheet notices" to refer to the Group B
notices and the term "Adobe-style" or "Adobe PDF" notices to refer to a subset of the
Group C notices that included Adobe PDF files containing the allegedly infringing
images (other Group C notices included .png or other image files—rather than Adobe
PDF files—of the allegedly infringing images).  In this Order, the Court may at times
employ P10's terminology rather than Google's terminology.

        [3]P10 asserts that Google selectively forwards its notices, based upon the fact that
certain notices have not appeared on Chilling Effects's website, but Google insists that it

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

¶ 13.  The Court will explain how Chilling Effects functions, *infra*.

P10 also addresses its claim of violation of its rights of publicity in this preliminary injunction motion.  *See* Second Amended Complaint ("SAC") ¶¶ 84-92.[4]  P10 has offered evidence that the P10 models Aria Giovanni, Erica Campbell, Amy Weber, Amber Smith, and Irina Voronina have assigned their rights of publicity to P10.  Zada PI Decl. ¶ 101.  P10 also offers evidence that blogspot.com websites (meaning, websites hosted on Google's Blogger servers) display these models' names (and in some cases, images of them) without authorization from P10.  *Id.*

## III.  LEGAL STANDARDS

A.    Motion for Preliminary Injunction

As the Supreme Court has articulated,

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.*, — U.S. —, 129 S. Ct. 365, 374 (2008); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374).  On July 28, 2010, in *Alliance for Wild Rockies v. Cottrell*, the Ninth Circuit concluded that "the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*."  *Alliance for Wild Rockies v. Cottrell*, — F.3d —, 2010 WL 2926463, at *7 (9th

---

forwards all notices it receives and speculates that any missing notices must be due to a backlog in Chilling Effects's processing system.  *See* 04/05/2010 Hearing Tr. at 11:19-12:15, 19:3-18.  This dispute is immaterial to the Court's analysis.

[4]After the Court granted P10's motion for leave to file its SAC, Docket No. 321, P10 never actually filed a copy of its SAC, so the Court is referring to the lodged copy of P10's Proposed Second Amended Complaint at Docket No. 303.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

Cir. July 28, 2010).  In particular, the Ninth Circuit still holds that "A preliminary injunction is appropriate when a plaintiff . . . demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Id.*  "Of course, plaintiffs must also satisfy the other *Winter* factors, including the likelihood of irreparable harm."  *Id.*


**B.      Copyright Law**

1. Direct infringement

"Plaintiffs must satisfy two requirements to present a prima facie case of direct infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) and citing 17 U.S.C. § 501(a)).  17 U.S.C. § 106 states, in pertinent part:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
> (1) to reproduce the copyrighted work in copies or phonorecords;
> . . .
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> . . .
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly . . . .

With respect to the display right, the Ninth Circuit adopted this Court's "server test," which held that

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

a computer owner that stores an image as electronic information and serves that electronic information directly to the user ("*i.e.*, physically sending ones and zeroes over the [I]nternet to the user's browser," Perfect 10 [*v. Google, Inc.*, 416 F.Supp.2d 828, 839 (C.D. Cal. 2006)]) is displaying the electronic information in violation of a copyright holder's exclusive display right. *Id.* at 843-45; *see* 17 U.S.C. § 106(5). Conversely, the owner of a computer that does not store and serve the electronic information to a user is not displaying that information, even if such owner in-line links to or frames the electronic information. *Perfect 10*, 416 F.Supp.2d at 843-45. . . .

*Perfect 10*, 508 F.3d at 1159.

With respect to the distribution right, the Ninth Circuit also followed this Court's finding that "[a] distribution of a copyrighted work required an 'actual dissemination' of copies." *Perfect 10*, 508 F.3d at 1162 (citing *Perfect 10*, 416 F. Supp. 2d at 844).

### 2. Contributory infringement

The Ninth Circuit instructed:

In order for Perfect 10 to show it will likely succeed in its contributory liability claim against Google, it must establish that Google's activities meet the definition of contributory liability recently enunciated in *Grokster*. Within the general rule that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement," [*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)], the Court has defined two categories of contributory liability: "Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Id.* at 942 . . . (Ginsburg, J., concurring) (quoting [*Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984)]).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

*Perfect 10*, 508 F.3d at 1170.  The Court continued,

> Accordingly, we hold that a computer system operator can be held
> contributorily liable if it "has actual knowledge that specific infringing
> material is available using its system," *Napster*, 239 F.3d at 1022, and
> can "take simple measures to prevent further damage" to copyrighted
> works, [*Religious Technology Center v. Netcom On-Line
> Communication Services, Inc.*, 907 F. Supp. 1361, 1375 (N.D. Cal.
> 1995)], yet continues to provide access to infringing works.

*Id.* at 1172.  Applying this test to P10 and Google, the Ninth Circuit instructed,

> Applying our test, Google could be held contributorily liable if it had
> knowledge that infringing Perfect 10 images were available using its
> search engine, could take simple measures to prevent further damage to
> Perfect 10's copyrighted works, and failed to take such steps.

*Id.*  The Ninth Circuit found that disputes of fact still existed as to whether P10's notices
and Google's responses to these notices were adequate to confer knowledge, as well as
whether there are "reasonable and feasible means for Google to refrain from providing
access to infringing images."  *Id.* at 1172-73.

### 3. Vicarious infringement

As the Ninth Circuit articulated,

> *Grokster* states that one "infringes vicariously by profiting from direct
> infringement while declining to exercise a right to stop or limit it."
> *Grokster*, 545 U.S. at 930 . . . . As this formulation indicates, to succeed
> in imposing vicarious liability, a plaintiff must establish that the
> defendant exercises the requisite control over the direct infringer and that
> the defendant derives a direct financial benefit from the direct
> infringement. *See id. Grokster* further explains the "control" element of
> the vicarious liability test as the defendant's "right and ability to

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

supervise the direct infringer." *Id.* at 930 n. 9 . . . . Thus, under *Grokster*, a defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so.

*Perfect 10*, 508 F.3d at 1173.

　　4.　Fair use

　　　Fair use under 17 U.S.C. § 107 is an affirmative defense to copyright infringement. "[O]nce Perfect 10 has shown a likelihood of success on the merits, the burden shifts to Google to show a likelihood that its affirmative defenses will succeed." *Perfect 10*, 508 F.3d at 1158.

　　　Section 107 provides,

> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.
> The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

17 U.S.C. § 107.  The Ninth Circuit went on to explain that the fair use doctrine must be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | | Date | July 30, 2010 |
|---|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | | |

analyzed on a case-by-case basis, with all four factors considered together, not in
isolation, and in light of the purpose of copyright law, which "is '[t]o promote the
Progress of Science and useful Arts,' U.S. Const. art. I, § 8, cl. 8, and to serve ' 'the
welfare of the public.' ' " *Perfect 10*, 508 F.3d at 1163 (quoting *Sony Corp. of Am. v.
Universal City Studios, Inc.*, 464 U.S. 417, 429 n. 10 . . . [(1984)] (quoting H.R.Rep. No.
2222, 60th Cong., 2d Sess. 7 (1909))).

     5.  DMCA safe harbor

     DMCA safe harbor, 17 U.S.C. § 512, is also an affirmative defense to copyright
infringement.  It precludes liability for damages and limits injunctive relief to:

> [O]ne or more of the following forms:
> (i) An order restraining the service provider from providing access to
> infringing material or activity residing at a particular online site on the
> provider's system or network.
> (ii) An order restraining the service provider from providing access to a
> subscriber or account holder of the service provider's system or network
> who is engaging in infringing activity and is identified in the order, by
> terminating the accounts of the subscriber or account holder that are
> specified in the order.
> (iii) Such other injunctive relief as the court may consider necessary to
> prevent or restrain infringement of copyrighted material specified in the
> order of the court at a particular online location, if such relief is the least
> burdensome to the service provider among the forms of relief
> comparably effective for that purpose.

17 U.S.C. §§ 512(a) & (j)(1)(A).  In its July 26, 2010 Order, this Court held that Google
is entitled to DMCA safe harbor for its web and image search, caching, and Blogger
features with respect to all of P10's Group A and Group C notices, and part of the Group
B notices.

## IV.   DISCUSSION

###    A.   Likelihood of Success on the Merits

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

P10 argues that it is entitled to an injunction based upon three distinct types of Google's conduct that P10 asserts constitute copyright infringement: (1) Google's web and image search and its related caching feature; (2) Google's Blogger service; and (3) Google's forwarding of P10's DMCA notices to the Chilling Effects website for publication.[5] The Ninth Circuit already addressed the first type of alleged infringement in its 2007 Order and remanded the case to this Court to reconsider the issue of contributory infringement, but the facts pertaining to the two other types of conduct were not before either court at that time. In addition, P10 argues that it is entitled to an injunction based upon Google's alleged violation of its rights of publicity. In examining P10's likelihood of success on the merits on the copyright claim, the Court will determine whether P10 will likely be able to establish a prima facie case for infringement for each type of conduct. The Court will then consider whether Google will likely be able to establish (or has established) the applicability of an affirmative defense. The Court will address the right of publicity claim separately.

### 1. Google's web and image search and its caching feature

The Ninth Circuit has already issued a dispositive ruling that applies to much of P10's motion with respect to Google's web and image searches and its cache. In its 2007 opinion, the Ninth Circuit applied this Court's "server test" and concluded that P10 was

---

[5]P10 also argues that the Court should enjoin Google from: (1) linking to sites that display perfect10.com usernames and passwords and (2) from placing AdSense advertisements on or for infringing websites. *See* Motion at 16-17. However, this Court and the Ninth Circuit have already ruled that P10 is not likely to succeed on the merits of its copyright claims based upon password-displaying websites and AdSense advertisements. *See Perfect 10*, 416 F. Supp. 2d 828, 838 n.9 (finding that P10 likely has no copyright interest in the username/password combinations that perfect10.com website users create); *Perfect 10*, 508 F.3d 1173 n.13 (finding that P10 had not presented sufficient evidence that users logging onto the perfect10.com website with unauthorized passwords infringed of P10's exclusive rights), 1173-74 (holding that Google's right to terminate an AdSense partnership did not entitle it to stop direct infringement by third-party websites and thus could not subject it to liability for vicarious infringement). P10 has presented no evidence in this motion that would justify a reevaluation of this Court's and the Ninth Circuit's prior rulings on these issues.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

not likely to succeed on the merits of its direct infringement and vicarious infringement
claims against Google based upon Google's in-line linking in its web and image search
and its cache. *Perfect 10*, 508 F.3d at 1160-62. The Ninth Circuit concluded that
although it was likely P10 could establish a prima facie case for direct infringement based
upon Google's storage and communication of thumbnail versions of P10's images,
Google was likely to prevail on its fair use defense with respect to the thumbnails. P10
argues unconvincingly that this Court should reach a different result and should revise the
server test for direct infringement, based upon new evidence of so-called massive
infringing websites. The server test is now binding Ninth Circuit precedent, and it is not
within this Court's power to revise it. P10 also argues that because Google now hosts
over 22,000 thumbnails rather than the 2,500 it hosted when the case was on appeal,
Google's hosting of thumbnails should no longer constitute fair use. *See* Zada PI Decl. ¶
6. However, the Ninth Circuit's fair use analysis was based upon the character, not the
quantity, of the thumbnails, so no change in the analysis is warranted. *See Perfect 10*,
508 F.3d at 1163-68. Because P10 has provided no justification for departing from the
Ninth Circuit's rulings with respect to direct and vicarious infringement for Google's web
search, image search, and cache, the Court need only analyze whether Google is likely to
be liable for contributory infringement as a result of these services.

As noted above, the Ninth Circuit specifically instructed that, with respect to the
in-line linking in its web and image search and cache, "Google could be held
contributorily liable if it had knowledge that infringing Perfect 10 images were available
using its search engine, could take simple measures to prevent further damage to Perfect
10's copyrighted works, and failed to take such steps." *Perfect 10*, 508 F.3d at 1172.
The Ninth Circuit found that disputes of fact still existed as to whether P10's notices of
infringement and Google's responses to those notices were adequate, as well as whether
there are "reasonable and feasible means for Google to refrain from providing access to
infringing images." *Id.* at 1172-73.[6]

---

[6]Google now argues that P10 has not provided evidence of direct infringement on
third-party sites, as is required for contributory liability. Google conceded for the
purposes of the Ninth Circuit appeal that third-parties were infringing. *Perfect 10*, 508
F.3d at 1169. Even if Google has not waived this argument, P10 has produced evidence
sufficient to establish a prima facie case that at least some third party sites that are
indexed on Google have directly infringed P10's copyrights. Zada PI Decl. ¶ 86, Ex. 65.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|

| Title | PERFECT 10, INC. v. GOOGLE, INC. |
|---|---|

As discussed at length in this Court's July 26, 2010 Order, the myriad of deficiencies in the Group A and Group C notices render them inadequate to confer notice of infringement as to third-party sites. July 26, 2010 Order at 12, 15-25. Portions of the Group B notices are adequate to confer notice of infringement. July 26, 2010 Order at 13-15. Google has offered evidence that it has processed the majority—it asserts all—of the Group B notices. Poovala DMCA Decl. ¶¶ 79-80, Exs. FF-GG. For its part, P10 offers evidence that Google has failed to process some of the Group B notices. Zada DMCA Decl. ¶ 26, Ex. 14. However, P10 has not provided evidence on this preliminary injunction motion that those Group B notices that Google failed to process are the ones that conferred sufficient notice of infringement. Instead, P10's arguments about those notices are so general as to be generic. For example, they encompass all three sets of notices, without focusing on the portion of the Group B notices that are in issue, which such notices are the only remaining potential basis for imposing liability. *See* Reply at 13-14. P10 has not met its burden of establishing that it is likely to prevail on its contributory infringement claim as to *all* links and websites that it identified in any of its notices. *See* Proposed Order ¶¶ A-B. Nor has P10 tailored the relief requested in its proposed order to removal of those relatively few links for which P10 conferred valid notice of infringement.

P10 also argues that its notices in general should have put Google on constructive notice of infringement. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer know or *have reason to know* of direct infringement." (emphasis added and quotation omitted)). Even if this were true, the doctrine of contributory infringement liability still requires that the alleged infringer be able to take simple measures to prevent further damage to the copyrighted works. *Perfect 10*, 508 F.3d at 1172. P10 argues that Google could take simple measures to block all links to any website that contains any infringed image (particularly the so-called massive infringing websites) or that it could use image recognition software to find similar images to the infringed ones and then block them. P10's "evidence" in support of these alternatives consists exclusively of speculation by Dr. Zada. Zada Reply PI Decl. ¶ 23. Moreover, as Google points out, these methods run the risk of being dramatically overinclusive because neither can identify images that are properly licensed or fair use as opposed to infringing. *See* Poovala DMCA Decl. ¶ 15.

Thus, P10 has not established that it is likely to succeed on the merits of its claim

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

for contributory infringement as to Google's web search, image search, and cache.[7]

###    2.  Google's Blogger service

####        a. P10's prima facie case of infringement

One of the issues that was not before this Court or the Ninth Circuit on P10's prior motion for a preliminary injunction is whether Google is likely to be held liable for infringement based upon its Blogger service.  Blogger is a service that Google owns and operates that allows Blogger account holders to create their own blogs hosted on Google's servers.  Poovala DMCA Decl. ¶ 26.  Most of these Blogger web pages bear the suffixes "blogspot.com" or "blogger.com."  *Id.*  Google does not charge users to set up Blogger accounts.  *Id.*  Blogger account holders may display images on their blogs.  In some cases the images are uploaded onto Google's servers and in other cases a user hyperlinks to content hosted on other servers.  *Id.*  In either case, the user decides to display the image on the Blogger site; Google's servers passively process users' upload requests.  *See Id.*

─────────────────

[7]The Court reiterates it previous ruling that Google established its entitlement to a safe harbor defense for its web search, image search, and cache, with respect to the Group A and Group C notices, as well as part of the Group B notices.  Even if P10 were to prevail on the merits as to these claims, the injunctive relief would be limited to specific relief necessary to prevent infringement at a particular online location and to relief that is also the least burdensome effective alternative.  *See* 17 U.S.C. § 512(j)(1)(A)(iii).  The relief P10 seeks on this motion fails to satisfy this requirement, with the possible exception of its request that the Court enjoin Google from "powering *rapidshare.com* search engines used to find infringing materials offered by *rapidshare.com.*"  Proposed Order ¶ F.  However, neither in its moving papers nor at the hearing did P10 ever explain what it meant by "powering *rapidshare.com* search engines" or provide any evidence that Google is, in fact, doing so.  In any event, P10 sued Rapidshare.com for copyright infringement in the Southern District of California.  On July 15, 2010, Rapidshare filed a document indicating that the parties in that case had reached a settlement.  *See* Rapidshare's Notice of Withdrawal of Its Motion for Partial Summary Judgment, *Perfect 10, Inc. v. Rapidshare AG*, No. 09-CV-2596 (S.D. Cal. July 15, 2010) (Docket No. 99).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

Does Google's hosting on its services of infringing images for its users' Blogger pages constitute direct infringement under the server test, as the Ninth Circuit found as to thumbnails? Not necessarily. Unlike the thumbnails, where Google's servers created the copies of the images, the evidence indicates that, with respect to the Blogger service, Google's servers merely automatically and passively process uploads of photographs initiated by Blogger users. *See* Poovala DMCA Decl. ¶ 26.

In its opinion, the Ninth Circuit explicitly reserved ruling on the issue of whether "an entity that merely passively owns and manages an Internet bulletin board or similar system violates a copyright owner's display and distribution rights when the users of the bulletin board or similar system post infringing works." *Perfect 10*, 508 F.3d at 1160 n.6 (citing *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004)). The *CoStar Group* court held that

> [Internet Service Providers ("ISPs")], when passively storing material at the direction of users in order to make that material available to other users upon their request, do not "copy" the material in direct violation of § 106 of the Copyright Act. Agreeing with the analysis in *Netcom*, we hold that the automatic copying, storage, and transmission of copyrighted materials, when instigated by others, does not render an ISP strictly liable for copyright infringement under §§ 501 and 106 of the Copyright Act. An ISP, however, can become liable indirectly upon a showing of additional involvement sufficient to establish a contributory or vicarious violation of the Act. In that case, the ISP could still look to the DMCA for a safe harbor if it fulfilled the conditions therein.

*CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) (following *Religious Technology Center v. Netcom On-Line Communication Services, Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) and holding that an online real estate listing website whose members were uploading material that violated the plaintiff's copyrights was not liable for direct infringement). *See also Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1056-57 (C.D. Cal. 2002) (Cooper, J.) (noting in dicta that a passive internet service provider is not responsible for direct infringement based upon a user's uploading of infringing material in a case involving USENET users uploading copyrighted works to USENET servers), *aff'd in part and rev'd in part on other grounds*, 357 F.3d 1072 (9th Cir. 2004).

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|----------|----------------------|------|---------------|

| Title | PERFECT 10, INC. v. GOOGLE, INC. |
|-------|----------------------------------|

The *Field* and *Parker* courts also held that automated copying was not sufficient to invoke direct liability, but those cases involved Google's cache rather than uploads by users, so the context is slightly different. *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 496-98 (E.D. Pa. 2006).[8]  This Court agrees with the *CoStar Group* and *Netcom* courts and finds that because Google's conduct with respect to its Blogger service involves only the passive processing of users' uploads, Poovala DMCA Decl. ¶ 26, P10 is unlikely to be able to establish that Google has directly infringed its copyrights.

Is Google liable for contributory infringement for its Blogger service?  For the same reasons that P10 is unlikely to establish that Google is liable for contributory infringement for its web and image search and cache, it also is unlikely that P10 will prove contributory liability for blogspot.com.  In particular, P10's notices were not sufficient to put Google on notice of infringement by users of its Blogger sites.  Only the Group B and Group C notices contained Blogger URLs, and the only Blogger URLs that Google failed to remove fall within the defective Group C notices.  *See* Poovala DMCA Decl. ¶ 93; Chou PI Decl. ¶ 8.  Because P10 cannot prove that Google received valid notices of images in its Blogger system that infringe P10's copyrights, P10 is unlikely to be able to prove that Google is liable for contributory infringement.

As for vicarious infringement, the Ninth Circuit has explained that in order "to succeed in imposing vicarious liability, a plaintiff must establish that the defendant exercises the requisite control over the direct infringer and that the defendant derives a direct financial benefit from the direct infringement." *Perfect 10*, 508 F.3d at 1173.  P10 has failed to provide evidence that it is likely to be able to establish that Google derives a direct financial benefit from the direct infringement.  P10 does not dispute that Google provides Blogger as a free service to users, without charging a fee.  P10's only evidence

---

[8]The distinguished commentator David Nimmer does not consider volitional conduct on the part of the defendant as a necessary element to establish direct infringement. *See,* 3 *Nimmer on Copyright* § 12B.06[B][2][c][ii], at 12B-82.5-12B-83 ("[The *Field v. Google*] focus on non-volitional conduct is appropriate in the context of evaluating liability for serving cached material. But rather than it being a bar at the outset to plaintiff's establishing a prima facie case, Congress has defined it as one factor to be considered in evaluating the propriety of the caching safe harbor.")

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

of financial benefit to Google from Blogger infringement is "from clicks on ads placed next to infringing P10 images."  Reply at 15-16 (citing Zada PI Decl. ¶¶ 16, 74-76, Exs. 8, 9, 54-56).  None of the webpages with ads placed next to infringing images discussed or shown in paragraphs 16 and 74-76 or Exhibits 8 and 54-56 of the Zada PI Declaration is a Blogger webpage.  Exhibit 9 is a disc submitted to the Court containing dozens of top-level folders and hundreds, if not thousands, of files.  Nowhere in the cited paragraphs of Zada's Declaration does he explain how to locate Blogger webpages containing AdSense advertisements within Exhibit 9.  The Court will not scour Exhibit 9 to find evidence of Google advertisements on Blogger pages when P10 has not specifically cited to such evidence.  Moreover, even if P10 had cited to evidence of Google advertising on Blogger pages, it is unclear that such evidence would qualify as the *direct* financial benefit necessary to impose vicarious liability.  *See, e.g.*, *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) (finding that the "essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps" and holding that the plaintiff had not established a direct financial benefit from providing access to infringing material where the record lacked evidence that the defendant attracted or retained subscriptions because of infringement).  Given the absence of evidence of any direct financial benefit to Google from the alleged infringement on Blogger sites, the Court finds that P10 is unlikely to be able to establish vicarious liability for Google's Blogger service.

### b.  Google's DMCA safe harbor defense

In any event, Google has established that it is entitled to DMCA safe harbor for its Blogger Service.  In its July 26, 2010 Order, the Court granted Google's motion for DMCA safe harbor with respect to that service with the possible exception of several blogspot.com links from the Group B notices that Google had failed to expeditiously process as of December 12, 2005.  *See* Zada DMCA Decl. ¶ 27, Ex. 16 at 1, 2, 4, 6.[9]

---

[9]As explained in the Court's July 28, 2010 Notice of Errata, the Court's July 26, 2010 Order at pages 27-28 referred to 23 blogspot.com URLs in Exhibit 45 to the Zada DMCA Declaration that Google may not have expeditiously processed.  That reference should actually have been to six blogspot.com URLs on pages 1, 2, 4, and 6 of Ex. 16 to the Zada DMCA Declaration.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

However, P10 has presented no evidence in this preliminary injunction motion that any of
these blogspot.com URLs remain unprocessed. The Chou Declaration describes the
process by which P10 verified which of the Blogger URLs it had identified in its notices
had not been blocked by Google as of February 22, 2010. *See* Chou PI Decl. ¶¶ 8-11;
Zada PI Decl. ¶ 60. The Chou Declaration only addresses Group C "Adobe notices sent
to Google from July 2, 2007 through May 7, 2009." Chou PI Decl. ¶ 8. Ms. Chou
compiled her findings in an Excel spreadsheet, which is contained in the Exhibit 9 disc
lodged with the Court. That spreadsheet file, entitled "blogger still up 22610 sc.xls,"
contains only links from the Group C notices.[10]

      With respect to the Group C notices, P10 would be limited to receiving relief in

> [O]ne or more of the following forms:
> (i) An order restraining the service provider from providing access to
> infringing material or activity residing **at a particular online site** on the
> provider's system or network.
> (ii) An order restraining the service provider from providing access to **a
> subscriber or account holder** of the service provider's system or
> network who is engaging in infringing activity and is identified in the
> order, by terminating the accounts of the subscriber or account holder
> **that are specified in the order**.
> (iii) Such other injunctive relief as the court may consider necessary to
> prevent or restrain infringement of copyrighted material specified in the
> order of the court at a particular online location, if such relief is **the least
> burdensome to the service provider** among the forms of relief
> comparably effective for that purpose.

17 U.S.C. § 512(j)(1)(A) (emphasis added). In its proposed order on this
motion, P10's requested relief is, once again, entirely general. It does not

---

[10]There is one possible exception to this finding. The spreadsheet contains the
URL "photos1.blogger.com/img/114/2202/1600/SylviaKaczmarek.jpg," which was
purportedly included in a June 12, 2005 notice to Google, but the image at this URL has
been removed from Google's servers. When the Court visited that page on July 27, 2010,
it displayed a "URL not found" error message.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

request relief specific to Google's Blogger feature, much less pertaining to any particular Blogger user or page.  In particular, it fails to provide the specificity required by the portions of the statute set forth above in bold.  For that additional reason, P10 is unlikely to be able to establish that it is entitled to an injunction that applies to Google's Blogger feature.

### 3.  Google's forwarding of DMCA notices to Chilling Effects

Chilling Effects is a nonprofit, educational project run jointly by the Electronic Frontier Foundation and Harvard, Stanford, Berkeley, University of San Francisco, University of Maine, George Washington School of Law, and Santa Clara University School of Law clinics.  It is designed to help Internet users "understand the protections that the First Amendment and intellectual property laws give to your online activities."  Kassabian PI Decl., Ex. N.  The public are invited to submit cease and desist notices (including DMCA takedown notices) to the website, on which law students conduct research.  The notices, commentary on the notices, and research conducted based upon the notices are all posted in an online database.  *Id.*  Google argues that it forwards P10's (and other) notices to Chilling Effects to further that research and to notify the provider of the material that it has removed or disabled access to the material, as required by the DMCA, 17 U.S.C. § 512(g)(2)(A).  *See* Opp'n at 9 & n.12.  When Google removes an image or link from its search results, it posts a statement at the bottom of the page, indicating "In response to a complaint we received under the US Digital Millennium Copyright Act, we have removed [number of] result(s) from this page.  If you wish, you may read the DMCA complaint that caused the removal(s) at ChillingEffects.org."  *See, e.g.*, Kassabian PI Decl., Ex. L at 159.  The phrase "read the DMCA complaint" hyperlinks to the DMCA takedown notice on the Chilling Effects website.  *Id.* [11]

---

[11]Dr. Zada himself relies upon the research uses of Chilling Effects to provide evidence to support P10's motion.  In order to support his argument that Rapidshare is a "massive infringing website," and Google should discontinue linking to it entirely, he searched Chilling Effect's database of DMCA notices to find how many copyright holders had complained against Rapidshare.  *See* Zada Reply Decl. ¶ 7.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

Since June 2007, P10's DMCA notices have consisted of Adobe PDF files that include actual copies of the images at issue, as well as embedded links to the infringing websites. Zada PI Decl. ¶ 13. Thus, whenever Google has forwarded these Adobe PDF notices, it has sent copies of allegedly infringing images to Chilling Effects.

P10 argues that Google's practice of forwarding to Chilling Effects the P10 takedown notices that Google had honored constitutes direct and contributory copyright infringement. Though P10 asserts that forwarding both the spreadsheet-style and the Adobe-style notices to Chilling Effects constitutes infringement, its primary concern appears to be with the Adobe-style notices, which contain copies of the actual images, as well as embedded links to the infringing websites. *See* Motion at 9; Zada PI Decl. ¶ 13. P10 asserts that forwarding copies of the infringed images to Chilling Effects constitutes direct copyright infringement and for Google to place on the result for the original image search an in-line link to the notices on Chilling Effects constitutes contributory infringement. *See* Reply at 6.

a. Prima facie case of infringement

P10 has not established that forwarding the "spreadsheet style" Group B notices likely constitutes direct infringement. The Copyright Office itself has determined that "[w]ords and short phrases such as names, titles, and slogans; familiar symbols or designs; mere variations of typographic ornamentation, lettering or coloring; mere listing of ingredients or contents" are not subject to copyright. 37 C.F.R. § 202.1(a). *See Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004) (holding that the "Copyright Office's longstanding practice of denying registration to short phrases merits deference").

On the other hand, if 17 U.S.C. §106 were construed literally, Google's sending of the Adobe PDF "screenshot-style" Group C notices to Chilling Effects probably would constitute direct infringement, since it involves an "actual dissemination" of copies of P10's claimed copyrighted work with an intent that they be made available to the public. *See Perfect 10*, 508 F.3d at 1162. In its Opposition, Google implicitly concedes that forwarding the Group

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

C notices to Chilling Effects could constitute direct infringement. *See* Opp'n at 9-10 ("Even if P10 is correct that Google's forwarding of such notices constitutes a 'direct infringement' of P10's copyrights—and P10 has failed to make this showing—that forwarding is clearly a fair use under 17 U.S.C. § 107."). Thus, P10 will likely be able to establish that Google's forwarding of the Group C notices to Chilling Effects constitutes direct infringement.

                b.  Fair use

      17 U.S.C. § 107 explicitly provides that the use of a copyrighted work for purposes such as "criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." The Court now applies the four fair use factors set forth in section 107, as follows:

                i.  The purpose and character of the use, including whether
                such use is of a commercial nature or is for nonprofit educational purposes

      "The central purpose of this inquiry is to determine whether and to what extent the new work is 'transformative.' . . . A work is 'transformative' when the new work does not 'merely supersede the objects of the original creation' but rather 'adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.' " *Perfect 10*, 508 F.3d at 1164 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). Chilling Effect's publication of annotated versions of the notices with scholarly commentary is clearly a transformative, noncommercial use. Kassabian PI Decl., Ex. N (describing the work of Chilling Effects). Though Chilling Effects is the entity conducting the transformation, Google **assists** Chilling Effects in this endeavor. By substituting the image it has removed pursuant to a takedown notice with the statement "In response to a complaint we received under the US Digital Millennium Copyright Act, we have removed [number of] result(s) from this page. If you wish, you may read the DMCA complaint that caused the removal(s) at ChillingEffects.org" and then linking to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

the commentary at Chilling Effects, Google makes it clear that its purpose in forwarding the notices to Chilling Effects is to aid in that nonprofit organization's mission of providing analysis and commentary on the uses of the DMCA. *See* Kassabian PI Decl., Ex. L at 159. Thus, this factor weighs in favor of a finding of fair use.

ii.  The nature of the copyrighted work

As this Court found in its February 16, 2006 Order on P10's prior preliminary injunction motion, and as the Ninth Circuit affirmed, P10's images are creative but also previously published. *Perfect 10*, 416 F. Supp. 2d at 849-50; *Perfect 10*, 508 F.3d at 1167. Thus, this factor weighs only slightly in favor of P10. *Id.*

iii.  The amount and substantiality of the portion used in relation to the copyrighted work as a whole

"The third factor asks whether the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Perfect 10*, 508 F.3d at 1167 (quoting *Campbell*, 510 U.S. at 586). Here, Google's purpose in forwarding the notices to Chilling Effects is to allow Chilling Effects to conduct and publish research and commentary on the notices. *See* Kassabian PI Decl., Ex. L at 159, Ex. N.  P10 argues that Google could accomplish these same purposes even if it redacted the images from the notices or at least removed the live links in the notices. However, in order for the administrators of Chilling Effects to be able to conduct and communicate their research effectively, they would need to have access and be able to comment on the notices in their original form. Thus, although what is sent to Chilling Effects is typically the complete copyrighted work (the photo), this factor does not weigh in favor of either party.

iv.  The effect of the use upon the potential market for or value of the copyrighted work

The fourth factor is the effect of the use upon the potential market for or

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

value of the copyrighted work. Where a use is highly transformative—as the use is here—market harm cannot be presumed. *Perfect 10*, 508 F.3d at 1168. The Ninth Circuit's analysis in its ruling on P10's first preliminary injunction motion largely focused on the fact that the images in question there were thumbnails and did not threaten P10's market for full-sized images. *Id.* Though many of the images in the notices that Google has sent to Chilling Effects are full-sized, P10 has offered no evidence—only speculation—that posting of these notices on Chilling Effects is likely to affect the potential market for P10's works. P10 argues that by in-line linking to the notices, Google is facilitating the free download of P10 images and that by placing the links to Chilling Effects near the top of its search results, Google is making it likely that users will click on these links. Reply at 8-9. P10 has provided no evidence that visitors to Chilling Effects use these notices as substitutes for viewing the images on perfect10.com. Nor could Chilling Effects be considered a potential customer of P10, whose business Google usurped. Under these circumstances, factor four favors Google.

### v. Weighing the four factors together

After weighing the required factors, the Court finds that Google's practice of forwarding and linking to the DMCA notices on Chilling Effects likely constitutes fair use.

### 4. P10's rights of publicity

P10 devotes only two sentences in its Memorandum of Points and Authorities to the likelihood of success on its right of publicity claim and cites no law to support its position. *See* Motion at 5. Google pointed out this deficiency in its Opposition, and P10 thereafter did devote three pages of its reply to this claim. Reply at 19-22. Nonetheless, P10 fails to establish that it is likely to prevail on its right of publicity claim.

The parties argue about whether the Communications Decency Act, 47 U.S.C. § 230, provides Google immunity for its actions or whether the P10 models effectively assigned their rights of publicity to P10. The Court need not reach these questions, however, because Perfect 10 has failed to show that it is

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

likely to be able to prove several essential elements of its right of publicity claim.

As Google points out in its Opposition, harm to the plaintiff (in this case, the assignor- models) is a required element of a right of publicity claim for appropriation of name or likeness.  *See* Cal. Civ. Code § 3344; *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 417-18 (Ct. App. 1983); *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1918 (Ct. App. 1996).  In its moving papers, P10 never explains how the models are harmed by Google's hosting of Blogger websites that display their names or likenesses.  Moreover, in order to prove a right of publicity claim under section 3344, a plaintiff must show that *the defendant* appropriated the plaintiff's name or likeness for commercial purposes, and there must be a direct connection between the defendant's use of the likeness and that commercial purpose.  *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 322 (Ct. App. 1997).  Here, P10 argues that "Google is materially contributing to violations of Perfect 10's assigned rights of publicity by providing the advertising which satisfies the commercial purpose necessary to establish a violation of Section 3344(a) and the common law." "Contributing" to someone's violation of something is not the same as actually "violating" it.  P10 has not shown that Google is, in fact, inappropriately *using* the models' likenesses.  Because both the statutory and common law versions of a right of publicity claim require that the defendant actually use the plaintiff's likeness, *see Fleet*, 50 Cal. App. 4th at 1918, P10 has not established that it is likely to prevail on its right of publicity claim.

After evaluating P10's assorted claims, this Court finds that P10 has not established that it is likely to succeed on the merits of either its copyright claims or its right of publicity claim.

## B.    Irreparable Harm in the Absence of Preliminary Relief

P10 has failed to establish that it will suffer irreparable harm in the

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|----------|---------------------|------|---------------|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

absence of preliminary relief.[12]  It offers evidence of its recent financial woes, Zada PI Decl. ¶ 5 & Zada Reply PI Decl. ¶ 2, but it fails to tie those financial difficulties in any meaningful way to Google's conduct.  Nothing indicates that injunctive relief against Google will help to alleviate P10's financial concerns. Thus, P10 has not established irreparable harm in the absence of preliminary relief.

### C.      Balance of Equities and the Public Interest

Nowhere in its Motion or Reply did P10 address the final two preliminary injunction factors of whether the balance of equities or the public interest weigh in its favor.  Accordingly, the Court agrees with Google that, given the overbroad nature of P10's requested relief in its Proposed Order and the potential for such an injunction to limit the free exchange of information on the internet, the balance of the equities and the public interest weigh in favor of Google.

Nor does the Ninth Circuit's recent reaffirmation of the viability of the "serious questions" version of the sliding scale test entitle P10 to a preliminary injunction.  P10 has not shown that the balance of hardships tips sharply in **its** favor.  *See Alliance for Wild Rockies*, 2010 WL 2926463, at *7.

## V.      CONCLUSION

For the foregoing reasons, the Court DENIES P10's motion for a preliminary injunction.

——————   :   ——————

[12]P10 is not entitled to a presumption of irreparable harm (even if such a presumption still applies after *Winter*, 129 S. Ct. at 374), since it has not demonstrated a likelihood of success on the merits of its copyright infringement claims.  *See Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999).

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
| --- | --- | --- | --- |
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

Initials of Preparer                    SMO

O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|
| Title | PERFECT 10, INC. v. GOOGLE, INC. | | |

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
       A.    Motion for Preliminary Injunction  . . . . . . . . . . . . . . . . . . . . . . . . 4
       B.    Copyright Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
             1. Direct infringement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
             2. Contributory infringement  . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
             3. Vicarious infringement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             4. Fair use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
             5. DMCA safe harbor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.    DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
       A.    Likelihood of Success on the Merits . . . . . . . . . . . . . . . . . . . . . 15
             1. Google's web and image search and its caching feature . . . . . 16
             2. Google's Blogger service . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                   a. P10's prima facie case of infringement  . . . . . . . . . . . . . 20
                   b. Google's DMCA safe harbor defense . . . . . . . . . . . . . . 26
             3. Google's forwarding of DMCA notices to Chilling Effects  . . 28
                   a. Prima facie case of infringement . . . . . . . . . . . . . . . . . . 31
                   b. Fair use . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
                         i. The purpose and character of the use, including
                            whether                      such use is of a
                                                         commercial
                                                         nature or is for
                                                         nonprofit
                                                         educational
                                                         purposes  . . . 32
                         ii. The nature of the copyrighted work  . . . . . . . . . 34
                         iii. The amount and substantiality of the portion used
                              in relation to the copyrighted work as a whole 34
                         iv. The effect of the use upon the potential market for
                             or value of the copyrighted work . . . . . . . . . . 35

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 04-9484 AHM (SHx) | Date | July 30, 2010 |
|---|---|---|---|

| Title | PERFECT 10, INC. v. GOOGLE, INC. |
|---|---|

v. Weighing the four factors together . . . . . . . . . . . 36

4. P10's rights of publicity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

B.  Irreparable Harm in the Absence of Preliminary Relief . . . . . . . . 38

C.  Balance of Equities and the Public Interest  . . . . . . . . . . . . . . . . 39

V.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40